# ORIGINAL

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| CONNECTU LLC, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. 04-1923(DPW) |
| | ) | |
| v. | ) | |
| | ) | |
| MARK ZUCKERBERG, EDUARDO | ) | **JURY TRIAL DEMANDED** |
| SAVERIN, DUSTIN MOSKOVITZ, | ) | |
| ANDREW MCCOLLUM, CHRISTOPHER | ) | |
| HUGHES, AND THE FACEBOOK, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## FIRST AMENDED COMPLAINT

Plaintiff ConnectU LLC, f/k/a Harvard Connection ("ConnectU" or "Plaintiff"), by its

undersigned attorneys, alleges as follows based on its own knowledge with respect to its own

acts, and on information and belief as to all other allegations:

## NATURE OF THE ACTION

1.      This is a civil action for copyright infringement, breach of contract,

misappropriation of trade secrets, breach of fiduciary duty, unjust enrichment, unfair business

practices, intentional interference with prospective business advantage, breach of duty of good

faith and fair dealing, and fraud arising out of Defendants' Mark Zuckerberg, Eduardo Saverin,

Dustin Moskovitz, Andrew McCollum, Christopher Hughes, and TheFaceBook Inc.'s

("Defendants") unauthorized use of Plaintiff's source code and confidential business plans, and

usurpation of business opportunity.

Dockets.Justia.com

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over the subject matter of this action pursuant to 17 U.S.C. § 501 (b) and 28 U.S.C. § 1331.  Jurisdiction over the state and common law claims is also appropriate under 28 U.S.C. § 1367(a) and principles of pendent jurisdiction.

3.     This Court has personal jurisdiction over Defendants and venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400(a).  Plaintiff's claims arise in this District.  Upon information and belief, a substantial portion of Defendants' business and the specific activity about which Plaintiff complains have taken place and are continuing to take place in this District.

## THE PARTIES

4.     Plaintiff ConnectU LLC is a limited liability corporation of the State of Delaware with a principal place of business at 500 West Putnam Avenue, Greenwich, Connecticut 06830.

5.     Defendant Mark Zuckerberg is an individual with a place of residence in the State of New York.

6.     Defendant Eduardo Saverin is an individual with a place of residence in the State of Florida.

7.     Defendant Dustin Moskovitz is an individual with a place of residence in the State of Florida.

8.     Defendant Andrew McCollum is an individual with a place of residence in the State of Idaho.

9.     Defendant Christopher Hughes is an individual with a place of residence in the State of North Carolina.

10.    Defendant TheFaceBook, Inc. is a corporation of the State of Delaware.

## FACTS

11.     Plaintiff's founders, Cameron Winklevoss, Tyler Winklevoss, and Divya Narendra, were classmates who together attended Harvard University, graduating in June 2004.

12.     In December 2002, the Winklevosses and Narendra began to develop a business plan for a new type of website. This website would allow students and alumni of a college or university to create a network specific to that institution, and give the students and alumni a place to meet, exchange information, discuss employment prospects, and serve as an on-line dating service. Initially, ConnectU was to serve the Harvard University community. Once established at Harvard, ConnectU intended to expand to other institutions.

13.     Plaintiff's business model, which was based on advertising revenue, had a significant chance of financial success because the users, well educated students and alumni, are an attractive demographic for many advertisers.

14.     ConnectU's founders hired fellow Harvard students to develop the software necessary for the website to function (the "Harvard Connection Code"). After the first programmer hired by Plaintiff graduated, ConnectU hired a second programmer, Victor Gao. In November 2003, Plaintiff engaged Defendant Mark Zuckerberg to work with Mr. Gao to complete the Harvard Connection Code for the website. So that Defendant Zuckerberg could complete the Harvard Connection Code, he was given the source code that ConnectU had developed to date.

15.     On numerous occasions, both orally and in writing, Plaintiff stressed to Zuckerberg that the Harvard Connection Code needed to be completed as soon as possible because Plaintiff's founders wanted to launch their website before their June 2004 graduation. Defendant Zuckerberg always assured Plaintiff that he was using his best efforts to complete the project and ready the website for market.

-3-

16.     In addition to writing the software for the ConnectU website, Defendant Zuckerberg was involved with website development. In that capacity, he was entrusted with Plaintiff's business management information and procedures, including descriptions of the website's business model, various functionality and content concepts, and the type of information that would be collected from users. Such information and procedures were confidential at the time, and constituted Plaintiff's trade secrets. Zuckerberg understood that this business management information and procedures were secret and agreed to keep them confidential. Zuckerberg also understood that it was important to the success of ConnectU's business model to make the website operational before the end of the school year and before any competitor did so. With respect to Internet websites, the first to capture a market has a substantial advantage.

17.     Zuckerberg agreed to develop the Harvard Connection Code in exchange for a monetary interest in Plaintiff, as well as the ability to identify and highlight his contribution to prospective employers.

18.     Defendant Zuckerberg's pledges of commitment to Plaintiff, his acceptance of the Harvard Connection Code, his work on such code and the website, his access to and acceptance of ConnectU's proprietary and confidential business management information and procedures, his understanding that he would be compensated when the website was successful, and his ability to highlight his work on the site to potential employers, created an actual or implied contract, a duty of good faith and fair dealing, and a fiduciary relationship between Defendant Zuckerberg and ConnectU.

19.     On January 8, 2004, Defendant Zuckerberg sent an email to Cameron Winklevoss, confirming that Zuckerberg would complete and deliver the promised source code.

-4-

A mere three days later, January 11, 2004, without providing the promised code, Zuckerberg registered the domain name "TheFaceBook.com." On February 4, 2004, using Plaintiff's confidential business plans and the Harvard Connection Code provided by Plaintiffs, Defendants launched a directly competitive website, TheFaceBook.com. This launch usurped Plaintiff's valuable business opportunity. A few days later, Zuckerberg boasted to the press that he had completed and launched TheFaceBook.com website in one week. Defendants used the Harvard Connection Code in connection with TheFaceBook.com.

