1   G. HOPKINS GUY, III (State Bar No. 124811)
    I. NEEL CHATTERJEE (State Bar No. 173985)
2   MONTE COOPER (State Bar No. 196746)
    THERESA A. SUTTON (State Bar No. 211857)
3   YVONNE P. GREER (State Bar No. 214072)
    ORRICK, HERRINGTON & SUTCLIFFE LLP
4   1000 Marsh Road
    Menlo Park, CA 94025
5   Telephone:    650-614-7400
    Facsimile:    650-614-7401
6
    Attorneys for Plaintiffs
7   FACEBOOK, INC. and MARK ZUCKERBERG

8                      UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10                         SAN JOSE DIVISION

11

12
    FACEBOOK, INC., and MARK              CASE NO. 507-CV-01389-RS
13  ZUCKERBERG,
                                          PLAINTIFFS' [PROPOSED] SECOND
14                 Plaintiffs,            AMENDED COMPLAINT FOR
                                          VIOLATION OF CALIFORNIA PENAL
15         v.                             CODE § 502(C); CALIFORNIA AND
                                          MASSACHUSETTS COMMON LAW
16  CONNECTU, INC. (formerly known as     MISAPPROPRIATION / UNFAIR
    CONNECTU, LLC), CAMERON               COMPETITION; VIOLATION OF
17  WINKLEVOSS, TYLER WINKLEVOSS,         MASSACHUSETTS GENERAL LAW
    DIVYA NARENDRA, PACIFIC               93A; 18 U.S.C. § 1030; AND 15 U.S.C.
18  NORTHWEST SOFTWARE, INC.,             §§ 7704 AND 7705
    WINSTON WILLIAMS, WAYNE CHANG,
19  and DAVID GUCWA AND DOES 1-25,

20                 Defendants.

21

22

23

24

25

26

27

28

OHS West:260241014.1

Dockets.Justia.com

1    Plaintiffs Facebook, Inc. and Mark Zuckerberg hereby allege violations of

2  California Penal Code section 502(c), the Computer Fraud and Abuse Act, the Federal Can-Spam

3  Act of 2003, Massachusetts General Law 93A § 2, and Common Law Misappropriation / Unfair

4  Competition under California and Massachusetts law, against Defendant ConnectU, Inc.,

5  Cameron Winklevoss, Tyler Winklevoss, Divya Narendra, Pacific Northwest Software, Inc.,

6  Winston Williams, Wayne Chang, David Gucwa, and Does 1-25 inclusive (collectively, the

7  "Defendants"), as follows:

8    **<u>PARTIES, JURISDICTION, AND VENUE</u>**

9    1.    Facebook, Inc. is a Delaware corporation with its principal place of business at

10  471 Emerson Street, Palo Alto, California.  Facebook operates all of its servers in and/or from

11  California and has done so since June 2004.

12    2.    Mark Zuckerberg is an individual with a place of residence in the State of

13  California.

14    3.    On information and belief, Defendant ConnectU, Inc. (formerly known as

15  ConnectU LLC) is incorporated in the State of Connecticut, with its principal place of business at

16  500 West Putnam Avenue, Greenwich, Connecticut.  ConnectU was at all relevant times doing

17  business in California.  ConnectU is an interactive website that purports to provide certain

18  website services to university students and alumni.  ConnectU has specifically targeted California

19  universities and students in its business activities.  For example, ConnectU purports to have

20  created "environments" for California universities, including but not limited to University of

21  California, Berkeley.  In addition, on information and belief, ConnectU sent commercial email to

22  hundreds, if not thousands, of California residents.  Its activities in California have been

23  substantial and continuous.

24    4.    Plaintiffs are informed and believe and thereupon allege that Defendant Cameron

25  Winklevoss is a citizen of the State of Connecticut.  Plaintiffs are informed and believe and

26  thereupon allege that Defendant Mr. Winklevoss was a resident of the State of Massachusetts

27  until at least June 2004.  Mr. Winklevoss purports to be a founder of ConnectU.  On information

28  and belief, Mr. Winklevoss is and always has been an officer of ConnectU and held an equivalent

1  position with ConnectU's predecessor, ConnectU LLC. As described below, Mr. Winklevoss

2  has, in his individual capacity, engaged in conduct designed to harm Plaintiffs, when he knew

3  Plaintiffs were located in California and that the harmful effects would be felt by Plaintiffs in

4  California.

5        5.     Plaintiffs are informed and believe and thereupon allege that Defendant Tyler

6  Winklevoss is a citizen of the State of Connecticut. Plaintiffs are informed and believe and

7  thereupon allege that Mr. Winklevoss was a resident of the State of Massachusetts until at least

8  June 2004. Mr. Winklevoss purports to be a founder of ConnectU. On information and belief,

9  Mr. Winklevoss is and always has been an officer of ConnectU and held an equivalent position

10  with ConnectU's predecessor, ConnectU LLC. As described below, Mr. Winklevoss has, in his

11  individual capacity, engaged in conduct designed to harm Plaintiffs, when he knew Plaintiffs

12  were located in California and that the harmful effects would be felt by Plaintiffs in California.

