1   G. HOPKINS GUY, III (State Bar No. 124811)
     hopguy@orrick.com
2   I. NEEL CHATTERJEE (State Bar No. 173985)
     nchatterjee@orrick.com
3   MONTE COOPER (State Bar No. 196746)
     mcooper@orrick.com
4   THERESA A. SUTTON (State Bar No. 211857)
     tsutton@orrick.com
5   YVONNE P. GREER (State Bar No. 214072)
     ygreer@orrick.com
6   ORRICK, HERRINGTON & SUTCLIFFE LLP
     1000 Marsh Road
7   Menlo Park, CA 94025
     Telephone:     650-614-7400
8   Facsimile:      650-614-7401

9   Attorneys for Plaintiffs
     FACEBOOK, INC. and MARK ZUCKERBERG

10

11            UNITED STATES DISTRICT COURT

12         NORTHERN DISTRICT OF CALIFORNIA

13              SAN JOSE DIVISION

14

| | |
|---|---|
| 15   FACEBOOK, INC. and MARK ZUCKERBERG, | Case No. 5:07-CV-01389-RS |
| 16 | **PLAINTIFFS' OPPOSITION TO PACIFIC NORTHWEST SOFTWARE AND WINSTON WILLIAMS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION** |
| 17            Plaintiffs, | |
| 18     v. | |
| 19   CONNECTU, INC. (formerly known as CONNECTU, LLC), CAMERON WINKLEVOSS, TYLER WINKLEVOSS, | Date:        July 11, 2007 |
| 20   DIVYA NARENDRA, PACIFIC NORTHWEST SOFTWARE, INC., | Time:       9:30 A.M. |
| 21   WINSTON WILLIAMS, WAYNE CHANG, and DAVID GUCWA AND DOES 1-25, | Judge:     Honorable Richard Seeborg |
| 22 | |
| 23           Defendants. | |

24                   <u>**PUBLIC-REDACTED VERSION**</u>

25

26

27

28

Dockets.Justia.com

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................................1

II.   FACTS ......................................................................................................................2

    A.    PNS and Williams' Participated in Activities Directed Towards
Californians and Related to This Lawsuit ...........................................................2

        1.    Facebook Background ..............................................................................2

        2.    ConnectU's Initial Attempts to Circumvent Facebook's Security............3

        3.    PNS and Williams Are Hired to Engage in Unlawful Activity ................4

            a.    Importer Harvests Facebook Data .................................................5

            b.    Crawler Is Implemented to Extract Further User Data ..................7

            c.    Crawler and Importer Are Used With a Third Program to
Spam Californians.........................................................................8

            d.    PNS and Williams Target Other California Users.........................8

            e.    PNS and Williams Fully Appreciated the Wrongfulness of
Their Activities and Directed Electronic Attacks at
Facebook Nonetheless ...................................................................8

    B.    PNS Has a California Presence .............................................................................9

        1.    PNS Operates Its Business From California.............................................9

        2.    PNS Has Contracts with Many California Customers ............................10

        3.    PNS Has Entered Into Additional Contracts With California
Businesses..............................................................................................11

        4.    Other Contacts .......................................................................................12

III.  LEGAL DISCUSSION ...........................................................................................12

    A.    Exercising Specific Jurisdiction over PNS and Williams is Warranted ..............13

        1.    Defendants Have Purposefully Directed Their Activities Toward
Facebook In California ...........................................................................13

            a.    PNS and Williams Committed Intentional Acts..........................14

            b.    PNS and Williams Aimed and Caused Harm to Californians.......15

        2.    The Claims Arise Out Of Defendants' Forum-Related Activities ...........17

    B.    PNS And Williams Are Individually Subject to This Court's Jurisdiction ..........17

    C.    The Court May Properly Exercise General Jurisdiction Over PNS.....................18

        1.    PNS Conducts Substantial Business In California  — The
Economic Realities ................................................................................19

    D.    The Exercise of General and Specific Jurisdiction Is Reasonable.......................21

IV.   CONCLUSION .......................................................................................................22

- i -

PLAINTIFFS' **PUBLIC-REDACTED** OPP. TO PNS AND
WILLIAMS' MOT. TO DISMISS FOR LACK OF PERSONAL
JURIS. CASE NO. 5:07-CV-01389-RS

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Amoco Egypt Oil Co.* v. *Leonis Navigation Co.*, 1 F.3d 848.................................................21, 22

*Bancroft & Masters, Inc.* v. *Augusta Nat'l, Inc.*, 223 F.3d 1082 ...............................15, 16, 17, 19

*Bird* v. *Parsons*, 289 F.3d 865 (6th Cir. 2002)
    *citing Compuserve, Inc.* v. *Patterson*, 89 F.3d 1257.....................................................13

*Brainerd* v. *Governors of the Univ. of Alta.*, 873 F.2d 1257.......................................13, 15, 17

*Calder* v. *Jones*, 465 U.S. 783 ..........................................................................13, 14, 16, 18

*Cf. Panavision Int'l, L.P.* v. *Toeppen*, 141 F.3d 1316 .............................................................16

*Colt Studio* v. *Badpuppy Enter.*, 75 F.Supp.2d 1104 .......................................................17, 18

*Davis* v. *Metro Productions, Inc.*, 885 F.2d 515 ...................................................................18

*Dole Foods* v. *Watts*, 303 F.3d 1104.............................................................................14, 15

*Gates Learjet Corp.* v. *Jensen*, 743 F.2d 1325 ....................................................................19

*Glencore Grain Rotterdam B.V.* v. *Shivnath Rai Harnarain Co.*,
    284 F.3d 1114 ................................................................................................................17

*Goldberg* v. *Cameron, et al.*, 482 F.Supp.2d 1136 .................................................................15

*Gordy* v. *Daily News, L.P.*, 95 F.3d 829 .............................................................................17

*Hanson* v. *Denckla*, 357 U.S. 235 ......................................................................................17

*Helicopteros Nacionales de Columbia, S.A.* v. *Hall*, 466 U.S. 408...........................................19

*Hirsch* v. *Blue Cross, Blue Shield of Kansas City*, 800 F.2d 1474 (9th Cir. 1986)
    *cited in Bancroft*, 223 F.3d at 1086......................................................................................19

*Int'l Shoe* v. *Washington*, 326 U.S. 310 ........................................................................13, 19

*Keeton* v. *Hustler Magazine*, 465 U.S. 770 (1984)
    *citing Calder* v. *Jones*, 465 U.S. 783.....................................................................................18

