# EXHIBIT 4

Dockets.Justia.com

08/09/04    12:12 FAX 6505137905          EQUINIX                                    ⧉016
Aug-08-04    01:52pm    From-                                    T-372  P.018/024  F-407

# *equinix*

## MASTER SERVICE AGREEMENT

This Master Service Agreement ("Agreement") is entered into on _____ 20___ ("MSA Effective Date") (To be completed by Equinix after receipt) by and between Equinix Operating Co., Inc. ("Equinix") and the undersigned customer ("Customer") and includes the following exhibits:

   a.  Exhibit A – Confidentiality Provisions; and

   b.  Exhibit B – Sublicensing Provisions.

Capitalized terms used herein but not otherwise defined will have the meaning ascribed to them in Section 10.

### 1.  Services.

Subject to the terms and conditions set forth in this Agreement, Equinix will provide the Services to Customer.

### 2.  Ordering.

a.  Customer may request Services during the Term by (i) executing a Sales Order (ii) placing an Online Order, or (iii) placing a Phone Order, Each Order, which will only be effective when accepted by Equinix, will be governed by the terms and conditions of this Agreement.

b.  Equinix will provide Customer with an account and password to access the Customer Care Website. Customer is responsible for maintaining the confidentiality of its account and password and for restricting and granting access thereto. Customer is responsible and liable for all activities that occur under Customer's account (including all payments owed for any Orders that are placed under Customer's account), regardless of whether such activities are conducted by Customer, a Sublicensee or any other third party, and regardless of whether such Orders are authorized by Customer. Equinix has no obligation to verify that anyone using Customer's account and password has Customer's authorization.

### 3.  Payment Terms and Taxes.

a.  Unless otherwise agreed between the parties in writing, Service Fees for the Services will begin to accrue on the Billing Commencement Date. Equinix will invoice Customer for the Services on a monthly basis (partial months will be billed on a pro rata basis) and Customer will pay for the Services in accordance with the Section 3 and the Orders. Customer will pay in full all invoices from Equinix within thirty (30) days of the date of invoice. Any past due amounts owed by Customer will accrue interest at the lesser of one and a half percent (1.5%) per month or the highest rate permitted by applicable law. Unless otherwise stated in the Order, all invoices will be paid in U.S. Dollars.

b.  The Service Fees for Services ordered through Sales Orders will be listed on the Sales Orders. For all other Orders, the Service Fees for Services will be Equinix's then-current list price for such Services, unless otherwise agreed to by the parties in writing. Customer agrees to pay for the Services for the duration of the Term. Notwithstanding anything in this Agreement to the contrary, for each Service, upon the expiration of the Initial Service Term, the rates and fees for Services will be subject to change, at Equinix's reasonable discretion, upon sixty (60) days' prior notice to Customer.

c.  Notwithstanding anything to the contrary in this Agreement, the rates and fees for Power Services ordered by Customer will remain in effect for one (1) year from the beginning of the Service Term for such Power Services, and thereafter, the rates and fees for the Power Services will be subject to change, at Equinix's reasonable discretion, upon sixty (60) days' prior notice to Customer.

d.  Customer will pay all Taxes and third-party charges related to the ownership and operation of Customer's Equipment and the activities

of Customer at each IBX Center, or attributable to, each IBX Center. Without limiting the foregoing, Customer will be responsible for paying any and all Taxes separately imposed, levied or assessed against Customer by, and preparing and filing any necessary return with, any governmental, quasi-governmental or tax authorities by the date such payments and returns are due. In no event will Customer's Equipment be construed to be fixtures.

e.  Service Fees are exclusive of any Taxes imposed on Service Fees. Customer will be responsible for paying any Taxes imposed on Service Fees at the same time it pays the Service Fees. Customer will be responsible for timely paying in full all Taxes.

f.  If Customer is required to make any deduction or withholding or to make any payment on account of any Taxes in any jurisdiction, in respect of any amounts payable hereunder by Customer to Equinix, such amounts will be increased to the extent necessary to ensure that after the making of such deduction, withholding or payment, Equinix receives when due and retains (free from any liability in respect of any such deduction, withholding or payment) an amount equal to that which would have been received and retained had no such deduction, withholding or payment been required or made.

### 4.  Access and Use of the IBX Centers and Use of Customer's Equipment.

a.  Subject to the terms and conditions of this Agreement, Customer will have access to the Licensed Space twenty-four (24) hours per day, three hundred sixty-five (365) days per year.

b.  Unless otherwise expressly provided in an Order, Customer will be responsible for configuring, placing, installing, upgrading, adding, maintaining, repairing, and operating Customer's Equipment, which actions Customer may engage in only to the extent permitted by, and subject to, the terms and conditions of this Agreement. Customer represents, warrants and covenants that Customer has the legal right and authority (including regulatory approvals), and will continue to have the legal right and authority throughout the Term, to operate, configure, provide, place, install, upgrade, add, maintain and repair Customer's Equipment as contemplated by this Agreement. Without limiting the foregoing, Customer will obtain such consent of Customer's subcontractors, third party providers, vendors and any other parties as may be necessary for Equinix (including any employees or others acting at Equinix's request) to have the right to use and access Customer's Equipment for the purpose of providing Services.

c.  At all times during the Term, Equinix and Customer agree to comply with the Policies, which are at all times incorporated by reference into this Agreement. Customer acknowledges that it has received a copy of the current Policies prior to the execution of this Agreement. Any modification by Equinix to the Policies will be effective upon notice to Customer, except modifications to the Shipping Policies, which will be effective immediately upon being made.

d.  Customer will be responsible and liable for all acts or omissions of Customer's Authorized Persons, Accompanying Persons, and Associated Entities, and all such acts or omissions will be attributed to Customer for all purposes under this Agreement, including for purposes of determining responsibility, liability and indemnification obligations.

e.  Customer will not file a mechanic's lien or similar lien on the Licensed Space or IBX Centers, and Customer will be responsible for any mechanic's lien or similar lien filed by any Authorized Person, Accompanying Person or Associated Entity. Without limiting the foregoing, in the event any such lien is filed, Customer will be responsible for the immediate satisfaction, payment or bonding of any such lien.

### 5.  Indemnification.

EQ000007

'08/09/04   12:14 FAX 6505137905        EQUINIX        ☑017

Aug-06-04   01:52pm   From-                                    T-372   P.11 7/024   F-407

a.   Equinix will indemnify and hold harmless the Customer Parties from any and all liability, damages, costs and expenses (including reasonable attorneys' fees and expenses) for personal injury or damage to tangible property resulting from the gross negligence or willful misconduct of Equinix.

b.   Customer will indemnify and hold harmless the Equinix Parties from any and all liability, damages, costs and expenses (including reasonable attorneys' fees and expenses) for (i) personal injury or damage to tangible property resulting from the gross negligence or willful misconduct of Customer; (ii) any claim by any of Customer's Authorized Persons, Accompanying Persons or Associated Entities or any employee of Customer other than a claim based on the gross negligence or willful misconduct of Equinix; (iii) any claim by a customer or end-user of Customer relating to, or arising out of, Customer's or any of its customers' services or the Services provided under this Agreement (including claims relating to interruptions, suspensions, failures, defects, delays, impairments or inadequacies in any of the aforementioned services, including the Services from Equinix; (iv) any claim that Customer has failed to which a contractual obligation with a third party; and (v) any claim resulting from Customer's failure to obtain the required consents pursuant to Section 4(b).

6.   **Warranty Disclaimer, Limitation of Liability, Credits.**

a.   EQUINIX DOES NOT WARRANT THAT THE SERVICES PROVIDED HEREUNDER WILL BE UNINTERRUPTED, ERROR-FREE OR COMPLETELY SECURE. EQUINIX DOES NOT MAKE, AND HEREBY DISCLAIMS, ANY AND ALL IMPLIED WARRANTIES, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE AND NONINFRINGEMENT. EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THIS AGREEMENT, EQUINIX DOES NOT MAKE AND HEREBY DISCLAIMS ALL EXPRESS WARRANTIES. ALL SERVICES PROVIDED PURSUANT TO THIS AGREEMENT ARE PROVIDED OR PERFORMED ON AN "AS IS", "AS AVAILABLE" BASIS, AND CUSTOMER'S USE OF THE SERVICES IS SOLELY AT ITS OWN RISK.

b.   IN NO EVENT WILL EITHER PARTY BE LIABLE TO THE OTHER PARTY FOR ANY CONSEQUENTIAL, INDIRECT, INCIDENTAL, SPECIAL, RELIANCE, EXEMPLARY OR PUNITIVE DAMAGES, INCLUDING LOST PROFITS, LOSS OF BUSINESS, LOSS OF REVENUES, LOSS OF DATA, INTERRUPTION OR CORRUPTION OF DATA, EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, OR ANY OTHER TYPE OF DAMAGES OTHER THAN DIRECT DAMAGES.

c.   EQUINIX'S TOTAL LIABILITY TO CUSTOMER IN THE AGGREGATE FOR THE ENTIRE TERM WITH RESPECT TO ALL CLAIMS ARISING FROM OR RELATED TO THE SUBJECT MATTER OF THIS AGREEMENT (INCLUDING ATTORNEYS' FEES) WILL NOT EXCEED THE AMOUNT ACTUALLY PAID BY CUSTOMER FOR THE SIX (6)-MONTH PERIOD IMMEDIATELY PRECEDING THE MONTH IN WHICH THE FIRST CLAIM AROSE. AS A FURTHER LIMITATION, EQUINIX'S MAXIMUM LIABILITY FOR ANY CLAIM RELATING TO SERVICES OFFERED OR PROVIDED BY EQUINIX (I) FOR A NON-RECURRING CHARGE ONLY OR (II) AS SMART HANDS SERVICES SHALL NOT EXCEED THE AMOUNT OF THE SERVICE FEE FOR SUCH SERVICE PROVIDED ON THE OCCASION GIVING RISE TO THE CLAIM.

d.   THE LIMITATIONS SET FORTH IN SECTIONS 6(b)-(c) WILL APPLY TO ANY AND ALL CLAIMS AND CAUSES OF ACTION WHATSOEVER, REGARDLESS OF WHETHER IN CONTRACT, TORT, STRICT LIABILITY OR OTHER THEORY.

e.   Each party waives its right to bring any claim against the other party arising or in any way relating to this Agreement more than six (6) months after the date this Agreement expires or is earlier terminated.

f.   Nothing in this Agreement will be construed as limiting the liability of either party for personal injury or death resulting from the negligence of a party.

g.   If some or all of the Licensed Space is not usable for a period exceeding one hour (the "Temporarily Unusable Licensed Space"), Customer will be entitled to a credit of one seven hundred twentieth (1/720) of the monthly recurring portion of the Service Fee for such

Temporarily Unusable Licensed Space for each hour that such space is unusable. This credit is Customer's sole and exclusive remedy for unusable space. This credit will apply to failures, defects, delays, impairments or inadequacies in any of the Services. Notwithstanding the foregoing, Customer will only have the right to receive a credit if (i) Customer notifies Equinix within five (5) days of its inability to use the Temporarily Unusable Licensed Space and (ii) the Temporarily Unusable Licensed Space is not usable for reasons other than for (a) the actions or omissions of Customer or any Sublicensee or other third-party acting on Customer's behalf; (b) Customer's Equipment or the equipment of any Sublicensee or other third-party acting on Customer's behalf; or (c) circumstances or events beyond Equinix's control.

