The Facebook, Inc. v. Connectu, LLC et al Doc. 99

Scott R. Mosko (State Bar No. 106070)
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, L.L.P.
Stanford Research Park
3300 Hillview Avenue
Palo Alto, California 94304
Telephone: (650) 849-6600
Facsimile: (650) 849-6666

Attorney for Defendants Pacific Northwest Software, Inc. and Winston Williams

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FACEBOOK, INC., and MARK ZUCKERBERG,<br><br>Plaintiffs,<br><br>v.<br><br>CONNECTU LLC, (now known as CONNECTU, INC.), CAMERON WINKLEVOSS, TYLER WINKLEVOSS, DIVYA NARENDRA, PACIFIC NORTHWEST SOFTWARE, INC., WINSTON WILLIAMS, WAYNE CHANG, DAVID GUCWA, and DOES 1-25,<br><br>Defendants. | CASE NO. C 07-01389 RS<br><br>**DEFENDANTS PACIFIC NORTHWEST SOFTWARE, INC.'S AND WINSTON WILLIAMS'S REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**<br><br>Date: July 11, 2007<br>Time: 9:30 a.m.<br>Dept.: 4<br>Judge: Hon. Richard Seeborg |

Doc. No. 465435
DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
Case No. 07 CV 01389 (RS)

Dockets.Justia.com

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 1

A. Plaintiffs Fail to Present Any Facts Allowing this Court to Exercise Specific Jurisdiction over Defendants ..... 1

1. Plaintiffs cannot meet their burden to satisfy the first and second prong of the specific jurisdiction test ..... 2

2. The assertion of personal jurisdiction over moving defendants would be unreasonable ..... 10

B. Plaintiffs have not Met Their Burden to Establish that This Court May Exercise General Jurisdiction Over Defendants ..... 11

III. CONCLUSION ..... 16

Doc. No. 465435

i

DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
Case No. 07 CV 01389 (RS)

## TABLE OF AUTHORITIES

### FEDERAL CASES

*AT&T v. Compagnie Bruxelles Lambert*,
94 F.3d 586 (9th Cir. 1996) ....................4

*Abrams Shell v. Shell Oil Co.*,
165 F.Supp.2d 1096 (C.D. Cal. 2001) ....................15

*Amoco Egypt Oil Co. v. Leonis Navigation Co.*,
1 F.3d 848 (9th Cir. 1993) ....................12

*Bancroft & Masters, Inc.*,
45 F.Supp.2d 1181 .................... 12

*Bancroft & Masters, Inc. v. Augusta National, Inc.*,
223 F.3d 1082 (9th Cir. 2000) ....................2, 4, 5

*Brainerd v. Governors of the University of Alberta*,
873 F.3d 1257 (9th Cir. 1989) ....................5

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985)....................2

*CFA N. Cal., Inc. v. CRT Partners LLP*,
378 F. Supp. 2d 1177 (N.D. Cal. 2005)....................15

*Calder v. Jones*,
465 U.S. 783 (1984)....................2, 5

*Calloway Golf Association v. Royal Canadian Golf Association*,
125 F.Supp.2d 1194 (C.D.Cal. 2000) ....................2, 6, 7

*Caruth v. International Psychoanalytical Association*,
59 F.3d 126 (9th Cir. 1995) ....................10

*Churchhill Village, L.L.C. v. General Exec. Co.*,
169 F.Supp.2d 1119 (N.D. Cal. 2000)....................14

*Coremetrics, Inc. v. AtomicPark.com*,
370 F.Supp.2d 1013 (N.D. Cal. 2005)....................13, 16

*Core-Vent v. Nobel Indus. AB*
11 F.3d 1481 (9th Cir. 1993) ....................10

*Data Discount, Inc. v. Systems Technology Associates, Inc.*,
557 F.2d 1280 (9th Cir. 1977) ....................4

*Dole Food Co., Inc. v. Watts*,
303 F.3d 1104 (9th Cir. 2002) ....................2, 5

*Gates Learjet Corp v. Jensen*,
743 F.2d 1325 (9th Cir. 1984) ....................14

Doc. No. 465435

ii

DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
Case No. 07 CV 01389 (RS)

*Gator.com. Corp v. L.L. Bean, Inc.*,
341 F.3d 1072 (9th Cir. 2003) ....................12

*Goldberg v. Cameron*,
482 F.Supp.2d 1136 ....................5, 6

*Helicopteros Nacionales de Colombia v. Hall*,
466 U.S. 408 (1984)....................12, 13

*Ijjen Tech. Co. Ltd. v. Advanced Engine Management*,
270 F.Supp.2d 1189 (S.D.Cal.2003)....................14

*International Shoe Co. v. Washington*
326 U.S. 310, 318 ....................11

*Lake v. Lake*,
817 F.2d 1416 (9th Cir. 1987) ....................1

*Panavision International, L.P. v. Toeppen*,
141 F.3d. 1316 (9th Cir. 1998) ....................2, 6, 7, 10, 11

