# Exhibit B

OHS West:260138169.1

LEXSEE

JAMES S. GORDON, Jr., a married individual, d/b/a 'GORDONWORKS.COM';
OMNI INNOVATIONS, LLC., a Washington limited liability company, Plaintiffs, v.
VIRTUMUNDO, INC., a Delaware corporation, d/b/a
ADNOWLEDGEMAIL.COM; ADKNOWLEDGE, INC., a Delaware corporation,
d/b/a AKNOWLEDGEMAIL.COM; SCOTT LYNN, an individual; and JOHN
DOES, 1-X, Defendants.

CASE NO. CV06-0204JCC

UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF
WASHINGTON

2006 U.S. Dist. LEXIS 34095

May 24, 2006, Decided
May 24, 2006, Filed

**SUBSEQUENT HISTORY:** Motion denied by, Motion granted by, in part, Motion denied by, in part, Claim dismissed by *Gordon v. Virtumundo, Inc., 2006 U.S. Dist. LEXIS 89494 (W.D. Wash., Dec. 8, 2006)*

**COUNSEL:** [*1] For James S Gordon, Jr, a married individual doing business as gordonworks.com, Omni Innovations LLC a Washington Limited Liability Corporation, Plaintiffs: Robert J. Siegel, MERKLE, SIEGEL & FRIEDRICHSEN, SEATTLE, WA.

For Virtumundo Inc, a Delaware corporation doing business as adknowledgemail.com, Adknowledge Inc, a Delaware corporation doing business as adknowledgemail.com, Scott Lynn, an individual, Defendants: Derek Alan Newman, NEWMAN & NEWMAN, SEATTLE, WA.

**JUDGES:** John C. Coughenour, United States District Judge.

**OPINION BY:** John C. Coughenour

**OPINION**

**ORDER**

This matter has come before the Court on Defendants' Motion to Dismiss for Lack of Personal Jurisdiction under *Rule 12(b)(2)* (Dkt. No. 8), Plaintiffs' Opposition thereto (Dkt. No. 11), and Defendants' Reply (Dkt. No. 17). The Court has considered the briefs, declarations, and exhibits submitted by the parties and determined that oral argument is not necessary. For the reasons that follow, the Court DENIES Defendants' motion to dismiss.

**I. BACKGROUND**

Plaintiffs James S. Gordon, Jr. ("Gordon") and Omni Innovations, LLC ("Omni") have brought this action for alleged violations of the Federal Can-Spam Act of 2003, *15 U.S.C. §§ 7701-11* [*2], the Washington Commercial Electronic Mail Act ("CEMA"), *WASH. REV. CODE 19.190.010-110*, and the Washington Consumer Protection Act. Gordon is a Washington resident and registrant of the internet domain gordonworks.com ("Gordonworks"). Gordonworks is an interactive computer service and internet access service that, among other functions, provides e-mail accounts to individuals. (Am. Compl. (Dkt. No. 15) P 3.4.) The internet domain server on which the Gordonworks domain resides is owned by Omni.[1]

    1  Unless otherwise indicated, this Order's references to "Plaintiffs" includes both Gordon and Omni.

Defendants Virtumundo, Inc. ("Virtumundo") and

Case 5:07-cv-01389-RS     Document 109-3     Filed 07/10/2007     Page 3 of 8

Page 2
2006 U.S. Dist. LEXIS 34095, *2

Adknowledge, Inc. ("Adknowledge") are non-Washington-resident businesses that provide online marketing services to third-party clients. Virtumundo is a Delaware corporation with its principal place of business in Kansas. Adknowledge is also a Delaware corporation with its principal place of business in Missouri. Virtumundo [*3] and Adknowledge are separate corporate entities and currently have no relationship with one another. [2] Virtumundo and Adknowledge market products for their clients by transmitting e-mails to interested consumers. Their services are permission-based-meaning that consumers must voluntarily provide their contact information to the companies and must also specify the subject matter of the ads that they are interested in receiving. In the past two years, Virtumundo has derived a portion of revenue from business activities conducted in Washington. Defendant Scott Lynn ("Lynn") is a Missouri citizen and serves as Chief Executive Officer of Defendant Adknowledge. He is also the sole shareholder of both companies. [3]

