246 F. Supp. 2d 705, *; 2003 U.S. Dist. LEXIS 1624, **

LEXSEE


Positive
As of: Jul 17, 2007

**D.C. MICRO DEVELOPMENT, INC., PLAINTIFF v. MICHAEL D. LANGE, ET AL, DEFENDANTS**

**CIVIL ACTION NO. 3:02-CV-225(H)**

**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY, LOUISVILLE DIVISION**

**246 F. Supp. 2d 705; 2003 U.S. Dist. LEXIS 1624**

**January 28, 2003, Decided**

**DISPOSITION:** [**1] Defendants' motion to dismiss DENIED. Defendants' motion to transfer SUSTAINED, and this case transferred to the United States District Court for the Northern District of Georgia.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff company alleged that defendants, an individual and two competitors, tampered with the company's software, illegally obtained information about its customers' accounts, and hijacked the company's trademark logo. After removing the case from state court, defendants moved to dismiss. In the alternative, they requested transfer to the United States Court for the Northern District of Georgia.

**OVERVIEW:** The case arose out of a deteriorated business relationship formed to promote a software program. The company argued that defendants purposefully availed themselves of acting in Kentucky when the individual gained access to the company's Lexington, Kentucky server and misappropriated digital information in the form of customer lists, customer accounts, software, and source codes and then soliciting the company's customers with modified versions of the company's software. The court held that the principles laid out by the United States Supreme Court and the Sixth Circuit, as well as factually related cases in other district courts, all supported a finding of purposeful availment. Defendants knew, or reasonably could have known, that (1) the alleged hacking concerned information kept on the Kentucky server, (2) the mass e-mails were made to Kentucky residents fraudulently urging them to upgrade their product to what was effectively a separate product, and (3) the redirection of customers from the Kentucky-based website to the defendants' website would harm the company. Finally, the balance of factors weighed heavily in favor of transfer to the Northern District of Georgia.

**OUTCOME:** Defendants' motion to dismiss due to the absence of personal jurisdiction was denied, but defendants' motion to transfer was sustained.

**CORE TERMS:** software, server, personal jurisdiction, customer, forum state, website, resident, prong, trademark, availment, hacking, digital, purposefully, convenience, purposeful, e-mail, cause of action, interest of justice, nonresident, contacted, favorable, venue, partnership, hacked, principal place of business, fraudulent, analyzing, selling, upgrade, independent contractor

**LexisNexis(R) Headnotes**

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > General Overview*
*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Dismiss*
[HN1]When a court is considering a motion to dismiss without conducting an evidentiary hearing, it must review the pleadings and affidavits in a light most favorable to a plaintiff. In such cases courts must not consider facts proffered by a defendant that conflict with those offered by a plaintiff, and will construe the facts in a light most favorable to a nonmoving party.

Case 5:07-cv-01389-RS     Document 118-8     Filed 07/19/2007     Page 2 of 10

246 F. Supp. 2d 705, *; 2003 U.S. Dist. LEXIS 1624, **

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > General Overview*
*Civil Procedure > Venue > Federal Venue Transfers > Convenience Transfers*
[HN2]A district court cannot consider a motion to transfer under 28 U.S.C.S. § 1404(a) unless a court first has personal jurisdiction.

*Civil Procedure > Jurisdiction > Diversity Jurisdiction > Citizenship > General Overview*
*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > General Overview*
*Civil Procedure > Federal & State Interrelationships > Erie Doctrine*
[HN3]To determine whether personal jurisdiction exists over a nonresident defendant in a diversity action, a court must apply the law of the state in which it sits, subject to due process limitations.

*Civil Procedure > Jurisdiction > Jurisdictional Sources > General Overview*
*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
[HN4]See Ky. Rev. Stat. Ann. § 454.210(2)(a).

