

Not Reported in F.Supp.2d                                                                                                            Page 1
Not Reported in F.Supp.2d, 2004 WL 1087468 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

Robert Diaz Associates Enterprises, Inc. v. Elete, Inc.
S.D.N.Y.,2004.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
ROBERT DIAZ ASSOCIATES ENTERPRISES, INC., Plaintiff,
v.
ELETE, INC.; Elete Sports Couture; Eletecouture.com; C. Lamont Smith; Brian Huebsch; Tim Alexander; and Castle Studios, Defendants.
No. 03 Civ. 7758(DFE).

May 14, 2004.

*OPINION AND ORDER*
EATON, Magistrate J.
*1 Plaintiff Robert Diaz Associates Enterprises, Inc. alleges that, in August 2003, the defendants wrongfully (a) changed the password for plaintiff's account at a company named Interland, Inc., and (b) hacked into Interland's computer servers and copied plaintiff's work product and trade secrets. Plaintiff seeks compensatory damages, punitive damages, attorneys fees, and a permanent injunction. It sues under the civil provisions of the Electronic Communications Privacy Act of 1986 (18 U.S.C. § 2707) and the Computer Fraud and Abuse Act of 1986 (18 U.S.C. § 1030). Also, under New York state law, plaintiff sues for conversion, misappropriation of trade secrets, and breach of contract.

On December 30, 2003, the parties consented to have this case assigned to me for all purposes pursuant to 28 U.S.C. § 636(c).

On January 8, 2004, the first five defendants (Elete, Inc., Elete Sports Couture, Eletecouture.com, C. Lamont Smith, and Brian Huebsch) moved to dismiss for lack of personal jurisdiction and improper venue. These five defendants are collectively referred to as the "Elete defendants."

On February 3, 2004, plaintiff served opposition papers. On February 20, the Elete defendants served a reply affirmation which annexed an affidavit.

I find personal jurisdiction over the Elete defendants, on the basis of the New York Civil Practice Law and Rules ("CPLR") § 302(a)(3)(ii), as to the first four Causes of Action, which allege tortious acts. I decline to dismiss the Fifth Cause of Action prior to discovery. I find that venue is proper in our District.

*BACKGROUND*

A. *Plaintiff and the defendants as initially listed*

Plaintiff Robert Diaz Associates Enterprises, Inc. ("RDA") is a New York corporation with its principal place of business in Manhattan. It is an information technology consulting firm that developed certain proprietary applications for the administration of web sites and for the operation of e-commerce enterprises (also called "proprietary back-end coding"). RDA operates an Internet consulting division, RDAOnline, based in New York City RDAOnline provides customers with Internet web page design and applications. (Compl.¶ 3.)

Elete, Inc. ("Elete") is a Delaware Corporation with its corporate offices located in Denver, Colorado. (12/18/03 Smith Aff. ¶¶ 4, 7.) Elete says that Elete Sports Couture and Eletecouture.com are trademarks of Elete. Elete says that it has not operated a business under either of these names, but that it does operate an Internet e-commerce site at eletecouture.com. (12/18/03 Smith Aff. ¶ 5.) Elete sells sports apparel. (See eletecouture.com .)

C. Lamont Smith ("Smith") is the principal owner of Elete, Inc. (12/18/03 Smith Aff. ¶ 1.) He signed the contract between RDA and Elete. (Exh. 2 to 2/3/04 Pl. Memo.)

Brian Huebsch ("Huebsch") says he is general counsel of Elete, Inc., Elete Sports Couture, and Eletecouture.com. (12/18/03 Huebsch Aff. ¶ 1.)

*2 Castle Studios ("Castle") is an unincorporated business entity that maintains its principal place of business in West Hollywood, California. It provides Internet services and consulting. (Compl.¶ 8.) Castle has not appeared in this action; it is unclear whether Castle has been served with the summons and complaint.

