United States District Court

For the Northern District of California

1

2

3                                                           **\*E-FILED 8/13/07\***

4

5

6                          UNITED STATES DISTRICT COURT

7                         NORTHERN DISTRICT OF CALIFORNIA

8                                 SAN JOSE DIVISION

9

10   FACEBOOK, INC.                              Case No. C 07-01389 RS

11                           Plaintiff,

12              v.                               **ORDER DENYING DEFENDANTS'
                                                 MOTION TO DISMISS FOR LACK
13                                               OF PERSONAL JURISDICTION**

14   CONNECTU LLC, et al.

15                           Defendants.

16

17

18                                  I.. INTRODUCTION

19        The question raised by this motion to dismiss is whether or not this Court may exercise

20   personal jurisdiction over defendants Pacific Northwest Software ("PNS) and Winston Williams,

21   both residents of the state of Washington. Since *Calder v. Jones*, 465 U.S. 783 (1984), courts have

22   frequently exercised personal jurisdiction over non-resident defendants where those defendants are

23   alleged to have intentionally engaged in conduct expressly aimed at a forum resident that causes

24   harm in that forum. Generally in these cases defendants indisputably knew at the time of their

25   conduct that the targeted persons or entities were located in the particular forum that subsequently

26   asserted jurisdiction. In analyzing the jurisdictional question, therefore, the decisions typically

27   include language referring to the defendants' knowledge of the plaintiffs' presence in the forum.

28

United States District Court
For the Northern District of California

1    As the California Supreme Court has observed, however, "the so-called Internet revolution

2  has spawned a host of new legal issues as courts have struggled to apply traditional legal

3  frameworks to this new communication medium."[1]  This case presents such a new issue.

4  Specifically, the Internet permits a person to carry out conduct expressly aimed at a specific person

5  or entity in another forum that causes harm in that forum without having express knowledge as to the

6  geographical location of the person or entity being affected.  This phenomena has no readily

7  apparent direct analog in the pre-Internet world.  The first task presented, therefore, is to ascertain

8  the holding of governing case law that arose at a time or in a context where the act of targeting a

9  forum automatically carried with it knowledge of the geographical location, e.g, the sending of an

10  actionable letter to a plaintiff at a mailing address.  In other words, while the defendant in such a

11  case necessarily knew where the targeted plaintiff was located by virtue of having addressed the

12  letter, does reference to such a fact in the opinion imply that a defendant must always know that

13  geographical fact before the affected forum may exercise jurisdiction?

14    Reconciling "traditional notions of fair play and substantial justice" that underlie all

15  jurisdictional analysis with the established tests for personal jurisdiction under *Calder* and its

16  progeny, the Court finds that a defendant need not have knowledge as to *which* geographic forum the

17  plaintiff resides in, so long as the conduct was aimed at and likely to cause harm in that forum.  On

18  the particular facts here, therefore, the Court finds that the exercise of personal jurisdiction over PNS

19  and Williams is appropriate.  Accordingly, the motion to dismiss will be denied.

20

21    II.  BACKGROUND[2]

22    Plaintiff Facebook operates a social network website.  Although it apparently started

23  operations outside California in February of 2004, by June of that year its operations were relocated

24  to Silicon Valley, and it was first incorporated in California.  The website has been hosted on

25  California servers since August of 2004.  Its principal place of business at all times since at least

26

27    [1] *Pavlovich v. Superior Court*, 29 Cal.4th 262, 266 (1992).

28    [2] Additional factual background describing this action may be found in prior court
orders, and will not be repeated here.

2

United States District Court
For the Northern District of California

1  February of 2005 has been located in Palo Alto, California.  Defendant PNS is incorporated in

2  Washington, and maintains its principal place of business in that state.  Defendant Williams is also a

3  Washington resident.

4        1. Facts related to General Jurisdiction

5        Facebook asserts that PNS has hired California residents Keith Benedict, an independent

6  contractor, and Greg Deacon, along with his California staff, to perform work for it.  PNS also has at

7  least eleven customers who are located in California, accounting for approximately $595,277 –  or

8  about 7.5 percent – of the $8,000,000 in revenue that PNS has accumulated since its inception.  PNS

9  responds that the vast bulk of its clientele are based outside California, and that the few clients

10 located in California are not "major" clients, and do not generate "significant" revenue for PNS.

