1  G. HOPKINS GUY, III (State Bar No. 124811)
       hopguy@orrick.com
2  I. NEEL CHATTERJEE (State Bar No. 173985)
       nchatterjee@orrick.com
3  MONTE COOPER (State Bar No. 196746)
       mcooper@orrick.com
4  THERESA A. SUTTON (State Bar No. 211857)
       tsutton@orrick.com
5  YVONNE P. GREER (State Bar No. 214072)
       ygreer@orrick.com
6  ORRICK, HERRINGTON & SUTCLIFFE LLP
   1000 Marsh Road
7  Menlo Park, CA  94025
   Telephone:     650-614-7400
8  Facsimile:     650-614-7401

9  Attorneys for Plaintiffs
   FACEBOOK, INC. and MARK ZUCKERBERG

10

11

12                    UNITED STATES DISTRICT COURT

13                   NORTHERN DISTRICT OF CALIFORNIA

14                          SAN JOSE DIVISION

15

16  FACEBOOK, INC. and MARK               Case No.  5:07-CV-01389-RS
    ZUCKERBERG,
17                                        **PLAINTIFFS' MOTION FOR**
                    Plaintiffs,           **EVIDENTIARY AND RELATED**
18                                        **SANCTIONS, INCLUDING**
              v.                          **SANCTIONS PURSUANT TO 28**
19                                        **U.S.C. § 1927, AGAINST**
    CONNECTU, INC. (formerly known as     **DEFENDANTS CONNECTU, INC.,**
20  CONNECTU, LLC), CAMERON               **CAMERON WINKLEVOSS, TYLER**
    WINKLEVOSS, TYLER WINKLEVOSS,         **WINKLEVOSS, DIVYA NARENDRA,**
21  DIVYA NARENDRA, PACIFIC               **AND THEIR COUNSEL**
    NORTHWEST SOFTWARE, INC.,
22  WINSTON WILLIAMS, WAYNE CHANG,        Date:        September 26, 2007
    and DAVID GUCWA AND DOES 1-25,        Time:        9:30 a.m.
23                                        Judge:       Honorable Richard Seeborg
                    Defendants.
24

25

26

27

28

Dockets.Justia.com

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................1

II.     STATEMENT OF FACTS ...................................................................................3

    A.      ConnectU Initially Manufactures Standing To Save The Massachusetts Action ....................................................................................................................3

    B.      Individual Defendants Manufacture "Corporate Shield" To Escape Jurisdiction In This Action ..................................................................................5

    C.      ConnectU Manufactures Diversity Jurisdiction In the Massachusetts Action ........7

    D.      The Massachusetts Court Discredits ConnectU's "Evidence" ...............................9

III.    ANALYSIS ........................................................................................................12

    A.      Sanctions Under the Court's Inherent Powers....................................................12

    B.      Sanctions Pursuant to 28 U.S.C. § 1927 ............................................................16

IV.     CONCLUSION ..................................................................................................17

1

## TABLE OF AUTHORITIES

2

**Page**

3

### FEDERAL CASES

4  *B.K.B.* v. *Maui Police Dept.*, 276 F.3d 1091 (9th Cir. 2002) ................................. 14, 17

5  *Butner* v. *Neustadter*, 324 F.2d 783 (9th Cir. 1963) ...................................... 13

6  *Calloway* v. *Mariel Entertainment Group*, 854 F.2d 1452 (2nd Cir. 1988), ............................. 13

7  *Pavelic & LeFlore* v. *Marvel Entertainment Group*, 489 U.S. 1009 (1989)................................ 13

8  *Chambers* v. *NASCO, Inc.*, 501 U.S. 32 (1991) ........................................ 12

9  *ConnectU, LLC* v. *Zuckerberg*, 482 F. Supp. 2d 3 (D. Mass. 2007) ...................................... 3

10  *Elliott* v. *M/V Lois B.*, 980 F.2d 1001 (5th Cir. 1993) ........................................ 13

11  *Fink* v. *Gomez*, 239 F.3d 989 (9th Cir. 2001)........................................ 12, 16

12  *Grupo Dataflux* v. *Atlas Global Group L.P.*, 541 U.S. 567 (2004)................................ 8

13  *Hutto* v. *Finney*, 437 U.S. 678 (1978)........................................ 17

14  *Lone Ranger Television, Inc.* v. *Program Radio Corp.*, 740 F.2d 718 (9th Cir. 1984)............... 16

15  *Mark Industries, Ltd.* v. *Sea Captain's Choice, Inc.*, 50 F.3d 730 (9th Cir. 1995)..................... 14

16  *Pramco, LLC* v. *San Juan Marina Bay, Inc.*, 435 F.3d 51 (1st Cir. 2006) .................................. 8

17  *Preaseau* v. *Prudential Ins. Co. of America*, 591 F.2d 74 (9th Cir. 1979) ................................. 13

18  *Refac Int'l*, 141 F.R.D. at 287 ........................................ 17

19  *Schutts* v. *Bentley Nev. Corp.*, 966 F. Supp. 1549 (D. Nev. 1997)........................................ 16, 17

20  *United States* v. *Blodgett*, 709 F.2d 608 (9th Cir. 1983)........................................ 16

21

### STATE CASES

22  *Di Sabatino* v. *State Bar*, 27 Cal. 3d 159 (1980) ........................................ 13

23  *Garlow* v. *State Bar*, 30 Cal. 3d 912 (1982)........................................ 13

24  *Paine* v. *State Bar*, 14 Cal. 2d 150 (1939) ........................................ 13

25  *Qualcomm Inc.* v. *Broadcom Corp.*, 2007 WL. 2261799 (S.D. Cal. Aug. 6, 2007) ................... 15

26  *Qualcomm Inc.* v. *Broadcom Corp.*, 2007 WL. 2296441 (S.D. Cal. Aug. 6, 2007) ................... 15

27  *Williams* v. *Super. Court*, 46 Cal. App. 4th 320 (2d Dist. 1996)........................................ 13

28

MOTION FOR SANCTIONS
5:07-CV-01389-RS

1

**TABLE OF AUTHORITIES**
**(continued)**

2
                                                                                    **Page**

