# EXHIBIT X

Dockets.Justia.com

# United States District Court
# District of Massachusetts

CONNECTU LLC,
    Plaintiff,

    V.                            CIVIL ACTION NO. 2004-11923-DPW

MARK ZUCKERBERG,
EDUARDO SAVERIN,
DUSTIN MOSKOVITZ,
ANDREW MCCOLLUM,
CHRISTOPHER HUGHES,
THEFACEBOOK, INC.,
    Defendants.

---

MARK ZUCKERBERG,
THEFACEBOOK, INC.,
    Plaintiff-in-Counterclaim,

    V.

CONNECTU LLC,
    Defendant-in-Counterclaim,
CAMERON WINKLEVOSS,
TYLER WINKLEVOSS,
DIVYA NARENDRA,
    Additional Defendants-in-Counterclaim.

# SECOND MEMORANDUM AND PROCEDURAL ORDER

COLLINGS, U.S.M.J.

## I. Introduction

Familiarity with the Memorandum and Procedural Order (#172) issued on May 1, 2006, which is incorporated herein by reference, is assumed. To recap briefly, the motion to dismiss (#94) plaintiff ConnectU LLC's (hereinafter "ConnectU" or the "Plaintiff") complaint filed by defendants Mark Zuckerberg, Eduardo Saverin, Dustin Moskovitz, Andrew McCollum, Christopher Hughes and TheFacebook, Inc. (hereinafter collectively the "Defendants") has been referred to the undersigned for the preparation of a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).[1] In that dispositive motion the Defendants argue, among other things, that although jurisdiction

---

[1] The law contained in this Second Memorandum and Procedural Order shall be included in the Report and Recommendation when it is issued; accordingly, there is no need for any objections to be filed to the within Second Memorandum and Procedural Order pursuant to 28 U.S.C. §636(b)(1)(B) and Rule 72(b), Fed. R. Civ. P.

was alleged to be premised solely upon diversity[2] in the original complaint, as a matter of fact, diversity did not exist when the complaint was filed on September 2, 2004.

In the first Memorandum and Order (#172) it was concluded that (1) the rule that diversity is determined at the time of the filing of the complaint was to be applied, *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 570-571 (2004);(2) "the citizenship of [the plaintiff] limited liability company is determined by the citizenship of all of its members," *Pramco, LLC ex rel. CFSC Consortium, LLC v. San Juan Bay Marina, Inc.*, 435 F.3d 51, 54 (1 Cir., 2006); and (3) the citizenship of Divya Narendra and Mark Zuckerberg could not be decided based on the record then before the Court. An evidentiary hearing was scheduled for June 22, 2006, with the parties being granted leave to conduct limited discovery in advance of the hearing on the question of the citizenship of Messrs. Narendra and Zuckerberg at the time that the original complaint was filed.

---

[2] Only state law claims were alleged in the original complaint. On September 2, 2004, the date on which the complaint was first filed, ConnectU did not yet have a certificate of registration for its copyright; the certificate of registration was issued later on October 15, 2004. (Exh. to First Amended Complaint #13) As a consequence, there was no basis for federal question jurisdiction on the facts as initially alleged. The complaint was amended as of right on October 28, 2004, to include a claim under federal law, 17 U.S.C. §101 *et seq.*, for copyright infringement.

3

On June 12, 2006, ConnectU filed a Motion for Leave to File Plaintiff's Supplemental Brief in Opposition to Motion to Dismiss, Presenting New Evidence and Supplemental Authority in View of *Pramco* (#181), together with various declarations and exhibits (##182 and Exh. 1-23, 183, 184, 185, 187, 198).[3] In these filings the Plaintiff advanced the argument, *inter alia*, that diversity existed on September 2, 2004 when the complaint was filed because at that time Divya Narendra was not a member of ConnectU. Eight days later on June 20, 2006, the Defendants filed a Motion to Strike Plaintiff's Supplemental Declarations of Divya Narendra, Tyler and Cameron Winklevoss in Support of Plaintiff's Supplemental Brief (#191), a Memorandum in Opposition to the Motion for Leave to File Plaintiff's Supplemental Brief (#192), as well as affidavits and exhibits (##193 and Exh. 1, #194 and Exh. A-Q, 197). On July 7, 2005, ConnectU filed an Opposition to Facebook Defendant's (sic) Motion to Strike (#201) along with a declaration and exhibits (#202 and Exh. 1-4).

