# EXHIBIT Z

Dockets.Justia.com

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-11923-DPW

CONNECTU LLC                    .
    Plaintiff               .
                           .
      v.                      .
                           .   BOSTON, MASSACHUSETTS
MARK ZUCKERBERG, et al          .   OCTOBER 25, 2006
    Defendants              .
. . . . . . . . . . . . . . . . .

TRANSCRIPT OF EVIDENTIARY HEARING (DAY 2)
BEFORE THE HONORABLE ROBERT B. COLLINGS
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:      Daniel Tighe, Esquire
                        Griesinger, Tighe & Maffei
                        155 Federal Street, Suite 1700
                        Boston, MA  02110
                        (617) 542-9900

                        John F. Hornick, Esquire
                        Margaret A. Esquenet, Esquire
                        Meredith Schoenfeld, Esquire
                        Finnegan, Henderson, Farabow, Garrett &
                        Dunner, LLP
                        901 New York Avenue, N.W.
                        Washington, DC  20001
                        (202) 408-4000

For the Defendants:     G. Hopkins Guy, III, Esquire
                        I. Neel Chatterjee, Esquire
                        Monte Cooper, Esquire
                        Orrick, Herrington & Sutcliffe LLP
                        1000 March Road
                        Menlo Park, CA  94025
                        (650) 614-7400

Court Reporter:

Proceedings recorded by digital sound recording, transcript
produced by transcription service.

*MARYANN V. YOUNG*
Certified Court Transcriber
240 Chestnut Street
Wrentham, Massachusetts 02093
(508) 384-2003

```
For the Defendants:        Steven Bauer, Esquire
                           Proskauer Rose, LLP
                           One International Place
                           Boston, MA  02110
                           (617) 526-9600


For Eduardo Saverin:       Annette Hurst, Esquire
                           Heller Ehrman LLP
                           275 Middlefield Road
                           Menlo Park, CA 94025
                           650-324-7169


                           Daniel K. Hampton, Esquire
                           Holland & Knight LLP
                           10 St. James Avenue
                           Boston, MA 02116
                           617-523-2700
```

1   A    So we're looking at Exhibit 75?

2   Q    No, it's, I'm sorry.  I had given you the wrong number

3   before.  Oh, yeah, it is 75.  I'm sorry.

4   A    We're looking at page three on Exhibit 75?

5   Q    Correct.

6        MR. CHATTERJEE:  And let me just approach the witness

7   to make sure he has the right document.  Yes.

8   (Pause)

9        THE WITNESS:  Can you repeat the question?

10  BY MR. CHATTERJEE:

11  Q    Yes.  Does this refresh your recollection as to what

12  request for admission No. 2 was?

13  A    Yes.

14  Q    And we asked you to admit that you've accessed TheFaceBook

15  website for the purpose of acquiring email addresses previously

16  registered with TheFaceBook?

17  A    That's right.

18  Q    You did that in July of 2004, right?

19  A    Yes.

20  Q    And your testimony as you sit here today is you were not a

21  member in 2004 at any point in time, right?

22  A    I became a member after I signed the operating agreement.

23  Q    In 2005, right?

24  A    In 2005.

25  Q    Let's go back to Exhibit No. 71.

Cross - Narendra                                    II-50

1              MR. HORNICK:  71(a) or b or c?

2   BY MR. CHATTERJEE:

3   Q    71(a).  Page 5.

4   A    Okay.

5   Q    Regarding that request for admission No. 2 when you

6   accessed TheFaceBook for the purpose of acquiring email

7   addresses that was in July of 2004, right?

8   A    What was in July of 2004?

9   Q    When you accessed TheFaceBook website for the purpose of

10  acquiring email addresses?

11  A    That sounds about right.

12  Q    And you responded in this form interrogatory, responding

13  party visited FaceBook's website only in its capacity as a

14  member of ConnectU, right?

15  A    That's right.

16  Q    And you also referred to your response to request No. 2,

17  right?

