The Facebook, Inc. v. Connectu, LLC et al
Doc. 137 Att. 20

# EXHIBIT V-8-F

Dockets.Justia.com

**Ben Gaines**

**From:** Arthur Cerrati
**Sent:** Monday, June 14, 2004 2:39 PM
**To:** Ben Gaines; Ydania Baird
**Subject:** FW: New Billing Information

Ydania,

Please note the new billing information for the summer months: 2 Russell Place, Dobbs Ferry, NY 10522

Arthur

-----Original Message-----
From: Mark Elliot Zuckerberg [mailto:mzuckerb@fas.harvard.edu]
Sent: Sunday, June 13, 2004 4:18 PM
To: Arthur Cerrati
Subject: stuff

Art,

Since we never got around to speaking last week, I figured I'd just drop you a line now about the things I've been thinking about.

First of all, I received a voicemail from someone in accounting that I have an overdue payment. I must have not received this last invoice since it was probably sent to my school mailbox and I have not been up there for some time now. I'll call them tomorrow to sort this out, but for future payments, invoices should be sent to my home at:

2 Russell Place
Dobbs Ferry, NY 10522

Besides that, it looks like I'm going to need to add about 30 servers by the end of August. I really can't afford to put servers on at the current rate, but Edward and you have both mentioned discounts for buying racks of servers, and I assume that we can discount bulk bandwidth too.
Basically, it seems to me like there are three parts to this purchase: the hardware, the monthly maintenance, and the bandwidth. Assuming the hardware costs the same amount whenever we get it, it's best to have that earlier on in the summer so my people can configure those servers and have them ready and tested by the time they're necessary. Since users won't actually be using the new servers until the end of the summer, we won't need to turn bandwidth up until then. So I guess the main variable in whether I should get the servers now or later is in the monthly cost for server maintenance by you guys. I know that right now you're getting $350/server, so with 35 servers that's absolutely ridiculous. So I guess before making any plans, I need to hear exactly what this deal with getting my own rack will be.

Essentially, come fall, I'm going to need somewhere between 100-150mbps on the 35 servers, and I'm really going to need that for somewhere around $10-12k/month. So in the mean time we just need to figure out the best way to make this happen.

In the short term, we were talking about temporarily turning bandwidth down for the summer. I looked over Edward's graphs and it looks like we're down from about 20mbps to 9mbps or so now that I've put in gzip buffering to compress the webpages and traffic is starting to diminish for the summer. Let me know what this entails and if I need to do anything.

Let's try to get on the phone tomorrow and hammer out the expansion plan so we know where things are going.

Best,

Mark

SAVVY000047

equinix

## MASTER SERVICE AGREEMENT

This Master Service Agreement ("Agreement") is entered into on AUG 11, 2004 ("MSA Effective Date") (To be completed by Equinix after receipt) by and between Equinix Operating Co., Inc. ("Equinix") and the undersigned customer ("Customer") and includes the following exhibits:

a. Exhibit A – Confidentiality Provisions, and

b. Exhibit B – Sublicensing Provisions.

Capitalized terms used herein but not otherwise defined will have the meaning ascribed to them in Section 10.

1. Services.

Subject to the terms and conditions set forth in this Agreement, Equinix will provide the Services to Customer.

2. Ordering.

a. Customer may request Services during the Term by (i) executing a Sales Order (ii) placing an Online Order, or (iii) placing a Phone Order. Each Order, which will only be effective when accepted by Equinix, will be governed by the terms and conditions of this Agreement.

b. Equinix will provide Customer with an account and password to access the Customer Care Website. Customer is responsible for maintaining the confidentiality of its account and password and for restricting and granting access thereto. Notwithstanding anything in this Agreement to the contrary, Customer is responsible and liable for all activities that occur under Customer's account (including all payments owed for any Orders that are placed under Customer's account), regardless of whether such activities are conducted by Customer, a Sublicensee or any other third party, and regardless of whether such Orders are authorized by Customer. Equinix has no obligation to verify that anyone using Customer's account and password has Customer's authorization.

3. Payment Terms and Taxes.

a. Unless otherwise agreed between the parties in writing, Service Fees for the Services will begin to accrue on the Billing Commencement Date. Equinix will invoice Customer for the Services on a monthly basis (partial months will be billed on a pro rata basis) and Customer will pay for the Services in accordance with this Section 3 and the Orders. Customer will pay in full all invoices from Equinix within thirty (30) days of the date of invoice. Any past due amounts owed by Customer will accrue interest at the lesser of one and a half percent (1.5%) per month or the highest rate permitted by applicable law. Unless otherwise stated in the Order, all invoices will be paid in U.S. Dollars.

b. The Service Fees for Services ordered through Sales Orders will be listed on the Sales Orders. For all other Orders, the Service Fees for Services will be Equinix's then-current list price for such Services, unless otherwise agreed to by the parties in writing. Customer agrees to pay for the Services for the duration of the Term. Notwithstanding anything in this Agreement to the contrary, for each Service, upon the expiration of the Initial Service Term, the rates and fees for Services will be subject to change, at Equinix's reasonable discretion, upon sixty (60) days' prior notice to Customer.

c. Notwithstanding anything to the contrary in this Agreement, the rates and fees for Power Services ordered by Customer will remain in effect for one (1) year from the beginning of the Service Term for such Power Services, and thereafter, the rates and fees for the Power Services will be subject to change, at Equinix's reasonable discretion, upon sixty (60) days' prior notice to Customer.

