# EXHIBIT V-5-Q

TO THE DECLARATION OF SCOTT R. MOSKO IN SUPPORT OF DEFENDANTS
CAMERON WINKLEVOSS, TYLER WINKLEVOSS AND DIVYA NARENDRA'S
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION PURSUANT TO
FED. R. CIV. P. 12(B)(2), OR IN THE ALTERNATIVE MOTION TO STRIKE MOVING
DEFENDANTS' NAMES FROM THE SECOND AMENDED COMPLAINT
(DKT. NO. 137)

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SANTA CLARA

THEFACEBOOK, INC.

    Plaintiff,

vs.                      CASE NO. 105 CV 047381

CONNECTU LLC, CAMERON WINKLEVOSS,
TYLER WINKLEVOSS, HOWARD
WINKLEVOSS, DIVYA NARENDA, AND
DOES 1-25,

    Defendants.

                           /

**CERTIFIED COPY**

\*\*\* HIGHLY CONFIDENTIAL, ATTORNEYS' EYES ONLY \*\*\*

**HIGHLY CONFIDENTIAL**

**ATTORNEYS EYES ONLY**

DEPOSITION OF MARK ZUCKERBERG

April 25, 2006

Pages 1 - 260

REPORTED BY: LAWRENCE PAUL NELSON, CSR 12144



GROSSMAN & COTTER
CERTIFIED COURT REPORTERS
Comp-U-Scripts    Weber & Volzing

*Mailing Address:*

117 S. California Avenue, #D-201 • Palo Alto, CA 94306    465 California Street • San Francisco, CA 94104
Phone 650.324.1181  Fax 650.324.4609    Phone 415.395.9330  Fax 415.395.9254


| | | |
|---|---|---|
| 1 | BE IT REMEMBERED that, pursuant to | |
| 2 | Notice of Taking Deposition, and on April 25, 2006, | |
| 3 | commencing at the hour of 10:13 a.m. thereof, at | |
| 4 | 3300 Hillview, Palo Alto, California, before me, | |
| 5 | LAWRENCE PAUL NELSON, CSR No. 12144, duly authorized | |
| 6 | to administer oaths, there personally appeared | |
| 7 | MARK ZUCKERBERG, | |
| 8 | called as a witness by the Defendants, and who, | |
| 9 | being first administered an oath, was thereupon | |
| 10 | examined and testified as hereinafter set forth. | |
| 11 | | |
| 12 | THE VIDEOGRAPHER: Good morning. This | 10:13:35 |
| 13 | marks the beginning of volume 1, videotape 1 in the | 10:13:37 |
| 14 | deposition of Mark Zuckerberg in the matter of | 10:13:42 |
| 15 | TheFacebook, Inc. versus ConnectU, et al, in | 10:13:46 |
| 16 | Superior Court of the State of California, County of | 10:13:54 |
| 17 | Santa Clara, Case No. 105 CV 047381. Today's date | 10:13:58 |
| 18 | is April 25th, 2006, and the time is 10:14 a.m. | 10:14:07 |
| 19 | The location of this deposition is the | 10:14:14 |
| 20 | offices of Finnegan, Henderson, Farabow, Garrett & | 10:14:17 |
| 21 | Dunner, 3300 Hillview, Palo Alto, California. | 10:14:24 |
| 22 | The deposition was noticed by attorneys for | 10:14:29 |
| 23 | the defendants and the videotape is being produced | 10:14:34 |
| 24 | on behalf of the same. | 10:14:36 |
| 25 | The video operator is Marguerite Howell, a | 10:14:39 |

