*E-FILED 11/30/07*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

FACEBOOK, INC., et al.

            Plaintiffs,

   v.

CONNECTU LLC, et al.

            Defendants.

Case No. C 07-01389 RS

**ORDER DENYING PLAINTIFF'S MOTION FOR SANCTIONS**

## I. INTRODUCTION

Plaintiff Facebook moves to impose sanctions against defendants ConnectU, Cameron Winklevoss, Tyler Winklevoss, Divya Narendra, and their counsel. Although the motion is based on a number of different allegedly wrongful acts, all of the claimed misconduct relates to apparent inconsistencies between the legal and factual positions taken by defendants in this and another action pending between Facebook and ConnectU in Massachusetts. Whether or not the positions taken by ConnectU in the Massachusetts action are fully reconcilable with the positions taken, and discovery responses provided, in *this* action, Facebook has not shown that defendants made any materially false discovery responses or representations here. While Facebook has labored mightily to characterize the alleged wrongdoing as having occurred in this proceeding, it is apparent that the true thrust of its argument is that ConnectU took positions *in Massachusetts* that were not tenable in

light of its essentially *truthful* admissions in this action. It is for the Massachusetts court, if at all, to decide whether the representations made to it and the positions taken in those proceedings were based on truthful testimony, within the bounds of proper advocacy. Accordingly, the motion for sanctions will be denied.

## II. BACKGROUND

As set forth in greater detail in prior orders, this action arises from Facebook's allegations that defendants accessed its website, "harvested" the email addresses of its members, and then sent those persons email soliciting them to become ConnectU members.[1] As also previously described, the initial dispute between the parties arose from ConnectU's claim that Mark Zuckerberg, Facebook's founder, originally agreed to assist ConnectU's founders in developing their website and business, but that he instead misappropriated their intellectual property to establish Facebook. That claim forms the basis of the litigation filed in the District of Massachussetts by ConnectU against Facebook.

The present motion for sanctions grows out of an unfortunate series of events and misguided legal arguments that led ConnectU to take positions in the Massachussets action that arguably were inconsistent with the positions it took and discovery responses it provided here. Specifically, when this action was originally filed in Santa Clara Superior Court, the named defendants included the three ConnectU founders, Cameron Winklevoss, Tyler Winklevoss, and Divya Narendra.[2] Although ConnectU did not contest jurisdiction, all four of the individual defendants moved to quash service of summons, based on an argument that they were not subject to personal jurisdiction in California. The individual defendants' motion rested in large part on an argument that any acts they undertook

---

[1] No proceedings on the merits have yet taken place, and nothing in this order should be construed as suggesting otherwise. It does not presently appear, however, that ConnectU disputes the general outline of Facebook's allegations, but ConnectU does vigorously dispute whether any such conduct was wrongful.

[2] The complaint also named as a defendant Howard Winklevoss, who is the father of the Winklevoss brothers and who apparently played some role in funding and supporting the development of ConnectU. Facebook, however, has not challenged his dismissal from this action and is not seeking to reinstate him as a defendant.

2

1 on behalf of ConnectU could not be considered as "contacts" in evaluating whether "minimum
2 contacts" existed to assert personal jurisdiction over them.[3]  Consistent with that argument,
3 defendants not surprisingly represented in discovery responses and in declarations filed with the
4 court that at all relevant times Cameron Winklevoss, Tyler Winklevoss and Divya Narendra had
5 acted not in their capacities as individuals, but in their capacities as "members" of ConnectU.[4]  For
6 example, in response to Interrogatory No. 14, propounded while this case was maintained in
7 Superior Court, defendants stated, "[m]embers of ConnectU include Cameron Winklevoss, Tyler
8 Winklevoss, and Divya Narendra, as set forth in the Limited Liability Company Operating
9 Agreement . . . .  These persons have all been Members since ConnectU was formed."

10     Facebook's opposition to the individual defendants' motion to quash did not challenge the
11 assertion that they had acted on "behalf" of ConnectU; rather Facebook argued, correctly, that in the
12 context of tort claims, the fact that an individual defendant acts on behalf of a corporate entity is not
13 a jurisdictional shield.  See *Calder v. Jones*, 465 U.S. 783, 790 (1984) (defendants' "status as
14 employees does not somehow insulate them from jurisdiction.); see also *Natural Resources, Inc. v.*
15 *Wineberg*, 349 F.2d 685 (9th Cir. 1965) ("It is elementary that a person is personally responsible for
16 his own torts.").

