SEAN A. LINCOLN (State Bar No. 136387)
    salincoln@orrick.com
I. NEEL CHATTERJEE (State Bar No. 173985)
    nchatterjee@orrick.com
MONTE COOPER (State Bar No. 196746)
    mcooper@orrick.com
THERESA A. SUTTON (State Bar No. 211857)
    tsutton@orrick.com
YVONNE P. GREER (State Bar No. 214072)
    ygreer@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025
Telephone: 650-614-7400
Facsimile: 650-614-7401

Attorneys for Plaintiffs
THE FACEBOOK, INC. and MARK ZUCKERBERG

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THE FACEBOOK, INC. and MARK ZUCKERBERG,<br><br>    Plaintiffs,<br><br>    v.<br><br>CONNECTU, INC. (formerly known as CONNECTU, LLC), PACIFIC NORTHWEST SOFTWARE, INC., WINSTON WILLIAMS, WAYNE CHANG, and DAVID GUCWA,<br><br>    Defendants. | Case No. 5:07-CV-01389-RS<br><br>**REDACTED/PUBLIC VERSION**<br><br>MOTION TO COMPEL COMPLIANCE BY DEFENDANTS PACIFIC NORTHWEST SOFTWARE AND WINSTON WILLIAMS WITH ORDER GRANTING MOTION TO COMPEL SUPPLEMENTAL INTERROGATORY RESPONSES<br><br>Date: February 27, 2008<br>Time: 9:30 A.M.<br>Judge: Honorable Richard Seeborg |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION .................................................................................................................. 1

II. FACTUAL BACKGROUND ................................................................................................ 3

    A. PNS And Williams Failed To Comply With The Order Compelling Them To Perform A Reasonable Search And Produce Responsive Information .............. 3

    B. PNS And Williams Possess More Information Responsive to Interrogatory No. 3 ................................................................................................................................ 5

    C. PNS and Williams Possess or Destroyed Information Responsive to Interrogatory No. 4 ........................................................................................................ 6

III. PNS AND WILLIAMS SHOULD BE COMPELLED TO COMPLY WITH THE ORDER ................................................................................................................................. 8

IV. PNS AND WILLIAMS SHOULD BE ORDERED TO PRODUCE THEIR DEVICES FOR IMAGING AND EXAMINATION FOR RESPONSIVE RECORDS ............................................................................................................................. 9

    A. Particularized Fact Show A Likelihood Of Finding Responsive Records On PNS and/or Williams' Devices .................................................................................. 10

    B. The Playboy Factors Weigh In Favor Of Ordering Imaging ............................... 10

        1. The Needs of The Case ................................................................................. 10

        2. The Amount in Controversy ........................................................................ 11

        3. The Importance of the Issues ....................................................................... 11

        4. The Potential for Finding Relevant Materials ........................................... 11

        5. The Importance of the Discovery in Resolving Issues ............................. 12

V. ALTERNATIVELY, PLAINTIFFS REQUEST THAT THE COURT FIND PNS AND WILLIAMS E-MAILED THREE MILLION FACEBOOK USERS THREE TIMES APIECE .................................................................................................................. 12

VI. CONCLUSION ................................................................................................................... 14

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Antioch Co. v. Scrapbook Borders, Inc.*,
    210 F.R.D. 645 (D. Minn. 2002) ................................................................................ 11

*Chilcutt v. United States*,
    4 F.3d 1313 (5th Cir. 1993) ...................................................................................... 12

*Fennell v. First Step Designs*,
    83 F.3d 526 (1st Cir. 1996) ........................................................................................ 9

*Gibson v. Chrysler Corp.*,
    261 F.3d 927 (9th Cir. 2001) .................................................................................... 12

*Hilao v. Estate of Marcos*,
    103 F.3d 762 (9th Cir. 1996) .................................................................................... 13

*Playboy Enters. v. Welles*,
    60 F. Supp. 2d 1050 (S.D. Cal. 1999) .................................................................. 9, 10

*Simon Prop. Group L.P. v. MySimon, Inc.*,
    194 F.R.D. 639 (S.D. Ind. 2000) .............................................................................. 12

## STATE CASES

*Ameriwood Indus., Inc.*,
    2006 WL. 3825291 .................................................................................................. 12

