1  STEPHEN C. KENNEY (SBN 53883)
   SAMANTHA D. HILTON (SBN 215585)
2  KENNEY & MARKOWITZ L.L.P.
   255 California Street, Suite 1300
3  San Francisco, CA  94111
   Telephone:    (415) 397-3100
4  Facsimile:    (415) 397-3170

5  Attorneys for Defendant
   NORTHWEST AIRLINES, INC.
6

7

8                    UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10              SAN FRANCISCO DIVISION – **E-FILING**

11

12 TAUFIK RIDANI and JANA FAWN          CASE NO.  C 04 1092 PJH ARB
   MILLS,
13                                       **NOTICE OF MOTION AND MOTION
            Plaintiffs,                  OF DEFENDANT NORTHWEST
14                                       AIRLINES, INC. TO DISMISS FOR
   v.                                    FAILURE TO STATE A CLAIM**
15                                       (Fed.R.Civ.P. 12(b)(6))
   NORTHWEST AIRLINES, INC., a
16 corporation, KLM ROYAL DUTCH         **DATE:      June 9, 2004**
   AIRLINES, a corporation, THE BOEING  **TIME:      9:00 a.m.**
17 COMPANY, a corporation, and DOES 1-5, **DEPT:      Courtroom 3, 17th Floor**

18          Defendants.                  **LOCATION:  450 Golden Gate Ave.
                                                     San Francisco, CA**
19

20

21

22

23

24

25

26

27

28

Kenney
&
Markowitz
L.L.P.

─────────────────────────────────────────────
       NORTHWEST AIRLINES' NOTICE OF MOTION AND MOTION TO DISMISS
                        C 04 1092 PJH ARB

Dockets.Justia.com

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ...................................................................................................... 2

II.   THE GOVERNING LEGAL STANDARD ................................................................ 2

III.   PROCEDURAL AND FACTUAL HISTORY ............................................................ 3

IV.   PLAINTIFFS' STATE LAW CLAIMS FAIL AS A MATTER OF LAW ................... 5

        1.   The Rights and Liabilities of the Parties are Governed Exclusively by the Warsaw Convention ................................................. 6

        2.   Plaintiffs' Non-Warsaw Claims Must be Dismissed ............................... 8

V.   CONCLUSION ....................................................................................................... 10

# TABLE OF AUTHORITIES

**Page**

## Cases

*Air France v. Saks*
  470 U.S. 392, 406, 105 S.Ct. 1338, 1346 (1985) ........................................................ 6

*Air Disaster at Lockerbie, Scotland on Dec. 21, 1988*, 928 F.2d 1267, 1274-80 (2d
  Cir. 1991), *cert. denied sub. nom. Rein v. Pan Am. World Airways, Inc.*, 502
  U.S. 920, 112 S.Ct. 331 (1991) ...................................................................................... 7

*Balisteri v. Pacifica Police Dept.*
  901 F.2d 696, 699 (9th Cir. 1990) .................................................................................. 3

*Boehringer-Mannheim Diagnostics, Inc. v. Pan Am. World Airways, Inc.*
  737 F.2d 456, 458 (5th Cir. 1984), *cert. denied* 469 U.S. 1186 (1985) ........................ 7

*Cahill v. Liberty Mut. Ins. Co.*
  80 F.3d 336, 337-338 (9th Cir. 1996) ............................................................................ 3

*Carey v. United Airlines*
  255 F.3d 1044, 1046  (9th Cir. 2001) ............................................................................. 6

*Chan v. Korean Air Lines, Ltd.*
  490 U.S. 122, 123-24, 109 S.Ct. 1676, 1678 (1989) ...................................................... 6

*Dalton v. Delta Airlines, Inc.*
  570 F.2d 1244, 1246 (5th Cir. 1978) .............................................................................. 6

*Dazo v. Globe Airport Sec. Svcs.*
  268 F.3d 671, 675 (9th Cir. 2001) .................................................................................. 6

*Dunn v. Trans World Airlines, Inc.*
  589 F.2d 408, 410 (9th Cir. 1978) .................................................................................. 6

*El Al Israel Airlines, Ltd. v. Tseng*
  525 U.S. 155, 160, 119 S.Ct. 662, 667 (1999) ........................................................ 6, 7, 8

*In re Aircrash in Bali, Indonesia on April 22, 1974*
  684 F.2d 1301, 1304, cert. denied sub. nom., 493 U.S. 917 (1989 ................................ 6

*In re Mexico City Aircrash of Oct. 31, 1979*
  708 F.2d 400, 408, fn. 13 (9th Cir. 1983) ...................................................................... 6

*Johnson v. Am. Airlines, Inc.*
  834 F.2d 721, 723 (9th Cir. 1987) .................................................................................. 6

*Metropolitan Life Ins. Co. v. Taylor*
  481 U.S. 58, 63, 107 S. Ct. 1542, 1546 (1987) .............................................................. 6

*Miller v. Continental Airlines*
  260 F.Supp.2d 931, (N.D.Cal. 2003) ..................................................................... 3, 4, 5

Kenney
&
Markowitz
L.L.P.

*Pan Am. World Airways, Inc. v. Causey*
    493 U.S. 917, 110 S.Ct. 277 (1989) ................................................................ 6

*Potter v. Delta Air Lines, Inc.*
    98 F.3d 881, 885 (5th Cir. 1996) ................................................................... 7

*Rabinowitz v. Scandinavian Airlines*
    741 F. Supp. 441, 443 (S.D.N.Y. 1990) ......................................................... 6

*Shah v. Pan Am. World Servs., Inc.,* 148 F.3d 84, 98 (2d Cir. 1998), *cert. denied sub. nom. Singh v. Pan Am. World Airways, Inc.,* 525 U.S. 1142, 119 S.Ct. 1033
    (1999) ........................................................................................................... 7

*Shen v. Japan Airlines*
    918 F. Supp. 686, 688 (S.D.N.Y. 1994), *aff'd,* 43 F.3d 1459 (2d Cir. 1994) 6

*St. Paul Ins. Co. of Ill. v. Venezuelan Int'l. Airways, Inc.*
    807 F.2d 1543, 1546 (11th Cir. 1987) ........................................................... 7

*Stud v. Trans Int'l. Airlines*
    727 F.2d 880, 881 (9th Cir. 1984) ................................................................. 6

*Trans World Airlines, Inc. v. Franklin Mint Corp.*
    466 U.S. 243, 246-47, 104 S.Ct. 1776, 1780 (1984) ..................................... 6

*Vector Research, Inc. v. Howard & Howard Attorneys P.C.*
    76 F.3d 692, 697 (6th Cir. 1996) ................................................................. 3

*Western Mining Council v. Watt*
    643 F.2d 618, 624 (9th Cir. 1981) .............................................................. 3

### Statutes

F.R.C.P. Rule 12(b)(6) .................................................................................. 2, 3, 5, 9

### Other Authorities

49 U.S.C. §40105 ............................................................................................... 6

U.S. Const., art. VI, cl. 2 .................................................................................... 6

Warsaw Convention, 49 Stat. 3000 (1934) ................................................. 5, 6, 9

Warsaw Convention, art. 1(1) ............................................................................ 6

Warsaw Convention, art. 1(2) ............................................................................ 6

Kenney
&
Markowitz
L.L.P.

1

## ISSUE TO BE DECIDED

1.    Whether plaintiffs Taufik Ridani and Jana Fawn Mills' state law claims against defendant Northwest Airlines, Inc. are preempted by the Warsaw Convention.

