Scott R. Mosko (State Bar No. 106070)
scott.mosko@finnegan.com
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
Stanford Research Park
3300 Hillview Avenue
Palo Alto, California 94304
Telephone:   (650) 849-6600
Facsimile:    (650) 849-6666

Attorneys for Defendants
ConnectU LLC, Pacific Northwest
Software, Inc., Winston Williams, and
Wayne Chang

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FACEBOOK, INC. and MARK ZUCKERBERG,<br><br>              Plaintiffs,<br><br>              v.<br><br>CONNECTU LLC, (now known as CONNECTU INC.), ET AL.<br><br>              Defendants. | CASE NO. C 07-01389 RS<br><br>**DECLARATION OF CAMERON WINKLEVOSS IN SUPPORT OF DEFENDANTS CONNECTU LLC, PACIFIC NORTHWEST SOFTWARE, INC., WINSTON WILLIAMS, AND WAYNE CHANG'S OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |

I, CAMERON WINKLEVOSS, declare as follows:

1. I have personal knowledge of the facts stated herein and if called as a witness, could and would competently testify thereto.

2. In early 2004, ConnectU used the login information and passwords of Facebook members to log into the Facebook website.

3. The Facebook members voluntarily provided their login information and passwords to ConnectU.

4. In *every instance* when ConnectU manually accessed the Facebook website and a Facebook member's facebook.com account, ConnectU had that member's explicit permission to: 1) use the member's login name and password; and 2) access the member's account.

5. When using a friend's facebook.com login information, ConnectU entered only the portions of the Facebook website that would have been available to that member had he or she personally logged in. ConnectU never attempted to view or otherwise access any information on the Facebook website that was not available to either the Facebook member whose login information was being used, or to the public at large.

6. ConnectU sent invitation emails to join connectu.com to other students at the Facebook members' schools.

7. These invitation emails were sent only to ".edu"–email addresses with domain names owned and operated by educational institutions, (e.g., [name]@harvard.edu).

8. All email invitations were sent outside of, and completely independent of, the facebook.com website. None of the invitation emails were sent to facebook.com email addresses, (e.g., [name]@facebook.com), to facebook.com servers, or to facebook.com members' inboxes on the facebook.com website.

9. When ConnectU was given permission by a Facebook member to send invitation emails to students at the member's school, all of the emails included the name of the Facebook member in the header information.

10. If, after receiving an invitation email, the Facebook member replied to the email, an email would be sent directly to ConnectU.

11.     All invitation emails also contained an accessible hyperlink to ConnectU's website, (i.e., http://www.connectu.com).

12.     Once a person became a connectu.com member, if that person was also a member of facebook.com, ConnectU developed a process that would access the member's Facebook account at the request of the member. This process is commonly referred to as Social Butterfly/Importer.

13.     Social Butterfly/Importer allowed connectu.com members to import their facebook.com profiles into connectu.com.

14.     During the end of 2004 and the beginning of 2005, ConnectU accessed the accounts of Facebook members via Social Butterfly only if the member voluntarily entered his user login and password. ConnectU never accessed a Facebook member's account without the permission of the Facebook member.

15.     Using Social Butterfly/Importer, ConnectU sent invitation emails to a Facebook member's friends only at the request of the Facebook member. ConnectU never sent invitation emails to a Facebook member's friends without permission of the Facebook member. Again, these invitations were sent outside of, and independent of, the facebook.com website and facebook.com servers.

16.     When ConnectU sent invitation emails to friends of a Facebook member at the request of the member, all of the emails included the name of the Facebook member in the header information.

17.     At some point, ConnectU employed publically accessible URLs which provided email addresses of Facebook members. These URLs were available to the general public and did not require special privileges or authentication to access. Anyone with an Internet connection and a web browser could view the email addresses by using these URLs.

1

2  18.  I had no knowledge that Plaintiffs alleged that any of the conduct listed above was in

3  violation of the CAN-SPAM Act, 15 U.S.C. § 7701, et seq., until Plaintiffs filed this lawsuit.

4

5  I declare under penalty of perjury under the laws of the United States of America that the

6  foregoing is true and correct. This declaration is executed on the _6_ day of February, 2008.

7

8  _____
   Cameron Winklevoss