SEAN A. LINCOLN (State Bar No. 136387)
  salincoln@orrick.com
I. NEEL CHATTERJEE (State Bar No. 173985)
  nchatterjee@orrick.com
MONTE COOPER (State Bar No. 196746)
  mcooper@orrick.com
THERESA A. SUTTON (State Bar No. 211857)
  tsutton@orrick.com
YVONNE P. GREER (State Bar No. 214072)
  ygreer@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025
Telephone:   650-614-7400
Facsimile:   650-614-7401

Attorneys for Plaintiffs
THE FACEBOOK, INC. and MARK ZUCKERBERG

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THE FACEBOOK, INC. and MARK ZUCKERBERG,<br><br>Plaintiffs,<br><br>v.<br><br>CONNECTU, INC. (formerly known as CONNECTU, LLC), PACIFIC NORTHWEST SOFTWARE, INC., WINSTON WILLIAMS, WAYNE CHANG, and DAVID GUCWA,<br><br>Defendants. | Case No.  5:07-CV-01389-RS<br><br>**REPLY IN SUPPORT OF MOTION TO COMPEL COMPLIANCE BY DEFENDANTS PACIFIC NORTHWEST SOFTWARE AND WINSTON WILLIAMS WITH ORDER GRANTING MOTION TO COMPEL SUPPLEMENTAL INTERROGATORY RESPONSES**<br><br>Date:     February 27, 2008<br>Time:    9:30 am<br>Judge:   Honorable Richard Seeborg |

**TABLE OF CONTENTS**

| | | | Page |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | AN EVIDENTIARY FINDING IS WARRANTED BY PNS AND WILLIAMS' WITHHOLDING AND SPOLIATION OF INFORMATION RESPONSIVE TO INTERROGATORY NO. 4 | | 2 |
| | A. | PNS And Williams Improperly Withheld Responsive Information Concerning Spam E-mails They Sent To Facebook Users | 2 |
| | B. | PNS And Williams Admit They Destroyed Responsive Information, Which They Were Under A Duty To Preserve | 5 |
| | C. | An Evidentiary Finding Is Necessary To Address Prejudice To Plaintiffs From Violations Of Order And Spoliation | 8 |
| III. | ALTERNATIVELY, THE COURT SHOULD ORDER IMAGING AND COMPEL RESPONSES TO THE INTERROGATORIES | | 10 |
| | A. | Imaging Is Necessary To Evaluate Spoliation And Retrieve Remaining Information Responsive To Interrogatory No. 4 | 10 |
| | B. | Defendants' Refusal To Provide A Response To Interrogatory No. 3 Necessitates Imaging Of All Of Defendants' Devices | 13 |
| | C. | PNS and Williams Should Be Ordered To Respond To The Interrogatories | 14 |
| IV. | CONCLUSION | | 15 |

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Ameriwood Indus., Inc.* v. *Liberman*,
  Case No. 4:06CV524-DJS, 2006 WL. 3825291 (E.D.Mo. Dec. 27, 2006)................ 10, 11, 12

*Antioch Co.* v. *Scrapbook Borders, Inc.*,
  210 F.R.D. 645 (D. Minn. 2002) ............................................................................... 10, 12

*Barsoum* v. *NYC Hous. Auth.*,
  202 F.R.D. 396 (S.D.N.Y. 2001) ....................................................................................... 5

*Blinzler* v. *Marriott Int'l, Inc.*,
  81 F.3d 1148 (1st Cir. 1996) ............................................................................................ 8

*Chan v. Triple 8 Palace, Inc.*, No. 03CV6048 (GEL)(JCF), 2005 WL 1925579, *7
  (S.D.N.Y. Aug. 11, 2005) .................................................................................................. 6

*Fennell* v. *First Step Designs*,
  83 F.3d 526 (1st Cir. 1996) ..................................................................................... 8, 10, 12

*Frees, Inc.* v. *McMillian*,
  Case No. 05-1979, 2007 WL. 184889 (W.D.La. Jan. 22, 2007) ...................................... 11, 12

*Gibson* v. *Chrysler Corp.*,
  261 F.3d 927 (9th Cir. 2001) ............................................................................................ 8

*Hilao* v. *Estate of Marcos*,
  103 F.3d 762 (9th Cir. 1996) ............................................................................................ 9

*Housing Rights Ctr.* v. *Sterling, No. CV 03-859 DSF*,
  2005 WL. 3320739 (C.D. Cal. Mar. 2, 2005) ................................................................. 5, 6

*In re Napster, Inc. Copyright Litig.*,
  462 F. Supp. 2d 1060 (N.D. Cal. 2006) ....................................................................... 5, 6, 9

*Krumwiede* v. *Brighton Assoc., LLC.*,
  2006 WL. 1308629 (N.D. Cal. 2006) ............................................................................... 5

*Nat'l Ass'n of Radiation Survivors* v. *Turnage*,
  115 F.R.D. 543 (N.D. Cal. 1987) ...................................................................................... 5

