SEAN A. LINCOLN (State Bar No. 136387)
salincoln@orrick.com
I. NEEL CHATTERJEE (State Bar No. 173985)
nchatterjee@orrick.com
MONTE COOPER (State Bar No. 196746)
mcooper@orrick.com
THERESA A. SUTTON (State Bar No. 211857)
tsutton@orrick.com
YVONNE P. GREER (State Bar No. 214072)
ygreer@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025
Telephone: 650-614-7400
Facsimile: 650-614-7401

Attorneys for Plaintiffs
THE FACEBOOK, INC. and MARK ZUCKERBERG

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THE FACEBOOK, INC. and MARK ZUCKERBERG,<br><br>Plaintiffs,<br><br>v.<br><br>CONNECTU, INC. (formerly known as CONNECTU, LLC), PACIFIC NORTHWEST SOFTWARE, INC., WINSTON WILLIAMS, and WAYNE CHANG,<br><br>Defendants. | Case No. 5:07-CV-01389-JW<br><br>**PLAINTIFFS FACEBOOK INC. AND MARK ZUCKERBERG'S PARTIAL OPPOSITION TO CNET'S MOTION FOR LEAVE TO INTERVENE AND TO UNSEAL HEARING TRANSCRIPT AND OTHER DOCUMENTS**<br><br>Date: July 2, 2008<br>Time: 10:00 A.M.<br>Judge: Honorable James Ware |

## I. INTRODUCTION

Plaintiffs Facebook, Inc. and Mark Zuckerberg only partially oppose CNET's motion for leave to intervene in this action for limited purposes. Plaintiffs do not object to intervention by CNET to raise its identified challenges, and do not object to production of a redacted version of the hearing transcript. Plaintiffs do, however, object to the proposed wholesale and unwarranted unsealing of documents previously sealed by this Court.

CNET asks the Court to unseal every document filed in this action since August 2005.[1] Plaintiffs request that the Court uphold its previous sealing orders. As detailed in previous declarations and motions supporting those sealing orders, the documents that CNET seeks to uncover include source code (including defendants' code designed to hack into Facebook's computer systems, steal user information, and spam those users), trade secret information (Facebook's countermeasures), sensitive financial data and/or information regarding which Plaintiffs have third party confidentiality obligations (company valuations and private securities information), and Constitutionally protected information about private persons. CNET makes no showing as to why the public has a right to see these materials. CNET also makes no showing as to why it never objected to previous motions to seal when those noticed motions were pending weeks, months or years ago. Nor does CNET demonstrate why unsealing every document in this case on a rushed basis is necessary.

CNET argues instead that records were improperly sealed because the parties had not met a "compelling interests" standard. In fact, the vast majority of documents filed under seal in this case were, by CNET's own admission, discovery materials and non-dispositive motions for which only a "good cause" showing was required. Plaintiffs satisfied this "good cause" requirement

---

[1] CNET's motion asks this Court to second-guess sealing orders made by the Superior Court of California and the District of Massachusetts. This case originally was filed in the Superior Court of Santa Clara, and any documents sealed prior to March 28, 2007 would have been sealed by that court. In addition, some of the materials sealed in this case were received by Plaintiffs as a result of the proceedings currently pending in the District of Massachusetts. That court, too, sealed documents. If the Court grants CNET's motion, many documents filed under seal in other courts will be improperly unsealed in contradiction to those other courts' orders.

long ago, and the records were properly sealed. CNET has not identified any sealed document that relates to a dispositive motion that did not comply with the proper standard.

Should the Court believe detailed review of the entire record is necessary, Plaintiffs request that the Court refer this matter to Magistrate Judge Maria-Elena James on a regularly noticed motion to allow Plaintiffs adequate time to parse through the record and determine whether any documents previously sealed no longer need to be sealed.[2] CNET's omnibus emergency motion, which the Court invited solely for the limited purpose of challenging the closing of the courtroom during a June 23 hearing, affords Plaintiffs no time to adequately respond to its request. A reasoned approach is especially necessary in light of CNET's failure to identify with any specificity which records it seeks to unseal.