20.     Plaintiff was surprised by Zuckerberg's launch of a competing website while working for ConnectU. Plaintiff hired a programmer to develop entirely new software and launched ConnectU.com on May 21, 2004, almost four months after the launch of TheFaceBook.com.

21.     Defendant Zuckerberg shared Plaintiff's confidential business information and the Harvard Connection Code with Defendants Saverin, Moskovitz, McCollum, and Hughes, who knowingly used, and continue to use, Plaintiff's confidential business plans and the Harvard Connection Code to develop, launch, and/or maintain TheFaceBook.com website.

22.     Defendants' unlawful use of Plaintiff's Harvard Connection Code and proprietary business plans and procedures allowed TheFaceBook.com to come to market first, thereby obtaining press coverage and users/members that would otherwise have benefited Plaintiff.

23.     Defendants' market advantage, directly and proximately resulting from Defendant Zuckerberg's breach of contract, misappropriation of trade secrets, breach of fiduciary duty, breach of duty of good faith and fair dealing, and fraud, and Defendants' copyright infringement, unjust enrichment, unfair business practices, and intentional interference with prospective business advantage, usurped ConnectU's market share and related business opportunities.

## FIRST CLAIM FOR RELIEF
## Copyright Infringement
## 17 U.S.C. § 101 et seq.

24.     Plaintiff repeats and realleges each and every allegation set forth in this

Complaint.

25.     Plaintiff is an owner of the copyright covering the Harvard Connection Code.

26.     Without Plaintiff's permission, Defendants copied copyrighted subject matter of

ConnectU's Harvard Connection Code and created a derivative work thereof. This unauthorized

derivative work is or was copied and used by Defendants in connection with the

TheFaceBook.com website. Defendants may have infringed Plaintiff's copyrights in additional

ways.

27.     Defendants' actions as described above constitute copyright infringement of the

Harvard Connection Code. The original certificate of registration for the software is attached

hereto as Ex. A. This registration is *prima facie* evidence of the validity of the copyright and of

the facts stated in the certificate. The Harvard Connection Code constitutes copyrightable

subject manner.

28.     The actions of Defendants described above have at all times relevant to this action

been willful and/or knowing.

29.     As a direct and proximate result of the actions of Defendants alleged above,

ConnectU has been irreparably injured and has suffered monetary damages in an as yet

undetermined amount.

## SECOND CLAIM FOR RELIEF
## Misappropriation of Trade Secrets
## Massachusetts G.L. ch. 266, § 30 (4)

30.     Plaintiff repeats and realleges each and every allegation set forth in this

Complaint.

31.     Plaintiff took appropriate steps to maintain the secrecy of its business management information and procedures.

32.     Plaintiff's business management information and procedures were valuable to Plaintiff and to Defendants.

33.     Plaintiff expended significant effort in both time and money to develop its business management information and procedures.

34.     Plaintiff's business management information and procedures were not easily acquired or duplicated by others.

35.     Defendant Zuckerberg's actions as described above constitute misappropriation of Plaintiff's trade secrets, namely its business management information and procedures.

36.     The actions of Defendant Zuckerberg described above have at all times relevant to this action been willful and/or knowing.

37.     As a direct and proximate result of the actions of Defendant Zuckerberg alleged above, ConnectU has been irreparably injured and has suffered monetary damages in an as yet undetermined amount.

### THIRD CLAIM FOR RELIEF
### Breach of Contract

38.     Plaintiff repeats and realleges each and every allegation set forth in this Complaint.

39.     Defendant Zuckerberg's actions as described above constitute breach of actual or implied contract under Massachusetts law.

40.     The actions of Defendant Zuckerberg described above have at all times relevant to this action been willful and/or knowing.

41. As a direct and proximate result of the actions of Defendant Zuckerberg alleged above, ConnectU has been irreparably injured and has suffered monetary damages in an as yet undetermined amount.

## FOURTH CLAIM FOR RELIEF
## Breach of Implied Covenant of Good Faith and Fair Dealing

42. Plaintiff repeats and realleges each and every allegation set forth in this Complaint.

43. The actual or implied contract between Defendant Zuckerberg and ConnectU contains an implied covenant of good faith and fair dealing under Massachusetts law. Defendant Zuckerberg breached that covenant.

44. The actions of Defendant Zuckerberg described above have at all times relevant to this action been willful and/or knowing.

45. As a direct and proximate result of the actions of Defendant Zuckerberg alleged above, ConnectU has been irreparably injured and has suffered monetary damages in an as yet undetermined amount.

## FIFTH CLAIM FOR RELIEF
## Breach of Massachusetts Unfair Trade Practices Statute
## Mass. G.L. ch. 93A

46. Plaintiff repeats and realleges each and every allegation set forth in this Complaint.

47. At all relevant times, Defendants Zuckerberg, Moskovitz, McCollum, and Hughes were engaged in trade or commerce within the meaning of M.G.L. ch. 93A, § 1.

48. The actions of Defendants Zuckerberg, Moskovitz, McCollum, and Hughes described above constitute unfair or deceptive acts or practices in the conduct of trade or commerce within the meaning of M.G.L. ch. 93A, § 2.

49.    Pursuant to M.G.L. ch 93A, § 9, Plaintiff's counsel sent written demands for relief to each of Defendants Zuckerberg, Moskovitz, McCollum, and Hughes. Copies of these letters are attached hereto as Ex. B. Each letter identified the claimant and reasonably described the unfair and deceptive acts or practices complained of and the injury suffered by Plaintiff. Defendants Zuckerberg, Moskovitz, McCollum, and Hughes have each failed to respond to Plaintiff's written demands with a reasonable settlement offer within 30 days. Defendants' Zuckerberg, Moskovitz, McCollum, and Hughes' refusal to grant relief upon demand was made in bad faith with knowledge that the acts and practices complained of violate M.G.L. ch. 93A, § 2.

50.    The actions of Defendants Zuckerberg, Moskovitz, McCollum, and Hughes described above have at all times relevant to this action been willful and/or knowing.