13        6.     Plaintiffs are informed and believe and thereupon allege that Defendant Divya

14  Narendra is currently a citizen of the State of Massachusetts. Plaintiffs are informed and believe

15  and thereupon allege that Mr. Narendra was a citizen of New York until late 2006, and a resident

16  of the State of Massachusetts from September 2000 through June 2004. Mr. Narendra purports to

17  be a founder of ConnectU. On information and belief, Mr. Narendra is an officer of ConnectU

18  and held an equivalent position with ConnectU's predecessor, ConnectU LLC. As described

19  below, Mr. Narendra has, in his individual capacity, engaged in conduct designed to harm

20  Plaintiffs, when he knew Plaintiffs were located in California and that the harmful effects would

21  be felt by Plaintiffs in California. Mr. Narendra also personally hired at least one other person to

22  assist in the conduct alleged herein.

23        7.     Plaintiffs are informed and believe and thereupon allege that Defendant Pacific

24  Northwest Software, Inc. ("PNS") is incorporated in the State of Washington, with its principal

25  place of business at 2210 177th Place, NE Redmond, Washington. On information and belief,

26  PNS has entered into contracts with California residents and has derived substantial revenue from

27  California residents. For example, in 2005 PNS issued a press release in which it announced a

28  web development deal with the Chula Vista Elementary School District (located in California),

1     pursuant to which PNS would develop internet "portals" for 50 sites (including 43 district

2     schools) that would be available to the public.  Plaintiffs are informed and believe and thereupon

3     allege that ConnectU and/or its founders hired PNS to gain unauthorized access to Facebook's

4     servers and website and to take, without permission, information found therein.  Plaintiffs are

5     informed and believe that PNS has entered into contracts in California, has clients in California,

6     has received revenue from California residents, has solicited website users from California, has

7     advertised in California, and has traveled to this state.  As described below, PNS and its agents

8     engaged in conduct designed to harm Plaintiffs, when they knew Plaintiffs were located in

9     California and that the harmful effects would be felt by Plaintiffs in California.

10           8.     Plaintiffs are informed and believe and thereupon allege that Defendant Winston

11     Williams is a citizen of the State of Washington, and that he helped the Defendants develop a

12     software application designed to hack into www.facebook.com and steal information. As

13     described below, Mr. Williams has engaged in conduct designed to harm Plaintiffs, when he

14     knew Plaintiffs were located in California and that the harmful effects would be felt by Plaintiffs

15     in California.  Mr. Williams has, at various times, been employed by ConnectU and PNS.

16           9.     Plaintiffs are informed and believe and thereupon allege that Defendant Wayne

17     Chang is a citizen of the State of Massachusetts, and that he was hired by ConnectU and/or its

18     founders to gain unauthorized access to Plaintiffs' server and website and to misappropriate

19     information found therein.  As described below, Mr. Chang has engaged in conduct designed to

20     harm Plaintiffs, when he knew Plaintiffs were located in California and that the harmful effects

21     would be felt by Plaintiffs in California.  Plaintiffs are informed and believe and thereupon allege

22     that Defendant Chang is currently employed by Defendant PNS.

23          10.     Plaintiffs are informed and believe and thereupon allege that Defendant David

24     Gucwa is a citizen of the State of Massachusetts, and that he was hired by ConnectU and/or its

25     founders and/or Defendant Chang to gain unauthorized access to Plaintiffs' server and website

26     and to misappropriate information found therein.  As described below, Mr. Gucwa has engaged in

27     conduct designed to harm Plaintiffs, when he knew Plaintiffs were located in California and that

28     the harmful effects would be felt by Plaintiffs in California.

11.     Plaintiffs have not yet fully and independently identified the true names and capacities of the Defendants sued herein as Does 1-25, inclusive, and therefore sues those Defendants by such fictitious names.  Plaintiffs reserve the right to amend this complaint to allege such Defendants' true names and capacities when they are ascertained.  Plaintiffs are informed and believe and thereupon allege that each of the fictitiously designated Defendants has been acting as a partner, contractor, joint venturer, agent, or employee of one or more of the named Defendants and that each is jointly and severally responsible for the acts and omissions complained of herein.

12.     Jurisdiction and venue are proper in this jurisdiction pursuant to Federal Rules of Civil Procedure Sections 1331, 1332, 1391(b) and (c).  The cause of action arose and the injuries described herein occurred primarily or wholly within the County of Santa Clara.  The wrongful acts causing such injuries were initiated at various times from the States of Massachusetts, New York, and Connecticut and directed at persons and equipment in California.

### GENERAL ALLEGATIONS

**A.  Mark Zuckerberg**

13.     Mark Zuckerberg is a former Harvard student who, in June 2004, took a leave of absence from school to come to California.  He hoped to launch a successful business.  He succeeded and decided to stay in California.