*Lake* v. *Lake*, 817 F.2d 1416 ............................................................................................17

*Ochoa* v. *J.B. Martin & Sons Farms, Inc.*, 287 F.3d 1182....................................................13

*Perkins* v. *Benguet Consolidated Mining Co.*, 342 U.S. 437 ...................................................19

*Schwarzenegger* v. *Fred Martin Motor Co.*, 374 F.3d 797 ...........................................12, 13, 14

*Winery* v. *Graham*, 2007 WL 963252, at 5 .........................................................................18

**TABLE OF AUTHORITIES**
(continued)

Page

**STATE CASES**

*Foster* v. *Mooney Aircraft Corp.*, 68 Cal.App.3d 887 ................................................................19

*Mihlon* v. *Superior Court*, 169 Cal.App.3d 703 ....................................................................18

*Paneno* v. *Centres for Academic Programmes Abroad Ltd.*, 118 Cal.App.4th 1447 (2004)
     *citing Vons Companies, Inc.* v. *Seabest Foods, Inc.*, 14 Cal.4th 434....................................19

*Seagate Tech.* v. *A. J. Kogyo Co.*, 219 Cal.App.3d 696............................................................18

*Taylor-Rush* v. *Multitech Corp.*, 217 Cal.App.3d 103 ................................................................18

**STATE STATUTES**

Cal. Penal Code Section 502 .................................................................................22

## I.    **INTRODUCTION**

Pacific Northwest Software ("PNS") and Winston Williams ("Williams") are subject to the jurisdiction of this court.  While PNS and Williams claim they have little or no contact with California or with the specific acts causing harm to plaintiffs in California, the facts tell a different story.

Under any reasonable interpretation of specific jurisdiction case law, PNS and Williams are subject to the jurisdiction of this court.  Both PNS and Williams targeted Californians when inflicting their harm.  They helped write a computer program called "Facebook Importer" that was created to harvest email addresses from Facebook's California-based website, including its tens of thousands of registered users who were students at California schools.  They even documented the extraction of email addresses from California schools.  Both PNS and Williams hosted the program on their computers. Williams and PNS, along with the other defendants, attempted to hide their activity by selecting randomized proxy servers to attack Facebook.  Some of these servers were based in California.  PNS, Williams, and the other defendants then used the email addresses to spam registered Facebook users (and the registered users of three other major California-based social networks) in California.

PNS is also subject to the general jurisdiction of this Court.  PNS' California-based clients have been a substantial part of PNS' business.  PNS has operated regularly and continuously in California through both an independent contractor and a resident quality assurance director whose staff was also located in California.  PNS has entered into contracts with California companies, including Google and CraigsList, with California choice of venue obligations.  PNS representatives regularly travel to California, contact parties in California, and engage in business in the state.  Finally, PNS has a substantial ownership interest and business relationship with San Francisco-based The Records Portal Company.

Given the substantial role of PNS in the California economy, the intentional targeting of Facebook by PNS and Williams in California, and the subsequent spamming of California residents orchestrated with the assistance of PNS and Williams, jurisdiction should be exercised over these parties.

## II.    FACTS

PNS' and Williams' purposeful activities against Facebook are sufficient to support minimum contacts necessary for specific jurisdiction.  Moreover, when those actions are considered in conjunction with PNS' independent, systematic and regular activities within California, general jurisdiction can also be properly found.

### A.    PNS and Williams' Participated in Activities Directed Towards Californians and Related to This Lawsuit.

#### 1.    Facebook Background

Facebook is a social network website created in February 2004 to link college students together.  Decl. of Monte Cooper In Supp. of Opp'n to Mot. to Dismiss ("Cooper Decl.") Ex. 1 at 119:6-120:20.  One of the first three colleges to operate on the site was Stanford University.  *Id.* Ex. 1 at 132:15-133:14;  Ex. 2.  In June 2004, Zuckerberg relocated Facebook to Silicon Valley, where it eventually incorporated.  *Id.* Ex. 1 at 93:13-94:10, 193:6-11;  Ex. 3.  As of August 9, 2004, Facebook used servers located in California to host the website.  *Id.* Ex. 1 at 165:13-166:4;  Ex. 4.  Facebook, Inc.'s principal place of business has, at all times since at least February 2005, been in Palo Alto.  *Id.* Ex. 1 at 214:23-215:8; Ex. 5.  Facebook's popularity exploded, and by July 3, 2005, the website had 2.8 to 3 million registered users, many of them students at California schools.  *Id.* Ex. 1 at 245:22-246:12; Ex. 6.

2.    **ConnectU's Initial Attempts to Circumvent Facebook's Security**

ConnectU was formed by Cameron Winklevoss, Tyler Winklevoss, and Divya Narendra. *Id*. Ex. 7; Ex. 8 at 1, 6.  In May 2004, ConnectU engaged iMarc LLC to build a website to compete with Facebook.  *Id*. Ex. 9 at 30:21-31:9.  The popularity of Facebook prompted ConnectU's founders to instruct iMarc to "copy Facebook."  *Id*. Ex. 10 at 12.[1]

Once iMarc built the ConnectU website, ConnectU's founders tried to build its user base by acquiring "fast and free" the email accounts of Facebook's registered users, as well as other information, such as course data, that Facebook gathered for its students.  *Id*. Ex. 9 at 67:9-70:6; Ex. 10 at 798;  Ex. 14 at 3865-69.

*Id*. Ex. 9 at 72:17-76:25; Ex. 11 at 24:10-26:25; Ex. 12 at 30:21-31:11; Ex. 13 at 43:16-44:10, 45:9-47:6.  They also engaged friends to surreptitiously harvest email addresses of Facebook users.  *Id*. Ex. 10 at 659.

Realizing that manual efforts to take information was ineffective, ConnectU's founders asked iMarc to develop a software program to gain unauthorized access to the Facebook site and substitute the user's ID "with [other users' ID] numbers to grab people's email addresses."  *Id*. Ex. 10 at 798.  iMarc's software engineers refused to do so because they were concerned the email addresses would be used for unlawful spamming.  *Id*.  Shortly afterward, as iMarc suspected, ConnectU's founders spammed "thousands" of students whose email addresses had been taken from Facebook with invitations to join ConnectU.  *Id*. at 622.  Every one of the invitations used false header information – what iMarc's engineers described as "a bogus 'From' address" – from the fictitious students god@harvard.edu, jstarr@georgetown.edu, jstarr@amherst.edu, and jstarr@dartmouth.edu.  *Id*.