7.   **Insurance.**

a.   Customer agrees to maintain, at its expense, for each IBX Center during the entire time this Agreement is in effect, (i) Commercial General Liability Insurance in an amount not less than One Million U.S. Dollars ($1,000,000) or the local currency equivalent per occurrence for bodily injury, death and property damage, which policy will include contractual liability coverage related to this Agreement; (ii) Workers' Compensation and employer's liability insurance in an amount not less than that prescribed by law; and (iii) umbrella or excess liability insurance with a combined single limit of no less than two Million U.S. Dollars ($2,000,000) or the local currency equivalent. Prior to any use of the Licensed Space at an IBX Center (including, but not limited to, delivery of any of Customer's Equipment to an IBX Center), Customer will furnish Equinix with certificates of insurance that evidence the minimum levels of insurance set forth herein and which name as additional insureds Equinix and other parties with an interest in the Licensed Space or the IBX Center, as designated by Equinix. In addition, Customer will notify Equinix of any non-renewal, cancellation, reduction in policy limit or other material change in Customer's coverage at least forty-five (45) days prior to such change in coverage. Equinix will not have any obligation to insure any property belonging to or in the possession of Customer.

b.   Customer will cause and ensure that its insurers waive all claims, and rights of recovery by subrogation against the Equinix Parties in connection with any liability or damage covered by Customer's insurance policies. As to any property insurance carried by Equinix on the IBX Centers where any of the Licensed Space is located, Equinix will obtain a waiver of subrogation in favor of Customer. Except as set forth in Section 5, Customer will not have any responsibility for any loss or damage to equipment owned by Equinix, and Equinix will not have any responsibility for any loss or damage to Customer's Equipment.

8.   **Term of Agreement, Suspension of Service, Termination, and Removal of Customer's Equipment.**

a.   This Agreement will commence on the MSA Effective Date. Unless earlier terminated in accordance with its terms this Agreement will terminate on the date the last Order then in effect expires or is terminated pursuant to the terms and conditions set forth in this Agreement (which will be the date on which the last Service Term if such last Order expires or is terminated pursuant to the terms and conditions of this Agreement). Unless otherwise agreed to by the parties in writing, for each Service ordered on a Sales Order, the initial Service Term will commence on the date referred to as the "Sales Order Effective Date" and end two (2) years after the Billing Commencement Date. Unless otherwise agreed to by the parties in writing, the initial Service Term for each Service ordered via a Phone Order or Online Order will commence on the Billing Commencement Date and end two (2) years after the Billing Commencement Date if such Service is not installed in Licensed Space. Unless otherwise agreed to by the parties in writing, for each Service, upon expiration of the initial Service Term and each renewal, the Service Term for such Service will renew automatically for additional terms of one (1) year each, unless either party notifies the other party at least forty-five (45) days prior to the end of the then-current Service Term for such Service that it has elected to terminate the Service Term for such Service, in which event the Service Term for such Service will terminate at the end of such then-current Service Term.

b.   Either party may terminate this Agreement by giving notice of

EQ000008

termination to the other party if the other party breaches any material term or condition of this Agreement and fails to cure such breach within thirty (30) days after receipt of notice of the same. Notwithstanding the foregoing, except where Customer has failed to timely cure a monetary breach, if a party fails to timely cure a material breach as to only one IBX Center, and Customer has Licensed Space in more than one IBX Center, then the non-breaching party may only terminate this Agreement (and the corresponding Orders) as to the IBX Center where the material breach has not been timely cured, and this Agreement will remain in full force and effect as to all other IBX Centers.

c.    Notwithstanding Section 8(b), Equinix may terminate this Agreement (or, at Equinix's sole discretion, suspend the provision of Services, including discontinuing the supply of power) if (i) Customer fails to cure any monetary breach of this Agreement (e.g. fails to pay any amounts owed) within ten (10) days of notice of the same (the (5) days in the event Customer's account is past due on three (3) or more occasions during a six (6)-month period); (ii) Customer liquidates, ceases to do business, or becomes insolvent or (iii) Customer breaches any provision of this Agreement that in Equinix's reasonable judgment interferes with, or has the potential to interfere with Equinix's operation or maintenance of the IBX Center or with its other customers' use thereof, and Customer fails to cure such breach within twenty-four (24) hours of being notified of the same. If Equinix suspends a Service pursuant to this Section 8(c), Equinix will resume the discontinued Service within twenty-four (24) hours after it is reasonably satisfied Customer has cured the breach(es) which gave rise to Equinix's right to suspend the Service. Equinix may charge a reinstatement fee equal to the direct out-of-pocket expenses incurred by Equinix to resume the discontinued Service.

d.    Equinix may terminate this Agreement as to any affected Licensed Space or IBX Center (if any portion of the IBX Center in which the affected Licensed Space is located becomes subject to a condemnation proceeding or is condemned, Equinix's possession is otherwise terminated or abated, or Equinix cannot provide Customer with access to the affected Licensed Space as contemplated herein for a period exceeding thirty (30) days).

e.    Upon expiration or termination of an Order (or any portion thereof), all other rights of Customer with respect to the Licensed Space on such Order (or the affected portion thereof) ("Terminated Space") will terminate, and Customer will remove all of Customer's Equipment and other property belonging to Customer or Customer's Authorized Persons, Accompanying Persons and/or Associated Entities, but excluding any wiring, cable or other equipment or property owned, leased or licensed by Equinix, from the Terminated Space no later than the effective date of such termination. If Customer fails to remove any such property in accordance with this Section 8(e), Equinix will be entitled to pursue all available legal remedies against Customer, including one or more of the following remedies: (i) immediately removing any or all such property and storing it at Customer's expense at an on-site or off-site location, (ii) shipping such property to the address set forth at the end of this Agreement at Customer's risk and expense, or (iii) upon providing thirty (30) days' prior notice to Customer, and if Customer fails to remove such property within such thirty (30)-day period, liquidating such property in any commercially reasonable manner and charging Customer for all costs associated with the liquidation. Notwithstanding anything in this Agreement to the contrary, Customer will not be entitled to remove any Customer's Equipment from an IBX Center upon termination of this Agreement if Customer's account is past due.

f.    While Customer has no right to use the Services after the end of the Term, if Customer does so, Customer will be obligated to pay for the Services pursuant to the terms and conditions of this Agreement and any applicable Orders, and this Agreement, and any such applicable Orders, will continue in effect for as long as the Services are used by Customer. In such event, this Agreement, and any applicable Orders, will be terminable at will by Equinix effective immediately upon notice to Customer.

g.    Customer grants Equinix a security interest in all of Customer's Equipment now or hereafter located at an IBX Center, to secure payment of all amounts and satisfaction of all obligations due under this Agreement. In connection therewith, if required by applicable law, Equinix will be permitted to file one or more financing statements with respect to its security interest and Customer will sign all necessary documents, and take such other actions as Equinix reasonably requests, to perfect or continue such security interest. Equinix will not take any

action to enforce its security interest in the Equipment until such time as any invoice is sixty (60) days or more past due.

h.    Neither party will be liable to the other party for property terminating this Agreement or any portion thereof in accordance with its terms, but Customer will be liable to Equinix for any amounts owed prior to the effective date of termination. Notwithstanding anything to the contrary in this Agreement, Equinix has the right to recover from Customer all damages recoverable under law for the period past the end of the Term, if Equinix terminates this Agreement prior to the end of the full Term due to Customer's material breach.

i.    Under no circumstances will any Order survive the expiration or earlier termination of this Agreement, and under no circumstances will any Order pertaining to an IBX Center survive the termination of this Agreement as to that IBX Center. Equinix will not have any obligation to provide any of its Services after the expiration or earlier termination of this Agreement, and Equinix will not have any obligation to provide any of its Services at an IBX Center after the expiration or earlier termination of this Agreement as to such IBX Center.

9.    Miscellaneous.

a.    Except where otherwise expressly stated in the Agreement, all notices, consents, or approvals required by this Agreement will only be effective if in writing and sent by (i) certified or registered air mail, postage prepaid, (ii) overnight delivery requiring a signature upon receipt, (iii) delivery by hand or (iv) facsimile or electronic mail (promptly confirmed by certified or registered mail or overnight delivery), to the parties at the respective street addresses, facsimile numbers, or electronic mail addresses set forth at the end of this Agreement or such other addresses or facsimile numbers as may be designated in writing by the respective parties. Notices, consents and approvals will be deemed effective on the date of receipt.

b.    This Agreement will be governed in all respects by the internal laws of the State of California without regard to its conflict of laws provisions. The parties irrevocably agree to the exclusive jurisdiction of the courts of San Francisco, California. If any legal action is brought by either party under, or relating to, this Agreement the prevailing party will be entitled to an award of its reasonable attorneys' fees and costs.

c.    Neither party's directors, officers or employees will have any liability to the other party with respect to this Agreement. Except as may be specifically otherwise consented to by an Affiliate of a party, neither party's Affiliates will have any liability to the other party with respect to this Agreement.

d.    This Agreement, the exhibits, the Policies and all Orders, all of which are incorporated herein by reference into this Agreement, constitute the complete and entire agreement between the parties with respect to the subject matter hereof, and supersede and replace any and all prior or contemporaneous discussions, negotiations, proposals, understandings and agreements, written and oral, regarding such subject matter, as well as any industry custom. This Agreement will be effective only when signed by both parties. This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which together will constitute one and the same instrument. This Agreement may be amended only in writing by an instrument signed by all parties.

e.    No waiver of any breach of any provision of this Agreement will constitute a waiver of any prior, concurrent or subsequent breach of the same or any other provisions hereof, and no waiver will be effective unless made in writing and signed by an authorized representative of the waiving party.

f.    If Customer and Equinix execute multiple Orders, each additional Order will supplement rather than replace the prior Orders, unless otherwise stated by the parties in writing. Notwithstanding anything in this Agreement to the contrary, (i) Equinix has no obligation to execute any Order with Customer, (ii) no Sales Order will be effective unless executed by both parties, and (iii) any Online Order or Phone Order will be effective unless made by Customer and agreed to by Equinix, which agreement by Equinix will be reflected either by Equinix's written confirmation of an Online Order or Phone Order or by Equinix's commencement of the provision of the Services ordered under the Online Order or Phone Order.