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 803 (9th Cir. 2004) ....................1, 2, 12

*Sher v. Johnson*,
911 F.2d 1357 (9th Cir. 1987) ....................1

*Shute v. Carnival Cruise Lines*,
897 F.2d 377 (9th Cir.1990) *rev'd on other grounds*, 499 U.S. 585, (1991) ....................14

*Tercica, Inc. v. Insmed Incorporated*,
2006 U.S. Dist. LEXIS 41804 (N.D.Cal. 2006) ....................13

*United States v. Calaway*,
524 F.2d 609 (9th Cir. 1975), *cert. denied*, 424 U.S. 967 (1976)....................2

*United States v. Dixon*,
562 F.2d 1138 (9th Cir. 1977) ....................2

*Ziegler v. Indian River County*,
64 F.3d 470 (9th Cir. 2001) ....................12

**STATE CASES**

*Pavlovich vs. Superior Court*
29 Cal.4th 262 ....................6, 7

# I. INTRODUCTION

Plaintiffs have failed to meet their burden of presenting competent prima facie evidence that will allow this Court to conclude it has either specific jurisdiction or general jurisdiction over moving Defendants Pacific Northwest Software, Inc. ("PNS") or Winston Williams.

Plaintiffs do not submit competent evidence that defendants committed intentional acts targeted at plaintiffs *whom defendants knew to be residents of California*. The only relevant evidence elicited during the court-ordered limited discovery related to jurisdiction established that moving Defendants believed Plaintiffs to be Massachusetts residents. This Court cannot exercise specific jurisdiction over Defendants.

Plaintiffs have also failed to provide competent evidence to support a finding of general jurisdiction. This exacting standard, which the Ninth Circuit has rarely concluded can be met when applied to foreign companies, requires a finding that defendant's contacts with the forum were so substantial, continuous and systematic that they would be central to said defendant's business. General jurisdiction cannot be found to exist regarding these moving Defendants. Their motion to dismiss should now be granted.

# II. ARGUMENT

## A. Plaintiffs Fail to Present Any Facts Allowing this Court to Exercise Specific Jurisdiction over Defendants

The Ninth Circuit has a three-prong test for analyzing a claim of specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 803, 802 (9th Cir. 2004), citing *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987). The plaintiff bears the burden of satisfying the first two prongs of the test. *Sher v. Johnson*, 911 F.2d 1357, 361 (9th Cir. 1987). If the plaintiff fails to satisfy

Doc. No. 465435

1

DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
Case No. 07 CV 01389 (RS)

either of these prongs, personal jurisdiction is not established in the forum state. If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to prove that the exercise of jurisdiction would not be reasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78, (1985).

**1. Plaintiffs cannot meet their burden to satisfy the first and second prong of the specific jurisdiction test**

The first prong, sometimes referred to as "the purposeful direction or available" requirement was created to "ensure[] that a nonresident defendant will not be haled into court based upon 'random, fortuitous or attenuated' contacts with the forum state." *Id.* at 475. To satisfy the first prong, a plaintiff in a tort case must submit competent evidence[1] to meet the "effects test," initially articulated by the Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984). (*Panavision International, L.P. v. Toeppen*, 141 F.3d. 1316, 1321 (9th Cir. 1998), noting that the *Calder* test applies "in tort cases") The "effects" test requires that plaintiff provide competent evidence to show that (a) the defendant has committed an intentional act, (b) expressly aimed at the forum state, (c) causing harm that the defendant knows is likely to be suffered in the forum state. *Schwarzenegger,* 374. F.3d at p. 803, quoting *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002).

Plaintiffs effectively argue the first prong is satisfied because the documents they submit show that moving Defendants should have foreseen the effects of their alleged acts would be felt in California. However, the Ninth Circuit has required "something more" than the forseeability concept urged by Plaintiffs. The effects test requires that a plaintiff prove defendant's acts were expressly aimed at the forum state. "Express aiming" is satisfied "when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff *whom the defendant knows to be a resident of the forum state*." *Bancroft & Masters, Inc. v. Augusta National, Inc.*, 223 F.3d 1082, 1087 (9th

---

[1] Plaintiffs have the burden to produce evidence establishing a prima facie case that personal jurisdiction can be asserted against these moving Defendants. *Calloway Golf Association v. Royal Canadian Golf Association*, 125 F.Supp.2d 1194, 1202 (C.D.Cal. 2000) "Prima facie" means "substantial independent evidence, other than hearsay." *United States v. Dixon*, 562 F.2d 1138, 1141 (9th Cir. 1977) citing *United States v. Calaway*, 524 F.2d 609, 612 (9th Cir. 1975).

Cir. 2000) *(emphasis added).* Plaintiffs cannot meet this burden as the unrefuted evidence shows moving Defendants believed Plaintiffs were located in Massachusetts.