> 2  Defendants specifically state that "Adknowledge, Inc. and Virtumundo, Inc. are two separate corporate entities and *currently* have no relationship to each other." (Defs.' Mot., Brandt Decl. P 7 (emphasis added).) Defendants do not address whether the two entities *formerly* had a relationship to one another. Plaintiffs' allegations are that some relationship did exist between the two.

[*4]
> 3  Unless otherwise indicated, this Order's references to "Defendants" includes Acknowledge, Virtumundo, and Lynn.

Plaintiff Gordon alleges that between August 21, 2003, and February 15, 2006, he received approximately 6000 misleading, unsolicited e-mail ads from Defendants that were transmitted through Omni's domain server to his e-mail address "james@gordonworks.com," [4] as well as to other individuals using Gordonworks for domain hosting. (Pls.' Opp'n, Gordon Decl. P 10; Am. Compl. P 3.7.) Gordon alleges that he has sent approximately 200 direct e-mail requests to various Virtumundo e-mail addresses to cease transmission of all e-mails, but that the e-mails nevertheless persisted, even after the filing of the present action. [5] These e-mails allegedly were sent to various addresses under the Virtumundo domain name. [6]

> 4  The record is not clear as to precisely how these e-mails were procured. While Plaintiff Gordon alleges that he had no prior business relationship with either Virtumundo or Adknowledge, he also states that he was "tricked" into subscribing to various prize websites.

[*5]
> 5  Defendants point out, and the Court has noted, Plaintiffs' tendency to exaggerate claims in its briefing. (*E.g., compare* Pls.' Opp'n 3 (claiming to have sent "literally thousands" of cease-and-desist e-mails), *with* Pls.' Opp'n, Gordon Decl. P 7 (claiming to have sent 200 cease-and-desist e-mails).) While these exaggerations and inconsistencies are not fatal to Plaintiffs' efforts to defeat the instant motion, the Court is concerned with Plaintiffs' imprecision in their representations to the Court. Plaintiffs' Counsel is instructed to ensure that future filings comply with the dictates of *Federal Rule of Civil Procedure 11(b)*.
> 6  The addresses were abuse@virtumundo.com, legal@virtumundo.com, postmaster@virtumundo, and webmaster@virtumundo.com. Defendants deny ever having received these e-mails. Plaintiff Gordon alleges, however, that the e-mails never "bounced" back to him, suggesting that Defendant Virtumundo did receive these e-mails.

## II. ANALYSIS

### A. Applicable Legal Standards

When a district court acts on a defendant's [*6] motion to dismiss without holding an evidentiary hearing, the plaintiff must only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss. *Tuazon v. R.J. Reynolds Tobacco Co., 433 F.3d 1163, 1168 (9th Cir. 2005)*. Under this standard, the plaintiff must provide evidence that, if believed, would support jurisdiction over the defendant. *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd., 328 F.3d 1122, 1129 (9th Cir. 2003)*. Unless directly controverted, a plaintiff's version of the facts is to be taken as true. *Doe v. Unocal Corp., 248 F.3d 915, 922 (9th Cir. 2001)*. Conflicts between the facts contained in the parties' affidavits, as well as all reasonable inferences, must be resolved in the plaintiff's favor. *Id.*

In order for a court to exercise jurisdiction over nonresident defendants, jurisdiction must be conferred by an applicable rule or statute. *Sec. Investor Prot. Corp. v.*