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
[HN5]Courts have interpreted Ky. Rev. Stat. Ann. § 454.210(2)(a) to allow the full constitutional limits for jurisdiction over nonresident defendants.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Minimum Contacts*
[HN6]To subject a nonresident defendant to personal jurisdiction without violating due process, a defendant must have "minimum contacts" with the forum such that maintenance of the suit does not offend traditional notions of fair play and substantial justice.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
[HN7]To determine whether a nonresident defendant has the requisite minimum contacts, a court employs the familiar three-part test followed in the United States Court of Appeals for the Sixth Circuit: First, a defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from a defendant's activities there. Finally, the acts of a defendant or consequences caused by a defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
[HN8]The "purposeful availment" requirement is satisfied when a defendant's contacts with the forum state are such that he should reasonably anticipate being haled into court there. The "purposeful availment" hurdle is overcome when a defendant's contacts with the forum state proximately result from actions by the defendant himself that create a substantial connection with the forum state. Thus, such deliberate contacts cannot be "random," "fortuitous," or "attenuated," however, in light of the inescapable fact of modern life that a substantial amount of business is transacted solely by mail and wire communications across state lines, the absence of physical contact or presence in the state will not defeat jurisdiction so long as the defendant is deliberately engaged in efforts within the state.

*Civil Procedure > Jurisdiction > Jurisdictional Sources > General Overview*
*Civil Procedure > Appeals > Appellate Jurisdiction > State Court Review*
*Torts > Procedure > Commencement & Prosecution > General Overview*
[HN9]The United States Supreme Court and the United States Court of Appeals for the Sixth Circuit have both recognized that the analysis shifts slightly when the application of the purposeful availment prong turns on a tort or fraud-based claim. The Supreme Court has established an "effects test" for intentional torts aimed at the forum state. The Supreme Court has held that it was proper for a California court to exercise jurisdiction over Florida reporters for The National Enquirer who the plaintiff alleged had published a libelous article. Finding that the article was drawn from California sources, and the brunt of the harm was suffered in California, the Supreme Court concluded that jurisdiction was proper because the "effects" of their Florida conduct was based in California.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*

Case 5:07-cv-01389-RS     Document 118-8     Filed 07/19/2007     Page 3 of 10

246 F. Supp. 2d 705, *; 2003 U.S. Dist. LEXIS 1624, **

*Torts > Procedure > Commencement & Prosecution > Personal Jurisdiction*
[HN10]The United States Court of Appeals for the Sixth Circuit has concluded that communications with the forum state that themselves give rise to the cause of action are sufficient to support a finding of personal jurisdiction over a non-resident defendant making the tortious contact.

*Civil Procedure > Jurisdiction > General Overview*
*Computer & Internet Law > Civil Actions > Jurisdiction > Constitutional Requirements*
*Computer & Internet Law > Criminal Offenses > Data Crimes & Fraud*
[HN11]In cases dealing specifically with computer hacking and the sending of fraudulent e-mails, at least two district courts have applied "purposeful availment" principles to find personal jurisdiction over non-resident defendants whose only contacts were premised on electronic-based torts.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
[HN12]The "arising from" requirement for personal jurisdiction is satisfied when the operative facts of the controversy arise from a defendant's contacts with the state. Only when the operative facts of the controversy are not related to a defendant's contact with the state can it be said that the cause of action does not arise from that contract.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
[HN13]When the first two elements for personal jurisdiction are met, an inference arises that the third, fairness, is also present; only the unusual case will not meet this third criterion.

*Civil Procedure > Venue > Federal Venue Transfers > General Overview*
[HN14]See 28 U.S.C.S. § 1404(a).

*Civil Procedure > Venue > Federal Venue Transfers > Convenience Transfers*
*Civil Procedure > Venue > Motions to Transfer > Convenience of Parties*
[HN15]Analyzing a 28 U.S.C.S. § 1404(a) motion is a two-step inquiry. First, a court must determine whether the action might have been brought in the venue that the movant seeks to transfer to. Second, a court must consider whether a change of venue will facilitate the convenience of the parties and witnesses and serve the interests of justice.

*Civil Procedure > Venue > Federal Venue Transfers > Convenience Transfers*
[HN16]As a general rule, unless the balance of convenience is strongly in favor of a defendant, a plaintiff's choice of forum should rarely be disturbed. Nevertheless, district courts have broad discretion in considering a motion to transfer under 28 U.S.C.S. § 1404(a).

*Civil Procedure > Venue > Federal Venue Transfers > General Overview*
[HN17]In deciding a 28 U.S.C.S. § 1404(a) motion, a court must consider the following factors: (1) the convenience of the parties; (2) the convenience of the witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; (6) the practical problems associated with trying the case most expeditiously and inexpensively; and (7) the interest of justice.