Tim Alexander ("Alexander") owns and operates Castle. Alexander acted as the agent of Huebsch and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 5:07-cv-01389-RS    Document 118-9    Filed 07/19/2007    Page 2 of 7

Not Reported in F.Supp.2d                                                                                                              Page 2
Not Reported in F.Supp.2d, 2004 WL 1087468 (S.D.N.Y.)

**(Cite as: Not Reported in F.Supp.2d)**

Elete during the time period in question. (Compl.¶ 8.) He was served with the summons and complaint in October 2003, but he has not yet made an appearance in our Court. If plaintiff wishes to move for a default judgment against Castle or Alexander, it must make the motion to Judge Berman and explain that Castle and Alexander have not consented under 28 U.S.C. § 636(c).

Interland, Inc. (" Interland" ) is a Minnesota corporation with its principal place of business in Atlanta, Georgia. It is RDA's Internet Service Provider. RDA stores electronic information on the servers maintained by Interland. (Compl.¶ 9.) Interland was dismissed from this lawsuit based on a binding arbitration provision contained in its contract with RDA. (Docket Item # 6.)

B. *The contract between RDA and Elete*

On March 24, 2003, Elete retained RDA to design and implement an Internet e-commerce website under the Internet address eletecouture.com. Elete planned to sell sports apparel on the website. (Compl.¶ 10.) RDA and Elete entered into a written contract on March 24, 2003. Since RDA is located in New York and Elete is located in Colorado, all of their contract negotiations, as well as the execution of the contract, occurred by telephone, by e-mail, and by facsimile. (12/18/03 Huebsch Aff. ¶¶ 8-11; 12/18/03 Smith Aff. ¶¶ 7-10.)

RDA argues that the contract was formed in New York, and that it was performed by RDA personnel in New York City. (Compl.¶ 11.) Elete, on the other hand, argues that the contract was not negotiated or entered into in the State of New York, and that:
all of the activities in New York relating to [the] aforementioned contract were performed by the plaintiff. At no time did [the Elete defendants] intend to confer jurisdiction on the New York courts for any disputes arising out of this contract.

(12/18/03 Huebsch Aff. ¶¶ 12-13; 12/18/03 Smith Aff. ¶¶ 11-12.) The contract contains no choice-of-law provision. The terms of the contract provided that: (1) RDA would design and develop numerous Internet web pages and e-commerce applications for the planned website; (2) RDA would retain ownership of the programming codes, but the text and graphical content would ultimately become Elete's property; and (3) Elete could cancel the contract at any time, provided that it paid RDA for the stages of the project on which RDA had begun work. (Compl.¶¶ 10-11.)

The Elete defendants allege that RDA and Elete agreed to a completion date of May 31, 2003. " However, by the end of July, the website was not completed and as a result, Elete terminated the contract." (Def.Memo. p. 2.) But the contract's " Project Timeline" says, " delays by Elete in submission of PREREQUISITES will affect Delivery Dates Timeline on a day-to-day basis." (Pl.Memo.Exh. 2.) Moreover, e-mails exchanged between the parties show that, throughout the months of June and July, 2003, RDA was (1) waiting for Elete to send a video clip and photographs; (2) waiting for Elete to send more information for the news section; (3) waiting for Elete to decide how it wanted to run the video; (4) asked by Elete to make changes to the website, such as making the Customer Support, Contact Us, and Login and Registration areas " more like the Store Locator Section" ; (5) asked by Elete to think of ways that RDA could incorporate two future lines that Elete wanted to add to the website; and (6) waiting for Elete to send updated and complete descriptions of all of Elete's products. (Pl.Memo.Exh. 3.)

C. *The August 1, 2003 incident*

*3 RDA alleges that it substantially performed its obligations under the contract by August 1, 2003, and that it was owed $24,889. (Compl.¶¶ 12, 32.) However, on August 1, Huebsch sent RDA an e-mail that said: (1) the agreement was terminated for cause; (2) Elete's partial payments should be returned; and (3) RDA should immediately provide him with the passwords to the Interland servers that held RDA's work product. (Compl.¶ 12.)