11       Facebook also contends PNS has a business relationship with The Records Portal Company,

12 a California corporation, that includes: 1) PNS having been designated as Records Portal's

13 "engineering department" and exclusive software developer, 2) PNS serving as administrative

14 contact for Records Portal's domain registration, and 3) PNS partner Mike Hayner acting as a

15 member of Record Portal's management team.  Facebook further alleges that PNS secured a 10

16 percent ownership interest in Records Portal in 2005.  PNS responds that the available evidence only

17 demonstrates that PNS *may* have a 10 percent ownership interest in Records Portal, and that

18 Facebook has not met its burden of proving that Records Portal performs any business on behalf of

19 PNS.  Facebook further alleges that PNS has entered into at least one contract with both Google and

20 craigslist.com, both of which are California companies, and that by agreeing to the terms of

21 CraigsList's contract, PNS entered into an agreement that is governed by California law.

22       2. Facts related to Specific Jurisdiction

23       Facebook contends that ConnectU hired PNS in late 2004 and early 2005 to develop certain

24 programs in order to expand the ConnectU platform.  One program was the "Importer,"[3] which was

25 allegedly used to gain unauthorized access to Facebook, by logging into Facebook using borrowed

26

27       [3] Facebook acknowledges that Importer was designed for use on other social
networking sites, namely San Francisco based Friendster and Hi5 and Los Angeles-based
MySpace.com, but alleges that PNS and Williams tailored some aspects of the software
28 specifically for Facebook.

3

United States District Court

For the Northern District of California

1  or falsified login information,  and then importing profile and email account information from a

2  registered user, "grabbing" email addresses from the friends listed on that user's profile, and adding

3  those email addresses to ConnectU's database.  Facebook claims that PNS also created and

4  employed the "Social Butterfly" program to send unsolicited emails to the users whose email

5  addresses had been acquired, inviting them to join ConnectU.  The email invitations were allegedly

6  sent by ConnectU's webmaster, and used misleading header and sender information to create the

7  impression that the email was sent by the recipients' friends.

8      Facebook alleges that PNS and Williams specifically designed the Importer to operate in a

9  manner that would avoid detection by Facebook.  Notwithstanding those efforts,  Facebook

10  implemented certain protective features in response to ConnectU and PNS's activities.  Facebook

11  contends that Williams was pivotal in modifying the software to circumvent  those security

12  measures.

13      Finally, Facebook alleges that the Importer was used on the Facebook accounts of students

14  enrolled in California schools, including Stanford, UCLA, and Claremont-McKenna College.

15  Although Facebook places its reliance primarily on the argument that defendants' conduct was

16  directed at, and caused harm to, *Facebook* in California, it points to the effects on these additional

17  California residents to buttress further its contention that jurisdiction is proper here.

18

19

20                    III.  LEGAL STANDARDS

21      When there is no applicable federal statute governing personal jurisdiction, the law of the

22  state in which the district court is located applies. California's long-arm statute, Cal.Code Civil

23  Procedure § 410.10, permits the exercise of jurisdiction "on any basis not inconsistent with the

24  Constitution of this state or of the United States." *Rocke v. Canadian Automobile Sport Club*, 660

25  F.2d 395, 398 (9th Cir.1981).  Accordingly, the exercise of jurisdiction must comport with due

26  process.  A defendant who is not present in the forum may be subject to jurisdiction only when he

27  has certain minimum contacts with the forum state such that maintenance of the suit does not offend

28  traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326

United States District Court

For the Northern District of California

1   U.S. 310, 316 (1945).  In judging minimum contacts, a court properly focuses on "the relationship

2   among the defendant, the forum, and the litigation."  *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977).