3
**DOCKETED CASES**

4
*ConnectU LLC* v. *Zuckerberg, et al.*, Case No. 2004-11923-DPW.................................................3

5
**FEDERAL STATUTES**

6
28 U.S.C. § 1927................................................................................................. 1, 3, 12, 16, 17

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION FOR SANCTIONS**

Please take notice that on September 26, 2007, at 9:30 A.M. or as soon thereafter as may be heard, in Courtroom No. 4 of the United States District Court, located at 280 South First Street in San Jose, California, plaintiffs Facebook, Inc. and Mark Zuckerberg will and hereby do move this Court to use its inherent powers and authority pursuant to 28 U.S.C. § 1927, to issue monetary and evidentiary sanctions against Defendants ConnectU, Inc., Divya Narendra, Cameron Winklevoss, Tyler Winklevoss and their counsel in the above-entitled action.  Sanctions are warranted due to Defendants' and their counsel's deceptive actions related to averments made in this action concerning membership in ConnectU LLC, and the Court's exercise of jurisdiction over them.  The evidentiary sanction requested is the preclusion of each of Tyler Winklevoss, Cameron Winklevoss, and Divya Narendra from arguing that they are not individually responsible for their activities set forth in the Second Amended Complaint, which sanction also applies to ConnectU, Inc.[1]  This motion is based on this Notice of Motion, the supporting Memorandum of Points and Authorities, the accompanying Declaration of I. Neel Chatterjee, and on any material the Court deems is necessary to resolve this motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION**

Plaintiffs Facebook, Inc. and Mark Zuckerberg request that this Court exercise both its inherent powers and authority pursuant to 28 U.S.C. § 1927 to issue monetary and evidentiary sanctions against ConnectU, its founders Cameron Winklevoss, Tyler Winklevoss, Divya Narendra, and their counsel for previous bad-faith actions in challenging the jurisdiction of the Santa Clara County Superior Court in this action.  The sanctions requested are monetary sanctions and an evidentiary sanction precluding Cameron Winklevoss, Tyler Winklevoss, and Divya Narendra from arguing that they are not individually responsible for the activities set forth in the Second Amended Complaint.  Defendant ConnectU, its founders and counsel have intentionally attempted to commit a fraud on this Court to further their own litigation agenda, which actions

---

[1]  ConnectU, Inc. was formerly known as ConnectU LLC, but apparently changed corporate status in or about June, 2006.  References to ConnectU, Inc. and ConnectU LLC are used interchangeably as "ConnectU."

1  have un-necessarily multiplied the proceedings.  While requests for sanctions are not something

2  sought in the general course of litigation and should not be taken lightly, the actions in this

3  dispute are precisely the sort of behavior warranting sanctions.

4      The fraud and false testimony at issue largely occurred in the Superior Court proceedings

5  in this action ("the California action") prior to removal.  When it served their interests as part of a

6  litigation strategy, defendants Cameron Winklevoss, Tyler Winklevoss, and Divya Narendra

7  attempted to convince the Court they were not subject to personal jurisdiction in California by

8  repeatedly stating under penalty of perjury that at all times on or after April 6, 2004, the

9  Winklevoss brothers and Narendra engaged in the alleged wrongful conduct only as "members"

10  of ConnectU LLC.[2]  As a result, the three successfully convinced the Superior Court to dismiss

11  them for lack of personal jurisdiction on June 2, 2006.

12      The falsity of the testimony in these proceedings later became apparent from testimony

13  elicited from the Defendants in a separate federal action in Massachusetts (the "Massachusetts

14  Action").  When the Massachusetts case was going to be dismissed because of Mr. Narendra's

15  membership in the LLC, Cameron Winklevoss, Tyler Winklevoss, Divya Narendra and ConnectU

16  all recanted their earlier positions and in sworn testimony argued that Divya Narendra had ***never***

17  been a member of ConnectU, LLC, prior to August 5, 2005.  The Massachusetts Court held an

18  evidentiary hearing to reconcile the inconsistent testimony.

19      As a result of those proceedings, further evidence came to light that: a) witnesses

20  answered critical written discovery in the California action concerning the organization of

21  ConnectU LLC which they admitted they signed under oath without even reading or reviewing

22  the questions being asked;  b) documents required to be produced under court order relating to

23  membership were not searched for or produced;  and c) ConnectU and the three witnesses subject

24  to this motion all had submitted admittedly false testimony.  Accordingly, the Massachusetts

25  _____

26  [2]  ConnectU filed discovery responses and submitted testimony supporting the positions of
     Cameron, Tyler and Divya that all three were members of ConnectU, LLC, in the summer of

27  2004.  However, ConnectU itself did not move to quash the summons for lack of personal
     jurisdiction.  A fourth individual, Howard Winklevoss, also moved to quash the summons for lack

28  of personal jurisdiction, but unlike the other individual defendants did not claim he participated in
     the alleged wrongful conduct.

1  court ultimately found the testimony of several of the individual defendants unpersuasive,

2  disregarded their "evidence" in support of ConnectU's changed position relating to membership,

3  and found that ConnectU had no members until at least August 5, 2005 — long after the events

4  giving rise to this action occurred.

5      The Defendants' conduct in asserting inconsistent and false factual positions to further

6  litigation goals should not be countenanced by the Court.  Sanctions under the inherent powers of

7  the Court and 28 U.S.C. § 1927 are warranted to undo the harm and to compensate Facebook for

8  being forced to needlessly litigate these issues and to ensure the individual defendants are part of

9  this case.  A declaration outlining fees is filed contemporaneously with this motion.

10  **II.    STATEMENT OF FACTS**

11      This motion involves two separate actions between the parties: the California Action

12  (which is before this Court) and the Massachusetts Action, which is now on appeal.[3]  ConnectU

13  was the plaintiff in the Massachusetts Action, and  Facebook and Zuckerberg were two of the

14  defendants there.  The Massachusetts Action was dismissed on March 28, 2007 because the court

15  lacked subject matter jurisdiction.  Chatterjee Decl., Ex. C.  *See also ConnectU, LLC v.*

16  *Zuckerberg*, 482 F. Supp.2d 3 (D. Mass. 2007).