The evidentiary hearing was held as scheduled on June 22, 2006. During the course of the hearing the parties stipulated to the fact that Divya Narendra

---

[3] No motion was filed, nor any request made, to expand the scope of the scheduled evidentiary hearing.

4

was a citizen of the state of New York. (#219 at 12) Consequently, the bulk of the hearing was devoted to the citizenship of Mark Zuckerberg. At the conclusion of the hearing after the question of Mr. Zuckerberg's citizenship was taken under advisement, the Plaintiff made an offer of proof regarding Divya Narendra's membership in ConnectU on the date the complaint was filed. (#221 at I-224 to I-226) The Defendants responded by arguing first that, as a result of the integration clause in ConnectU's operating agreement, the parol evidence rule barred consideration of any oral agreement among Divya Narendra, Tyler Winklevoss and Cameron Winklevoss; second, that Divya Narendra is judicially estopped from claiming that he is not a member of ConnectU in light of his previous sworn testimony; and third, that because ConnectU was not registered to do business in Massachusetts it cannot maintain an action in the Commonwealth and, further, because the limited liability company no longer exists since it was merged into ConnectU, Inc., the failure to register cannot be cured. (#221 at I-226 to I-234) A briefing schedule on these three issues was set. (#221 at I-234 to I-235)

On July 13, 2006, the Plaintiff filed a memorandum of law (#212) on the trio of legal issues raised at the evidentiary hearing together with a declaration

5

and exhibits. (#213 and Exh. 1-9[4])  The Defendants submitted their objection to the Plaintiff's memorandum (#225) and a declaration with exhibits (#226 and Exh. A -Y) on July 27, 2006.  At this juncture, the record is complete.

## II. Discussion

After considering all of the evidence presented, the Court finds that Mark Zuckerberg was a citizen of the state of New York on September 2, 2004.[5] Having reached this conclusion, the three legal issues raised at the end of the evidentiary hearing become relevant because if Divya Narendra was a member of ConnectU on the date this lawsuit was filed, there was no diversity of citizenship and the action must be dismissed.  The Court shall rule on the first two of those issues and pretermit the third.

### A. Parol Evidence Rule

The Defendants take the position that pursuant to the terms of ConnectU's Operating Agreement which was signed on August 5, 2005, Divya Narendra was a member of ConnectU effective April 6, 2004.  Since the Operating Agreement

---

[4] On July 25, 2006, a further declaration and exhibit (#222) was submitted in support of the memorandum of law filed on July 13th, basically confirming the fact that ConnectU, Inc. had filed the Foreign Corporation Certificate of Registration with the Commonwealth of Massachusetts, although it had yet to be approved.

[5] The factual and legal basis supporting this conclusion shall be detailed in the Report and Recommendation that will ultimately issue.

is a fully integrated contract, the argument runs that the parol evidence rule forecloses ConnectU from offering evidence of any prior oral agreements to alter the terms of the written agreement.

The Supreme Court has made clear that:

> It has long been the case that "the jurisdiction of the Court depends upon the state of things at the time of the action brought." *Mollan v. Torrance*, 9 Wheat. 537, 539, 6 L.Ed. 154 (1824). This time-of-filing rule is hornbook law (quite literally) taught to first-year law students in any basic course on federal civil procedure. It measures all challenges to subject-matter jurisdiction premised upon diversity of citizenship against the state of facts that existed at the time of filing-- whether the challenge be brought shortly after filing, after the trial, or even for the first time on appeal. (Challenges to subject-matter jurisdiction can of course be raised at any time prior to final judgment. *See Capron v. Van Noorden*, 2 Cranch 126, 2 L.Ed. 229 (1804).)

*Grupo*, 541 U.S. at 570-571 (footnote omitted).