18  A    Yes.

19  Q    Did you mean to incorporate that by reference?

20  A    I don't remember.  I didn't prepare the exact response so.

21  Q    You didn't prepare the exact response?

22  A    No.

23  Q    You understood this was your testimony?

24  (Pause)

25          THE COURT:  Is that a question for him?

1  A    I didn't prepare this--

2           MR. CHATTERJEE:  Yes, I'm asking him.

3           THE COURT:  It sounded like a statement.

4           MR. CHATTERJEE:  I'm sorry.

5  BY MR. CHATTERJEE:

6  Q    You understood--

7           THE COURT:  Put it in the form of a question, please.

8           MR. CHATTERJEE:  Thank you, Your Honor.

9  BY MR. CHATTERJEE:

10 Q    Now, Mr. Narendra, did you understand that when you signed

11 this under penalty of perjury this was your testimony?

12 A    Yes.

13 Q    Do you know what you meant when you wrote, see ConnectU in

14 response to request No. 2?

15          MR. HORNICK:  Objection, foundation?

16          THE COURT:  He signed the document.  He may be

17 questioned about it.  The objection is overruled.

18 A    You know, these responses were prepared by my counsel and,

19 you know, I, I don't remember looking sort of responding to

20 this and looking back at another document at the same time

21 cause the questions are in a completely different document.

22 But I trusted my lawyers that they would have been prepared,

23 that their responses would have been prepared accurately.

24 BY MR. CHATTERJEE:

25 Q    So you have no idea why it says, see ConnectU's response

1  to request No. 2?

2  A    Not at the time when I signed this, no.

3  Q    Do you know if you verified your responses to request No.

4  2?

5  A    I signed the document, is that what you're referring to--

6  Q    Not--

7  A    Or we talking about--

8  Q    --not the form interrogatories.  Well I need to ask you

9  when it says see ConnectU's response to request No. 2, are you

10 referring to ConnectU's response to request for admission No. 2

11 or your response to request for admission No. 2?  What are you

12 referring to?

13 A    Again, when I signed this document I trusted my lawyers

14 prepared it accurately and, you know, again all the questions

15 are on different - it's fairly confusing.  All the questions

16 are not on this document so, you know, when I signed this is

17 didn't see what the exact questions were for each one of these

18 responses.

19 Q    You didn't have any issue with your lawyers writing that

20 you visited TheFaceBook's website only in your capacity as a

21 member of ConnectU, right?

22 A    Yeah, I didn't have an issue with that.

23 Q    And you haven't accessed TheFaceBook in 2005?

24 A    No.

25 Q    All of your accesses were in 2004, right?

1   A    That's right.

2   Q    You didn't say, hey, this is inaccurate.  I wasn't a

3   member, I wasn't a member in 2004?

4   A    Well, I signed this document after the operating agreement

5   was signed which would have made me a retroactive member of

6   ConnectU.

7   Q    Right.  So your testimony is when you accessed the website

8   in July of 2004, you weren't a member at the time but the

9   operating agreement retroactively transformed you into one?

10  A    In my deposition I think it was in June I stated that,

11  that my response to I think it was the amended response to form

12  interrogatory 14, I forget the exact document but, basically I

13  said that it was misleading that, or that the, you know, the

14  response could have been misread or misinterpreted.

15  Q    This one too?

16  A    No, I didn't say that.

17  Q    This one's accurate?

18  A    I think now it's accurate, yes.

19  Q    Now it is accurate?

20  A    Yeah, I think it's accurate.

21  Q    That in July of 2004 when you accessed TheFaceBook website

22  you were a member?

23  A    Yes.

24  Q    Okay, thank you.

25       MR. CHATTERJEE:  One moment, Your Honor.

1           THE COURT:  Yes.

2  (Pause)

3           MR. CHATTERJEE:  Your Honor, I seek to introduce

4  Defendants' Exhibit 71.

5           THE COURT:  And that is the form interrogatories?

6           MR. CHATTERJEE:  Correct.

7           THE COURT:  Any objection?

8           MR. HORNICK:  Your Honor, the witness has only been

9  asked questions about A, the form interrogatory and A.