d. Customer will pay all Taxes and third-party charges related to the ownership and operation of Customer's Equipment and the activities of Customer at each IBX Center, or attributable to, each IBX Center. Without limiting the foregoing, Customer will be responsible for paying any and all Taxes separately imposed, levied or assessed against Customer by, and preparing and filing any necessary returns with, any governmental, quasi-governmental or tax authorities by the date such payments and returns are due. In no event will Customer's Equipment be construed to be fixtures.

e. Service Fees are exclusive of any Taxes imposed on Service Fees. Customer will be responsible for paying any Taxes imposed on Service Fees at the same time it pays the Service Fees. Customer will be responsible for timely paying in full all Taxes.

f. If Customer is required to make any deduction or withholding or to make any payment, on account of any Taxes in any jurisdiction, in respect of any amounts payable hereunder by Customer to Equinix, such amounts will be increased to the extent necessary to ensure that after the making of such deduction, withholding or payment, Equinix receives when due and retains (free from any liability in respect of any such deduction, withholding or payment) an amount equal to what would have been received and retained had no such deduction, withholding or payment been required or made.

4. Access and Use of the IBX Centers, and Use of Customer's Equipment.

a. Subject to the terms and conditions of this Agreement, Customer will have access to the Licensed Space twenty-four (24) hours per day, three hundred sixty-five (365) days per year.

b. Unless otherwise expressly provided in an Order, Customer will be responsible for configuring, providing, placing, installing, upgrading, adding, maintaining, repairing, and operating Customer's Equipment, which actions Customer may engage in only to the extent permitted by, and subject to, the terms and conditions of this Agreement. Customer represents, warrants and covenants that Customer has the legal right and authority (including regulatory consents), and will continue to have the legal right and authority throughout the Term, to operate, configure, provide, place, install, upgrade, add, maintain and repair Customer's Equipment as contemplated by this Agreement. Without limiting the foregoing, Customer will obtain such consent of Customer's subcontractors, third party providers, vendors and any other parties as may be necessary for Equinix (including any contractors or others acting at Equinix's request) to have the right to use and access Customer's Equipment for the purpose of providing Services.

c. At all times during the Term, Equinix and Customer agree to comply with the Policies, which are at all times incorporated by reference into this Agreement. Customer acknowledges that it has received a copy of the current Policies prior to the execution of this Agreement. Any modification by Equinix to the Policies will be effective upon notice to Customer, except modifications to the Shipping Policies, which will be effective immediately upon being made.

d. Customer will be responsible and liable for all acts or omissions of Customer's Authorized Persons, Accompanying Persons, and Associated Entities, and all such acts or omissions will be attributed to Customer for all purposes under this Agreement, including for purposes of determining responsibility, liability and indemnification obligations.

e. Customer will not file a mechanic's lien or similar lien on the Licensed Space or IBX Centers, and Customer will be responsible for any mechanic's lien or similar lien filed by any Authorized Person, Accompanying Person or Associated Entity. Without limiting the foregoing, in the event any such lien is filed, Customer will be responsible for the immediate satisfaction, payment or bonding of any such lien.

5. Indemnification.

MZ

a. Equinix will indemnify and hold harmless the Customer Parties from any and all liability, damages, costs and expenses (including reasonable attorneys' fees and expenses) for personal injury or damage to tangible property resulting from the gross negligence or willful misconduct of Equinix.

b. Customer will indemnify and hold harmless the Equinix Parties from any and all liability, damages, costs and expenses (including reasonable attorneys' fees and expenses) for (i) personal injury or damage to tangible property resulting from the gross negligence or willful misconduct of Customer; (ii) any claim by any of Customer's Authorized Persons, Accompanying Persons or Associated Entities or any employee of Customer other than a claim based on the gross negligence or willful misconduct of Equinix; (iii) any claim by a customer or end-user of Customer relating to, or arising out of, Customer's or any of its customers' services or the Services provided under this Agreement (including claims relating to interruptions, suspensions, failures, defects, delays, impairments or inadequacies in any of the aforementioned services, including the Services from Equinix); (iv) any claim that Customer has failed to fulfill a contractual obligation with a third party; and (v) any claim resulting from Customer's failure to obtain the required consents pursuant to Section 4(b).

6. <u>Warranty Disclaimers; Limitation of Liability; Credits.</u>

a. EQUINIX DOES NOT WARRANT THAT THE SERVICES PROVIDED HEREUNDER WILL BE UNINTERRUPTED, ERROR-FREE, OR COMPLETELY SECURE. EQUINIX DOES NOT MAKE, AND HEREBY DISCLAIMS, ANY AND ALL IMPLIED WARRANTIES, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE AND NONINFRINGEMENT. EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THIS AGREEMENT, EQUINIX DOES NOT MAKE AND HEREBY DISCLAIMS ALL EXPRESS WARRANTIES. ALL SERVICES PROVIDED PURSUANT TO THIS AGREEMENT ARE PROVIDED OR PERFORMED ON AN "AS IS", "AS AVAILABLE" BASIS, AND CUSTOMER'S USE OF THE SERVICES IS SOLELY AT ITS OWN RISK.