| | | |
|---|---|---|
| 1 | Q. This document was filed with the Superior | 17:25:46 |
| 2 | Court of the State of California on August 17th, | 17:25:52 |
| 3 | 2005. If you'll turn to paragraph 1 in the second | 17:25:54 |
| 4 | page of the document. | 17:26:00 |
| 5 | MR. GUY: Do you have an extra copy? | 17:26:08 |
| 6 | MR. MOSKO: I might. You were serious | 17:26:11 |
| 7 | about throwing the document in the water. | 17:26:22 |
| 8 | BY MR. MOSKO: | 17:26:31 |
| 9 | Q. All right. Paragraph 1 that says, the | 17:26:32 |
| 10 | second sentence of paragraph 1 says, "The | 17:26:36 |
| 11 | TheFacebook operates all of its servers in | 17:26:41 |
| 12 | California." Do you see that? | 17:26:43 |
| 13 | A. Yes. | 17:26:45 |
| 14 | Q. Does that refresh your recollection as to | 17:26:45 |
| 15 | when Facebook stopped using the servers at Savvy? | 17:26:47 |
| 16 | A. No. I mean this is August 2005. We had | 17:26:51 |
| 17 | stopped using the servers from Savvy well before | 17:26:57 |
| 18 | then. I think that the best document that you have | 17:27:00 |
| 19 | for that is that e-mail where -- which said that the | 17:27:03 |
| 20 | Savvy servers had been off for two months in January | 17:27:07 |
| 21 | so we definitely had stopped using them by the time | 17:27:11 |
| 22 | they were turned off. | 17:27:14 |
| 23 | Q. Okay. Paragraph 11, please. | 17:27:15 |
| 24 | A. Did you want me to read through this? | 17:27:48 |
| 25 | Q. You know what, that's a good idea. Why | 17:27:50 |


| | | |
|---|---|---|
| 1 | don't you do that? | 17:27:56 |
| 2 | MR. GUY: How much longer do we need to go, | 17:27:58 |
| 3 | Counsel? | 17:28:01 |
| 4 | MR. MOSKO: I still have several questions. | 17:28:02 |
| 5 | What do you want to do? | 17:28:04 |
| 6 | MR. GUY: Are we almost done? | 17:28:06 |
| 7 | MR. MOSKO: I don't know what "almost" | 17:28:07 |
| 8 | mean. As I said I thought I had between an hour and | 17:28:09 |
| 9 | two hours when you asked me before. | 17:28:13 |
| 10 | MR. GUY: And where are we now? | 17:28:16 |
| 11 | MR. MOSKO: Could be better than an hour, | 17:28:18 |
| 12 | depends on his answers to some of these questions. | 17:28:20 |
| 13 | What do you want to do? | 17:28:23 |
| 14 | MR. GUY: Well, I tell you what. We'll let | 17:28:24 |
| 15 | you go for another 10 minutes but it's not going to | 17:28:24 |
| 16 | be another hour. I think you spent most of the day | 17:28:27 |
| 17 | doing something that has nothing to do with this | 17:28:30 |
| 18 | case so we consider the deposition will be closed in | 17:28:32 |
| 19 | another 10 minutes. | 17:28:35 |
| 20 | MR. MOSKO: Okay. We'll agree to disagree | 17:28:37 |
| 21 | on that. I'll ask questions for 10 minutes. | 17:28:39 |
| 22 | THE WITNESS: Okay. So I've read to 11. | 17:29:13 |
| 23 | BY MR. MOSKO: | 17:29:18 |
| 24 | Q. Okay. Do you understand what the phrase | 17:29:18 |
| 25 | "in order to legally access users profiles" means? | 17:29:24 |


```
 1         MR. GUY:  May call for a legal conclusion        17:29:33
 2   but he can testify to his understanding.                17:29:35
 3         THE WITNESS:  I mean I think that that            17:29:40
 4   means in order to access users profiles without         17:29:42
 5   breaking the law.                                       17:29:45
 6   BY MR. MOSKO:                                           17:29:47
 7      Q. And do you have an understanding of what          17:29:48
 8   law is referred to in this paragraph?                   17:29:50
 9         MR. GUY:  Calls for a legal conclusion.           17:29:58
10   Answer if you know.                                     17:30:00
11         THE WITNESS:  The use of the site is              17:30:03
12   governed by the terms of use.  You agree to the         17:30:06
13   terms of use by using the site.  The terms of use       17:30:09
14   probably states that you have to sign in and            17:30:13
15   register in order to use the site, that you can't       17:30:16
16   use it commercially or by any other use.                17:30:19
17   BY MR. MOSKO:                                           17:30:23
18      Q. And do you have any information to support       17:30:23
19   the last sentence in that paragraph that says,          17:30:28
20   "During and all relevant times defendants were aware    17:30:31
21   of the policies referred to"?                           17:30:34
22      A. Well, by registering for the site there's         17:30:40
23   a link right there that says, "Check this if you        17:30:47
24   have read and agree to the terms of use."  So by        17:30:51
25   registering for the site, they have.                    17:30:54
```