17     In its written opposition to this motion for sanctions, ConnectU endorses the argument
18 Facebook made to the Superior Court.  "Facebook had done thorough and compelling research
19 proving this membership issue to be irrelevant . . . . Facebook's opposition convincingly established
20 that a person's official status or capacity in a fictitious entity cannot immunize that person from the

---

[3] In support of this argument before the Santa Clara Superior Court, defendants cited *Mihlon v. Superior Court*, 169 Cal.App.3d 703 (1985).  In later proceedings before this Court, defendants relied on *Colt Studio, Inc. v. Badpuppy Enterprise*, 75 F.Supp.2d 1104, (C.D.Cal.1999) to make the same argument that the acts of defendants Winston Williams and Pacific Northwest Software undertaken on behalf of ConnectU were not jurisdictionally significant.  *Colt Studio* relied on and followed *Milhon*.

[4] ConnectU was initially established as a limited liability company (LLC) in Delaware under the laws of that state.  The concept of membership in an LLC is discussed further below.  ConnectU apparently now is a corporation, but that has no bearing on the issues in this motion.

3

personal jurisdiction of a forum, even where the alleged wrongful action were taken in that person's official capacity." Opposition at 6:26-7:3.

Although ConnectU has now essentially conceded that jurisdiction in this proceeding does not turn on the status of the Winklevoss brothers and Narendra as members in, or representatives of, ConnectU, its discovery responses and declarations asserting that the Winklevosses and Narendra were all members of ConnectU presented a jurisdictional problem in the Massachusetts proceeding. That action was commenced in Federal court based solely on diversity jurisdiction. For purposes of diversity jurisdiction, an LLC is treated like a partnership; thus the citizenship of each of its members is relevant. Were Narendra's citizenship to be considered, ConnectU would not have been able to establish a basis for diversity jurisdiction in the Massachusetts action. Accordingly, ConnectU took the position in the Massachusetts litigation that Narendra had *not* been a "member" of ConnectU as of the date that action was filed. Specifically, Narendra filed a declaration stating, "[b]ecause our respective roles, contributions, and shares in the company were uncertain, I was not made a Member of ConnectU LLC until well after September 2, 2004."

Facebook did not hesitate to call the Massachusetts court's attention to the apparent inconsistencies in ConnectU's positions. The Massachussets court ultimately held evidentiary hearings and issued a lengthy written decision on the question of who were members of ConnectU at the time the Massachusetts action was filed. The Massachusetts court's decision, and the record in this action, show all of the following:

• ConnectU was formed as an LLC under Delaware law in April of 2004. Although the members of an LLC *may* be specified in the formation documents, there is no requirement to do so. In ConnectU's case, its formation documents did not identify any members.

• At the time the LLC was formed, the Winklevoss brothers and Narendra were more focused on launching the ConnectU website than on legal formalities, and the question of who was or was not to be a member of the LLC was given little consideration. Nevertheless, there was at least some general understanding that the Winklevoss brothers would be members, and that Narendra would not. Narendra was, however, fully involved in developing the ConnectU website.

4

• In August of 2005, an Operating Agreement was executed for the LLC. Under the terms of that agreement, Narendra and the others were all deemed to be founding members of the LLC, retroactive to the date of its formation. Such retroactive agreements are permissible and valid under Delaware law.

• Although the Massachusetts court found the retroactive provision of the Operating Agreement to be "admittedly enforceable under Delaware law," it concluded that the existence of that agreement had no bearing on the question of who were members of the LLC at the time the complaint was filed for the purposes of diversity jurisdiction. The court reasoned that the existence or non-existence of diversity had to be analyzed under a "snapshot" of the "facts as they existed" on the day the complaint was filed, and that the Operating Agreement, formed nearly one year later, was therefore irrelevant.

• For purposes of its diversity jurisdiction analysis, therefore, the Massachusetts court concluded that ConnectU had *no* members as of the date the Massachusetts complaint was filed. That conclusion, however, in no way undermines the validity of the Operating Agreement nor does it change the underlying facts that Narendra was directly involved with the development of the ConnectU website from the outset.

• The Massachusetts court expressly noted that Narendra's declaration in that action was not necessarily "completely contradictory" to the response to Interrogatory No. 14. Indeed, the response to Interrogatory No. 14 refers specifically to the Operating Agreement, which made Narendra (and the others) members of the LLC *retroactively*. Narendra's declaration in the Massachusetts proceedings, in contrast, at least arguably is neither inaccurate nor inconsistent, because it asserts only that *as of* the date the complaint was filed, long *before* the Operating Agreement with its retroactive provisions came into being, Narendra was not a member. The Massachusetts court ultimately applied exactly such a snapshot in its jurisdictional analysis, albeit with the effect of concluding that ConnectU had *no* members, rather than only concluding that Narendra was not a member as ConnectU had urged.