*Ameriwood Indus., Inc. v. Liberman*,
    Case No. 4:06CV524-DJS, 2006 WL. 3825291 (E.D.Mo. Dec.27, 2006) ................ 9

*Frees, Inc. v. McMillian*,
    Case No. 05-1979, 2007 WL. 184889 (W.D.La. Jan. 22, 2007) ....................... 10, 12

*Physicians Interactive v. Lathian Sys. Inc., Case No. CA 03-1193-A*,
    2003 WL. 23018270 (E.D.Va. Dec.5, 2003) ............................................................. 9

## FEDERAL STATUTES

15 U.S.C. §§ 7701 *et seq* .................................................................................................. 11

15 U.S.C. § 7706(g) ......................................................................................................... 11

CAN-SPAM Act, 15 U.S.C. §§ 7704(a)(1) and §§ 7704(b)(1) .................................... 3, 11

Fed.R.Civ.P. 26(b)(2)(iii) ................................................................................................... 9

Fed.R.Civ.P. 26(g)(3) ...................................................................................................... 12

CAN-SPAM Act and California Penal Code Section 502(c) ........................................... 11

Rules of Civil Procedure and N.D. Cal. Civil Local Rule 37 ........................... 1, 2, 12, 14

# NOTICE OF MOTION

## TO DEFENDANTS PACIFIC NORTHWEST SOFTWARE AND WINSTON WILLIAMS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on February 27, 2008, at 9:30 A.M. or as soon thereafter as it may be heard, in Courtroom 4 of this Court, before the Honorable Richard Seeborg, Plaintiff Facebook, Inc., pursuant to Rule 37 of the Federal Rules of Civil Procedure and N.D. Cal. Civil Local Rule 37, will and hereby does move for an order as follows:

1. Compelling Defendants Pacific Northwest Software ("PNS") and Winston Williams to comply with the Court's Order Granting Motion To Compel Supplemental Interrogatory Responses and Setting Case Management Conference, dated December 12, 2007;

2. Ordering PNS and Williams to produce all computer web servers, computers hosting SQL databases, and other memory devices in their possession, custody or control from 2004 to present for imaging and examination for information responsive to Facebook's Interrogatory Nos. 3 & 4 and the December 12, 2007 Order; and

3. Alternatively, entering an evidentiary finding that PNS and Williams sent three ConnectU invitation e-mails to each of the at least three million registered Facebook users as of July 1, 2005.

This motion is based on the accompanying Memorandum, the Declaration Of Monte M.F. Cooper In Support Of Plaintiffs' Motion To Compel and exhibits attached thereto ("Cooper Decl."), the Declaration Of Chris Shiflett In Support Of Plaintiffs' Motion To Compel and exhibits attached thereto ("Shiflett Decl."), and all pleadings and papers that are of record and are on file in this case.

## I. INTRODUCTION

This motion requests that the Court: (1) compel PNS and Williams to comply with the Court's Order Granting Motion To Compel Supplemental Interrogatory Responses and Setting Case Management Conference, dated December 12, 2007 (the "Order"), and either (2) order PNS and Williams to produce all of their servers and other memory devices for imaging and analysis for responsive information, or alternatively (3) enter a factual finding that PNS and Williams sent

three ConnectU invite e-mails to each of three million registered Facebook users as of July 1, 2005.

Plaintiffs have been attempting for eight months to obtain information related to the URLs and IP addresses Defendants used to access the Facebook website and the number of unsolicited "spam" e-mails sent by Defendants to Facebook users inviting them to join the ConnectU website. On December 12, 2007, this Court granted a motion to compel and ordered defendants PNS and Williams to "undertake reasonable efforts to determine whether [they] possess[] information responsive to" Facebook's Interrogatory Nos. 3 & 4, and to supplement their responses by January 2, 2008. *See* Shiflett Decl., Ex. 7. By separate Order dated December 21, 2007, this Court clarified that "[a]lthough that [December 12, 2007 Order] was nominally directed at *both* Williams and Pacific Northwest Software ('(PNS'), it was premised on the likelihood that further responsive information could be recovered from the computers of PNS, and not on any showing that Williams necessarily *personally* possessed additional responsive information, apart from whatever assistance he could provide PNS in searching its computers." *See id.* Ex. 8 at n.1.