1

## NOTICE OF MOTION AND MOTION

2      **NOTICE HEREBY IS GIVEN** that on June 9, 2004, at 9:00 a.m., or as soon thereafter as

3   the matter may be heard by the above-entitled Court, located in Courtroom 3, the Honorable

4   Phyllis J. Hamilton presiding, 450 Golden Gate Avenue, San Francisco, California, defendant

5   Northwest Airlines, Inc. will and hereby does move the Court to dismiss all state law causes of

6   action, with prejudice, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure based on

7   the ground that even if all material facts in the complaint are accepted as true as to these causes of

8   action, and are construed in the light most favorable to plaintiffs Taufik Ridani and Jana Fawn

9   Mills have failed to state a claim upon which relief can be granted as to defendant Northwest

10  Airlines, Inc.

11      This motion is based on this notice of motion and motion, the memorandum of points and

12  authorities which follows, the Declaration of Samantha D. Hilton (the "Hilton Decl.") filed

13  concurrently herewith, the proposed order submitted herewith, all pleadings and papers on file in

14  this action, and upon such other matters as may be presented to the Court at or before the hearing.

15

## MEMORANDUM OF POINTS AND AUTHORITIES

16  **I.      INTRODUCTION**

17      Plaintiffs Taufik Ridani and Jana Fawn Mills ("plaintiffs") have asserted several state law

18  claims against defendant Northwest Airlines, Inc. ("Northwest") upon which no relief can be

19  granted.  The Warsaw Convention has exclusive applicability to the complaint against Northwest

20  because it concerns an international flight between signatory countries.  As a prerequisite to

21  Northwest's liability, the treaty mandates that plaintiffs allege that an "accident" occurred during

22  the flight and that the "accident" caused death or bodily injury. Given the exclusivity of the

23  Warsaw Convention to the action against Northwest, any and all state law causes of action alleged

24  against Northwest must be dismissed.

25  **II.     THE GOVERNING LEGAL STANDARD**

26      A defendant moving to dismiss claims for failure to state a claim asks the court to test the

27  legal sufficiency of the allegations in the complaint.  Thus, a Rule 12(b)(6) motion requests the

28  court to decide whether the facts alleged, if true, would entitle the plaintiff to some form of legal

Kenney
&
Markowitz
L.L.P.

1  remedy.  A Rule 12(b)(6) motion is proper where there is either a "lack of a cognizable legal

2  theory" or the "absence of sufficient facts alleged under a cognizable legal theory."[1]

3          When considering a defendant's Rule 12(b)(6) motion, the court must accept the

4  truthfulness of the material facts alleged in the complaint, and determine whether the plaintiff can

5  prove any set of facts to support a claim that would merit relief.  Moreover, all inferences

6  reasonably drawn from these facts must be construed in favor of the plaintiff.[2]  The court,

7  however, need not accept as true conclusory allegations, nor need it accept unreasonable

8  inferences or unwarranted deductions of fact.[3]

9  **III.    PROCEDURAL AND FACTUAL HISTORY**

10         **A.    Procedural History**

11         This action was filed on March 18, 2004.  Northwest was served with the complaint on or

12 about March 26, 2004.  Similar actions have been filed by counsel for plaintiffs, including an

13 almost identical action, *Miller v. Continental Airlines, Inc., et al.*, U.S.D.C. Case No. 02-1693.

14 For judicial efficiency and uniformity, most, if not cases involving allegations of deep vein

15 thrombosis ("DVT") allegedly developed from travel on commercial aircraft have been deemed

16 "related" by this Court and transferred to the Honorable Vaughn R. Walker.  A notice of Related

17 Cases pursuant to Local Rule 3-12 was filed by plaintiffs on March 18, 2004.

18         Plaintiffs' complaint is almost identical to the complaints filed in the related DVT actions

19 including *Miller*.[4]  Although Northwest believes that plaintiffs' treaty liability claim also fails to

20 state a claim, this motion seeks dismissal of plaintiffs' state law claims only, including punitive

21 damages.

---

[1] *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).

[2] *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-338 (9th Cir. 1996); *Vector Research, Inc. v. Howard & Howard Attorneys P.C.*, 76 F.3d 692, 697 (6th Cir. 1996).

[3] *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

[4] *Miller v. Continental Airlines*, 260 F.Supp.2d 931, (N.D.Cal. 2003).  A copy of the Court's March 28, 2003 Order is attached to the Hilton Decl. as Exhibit A.  As is evident, the Court's March 28 Order address legal issues that are identical to those presented in this motion. Northwest hereby requests this Court to take judicial notice of all documents attached as exhibits to the Hilton Decl. (Fed. Rules Evid., rule 201, 28 U.S.C.)

Kenney
&
Markowitz
L.L.P.

{30170.301764 0106593.DOC}                                    3

The Honorable Vaughn R. Walker has already determined that if the allegations against a defendant airline concern international travel, the exclusive claim and remedy, if any, must be determined by reference to the provisions of the Warsaw Convention.  In *Miller*, the Court held,

> Accordingly, insofar as plaintiffs attempt to assert state law claims apart from the treaty, they are limited by the Convention, the court DISMISSES these claims WITH PREJUDICE.[5]

As to plaintiffs' punitive damages claims, the court further held,

> The court also considers plaintiffs' claim for punitive damages. As discussed, the Convention provides an exclusive remedy for personal injuries sustained during international air travel. Article 17, in particular, provides liability for compensatory damages due to bodily injury ... the court concludes that plaintiffs' punitive damages claims must be DISMISSED WITH PREJUDICE.[6]

The plaintiffs in *Miller, supra* were ordered to file an amended complaint removing the state law claims to assert only treaty liability against the defendant airline.

**B.      Factual Background**

Taufik Ridani alleges that he held "roundtrip tickets for carriage between the United States, Amsterdam, The Netherlands and Brussels, Belgium." (*See* Complaint at ¶ 10 attached as Exhibit B to the Hilton Decl.)  Plaintiffs allege that "[o]n or about March 19, 2003, plaintiff TAUFIK RIDANI developed a blood clot in his leg, secondary to the conditions he experienced on his flights from Brussels and Amsterdam to the United States." (Compl., at ¶ 13.)  Plaintiffs acknowledge that Taufik Ridani was a passenger on an international flight and that the Warsaw Conventions is applicable to these claims because they further allege that "the action or inactions [of Northwest] on which this lawsuit is based is an 'accident' pursuant to the Warsaw Convention." (Compl., ¶15.)

Plaintiffs, however, also allege that Taufik Ridani's DVT was caused by the defendants' negligence, product liability, breach of warranty, and failure to warn of such risks. (Compl., ¶¶19-32.)  In addition, Plaintiff Jana Fawn Mills alleges that "she has been deprived of the care, comfort, society, companionship, services and consortium of a kind and loving husband..." (Compl., ¶ 34.)

---

[5] *Miller, supra*, at 939.

[6] *Miller, supra*, at 940.

Kenney
&
Markowitz
L.L.P.

1    As discussed below, and as previously determined by this Court in related actions,

2 plaintiffs' state law claims against Northwest fall within the ambit of the Warsaw Convention and

3 therefore must fail as a matter of law.[7]

4 **IV.   PLAINTIFFS' STATE LAW CLAIMS FAIL AS A MATTER OF LAW**

5    Plaintiffs allege that "[d]efendants NORTHWEST and KLM so negligently transported

6 plaintiff TAUFIK RIDANI as aforesaid … so that [they] caused [his] injuries …" (Compl., ¶13.)

7 Plaintiffs' further allege that Northwest's "aircraft was equipped with seating configurations and

8 seats for which plaintiff TAUFIK RIDANI purchased a ticket and to which plaintiff TAUFIK

9 RIDANI was subjected for the duration of the flight, could and would cause deep vein

10 thrombosis." (Compl., ¶13.) As a basis for Northwest's alleged liability, plaintiffs assert a claim

11 of treaty liability arising from the Warsaw Convention. (Compl., ¶¶14, 15, 16, 17, 18.) Despite

12 conceding that the treaty is applicable to their claim against Northwest, plaintiffs also assert

13 several state law claims. This Court has previously determined that when the Warsaw Convention

14 applies, state law claims cannot succeed as a matter of law. (Hilton Decl., Ex. A.) The Warsaw

15 Convention has exclusive applicability to the allegations against Northwest; therefore, plaintiffs'

16 only claim, if any, is treaty liability.