*Nation-Wide Check Corp.* v. *Forest Hills Distribs., Inc.*,
  692 F.2d 214 (1st Cir. 1982) ............................................................................................ 8

*Pennar Software, Case No. 01-01734-EDL*,
  2001 WL. 1319162 (N.D. Cal. Oct. 25, 2001) .................................................................. 9

*Physicians Interactive* v. *Lathian Sys. Inc., Case No. CA 03-1193-A*,
  2003 WL. 23018270 (E.D. Va. Dec. 5, 2003) ................................................................. 11

# TABLE OF AUTHORITIES
**Page**

*Playboy Enterprises, Inc.* v. *Welles*,
 60 F. Supp. 2d 1050 (S.D. Cal. 1999) .................................................................... 10, 12

*Residential Funding Corp.* v. *DeGeorge Fin. Corp.*,
 306 F.3d 99 (2d Cir. 2002) .......................................................................................... 6

*Simon Property Group* v. *MySimon, Inc.*,
 194 F.R.D. 639 (S.D. Ind. 2000) ................................................................................ 11

*Zubulake* v. *UBS Warburg LLC*,
 229 F.R.D. 422 (S.D.N.Y. 2004) ................................................................................. 5

**FEDERAL STATUTES**

Fed. R. Civ. P. 26 ............................................................................................................ 12

Fed. R. Civ. P. 33(d) ....................................................................................................... 11

Fed. R. Civ. P. 34 ..................................................................................................... 11, 12

Fed. R. Civ. P. 37(a)(2)(B) ............................................................................................. 11

Fed. R. Civ. P. 56(f) ................................................................................................. 11, 12

15. U.S.C. § 7704 (A)(1) .................................................................................................. 6

15. U.S.C. § 7704 (B)(1) .................................................................................................. 6

# I. **INTRODUCTION**

In their opposition papers, Pacific Northwest Software ("PNS") and Winston Williams ("Williams") admit to the following: (1) destruction of data showing the magnitude of their spamming activities and (2) withholding of information responsive to the Court's December 12, 2007 Order by submitting misleading declarations claiming they cannot answer the interrogatories at all. These actions warrant an evidentiary finding that PNS and Williams sent three spam e-mails to each of three million Facebook users as of July 1, 2005. No other remedy can sufficiently address the prejudice to Plaintiffs as a result of these activities. In the alternative, Plaintiffs request an order requiring PNS and Williams to provide all of their devices for imaging and recovery of any remaining responsive information and analysis of the extent and timing of their spoliation, and to comply with the Order compelling them (for a second time) to respond to the interrogatories.

PNS and Williams' Opposition and the February 6, 2008, Williams declaration ("Williams Declaration") admit that they possess records reflecting responsive information. Opp'n [Doc. 289] at 7:28-8:1. Their reason for not providing the information is that their records are "inaccurate, incomplete or do not exist[,]" thus they cannot provide a perfect tally of e-mails from a "perfect database." Williams Decl. [Doc. 290] at ¶ 13; Opp'n at 7:26-28. This response is evasive. The information is responsive and should be provided. The fact that defendants do not trust their own data is not a basis for withholding it.[1] Defendants should provide a response consistent with the rules of discovery.

In addition, the Williams Declaration is troubling for several reasons. First, the response appears inconsistent with the earlier Williams declarations. To the extent they are not directly contradictory, the previous declarations are misleading. Second, the Williams Declaration admits defendants deleted responsive data after litigation between ConnectU and Facebook was underway. Williams Decl. at ¶¶ 7-8. This spoliation violated defendants' duty to preserve such data.

---

[1] The data is also responsive to Rule 34 requests for production served to PNS and Williams. *See* fn 3.

PNS and Williams are completely silent as to Plaintiffs' evidence that defendants maintained lists of the IP addresses of proxy servers used to access the Facebook website, as requested by Interrogatory No. 3. They do not explain what happened to these lists, which were used by defendants' software tools Importer and Social Butterfly. The Williams Declaration also admits that the three IP addresses provided in response to Interrogatory No. 3 were not used during defendants' hacking and spamming efforts and that Williams omitted the correct IP addresses from his response. *Id*. at ¶ 3. PNS and Williams continue to refuse to identify the specific devices they used to access the Facebook website by protesting that they do not recall the IP addresses of those devices. Again, this all-or-nothing approach is improper. PNS and Williams make no attempt to identify the relevant devices by any other means such as URL address or a description of each machine. The Williams Declaration also disclaims any affiliation with the IP address that ConnectU identified as Williams', yet fails to provide his real IP address despite the undisputed fact that Williams used his personal devices to operate defendants' software tools. *Id*. at ¶ 4.

The discovery gamesmanship about these two simple discovery requests should come to an end. Plaintiffs should not be forced to engage in the substantial effort they have lodged in order to get simple answers to simple questions. An evidentiary sanction or imaging is appropriate.