## II. BACKGROUND FACTS

### A. Confidential Discovery

Plaintiffs commenced this action in August 2005 in Santa Clara Superior Court. In their complaint, they alleged that ConnectU and its principals had violated California Penal Code Section 502, among other laws, by hacking into Plaintiffs' computer systems and stealing personal user information. After learning that ConnectU and its related parties also had developed a program to crawl user profiles and use their email addresses to spam members (to invite them to join a competing social network), Plaintiffs amended their complaint in February 2007 by adding CAN-SPAM and Computer Fraud and Abuse Act claims and naming additional parties. ConnectU removed this action to this Court in March 2007.

ConnectU also had initiated, in the District of Massachusetts, a lawsuit against Facebook, Mark Zuckerberg and others who were involved with Facebook's early development. ConnectU alleged claims for copyright infringement, trade secret misappropriation, and breach of contract (among other things).

In both actions, the parties entered, and the courts adopted, protective orders governing

---

[2] In September 2007, the Honorable Richard Seeborg ordered the parties to revisit their sealing requests and de-designate materials where appropriate and provide the requisite Rule 79-5(d) declarations. The parties complied with that Order on September 27, 2007, and de-designated various documents, resulting in the public filing of numerous documents. Dkt. 174.

OHS West:260465294.2 - 2 - PLAINTIFFS' OPP'N TO CNET'S MOT. FOR LEAVE TO INTERVENE & TO UNSEAL
5:07-CV-01389-JW

the use and disclosure of documents produced in these cases. Because both cases involved the parties' confidential business information, source code (including computer scripts detailing ConnectU's hacking activity), and trade secrets (Plaintiffs' responding countermeasures), such protective orders were necessary. In addition, because the parties to these cases were, at the relevant times, college students, many of the materials included information – often private and potentially embarrassing – about other students and persons not involved in these cases. As a result, Plaintiffs designated such information pursuant to the protective orders with the expectation that such information would be used only for the litigation between the parties and would not otherwise be disclosed. Plaintiffs also filed numerous documents publicly over the years and de-designated some materials as appropriately nonconfidential during the course of these proceedings.

### B. The Parties' Confidential Motion

On February 22-23, 2008, the parties engaged in private mediation before Antonio Piazza. At the conclusion of that session, the parties signed a Confidential Term Sheet and Settlement Agreement ("Settlement Agreement"). When ConnectU's principals refused to comply with their obligations pursuant to that agreement, Plaintiffs filed a motion to enforce the Settlement Agreement.

ConnectU opposed enforcement and in doing so filed documents improperly disclosing the confidential terms of the Settlement Agreement and alleged discussions held during mediation. In response to ConnectU's assertions, Plaintiffs were forced to disclose additional confidential, trade secret, and commercially sensitive financial data about Facebook, Inc.

On June 19, 2008, the Court held a telephonic conference with the parties to discuss logistics related to the June 23 hearing. The parties agreed that the financial provisions in the Settlement Agreement were and are confidential and warranted a closed discussion at the hearing. The parties also agreed that knowing precisely when those discussions would arise during the hearing would be impossible to predict and, as a result, the Court agreed to seal the courtroom and re-set the hearing from 9:00 A.M. to 11:00 A.M.

On the day of the June 23 hearing several news organizations, including movant CNET,

came to the hearing. Prior to any argument from the parties, this Court indicated its intent to close the courtroom because the subject of the disputes between the parties pertained to a "confidential settlement."

CNET now seeks to unseal the filings and a transcript related to Plaintiffs' motion to enforce the Settlement Agreement, as well as numerous unspecified records filed by the parties in this action since August 2005.

## III. LEGAL DISCUSSION

### A. Plaintiffs Do Not Oppose CNET's Motion for Leave to Intervene for a Limited Purpose

CNET seeks leave to intervene in this action in order to challenge "courtroom closure and sealing of records." CNET's Mot. to Intervene ("Mot.") at 3. Plaintiffs do not oppose CNET's request for the limited purpose of challenging previous orders sealing records in these proceedings. As discussed below, however, the public is not entitled to unfettered access to hearings and documents, and the Court should continue to address the sealing of hearings and documents on a case-by-case basis.[3] *See Nixon v. Warner Communications*, 435 U.S. 589, 598 (1978); *Times Mirror Co. v. United States*, 873 F.2d 1210, 1213 (9th Cir. 1989); *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 980 (6th Cir. 2003); *Cincinnati Gas & Elec. Co. v. General Elec. Co.*, 854 F.2d 900, 902 (6th Cir. 1988); *U.S. v. Glens Falls Newspapers, Inc.*, 160 F.3d 853, 857-58 (2d Cir. 1998).