51.    As a direct and proximate result of the actions of Defendants Zuckerberg, Moskovitz, McCollum, and Hughes alleged above, ConnectU has been irreparably injured and has suffered monetary damages in an as yet undetermined amount.

### SIXTH CLAIM FOR RELIEF
### Breach of Fiduciary Duty

52.    Plaintiff repeats and realleges each and every allegation set forth in this Complaint.

53.    Plaintiff reposed, and Defendant Zuckerberg knowingly accepted, Plaintiff's trust and confidence regarding Plaintiff's business plans. Zuckerberg owed a fiduciary duty to Plaintiff.

54.    Plaintiff relied on Zuckerberg to act in the best interests of ConnectU LLC and Zuckerberg had full knowledge of Plaintiff's reliance.

55.     Zuckerberg manipulated that reliance for his own personal gain and the gain of all of the Defendants.

56.     Defendant Zuckerberg's actions amounted to a course of conduct designed to harm ConnectU LLC.

57.     Defendant Zuckerberg's actions constitute breach of fiduciary duty.

58.     The actions of Defendant Zuckerberg described above have at all times relevant to this action been willful and/or knowing.

59.     As a direct and proximate result of the actions of Defendant Zuckerberg alleged above, ConnectU has been irreparably injured and has suffered monetary damages in an as yet undetermined amount.

**SEVENTH CLAIM FOR RELIEF**
**Unjust Enrichment**

60.     Plaintiff repeats and realleges each and every allegation set forth in this Complaint.

61.     As a result of Defendants' actions as described above, Defendants have been enriched at the expense of Plaintiff.

62.     As a result of Defendants' actions as described above, Plaintiff has been deprived of a valuable benefit.

63.     Defendants cannot establish any justification for their unjust enrichment at the expense of Plaintiff.

64.     The actions of Defendants described above have at all times relevant to this action been willful and/or knowing.

65.     As a direct and proximate result of the actions of Defendants alleged above,

ConnectU has been irreparably injured and has suffered monetary damages in an as yet

undetermined amount.

### EIGHTH CLAIM FOR RELIEF
#### Intentional Interference with Prospective Contractual and
#### Advantageous Business Relations

66.     Plaintiff repeats and realleges each and every allegation set forth in this

Complaint.

67.     Defendants have purposely and wrongfully caused website users and advertisers

to refrain from entering into contracts and other business relations with ConnectU and have

usurped such business opportunities.

68.     The actions of Defendants described above have at all times relevant to this action

been willful and/or knowing.

69.     As a direct and proximate result of the actions of Defendants alleged above,

ConnectU has been irreparably injured and has suffered monetary damages in an as yet

undetermined amount.

### NINTH CLAIM FOR RELIEF
#### Fraud

70.     Plaintiff repeats and realleges each and every allegation set forth in this

Complaint.

71.     Defendant Zuckerberg knowingly made a false statement of intention when he

agreed to create and provide source code to ConnectU on January 8, 2004.  Zuckerberg never

intended to provide the code and instead intended to breach his promise at the time the promise

was made.

-11-

72.     Defendant Zuckerberg made the false statement with the intent to induce Plaintiff to act in reliance on the statement.

73.     Plaintiff reasonably relied on Zuckerberg's statement.

74.     Plaintiff's reliance resulted in Plaintiff's detriment.

75.     The actions of Defendant Zuckerberg described above have at all times relevant to this action been willful and/or knowing.

76.     As a direct and proximate result of the actions of Defendant Zuckerberg alleged above, ConnectU has been irreparably injured and has suffered monetary damages in an as yet undetermined amount.

## REQUEST FOR RELIEF

Wherefore, Plaintiff ConnectU LLC requests that this Court enter judgment in its favor on each and every claim for relief set forth above and award it relief, including but not limited to the following:

A.     An injunction preliminarily and permanently enjoining Defendants and their employees, agents, partners, officers, directors, owners, shareholders, principals, subsidiaries, related companies, affiliates, distributors, dealers, and all persons in active concert or participation with any of them:

>       (1)     From operating the website TheFaceBook.com, or any variation of that website under a different domain name or URL;

>       (2)     From using the Harvard Connection Code, or any code or software derived therefrom;

-12-

(3)     From using the confidential business information and procedures obtained
        by Defendants as a result of Defendant Zuckerberg's association with
        Plaintiff;

B.      An Order directing Defendants to destroy all computer programs, business plans,
and any other materials and things, whether printed or electronic, that consist of or contain the
Harvard Connection Code or Plaintiff's business plans and procedures;

C.      An Order holding Defendants jointly and severally liable for copyright
infringement, breach of contract, misappropriation of trade secrets, breach of fiduciary duty,
unjust enrichment, intentional interference with prospective business advantage, breach of duty
of good faith and fair dealing, and fraud, and directing Defendants to pay Plaintiff damages,
including but not limited to direct, consequential, indirect, compensatory, and punitive damages;

D.      An Order directing Defendants to pay to Plaintiff its actual damages, Defendants'
profits associated with Defendants' use of Plaintiff's source code, and Defendants' profits
resulting from Defendant Zuckerberg's breach of contract, misappropriation of trade secrets,
breach of fiduciary duty, breach of duty of good faith and fair dealing, and fraud and Defendants'
copyright infringement, unjust enrichment, unfair business practices, and intentional interference
with prospective business advantage;

E.      An Order holding Defendants Zuckerberg, Moskovitz, McCollum, and Hughes
jointly and severally liable for unfair business practices under Mass. G.L. ch. 93A, and directing
Defendants Zuckerberg, Moskovitz, McCollum, and Hughes to pay statutory damages and to
treble such damages pursuant to Mass. G.L. ch. 93A;