**B.  Facebook**

14.     Facebook is an interactive computer service that enables social networking amongst present and former university students.  Plaintiffs have been operating the popular website, www.facebook.com,[1] from California since June 2004.  During all relevant times herein, Plaintiffs are informed and believe that Defendants were aware that www.facebook.com operated from California.

15.     Facebook is an industry leader in the business of social networking for college students.  It currently has over 19 million registered users.

---

[1] The website was originally called www.thefacebook.com.  To avoid confusion, Plaintiffs refer to the site by its current name.

OHS West:260241014.1

16.     In order to legally access user data and other specific information on Plaintiffs'
website, one must register and thereby agree to Plaintiffs' Terms of Use ("Terms of Use") and its
Privacy Policy ("Privacy Policy").  Plaintiffs have authorized access only to those individuals
who agree to the Terms of Use.  The use of any information on the Facebook website contrary to
the Terms of Use is unauthorized.  Enabling users of the Facebook website to control the level of
privacy to their personal information is of utmost importance to Plaintiffs and the success of their
business.  Facebook users are expected to respect the privacy of other users and abide by the
Privacy Policy and Terms of Use.  During all relevant times herein, Defendants were aware of
these policies.

17.     The Terms of Use and the Privacy Policy have, at all times since the launch of
Facebook's website, prohibited all commercial use and access to data and communications
therein, except as explicitly authorized by Plaintiffs.

18.     From at least February 2004, the Terms of Use provided as follows (aside, on
information and belief, from non-substantive modifications):

> The Web site is for the personal use of individual Members only and <u>may not be</u>
> <u>used in connection with any commercial endeavors. Organizations, companies,</u>
> <u>and/or businesses may not become Members and should not use the Service or the</u>
> <u>Web site for any purpose. Illegal and/or unauthorized uses of the Web site,</u>
> <u>including collecting email addresses or other contact information of members by</u>
> <u>electronic or other means for the purpose of sending unsolicited email</u> and
> unauthorized framing of or linking to the Web site will be investigated, and
> appropriate legal action will be taken, including without limitation, civil, criminal,
> and injunctive redress."

(Emphasis added.)  In addition, it provided that:

> You may not engage in advertising to, or solicitation of, other Members to buy or
> sell any products or services through the Service.  You may not transmit any chain
> letters or junk email to other members.  Although Thefacebook cannot monitor the
> conduct of its members off the Web site, it is also a violation of these rules to use
> any information obtained from the Service in order to harass, abuse, or harm
> another person, or in order to advertise to, solicit, or sell to any member without
> their prior consent.

Lastly, it affirmed:

> Thefacebook owns and retains all proprietary rights in the Web site and the
> Service. The Web site contains the copyrighted material, trademarks, and other
> proprietary information of Thefacebook, and its licensors.  Except for that
> information which is in the public domain or for which you have been given
> written permission, you may not copy, modify, publish, transmit, distribute,

perform, display, or sell any such proprietary information.

19.     By registering, and becoming a member, the user may have access to view the personal data of other users within his or her college (*i.e.*, other students and alumni), as well as to the personal data of friends at other schools who have explicitly granted such user access. Each user has the ability to add his or her own personal identifying information and determine who may view it.  Such personal information may include his or her relationship status, birth date, phone numbers, email address, and home address.  Each item of personal information is provided only by the user, and none of it is required in order to be a member of the website.  At the relevant times, the default privacy setting on a user's account limited a user's access to a school network, but any user could have further limited access by selecting a more strict privacy setting such that only her confirmed friends could view her information.  Even now, the default setting provides a limited view of a user's personal information, and the user has the option to make no information available publicly.

20.     Plaintiffs also restrict access to and have always used their best efforts to keep their proprietary user and system information from unauthorized uses and parties.

21.     Plaintiffs have generally expended substantial effort, money and time in developing the informational components of its website, as well as its aggregate user base.  The data on the Plaintiffs' computers, computers systems, and computer networks is highly valuable.

22.     At different times from the winter or spring of 2004 through at least 2005, Defendants Cameron and Tyler Winklevoss, Divya Narendra, Wayne Chang, Winston Williams, and David Gucwa knowingly circumvented the Terms of Use for the Facebook website by illicitly employing the user IDs and passwords of friends who were registered members of the Facebook website to mask Defendants' real identities.  These defendants took these actions in order to gain access to the site and to steal information and data for commercial purposes, as well as to advertise to and solicit members of the Facebook website to join www.connectu.com.  Both Defendants and the friends who provided Defendants with their user IDs and passwords did so cognizant that such use was intended to harm Plaintiffs.  Defendants' actions were at all times intentionally aimed at, and the effects were felt by, Plaintiffs in California.

23.     The users whose passwords Defendants (including, at least, Messrs. Winklevoss, Narendra, Chang, and Gucwa) used to knowingly and improperly access the Facebook website in California for commercial purposes and in violation of Plaintifffs' Terms of Use include, but were not limited to, user IDs and passwords associated with the email addresses carlsson@stanford.edu and stinab8@ucla.edu.  The use of such user IDs and passwords for commercial purposes by Defendants in violation of Plaintiffs' Terms of Use harmed Plaintiffs in California.  Defendants knew that such actions were improper, and that the harm would be uniquely felt by Plaintiffs in California.