---

[1] Exhibit 10 is a compilation of various emails produced by iMarc LLC.  Because the jurisdictional discovery cites are extensive and many concern confidential information, Facebook has compiled multiple documents from individual productions as the Exhibits attached to the Declaration of Monte Cooper as Exhibits 10 (iMarc), 14 (ConnectU), 18 (David Gucwa),19 (PNS), 20 (Wayne Chang exemplars), and 25-26 (ConnectU by different production).  References to cites in these exhibits are to the Bates Number.  *E.g.*, "Ex. 19, at 2096" refers to the document with the bates-number PNS02096.

1                                                 *Id*. Ex. 14 at 7512-17.

2             **3.**      **PNS and Williams Are Hired to Engage in Unlawful Activity**

3        Because iMarc would not engage in unlawful activity, ConnectU hired Defendants PNS

4 and Chang in late 2004 and early 2005 to develop the program iMarc refused to create. The

5 program was named "Importer", and was both written and implemented well after Facebook had

6 re-located in California and incorporated. Importer was part of a broader effort to expand the

7 ConnectU platform. It was designed to harvest Facebook email addresses for spamming via a

8 system called "Social Butterfly." *See id*. Ex. 9 at 107:2-24; Ex. 15 at 148:20-150:13; Ex. 16 at

9 72:2-73:20, 86:23-88:21; Ex. 17 at 19:14-20:9; Ex. 18 at 22-25 (15:03:25-18:44:27); Ex. 19 at

10 1766-77.                                              *Id*. Ex. 17 at 45:14-

11 49:12, 65:9-69:13, 156:17-157:14, 159:23-16:15. Essentially, Importer was used to access

12 Facebook servers in California and steal California users' email addresses and other profile

13 information from the Facebook website.

14                                         . *Id*. Ex. 19 at 1766-77, 571135; Ex.

15 21 at 239:20-23. Of those, at least five of PNS' employees, engineers and consultants —

16 Defendants Williams, Gucwa, and Chang, as well as Joel Voss and John Taves — actively

17 participated in the development and implementation of the Importer and Social Butterfly

18 programs. *Id*. Ex. 14 at 8392; Ex. 16 at 30:6-31:10, 58:8-60:13, 101:15-103:11; Ex. 18 at 48

19 (11:29:31-11:30:03); Ex. 19 at 15.

20        *Id*. Ex. 14 at 9887, 11073; Ex. 19 at 15, 2096.

21                        [2] *Id*. Ex. 19, at 15. Williams actively participated in every stage of

22 Importer's design and development                 . *Id*. Ex. 9 at 85:22-87:3; Ex. 15

23 at 148:20-151:3; Ex. 22 at Nos. 3, 4; Ex. 23 at No. 17.1.

24

25                           *Id*. Ex. 14 at 6537, 8392; Ex. 18 at 134; Ex. 19 at 842-43,

26 1238.                                      *Id*. Ex. 14 at 9768-69.

27

28    [2] Williams' involvement is detailed in the following section.

1

### a.     Importer Harvests Facebook Data

Importer harvested Facebook user personal information, including email addresses, sent those Facebook users unsolicited emails with false headers, and added the stolen user data to ConnectU's databases. *Id.* Ex. 16 at 101:15-103:11;  Ex. 18 at 22 (15:16:29-15:18-24), 23 (15:19:07-16:07:54); Ex. 19 at 2096.

1  *See id*. Ex. 19 at 2096.

2                      Importer logged into Facebook using a borrowed or

3  falsified user account and password, imported profile and email account information from a

4  registered user, and then employed a "grabber" to "grab email addresses from the friends listed on

5  that account," "send out an invite email" and "add the email to a master database." *Id*. *See also*

6  Ex. 18 at 57 (12:02:53-12:06:49).

7                              *Id*. Ex. 16 at 175:24-177:21.

8

9                                              . *See, e.g. id*. Ex.

10  19 at 310177;  Ex. 26 at 172.

11       PNS and Williams designed the Facebook Importer to avoid detection.  PNS used fake or

12  borrowed login credentials to access the California-based Facebook website, masqueraded as a

13  user web browser; and routed these requests through numerous third party servers. *Id*. Ex. 16 at

14  101:15-104:20; Ex. 18 at 22 (15:16:29-15:18:24), 23 (15:19:07-16:07:54).  Among the fake log-

15  in credentials PNS employed with Importer to deliberately cause "huge alarms at thefacebook"

16  were email accounts associated with California schools, including UCLA and Stanford. *Id*. Ex.

17  18 at 76 (17:34:22-17:57:19).  Williams and PNS also designed Importer to hide its existence and

18  source by sending its requests to Facebook through thousands of randomized servers, known as

19  "proxy servers." *Id*. Ex. 18 at 56 (11:48:39–11:53:44);  Ex. 19 at 2096.

20

21                          *Id*. Ex. 14 at 4299, 6535; Ex. 24.

22

23

24

25                              *Id*. Ex. 19 at 842-43.

26

27

28  *Id*. Ex. 14 at 4243.

1                 **b.**      **<u>Crawler Is Implemented to Extract Further User Data</u>**

2       *Id.* Ex. 19 at 2096.

3 Crawler retrieved Facebook user ids and then grabbed the profile information for each id in order

4 to import email addresses associated with the user's "friends."  *Id.* Ex. 18 at 75 (16:44:12–

5 17:02:47).

6       *Id.* Ex. 19 at 1768-69.

8       *Id.* at 1769.

10       *See*, *e.g.*, *id.* Ex. 14 at 10359, 8392, 8657;  Ex. 19 at 1767-69, 310455, 310177-79,

11 310185-86.   The database log generated on PNS' computers by the importer/crawler code

12 establishes this fact.

14       [3]

17 Cooper Decl. Ex. 19 at 310177 (log generated by the code in Cooper Decl. Ex. 19 at 281469-73).

19       *Id.*

21 *Id.*

24       *Id.* Ex. 1 at 244:5-19.

27       *Id.* Ex. 19 at

---

28 [3] Claremont-McKenna College is located outside Los Angeles, California.

1  281472-73, 310177.

2      *Id.* at 310177.

3          c.      **Crawler and Importer Are Used With a Third Program to Spam Californians**

4

5      Importer and Crawler were also used by a third tool created by PNS and Williams

branded "Social Butterfly."  Using the imported email addresses from Facebook that had been

6

grabbed and scanned, PNS and Williams then programmed Social Butterfly to send invitations to

7

Facebook's registered users to join ConnectU.  *Id.* Ex. 15 at 148:20-150:16;  Ex. 16 at 124:19-

8

127:25; Ex. 19 at 2096; Ex. 25 at 1380-83; Ex. 26 at 2972.