EQ000009

g.   Each party acknowledges and agrees that it has reviewed, and has had an opportunity to have reviewed, this Agreement (including the exhibits and the Policies), and it is the parties' intent that this Agreement will not be construed against either party. The section headings and captions throughout this Agreement are for convenience and reference only, and will not be used to construe this Agreement.

h.   If any provision of this Agreement, as applied to either party or to any circumstance, is adjudged by a court to be invalid, illegal or unenforceable, the same will not affect the validity, legality, or enforceability of the portion of the provision, if any, that is not invalid, illegal or unenforceable, the application of such provision in any other circumstances, or the validity, legality, or enforceability of any other provision of this Agreement. All terms and conditions of this Agreement will be deemed enforceable to the fullest extent permissible under applicable law, and, when necessary, the court in any action between the parties is requested to reform, amend and add all terms or conditions to give them as much effect as possible.

i.   Sections 5, 6, 7, 8 and Exhibit A will survive the termination of this Agreement. In addition, all provisions of this Agreement that can only be given proper effect if they survive the termination of this Agreement will survive the termination of this Agreement. This Agreement will be valid as to any obligation incurred prior to termination of this Agreement. Without limiting the foregoing, Customer will pay all amounts owed to Equinix under this Agreement, including any amounts that are not due until after the expiration or earlier termination of this Agreement. Each party recognizes and agrees that the warranty disclaimers and liability and remedy limitations in this Agreement are material bargained for bases of this Agreement and that they have been taken into account and reflected in establishing the consideration to be given by each party under this Agreement and in the decision by each party to enter into this Agreement. The parties agree that the warranty disclaimers and liability and remedy limitations in this Agreement will survive and apply even if found to have failed of their essential purpose.

j.   Except where otherwise expressly stated herein, and subject to the limitations set forth in Section 7, the rights and remedies provided for herein are cumulative and not exclusive of any rights or remedies that a party would otherwise have.

k.   Equinix and Customer are independent contractors and this Agreement will not establish any relationship of partnership, joint venture, employment, franchise or agency between Equinix and Customer. Neither Equinix nor Customer will have the power to bind the other or incur obligations on the other's behalf without the other's prior written consent. Neither Customer nor Equinix grants the other the right to use its trademarks, service marks, trade names, logos, copyrights, or other intellectual property rights or other designation in any promotion, publication, or press release without the prior written consent of the other party in each case.

l.   This Agreement, and the rights of Customer hereunder, are, without any further action by any party, subject and subordinate to the leases for the IBX Centers, and all superior instruments to such leases (including, without limitation, mortgages or ground leases for the IBX Centers). This Agreement is a services agreement and is not intended to and will not constitute a lease of any real or personal property. Customer acknowledges and agrees that (i) it has been granted only a license ("License") to use the Licensed Space in accordance with this Agreement; (ii) Customer has not been granted any real property interest under this Agreement; and (iii) Customer has no rights as a tenant or otherwise under any real property or landlord/tenant laws, regulations, or ordinances. Equinix hereby reserves, with respect to the IBX Centers, all rights not specifically granted to Customer in this Agreement, including, without limitation, the right (i) of access to and use of the IBX Centers for its own use or the use of others; (ii) to grant additional licenses to other persons or co-location customers for the use of portions of the IBX Centers; and (iii) to exercise or grant other rights not inconsistent with the rights granted in this Agreement.

m.   Equinix may assign, delegate or transfer its rights and obligations under this Agreement to an Equinix Affiliate, or to a party acquiring all or substantially all of Equinix's business or assets, including through merger, and, in the event of any such assignment, transfer or delegation, and the assumption by the transferee of the obligations of Equinix hereunder, Equinix will be released from any further liability or obligation under this Agreement. Customer may assign this Agreement without Equinix's consent, only where the party to whom this Agreement

is assigned by Customer is either an Affiliate of Customer, or is acquiring all or substantially all of Customer's business or assets, including through merger. This Agreement will be binding upon and inure to the benefit of all successors and permitted assigns of Equinix and Customer, who will be bound by all of the obligations of their predecessors or assignors. Except as set forth in Exhibit B of this Agreement with respect to subcontracting, and this Section 9(m), Customer will not assign, delegate, transfer or sublicense all or any part of the Licensed Space.

n.   Equinix will not be responsible or in any way liable, and Customer will not have any termination or other rights, arising out of or relating to any failure by Equinix to perform or any hindrance to the performance of its obligations under this Agreement if such failure or hindrance is caused by events or circumstances beyond Equinix's control, including acts of God, war, labor strike, terrorist act, fire, flood, earthquake, any law, order, regulation or other action of any governing authority or agency thereof, or failure of the Internet.

o.   All Orders are subject to all of the terms and conditions of this Agreement. In the event of a conflict between the body of this Agreement and an Order, the body of this Agreement will control, unless the body of this Agreement and the Order states that the conflicting term in the Order controls.

p.   Unless otherwise expressly agreed to by the parties in writing, Equinix will retain title to all parts and materials used or provided by Equinix or third parties acting on its behalf in the performance and/or furnishing of the Services.

q.   Equinix and Customer agree that, with the exception of Equinix's landlords, there will be no third party beneficiaries to this Agreement, including, but not limited to, any Sublicensee, and user or Customer or the insurance providers for either party.

r.   The parties specifically exclude application of the United Nations Convention on Contracts for the International Sale of Goods to this Agreement.

10.   **Definitions.**

**Accompanying Person:** Each person (other than an Equinix employee) who is accompanied by an Authorized Person while at an IBX Center.

**Affiliate:** As to a party, means any entity controlling, controlled by, or under common control with such party, where the term "control" and its correlative meanings, "controlling," "controlled by," and "under common control with," means the legal, beneficial or equitable ownership, directly or indirectly, of more than fifty percent (50%) of the aggregate of all voting equity interests in an entity.

**Associated Entity:** Each company, partnership or other entity of any type which employs, contracts with, or is otherwise associated or affiliated with any of Customer's Authorized Persons or Accompanying Persons. Without limiting the foregoing definition, each Sublicensee that has sublicensed Sublicensed Space at an IBX Center will be an Associated Entity at such IBX Center.

**Authorized Person:** Each person who is included on a list of Authorized Persons given to Equinix by Customer in accordance with the Policies.

**Billing Commencement Date:** For each Service, unless otherwise agreed to by the parties in writing, a) for a Service ordered in a Sales Order, the date designated in Sales Order as the date charges will begin to accrue, and b) for a Service ordered in an Online Order or Phone Order, the date Equinix begins providing the Service to Customer.

**Cross-Connect:** A physical or wireless interconnection within an IBX Center that (i) exits Customer's cage or (ii) connects Customer to another Equinix customer.

**Customer Care Website:** Equinix's customer care website accessible via the Internet at a location designated by Equinix, which it has the right to change from time to time.

**Customer Cross-Connect:** A physical interconnection, including cable, connections, and other wiring, that (i) does not exit Customer's cage, (ii) does not connect Customer to another Equinix customer and (iii) interconnects (a) Equipment belonging to the Customer or (b) Equinix-provided POD Equipment in Customer's cage with Customer's Equipment.

**Customer's Equipment:** All network and/or computer equipment

EQ000010

(including wiring and Customer Cross-Connects between such equipment and Customer's POD Equipment) that is located in the Licensed Space, regardless of whether such equipment is owned, leased, licensed or otherwise obtained for use by Customer (but this does not include Cross-Connects or Equinix POD Equipment located in Customer's Licensed Space).

**Customer Parties:** Customer and the Affiliates, owners, officers, directors, employees, contractors and agents of Customer.

**Equinix Parties:** Equinix and the Affiliates, owners, officers, directors, employees, contractors and agents of Equinix.

**IBX Centers:** The Internet Business Exchange Centers leased or owned by Equinix in which Customer licenses Licensed Space or receives Services from Equinix pursuant to an Order.

**Licensed Space:** The areas licensed by Customer under this Agreement and as identified in the Orders as to the amount of space. For each Licensed Space, Equinix will determine at all times during the Term the exact location in the IBX Centers where the Licensed Space will be located, and Equinix will notify Customer accordingly.

**Online Order:** An Order for Services placed by Customer via the Customer Care Website and accepted by Equinix pursuant to this Agreement.

**Order:** Any Sales Order, Online Order or Phone Order between Customer and Equinix.

**Phone Orders:** An Order for Services placed by customer via telephone and accepted by Equinix pursuant to this Agreement.

**POD Equipment:** The (i) patch panels, DSX panels for category 5 twisted pair, co-axial, single and multi-mode fiber, or (ii) other appropriate (as reasonably determined by Equinix) point of demarcation equipment.

**Policies:** The procedures, rules, regulations, security practices and policies adopted by Equinix that are then in effect for the IBX Centers, and as they may be amended from time to time by Equinix and so notified to Customer.

**Power Services:** Power circuits ordered by Customer. For the avoidance of doubt, Power Services do not include power provided by Equinix as part of a bundled service.

This Master Service Agreement has been entered into between the parties as of the MSA Effective Date.

**Sales Orders:** All written sales orders executed by the parties which provide that such sales orders are governed by, and incorporated by reference into, this Agreement.

**Services:** All services, goods and other offerings of any kind set forth in an Order to be provided by Equinix to Customer pursuant to this Agreement.

**Service Fees:** Charges and fees for Services charged to Customer by Equinix pursuant to this Agreement.

**Service Term:** Each Service in an Order will have a Service Term, which for each Service will be the length of time from the agreed to effective date for the Service Term until the last day Equinix is required to provide such Service pursuant to the terms and conditions set forth in this Agreement or as otherwise agreed to by the parties in the applicable Order.

**Shipping Policies:** The portion of the Policies entitled Shipping Policies.

**Sublicensed Space:** The portion of the Licensed Space sublicensed to a Sublicensee by Customer pursuant to the terms of this Agreement.

**Sublicensee:** A customer of Customer or other third party who obtains Internet and/or telecommunications services from Customer and who sublicense all or part of the Licensed Space from Customer.

**Taxes:** Sales, use, transfer, privilege, excise, VAT, GST, consumption tax, and other similar taxes and duties, whether foreign, national, state or local, however designated, now in force or enacted in the future, which are levied or imposed by reason of the performance by Equinix or Customer under this Agreement or by Customer with respect to its operations and use of the Services, but excluding taxes on Equinix's net income.

**Term:** The term of this Agreement as determined in accordance with Section 8(a) of this Agreement.

**Customer to complete:**

The person signing below hereby warrants and represents that he or she has full authority to execute this Agreement for the party on whose behalf he or she is signing.

Customer Name: ___Mark Zuckerberg (Thefacebook, Inc)___
(Complete Legal Name)

Authorized Signature: ___Mark Zuckerberg___

Printed Name: ___Mark Zuckerberg___

Title: ___CEO___

Street address for notices:

___2 Russell Place___
___Dobbs Ferry, NY 10522___

Phone: ___914. 646. 8593___

Facsimile number: ___914. 693. 6714___

Electronic mail address: ___zuck@thefacebook.com___

**Equinix to complete:**

The person signing below hereby warrants and represents that he or she has full authority to execute this Agreement for the party on whose behalf he or she is signing.

Authorized Signature: ___Monica Brown Andrews___
Director of Customer Contracts

Printed Name: _____

Title: _____

Street addresses for notices:

301 Velocity Way, 5th Floor
Foster City, California 94404, USA

Phone: +1 650-513-7000
Facsimile number: +1 650-513-1857
ELECTRONIC MAIL ADDRESS: contracts@equinix.com

EQ000011

**Exhibit A**
**Confidentiality Provisions**

The following provisions apply with respect to the treatment of confidential information disclosed by the parties hereto. All capitalized terms not defined in this exhibit will have the respective meanings specified in the Master Service Agreement to which this Exhibit A is attached.

a.    Except as expressly permitted in this Exhibit A, neither party will, without the prior written consent of the other party, disclose any Confidential Information of the other party to any third party. Information will be considered Confidential Information of a party if either (i) it is disclosed by the party to the other party in tangible form and is conspicuously marked "Confidential", "Proprietary" or the like; or (ii) (a) it is disclosed by one party to the other party in non-tangible form and is identified as confidential at the time of disclosure; and (b) it contains the disclosing party's customer lists, customer information, technical information, pricing information, pricing methodologies, or information regarding the disclosing party's business planning or business operations. In addition, notwithstanding anything in this Agreement to the contrary, (i) the terms of this Agreement will be deemed Confidential Information of each party; and (ii) the design of the IBX Centers, the Services provided and equipment used at the IBX Centers and the configuration, interconnection, switching and routing of telecommunication cables, networks and services at the IBX Centers will be considered Confidential Information of Equinix.

b.    Other than the terms and conditions of this Agreement, information will not be deemed Confidential Information if such information (i) is known to the receiving party prior to receipt from the disclosing party directly or indirectly from a source other than one having an obligation of confidentiality to the disclosing party; (ii) becomes known (independently of disclosure by the disclosing party) to the receiving party directly or indirectly from a source other than one having an obligation of confidentiality to the disclosing party; (iii) becomes publicly known or otherwise ceases to be secret or confidential, except through a breach of this Agreement by the receiving party; or (iv) is independently

developed by the receiving party. The terms and conditions of this Agreement will cease being confidential if, and only to the extent that, they become publicly known, except through a breach of this Agreement by the receiving party.

c.    Each party will secure and protect the Confidential Information of the other party (including, without limitation, the terms of this Agreement) in a manner consistent with the steps taken to protect its own trade secrets and confidential information, but not less than a reasonable degree of care. Each party may disclose the other party's Confidential Information where (i) the disclosure is required by applicable law or regulation or by an order of a court or other governmental body having jurisdiction after giving reasonable notice to the other party with adequate time for such other party to seek a proactive order; (ii) in the opinion of counsel for such party, disclosure is advisable under any applicable securities laws regarding public disclosure of business information; or (iii) the disclosure is reasonably necessary and is to that party's or its Affiliates' employees, officers, directors, attorneys, accountants and other advisors, or the disclosure is otherwise necessary for a party to exercise its rights and perform its obligations under this Agreement, so long as in all cases the disclosure is no broader than necessary and the party who receives the disclosure agrees prior to receiving the disclosure to keep the information confidential. Each party is responsible for ensuring that any Confidential Information of the other party that the first party discloses pursuant to this Exhibit A is kept confidential by the person receiving the disclosure.

d.    Notwithstanding the restrictions set forth in this Exhibit A or Section 8(b), during the Term, (i) Equinix may issue a press release announcing Customer's entry into the IBX Centers without obtaining Customer's consent; and (ii) either party may publicly refer to the other party, orally and in writing, as a customer or vendor of services of or to the other party, as the case may be, without obtaining consent from such party.