Plaintiffs accuse[2] Winston Williams and PNS, both citizens of Washington state, of developing a software application that entered their website. The SAC alleges that defendants "knew plaintiffs were located in California and that the harmful effects would be felt by Plaintiffs in California." (SAC, ¶¶ 7, 8) This accusation is insufficient to allow the Court to exercise jurisdiction over moving Defendants. At his deposition, Mr. Williams provided the only testimony relevant to the effects test:

> Q All right. And were you ever made aware where Facebook was located?
> A I was told they were located in Massachusetts.
> Q When were you told they were located in Massachusetts?
> A I don't know.
> Q All right. Were you ever made aware that they were located actually in Palo Alto?
> A Long after. Only recently was I ever notified that they were located in Palo Alto. (Mosko Decl. Exh. A, 95: 2-12)

And, in his supplemental declaration, filed July 6, 2007, Mr. Williams further confirmed that this Court cannot exercise jurisdiction over him:

> Prior to being named as a defendant in this lawsuit, I did not know the location of Facebook, Inc., or any entity owning or having an interest in the websites www.thefacebook.com or www.facebook.com; . . . I have never met Mark Zuckerberg, and do not know and have never known where he resides. (Williams Suppl. Decl. ¶¶ 2 and 3)

At all relevant times, Mr. Williams was performing work on behalf of co-Defendant PNS. One of the principals at PNS, John Taves has also submitted a supplemental declaration, filed on July 6, 2007 regarding its lack of knowledge of Plaintiffs' location:

---

[2]Moving Defendants filed their motion to dismiss shortly after Plaintiff Facebook, Inc. filed the First Amended Complaint ("FAC"). This Court temporarily postponed the hearing date on this motion to allow Plaintiff to take limited discovery. Thereafter, this Court granted co-Defendant ConnectU, LLC.'s motion dismiss. On May 30, 2007, Plaintiff Facebook, Inc. and a new plaintiff, Mark Zuckerberg filed a Second Amended Complaint ("SAC"). Although moving Defendants' motion was directed at the FAC, this Court re-calendared the hearing on their motion to dismiss after the SAC was filed, apparently intending to apply its ruling on this motion to the Second Amended Complaint ("SAC"). Moving Defendants therefore cite to the SAC as the operable pleading in this motion.

Doc. No. 465435

3

DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
Case No. 07 CV 01389 (RS)

> PNS is informed that Facebook, Inc. alleges that its principal place of business is in California. PNS has never been told of this contention, and did not learn of it until it was served with the First Amended Complaint. Until served with the First Amended Complaint, PNS had no knowledge of where Facebook Inc. was organized, or where its principal place of business was located. PNS has never met Plaintiff Mark Zuckerberg and has never been told nor has never learned where Mr. Zuckerberg lives or resides. (Taves Suppl. Dec. ¶ 3)

For purposes of meeting their burden of presenting competent prima facie evidence of jurisdiction, Plaintiffs' cannot rely on their conclusory allegations in the SAC. While the uncontroverted allegations in the complaint must be taken as true in a motion to dismiss for lack of personal jurisdiction (*AT&T v. Compagnie Bruxelles Lambert,* 94 F.3d 586, 588 (9th Cir. 1996)), the Court may not assume the truth of such allegations if they are contradicted by affidavit. *Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977). Here, the unrefuted *testimony* provides that neither PNS nor Mr. Williams had knowledge where either plaintiff resided. Because Plaintiffs have failed to meet their burden to prove moving Defendants knew they were residents of California, this Court cannot exercise personal jurisdiction over them. *Bancroft & Masters, Inc.*, 223 F.3d at 1087.

In fact, the Opposition even fails to provide competent evidence that either plaintiff was a California resident or citizen at the appropriate time. While the SAC alleges Facebook Inc.'s principal place of business is in California and that Zuckerberg is a California resident, the evidence in support of the Opposition suggests otherwise. Plaintiffs cite and attach an August 2004 contract for servers to operate the website, signed by "CEO" Mark Zuckerberg. (Cooper Decl. Exh. 4, at p. EQ000019) However, that contract reflects the mailing address for Mr. Zuckerberg and apparently the corporation to be "Dobbs Ferry, N.Y." *Id.* Further, TheFacebook, Inc.'s bylaws, also signed by Zuckerberg provide, in section 1.1, "The registered office of the corporation shall be in the City of Wilmington, county of New Castle, State of Delaware." (Mosko Decl. Exh. B at 2107) Under these circumstances, this Court cannot conclude that either plaintiff was located in California at the time the alleged activities occurred. Pursuant to the authorities cited above, including *Bancroft & Masters, Inc.,* 223 F.3d at 1087, moving Defendants' motion must be granted.