*Vigman, 764 F.2d 1309, 1313-14 (9th Cir. 1985)*. Where, as here, there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district **[*7]** court sits. *FED. R. CIV. P. 4(k)(1)(A)*; *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd., 328 F.3d 1122, 1129 (9th Cir. 2003)*. In addition, an assertion of jurisdiction must accord with constitutional principles of due process. *Id.* Federal due process requires that a nonresident defendant have minimum contacts with the forum state of such a nature that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)*. The constitutional test may be satisfied by showing that (1) the defendant has "substantial" or "continuous and systematic" contacts with the forum state, or (2) there is a strong relationship between the defendant's forum contacts and the cause of action. *Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 839 (9th Cir. 1986)*. The former is known as "general" jurisdiction and the latter as "specific" jurisdiction. *See Ziegler v. Indian River County, 64 F.3d 470, 473 (9th Cir. 1995)*.

### B. General Jurisdiction

A court may constitutionally **[*8]** assert general jurisdiction over a nonresident defendant only when the defendant's contacts with the forum state are so substantial and of such a nature as to justify suit in the forum state, even if the cause of action before the court arises from dealings entirely distinct from those activities. *Int'l Shoe Co., 326 U.S. at 318*. Plaintiffs have not opposed Defendants' general jurisdiction argument. Accordingly, this Court will only address the issue of specific personal jurisdiction.

### C. Specific Jurisdiction

This Court may only exercise specific jurisdiction over a nonresident defendant if jurisdiction is proper under Washington's long-arm statute and comports with federal due process principles. Washington's long-arm statute, *Revised Code of Washington section 4.28.185*, permits the assertion of personal jurisdiction to the extent permitted by due process, except where limited by the terms of the statute. *Omeluk v. Langsten Slip & Batbyggeri A/S, 52 F.3d 267, 269 (9th Cir. 1995)* (citing *Deutsch v. W. Coast. Mach., 80 Wn.2d 707, 497 P.2d 1311, 1314 (Wash. 1972))*. Accordingly, "the statutory and constitutional standards **[*9]** merge into a single due process test." *Shute v. Carnival Cruise Lines, 897 F.2d 377, 380 (9th Cir. 1990)*, *rev'd on other grounds*, *499 U.S. 585, 111 S. Ct. 1522, 113 L. Ed. 2d 622 (1991)*. The Ninth Circuit has held that in order to establish specific jurisdiction, a plaintiff must demonstrate that (1) the defendant *has purposefully availed* itself of the privilege of conducting activities in the state; (2) the claim *arises out of or* results from the defendant's forum-related activities; and (3) the exercise of jurisdiction would be reasonable. *Omeluk, 52 F.3d at 270*.

### 1. Purposeful Availment

The purposeful availment requirement ensures that Defendants will not be "haled into a jurisdiction through random, fortuitous, or attenuated contacts." *Ziegler, 64 F.3d at 473* (internal quotation omitted). In cases involving the assertion of personal jurisdiction primarily on the basis of internet activity, the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of the commercial activity over the internet. *Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 419 (9th Cir. 1997)*. **[*10]** In addition, in tort cases, personal jurisdiction may attach if an out-of-forum defendant merely engages in conduct aimed at, and having effect in, the situs state. *Ziegler, 64 F.3d at 473*.

At the outset, the Court notes that it is the nonresident defendant's contacts with *the forum state* that are relevant for purposes of a personal jurisdiction analysis. *See Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1207 (9th Cir. 2006)* ("In any personal jurisdiction case we must evaluate *all* of a defendant's contacts with *the forum state*. . . .") (emphasis added). Merely demonstrating that a nonresident defendant has limited-or no-contacts with *a particular plaintiff* does not dispose of the personal jurisdiction inquiry. Having clarified that it is Defendants' contacts with the state of Washington, and not merely contacts with Plaintiffs, that are significant, the Court finds that Plaintiffs have made a prima facie showing that Defendants' internet activity amounts to purposeful availment in Washington, as follows.