**COUNSEL:** For D.C. MIRCO DEVELOPMENT, INC., plaintiff: Kenneth H. Baker, Louisville, KY.

For MICHAEL D. LANGE, ANALYST SOFTWARE, INC., WEBSITE MANAGEMENT TOOLS, INC., defendants: Augustus S. Herbert, James R. Higgins, Jr., Middleton & Reutlinger, Louisville, KY.

**JUDGES:** JOHN G. HEYBURN II, CHIEF JUDGE, U.S. DISTRICT COURT.

**OPINION BY:** JOHN G. HEYBURN II

**OPINION**

[*706] **MEMORANDUM AND ORDER**

Plaintiff D.C. Micro Development, Inc. ("DC Micro") filed this action alleging that Defendants Michael Lange ("Lange"), Analyst Software Inc. ("ASI"), and Website Management Tools, Inc. ("WMT") tampered with Plaintiff's software, illegally obtained information about its customers' accounts, and hijacked Plaintiff's trademark logo. After removing the case from Jefferson Circuit Court, Defendants have moved to dismiss the complaint for lack of personal jurisdiction. In the alternative, they have requested transfer to the United States Court for the Northern District of Georgia, pursuant to

Case 5:07-cv-01389-RS    Document 118-8    Filed 07/19/2007    Page 4 of 10

246 F. Supp. 2d 705, *; 2003 U.S. Dist. LEXIS 1624, **

28 U.S.C. 1404 [**2] (a). These motions raise difficult factual and legal issues. For the reasons that follow, the Court will deny Defendants' motion to dismiss for lack of personal jurisdiction, but will sustain their motion to transfer.

**I.**

The confusing facts in this case arise out of a deteriorated business relationship formed to promote the development and sale of what eventually became a very popular and profitable computer software program.[1] In 1996, David Cecil ("Cecil") [*707] formed and incorporated DC Micro to sell "Crusher Software." Plaintiff is a Kentucky Corporation with its principal place of business in Lexington, Kentucky. The current President and CEO of D.C. Micro, Ted Ivanchak, is a Kentucky resident. Sometime following DC Micro's creation, Lange, acting in his individual capacity as a buyer, purchased a copy of the Crusher software. Pleased with the product, Lange then contacted Cecil to further explore business opportunities in the software development industry. Thereafter, the two men collaborated and discussed the possibility of launching TopDog software -- a computer program purchasers could use to track the use and rank of their own websites by internet search engines.

> 1  Understanding what happened is complicated by the fact that there are now not only two companies selling identical software (both claiming the other is in violation of their agreements), but that there are two D.C. Micros (one in Georgia and one in Kentucky), as well as two court cases (one pending in Gwinett County Superior Court in Georgia, as well as the instant case). With all of this in mind, the Court has done its best to make sense of the myriad of agreements, parties, and suits now in place.

[**3] The precise structure of the business arrangement that followed is unclear. Plaintiff contends it contracted with Lange, while Lange says he contracted with a Georgia Corporation, using the same name as Plaintiff and also run by Cecil. According to Plaintiff, in November of 1998, Cecil, acting on Plaintiff's behalf, hired Lange as an independent contractor to help develop the TopDog software application in exchange for partial payment of profits flowing from TopDog's sales. Defendants, not mentioning the independent contractor relationship, contend that in December of 1998, Cecil, acting on behalf of a Georgia corporation with the same name as Plaintiff, and Lange formed a partnership intended to manage TopDog's distribution and income.[2] The correlation between Lange's position as Plaintiff's independent contractor, the partnership Lange and Cecil formed (and whether Cecil actually represented Plaintiff or a Georgia corporation of the same name in those transactions), and Lange's rights and responsibilities under both of those agreements has not been coherently explained to the Court. Regardless of the exact relationship between Lange and Plaintiff, it appears, based on the checks [**4] Cecil (acting on what appears to be Plaintiff's behalf) paid to Lange during 1999 and 2000 that the TopDog software became an exceedingly profitable investment; Plaintiff's Kentucky-based bank paid out checks to Lange as high as $ 19,000 on a monthly basis and TopDog generated between $ 20,000 and $ 40,000 in sales per month. According to the Plaintiff, DC Micro Development, Inc. of Georgia was formed by Cecil at the end of 2000 as a software consulting practice, although that business never took off.