The complaint further alleges as follows. Hours later and without RDA's knowledge or consent, Huebsch contacted Interland and convinced one of Interland's technicians to change the master password on RDA's account, so that Huebsch could access all of the data stored by RDA on Interland's servers. (Compl. ¶ 13; see the 8:30 p.m. entries on Exh. 3 annexed to 2/3/04 Pl. Memo.) Huebsch then gave the password to Alexander, who had been hired by the Elete defendants to replace RDA. Alexander used the password to access RDA's computer files. Once inside the system, he copied all of the work RDA had completed for Elete, including the designs for the e-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                          Page 3
Not Reported in F.Supp.2d, 2004 WL 1087468 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

commerce web pages and RDA's proprietary back-end coding that RDA had developed for the eletecouture.com site. (Com pl.¶¶ 13-14.)

On either Saturday August 2 or Monday August 4, 2003, RDA discovered that its computer files had been accessed and copied. Moreover, RDA was unable to access its own files because it did not know the new password. (Compl. ¶ 15; Pl. Memo. p. 3.) On August 8, 2003, the Elete website went online, using the RDA work product that had been stolen from RDA's files. (Compl.¶ 16.) For purposes of the present motion, the Elete defendants do not deny that the events occurred as described in the Complaint.

On March 25 and April 8, 2004, my law clerk accessed Elete's website. It said " Site Design By: Castle Studio web design," and " site built by: Castle Studio web design." A click on the Castle icon brought her to a screen that said: " Castle Studio/ Creative Pictures, Inc., Studio of Creative Director/ Photographer Tim Alexander." Plaintiff alleges that, by copying RDA's files, the defendants were able to access RDA's back-end coding, which is a " valuable trade secret of RDA," and were able to use RDA's work as their own. (Compl.¶¶ 3, 14, 16, 27-29.)

*DISCUSSION*

A plaintiff opposing a Rule 12(b)(2) motion to dismiss for lack of personal jursdiction bears the burden of establishing that our Court has jurisdiction over the defendants. *Cable News Network, L.P. v. GoSMS.com, Inc.,* 2000 WL 1678039, at *1 (S.D.N.Y. Nov. 6, 2000) (McKenna, J.), citing *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.,* 84 F.3d 560, 566 (2d Cir.1996). Prior to discovery, such a motion may be defeated if the plaintiff's complaint and affidavits contain sufficient allegations to establish a *prima facie* showing of jurisdiction. *Id.* Moreover, the plaintiff's factual allegations are presumed to be true. *Cable News Network,* 2000 WL 1678039, at *1, citing, *PDK Labs, Inc. v. Friedlander,* 103 F.3d 1105, 1108 (2d Cir.1997).

*4 " In diversity or federal question cases the court must look first to the long-arm statute of the forum state, in this instance, New York." *Bensusan Restaurant Corp. v. King,* 126 F.3d 25, 27 (2d Cir.1997).

CPLR § 302 says, in part:
(a) ... As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
1. transacts any business within the state or contracts anywhere to supply goods or services in the state; [or]

3. commits a tortious act without the state causing injury to person or property within the state, ... if he
(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

RDA argues that our Court has personal jurisdiction over the Elete defendants on three bases-CPLR §§ 302(a)(1), and 302(a)(3)(i), and 302(a)(3)(ii). Four of the five Causes of Action are tort claims. Hence, I will first discuss § 302(a)(3).

*CPLR § 302(a)(3)*. The first four Causes of Action clearly allege that the Elete defendants committed tortious acts outside New York causing injury to plaintiff's property within New York. Thus, New York has personal jurisdiction over the Elete defendants as to those four Causes of Action if plaintiff can satisfy either subsection 3(i) or 3(ii). It is conceivable that, with discovery, plaintiff might satisfy 3(i); I need not consider this because, on the current record, plaintiff has satisfied 3(ii).