3   The Supreme Court has held that a non-resident's allegedly intentional and tortious acts expressly

4   aimed at a California resident are sufficient to trigger jurisdiction over that non-resident.  *Calder v.*

5   *Jones*, *supra*, 465 U.S. at 789-90.

6          The party seeking to invoke the jurisdiction of the federal court shoulders the burden of

7   establishing that such jurisdiction exists.  *Data Disc, Inc. v. Systems Technology Assoc.*, 557 F.2d

8   1280, 1285 (9th Cir.1977).  Personal jurisdiction may arise from general jurisdiction or specific

9   jurisdiction.  In order to establish general jurisdiction over the defendant, the defendant's activities

10  within the forum state need to be "continuous and systematic" or "substantial" such that the state is

11  considered to have a sufficient relationship with the defendant.  *Lake v. Lake*, 817 F.2d 1416, 1420

12  (9th Cir.1987).  The standard for establishing general jurisdiction is high, and requires that the

13  defendant's contacts with the forum state "approximate physical presence."  *Tuazon v. R.J. Reynolds*

14  *Tobacco Co.*, 433 F.3d 1163, 1169 (9th Cir. 2006) (citing *Bancroft & Masters, Inc. v. Augusta Nat'l*

15  *Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000)).

16         In the absence of such continuous or substantial activity, specific jurisdiction may be invoked

17  if there is a relationship between the quality of the defendant's forum contacts and the particular

18  claims for relief advanced by plaintiff.  *Hirsch v. Blue Cross, Blue Shield of Kansas City*, 800 F.2d

19  1474, 1477 (9th Cir.1986).       The Ninth Circuit has set forth a three-part analysis to determine

20  whether specific jurisdiction may attach to a claim arising out of a defendant's forum-related

21  activities.  First, the non-resident defendant must perform some act by which he purposefully avails

22  himself of the privilege of conducting activities in the forum, thereby invoking the benefits and

23  protections of its laws.  Second, the claim must be one that arises out of defendant's forum-related

24  activities.  Third, exercise of jurisdiction must be reasonable.  *Gray & Co. v. Firstenberg Mach. Co.,*

25  *Inc.*, 913 F.2d 758, 760 (9th Cir.1990).  In cases involving intentional conduct, the "purposeful

26  availment" prong can be satisfied by meeting the "effects test," which requires:  "(1) intentional

27  actions; (2) expressly aimed at the forum state; (3) causing harm, the brunt of which is suffered - and

28

5

1   which the defendant knows is likely to be suffered - in the forum state." *See Calder v. Jones*, 465

2   U.S. 783 (1984).

3

4                               IV.  DISCUSSION

5        A.  <u>General Jurisdiction</u>

6        Facebook makes no claim that general jurisdiction exists in this forum over Williams, but

7   does argue that PNS has sufficient contacts in California to give rise to such jurisdiction.  The Ninth

8   Circuit has held that when determining whether a court's exercise of general jurisdiction over a

9   defendant is appropriate, "[f]actors to be taken into consideration are whether the defendant makes

10  sales, solicits or engages in business in the state, serves the state's markets, designates an agent for

11  service of process, holds a license, or is incorporated there." *Bancroft*, 223 F.3d at 1086.  These

12  factors, however, are merely guidelines, and a court should "focus upon the 'economic reality' of the

13  defendants' activities rather than a mechanical checklist." *Gates Learjet Corp. v. Jensen*, 743 F.2d

14  1325, 1331 (9th Cir.1984).

15       Facebook has pointed to a variety of business activities in or related to California undertaken

16  by PNS.  First, Facebook asserts PNS has hired multiple independent contractors located in

17  California to perform work for it, and that the broad discretion and responsibility granted to those

18  contractors amounts to the existence of several "virtual" PNS offices which are centered in

19  California.  The evidence, however, shows at most sporadic and limited use of such "independent

20  contractors" in this state.   Similarly, the parties dispute how the percentage of revenues PNS has

21  derived from California sources should be quantified or characterized, but it is apparent that it is

22  well below a threshold that would give rise to a serious potential basis for general jurisdiction.