17      ConnectU's "founders" include Cameron Winklevoss, Tyler Winklevoss, and Divya

18  Narendra.  Howard Winklevoss, Cameron and Tyler's father, finances and has financed

19  ConnectU's day-to-day operations and this litigation.  Cameron, Tyler, and Howard Winklevoss,

20  as well as Mr. Narendra were originally named as defendants in this action (collectively,

21  "Individual Defendants").  Chatterjee Decl., Ex. E.

22  **A.    ConnectU Initially Manufactures Standing To Save The Massachusetts
        Action**

23

24      On September 2, 2004, ConnectU filed the Massachusetts Action based upon diversity of

25  citizenship.  ConnectU contended that it was the successor of an entity called "Harvard

26  ───────────────
    [3] *ConnectU LLC v. Zuckerberg, et al.*, Case No. 2004-11923-DPW.  Chatterjee Decl., Ex. A.
    ConnectU has appealed its dismissal to the First Circuit.  Nonetheless, ConnectU also filed a new

27  complaint shortly after the Massachusetts Action was dismissed, which it recently further
    amended to add the Individual Defendants as plaintiffs.  *See* Case No. 1:07-CV-10593-DPW (D.

28  Mass.).

1  Connection" and had been assigned all intellectual property rights by its "founders" Cameron and

2  Tyler Winklevoss, and Divya Narendra.  Chatterjee Decl. Ex. A, Initial Paragraph & ¶¶ 2, 11.

3  Originally in the Massachusetts Action, ConnectU took the position that all three founders

4  were members of ConnectU LLC to overcome a standing problem related to assignment and

5  ownership of intellectual property.  Specifically, Facebook asserted that ConnectU did not have

6  standing to bring the claims in the Massachusetts Action. *Id.*, Ex. F, Twenty-Second Affirmative

7  Defense.  Facebook thus propounded several document requests and interrogatories that sought

8  information related to ConnectU's formation, standing and ownership of the relevant intellectual

9  property.  *Id.*, Exs. H, Nos. 11, 13, 14, 17, 24, 25; G, No. 8.  On July 27, 2005, Facebook also

10  served ConnectU with a deposition notice pursuant to Rule 30(b)(6).  *Id.*, Ex. I.  Topic number 10

11  called for a witness to testify about:

12
13  [ConnectU's] alleged ownership of all intellectual property
    (including, without limitation, all rights, title, and interest relating
    to trade secrets, copyrighted material, or other intangible property)
14  referenced in the Amended Complaint, and any alleged transfer of
    any rights to You by HarvardConnection or any of the other
15  Counterdefendants.

16  *Id.*

17  In response, ConnectU designated Cameron Winklevoss to testify.  *Id.* Ex. AA, p. 9.  The

18  deposition was set for August 9, 2005.  On August 5, 2005, just two business days before Mr.

19  Winklevoss was set to testify, ConnectU produced a Limited Liability Agreement ("2005

20  Operating Agreement").  *Id.* Ex. J.  The 2005 Operating Agreement was signed by Cameron

21  Winklevoss, Tyler Winklevoss, and Divya Narendra on August 5, 2005.  *Id.*  It described Divya

22  Narendra, Cameron Winklevoss and Tyler Winklevoss as "members" of ConnectU LLC and

23  purported to transfer all intellectual property to ConnectU LLC.  *Id.*, at C011334.  The Operating

24  Agreement stated it was retroactive to April 6, 2004.  *Id.*, at C011285.  Several weeks later, on

25  August 22, 2005, in response to Facebook's Interrogatory No. 8, which sought information

26  related to ConnectU's ownership of its intellectual property, ConnectU referred only to copyright

27  assignments from two programmers and to the 2005 Operating Agreement.  *Id.* Exs. BB, p.18; J.

28  At that time, no other documents were produced which related to ownership of intellectual

1  property or membership in the LLC.

2        **B.**    **Individual Defendants Manufacture "Corporate Shield" To Escape**

3              **Jurisdiction In This Action**

4        The California Action was filed in the Santa Clara County Superior Court on

5  August 17, 2005, nearly one year after the Massachusetts Action commenced.  In response to

6  Facebook's complaint, the Individual Defendants moved to quash service of the summons and

7  complaint alleging a lack of personal jurisdiction.  Chatterjee Decl. Ex. K.  Defendants took the

8  position that they could not be personally liable because they "were members of ConnectU LLC,"

9  and "the only connection the Individual Defendants have to the alleged acts in this case is as

10  members of Defendant ConnectU LLC."  *Id.*, pp. 6:16, 3:2-3.

11        In order to oppose the motion to quash, Facebook sought discovery related to the court's

12  exercise of personal jurisdiction over the Individual Defendants, including discovery designed to

13  test their theory that they acted in their capacity as members of the company.  *Id.*, Exs. VV, XX,

14  WW, and YY  ConnectU resisted all discovery, forcing Facebook to seek relief from the Superior

15  Court on several occasions.  *Id.* Exs., CC, DD, EE.  The California Court repeatedly sided with

16  Facebook, and issued a number of orders granting motions to compel discovery sought by

17  Facebook.  *Id.* Exs. L, M, FF.  Specifically, over several months, ConnectU and the individual

18  Defendants were ordered to supplement Facebook's special and form interrogatories, requests for

19  production, and to make themselves available for depositions.  *Id.*  Notably, in granting

20  Facebook's motions to compel complete and straightforward responses to these discovery

21  requests, the Superior Court required that ConnectU and the Individual Defendants provide a

22  declaration making several averments, including "that a diligent search and reasonable inquiry

23  was made" in an effort to comply with the request, and that either (1) all documents had been

24  produced, or (2) that they were unable to comply because the particular item never existed, had

25  been destroyed, lost, misplaced, stolen, or had never been, or was no longer in the Defendants'

26  possession, custody or control.  *Id.*, Ex. M.  The defendants provided such a declaration under

27  oath.  *Id.*, Ex. N.