The issue to be decided is whether Mr. Narendra was a member of ConnectU on September 2, 2004, the date the complaint was filed. When considering this question, the "time-of-filing rule" controls, not the language of a later executed contract.[6] In other words, the subsequent action of the parties cannot alter the

---

[6] This is not to suggest that the terms of the Operating Agreement may not be relevant in determining whether Divya Narendra was a member of ConnectU on September 2, 2004. It is only to say that the terms of the Operating Agreement are not *determinative* of the issue.

7

state of the facts as they actually existed on the pertinent date. As explained by the Supreme Court:

> To our knowledge, the Court has never approved a deviation from the rule articulated by Chief Justice Marshall in 1829 that "[w]here there is *no* change of party, a jurisdiction depending on the condition of the party is governed by that condition, as it was at the commencement of the suit." *Conolly*, 2 Pet., at 556, 7 L.Ed. 518 (emphasis added). Unless the Court is to manufacture a brand-new exception to the time-of-filing rule, dismissal for lack of subject-matter jurisdiction is the only option available in this case. The purported cure arose not from a change in the parties to the action, but from a change in the citizenship of a continuing party. Withdrawal of the Mexican partners from Atlas did not change the fact that Atlas, the single artificial entity created under Texas law, remained a party to the action. True, the composition of the partnership, and consequently its citizenship, changed. But allowing a citizenship change to cure the jurisdictional defect that existed at the time of filing would contravene the principle articulated by Chief Justice Marshall in *Conolly*. We decline to do today what the Court has refused to do for the past 175 years.

*Grupo*, 541 U.S. at 574-575 (footnote omitted).

The bottom line is that the parol evidence rule does not apply in the circumstances at hand. Based on the evidence proffered by the parties in their various filings, there undeniably is a dispute of fact as to whether Divya Narendra was a member of ConnectU on September 2, 2004.

B. Judicial Estoppel

The Defendants contend that the Plaintiff is estopped from now claiming that Divya Narendra was not a member of ConnectU on September 2, 2004. The circumstances in which the doctrine of judicial estoppel will be applied have been detailed at some length:

> In order for judicial estoppel to be applicable, it is "widely recognized" that "at a minimum, two conditions must be satisfied." *Synopsys*, 374 F.3d at 33. Initially, the previously asserted position or estopping position, and the presently asserted position or estopped position, must be "mutually exclusive" and "clearly inconsistent." *Synopsys*, 374 F.3d at 33; *New Hampshire v. Maine*, 532 U.S. 742, 750, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001). Second, the party to be estopped, in this instance the United States, must "have succeeded in persuading a court to accept its prior position." *Synopsys*, 374 F.3d at 33 (*citing Lydon v. Boston Sand & Gravel, Co.*, 175 F.3d 6, 13 (1 Cir., 1999)); *Gens v. RTC*, 112 F.3d 569, 572 (1 Cir.), *cert. denied*, 522 U.S. 931, 118 S.Ct. 335, 139 L.Ed.2d 260 (1997). Together these two conditions give the impression that either the "first court has been misled or the second court will be misled, thus raising the specter of inconsistent determinations and endangering the integrity of the judicial process." *Synopsys*, 374 F.3d at 33 (*citing New Hampshire*, 532 U.S. at 750-51, 121 S.Ct. 1808).
>
> Another consideration weighed by courts, albeit "not a formal element of a claim of judicial estoppel," is whether the party asserting the alleged inconsistent position would gain an unfair advantage. *Synopsys*,

9

> 374 F.3d at 33. This element, however, is not a "sine qua non to the applicability of judicial estoppel" for it is the court's acceptance of the argument, "not the benefit flowing from the acceptance, that primarily implicates judicial integrity." *Synopsys*, 374 F.3d at 33.
>
> In sum, it can generally be stated that in the situation where "'a party has adopted one position, secured a favorable decision, and then taken a contradictory position in search of legal advantage'" the doctrine of judicial estoppel may be invoked. *Synopsys*, 374 F.3d at 33 (*quoting InterGen v. Grina*, 344 F.3d 134, 144 (1 Cir., 2003)).

*Fieldwork Boston, Inc. v. U.S.*, 344 F. Supp.2d 257, 267 (D. Mass., 2004).

To support of their position, the Defendants point to the following evidence.