10           MR. CHATTERJEE:  I'm happy to question him about B

11  too.

12           THE COURT:  Well, did he sign B and C?

13           MR. CHATTERJEE:  One of the has an established

14  foundation.

15           THE COURT:  Oh, wait a minute, just.

16           MR. CHATTERJEE:  He did.

17           THE COURT:  If he signed them, you know, unless

18  there's a relevance question they're coming in.

19           MR. CHATTERJEE:  I think there's just A and B.  I

20  think there's just A and B by the way.

21           MR. HORNICK:  A and B, if they've both have been

22  signed then we have no objection.

23  (Pause)

24           MR. HORNICK:  As I understand it, 71 is made up of

25  the form interrogatories which don't have a Tab and then

1    A    Yes.

2    Q    Thank you.  Now your expectation was that you would gain

3    somehow if the ConnectU project was successful, right?

4    A    That's right.

5    Q    And that you would get what you deserved with respect to

6    the ConnectU website, right?

7    A    That's right.

8          MR. CHATTERJEE:  No further questions, Your Honor.  I

9    pass the witness.

10          THE COURT:  All right.  We'll take a recess till 11.

11          THE CLERK:  All rise.

12                          (RECESS)

13          THE CLERK:  All rise.  Court is back in session.

14          THE COURT:  All right, you may be seated.

15    Cross-examination?

16          MR. HAMPTON:  Thank you, Your Honor.  I will be very

17    brief.

18          THE COURT:  You may proceed.

19    BY MR. HAMPTON:

20    Q    Good morning, Mr. Narendra.

21    A    Good morning.

22    Q    We've met before at your depositions; is that right?

23    A    That's right.

24    Q    And you understand I'm Dan Hampton and I represent in the

25    case Eduardo Saverin.

1  A    That's correct.

2  Q    Mr. Narendra, if Mr. Chatterjee's client, TheFaceBook,

3  went back to California tomorrow and sued you again personally

4  for accessing TheFaceBook website in July of 2004, you'd go

5  right back to the California court and tell them again that

6  when you did that you were acting in your capacity as a member

7  of ConnectU LLC, wouldn't you?

8  A    Yes.

9  Q    And so, Mr. Narendra, what you're suggesting is that for

10 the purposes of the California lawsuit — that's because of the

11 operating agreement, am I right about that?  That's the reason

12 why you can tell the California court that you were a member of

13 ConnectU LLC in July of 2004 or were you actually a member in

14 July of 2004?

15 A    I became a member when I signed that agreement.

16 Q    All right.  So it's the retroactive nature of the

17 agreement that allows you to go to the California court and

18 tell them that in July of 2004 you were a member of ConnectU

19 LLC?

20 A    That's right.

21 Q    And so what you're suggesting here today is that the

22 retroactive nature of the operating agreement, that's good for

23 the California case where you get the benefit of getting out as

24 a personal defendant but that's not what the court should do

25 here.  You weren't really a member on September 2nd of 2004 when

1  this case was filed?

2  A    I was not a member September 2, 2004 when - or on

3  September 2, 2004 I was not a member.

4           MR. HAMPTON:  No further questions.

5           THE COURT:  Mr. Hornick, any redirect?

6           MR. HORNICK:  Yes, just a few questions, Your Honor.

7                      REDIRECT EXAMINATION

8  BY MR. HORNICK:

9  Q    Do you recall testifying earlier that up until the time

10 that ConnectU LLC was formed you and Cameron and Tyler had

11 contributed roughly equally to the Harvard Connection website?

12 A    That's right.

13 Q    All right.  Now when ConnectU LLC was created was it your

14 intent to continue the same arrangement the three of you had

15 with Harvard Connection into ConnectU LLC?

16           MR. CHATTERJEE:  Your Honor, asked and answered and

17 outside the scope of the cross.