b. IN NO EVENT WILL EITHER PARTY BE LIABLE TO THE OTHER PARTY FOR ANY CONSEQUENTIAL, INDIRECT, INCIDENTAL, SPECIAL, RELIANCE, EXEMPLARY OR PUNITIVE DAMAGES, INCLUDING LOST PROFITS, LOSS OF BUSINESS, LOSS OF REVENUES, LOSS OF DATA, INTERRUPTION OR CORRUPTION OF DATA, EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, OR ANY OTHER TYPE OF DAMAGES OTHER THAN DIRECT DAMAGES.

c. EQUINIX'S TOTAL LIABILITY TO CUSTOMER IN THE AGGREGATE FOR THE ENTIRE TERM WITH RESPECT TO ALL CLAIMS ARISING FROM OR RELATED TO THE SUBJECT MATTER OF THIS AGREEMENT (INCLUDING ATTORNEY'S FEES) WILL NOT EXCEED THE AMOUNT ACTUALLY PAID BY CUSTOMER FOR THE SIX (6)-MONTH PERIOD IMMEDIATELY PRECEDING THE MONTH IN WHICH THE FIRST CLAIM AROSE. AS A FURTHER LIMITATION, EQUINIX'S MAXIMUM LIABILITY FOR ANY CLAIMS RELATING TO SERVICES OFFERED OR PROVIDED BY EQUINIX (I) FOR A NON-RECURRING CHARGE ONLY OR (II) AS SMART HANDS SERVICES SHALL NOT EXCEED THE AMOUNT OF THE SERVICE FEE FOR SUCH SERVICE PROVIDED ON THE OCCASION GIVING RISE TO THE CLAIM.

d. THE LIMITATIONS SET FORTH IN SECTIONS 6(b)-(c) WILL APPLY TO ANY AND ALL CLAIMS AND CAUSES OF ACTION WHATSOEVER, REGARDLESS OF WHETHER IN CONTRACT, TORT, STRICT LIABILITY OR OTHER THEORY.

e. Each party waives its right to bring any claim against the other party arising or in any way relating to this Agreement more than six (6) months after the date this Agreement expires or is earlier terminated.

f. Nothing in this Agreement will be construed as limiting the liability of either party for personal injury or death resulting from the negligence of a party.

g. If some or all of the Licensed Space is not usable for a period exceeding one hour (the "Temporarily Unusable Licensed Space"), Customer will be entitled to a credit of one seven hundred twentieth (1/720) of the monthly recurring portion of the Service Fee for such Temporarily Unusable Licensed Space for each hour that such space is unusable. This credit is Customer's sole and exclusive remedy for interruptions, suspensions, failures, defects, delays, impairments or inadequacies in any of the Services. Notwithstanding the foregoing, Customer will only have the right to receive a credit if (i) Customer notifies Equinix within five (5) days of its inability to use the Temporarily Unusable Licensed Space and (ii) the Temporarily Unusable Licensed Space is not usable for reasons other than for (a) the actions or omissions of Customer or any Sublicensee or other third-party acting on Customer's behalf, (b) Customer's Equipment or the equipment of any Sublicensee or other third-party acting on Customer's behalf, or (c) circumstances or events beyond Equinix's control.

7. <u>Insurance.</u>

a. Customer agrees to maintain, at its expense, for each IBX Center during the entire time this Agreement is in effect, (i) Commercial General Liability Insurance in an amount not less than One Million U.S. Dollars ($1,000,000) or the local currency equivalent per occurrence for bodily injury, death and property damage, which policy will include contractual liability coverage related to this Agreement; (ii) Workers' Compensation and employer's liability insurance in an amount not less than that prescribed by law; and (iii) umbrella or excess liability insurance with a combined single limit of no less than Two Million U.S. Dollars ($2,000,000) or the local currency equivalent. Prior to any use of the Licensed Space at an IBX Center (including, but not limited to, delivery of any of Customer's Equipment to an IBX Center), Customer will furnish Equinix with certificates of insurance that evidence the minimum levels of insurance set forth herein and which name as additional insureds Equinix and other parties with an interest in the Licensed Space or the IBX Center, as designated by Equinix. In addition, Customer will notify Equinix of any non-renewal, cancellation, reduction in policy limit or other material change in Customer's coverage at least forty-five (45) days prior to such change in coverage. Equinix will not have any obligation to insure any property belonging to or in the possession of Customer.

b. Customer will cause and ensure that each insurance policy referred to in Section 7(a), will provide that the insurers waive all claims and rights of recovery by subrogation against the Equinix Parties in connection with any liability or damage covered by Customer's insurance policies. As to any property insurance carried by Equinix on the IBX Centers where any of the Licensed Space is located, Equinix will obtain a waiver of subrogation in favor of Customer. Except as set forth in Section 5, Customer will not have any responsibility for any loss or damage to equipment owned by Equinix, and Equinix will not have any responsibility for any loss or damage to Customer's Equipment.