|    |                                                                      |          |
|----|----------------------------------------------------------------------|----------|
| 1  | Q. And did that box to check exist at all                            | 17:30:59 |
| 2  | times since TheFacebook has operated?                                | 17:31:07 |
| 3  | A. Yes. I mean there's also a link to the                            | 17:31:12 |
| 4  | "terms of service and privacy," on every page of the                 | 17:31:20 |
| 5  | site.                                                                | 17:31:22 |
| 6  | Q. Paragraph 15 says, "TheFacebook also                              | 17:31:26 |
| 7  | restrict access to and has always used it best                       | 17:31:31 |
| 8  | efforts to keep confidential its aggregate customer                  | 17:31:34 |
| 9  | lists." What does that mean if you know, aggregate                   | 17:31:40 |
| 10 | customer lists?                                                      | 17:31:44 |
| 11 | A. So I believe what they're talking about                           | 17:31:44 |
| 12 | there is that this site is made in such a way that                   | 17:31:47 |
| 13 | you can get access to a person's profile or search                   | 17:31:54 |
| 14 | for someone, but it's made explicitly to prohibit                    | 17:31:57 |
| 15 | you from being able to go through and access                         | 17:32:00 |
| 16 | everyone's profile or everyone's information. So by                  | 17:32:03 |
| 17 | that I mean both that you can't see everyone on the                  | 17:32:06 |
| 18 | site, you can only see the profiles of your friend                   | 17:32:10 |
| 19 | and people at your school, and I also mean that you                  | 17:32:12 |
| 20 | can't go through even to everyone at your school and                 | 17:32:15 |
| 21 | access all of their information. Facebook will                       | 17:32:18 |
| 22 | block you from doing that.                                           | 17:32:23 |
| 23 | Q. Has that been true since it began in                              | 17:32:24 |
| 24 | February of 2004?                                                    | 17:32:27 |
| 25 | A. The former is true. The latter is -- has                          | 17:32:28 |


```
 1          THE WITNESS:  I really don't understand        17:33:47
 2   what that question's asking.                          17:33:48
 3   BY MR. MOSKO:                                         17:33:50
 4       Q. Do you understand that Facebook has            17:33:51
 5   accused the defendants in this case of accessing      17:33:56
 6   e-mail addresses found on Facebook?                   17:34:01
 7       A. Yes.                                           17:34:06
 8       Q. When did Facebook first conclude that the     17:34:09
 9   defendants were accessing e-mail addressing on        17:34:22
10   Facebook?                                             17:34:31
11       A. It first occurred to me that they were        17:34:33
12   doing this when I received an e-mail that was         17:34:35
 3   generated automatically by ConnectU, on behalf of     17:34:39
14   someone I knew and the e-mail said that this person   17:34:44
15   had imported all their friends from Facebook to       17:34:48
16   ConnectU using Connect U's social butterfly service.  17:34:53
17   So at that point I went to ConnectU to see what this  17:34:57
18   was and I mean the only way that that could have      17:35:00
19   happened was if they looked through that person's     17:35:03
20   friends and got all their e-mails and then e-mailed   17:35:07
21   all of them.                                          17:35:10
22       Q. So you said you went to ConnectU, what did    17:35:11
23   you mean by that?  You went to the web site?          17:35:15
24       A. Yeah.                                         17:35:16
25       Q. And you said when you received an e-mail     17:35:21
```