## III. DISCUSSION

A. <u>Proceedings in Superior Court</u>

Facebook asserts that defendants committed fraud and proffered false testimony in this action prior to its removal from Superior Court. It is not entirely clear, however, what Facebook contends was false with respect to any of the factual positions taken by defendants in discovery responses or in pleadings while the case was pending in that forum. It seems that Facebook may be arguing it was "false" for Narendra to claim to have been a member of ConnectU from its inception, given the evidence that he was *not* considered a member at the time the LLC was formed, and was never actually made a member until the Operating Agreement was executed in August of 2005. The response to Interrogatory No. 14, however, expressly referenced the Operating Agreement and Facebook has not challenged the propriety of its retroactivity under Delaware law.[5]

Facebook also seems to be arguing that defendants "tricked" the Superior Court into granting the motion to quash based on the argument that they had acted only as "members" of ConnectU. There are at least two problems with this argument. First, because the Superior Court granted the motion to quash without explaining its reasoning, it would be entirely speculative to conclude that it did so based on the argument that defendants acted solely on behalf of ConnectU, given that ConnectU had advanced other independent arguments as to why jurisdiction did not exist. Second, even assuming the Superior Court did accept that argument, Facebook has not shown that ConnectU did anything sanctionable to obtain such a result. The facts presented by ConnectU were essentially true. Although the legal formalities necessary to make the Winklevosses and Narendra actual members of ConnectU did not take place until the retroactive Operating Agreement was executed,

---

[5] Facebook points to the fact that other discovery responses asserted that the Winkelvosses and Narendra acted as members of ConnectU without expressly referencing the Operating Agreement. It is not clear why Facebook deems this significant, given that the response to Interrogatory No. 14 set out the basis of the membership claim.

that does not change the fact that they were at all times acting on behalf of ConnectU. The legal authority presented by ConnectU has never been expressly overruled.[6]

Finally, Facebook appears to be making at least some argument that it was improper for any of the defendants to argue that they were acting as members of ConnectU during the summer of 2004 given that the Operating Agreement was not executed until the fall of 2005. The fact that defendants may have failed to formalize their legal status until after the fact does not render their contentions that they were "members" in 2004 sanctionable.

### B. Discovery obligations

Facebook asserts that Narendra has "admitted" that he answered and verified written discovery without reviewing the questions asked. The testimony on which Facebook relies, however, shows only that Narendra did not have the actual form interrogatories in front of him at the time he signed the responses. Narendra stated that, "the questions are in a completely different document," thereby implying that he had in fact seen the questions at some point in time. The Court sees no reason to presume that there was any impropriety in the process by which Narendra, with the assistance of his lawyers, responded to the written discovery. That he may have been provided a final version of the answers to verify without having the questions in front of him at that particular moment does not establish that there was anything reckless or cavalier in Narendra's approach to complying with his discovery obligations.

Facebook also suggests that ConnectU failed to produce a few documents in this proceeding that it later offered as evidence in the Massachusetts case. In the course of extensive discovery, it is not unusual for documents to turn up that were not produced initially. In appropriate circumstances,

---

[6] As mentioned above, ConnectU's opposition to this motion fully acknowledges that the fact that individuals may have acted on behalf of an entity does not shield them from personal jurisdiction in the tort context. Moreover, the opposition expressly states that it came to this understanding when it reviewed Facebook's opposition to the motion to quash in Superior Court. Indeed, ConnectU contends it abandoned the argument by making no reference to it in the reply brief in support of the motion to quash. It is troubling that defendants presented the same argument to this Court in connection with the motion to dismiss of Winston Williams and Pacific Northwest Software notwithstanding their assertion that they concluded it was not tenable upon review of Facebook's opposition to the motion to quash.

7

sanctions can be imposed where a failure to produce documents appears to reflect a willful indifference to complying with discovery obligations, rather than mere inadvertence. Here, Facebook has not shown there is any reason to believe that the documents at issue were not produced earlier through any sanctionable neglect.

### C. Proceedings in Massachusetts

Facebook argues that ConnectU attempted to "manufacture" diversity jurisdiction in Massachusetts by recanting on the statements it made here that Narendra was a "member" of ConnectU from its inception. As reflected above, the positions taken by ConnectU here and in Massachusetts were not *wholly* irreconcilable. Even assuming, however, that ConnectU exceeded the bounds of reasonable advocacy in the arguments and evidence it submitted in Massachusetts, that is a matter for that court to evaluate and address as it sees fit. It is worth noting, however, that the Massachusetts court ultimately *agreed*, albeit for different reasons, that Narendra was *not* a member of ConnectU at the relevant time for purposes of jurisdiction, but the court went on to conclude it lacked diversity jurisdiction in any event.

### IV. CONCLUSION

For the reasons set forth above the motion for sanctions is denied.

IT IS SO ORDERED.

Dated: November 30, 2007

                                          RICHARD SEEBORG
                                          United States Magistrate Judge