PNS and Williams provided declarations in response to the Order. The declarations did not comply with the Order. The declarations do not describe any search efforts. Instead, PNS' Declarant, John Taves, carefully states that PNS' computer records "do not contain information that will allow [Taves], on behalf of PNS to further respond" to the interrogatories. *Id.* Ex. 9. Taves makes no effort to explain why others at his company cannot provide responsive information, and he makes no effort to explain why consultation of his own SQL database will not produce the requisite data. Likewise, the Williams declaration does not say whether or not Williams examined PNS' servers and other data. Instead, relying solely on his memory of the contents of the PNS servers from years ago, Williams states that there is no information "about which [he] is aware" that would permit further responses to the interrogatories. *Id.* Ex. 10.

Contrary to these statements in the declarations, Defendants' documents reveal that responsive records were created and could only be destroyed if deliberately purged. The information responsive to the interrogatories will establish the amount of statutory damages for

which PNS and Williams are liable for their violations of the CAN-SPAM Act, potentially on the order of hundreds of millions of dollars.[1] Williams and PNS should answer the simple discovery proffered by Plaintiffs, as this Court previously ordered. For these reasons, the requested relief should be granted.

## II. FACTUAL BACKGROUND

### A. PNS And Williams Failed To Comply With The Order Compelling Them To Perform A Reasonable Search And Produce Responsive Information

On December 12, 2007, the Court entered an Order granting Facebook's motion to compel responses to Interrogatory Nos. 3 & 4, which request information pertaining to URLs and IP addresses used to access Facebook's website (No. 3), and an accounting of e-mails sent to Facebook users (No. 4). Shiflett Decl. Ex. 7 at 2:2-14; Exs. 4 & 5 (Nos. 3 & 4). The Order rejected PNS and Williams' arguments that they could not respond to the interrogatories and described their "attempt to disclaim any relevant knowledge ... to be an inappropriately evasive response" that was "not credible." *Id.* Ex. 7 at 3:15-16, 4:1-3. The Court found it likely "that further responsive information could be recovered from the computers of PNS . . . ." *Id.* Ex. 8 at fn 1. The Order required PNS and Williams to:

> undertake reasonable efforts to determine whether [they] possess[] additional information responsive to these interrogatories . . .

*Id.* Ex. 7 at 4:4-6. PNS and Williams were ordered to serve either supplemental responses providing the responsive information or verified declarations stating that they "genuinely do not possess" responsive information. *Id.* at 4:9-10 and fn 4. The Order also required PNS to "give Williams access to its computer files and databases to permit complete discovery responses." *Id.* at 4:4-6.

On January 2, 2008, PNS and Williams submitted two declarations in response to the Order. Shiflett Decl. Exs. 9 & 10. Neither declaration discusses any efforts to search or identify additional information responsive to the interrogatories, provides additional responsive

---

[1] On January 7, 2008, Facebook filed a motion for partial summary judgment of liability for violations of the CAN-SPAM Act, 15 U.S.C. §§ 7704(a)(1) and 7704(b)(1) ("Facebook's Summary Judgment Motion"). Doc. No. 251. The motion is calendared for argument on February 27, 2008.

information or attests that PNS and Williams genuinely do not possess responsive information.

The PNS declaration is two-paragraphs long. It states:

> I, JOHN TAVES, declare
>
> 1. I am the president of Pacific Northwest Software, Inc. ("PNS"). I have a bachelor of science degree in electrical engineering.
>
> 2. The computer records currently in PNS's possession do not contain information that will allow me, on behalf of PNS to further respond to Interrogatory Nos. 3 and 4.

*Id.* Ex. 9. The declaration does not describe any search efforts. It omits any explanation of how PNS attempted to comply with the Court's order. It does not explain why its records do not include the information that is responsive to Interrogatories Nos. 3 or 4. *Id.* PNS does not identify what it did to comply with its obligation to consult all sources of information to respond to the interrogatories, including the many computer specialists PNS employs. *See* Doc. No. 212 at 7:24-9:21; Doc. No. 222 at 13:22 – 14:17. Indeed, PNS makes no effort to explain, including making any independent search of its records or any explanation why it cannot review its own business records, such as billing statements or electronic communications involving its current and former employees such as Wayne Chang, Joel Voss, or Winston Williams, in order to respond. PNS also provides no explanation of what it means that computer records are not "currently in PNS's possession." Shiflett Decl. Ex. 9 at ¶ 2.