17    All of plaintiffs' state law claims are precluded by the exclusive application of the Warsaw

18 Convention. And in *Miller*, this Court already addressed the issue of concurrent applicability and

19 dismissed all state law claims with prejudice. In other words, this Court determined that the

20 "claims clearly fall within the scope of the Convention and are therefore preempted." (*See* Court's

21 March 28 Order at 939; Hilton Decl., Ex. A.) Therefore, plaintiffs' state law based allegations fail

22 to state a claim for which relief can be granted and should be dismissed with prejudice under Rule

23 12 (b)(6).

24 ///

25 ///

26

27 [7] Northwest's reference to plaintiffs' "state law claims" and/or "non-Warsaw claims"

28 encompass all of plaintiffs' claims other than their first cause of action (Treaty Liability). The non-Warsaw claims are negligence, product liability, breach of warranty, punitive damages and loss of consortium.

Kenney
&
Markowitz
L.L.P.

{30170.301764 0106593.DOC}                    5
NORTHWEST AIRLINES' NOTICE OF MOTION AND MOTION TO DISMISS; C 04 1092 PJH ARB

1. **The Rights and Liabilities of the Parties are Governed Exclusively by the Warsaw Convention**

The Convention for the Unification of Certain Rules Relating to International Transportation by Air, commonly known as the Warsaw Convention, 49 Stat. 3000 (1934), T.S. 876 reprinted in 49 U.S.C. §40105, is a multilateral treaty governing the liability of air carriers engaged in international transportation.[8]   The Warsaw Convention, to which more than 120 nations, including the United States, adhere, was adopted at an international conference in Warsaw, Poland on October 12, 1929.[9]   As a treaty ratified by the United States, the Warsaw Convention is the Supreme Law of the Land,[10] and it is "absolutely binding."[11]

By its express terms, the Warsaw Convention applies to "all international transportation of persons, baggage, or goods performed by aircraft for hire."[12]   "International transportation" is defined under the Convention as:

> [a]ny transportation in which, according to the contract made by the parties, the place of departure and the place of destination, whether or not there be a break in the transportation or a transshipment, are situated either within the territories of the two High Contracting Parties, or within the territory of a single High Contracting Party, if there is an agreed stopping place within a territory subject to the sovereignty, suzerainty, mandate or authority of another power, even though that power is not a party to this convention.[13]

The applicability of the Warsaw Convention is determined by reference to the provisions of the Convention, the relevant contract of transportation (in this case, the passenger ticket), and

---

[8] *El Al Israel Airlines, Ltd. v. Tseng,* 525 U.S. 155, 160, 119 S.Ct. 662, 667 (1999); *Trans World Airlines, Inc. v. Franklin Mint Corp.,* 466 U.S. 243, 246-47, 104 S.Ct. 1776, 1780 (1984); *Dazo v. Globe Airport Sec. Svcs.,* 268 F.3d 671, 675 (9th Cir. 2001); *Carey v. United Airlines,* 255 F.3d 1044, 1046 (9th Cir. 2001); *In re Aircrash in Bali, Indonesia on April 22, 1974,* 684 F.2d 1301, 1304, cert. denied sub. nom., 493 U.S. 917 (1989); *Pan Am. World Airways, Inc. v. Causey,* 493 U.S. 917, 110 S.Ct. 277 (1989).

[9] *Franklin Mint Corp.,* 466 U.S. at 246; *In re Mexico City Aircrash of Oct. 31, 1979,* 708 F.2d 400, 408, fn. 13 (9th Cir. 1983); *In re Aircrash in Bali,* 684 F.2d at 1304; *Dunn v. Trans World Airlines, Inc.,* 589 F.2d 408, 410 (9th Cir. 1978).

[10] U.S. Const., art. VI, cl. 2; *Air France v. Saks,* 470 U.S. 392, 406, 105 S.Ct. 1338, 1346 (1985).

[11] *Dalton v. Delta Airlines, Inc.,* 570 F.2d 1244, 1246 (5th Cir. 1978).

[12] Warsaw Convention, art. 1(1); *Chan v. Korean Air Lines, Ltd.,* 490 U.S. 122, 123-24, 109 S.Ct. 1676, 1678 (1989); *Johnson v. Am. Airlines, Inc.,* 834 F.2d 721, 723 (9th Cir. 1987); *Stud v. Trans Int'l. Airlines,* 727 F.2d 880, 881 (9th Cir. 1984).

[13] Warsaw Convention, art. 1(2); 49 Stat. 3014.

Kenney
&
Markowitz
L.L.P.

1  plaintiffs' reliance on the Convention in asserting claims against the airline.[14]   Taufik Ridani

2  alleges that held a ticket for roundtrip international travel on Northwest between Amsterdam,

3  Netherlands, Brussels, Belgium and the United States. (Compl., ¶10.)  Taufik Ridani's alleged

4  injury (the development of DVT) is alleged to be caused by his travel on the defendants' flights

5  and/or aircraft, including his international travel on Northwest between the Netherlands, Belgium

6  and the United States. (Compl., ¶¶10, 11, 13, 14, 15.)  The Warsaw Convention, therefore, applies

7  to the complaint in so far as it makes allegations against Northwest.

8       There is a long line of authority holding that when the Warsaw Convention applies, it

9  precludes all local law to the contrary and exclusively governs the rights and liabilities of the

10  parties.[15]   In *El Al Israel Airlines v. Tseng*, the Supreme Court held that "recovery for personal

11  injury suffered 'on board [an] aircraft or in the course of any of the operations of embarking or

12  disembarking' ...,  if not allowed under the Convention, is not available at all"[16]  The Supreme

13  Court explained that "[r]ecourse to local law, we are persuaded, would undermine the uniform

14  regulation of international air carrier liability that the Warsaw Convention was designed to

15  foster."[17]

16       Taufik Ridani allegedly was traveling pursuant to "roundtrip tickets for carriage between

17  the United States, Amsterdam, The Netherlands and Brussels, Belgium." (Compl., ¶10.)  The

18  United States is a High Contracting Party to the Warsaw Convention.  Since the place of departure

19  and the place of destination are situated "within the territory of a single High Contracting Party,"

20  the contract of transportation falls within the scope of the term "international transportation" as

21

22  [14] *Shen v. Japan Airlines*, 918 F. Supp. 686, 688 (S.D.N.Y. 1994), *aff'd*, 43 F.3d 1459 (2d Cir. 1994); *Rabinowitz v. Scandinavian Airlines*, 741 F. Supp. 441, 443 (S.D.N.Y. 1990); *Metropolitan*

23  *Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S. Ct. 1542, 1546 (1987).

24  [15] *Shah v. Pan Am. World Servs., Inc.*, 148 F.3d 84, 98 (2d Cir. 1998), *cert. denied sub. nom. Singh v. Pan Am. World Airways, Inc.*, 525 U.S. 1142, 119 S.Ct. 1033 (1999); *Potter v. Delta Air Lines, Inc.*, 98 F.3d 881, 885 (5th Cir. 1996); *Air Disaster at Lockerbie, Scotland on Dec. 21,*

25  *1988*, 928 F.2d 1267, 1274-80 (2d Cir. 1991), *cert. denied sub. nom. Rein v. Pan Am. World Airways, Inc.*, 502 U.S. 920, 112 S.Ct. 331 (1991); *St. Paul Ins. Co. of Ill. v. Venezuelan Int'l.*

26  *Airways, Inc.*, 807 F.2d 1543, 1546 (11th Cir. 1987); *Boehringer-Mannheim Diagnostics, Inc. v. Pan Am. World Airways, Inc.*, 737 F.2d 456, 458 (5th Cir. 1984), *cert. denied* 469 U.S. 1186

27  (1985).

     [16] *Tseng, supra,*119 S.Ct. at 668.

28  [17] *Tseng, supra,* 119 S.Ct. at 668.

Kenney
&
Markowitz
L.L.P.

1  defined by Article 1(2) of the Warsaw Convention.   Accordingly, this action is governed

2  exclusively by the provisions of the Warsaw Convention.