II. **AN EVIDENTIARY FINDING IS WARRANTED BY PNS AND WILLIAMS' WITHHOLDING AND SPOLIATION OF INFORMATION RESPONSIVE TO INTERROGATORY NO. 4**

   A. **PNS And Williams Improperly Withheld Responsive Information Concerning Spam E-mails They Sent To Facebook Users**

The Williams Declaration appears to contradict defendants' previous declarations attesting that they did not possess records from which they could generate any response to Interrogatory No. 4:

///
///
///

OHS West:260382212.5    - 2 -    REPLY ISO MOTION TO COMPEL COMPLIANCE
5:07-CV-01389-RS

| Source | Representation |
|---|---|
| November 7, 2007 Williams declaration<br><br>[Shiflett Decl. Ex. 6] | "I am not aware of any other information created at PNS or otherwise, that would provide further information than what was provided in my responses to Interrogatory Nos. 3 or 4." |
| December 21, 2007 PNS declaration<br><br>[Shiflett Decl. Ex. 9] | "The computer records currently in PNS's possession do not contain information that will allow me, on behalf of PNS to further respond to Interrogatory Nos. 3 and 4." |
| January 2, 2008 Williams declaration<br><br>[Shiflett Decl. Ex. 2] | "I am confident that I have reviewed all available information that exists that would provide me or anyone else with the ability to further respond to Interrogatory Nos. 3 & 4. . . . None of the documents, files, IP addresses, URLs described above, or other information about which I am aware will permit me to provide further responses to Interrogatory Nos. 3 or 4." |
| February 6, 2008 Williams Declaration<br><br>[Doc. 290] (emphasis added) | "[Social Butterfly] was not specifically designed to capture and retain <u>all</u> of the information regarding downloads and emails sent. . . . In order to satisfy memory needs, data tables were often deleted and the information contained in these tables cannot be recovered. . . . The code was stored with subversion software, but not <u>all</u> changes made to the Social Butterfly code would be captured by the subversion software. . . . The incomplete subversion code would not allow the <u>entire</u> code to be re-created and would not allow anyone to determine the number of email invitations sent to Facebook users. . . . I am not able to calculate the number of email invitations sent to Facebook users because <u>the required records are inaccurate, incomplete, or do not exist</u>." |

The Williams Declaration admits that PNS and Williams do possess records evidencing some e-mails they sent to Facebook users. Indeed, documents produced by co-defendant Wayne Chang on January 31, 2008 reveal that defendants made back-up copies of <u>all</u> of their databases, code and other files <u>every night</u>. *See* Declaration of I. Neel Chatterjee In Support Of Reply In Support

Of Motion To Compel Compliance By Defendants Pacific Northwest Software And Winston Williams With Order Granting Motion To Compel Supplemental Interrogatory Responses ("Chatterjee Decl."), Ex. 1 at CHANG-0001376 & Ex. 2 at CHANG-0001389.

PNS and Williams also do not dispute the following evidence presented by Plaintiffs showing that their actions generated myriad responsive records:

- Defendants' use of Importer and Social Butterfly software tools created database entries, log files and other records that recorded information harvested from Facebook, as well as the number, date and time of spam e-mails sent to some or all Facebook users (Mot. at 7:27-8:17; Shiflett Decl. ¶¶ 36-40);
- Defendants' use of Subversion version control software preserved backup files of versions of defendants' software tools (Mot. at 8:17-19; Shiflett Decl. ¶ 41);
- Defendants additionally created backup copies of their data (Mot. at 8, fn 2);
- Defendants used the statistics generated by the databases to report to ConnectU on the number of Facebook profiles imported and e-mails sent (Mot. at 8:20-21; Shiflett Decl. Ex. 2 at CUCA02972); and
- Responsive records remain in PNS and/or Williams' possession that show at least some of the spam e-mails sent to Facebook users (Mot. at 8:27-9:2; Shiflett Decl. ¶ 13).

No longer able to deny the existence of the myriad responsive records created by their hacking and spamming, PNS and Williams now admit that they possess some such records. *See, e.g.*, Opp'n at 7:26-8:1; Williams Decl. ¶ 13. They provide a litany of reasons, however, why their records are incomplete or inaccurate and therefore, not "responsive." *See* Opp'n at 6:26-7:8; Williams Decl. ¶¶ 6-13. This is a semantic game, because <u>any</u> information in defendants' possession related to the number of spam e-mails sent to Facebook users is responsive and should be provided. Defendants' imperfect recordkeeping practices, such as sporadic use of the Subversion version control software, does not render undiscoverable the records defendants do have. Opp'n at 7:9-18; Williams Decl. ¶¶ 10-11. The Opposition admits the existence of "incomplete databases" that should contain partially responsive information. Opp'n at 7:28-8:1.

These databases should have been produced and/or used to generate a response to Interrogatory No. 4. Each side can then test the quality of that evidence.