### B. The Public Is Not Entitled to Unfettered Access to All Documents in This Matter

Without specifying any documents whatsoever, CNET contends that it should have access to the entirety of court files. Federal courts have repeatedly recognized that not all proceedings and documents come within the ambit of the public's and media's right of access. *See Nixon*, 435 U.S. at 598; *Times Mirror Co.*, 873 F.2d at 1213; *see also, Goodyear Tire & Rubber Co.*, 332 F.3d at 980; *Cincinnati Gas,* 854 F.2d at 902; *Glens Falls Newspapers, Inc.*, 160 F.3d at 158. To

---

[3] To the extent that CNET seeks a blanket order prohibiting the sealing of future hearings, such a request is unwarranted and improper. Any requests for sealing hearings in the future should be considered when raised.

determine whether the right of access extends to particular documents or proceedings, the Court must consider: 1) whether there has been a "tradition of accessibility" or access to the documents or proceedings; and 2) whether public access plays a significant, positive role in the function of the proceeding. *See Times Mirror Co.* 873 F.2d at 1213, citing *Press-Enterprise Co. v. Super. Ct.*, 478 U.S. 1, 7 (1986).

### C. The Public Does Not have A Right to Access Filings and Hearings Implicating Private Parties' Confidential Information

CNET has not demonstrated a "tradition of accessibility" to hearings related to enforcement of a private settlement or how public access plays a positive role therein. Instead, CNET contends that the Court improperly excluded the public from the courtroom. Mot. at 7:27-8:1. Contrary to CNET's assertions, however, the Court explained at the outset that the hearing on Plaintiffs' "motion concerned a confidential settlement." 6/23/08 Hr'g Trans. at 5:20-25. Courts have repeatedly held that the parties' right to the privacy of settlement talks outweighs the public's right of access to civil proceedings. *Goodyear Tire & Rubber Co.*, 332 F.3d 976, 980 (6th Cir. 2003) citing *Cincinnati Gas & Elec. Co.*, 854 F.2d 900, 902 (6th Cir. 1988) (Members of the press denied access to pre-trial settlement procedures, relying on the historical secrecy in settlement talks. "The need for privacy in settlement talks outweighed any First Amendment right of access to the proceedings"); *Glens Falls Newspapers, Inc.*, 160 F.3d at 858; *B.H. v. Ryder*, 856 F. Supp. 1285, 1290 (N.D. Ill. 1994) ("it is not surprising that the courts have there is no right of public access to settlement conferences").

Because the June 23 hearing was directly related to the enforceability of the confidential Settlement Agreement, the parties expected that disclosure of private discussions leading up to that agreement would be necessary. The public had no inherent right to access those confidential discussions. *Glens Falls Newspapers, Inc.*, 160 F.3d at 858; *Ryder*, 856 F. Supp. at 1290. Furthermore, because of the sensitivity of the discussions, public access threatened the openness and efficiency of the proceedings, rather than positively influencing them. As the Court in *Ryder* wrote in refusing to permit the press access to all post-settlement discussions relating to the Court's enforcement of a voluntary consent decree in a widely-publicized and contentious class

action:

> To say, then, that the public and the press have a right to be present at all conferences in cases involving issues of great public interest is simply to say that traditional settlement conferences could not occur in those cases. The indispensable attitude for settlement – the willingness to concede that the other side has a point – would be absent …
>
> For these reasons, it is not surprising that the courts have held there is no right of public access to settlement conferences. Neither of the requirements for public access is met: there is no historical tradition of public access, and public access, rather than promoting the purpose of the proceeding, is likely to frustrate it.

*Ryder*, 856 F. Supp. at 1290. The logic of the court in *Ryder* is equally relevant in the present case, and this Court properly excluded the public from the hearing concerning enforcement of the settlement agreement.