F.      An Order directing Defendants to pay Plaintiff's attorneys' fees and costs
associated with this action; and

-13-

G.    Other relief as the Court may deem appropriate.


Dated: October 28, 2004                    Respectfully submitted,



                                           _____
                                           Jonathan M. Gelchinsky (BBO #656282)
                                           Lawrence R. Robins (BBO #632610)
                                           FINNEGAN, HENDERSON, FARABOW,
                                               GARRETT & DUNNER, L.L.P.
                                           55 Cambridge Parkway
                                           Cambridge, MA 02142
                                           Tel: (617) 452-1600
                                           Fax: (617) 452-1666

                                           jon.gelchinsky@finnegan.com
                                           larry.robins@finnegan.com


                                           John F. Hornick, *Pro Hac Vice*
                                           Margaret A. Esquenet, *Pro Hac Vice*
                                           FINNEGAN, HENDERSON, FARABOW,
                                               GARRETT & DUNNER, L.L.P.
                                           1300 I Street, N.W.
                                           Washington, D.C.  20005-3315
                                           Tel: (202) 408-4000
                                           Fax: (202) 408-4400

                                           Attorneys for Plaintiff
                                           ConnectU LLC

# Exhibit A

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Form TX**
For a Nondramatic Literary Work
UNITED STATES COPYRIGHT OFFICE

**TXu 1 – 196 – 126**

*TXu001961264*

1A
EFFECTIVE DATE OF REGISTRATION

OCT 15 2004
Month   Day   Year

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

**1**

TITLE OF THIS WORK ▼

Harvard Connection Code

PREVIOUS OR ALTERNATIVE TITLES ▼

PUBLICATION AS A CONTRIBUTION If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared.    Title of Collective Work ▼

If published in a periodical or serial give:   Volume ▼      Number ▼       Issue Date ▼       On Pages ▼

**2**

**a** NAME OF AUTHOR ▼
Joseph G. Jackson

DATES OF BIRTH AND DEATH
Year Born ▼  1983    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☑ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶ USA
Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?  ☐ Yes ☑ No
Pseudonymous? ☐ Yes ☑ No
If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP  Briefly describe nature of material created by this author in which copyright is claimed. ▼
Source Code

**b** NAME OF AUTHOR ▼
Victor Gao

DATES OF BIRTH AND DEATH
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☑ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶ USA
Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?  ☐ Yes ☑ No
Pseudonymous? ☐ Yes ☑ No
If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP  Briefly describe nature of material created by this author in which copyright is claimed. ▼
Source Code

**c** NAME OF AUTHOR ▼
Sanjay Mavinkurve

DATES OF BIRTH AND DEATH
Year Born ▼  1980    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☑ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶ USA
Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?  ☐ Yes ☑ No
Pseudonymous? ☐ Yes ☑ No
If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP  Briefly describe nature of material created by this author in which copyright is claimed. ▼
Source Code

**NOTE**
Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

**3**

**a** YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED  This information must be given in all cases.
2003 ◀ Year

**b** DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK
Complete this information ONLY if this work has been published.
Month ▶      Day ▶      Year ▶      ◀ Nation

**4**

COPYRIGHT CLAIMANT(S) Name and address must be given even if the claimant is the same as the author given in space 2. ▼
ConnectU LLC
500 West Putnam Avenue
Greenwich, CT 06830

TRANSFER If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼
Written Assignment

See instructions before completing this space.

APPLICATION RECEIVED
OCT 15 2004
ONE DEPOSIT RECEIVED

TWO DEPOSITS RECEIVED
OCT 15 2004
FUNDS RECEIVED

DO NOT WRITE HERE
OFFICE USE ONLY

MORE ON BACK ▶   • Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
• See detailed instructions.   • Sign the form at line 8.

DO NOT WRITE HERE
Page 1 of ___ 4 ___ pages

EXAMINED BY _____ **FORM TX**
CHECKED BY

☒ CORRESPONDENCE
   Yes

**FOR COPYRIGHT OFFICE USE ONLY**

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?

☐ Yes ☑ No  If your answer is "Yes," why is another registration being sought? (Check appropriate box.) ▼

a. ☐ This is the first published edition of a work previously registered in unpublished form.

b. ☐ This is the first application submitted by this author as copyright claimant.

c. ☐ This is a changed version of the work, as shown by space 6 on this application.

If your answer is "Yes," give: **Previous Registration Number** ▶      **Year of Registration** ▶

**5**

**DERIVATIVE WORK OR COMPILATION**

Preexisting Material Identify any preexisting work or works that this work is based on or incorporates. ▼

**a**

**6**

See instructions before completing this space.

Material Added to This Work Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

**b**

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.

Name ▼      Account Number ▼

**a**

**7**

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent. Name / Address / Apt / City / State / ZIP ▼

Margaret A. Esquenet, Esq.
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
1300 I Street, N.W., Washington, D.C. 20005-3315

**b**

Area code and daytime telephone number ▶ (202) 408-4007      Fax number ▶ (202) 408-4400

Email ▶ margaret.esquenet@finnegan.com

**CERTIFICATION\*** I, the undersigned, hereby certify that I am the

Check only one ▶

☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☑ authorized agent of   ConnectU LLC

Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

**8**

**Typed or printed name and date** ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.

Margaret A. Esquenet      Date ▶ October 15, 2004

Handwritten signature (X) ▼

x Margaret A Esquenet

Certificate will be mailed in window envelope to this address:

Name ▼
Margaret A. Esquenet, Esq. @ Finnegan et. al.

Number/Street/Apt ▼
1300 I Street, N.W.