**B.    Unauthorized Access, Misappropriation, and Commercial Use by Defendants**

24.     ConnectU offers an interactive computer service that purports to enable social networking amongst present and former university students.

25.     ConnectU has attempted to aggressively compete with Facebook.

26.     Beginning in 2004, and upon information and belief continuing through and including 2005, ConnectU and/or its founders hired PNS, Winston Williams, Wayne Chang, and David Gucwa to write software to gain access, without permission, to Plaintiffs' website and steal information, including email addresses and personal user information.  ConnectU and/or its founders also requested that friends of the founders, such as Divya Narendra's friend Deva Mishra, attempt on behalf of ConnectU and the founders to violate Plaintiffs' Terms of Use and steal email addresses; personal user information such as birthdates, addresses, and phone numbers; course information; and other data from the Facebook website so that ConnectU could solicit Facebook users (including users of the Facebook website located in California) to join www.connectu.com.  ConnectU, Messrs. Winklevoss and Narendra knew the harm from such activities would be felt by Plaintiffs in California. They directed their activities through third parties such as Deva Mishra knowing that the activities would result in the solicitation of California-based Facebook members to join the website www.connectu.com .

27.     In the Spring 2004, Tyler and Cameron Winklevoss and Divya Narendra hired iMarc, a website developer, to help build the ConnectU website.  On or around June 11, 2004, "the boyz from" ConnectU asked iMarc to

OHS West:260241014.1

- 8 -

write a little script that logs into www.thefacebook.com, loops
through http: //www. thefacebook.com/profile.php?id=xxxxx
replacing xxxxx with numbers to grab people's email addresses.

iMarc refused, because its employees believed that the request was unethical. Despite iMarc's
caution against such activity, on July 22, 2004, "the boyz from" ConnectU "sent thousands of
invite emails [over a 12 hour period]. Every single one was sent using a bogus 'From' address:
… ."[2] For example, some of the "invite emails" purported to come from "god@harvard.edu."
Many of these emails were sent to California college students via email addresses extracted from
the Facebook website. The email addresses were obtained by ConnectU, Messrs. Winklevoss and
Narendra through their illicit use of third party user accounts on the Facebook website. The
"invite emails" did not indicate that they contained an advertisement for users to join a competing
website, www.connectu.com. iMarc's relationship with ConnectU soured and ended shortly after
this incident.

    28.    Messrs. Winklevoss engaged Wayne Chang, PNS and Winston Williams to
develop a computer program designed to retrieve user account names, personal data (including
email addresses and personal data of such user's "friends") from Facebook and its servers located
in California. Mr. Chang hired David Gucwa, a computer programmer, to write the programs
necessary to retrieve email accounts, course information and other data from the Facebook
website and Plaintiffs' servers in California. Mr. Chang and Mr. Gucwa, with the knowledge and
support of ConnectU, Cameron Winklevoss, Tyler Winklevoss, and Divya Narendra, collaborated
with PNS and Mr. Williams to achieve the goal of writing programs to retrieve email account
information, course information and other data from the Facebook website and its servers in
California.

    29.    Mr. Chang, in aid of his "partners" Tyler Winklevoss, Cameron Winklevoss and
Divya Narendra, provided Mr. Gucwa with fake and/or "borrowed" user accounts, including (but
not limited to) stinab8@ucla.edu and carlsson@stanford.edu, and gave him specific instructions
to play "cat and mouse" with Facebook. Mr. Chang noted that Facebook was "run by a techie," a

---

[2] All quotes in this complaint are taken directly from documents produced in response to
discovery requests.

1    reference that upon information and belief was to California resident Mark Zuckerberg, so they

2    should "be careful."  Mr. Gucwa indeed wrote a "script" that worked in two steps: it retrieved the

3    user ids and then the user profile information. It was a slow process, according to Mr. Gucwa,

4    "because the program has to "descend" into each separate profile for each separate friend."

5    Mr. Gucwa eventually "[w]rote a script that catches up to 10k [user i.d.s] at a time."  Mr. Chang

6    was pleased by this news because he wanted to "seed ConnectU as much as possible."  The "good

7    news," he said, "is that I'm sending thefacebook several thousand requests in a couple minutes

8    and they haven't blocked my IP yet."  Mr. Chang was concerned, of course, about setting off

9    "huge" alarms at Facebook, and wondered how they could steal the information "faster."  On

10   January 27, 2005, Mr. Gucwa boasted that he had implemented the program he developed to

11   collect 46,000 "ids" from the Facebook website.