9

10                                                          *Id.* Ex. 1 at

11  241:8-242:24;  Ex. 26 at 172.

12                                          *Id.  See also* Ex. 19 at 310177.

13

14  *Id.* Ex. 1 at 241:8-244:1.

15          d.      **PNS and Williams Target Other California Users**

16

17

18                                                          *Id.* Ex. 16

19  at 93:25-95:1, 210:22-212:15;  Ex. 19 at 2096.  This permitted PNS, Williams and the other

20  Defendants to reach even more California residents and citizens.

21          e.      **PNS and Williams Fully Appreciated the Wrongfulness of Their Activities and Directed Electronic Attacks at Facebook Nonetheless**

22

23

24  *Id.* Ex. 10 at 798; Ex. 14 at 4243;  Ex. 19 at 15, 842-43.  From the beginning, they acknowledged

25  that they would have to play "cat and mouse" because, "once thefacebook" caught on, Facebook

26  would "shut out [their] script."  *Id.*  Ex. 18 at 23 (16:08:06–16:09:10).

27                                                          *Id.* Ex. 1 at 241:8-

28

1  244:1;  Ex. 19 at 842-43, 281472-73, 310177.

2                                                              *Id.* Ex. 19 at 1767.

3

4                                                                          *Id.*

5

6                                                        *Id.*

7          *Id.* Ex 16 at 58:3-18;  Ex. 19 at 571138 ("                              ").

8          In May, 2005, reflecting on the combined efforts of Williams, PNS, the development

9  team, and ConnectU,

10

11                                                              *Id.* Ex. 19 at 15

12 (emphasis added).

13

14                                                                                          .

15 *Id.* Ex. 26 at 2972.

16         **B.     PNS Has a California Presence**

17         Beyond the repeated and extensive contacts PNS developed with California, in general,

18 and Facebook, in particular, through its development and hosting of Importer and Social Butterfly

19 and the millions of files it downloaded and millions of invitations it sent, PNS also has

20 substantial, continuous and systematic contacts with the state via other business.

21         In support of its Motion to Dismiss, Taves wrote that PNS does not "own" any office

22 space in California.  Taves Decl., ¶¶ 4-5.  PNS' website boasts, however, that it "provides virtual

23 development teams to many companies," including in California.  Cooper Decl. Ex. 27.  As set

24 forth below, PNS' presence – virtual or otherwise -- in California is substantial and continuous.

25         **1.     PNS Operates Its Business From California**

26                                                                          *Id.* Ex. 21

27 at 249:24-250:4, 251:16-22.                                              *Id.* at

28 233:17-19.

- 9 -

1

2 *Id*. at 249:24-

3 250:2, 233:17-23, 251:12-15, 228:11-229:1, 250:20-22.

4 *Id*. at 251:25-252:13.

5

6 *Id*. at 246:6-20.

7 *Id*. at 247:11-15.

8 *Id*. at 234:1-4, 249:3-5.  Deacon's staff included, at least,

9 David Perkins, Fred Pampo, Joel Stair, and Sam Oh, all of whom are California residents.  *Id*. Ex.

10 19 at 386;  Ex. 21 at 255:16-256:2;  Ex. 22 at No. 2.

11 *Id*. Ex. 19 at 386.

12 *Id*. at 1149.

13

14 *Id*. Ex. 21 at 248:16-25.

15 **2.    PNS Has Contracts with Many California Customers**

16 PNS has several California-based clients, which have generated at least $600,000 for PNS

17 in the last two years.  Cooper Decl. Ex. 21 at 306:24-307:1;  Ex. 22 at No. 2.  PNS' California-

18 based income amounts to approximately 7.5% of the total revenue generated by PNS since its

19 inception, and approximately 33% of its average annual gross revenue.[4]  Since 2005, PNS has had

20 relationships with the following California companies: Southern California's Chula Vista

21 Elementary School District (developing 50 websites in 43 district schools for $64,449) (*id*. Ex. 19

22 at 400;  Ex. 21 at 288:3-7;  Ex. 22 at No. 2;  Ex. 30); Los Angeles' Application Science and

23 Technology (AST) (developing website for $103,646) (*id*. Ex. 19 at 387; Ex. 22 at No. 2); San

24 _____

[4] In his declaration, Taves suggested that only 2% of PNS' revenue could be attributed to PNS'

25 California business.  Taves Decl., ¶ 11.  In PNS' deposition, Taves testified

26 Cooper Decl. Ex. 21 at 237:18-238:13, 258:5-20, 270:7-271:7.  This is not the first time

27 false factual statements have been made in this case with respect to jurisdiction.  At the case management conference, Facebook will discuss a more serious and alarming situation with other

28 defendants related to a jurisdictional challenge in this case which will likely give rise to a motion for sanctions.

- 10 -

Diego's Wireless Knowledge, Inc. (website development services for $200,000) (*id*. Ex. 21 at

305:22-306:2, 306:24-307:1)[5]; Examkrackers (website development for at least $83,270) (*id*. Ex.

22 at No. 2;  Ex. 31); Know-the-Course(website development for $30,500) (*id*. Ex. 22 at No. 2;

Ex. 32); City Ticket Exchange, located in California (website development for $37,000) (*id*. Ex.

22 at No. 2;  Ex. 33); Nomad Cows ($12,000 for services), Michele Miller ($3,375 for services),

Chadstar ($47,427 for services), and New Country Financial ($12,150 for services) (*id*. Ex. 22 at

Nos. 1-2).

     In addition to the extensive California client list above, one company is worthy of

particular note.

          *Id*. Ex. 19 at 398.

     *Id*.

                                         *Id*.

Ex. 19 at 398;  Ex. 21 at 266:25-5.  Mike Hayner, a PNS principal, is a member of Records

Portal's management team (*id*. Ex. 28), and PNS is the administrative contact for Records Portal's

domain registration.  *Id*. Ex. 19 at 398;  Ex. 29.  Records Portal was not listed in PNS'

interrogatory responses as a California-based contact.  *Id*. Ex. 22 at Nos. 1, 2.

        **3.**     **PNS Has Entered Into Additional Contracts With California Businesses**

     PNS entered into at least one contract each with Google and craigslist.com, both

California-based companies.  *Id*. Ex. 21 at 249:7-13;  Ex. 34.

     *Id*. Ex. 19, at 768;  Ex. 21 at 277:4-17.  An agreement is required in order to post

advertisements on Google's website.  *Id*. Ex. 34.