EQ000012

08/09/04   12:21 FAX 6505137905          EQUINIX                                ☒022

Aug-06-04 . 01:55pm  From-                              T-372  P.022/024  F-467

## Exhibit B

## Sublicensing Provisions

The following provisions apply with respect to any sublicense of Licensed Space (all capitalized terms herein having the respective meanings specified in the Master Service Agreement to which this Exhibit B is attached).

a.  Customer may sublicense the Sublicensed Space to Sublicensees provided that (i) the terms and conditions of such Sublicense will be no less restrictive than this Agreement, (ii) Customer will not in its dealing with such Sublicensees act or purport to act on behalf of Equinix or Equinix's landlords, (iii) Customer will require the Sublicensee to abide by the rules set forth in the Policies, and (iv) Customer will cause any Sublicensee to agree in writing that in consideration for the sublicense, Sublicensee waives, to the maximum extent permitted under law, any and all claims of any and all types against Equinix and Equinix's landlords, at all times, and that in no event will Equinix, or Equinix's landlords, have any liability to such Sublicensee, including liability to such Sublicensee for any damages whatsoever, including direct damages.

b.  Notwithstanding any thing in this Agreement to the contrary, Customer will remain responsible to Equinix for the performance of all of Customer's obligations under this Agreement (including the payment of all amounts owed under this Agreement) and all other agreements between Equinix and Customer ("Related Agreements"). No sublicense agreement or arrangement between Customer and any Sublicensee will relieve Customer from any liability under this Agreement or any Related Agreements. Without limiting the foregoing, Customer is responsible for paying the Service Fees for all of the Licensed Space (including Sublicensed Space) and the charges for Services for, or relating to, any or all of the Licensed Space (including Sublicensed Space). In no event will Equinix be deemed to be providing any Services to Sublicensee for, or relating to, the Sublicensed Space, as the provision of any such Services will be deemed to be to Customer for all purposes under this Agreement.

c.  Customer must ensure that each and every sublicense agreement or other sublicense arrangement that Customer has with a Sublicensee does not have any terms and conditions that (i) are inconsistent with this Agreement, or (ii) seek to provide Sublicensee with

rights that Customer does not have under this Agreement. Without limiting the foregoing or any other restrictions on Sublicenses, no Sublicensee will have any right to use its Sublicensed Space in any manner that Customer is not permitted to use the Licensed Space.

d.  Sublicensees do not have any rights, express and apart from Customer's rights, to access their Sublicensed Space. Accordingly, only Customer's Authorized Persons at an IBX Center may access the Sublicensed Space of Sublicensees at such IBX Center. Furthermore, Equinix is not responsible for restricting a Sublicensee's access to Customer's Licensed Space located in a cage or suite to which that Sublicensee has access.

e.  Notwithstanding anything in this Agreement to the contrary, a Sublicensee has no right to sublicense, delegate, assign or otherwise transfer its rights to use the Sublicensed Space to any other person or entity without Equinix's consent, which consent may be withheld for any reason whatsoever or no reason. Any such sublicense, delegation, assignment or transfer will be null and void.

f.  If the parties agree, Equinix and Customer will participate in a joint press announcement to announce when a Sublicensee sublicenses Sublicensed Space at an IBX Center.

g.  Without limiting Customer's indemnification obligations under Section 5, Customer will indemnify and hold harmless the Equinix Parties from any and all liability, damages, costs and expenses (including reasonable attorneys' fees and expenses) arising from or relating to (i) any claim by a customer or end-user of any Sublicensee relating to, or arising out of, a Sublicensee's or any of its customers' services, Customer's or any of its customers' services, or the Services provided under this Agreement (including claims relating to interruptions, suspensions, failures, defects, delays, impairments or inadequacies in any of the aforementioned services, including the Services from Equinix); and (ii) any claim by a Sublicensee to the extent that such claim, if sustained, would result in any greater obligation or liability of Equinix to such Sublicensee than Equinix has undertaken to Customer under this Agreement or any of the Related Agreements.

ᴹ²

Equinix MSA (200104)            Equinix Proprietary and Confidential            Page 7 of 7
... d States
*equinix* .. xt B

EQ000013

# equinix                                    **Sales Order**

| Customer Name:<br>The Face Book | Account Manager:<br>Tom Offenbach | Sales Order Number:<br>A100A00077 |
|---|---|---|
| IBX Center:<br>SJO  San Jose CA, USA | | Sales Order Effective Date<br>(To be completed by Equinix)    10/8/04 |

**Section A: Space and Colocation Services**                                    Service Term: 12 months

Space Type    Shared Cage  JAM

| Space and Colocation Services | Quantity | MRC per Unit | NRC per Unit | Non-Recurring Charges | Monthly Recurring Charges |
|---|---|---|---|---|---|
| 19" Closet Cabinet - CAB00005 | 2 | $ 600 | $ 650 | $ 1,200 | $ 1,300 |
| Power - 20-amp, 120 V AC - POW00003 | 3 | $ 200 | $ 300 | $ 600 | $ 900 |
| | | $ | $ | $ - | $ - |
| | | $ | $ | $ - | $ - |
| | | $ | $ | $ - | $ - |
| | | $ | $ | $ - | $ - |
| | | $ | $ | $ - | $ - |
| | | $ | $ | $ - | $ - |
| | | $ | $ | $ - | $ - |
| | | $ | $ | $ - | $ - |
| | | $ | $ | $ - | $ - |
| **SALES ORDER TOTAL** | | | | $ 1,800 | $ 2,200 |

This sales order (the "Sales Order") is between _____ Equinix Operating Co., Inc. _____ ("Equinix") and the customer identified above ("Customer"), who wishes to order the products and/or services set forth above (each a "Service").

Unless otherwise agreed to by the parties in writing, each Service shall be delivered at the Internet Business Exchange Center identified above ("IBX Center"). Notwithstanding anything in this Sales Order to the contrary, this Sales Order is governed by, and incorporated by reference in, the Master Service Agreement (or the document with a similar function if no document entitled Master Service Agreement has been signed by the parties) having an effective date of _____, 20___, between Customer and Equinix Inc., and/or one or more of its wholly-owned subsidiaries ("Agreement"). All exhibits, addenda and policy documents referenced in this Sales Order are incorporated by reference in this Sales Order, and therefore in the Agreement. The meanings of all capitalized terms defined in this Sales Order apply whenever such terms are used in this Sales Order, unless otherwise stated in this Sales Order. For purposes of this Sales Order the terms "monthly recurring charges" and "MRC" may be used interchangeably, and the term "non-recurring charges" and "NRC" may be used interchangeably.

Notwithstanding anything to the contrary in the Agreement, the term of this Sales Order shall begin on the date this Sales Order is signed by both parties (the "Sales Order Effective Date"), and this Sales Order shall remain in effect until the last Service Term (as defined below) in effect expires or is terminated pursuant to the Agreement, including this Sales Order. Each Service in this Sales Order shall have a "Service Term", which for each Service shall begin on the Billing Commencement Date (defined below) and upon completion of the period of time designated above as the Service Term. In addition, for each Service, the initial Service Term for such Service shall automatically renew for additional terms of one (1) year each, unless either party notifies the other party at least ninety (90) days prior to the end of the then-current Service Term for such Service that it has elected to terminate the Service Term for such Service, in which event the Service Term for such Service will terminate at the end of such then-current Service Term. Notwithstanding anything to the contrary in this Sales Order, (a) Equinix's provision of any Service, and Customers use of such Service, are at all times governed by the Agreement, even if Customer begins using such Service prior to the beginning of its Service Term and (b) under no circumstances will a Service Term for any Service survive the termination of this Sales Order.

Notwithstanding anything to the contrary in the Agreement, (a) if the Agreement expires prior to the expiration of this Sales Order's then-current term, all of the terms and conditions of the Agreement (including limitation of liability and indemnification) will continue to apply to this Sales Order and all Services, until this Sales Order expires or is terminated, and (b) if the Agreement is terminated by either party prior to its full term, then this Sales Order, if still in effect, shall terminate upon the termination of the Agreement. If the Equinix entity providing the products and/or services set forth above (the "Equinix Provider") is not currently a party to the Agreement, notwithstanding anything in the Agreement to the contrary, the parties agree that the execution of the Sales Order shall automatically (i.e., without further action by either party) result in the then-current Service Term for such Equinix Provider becoming, as of the Sales Order Effective Date, a party to the Agreement (such that all references to Equinix under the Agreement, including, without limitation, references to limitation of liability and indemnification, shall be deemed to include the Equinix Provider, as well as any Equinix entities that were already parties to the Agreement ). Any change by Equinix to the prices set forth above shall be made in accordance with the Agreement. Prices shown above do not include any applicable taxes, surcharges and shipping charges which are the responsibility of the Customer.

This Sales Order shall be of no force or effect unless (a) it is executed by both parties and (b) Customer and Equinix have entered into a currently effective Agreement under which this Sales Order is executed. Customer agrees to provide Equinix access to its cage, cabinets, racks and/or equipment as necessary for the performance of the Services as set forth in this Sales Order.

**EQ000014**

| Customer Name: | Account Manager: | Sales Order Number: |
|---|---|---|
| The Face Book | Tom Offenbach | A100A00077 |

**Billing:**

Notwithstanding anything to the contrary, Customer's obligation to pay the total monthly recurring charges and total non-recurring charges set forth in Section A shall begin twenty-one (21) days after the Sales Order Effective Date (the "Billing Commencement Date").

If Equinix is unable to deliver any Service on or before the Billing Commencement Date because Customer has failed to provide Equinix with the information necessary to deliver such Service (e.g., configuration information), Customer shall be billed for such Service beginning on the Billing Commencement Date even if such Service has not been delivered.

Unless otherwise stated herein, cabinets provided by Equinix in a private cage are open cabinets, and cabinets in a shared cage are locking cabinets. If Customer requests cabinet accessories (e.g., shelves, doors, side panels, mounting rails etc.) that are not included with a cabinet as described in Equinix's specifications for such cabinet, Customer shall be charged Equinix's list price for such accessories, unless otherwise stated herein. Customer may provide its own cabinets in a private cage in accordance with Equinix's policies and procedures; however, Customer must use Equinix-provided cabinets in a shared cage. Customer acknowledges that the prices set forth for items in Section A apply even if Customer provides its own cabinets in a private cage.