Doc. No. 465435

4

DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
Case No. 07 CV 01389 (RS)

None of the cases cited by Plaintiffs can change this result. Plaintiffs' Opposition cites *Dole Food*, 303 F.3d 1104, for the proposition that they need only allege intentional acts to satisfy the first prong of the *Calder* effects test. (Opp. at. page 14, lines 15 - 16). Plaintiffs mislead the Court with this reference. *Dole Food* actually cites *Bancroft & Masters, Inc.* for the applicable test in determining specific jurisdiction: "[The first prong of the *Calder* test] is satisfied when 'the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state.'" *Dole Food*, 303 F.3d at 1111. Thus, both *Dole Food* and *Bancroft & Masters, Inc.* compel dismissal of moving Defendants because neither knew where Plaintiffs were located.

Plaintiffs also cite *Brainerd v. Governors of the University of Alberta*, 873 F.3d 1257 (9th Cir. 1989), a case arising out of the Arizona District Court. This case will not support Plaintiffs' position. In *Brainerd*, the charging allegations concerned negative remarks about a former University of Alberta professor who moved to Arizona to accept a tenured position there. The statements that gave rise to the action were made telephonically by a University of Alberta administrator to an administrator at the University of Arizona. Under these circumstances, it was quite clear that the defendant who made these allegedly disparaging remarks knew that the Plaintiff had relocated to Arizona. *Id.* at 1259. Hence there was no question that the *Bancroft & Masters* requirement had been met, i.e. that plaintiff knew defendant was "a resident of the forum state." Here, as demonstrated, moving Defendants had no knowledge where Plaintiffs were located so they could not have known the effects of the alleged activities would be felt in California.

Plaintiffs further cite *Goldberg v. Cameron*, 482 F.Supp.2d 1136, for the proposition that under the circumstances of this case, specific jurisdiction could be found "even though defendants did not know that plaintiff was within the specific district." (Opp, at p. 15, lines 15 - 16) Plaintiffs' argument must be rejected. *Goldberg* involved a plaintiff who contended his copyrighted works were used in three full-length motion pictures referred to as *The Terminator* trilogy. Judge Whyte, in accepting the allegation of copyright infringement, as he was obligated to do, concluded that because it was reasonable to assume that the infringing works would be released and distributed in the Northern District of California, the first prong of *Calder* had been satisfied. However, none of

the so-called facts cited in Plaintiffs' Opposition support the application of *Goldberg* in this case. Plaintiffs do not allege copyright infringement. They do not contend that the information allegedly taken by Defendants was projected to theaters throughout the Northern District. If Plaintiffs are arguing jurisdiction exists because (a) email addresses from California schools were downloaded, or (b) emails were sent to students at California schools, this argument is ineffective. First, no case law exists to support the expansion of the copyright cases such as *Goldberg* to such extent. Further, Plaintiffs fail to submit prima facie evidence (*See, Note l, supra*) tying the downloading of email addresses or the sending of emails to moving Defendants[3]. Simply put, copyright cases such as *Goldberg* cannot be applied to the case at issue. *See also Calloway Golf Association*, 125 F.Supp.2d 1194.

The final case Plaintiffs rely upon, again without justification is *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316 (9th Cir. 1998). In *Panavision*, the Ninth Circuit exercised specific jurisdiction over the defendant for allegedly registering a domain name using the plaintiff's trademark, and thereby attempting to exploit money from the plaintiff. *Id.* The court held that the defendant "likely" knew that the alleged conduct would injure the plaintiff, a manufacturer of television and motion picture equipment, in California because the movie and television business is centered in California. *Id.* As an initial matter, there was at least one very important fact in *Panavision* that is not present here. In *Panavision*, the plaintiff had sent a letter to the plaintiff in California "demanding $13,000 to release his registration of Panavision.com." *Id.* at 1323. Thus, the defendant in *Panavision* not only expressly aimed his conduct at the plaintiff, but he was also aware that the plaintiff was located in California, therefore expressly aiming his conduct at California and satisfying the second prong of the effects test. *See Pavlovich v. Superior Court*, 29 Cal.4th 262, 278 n. 6 (distinguishing *Panavision* because its facts included additional evidence of "express aiming" other than the fact that the movie industry was centered in California). Here, on

---

[3] See discussion of Plaintiffs' purported evidence listed a - m, below.

the contrary, there is no such evidence demonstrating that the Defendants knew that Plaintiffs were in California.