Plaintiffs have alleged that each defendant "aided, abetted, assisted, and conspired with the acts **[*11]** of each other defendant" (Am. Compl. PP 1.6, 3.7), which has caused Plaintiffs to receive thousands of unsolicited e-mails through the Gordonworks domain. Defendants have attempted to attack the credibility of Plaintiffs'

evidence, but otherwise have not directly controverted the allegations that they are sending mass unsolicited e-mails to Washington citizens. Rather, both Virtumundo and Adknowledge have directed-and continue to direct-marketing e-mails to Washington residents and are thus purposefully availing themselves of the forum state in a "knowing and repeated" manner through commercial transmissions over the internet. *See Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)* ("If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper.").

Defendants' authority to the contrary is not on point. Defendants rely heavily on the recent Ninth Circuit opinion *Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414*, in arguing that e-mail, like an internet website, is of a "passive nature" and **[*12]** can be accessed from locations outside of Washington. While both an internet website and e-mail may transmit information in analogous manners, the nature of the alleged unlawful conduct at issue here renders the comparison to *Cybersell* inappropriate because Defendants are alleged to have sent *thousands* of unsolicited e-mails to Plaintiff Gordon and other Washington residents. In contrast, *Cybersell* did not involve e-mail spammers. Defendants also cite a number of cases holding that contacts through e-mail, telephone, and fax are insufficient in and of themselves to constitute sufficient minimum contacts for the assertion of personal jurisdiction. (Defs.' Mot. 7, 10-12.) Several of these cases involve mere *correspondence* by e-mail, rather than e-mail of a commercial nature, as alleged here. Such cases are thus inapposite to Defendants' arguments. Furthermore, even in those cases involving the transmission of commercial e-mails, the issue before the court was whether a *single* commercial e-mail, rather than thousands of commercial e-mails, constituted a sufficient contact for the assertion of personal jurisdiction.

Not only have Defendants reached into Washington **[*13]** by sending mass e-mails, both Virtumundo and Adknowledge acknowledge that they have generated revenue from business activity conducted in Washington. 7 Such revenue-generation from Washington further supports the conclusion that Defendants are "'purposefully deriv[ing] benefit' from their interstate activities." *Burger King v. Rudzewicz, 471 U.S. 462, 473, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)* (quoting *Kulko v. California Superior Court, 436 U.S. 84, 96, 98 S. Ct. 1690, 56 L. Ed. 2d 132 (1978))*; *see also Easter v. Am. W. Fin., 381 F.3d 948, 961 n.7 (9th Cir. 2004)* (noting the significance of deriving income from the forum state in the purposeful availment analysis).

> 7  Virtumundo has admitted that in 2004, 0.04% of its revenue was generated from Washington, and that in 2005, it derived 0.16% of its revenue from Washington. (Defs.' Mot., Brandt Decl. P 22.) Adknowledge does not provide specific figures and only states that it "does not generate any substantial percentage of its revenues from consumers" in Washington. (*Id.*, Geroe Decl. P 11.) While Adknowledge may not, in its opinion, derive "substantial" revenue from Washington consumers, its statement necessarily implies that it does derive some amount of revenue from e-mail activity directed at Washington.

**[*14]** Defendants' attempts to distance themselves from Washington are insufficient to defeat Plaintiffs' prima facie showing of jurisdiction. Adknowledge, for example, argues that it goes to lengths to remove consumers who self-report a Washington address from its e-mail lists in the hopes of minimizing contacts with Washington. (Defs.' Mot., Geroe Decl. PP 12-16.) These efforts reportedly began in 2004. However, Gordon has alleged that he already had begun receiving unsolicited e-mails as early as August 2003. Adknowledge's efforts to remove Washington e-mail addresses in 2004 has no bearing on its alleged contacts prior to that date, and Adknowledge offers no evidence suggesting that it was not knowingly sending e-mails to Washington residents before these changes were implemented. Further, while the evidence and briefing with respect to Adknowledge's actual business activity is not as developed as that regarding Virtumundo, 8 Plaintiffs have specifically alleged Adknowledge's participation in the allegedly unlawful conduct. (*See* Am. Compl. P 3.7.) Significantly, Defendants have not directly controverted these allegations, and, in fact, have acknowledged that both Virtumundo *and* **[*15]** Adknowledge have generated revenue from Washington. The Court is satisfied that Plaintiffs have sufficiently demonstrated that Adknowledge and Virtumundo purposefully availed themselves of the Washington forum.