> 2  In the action pending in Gwinett County, Georgia, Lange has filed suit against Cecil, arguing that Lange has partnership rights in the Top-Dog software product and seeking an audit as well as access to the DC Micro, Georgia computer servers. In contrast, in this action, Plaintiff argues that it exclusively owns the TopDog software product and has the copyright on that product. Plaintiff further argues that in September of 2000, it purchased "Top Dog Software, Inc." a Texas-based corporation that also owned the rights to the TopDog.com domain name. Additionally, Plaintiff states that in March of 2001, it formed a corporation in conjunction with Lange that was registered in Georgia named "TopDog Software, Inc." Unsure of how exactly these facts figure into the underlying events, the Court therefore merely notes these additional points at this time.

[**5] Critical to the pending motions, the parties also vehemently disagree over the location of the servers on which the downloadable TopDog software and customer information were stored. Plaintiff alleges that it maintained two servers -- a server in Atlanta, Georgia maintained by a company called Digital Agent, Inc. ("Digital Agent") [*708] an Internet Service Provider ("ISP"), and a Lexington, Kentucky server operated by a Lexington-based ISP, ConnectUp. Plaintiff also alleges that these two servers were linked, meaning if an individual worked on information contained on the Atlanta server, the content on the Lexington server was also altered. Plaintiff further alleges that it maintained several websites on Lange's behalf through the Lexington, Kentucky ISP and that Lange was fully aware of this server and utilized it for his own websites. Lange, in contrast, argues that the only server relevant to Plaintiff's TopDog investments was the one located in Atlanta, managed by Digital Agent.

Case 5:07-cv-01389-RS   Document 118-8   Filed 07/19/2007   Page 5 of 10

246 F. Supp. 2d 705, *; 2003 U.S. Dist. LEXIS 1624, **

Putting aside these important factual disagreements, relations between both sides deteriorated rapidly in early 2001. Plaintiff alleges that, concomitant with Cecil and Lange's inability to agree on their ownership [**6] rights, Lange formed and incorporated ASI and WMT for the purpose of releasing and selling a counterfeit "version 6" of the Top Dog software with the intent to eventually convert the TopDog user customer database held by DC Micro to that of ASI and WMT. Shortly thereafter, in May of 2001, Lange notified Cecil of his plans to terminate their partnership and in July of 2001 Lange allegedly hacked into both of Plaintiff's servers. At that time, Plaintiff contends Lange individually and through ASI, stole customer lists and passwords, contacted Plaintiff's customers -- including many in Kentucky -- to offer them his own upgrade on the TopDog software, as well as implanted a trojan horse into the TopDog program for the purposes of diverting and redirecting sales from the TopDog website to Defendants' own websites, which sold an identical version of the very popular TopDog software, called "TopDog Pro." This series of events, Plaintiff now claims, not only violated copyright laws, but caused it to sustain substantial injury in its business relations with current and prospective customers both in Jefferson County and throughout Kentucky, and destroyed the value of the TopDog product.

[**7] **II.**

The Court begins by considering the question of personal jurisdiction.[3] [HN1]Because the Court is considering a motion to dismiss without conducting an evidentiary hearing, it must review the pleadings and affidavits in a light most favorable to Plaintiff. *Theunissen v. Matthews, 935 F.2d 1454, 1458-9 (6th Cir. 1991)*. In such cases courts must "not consider facts proffered by the defendant that conflict with those offered by the plaintiff, and will construe the facts in a light most favorable to the nonmoving party." *Neogen v. Corp. v. New Gen. Screening, Inc., 282 F.3d 883, 887 (6th Cir. 2002)*. Before considering this motion, however, the Court notes this is an extremely close case; close not only because of the alleged facts, but because of the potential lack of credibility owed to [*709] Plaintiff's account. Plaintiff has maintained two corporations operating under the same name and it is not clear to the Court or apparently the Defendant which "D.C. Micro" was involved in which transactions. Moreover, the Court finds it suspicious that this suit was previously filed as a counterclaim in the pending Georgia state court action. That being said, the [**8] Court has before it limited facts at this time and has considered those facts fairly and in a light most favorable to the Plaintiff as the law requires.