The first question is whether the Elete defendants derive substantial revenue from interstate commerce. I find that the answer is yes, despite the fact that neither side submitted any evidence of the Elete defendants' total revenue from interstate or international commerce. It appears to be undisputed that (a) the Elete defendants received $15,000 in revenue from Macy's New York store for a shipment of goods delivered to New York on or about December 1, 2003, and (b) as of February 3, 2004, that New York store was the only store in the nation that sold Elete's clothes, and (c) the Elete defendants also sell Elete's clothes from Colorado by means of the Internet. In *Cable News Network, L.P. v. GoSMS.com, Inc.,* 2000 WL 1678039, at *5 (S.D.N.Y. Nov. 6, 2000), Judge McKenna wrote:
In this case, however, at oral argument, defendants

Not Reported in F.Supp.2d                                                                                          Page 4
Not Reported in F.Supp.2d, 2004 WL 1087468 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

admitted that GoSMS.com has earned $60,000 in revenue from its operations in Europe and Israel.... Although the amount is not large, the Court recognizes that it is common for internet companies to be viewed as extremely successful despite the fact that they operate at a great loss. The important fact in this analysis is that GoSMS.com's operations are international and in no way limited to California.

*5 Similarly, in the case at bar, I find that Elete's operations are in no way limited to Colorado, and that the Elete defendants derive substantial revenue from interstate commerce.

I turn now to the second requirement, whether the Elete defendants should have expected that their actions would harm plaintiff in New York state. My own research shows that when an unauthorized person "hacks" into a computer to access, copy or steal files, then personal jurisdiction may be established where the victim's computer is physically located. *U.S. v. Ivanov,* 175 F.Supp.2d 367, 371-73 (D.Conn.2001). Although *Ivanov* was a criminal case, it was brought under 18 U.S.C. § 1030, the same statute invoked here in the Second Cause of Action. Ivanov was physically located in Russia when he committed the crimes. Judge Thompson wrote:
At the point Ivanov gained root access to OIB's computers, he had complete control over that data, and consequently, had possession of it. That data was in OIB's computers. Since Ivanov possessed that data while it was in OIB's computers in Vernon, Connecticut, the court concludes that he obtained it, for purposes of § 1030(a)(4), in Vernon, Connecticut. The fact that Ivanov is charged with obtaining OIB's valuable data by means of a complex process initiated and controlled from a remote location, and that he subsequently moved that data to a computer located in Russia, does not alter the fact that at the point when Ivanov first possessed that data, it was on OIB's computers in Vernon, Connecticut.

*Id.* at 371-72. In our case, it could be argued that Huebsch and Alexander stole plaintiff's property from Interland's server in Georgia. But their alleged conduct was clearly aimed at a victim located in New York. The defendants fraudulently induced Interland to give them the key to open RDA's New York computers; once inside RDA's computers, the defendants were able to take what they wanted and move it over the Internet to their own computers. Moreover, the reason they knew the contents would be valuable to them was that they had contracted with plaintiff and caused plaintiff to design those contents.

It is clear that Huebsch's tortious acts are properly imputed to the four other Elete defendants. The contract was signed by defendant Smith, the CEO of Elete, Inc. Huebsch's 12/18/03 affidavit says he is general counsel of Elete, Inc., Elete Sports Couture and Eletecouture.com.

In the Practice Commentaries to the McKinney's edition of CPLR § 302, Professor Vincent C. Alexander writes:
C302:4. Commission of Acts "Through an Agent."
The acts that can subject a defendant to long-arm jurisdiction under CPLR 302(a) may be performed by the defendant herself or "through an agent." Whether a representative of the defendant qualifies as an agent for jurisdictional purposes does not turn on legalistic distinctions between being an agent or independent contractor. Furthermore, no showing of a formal relationship between the defendant and the agent is required. It is sufficient that the representative acted "for the benefit of and with the knowledge and consent of [the] defendant[ ] and that [he or she] exercised some control over [the agent] in the matter." *Kreutter v. McFadden Oil Corp.,* 1988, 71 N.Y.2d 460, 467, 527 N.Y.S.2d 195, 199, 522 N.E.2d 40, 44 (nondomiciliary held to have transacted business in New York (CPLR 302(a)(1)) through corporation over which, in his position as officer and owner of affiliated company, he exercised "some control").