23       Next, Facebook argues that PNS advertises through California-based companies, Google and

24  CraigsList, and that in so doing PNS has necessarily entered into contracts that are governed by

25  California law.  However, the choice of law provisions included in any such contracts would only

26  apply to disputes arising from those agreements.  *See Ting v. Orbit Commun. Co.*, No. 95-55838,

27  1997 WL 8470, *2, 1997 U.S.App. LEXIS 389, at *5-6 (9th Cir. Jan. 7, 1997) (finding that

28  defendant's "inclusion of California choice of forum and choice of law clauses in its contracts does

**United States District Court**
For the Northern District of California

6

United States District Court

For the Northern District of California

1    not warrant a finding of general jurisdiction"); *see also Gates Learjet Corp.* at 1331 ("choice of

2    forum provision in the airplane purchase agreement applies only to disputes arising out of those

3    agreements" and thus does not support a finding of general jurisdiction).  As a result, the choice of

4    law provisions that govern PNS' relationship with third-parties do not warrant a finding of general

5    jurisdiction.

6          Finally, Facebook points to PNS's business relationship with, and possible ownership

7    interest in, Records Portal, but again has failed to show anything beyond some business dealings that

8    may be *relevant* to possible jurisdiction, but are insufficient to support it.  Concededly, the analysis

9    cannot turn on each alleged contact taken separately, but on all of the contacts taken as a whole.

10   Nevertheless, Facebook simply has not met the high burden of demonstrating that PNS's activities

11   "approximate physical presence" in California.  As a result, the exercise of general jurisdiction over

12   PNS is not warranted.

13

14          B.  Specific Jurisdiction

15               1. *Purposeful Availment*

16          As noted above, the "purposeful availment" prong of the test for specific jurisdiction can be

17   satisfied under the so-called  "effects test" established by the Supreme Court in *Calder*.  The  Ninth

18   Circuit has observed that courts have "struggled somewhat" in discerning the meaning and limits of

19   *Calder*, because "the case cannot stand for the broad proposition that a foreign act with foreseeable

20   effects in the forum state always gives rise to specific jurisdiction."  *Bancroft & Masters, Inc. v.*

21   *Augusta Nat. Inc.,* 223 F.3d 1082, 1087 (9th Cir. 2000).  Rather, the *Bancroft* court recognized that

22   the effects test calls for "something more," which it described as "'express aiming' at the forum

23   state"  *Id.* (citing *Calder*, 465 U.S. at 789.)   The court went on to say that "[e]xpress aiming is a

24   concept that in the jurisdictional context hardly defines itself.  From the available cases, we deduce

25   that the requirement is satisfied when the defendant is alleged to have engaged in wrongful conduct

26   targeted at a plaintiff whom the defendant knows to be a resident of the forum state."  *Id.*  Seizing on

27   this language, PNS and Williams insist that Facebook has failed to make the requisite showing

28   because it has not produced any evidence demonstrating that either PNS or Williams knew that

7

1  Facebook was a resident of California, and to the contrary, the evidence suggests defendants

2  believed that Facebook was a Massachusetts resident.

3        Ordinarily, and historically, knowledge that a person is located in a particular place has been

4  *intrinsic* to "targeting" or "express aiming."  In most cases, if one is ignorant as to where a person is

5  located, it is simply not *possible* to target that person or aim conduct towards him or her.  Almost by

6  definition, if conduct has an effect on a person whose location was not known at the time of the acts,

7  the conduct was *not* targeted or aimed at that person.

8        As the facts of this case demonstrate, however, the technology of the Internet can, in at least

9  some cases, provide a means whereby specific, targeted, conduct may be "expressly aimed" at a

10  particular individual or entity, despite the fact that the person engaging in the conduct may not know

11  the *geographic* location of the individual or entity.   To engage in the conduct at issue in this

12  litigation, PNS and Williams needed only Facebook's "virtual" address, not its physical address.