28        Many of the Form and Special Interrogatories that the Court ordered the Defendants to

1  supplement related to their allegations that Divya Narendra, Cameron Winklevoss, and Tyler

2  Winklevoss only acted as members of ConnectU LLC during the summer of 2004 when they

3  sought to access Facebook's website via third party accounts in order to steal email account and

4  course information.   In their court-ordered supplemental responses to Facebook's Special

5  Interrogatory Number 14 regarding membership, ConnectU and the Individual Defendants

6  specifically asserted under penalty of perjury that Divya Narendra was a member of ConnectU

7  since April 2004:

8    **Members of ConnectU include Cameron Winklevoss, Tyler Winklevoss, Howard Winklevoss, and Divya Narendra**, as set
9    forth in the Limited Liability Company Operating Agreement recited in the Interrogatory ('Operating Agreement') and found at
10   bates numbers C011285 through C011335.  **These persons have all been Members since ConnectU was formed**.

11

12  Ex. GG  (emphasis added.)  *See also* Exs. O, P, Q.  In fact, in more than 100 instances, in both

13  initial  and later amended responses to Form Interrogatories, Special Interrogatories, and Requests

14  for Admission, ConnectU and the Individual Defendants stated that Cameron and Tyler

15  Winklevoss and Divya Narendra accessed the Facebook website and extracted data, but only in

16  their capacity as "members" of ConnectU.  *Id.* & Exs. O, Q, GG, MM, NN, OO, PP, QQ, RR, SS,

17  TT &UU.  These answers were given, in many instances, without reference to the 2005 Operating

18  Agreement. *See*, *e.g.*, *id.* Ex. MM, Response to Form Interrogatory 17.1;  Ex. Q, Response to

19  Requests for Admission Nos. 2-8, 15-21, 24.  On the other hand, when preparing the Declaration

20  concerning efforts to locate documents reflecting the membership of ConnectU, none of the

21  Defendants produced any documentation that suggested that while Tyler Winklevoss and

22  Cameron Winklevoss were members prior to August 5, 2005, Divya Narendra was not.  *Id.* Ex. N.

23  *See also id.* Ex. Y, I 205:1-208:21; 209:15.

24      Moreover, after being ordered to amend their responses, Defendants all cross-referenced

25  their prior Amended Response to Special Interrogatory No. 14 when explaining why they

26  contended their actions involving the "incident" of obtaining email account and course

27  information were made only in their capacity as "members" of ConnectU LLC **during the**

28  **summer of 2004**, prior to when the Operating Agreement had been executed. *See id.* Exs. P, HH,

1  II, Responses to Form Interrogatories Nos. 2.11, 8.2, & 17.1.  *See also Id.*, Ex. Z, II 50:5-18;

2  52:23-53:2; Ex. Y I 255:5-256:25.  These responses were consistent with the position the

3  Individual Defendants took in their motion to quash that "their only 'tie' to California takes the

4  form of being members of Defendant ConnectU LLC … ."  *Id.*, Ex. K, 1:18-19.  Each of these

5  responses had verifications adopting the responses under oath and penalty of perjury.  *Id.* Exs. O,

6  P, Q, GG, HH, MM, NN, OO, PP, QQ, RR, SS, TT & UU.

7       Seven months after the Individual Defendants filed their motion to quash, and after

8  months of discovery battles related to the propriety of that motion, the Individual Defendants re-

9  filed their moving and opposition papers.  *Id.*, Ex. B.  The individual Defendants continued to

10  argue both that "they took no action regarding any data from Plaintiff's website in their individual

11  capacity," and also that "[a]cts taken by individuals **in their LLC capacity** cannot be considered

12  relevant to whether a court can assert jurisdiction over corporate members."  *Id.* at 1:20-23

13  (emphasis added).  The individuals once again filed Declarations averring that they had never

14  accessed the Facebook website to obtain email account or course information in their individual

15  capacities, and Divya Narendra on May 24, 2006 specifically averred all of his accesses of the

16  Facebook website for purposes of obtaining email account and course information occurred on or

17  prior to July 31, 2004.  *Id.* Ex. JJ ¶ 19;  Ex. KK  ¶ 2.

18       On June 2, 2006, without explanation, the Superior Court granted the Individual

19  Defendants' Motion to Quash in a 2-page order and dismissed them from State Court action.  *Id.*,

20  Ex. R.  Facebook believes that the court granted the motion as to the Individual Defendants based

21  on their argument that when in the summer of 2004 they broke into www.facebook.com and

22  extracted email addresses and other personal user data for the purpose of spamming Facebook

23  users, they did so solely as members of ConnectU LLC.

24       **C.    ConnectU Manufactures Diversity Jurisdiction In the Massachusetts Action**

25       In the Massachusetts action, the position taken by the defendants in California ultimately

26  posed a problem.[4]  Namely, the First Circuit issued an opinion while the motion to quash was still

27

28  ――――――――――――
[4]  ConnectU is represented in both the Massachusetts and the California action by the same law firm of Finnegan, Henderson, Farabow, Garrett & Dunner, LLP.

1    pending.  In that ruling, the First Circuit held that diversity jurisdiction is determined by the

2    citizenship of each member of an LLC, rather than the state of incorporation or principal place of

3    business of the LLC.  *See Pramco, LLC v. San Juan Marina Bay,* Inc., 435 F.3d 51 (1st Cir.

4    2006).  Chatterjee Decl. Ex. S.  This presented a major problem for ConnectU, because it claimed

5    that at the time of filing it was an LLC, and that one of its purported "members," Divya Narendra,

6    was a New York citizen.  However, at the time of filing, Mark Zuckerberg (one of the defendants)

7    also was a New York citizen — a fact that would destroy complete diversity and require dismissal

8    of ConnectU's complaint in Massachusetts.  Facebook called the *Pramco* opinion to the Court's

9    attention as part of a then-pending motion to dismiss that was based in part on lack of diversity.