In the first amended complaint, Mr. Narendra is described as a founder of ConnectU who began to develop a business plan for a new website in December, 2002. (#13 ¶¶11, 12) The founders wanted to launch this new website before they graduated from Harvard in June of 2004. (#13 ¶13)

In August, 2005, TheFacebook, Inc. filed suit in the state court of California against ConnectU LLC, Cameron Winklevoss, Tyler Winklevoss, Howard Winklevoss, Divya Narendra, and Does 1-25 alleging violation of California Penal Code §502(c) and common law misappropriation/unfair competition. (#226, Exh. A) In response, the individual defendants filed a motion to quash service of complaint and summons for lack of personal

jurisdiction. (#226, Exh. B[7]) In that motion it was argued that the "Individual Defendants have no contact with California" (#226, Exh. A at 2) and "[i]n addition, the only connection the Individual Defendants have to the alleged acts in this case is as members of Defendant ConnectU LLC." (#226, Exh. A at 2-3)

The parties undertook discovery on the question of personal jurisdiction. (#226 ¶5) As part of the process, TheFacebook, Inc. propounded a set of special interrogatories to the individual defendants, including interrogatory no. 14. (#226, Exh. D) The interrogatory is as follows:

> INTERROGATORY NO. 14:
>
> IDENTIFY current AND former directors, officers, employees, AND agents of CONNECTU (including without limitation, Members, Managers, AND Board of Managers as defined in the Limited Liability Company Operating Agreement of ConnectU, LLC - bates numbers C011285 through 011335), HARVARDCONNECTION, AND WINKLEVOSS COMPANIES, including without limitation, dates in these positions, duties, job descriptions, authorities, AND responsibilities.

#226, Exh. D.

The individual defendants initially responded by objecting and proffering no

---

[7] Defendant ConnectU did not contest that the California court had personal jurisdiction over it. (#226, Exh. B at 6)

substantive answers. (#226, Exh. E) TheFacebook, Inc. then filed a motion to compel supplemental responses (#226, Exh. F) which was allowed. Thereafter, the response to Interrogatory 14 was supplemented to include the following:

> Members of ConnectU include Cameron Winklevoss, Tyler Winklevoss, Howard Winklevoss, and Divya Narendra, as set forth in the Limited Liability Company Operating Agreement recited in the Interrogatory ("Operating Agreement") and found at bates numbers C011285 through C011335. These persons have all been Members since ConnectU was formed.

#226, Exh. H.

TheFacebook, Inc. also filed certain form interrogatories (#226, Exh. L) to which the Court also compelled answers. (#226, Exh. G) In the supplemental responses and declarations it was represented that "[s]ubstantially most if not all of these downloads [from the facebook.com] occurred prior to the end of July, 2004" (#226, Exh. P) and that the actions were taken "on behalf of ConnectU." (#226, Exh. M)

In a declaration filed on June 12, 2006 in the present case, Divya Narendra stated, *inter alia*, that

> 1. On and prior to September 2, 2004, the oral agreement between the Harvard Connection founders, Tyler and Cameron Winklevoss, and I, was that only Cameron and Tyler were Members of ConnectU LLC.

12

*****
> 3. Because our respective roles, contributions, and shares in the company were uncertain, I was not made a Member of ConnectU LLC until well after September 2, 2004.

Declaration of Divya Narendra #184.

Mr. Narendra was questioned at his June 16, 2006 deposition about the inconsistency between his interrogatory answers in the California case and the recently filed declaration in the present case:

> Q. Responding to 14 you say the members of ConnectU include Cameron Winklevoss, Tyler Winklevoss, Howard Winklevoss and Divya Narendra, correct?
>
> A. Correct.
>
> Q. And then you say those persons have all been members since ConnectU was formed?
>
> A. That's what it says, yes. Can I just clarify something, though?
> *****
> Q. When you signed your interrogatory response, amended interrogatory response on March 9th, 2006 under penalty of perjury, did you consider your answer to be accurate?
>
> A. Yes.
>
> Q. And when you say they had, these persons have all been members since ConnectU was formed, do you agree that conflicts with your statement that only

13

Cameron and Tyler were members of ConnectU LLC prior to September 2nd, 2004 in your declaration?