18           THE WITNESS:  Can you repeat the question?

19           THE HORNICK:  Yes.

20           THE COURT:  Well, repeat the question.

21           THE WITNESS:  Oh, sorry.

22           THE COURT:  I'm sorry.

23           MR. HORNICK:  Yes.

24 BY MR. HORNICK:

25 Q    When ConnectU LLC was created, was it your intention to

1  was it your intention to continue the same arrangement that

2  you had with the Harvard Connection website into ConnectU LLC?

3  A    For the very, very early stages of ConnectU the

4  ConnectU.com website, there was still a bit of, you know, let's

5  share the costs equally, as heard as evidenced by that, you

6  know, with the second check.  But pretty soon after that that

7  put me, you know, that one-third, one-third, one-third type

8  sort of allocation, you know, changed a lot.  So, and pretty

9  quickly it became clear that I was not going to be sharing sort

10 of the expenses of the product at the same rate as they would.

11 Q    Well after you put in that $10,000, did you put any more

12 money into ConnectU LLC?

13 A    No.

14 Q    I'd like to direct your attention to the Defendants'

15 Exhibit 71 which is in one of those books before you.

16 (Pause)

17          MR. HORNICK:  May I assist the witness, Your Honor?

18          THE COURT:  Yes.

19 (Pause)

20 BY MR. HORNICK:

21 A    I've put before you the Defendants' Exhibit 71 before the

22 Tab so it's just 71, not 71(A) or B.  During your cross-

23 examination you were asked if you'd seen this document before.

24 Do you recall your answer?

25 A    Yes.

Redirect - Narendra                                                II-80

1    Q    What was your answer?

2    A    I said that I had not seen this document until very

3    recently during my last deposition.

4    Q    So when you were asked to sign the form interrogatory

5    answers--

6    A    Right.

7    Q    --did you have this Exhibit 71, the actual form

8    interrogatories at that time?

9    A    No, I did not.

10         THE COURT:  Are you saying you didn't know what

11   questions you were answering?

12         THE WITNESS:  No, I mean, I, I basically trusted that

13   my lawyers would have given the right answers.  I had never

14   seen this document?

15         THE COURT:  I mean, it just seems very odd that you

16   would sign answers under pains and penalties of perjury to

17   questions you'd never seen, but go ahead.

18   BY MR. HORNICK:

19   Q    Did you trust your lawyers to provide answers for you to

20   sign?

21   A    Yes.

22   Q    Did you understand that they might be taking certain legal

23   positions that could be reflected in those answers?

24   A    That's right.

25   Q    And you trusted that whatever answers were provided were

1   consistent with those legal positions?

2              THE COURT:  You're asking leading questions.

3   Please--

4              MR. HORNICK:  All right.

5              THE COURT:  This is redirect.

6   BY MR. HORNICK:

7   Q    Did you understand that the answers you were asked to sign

8   were consistent with your lawyers' legal positions?

9   A    Yes.

10  Q    Now on cross-examination you were asked about some request

11  for admissions that - during cross-examination were you asked

12  about certain requests for admissions that you signed in

13  connection with the California case?

14  A    Yes.

15  Q    All right.  And during cross-examination were you asked

16  about certain special interrogatory answers that you were asked

17  to sign in connection with the California case?

18             MR. CHATTERJEE:  Your Honor, these are leading

19  questions too.

20             THE COURT:  Were you asked - how does that suggest an

21  answer?  He's either going to answer yes or no.  That's not a

22  leading question.

23             MR. HORNICK:  Your Honor, I might also point out that

24  Rule 611(c) allows me to ask leading questions to move the

25  testimony along.  This isn't the real point.  I'm trying to get

<u>CERTIFICATION</u>

I, Maryann V. Young, court approved transcriber, certify that the foregoing is a correct transcript from the official digital sound recording of the proceedings in the above-entitled matter.

_____                    November 17, 2006

Maryann V. Young_____