8. <u>Term of Agreement, Suspension of Service, Termination, and Removal of Customer's Equipment.</u>

a. This Agreement will commence on the MSA Effective Date. Unless earlier terminated in accordance with its terms this Agreement will terminate on the date the last Order then in effect expires or is terminated pursuant to the terms and conditions set forth in this Agreement (which will be the date on which the last Service Term of such last Order expires or is terminated pursuant to the terms and conditions of this Agreement). Unless otherwise agreed to by the parties in writing, for each Service ordered on a Sales Order, the Initial Service Term for such Service will commence on the date referred to as the "Sales Order Effective Date" and end two (2) years after the Billing Commencement Date. Unless otherwise agreed to by the parties in writing, the Initial Service Term for each Service ordered via a Phone Order or Online Order will commence on the Billing Commencement Date and end (i) when the License for the Licensed Space into which such Service is installed expires or terminates pursuant to this Agreement or (ii) two (2) years after the Billing Commencement Date if such Service is not installed in Licensed Space. Unless otherwise agreed to by the parties in writing, for each Service, upon expiration of the Initial Service Term and each renewal, the Service Term for each Service will renew automatically for additional terms of one (1) year each, unless either party notifies the other party at least forty-five (45) days prior to the end of the then-current Service Term for such Service that it has elected to terminate the Service Term for such Service, in which event the Service Term for such Service will terminate at the end of such then-current Service Term.

b. Either party may terminate this Agreement by giving notice of

termination to the other party if the other party breaches any material term or condition of this Agreement and fails to cure such breach within thirty (30) days after receipt of notice of the same. Notwithstanding the foregoing, except where Customer has failed to timely cure a monetary breach, if a party fails to timely cure a material breach as to only one IBX Center, and Customer has Licensed Space in more than one IBX Center, then the non-breaching party may only terminate this Agreement (and the corresponding Orders) as to the IBX Center where the material breach has not been timely cured, and this Agreement will remain in full force and effect as to all other IBX Centers.

c. Notwithstanding Section 8(b), Equinix may terminate this Agreement (or, at Equinix's sole discretion, suspend the provision of Services, including discontinuing the supply of power) if (i) Customer fails to cure any monetary breach of this Agreement (e.g. fails to pay any amounts owed) within ten (10) days of notice of the same (five (5) days in the event Customer's account is past due on three (3) or more occasions during a six (6)-month period); (ii) Customer liquidates, ceases to do business, or becomes insolvent or (iii) Customer breaches any provision of this Agreement that in Equinix's reasonable judgment interferes with, or has the potential to interfere with Equinix's operation or maintenance of the IBX Center or with the other customers' use thereof, and Customer fails to cure such breach within twenty-four (24) hours of being notified of the same. If Equinix suspends a Service pursuant to this Section 8(c), Equinix will resume the discontinued Service within twenty-four (24) hours after it is reasonably satisfied Customer has cured the breach(es) which gave rise to Equinix's right to suspend the Service. Equinix may charge a reinstatement fee equal to the direct out-of-pocket expenses incurred by Equinix to resume the discontinued Service.

d. Equinix may terminate this Agreement as to any affected Licensed Space or IBX Center if any portion of the IBX Center in which the affected Licensed Space is located becomes subject to a condemnation proceeding or is condemned, Equinix's possession is otherwise terminated or abated, or Equinix cannot provide Customer with access to the affected Licensed Space as contemplated herein for a period exceeding thirty (30) days.

e. Upon expiration or termination of an Order (or any portion thereof), all other rights of Customer with respect to the Licensed Space on such Order (or the affected portion thereof) ("Terminated Space") will terminate, and Customer will remove all of Customer's Equipment and other property belonging to Customer or Customer's Authorized Persons, Accompanying Persons and/or Associated Entities, but excluding any wiring, cable or other equipment or property owned, leased or licensed by Equinix, from the Terminated Space no later than the effective date of such termination. If Customer fails to remove any such property in accordance with this Section 8(e), Equinix will be entitled to pursue all available legal remedies against Customer, including one or more of the following remedies: (i) immediately removing any or all such property and storing it at Customer's expense at an on-site or off-site location, (ii) shipping such property to the address set forth at the end of this Agreement at Customer's risk and expense, or (iii) upon providing thirty (30) days' prior notice to Customer, and if Customer fails to remove such property within such thirty (30)-day period, liquidating such property in any commercially reasonable manner and charging Customer for all costs associated with the liquidation. Notwithstanding anything in this Agreement to the contrary, Customer will not be entitled to remove any Customer's Equipment from an IBX Center upon termination of this Agreement if Customer's account is past due.

f. While Customer has no right to use the Services after the end of the Term, if Customer does so, Customer will be obligated to pay for the Services pursuant to the terms and conditions of this Agreement and any applicable Orders, and this Agreement, and any such applicable Orders, will continue in effect for as long as the Services are used by Customer. In such event, this Agreement, and any applicable Orders, will be terminable at will by Equinix effective immediately upon notice to Customer.

g. Customer grants Equinix a security interest in all of Customer's Equipment now or hereafter located at each IBX Center, to secure payment of all amounts and satisfaction of all obligations due under this Agreement. In connection therewith, if required by applicable law, Equinix will be entitled to file one or more financing statements with respect to its security interest and Customer will sign all necessary documents, and take such other actions as Equinix reasonably requests, to perfect or continue such security interest. Equinix will not take any action to enforce its security interest in the Equipment until such time as any invoice is sixty (60) days or more past due.

h. Neither party will be liable to the other party for properly terminating this Agreement or any portion thereof in accordance with its terms, but Customer will be liable to Equinix for any amounts owed prior to the effective date of termination. Notwithstanding anything to the contrary in this Agreement, Equinix has the right to recover from Customer all damages recoverable under law for the period past the end of the Term, if Equinix terminates this Agreement prior to the end of the full Term due to Customer's material breach.

i. Under no circumstances will any Order survive the expiration or earlier termination of this Agreement, and under no circumstances will any Order pertaining to an IBX Center survive the termination of this Agreement as to that IBX Center. Equinix will not have any obligation to provide any of its Services after the expiration or earlier termination of this Agreement, and Equinix will not have any obligation to provide any of its Services at an IBX Center after the expiration or earlier termination of this Agreement as to such IBX Center.