| | | |
|---|---|---|
| 1 | on behalf of someone that you knew, who was that | 17:35:26 |
| 2 | person? | 17:35:30 |
| 3 | A. I don't remember exactly. This is a while | 17:35:30 |
| 4 | ago. | 17:35:33 |
| 5 | Q. And what did you do as a result of your | 17:35:34 |
| 6 | discovery? | 17:35:37 |
| 7 | A. Well, immediately I went to ConnectU and | 17:35:42 |
| 8 | saw what they were doing, and then I modified | 17:35:46 |
| 9 | something on Facebook to block this from working. | 17:35:50 |
| 10 | So -- | 17:35:55 |
| 11 | Q. Sorry. Goo ahead. | 17:35:55 |
| 12 | A. So they were running a program that would | 17:35:56 |
| 13 | take someone's users information for Facebook and | 17:36:00 |
| 14 | then log in, and then go through and scrape | 17:36:03 |
| 15 | everyone's e-mail addresses off of Facebook who were | 17:36:06 |
| 16 | that person's friends. So in order to stop that | 17:36:10 |
| 17 | from happening, I just put into TheFacebook code to | 17:36:15 |
| 18 | block that program from loading Facebook pages. | 17:36:17 |
| 19 | Q. When did you first discover -- make this | 17:36:22 |
| 20 | discovery? | 17:36:26 |
| 21 | A. I don't know the exact date. | 17:36:26 |
| 22 | Q. Approximately? | 17:36:28 |
| 23 | A. I think it was early 2005, maybe like late | 17:36:30 |
| 24 | January, perhaps. | 17:36:45 |
| 25 | Q. Okay. Paragraph 21 says, "As a result of | 17:36:47 |



| # | | Time |
|---|---|---|
| 1 | these incidents of unauthorized access and | 17:36:51 |
| 2 | unauthorized appropriations by defendants | 17:36:57 |
| 3 | TheFacebook was damaged." Do you see that? | 17:37:00 |
| 4 | A. Yes. | 17:37:02 |
| 5 | Q. How was Facebook damaged? | 17:37:03 |
| 6 | A. Well, there are a bunch of ways. One is | 17:37:05 |
| 7 | that as an information resource, people need to feel | 17:37:09 |
| 8 | like they have control over what they're putting up. | 17:37:12 |
| 9 | So -- and people are very sensitive about sharing | 17:37:16 |
| 10 | their e-mail address or cell phone because they | 17:37:21 |
| 11 | don't want to get spammed or harassed, and one of | 17:37:23 |
| 12 | the reasons why Facebook -- why people felt | 17:37:25 |
| 13 | comfortable of sharing on Facebook is because they | 17:37:29 |
| 14 | have very good, we have very good privacy control | 17:37:31 |
| 15 | that let people control who they share that | 17:37:31 |
| 16 | information with. | 17:37:31 |
| 17 | But ConnectU in making this program | 17:37:36 |
| 18 | basically made something that was going to go | 17:37:41 |
| 19 | through and find e-mail addresses and spammed all | 17:37:43 |
| 20 | these people. So not only did that effect our users | 17:37:46 |
| 21 | negatively but it decreases their trust in us. It | 17:37:50 |
| 22 | probably encouraged people to like share less | 17:37:54 |
| 23 | information and it was our property that they were | 17:37:56 |
| 24 | using to like spammed people and get them to go to a | 17:38:00 |
| 25 | competing web site with us. A web site that was | 17:38:06 |