The Williams declaration also is insufficient. It does not state whether Williams examined PNS' computer files and databases in response to the Order, and instead simply avers that Williams did "not believe such access would allow [him] to further respond" to the interrogatories. Shiflett Decl. Ex. 10 at 2:5-8; Ex. 7 at 4:4-6. Williams' declaration is based on a review, prior to issuance of the Order, of select documents (which are not enumerated) and other information provided to him by counsel, as well as his memory of the contents of the PNS servers from years ago. *Id.* Ex. 10 at 1:2-2:8. Without stating that he reviewed PNS' servers or the databases that were employed with them, Williams states that there is no information "about which [he] is aware" that would permit further responses to the interrogatories. *Id.* at 2:11-13. This is a reversal of Williams' prior deposition testimony, noted by the Court in the Order, that it

should be possible to obtain responsive information from PNS servers. Shiflett Decl. Ex. 7 at 2:18-3:2. Williams' declaration fails to explain the basis for his earlier belief and why he has apparently revised it without examining the servers since his deposition.

### B. PNS And Williams Possess More Information Responsive to Interrogatory No. 3

Facebook's Interrogatory No. 3 requests a list of the IP addresses and URLs associated with defendants' efforts to access the Facebook website, in order to identify the specific devices that contain responsive information. The evidence indicates that, despite this Court's Order dated December 12, 2007, compelling them to consult such resources, PNS and Williams nonetheless have not reviewed any of the records that existed on PNS' and Williams' servers containing the information that is responsive to Interrogatories No. 3. *See* Shiflett Decl. ¶¶ 20-30. Indeed, their interrogatory response is wrong.

The response to Interrogatory No. 3 incorrectly said three IP addresses were used to access the Facebook website. In his response to Interrogatory No. 3, Williams stated that the following IP addresses "were used to obtain data from the facebook.com: 207.244.158.164, 207.244.158.165 and 207.244.158.34." *See* Shiflett Decl. Ex. 5. The three IP addresses identified are <u>not</u> responsive to that interrogatory. ▮

Shiflett Decl. Ex. 3 at PNS000440 & PNS000443. ▮ – well after the dates that Defendants claim they ended their efforts to utilize Importer, Crawler, and Social Butterfly. Shiflett Decl. ¶ 25. These records reflect that *both* PNS' and Williams' interrogatory responses, as well as their subsequent Declarations, are incomplete. Indeed, ▮

The actual IP addresses and URL identifiers are available. Each device running the Importer, Crawler and Social Butterfly Programs carries "IP address" and "URL" identifiers, as

- 6 -

MOTION TO COMPEL COMPLIANCE WITH ORDER
5:07-CV-01389-RS

do proxy servers that PNS and Williams deployed in order to access the Facebook website. Shiflett Decl. ¶¶ 19, 26-28. Williams testified at his deposition that ▮▮▮ Cooper Decl. Ex. 9 at 67:1-8.

PNS and Williams can identify more IP addresses and URLs but choose not to. For example, one of the IP addresses Williams fails to identify in his responses is his own server. Cooper Decl. Ex. 10 (iMarc001529-31). Williams also admits to ▮▮▮ Cooper Decl. Ex. 9 at 65:9-69:13. Yet, Williams and PNS now claim they cannot identify the URL or IP addresses for a single one of those computers, let alone the dates they used them. Similarly, although PNS and Williams do not deny that they employed proxy servers to access Facebook's website, they fail to provide a single one of the IP addresses of those proxy servers in their interrogatory responses, despite the fact their own software code required the information to be maintained in the Defendants' database. *See* Shiflett Decl. ¶¶ 26-28. The only way this information would not exist is if someone manually erased it. Shiflett Decl. ¶ 47.