### 2.   Plaintiffs' Non-Warsaw Claims Must be Dismissed

4  Plaintiffs have specifically invoked and alleged claims in the complaint arising under the

5  Warsaw Convention. (Compl., ¶¶14, 15, 16, 17, 18.)   As explained herein, the Warsaw

6  Convention is the governing law and provides the exclusive remedy, if any, for injury resulting

7  from international air travel.[18]   Nevertheless, plaintiffs also allege negligence, product liability,

8  breach of warranty, punitive damages and loss of consortium.   These non-Warsaw Convention

9  claims are precluded by the exclusivity of the Warsaw Convention and should be dismissed as

10  against Northwest.

11  The Warsaw Convention applies to "all international transportation of persons, baggage, or

12  goods performed by aircraft for hire."[19]   Articles 17 and 24 of the Convention establish the only

13  conditions under which an air carrier may be liable for personal injuries alleged by international

14  passengers.   Article 24 of the Montreal Protocol No.4 confirms that the Warsaw Convention

15  provides the only claim and remedy that passengers may pursue:   "In the carriage of passengers

16  and baggage, any action for damages, however founded, can only be brought subject to the

17  conditions and limits set out in this Convention ..."[20]

18  The Supreme Court in *Tseng* found that the Warsaw Convention, as amended by the

19  Montreal Protocol, provides the exclusive cause of action for injuries alleged by passengers during

20  international travel:

> We conclude that the protocol, to which the United States has now
> subscribed, clarifies but does not change, the Convention's
> exclusivity domain.  We therefore hold that recovery for a personal
> injury suffered "on board [an] aircraft or in the course of any of the
> operations of embarking or disembarking," Art. 17, 49 Stat. 3018, *if
> not allowed under the Convention, is not available at all.*[21]

---

[18] *Tseng, supra,* 119 S.Ct. at 668. (the Convention is the exclusive remedy for any injury suffered during international travel.)

[19] *Tseng, supra,* at 668-69.

[20] *Tseng, supra,* at 674 n.15.

[21] *Tseng, supra,* at 668 (emphasis added).

Kenney
&
Markowitz
L.L.P.

1    As the Supreme Court explained, the "comprehensive scheme of liability rules" set forth

2    in the Warsaw Convention are directed to "uniformity" and, therefore, preclude an argument that

3    the drafters "meant to subject air carriers to the distinct, non-uniform liability rules of the

4    individual signatory nations."[22]   In so holding, the Supreme Court overruled an earlier Second

5    Circuit opinion which allowed a plaintiff to seek a remedy under state law for injuries allegedly

6    sustained during international travel:

7
> Construing the Convention, as did the Court of Appeals, to allow
> passengers to pursue claims under local law when the Convention

8
> does not permit recovery could produce several anomalies. Carriers
> might be exposed to unlimited liability under diverse legal regimes,

9
> but would be prevented, under the treaty, from contracting out such
> liability . . . . The Court of Appeals' construction of the Convention

10
> would encourage artful pleading by plaintiffs seeking to opt out of the
> Convention's liability scheme when local law promised recovery in

11
> excess of that prescribed by the treaty.[23]

12    Consequently, the Court held "that the Warsaw Convention *precludes* a passenger from

13    maintaining an action for personal injury damages under local law when her claim does not satisfy

14    the conditions for liability under the Convention."[24]

15    Applying these principals to the case at bar, it is evident that plaintiffs are precluded from

16    asserting any state law claims against Northwest for their alleged injuries.  Since Taufik Ridani

17    allegedly sustained his injuries from his travel as a passenger onboard Northwest's international

18    flight from Brussels, Belgium to the United States, the Warsaw Convention applies.  Therefore,

19    Northwest's motion to dismiss plaintiffs' claims should be granted as a matter of law.

20    ///

21    ///

22    ///

23    ///

24    ///

25    ///

26

Kenney
&
Markowitz
L.L.P.

27    [22] *Tseng, supra,* at 672.

28    [23] *Tseng, supra,* at 672-73.

[24] *Tseng, supra,* at 675.

1   **V.      CONCLUSION**

2          For all the foregoing reasons, plaintiffs' state law based allegations fail to state, and cannot

3   state, a claim upon which any relief can be granted.  Accordingly, this Court should dismiss these

4   causes of action with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

5

6   DATED:  April 15, 2004                          **KENNEY & MARKOWITZ L.L.P**

7

8                                                   By:
                                                        STEPHEN C. KENNEY
9                                                       SAMANTHA D. HILTON
                                                        Attorneys for Defendant
10                                                      NORTHWEST AIRLINES, INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Kenney
&       27
Markowitz
L.L.P.   28

Westlaw.

260 F.Supp.2d 931
Prod.Liab.Rep. (CCH) P 16,709
**(Cite as: 260 F.Supp.2d 931)**

United States District Court,
N.D. California.

Debra MILLER and Michael Dobler, Plaintiffs,
v.
CONTINENTAL AIRLINES, INC, a Corporation,
and Air France, a French Corporation,
and the Boeing Company, Defendants.
Daniel WYLIE, Plaintiff,
v.
American Airlines, Inc, and The Boeing Company,
Defendants.

**No. C-02-1693 VRW, C-02-29979 VRW.**

March 28, 2003.

Airline passengers brought personal injury claims against airlines and airplane manufacturer for damages arising from deep vein thrombosis (DVT) caused by defendants' seating configuration on international flights. Defendants moved to dismiss. The District Court, Walker, J., held that: (1) allegations, as pleaded, were insufficient to support a claim for liability under the Warsaw Convention; (2) state law claims fell within the scope of the Warsaw Convention and were therefore preempted; (3) punitive damages were not recoverable under Warsaw Convention; and (4) loss of consortium claim was preempted by the Warsaw Convention.

Motion granted in part and denied in part.

West Headnotes

**[1] Carriers ☞307(6.1)**
70k307(6.1) Most Cited Cases

**[1] Carriers ☞314**
70k314 Most Cited Cases

**[1] Treaties ☞8**
385k8 Most Cited Cases

Airline    passengers'    allegations    that    their

development of deep vein thrombosis (DVT) "was the result of defendants' willful misconduct or, alternatively, an accident which airline defendants did not take all necessary measures to avoid" were insufficient to support a claim for liability under the Warsaw Convention; the pleadings were conclusory and did not plead facts sufficient to support a finding that their injuries resulted from an accident within the meaning of the Convention. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.; Warsaw Convention, Art. 1, 49 U.S.C.A. § 40105 note.

**[2] Federal Civil Procedure ☞1838**
170Ak1838 Most Cited Cases

If a complaint is dismissed for failure to state a claim, leave to amend should be granted unless the court determines that the allegation of other facts consistent with the pleading could not possibly cure the deficiency. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[3] Carriers ☞311**
70k311 Most Cited Cases

**[3] Treaties ☞11**
385k11 Most Cited Cases

Airline passengers' state law claims for negligence against airline defendants, allegedly arising from airline's breach of a duty of care to ensure their safety by subjecting them to seats and a seating configuration and conditions in economy class that defendants knew, or should have known, could and would cause deep vein thrombosis (DVT), fell within the scope of the Warsaw Convention and were therefore preempted. Warsaw Convention, Art. 1, 49 U.S.C.A. § 40105 note.

**[4] Carriers ☞311**
70k311 Most Cited Cases

**[4] Treaties ☞11**
385k11 Most Cited Cases

Airline passengers' state law claims for products liability against airline defendants, alleging that the

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

EXHIBIT _A_

260 F.Supp.2d 931
Prod.Liab.Rep. (CCH) P 16,709
**(Cite as: 260 F.Supp.2d 931)**

Page 2

seating configurations and seats of the aircraft on which plaintiffs were passengers were in a dangerous and defective condition causing passengers to develop deep vein thrombosis (DVT), fell within the scope of the Warsaw Convention and were therefore preempted; the passengers could not evade the Convention's scope through artful attempts to characterize their international air travel claims as product liability claims. Warsaw Convention, Art. 1, 49 U.S.C.A. § 40105 note.