PNS' and Williams' withholding of responsive information on the basis that such information is imperfect is a violation of the December 12, 2007 Order. The Order directed PNS and Williams to "undertake reasonable efforts to determine whether [they] possess[] additional information responsive to these interrogatories . . ." Shiflett Decl. Ex. 7 at 4:4-6. Neither the Order, nor any discovery rule, limits PNS' and Williams' obligation to respond to an interrogatory to "perfect" information. PNS and Williams were obligated to provide either a narrative response or documents regarding the spam e-mails reflected in the records they do have.

### B. PNS And Williams Admit They Destroyed Responsive Information, Which They Were Under A Duty To Preserve

The law concerning sanctioning a party for failure to preserve relevant evidence is relatively well-established. *See, e.g., In re Napster, Inc. Copyright Litig.*, 462 F.Supp.2d 1060 (N.D. Cal. 2006). As soon as "a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant." *Id.* at 1067. The obligation to retain discoverable materials "is an affirmative one; it requires that the . . . corporate officers having notice of discovery obligations communicate those obligations" to those under its control and in possession of discoverable materials. *Nat'l Ass'n of Radiation Survivors v. Turnage,* 115 F.R.D. 543, 557-58 (N.D. Cal. 1987). To ensure that destruction does not occur, a litigation hold must be instituted as soon as "a party reasonably anticipates litigation." *In re Napster Copyright Litig.*, 462 F.Supp.2d at 1070 (*quoting Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003)); *see also Zubulake v.UBS Warburg LLC*, 229 F.R.D. 422, 432 (S.D.N.Y. 2004); *Housing Rights Ctr. v. Sterling*, No. CV 03-859 DSF, 2005 WL 3320739, *2 (C.D. Cal. Mar. 2, 2005). Courts may impose a range of potential sanctions for violations of the duty to preserve. *Barsoum v. NYC Hous. Auth.*, 202 F.R.D. 396, 400 (S.D.N.Y. 2001). For the purpose of sanctions, fault can be evidenced by negligent actions or a flagrant disregard of the duty to preserve. *Krumwiede v. Brighton Assoc., LLC.*, 2006 WL 1308629 at *9 (N.D. Cal. 2006). District courts may impose sanctions against a party that merely had notice that the destroyed

evidence was potentially relevant to litigation. *In re Napster Copyright Litig.*, 462 F.Supp.2d at 1066. Failure to institute any litigation hold at the outset of litigation in and of itself constitutes gross negligence. *Chan v. Triple 8 Palace, Inc.*, No. 03CV6048 (GEL)(JCF), 2005 WL 1925579, *7 (S.D.N.Y. Aug. 11, 2005). Even absent gross negligence, prejudice resulting from the failure to preserve evidence supports imposition of serious sanctions such as an adverse inference instruction. *See, e.g., Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002).

Defendants' Opposition and the Williams Declaration admit that defendants destroyed records concerning spam e-mails sent to Facebook users. Indeed, defendants base their professed inability to respond to Interrogatory No. 4 in part on this destruction. Opp'n at 7:1-4; Williams Decl. ¶¶ 7-8. PNS and Williams do not dispute that responsive database records generally cannot be destroyed absent some deliberate action. *See* Mot. at 8:25-26; Shiflett Decl. ¶ 47. The Williams Declaration admits that defendants took affirmative actions that deleted "data tables" and other information stored by operation of their Social Butterfly program. Williams Decl. ¶¶ 6-8.

As agents of ConnectU in this and the Massachusetts litigation, and as parties to this litigation, PNS and Williams were under a duty to preserve information concerning the spam e-mails they sent to Facebook users. PNS' and Williams' deletion of material responsive records violated their duty. All of PNS' and Williams' actions were done at the direction of the ConnectU principals, and at all relevant times ConnectU, PNS and Williams were under a duty to preserve the responsive records of PNS and Williams:

1. By August 2004, ConnectU was on notice that the hacking and spamming for which they retained PNS and Williams comprised a potential violation of the CAN-SPAM Act. *See* Plaintiffs' Motion for Partial Summary Judgment Re: Defendants' Liability Pursuant to California Penal Code Section 502(C) and 15. U.S.C. § 7704 (A)(1) and 15. U.S.C. § 7704 (B)(1) [Doc. 251] ("MSJ") at 5:22-27; Declaration of Monte M.F. Cooper in Support of Plaintiffs' Motion for Partial Summary Judgment [Doc. 252] ("MSJ Cooper Decl.") Ex. 29; Ex. 27; Ex. 21 at 152:16-154:2, 156:5-157:21.

2. The Massachusetts action filed by ConnectU in September 2004 concerned, among other things, issues regarding the business activities between the two websites that ConnectU said were competitive. The hacking and spamming records were at all times potentially relevant to the claims and defenses asserted in Massachusetts.

3. Wayne Chang, who worked for PNS, was aware of the Massachussetts action as of at least January 11, 2005. *See* Chatterjee Decl., Ex. 3.