Furthermore, prior to the hearing, the Court held a telephonic conference regarding the sealing of the courtroom. The parties agreed that sealing was appropriate to protect specific, confidential terms in the Settlement Agreement, but that predicting precisely when those discussions would arise during the hearing was impossible. As a result, the hearing was closed to the public to allow the Court to hold an orderly hearing while protecting the parties' confidential, settlement discussions and business information.[4]

CNET incorrectly argues that "protection of financial information is not a sufficient basis for barring access to a civil proceeding… ." Mot. at 8. "Confidential information . . . is a species of property to which the corporation has the exclusive right and benefit." *See Carpenter v. United States*, 484 U.S. 19, 25-26 (1987) citing *Dirks v. SEC*, 463 U.S. 646, 653 n.10 (1983)); *Board of Trade of Chicago v. Christie Grain & Stock Co.*, 198 U.S. 236, 250-51 (1905)). Confidential information derives its value from exclusive access to and use by the owner of the information. Public access to Plaintiffs' confidential information would, therefore, not only interfere with, but potentially destroy the value of such information. *See Ruckelhaus v. Monsanto*,

---

[4] CNET complains that the Court rejected its request for a continuance of the June 23 hearing. Mot. at 7. CNET provides no authority for the proposition that CNET's purported right to delay the hearing to object outweighs Plaintiffs' right to resolution of their motion, which had been pending for two months.

467 U.S. 986, 1003-04 (1984).

Because Facebook is a private company, it actively protects such information from public disclosure. Indeed, public policy favors the protection of a person's interest in maintaining the confidentiality of commercially sensitive information. *See, e.g., Champion v. Super. Court*, 201 Cal. App. 3d 777, 789-90 (1988) (granting application to seal entire file of case in action seeking declaration of rights and duties of partners under partnership agreement); *see also, Encyclopedia Brown Prods., Ltd. v. Home Box Office, Inc.*, 26 F. Supp. 2d 606, 614 (S.D.N.Y. 1998) (party would be irreparably harmed by disclosure of confidential business information, supporting sealing, even though documents dealt with business information dating back several years); *see also* 18 U.S.C. § 1905 (Trade Secrets Act) and 5 U.S.C. § 552(b)(4) (trade-secret and commercial or financial-information exemption to Freedom of Information Act). The "disclosure of confidential information is the quintessential type of irreparable harm that cannot be compensated or undone by money damages." *See Hirshfeld v. Stone*, 193 F.R.D. 175, 187 (S.D.N.Y. 2000). The Court properly sealed the courtroom to protect the parties' confidential financial information and settlement discussions.

Notwithstanding the parties' right to maintain the confidentiality of their settlement, Plaintiffs do not object to the release of the June 23 hearing transcript with minor redactions to protect the parties' agreed-upon financial arrangements. Plaintiffs also are prepared to review their sealed filings related to the Confidential Motion to enforce the Settlement Agreement. To the extent the documents do not include private financial information, settlement discussions or Constitutionally protected private information,[5] Plaintiffs have no objection to unsealing them. Plaintiffs need, however, a reasonable time in which to review those materials to ensure that all

---

[5] As part of its opposition, ConnectU improperly included alleged statements made during the parties' confidential, private mediation. ADR Local Rule 6-11 strictly prohibits the disclosure of anything that was said or happened during mediation. Strong public policy protects these discussions to encourage the use of the alternative dispute process. In its June 25 Order granting Plaintiffs' Motion to Enforce the Settlement Agreement, the Court declined to violate the privilege. 6/25/08 Order at fn 11. CNET should not be allowed to penetrate it either. To the extent any documents purport to discuss what happened or was said at mediation, those records must remain sealed.
OHS West:260465294.2 - 7 - PLAINTIFFS' OPP'N TO CNET'S MOT. FOR LEAVE TO INTERVENE & TO UNSEAL 5:07-CV-01389-JW

1  confidential information is maintained as such.