City/State/ZIP ▼
Washington, D.C. 20005-3315

**9**

• Complete all necessary spaces
• Sign your application in space 8

SEND ALL 3 ELEMENTS IN THE SAME PACKAGE:
1. Application form
2. Nonrefundable filing fee in check or money order payable to Register of Copyrights
3. Deposit material

MAIL TO:
Library of Congress
Copyright Office - TX
101 Independence Avenue, S.E.
Washington, D.C. 20559-6222

\*17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

Rev: July 2003—xxx   Web Rev: July 2003   @ Printed on recycled paper      U.S. Government Printing Office: 2000-461-113/20,021

# CONTINUATION SHEET
# FOR APPLICATION FORMS



**Form** _TX_ **/CON**

TXu 1 – 196 – 126

*UTXU001196126*

| PA | PAU | SE | SEG | SEU | SR | SRU | TX | TXU | VA | VAU |
|----|-----|----|-----|-----|----|-----|----|----|----|-----|

**EFFECTIVE DATE OF REGISTRATION**

OCT              15              2004
(Month)        (Day)         (Year)

**CONTINUATION SHEET RECEIVED**

- This Continuation Sheet is used in conjunction with Forms CA, PA, SE, SR, TX, and VA, only. Indicate which basic form you are continuing in the space in the upper right-hand corner.
- If at all possible, try to fit the information called for into the spaces provided on the basic form.
- If you do not have enough space for all the information you need to give on the basic form, use this Continuation Sheet and submit it with the basic form.
- If you submit this Continuation Sheet, clip (do not tape or staple) it to the basic form and fold the two together before submitting them.
- Space A of this sheet is intended to identify the basic application.
  Space B is a continuation of Space 2 on the basic application.
  Space B is not applicable to Short Forms.
  Space C (on the reverse side of this sheet) is for the continuation of Spaces 1, 4, or 6 on the basic application or for the continuation of Space 1 on any of the three Short Forms PA, TX, or VA.

Page ___3___ of ___4___ pages

**DO NOT WRITE ABOVE THIS LINE. FOR COPYRIGHT OFFICE USE ONLY**

---

**A**
**Identification
of
Application**

**IDENTIFICATION OF CONTINUATION SHEET:** This sheet is a continuation of the application for copyright registration on the basic form submitted for the following work:
- TITLE: (Give the title as given under the heading "Title of this Work" in Space 1 of the basic form.)

  Harvard Connection Code

- NAME(S) AND ADDRESS(ES) OF COPYRIGHT CLAIMANT(S): (Give the name and address of at least one copyright claimant as given in Space 4 of the basic form or Space 2 of any of the Short Forms PA, TX, or VA.)

  ConnectU LLC, 500 West Putnam Avenue, Greenwich, CT 06830

---

**B**
**Continuation
of Space 2**

**d**

**NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born▼          Year Died▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶ _____
Domiciled in ▶ _____

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?   ☐ Yes  ☐ No
Pseudonymous? ☐ Yes  ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of the material created by the author in which copyright is claimed. ▼

**e**

**NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born▼          Year Died▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶ _____
Domiciled in ▶ _____

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?   ☐ Yes  ☐ No
Pseudonymous? ☐ Yes  ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of the material created by the author in which copyright is claimed. ▼

**f**

**NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born▼          Year Died▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶ _____
Domiciled in ▶ _____

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?   ☐ Yes  ☐ No
Pseudonymous? ☐ Yes  ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of the material created by the author in which copyright is claimed. ▼

---

*Use the reverse side of this sheet if you need more space for continuation of Spaces 1, 4, or 6 of the basic form or for the continuation of Space 1 on any of the Short Forms PA, TX, or VA.*

CONTINUATION OF  (Check which):     ☐ Space 1     ☑ Space 4     ☐ Space 6

Sanjay Mavinkurve
916 Oakes Street
East Palo Alto, CA 94303

**C**

Continuation
of other
Spaces

---

| Certificate will be mailed in window envelope to this address: | Name ▼ |
|---|---|
| | Margaret A. Esquenet, Esq. @ Finnegan et. al. |
| | Number/Street/Apt ▼ |
| | 1300 I Street, N.W. |
| | City/State/ZIP ▼ |
| | Washington, D.C. 20005-3315 |

YOU MUST:
• Complete all necessary spaces
• Sign your application

SEND ALL 3 ELEMENTS
IN THE SAME PACKAGE
1. Application form
2. Nonrefundable fee in check or money order payable to Register of Copyrights
3. Deposit Material

MAIL TO:
Library of Congress, Copyright Office
101 Independence Avenue, S.E.
Washington, D.C. 20559-6000

**D**

Fees are subject to change. For current fees, check the Copyright Office website at www.copyright.gov, write the Copyright Office, or call (202) 707-3000.

# Exhibit B



FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP

55 Cambridge Parkway • Cambridge, MA 02142-1292 • 617.452.1600 • Fax 617.452.1666
www.finnegan.com

**JONATHAN M. GELCHINSKY**
617.452.1642
jon.gelchinsky@finnegan.com

September 2, 2004

Mr. Christopher Hughes                        **VIA HAND DELIVERY**
819 La Jennifer Way
Palo Alto, California 94306

   Re: thefacebook.com

Dear Mr. Hughes:

  This is a formal demand letter sent to you pursuant to Massachusetts General Laws Chapter 93A, Section 9.  This firm represents ConnectU LLC, of Greenwich, Connecticut.

  As you are no doubt aware, ConnectU LLC and its founders, Cameron Winklevoss, Tyler Winklevoss, and Divya Narendra, began to develop a business plan for a new type of website in December 2002, called "ConnectU."  The ConnectU website (formerly known as Harvard Connection) was designed to allow students and alumni of a college or university to create a network specific to that institution, giving the students and alumni a place to meet, exchange information, discuss employment prospects, and participate in an on-line dating service.  Intended by its creators to be funded by corporate advertisers, ConnectU's business model had a significant chance of financial success because the users, well-educated students and alumni, are an attractive demographic for many advertisers.  Initially, ConnectU was to serve the Harvard community.  Once established at Harvard, ConnectU would expand to other institutions.

  Because Messrs Winklevoss were scheduled to graduate in the summer of 2004 and wanted to complete and launch the site before graduation, they engaged trusted fellow students to help develop the code for the site and to become part of the ConnectU team.  To that end, in November 2003, Messrs Winklevoss engaged Mark Zuckerberg to complete the development of the software for the ConnectU website. From November 2003 until February 2004, our client and Mr. Zuckerberg had numerous conversations and exchanged multiple email messages wherein Mr. Zuckerberg consistently and repeatedly assured ConnectU that he was using his best efforts to complete the project and ready the website for market, and our client confirmed its reliance on Mr. Zuckerberg's representations.

FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP

During that time, ConnectU provided to Mr. Zuckerberg in person and via email detailed descriptions of its plans for the website, including descriptions of merchandising, production, management, design, procedure, and business plans, various functionality and content concepts, the type of information that would be collected from users of the site, and the source code that was developed as of that time. Mr. Zuckerberg agreed to maintain the confidentiality of those plans and information.

Apparently, despite pledging his commitment to the ConnectU project, accepting the ConnectU source code, and gaining access to ConnectU's proprietary and confidential business information, Mr. Zuckerberg never intended to fulfill his duty to ConnectU and broke the trust that Messrs Winklevoss placed in him. Instead, Mr. Zuckerberg unlawfully used ConnectU's code and business information to launch a competing website and service, thefacebook.com, on February 4, 2004.

It is our understanding that Mr. Zuckerberg shared ConnectU's proprietary and confidential business information, materials, and source code with you, and that you willfully and knowingly use the information and code in connection with the development, operation, and maintenance of thefacebook.com website.

Your use of ConnectU's proprietary information, materials, and source code, which Mr. Zuckerberg unfairly and deceptively obtained from ConnectU and shared with you for purposes of launching and operating the competing website, thefacebook.com, violates M.G.L. c. 93A, § 2 and constitutes unfair and deceptive trade practices.

Upon information and belief, these actions were performed willfully and knowingly.

As a result of your unfair and deceptive acts and practices, ConnectU suffered injury including, but not limited to, loss of potential market share, loss of business opportunities, and loss of actual business, in terms of both users and advertisers. The nature of this harm cannot be remedied by money damages alone.

In light of the foregoing, ConnectU demands that you (a) immediately take down the website thefacebook.com, (b) refrain from launching any website or service similar in purpose or function to ConnectU for at least two (2) years, (c) immediately return to ConnectU any information and materials owned by ConnectU, including but not limited to source code, object code, business plans of any kind, and website design plans of any kind, (d) immediately disgorge any profits earned by thefacebook.com, and (e) pay ConnectU's attorneys' fees and costs associated with this enforcement of ConnectU's rights.

Under Chapter 93A, you have thirty (30) days from your receipt of this letter to respond with a reasonable offer of settlement. If you fail to do so, that statute provides

September 2, 2004
Page 3

FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP

that you will be liable for multiple damages and the reasonable attorney fees incurred by
ConnectU for the prosecution of this action.

Very truly yours,

Jonathan M. Gelchinsky

JMG/km

cc:    ConnectU LLC
       John F. Hornick, Esq.
       Margaret A. Esquenet, Esq.



FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP

55 Cambridge Parkway • Cambridge, MA 02142-1292 • 617.452.1600 • Fax 617.452.1666
www.finnegan.com

JONATHAN M. GELCHINSKY
617.452.1642
jon.gelchinsky@finnegan.com

September 2, 2004

Mr. Andrew McCollum                                    **VIA HAND DELIVERY**
819 La Jennifer Way
Palo Alto, California 94306

   Re: thefacebook.com

Dear Mr. McCollum:

   This is a formal demand letter sent to you pursuant to Massachusetts General
Laws Chapter 93A, Section 9.  This firm represents ConnectU LLC, of Greenwich,
Connecticut.

   As you are no doubt aware, ConnectU LLC and its founders, Cameron
Winklevoss, Tyler Winklevoss, and Divya Narendra, began to develop a business plan
for a new type of website in December 2002, called "ConnectU."  The ConnectU
website (formerly known as Harvard Connection) was designed to allow students and
alumni of a college or university to create a network specific to that institution, giving the
students and alumni a place to meet, exchange information, discuss employment
prospects, and participate in an on-line dating service.  Intended by its creators to be
funded by corporate advertisers, ConnectU's business model had a significant chance
of financial success because the users, well-educated students and alumni, are an
attractive demographic for many advertisers.  Initially, ConnectU was to serve the
Harvard community.  Once established at Harvard, ConnectU would expand to other
institutions.

   Because Messrs Winklevoss were scheduled to graduate in the summer of 2004
and wanted to complete and launch the site before graduation, they engaged trusted
fellow students to help develop the code for the site and to become part of the
ConnectU team.  To that end, in November 2003, Messrs Winklevoss engaged Mark
Zuckerberg to complete the development of the software for the ConnectU website.
From November 2003 until February 2004, our client and Mr. Zuckerberg had numerous
conversations and exchanged multiple email messages wherein Mr. Zuckerberg
consistently and repeatedly assured ConnectU that he was using his best efforts to
complete the project and ready the website for market, and our client confirmed its
reliance on Mr. Zuckerberg's representations.

September 2, 2004
Page 2

FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP

During that time, ConnectU provided to Mr. Zuckerberg in person and via email detailed descriptions of its plans for the website, including descriptions of merchandising, production, management, design, procedure, and business plans, various functionality and content concepts, the type of information that would be collected from users of the site, and the source code that was developed as of that time. Mr. Zuckerberg agreed to maintain the confidentiality of those plans and information.

Apparently, despite pledging his commitment to the ConnectU project, accepting the ConnectU source code, and gaining access to ConnectU's proprietary and confidential business information, Mr. Zuckerberg never intended to fulfill his duty to ConnectU and broke the trust that Messrs Winklevoss placed in him. Instead, Mr. Zuckerberg unlawfully used ConnectU's code and business information to launch a competing website and service, thefacebook.com, on February 4, 2004.

It is our understanding that Mr. Zuckerberg shared ConnectU's proprietary and confidential business information, materials, and source code with you, and that you willfully and knowingly use the information and code in connection with the development, operation, and maintenance of thefacebook.com website.

Your use of ConnectU's proprietary information, materials, and source code, which Mr. Zuckerberg unfairly and deceptively obtained from ConnectU and shared with you for purposes of launching and operating the competing website, thefacebook.com, violates M.G.L. c. 93A, § 2 and constitutes unfair and deceptive trade practices.