12          30.     The programs that Mr. Chang, Mr. Gucwa, Mr. Williams, and PNS developed in

13   2005 to misappropriate Facebook email account and other information so that ConnectU could

14   spam Facebook users with invitations to join www.connectu.com were called variously

15   "importer," "Facebook importer," "crawler," "grabFacebook.php," "grabFacebook2.php," and

16   "Social Butterfly."  Upon information and belief, ConnectU, Cameron Winklevoss, Tyler

17   Winklevoss, and Divya Narendra knew about the actions of Mr. Chang, Mr. Gucwa.

18   Mr. Williams, and PNS, were familiar with the importer, Facebook importer, crawler,

19   grabFacebook.php, grabFacebook2.php, and Social Butterfly programs and their purposes, and

20   were aware that the programs required access to Plaintiffs' servers in California in order for the

21   programs to have their intended effects.  Upon information and belief, the intended effects of

22   these programs included, but were not limited to, crawling the Facebook website, illicitly

23   importing without permission email addresses and personal user information into the

24   www.connectu.com website, and soliciting via spam email with false and/or misleading header

25   information Facebook users, including users located in California, to join the www.connectu.com

26   website.  Such misleading header information included false information suggesting that the

27   invitation was not a commercial advertisement and that the spam request had originated as a

28   result of the stated wishes of third parties.  Instead, on information and belief, the commercial

OHS West:260241014.1                          - 10 -

1  advertisement emails were sent by Defendants.

2          31.    Upon information and belief, among other methods Mr. Chang, Mr. Gucwa,

3  Mr. Willams and PNS (with the support and knowledge of ConnectU, Cameron Winklevoss,

4  Tyler Winklevss, and Divya Narenda) "spoofed" the Facebook website to gain access to email

5  account and other information.  Said "spoofing" was accomplished by using an email header or

6  browser to make it appear as though the communication link originated from someone other than

7  a source associated with Mr. Chang, Mr. Gucwa, Mr. Williams or PNS.  Upon information and

8  belief, Defendants "spoofed" the website to illicitly circumvent the Facebook website security

9  measures designed to prevent parties such as Defendants from hacking into the Facebook website

10  in order to steal data contained on the Facebook website and its California servers.

11          32.    In February 2005, Mr. Chang was notified that his account had been suspended

12  because the web service Defendants were using had received complaints from someone at

13  Facebook that its California servers had been attacked through the web service. The web service

14  indicated that it noticed a significant amount of activity and wondered what Defendants' interest

15  in www.facebook.com was.  In response, Mr. Chang notified defendants Cameron Winklevoss,

16  PNS (through its CEO, John Taves), Mr. Williams, and Mr. Gucwa that Facebook learned of their

17  activity.  Mr. Chang described a method for working around the suspended account and asked

18  Mr. Williams, Mr. Gucwa, PNS and others to provide thoughts on how best to work around

19  Plaintiffs' website security mechanisms. Mr. Winklevoss then indicated to these other defendants

20  that the "importer" script, designed to breach Facebook's security mechanisms in order to steal

21  user data, was top priority for them.

22          33.    In late 2004, Messrs. Winklevoss and Narendra hired defendants PNS and

23  Williams to help develop the connectu.com website.  PNS/Mr. Williams joined forces with

24  Messrs. Chang and Gucwa to develop the "importer/crawler" program, as well as the Social

25  Butterfly program.  All Defendants knew the "importer/crawler" and Social Butterfly programs

26  would be used to spam and solicit California-based and other users of the Facebook website to

27  invite them to  join the ConnectU website.  On information and belief, all Defendants also knew

28  that the "importer/crawler" and/or Social Butterfly programs employed misleading email header

OHS West:260241014.1                              - 11 -

1  information that failed to indicate the solicitation was a commercial advertisement and/or which

2  failed to apprise the solicited Facebook account holder that the email had not actually been sent

3  by the person from whom it appeared to be sent.  In early 2005, Mr. Williams logged many hours

4  developing the "importer" program and stealing millions of emails from www.facebook.com

5  website, including emails of users located in California and known to Mr. Williams and the other

6  Defendants to be associated with California schools.  Much of his activity was targeted at

7  California residents.

8      34.    In 2004 and 2005, ConnectU, Messrs. Winklevoss, Narendra and Chang received

9  multiple complaints related to the spamming of Facebook users.  In March of 2005, ConnectU,

10  Cameron Winklevoss, Tyler Winklevoss, and Divya Narendra were specifically informed by one

11  or more of the other Defendants that "some person from thefacebook" identified how the

12  "headers" used by ConnectU worked, and why the spamming of Facebook users (including those

13  based in California) had generated complaints.  Upon information and belief, the headers that

14  Defendants were aware created these complaints were email headers originating from

15  connectu.com, and were misleading because they did not identify the solicitations as commercial

16  solicitations and did not accurately reflect that the email originated from the administrators of

17  connectu.com rather than friends of the Facebook users who received the email.

18      35.    Through its actions, ConnectU and the other Defendants gained unauthorized

19  access to Plaintiffs' servers and network.  They have stolen extensive amounts of proprietary and

20  personal user data from Plaintiffs, including but not limited to user data such as email addresses

21  and other personal identifying information collected in Plaintiffs' servers.  The Defendants'

22  actions, which included using other users' accounts and passwords (as well as fake accounts and

23  passwords), violated Plaintiffs' Terms of Use and Privacy Policy.  Defendants' actions affected

24  thousands, if not millions, of individuals who had no direct contact or prior business relationship

25  with ConnectU.  Their actions had a direct effect on thousands of California residents, including

26  (but limited to) students at UCLA, the University of California at Berkeley and Stanford.