                     *Id*. Ex. 19 at 768.

        *Id*. Ex. 21 at 288:10-18.  In order to use CraigsList, PNS was

required to agree to CraigsList's Terms of Use, which are governed by California law.  *Id*. Ex. 35.

---

[5] PNS did not include Wireless Knowledge in its interrogatory response as a California contact. When questioned about this omission, Taves stated he made no effort to consult with his colleagues or review PNS' records to determine if its interrogatory responses were complete and accurate.  Cooper Decl. Ex. 21 at 303:13-307:21.

1

4.    **Other Contacts**

2

PNS routinely engaged in business in California.

3

*Id*. Ex. 19 at 1848.  That

4

project, if won, would have earned PNS upwards of $140,000.  PNS currently has at least one

5

other potential California client, Shapely Shadow (from which it already has collected at least

6

$1,440).  *Id*. Ex. 21 at 257:12-14;  Ex. 22 at No. 2.

7

*Id*.

8

Exs. 19 at 1766-77, 1768.

9

*See*, *e.g.*, *id.* Ex. 19 at 15;  Ex. 26

10

at 172.

11

12

13

*Id*. Ex. 26 at 172.

14

*Id*. Ex. 19 at 388.

15

**III.    LEGAL DISCUSSION**

16

The current proceedings are based on written materials.  When a motion to dismiss for

17

personal jurisdiction is based on written materials rather than on an evidentiary hearing, the

18

plaintiff need only make a prima facie showing of jurisdictional facts.  *Schwarzenegger v. Fred*

19

*Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  In such cases, the Court need only inquire

20

into whether the plaintiff's pleadings and affidavits make a prima facie showing of personal

21

jurisdiction.  *Id*.  Although the plaintiff cannot rest on the bare allegations of the complaint,

22

uncontroverted allegations in the complaint must be taken as true.  *Id*.

23

Significantly, conflicts between the parties over statements contained in affidavits must be

24

resolved in the plaintiff's favor.  *Id*.  Thus, virtually all conflicts between statements in Taves'

25

and Williams' Declarations, and the statements made from the documents attached to the

26

Declaration of Monte Cooper referenced herein, must be resolved in favor of Facebook.

27

A.    **Exercising Specific Jurisdiction over PNS and Williams is Warranted**

28

The Ninth Circuit has a three-part standard for finding specific jurisdiction: 1) that the

- 12 -

1    out-of-state defendant purposefully directed its activities toward residents of the forum state or

2    otherwise established contacts with the forum state; 2) that the plaintiff's cause of action arises

3    out of or from the defendant's forum-related contacts; and 3) that the forum's exercise of personal

4    jurisdiction in the particular case is reasonable. *Brainerd v. Governors of the Univ. of Alta.*, 873

5    F.2d 1257, 1259 (9th Cir. 1989).[6] These standards are to be applied "flexibly." *See Ochoa v. J.B.*

6    *Martin & Sons Farms*, *Inc.*, 287 F.3d 1182, 1188 n.2 (9th Cir. 2002). When applying this

7    standard to a corporation, such as PNS, contacts can be assessed according to the contacts of its

8    agents and employees. *Int'l Shoe v. Washington*, 326 U.S. 310, 316-317 (1945). If the acts of

9    PNS' agents and employees are within the course and scope of their employment, their acts will

10   be attributed to the corporation for jurisdictional purposes. *See id*.

11         Defendants incorrectly argue that to prove jurisdiction Facebook must show that they

12   "purposefully availed themselves of the benefits and protections of California law." Mot. to

13   Dismiss at 5. Rather, courts exercise jurisdiction over defendants in tort actions where

14   defendants' act has an effect in the forum state, even if the act itself takes place outside state

15   boundaries. *Schwarzenegger*, 374 F.3d at 802-03.

### 1.    Defendants Have Purposefully Directed Their Activities Toward Facebook In California

"A showing that a defendant purposefully directed his conduct toward a forum state …

usually consists of evidence of the defendant's actions outside the forum state that are directed at

the forum. . . ." *Schwarzenegger*, 374 F.3d at 803. "Purposeful direction" is established by (1)

Defendants' commission of an intentional act; (2) Defendants' express aiming at the forum state;

and (3) Defendants' causing harm that they know is likely to be suffered in California.

*Id*., *citing Calder v. Jones*, 465 U.S. 783 (1984). Defendants' acts meet all three parts.

### a.    PNS and Williams Committed Intentional Acts

Defendants intentionally tried to harvest email addresses of California college students

---

[6] When a defendant purposefully directs activities into the forum, personal jurisdiction is presumed to be reasonable. *Brainerd*, 873 F.2d at 1260, *citing Burger King*, 471 U.S. at 477; *see also Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002) *citing Compuserve*, *Inc. v. Patterson*, 89 F.3d 1257, 1268 (6th Cir. 1996).

from a California based website service using (at times) California proxy servers, and then sent them unsolicited email. *See Schwarzenegger*, 374 F.3d at 806. Defendants incorrectly argue their actions were random, fortuitous or attenuated contacts over which they had no control. *See Calder*, 465 U.S. at 789. To be sure, PNS and Williams "are not charged with mere untargeted negligence. Rather, their intentional, and … tortious, actions were expressly aimed at California" as well as elsewhere *Id. See, e.g.*, Cooper Decl. Ex. 10 at 798; Ex. 14 at 4243; Ex. 18 at 22 (15:16:29-15:18-24), 23 (15:19:07-16:07:54); Ex. 19 at 15, 842, 2096, 310177; Ex. 26 at 172. Specifically, Facebook alleges that Defendants (1) provided a means for accessing Facebook's computers (FAC ¶¶ 17, 29); engaged in unauthorized access of the Facebook website (FAC ¶¶ 18, 19, 27); (3) took extensive amounts of data from Facebook's computers (FAC ¶¶ 18, 28, 34, 53); (4) used the pilfered data (FAC ¶¶ 22, 29, 34); and (5) sent unsolicited commercial email to California residents (FAC ¶¶ 22, 43, 52). These allegations alone are sufficient to meet the first prong of the effects test. *Dole Foods v. Watts*, 303 F.3d 1104, 1111-12 (9th Cir. 2002) (holding that allegations of intentional acts are sufficient to satisfy first prong of the *Calder* test).