**Customer to complete:**

Authorized Signature: _(signature)_

Printed Name: Sean Parker

Title: President

Date signed: 10/5/04

**Billing Information:**

Billing Contact Name: Sean Parker

Billing Address: 1743 Westbrook.
Los Altos, CA 94024

Phone Number: 650 - 996 - 3600

E-mail Address: sean@thefacebook.com

**Equinix to complete:**

Authorized Signature: _(signature)_

Printed Name: Monica Brown Andrews
Director of Customer Contracts

Title: _____

Date signed: 10/8/04

Please fax a signed copy of this Sales Order to:

(650) 618-1857

and mail two sets of originals to:

Equinix
Attn: Contracts
301 Velocity Way, 5th Floor
Foster City, CA 94404

Please sign and return all referenced exhibits, addenda and/or policy documents with this order. Failure to do so may result in a delay in processing.

EQ000015

10/22/04  FRI 16:05 FAX 4085731234          KINKO'S SAN JOSE 4                              002

# equinix

# Sales Order

| Customer Name: TheFaceBook | Account Manager: Tom Offenbach | | Sales Order Number: ADUDA0005M | |
|---|---|---|---|---|
| IBX Center: SJO  San Jose CA  USA | | | Sales Order Effective Date: (To be completed by Equinix) | 10 / 28 / 04 |

**Section A: Space and Colocation Services**

| Space Type | Shared Cage | | Service Term: 12 months |
|---|---|---|---|

| Space and Colocation Services | Quantity | NRC per Unit | MRC per Unit | Non-Recurring Charges | Monthly Recurring Charges |
|---|---|---|---|---|---|
| Power - 30-amp, 120 V AC - POW00003 | 3 | $ 200 | $ 300 | $ 600 | $ 900 |
| | | $  - | $  - | $  - | $  - |
| | | $  - | $  - | $  - | $  - |
| | | $  - | $  - | $  - | $  - |
| | | $  - | $  - | $  - | $  - |
| | | $  - | $  - | $  - | $  - |
| | | $  - | $  - | $  - | $  - |
| | | $  - | $  - | $  - | $  - |
| | | $  - | $  - | $  - | $  - |
| | | $  - | $  - | $  - | $  - |
| **SALES ORDER TOTAL** | | $  - | $  - | $ 600 | $ 900 |

This sales order (the "Sales Order") is between _____ Equinix Operating Co., Inc. _____ ("Equinix") and the customer identified above ("Customer"), who wishes to order the products and/or services set forth above (each a "Service").

Unless otherwise agreed to by the parties in writing, each Service shall be delivered at the Internet Business Exchange Center identified above ("IBX Center"). Notwithstanding anything in this Sales Order to the contrary, this Sales Order is governed by, and incorporated by reference in, the Master Service Agreement (or the document with a similar function if no document entitled Master Service Agreement has been signed by the parties) having an effective date of _____ 10/28/04 _____, 20___, between Customer and Equinix Inc., and/or one or more of its wholly-owned subsidiaries ("Agreement"). All exhibits, addenda and policy documents referenced in this Sales Order are incorporated by reference in this Sales Order, and therefore in the Agreement. The meanings of all capitalized terms defined in this Sales Order shall apply whenever such terms are used in this Sales Order, unless otherwise stated in this Sales Order. For purposes of this Sales Order the terms "monthly recurring charges" and "MRC" may be used interchangeably, and the term "non-recurring charges" and "NRC" may be used interchangeably.

Notwithstanding anything to the contrary in the Agreement, the term of this Sales Order shall begin on the date this Sales Order is signed by both parties (the "Sales Order Effective Date"), and this Sales Order shall remain in effect until the last Service Term (as defined below) in effect expires or is terminated pursuant to the Agreement, including this Sales Order. Each Service in this Sales Order shall have a "Service Term", which for each Service shall begin on the Billing Commencement Date (defined below) and end upon completion of the period of time designated above as the Service Term. In addition, for each Service, the initial Service Term for such Service shall automatically renew for additional terms of one (1) year each, unless either party notifies the other party at least ninety (90) days prior to the end of the then-current Service Term for such Service that it has elected to terminate the Service Term for such Service, in which event the Service Term for such Service will terminate at the end of such then-current Service Term. Notwithstanding anything to the contrary in this Sales Order, (a) Equinix's provision of any Service, and Customer's use of such Service, are at all times governed by the Agreement, even if Customer begins using such Service prior to the beginning of its Service Term and (b) under no circumstances will a Service Term for any Service survive the termination of this Sales Order.

Notwithstanding anything to the contrary in the Agreement, (a) if the Agreement expires prior to the expiration of this Sales Order's then-current term, all of the terms and conditions of the Agreement (including limitation of liability and indemnification) will continue to apply to this Sales Order and all Services, until this Sales Order expires or is terminated, and (b) if the Agreement is terminated by either party prior to its full term, then this Sales Order, if still in effect, shall terminate upon the termination of the Agreement. If the Equinix entity providing the products and/or services set forth above (the "Equinix Provider") is not currently a party to the Agreement, notwithstanding anything in the Agreement to the contrary, the parties agree that the execution of the Sales Order shall automatically (i.e., without further action by either party) result in the Equinix Provider becoming, as of the Sales Order Effective Date, a party to the Agreement (such that all references to Equinix under the Agreement, including, without limitation, references to limitation of liability and indemnification, shall be deemed to include the Equinix Provider, as well as any Equinix entities that were already parties to the Agreement). Any change by Equinix to the prices set forth above shall be made in accordance with the Agreement. Prices shown above do not include any applicable taxes, surcharges and shipping charges which are the responsibility of the Customer.

This Sales Order shall be of no force or effect unless (a) it is executed by both parties and (b) Customer and Equinix have entered into a currently effective Agreement under which this Sales Order is executed. Customer agrees to provide Equinix access to its cage, cabinets, racks and/or equipment as necessary for the performance of the Services as set forth in this Sales Order.

_equinix_     SO rev. 10/15XX                          Equinix Confidential                          Page 1 of 2

EQ000016

10/22/04  FRI 16:08 FAX 4085731234          KINKO'S SAN JOSE 4                    ☑003

| Customer Name: | Account Manager: | Sales Order Number: |
|---|---|---|
| TheFaceBook | Tom Offenbach | A0U0A0009M |

**Billing:**

Notwithstanding anything to the contrary, Customer's obligation to pay the total monthly recurring charges and total non-recurring charges set forth in Section A shall begin twenty-one (21) days after the Sales Order Effective Date (the "Billing Commencement Date").

If Equinix is unable to deliver any Service on or before the Billing Commencement Date because Customer has failed to provide Equinix with the information necessary to deliver such Service (e.g., configuration information), Customer shall be billed for such Service beginning on the Billing Commencement Date even if such Service has not been delivered.

Unless otherwise stated herein, cabinets provided by Equinix in a private cage are open cabinets, and cabinets in a shared cage are locking cabinets. If Customer requests cabinet accessories (e.g., shelves, doors, side panels, mounting rails etc.) that are not included with a cabinet as described in Equinix's specifications for such cabinet, Customer shall be charged Equinix's list price for such accessories, unless otherwise stated herein. Customer may provide its own cabinets in a private cage in accordance with Equinix's policies and procedures; however, Customer must use Equinix-provided cabinets in a shared cage. Customer acknowledges that the prices set forth for items in Section A apply even if Customer provides its own cabinets in a private cage.

Customer to complete:

Authorized Signature  *D Moskovitz*

Printed Name:  *Dustin Moskovitz*

Title:  *CTO*

Date signed:  *10/22/04*

Billing Information:

Billing Contact Name:  *Dustin Moskovitz*

Billing Address:  *1743 Westbrook Ave*
*Los Altos, CA*

Phone Number:  *352-201-4178*

E-mail Address:  *moskov@fas.harvard.edu*

Equinix to complete:

Authorized Signature

Printed name:  Monica Brown Andrews
Director of Customer Contracts

Title:

Date signed:  *10/28/04*

Please fax a signed copy of this Sales Order to:

(650) 618-1857

and mail two sets of originals to:

Equinix
Attn: Contracts
301 Velocity Way, 5th Floor
Foster City, CA 94404

Please sign and return all referenced exhibits, addenda and/or policy documents with this order. Failure to do so may result in a delay in processing.

SO 747. 10/18/04                    Equinix Confidential                    Page 2 of 2

*Equinix*

EQ000017

08/09/04  12:11 FAX 6505137905          EQUINIX                              ☒014
Aua-06-04  01:51pm  From-                                        T-372  P.014/024  F-407

# *equinix*                    **Sales Order**

| Customer Name: | Account Manager: | Sales Order Number: |
|---|---|---|
| The Face Book | Tom Offenbach | ASUSA000BV |

| IBX Center: | | Sales Order Effective Date: |
|---|---|---|
| SJO  San Jose CA, USA | | (To be completed by Equinix)  8/11/04 |

**Section A. Space and Colocation Services**                        Service Term: 12 months

| Space Type | Shared Cage |
|---|---|

| Space and Colocation Services | Quantity | NRC per Unit | NRE per Unit | Non-Recurring Charges | Monthly Recurring Charges |
|---|---|---|---|---|---|
| 19" Closed Cabinet - CAB5003 | 1 | $ 500 | $ 550 | $ 500 | $ 650 |
| Power - 20 AMP, 120 V AC - POW00 B00 | 1 | $ 200 | $ 300 | $ 200 | $ 300 |
| Power - 20 AMP, 120 V AC Incumbant - POW00010 | 1 | $ 200 | $ 180 | $ 200 | $ 180 |
| Equinix Direct Single Hi/100 VLAN - ED00004 | 1 | $ 500 | $ 250 | $ 500 | $ 250 |
|  | | $ | $ - | $ | $ - |
|  | | $ | $ - | $ | $ - |
|  | | $ | $ - | $ | $ - |
|  | | $ | $ - | $ | $ - |
|  | | $ | $ - | $ | $ - |
|  | | $ | $ - | $ | $ - |
|  | | $ | $ - | $ | $ - |
|  | | $ | $ - | $ | $ - |
| **SALES ORDER TOTAL** | | | | $ 1,400 | $ 1,380 |

This sales order (the "Sales Order") is between __Equinix Operating Co., Inc.__ ("Equinix") and the customer identified above ("Customer"), who wishes to order the products and/or services set forth above (each a "Service").

Unless otherwise agreed to by the parties in writing, each Service shall be delivered at the Internet Business Exchange Center identified above ("IBX Center"). Notwithstanding anything in this Sales Order to the contrary, this Sales Order is governed by, and incorporated by reference in, the Master Service Agreement (or the document with a similar function if no document entitled Master Service Agreement has been signed by the parties) having an effective date of __8/11/04__ 20__ between Customer and Equinix Inc., or its wholly-owned subsidiary ("Agreement"). All exhibits, addenda and policy documents referenced in this Sales Order are incorporated by reference in this Sales Order, and therefore in the Agreement. The meanings of all capitalized terms defined in this Sales Order shall apply whenever such terms are used in this Sales Order, unless otherwise stated in this Sales Order. For purposes of this Sales Order the terms "monthly recurring charges" and "MRC" may be used interchangeably, and the term "non-recurring charges" and "NRC" may be used interchangeably.