Plaintiffs argue that because PNS's Chief Executive Officer, John Taves, allegedly "was told" that his alleged conduct affected not only the Facebook website, but also affected Friendster, another "California-based social network," that Pacific Northwest should have known that its alleged acts would have an effect in California. (Opp. at 16.) Plaintiffs argue that like the defendant in *Panavision*–who should have known that any conduct affecting a business associated with the movie industry would be felt in Hollywood–the Defendants should have known that any of their alleged conduct would have an effect in Silicon Valley. (*Id.*) This argument fails. The website in question, thefacebook.com, now known as facebook.com was registered and launched from the east coast. (Mosko Decl. Exh. C, Counterclaim beginning at ¶ 15) As late as August, 2004, Plaintiffs represented their address to be on the east coast. (Cooper Decl. Exh. 4, p.19). Moreover, there is no evidence supporting Plaintiffs' contention that "Silicon Valley" be considered the home of all websites, as compared to Hollywood being the home of the movie industry. Hence, this Court cannot presume that the Defendants' knowledge that they were affecting a social network (or multiple social networks) equates to knowledge and intent to affect California. *See also Calloway*, 125 F. Supp.2d at 1201 (distinguishing *Panavision* and stating that "[a]ssuming plaintiff's facts are true, they do not give rise to a well-known geographical concentration of golf manufacturing akin to the television and movie industry, known throughout the world as centered in Hollywood."); *see also Pavlovich*, 29 Cal.4th at 278, 58 P.3d at 13.

Obviously admitting they have no evidence that PNS or Mr. Williams knew Facebook, Inc. or Zuckerberg were residents of California, Plaintiffs attempt to direct this Court's attention away from the facts requiring dismissal. They piece together a "trial brief", loaded with duplicative references to documents that do not concern the issues related to jurisdiction. Moreover, these documents are either hearsay and/or unauthenticated and lacking in foundation[4]. The duplicative

---

[4] See the accompanying Objections to Plaintiffs' evidence, filed concurrently with this reply.

Doc. No. 465435

7

DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
Case No. 07 CV 01389 (RS)

and repetitive citations serve only to obscure these issues, proving that Plaintiffs have no case but are simply hoping their confusing paper will convince the Court they must have something. They don't.

Plaintiffs refer the Court to the following documents and testimony in their Opposition. As shown, none represent competent prima facie evidence (*see note 1, supra*) allowing this Court to exercise jurisdiction over moving Defendants:

a. A print out of what appears to be an email from David Tuffs to nick@imarc.net and marc@imarc.net. (Cooper Decl. Exh. 10) Plaintiffs fail to provide any foundation as to who these people are. The statements in this email are pure hearsay. While the print out identifies what appears to be over 500 email addresses, there is no competent evidence or foundation that ties this document to moving Defendants, or that moving Defendants had any involvement with unsupported claims made in this document,

b. An email from thefacebook.com team to Jared Ross identifying "unusual activity" on his account. (Cooper Decl. Exh. 14, p. 4243) This email fails to tie any activity to moving Defendants,

c. A print out of what appears to be portions of an Instant Message ("IM") string between "drttol" and "David Gucwa". (Cooper Decl. Exh. 18). These portions lack foundation, are unauthenticated, and fail to tie any activity to moving Defendants,

d. An unauthenticated email from Wayne Chang which fails to tie moving Defendants with any California activity. (Cooper Decl. Exh. 19 at 15),

e. An email from Cameron Winklevoss which also fails to tie moving Defendants with any California activity. (Cooper Decl. Exh. 19 at 842),

f. An unauthenticated and largely unreadable flowchart which fails to tie any activity to moving Defendants. (Cooper Decl. Exh. 19, at 2096) Plaintiffs' Opposition, at page 5 provides unsupported commentary about this document that lacks foundation,

g. Certain pages of what appears to be computer script that are unauthenticated and lack foundation. (Cooper Decl. Exh. 19, at 310177, 310455, 310185 - 86, 310177 - 79, 281469 - 73) There is no evidence that any portion of this script has run, or that moving Defendants had anything

Doc. No. 465435

8

DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
Case No. 07 CV 01389 (RS)

to do with it. Plaintiffs' conclusions as to the effect of this script are unsupported and lack foundation. Further, no expert testimony is provided as to what these scripts represent,

h. A print out of what appears to be an email from Hanah Kim to Thomas Chang. (Cooper Decl. Exh. 25) Plaintiffs fail to provide competent evidence of who these people are, or how this document is relevant to jurisdiction. Further, no evidence is presented that ties this document to moving Defendants,

i. A printout of what appears to be a list of email addresses with several additional columns. (Cooper Decl. Exh. 25) Plaintiffs fail to provide any testimony tying this list to moving Defendants, or whether in fact any email address on this printout was actually used,

j. An illegible document, the title of which appears to be "Time by Job Detail." (Cooper Decl. Exh. 19, at l767) Plaintiffs fail to prove the information on this document represents that moving Defendants targeted California users,

k. A print out of what appears to be an email string between Cameron Winklevoss and Wayne Chang. (Cooper Decl. Exh. 14, at 10359) This string is unauthenticated, lacks foundation and fails to show moving Defendants had any connection with California,

l. A print out of what appears to be another email string between John Taves, Cameron Winklevoss and Wayne Chang. (Cooper Decl. Exh. 14 at 8392) This string is unauthenticated, lacks foundation and fails to show moving Defendants had any connection with California,

m. A print out of what appears to be another email between Wayne Chang and Winston Williams. (Cooper Decl. Exh. 14 at 8657) This email is unauthenticated, lacks foundation and fails to show moving Defendants had any connection with California.