> 8  As the Court noted *supra* note 2, Defendants have only alleged that Virtumuno and

Adknowledge are separate corporate entities that *currently* have no relationship to each other, but Defendants have remained silent as to whether a business relationship existed in the past. In light of Plaintiffs' allegations that Defendants took concerted steps to send unsolicited e-mail to Plaintiff Gordon and other Washington residents in as early as August 2003, the fact that Virtumundo and Adknowledge have no current business relationship merely begs the question as to the existence of a prior relationship, particularly during any portion of the time period at issue in this lawsuit.

Defendants' arguments that Plaintiffs have failed to provide specific evidence with respect to Defendant Lynn are also unpersuasive. [*16] "There is no bar to exercising personal jurisdiction over officers and employees of a non-resident corporation if they ha[ve] the requisite minimum contacts." *Calder v. Jones, 465 U.S. 783, 790, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984)*. Plaintiffs have alleged that Defendant Lynn is the Chief Executive Officer ("CEO") of Adknowledge and the sole shareholder *of both* entities. (Am. Compl. P 1.4.) Lynn is also alleged to have had knowledge of, directed, and authorized Virtumundo's and Adknowledge's allegedly illegal actions. (*Id.*) A corporate officer can be personally liable for torts which he authorizes or directs or in which he participates. *Coastal Abstract Serv. Inc., v. First Am. Title Ins. Co., 173 F.3d 725, 734 (9th Cir. 1999)*; accord *Johnson v. Harrigan-Peach Land Dev. Co., 79 Wn.2d 745, 489 P.2d 923 (Wash. 1971)*. Defendants have provided no evidence to the contrary, except to suggest that Defendant Lynn is the CEO only of Adknowledge. While Defendants are correct in arguing that each defendant's contacts with the forum state must be assessed individually, *Calder, 465 U.S. at 790*, Defendants have not provided any evidence from which the Court can conclude [*17] that Defendant Lynn has insufficient contacts with the forum state to support the assertion of jurisdiction over him as an individual in the present case, other than to make a conclusory argument that Plaintiffs have failed to make a prima facie showing of personal jurisdiction. Defendants have failed to directly controvert Plaintiffs' allegations supporting jurisdiction over Defendant Lynn. The foregoing applies to the John Doe Defendants as well.

Finally, Defendants attempt to argue that they did not purposefully avail themselves of the privilege of doing business in Washington because neither Gordon's e-mail address, nor the e-mail addresses of other Washington residents receiving Defendants' marketing e-mails, include any information designating the location of the recipient. As a result, Defendants argue, such e-mail could not have been targeted at a particular geographic location. Several courts have considered and rejected similar arguments in the context of lawsuits involving bulk unsolicited e-mail. *See, e.g., Verizon Online Servs., Inc. v. Ralsky, 203 F. Supp. 2d 601 (E.D. Va. 2002)*; *State v. Heckel, 122 Wn. App. 60, 93 P.3d 189 (Wash. Ct. App. 2004)*. For [*18] example, in *Heckel*, the Washington State Attorney General brought suit against an individual for alleged violations of Washington's CEMA. After the trial court imposed a permanent injunction and a civil penalty on the defendant, he appealed the trial court's decision arguing, *inter alia*, that the State failed to prove that he knew that specific e-mail addresses were registered to Washington residents. The *Heckel* court rejected this argument, noting that the defendant's argument, if taken to its logical conclusion, would produce the impracticable result of shielding offenders from liability simply where they "had no specific knowledge about particular recipients." *Heckel, 93 P.3d at 192-93*.