> 3   The reason for this is that, as a preliminary matter, the Sixth Circuit holds that [HN2]a district court cannot consider a motion to transfer under *§ 1404(a)* unless the court first has personal jurisdiction. *Pittock v. Otis Elevator Co., 8 F.3d 325 (6th Cir. 1993)*; *Martin v. Stokes, 623 F.2d 469, 474 (6th Cir. 1980)* (discussing a split among circuit courts but holding that the Sixth Circuit's "construction of § 1406(a) necessarily limits the application of *§ 1404(a)* to the transfer of actions commenced in a district court where both personal jurisdiction and venue are proper"); *see also Hollyanne Corp. v. TFT, Inc. 199 F.3d 1304 (Fed Cir. 1999)* (noting that "there is some confusion as to whether a *section 1404(a)* transfer is proper when the transferring court does not have personal jurisdiction over the defendant"). This Court therefore begins by considering the personal jurisdiction motion first.

[**9] On several occasions, this Court has analyzed personal jurisdiction motions through a well-established method. *See Ganote Consulting & Software Design, Inc. v. Imperial Optical, 2002 U.S. Dist. LEXIS 20488 (W.D. Ky. 2002)*. [HN3]To determine whether personal jurisdiction exists over a nonresident defendant in a diversity action, the Court must apply the law of the state in which it sits, subject to due process limitations. *See Welsh v. Gibbs, 631 F.2d 436, 439 (6th Cir. 1980)*. [HN4]Kentucky's long-arm statute provides that "a court may exercise personal jurisdiction over a person who acts directly or by an agent as to a claim arising from the person's ... transacting any business in this Commonwealth ..." *K.R.S. 454.210(2)(a)*. [HN5]Courts have interpreted this provision to allow the full constitutional limits for jurisdiction over nonresident defendants. *See Poyner v. Erma Werke Gmbh, 618 F.2d 1186 (6th Cir. 1980)*. Accordingly, this Court will consider the extent of Kentucky's long-arm jurisdiction along with the requirements of due process. *See First Nat'l Bank of Louisville v. J.W. Brewer Tire Co., 680 F.2d 1123, 1125 (6th Cir. 1982)*. [**10]

[HN6]To subject a nonresident defendant to personal jurisdiction without violating due process, the defendant must have "minimum contacts" with the forum "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Internat'l Shoe v. Washington, 326 U.S. 310, 316 (1945)*.[4] [HN7]To determine whether a nonresident defendant has the requisite minimum contacts, this Court employs the familiar three-part test followed in the Sixth Circuit:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's ac-

Case 5:07-cv-01389-RS     Document 118-8     Filed 07/19/2007     Page 6 of 10

246 F. Supp. 2d 705, *; 2003 U.S. Dist. LEXIS 1624, **

tivities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

Southern Machine Co. v. Mohasco Indus., Inc., 401 F.2d 374, 381 (6th Cir. 1968).

> 4  Although it is true that two alternate tests, referred to as "general" and "specific" jurisdiction, are used to determine whether a defendant satisfies this constitutional standard, neither party has alleged sufficient contacts to prove general jurisdiction. Therefore, this opinion solely focuses on the presence of specific jurisdiction.

[**11] In this case, Plaintiff attempts to overcome this constitutional hurdle by arguing that Defendants purposefully availed themselves of acting in Kentucky when Lange gained access to Plaintiff's Lexington, Kentucky server. By consequently misappropriating digital information in the form of customer lists, customer accounts, software, and source codes and then soliciting Plaintiff's customers with modified versions of Plaintiff's software, Plaintiff claims Defendants' actions are more than enough to prove personal availment.

To support this sweeping claim, Plaintiff provides three key pieces of evidence. First, it appends the Affidavit of Theodore [*710] M. Ivanchak, the current President and CEO of D.C. Micro. With regard to the alleged hacking incident, Ivanchak states,

> On July 24, 2011, he determined by inspection of the access logs to the Top Dog server located in Lexington, Kentucky, that the Defendant, Michael Lange had wrongfully and illegally accessed the Top Dog program and data bases, and attempted to change the information on said servers in order to misdirect potential purchasers and users of the product to [Lange's] website.

Ivanchak Aff., P 8.