*6 On the current state of the record, I find that Smith and the three non-individual movants exercised some control over Huebsch and Alexander, and knew that Huebsch and Alexander were committing the alleged tortious acts for the benefit of Smith and the three non-individual movants.

Finally, it would not offend traditional notions of fair play and substantial justice for our Court to exercise jurisdiction over all five movants on the first four Causes of Action. See Judge Koeltl's thorough discussion of the due process case law in *Landau v. New Horizon,* 2003 WL 22097989, at *8-10 (S.D.N.Y. Sept. 8, 2003).

I now turn to the one non-tort claim, the Fifth Cause of Action for breach of contract.

*CPLR § 302(a)(1)*. RDA argues:

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 5:07-cv-01389-RS     Document 118-9     Filed 07/19/2007     Page 5 of 7

Not Reported in F.Supp.2d                                                                                                      Page 5
Not Reported in F.Supp.2d, 2004 WL 1087468 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

In the manner in which Elete contracted with RDA and supervised RDA's activities in minute detail, it transacted business in New York sufficient to confer jurisdiction under CPLR 302(a)(1). Moreover, as an e-commerce business that solicits business in New York and sells its goods through an " exclusive" outlet at Macy's, it is likely that Elete is subject to general jurisdiction in this state and may be sued for any purpo[ ]se.

(Pl.Memo. p. 7.) To sue Elete for any purpose, on any cause of action, plaintiff would have to show something that it has concededly not yet shown: that Elete was regularly doing business in New York within the meaning of CPLR § 301. Under § 302(a)(1), plaintiff must show acts which give rise to the particular cause of action in question. The Fifth Cause of Action alleges breach of contract and seeks $24,889 allegedly due for services rendered to Elete. This cause of action does not arise from Elete's sales of goods through Macy's. Nor does it arise from any subsequent use of the e-commerce site by Elete to sell goods to New Yorkers. Relevant to the Fifth Cause of Action, RDA merely asserts that (1) the Elete defendants were aware that the contract would be performed (on RDA's part) in New York, and (2) the Elete defendants, from Colorado, constantly supervised RDA's work in New York through telephone communications, facsimiles, and e-mails. (Pl. Memo. pp. 2, 7-11 and Exh. 5.)

The Elete defendants argue that they cannot be deemed to have engaged in the New York activities that were actively performed by plaintiff. *Worldwide Futgol Assocs., Inc. v. Event Entertainment, Inc.,* 983 F.Supp. 173, 177 (E.D.N.Y.1997) (Dearie, J.); *J.E.T. Advertising Associates, Inc. v. Lawn King Inc.,* 84 A.D.2d 744, 745, 443 N.Y.S.2d 745, 747 (2d Dept.1981). I agree with the Elete defendants on this point, although I have found a contrary dictum in *Geller Media Management, Inc. v. Beaudreault,* 910 F.Supp. 135, 137-38 (S.D.N.Y.1996) (Leisure, J.).

It seems to be undisputed that the Elete defendants' contacts with plaintiff were entirely by telephone, e-mail and fax from outside New York.

Plaintiff cites *Parke-Bernet Galleries, Inc. v. Franklyn,* 26 N.Y.2d 13, 256 N.E.2d 506, 308 N.Y.S.2d 337 (1970). The New York Court of Appeals held that the California defendant was subject to personal jurisdiction in New York when he placed bids at the New York plaintiff's auction by mail, and by telephone, and through an agent attending the auction. The *Parke-Bernet* case is distinguishable from the case at bar. First, defendant's agent was actually attending the auction in New York. Second, the Elete defendants' telephone calls, faxes and e-mails were made solely to ensure compliance with the contract terms, and to provide plaintiff with the information it needed to produce the website. By contrast, in the *Parke-Bernet* case the California defendant's actions affected not only Parke-Bernet, but the other participants in the New York auction who were bidding against him.