13        PNS and Williams do not suggest that the facts of this case would preclude personal

14  jurisdiction over them if they had known that Facebook was in California rather than Massachusetts.

15  The mere fact that the Internet provided PNS and Williams a tool by which they could carry out their

16  conduct against Facebook without first making efforts to learn its geographic location is not a reason

17  to excuse them from jurisdiction to which they would otherwise be subject.

18        Notwithstanding the language in *Bancroft* to which defendants point, the crux of that

19  decision lies in the courts distinction between *untargeted* acts, and those that are purposefully

20  directed at a given plaintiff.  "[T]he presence of individualized targeting is what separates [cases

21  finding jurisdiction] from others in which we have found the effects test unsatisfied."  *Id.* at 1088.

22  Pointing to one case that failed to meet the effects test, the *Bancroft* court observed that, "there was

23  no showing that the defendants even knew of *the existence* of the plaintiffs, let alone targeted them

24  individually."  *Id.* (emphasis added, discussing *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414 (9th

25  Cir.1997)).

26        Here, there is no dispute that PNS and Williams were fully aware that Facebook existed, and

27  that they specifically targeted their conduct against Facebook.  That they were able to do so while

28  remaining ignorant of Facebook's precise location may render this case factually distinct from prior

United States District Court

For the Northern District of California

8

1   precedents finding jurisdiction for acts of express aiming, but not in a manner that warrants a

2   different result.[4]

3       The conclusion that PNS and Williams are subject to personal jurisdiction under these facts

4   is consistent with cases that have attempted to apply traditional geographically-based precepts of

5   jurisdiction in a world where such borderlines are decreasingly important in many other contexts.

6   For example, as early as 1985 the *Burger King* court held that "in light of the 'inescapable fact of

7   modern life that a substantial amount of business is transacted solely by mail and wire

8   communications across state lines,' the absence of physical contact or presence in the state will not

9   defeat jurisdiction so long as the defendant is deliberately engaged in efforts with the state." *Verizon*

10  *Online Services, Inc. v. Ralsky*, 203 F.Supp.2d 601, 613 (E.D. Va., 2002) (quoting *Burger King*

11  *Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)).  Additionally, many courts have responded to the

12  advent of the Internet and adopted the "sliding scale" test established in *Zippo Mfg. Co. v. Zippo Dot*

13  *Com, Inc.*, 952 F.Supp. 1119, 1124 (W.d. Pa. 1997), which reflects that the likelihood that personal

14  jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of

15  commercial activity that an entity conducts over the internet.

16      Facebook also points to *Verizon Online Services, Inc. v. Ralsky*, 203 F.Supp.2d 601 (E.D.

17  VA. 2002) , where jurisdiction over nonresident defendants was premised on allegations that they

18  had transmitted millions of unsolicited emails through Verizon's servers in Virginia, thereby

19  overburdening and causing damage to those servers.  The court found that the defendants reasonably

20  should have expected to be haled into court in Virginia for "deliberately exploiting plaintiff's email

21  servers for pecuniary gain while trespassing plaintiff's property."  *Id.* at 616.  Defendants distinguish

22

23  [4] The Internet undoubtedly will continue to present new and challenging issues of
    personal jurisdiction.  This decision does not suggest that a defendant will *always* be subject
    to personal jurisdiction in *any* or *all* forums that a plaintiff may be located, where the

24  defendant is accused of having used the Internet to "attack" the plaintiff in some manner
    similar to what allegedly occurred here.  For example, it seems less likely that a plaintiff

25  should be able to claim jurisdiction in a particular forum if the plaintiff had used the
    technology of the Internet to *conceal* its location.  Similarly, were a plaintiff to claim

26  presence in a *multitude* of forums based on a wide-flung network of servers, it would raise
    additional concerns.  Moreover, a different situation might be presented where a defendant

27  contended it had no knowledge or reason to believe that the plaintiff was located outside the
    defendants' forum at all.  Any of those fact patterns arguably might undermine any finding of

28  "express aiming."