10   *Id.*

11         Faced with this new challenge, and with the Motion to Quash still pending in California,

12   on April 26, 2006 ConnectU responded by arguing that diversity existed because as of the date of

13   the filing of the complaint Mr. Zuckerberg was a California citizen, and not a citizen of New

14   York.  *Id.* Ex. T.  ConnectU also sought to distinguish United States Supreme Court authority

15   such as *Grupo Dataflux v. Atlas Global Group L.P.*, 541 U.S. 567 (2004), which indicated that

16   subject matter jurisdiction could only be determined by the circumstances as they existed on

17   September 2, 2004, rather than by subsequent events.  *Id.*  Notably, though, ConnectU said

18   virtually nothing about its own membership in its initial response to the *Pramco* decision.  *Id.*

19         However, shortly thereafter, Magistrate Judge Robert Collings, who had been referred the

20   motion to dismiss by the District Court for purposes of preparing a report and recommendation,

21   entered a Procedural Order that rejected ConnectU's position relative to *Grupo*, and which set an

22   evidentiary hearing for June 22, 2006 to resolve Narendra's and Zuckerberg's citizenship.  *Id.*

23   Ex. LL.  After expedited discovery and the imminence of a holding that no diversity existed

24   because of Zuckerberg's domicile, on June 12, 2006 (just 10 days after the California Superior

25   Court dismissed the Individual Defendants), ConnectU filed a supplemental brief in response to

26   the Massachusetts' Court's Procedural Order.  In that supplemental brief, ConnectU and the

27   individuals for the first time argued that:

28              Divya's citizenship is irrelevant to diversity jurisdiction in this case.

**He was not a Member of ConnectU on or before September 2,
2004**.  No document names him as a Member of ConnectU on or
before September 2, 2004… On and prior to September 2, 2004, the
oral agreement between Divya, Cameron, and Tyler was that only
Cameron and Tyler were Members of ConnectU, and whether
Divya would be a Member at some point in time was undecided.

*Id.*, Ex. U (emphasis added).  In support of the new position that diversity jurisdiction existed

even if Zuckerberg was a New York citizen, the Individual Defendants also submitted

substantively identical declarations in which each claimed to have had an "oral agreement" that

Mr. Narendra would not be a member until some unspecified time (if ever):

> On and prior to September 2, 2004, the oral agreement between the
> Harvard Connection founders, Tyler and Cameron Winklevoss, and
> I, was that only Cameron and Tyler were Members of ConnectU
> LLC…. **I was not made a Member of ConnectU LLC until well
> after September 2, 2004**.

*See, e.g., id.*, Ex. V (emphasis added).[5]

 This testimony was directly contrary to the previous testimony offered by ConnectU and

the Individual Defendants in the California Action only two months earlier when it filed its

Motion to Quash.  *See, e.g., id.*, Ex. B at 1:20-23.  Facebook immediately called this fact to the

Court's attention, and specifically noted Narendra's sworn response in his Declaration directly

contradicted his earlier Amended Response to Special Interrogatory No. 14.  *See id.* Ex. O.

### D. The Massachusetts Court Discredits ConnectU's "Evidence"

 Magistrate Judge Collings responded to Facebook's arguments by holding two evidentiary

hearings related to diversity jurisdiction in the Massachusetts Action.  The first held on

June 22, 2006 was, as noted, to determine whether Mr. Zuckerberg and Mr. Narendra were both

citizens of New York.  The Court ultimately concluded both Mr. Narendra and Mr. Zuckerberg

---

[5]  On June 26, 2007, a week after Narendra had been deposed about his earlier discovery
responses in California, ConnectU *sua sponte* further amended its Amended Response to Special
Interrogatory 14 to claim it misunderstood that discovery request to the extent it had stated
Narendra had been a member since April 6, 2004. *See* Chatterjee Decl., Ex. W.  Since ConnectU
always conceded personal jurisdiction and the Superior Court already had dismissed Narendra
and the Winklevoss twins, this *sua sponte* amendment effectively had no consequence in the
Superior Court, and was intended solely to bolster ConnectU's and the Individual Defendants'
new arguments in the Massachusetts case.  Moreover, ConnectU's new response was wholly
irreconcilable with the fact ConnectU months earlier had been ordered to amend Special
Interrogatory 14 as a result of Facebook successfully moving to compel, and ConnectU had not
raised any issue with respect to its meaning.  *See id.*, Ex. M.

1   were, in fact, citizens of New York on September 2, 2004.  Chatterjee Decl. Ex. D, 67-68.

2           The second hearing, held over two days on October 24-25, 2006, came down to a

3   "question of credibility" given the inconsistencies between Narendra's amended response to

4   Special Interrogatory Number 14 in the California action and his declaration filed in the

5   Massachusetts action contending that he was not, in fact, a member of ConnectU LLC in the

6   summer of 2004.  *Id.* Ex. X, 14-16.  The two day hearing thus was specifically designed to enable

7   the Massachusetts Court to determine whether it was credible that, in light of Defendants'

8   positions and sworn statements to the contrary in the California action, Divya Narendra had never

9   been a member of ConnectU LLC until he signed the Operating Agreement on August 5, 2005.

10  *Id.*, 16.

11          At the second evidentiary hearing, Mr. Narendra testified under oath that he was not a

12  member of ConnectU LLC on September 2, 2004.  In doing so, Mr. Narendra fully admitted that

13  his earlier interrogatory response in this action regarding membership was misleading:

14              A       In my deposition I think it was in June I stated that, that my
                response to I think it was the amended response to form
15              interrogatory 14, I forget the exact document but, basically I said
                that it was ***misleading*** that, or that the, you know, the response
16              could have been ***misread*** or ***misinterpreted***.

17  *Id.*, Ex. Z, II:53:10-14  (emphasis added).

18          In making this concession, Mr. Narendra also admitted to the Court that he did not even

19  review certain verified written discovery responses filed in this action before signing them:

20              A       You know, these responses [California State Action] were
                prepared by my counsel and, you know, I, I don't remember
21              looking sort of responding to this and looking back at another
                document at the same time cause the questions are in a completely
22              different document. But I trusted my lawyers that they would have
                been prepared, that their responses would have been prepared
23              accurately.