A. T think this actually may be misstated. What I'm referring to here is the operating agreement. That –

> MS. ESQUENET: Let the record reflect that by "here" the witness is referring to the response to interrogatory number 14.

A. Right, so in interrogatory response number 14 when I say, or when it says that these persons have all been members since ConnectU was formed, I'm referring to the date as of this Limited Liability Company Operating Agreement in the sentence before.

Q. You agree you don't say that in the interrogatory response?

\*\*\*\*\*

A. I didn't say that. I see how that could be misconstrued, but that's what I'm referring to is this operating agreement.

#213, Exh. 7.

In their brief in support of their motion to quash, the individual defendants argued that:

> [T]his Court lacks jurisdiction over the Individual Defendants because (a) they have few if any contacts with the forum, (b) they have not availed themselves of the benefit of the forum in any way, purposefully or otherwise, and (c) the Plaintiff's claims do no arise out of any personal contacts between the Individual Defendants and the forum (nor can Plaintiff plead otherwise).

#226, Exh. B at 4.

They further asserted that "[t]o the extent the Individual Defendants have any contacts with California, it is as a result of their being members of ConnectU LLC" and "[t]he Individual Defendants did not take any acts regarding Plaintiff outside their positions as members of an LLC, and Plaintiff has no evidence that they did." (#226, Exh. B at 6) On June 1, 2006, the individual defendants' motion to quash was allowed with the Court writing "The Motion of Defendants CAMERON WINKLEVOSS, TYLER WINKLEVOSS, HOWARD WINKLEVOSS, and DIVYA NARENDRA to Quash Service of Complaint and Summons for Lack of Personal Jurisdiction is granted." (#226, Exh. C)

Because Cameron Winklevoss, Tyler Winklevoss, Howard Winklevoss, and Divya Narendra argued in the alternative in support of their motion to quash, i.e., basically that they had little or no contact with the forum or, if they did, it was only in a representative capacity on behalf of ConnectU, and the California judge provided no reasoning for his decision, it is impossible to say that the conditions for application of the doctrine of judicial estoppel have been met. For example, if the judge found that Divya Narendra individually had had insufficient contact with California to support personal jurisdiction there, that finding would not necessarily be inconsistent with finding that Mr. Narendra

was not a member of ConnectU in on September 2, 2004. Moreover, it remains unknown upon which ground the Court relied in making the ruling. The Defendants' protestations notwithstanding, it cannot be assumed that the judge concluded that although Divya Narendra had sufficient contacts with California, those contacts were only on behalf of ConnectU so jurisdiction could not be exercised over Mr. Narendra personally.

Further, in light of Mr. Narendra's deposition testimony explaining the seeming inconsistency between the interrogatory answers and his declaration, it cannot be stated that the testimony is completely contradictory. What it really comes down to at this point is a question of credibility, and that is best addressed in the context of an evidentiary hearing.

### C. Failure to Register

The Court pretermits the registration issue pending the issuance of the Report and Recommendation.

### III. Conclusion and Order

As indicated at the conclusion of the June 22nd evidentiary hearing, to the extent that the legal arguments were not dispositive and questions of fact remained extant, the issue of the membership of ConnectU on September 2, 2004 would be handled in the same manner as was the question of citizenship.

(#221 at I-234 to I-235)  Accordingly, it is ORDERED that an evidentiary hearing be, and the same hereby is, scheduled for *Tuesday, September 26, 2006 at 10:00 A.M.* at Courtroom #23 (7th floor), John Joseph Moakley United States Courthouse, Boston, Massachusetts.

Counsel may take discovery on the issue of Divya Narendra's *membership* in ConnectU LLC *at the time the original Complaint was filed* prior to the hearing.  Any requests for documents on the issue must be served *on or before the close of business on Friday, September 1, 2006.*  Pursuant to Rule 34(b), Fed. R. Civ. P., the time within which responses/objections to any such requests must be served is SHORTENED to fifteen (vice thirty) calendar days from the date of service.

/s/ Robert B. Collings
ROBERT B. COLLINGS
United States Magistrate Judge

August 24 , 2006.

17