9. Miscellaneous.

a. Except where otherwise expressly stated in the Agreement, all notices, consents, or approvals required by this Agreement will only be effective if in writing and sent by (i) certified or registered air mail, postage prepaid, (ii) overnight delivery requiring a signature upon receipt, (iii) delivery by hand or (iv) facsimile or electronic mail (promptly confirmed by certified or registered mail or overnight delivery), to the parties at the respective street addresses, facsimile numbers, or electronic mail addresses set forth at the end of this Agreement or such other addresses or facsimile numbers as may be designated in writing by the respective parties. Notices, consents and approvals will be deemed effective on the date of receipt.

b. This Agreement will be governed in all respects by the internal laws of the State of California without regard to its conflict of laws provisions. The parties irrevocably agree to the exclusive jurisdiction of the courts of San Francisco, California. If any legal action is brought by either party under, or relating to, this Agreement, the prevailing party will be entitled to an award of its reasonable attorneys' fees and costs.

c. Neither party's directors, officers or employees will have any liability to the other party with respect to this Agreement. Except as may be specifically otherwise consented to by an Affiliate of a party, neither party's Affiliates will have any liability to the other party with respect to this Agreement.

d. This Agreement, the exhibits, the Policies and all Orders, all of which are incorporated herein by reference into this Agreement, constitute the complete and entire agreement between the parties with respect to the subject matter hereof, and supersede and replace any and all prior or contemporaneous discussions, negotiations, proposals, understandings and agreements, written and oral, regarding such subject matter, as well as any industry custom. This Agreement will be effective only when signed by both parties. This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which together will constitute one and the same instrument. This Agreement may be amended only in writing by an instrument signed by all parties.

e. No waiver of any breach of any provision of this Agreement will constitute a waiver of any prior, concurrent or subsequent breach of the same or any other provisions hereof, and no waiver will be effective unless made in writing and signed by an authorized representative of the waiving party.

f. If Customer and Equinix execute multiple Orders, each additional Order will supplement rather than replace the prior Orders, unless otherwise stated by the parties in writing. Notwithstanding anything in this Agreement to the contrary, (i) Equinix has no obligation to execute any Order with Customer, (ii) no Sales Order will be effective unless executed by both parties, and (iii) no Online Order or Phone Order will be effective unless made by Customer and agreed to by Equinix, which agreement by Equinix will be reflected either by Equinix's written confirmation of such Online Order or Phone Order or by Equinix's commencement of the provision of the Services ordered under the Online Order or Phone Order.

MR

g. Each party acknowledges and agrees that it has reviewed, and has had an opportunity to have reviewed, this Agreement (including the exhibits and the Policies), and it is the parties' intent that this Agreement will not be construed against either party. The section headings and captions throughout this Agreement are for convenience and reference only, and will not be used to construe this Agreement.

h. If any provision of this Agreement, as applied to either party or to any circumstance, is adjudged by a court to be invalid, illegal or unenforceable, the same will not affect the validity, legality, or enforceability of the portion of the provision, if any, that is not invalid, illegal or unenforceable, the application of such provision in any other circumstances, or the validity, legality, or enforceability of any other provision of this Agreement. All terms and conditions of this Agreement will be deemed enforceable to the fullest extent permissible under applicable law, and, when necessary, the court in any action between the parties is requested to reform any and all terms or conditions to give them as much effect as possible.

i. Sections 5, 6, 7, 8 and Exhibit A will survive the termination of this Agreement. In addition, all provisions of this Agreement that can only be given proper effect if they survive the termination of this Agreement will survive the termination of this Agreement. This Agreement will be valid as to any obligation incurred prior to termination of this Agreement. Without limiting the foregoing, Customer will pay all amounts owed to Equinix under this Agreement, including any amounts that are not due until after the expiration or earlier termination of this Agreement. Each party recognizes and agrees that the warranty disclaimers and liability and remedy limitations in this Agreement are material bargained for bases of this Agreement and that they have been taken into account and reflected in determining the consideration to be given by each party under this Agreement and in the decision by each party to enter into this Agreement. The parties agree that the warranty disclaimers and liability and remedy limitations in this Agreement will survive and apply even if found to have failed of their essential purpose.

j. Except where otherwise expressly stated herein, and subject to the limitations set forth in Section 7, the rights and remedies provided for herein are cumulative and not exclusive of any rights or remedies that a party would otherwise have.

k. Equinix and Customer are independent contractors and this Agreement will not establish any relationship of partnership, joint venture, employment, franchise or agency between Equinix and Customer. Neither Equinix nor Customer will have the power to bind the other or incur obligations on the other's behalf without the other's prior written consent. Neither Customer nor Equinix grants the other the right to use its trademarks, service marks, trade names, logos, copyrights, or other intellectual property rights or other designations in any promotion, publication, or press release without the prior written consent of the other party in each case.