| | | |
|---|---|---|
| 1 | competing with us. | 17:38:08 |
| 2 | Q. What evidence do you have that it | 17:38:09 |
| 3 | decreased your users's trust in you? | 17:38:11 |
| 4 | A. I don't know. | 17:38:17 |
| 5 | Q. And what evidence do you have that it had | 17:38:23 |
| 6 | an effect on Facebook? | 17:38:25 |
| 7 | A. I mean there were probably -- I would | 17:38:36 |
| 8 | guess but I don't know, that like people notice when | 17:38:42 |
| 9 | they're getting spammed and that makes them less | 17:38:47 |
| 10 | trustful of it. But the effect it had on Facebook | 17:38:51 |
| 11 | was largely that like our property had been | 17:38:54 |
| 12 | essentially broken into and was being used to fuel | 17:38:58 |
| 13 | competing web site. | 17:39:02 |
| 14 | And then I had to take along with Dustin or | 17:39:03 |
| 15 | four days of my time to block them from doing this. | 17:39:06 |
| 16 | Because after I originally stopped their program | 17:39:09 |
| 17 | from running, they went back and modified it to make | 17:39:12 |
| 18 | it run again, and then we had to block that and that | 17:39:14 |
| 19 | kept on going on. | 17:39:18 |
| 20 | Q. You're not aware of any users who dropped | 17:39:20 |
| 21 | out of Facebook as a result of this activity, are | 17:39:23 |
| 22 | you? | 17:39:27 |
| 23 | A. Any individual users? | 17:39:29 |
| 24 | Q. Yes. | 17:39:30 |
| 25 | A. I can't point to any specific one but that | 17:39:31 |


| | | |
|---|---|---|
| 1 | doesn't mean that there weren't any. | 17:39:34 |
| 2 | Q. Are you aware of any loss of advertising | 17:39:37 |
| 3 | dollars that you suffered as a result of this | 17:39:40 |
| 4 | activity? | 17:39:44 |
| 5 | A. It's hard to quantify that because this | 17:39:46 |
| 6 | isn't a short-term thing. If an event likes this | 17:39:48 |
| 7 | happens and our users get spammed then they trust | 17:39:51 |
| 8 | the site less and they use it less, then that could | 17:39:54 |
| 9 | affect us tremendously down the line, even if it | 17:39:58 |
| 10 | doesn't affect it right at that point. | 17:40:02 |
| 11 | Q. Are you aware of any effect whatsoever? | 17:40:04 |
| 12 | A. It's immeasurable. How would I know what | 17:40:08 |
| 13 | we'd be doing now if I didn't have to take some | 17:40:10 |
| 14 | amount of time to fix this and a bunch of our users | 17:40:11 |
| 15 | hadn't been spammed to go to this other sites. | 17:40:14 |
| 16 | Q. So you're not aware of any advertiser | 17:40:17 |
| 17 | saying as a result of what the defendants are | 17:40:19 |
| 18 | alleged to have done were not going to buy | 17:40:21 |
| 19 | advertising on your site, are you? | 17:40:25 |
| 20 | A. I don't think it would happen like that. | 17:40:29 |
| 21 | I mean that's not the damage that we're alleging. | 17:40:32 |
| 22 | Q. What damage are you alleging? | 17:40:35 |
| 23 | A. I mean we're saying that because this | 17:40:37 |
| 24 | happened, it like -- it could at some point decrease | 17:40:41 |
| 25 | the value or decrease the people who advertised on | 17:40:44 |

C E R T I F I C A T I O N

      I, LAWRENCE PAUL NELSON, duly authorized to administer oaths pursuant to Section 2093(b) of the California Code of Civil Procedure, do hereby certify: That the witness in the foregoing deposition was administered an oath to testify the truth in the within-entitled cause; that said deposition was taken at the time and place therein stated; that the testimony of the said witness was reported by me and was thereafter transcribed under my direction into typewriting; that the foregoing is a complete and accurate record of said testimony; and that the witness was given an opportunity to read and correct said deposition and to subscribe the same.

      Should the signature of the witness not be affixed to the deposition, the witness shall not have availed himself/herself of the opportunity to sign or the signature has been waived.

      I further certify that I am not of counsel nor attorney for any of the parties in the foregoing deposition and caption named nor in any way interested in the outcome of the cause named in said caption.

DATED: May 4, 2006      *Lawrence Paul Nelson*

LAWRENCE PAUL NELSON, CSR NO. 12144