### C. PNS and Williams Possess or Destroyed Information Responsive to Interrogatory No. 4

Facebook's Interrogatory No. 4 requests information concerning the e-mails sent to e-mail addresses taken by defendants from the Facebook website. *See* Shiflett Decl. ¶¶ 31-42 & Exs. 4 & 5 (No. 4). They have not provided it despite the Order requiring them to do so. Defendants' software tools created information responsive to Interrogatory No. 4 including at least the following: (1) databases containing Facebook user e-mail addresses and Facebook user ID's, timestamps and statistics regarding the number of e-mails sent to each Facebook user, (2) all "log" files listing e-mail addresses of Facebook users to which invite e-mails were sent, the dates invitations were made, and the number of such e-mails sent, and (3) historical versions of ConnectU Source Code preserved by the Subversion software. Shiflett Decl. ¶ 42.

The information taken from Facebook and the e-mails sent by Defendants were recorded by PNS and Williams in their databases. Shiflett Decl. ¶¶ 18, 36-39, 42. PNS and Williams

created and managed databases that were populated with data by the Importer, Social Butterfly and Crawler programs. Shiflett Decl. ¶¶ 15-18. ████████████████████████████████████████ Shiflett Decl. ¶¶ 36-37; Cooper Decl. Ex. 1 at GUCWA 0057 (12:02:53-12:04:08).

████████████████████████████████████████ Shiflett Decl. ¶¶ 15-16, 38 & Ex. 1 at PNS0310219-21. ████████████████████████████████████████

Shiflett Decl. ¶ 38 & Ex. 2 at PNS0310222. ████████████████████████████████████████

Cooper Decl. Ex. 1 at GUCWA 0057 (12:04:52-12:06:49); Shiflett Decl. ¶¶ 16-18, 36-39. ████████████████████████████████████████ Cooper Decl. Ex. 11 at PNS0320945; Shiflett Decl. ¶¶ 36-40 & Ex. 1 at PNS0310221. ████████████████████████████████████████

Cooper Decl. Ex. 9 at 69:14-70:22; Shiflett Decl. ¶ 41.[2]

PNS and Williams used the statistics generated by these databases to report to ConnectU on the number of profiles imported and e-mails sent. Shiflett Decl. Ex. 2 at CUCA02972. ████████████████████████████████████████ Cooper Decl. Ex. 12 at PNS0002119. These files could only be purged deliberately, not inadvertently. Shiflett Decl. ¶ 47.

PNS and Williams do not explain why they cannot consult any of these records. PNS or

---

[2] Notably, it would be highly unusual practice to fail to back up this data.

Williams do not explain why the information supposedly no longer is available or where it would be. Williams makes a vague reference to the failure of PNS to maintain what he calls "weblogs." It is unclear what that reference means but the materials are not necessary to respond. Shiflett Decl. ¶¶ 43-46.

### III. PNS AND WILLIAMS SHOULD BE COMPELLED TO COMPLY WITH THE ORDER

The Court's December 12, 2007 and December 21, 2007 Orders directed PNS and Williams to do three things: (1) give Williams access to PNS computer files and databases for personal examination, (2) independent of such access, to perform a reasonable search for responsive information using all available resources, and (3) serve either supplemental interrogatory responses providing the responsive information or verified declarations stating that additional information genuinely does not exist. Shiflett Decl. Ex. 7 at 4:3-10, fn 4. PNS and Williams did not comply. *See id.* Exs. 9 & 10. The Court should compel them to comply with the Order.

The PNS and Williams Declarations are evasive and incomplete. *See* Shiflett Decl., Ex. 7 at 3. It remains "unclear whether PNS conducted any inquiry whatsoever before simply" claiming it could not supplement its original interrogatory responses, which stated it had virtually no information from which it could attempt to respond to Interrogatories Nos 3 or 4. *Id.* at 3:19-20. PNS and Williams should be compelled to supplement their declarations as follows. PNS and Williams should identify (by make, model, IP address and URL) all memory devices either PNS or Williams has used from 2004 to present, the devices' current whereabouts, and a description of any efforts to examine the devices (including by whom and when).[3] They should also include a detailed explanation of the whereabouts of the responsive databases, log files and backup copies that are known to have existed on their devices, and whether any such files were ever destroyed, copied and/or transferred. PNS and Williams also should describe any ConnectU-related database, log and other information that does presently reside on their devices and the

---

[3] Interrogatory No. 3 requests the IP addresses and URLs for each device PNS and/or Williams used to access the Facebook website. Because PNS and Williams claim they cannot recall this information, Facebook requests an identification of <u>all</u> devices they have used from 2004 to present.