**[5] Carriers ☞307(6.1)**
70k307(6.1) Most Cited Cases

**[5] Treaties ☞8**
385k8 Most Cited Cases

The Warsaw Convention supplies the exclusive remedy for personal injuries sustained during international air travel. Warsaw Convention, Art. 1, 49 U.S.C.A. § 40105 note.

**[6] Carriers ☞307(6.1)**
70k307(6.1) Most Cited Cases

**[6] Treaties ☞8**
385k8 Most Cited Cases

Punitive damages were not recoverable under Warsaw Convention by international airline passengers who allegedly developed deep vein thrombosis (DVT) as a result of the airplane seating configuration. Warsaw Convention, Art. 1, 49 U.S.C.A. § 40105 note.

**[7] Husband and Wife ☞209(3)**
205k209(3) Most Cited Cases

**[7] Treaties ☞11**
385k11 Most Cited Cases

Loss of consortium claim by spouse of airline passenger who allegedly developed deep vein thrombosis (DVT) as a result of seating configuration on international flight was preempted by the Warsaw Convention, though spouse could possibly bring suit under the Convention and assert, as a basis for damages, the value of his loss of consortium. Warsaw Convention, Art. 1, 49 U.S.C.A. § 40105 note.
**\*932** Frank C. Liuzzi, O'Reilly Collins & Danko, San Mateo, CA, for Plaintiffs.

Kymberly E. Speer, Livingston Law Firm, Walnut Creek, CA, Chung H. Han, Perkins Coie LLP, Santa Monica, CA, for Defendants.

**ORDER**

WALKER, District Judge.

In the above captioned cases, plaintiffs bring personal injury claims against three airlines and an airplane manufacturer for damages arising from deep vein thrombosis (DVT) caused by defendants' seating configuration on international flights.

Presently before the court are the airline defendants' motions to dismiss plaintiffs' complaints with prejudice (02-1693: Doc # 11; 02-2997: Doc # 8). With the exception of the spousal claims in *Miller*, the claims raised by each of the passenger plaintiffs are identical and based on identical material allegations, a circumstance likely resulting from the prosecution of both cases by the same counsel. The amended complaints at issue in the pending motions were even filed within a day of each other. As a result, the court finds it appropriate to consider and address within this single order the legal sufficiency of claims against the airline defendants in both the third amended complaint in *Miller et al v. Continental Airlines et al*, Case No 02-1693- VRW, and the second amended complaint in *Wylie v. American Airlines Inc et al*, Case No 02-2993-VRW. For the reasons set forth below, the court GRANTS in part and DENIES in part defendants' motions (02-1693: Doc # 11; 02-2997: Doc # 8).

I

The following factual summary comes from plaintiffs' amended complaints. See *Miller* TAC (02-1693: Doc # 10); *Wylie* SAC (02-2997: Doc # 7). On or about April 12, 2001, plaintiff Debra Miller traveled as a paying passenger on board a flight operated by Continental Airlines and Air France from Paris, France, to San Francisco, California, with a stop-over in Newark, New Jersey. See *Miller* TAC (02-1693: Doc # 10), ¶¶ 9,10. Similarly, on July 4, 2001, plaintiff Daniel Wylie traveled as a paying passenger on board a direct flight from Paris, France, to San Francisco, California, operated by defendant **\*933** American

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

260 F.Supp.2d 931
Prod.Liab.Rep. (CCH) P 16,709
**(Cite as: 260 F.Supp.2d 931)**

Page 4

Article 17 of the Convention addresses claims for personal injury and provides a cause of action against an air carrier, which:

> shall be liable for damage sustained in the event of death or wounding of a passenger or any other bodily injury suffered by the passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

49 Stat 3018; *Tseng,* 525 U.S. at 162-63, 119 S.Ct. 662. An air carrier may be liable for passenger injury under Article 17 "only when three conditions are satisfied: (1) there has been an accident, in which (2) the passenger suffered 'mort,' 'blessure,' 'ou * * * toute autre lésion corporelle' [death, wounding or other bodily injury], and (3) the accident took place on board the aircraft or in the course of operations of embarking or disembarking." *Eastern Airlines, Inc. v. Floyd,* 499 U.S. 530, 535-36, 111 S.Ct. 1489, 113 L.Ed.2d 569 (1991).

An "accident" under the Convention has been defined by the Supreme Court as "an unexpected or unusual event or happening that is external to the passenger." *Air France v. Saks,* 470 U.S. 392, 405, 105 S.Ct. 1338, 84 L.Ed.2d 289 (1985). This definition is to "be flexibly applied after assessment of all the circumstances surrounding a passenger's injuries." *Tseng,* 525 U.S. at 166 n. 9, 119 S.Ct. 662 ; *Saks,* 470 U.S. at 405, 105 S.Ct. 1338.

> In cases where there is contradictory evidence, it is for the trier of fact to decide whether an 'accident' as here defined caused the passenger's injury. But when the injury indisputably results from the passenger's own internal reaction to the usual, normal, and expected operation of the aircraft, it has not been caused by an accident, and Article 17 of the Warsaw Convention cannot apply.

*Saks,* 470 U.S. at 405-06, 105 S.Ct. 1338.

Underscoring the fact-intensive and particularized nature of the inquiry, in *Tseng,* 525 U.S. at 166 n. 9, 119 S.Ct. 662, the Supreme Court called into question the Second Circuit's application of the definition of the term "accident." In that case, the Second Circuit had concluded that "a routine [security] search, applied erroneously to plaintiff in the course of embarking on the aircraft" may not be fairly characterized as an "accident" because such

security searches, including the risk of mistakenly searching an innocent passenger, are "routine operating procedures" known by passengers. *Id.* In its opinion, however, the Supreme Court stated it was "questionable whether the Court of Appeals 'flexibly applied' the definition of 'accident' [it] set forth in *Saks.*" *Id.*

With these principles in mind, the court turns to each of plaintiffs' claims.

**\*935 A**

1

In their submissions, the parties discuss at length the flurry of recent litigation of DVT injury claims under the Warsaw Convention and whether treaty liability attaches for allegedly defective seating configurations. Under what circumstances, if ever, certain seating configurations or the failure to warn of DVT risks may constitute an "accident" under the Warsaw Convention is clearly a contentious issue that courts in the United States and abroad have only begun to consider and address.

[1] The court, however, need not reach these issues at the present time because the court finds that plaintiffs' first claim, for treaty liability, fails to state a claim upon which relief may be granted because the allegations thereunder are couched in wholly conclusory terms.

In their treaty liability claim, plaintiffs allege:

> The injury to plaintiff was the result of defendants' willful misconduct or, alternatively, an accident which [airline defendants] did not take all necessary measures to avoid.

*Miller* TAC (02-1693: Doc # 10), ¶ 15; *Wylie* SAC (02-2997: Doc # 7), ¶ 12. This allegation is insufficient because plaintiffs fail to plead the specific conduct they allege to be the "accident" underlying their claims. None of the previous allegations incorporated by reference provide sufficient factual basis to rescue this claim. Plaintiffs simply have not specified any facts to support a finding that their injuries resulted from "an unexpected or unusual event" not caused by "the passenger's own internal reaction to the usual, normal, and expected operation of the aircraft." At most, plaintiffs make only passing, and again conclusory, reference to defendants' negligent design, construction and transportation. *Miller*

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

260 F.Supp.2d 931
Prod.Liab.Rep. (CCH) P 16,709
**(Cite as: 260 F.Supp.2d 931)**

Page 5

TAC (02-1693: Doc # 10), ¶ 12; *Wylie* SAC (02-2997: Doc # 7), ¶ 10.

Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). But the allegation that plaintiffs' injuries resulted from an "accident" is exactly that.

Although the federal procedural standards for notice pleading contained in the Federal Rules of Civil Procedure are liberal, they are not so liberal as to allow purely conclusory statements to suffice to state a claim that can survive a motion to dismiss under FRCP 12(b)(6). "[T]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network,* 18 F.3d 752, 754-55 (9th Cir.1994). It is apparent that in plaintiffs' treaty liability claims, they have done little more than cut and paste the legal standard recited the treaty into their complaints.