4. On April 12, 2005, Williams posted an online review of Facebook, evidencing his knowledge of the Massachusetts action: "This site is a complete rip-off of ConnectU. I can't believe they haven't been shut down yet. The guy was actually working for ConnectU and stole the source code. Don't use this site!" Chatterjee Decl. Ex. 4.

5. PNS and Williams had actual knowledge that their hacking and spamming activities were illegal. As discussed in Plaintiffs' MSJ, on February 17 and May 25, 2005, PNS and Williams received communications concerning such illegality. *See* MSJ at 23:8-16; MSJ Cooper Decl. Ex. 45; Ex. 34 at PNS000015.

6. ConnectU had notice as of at least August 9, 2005, that Plaintiffs intended to file this action, which they did on August 17, 2005. *See* Chatterjee Decl. at ¶¶ 11-12.

7. In October 2005, Williams was subpoenaed for deposition in the Massachusetts action, which was communicated to John Taves and Wayne Chang of PNS. *See id.* Ex. 5 at PNS01136.

8. Williams and PNS were added as parties to this action on February 23, 2007.

The Williams Declaration does not state when defendants deleted the responsive "data tables" and other information. The evidence indicates, however, that the "data tables" evidencing e-mails sent to Facebook users were destroyed after defendants' duty to preserve arose. PNS' billing records show that the Importer and Social Butterfly tools were operated to create responsive records after the Massachusetts action was filed and after Williams and PNS were on notice of the illegality of their actions, through at least April 2005. *See* Cooper Decl. Ex. 13 at PNS01769 (04/07/2005 Williams entry). Defendants' actions also indicate that responsive records existed in January 2006, long after this action was filed. Specifically, while still

employed by PNS in January 2006, Williams wrote a software script to calculate from defendants' database files the number of spam e-mails sent to Facebook users in California in 2005. *See* Cooper Decl. Ex. 12 at PNS0002119 & Ex. 13 at PNS01774 (01/02/2006-01/31/2006 Williams entries). Although defendants now claim that Plaintiffs cannot show that this calculation was possible or ever performed, Williams' actions indicate that responsive database information (which he had access to) did exist at that time. *See* Opp'n at 7:19-25. In addition, Defendants' Social Butterfly tool appears to have been available in some capacity on the ConnectU.com website as late as February 2006. *See* Cooper Decl. Ex. 5 at CUCA02976.

### C. An Evidentiary Finding Is Necessary To Address Prejudice To Plaintiffs From Violations Of Order And Spoliation

PNS and Williams agree that the "Court is vested with the authority to enter an adverse factual finding when a party violates a court order." Opp'n at 9:13-14. Defendants do not attempt to distinguish the cases Plaintiffs cite, and instead incorrectly state that "Facebook fails to cite any authority that would come close to comparing to the type of sanction they seek here." *Id*. at 9:14-15. To the contrary, in the Massachusetts action, ConnectU argued in support of its motion to compel imaging of Plaintiffs' devices that the "unexplained nonexistence [of software code], coupled with a duty to preserve evidence, supports an adverse inference as to what their contents would prove if they existed." Chatterjee Decl. Ex. 6 at 9 (*citing Nation-Wide Check Corp. v. Forest Hills Distribs., Inc.*, 692 F.2d 214, 217-18 (1st Cir. 1982); *Blinzler v. Marriott Int'l, Inc.*, 81 F.3d 1148, 1158 (1st Cir. 1996).[2]

Defendants make no effort to distinguish *Gibson v. Chrysler Corp.*, 261 F.3d 927, 931-932, 948 (9th Cir. 2001), a case cited in Plaintiffs' opening brief. Mot. at 13:18-25. In *Gibson*, the Ninth Circuit entered a factual finding as a sanction against a party that failed to respond to discovery requests concerning the amount in controversy for the purpose of establishing federal jurisdiction. No order compelling discovery had been granted. *Id*. Here, PNS' and Williams'

---

[2] Although Plaintiffs initially opposed ConnectU's motion on the basis that ConnectU failed to identify facts showing a "particularized likelihood" of finding discoverable information on Plaintiffs' devices, Plaintiffs agreed to the imaging. *Fennell v. First Step Designs*, 83 F.3d 526, 533 (1st Cir. 1996).

1  conduct is more egregious than that in *Gibson*, as they are squarely in violation of the Court's
2  Order. Contrary to the stated innocence in their Opposition, for the reasons discussed above,
3  defendants violated the Order by serving false and misleading declarations and withholding
4  responsive information they were compelled to provide. *See* Opp'n at 9:15-20.