### D. All Other Filings in This Case Submitted Under Seal Should Remain Confidential

Plaintiffs object to CNET's rushed, wholesale attempt to unseal everything filed before April 23, 2008. CNET does not specify exactly which records should be unsealed but instead vaguely requests that the Court unseal "scores of other documents." Mot. at 12. This request must be denied. CNET fails to articulate how unfettered disclosure of protected materials will afford the public an opportunity to positively influence the proceedings or if the information is traditionally accessible. *See Times Mirror Co.* 873 F.2d at 1213 citing *Press-Enterprise Co. v. Super. Ct.*, 478 U.S. 1, 7 (1986). Indeed, CNET cannot do so. This matter involves the settlement of a civil dispute between two closely-held, private corporations. Thus, no heightened public interest in disclosure exists to require public access, as may be the case in toxic tort or other litigation that implicates the health or welfare of the general public. *See Cincinnati Gas & Elec. Co.*, 854 F.2d at 904 (6th Cir. 1988) ("[P]ublic access to summary jury trials over the parties' objections would have significant adverse effects on the utility of the procedure as a settlement device … and would not play a "significant positive role in the functioning of the particular process in question."). Plaintiffs' interests in the protection of their private and sensitive information, therefore, overrides the right of public access to the filings and transcript that are the subject of this motion.

Despite CNET's contention that the "parties' stipulated protective order is a manifestly insufficient basis to seal any documents filed with the Court" (mot. at 10), courts have recognized the importance of such agreements to an orderly administration of justice. *Beam Sys. v. Checkpoint Sys.*, 1997 U.S. Dist. LEXIS 8812 (C.D. Cal. Feb. 5, 1997) ("The use of protective orders is vital to the efficient litigation of every stage of many intellectual property disputes."); *see also Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1134 (9th Cir. 2003) citing *Phillips v. GMC,* 307 F.3d 1206, 1213 (9th Cir. 2002) ("when a court grants a protective order for information produced during discovery, it already has determined that 'good cause' exists to protect this information from being disclosed to the public by balancing the needs for discovery

OHS West:260465294.2 - 8 -

PLAINTIFFS' OPP'N TO CNET'S MOT. FOR LEAVE TO INTERVENE & TO UNSEAL
5:07-CV-01389-JW

1  against the need for confidentiality"). The parties here relied on the protective orders to guard
2  trade secret information, source code, sensitive business information, and Constitutionally
3  protected information of private persons. In addition, as discussed above, the types of
4  information sealed in this case are commonly protected from public disclosure. *See, e.g.*,
5  *Champion*, 201 Cal. App. 3d at 789-90; *Encyclopedia Brown Prods., Ltd.*, 26 F. Supp. 2d at 614.
6  CNET's request to unseal every record in these proceedings will unnecessarily invade the rights
7  of private parties without showing a compelling need to do so. Such an invasion is not warranted
8  and should be rejected.

9  As CNET readily admits, the Ninth Circuit permits courts, for good cause, to seal non-
10 dispositive motions and documents that were produced in discovery. Mot. at 6, fn3; *see also*
11 *Foltz*, 331 F.3d at 1134. The vast majority of the documents CNET seeks to unseal are, in fact,
12 such non-dispositive motions and materials produced during discovery. Plaintiffs have met the
13 good cause standard and, therefore, the documents were properly sealed. In contrast, however,
14 CNET has not identified any sealed documents for dispositive motions for which Plaintiffs have
15 not met the requisite burden.

## IV. CONCLUSION

Plaintiffs respectfully request that the Court deny CNET's motion and maintain the confidentiality of certain filings and transcripts filed under seal in this case. CNET's belated and vague request on shortened time is unduly burdensome. If the Court is inclined to consider CNET's motion to second-guess this Court and the two-previous courts that issued sealing orders, Plaintiffs request that the matter be submitted to Magistrate Judge Maria-Elena James on a regularly noticed motion to afford the parties time to review the "scores of other documents."

ORRICK, HERRINGTON & SUTCLIFFE LLP


/s/ Theresa A. Sutton /s/
Theresa A. Sutton
Attorneys for Plaintiffs

## **CERTIFICATE OF SERVICE**

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on June 30, 2008.

Dated: June 30, 2008               Respectfully submitted,

                                   /s/ Theresa A. Sutton /s/
                                   Theresa A. Sutton