Upon information and belief, these actions were performed willfully and knowingly.

As a result of your unfair and deceptive acts and practices, ConnectU suffered injury including, but not limited to, loss of potential market share, loss of business opportunities, and loss of actual business, in terms of both users and advertisers. The nature of this harm cannot be remedied by money damages alone.

In light of the foregoing, ConnectU demands that you (a) immediately take down the website thefacebook.com, (b) refrain from launching any website or service similar in purpose or function to ConnectU for at least two (2) years, (c) immediately return to ConnectU any information and materials owned by ConnectU, including but not limited to source code, object code, business plans of any kind, and website design plans of any kind, (d) immediately disgorge any profits earned by thefacebook.com, and (e) pay ConnectU's attorneys' fees and costs associated with this enforcement of ConnectU's rights.

Under Chapter 93A, you have thirty (30) days from your receipt of this letter to respond with a reasonable offer of settlement. If you fail to do so, that statute provides

September 2, 2004
Page 3

FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP

that you will be liable for multiple damages and the reasonable attorney fees incurred by
ConnectU for the prosecution of this action.

Very truly yours,

Jonathan M. Gelchinsky

JMG/km

cc:    ConnectU LLC
       John F. Hornick, Esq.
       Margaret A. Esquenet, Esq.



55 Cambridge Parkway • Cambridge, MA  02142-1292 • 617.452.1600 • Fax 617.452.1666
www.finnegan.com

FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP

JONATHAN M. GELCHINSKY
617.452.1642
jon.gelchinsky@finnegan.com

September 2, 2004

Mr. Dustin Moskovitz                                    **VIA HAND DELIVERY**
819 La Jennifer Way
Palo Alto, California 94306

       Re:   thefacebook.com

Dear Mr. Moskovitz:

This is a formal demand letter sent to you pursuant to Massachusetts General Laws Chapter 93A, Section 9.  This firm represents ConnectU LLC, of Greenwich, Connecticut.

As you are no doubt aware, ConnectU LLC and its founders, Cameron Winklevoss, Tyler Winklevoss, and Divya Narendra, began to develop a business plan for a new type of website in December 2002, called "ConnectU."  The ConnectU website (formerly known as Harvard Connection) was designed to allow students and alumni of a college or university to create a network specific to that institution, giving the students and alumni a place to meet, exchange information, discuss employment prospects, and participate in an on-line dating service.  Intended by its creators to be funded by corporate advertisers, ConnectU's business model had a significant chance of financial success because the users, well-educated students and alumni, are an attractive demographic for many advertisers.  Initially, ConnectU was to serve the Harvard community.  Once established at Harvard, ConnectU would expand to other institutions.

Because Messrs Winklevoss were scheduled to graduate in the summer of 2004 and wanted to complete and launch the site before graduation, they engaged trusted fellow students to help develop the code for the site and to become part of the ConnectU team.  To that end, in November 2003, Messrs Winklevoss engaged Mark Zuckerberg to complete the development of the software for the ConnectU website. From November 2003 until February 2004, our client and Mr. Zuckerberg had numerous conversations and exchanged multiple email messages wherein Mr. Zuckerberg consistently and repeatedly assured ConnectU that he was using his best efforts to complete the project and ready the website for market, and our client confirmed its reliance on Mr. Zuckerberg's representations.

FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP

During that time, ConnectU provided to Mr. Zuckerberg in person and via email detailed descriptions of its plans for the website, including descriptions of merchandising, production, management, design, procedure, and business plans, various functionality and content concepts, the type of information that would be collected from users of the site, and the source code that was developed as of that time. Mr. Zuckerberg agreed to maintain the confidentiality of those plans and information.

Apparently, despite pledging his commitment to the ConnectU project, accepting the ConnectU source code, and gaining access to ConnectU's proprietary and confidential business information, Mr. Zuckerberg never intended to fulfill his duty to ConnectU and broke the trust that Messrs Winklevoss placed in him.  Instead, Mr. Zuckerberg unlawfully used ConnectU's code and business information to launch a competing website and service, thefacebook.com, on February 4, 2004.

It is our understanding that Mr. Zuckerberg shared ConnectU's proprietary and confidential business information, materials, and source code with you, and that you willfully and knowingly use the information and code in connection with the development, operation, and maintenance of thefacebook.com website.

Your use of ConnectU's proprietary information, materials, and source code, which Mr. Zuckerberg unfairly and deceptively obtained from ConnectU and shared with you for purposes of launching and operating the competing website, thefacebook.com, violates M.G.L. c. 93A, § 2 and constitutes unfair and deceptive trade practices.

Upon information and belief, these actions were performed willfully and knowingly.

As a result of your unfair and deceptive acts and practices, ConnectU suffered injury including, but not limited to, loss of potential market share, loss of business opportunities, and loss of actual business, in terms of both users and advertisers.  The nature of this harm cannot be remedied by money damages alone.

In light of the foregoing, ConnectU demands that you (a) immediately take down the website thefacebook.com, (b) refrain from launching any website or service similar in purpose or function to ConnectU for at least two (2) years, (c) immediately return to ConnectU any information and materials owned by ConnectU, including but not limited to source code, object code, business plans of any kind, and website design plans of any kind, (d) immediately disgorge any profits earned by thefacebook.com, and (e) pay ConnectU's attorneys' fees and costs associated with this enforcement of ConnectU's rights.

Under Chapter 93A, you have thirty (30) days from your receipt of this letter to respond with a reasonable offer of settlement.  If you fail to do so, that statute provides

September 2, 2004
Page 3

FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP

that you will be liable for multiple damages and the reasonable attorney fees incurred by
ConnectU for the prosecution of this action.

Very truly yours,

Jonathan M. Gelchinsky

JMG/km

cc:     ConnectU LLC
        John F. Hornick, Esq.
        Margaret A. Esquenet, Esq.