27      36.    At the time of Defendants' unauthorized access, all users were required to register

28  and abide by the website's Terms of Use and Privacy Policy.  The Terms of Use in effect at the

1    time of Defendants' unauthorized access of the www.facebook.com prohibited use of the website

2    for commercial endeavors.  In addition, the Terms of Use prohibited the collection of email

3    addresses or other contact information of Plaintiffs' members for the purpose of sending

4    unsolicited e-mail, including unsolicited e-mail to California-based users of the Facebook

5    website.  Defendants' activity violated Plaintiffs' Terms of Use and Privacy Policy.

6          37.     On information and belief, Defendants willfully and maliciously engaged in

7    unauthorized access to, and unauthorized appropriation of, Plaintiffs' data, computers, computer

8    systems, and computer networks, at least in part in the hope of gaining competitive advantage for

9    ConnectU through such activities and to avoid the effort, time and money needed to develop such

10   data, user lists, and other matter on its own.  At the time of Defendants' unauthorized access via

11   importer, Facebook importer, crawler, grabFacebook.php, grabFaceboo2.php, and the solicitation

12   of Facebook users via Social Butterfly, Plaintiffs and/or their data, computers, computer systems

13   and computer networks were principally located in California.

14         38.     Defendants sought commercial gain and competitive advantage through their

15   unauthorized access as explained, in May 2004, by Cameron Winklevoss to his father, when he

16   described how he and his colleagues would steal course information and other data from

17   www.facebook.com in order to launch connectu.com with as many or more schools than

18   Facebook.  Defendant Cameron Winklevoss explained to his father Howard Winklevoss, who

19   encouraged him, that such theft would give them a competitive advantage over Plaintiffs without

20   investing the time it took Plaintiffs to become successful.

21         39.     As a result of these incidents of unauthorized access and unauthorized

22   appropriations by Defendants, Plaintiffs were damaged, including being damaged in California.

23         40.     As a result of their deliberate actions, Defendants improperly benefited from

24   Plaintiffs' business efforts and established reputation, including its business efforts and

25   established reputation in California, gaining substantial advantage from access and use of

26   Plaintiffs' commercial and proprietary information.

27         41.     At various times, Defendants distributed e-mails to members of

28   www.facebook.com and otherwise sought to solicit Plaintiffs' members, including the solicitation

OHS West:260241014.1                           - 13 -

1   of California-based members and members with whom ConnectU had no prior or direct

2   relationship, in an effort to lure them to www.connectu.com.  ConnectU used the email addresses

3   that had been gathered by and/or for ConnectU through Defendants' unauthorized access to and

4   unauthorized appropriations from Plaintiffs' computers, computer systems, and computer

5   networks to unjustly enrich ConnectU, and to spam and solicit Facebook users to join the website

6   www.connectu.com.

7          42.     In response to ConnectU's mass e-mailings and Defendants' other actions,

8   Plaintiffs were forced to notify certain of its members of the apparent breach of their privacy by

9   ConnectU, along with its agents and partners.  Plaintiffs are informed and believe and thereupon

10  allege that such notice damaged the trust their members placed in Plaintiffs and harmed Plaintiffs'

11  business, including its business in California.

12         43.     Plaintiffs are informed and believe and thereupon allege that each of the

13  Defendants had knowledge of the wrongful acts described herein (including that such wrongful

14  acts would harm Facebook in California), as well as their commercial purpose.  Defendants

15  carried out such wrongful acts willfully and maliciously.

16         44.     Plaintiffs are informed and believe and thereupon allege that Defendants and/or

17  those similarly situated may continue to engage in such unauthorized access and unauthorized

18  appropriations in the future.  In addition, Plaintiffs are informed and believe and thereupon allege

19  that Defendants continue to exploit the misappropriated data for their own commercial benefit, to

20  Plaintiffs' detriment.  Plaintiffs do not have an adequate remedy at law.

21         45.     Defendants were aware at all times from the summer of 2004 through the present

22  that their actions would harm Plaintiffs in California.  For instance, in January, 2006, Defendant

23  Williams discussed with attorneys for ConnectU how many California student members of

24  Facebook had been spammed by ConnectU through the combined use of the Facebook

25  importer/crawler, grabFacebook.php/grabFacebook2.php, and Social Butterfly.

26               **FIRST CAUSE OF ACTION**
         **(Violation of California Penal Code § 502(c) – Against All Defendants)**

27         46.     Plaintiffs hereby reallege and incorporate by reference paragraphs 1 through 45,

28

OHS West:260241014.1                           - 14 -

1  inclusive, of this complaint as though fully set forth herein.