In addition, jurisdictional discovery has shown that PNS and Williams designed and implemented the software utility to access the Facebook website without authorization and to steal email account information from Facebook while Facebook was operating in California. Cooper Decl. Ex. 14 at 10359, 8392; Ex. 16 at 59:3-18; Ex. 19 at 2096, 310455. Such access was gained by repeated and deliberate circumvention of Facebook's security mechanisms. *Id*. Ex. 14 at 4243, 11039; Ex. 16 at 101:15-104:20; Ex. 18 at 22 (15:16:29-15:18-24), Ex. 23 (15:19:07-16:07:54), 56 (11:48:39–11:53:44).


*Id*. Ex. 1 at 244:5-19; Ex. 10 at 798; Ex. 14 at 4243; Ex. 18 at 22 (15:16:29-15:18-24), 23 (15:19:07-16:07:54); Ex. 19 at 15, 842, 2096, 310177; Ex. 26 at 172.


*Id*. Ex. 19 at 1768-69.


*Id*. Ex. 1 at 241:8-242:25; Ex. 15 at 148:20-

- 14 -

1   150:16;  Ex. 16 at 124:19-127:25; Ex. 19 at 2096, 310177;  Ex. 25 at 1380-83;  Ex. 26 at 172,

2   2972.

3                   **b.    PNS and Williams Aimed and Caused Harm to Californians.**

4        PNS and Williams expressly aimed their conduct at Facebook in California and caused the

5   intended harm.  Courts find express aiming (and therefore specific jurisdiction) "where the

6   defendants knew that their actions would have a potentially devastating effect on the plaintiff,

7   who resided in California, and that the brunt of the injury caused by their actions would be felt in

8   California." *Brainerd*, 873 F.2d at 1259, *citing Calder*, 465 U.S. at 790.  *See also Bancroft &*

9   *Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000).

10       PNS and Williams' actions were expressly aimed at Facebook, which was operating in

11  California, and were even partially generated from California servers.  *See Goldberg v. Cameron,*

12  *et al.,* 482 F. Supp. 2d 1136, 1145-46 (N.D. Cal. 2007) (Whyte, J.) (express aiming requirement

13  satisfied by defendants' intentional scheme against plaintiff, designed to have "worldwide" effect,

14  including in California, even though defendants did not know that the plaintiff was within the

15  specific district).  PNS, operating through its contractors and employees, knowingly facilitated

16  repeated attacks on Facebook's California-based servers, as well as thefts of email account

17  information and other data from those computers.  *See* Section II(A), *supra*.

18

19

20

21                                                                      Cooper

22  Decl. Ex. 14 at 4243; Ex. 17 at 104:9-105:18;  Ex. 19 at 15, 842-43, 1767.

23

24                                              *Id.* Ex. 19 at 1767.  Rather than

25  abandoning ConnectU's initiative, PNS' CEO

26                                     called it "cool" when he learned the program "imports

27  profiles from thefacebook, friendster, etc. into your CU account."  *Id.*  Exs. 14 at 6537, 8392;  18

28  at 134 (19:08:35-19:09:23); 19 at 842, 1238.

1    The evidence also demonstrates that PNS and Williams expressly targeted Facebook's

2    California users in early-to-mid 2005, providing a separate basis for foreseeability. *See*, *e.g.*,

3    Cooper Decl. Exs. 19 at 1767-69, 310455, 310185-86, 310177-79; 14 at 10359, 8392, 8657. The

4    very fact that PNS' CEO, whose company offers software and website development, was told the

5    importer program attacked not merely one major California-based social network (*i.e.* Facebook),

6    but another well-known one as well (Friendster) also located in the heart of Silicon Valley,

7    reflects that PNS and Williams at all times knew or should have known that their actions would

8    have a substantial and profound impact in California generally, and on Facebook specifically. *Id.*

9    Ex. 18 at 134 (19:08:35-19:09:23). *Cf. Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1321

10   (9th Cir. 1998) (purposeful availment under the "effects doctrine" of *Calder* was satisfied because

11   Defendant should have known that Panavision, a Delaware partnership in the movie industry who

12   had its principal place of business in California, would be particularly harmed where "the heart of

13   the theatrical motion picture and television industry is located"). Like the plaintiff in *Panavision*,

14   Facebook's principal place of business at the time of PNS' and Williams attacks was in Palo Alto,

15   California, in the heart of Silicon Valley, the nation's leading technology center.

16   The harm to Facebook was thus even greater than in other locations, given the nature of

17   its' business. Indeed, further substantiating such harmful effects, the evidence adduced above

18   demonstrates that registered users of Facebook at California schools were targeted, and that their

19   California email addresses were harvested, sometimes using false log-in information identified by

20   California universities. *See* Cooper Decl. Ex. 1 at 241:8-242:24; Ex. 18 at 76 (17:34:22-

21   17:57:19); Ex. 19 at 281469-73, 310177; Ex. 26 at 172.

22

23                                                                       *Id.* Ex. 26 at 2972.

24   Other courts have found "express aiming" with far fewer intentional acts. For example,

25   the *Bancroft* court exercised specific jurisdiction over a defendant who sent a letter to Virginia

26   that had effects in California because it individually targeted — and was "intended to affect" — a

27   California corporation. *Bancroft*, 223 F.3d at 1087-88. Similarly, the *Brainerd* court found that

28   even though the defendants had not initiated telephone calls to the plaintiff, the statements they

- 16 -

1    made during the conversations were "purposefully directed … into the forum," therefore making

2    the exercise of personal jurisdiction reasonable.  *Brainerd*, 873 F.2d at 1260; *see also Gordy v.*

3    *Daily News, L.P.*, 95 F.3d 829, 833 (9th Cir. 1996) (holding that specific jurisdiction existed in

4    light of evidence of 'targeting' of the plaintiff, who was a forum resident); *Lake v. Lake*, 817 F.2d

5    1416, 1422-23 (9th Cir. 1987) (holding that specific jurisdiction existed where defendant

6    performed foreign acts for the purpose of having their consequences felt in the forum state).

7    Here, ConnectU aimed its activities at virtually all 2.8 to 3 million of Facebook's registered users.

8                    **2.    The Claims Arise Out Of Defendants' Forum-Related Activities.**

9            A claim "arises out of" activity if injury to the plaintiff would not have occurred "but for"

10    the defendant's forum-related activities. *Glencore Grain Rotterdam B.V. v. Shivnath Rai*

11    *Harnarain Co.*, 284 F.3d 1114, 1123 (9th Cir. 2002) ("court exercises specific jurisdiction where

12    the cause of action arises out of or has a substantial connection to the defendant's contacts with

13    the forum"), *citing Hanson v. Denckla*, 357 U.S. 235, 251 (1958).  Defendants' actions, which

14    were directed at Facebook in California, instituted to affect Facebook's California users, and

15    executed by taking advantage of servers in California, caused the complained of harm.