Notwithstanding anything to the contrary in the Agreement, the term of this Sales Order shall begin on the date this Sales Order is signed by both parties (the "Sales Order Effective Date"), and this Sales Order shall remain in effect until the last Service Term (as defined below) in effect expires or is terminated pursuant to this Agreement, including this Sales Order.  Each Service in this Sales Order shall have a "Service Term", which for each Service shall begin on the Billing Commencement Date (defined below) and end upon completion of the period of time designated above as the Service Term. In addition, for each Service, the initial Service Term for such Service shall automatically renew for additional terms of one (1) year each, unless either party notifies the other party at least forty five (45) days prior to the end of the then-current Service Term for such Service that it has elected to terminate the Service Term for such Service, in which event the Service Term for each Service will terminate at the end of such then-current Service Term. Notwithstanding anything to the contrary in this Sales Order, (a) Equinix's provision of any Service, and Customer's use of such Service, are at all times governed by this Agreement, even if Customer begins using such Service prior to the beginning of its Service Term and (b) under no circumstances will a Service Term for any Service survive the termination of this Sales Order.

Notwithstanding anything to the contrary in the Agreement, (a) if this Agreement expires prior to the expiration of this Sales Order's then-current term, all of the terms and conditions of the Agreement (including limitation of liability and indemnification) will continue to apply to this Sales Order and all Services, until this Sales Order expires or is terminated, and (b) if the Agreement is terminated by either party prior to its full term, then this  Sales Order, if still in effect, shall terminate upon the termination of the Agreement. Any change by Equinix to the prices set forth above shall be made in accordance with the Agreement.  Prices shown above do not include any applicable taxes, surcharges and shipping charges which are the responsibility of the Customer.

This Sales Order shall be of no force or effect unless (a) it is executed by both parties and (b) Customer and Equinix have entered into a currently effective Agreement under which this Sales Order is executed.  Customer agrees to provide Equinix access to its cage, cabinets, racks and/or equipment as necessary for the performance of the Services as set forth in this Sales Order.

*equinix*

EQ000018

| Customer Name: | Account Manager: | Sales Order Number: |
|---|---|---|
| The Face Book | Tom Offenbach | A0UGA0008U |

**Billing:**

Notwithstanding anything to the contrary, Customer's obligation to pay the total monthly recurring charges and total non-recurring charges set forth in Section A shall begin twenty-one (21) days after the Sales Order Effective Date (the "Billing Commencement Date"), even if Customer begins using the Services prior to the Billing Commencement Date.

If Equinix is unable to deliver any Service on or before the Billing Commencement Date because Customer has failed to provide Equinix with the information necessary to deliver such Service (e.g., configuration information), Customer shall be billed for such Service beginning on the Billing Commencement Date even if such Service has not been delivered.

Unless otherwise stated herein, cabinets provided by Equinix in a private cage are open cabinets, and cabinets in a shared cage are locking cabinets. If Customer requests cabinet accessories (e.g., shelves, doors, side panels, mounting rails etc.) that are not included with a cabinet as described in Equinix's specifications for such cabinet, Customer shall be charged Equinix's list price for such accessories, unless otherwise noted herein. Customer may provide its own cabinets in a private cage in accordance with Equinix's policies and procedures; however, Customer must use Equinix-provided cabinets in a shared cage.   Customer acknowledges that the prices set forth for items in Section A.1. apply even if Customer provides its own cabinets in a private cage.

**Customer to complete:**

Authorized Signature  _~MR Zck~_

Printed Name:  Mark Zuckerberg

Title:  CEO

Date Signed:  02.06.04

**Billing Information:**

Billing Contact Name:  ~DESMOND~ Mark Zuckerberg

Billing Address:  2 Russell Place
Dobbs Ferry, NY 10522

Phone Number:  914.146.3597

E-mail Address:  zuck@thefacebook.com

**Equinix to complete:**

Authorized Signature

Printed Name:  Monica Brown Andrews
Director of Customer Contracts

Title:

Date signed:  8/11/04

Please fax a signed copy of this Sales Order to:

(650) 513-1837

and mail two sets of originals to:

Equinix
Attn: Contracts
301 Velocity Way, 5th Floor
Foster City, CA 94404

Please sign and return all referenced exhibits, addenda and/or policy documents with this order. Failure to do so may result in a delay in processing.

**EQ000019**

08/09/04  12:22 FAX 65 05137905          EQUINIX                                    ☒023

Aug-06-04  01:56pm  From-                                        T-372  P.023/024  F-407

# equinix

## ED EXHIBIT (BUYER)

This is an addendum ("Addendum") to the Master Services Agreement (or document with a similar function if no document entitled "Master Services Agreement" has been signed by the parties) currently in effect between the Buyer and Equinix (the "MSA") and the accompanying Sales Order, and sets forth the specific terms and conditions governing Buyer's use of the Equinix Direct product; such terms supplement the terms also set forth on the MSA and do not supersede any terms set forth in the MSA, except as explicitly set forth herein. Terms not otherwise defined herein shall have the meaning given to them by the MSA. Upon execution and delivery of a corresponding Sales Order by Equinix and Buyer, this Addendum shall become effective between the parties.

**1.    Description of Services.** Equinix provides buyers and providers with access to an Ethernet switching infrastructure within each IBX Center (individually and cumulatively "Switch") for the purpose of allowing buyers to purchase IP services ("IP Services") provided by a variety of carriers, Internet service providers and other providers ("Network Service Providers") through the Switch. Network Service Providers may sell IP services which include both transit and on-net services. Transit being IP traffic, which transits an ISP and is terminated on a different network. On-net is traffic which is designed for and terminates on that network, not transiting to another ISP's network.

**2.    License Only; Use Restrictions.** Upon payment of the applicable fees and subject to compliance with all of the terms and conditions herein, Equinix grants Buyer a license to use the number of ports on the Switch that are specifically designated in Sales Orders that have been executed and delivered by the parties (each a "Port") and to purchase the IP Services.

**3.    Network Services.**

**3.1    IP Services.** Buyer has agreed to participate on the Switch as a Buyer in order to purchase IP Services from Network Service Providers. Buyer understands that it will be bound based on its usage of IP Services on the Switch pursuant to the Agreement and the Exchange Policies ("Policies") that are attached as Exhibit A.

**3.2    IP Allocation Solution.** If the Buyer has ordered Equinix's IP Allocation Solution, Equinix shall provide Buyer with one /24 size of IP space ("Address") to be used solely in conjunction with Buyer's use of the Equinix Direct product. Such Address shall remain the sole property of Equinix at all times. Equinix may reassign such Address at any time upon reasonable notice to Buyer. Buyer shall discontinue using such Address immediately upon termination of Buyer's use of the IP Allocation Solution. Customer understands that due to the nature of the IP Allocation Solution, traffic from Providers that do not recognize /24 blocks may be rerouted through Equinix in which case Equinix may incur a Mbps charge for such rerouting. In such event, customer agrees to pay Equinix's reasonable charges for Mbps used in connection with such rerouting including a reasonable service percentage to cover Equinix's administrative costs in administering the IP Allocation Solution.

**4.    Acceptable Use Policies.** Buyer shall at all times conform its use of the Switch to the Policies. Equinix may update such Policies from time to time upon thirty (30) days prior notice to Buyer. Buyer shall not act as a Network Service Provider on the Switch. In addition, Buyer shall at all times conform its use of the Switch and the IP Services to the Acceptable Use Policy (or similar policy) of each Network Service Provider from whom Buyer purchases IP Services.

**5.    Services, Fees and Billing.**

**5.1    Activation Charges.** Equinix will bill Buyer for all Service Activation Charges ("Activation Charges") as set forth on the Sales Order upon Equinix's acceptance of this Addendum and accompanying Sales Order. Equinix will not commence installation, or initiation of its services provided hereunder unless and until it either has received payment in full of all Activation Charges or has agreed, at its sole option, to extend credit to Buyer.

**5.2    Connection Fees.** Equinix will begin billing for recurring connection fees ("Connection Fees" or "MRF") as stated on the Sales Order. Buyer may be required from time to time to add additional Ports to the Switch pursuant to the Policies.

**(a)    IP Services Payments.** Equinix will bill Buyer for its IP Service usage per Buyer's first regular invoice issued after the close of each billing period. The payment terms set forth in the MSA shall govern this Addendum.

**5.3    Pricing Adjustment.** Equinix reserves the right to change any recurring amounts due hereunder (except for IP Services prices which will change subject to the policies) upon each anniversary of this Addendum provided it gives Buyer at least thirty (30) days prior notice of such change.

**5.4    Billing Cycle.** The billing period for recurring amounts hereunder, and for the billing of Buyer by Equinix, shall be from the first to the last day of the calendar month.

**6.    IP Services Buying.** Equinix is the provider of record with Buyer for all purposes under the Addendum. However, Buyer shall have sole control over the Network Service Providers it connects to on the Switch. Buyer's relationship with such Network Service Providers shall be governed by the Addendum and the Policies, but such relationship shall not be a contractual relationship.

**7.    Limited Service Level Warranty.**

**7.1    Equinix SLA.** Equinix shall provide the SLA described in the Policies.

**7.2    Network Service Provider IP Service SLA's.** To the extent that a Service Level Agreement is provided by Provider for IP Services offered on the Switch (each SLA's will be based on the Buyer parcel with each Network Service Provider's pricing), Buyer may claim service level credits with respect to such Network Service Provider's service level commitments in the event that the Network Service Provider does not meet its service levels ("SLAs"). In order to obtain any service credits provided, Buyer shall request any applicable credits in writing from Equinix within ten (10) days of any breach of the relevant SLAs (this provision shall supersede any contrary language in any Provider SLA posted on the Equinix Direct portal) and such request shall include a trouble ticket number from the Equinix ERC that was given to Buyer when its trouble was first reported to Equinix. In the event that Provider confirms such request, Buyer shall be given a credit on its next monthly invoice.

**7.3    No Other Warranty.** EXCEPT FOR THE EXPRESS WARRANTIES SET OUT IN THIS SECTION, EACH PARTY'S SERVICES ARE PROVIDED ON AN "AS IS" BASIS, AND EACH PARTY'S USE OF THE SWITCH OR THE IP SERVICES IS AT ITS OWN RISK. PROVIDER AND EQUINIX DO NOT MAKE, AND HEREBY DISCLAIMS, ANY AND ALL OTHER EXPRESS AND IMPLIED WARRANTIES, INCLUDING, BUT NOT LIMITED TO, WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, NONINFRINGEMENT, ACCURACY, RELIABILITY AND ANY WARRANTIES ARISING FROM A COURSE OF DEALING, USAGE, OR TRADE PRACTICE. NEITHER PARTY WARRANTS THAT ITS SERVICES, IP SERVICES OR THE SWITCH WILL BE UNINTERRUPTED, ERROR-FREE, OR COMPLETELY SECURE.

**7.4    Disclaimer of Third Party Actions and Control.** Equinix does not and cannot control the flow of data to or from the networks of the Network Service Providers or other third parties and other portions of the Internet. Such flow depends in large part on the performance of Internet services provided or controlled by third parties. At times, actions or inactions caused by these third parties can degrade situations in which Equinix customers' connections to the Internet (or portions thereof) may be impaired or disrupted. Although Equinix will use commercially reasonable efforts to take actions it deems appropriate to remedy and avoid such events, Equinix cannot guarantee that they will not occur. Accordingly, Equinix, on behalf of itself and any Network Service Provider or other Customer, disclaims any and all liability resulting from or related to such events.