None of these documents, either by themselves or taken together, even if they qualified as competent prima facie evidence, which they do not, can be interpreted to show that the first two prongs of the specific jurisdiction test have been satisfied. Plaintiffs have failed to meet their burden. Moreover, even if they do satisfy the first two prongs, this Court still cannot exercise personal jurisdiction over moving Defendants because such exercise would be unreasonable.

**2. The assertion of personal jurisdiction over moving defendants would be unreasonable**

An analysis of the seven reasonableness factors concerning specific jurisdiction should result in a finding that it would be in violation of moving Defendants' due process rights to force them to try this case in California. *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128-29 (9th Cir. 1995) If this case is tried in California, Mr. Williams, the primary actor on behalf of PNS would not attend because he could not afford to travel to California and stay here for any length of time.

(i) Purposeful injection: The Ninth Circuit instructs, "even if there is sufficient 'interjection' into the state to satisfy the purposeful availment prong, the degree of interjection is a factor to be weighed in assessing the overall reasonableness of jurisdiction under the reasonableness prong." *Panavision*, 141 F.3d at 1323 (quoting *Core-Vent v. Nobel Indus. AB*, 11 F.3d 1482, 1488 (9th Cir. 1993)). As shown above, moving Defendants had no intention to cause any impact in California as they had no knowledge that Plaintiffs were located here. This factor should be resolved in their favor.

(ii) Burden on Defendants of Litigating in California: This is a unique case in that the alleged primary actor, Mr. Williams would be deprived of his right to attend this case if it is litigated here. As his supplemental declaration indicates, Mr. Williams has very limited means to support himself. He is not currently employed, but instead sporadically assists others by writing computer programs. When he is employed, it is usually for a limited time. Most of his recent clients are from the greater Seattle area, and his ability to attract work is directly related to others in the Seattle area introducing him to potential clients, and his personally meeting with said clients. If forced to leave Seattle for longer than a few days, Mr. Williams' ability to earn a living would be substantially impaired. Moreover, Mr. Williams is not in a position to pay for an airplane ticket to go anywhere, including San Jose, California, or rent a hotel room. (Williams Suppl. Decl. ¶¶ 4, 5) Hence, Mr. Williams would be unable to defend himself because of the financial constraints imposed on him if this case continues in California. As such, it would be unreasonable for this case to be tried in California. *Caruth*, 59 F.3d 126, 128-29.

(iii) Conflicts of law/Sovereignty: At best, this is a neutral factor for the parties.

(iv) Forum State's interest: Given Plaintiffs' equivocal position of their residency and citizenship, California has no real interest in this litigation, even if the alleged facts are true. The facts that allegedly gave rise to this action were mostly felt on the east coast where the website in question was launched. *See* Mosko Decl. Exh. C, particularly counterclaim beginning at 15.

(v) Most efficient judicial resolution: Indeed, the most efficient judicial resolution in this case would be for this Court to stay the action until the Massachusetts action, filed approximately one year prior is resolved. Undoubtedly, the Massachusetts case will necessarily resolve this action. (See Joint Case Management Conference Statement, filed June 29, 2007.)

(vi) Plaintiff's interest in convenient and effective relief: Plaintiffs have filed this action simply to cause undue hardship on other defendants because of the Massachusetts action, *Id.*. They are effectively "double litigating" most issues, as they have effectively pled the same underlying facts in the Massachusetts case as the ones supporting this action. (Mosko Decl. Exh. D, pp. 12-15) See Supplemental Response to Interrogatory No. 18. In any event, the Ninth Circuit has noted that, in evaluating the convenience and effectiveness of relief for the plaintiff, it has "given little weight to the plaintiff's inconvenience." *Panavision*, 141 F.3d at 1323.

(vii) Existence of an alternative forum: Several alternate forums exist including Washington state and Massachusetts.

As demonstrated, this Court cannot find it appropriate to compel these moving Defendants to try this case in California.

**B. Plaintiffs have not Met Their Burden to Establish that This Court May Exercise General Jurisdiction Over Defendants**

The Ninth Circuit sets forth the test for general jurisdiction as follows:

> For general jurisdiction to exist over a nonresident defendant . . ., the defendant must engage in "continuous and systematic general business contacts" that "approximate physical presence" in the forum state. This is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world.

*Schwarzenegger*, 374 F.3d at p. 801 (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 318). General jurisdiction does not exist absent a showing of pervasive contacts. *See, e.g.,*

*Gator.com. Corp v. L.L. Bean, Inc.*, 341 F.3d 1072, 1075-77 (9th Cir. 2003) (general jurisdiction requires an "approximation of physical presence"); *Amoco Egypt Oil Co. v. Leonis Navigation Co.*, 1 F.3d 848, 851 n.3 (9th Cir. 1993) (noting courts have "regularly declined to find general jurisdiction even where the contacts were quite extensive").