Similarly, in *Ralsky*, Verizon Online Services brought suit against a group of defendants in Virginia for an alleged conspiracy to transmit millions of unsolicited bulk e-mail messages to Verizon's member database through Verizon's proprietary online network. In support of their argument that a court in Virginia could not constitutionally assert personal jurisdiction, the defendants claimed that they did not know that their unsolicited bulk e-mail messages would harm [*19] servers located in Virginia, and therefore that they could not have purposefully availed themselves of the forum. The *Ralsky* court squarely rejected this argument, noting that such an argument "would allow spammers to send UBE with impunity, avoiding personal jurisdiction simply by alleging that they did not know the exact location of an ISP's e-mail servers." *Ralsky, 203 F. Supp. 2d at 620*. In particular, the *Ralsky* court was unwilling to permit tortfeasors to "escape personal jurisdiction for deliberate acts by simply pleading ignorance of where the harm of [the] action would lie." *Id. at 620 n.13*. To do so, the court reasoned, would be "fundamentally unfair." *Id. at 622*.

Like the defendants in *Heckel* and *Ralsky*,

Defendants' attempts in the present case to sidestep jurisdiction by pleading ignorance are unpersuasive. Although Virtumundo's and Adknowledge's e-mail lists might not plainly indicate to which states the e-mails are being sent, both Virtumuno and Adknowledge admit that they are aware of certain portions of their revenue coming from Washington. Further, Adknowledge's attempts to *reduce* the number **[*20]** of e-mails sent to Washington starting in 2004 clearly shows known e-mail contact with Washington both before and after those measures were implemented. Additionally, Defendants have, at all times, had access to the Washington Association of Internet Service Providers registry of e-mail addresses, which Washington courts have recognized as a valid means for ascertaining whether a particular e-mail address is owned by a Washington resident. *See Heckel, 122 Wn. App. at 69-70.*

For the foregoing reasons, the Court finds that Defendants have "purposefully availed" themselves of this Washington forum.

### 2. "Arises Out Of"

The Court must next determine whether the claims made against Defendants arise out of their Washington-related activities. In making this determination, the Court considers whether Plaintiffs' claims would have arisen "but for" Defendants' contacts with Washington. *Harris Rutsky, 328 F.3d at 1131-32.* As noted *supra*, Defendants have not directly controverted Plaintiffs' allegations that Plaintiff Gordon received from Defendants thousands of unsolicited e-mails sent to him in Washington. But for Defendants' conduct, Plaintiffs' alleged **[*21]** injury would not have occurred. The Court finds that Plaintiffs' claims arise out of Defendants' Washington-related activities.

### 3. Reasonableness

"Once it has been established that a defendant purposefully established minimum contacts with a forum . . . ' he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable' in order to defeat personal jurisdiction." *Dole Food Co., Inc. v. Watts, 303 F.3d 1104, 1114 (9th Cir. 2002).* Assessing the reasonableness of asserting jurisdiction prevents the use of jurisdictional rules "in such a way as to make litigation 'so gravely difficult and inconvenient' that a party unfairly is at a 'severe disadvantage in comparison to his opponent.'" *Core-Vent Corp. v. Nobel Indus. AB, 11 F.3d 1482, 1487 (9th Cir. 1993)* (citing *Burger King, 471 U.S. at 478*)). The Court examines seven factors to determine whether the exercise of jurisdiction is reasonable:

> (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with **[*22]** the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Id. at 1487-88.* No factor is dispositive in itself; the Court must balance all seven. *Roth v. Garcia Marquez, 942 F.2d 617, 623 (9th Cir. 1991).*

Defendants argue that the exercise of jurisdiction would be unreasonable on three grounds. First, Defendants argue that jurisdiction would not be reasonable in the present case because they have not purposefully interjected themselves into Washington state affairs. However, Plaintiffs allege, and Defendants do not directly controvert, that Defendants have transmitted thousands of unsolicited e-mails to Plaintiff Gordon and other Washington residents. Furthermore, Defendants have knowingly engaged in acts aimed at Washington residents because they have admitted that they derive revenue from their business activity in Washington. Defendants have purposefully interjected themselves into Washington.