Second, Plaintiff [**12] argues Defendants took the information it acquired through the hacking and used it to acquire customers from Plaintiff's database, including customers from Kentucky. As proof, Plaintiff has appended a list of 150 Kentucky residents whom Lange solicited through a mass e-mail "for the counterfeit Top-Dog software" allegedly produced with the information obtained from the hacking. (Pl.'s Resp. to Defs.' Mot. to Dismiss, Ex. 11). Third, Plaintiff attaches evidence of a completed sale that took place between Lange and a Kentucky resident for a piece of Defendants' fraudulently manufactured remake of Plaintiff's software. Assuming these three pieces of evidence in a light most favorable to the non-moving party, Plaintiff has painted a picture that Defendant Lange, acting on ASI and WMT's behalf, hacked into a database of a Kentucky server, took information about the clients of a Kentucky corporation and then contacted 150 Kentucky residents through a mass e-mail to offer a fraudulently-manufactured product. If these alleged facts are all true, the Court agrees that such actions rise to the level of the constitutional minimum due process guarantee.

Beginning with the first prong of the [**13] *Mohasco* analysis, the Sixth Circuit has held that [HN8]the "purposeful availment" requirement is satisfied when the defendant's contacts with the forum state are such that "he should reasonably anticipate being haled into court there." Compuserve, Inc. v. Patterson, 89 F.3d 1257, 1263 (6th Cir. 1996). The Sixth Circuit has further explained that the "purposeful availment" hurdle is overcome when the defendant's contacts with the forum state "proximately result from actions by the defendant himself that create a substantial connection with the forum State." Compuserve, 89 F.3d at 1263 (*quoting* Burger King v. Rudzewicz, 471 U.S. 462, 475, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1986)). Thus, such deliberate contacts cannot be "random," "fortuitous," or "attenuated," Burger King, 471 U.S. at 475, however, in light of the "inescapable fact of modern life that a substantial amount of business is transacted solely by mail and wire communications across state lines," the absence of physical contact or presence in the state "will not defeat jurisdiction so long as the defendant is deliberately engaged in efforts within the state. [**14] " Id. at 476.

[HN9]The Supreme Court and the Sixth Circuit have both recognized that the analysis shifts slightly when the application of the purposeful availment prong turns on a tort or fraud-based claim. In *Calder v. Jones,* the Supreme Court established an "effects test" for intentional torts aimed at the forum State. 465 U.S. 783 (1984). The Court held that it was proper for a California court to exercise jurisdiction over Florida reporters for *The National Enquirer* who the plaintiff alleged had published a libelous article. Finding that the "article was drawn from California sources, and the brunt of the harm ... was suffered in California," the Court concluded that jurisdiction was proper because the "'effects' of their Florida conduct [was based] in California." *Id.* Similarly, in Neal v. Janssen, 270 F.3d 328 [*711] (6th Cir, 2001), [HN10]the Sixth Circuit concluded that communications with the forum state that themselves give rise to the

Case 5:07-cv-01389-RS     Document 118-8     Filed 07/19/2007     Page 7 of 10

246 F. Supp. 2d 705, *; 2003 U.S. Dist. LEXIS 1624, **

cause of action are sufficient to support a finding of personal jurisdiction over a non-resident defendant making the tortious contact. Specifically, the Court in *Neal* analyzed whether personal [**15] jurisdiction was proper over an out-of-state defendant who had made fraudulent statements over the phone in the course of selling a horse boarded in the Netherlands. *Id.* at 330. In analyzing "if the Defendant purposefully availed himself" of the privilege of acting in Tennessee, the Sixth Circuit noted that the Defendant intentionally defrauded Plaintiff in the contacts he directed to Plaintiffs in Tennessee. *Id.* [5] Because the false representations made in these communications were "the heart of the lawsuit," the Court concluded purposeful availment prong was satisfied.

> 5   In announcing this principal, the Sixth Circuit adopted an approach consistent with other circuits. *See, e.g., Dole Food Co., Inc. v. Watts,* 303 F.3d 1104, 2002 U.S. App. LEXIS 18524, *13 (9th Cir. 2002) (finding personal jurisdiction where the defendant was "alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state"); *Wien Air Alaska, Inc. v. Brandt,* 195 F.3d 208, 213 (5th Cir. 1999)(noting that when the communications themselves create the tort, the "defendant is purposefully availing himself of the privilege of causing a consequence" in the forum state); *FMC Corp. v. Varonos,* 892 F.2d 1308 (7th Cir. 1990)(holding that sending faxed reports with misrepresentations to the forum state was sufficient to create personal jurisdiction over the defendant where the reports were part of a scheme to defraud the recipient).