*7 My own research shows the following. In *Roper Starch Worldwide, Inc. v. Reymer & Associates, Inc.,* 2 F.Supp.2d 470 (S.D.N.Y.1998), Judge Parker (then a District Judge) held:
In order to base jurisdiction on § 302(a)(1), phone calls and mailings must serve to " project" a defendant into New York in such a manner that the defendant " purposefully avails himself" of the protections and benefits of New York Law.... Phone calls that seek to insure fulfillment of contract terms do not " project" a defendant into a state sufficiently to confer jurisdiction.... Here, plaintiff has offered no evidence to rebut defendant's contention that the " several" telephone calls defendant made were solely to ensure compliance with the contract terms, stating through [plaintiff's employee] that the conference calls were " to discuss changes to the work after the preliminary tabulations were completed ." Defendant's phone calls into New York do not suffice to confer personal jurisdiction under § 302(a)(1).

2 F.Supp.2d at 474 (internal citations omitted).

But in *Serendip LLC v. Franchise Pictures LLC,* 2000 WL 1277370 (S.D.N.Y. Sept. 7, 2000) (Baer, J.), the non-resident defendants hired the New York plaintiff to compose a musical score for their motion picture. The defendants (1) solicited the plaintiff's services by telephone, (2) initiated numerous telephone calls with her to " discuss the music for the film and [to give] her directions on how to proceed," and (3) periodically sent her video tapes of the film to work with. 2000 WL 1277370, at 5. Judge Baer held:
In [*Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.,* 98 F.3d 25, 29 (2d Cir.1996) ], the Second Circuit concluded that " [t]he [defendants'] contacts with New York have been ... anything but temporary, random, or tenuous. Rather, they have been continual, repetitive, and essential to the [defendants'] businesses ." *Id.* Here too, the plaintiff has alleged

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 6
Not Reported in F.Supp.2d, 2004 WL 1087468 (S.D.N.Y.)

**(Cite as: Not Reported in F.Supp.2d)**

that Battlefield contracted for the services of the composer in order to supply an essential element of their motion picture: the soundtrack. And that motion picture was produced with the intention that it be distributed in New York and elsewhere.

... I find that Serendip has made a prima facie showing of personal jurisdiction over the Battlefield entities and Don Carmody. The facts alleged by plaintiff indicate that Battlefield has " purposefully avail[ed] [itself] of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws," and has therefore " transacted business" in New York within the meaning of § 302(a)(1).

*Serendip,* 2000 WL 1277370 at *5.

However, one year later, Judge Baer reached a different conclusion. *See Ljungkvist v. Rainey Kelly Campbell Roalfe/Young & Rubicam, Ltd., 2001 WL 1254839 (S.D.N.Y. Oct. 19, 2001).* In *Ljungkvist,* the non-resident defendant hired the New York plaintiff to create artwork for a London advertising campaign. Judge Baer held that there was no personal jurisdiction, even though (1) the parties exchanged several faxes regarding the artwork, including faxes containing the defendant's written comments on the sketches, and (2) the parties spoke on the phone at least once every day for a 10-day period. Judge Baer ruled that those " correspondences did not project the defendants into local commerce." 2001 WL 1254839, at *3.

*8 Plaintiff also cites *Pilates, Inc. v. Pilates Institute, Inc.,* 891 F.Supp. 175, 179 (S.D.N.Y.1995); *Citigroup Inc. v. City Holding Co.,* 97 F.Supp.2d 549, 564 (S.D.N.Y.2000); and *Hsin Ten Enterprises USA, Inc. v. Clark,* 138 F.Supp.2d 449, 456 (S.D.N.Y.2000). But those cases involved trademark and patent infringement, which is not alleged here. (Where a defendant (a) deliberately targets New York residents to receive its products and (b) passes off its products as those of the plaintiff, courts will apply CPLR § 302(a)(1) or § 302(a)(2) against the infringer even if he projected himself into New York only by phone and/or mail. *Pilates,* 891 F.Supp. at 179, 182.)