9

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

1   the facts of *Ralsky*, arguing there is no allegation here that they sent any emails through Facebook's

2   servers, much less overburdened them.   The difference in the precise type of harm, or how it was

3   caused, is of little import.  Both here and in *Ralsky*, the argument was that the defendants did not

4   know in *which* forum the servers were located.[5]  *See id.* at 619.

5       Although the *Ralsky* court did not expressly analyze the issue that "aiming" ordinarily

6   implies knowledge of where the "target" geographically exists, it firmly rejected the suggestion that

7   defendants could use modern technology to remain ignorant and thus escape jurisdiction. "In this

8   case, Defendants' conduct and connections to Virginia were of their own choosing, not someone

9   else's. Defendants allegedly purposefully transmitted millions of [unsolicited emails] to Verizon's

10  e-mail servers. They cannot seek to escape answering for these actions by simply pleading ignorance

11  as to where these servers were physically located." *Id.*

12      Under all the circumstances here, PNS and Williams stand in the same position.  They may

13  not have had actual knowledge as to Facebook's physical location, but they had sufficient

14  knowledge expressly to aim their conduct at it through the Internet.  The effects test, accordingly, is

15  satisfied.

16          2. *"Arising out of"*

17      For specific jurisdiction to lie, Facebook must also demonstrate that its claims arise out of the

18  forum-related activities of Williams and PNS. *See Gray & Co.*, 913 F.2d at 760.  Based on their

19  argument that they lacked knowledge of Facebook's location, PNS and Williams strongly disagree

20  that their alleged conduct was "forum-related," but they do not seriously dispute that the claims arise

21  directly from that conduct.  Facebook's Second Amended Complaint alleges seven claims for relief

22  against PNS and Williams, all of which turn on defendants' alleged acts of gaining unauthorized

23  access to Facebook, misappropriating data from it, and sending unsolicited email to Facebook's

24  users.  But for PNS and Williams' alleged acts, Facebook would not have suffered injury in

25

26          [5] The *Ralsky* defendants made the additional argument that their conduct was not
    targeted at Verizon at all, but at the recipients of the emails, and much of the opinion was
27  addressed to that argument.  Here, if anything, defendants have *less* basis to argue that their
    conduct was not directed at Facebook's servers, even if the servers were not "damaged" in
28  the same manner.

10

**United States District Court**
For the Northern District of California

1  California.  *See Panavision International, L.P. v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir. 1998)

2  (finding that "but for" defendant's registration of plaintiff's trademark, plaintiff would not have

3  incurred an injury in the forum state).  Accordingly, the second requirement for specific jurisdiction

4  is similarly satisfied.

5              3. *Reasonableness*

6        Defendants' primary argument directed at the reasonableness prong of the jurisdictional

7  inquiry is that Williams' financial resources are so limited that he will be unable to travel to

8  California for trial.  While the prospect that Facebook would pursue its claims against Williams in

9  Washington should jurisdiction be unavailable here is unknown, so long as he is represented by

10  counsel the financial burdens to him of defending this action would likely be much the same in

11  Washington as in this forum.  The cost of travel to California for trial, should the matter proceed that

12  far, may be substantial for a person in William's situation, but would only amount to a small fraction

13  of the total costs of defense.  Litigating in a geographically-removed forum will always impose *some*

14  additional burdens on the out-of-state parties.  Nothing in the facts presented here, however,

15  suggests that those burdens render it unreasonable to exercise jurisdiction otherwise properly arising

16  in these circumstances.

17

18

19

20

21

22

23

24

25

26

27

28

1

IV.  CONCLUSION

2          For the reasons set forth above, the motion to dismiss of defendants PNS and Williams is

3    denied.

4    IT IS SO ORDERED.

5    Dated: August 13, 2007

6                                                                    RICHARD SEEBORG
                                                                        United States Magistrate Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**

For the Northern District of California