24              …

25              A       Again, when I signed this document I trusted my lawyers
                prepared it accurately and, you know, again all the questions are on
26              different – it's fairly confusing. All the questions are not on this
                document so, you know, when I signed this is (sic) didn't see what
27              the exact questions were for each one of these responses.

28

1   *Id.*, II:51:18-52:18.[6]

2       In response, the Massachusetts Court *sua sponte* expressed its clear concern:

3           Q.  So when you were asked to sign the form interrogatory answers –
4           A. Right.

5           Q.  -- did you have this Exhibit 71, the actual form interrogatories at
            that time?
6           A No, I did not.

7           THE COURT: Are you saying you didn't know what questions you
            were answering?

8           THE WITNESS: **No**, I mean, I, **I basically trusted that my
            lawyers would have given the right answers. I had never seen
9           this document?**

10          THE COURT: I mean, it just seems very odd that you would sign
            answers under pains and penalties of perjury to questions you'd
11          never seen, but go ahead.

12  *Id.*, II-80:4-17 (emphasis added).  Notably, Mr. Narendra further testified at the hearing that he

13  would not think twice about returning to this Court and claiming to be a member in 2004 to avoid

14  liability in this action.  *Id.*, II-76:2-8.

15      At the hearing, ConnectU also admitted that three exhibits upon which they sought to rely

16  to prove Mr. Narendra was not a member of the LLC in 2004 were not produced in this action

17  despite a specific court order requiring them to do so.  *Id.,* Ex. Y, I-206:9-I-207:14; I-210:2 to I-

18  211:3 I-256:24 to I-257:8;.  This fact was reflected in Magistrate Collings' March 2, 2007 Report

19  and Recommendation in which he recommended granting Facebook's motion to dismiss.  *Id.* Ex.

20  D, 53 n.24.  Indeed, after receiving conflicting testimony on the issue of membership, Magistrate

21  Judge Collings made an unequivocal credibility ruling concerning the Individual Defendants and

22  the evidence they proffered in an attempt to show Narendra had never been a member of the LLC

23  prior to August 5, 2005:

24          While the Winklevoss brothers testified that the information on the

25  _____

26  [6] Notably, in responding to Form Interrogatory No. 1.1, Narendra had specifically sworn under
    oath that "I was the only person who prepared the responses to these Interrogatories."  *Id.* Ex.
27  MM, Response No. 1.1.  In several of his other responses Narendra contended he had only
    obtained email account and course information from the Facebook in the summer of 2004 in his
28  capacity as a "member" of ConnectU LLC.  *See, e.g., id.* Ex. MM, Response to Form
    Interrogatory 17.1.

application to do business in Connecticut and the Wachovia bank documents was correct, given the circumstances of their creation and in light of all the other evidence, the Court does not find these documents to be dispositive or particularly persuasive on the membership issue.

*Id.*, Ex. D, 54.

Accordingly, as a result of **all** the testimony proffered at the evidentiary hearing, including that reflecting the inconsistent positions that ConnectU, Narendra, and the Winklevoss twins had taken in Massachusetts and California, Magistrate Judge Collings disregarded the testimony of the individuals and recommended granting Facebook's Motion to Dismiss. He found that "for purposes of diversity, there were no members of ConnectU before or at the time of the formation of the LLC" or on the date that the complaint in the Massachusetts Action was filed. *Id.*, 55. Judge Douglas Woodlock independently reviewed the whole record and thereafter adopted the Report and Recommendation in entirety on March 28, 2007, and dismissed the action. *Id.* Ex. C.

## III.    ANALYSIS

Under both the Court's inherent powers, and its powers pursuant to 28 U.S.C. § 1927, evidentiary and monetary sanctions are warranted. ConnectU deliberately proffered inconsistent positions and evidence in bad faith in the Superior Court and in the Massachusetts Federal action to pursue litigation agendas. These inconsistent positions caused both the Courts and counsel in each jurisdiction to expend unnecessary resources over more than a year of litigation in discovery, evidentiary hearings, and briefing. While the net result was a rejection in the Massachusetts action of Defendant's positions relating to membership, the effect was to multiply the proceedings unnecessarily and vexatiously. Worse, the California Superior Court and Facebook were intentionally misled concerning Narendra's status as a member of ConnectU LLC, ultimately leading to his and the other Defendants' dismissal from the case. Such bad faith and vexatious actions are precisely the type of case where sanctions are warranted.

### A.    Sanctions Under the Court's Inherent Powers

The Court has broad inherent power to police litigants and manage its docket through, for example, monetary sanctions (including costs and attorneys' fees) and evidentiary sanctions. *See, e.g.*, *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-47 (1991); *Fink v. Gomez*, 239 F.3d 989,

992-94 (9th Cir. 2001) (holding that "an attorney's reckless misstatements of law and fact, when coupled with an improper purpose, such as an attempt to influence or manipulate proceedings in one case in order to gain tactical advantage in another case, are sanctionable under a court's inherent power.").[7]  Similarly, California courts have recognized that "[h]onesty in dealing with the courts is of paramount importance and misleading a judge is, regardless of motives, a serious offense." *Paine v. State Bar*, 14 Cal.2d 150, 154 (1939); *Di Sabatino v. State Bar*, 27 Cal.3d 159, 162-163 (1980); *Garlow v. State Bar*, 30 Cal.3d 912, 917 (1982); *see also Williams v. Super. Court*, 46 Cal. App. 4th 320, 330 (2d Dist. 1996) (where court held that "Counsel should not forget that they are officers of the court, and while it is their duty to protect and defend the interests of their clients, the obligation is equally imperative to aid the court in avoiding error and in determining the cause in accordance with justice and the established rules of practice").