l. This Agreement, and the rights of Customer hereunder, are, without any further action by any party, subject and subordinate to the leases for the IBX Centers and all superior instruments to such leases (including, without limitation, mortgages or ground leases for the IBX Centers). This Agreement is a services agreement and is not intended to and will not constitute a lease of any real or personal property. Customer acknowledges and agrees that (i) it has been granted only a license ("License") to use the Licensed Space in accordance with this Agreement; (ii) Customer has not been granted any real property interest under this Agreement; and (iii) Customer has no rights as a tenant or otherwise under any real property or landlord/tenant laws, regulations, or ordinances. Equinix hereby reserves, with respect to the IBX Centers, all rights not specifically granted to Customer in this Agreement, including, without limitation, the right (i) of access to and use of the IBX Centers for its own use or the use of others; (ii) to grant additional licenses to other persons or co-location customers for the use of portions of the IBX Centers; and (iii) to exercise or grant other rights not inconsistent with the rights granted in this Agreement.

m. Equinix may assign, delegate or transfer its rights and obligations under this Agreement to an Equinix Affiliate, or to a party acquiring all or substantially all of Equinix's business or assets, including through merger, and in the event of any such assignment, transfer or delegation, and the assumption by the transferee of the obligations of Equinix hereunder, Equinix will be released from any further liability or obligation under this Agreement. Customer may assign this Agreement without Equinix's consent only where the party to whom this Agreement is assigned by Customer is either an Affiliate of Customer, or is acquiring all or substantially all of Customer's business or assets, including through merger. This Agreement will be binding upon and inure to the benefit of all successors and permitted assigns of Equinix and Customer, who will be bound by all of the obligations of their predecessors or assignors. Except as set forth in Exhibit B of this Agreement with respect to sublicensing, and this Section 9(m), Customer will not assign, delegate, transfer or sublicense all or any part of the Licensed Space.

n. Equinix will not be responsible or in any way liable, and Customer will not have any termination or other rights, arising out of or relating to any failure by Equinix to perform or any hindrance in the performance of its obligations under this Agreement if such failure or hindrance is caused by events or circumstances beyond Equinix's control, including acts of God, war, labor strike, terrorist act, fire, flood, earthquake, any law, order, regulation or other action of any governing authority or agency thereof, or failure of the Internet.

o. All Orders are subject to all of the terms and conditions of this Agreement. In the event of a conflict between the body of this Agreement and an Order, the body of this Agreement will control, unless the body of this Agreement or the Order states that the conflicting term in the Order controls.

p. Unless otherwise expressly agreed to by the parties in writing, Equinix will retain title to all parts and materials used or provided by Equinix or third parties acting on its behalf in the performance and/or furnishing of the Services.

q. Equinix and Customer agree that, with the exception of Equinix's landlords, there will be no third party beneficiaries to this Agreement, including, but not limited to, any Sublicensee, end user of Customer or the insurance providers for either party.

r. The parties specifically exclude application of the United Nations Convention on Contracts for the International Sale of Goods to this Agreement.

10. Definitions.

Accompanying Person: Each person (other than an Equinix employee) who is accompanied by an Authorized Person while at an IBX Center.

Affiliate: As to a party, means any entity controlling, controlled by, or under common control with such party, where the term "control" and its correlative meanings, "controlling," "controlled by," and "under common control with," means the legal, beneficial or equitable ownership, directly or indirectly, of more than fifty percent (50%) of the aggregate of all voting equity interests in an entity.

Associated Entity: Each company, partnership or other entity of any type which employs, contracts with, or is otherwise associated or affiliated with any of Customer's Authorized Persons or Accompanying Persons. Without limiting the foregoing definition, each Sublicensee that has sublicensed Sublicensed Space at an IBX Center will be an Associated Entity at such IBX Center.

Authorized Person: Each person who is included on a list of Authorized Persons given to Equinix by Customer in accordance with the Policies.

Billing Commencement Date: For each Service, unless otherwise agreed to by the parties in writing, a) for a Service ordered in a Sales Order, the date designated in Sales Order as the date charges will begin to accrue, and b) for a Service ordered in an Online Order or Phone Order, the date Equinix begins providing the Service to Customer.

Cross-Connect: A physical or wireless interconnection within an IBX Center that (i) exits Customer's cage or (ii) connects Customer to another Equinix customer.

Customer Care Website: Equinix's customer care website accessible via the Internet at a location designated by Equinix, which it has the right to change from time to time.

Customer Cross-Connect: A physical interconnection, including cable, connections, and other wiring, that (i) does not exit Customer's cage, (ii) does not connect Customer to another Equinix customer, and (iii) interconnects (a) Equipment belonging to the Customer or (b) Equinix-provided POD Equipment in Customer's cage with Customer's Equipment.

Customer's Equipment: All network and/or computer equipment

KR

(including wiring and Customer Cross-Connects between such equipment and Customer's POD Equipment) that is located in the Licensed Space, regardless of whether such equipment is owned, leased, licensed or otherwise obtained for use by Customer (but this does not include Cross-Connects or Equinix POD Equipment located in Customer's Licensed Space).

**Customer Parties:** Customer and the Affiliates, owners, officers, directors, employees, contractors and agents of Customer.

**Equinix Parties:** Equinix and the Affiliates, owners, officers, directors, employees, contractors and agents of Equinix.

**IBX Centers:** The Internet Business Exchange Centers leased or owned by Equinix in which Customer licenses Licensed Space or receives Services from Equinix pursuant to an Order.