- 9 -				MOTION TO COMPEL COMPLIANCE WITH ORDER
                                            5:07-CV-01389-RS

explain the reasons why they claim such information is allegedly insufficient to permit a response to the interrogatories. *Id.* Ex. 9 at ¶ 2. PNS also should be ordered to explain its qualification that records "currently in PNS's possession" do not contain information that will allow Taves to respond on PNS' behalf. PNS also should be ordered to produce the electronic files it sent to Williams for examination. *Id.* Ex. 7 at 3:3-6. Williams should be ordered to explain his "working knowledge of the contents of the PNS servers" that leads him to believe that no responsive information exists. *Id.* Ex. 10 at ¶ 7. Williams also must explain why he now claims that there is no other information "that exists" that would allow anyone to respond to Interrogatory Nos. 3 & 4. *Id.* ¶ 8.

## IV. PNS AND WILLIAMS SHOULD BE ORDERED TO PRODUCE THEIR DEVICES FOR IMAGING AND EXAMINATION FOR RESPONSIVE RECORDS

PNS' and Williams' continued efforts to avoid answering Plaintiffs' interrogatories necessitates judicially supervised imaging and examination of all of the memory devices in Defendants' possession, custody or control from 2004 to present. Imaging of hard drives and other memory devices is appropriate where a party shows a particularized likelihood of finding discoverable material. *Fennell v. First Step Designs,* 83 F.3d 526, 533 (1st Cir. 1996). The Court should engage in a Rule 26(b)(2)(iii) balancing of factors in order to determine whether discovery is warranted, weighing: (i) the needs of the case, (ii) the amount in controversy, (iii) the importance of the issues, (iv) the potential for finding relevant materials, and (v) the importance of the discovery in resolving issues. *Playboy Enters. v. Welles,* 60 F. Supp. 2d 1050, 1053-54 (S.D. Cal. 1999); *see also* Fed.R.Civ.P. 26(b)(2)(iii). Imaging is especially appropriate where the computers were the instruments used to commit the wrongful acts are at issue in the litigation. *See, e.g., Physicians Interactive v. Lathian Sys. Inc.,* Case No. CA 03-1193-A, 2003 WL 23018270 (E.D.Va. Dec.5, 2003) (granting expedited discovery of the mirror image of defendants' hard drives where the plaintiff alleged that the defendants had launched attacks on plaintiff's file servers, and electronic data related to those attacks was apparently on the computers); *Ameriwood Indus., Inc. v. Liberman,* Case No. 4:06CV524-DJS, 2006 WL 3825291, *2-5 (E.D.Mo. Dec.27, 2006) (hard drive imaging permitted where the main allegation of the

complaint was that defendants improperly used their employer's computers to sabotage the plaintiff's business). A party cannot escape production of its computers based on "self-serving statements" claiming that the device does not contain relevant information. *Frees, Inc. v. McMillian*, Case No. 05-1979, 2007 WL 184889, *2 (W.D.La. Jan. 22, 2007) (ordering production of computer over party's sworn affidavit that the computer did not contain relevant data, because it was a likely place such evidence would have been stored).

### A. Particularized Fact Show A Likelihood Of Finding Responsive Records On PNS and/or Williams' Devices

As discussed above, the evidence shows that the software tools employed by PNS and Williams created responsive databases, logs and backup files on one or more of their servers and other memory devices. *See* Shiflett Decl. ¶¶ 36-42 & Ex. 1 at PNS0310221, Ex. 2 at PNS0310222; Cooper Decl. Ex. 1 at GUCWA 0057 (12:02:53-12:06:49); Ex. 11 at PNS0320945. , indicate that they preserved and accessed the responsive information on their devices. Cooper Decl. Ex. 13 at PNS01768 & PNS01769 ; Shiflett Decl. Ex. 1 at PNS0281469-73, Ex. 2 at PNS0310177 and CUCA02972.

### B. The *Playboy* Factors Weigh In Favor Of Ordering Imaging

The *Playboy* factors also are satisfied in the present circumstance. *Playboy*, 60 F.Supp.2d at 1053-54. Each factor is discussed separately below.

#### 1. The Needs of The Case

This case concerns the defendants' use of the devices in question to automate their efforts to hack Facebook's servers, steal electronic data and send spam e-mails to Facebook's userbase. The nature of these facts necessitates the electronic discovery and forensic analysis of PNS' and Williams' devices that Facebook requests, which is directly related to damages under Plaintiffs' claims.