In their oppositions to the instant motions, plaintiffs posit, for the first time, additional factual scenarios that they contend may suffice to constitute an "accident." This merely underscores the unacceptably vague and conclusory nature of their amended complaints. For example, in their opposition, plaintiffs argue that "defendants' failure to warn * * * of DVT dangers is itself an 'accident' under Article 17." *Miller* Pls Opp (02-1693: Doc # 17), at 16; *Wylie* Pl Opp (02-2997: Doc # 15), at 17. But, aside from passing reference to this theory in their product liability causes of action (denominated later in their complaints and which are not incorporated under their treaty liability claims), the pleadings lack any allegations concerning the existence and nature of this duty, defendants' **\*936** failure to fulfill such a duty, or how this failure qualifies as an "accident".

Plaintiffs' reliance on Judge Kent's orders in *Blansett v. Continental Airlines,* Case No Civ A G-02-061 (SD Tex), is misplaced. There, the plaintiffs supplied sufficient factual allegations to support their claims, including the airline defendants' numerous failures to (1) warn or advise the passenger of the likelihood of developing DVT; (2) allow an on-board physician to examine or treat

the passenger after he became visibly ill; (3) consult with any third-party medical advice service regarding the passenger's condition; (4) relay critical information to the ambulance and hospital personnel that eventually treated the passenger once the plane landed. See *Blansett,* 204 F.Supp.2d 999, 1000 (S.D.Tex.2002) (summarized in *Blansett,* 246 F.Supp.2d 596 (S.D.Tex.2002)). In the cases at bar, plaintiffs fail to state a claim that their injuries resulted from an accident within the meaning of the Convention.

Additionally, the court notes that although plaintiffs predicate treaty liability primarily on defendants' willful misconduct and only secondarily on the presence of an accident, the critical inquiry is whether an accident has occurred. See *Saks,* 470 U.S. at 394, 105 S.Ct. 1338; *Tseng,* 525 U.S. at 161, 119 S.Ct. 662. Plaintiffs cannot recover under the treaty for claims falling within its scope unless they arise out of an accident as defined by the treaty. See *Carey v. United Airlines,* 255 F.3d 1044, 1051 (9th Cir.2001) (reciting standard for an "accident" and noting "there is no exception for an injury suffered as a result of intentional misconduct"). But cf *Id.* (explaining that presence of willful misconduct may give rise to an inference of an accident).

2

[2] The court, however, declines to dismiss plaintiffs' claims under the Convention with prejudice. If a complaint is dismissed for failure to state a claim, "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.,* 806 F.2d 1393, 1401 (9th Cir.1986).

Because the amended complaints are devoid of factual allegations concerning the circumstances of the "accident" giving rise to plaintiffs' injuries, the court cannot conclude that they will be unable to amend the complaint with additional and consistent facts to supply a ground for relief. A motion to dismiss is directed at and limited to the confines of the pleadings. Plaintiffs should be given an opportunity to supply specific factual allegations of unusual flight events that can be fairly characterized as an "accident" under the Warsaw Convention.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

260 F.Supp.2d 931
Prod.Liab.Rep. (CCH) P 16,709
(Cite as: 260 F.Supp.2d 931)

Page 6

Defendants argue that granting leave to amend would be futile because development of DVT as a result of sitting on international flights cannot arise from an "accident" under Article 17 of the Convention. See Defs Mem (02-1693: Doc # 11), at 10. But as earlier recited, the Supreme Court has explained that whether a passenger's injury is caused by an "accident" within the meaning of the Convention is a fact-intensive inquiry that "should be flexibly applied after assessment of all the circumstances surrounding a passenger's injuries." *Saks,* 470 U.S. at 405, 105 S.Ct. 1338. Whether an "accident" is the source of plaintiffs' injuries is a question that cannot be answered until plaintiffs supply the factual bases for their claims. The court therefore declines defendants' invitation to dismiss plaintiffs' claims with prejudice without first affording an opportunity to allege the occurrences which constitute an "accident" under the Convention and *937 thereby provide the court a clearer picture of plaintiffs' claims.

Plaintiffs are accordingly GRANTED leave to amend their complaints in accordance with this order. Plaintiffs in both cases may serve and file further amended complaints on or before April 25, 2003. The court notes, however, that plaintiffs will not be able to meet their pleading obligations merely by inserting an allegation that the "accident" was "unexpected or unusual," as they have offered in their opposition. See Pl Opp (02-1693: Doc # 17), at 9 ("Plaintiffs will be glad to amend their Complaint to state redundantly that the accident was unexpected or unusual."). As earlier explained, these allegations without their underlying factual basis are conclusory and insufficient to survive a motion to dismiss.

B

[3] Miller's and Wylie's state law claims, asserted separately from their claims under the Convention, arise from tortious conduct occurring on board the airplane during the flights in question. These claims clearly fall within the scope of the Convention and are therefore preempted.

"The cardinal purpose of the Warsaw Convention * * * is to 'achiev[e] uniformity of rules governing claims arising from international transportation' * * *." *Tseng,* 525 U.S. at 169, 119 S.Ct. 662. But it is now settled that "the Convention's preemptive effect

is clear: The treaty precludes passengers from bringing actions under local law when they cannot establish air carrier liability under the treaty." *Tseng,* 525 U.S. at 174- 75, 119 S.Ct. 662.

The Convention has preemptive force over local claims even if the Convention itself does not provide an avenue for relief. *Id.* at 161, 119 S.Ct. 662 (holding that "recovery for a personal injury suffered 'on board [an] aircraft or in the course of any of the operations of embarking and disembarking', if not allowed under the Convention, is not available at all"). Hence, regardless whether Miller and Wylie are able to sustain their claims under Article 17 of the Convention, their state law claims are nonetheless barred because they are based on events occurring during international air transportation, as defined by the treaty.

For example, their claims for negligence are based on the airline defendants' breach of a duty of care to ensure their safety "by subjecting [them] to seats and a seating configuration and conditions in economy class that defendants knew, or * * * should have known, could and would cause deep vein thrombosis." *Miller* TAC (02-1693: Doc # 10), ¶ 18; *Wylie* SAC (02-2997: Doc # 7), ¶ 14. Plaintiffs' common carrier negligence claims are likewise predicated on having been subjected to this seating configuration. *Miller* TAC (02-1693: Doc # 10), ¶ 20; *Wylie* SAC (02-2997: Doc # 7), ¶ 15. These claims are plainly within the Convention's preemptive scope.

[4] In their papers, plaintiffs do not oppose dismissal of their claims for negligence or common carrier liability. Instead, they argue that their product liability claims may survive because airline defendants' role in those claims was not based on their acts as air carriers. Plaintiffs contend that the airline defendants' role in designing and outfitting their aircraft falls outside the scope of the Convention. Although plaintiffs' amended complaints each state only one claim captioned "product liability," *Miller* TAC (02-1693: Doc # 10, ¶¶ 24-29); *Wylie* SAC (02-2997: Doc # 7, ¶¶ 17-22), their oppositions both appear to make reference to multiple product liability "claims". *Miller* Pls Opp (Doc # 17), at 21; *Wylie* Pl Opp (Doc # 15), at 21. *938 Even though plaintiffs do not specify which, if any, of the other claims asserted they consider to be product liability claims,

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

260 F.Supp.2d 931
Prod.Liab.Rep. (CCH) P 16,709
(Cite as: 260 F.Supp.2d 931)

Page 7

for the purposes of this motion, the court shall deem their opposition as directed also in defense of their breach of implied warranty claims. See *Scott v. CIBA Vision Corp.,* 38 Cal.App.4th 307, 44 Cal.Rptr.2d 902, 911 (1995) (characterizing breach of implied warranty as a products liability claim).

In these claims, plaintiffs allege that "the seating configurations and seats of the aircraft on which plaintiff was a passenger * * * were in a dangerous and defective condition * * * causing [plaintiff] to contract deep vein thrombosis," *Miller* TAC (02-1693: Doc # 10), ¶ 24; *Wylie* SAC (02-2997: Doc # 7), ¶ 17, that defendants impliedly warranted the safety of their seats on board the aircraft and that being subjected to the seats in question led to their development of DVT, *Miller* TAC (02-1693: Doc # 10), ¶¶ 30-31; *Wylie* SAC (02-2997: Doc # 7), ¶¶ 23-24.