5  The spoliation revealed in the PNS and Williams Opposition and Williams Declaration
6  further supports entry of an adverse factual finding concerning the number of spam e-mails sent
7  to Facebook users. *See, e.g., Pennar Software*, Case No. 01-01734-EDL, 2001 WL 1319162, *5
8  (N.D. Cal. Oct. 25, 2001) (adverse inference may be "drawn against the party that destroyed the
9  evidence"); *see also In re Napster, Inc. Copyright Litig.*, 462 F.Supp.2d 1060. The Williams
10 Declaration states that the destroyed information "cannot be recovered." Williams Decl. ¶¶ 7-8.
11 If so, then the imaging requested by Plaintiffs as alternative relief will be futile to recover deleted
12 files. Moreover, Defendants' failure to preserve the data evidencing the number of spam e-mails
13 sent to Facebook users severely prejudices Plaintiffs' ability to prove statutory damages for
14 defendants' violation of the CAN-SPAM Act. Mot. at 14:2-4. No other remedy can sufficiently
15 ameliorate this prejudice. PNS and Williams do not dispute the importance of the e-mail data to
16 the issue of damages for their CAN-SPAM violations. Defendants' claim that entry of an adverse
17 inference "is unwarranted, and would severely prejudice Defendants" must be rejected. Opp'n at
18 9:21-23. Any effects suffered by PNS and Williams by entry of an evidentiary finding is a direct
19 result of their own spoliation and willful violation of the Order.

20 Finally, PNS and Williams do not dispute that the requested finding is consistent with
21 other evidence indicating that defendants sent three spam e-mails to each of three million
22 Facebook users as of July 2005, or that such consistency favors an evidentiary finding. *See* Mot.
23 at 14:9-15:3; *see also Hilao v. Estate of Marcos*, 103 F.3d 762, 764 (9th Cir. 1996) (affirming
24 adverse factual finding that was "substantiated by evidence."). Indeed, a document produced by
25 co-defendant Wayne Chang on January 31, 2008 indicates that defendants expected to spam the
26 whole Facebook userbase and convert them to ConnectU members. *See* Chatterjee Decl. Ex. 7.

1   III. **ALTERNATIVELY, THE COURT SHOULD ORDER IMAGING AND COMPEL RESPONSES TO THE INTERROGATORIES**

As an alternative to an evidentiary finding, Plaintiffs request that the Court order PNS and Williams to provide all of their devices for imaging and analysis, and to respond to Interrogatory Nos. 3 & 4 with the information requested in Plaintiffs' Motion.

A. **Imaging Is Necessary To Evaluate Spoliation And Retrieve Remaining Information Responsive To Interrogatory No. 4**

Defendants admit that records including databases exist on Defendants' devices, which contain at least "incomplete" information evidencing the number of e-mails sent to Facebook users. *See, e.g.*, Opp'n at 7:26-8:1; Williams Decl. ¶ 13. Defendants' admission alone establishes a particularized likelihood of finding discoverable information on defendants' devices, in addition to the facts demonstrated in Plaintiffs' Motion. *See* Mot. at 11:7-18; *see also Fennell v. First Step Designs*, 83 F.3d 526, 533 (1st Cir. 1996). Defendants do not dispute that Plaintiffs have shown a particularized likelihood of finding relevant information on their devices in satisfaction of *Fennell*, nor do they dispute that the *Playboy* factors are met. Mot. at 11:7-13:12; *see also Fennell*, 83 F.3d at 533; *Playboy Enterprises, Inc. v. Welles*, 60 F. Supp. 2d 1050, 1053-54 (S.D. Cal. 1999). Imaging also is necessary because PNS and Williams persist in refusing to go on record with a description of the files that presently remain on their devices that contain any information concerning the spam e-mails sent to Facebook users. Until those files are located and preserved, they are at risk of deletion or alteration.

Plaintiffs also are entitled to analyze defendants' devices to test the assertions in defendants' Opposition and Williams Declaration concerning their deletion of relevant data. Forensic analysis may determine when and the extent to which the alleged deletions occurred, and conclude whether additional responsive information can, in fact, be recovered. *See* Williams Decl. ¶¶ 7-8; *see also Antioch Co. v. Scrapbook Borders, Inc.*, 210 F.R.D. 645, 652 (D. Minn. 2002) (ordering imaging to identify files deleted through normal use of computer); *Ameriwood Indus., Inc. v. Liberman*, Case No. 4:06CV524-DJS, 2006 WL 3825291, *3 (E.D.Mo. Dec. 27, 2006) (ordering imaging in part to determine whether party made "any effort to delete electronic

files and/or 'scrub' the computers at issue"). Defendants do not dispute that forensic imaging is necessary to recover deleted data or that imaging is warranted when information is at risk of being overwritten. *See* Mot. at 12:20-13:1. They only claim, without explanation, that their deleted files "cannot be recovered." Williams Decl. ¶¶ 7-8. Defendants cannot rely on these "self-serving statements" to avoid imaging and forensic analysis, especially in view of their previous sworn misrepresentations about whether any responsive information exists. *Frees, Inc. v. McMillian*, Case No. 05-1979, 2007 WL 184889, *2 (W.D.La. Jan. 22, 2007). Defendants also do not dispute that imaging is particularly appropriate when the devices were the instruments used to commit the wrongful acts at issue in the litigation. *Physicians Interactive v. Lathian Sys. Inc.*, Case No. CA 03-1193-A, 2003 WL 23018270 (E.D. Va. Dec. 5, 2003); *Ameriwood Indus.*, 2006 WL 3825291 at *2-5.