55 Cambridge Parkway • Cambridge, MA 02142-1292 • 617.452.1600 • Fax 617.452.1666
www.finnegan.com

**FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER** LLP

JONATHAN M. GELCHINSKY
617.452.1642
jon.gelchinsky@finnegan.com

September 8, 2004

Eric J. Stenshoel, Esq.                                    **VIA CERTIFIED MAIL**
Curtis, Mallet-Prevost, Colt & Mosle, LLP          **RETURN RECEIPT REQUESTED**
101 Park Avenue
New York, NY 10178

      Re:   thefacebook.com

Dear Mr. Stenshoel:

      This is a formal demand letter to your client, Mark Zuckerberg, pursuant to Massachusetts General Laws Chapter 93A, Section 9. As you are aware, this firm represents ConnectU LLC, of Greenwich, Connecticut.

      ConnectU LLC and its founders, Cameron Winklevoss, Tyler Winklevoss, and Divya Narendra, began to develop a business plan for a new type of website in December 2002, called "ConnectU." The ConnectU website (formerly known as Harvard Connection) was designed to allow students and alumni of a college or university to create a network specific to that institution, giving the students and alumni a place to meet, exchange information, discuss employment prospects, and participate in an on-line dating service. Intended by its creators to be funded by corporate advertisers, ConnectU's business model had a significant chance of financial success because the users, well-educated students and alumni, are an attractive demographic for many advertisers. Initially, ConnectU was to serve the Harvard community. Once established at Harvard, ConnectU would expand to other institutions.

      Because Messrs Winklevoss were scheduled to graduate in the summer of 2004 and wanted to complete and launch the site before graduation, they engaged trusted fellow students to help develop the code for the site and to become part of the ConnectU team. To that end, in November 2003, Messrs Winklevoss engaged Mark Zuckerberg to complete the development of the software for the ConnectU website. From November 2003 until February 2004, our client and Mr. Zuckerberg had numerous conversations and exchanged multiple email messages wherein Mr. Zuckerberg consistently and repeatedly assured ConnectU that he was using his best efforts to complete the project and ready the website for market, and our client confirmed its reliance on Mr. Zuckerberg's representations.

Eric J. Stenshoel, Esq.
September 8, 2004
Page 2

FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP

During that time, ConnectU provided to Mr. Zuckerberg in person and via email detailed descriptions of its plans for the website, including descriptions of merchandising, production, management, design, procedure, and business plans, various functionality and content concepts, the type of information that would be collected from users of the site, and the source code that was developed as of that time. Mr. Zuckerberg agreed to maintain the confidentiality of those plans and information.

Apparently, despite pledging his commitment to the ConnectU project, accepting the ConnectU source code, and gaining access to ConnectU's proprietary and confidential business information, Mr. Zuckerberg never intended to fulfill his duty to ConnectU and broke the trust that Messrs Winklevoss placed in him. Instead, Mr. Zuckerberg unlawfully used ConnectU's code and business information to launch a competing website and service, thefacebook.com, on February 4, 2004.

It is our understanding that Mr. Zuckerberg has shared ConnectU's proprietary and confidential business information, materials, and source code with other individuals, namely, Eduardo Saverin, Dustin Moskovitz, Andrew McCollum, and Christopher Hughes, and that all of these individuals willfully and knowingly use the information and code in connection with the development, operation, and maintenance of thefacebook.com website.

Mr. Zuckerberg's use of ConnectU's proprietary information, materials, and source code, which he unfairly and deceptively obtained from ConnectU and shared with the other individuals stated above for purposes of launching and operating the competing website, thefacebook.com, violates M.G.L. c. 93A, § 2 and constitutes unfair and deceptive trade practices.

Upon information and belief, these actions were performed willfully and knowingly.

As a result of Mr. Zuckerberg's unfair and deceptive acts and practices, ConnectU suffered injury including, but not limited to, loss of potential market share, loss of business opportunities, and loss of actual business, in terms of both users and advertisers. The nature of this harm cannot be remedied by money damages alone.

In light of the foregoing, ConnectU demands that Mr. Zuckerberg (a) immediately take down the website thefacebook.com, (b) refrain from launching any website or service similar in purpose or function to ConnectU for at least two (2) years, (c) immediately return to ConnectU any information and materials owned by ConnectU, including but not limited to source code, object code, business plans of any kind, and website design plans of any kind, (d) immediately disgorge any profits earned by thefacebook.com, and (e) pay ConnectU's attorneys' fees and costs associated with this enforcement of ConnectU's rights.

Eric J. Stenshoel, Esq.
September 8, 2004
Page 3

FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP

        Under Chapter 93A, Mr. Zuckerberg's has thirty (30) days from your receipt of
this letter to respond with a reasonable offer of settlement.  If he fails to do so, that
statute provides that he will be liable for multiple damages and the reasonable
attorney's fees incurred by ConnectU for the prosecution of this action.

                                            Very truly yours,

JMG/km                                      Jonathan M. Gelchinsky

cc:     ConnectU LLC
        John F. Hornick, Esq.
        Margaret A. Esquenet, Esq.

## CERTIFICATE OF SERVICE

I, Jenny Macioge, hereby certify that on October 28, 2004, a true and correct copy of the

foregoing FIRST AMENDED COMPLAINT was served by the indicated means to the persons

at the addresses listed:

Robert B. Hawk, Esq.
HELLER EHRMAN WHITE & McCAULIFFE
2775 Sand Hill Road
Menlo Park, CA 94025

☐ Via First Class Mail
☐ Via Hand Delivery
☒ Via Overnight Courier
☒ Via Facsimile

Daniel K. Hampton, Esq.
Gordon P. Katz, Esq.
HOLLAND & KNIGHT, LLP
10 St. James Avenue
Boston, MA 02116

☐ Via First Class Mail
☒ Via Hand Delivery
☐ Via Overnight Courier
☒ Via Facsimile

Jenny E.S. Macioge

FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, L.L.P.
55 Cambridge Parkway
Cambridge, MA 02142
Telephone: 617.452.1600