2      47.     Defendants have knowingly and without permission accessed, caused to be

3  accessed, and used Plaintiffs' computers, computer systems, computer networks, and data stored

4  therein, in order to wrongfully obtain and control data, website components, and other

5  information of monetary value.

6      48.     Defendants have knowingly and without permission taken, copied, and made use

7  of data from Plaintiffs' computers, computer systems, and computer networks, as well as taken

8  and copied resident data.

9      49.     Defendants have knowingly and without permission provided or assisted in

10  providing a means of accessing Plaintiffs' computers, computer systems, and computer networks

11  in violation of California Penal Code Section 502.  Furthermore, Defendants have knowingly

12  instructed others to access, use, and copy information from Plaintiffs' computers, computer

13  systems, and computer networks, without permission.

14      50.     Defendants' unauthorized access and use has damaged and caused loss to

15  Plaintiffs.

16      51.     Defendants' actions constitute violations of California Penal Code section 502(c).

17  **<u>SECOND CAUSE OF ACTION</u>**

18  **(Common Law Misappropriation / Unfair Competition under Massachusetts and California
Law– Against All Defendants)**

19      52.     Plaintiffs hereby reallege and incorporate by reference paragraphs 1 through 51,

20  inclusive, of this complaint as though fully set forth herein.

21      53.     Plaintiffs expended considerable time and money developing their commercially

22  valuable user base (including account information), website components, network, and other

23  information specified in this complaint ("Facebook's Information").

24      54.     Defendants have taken such information and without authorization used, disclosed,

25  and held out as their own Facebook's Information, without compensation to Facebook.

26      55.     Defendants' unauthorized access, use and disclosure of Facebook's Information

27  was the result of the deceptive and unfair actions described above.

28      56.     As a consequence, Plaintiffs have been harmed.  Plaintiffs are informed and

OHS West:260241014.1

- 15 -

1    believe, and on that basis allege, that Defendants' acts and conduct constitute common law

2    misappropriation / unfair competition and were carried out willfully, fraudulently, maliciously,

3    and with the wanton disregard of Plaintiffs' rights, thereby entitling Plaintiffs to compensatory

4    and punitive damages to be proven at trial.

## THIRD CAUSE OF ACTION
**(Violation of Massachusetts General Law 93A § 2 – Against All Defendants)**

57.    Plaintiffs hereby reallege and incorporate by reference paragraphs 1 through 56,

inclusive, of this complaint as though fully set forth herein.

58.    Defendants' actions in gaining unauthorized access to www.facebook.com,

misappropriating data, and sending unsolicited emails are unlawful, unfair, and deceptive.

59.    Plaintiffs have been harmed as a direct consequence of Defendants' unlawful

actions.

60.    Defendants' unlawful, unfair and deceptive actions are in violation of

Massachusetts General Law 93A.

## FOURTH CAUSE OF ACTION
**(Violation of 15 U.S.C. §§ 7704(a)(1), (2), (3) and 7705 – Against All Defendants)**

61.    Plaintiffs hereby reallege and incorporate by reference paragraphs 1 through 60,

inclusive, of this complaint as though fully set forth herein.

62.    Defendants accessed Facebook's computer system without authorization and

intentionally initiated the transmission of multiple commercial electronic mail messages through

Plaintiffs' computer system.  Said commercial electronic mail messages contained materially

false and/or materially misleading header information.  The header information was materially

false and/or misleading because it included a technically accurate originating electronic mail

address, domain name, and/or Internet Protocol address purporting to be from a particular

Facebook user, but the access to the email address for purposes of initiating the message was

obtained by means of false or fraudulent pretenses or representations.

63.    Defendants initiated the transmission of a commercial electronic mail message

with actual knowledge, or knowledge fairly implied on the basis of objective circumstances, that

the subject heading of their email solicitations to Facebook users would be likely to mislead a

OHS West:260241014.1                                    - 16 -

1  recipient, acting reasonably under the circumstances, about a material fact regarding the contents

2  or subject matter of the message because the message did not indicate that Defendants sent the

3  email, that the email was an advertisement to join www.connectu.com, or that the email was not

4  initiated by the sender from whom it appeared to be initiated.

5        64.    On information and belief, Defendants initiated commercial electronic mail

6  messages that did not contain a functioning return electronic mail address (*e.g.*,

7  god@harvard.edu, jstarr@georgetown.edu, jstarr@amherst.edu, and jstarr@dartmouth.edu) or

8  other Internet-based mechanism, to provide the recipient to submit, in a manner specified in the

9  message, a reply electronic mail message or other form of Internet-based communication

10  requesting not to receive future commercial electronic mail messages from ConnectU,

11  Messrs. Winklevoss and/or Narendra at the electronic mail address where the message was

12  received.

13        65.    ConnectU, Messrs. Winklevoss and Narendra promoted, or allowed the promotion

14  of www.connectu.com in a commercial electronic mail message, the transmission of which is in

15  violation of 15 U.S.C. § 7704 (a)(1) because they knew or should have known in the ordinary

16  course of their business that www.connectu.com was being promoted in such a message; they

17  received or expected to receive an economic benefit from such promotion; and they took no

18  reasonable action to prevent the transmission.