16                    **B.    PNS And Williams Are Individually Subject To This Court's Jurisdiction.**

17            PNS and Williams incorrectly argue that because ConnectU hired PNS, and Williams was

18    a PNS employee taking direction from ConnectU, neither can be held to have purposefully

19    availed themselves of California's benefits.  Mot. to Dismiss at 5, 7.  ConnectU cites *Colt Studio*

20    *v. Badpuppy Enter.*, 75 F. Supp.2d 1104, 1111 (C.D. Cal. 1999), to support this faulty assertion.

21    *Colt* and other relevant authority actually belie PNS' and Williams' arguments.  *Colt* simply

22    recognizes that under California law a corporate officer or director, as opposed to an employee,

23    cannot be subject to jurisdiction solely because of official actions taken on behalf of the

24    corporation.  However, as the very California authority cited by *Colt* further recognizes,

25    "California  case law concerning personal jurisdiction over employees of foreign corporations

26    does not expressly state the rule that employees are to be treated differently than officers and

27    directors, but it is clear that employees have not received the same 'official capacity' immunity

28    that officers and directors receive."  *Mihlon v. Superior Court*, 169 Cal. App. 3d 703, 713 (1985).

1  Neither PNS nor Williams were officers or directors of ConnectU, nor was Williams an officer or

2  director of PNS.  They are not "shielded," let alone "doubly shielded," from personal jurisdiction

3  by virtue of their acts.[7]

4          Indeed, the United States Supreme Court has totally "reject[ed] the suggestion that

5  employees who act in their official capacity are somehow shielded from suit in their individual

6  capacity." *Keeton v. Hustler Magazine*, 465 U.S. 770, 781 n.13 (1984), *citing Calder v. Jones*,

7  465 U.S. 783, 790 (1984); *see also Davis v. Metro Productions, Inc.*, 885 F.2d 515, 521 (9th Cir.

8  1989).  In fact, the Supreme Court in *Calder* actually found jurisdiction over employees who were

9  "primary participants in an alleged wrongdoing intentionally directed at a California resident."

10  *Calder*, 465 U.S. at 790; *see also Winery v. Graham*, 2007 WL 963252, at *5 (N.D. Cal. 2007)

11  (citing *Calder* at 790).  As a result, the assertion of personal jurisdiction based on the primary

12  participant theory is appropriate where the individual had "control of, and direct participation in

13  the alleged activities." *Winery*, 2007 WL 963252, at *5 (citing *Wolf Designs, Inc. v. DHR Co.*,

14  322 F. Supp. 2d 1065, 1072 (C.D. Cal. 2004)).  Like the petitioners in *Calder*, PNS and Williams

15  were primary participants and should be held accountable in California for their actions.

16          For the same reason, defendants' cases relying upon alter ego analysis are irrelevant.  Mot.

17  to Dismiss, 7:17, 7:27-28.  PNS and Williams actively participated in the scheme to steal email

18  addresses from a California company, including email addresses of Californians, and then

19  proceed to use the email addresses.  PNS and Williams are individually liable for their

20  participation in the wrongful acts alleged in this action.

21      **C.      The Court May Properly Exercise General Jurisdiction Over PNS**

22          PNS contends that "PNS has no appreciable contacts with California."  Mot. to Dismiss at

23  5:12-13.  Given the totality of the contacts between PNS and California residents just by virtue of

24  PNS development of Importer and Social Butterfly, and contrary to the inaccurate declaration of

25  _____

26  [7] Moreover, other courts in California have subsequently recognized that even the fiduciary shield
    argument of *Mihlon* and its progeny such as *Colt* is *dicta*, and in fact an inaccurate statement
    concerning personal jurisdiction.  *Seagate Tech. v. A. J. Kogyo Co.*, 219 Cal. App. 3d 696, 701

27  (1990) ("Our review of the relevant legal principles convinces us that this dictum in *Mihlon* is
    wrong"); *Taylor-Rush v. Multitech Corp.*, 217 Cal. App. 3d 103, 116-117 (1990) (holding that

28  some corporate officers/directors were subject to personal jurisdiction, and criticizing *Mihlon*).

1    John Taves, general jurisdiction over PNS is appropriate.  Yet when PNS' other contacts are

2    considered, the evidence of general jurisdiction is overwhelming.

3        General jurisdiction exists over a defendant where it has engaged in "continuous and

4    systematic general business contacts" in the forum. *Helicopteros Nacionales de Columbia, S.A. v.*

5    *Hall*, 466 U.S. 408, 416 (1984) (*citing Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437

6    (1952)).  In considering whether it has general jurisdiction over a defendant, the court should look

7    at all of the defendant's activities that impact the state, including whether the defendant makes

8    sales, solicits or engages in business in the state, serves the state's markets, designates an agent

9    for service of process, holds a license, or is incorporated there. *See Hirsch v. Blue Cross*, *Blue*

10   *Shield of Kansas City*, 800 F.2d 1474, 1478 (9th Cir. 1986), *cited in Bancroft*, 223 F.3d at 1086.

11   Indeed, "'[p]resence' in the state … has never been doubted when the activities of the corporation

12   there have not only been continuous and systematic, but also give rise to the liabilities sued on,

13   even though no consent to be sued or authorization to an agent to accept service of process has

14   been given." *Int'l Shoe Co*, 326 U.S. at 317.

15       1.    **PNS Conducts Substantial Business In California  — The Economic**
             **Realities**

16

17       In analyzing whether PNS' contacts are "substantial" or "systematic and continuous," the

18   Court must determine whether the "contacts constitute sufficient activity in [California] to

19   conclude that the defendants 'may in fact be said already to be 'present' [in California].'" *Gates*

20   *Learjet Corp. v. Jensen*, 743 F.2d 1325, 1331 (9th Cir. 1984).  In examining business contacts

21   with the forum state a court must "focus upon the 'economic reality' of defendants' activities

22   rather than a mechanical checklist." *Id*.  Even indirect contact with forum residents is sufficient

23   where the defendant engages in economic activity that generates gross income. *Foster v. Mooney*

24   *Aircraft Corp.*, 68 Cal. App. 3d 887, 892-93 (1977); *see also Paneno v. Centres for Academic*

25   *Programmes Abroad Ltd.*, 118 Cal. App. 4th 1447, 1455 (2004), *citing Vons Companies, Inc. v.*

26   *Seabest Foods, Inc.*, 14 Cal.4th 434, 446 (1996).