**8.    Indemnification.**

**8.1    Buyer Indemnification.** Buyer will defend, indemnify and hold harmless Equinix, its directors, officers, and employees from and

EQ000020

against any and all claims, actions or demands brought against such parties, or any damages, costs, and fees arising therefrom, alleging: (a) with respect to the Buyer's business: (i) infringement or misappropriation of any third party intellectual property rights; (ii) defamation, libel, slander, obscenity, pornography, or violation of the rights of privacy or publicity of a third party; or (iii) spamming, or any other offensive, harassing or illegal conduct or violation of the Policies; (b) any damage or destruction to any network, Switch, Equinix Equipment or to any other Equinix customer (including, without limitation, any Network Service Provider or Buyer of services on the Switch) which damage is caused by or otherwise results from acts or omissions, including, without limitation, a breach of this Addendum or the Policies, by Buyer, Buyer Representative(s) or Buyer's designees; (c) any personal injury or property damage to any Equinix employee or Equinix property arising out of Buyer or its employees conduct while on Equinix premises, unless such injury or property damage is caused solely by Equinix's gross negligence or willful misconduct.

8.2  Procedure. The foregoing indemnities shall be subject to the indemnified party providing the indemnifying party with (a) prompt written notice of each covered claim of which it becomes aware, and (b) sole right of defense and settlement of any covered claim.

9.  Reliance on Disclaimer, and Indemnification Obligations. Buyer acknowledges that Equinix has set its prices and entered into this Addendum in reliance upon the limitations and exclusions of liability, the disclaimers of warranties and damages and Buyer's indemnity obligations set forth herein, and that the same form on essential basis of the bargain between the parties. The parties agree that the limitations and exclusions of liability and disclaimers specified in this Agreement will survive and apply even if this Agreement is found to have failed of their essential purposes.

10.  Termination. In addition to the termination provisions of the MSA, the following shall apply to this Exhibit:

10.1  For Nonpayment. After five (5) days of written notice and continued nonpayment after the due date for Connection Fees, Activation Fees, IP Service fees or other fees, Equinix may disconnect Buyer from the Port. To re-enable Service, Equinix may require a reconnection fee.

10.2  Unacceptable Use; Bankruptcy. Equinix may terminate this Addendum upon written notice to Buyer for a violation of the Policies that Equinix believes in its reasonable opinion to be harmful to the operation of the Switch or to other customers or if Buyer becomes the subject of a voluntary petition in bankruptcy or any voluntary proceeding relating to insolvency, receivership, liquidation, or composition for the benefit of creditors or becomes the subject of an involuntary petition in bankruptcy or any involuntary proceeding relating to insolvency, receivership, liquidation, or composition for the benefit of creditors, if such petition or proceeding is not dismissed within sixty (60) days of filing.

10.3  Effect of Termination. Upon the effective date of expiration or termination of this Addendum: (a) Equinix and Buyer will immediately cease providing the Services. In the event of a termination prior to the expiration of any fixed term minimum commitment IP Services entered by Buyer on the Switch, Buyer shall immediately pay all amounts that will come due under such commitments through the entire term that was selected by Buyer with respect thereto.

10.4  Survival. The following provisions will survive any expiration or termination of the Agreement: Sections 6.7-.3, 7.4, 8, 10 and 11.

11.  Miscellaneous. This Addendum, together with the Policies referred to herein, the MSA, any applicable Sales Order represents the complete agreement and understanding of the parties with respect to the subject matter herein, and supersedes any other agreements or understanding, written or oral. This Agreement may be modified only through a written instrument signed by both parties. Notwithstanding anything to the contrary in the MSA, Buyer agrees that Equinix may announce its use of the Equinix IBXnet product. Issue a press release noting Buyer's use and Buyer agrees to reasonably assist Equinix by providing quotations or other information reasonably requested by Equinix in marketing the service described herein. Buyer also agrees that Equinix may inform providers of the identities of the various buyers on the Switch and Buyer understands that Providers may limit their availability to specific buyers.

Company Name: _Thefacebook, Inc_

Buyer Signature: _MZ R_

Printed Name: _Mark Zuckerberg_

Title: _CEO_

Equinix Signature: _Monica Brown Andrews_

Printed Name: Director of Customer Contracts

Title: _____

Rev 076004

2

equinix

EQ000021

# equinix

## EQUINIX DIRECT POLICIES

The following are the policies and procedures governing the use of Equinix's switching infrastructure (the "Switch") by Equinix Direct participants (each a "Participant") ("Equinix Direct Policies"). Participants shall be referred to cumulatively herein as "Participants". Additional policies and procedures governing Participants' use of the Switch may be included in the Agreement and this Sales Order (including any exhibits). Any terms not defined herein shall have the meaning attributed to them in the Sales Order or the Agreement.

### 1. General.

a. All use of the Switch by Participants shall be subject to these terms and conditions. In the event that any Participant fails to meet any of the requirements set forth in this document, Equinix may take reasonable action to correct any problem such failure may cause, including suspension or termination of Participant's use of the Switch until Participant complies with all such requirements, as set forth in these Equinix Direct Policies.

b. Equinix may make changes to these terms and conditions from time to time, provided that such changes shall not materially and adversely affect Participants' use of the Switch. Equinix shall provide Participants with at least thirty (30) days' advance written notice of such changes (except in the event of an emergency that threatens the operation of the Switch).

### 2. Equinix Responsibilities.

a. Equinix will provide Participants access to the Switch subject to the terms and conditions set forth in these Equinix Direct Policies, the Agreement and this Sales Order. Equinix will make commercially reasonable efforts to ensure that switches within the Switch have sufficient internal capacity to enable each Port (defined below) to operate at its full line rate. Equinix will make commercially reasonable efforts to manage inter-switch trunk capacity and to avoid congestion on inter-switch trunks.

b. Equinix representatives shall be available twenty-four (24) hours a day, seven (7) days a week, to receive trouble reports. The Equinix Response Center may be contacted by phone, 866-892-0807, or any other phone number designated by Equinix, in the event a Participant wishes to place a trouble report.

c. Equinix will notify Participants at least two (2) weeks prior to the occurrence of any scheduled maintenance window. Equinix will make commercially reasonable efforts to i) keep maintenance windows to a maximum of two (2) hours, a maximum of once per calendar month and at a low traffic time for the Switch, and ii) to minimize service disruptions during maintenance windows. Should an emergency arise, Equinix may take any actions necessary to diagnose and correct the problem and to restore proper network operations. In such emergencies, Equinix will endeavor to provide Participants with as much notice as is reasonably possible in the circumstances.

d. Equinix will use commercially reasonable efforts to label Ports and PDU Equipment for the Switch with appropriate information, including information needed to identify each Port clearly. Only Equinix may affix and maintain such labels.

e. Equinix will make commercially reasonable efforts to begin contacting each Participant's primary contact as designated by Customer in Customer's Switch information forms within thirty (30) minutes of identifying any problem that results in downtime on the Switch that affects Participant.

### 3. Participant Requirements.

a. Participant must provide and maintain twenty-four (24) hours each day, an operations contact, including a role account e-mail address (e.g. for a network engineer or routing engineer) and an e-mail address and telephone number for the primary contact.

b. Participant must not conduct any illegal activities through the Switch or any activities that violate any Equinix policies.

c. Participants will not conduct any activity that could interfere with or impair the equipment or connectivity of any other Participant on the Switch.

d. Participants will not take any action with the purpose of circumventing payment to Equinix for use of the Switch.

e. Participants shall not obtain or attempt to obtain unauthorized access to the Switch, or circumvent or attempt to circumvent any applicable security features.

f. Participants must have a registered AS number which must be used on the Switch. Participants must register the "aut-num" and the "route" objects with either RADB or ARIN.

g. Participants must register routes announced at the Switch with a standard routing registry, such as RADB, RIPE or APNIC.

h. Participants must only use the IP addresses and netmasks assigned by Equinix for its connection to the Switch.

i. Participants may only use one globally unique MAC address for each Port unless otherwise agreed to by Equinix in writing.

j. Participants must implement settings on its router port that is directly attached to the Switch to ensure that the router settings contain none of the following: (i) Proxy ARP, (ii) ICMP redirects, (iii) IP directed broadcasts, (iv) Spanning tree BPDUs, (v) IGP announcements, or (vi) Discovery protocols such as CDP or IRDP.

k. Participants must explicitly set all at all times maintain duplex and speed settings on interfaces connected to the Switch and disable auto-negotiation.

l. Participants must not exchange multicast routes or traffic on the Switch. Exchange of multicast routes or traffic may only occur with the prior written approval of, and in coordination with, Equinix in order to ensure that resource allocation to multicast is appropriate.

m. Participants will not generate unnecessary route flap or unnecessarily specific routes to peers across the Switch.

n. Participants shall comply with all reasonable technical specifications for the use of the services as provided to Participants from time to time. The current technical specifications for the services shall be provided to Participant upon request.

o. Participants may only connect their Equipment to the Switch. Participants may not connect any equipment for the benefit of a third party and they may not sublicense or resell access to any Port. For the avoidance of doubt, no port shall support directly or indirectly any business other than that of the Participant such that each customer gained access to the Switch shall be required to purchase its own Port from Equinix. Each Participant shall be solely responsible for ensuring that all equipment connected by such Participant conforms to the standards and requirements set forth herein.

p. Participants shall maintain a permanent connection to the Switch via a direct connection to a router located in the IBX

M2

EQ000022

08/09/04  12:01 FAX 65Ó5137905          EQUINIX                              ☑002

Aug-06-04   01:48pm   From-                                    T-372  P.002/024  F-407

(each a "Port". As to Providers and any Buyers that buy a redundant port, the word "Port" shall mean a pair of redundant ports). For Providers, each individual physical port shall be connected as a separate router. If a Participant acts as both a Buyer and a Provider (only with the approval of Equinix) it shall maintain individual physical ports (with associated routers) for its use as a Buyer and a Provider. There are 2 possible scenarios to meet this requirement:(1) Physical Provider ports must be on separate routers from Buyer physical port(s) equaling 3 ports, 3 routers or (2) Physical Provider ports must be on separate routers and Buyer side must haves 2 separate physical ports on those same routers equaling 4 ports, 2 routers. A Participant must connect to the Equinix Direct Switch with a separate physical port for Equinix Direct and Equinix GigE Exchange, if applicable.

q.  Participants are required to peer with the Equinix route servers, and to announce to the Equinix route servers, the routes that are to be advertised to other customers connected to the Switch.

r.  Buyers and Providers will conduct all peering and transit across the Switch using the BGP4 protocol via the route servers. Traffic may only be forwarded to and from routes that are exchanged using the BGP4 protocol. A Buyer using additional full routing table BGP sessions to transit providers will be limited to 3 additional sessions, outside of primary aggregated 2 sessions with EDRS.

s.  Providers shall comply with the following IP address announcement policies:  (i) for on-net services, Providers shall announce only their on-net prefixes to the Equinix Route Server and Provider shall accept prefixes from the Equinix Route Server but shall not re-announce to its transit peers and (ii) for transit services, Providers shall announce the entire routing table to the Equinix Route Server, and Providers shall accept prefixes from Equinix Route Server and shall re-announce to its transit peers.

t.  A Provider shall be required to upgrade its Port if such Provider's ninety-fifth (95th) percentile monthly capacity equals or exceeds seventy percent (70%) of such Port's capacity usage for two (2) consecutive months or eighty (80%) for any one month. A Port upgrade shall mean an upgrade from a 10/100 Port to a GigE Port rather than an additional 10/100 Port. In the event a Provider is already connected through an GigE Port an upgrade shall mean the purchase of an additional Port. In the event of a failure by a Provider to upgrade, Equinix may, in its discretion, discontinue allowing new customers to purchase bandwidth from Provider. In addition, all the Service Level Commitment (defined below) shall not apply.

u.  Buyers are recommended to upgrade its Port if Buyer's ninety-fifth (95th) percentile monthly capacity equals or exceeds seventy (70%) of such Port's capacity usage for two (2) consecutive months or eighty (80%) for any one month. The Service Level Commitment shall not apply if Buyer fails to perform such upgrade.