As with specific jurisdiction, Plaintiffs have the burden to provide prima facie evidence upon which this Court can rely to assert general jurisdiction over moving Defendants. *Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir. 2001); *Bancroft & Masters, Inc.*, 45 F.Supp.2d at p. 1181. Plaintiffs have not and cannot meet their burden.

From the time PNS was organized in 1998 until the present, PNS has been a small entity with 2 principals, each of whom reside in Washington state. PNS has always been in the business of writing software. At the time PNS was organized, the principals intended to concentrate their efforts on serving entities in and around the greater Seattle, Washington area. The vast amount of the entities for whom PNS has provided services are located in the Northwestern part of the United States. (Taves Supp. Decl. ¶ 4) PNS primarily serves 5 clients, none of which are located in California. (Taves Supp. Decl. ¶ 4) PNS has served approximately 100 clients in its history, 12% of whom may have had California contacts. (Cooper Decl. Exh. 12: p. 307: l. 22 - 308 l. 6)

PNS responded to interrogatories calling for the identification of its clients who had California contacts. (Cooper Decl. Exh. 22, p. 5). None of these clients provided a significant portion of the total revenues PNS has generated. And, while these and all clients were and are undoubtedly important, PNS did not consider any of these identified clients to be "major" as far as its business and capabilities to survive are concerned. (Taves Suppl. Decl. ¶ 5).

Moreover, PNS has never maintained an agent for service of process in California. It has never owned, leased, possessed or maintained any real or personal property in California. Nor has it owned, leased or maintained an office in California. PNS has never paid taxes in California, nor has it maintained any type of bank accounts or telephone listing in California. (Taves Decl., filed March 21, 2007)

With these facts, Plaintiffs have not met their burden of presenting competent prima facie evidence that PNS has "continuous and systematic general business contacts" that "approximate

physical presence" in California. *Schwarzenegger*, 374 F.3d at p. 801. An application of the Supreme Court's exacting standard for general jurisdiction is found in *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, (1984), where that Court required the forum-related activities to be "central to the defendant's business" before a finding of general jurisdiction could be supported. In *Helicopteros,* the defendant had solicited helicopter services in Texas, negotiated its contract for services there, had purchased about 80 % of its helicopters, spare parts, and accessories for more than $4 million from a Texas company over an eight year period, and regularly sent employees to Texas for training and to bring back helicopters. The Supreme Court there concluded general jurisdiction did not exist. Nor can it be asserted against moving Defendants here.

In relying upon *Helicopteros,* the Northern District of California states that before it may exercise jurisdiction over a foreign defendant, and force that defendant to respond to a complaint, that defendant's activities in California "must be the bread and butter of its daily business." *Coremetrics, Inc. v. AtomicPark.com*, 370 F.Supp.2d 1013, 1024 (N.D. Cal. 2005). Where a defendant's activities in California are "not central to the defendant's business", a California court may not exercise jurisdiction over that defendant. *Id.* Plaintiffs here have failed to present any competent evidence that would allow this Court to conclude PNS's limited California contacts are "the bread and butter of its daily business." Indeed, PNS primarily serves five "major" clients, none of which are located in California. (Taves Suppl. Decl. ¶ 5)

Plaintiffs admit that no more than 7.5% of PNS's total revenues generated in its nearly ten years of existence has come from companies with California contacts. (Opp. p. 20, lines 19 - 20) Obviously recognizing such a low number could hardly be considered significant such that it would justify this Court exercising jurisdiction over PNS, Plaintiffs cleverly re-packaged this figure as "average annual revenue." However, Plaintiffs fail to cite any cases that support a finding of general jurisdiction with such number manipulation. In fact, to the extent the cases analyze numbers in determining whether general jurisdiction can be found, the courts look at total fees generated in the forum. *See e.g. Tercica, Inc. v. Insmed Incorporated*, 2006 U.S. Dist. LEXIS 41804 (N.D.Cal. 2006), where the court refused to find general jurisdiction over a Delaware corporation even though approximately 20% of the activity which generated income for the defendant emanated from

Doc. No. 465435

13

DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
Case No. 07 CV 01389 (RS)

individuals in California, and 15% to 20% of the income this Delaware defendant recognized came from this California activity. Comparing the *Tercica* numbers to those from PNS: Out of the 100 clients PNS has served only 12% were from California, who generated only 7.5% of PNS's total revenues.