Second, Defendants **[*23]** argue that the burden of proceeding with this litigation in Washington is substantial. The Court disagrees. It is unsurprising that a nonresident defendant would prefer to litigate an action in the state in which its principal place of business is located. However, such a preference-coupled with the assertion of a lesser burden on Plaintiffs to litigate here (*see* Defs.' Mot. 14)-is insufficient to establish the existence of a substantial burden on Defendants if they must litigate in Washington. The fact that Defendants apparently will want to call witnesses for this action who currently reside in California, New York, and Texas (*see*

*id.*) also fails to demonstrate a substantial burden of litigating in *Washington*, as this inconvenience would necessarily apply in any state in which this action ultimately proceeds. Finally, "with the advances in transportation and telecommunications and the increasing interstate practice of law, any burden is substantially less than in days past." *CE Distrib., LLC v. New Sensor Corp., 380 F.3d 1107, 1112 (9th Cir. 2004)*. Notwithstanding the fact that most or all of Defendants' witnesses may reside out of state, Defendants **[*24]** have provided evidence of no other circumstances that would indicate that litigating an action in Washington will present a substantial burden or a deprivation of due process. *See Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 379 F.3d 1120, 1136* ("[W]hile the defendant's burden in litigating in the forum is considered, it will not be deemed unreasonable unless it constitutes a deprivation of due process.") (citing *Core-Vent Corp., 11 F.3d at 1488*).

Third, and finally, Defendants argue that the efficiency of the forum also weighs against a finding of reasonableness. Defendants largely re-present the same argument they have made regarding the substantial burden of litigating in Washington. However, as with Defendants' substantial burden argument, because Defendants still must secure their California, New York, and Texas witnesses to attend a trial in the alternative forums of either Kansas or Missouri, the added efficiency of litigating this action outside of Washington would be marginal, if not nonexistent.

Defendants do not address any of the remaining reasonableness factors. Even considering these factors, the majority weigh in favor of asserting personal jurisdiction. Litigating **[*25]** this action in Washington is, without question, highly convenient for Plaintiffs, because this is where they chose to initiate the lawsuit. Furthermore, nothing in the record indicates that litigation of this matter in Washington would create sovereignty conflicts with either Missouri or Kansas. Moreover, Washington has a substantial interest in adjudicating a dispute involving the sending of thousands of unsolicited e-mails to one (or many) of its residents in violation of Washington law. Accordingly, because a majority of the reasonableness factors favor the assertion of personal jurisdiction, the Court finds that Defendants have failed to present a compelling case that the exercise of personal jurisdiction would be unreasonable in the present case.

Finally, it is apparent from the briefs that there exist a number of factual disputes in the present case that may prove dispositive later in the litigation. For example, the precise manner in which Plaintiff Gordon initially "opted-in" with Virtumundo or Adknowledge is disputed. 9 In addition, the parties dispute whether Gordon's attempt to put Defendants on notice that he did not wish to receive unsolicited e-mail was sufficient under **[*26]** the statutory language of the Federal Can-Spam Act. Although resolution of these factual disputes undoubtedly will have a significant impact on which parties ultimately succeed on the merits, the fact that such disputes exist has no bearing on the jurisdictional issue presently before the Court: whether Defendants have established sufficient contacts with Washington. Accordingly, for purposes of this *Rule 12(b)(2)* motion, the Court does not need to resolve these factual arguments.

> 9   Gordon claims that he had no prior relationship with Defendants at the time he received the initial unsolicited e-mail (Pls.' Opp'n, Gordon Decl. P 4), whereas Defendants claim that Plaintiff Gordon has misrepresented the fact that he did not opt-in with Virtumundo or Adknowledge.

### III. CONCLUSION

For the reasons set forth in this Order, Defendants' motion to dismiss for lack of personal jurisdiction is DENIED.

SO ORDERED this 24th day of May, 2006.

John C. Coughenour

United States **[*27]** District Judge