[**16] [HN11]In cases dealing specifically with computer hacking and the sending of fraudulent e-mails, at least two district courts have applied these same principles to find personal jurisdiction over non-resident defendants whose only contacts were premised on electronic-based torts. In a scenario with nearly identical facts to this case, the Northern District of Illinois had no hesitation finding personal jurisdiction over a Florida defendant. That court reasoned,

> The Individual Defendants reached across state boundaries and into Illinois by hacking into [Plaintiff's] computer system and changing the remittance address to redirect accounts receivable from Illinois to Florida. The fact that cyber-space was the medium for inflicting harm is of no moment. Further, the Individual Defendants directly contacted and instructed (or conspired to contact and instruct) [Plaintiff's] customers, including customers in Illinois, to remit payment to Florida instead of Illinois. As a result, the Individual Defendants' actions clearly indicated an intent to affect an Illinois interest.

*Info. Techs., Int'l, Inc. v. ITI of N. Fla., Inc.,* 2001 U.S. Dist. LEXIS 19475, *22-*23. [**17] Similarly, in *Verizon Online Servs. v. Ralsky,* 203 F. Supp. 2d 601 (E.D. Va. 2002), a district court determined that when a business directed unsolicited e-mail advertising of its products to a Virginia ISP and caused a tort within Virginia, the business tortfeasor was purposefully availing itself of the laws of Virginia. Of particular note, other courts have taken this same position in cases involving trademark and patent infringement committed by out-of-state tortfeasors. *See, e.g, Remick v. Manfredy,* 238 F.3d 248 (3rd Cir. 2001)(analyzing misappropriation of image claim on Web site using "effects test"); *Panavision Int'l, L.P. v. Toeppen,* 141 F.3d 1316 (9th Cir. 1998) (registering plaintiff's trademark as a domain name and extorting money from plaintiff inflicted injury in plaintiff's principal place of business and not cyberspace); *Indianapolis Colts, Inc v. Metro. Baltimore Football Club Ltd.,* 34 F.3d 410, 411-412 (7th Cir. 1994) (finding that nationwide [*712] broadcast of football games with infringing trademark inflicted injury in Indiana where plaintiff used trademarks).

The principles laid out by the Supreme Court [**18] and the Sixth Circuit, as well as factually related cases in other district courts, all support a finding of purposeful availment. Based on Plaintiff's allegations at this stage, Defendants knew, or reasonably could have known, that (1) the alleged hacking concerned information kept on the Kentucky server, (2) the mass e-mails were made to Kentucky residents fraudulently urging them to upgrade their product to what was effectively a separate product, and (3) the redirection of customers from the Kentucky-based website to the Defendants' website would harm Plaintiff's corporation. *See Indianapolis Colts,* 34 F.3d at 411 (finding that personal jurisdiction in a trademark infringement action over a Canadian Football League's team in Baltimore was proper because "by choosing a name that might be found to be confusingly similar to that of the Indianapolis Colts, Defendants assumed the risk of injuring valuable property located in Indiana").

The remaining two prongs of the *Mohasco* personal jurisdiction analysis can be easily disposed. As to the second prong, the Court must determine whether the cause of action arises from the Defendants' activities in Kentucky. The Sixth [**19] Circuit has stated that [HN12]the "arising from" requirement is satisfied when the operative facts of the controversy arise from the de-

Case 5:07-cv-01389-RS     Document 118-8     Filed 07/19/2007     Page 8 of 10

246 F. Supp. 2d 705, *; 2003 U.S. Dist. LEXIS 1624, **

fendant's contacts with the state. 401 F.2d at 384. "Only when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that contract." Id. In this case, the Court has only considered those facts directly related to the operate facts; namely that Defendants broke into Plaintiff's Lexington, Kentucky server, stole information from that server, and marketed to customers in Kentucky a fraudulent upgrade which harmed Plaintiff's business in violation of copyright laws.