More on point are *Armouth International, Inc. v. Haband Co., Inc.,* 277 A.D.2d 189, 715 N.Y.S.2d 438 (2d Dept.2000), and *Ainbinder v. Potter,* 282 F.Supp.2d 180, 189-90 (S.D.N.Y.2003) (Koeltl, J.).

It is possible that discovery may elicit facts showing jurisdiction over the Fifth Cause of Action. Since the lawsuit will proceed on the first four Causes of Action, I decline to dismiss the Fifth Cause of Action at this early stage.

*Venue*

Since Elete, Inc. is a corporation, we look to 28 U.S.C. § 1391(c) for purposes of venue. I find that Elete, Inc.'s contacts within the Southern District of New York " would be sufficient to subject it to personal jurisdiction if that district were a separate State." Therefore, § 1391(c) deems the corporation to reside in our judicial district. However, § 1391(c) does not apply to the four non-corporate movants. The first two Causes of Action are based on federal-question jurisdiction; the others are based on diversity of citizenship. We must look to both subsections (a) and (b) of § 1391 to determine venue as to the four non-corporate movants.

Subsections (a) and (b) each state, *inter alia,* that venue is proper in
a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred,....

Venue is a federal issue, and the federal courts are not bound by New York statutes or case law in determining whether an event or omission has " occurred" in the forum district. The Second Circuit has ruled on the same language quoted above:As held by the district court, the charter party giving rise to Titan's claim and the purported " ad hoc" arbitration agreement giving rise to Zhen Hua's defense were negotiated between China and Pelham, New York via Connecticut. That many of Zhen Hua's communications reached Titan's offices in New York through the Connecticut brokers does not alter the fact that Zhen Hua directed communications to New York. Accordingly, venue in the Southern District of New York was proper.... *Sacody Techs., Inc. v. Avant, Inc.,* 862 F.Supp. 1152, 1157 (S.D.N.Y.1994) (" The standard set forth in § 1391(a)(2) [which employs the ' substantial part' language,] may be satisfied by a communication transmitted to or from the district in which the cause of action was filed, given a sufficient relationship between the communication and the cause of action." ).

*9 *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                       Page 7
Not Reported in F.Supp.2d, 2004 WL 1087468 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

*Co., Ltd.,* 241 F.3d 135, 153-54 (2d Cir.2001) (brackets in the original).

*Sacody* was also cited with approval in *TBV Holdings Ltd. v. Schey,* 2002 WL 1733649 (S.D.N.Y. July 26, 2002) (Jones, J.), and *Ainbinder v. Potter,* 282 F.Supp.2d 180, 190 n. 9 (S.D.N.Y.2003) (Koeltl, J.).

In the case at bar, three events gave rise to the claims in each of the five Causes of Action:
Event 1: Defendant Smith, as CEO of Elete, Inc., signed a contract in Colorado and faxed it to plaintiff in Manhattan, thus causing the plaintiff to expend efforts in Manhattan to design a website for the Elete defendants.
Event 2: After many e-mails to Manhattan, defendant Huebsch, as General Counsel for the Elete defendants, sent an e-mail to plaintiff in Manhattan demanding that plaintiff provide him with the passwords to the Interland servers that held plaintiff's work product.
Event 3: A few hours later, Huebsch contacted Interland in Georgia, fraudulently changed plaintiff's password, and then gave it to Alexander in order to open plaintiff's computers in Manhattan.

Events 1 and 2 have a close relationship with Event 3. Event 1 caused the creation, in Manhattan, of the property which was later stolen, from Manhattan.

Accordingly, I find that venue in our District is proper as to all five of the moving defendants.

*CONCLUSION*

I deny the motion (Docket Item # 10) in its entirety. I direct the attorneys to place a conference call to my Chambers (212-805-6175) to schedule an Initial Case Management Conference.

S.D.N.Y.,2004.
Robert Diaz Associates Enterprises, Inc. v. Elete, Inc.
Not Reported in F.Supp.2d, 2004 WL 1087468 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.