ConnectU, Divya Narendra, Tyler Winklevoss, Cameron Winklevoss and their counsel engaged in misconduct and repeatedly misled two different Courts.  They submitted directly contrary statements under oath in order to serve a litigation agenda in which they "flip-flopped" within a matter of days on Narendra's membership status.  They also failed to comply with Court orders from the Superior Court to produce the very documents they later relied upon in Massachusetts, and to disclose all relevant facts concerning the membership of ConnectU LLC. Such actions are the types of circumstances warranting sanctions.  *See Calloway v. Mariel Entertainment Group*, 854 F.2d 1452, 1474-75 (2nd Cir. 1988), rev'd *on other grounds sub nom. Pavelic & LeFlore v. Marvel Entertainment Group*, 489 U.S. 1009 (1989);  *Elliott v. M/V Lois B.*, 980 F.2d 1001, 1007 (5th Cir. 1993).  Under these facts, the Defendants acted in bad faith, or at a minimum, their reckless and knowing conduct was tantamount to bad faith.

ConnectU's litigation-driven positions on the membership issue lead to the conclusion that they were deliberately misleading  Facebook and the Superior Court in order to manufacture a shield against personal jurisdiction and avoid being brought into a California lawsuit.  Yet,

---

[7] Sanctions for improper discovery practice under either Federal Rule of Civil Procedure 26(g)(3) and Cal. Code Civ.Proc. § 3023.010(d)-(i) may also be warranted.  Rule 26(g)(3) would likely apply to responses served in State Court.  *Preaseau v. Prudential Ins. Co. of America,* 591 F.2d 74, 79 (9th Cir. 1979), citing *Butner v. Neustadter,* 324 F.2d 783, 785 (9th Cir. 1963).

1  Defendants' conduct resulted in nearly a year of complex procedural discovery in the Superior

2  Court, and over a full year of extensive briefing, discovery, and multiple evidentiary hearings in

3  the Massachusetts action – all because Defendants would not take a consistent position and

4  instead acted to benefit their litigation positions.  It is precisely such bad faith conduct that the

5  Courts recognize warrant exercise of the Court's inherent powers.  *See B.K.B. v. Maui Police*

6  *Dept.,* 276 F.3d 1091, 1106 & 1108 (9th Cir. 2002) (recklessness coupled with "knowledge of

7  the rule and applicable law" is "tantamount to bad faith" and therefore sanctionable under the

8  Court's inherent power.).  *See also Mark Industries, Ltd. v. Sea Captain's Choice, Inc.,* 50 F.3d

9  730, 732 (9th Cir. 1995) (presence of meritorious claim does not prevent a finding of bad faith).

10  Given the context of the litigation that already has occurred, appropriate sanctions are monetary

11  and evidentiary sanctions for the cost of the jurisdictional battle and evidentiary sanctions

12  precluding defendants from arguing that Tyler Winklevoss, Cameron Winklevoss, and Divya

13  Narenda are not individually responsible for the actions set forth in the complaint.

14       Indeed, the evidence of bad faith is overwhelming.  The founders filed a motion to quash

15  service based on the false claim that they all were acting solely in their capacity as members of

16  an LLC and, as a result, could not personally be liable for violations of California law.  When it

17  was convenient and useful they stuck by this theory and submitted sworn statements claiming

18  membership – **including amended statements in response to Special Interrogatory Number**

19  **14 that were specifically ordered by the Court**.  They pressed this position through

20  June 2, 2006 in motion papers and Declarations in which they argued that "they took no action

21  regarding any data from Plaintiff's website in their individual capacity," and also that "[a]cts

22  taken by individuals **in their LLC capacity** cannot be considered relevant to whether a court can

23  assert jurisdiction over corporate members."  Chatterjee Decl. Ex. B, at 1:20-23 (emphasis

24  added).

25       Yet, immediately after they were dismissed from this case, the Individual Defendants

26  changed their testimony entirely to prevent dismissal of the Massachusetts Action for lack of

27  diversity jurisdiction.  Just **ten** days after being dismissed by the Superior Court, the Defendants

28  submitted new sworn statements disclaiming Mr. Narenda's prior claim of membership so as to

1    try and preserve diversity. *Id.*, Exs. U, V. In three substantially identical declarations, and solely

2    for strategic litigation reasons, each of the founders of ConnectU ran away from their earlier

3    testimony and declared that they had a previous undisclosed oral agreement that Mr. Narendra

4    would not be a member of the LLC in 2004. *Id.*, Ex. V. Each proffered sworn testimony during

5    depositions and the three days of evidentiary hearings held in June and October, 2006 in which

6    they maintained that position. They all produced documents in Massachusetts to support their

7    new membership theory, despite failing to produce the same documentation as required by the

8    Superior Court, and despite having submitted a Declaration that they had searched for it. *Id.* Exs.

9    M & N. In short, ConnectU and the Individual Defendants repeatedly lied to try to preserve

10   jurisdiction in one Court while defeating it in another.

11         This case has some parallels to the high profile case of *Qualcomm v. Broadcom*. In

12   *Qualcomm I* and *II*, both the patentee and its attorneys alleged that they only inadvertently

13   overlooked critical and relevant documents despite the fact that they directly contradicted the

14   witnesses' and the patentee's sworn statements in depositions, trial testimony and in written

15   discovery. *Qualcomm Inc. v. Broadcom Corp.*, 2007 WL 2296441, at *16 - *34 (S.D. Cal. Aug.

16   6, 2007) (*Qualcomm I*); *Qualcomm Inc. v. Broadcom Corp.*, 2007 WL 2261799, at *2 - *3 (S.D.

17   Cal. Aug. 6, 2007) (*Qualcomm II*). The *Qualcomm* court sanctioned a plaintiff and its counsel in

18   the patent infringement action given the witnesses' egregious and repeated efforts to prevent

19   disclosure of their participation in a standards group, evidenced by actions taken in discovery,

20   pre-trial motions practice, trial, and post-trial proceedings, including the withholding of the

21   critical documentation. *Id.* These sanctions included a finding that two patents were

22   unenforceable due to waiver, and the payment of the Defendants' costs and attorneys fees. *Id.*

23         Here, like the situation in *Qualcomm I* and *II*, there simply is no way ConnectU, the

24   Individual Defendants, or their counsel can credibly argue that at all times prior to June 2, 2006,

25   they considered Divya Narendra to have been a member of ConnectU LLC at all times from its

26   creation, and then two weeks later, on June 12, 2006 decide he had not been a member until

27   August 5, 2005. The only thing that happened in that ten day period is that the California

28   Superior Court dismissed Divya, Tyler and Cameron as defendants, based upon their prior false

1  statements, thus opening up the opportunity for all three to try and salvage the Massachusetts

2  action which they recognized was facing almost certain dismissal in its entirety.