**Licensed Space:** The areas licensed by Customer under this Agreement and as identified in the Orders as to the amount of space. For each Licensed Space, Equinix will determine at all times during the Term the exact location in the IBX Centers where the Licensed Space will be located, and Equinix will notify Customer accordingly.

**Online Order:** An Order for Services placed by Customer via the Customer Care Website and accepted by Equinix pursuant to this Agreement.

**Order:** Any Sales Order, Online Order or Phone Orders between Customer and Equinix.

**Phone Orders:** An Order for Services placed by customer via telephone and accepted by Equinix pursuant to this Agreement.

**POD Equipment:** The (i) patch panels, DSX panels for category 5 twisted pair, co-axial, single and multi-mode fiber, or (ii) other appropriate (as reasonably determined by Equinix) point of demarcation equipment.

**Policies:** The procedures, rules, regulations, security practices and policies adopted by Equinix that are then in effect for the IBX Centers, and as they may be amended from time to time by Equinix and so notified to Customer.

**Power Services:** Power circuits ordered by Customer. For the avoidance of doubt, Power Services do not include power provided by Equinix as part of a bundled service.

**Sales Orders:** All written sales orders executed by the parties which provide that such sales orders are governed by, and incorporated by reference into, this Agreement.

**Services:** All services, goods and other offerings of any kind set forth in an Order to be provided by Equinix to Customer pursuant to this Agreement.

**Service Fees:** Charges and fees for Services charged to Customer by Equinix pursuant to this Agreement.

**Service Term:** Each Service in an Order will have a Service Term, which for each Service will be the length of time from the agreed to effective date for the Service Term until the last day Equinix is required to provide such Service pursuant to the terms and conditions set forth in this Agreement or as otherwise agreed to by the parties in the applicable Order.

**Shipping Policies:** The portion of the Policies entitled Shipping Policies.

**Sublicensed Space:** The portion of the Licensed Space sublicensed to a Sublicensee by Customer pursuant to the terms of this Agreement.

**Sublicensee:** A customer of Customer or other third party who obtains internet and/or telecommunications services from Customer and who sublicenses all or part of the Licensed Space from Customer.

**Taxes:** Sales, use, transfer, privilege, excise, VAT, GST, consumption tax, and other similar taxes and duties, whether foreign, national, state or local, however designated, now in force or enacted in the future, which are levied or imposed by reason of the performance by Equinix or Customer under this Agreement or by Customer with respect to its operations and use of the Services, but excluding taxes on Equinix's net income.

**Term:** The term of this Agreement as determined in accordance with Section 9(a) of this Agreement.

This Master Service Agreement has been entered into between the parties as of the MSA Effective Date.

Customer to complete:

*The person signing below hereby warrants and represents that he or she has full authority to execute this Agreement for the party on whose behalf he or she is signing.*

Customer Name: Mark Zuckerberg (Thefacebook, Inc)
(Complete Legal Name)

Authorized Signature: [signature]

Printed Name: Mark Zuckerberg

Title: CEO

Street address for notices:

2 Russell Place
Dobbs Ferry, NY 10522

Phone: 914.646.8593

Facsimile number: 914.693.6784

Electronic mail address: zuck@thefacebook.com

Equinix to complete:

*The person signing below hereby warrants and represents that he or she has full authority to execute this Agreement for the party on whose behalf he or she is signing.*

Authorized Signature: [signature] Monica Brown Andrews, Director of Customer Contracts

Printed Name:

Title:

Street addresses for notices:

301 Velocity Way, 5th Floor
Foster City, California 94404, USA

Phone: +1 650-513-7000
Facsimile number: +1 650-513-7957
ELECTRONIC MAIL ADDRESS: contracts@equinix.com

# Exhibit A
## Confidentiality Provisions

The following provisions apply with respect to the treatment of confidential information disclosed by the parties hereto. All capitalized terms not defined in this exhibit will have the respective meanings specified in the Master Service Agreement to which this Exhibit A is attached.

a. Except as expressly permitted in this Exhibit A, neither party will, without the prior written consent of the other party, disclose any Confidential Information of the other party to any third party. Information will be considered Confidential Information of a party if either (i) it is disclosed by the party to the other party in tangible form and is conspicuously marked "Confidential", "Proprietary" or the like; or (ii) (a) it is disclosed by one party to the other party in non-tangible form and is identified as confidential at the time of disclosure; and (b) it contains the disclosing party's customer lists, customer information, technical information, pricing information, pricing methodologies, or information regarding the disclosing party's business planning or business operations. In addition, notwithstanding anything in this Agreement to the contrary, (i) the terms of the Agreement will be deemed Confidential information of each party; and (ii) the design of the IBX Centers, the Services provided and equipment used at the IBX Centers and the configuration, interconnection, switching and routing of telecommunication cables, networks and services at the IBX Centers will be considered Confidential Information of Equinix.

b. Other than the terms and conditions of this Agreement, information will not be deemed Confidential Information hereunder if such information (i) is known to the receiving party prior to receipt from the disclosing party directly or indirectly from a source other than one having an obligation of confidentiality to the disclosing party; (ii) becomes known (independently of disclosure by the disclosing party) to the receiving party directly or indirectly from a source other than one having an obligation of confidentiality to the disclosing party; (iii) becomes publicly known or otherwise ceases to be secret or confidential, except through a breach of this Agreement by the receiving party; or (iv) is independently developed by the receiving party. The terms and conditions of this Agreement will cease being confidential if, and only to the extent that, they become publicly known, except through a breach of this Agreement by the receiving party.