### 2. The Amount in Controversy

The responsive information residing on PNS' and Williams' devices will directly establish the amount of statutory damages for which PNS and Williams are liable for their violations of the CAN-SPAM Act. 15 U.S.C. §§ 7701 *et seq*. The CAN-SPAM Act provides statutory damages of $100 per e-mail, subject to trebling. 15 U.S.C. § 7706(g). The evidence indicates that PNS and Williams violated the Act by sending millions of unsolicited commercial e-mails to Facebook users. Thus, the damages to be proven by the responsive information sought from PNS' and Williams' devices are potentially on the order of hundreds of millions of dollars.

### 3. The Importance of the Issues

A motion for partial summary judgment of liability under the CAN-SPAM Act and California Penal Code Section 502(c) is pending before the Court and scheduled for argument on February 27, 2008. If the Court grants the motion, then the issue of damages will be ripe for adjudication. The information sought from PNS and Williams is relevant to damages under each claim and should not be further delayed from discovery. Specifically, the responsive databases and "log" files will establish the number of e-mails the defendants sent in violation of the CAN-SPAM Act, and the IP addresses and URLs used to access Facebook's website are relevant to damages under California Penal Code Section 502(c).

### 4. The Potential for Finding Relevant Materials

There is a particularized likelihood of finding responsive information on the devices in PNS and Williams' possession, custody and/or control. *See* Shiflett Decl., ¶¶ 10-42. Examination by an expert rather than the parties also is vital because only a forensic expert can recover responsive information that has been marked for deletion. *See, e.g., Antioch Co. v. Scrapbook Borders, Inc.*, 210 F.R.D. 645, 652 (D. Minn. 2002) (ordering imaging to identify files deleted through normal use of the computer); *see also* Shiflett Decl. ¶ 50. Imaging and expert analysis also may identify other data that would provide answers to the questions PNS and Williams refuse to answer, namely what happened to the databases and log files, were they transferred or destroyed, did defendants store, access or share them on any portable media, when were they last accessed, were they altered, and did defendants make any effort to delete electronic files and/or "scrub" the

computers at issue. *See Ameriwood Indus., Inc.*, 2006 WL 3825291 at *2-5.

### 5. The Importance of the Discovery in Resolving Issues

Because PNS and Williams utilized their devices to operate the software programs that accessed Facebook's website and sent the invite e-mails, examination of the devices is necessary because they are the most likely, and potentially only, source for the responsive information. Moreover, imaging is permissible to investigate and resolve discrepancies or inconsistencies such as those demonstrated by PNS' and Williams' evasive declarations. *See Simon Prop. Group L.P. v. MySimon, Inc.*, 194 F.R.D. 639, 641 (S.D. Ind. 2000) (allowing plaintiff to mirror image defendant's computers where there were "troubling discrepancies with respect to defendant's document production"). Defendants' self-serving statements that they are not able to locate responsive information on their memory devices are insufficient to prevent imaging, especially in view of Defendants' unlawful hacking efforts. *Frees*, 2007 WL 184889 at *2.

## V. ALTERNATIVELY, PLAINTIFFS REQUEST THAT THE COURT FIND PNS AND WILLIAMS E-MAILED THREE MILLION FACEBOOK USERS THREE TIMES APIECE

PNS' and Williams' violation of the Order warrants entry of an adverse factual finding. It is within the discretion of the Court whose order is violated to find that "the matters regarding which the order was made . . . shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order." Fed. R. Civ. P. 37(b)(2)(A). An adverse factual finding "rests on the reasonable assumption that the party resisting discovery is doing so because the information sought is unfavorable to its interest." *Gibson v. Chrysler Corp.*, 261 F.3d 927, 948 (9th Cir. 2001) (an adverse factual finding concerning amount in controversy necessary to support subject matter jurisdiction for removal is appropriate where plaintiff violated order to produce relevant discovery). The sanction serves as "a mechanism for establishing facts that are being improperly hidden by the party resisting discovery." *Id.*, citing Fed.R.Civ.P. 26(g)(3); *Chilcutt v. United States*, 4 F.3d 1313, 1324 (5th Cir. 1993).