Under California law, use of a defective product resulting in injury is an "essential element" of a cause of action for product liability. *Kanter v. Warner-Lambert Co.,* 99 Cal.App.4th 780, 122 Cal.Rptr.2d 72, 80 (2002); *Cronin v. JBE Olson Corp.,* 8 Cal.3d 121, 104 Cal.Rptr. 433, 438, 501 P.2d 1153 n. 5 (1972). In addition, it is plain that the sale allegedly giving rise to the implied warranty is based on a contract of carriage for international travel. These claims premise liability based on plaintiffs' use of the defective and unfit seating configuration during international travel and are therefore preempted by the Convention. Plaintiffs may not evade the Convention's scope through artful attempts to characterize their international air travel claims as product liability claims. See *Tseng,* 525 U.S. at 171, 119 S.Ct. 662 (rejecting constructions of the Convention that would "encourage artful pleading by plaintiffs seeking to opt out of the Convention's liability scheme when local law promised recovery in excess of that prescribed by the treaty").

Plaintiffs appear to misapprehend the Supreme Court's opinion in *Zicherman v. Korean Air Lines Co., Ltd.,* 516 U.S. 217, 116 S.Ct. 629, 133 L.Ed.2d 596 (1996). While the Convention "does not affect the substantive questions of who may bring suit and what they may be compensated for," id at 229, 116 S.Ct. 629, it nevertheless prohibits claims based on local law asserted separately from a claim under the Convention itself. *Zicherman* does not hold that

injured parties may assert local claims apart from the treaty itself. As the Supreme Court explained in *Tseng,* "the Warsaw drafters intended to resolve *whether there is liability,* but to leave to domestic law * * * determination of the compensatory damages available to the suitor." 525 U.S. at 170, 119 S.Ct. 662 (emphasis in original) (discussing *Zicherman* ). The Convention "permit[s] compensation only for legally cognizable harm, but leave[s] the specification of what harm is legally cognizable to the domestic law applicable under the forum's choice-of-law rules." *Zicherman,* 516 U.S. at 231, 116 S.Ct. 629. Thus, local law plays a vital role in answering those substantive questions and functions in this regard only as a "pass-through" with respect to cognizable damages. Id at 229, 116 S.Ct. 629.

Miller, in her opposition papers, submits for the first time that Continental might not have operated the flights in question and that she may maintain her state claims against Continental because it did not act as a carrier under the Convention, but merely as a "ticket seller." *Miller* Pls Opp (02-1693: Doc # 17), at 24. But this assertion directly contradicts the actual allegations of Miller's complaint, which clearly states that both Air France and *939 Continental operated the flights and aircraft in question. *Miller* TAC (02-1693: Doc # 10), ¶ 10. Miller cannot rescue her state law claims against Continental by raising, for the first time in her opposition to dismissal, allegations that are inconsistent with those contained in her complaint. See *Schreiber Distrib. Co.,* 806 F.2d at 1401 (explaining that leave to amend may not be granted to allow allegation of facts inconsistent with the pleading).

Accordingly, insofar as plaintiffs attempt to assert state law claims apart from the treaty, they are limited by the Convention, the court DISMISSES these claims WITH PREJUDICE.

C

The court also considers plaintiffs' claim for punitive damages. As discussed, the Convention provides an exclusive remedy for personal injuries sustained during international air travel. Article 17, in particular, provides liability for compensatory damages due to bodily injury.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

260 F.Supp.2d 931
Prod.Liab.Rep. (CCH) P 16,709
(Cite as: 260 F.Supp.2d 931)

Other provisions in the Convention, however, limit liability depending on whether the air carrier meets certain conditions. For example, under Article 20, an air carrier "shall not be liable if he proves that he and his agents have taken all necessary measures to avoid the damage or that it was impossible for him or them to take such measures." Nor does liability attach, pursuant to Article 21, if the carrier "proves that the damage was caused by or contributed to by the negligence of the injured person * * *." Most importantly for the court's present purposes, Article 22 provides a maximum liability per passenger.

With respect to flights to or from the United States, including those at issue here, this article was superseded by the Montreal Agreement, an agreement among air carriers executed in 1966 and approved by the Civil Aeronautics Board pursuant to its authority under the Federal Aviation Act of 1958. See Order of Civil Aeronautics Board Approving Increases in Liability Limitations of Warsaw Convention and Hague Protocol, May 13, 1966 (approving Agreement CAB 18900), 31 Fed Reg 7302 (1966), *reprinted at* 49 USC § 40105 note. Pursuant to this agreement, the per passenger liability limit is currently $75,000.

But if a plaintiff establishes willful misconduct by a carrier, "Article 25 lifts the Convention's limits on liability, but the Convention remains the exclusive source for the plaintiff's remedy." *Dazo v. Globe Airport Security Servs.,* 295 F.3d 934, 940 (9th Cir.2002).

[5][6] Plaintiffs seem to misapprehend the function of Article 25 by arguing that proof of willful misconduct can be used to support a claim for punitive damages. The Convention provides no such relief. The presence of willful misconduct is relevant to determining whether the $75,000 per person liability limit applies, not whether punitive damages may be recovered. As the court has explained, the Convention supplies the exclusive remedy for personal injuries sustained during international air travel. Article 17 provides compensatory damages for those injuries. *Zicherman,* 516 U.S. at 225-26, 116 S.Ct. 629. In light of the preemptive and exclusive nature of the Convention's remedies, the court declines plaintiffs' invitation to allow claims for punitive damages to lie simply because they are not expressly precluded. See *In re Korean Air Lines Disaster of Sept. 1,*

*1983,* 932 F.2d 1475, 1479-81, 1484-90 (D.C.Cir.1991) (vacating punitive damages award; holding that the Warsaw Convention does not allow recovery of punitive damages), *cert denied,* 502 U.S. 994, 112 S.Ct. 616, 116 L.Ed.2d 638 (1991).

Plaintiffs' sole argument in defense of their punitive damages claim is that the *940 Ninth Circuit has not expressly held that punitive damages are barred under the Convention. See Pls Opp (02-1693: Doc # 17), at 24-25. But the Northern District case on which plaintiffs rely, *In re Air Crash Off Point Mugu, California on January 30, 2000,* 145 F Supp 2d 1156, 1162 (N.D.Cal.2001), severely undermines plaintiffs' position. In that case, Judge Legge cited nine cases, including the above-cited *Korean Air Lines* case and a Second Circuit case in which a petition for writ of certiorari was similarly denied, *In re Air Disaster at Lockerbie, Scotland on Dec. 21, 1988,* 928 F.2d 1267, 1284 (2d Cir.1991), *cert denied,* 502 U.S. 920, 112 S.Ct. 331, 116 L.Ed.2d 272 (1991), to conclude that "this court has no reason to believe that, in the face of this overwhelming body of law, the Ninth Circuit's decision would be any different." 145 F.Supp.2d at 1161-62. For the reasons delineated above, the court concludes that plaintiffs' punitive damages claims must be DISMISSED WITH PREJUDICE.

D

Finally, the court considers whether to dismiss Dobler's claims for loss of consortium and negligent infliction of emotional distress in the *Miller* case with prejudice. In plaintiffs' opposition, Dobler concedes that his claim for negligent infliction of emotional distress cannot be sustained. See Pls Opp (02-1693: Doc # 17), at 21. Accordingly, the court DISMISSES this claim.

Turning to Dobler's remaining derivative claim, for loss of consortium, the court begins by noting that Article 1 of the Convention provides that it applies "to all international transportation of persons, baggage, or goods performed by aircraft for hire." 49 Stat 3000.