Defendants' sole argument in opposition to Plaintiffs' request for imaging is that the cases cited by Plaintiffs are inapposite because they concern imaging in the context of motions to compel production of documents pursuant to Rule 34 document requests, or a Rule 56(f) motion, rather than a motion to compel responses to interrogatories pursuant to Rule 33. Opp'n at 8:7-9:10. To the contrary, in *Simon Property Group* (cited by Plaintiffs and not mentioned in defendants' Opposition), the District Court ordered imaging in part to obtain information concerning deletion of files on the computers in question, which information was responsive to two interrogatories that sought detailed information concerning such deletion. *Simon Property Group v. MySimon, Inc.*, 194 F.R.D. 639, 641 (S.D. Ind. 2000).

Whether a motion to compel imaging originates from a Rule 33 or 34 discovery request is a distinction without a difference. Rule 33(d) provides the option to respond to interrogatories via production of "business records, including electronically stored information." Fed. R. Civ. P. 33(d). Accordingly, it is within the Court's discretion to compel a party that has refused to provide a narrative response to an interrogatory to instead provide records containing the withheld information.[3] Fed. R. Civ. P. 37(a)(2)(B). In every other respect, Plaintiffs' cited cases order

---

[3] Nevertheless, Plaintiffs served Rule 34 requests for production to PNS and Williams, requesting images of their devices and records relating to: defendants' interrogatory responses; e-mails sent to Facebook users; databases relating to such e-mails; use of Subversion software; deletion of

imaging based on facts that are strikingly similar to those presently at issue.

In *Playboy*, imaging was ordered to recover e-mail deleted by the defendant, who had refused to produce her hard drive for inspection. *Playboy,* 60 F. Supp. 2d at 1054. Here, defendants admit to deleting relevant information concerning e-mails sent to Facebook users, and have refused to produce both the remaining responsive information in their possession and their hard drives for inspection.

In *Antioch*, the District Court ordered imaging to preserve relevant "information" that was being overwritten through normal use of the computer. *Antioch*, 210 F.R.D. at 652. Here, defendants admit to deleting files, which may remain recoverable until overwritten with new data.

In *Ameriwood Indus.*, the District Court ordered imaging to determine whether the party made "any effort to delete electronic files and/or 'scrub' the computers at issue."[4] *Ameriwood Indus.,* 2006 WL 3825291 at *3. Here, defendants' admission that they deleted files entitles Plaintiffs to similarly investigate the circumstances of the deletion and whether defendants attempted to irretrievably scrub their devices of data.

In *Frees*, the District Court ordered production of a party's computer over his sworn "self-serving" affidavit that the computer did not contain relevant data because it was a likely place such evidence would have been stored. *Frees*, 2007 WL 184889 at *2. Here, imaging is warranted despite defendants' self-serving statements that they do not possess "responsive," *i.e.*, perfect, data and that deleted data cannot be recovered, because defendants' devices are the places they are known to have stored the information sought by Plaintiffs.

Lastly, regarding *Fennell*, 83 F.3d at 533, defendants provide no explanation as to why requesting device imaging in the context of a Rule 56(f) discovery motion is "quite different" from a motion to compel information in response to interrogatories. Opp'n at 8:9-16. If anything, the movant in *Fennell* faced a higher burden to obtain imaging because, under the

---

database files; and the IP addresses, URLs and proxy servers from which defendants accessed the Facebook website. *See* Chatterjee Decl. Ex. 8 at Req. Nos. 25-27, 54, 57-60, 75, 79, 88-91 and 93 & Ex. 9 at Req. Nos. 27-29, 54, 57-60, 74, 78, 89-91, 93, and 95. PNS and Williams have not produced the images or other records requested herein. *Id*. at ¶¶ 9-10.

[4] Notably, defendant ConnectU cited the *Playboy, Simon Property Group* and *Antioch* cases with approval in its motion to compel imaging filed in the Massachusetts action. *See* Chatterjee Decl. Ex. 6 at 14-15.

standards of 56(f), the movant must show why discovery should be allowed. Under Rule 26, the parties resisting discovery, i.e. PNS and Williams, have the burden to show why discovery should be disallowed.

### B. Defendants' Refusal To Provide A Response To Interrogatory No. 3 Necessitates Imaging Of All Of Defendants' Devices

Plaintiffs' Interrogatory No. 3 is designed to elicit identification by IP address and/or URL of the devices defendants used to access the Facebook website, thereby identifying the devices that likely contain discoverable information concerning Plaintiffs' claims. *See* Shiflett Decl. Ex. 4 at 5:20-23. Interrogatory No. 3 also is designed to enable Plaintiffs to investigate the attacks on the Facebook website by researching Plaintiffs' own records that may show, by requesting IP address and/or URL, the Facebook information defendants accessed during their attacks.