19        66.    Defendants knowingly and willfully collected electronic mail addresses and other

20  information from www.facebook.com using automated means.

21        67.    At the time of Defendants actions, Plaintiffs' website contained a notice that

22  member electronic mail addresses were not to be given, sold, or otherwise transferred to any other

23  party.

24        68.    Defendants' actions constitute violations of the Federal Can-Spam Act of 2003,

25  15 U.S.C. § 7701 *et. seq.*

26                                    **FIFTH CAUSE OF ACTION**
              **(Violation of 18 U.S.C. § 1030 – Against All Defendants)**

27

28        69.    Plaintiffs hereby reallege and incorporate by reference paragraphs 1 through 68,

1  inclusive, of this complaint as though fully set forth herein.

2       70.     Defendants knowingly and with intent to defraud accessed Plaintiffs' computers

3  without authorization.

4       71.     Defendants' conduct involved interstate communications.

5       72.     Through their unauthorized access, Defendants obtained information of value from

6  Plaintiffs' computers.

7       73.     Defendants' actions were committed for the purpose of commercial advantage.

8       74.     Defendants' actions damaged and caused loss to Plaintiffs.

9       75.     Defendants' actions constitute violations of the Computer Fraud and Abuse Act,

10  18 U.S.C. § 1030.

11                         **PRAYER FOR RELIEF**

12            WHEREFORE, based upon the foregoing, Plaintiffs pray for the following relief:

13       1.     An entry of judgment in favor of Plaintiffs and against all Defendants on all causes

14  of action.

15       2.     Compensatory, consequential, and incidental damages including, without

16  limitation, compensatory damages reasonably incurred by Plaintiffs to verify that each incidence

17  of Defendants' access did not alter, damage, or otherwise harm the integrity of Plaintiffs'

18  computer systems, computer networks, computer programs, or the data stored thereon, pursuant

19  to California Penal Code § 502(e)(1);

20       3.     Exemplary and punitive damages in an amount to exceed $25,000, as provided by

21  law, including exemplary damages under California Civil Code § 3426.3(c) and punitive damages

22  under California Penal Code § 502(e)(4) (exemplary or punitive damages);

23       4.     Economic damages under 18 U.S.C. § 1030 (a)(5)(B)(i);

24       5.     Compensatory damages under 18 U.S.C. § 1030 (a)(4), including the cost of

25  responding to Defendants' actions, conducting a damage assessment, and restoring the system to

26  its condition prior to Defendants' actions, and revenue lost, cost incurred and other consequential

27  damages incurred;

28       6.     Statutory damages under 15 U.S.C. § 7701, *et seq.*, calculated as the number of

OHS West:260241014.1                          - 18 -

1  violations multiplied by up to $250, in an amount not to exceed $2,000,000;

2       7.       Aggravated damages under 15 U.S.C. § 7701, in an amount not to exceed three

3  times the amount of statutory damages available;

4       8.       General damages in an amount to exceed $25,000;

5       9.       An accounting to establish, and an order requiring disgorgement of, the sums by

6  which Defendants have been unjustly enriched, at any time, including that resulting from

7  Defendants' use of Facebook's Information;

8       10.      Pre-judgment and post-judgment interest at the maximum rate allowed by law;

9       11.      Injunctive relief which assures that any future misappropriation of Plaintiffs'

10 commercial proprietary and other information be immediately stopped on the part of Defendants

11 and other appropriate persons and/or entities, irrespective of whether any such Defendant, other

12 person and/or entities is under the control of any (other) Defendant;

13      12.      All injunctive relief allowed under California Penal Code § 502(c) *et seq.*

14      13.      Further equitable relief in the most appropriate form that will have the effect of

15 "undoing" any past and current misappropriations of Facebook's commercial proprietary and

16 other information on the part of Defendants and other appropriate persons and/or entities,

17 irrespective of whether under the control of any of Defendants;

18      14.      Attorneys' fees and costs incurred by virtue of this action, if authorized by law –

19 including attorneys' fees and costs authorized by California Penal Code § 502(e)(2); Civil Code

20 § 1021.5; 15 U.S.C. § 7701 *et seq.*, and

21      15.      Such other relief, in law or equity, as the Court may deem just and appropriate in

22 the circumstances.

23                              **JURY DEMAND**

24      Plaintiff hereby demands a trial by jury for all issues which may be tried by jury.

25

26

27

28

1   Dated: May 30, 2007                    G. HOPKINS GUY, III
                                           I. NEEL CHATTERJEE
2                                          MONTE M. F. COOPER
                                           THERESA A. SUTTON
3                                          YVONNE P. GREER
                                           ORRICK, HERRINGTON & SUTCLIFFE LLP
4

5
                                           /s/ I. Neel Chatterjee /s/
6                                   _____
                                           I. Neel Chatterjee
                                        Attorneys for Plaintiffs
7                            FACEBOOK, INC. and MARK ZUCKERBERG

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SECOND AMENDED COMPLAINT