27       PNS has substantially exploited California businesses and residents for its own economic

28   gain.  Though Taves contends in his declaration that "PNS does not own, lease or maintain an

office, residence or place of business in California, and has not owned, leased or maintained an office, or place of business in California," the evidence demonstrates otherwise.[8]  Taves Decl. ¶ 4. PNS has now, or has had in the past, several California "virtual offices."  *See* Section II.B.1, *supra*.

> *Id*.

> *Id*.; *see also* Cooper Decl. Ex. 21 at 251:12-13.  PNS has engaged at least five other contractors in the last few years who lived and worked in California, including Greg Deacon, Sam Oh, Joel Stair, Fred Pampo, and David Perkins.  *See* Section II.B.1, *supra*.  PNS also has routinely purchased equipment (such as computers) for its contractors to use when performing work on its behalf.  *Id*.  Based on these facts, there is no merit to PNS' assertion that it does not maintain an office in California.

Taves also incorrectly concluded that "PNS has not and does not derive substantial revenue from goods used or consumed in California or services rendered in California."  Taves Decl. ¶ 8.

Cooper Decl. Ex. 21 at 237:18-238:13.  In fact, PNS has generated more than 7.5% of its total gross revenue of all time (or 33% of its average annual revenue) from its contacts with California.  *Id*. Ex. 21 at 306:24-307:1;  Ex. 22 at No. 3.

> *Id*. Exs. 19 at 1845-56; Ex. 21 at 257:12-14.

Taves also declared that "PNS has signed perhaps one or fewer contracts regarding a California entity."  Taves Decl. ¶ 9.  The fact that PNS included the word "signed" to limit its contracts with California is an indication that this statement is less than candid.  In fact, PNS generally enters into contracts with all of its clients, but these contracts tend to be handshake agreements rather than "signed" documents.  *See* Section II.B.2, *supra*.  In truth, PNS has at least 11 California-based customers, perhaps many more than that, and PNS admitted that it may enter

---

[8] PNS claims that one of the benefits of hiring is that it does not maintain offices anywhere — PNS operates "virtual" offices.  Cooper Decl., Ex. 27.  These virtual offices amount to a virtual presence in California, if not an actual one.

1  into more than one agreement with a customer (*e.g.*, AST).  *Id.*

2      PNS also relies on California-based companies, such as Google and CraigsList, to

3  advertise its services and employment needs.  *See* Section II.B.3. and 4., *supra*.  In order to

4  advertise on these sites, PNS must enter into contracts with these companies — contracts that are

5  governed by California law.  *Id.*  Such ongoing relationships with California companies,

6  advertisers and search engines indisputably generate revenue for PNS.

7                                                                        *See*

8  Section II.B.2(a), *supra*.  PNS is The Records Portal Company's "engineering team" (*i.e.*,

9  Records Portal's exclusive software development company), PNS partner Hayner is a member of

10 Records Portal's management team, and PNS is the administrative contact for Records Portal's

11 domain registration.  *Id.*

12      Cooper Decl. Ex. 19 at 1215.

13      The evidence thus overwhelmingly supports the "economic reality" that PNS does

14 substantial business with California businesses, and has a substantial presence in California.  The

15 exercise of personal jurisdiction thus is proper.

16    **D.    The Exercise of General and Specific Jurisdiction Is Reasonable[9]**

17      Determining reasonableness of jurisdiction is based upon seven factors: (1) the extent of

18 purposeful interjection; (2) the burden on the defendant to defend the suit in the chosen forum; (3)

19 the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in

20 the dispute; (5) the most efficient forum for judicial resolution of the dispute; (6) the importance

21 of the chosen forum to the plaintiff's interest in convenient and effective relief; (7) and the

22 existence of an alternative forum.  *Amoco Egypt Oil Co. v. Leonis Navigation Co.*, 1 F.3d 848,

23 851-52 (9th Cir. 1993).

24      Taking these factors together, the exercise of jurisdiction is reasonable.  The torts were

25 inflicted against an entity operating in California involving California users and was effectuated,

26 in part, from California.  "The site where the injury occurred and where evidence is located

27

28 [9] As set forth above, since the first two prongs of specific jurisdiction are met, reasonableness is
presumed for specific jurisdiction.

1   usually will be the most efficient forum." *Amoco*, 1 F.3d at 852, *citing Pacific Atl. Trading Co. v.*

2   *M/V Main Express*, 758 F.2d 1325, 1331 (9th Cir. 1985). PNS and Williams purposefully

3   interjected themselves into California repeatedly by attempting to acquire the 2.8 to 3 million

4   email accounts available from Facebook's California-based website, and then spamming the

5   registered users. California has a strong interest in preventing the types of harm alleged in the

6   complaint and borne out by the jurisdictional evidence. Defendants bear little or no burden by

7   defending themselves in California, especially given the fact they already have a substantial

8   presence in the state. Indeed, they are represented by California counsel. Because of the

9   substantial issues associated with the how the attacks on Facebook occurred, California easily is

10  the most efficient forum for judicial resolution. In fact, there may not be a true alternative forum,

11  given the existence of state claims based on computer security laws unique to California, such as

12  the claim for violation of Cal. Penal Code Section 502(c). This case will also move forward

13  against other defendants already before this Court, making this Court the most efficient forum for

14  resolution, and the forum best placed to provide effective and convenient relief.

15  **IV.    <u>CONCLUSION</u>**

16      For these reasons, both general and specific jurisdiction exists over PNS and Williams.

17  Defendants' motion to dismiss should be denied.

18

19  Dated: June 25, 2007                    ORRICK, HERRINGTON & SUTCLIFFE LLP

20

21                                          /s/ Monte M.F. Cooper /s/
                                    _____
22                                          Monte M.F. Cooper
                                            Attorneys for Plaintiff
23                                          THE FACEBOOK, INC.

24

25

26

27

28

1

## CERTIFICATE OF SERVICE

2

    I hereby certify that this document(s) filed through the ECF system will be sent

3

electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)
and paper copies will be sent to those indicated as non registered participants on June 25, 2007.

4

Dated:  June 25, 2007.                    Respectfully submitted,

5

                                        /s/ Monte M.F. Cooper /s/

6

                                        Monte M.F. Cooper

7

OHS West:260258393.1

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' **PUBLIC-REDACTED** OPP. TO PNS AND
WILLIAMS' MOT. TO DISMISS FOR LACK OF PERSONAL
JURIS. CASE NO.  5:07-CV-01389-RS