**4.  Equinix Direct Pricing Requirements**

a.  The billing period will be from the first of the month to the last day of the calendar month (the "Billing Period").

b.  Providers may change their pricing before the 15th of the current Billing Period and such pricing shall be effective at the beginning of the next Billing Period. The price changes must be submitted to Equinix via user portal, by the 15th of each month. On the 16th of each month, an announcement will be sent via email to every Buyer on the platform, informing them of new Providers and existing Provider price changes. Providers may not change any pricing for the following Billing Period after such notice has been sent to Buyers. All Provider price changes will be activated on the first day of each billing period.

c.  Providers may install between the 1st – 15th of each month. If a Provider installs outside of this window, an expedite fee will apply.

d.  Buyers may install between the 16th – last day of each month. If a Buyer installs outside of this window, an expedite fee will apply.

e.  Buyers may change their Provider settings in advance for each Billing Period provided the change is made between the 16th and last day of the prior Billing Period.

f.  If a Provider's price change has been submitted but is not yet in effect, such Provider will login to the user interface and amend such price change. If a Buyer preference change has been submitted but is not yet in effect, such Buyer may login to the user interface and amend such preference requests.

g.  Providers shall provide a product with no minimum bandwidth usage requirements and 30-day term requirements.

h.  Bandwidth usage for both Providers and Buyers will be calculated based on the following formula: Equinix will measure bandwidth usage in five-minute intervals on all points of connection between each MAC pair between Buyer Port and selected Provider Port (first sample is 12:05 am and last sample is 12:00 am.). Equinix will measure both incoming and outgoing bandwidth usage at each interval. At the end of each Billing Period, all data samples in each category will be sorted from highest to lowest and the top five percent (5%) of measurements will be discarded. The highest remaining data sample in the higher of the two categories will constitute the bandwidth usage amount for the relevant Billing Period. Buyers will be billed each Billing Period per Port based on their usage of each Provider's services. Providers will receive a statement of the cumulative bandwidth usage from all Buyers on each Port and an invoice for each Billing Period.

The following example illustrates a calculation using 40 samples. The top 5% (2 samples) in bold are discarded. The next highest usage in italics for both Inbound and Outbound are evaluated. The higher of Inbound and Outbound in italics is the 95th percentile billing usage.

**Highest 5% of the samples - 2 of 40 samples:**

Highest sample below 5% - or the 3rd highest sample

95th percentile billing usage: 48Mbps

| | | |
|---|---|---|
| 1 | 2.5 | 23 |
| 2 | 2.8 | 25 |
| 3 | 2.6 | 28 |
| 4 | 2.4 | 24 |
| 5 | 2.3 | 28 |
| 6 | 2.7 | 28 |
| 7 | 2.6 | 50 |
| 8 | 2.9 | 29 |
| 9 | 3 | 32 |
| 10 | 3.2 | 33 |
| 11 | 3.1 | 35 |
| 12 | 3.2 | 37 |
| 13 | 3.8 | 36 |

MT

EQ000023

| 14 | 3.2 | 35 |
|----|-----|----|
| 15 | 3.4 | 36 |
| 16 | 3.8 | 35 |
| 17 | 3.8 | 39 |
| 18 | 3.8 | 38 |
| 19 | 3.6 | 38 |
| 20 | 3.5 | 39 |
| 21 | 3.9 | 40 |
| 22 | 4   | 39 |
| 23 | 4.1 | 41 |
| 24 | 4.5 | 43 |
| 25 | 4.2 | 42 |
| 26 | 4.1 | 43 |
| 27 | 4.8 | 44 |
| 28 | 4.6 | 45 |
| 29 | 4.2 | 47 |
| 30 | 4.9 | 48 |
| 31 | 5   | 43 |
| 32 | 4.7 | 44 |
| 33 | 4.2 | 41 |
| 34 | 4.5 | 40 |
| 35 | 4.8 | 38 |
| 36 | 4.5 | 38 |
| 37 | 4.2 | 37 |
| 38 | 4.1 | 36 |
| 39 | 3.8 | 35 |
| 40 | 3.5 | 33 |

i.   Exceptions. If, for a given Billing Period, the average of the discarded top 5% of samples for a Buyer (using the 95th percentile calculation described herein) is greater than twice the 95th percentile calculation (as calculated in Section h above), Equinix reserves the right to bill Buyer based on the average of the discarded top 5% samples instead of using the 95th percentile calculation. The following are examples of traffic patterns which would fall under the alternate billing calculation method (the application of this section shall not be limited solely to these examples).

i.   Example 1.



| 95th Percentile | 0.881200063 |
|-----------------|-------------|
| Peak | 3.777722364 |
| Average of Discarded Top 5% (A) | 1.80-636 |
| Percent Difference of | 64.55 % |
| Average of Top 5% from 95th Percentile | |

(|A – 95th|)/|A|*100 > 60%)

ii.   Example 2.



| 95th Percentile | 1 |
|-----------------|---|
| Peak | |
| Average of Discarded Top 5% (A) | 2.62036901 |
| Percent Difference of | 60.22% |
| Average of Top 5% from 95th Percentile | |

(|A – 95th|)/|A|*100 > 60%)

j.   Traffic Accounting.

i.   Equinix will bill the Buyer based on the total traffic that it sends from its MAC address in each Port to each selected Provider Por.

ii.   Total traffic measurement for any Provider will be the sum of the 95th percentile calculations for each service offered by Provider on the Switch.

k.   Minimum Commitments.

i.   Providers. Providers may choose to offer minimum usage and term products on the Switch. In the event such products are offered, Provider shall honor the pricing offered for the term of the offer and shall maintain its connection to the Switch until such time as all such minimum terms selected by Buyers have been satisfied.

ii.   Buyers. In the event a Buyer chooses to purchase a minimum usage and term product on the Switch, Buyer agrees that it shall be fully liable for all minimum payments due with respect to such product for the entire term of such product regardless of Buyer's actual usage of the services.

EQ000024

5.   **Limited Service Level Warranty.**

a.   Service Level Agreement. In the event that a Participant's Port is a redundant Port, the Port will be up and available and passing traffic among at least one of the ports in the Port and other operational ports 99.999% of the time in each calendar month (the "Service Level Commitment"). Non-redundant ports are not subject to this Service Level Commitment

b.   Service Level Credit

i.    For the purpose of these Equinix Direct Policies, an "Outage" is defined as the occurrence of a failure of any component of the Port or Switch (that prevents delivery of Participant's traffic to required ports) on both ports comprising the Port simultaneously, excluding regularly scheduled maintenance windows of which the Participant is given prior notice, that causes the Port to miss the Service Level Commitment in any given calendar month.

ii.   In the event of an Outage, Equinix shall credit Participant's account for one-half of the Monthly Recurring Charges for the affected Port (excluding all non-recurring fees charged pursuant to the relevant Sales Order or based on Customer's usage) for the appropriate Billing Period.

iii.  The maximum credit Equinix will issue per Billing Period is one month of Monthly Recurring Charges (or of prorated amount if applicable for the Billing Period during which a qualifying Outage was experienced) attributable to each Port that experiences the Outage.

c.   Service Level Procedures

i.    Equinix Reporting. Equinix will report key Switch traffic flow metrics, including total bits per second and total packets per second ("Flow Metrics") on the Switch website. Flow Metrics will be reported to each Participant online on a web page customized for such Participant on the Equinix Direct website.

ii.   Participant Reporting. Participant will be required to report Outages within five (5) days of the date of their occurrence by contacting the Equinix Response Center. Equinix may investigate and isolate the cause of an Outage. If the investigation confirms that Equinix's act or omission caused the Outage, Equinix will credit Participant's account pursuant to Section 5(b) above. If the investigation confirms that the Outage is due to Participant's act or omission or Participant's equipment, Equinix shall not owe Participant a credit for the Outage.

d.   Exceptions. Notwithstanding anything to the contrary, the Service Level Commitments shall not apply (and Equinix shall have no liability) in the following cases: (a) acts of God; (b) war or acts of terrorism, including any malicious attack of on-line systems control; (c) labor strikes or other labor action; (d) fire; (e) flood; (f) earthquake, landslide, earth movement, hurricane, typhoon, tsunami, volcanic eruption or other natural disaster; (g) circumstances beyond Equinix's reasonable control or (h) riot or civil                                                unrest.

**Customer to complete:**

*By signing below, Customer acknowledges receipt of this Exhibit.*

Submitted By:  _Mark Zuckerberg (signature)_

(*Authorized Signature*)

Printed Name:  _Mark Zuckerberg_

Company Name:  _Thefacebook, Inc._

Date Signed:  _08.06.04_

EQ000025



# Order Confirmation

| Customer Name: | Account Manager: | | Order Number: |
|---|---|---|---|
| THE FACE BOOK, INC. | Tom Offenbach | | The Face Book-EO--277424 |

| #N/A SJO  #N/A | Order Date: 01/10/05 | Customer Contact: Taner Halicioglu | Billing Commencement Date: January 15, 2005 |
|---|---|---|---|

This Order Confirmation confirms that on the Order Date set forth above (the "Order Date"), the Customer Contact set forth above, who is authorized to place orders on behalf of the customer named above (the "Customer"), ordered the following services from Equinix (the "Services") via ☐ telephone ☒ the Equinix Customer Care Portal. Customer will be billed for the Services beginning on the Billing Commencement Date set forth above. Equinix's provision of the Services and Customer's use of the Services shall be subject to the Master Service Agreement (or the document with a similar function if no document entitled Master Service Agreement has been signed by the parties) currently in effect between Customer and Equinix. Notwithstanding anything to the contrary in the Agreement, the term applicable to each Service shall begin on the Order Date and end when Customer's license to use the licensed space into which such Service is installed expires or terminates pursuant to the Agreement.

| Services Ordered | Quantity | NRC per Unit | MRC per Unit | Non-Recurring Charges | Monthly Recurring Charges |
|---|---|---|---|---|---|
| Cross Connect (CAT, Fiber, Coax) - CC90002 | 1 | $500 | $250 | $500 | $250 |
| | | $0 | $0 | $0 | $0 |
| | | $0 | $0 | $0 | $0 |
| | | $0 | $0 | $0 | $0 |
| | | $0 | $0 | $0 | $0 |
| | | $0 | $0 | $0 | $0 |
| | | $0 | $0 | $0 | $0 |
| | | $0 | $0 | $0 | $0 |
| Total | | $0 | $0 | $500 | $250 |

To complete the order for the Services and confirm your agreement with the contents of this Order Confirmation, please complete one of the following procedures:

**E-mail Confirmation:**

Send a reply e-mail with (1) an electronic copy of this Order Confirmation attached and (2) the words "Confirmed and Approved" in the body of the e-mail. It is not necessary to fill in the information below if you choose to confirm by e-mail.

or

**Fax Confirmation:**

(1) Print this Order Confirmation;
(2) Have it signed by an authorized representative;
(3) Complete the remainder of the signature block; and
(4) Fax it to +1 (650) 240-3900.

**Customer agrees that the individual who sends an e-mail confirmation or signs a fax confirmation is authorized to amend the Order(s) as contemplated herein. Equinix will not process the order for the Services until this Order Confirmation is returned to Equinix using one of the procedures set forth above.**

Authorized Signature _____

Printed name:    Authorized Signature

Title: _____

Date signed: _____

EQ000026