Indeed, even where a defendant's sales in California constituted 10% of its total sales of dishwashers, or approximately 300,000 units, Judge Patel concluded that these in-state sales were "insufficient to establish a nexus with California." *Churchhill Village, L.L.C. v. General Exec. Co.*, 169 F.Supp.2d 1119, 1127 (N.D. Cal. 2000). *See also, Shute v. Carnival Cruise Lines,* 897 F.2d 377, 381 (9th Cir.1990) *rev'd on other grounds,* 499 U.S. 585, (1991), where the Ninth Circuit held that there were insufficient contacts to justify an exercise of general jurisdiction despite the fact that the defendant cruise line advertised in the forum, dealt with travel agents in the forum, and sold approximately 2% of its cruises in the forum; and *Injen Tech. Co. Ltd. v. Advanced Engine Mgmt.*, 270 F.Supp.2d 1189, 1194 (S.D.Cal. 2003), noting that sales by defendant to forum state, which accounted for only 2% of its total business, are not the kind of ' systematic and continuous' contacts that would warrant the exercise of general jurisdiction.

Plaintiffs also try to latch onto PNS's minimal use of California-based contractors to perform services as a basis for this Court to assert jurisdiction over it. In the nearly ten years PNS has been inexistence, only six individuals in California have provided contract services for PNS. (Cooper Decl. Exh. 22, p. 4) PNS describes all except one or two as "journey men contractors" who "provided services for only a short time before pursing other ventures." (Tave Suppl. Decl. ¶ 7) These attenuated contacts with California do not provide a sufficient basis for this Court to exercise jurisdiction over PNS. Companies who provide sales training and encourage forum residences to solicit sales on their behalf are not involved in continuous and systematic activity that approximates physical presence in the forum state. *Shute,* 897 F.2d at 381. Plaintiffs must prove that defendants established a regular place of business in California. *Gates Learjet Corp v. Jensen*, 743 F.2d 1325, 1331 (9th Cir. 1984). Plaintiffs have not met their burden based on the one or two California contractors who have provided regular service to PNS.

Doc. No. 465435

14

DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
Case No. 07 CV 01389 (RS)

Plaintiffs further argue that PNS's limited interest in a California entity should result in a finding for general jurisdiction. Notably, as with the other assertions in their argument for general jurisdiction, Plaintiffs' argument is without support. At least one California court has concluded that a foreign company's 50% ownership of a California entity will not result in a finding that the foreign company does business in California. *Abrams Shell v. Shell Oil Co.*, 165 F.Supp.2d 1096, 1109 (C.D. Cal. 2001) The *Shell* court refused to conclude such ownership established the minimum contacts test particularly with no evidence that the 50% owned California entity actually did business in California on behalf the owner-company. Here, the only evidence provided by Plaintiffs reveals that PNS *may* have a 10% ownership interest in Records Portal, purportedly a California entity. The hearsay evidence supporting this 10% interest argument also provides that such interest may have been acquired "for half of the development fees incurred." Even if this hearsay evidence is admissible, the Court cannot infer that Records Portal performs any business on behalf of PNS. Plaintiffs have the burden to so prove. Indeed, the evidence submitted reveals that the purported 10% interest may never have been perfected. (Cooper Decl. Exh. 21 at 268: 9 - 15)

Plaintiffs remaining arguments purporting to support a finding of general jurisdiction over PNS must also be rejected. Plaintiffs claim that signing a contract with Google, which provides for the application of California law and venue in the event of a dispute should convince this Court to assert jurisdiction over PNS. Similar arguments were found unpersuasive in *CFA N. Cal., Inc. v. CRT Partners LLP*, 378 F. Supp. 2d 1177, 1185 (N.D. Cal. 2005). In the *CRT Partners* case, the court concluded that although defendant signed 18 franchise agreements with a California choice of law and venue clause, California courts could not exercise general jurisdiction over the contracting party. Judge Wilken made this finding despite defendant's annual trips to California, and specific interaction with entities located in California, including the ordering of supplies from California. *Id.*

Finally. Plaintiffs argue that PNS has a virtual business, which apparently should be interpreted to mean that it exists everywhere, which should convince this Court to exercise general jurisdiction. Similar to their other arguments, this too is unsupported by any authority. Although PNS has performed sporadic work in California in the past, and may be willing to perform future work here, this will not suffice to support a finding that California is "central to its business", or that

California represents the "bread-and-butter of its daily business." *Coremetrics, Inc. v. AtomicPark.com,* 370 F.Supp.2d at 1024. This motion must be granted because Plaintiffs have failed to provide sufficient evidence supporting such a claim.[5]

## III. CONCLUSION

For the foregoing reasons, this Court should now dismiss PNS and Winston Williams from this action.

Dated: July 6, 2007

FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, L.L.P.

By: /s/
Scott R. Mosko
Attorneys for Defendants
Pacific Northwest Software, Inc., and Winston Williams

---

[5] To the extent Plaintiffs are asserting that this Court should exercise general jurisdiction over Defendant Winston Williams with the above-referenced arguments, for the same reasons they should be rejected regarding PNS, they should also be rejected regarding Mr. Williams. Otherwise, Plaintiffs make no argument that this Court can exercise general jurisdiction over Mr. Williams.

Doc. No. 465435

16

DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
Case No. 07 CV 01389 (RS)