As to the third prong, [6] the Sixth Circuit has stated that [HN13]"when the first two elements are met, an inference arises that the third, fairness, is also present; only the unusual case will not meet this third criterion." First National Bank of Louisville v. J.W. Brewer Tire Co., 680 F.2d 1123, 1126 (6th Cir. 1982). Based on the facts Plaintiff has thus far presented, the Defendants allegedly took action in Kentucky which it knew, or should have known, [**20] would harm the Kentucky-based Plaintiff; subjecting them to the jurisdiction of the Kentucky courts is reasonable. The Court therefore finds all three criteria are met and personal jurisdiction in Kentucky is proper.

> 6   The third prong requires that "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable."

### III.

The Court next considers Defendants' motion to transfer pursuant to 28 U.S.C. § 1404(a) which provides:

> [HN14]For the convenience of parties and witnesses in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a).

[HN15]Analyzing a Section 1404(a) motion is a two-step inquiry. First, the Court must determine whether the action "might have been brought" in the Northern District of Georgia. Second, the [**21] Court must consider whether a change of venue will facilitate the "convenience of [*713] the parties and witnesses" and serve "the interests of justice." Rutherford v. Good Year Tire and Rubber Co., 943 F. Supp. 789, 791 (W.D. Ky. 1996). The Court concludes, and neither party appears to dispute, that the first part of this inquiry is satisfied. This action could have been brought in the Northern District of Georgia.

Turning to the second part of the inquiry, [HN16]as a general rule, "unless the balance [of convenience] is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." 943 F. Supp. at 791. Nevertheless, district courts have broad discretion in considering a motion to transfer under § 1404(a). Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29, 101 L. Ed. 2d 22, 108 S. Ct. 2239 (1988). [HN17]In deciding a section 1404(a) motion, the court must consider the following factors: (1) the convenience of the parties; (2) the convenience of the witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing [**22] witnesses; (6) the practical problems associated with trying the case most expeditiously and inexpensively; and (7) the interest of justice. Kepler v. ITT Sheraton Corp., 860 F. Supp. 393, 398 (E.D. Mich. 1994).

The balance of those factors seems to weigh heavily in favor of transfer to the Northern District of Georgia. While Plaintiff was incorporated in Kentucky, Cecil, Plaintiff's principal, as well as all of the Defendants are Georgia residents. Furthermore, Plaintiff does not deny that it used the Atlanta, Georgia server operated by Digital Agent. Instead, Plaintiff appears to argue that Defendant, somehow hacked into both servers and thereby effectively destroyed its ability to sell its product to all consumers, including those in Kentucky. [7] Therefore a key component of this case is how such an alleged link between the two distinct servers operated and whether Defendants actually hacked into both servers; testimony from the Digital Agent's representatives in Georgia will be critical to this issue.

> 7   Importantly, Plaintiff places great weight on this fact as well as the fact that its principal place of business is in Lexington, Kentucky. Plaintiff, however, fails to note that Lexington, Kentucky itself is in the *Eastern* District of Kentucky, and is not encompassed by its current choice of venue.

[**23] Finally, the outcome of this case appears to rise or fall on the relationship between the Kentucky D.C. Micro, the Georgia corporation with the identical name, and any intent Cecil may have had to confuse the Defendants in the contracting process by operating two corporations with identical names. The Gwinett Superior Court in Georgia has already appointed a receiver to oversee the TopDog profits -- the same property on which Plaintiff now bases its misappropriation and other intellectual property claims. Although it is true that the receiver was appointed as part of a Georgia state court,

Case 5:07-cv-01389-RS    Document 118-8    Filed 07/19/2007    Page 9 of 10

246 F. Supp. 2d 705, *; 2003 U.S. Dist. LEXIS 1624, **

the fact that a related case already proceeding in Georgia may unravel the very confusing array of facts in this case, suggests justice requires venue for this case lie in Georgia as well where related discovery and litigation has already begun to unfold.

The Court concludes that the interests of justice are best served by transfer to the Northern District of Georgia, where the bulk of the witnesses, parties and related litigation resides also. Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendants' motion to dismiss due to the absence of personal jurisdiction is DENIED.

[**24] [*714] IT IS FURTHER ORDERED that Defendants' motion to transfer is SUSTAINED and this case is transferred to the United States District Court for the Northern District of Georgia.

This 28 day of January, 2003.

JOHN G. HEYBURN II

CHIEF JUDGE, U.S. DISTRICT COURT

246 F. Supp. 2d 705, *; 2003 U.S. Dist. LEXIS 1624, **