3       Under no legal theory can ConnectU, its founders or their counsel justify their behavior.

4  In light of the number of times they took contrary positions in order to gain some legal advantage

5  in one forum or another, such misrepresentations cannot be written off to mere negligence or

6  mistake.  A mistake could be understandable.  A series of misleading or false statements

7  permeating this case and the Massachusetts case cannot and should not be excused.  ConnectU,

8  its founders and their counsel have deliberately sought in bad faith to mislead several courts,

9  starting with the California Superior Court, to escape jurisdiction.  They should not be permitted

10  to continue such tactics. Sanctions are appropriate and warranted and should be imposed

11  pursuant to the Court's inherent powers to do so.

12       **B.    Sanctions Pursuant to 28 U.S.C. § 1927**

13       Independent of the Court's inherent powers, a course of conduct is sanctionable pursuant

14  to 28 U.S.C. § 1927 when those actions unreasonably multiply the proceedings:

15           Any attorney or other person admitted to conduct cases in any
             Court of the United States or any Territory thereof who so
16           multiplies the proceedings in any case unreasonably and
             vexatiously may be required by the Court to satisfy personally the
17           excess costs, expenses, and attorneys fees reasonably incurred
             because of such conduct.
18

19  28 U.S.C. § 1927.  In that regard, the Federal Courts have consistently held that an attorney

20  improperly "multiplies"  proceedings where counsel continues to pursue deficient filings.  *See,*

21  *e.g., Schutts v. Bentley Nev. Corp.,* 966 F. Supp. 1549, 1559-60(D. Nev. 1997)(finding that bad

22  faith was evidenced by the advocacy of multiple meritless filings that were known to lack factual

23  substance); *see also Lone Ranger Television, Inc. v. Program Radio Corp.*, 740 F.2d 718, 727

24  (9th Cir. 1984) (upholding award of fees and expenses pursuant to section 1927 for "abuse of the

25  judicial process in the *methodology* of . . . *prosecutio*n" of a partially meritorious claim;

26  emphasis in original).  In particular, 28 U.S.C. § 1927 authorizes an award of fees and expenses

27  when counsel unreasonably multiplies the proceedings by acting "recklessly or in bad faith."  *See,*

28  *e.g., United States v. Blodgett,* 709 F.2d 608 (9th Cir. 1983);  *Fink v. Gomez,* 239 F.3d 989 ,993

1   (9th Cir. 2001)("recklessness suffices for § 1927"); *Shutts,* 966 F. Supp. 1549, 1559(D. Nev.

2   1997)("Bad faith is present whenever an attorney knowingly or recklessly raises a frivolous

3   argument. . ."); *Hutto v. Finney,* 437 U.S. 678, 689 n. 14, (1978)(holding that a party also

4   demonstrates bad faith by "delaying or disrupting the litigation or hampering enforcement of a

5   Court order"). *See also B.K.B. v. Maui Police Dep't.,* 276 F.3d 1091, 1106 (9th Cir. 2002)

6   (holding that knowing disregard for rules of evidence and misleading the Court as to the nature of

7   evidence offered constitutes recklessness justifying §1927 sanctions).

8         For all of the same reasons that their conduct warrants sanctions under the Court's

9   inherent powers, Defendants' and their counsel's conduct also belies good faith and further

10  illustrates their indifference for the significant and unnecessary litigation expenses that Facebook

11  and Zuckerberg incurred. *See, e.g., Refac Int'l,* 141 F.R.D. at 287(finding that plaintiffs' failure

12  to make reasonable pre-filing inquiry, and its failure timely disclose its factual basis as ordered by

13  the court, needlessly increased the cost of this litigation, and constituted conduct that "belies good

14  faith.")  Defendants and their counsel must be held accountable for intentionally burdening

15  Facebook with allegations of LLC membership that have no factual support, and which varied

16  depending on the litigation argument.  This conduct has been persistent and will continue if

17  Defendants and their counsel are not deterred.  At a minimum, ConnectU's, the Individual

18  Defendants', and their counsel's actions have recklessly and unreasonably multiplied the

19  proceedings through such actions as not even having the witnesses read their discovery responses,

20  and by introducing wholly inconsistent positions that were specifically the reason the

21  Massachusetts Court had to hold two days of evidentiary hearings following extensive discovery.

22        Accordingly, Facebook and Zuckerberg request that they be reimbursed by Defendants

23  and their attorneys for its excess costs and attorneys' fees incurred in opposing Defendants'

24  positions concerning membership pursuant to 28 U.S.C § 1927.

25  **IV.    <u>CONCLUSION</u>**

26        Facebook respectfully requests, therefore, that the Court grant this Motion for Monetary

27  Sanctions and order ConnectU, Divya Narendra, Tyler Winklevoss, and Cameron Winklevoss,

28  and their counsel to pay monetary sanctions for reasonable attorneys' fees and costs associated

1    with challenging the Motion to Quash filed in Superior Court in this action.  Facebook also

2    requests that this Court issue evidentiary sanctions precluding defendants from contesting that

3    Cameron Winklevoss, Tyler Winklevoss, and Divya Narendra were acting in their individual

4    capacities as set forth in the complaint.

5    Dated: August 22, 2007                    ORRICK, HERRINGTON & SUTCLIFFE LLP

6

7                                             /s/ I. Neel Chatterjee /s/

8                                             I. Neel Chatterjee
                                             Attorneys for Plaintiff
9                                             FACEBOOK, INC. and MARK ZUCKERBERG

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>CERTIFICATE OF SERVICE</u>

2

    I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on August 22, 2007.

3

4

Dated:  August 22, 2007.         Respectfully submitted,

5

             /s/ I. Neel Chatterjee /s/

6

              I. Neel Chatterjee

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OHS West:260290989.2         - 19 -