c. Each party will secure and protect the Confidential Information of the other party (including, without limitation, the terms of this Agreement) in a manner consistent with the steps taken to protect its own trade secrets and confidential information, but not less than a reasonable degree of care. Each party may disclose the other party's Confidential Information where (i) the disclosure is required by applicable law or regulation or by an order of a court or other governmental body having jurisdiction after giving reasonable notice to the other party with adequate time for such other party to seek a protective order; (ii) if in the opinion of counsel for such party, disclosure is advisable under any applicable securities laws regarding public disclosure of business information; or (iii) the disclosure is reasonably necessary and is to that party's or its Affiliates' employees, officers, directors, attorneys, accountants and other advisors, or the disclosure is otherwise necessary for a party to exercise its rights and perform its obligations under this Agreement, so long as in all cases the disclosure is no broader than necessary and the party who receives the disclosure agrees prior to receiving the disclosure to keep the information confidential. Each party is responsible for ensuring that any Confidential Information of the other party that the first party discloses pursuant to this Exhibit A is kept confidential by the person receiving the disclosure.

d. Notwithstanding the restrictions set forth in this Exhibit A or Section 9(b), during the Term, (i) Equinix may issue a press release announcing Customer's entry into the IBX Centers without obtaining Customer's consent; and (ii) either party may publicly refer to the other party, orally and in writing, as a customer or vendor of services of or to the other party, as the case may be, without obtaining consent from such party.

CONFIDENTIAL FACE002232

## Exhibit B

### Sublicensing Provisions

The following provisions apply with respect to any sublicense of Licensed Space (all capitalized terms herein having the respective meanings specified in the Master Service Agreement to which this Exhibit B is attached).

a. Customer may sublicense the Sublicensed Space to Sublicensees provided that (i) the terms and conditions of such Sublicense will be no less restrictive than this Agreement, (ii) Customer will not in its dealing with such Sublicensee act or purport to act on behalf of Equinix or Equinix's landlords, (iii) Customer will require the Sublicensee to abide by the rules set forth in the Policies, and (iv) Customer will cause any Sublicensee to agree in writing that in consideration for the sublicense, Sublicensee waives, to the maximum extent permitted under law, any and all claims of any and all types against Equinix and Equinix's landlords, at all times, and that in no event will Equinix, or Equinix's landlords, have any liability to such Sublicensee, including liability to such Sublicensee for any damages whatsoever, including direct damages.

b. Notwithstanding any thing in this Agreement to the contrary, Customer will remain responsible to Equinix for the performance of all of Customer's obligations under this Agreement (including the payment of all amounts owed under this Agreement) and all other agreements between Equinix and Customer ("Related Agreements"). No sublicense agreement or arrangement between Customer and any Sublicensee will relieve Customer from any liability under this Agreement or any Related Agreements. Without limiting the foregoing, Customer is responsible for paying the Service Fees for all of the Licensed Space (including Sublicensed Space) and the charges for Services for, or relating to, any or all of the Licensed Space (including Sublicensed Space). In no event will Equinix be deemed to be providing any Services to Sublicensee for, or relating to, the Sublicensed Space, as the provision of any such Services will be deemed to be to Customer for all purposes under this Agreement.

c. Customer must ensure that each and every sublicense agreement or other sublicense arrangement that Customer has with a Sublicensee does not have any terms and conditions that (i) are inconsistent with this Agreement, or (ii) seek to provide Sublicensee with rights that Customer does not have under this Agreement. Without limiting the foregoing or any other restrictions on Sublicensees, no Sublicensee will have any right to use its Sublicensed Space in any manner that Customer is not permitted to use the Licensed Space.

d. Sublicensees do not have any rights, separate and apart from Customer's rights, to access their Sublicensed Space. Accordingly, only Customer's Authorized Persons at an IBX Center may access the Sublicensed Space of Sublicensees at such IBX Center. Furthermore, Equinix is not responsible for restricting a Sublicensee's access to Customer's Licensed Space located in a cage or suite to which that Sublicensee has access.

e. Notwithstanding anything in this Agreement to the contrary, a Sublicensee has no right to sublicense, delegate, assign or otherwise transfer its rights to use the Sublicensed Space to any other person or entity without Equinix's consent, which consent may be withheld for any reason whatsoever or no reason. Any such sublicense, delegation, assignment or transfer will be null and void.

f. If the parties agree, Equinix and Customer will participate in a joint press announcement to announce when a Sublicensee sublicenses Sublicensed Space at an IBX Center.

g. Without limiting Customer's indemnification obligations under Section 5, Customer will indemnify and hold harmless the Equinix Parties from any and all liability, damages, costs and expenses (including reasonable attorneys' fees and expenses) arising from or relating to (i) any claim by a customer or end-user of any Sublicensee relating to, or arising out of, a Sublicensee's or any of its customers' services, Customer's or any of its customers' services, or the Services provided under this Agreement, including claims relating to interruptions, suspensions, failures, defects, delays, impairments or inadequacies in any of the aforementioned services, including the Services from Equinix; and (ii) any claim by a Sublicensee to the extent that such claim, if sustained, would result in any greater obligation or liability of Equinix to such Sublicensee than Equinix has undertaken to Customer under this Agreement or any of the Related Agreements.

MR