As an alternative to imaging and examining PNS' and Williams' devices, Facebook requests that the Court hold that PNS' and Williams' violation of the Order warrants a factual finding that PNS and Williams, individually and jointly, sent three invite e-mails to each of

- 13 -

MOTION TO COMPEL COMPLIANCE WITH ORDER
5:07-CV-01389-RS

Facebook's three million users as of July 1, 2005, comprising a total of nine million invite e-mails. The withheld URL, IP address and invite e-mail data is directly relevant to proving the potentially hundreds of millions of dollars of statutory damages owing from the defendants' violations of the CAN-SPAM Act. Should the information truly not exist, it was erased. Shiflett Decl. ¶ 47. In such cases, an adverse inference due to spoliation is warranted. An adverse factual finding at this stage also is appropriate because imaging and examining PNS' and Williams' devices to attempt to extract the withheld data will take additional time and accrue expense to Facebook, due solely to PNS' and Williams' evasive tactics in violation of the Order.[4]

Notably, the requested factual finding is substantiated by defendants' documents and deposition testimony. *See Hilao v. Estate of Marcos*, 103 F.3d 762, 764 (9th Cir. 1996) (affirming adverse factual finding as sanction for party's failure to appear at deposition or produce documents and noting that adverse facts "were substantiated by evidence"). ConnectU admits that ███████████████████████████████████████████████ Cooper Decl. Ex. 7 at 148:20-150:16; Ex. 6 at 83:22-84:23, 85:10-87:22. ███ Cooper Decl. Ex. 13 at PNS01768 ███, PNS01769 ███; Shiflett Decl. Exs. 1 at PNS0281469-73; Ex. 2 at PNS0310177. Williams admits that, ███████████████████████████████████. Shiflett Decl. Ex. 2 at CUCA02972. This evidence reflects that defendants were largely successful in achieving their goal: to steal all of Facebook's user profiles and spam Facebook's entire user base, which consisted of over 3 million registered users on July 1, 2005. *See* Declaration of Mark Zuckerberg in Support of Plaintiffs' Motion for Partial Summary Judgment (Doc. No. 254) ¶ 2. In addition, for each e-mail extracted from Facebook, defendants' programs were designed to ███████████ ███████████████ Shiflett Decl. ¶¶ 36 & 40 & Ex. 1 at PNS0310220; Ex. 2 at PNS0310222 ███

---

[4] Facebook notes that, just days after the Court entered its Order, the Finnegan firm requested to withdraw as counsel for Williams. *See* Doc. Nos. 259 & 260. The request was based on his purported disappearance and refusal to communicate with his counsel. *Id.* Williams, who previously lived in Seattle, has apparently resurfaced in Florida. *See* Shiflett Decl. Ex. 10.

1 ██████ The programs did, in fact, ██████████████████████
2 ██████ *See, e.g.*, Shiflett Decl. Ex. 2 at PNS0310223 ████
3 ██████

## VI. CONCLUSION

For the foregoing reasons, Facebook respectfully requests that its motion to compel compliance with the Order be granted.

## CERTIFICATION PURSUANT TO
## FED. R. CIV. P. 37(A)(2)(B) & N.D. CAL. CIV. L.R. 37-1(A)

Counsel for Facebook hereby certifies pursuant to Fed. R. Civ. P. 37(a)(2)(B) and N.D. Cal. Civ. L.R. 37-1(a) that it engaged in a conference with counsel for PNS and Williams concerning Facebook's position that PNS and Williams failed to comply with the Order. *See* Cooper Decl. ¶ 15. Despite the parties' good faith efforts to meet and confer on the subject, they were unable to resolve their differences with respect to the discovery and Order at issue. *Id.*

Dated: January 23, 2008  ORRICK, HERRINGTON & SUTCLIFFE LLP


/s/ Monte M.F. Cooper /s/
Monte M.F. Cooper
Attorneys for Plaintiffs
THE FACEBOOK, INC. and MARK ZUCKERBERG

# **CERTIFICATE OF SERVICE**

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on January 23, 2008.

Dated: January 23, 2008.                    Respectfully submitted,

                                            /s/ Monte M.F. Cooper /s/
                                            Monte M.F. Cooper

OHS West:260373317.1
16069-4