[7] Contrary to plaintiffs' assertion, the Convention's preemptive range is not limited solely to claims by the international traveler. Instead, the Convention's "cardinal purpose," as observed by the Supreme Court and recited earlier in this order, is to

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

260 F.Supp.2d 931
Prod.Liab.Rep. (CCH) P 16,709
**(Cite as: 260 F.Supp.2d 931)**

achieve uniformity of rules governing claims arising from international air transportation generally. *Tseng*, 525 U.S. at 169, 119 S.Ct. 662. Thus, the Convention extends to claims by non-passengers based on events during international air travel. Even Article 17, which provides the exclusive remedy for personal injuries under the Convention, delineates liability in universal terms and not merely in terms personal to the passenger. See *Diaz Lugo v. American Airlines, Inc.,* 686 F.Supp. 373, 376-77 (D.P.R.1988) (allowing damages for loss of consortium by non-passenger under Article 17 but rejecting all other local claims).

Dobler bases his loss of consortium claim on the "negligence of the defendants". *Miller* TAC (02-1693: Doc # 10), ¶ 32. While Dobler does not elaborate, it is clear that his claim is premised on alleged negligence occurring during the operation of the flight. See *Id.* (incorporating the preceding allegations in the TAC). As a result, Dobler's state law claim falls within the scope of, and is preempted by, the Convention.

But because Article 17 does not exclude claims not brought by the passenger, Dobler may very well be able to bring suit under the Convention and assert, as a basis for damages, the value of his loss of consortium claim. See *Zicherman,* 516 U.S. at 225, 229, 116 S.Ct. 629 (discussing division of damages among eligible claimants).

Only one of the authorities cited by plaintiffs has apparently upheld a loss of consortium claim separate from liability under the Convention, and the court finds that case unpersuasive for the reasons discussed below. See *Haldimann* **\*941**v. *Delta Airlines, Inc.,* 168 F.3d 1324, 1324 (D.C.Cir.1999) (precise issue not presented on appeal; affirming partial summary judgment that flights at issue fell within the Convention); *Terrafranca v. Virgin Atlantic Airways, Ltd.,* 151 F.3d 108, 109 (3d Cir.1998) (did not reach precise issue because court affirmed summary judgment in favor of defendant); *Alvarez v. American Airlines, Inc.,* 1999 WL 691922, at \*5-6 (S.D.N.Y.1999) (did not reach precise issue because the court dismissed loss of consortium claim).

In *Blansett,* the court did not dismiss the loss of consortium claim, but that court appears to have read *Zicherman* 's language concerning the

Convention's "pass-through" aspect too broadly. The *Blansett* court "interpret[ed] *Zicherman* to permit non-passenger plaintiffs to bring any claims otherwise allowed under the applicable law," but failed to limit its application of *Zicherman* to the issue of determining legally cognizable damages under the Convention, the central issue before the Supreme Court in that case. See 204 F.Supp.2d 999, 1002 (S.D.Tex.2002). In addition, the *Blansett* court, without discussion, limited the Convention's scope to passengers only. As discussed, this court comes to a different conclusion.

Insofar as Dobler's loss of consortium claim is asserted as a cause of action apart from the Convention, it is preempted. The court therefore DISMISSES Dobler's loss of consortium claim WITH PREJUDICE. Dobler, however, is given leave to amend to allege his claim under treaty liability on or before April 25, 2003.

III

In sum, the court GRANTS in part and DENIES in part defendants' motions to dismiss with prejudice (02-1693: Doc # 11; 02-2997: Doc # 8). Specifically, the court DISMISSES plaintiffs' amended complaints but WITHOUT PREJUDICE to claims asserted under the Warsaw Convention. Insofar as plaintiffs assert claims separate from the Convention, the court DISMISSES those claims WITH PREJUDICE. Plaintiffs may serve and file amended complaints (a fourth amended complaint in *Miller* and a third amended complaint in *Wylie* ) on or before April 25, 2003.

IT IS SO ORDERED.

260 F.Supp.2d 931, Prod.Liab.Rep. (CCH) P 16,709

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

ORIGINAL
FILED

ON MAR 13 PM 2:23

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

LAW OFFICES OF
**O'REILLY, COLLINS & DANKO**
A PROFESSIONAL CORPORATION
TERRY O'REILLY 045712
JAMES P. COLLINS 097266
MICHAEL S. DANKO 111359
GARY L. SIMMS 096239
NIALL G. YAMANE 127899
GEORGE W. ELLARD 158195
STEPHEN J. PURTILL 100102
KRISTINE K. MEREDITH 158243
1900 O'FARRELL STREET, SUITE 360
SAN MATEO, CALIFORNIA 94403
TELEPHONE (650) 358-5901
FACSIMILE (650) 358-2575

E-filing

ATTORNEY FOR PLAINTIFF

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

PJH

TAUFIK RIDANI and JANA FAWN MILLS,

      Plaintiffs,

vs.

NORTHWEST AIRLINES, INC., a corporation, KLM ROYAL DUTCH AIRLINES, a corporation, THE BOEING COMPANY, a corporation and DOES 1-5,

      Defendants.

**C  04      1092**  ARE

Case No.:

**COMPLAINT FOR DAMAGES**

**DEMAND FOR JURY TRIAL**

Come now plaintiffs and complain of defendants as follows:

**EXHIBIT  B**

-1-

COMPLAINT FOR DAMAGES
DEMAND FOR JURY TRIAL

C)   For punitive damages according to proof;

D)   For prejudgment interest;

E)   For costs for suit; and

F)   For such other and further relief as the Court may deem proper.

DATED:  March 18, 2004                          O'REILLY, COLLINS & DANKO


                                    By: _____
                                          STEPHEN J. PURTILL
                                          MICHAEL S. DANKO
                                          Attorneys for Plaintiffs


## PLAINTIFF'S DEMAND FOR JURY TRIAL


Plaintiffs hereby demand a trial by jury.


DATED:  March 18, 2004                          O'REILLY, COLLINS & DANKO


                                    By: _____
                                          STEPHEN J. PURTILL
                                          MICHAEL S. DANKO
                                          Attorneys for Plaintiffs

COMPLAINT FOR DAMAGES
DEMAND FOR JURY TRIAL

LAW OFFICES OF
.Y. COLLINS & DANKO
ESIONAL CORPORATION
ARABLL STREET, SUITE 360
N MATEO, CA 94403
EPHONE (650) 358-5901

*Taufik Ridani, et al., v. Northwest Airlines, Inc., et al.*
USDC Northern District San Francisco Division, Case No. C 04-1092 PJH ARB

## PROOF OF SERVICE

[C.C.P.§2008, F.R.C.P. Rule 5]

I, the undersigned, state:

I am a citizen of the United States.  My business address is 255 California Street, Suite 1300, San Francisco, California 94111.  I am employed in the City and County of San Francisco.  I am over the age of eighteen years and not a party to this action.  On the date set forth below, I served the foregoing documents described as follows:

**NOTICE OF MOTION AND MOTION OF DEFENDANT NORTHWEST AIRLINES, INC. TO DISMISS FOR FAILURE TO STATE A CLAIM**

on the following person(s) in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

>Stephen J. Purtill, Esq.
>Michael S. Danko, Esq.
>O'REILLY, COLLINS & DANKO
>1900 O'Farrell Street, Suite 360
>San Mateo, CA 94403

[X]   BY FIRST CLASS MAIL – I am readily familiar with my firm's practice for collection and processing of correspondence for mailing with the United States Postal Service, to wit, that correspondence will be deposited with the United States Postal Service this same day in the ordinary course of business.  I sealed said envelope and placed it for collection and mailing this date, following ordinary business practices.

[ ]   BY PERSONAL SERVICE – Following ordinary business practices, I caused to be served, by hand delivery, such envelope(s) by hand this date to the offices of the addressee(s).

[ ]   BY OVERNIGHT MAIL – I caused such envelope to be delivered by a commercial carrier service for overnight delivery to the office(s) of the addressee(s).

[ ]   BY FACSIMILE – I caused said document to be transmitted by Facsimile machine to the number indicated after the address(es) noted above.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed this date in San Francisco, California.

Dated:  April 15, 2004

_____
Sandy E'Bell