The Opposition and Williams Declaration admit that the three IP addresses listed in Williams' response to the interrogatory are non-responsive in that they were not employed during the time defendants were engaging in their hacking and spamming activities. Opp'n at 5:6-19; Williams Decl. ¶ 3. Defendants admit that, at the time Williams prepared his interrogatory response, he recalled the "207.114.225.X" range of IP addresses that were used to access the Facebook website, but chose not to list it because he believed the addresses were no longer "valid." *Id*. Defendants' unilateral decision to reinterpret Plaintiffs' interrogatory is improper. Presently, defendants' responses to Interrogatory No. 3 do not accurately specify <u>any</u> IP addresses that were used to access the Facebook website.

Defendants also claim that the "24.22.165.112" IP address identified by ConnectU as Williams' is not, in fact, his. Opp'n at 5:20-6:2; Williams Decl. ¶ 4; *see also* Cooper Decl. Ex. 10 at iMarc001529 ("Winston, whose IP is 24.22.165.112 . . ."). Defendants do not explain why ConnectU identified this IP address as Williams', or why Williams, who was an addressee of the e-mail containing ConnectU's statement, does not appear to have responded to correct the purported error. *See* Cooper Decl. Ex. 10 at iMarc001529. Williams then failed to provide his IP addresses in response to the interrogatory, despite the evidence showing that Williams personally owned servers on which he ran the Importer and Social Butterfly software tools. *See* MSJ at

OHS West:260382212.5 - 13 - REPLY ISO MOTION TO COMPEL COMPLIANCE
5:07-CV-01389-RS

21:6-8; MSJ Cooper Decl. Ex. 30 at 45:14-49:12, 65:9-69:13.

PNS and Williams do not dispute that they utilized many devices to conduct their hacking and spamming activities, including computers "owned by others." Opp'n at 6:3-15. Defendants' only basis for failing to identify devices other than the three non-responsive IP addresses contained in the interrogatory response is the claim that they cannot remember a "10-12 digit IP address[.]" *Id*. at 6:9-10. PNS and Williams do not make any good faith attempt to identify the devices by any other means such as URL address or a description of each machine. Like the responsive information defendants have withheld on the basis that their data was not "perfect," PNS and Williams' refusal to identify the devices they used to attack Facebook improperly exalts form over substance. PNS and Williams' failure to identify a single responsive IP address in response to this interrogatory precludes Plaintiffs and the Court from determining whether a subset of their devices, or all of their devices, may contain discoverable information. Accordingly, Plaintiffs request that the Court order PNS and Williams to provide all of their devices for imaging.

Lastly, PNS and Williams do not dispute that they maintained responsive lists of IP addresses of third-party proxy servers through which Defendants accessed the Facebook website and that the Importer and Social Butterfly code was designed to utilize these lists. Mot. at 7:10-14; Shiflett Decl. ¶¶ 26-28. PNS and Williams are silent on this issue and do not specify what happened to these lists and whether they presently exist. Imaging is further warranted to attempt to locate these responsive IP addresses.

### C. PNS and Williams Should Be Ordered To Respond To The Interrogatories

Defendants' Opposition protests that the PNS and Williams declarations provided in response to the Order did comply with its requirements, and that the Order did not require PNS and Williams to provide details concerning their investigations or conclusions. Opp'n at 2:4-4:24. The declarations served by PNS and Williams were deliberately misleading and false. The December 21, 2007 PNS declaration unequivocally stated that PNS' computer records "do not contain information that would allow [PNS] to further respond to" Interrogatory No. 4. Shiflett Decl. Ex. 9 at ¶ 2. The January 2, 2008 Williams declaration similarly attested that there is no

information "about which [he] is aware" that would permit further responses to the interrogatory. *Id*. Ex. 10 at 2:11-13. Defendants' newly-admitted possession of responsive information, no matter how "imperfect" or "incomplete," renders these declarations false and, therefore, violated the Order.

In addition, although the most recent Williams Declaration provides some additional detail about the creation and deletion of files containing responsive information, it fails to give the Court and Plaintiffs a reasonable explanation for what responsive information presently exists, and what happened to the myriad responsive records defendants do not dispute were created at one time. Accordingly, Defendants should be ordered to provide supplemental declarations detailing the information requested in Plaintiffs' Motion. *See* Mot. at 9:15-10:9.

## IV. CONCLUSION

For the foregoing reasons, as well as those set forth in Plaintiffs' opening brief and supporting papers, Plaintiffs respectfully request that the Court grant the relief requested herein.

Dated: February 13, 2008                ORRICK, HERRINGTON & SUTCLIFFE LLP


                                        /s/ I. Neel Chatterjee /s/
                                        I. Neel Chatterjee
                                        Attorneys for Plaintiffs
                                        THE FACEBOOK, INC. and MARK
                                        ZUCKERBERG

1 **CERTIFICATE OF SERVICE**

2     I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on February 13, 2008.

Dated: February 13, 2008.          Respectfully submitted,

                                          /s/ I. Neel Chatterjee /s/
                                                   I. Neel Chatterjee