1          IN THE UNITED STATES DISTRICT COURT

2         FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                   SAN JOSE DIVISION

4

5    THE FACEBOOK, INC.,        )  C-07-01389-JW
                                )
6          PLAINTIFF,           )  JUNE 23, 2008
                                )
7              V.               )  **UNSEALED AND REDACTED BY**
                                )  **THE COURT**
8    CONNECTU, LLC, ET AL.,     )  PAGES 1-79
                                )
9          DEFENDANTS.          )
     _____   )
10

11          THE PROCEEDINGS WERE HELD BEFORE

12         THE HONORABLE UNITED STATES DISTRICT

13                 JUDGE JAMES WARE

14   A P P E A R A N C E S:

15   FOR THE PLAINTIFF:  ORRICK, HERRINGTON & SUTCLIFFE
                         BY:  I. NEEL CHATTERJEE
16                            MONTE M.F. COOPER
                              SUSAN D. RESLEY
17                       1000 MARSH ROAD
                         MENLO PARK, CALIFORNIA 94025
18

19   FOR THE DEFENDANTS: BOIES, SCHILLER & FLEXNER
                         BY:  DAVID A. BARRETT
20                            EVAN ANDREW PARKE
                              STEVEN C. HOLTZMAN
21                       575 LEXINGTON AVENUE
                         7TH FLOOR
22                       NEW YORK, NEW YORK 10022

23      (APPEARANCES CONTINUED ON THE NEXT PAGE.)

24

     OFFICIAL COURT REPORTER: IRENE RODRIGUEZ, CSR, CRR
25                            CERTIFICATE NUMBER 8074

                                              1

Dockets.Justia.com

A P P E A R A N C E S: (CONT'D)

FOR THE DEFENDANTS:          FINNEGAN, HENDERSON,
                             FARABOW, GARRETT & DUNNER
                             BY:  SCOTT R. MOSKO
                                  JOHN F. HORNICK
                             STANFORD RESEARCH PARK
                             3300 HILLVIEW AVENUE
                             PALO ALTO, CALIFORNIA 94304

                             FENWICK & WEST
                             BY:  KALAMA LUI-KWAN
                             555 CALIFORNIA STREET
                             12TH FLOOR
                             SAN FRANCISCO, CALIFORNIA
                             94104


ALSO PRESENT:                BLOOMBERG NEWS
                             BY:  JOEL ROSENBLATT
                             PIER 3
                             SUITE 101
                             SAN FRANCISCO, CALIFORNIA
                             94111

                             THE MERCURY NEWS
                             BY:  CHRIS O'BRIEN
                                  SCOTT DUKE HARRIS
                             750 RIDDER PARK DRIVE
                             SAN JOSE, CALIFORNIA 94190


                             THE RECORDER
                             BY:  ZUSHA ELINSON
                             10 UNITED NATIONS PLAZA
                             SUITE 300
                             SAN FRANCISCO, CALIFORNIA
                             94102

                             CNET NEWS
                             BY:  DECLAN MCCULLAGH
                             1935 CALVERT STREET, NW #1
                             WASHINGTON, DC 20009

SAN JOSE, CALIFORNIA                    JUNE 23, 2008

2                    P R O C E E D I N G S

3

4               (WHEREUPON, COURT CONVENED AND THE

5   FOLLOWING PROCEEDINGS WERE HELD:)

6               THE CLERK:  CALLING CASE NUMBER 07-1389,

7   THE FACEBOOK, INC., VERSUS CONNECTU, LLC.

8               THE COURT:  DO YOU KNOW THE PARTIES?

9               THE CLERK:  THEY'RE SITTING OVER HERE

10  (INDICATING).

11              LIZ.

12              THE CLERK:  YES.  TESTING ONE, TWO.

13              THE COURT:  STATE YOUR APPEARANCES.

14              MR. CHATTERJEE:  GOOD MORNING, YOUR

15  HONOR.  NEEL CHATTERJEE REPRESENTING FACEBOOK, MARK

16  ZUCKERBERG, A NUMBER OF OTHER INDIVIDUAL PARTIES TO

17  THE MASSACHUSETTS ACTIONS EXCEPT EDUARDO SAVERIN.

18              WITH ME TODAY ARE MY COLLEAGUES SUSAN

19  RESLEY AND MONTE COOPER WHO WILL BE ASSISTING ME IN

20  THE HEARING TODAY.

21              THE COURT:  VERY WELL.

22              MR. MOSKO:  GOOD MORNING.  SCOTT MOSKO.

23  LET ME -- THERE'S GOING TO BE A BIT OF AN

24  INTRODUCTION HERE.  FOR THE PURPOSES OF THE MOTION

25  THAT FACEBOOK HAS FILED, I AM NOT REPRESENTING

CONNECTU; HOWEVER, I DO REPRESENT CONNECTU IN THE
UNDERLYING CASE.

THE COURT:  AH.

MR. MOSKO:  AND I DO REPRESENT THE OTHER
DEFENDANTS.

WITH ME THIS MORNING IS DAVID BARRETT,
STEVEN HOLTZMAN, AND EVAN PARKE WHO ARE
REPRESENTING CONNECTU ON THE MOTION CONCERNING THE
SETTLEMENT ISSUES.

ALSO MY PARTNER JOHN HORNICK.

THE COURT:  MR. HORNICK.  DO I HAVE A
THIRD PARTY?

MR. CHATTERJEE:  YOUR HONOR, THERE IS ONE
THIRD PARTY HERE WHICH IS ROBERT HAWK, WHO IS FROM
THE HELLER EHRMAN FIRM AND HE REPRESENTS EDUARDO
SAVERIN IN THE MASSACHUSETTS ACTION.

AND I WANT TO MAKE SURE THAT I UNDERSTOOD
CORRECTLY, MR. HORNICK IS NOT ADMITTED IN THIS CASE
BUT IN THE MASSACHUSETTS CASE, AND I WANT TO
UNDERSTAND IF HE'S REPRESENTING CONNECTU OR
CONNECTU AND THE THREE INDIVIDUALS WHO ARE
PLAINTIFFS IN THAT CASE.

THE COURT:  ALL RIGHT.  AND I HAVE KALAMA
LUI-KWAN.

MR. LUI-KWAN:  YES, YOUR HONOR.

4

```
1          THE COURT:  WHO DO YOU REPRESENT?

2          MR. LUI-KWAN:  FENWICK & WEST AND --

3   SORRY.

4          KALAM LUI-KWAN FROM FENWICK & WEST.  I

5   REPRESENT FENWICK & WEST AND MR. GREGORY ROUSSEL

6   WHO ARE THIRD PARTIES IN THIS ACTION.

7          MR. CHATTERJEE:  YOUR HONOR, I'M SORRY, I

8   DON'T MEAN TO INTERRUPT.

9          THE COURT:  YES.

10         MR. CHATTERJEE:  BUT BEFORE WE BEGIN THE

11  PROCEEDINGS, WE HAD HAD A DISCUSSION BEFORE ABOUT

12  SEALING THE COURTROOM.

13         THE COURT:  THAT WAS THE ISSUE I WAS

14  ABOUT TO RAISE.

15         ARE THERE INDIVIDUALS HERE WHO ARE NOT

16  PARTIES OR ATTORNEYS FOR PARTIES INVOLVED IN THIS

17  CASE?

18         MR. O'BRIEN:  YES, YOUR HONOR.

19         MR. ROSENBLATT:  YES, YOUR HONOR.

20         THE COURT:  THE PARTIES HAVE REQUESTED,

21  SINCE THE NATURE OF THIS MOTION CONCERNS A

22  CONFIDENTIAL SETTLEMENT, TO HAVE THE PROCEEDINGS

23  CONDUCTED IN A SEALED PROCEEDING, AT LEAST

24  INITIALLY SO THAT I CAN UNDERSTAND THE NATURE OF

25  THE MOTION AND DECIDE ON A COURSE OF ACTION.
```

1    ORDINARILY MATTERS PENDING BEFORE THIS

2    COURT ARE CONDUCTED IN PUBLIC, AND IT IS RARE THAT

3    WE CLOSE OUR COURTROOM.

4    THERE ARE CIRCUMSTANCES UNDER WHICH WE DO

5    IN CRIMINAL CASES, AS A MATTER OF COURSE.  IT'S

6    RARE THAT WE DO SO IN CIVIL CASES, ALTHOUGH GIVEN

7    THE NATURE OF SOME OF THE TECHNOLOGY WE GET

8    INVOLVED WITH IN THIS COURT THERE ARE OCCASIONS

9    WHEN WE CLOSE OUR COURTROOM IN CIVIL CASES AS WELL.

10    I THINK THAT I WOULD BE ABLE TO BETTER

11    HAVE A FRANK DISCUSSION ABOUT THE NATURE OF THIS

12    MOTION IF I DO SO IN A CLOSED COURTROOM.  AND SO I

13    DO INTEND TO CLOSE THE COURTROOM TO SEAL THE RECORD

14    OF THESE PROCEEDINGS.

15    BEFORE I DO, LET ME SEE IF I HAVE ANY

16    OBJECTIONS.

17    MR. O'BRIEN:  I'M CHRIS O'BRIEN WITH "THE

18    MERCURY NEWS."  JUST TO CLARIFY WHAT YOU'RE ASKING,

19    ARE YOU PLANNING TO BRIEFLY CLOSE THE COURTROOM AND

20    THEN READMIT US OR ARE YOU PLANNING TO CLOSE THE

21    COURTROOM FOR THE WHOLE HEARING THAT YOU'RE

22    PLANNING TO HAVE?

23    THE COURT:  WELL, I DON'T KNOW THE ANSWER

24    TO THAT YET.

25    I DO INTEND TO EXCUSE YOU OR ANY PERSON

WHO IS NOT A LAWYER FOR ONE OF THE PARTIES OR ONE

OF THE PARTIES FOR PURPOSES OF HEARING THE MOTION.

AND IF DURING THE COURSE OF THE MOTION I

DETERMINE THAT THERE ARE MATTERS THAT SHOULD BE ON

THE PUBLIC RECORD, THEN I WOULD OPEN THE COURTROOM

FOR THAT PURPOSE.

MR. O'BRIEN:  WELL, IN THAT CASE WE WOULD

REQUEST THAT YOU ALLOW US TO CONTEST THAT AND HAVE

AN ATTORNEY PRESENT TO ARGUE OUR CASE ABOUT WHAT

THE COURT SHOULD DO.

THE COURT:  DO YOU HAVE SOMEONE HERE

TODAY WHO IS PREPARED TO ARGUE THAT?

MR. O'BRIEN:  WE DON'T.  WE HAVE HEARD

FOR THE FIRST TIME THAT YOU ARE PLANNING TO CLOSE

IT.

THE COURT:  YES.  ANY OTHER OBJECTION?

MR. MCCULLAGH:  YOUR HONOR, DECLAN

MCCULLAGH FOR CNET, A SUBSIDIARY OF CBS NEWS.

WE HAVE THE SAME CONCERNS, AND WE WOULD

ALSO REQUEST A CONTINUANCE AND UNTIL WE CAN RETAIN

COUNSEL, BRING OUR OUTSIDE COUNSEL DOWN TO SUPPORT

OUR FIRST AMENDMENT RIGHT TO OPEN COURT

PROCEEDINGS.

THE COURT:  YES.

MR. ROSENBLATT:  AND JOEL ROSENBLATT FOR

7

BLOOMBERG NEWS.  THE SAME OBJECTION.  I UNDERSTAND
THAT A FRANK DISCUSSION WOULD HAPPEN WITHOUT US
AROUND.  SOMETIMES -- YOU HAVE ALWAYS BEEN VERY
SENSITIVE TO THIS ISSUE, AND I APPRECIATE THAT BUT
THERE SEEMS TO BE SOMETIMES A -- I DON'T
UNDERSTAND.  I HAVE LOOKED AT THE DOCKET.  WHY --
WHAT IS THE ARGUMENT?

THE PRESS HASN'T BEEN SHOWN FOR THE
ARGUMENT WHY IT SHOULD BE CLOSED.  I UNDERSTAND
IT'S A PREFERENCE, BUT WHEN IS IT A NEED VERSUS A
PREFERENCE AND THAT'S OUR CONCERN.  AND WE WOULD
ALSO LIKE TO HAVE AN ATTORNEY PRESENT IF YOU'RE
GOING TO CLOSE IT.

THE COURT:  I, OF COURSE, I WANT TO GIVE
THE PARTIES AN OPPORTUNITY TO EXPLAIN TO ME THE
CIRCUMSTANCES THAT BRING THEM BEFORE THE COURT.

THIS IS A CASE WHERE THEY REACHED A
SETTLEMENT WHICH THEY WOULD NOT OTHERWISE PUT IN
THE PUBLIC DOMAIN EXCEPT FOR SOME PART OF IT.

AND SO IT IS ALWAYS OF CONCERN TO THE
COURT TO CLOSE ITS PROCEEDINGS TO MEMBERS OF THE
PUBLIC.

I FIRMLY BELIEVE THAT IF PARTIES BRING A
LAWSUIT TO A PUBLIC FORUM SUCH AS THE COURTS,
THOSE -- THEY CHOOSE TO CONDUCT THEIR BUSINESS IN

8

PUBLIC.

HOWEVER, EVEN IN A PUBLIC TRIAL, PARTIES COME TO A POINT IN THEIR CASE WHERE THEY WANT TO CONDUCT PROCEEDINGS IN CHAMBERS BEFORE THE JUDGE, OR COME TO A DISCLOSURE BETWEEN THE TWO OF THEM THAT ARE PRIVILEGED AND THAT THEY WANT TO KEEP CONFIDENTIAL FROM THE PUBLIC WITH THE IDEA THAT SOME PARTS OF IT WOULD BE PUT ON THE PUBLIC RECORD.

I'VE MADE A JUDGMENT THAT IT WOULD BE BENEFICIAL TO THE COURT TO AT LEAST HEAR THE NATURE OF THIS DISPUTE THAT COMES OUT OF A CONFIDENTIAL PART OF THEIR PROCESS IN A CLOSED COURTROOM AND THEN TO MAKE A JUDGMENT ABOUT WHAT, IF ANY, PART OF THAT SHOULD BE CONDUCTED IN PUBLIC PROCEEDINGS.

BOTH OF THESE ARE LAWSUITS THAT WERE PENDING, AS I UNDERSTAND IT, IN PUBLIC PLACES AND DEPENDING ON WHAT HAPPENS HERE, IT MAY RETURN TO THAT FORUM, BUT I DO WANT TO HAVE THE BENEFIT OF AT LEAST HAVING A CONVERSATION WITH THE PARTIES IN A CLOSED COURTROOM. AND NOTWITHSTANDING THE OBJECTIONS AND A REQUEST FOR A DELAY, I'M GOING TO ASK THE CLERK OF COURT TO CLOSE THE COURTROOM.

I'LL ASK THE ASSISTANCE OF THE PARTIES TO IDENTIFY THEIR CLIENTS OR OTHER MEMBERS OF THEIR FIRM, AND I WILL SET UP A TIME TO GIVE THOSE WHO

9

ARE EXCLUDED AN OPPORTUNITY TO MAKE ANY OBJECTIONS.

AND I WILL DO MY BEST TO ADVISE YOU AT SOME POINT

DURING THE COURSE OF THESE PROCEEDINGS IF I DECIDE

TO OPEN IT SO THAT YOU CAN TAKE ADVANTAGE OF COMING

BACK INTO THE COURTROOM.

BUT AT THIS POINT I INTEND TO CLOSE THE

COURTROOM.

SO --

(PAUSE IN PROCEEDINGS.)

THE COURT:  I PRESUME IT WON'T BE

NECESSARY TO CALL THE MARSHALS.

WOULD YOU ASSIST IN JUST IDENTIFYING YOUR

CLIENTS AND THOSE INDIVIDUALS.

MR. CHATTERJEE:  YES, YOUR HONOR.  ON THE

FACEBOOK SIDE IT'S THE FIRST TWO ROWS ON YOUR

RIGHT-HAND SIDE.

THE COURT:  ALL RIGHT.

(PAUSE IN PROCEEDINGS.)

THE COURT:  SO THE PARTIES ARE SATISFIED

THAT IN THE COURTROOM, AT LEAST IN THAT PART, I'LL

CONTROL THIS PART UP HERE, ARE INDIVIDUALS WHO YOU

WOULD REGARD AS COVERED BY ANY OF THE PRIVILEGES

AND CONFIDENTIALITIES APPLICABLE TO YOUR SETTLEMENT

PROCESS?

MR. CHATTERJEE:  YES, YOUR HONOR.

MR. MOSKO: ON BEHALF OF THE DEFENDANTS, YES, YOUR HONOR.

THE COURT: SO I'LL REGARD THE RECORD AT THIS POINT AS A SEALED RECORD TO BE OPENED ON FURTHER ORDER OF THE COURT OR STIPULATION OF THE PARTIES.

THIS IS A MOTION BY CONNECTU?

MR. CHATTERJEE: NO, YOUR HONOR, IT'S A MOTION BY FACEBOOK TO ENFORCE THE SETTLEMENT.

THE COURT: ALL RIGHT. WHAT'S YOUR MOTION?

MR. CHATTERJEE: YOUR HONOR, THE MOTION PRESENTED BY FACEBOOK AND THE RELATED INDIVIDUAL DEFENDANTS IS TO ENFORCE A SETTLEMENT AGREEMENT THAT WAS ENTERED INTO BETWEEN FACEBOOK AND ITS RELATED PARTIES AND CONNECTU AND THEIR RELATED PARTIES SUBSEQUENT TO A MEDIATION OR AT THE CONCLUSION OF A MEDIATION BEFORE JUDGE PIAZZA ON JANUARY 22ND AND INTO THE WEE HOURS OF JANUARY 23RD.

THE COURT: AND WHAT IS IT -- WHEN YOU SAY TO ENFORCE IT, WHAT IS IT THAT YOU WISH THE COURT TO DO?

MR. CHATTERJEE: YOUR HONOR, WHAT WE HAVE ASKED THE COURT TO DO, AND THIS HAS BECOME A LITTLE

11

1    MORE COMPLICATED AND I'LL EXPLAIN WHY IT'S A LITTLE

2    MORE COMPLICATED IN A MOMENT, WHAT WE'RE ASKING THE

3    COURT TO DO IS TO RECOGNIZE THAT THE TERM SHEET AND

4    SETTLEMENT AGREEMENT THAT WE PROVIDED TO YOUR

5    HONOR, THE TWO-PAGE HANDWRITTEN DOCUMENT, IS AN

6    ENFORCEABLE AGREEMENT AND TO ORDER CONNECTU TO OR

7    ORDER THE PRINCIPALS OF CONNECTU TO GIVE US THEIR

8    SHARES IN THE COMPANY IN EXCHANGE FOR THE MONEY AND

9    THE SHARES THAT WE WERE GOING TO GIVE THEM.

10            WE STAND READY TO PERFORM OUR END OF THE

11   DEAL.  THEY DO NOT.

12            NOW, THERE IS A DISPUTE OVER A PHRASE AT

13   THE VERY END OF THE AGREEMENT THAT SAYS FACEBOOK

14   WILL TERM THE FORM AND DOCUMENTATION OF THE

15   TRANSACTION CONSISTENT WITH THE CASH AND STOCK FOR

16   STOCK ACQUISITION.

17            IT'S OUR VIEW THAT THE COURT CAN PROPERLY

18   RELY UPON THE DOCUMENTS THAT WE PROVIDED THE COURT

19   IN ORDERING THEM TO SIGN THOSE DOCUMENTS AND COMPLY

20   WITH THEM.

21            THEY HAVE RAISED AN ISSUE AS TO THAT.  WE

22   DISAGREE WITH THAT ISSUE AND FUNDAMENTALLY, IF YOUR

23   HONOR WERE TO ENTER A JUDGMENT TELLING THE PARTIES

24   TO COMPLY WITH THE TERM SHEET AND SETTLEMENT

25   AGREEMENT, AND ESSENTIALLY STAPLE IT ON TO THE

                                                    12

1    JUDGMENT THAT THIS IS WHAT THE AGREEMENT IS AND

2    PEOPLE HAVE TO LIVE WITH IT, THAT WOULD BE

3    ACCEPTABLE TO FACEBOOK.

4         THE REASON WHY THE ISSUES HAVE BECOME

5    MORE COMPLEX, YOUR HONOR, WE DIDN'T UNDERSTAND WHY,

6    WHY CONNECTU WAS NOT WILLING TO HONOR THE AGREEMENT

7    THAT IT SIGNED.

8         AFTER WE FILED THE MOTION TO ENFORCE, WE

9    LEARNED THE REASON WHY.

10        AND THE REASON WHY THERE'S A DISPUTE AS

11   TO THIS AGREEMENT IS NOT BECAUSE OF THE BINDING

12   NATURE OF THE TERM SHEET AND THE SETTLEMENT

13   AGREEMENT.

14        AFTER WE FILED THE MOTION, THE QUINN

15   EMANUEL FIRM, WHO IS NO LONGER COUNSEL OF RECORD

16   FOR CONNECTU, FILED A NOTICE OF LIEN AGAINST ANY

17   PROCEEDS OR ANY JUDGMENT AGAINST THIS COURT OR IN

18   THE BOSTON COURT ASSOCIATED WITH THIS CASE.

19        IT'S OUR VIEW, YOUR HONOR, THAT THE

20   REASON THAT CONNECTU WANTS OUT OF THIS TERM SHEET

21   AND SETTLEMENT AGREEMENT IS NOT BECAUSE IT'S A

22   BINDING AGREEMENT.  IT IS.

23        THE REASON THEY WANT OUT OF THE DEAL IS

24   BECAUSE THEY HAVE SOME SORT OF FINANCIAL

25   ARRANGEMENT WITH THE QUINN EMANUEL FIRM THAT IS

13

1  AFFECTING THE ECONOMICS IN SOME WAY THEY DON'T

2  LIKE.

3       THE ISSUE FOR US IS PRESUMING YOUR HONOR

4  FINDS THIS AGREEMENT AN ENFORCEABLE SETTLEMENT

5  AGREEMENT, WE DON'T KNOW WHO TO PAY RIGHT NOW

6  BECAUSE THERE'S A NOTICE OF LIEN THAT HAS BEEN

7  FILED WITH THE COURT AND WE NEED THE COURT'S

8  GUIDANCE ON HOW TO DEAL WITH THAT.

9       WE'RE HAPPY TO PUT THE PROCEEDS THAT ARE

10  REQUIRED UNDER THE AGREEMENT AND INTO SOME SORT OF

11  CONSTRUCTIVE TRUST OR SOMETHING LIKE THAT THAT THE

12  COURT CAN ADMINISTER, SUBJECT TO CONNECTU AND ITS

13  FORMER LAWYERS WORKING OUT WHATEVER IT IS THAT THEY

14  NEED TO WORK OUT ASSOCIATED WITH THE PROCEEDS OF

15  THIS CASE.

16       BUT WHERE WE DON'T WANT TO BE IS WE DON'T

17  WANT TO BE ORDERED TO GIVE CONNECTU THE MONEY ONLY

18  TO HAVE QUINN EMANUEL KNOCKING ON OUR DOOR SAYING

19  WE OWE THEM SOMETHING AND WE DON'T KNOW WHAT IT IS

20  AND WHAT THE TERMS OF THE ARRANGEMENT ARE.

21       AND SO THAT'S ONE THING THAT MAKES THINGS

22  A LITTLE MORE COMPLEX THAN WHEN WE ORIGINALLY

23  ANTICIPATED WHEN WE FILED THE MOTION BECAUSE OF

24  THIS NOTICE OF LIEN.

25       THE COURT:  VERY WELL.  LET ME HEAR FROM

14

1    YOUR OPPONENT.

2            MR. BARRETT:  YOUR HONOR, THANK YOU VERY

3    MUCH.  DAVID BARRETT FROM BOIES, SCHILLER & FLEXNER

4    REPRESENTING CONNECTU, WHICH I SHOULD NOTE IS THE

5    ONLY PARTY THAT -- ON THE DEFENDANT'S SIDE WHICH IS

6    PROPERLY BEFORE THIS COURT, ALTHOUGH THE PLAINTIFFS

7    ARE ASKING THE COURT TO ENTER AN ORDER THAT WOULD

8    COMPEL THE INDIVIDUAL PRINCIPALS OF CONNECTU TO

9    SIGN CERTAIN DOCUMENTS, THE FACT IS THAT THEY

10   HAVEN'T EVEN SERVED THOSE PEOPLE WITH PROCESS THAT

11   WOULD BRING THEM PROPERLY BEFORE THIS COURT.

12           SO THAT'S THE REASON THAT I ONLY APPEAR

13   TODAY IN THIS COURT ON BEHALF OF CONNECTU.

14           SECOND, YOUR HONOR, WITH RESPECT TO

15   MR. CHATTERJEE'S REQUEST, WE DON'T REALLY LITERALLY

16   DO NOT UNDERSTAND WHAT IT IS THAT THE PLAINTIFFS

17   ARE ASKING THIS COURT TO DO.

18           THE PROPOSED ORDER THAT WAS FILED WITH

19   MR. CHATTERJEE'S MOTION BACK IN APRIL IS AN ORDER

20   THAT DOESN'T EVEN MENTION THE TERM SHEET AND WHICH

21   IS THE DOCUMENT THAT HE SAID YOU COULD, YOU COULD

22   JUST STAPLE TO YOUR ORDER.

23           THE PROPOSED ORDER, WHAT THEY WERE

24   ORIGINALLY ASKING FOR, DOESN'T EVEN MENTION THAT

25   TERM SHEET.

1          WHAT IT DOES SAY IS THAT THE COURT WOULD
2     ORDER CONNECTU TO TRANSFER ITS OWNERSHIP TO
3     FACEBOOK BY EXECUTING A DOCUMENT CALLED A STOCK
4     PURCHASE AGREEMENT.
5          AND THAT CONNECTU AND THREE OF ITS FOUR
6     PRINCIPALS, I SHOULD SAY NOT ALL FOUR OF ITS
7     PRINCIPALS BUT THREE OF THE FOUR, TO EXECUTE
8     SOMETHING THAT THEY CALL A CONNECTU STOCKHOLDER'S
9     AGREEMENT.
10         THOSE TWO DOCUMENTS AND THE ASSOCIATED
11    SCHEDULES AND OTHER PARTS OF THEM ARE, YOUR HONOR,
12    A VERY COMPLICATED CORPORATE, CORPORATE
13    TRANSACTIONAL DOCUMENT.
14         THEY'RE OVER A HUNDRED PAGES LONG IN
15    TOTAL.  A LAWYER, A CORPORATE LAWYER WHO, WHO
16    WORKED, WAS RETAINED BY CONNECTU BY THE NAME OF
17    GREGORY ROUSSEL, HE'S AN ASSOCIATE AT THE FENWICK
18    FIRM, SIGNED AN AFFIDAVIT WHICH WAS SUBMITTED TO
19    THIS COURT IN SUPPORT OF THE MOTION TO ENFORCE THE
20    SO-CALLED "SETTLEMENT."
21         AND, AND IN THAT -- I'M SORRY.  IT'S A
22    DECLARATION, YOUR HONOR, NOT AN AFFIDAVIT.
23         IN THAT DECLARATION MR. ROUSSEL SAID
24    ATTACHED HERETO AS EXHIBIT A IS A CONNECTU'S -- IS
25    A CONNECTU STOCKHOLDER AGREEMENT.

                                                    16

THIS AGREEMENT SPECIFIES THE RIGHTS AND
RESPONSIBILITIES THAT, THAT OUR SIDE WILL HAVE WITH
RESPECT TO THE OWNERSHIP OF FACEBOOK STOCK.

AND ATTACHED AS EXHIBIT B TO
MR. ROUSSEL'S DECLARATION IS SOMETHING THAT HE
CALLS A STOCK PURCHASE AGREEMENT, THE SECOND
DOCUMENT THAT IS REFERRED TO IN THEIR PROPOSED
ORDER WHEN THEY FILED THIS MOTION.

AND HE SAYS, MR. ROUSSEL SAYS, UNDER
OATH, QUOTE, "THIS AGREEMENT GOVERNS FACEBOOK,
INC.'S, PURCHASE OF CONNECTU'S STOCK AS SET FORTH
IN THE SETTLEMENT AGREEMENT." AND IT REFERS TO
THAT PROVISION ABOUT CONNECTU BEING -- OR FACEBOOK
BEING ABLE TO DETERMINE FORM AND SUBSTANCE.

AND MR. ROUSSEL ALSO SAYS THAT CONNECTU,
QUOTE, "HAS REFUSED TO EXECUTE THE FORMAL DOCUMENTS
REQUIRED TO EFFECTUATE THE STOCK PURCHASE AGREEMENT
AND STOCKHOLDER'S AGREEMENT."

AND HE ALSO ATTACHES AS EXHIBIT C THE
FORM OF SEVERAL OTHER DOCUMENTS THAT HE SAID ARE,
QUOTE, "REQUIRED TO FINALIZE THE TRANSACTION."

NOW, THAT'S WHAT THEY SAID IN THEIR
MOTION, YOUR HONOR. WE RESPONDED TO THAT MOTION
AND WE OPPOSED IT ON THE BASIS THAT THE ONE AND A
HALF PAGE HANDWRITTEN TERM SHEET WITH CROSS-OUTS

17

1    AND SO FORTH, NUMBER ONE, IS NOT ENFORCEABLE ON ITS

2    FACE BECAUSE IT IS NOT A COMPLETE ENFORCEABLE

3    CONTRACT.

4              AND, NUMBER TWO, TO THE EXTENT THAT --

5    AND IT'S SET OUT RIGHT HERE IN THEIR PROPOSED

6    ORDER, THEY WERE ASKING NOT FOR WHAT MR. CHATTERJEE

7    SAID HERE TODAY, BUT FOR AN ORDER AGAINST BOTH A

8    PARTY AND NONPARTIES TO EXECUTE THESE VERY

9    COMPLICATED COMPLEX CORPORATE DOCUMENTS, THAT, THAT

10   THE TERMS OF THOSE HUNDRED PLUS PAGE DOCUMENTS ARE

11   SO VARIED FROM ANYTHING THAT YOU CAN REASONABLY GET

12   OUT OF THIS ONE AND A HALF PAGE HANDWRITTEN TERM

13   SHEET THAT, THAT THAT IS A FURTHER REASON THAT,

14   THAT BASICALLY WHAT THE PARTIES HAD IN THAT TERM

15   SHEET, YOUR HONOR, WAS AN AGREEMENT TO AGREE, AN

16   UNENFORCEABLE STATEMENT OF THE GOALS OF A

17   TRANSACTION THAT IF IT WERE WORKED OUT TO THE

18   SATISFACTION OF BOTH PARTIES, MIGHT HAVE RESULTED

19   IN A CLOSING OF A SETTLEMENT.  BUT THAT NEVER

20   HAPPENED.

21             WHAT DID HAPPEN WAS IN THE FIRST PLACE

22   THE VERY, THE VERY NEXT DAY AFTER THAT ONE AND A

23   HALF PAGE HANDWRITTEN DOCUMENT WAS, WAS SIGNED,

24   THEIR COUNSEL, FACEBOOK'S COUNSEL, MR. COOPER, IN

25   FACT, WHO IS RIGHT HERE IN THE COURTROOM, JUST

1    HOURS LATER REFERRED IN AN E-MAIL TO, QUOTE, "THE

2    TENTATIVE SETTLEMENT REACHED LAST NIGHT," IN A

3    MESSAGE THAT MR. COOPER PROPOSED TO SEND TO THIS

4    COURT, AND I BELIEVE THAT SOME FORM OF IT WAS

5    ULTIMATELY COMMUNICATED TO THE COURT.

6         HE SAID, QUOTE, "THE PARTIES ARE IN THE

7    PROCESS OF PREPARING A FINAL AGREEMENT," AND I

8    REQUESTED THAT THE COURT, QUOTE, "STAY ALL

9    DEADLINES AND PROCEEDINGS WHILE THE PARTIES,"

10   QUOTE, "COMPLETE THE SETTLEMENT."

11        AND IN THE MASSACHUSETTS ACTION, WHICH

12   WAS THE HOPE WOULD BE SETTLED AS PART OF THIS

13   PROCESS, ANOTHER LAWYER FROM THE OTHER FIRM, FROM

14   THE PROSKAUER ROSE FIRM WHICH WAS REPRESENTING

15   FACEBOOK IN THE MASSACHUSETTS COURT, AND HE'S A

16   LAWYER, BY THE WAY, YOUR HONOR, WHO WASN'T INVOLVED

17   IN THESE NEGOTIATIONS OUT HERE AT ALL.

18        SO HE WAS CLEARLY TELLING SOMETHING TO

19   THE MASSACHUSETTS COURT THAT HE HAD BEEN TOLD BY

20   SOMEONE ON THEIR SIDE BECAUSE HE WOULDN'T HAVE ANY

21   OTHER WAY TO KNOW IT.

22        AND HE SAID IN AN E-MAIL TO THE

23   MASSACHUSETTS COURT, "THE PART --" QUOTE, "THE

24   PARTIES ARE STILL ATTEMPTING TO FINALIZE A

25   SETTLEMENT, AND IT MAY BE A FEW WEEKS,"

QUOTE-UNQUOTE.

SO THEY RECOGNIZED IMMEDIATELY AFTER THE
SETTLEMENT IN DOCUMENTS THAT THEIR OWN LAWYER SENT
THAT THIS WAS AN AGREEMENT TO AGREE.

AS THE CALIFORNIA STATE CASES PUT IT, IT
WAS AN AGREEMENT ON THE GOALS OF THE SETTLEMENT BUT
NOT ON THE MEANS BY WHICH THAT SETTLEMENT WAS GOING
TO BE AFFECTED.

AND I THINK YOU CAN FIND THAT, AND I
THINK YOU CAN FIND THAT IN CASES THAT ARE
PARTICULARLY PERTINENT TO THAT, YOUR HONOR.

AND THEY'RE CITED AT LEAST IN THE
SURREPLY BRIEF AND I BELIEVE IN THE OPPOSITION
BRIEF THAT WE SUBMITTED CALLED TERRY V. CONLAN AND
WEDDINGTON PRODUCTS AGAINST FLICK.

THOSE ARE STATE COURT OF APPEAL CASES.
AND I THINK THE PARTIES ARE IN AGREEMENT THAT
CALIFORNIA CONTRACT LAW CONTROLS THE ISSUE OF
WHETHER THIS ONE AND A HALF PAGE DOCUMENT IS AN
ENFORCEABLE CONTRACT OR IS NOT.

AND THERE IS ALSO A NINTH CIRCUIT
DECISION WHICH ESSENTIALLY ADOPTS THE, THE POSITION
OF THE STATE COURTS.  IT'S CALLED PERFUMEBAY.COM
AGAINST EBAY.

AND, YOUR HONOR, IN TERMS OF THE

1    IMMEDIATE ENFORCEABILITY OF THE CONTRACT, OF THE

2    ONE AND A HALF PAGE HANDWRITTEN TERM SHEET, THERE

3    ARE A NUMBER OF PROBLEMS WITH IT, BUT I THINK THE

4    CLEAREST ONE IS THAT NOTHING, NOTHING IN THAT

5    DOCUMENT DEFINES THE MEANS BY WHICH THIS GOAL OF

6    SETTLING THE CASE IS GOING TO BE AFFECTED.

7         THE MOST IMPORTANT WAY THAT IT FAILS TO

8    DO THAT IS THAT IT FAILS TO SPECIFY WHETHER THE

9    TRANSACTION, WHICH IS DESCRIBED IN THE DOCUMENT AS,

10   AS ESSENTIALLY THE, THE -- IN FACT, LET ME JUST GET

11   IT EXACTLY IN FRONT OF ME.

12        "THE ACQUISITION OF CONNECTU'S SHARES

13   CONSISTENT WITH A STOCK AND CASH FOR STOCK

14   ACQUISITION."

15        THE PROBLEM WITH THAT LANGUAGE, YOUR

16   HONOR, IS AS OUR EXPERT WITNESS, WHO IS A PROFESSOR

17   AT COLUMBIA BUSINESS SCHOOL WHO HAS PARTICIPATED

18   IN, IN HUNDREDS OF MERGERS AND ACQUISITIONS

19   TRANSACTIONS AS AN INVESTMENT BANKER AND TEACHES IN

20   THE FIELD, AS SHE HAS TESTIFIED, YOUR HONOR, THE

21   WORD "ACQUISITION" IS ITSELF AMBIGUOUS.  IT IS A

22   BROAD TERM.

23        IT INCLUDES BOTH THE CONCEPT OF A MERGER

24   AND, AND IT ALSO INCLUDES THE CONCEPT OF A SHARE

25   PURCHASE AGREEMENT, A STRAIGHT PURCHASE OF STOCK

21

1    FROM THE HOLDERS OF THAT STOCK.

2                NOW, WHAT WAS GOING ON BETWEEN FEBRUARY

3    22ND AND MID-APRIL WHERE THE -- WHEN THE

4    NEGOTIATIONS BROKE DOWN HERE, YOUR HONOR, IS THAT

5    THE PARTIES HERE WERE ACTUALLY NEGOTIATING THE

6    TERMS OF WHAT WAS BASICALLY A MERGER TRANSACTION.

7                AND, AGAIN, IF THE AGREEMENT WAS SO

8    CLEAR, AS MR. CHATTERJEE SUGGESTS, THAT FACEBOOK'S

9    RIGHT TO DETERMINE FORM AND DOCUMENTATION ENTITLED

10   THEM TO IN EFFECT DICTATE WHAT THE SUBSTANCE OF THE

11   PARTY'S TRANSACTION WAS GOING TO BE, NOT JUST FORM

12   AND DOCUMENTATION BUT SUBSTANCE, WHY IN THE WORLD

13   WOULD THEY SPEND TWO MONTHS NEGOTIATING A MERGER

14   AGREEMENT IF WHAT THEY REALLY WANTED IS THE

15   AGREEMENT THAT THEY HAVE PUT IN FRONT OF YOUR HONOR

16   AND SAID THAT THEY WANT YOU TO ORDER US TO SIGN,

17   WHICH IS A STOCK PURCHASE AGREEMENT.

18               THEY'RE TWO VERY DIFFERENT KINDS OF

19   TRANSACTIONS.  THEY HAVE A LOT OF SIGNIFICANT --

20   SUBSTANTIVE DIFFERENCES, SOME OF THEM HAVING TO DO

21   WITH THE LIABILITIES OF THE BUSINESS THAT IS BEING

22   REQUIRED, SOME OF THEM HAVING TO DO WITH THE TAX

23   CONSEQUENCES ON BOTH SIDES OF THE TRANSACTION WHICH

24   TAX CONSEQUENCES, [ REDACTED ]

25                         COULD BE VERY SIGNIFICANT FOR

22

1    THE PARTIES.

2           SO, YOUR HONOR, FOR SIX WEEKS OR TWO

3    MONTHS, THEY WORKED ON A MERGER TRANSACTION.  THEY

4    WERE HAVING SOME PROBLEMS.  THEY, THEY -- THEY

5    WERE, YOU KNOW, MAKING SOME PROGRESS BUT THERE WAS

6    NO AGREEMENT ON THE FINAL TERMS OF THAT MERGER

7    TRANSACTION.

8           AND THEN --

9           THE COURT:  COUNSEL, WHAT DO YOU MAKE OF

10   WHAT I'M TO DO?

11          MR. BARRETT:  WELL, YOUR HONOR, I THINK

12   THE SIMPLEST THING TO DO AND WHAT WE WOULD ASK YOU

13   TO DO IS TO DENY THE MOTION TO ENFORCE BECAUSE THEY

14   HAVE FAILED TO SHOW YOU THAT THERE'S AN ENFORCEABLE

15   CONTRACT BETWEEN THE PARTIES REPRESENTED BY THIS

16   ONE AND A HALF PAGE TERM SHEET AND THEY HAVE

17   CERTAINLY FAILED, THEY HAVE CERTAINLY FAILED TO

18   SHOW THAT, THAT THERE IS ANY, ANY LEGAL BASIS IN

19   CONTRACT LAW TO ORDER THE CONNECTU, AND PERSONAL

20   JURISDICTION FOR THAT MATTER, TO ORDER THE CONNECTU

21   PARTIES TO EXECUTE THE HUNDRED PLUS PAGES OF

22   COMPLEX CORPORATE DOCUMENTS WHICH THEY, BY THE WAY,

23   SHOWED US FOR THE VERY FIRST TIME WITH THE MOTION

24   THAT THEY FILED HERE.

25          THOSE WERE NOT THE DOCUMENTS THAT WERE

                                                      23

```
1    UNDER NEGOTIATION BETWEEN THE PARTIES.  THOSE ARE

2    COMPLETELY NEW DOCUMENTS.  THEY ARE SKEWED FOR ALL

3    KINDS OF ECONOMIC AND LEGAL REASONS AND IN

4    FACEBOOK'S FAVOR.  THEY'RE NOT WHAT YOU WOULD

5    EXPECT A NEGOTIATED TRANSACTION OF THIS TYPE TO

6    LOOK LIKE.

7            SO THE FIRST REQUEST WE WOULD MAKE TO

8    YOUR HONOR IS THAT YOU NOT ENFORCE THAT AGREEMENT.

9            NOW, IN ADDITION TO THE CONTRACT LAW

10   PROBLEMS WITH THE DOCUMENT THAT THEY'RE TRYING TO

11   ENFORCE, AND I'D BE HAPPY TO EXPAND ON THOSE

12   FURTHER.

13   [ REDACTED ]

14

15

16

17

18

19

20

21

22

23

24            THE COURT:  AND I AM A LITTLE CURIOUS

25   ABOUT WHAT THE PARTIES AGREED TO IN THIS DOCUMENT.
```

1    IS IT YOUR CONTENTION THAT THEY AGREED TO

2    NOTHING?

3         MR. BARRETT:  WHAT THEY AGREED TO, YOUR

4    HONOR, IS THAT -- IT'S VERY SIMPLE.  IT'S AN

5    AGREEMENT TO AGREE.  THEY HAD THE -- THEY HAVE THE

6    FORM OR THE GOALS OF A SETTLEMENT.

7         THE COURT:  WELL, BUT, DO YOU, DO YOU --

8    WHAT IS YOUR POSITION WITH RESPECT TO THE EXCHANGE

9    OF CASH AND STOCK?  IS THAT SOMETHING THAT THE

10   PARTIES AGREED TO?

11        MR. BARRETT:  THAT WAS PART OF THE

12   FRAMEWORK OF THE TRANSACTION, YOUR HONOR.  BUT BY

13   IT'S VERY NATURE, THIS KIND OF COMPLEX CORPORATE

14   TRANSACTION, WHETHER IT'S A MERGER OR A SHARE

15   PURCHASE AGREEMENT, AND OUR EXPERT, PROFESSOR

16   HITSCHERICH, REALLY SPEAKS TO THIS.  YOU SIMPLY,

17   YOU SIMPLY CAN'T SAY -- IT'S NOT LIKE MY, MY BUYING

18   A CAR FROM YOU, YOUR HONOR.

19        YOU HAVE A 2005 PRIUS AND I SAY, GREAT,

20   I'LL BUY IT FOR $10,000, AND THAT'S PROBABLY AN

21   ENFORCEABLE TRANSACTION.  IT'S PRETTY CLEAR WHAT

22   THE TERMS OF THAT AND THE MISSING TERMS CAN PERHAPS

23   BE IMPLIED BY THE COURT BY WHAT IN TERMS OF WHAT IS

24   REASONABLE.

25        THESE KINDS -- [REDACTED]

1  [ REDACTED ]

2

3  CORPORATE TRANSACTION INVOLVING THE ACQUISITION OF

4  THE STOCK OF ONE CORPORATION AND THE EXTINGUISHMENT

5  OF ITS EXISTENCE IS NOT THE KIND OF TRANSACTION

6  THAT YOU AND I CAN JUST SAY TO EACH OTHER YOU'LL

7  BUY MY COMPANY [ REDACTED ]

8         IF WE SAID THAT, THAT WOULD BE GREAT AND

9  THE NEXT THING THAT WE WOULD DO IN THE REAL WORLD,

10  YOUR HONOR, IS THAT WE WOULD GET TEAMS OF LAWYERS

11  AND INVESTMENT BANKERS TO GO OUT AND TO DO DUE

12  DILIGENCE AND SEE, A, WHAT THE LEGAL FORM OF THAT

13  TRANSACTION WOULD BE; AND, B, IS THERE ANY

14  INFORMATION THAT, THAT I, AS THE BUYER, MUST NEED

15  TO KNOW ABOUT THE BUSINESS THAT YOU'RE SELLING ME

16  AS A SELLER?

17         THE COURT:  BUT ISN'T THAT, ISN'T THAT --

18  CAN'T THAT BE THE SUBJECT OF AN AGREEMENT?

19         IN OTHER WORDS, I UNDERSTAND THE WORLD

20  THAT YOU'RE, THAT YOU'RE DESCRIBING TO ME BUT, BUT

21  I WOULD PUT THE WORD "SHOULD" IN THAT SENTENCE

22  RATHER THAN "MUST."

23         IN OTHER WORDS, IS THERE A REQUIREMENT

24  UNDER THE LAW --

25         MR. BARRETT:  UH-HUH.

1     THE COURT:  -- THAT A GROUP OF LAWYERS

2  GET TOGETHER AND DO THIS OR COULD THE PARTIES SAY

3  WE'LL SETTLE OUR DISPUTE BY PAYING YOU CASH AND

4  STOCK AND YOU RELEASE THE CLAIMS?

5     IS THERE ANYTHING ABOUT THAT SETTLEMENT

6  THAT IS ILLEGAL?

7     MR. BARRETT:  UM, WELL, YOUR HONOR, THE

8  ANSWER IS, YES, THERE COULD BE IF IT INVOLVES THE

9  EXCHANGE OF STOCK AND THE EXCHANGE OF STOCK UNLIKE

10  THE CASH TRANSACTION FOR THE CAR.

11     THE EXCHANGE OF STOCK IS GOVERNED BY THE

12  SECURITIES ACT OF -- THE SECURITIES EXCHANGE ACT OF

13  1934 AND THAT ACT IMPOSES, IMPOSES ON THE ISSUER,

14  IN THIS CASE FACEBOOK, THE COMPANY THAT IS GIVING

15  UP OR THAT IS PROVIDING ITS STOCK TO MY CLIENT IN

16  EXCHANGE FOR THEIR COMPANY AND THEIR CLAIMS AGAINST

17  FACEBOOK.

18     IT IMPOSES ON THEM IRRESPECTIVE OF ANY

19  QUESTIONS THAT CONNECTU MAY ASK OR ANYTHING ELSE

20  THAT CONNECTU MAY KNOW.  NO REQUIREMENT OF

21  RELIANCE.

22     THE KNOWLEDGE OF THE SELLERS, IF YOU WILL

23  IN THIS CASE, MY CLIENTS, IS ACTUALLY IRRELEVANT

24  UNDER SECTION 29 OF THE 1934 SECURITIES ACT IN AN

25  ACTION FOR RESCISSION OR, AS WE HAVE HERE, A

27

1    DEFENSE TO ENFORCEMENT OF A CONTRACT.

2              IT'S IRRELEVANT IF THE BUYER, THE

3    CONNECTU PARTY, THE FACEBOOK PARTY, FAILS TO

4    DISCLOSE MATERIAL INFORMATION ABOUT, ABOUT THE

5    COMPANY, THEIR COMPANY, WHOSE STOCK, MY CLIENTS,

6    ARE RECEIVING.

7              AND, YOUR HONOR, IN OUR, IN OUR SURREPLY

8    BRIEF --

9              THE COURT:  WELL, LET ME -- IF I

10   UNDERSTAND YOUR POSITION, AND I'M NOT MEANING TO

11   SIMPLIFY IT.

12             MR. BARRETT:  UH-HUH.

13             THE COURT:  BUT IT SEEMS TO ME THAT AT

14   THE HEART OF WHAT I HAVE BEFORE ME IS AN EFFORT BY

15   THE PARTIES TO SETTLE SEVERAL DISPUTES BY AGREEING

16   ON THE AMOUNT OF THE CONSIDERATION AND IN THE

17   LANGUAGE OF THE DOCUMENT, WHICH WAS DRAFTED AT THE

18   CLOSE OF THE CONFIDENTIAL MEDIATION, THE TWO SIDES

19   WANTED TO MAKE SURE THAT, THAT CERTAIN TERMS WERE

20   COMMITTED IN WRITING AND SIGNED TO, AND THEY LEFT

21   THEMSELVES WITH THE OPPORTUNITY TO DRAFT MORE

22   FORMAL DOCUMENTS, PERHAPS CONTEMPLATING THAT AS YOU

23   ACCURATELY POINT OUT, THESE ARE THE KINDS OF

24   TRANSACTIONS WHICH OFTEN ARE ACCOMPANIED BY OTHER

25   DOCUMENTS WITH PROTECTIONS AND WARRANTIES AND ALL

1    KINDS OF THINGS BUT WANTING TO MAKE SURE THAT THOSE

2    THINGS DID NOT STAND IN THE WAY OF THEIR SETTLEMENT

3    BECAUSE THEY WANTED TO MAKE SURE THAT

4    NOTWITHSTANDING ALL OF THAT THE SETTLEMENT DIDN'T

5    FALL APART.

6         AND WHAT I'M TRYING TO ASK IS, IS THAT --

7    IF THAT IS WHAT I FIND TO BE THE CASE, WHAT DO I

8    MAKE OF THAT?  I MEAN, WHAT DO I DO WITH THAT?

9         IN OTHER WORDS, I'M, I'M FACED WITH

10   LANGUAGE IN THE SETTLEMENT AGREEMENT WHERE THE

11   PARTIES CLEARLY COMMUNICATE TO ONE ANOTHER THIS IS

12   A SETTLEMENT AGREEMENT.

13        THERE MAY BE ASPECTS OF IT THAT ARE NOT

14   WRITTEN DOWN, BUT THERE ARE ASPECTS THAT

15   THE PARTIES INTEND TO BE BOUND TO.

16        AND ACTUALLY SET UP THIS COURT AS A PLACE

17   TO ENFORCE.  THE WORD "ENFORCE" MEANS WE'VE GOT

18   SOMETHING, AND WE NEED A PLACE NOW TO GO MAKE SURE

19   IT TAKES PLACE.

20        THAT IS PRETTY STRONG LANGUAGE TO ENFORCE

21   IT.  AND SO IS IT YOUR ARGUMENT THAT, THAT THIS

22   COURT WAS NOT EMPOWERED BY THE PARTIES TO ENFORCE

23   THAT AGREEMENT?

24        MR. BARRETT:  WELL, YOUR HONOR, I THINK

25   THE COURT HAS JURISDICTION TO CONSIDER WHETHER TO

1    ENFORCE IT.

2            WITH RESPECT TO THE LANGUAGE THAT COUNSEL

3    REFERS TO, THESE TERMS ARE BINDING AND THIS

4    DOCUMENT MAY BE SUBMITTED INTO EVIDENCE TO ENFORCE

5    THIS AGREEMENT.

6            YOUR HONOR, THIS WOULD NOT BE THE FIRST

7    CASE WHERE, WHERE TWO PARTIES HAD WHAT THEY THOUGHT

8    WAS A DEAL, AN ENFORCEABLE CONTRACT, AND THEY MAY

9    HAVE EXPRESSED THAT AS THEY DID IN PARAGRAPH 5 OF

10   THE TERM SHEET.

11           AND BY THE WAY, YOUR HONOR, IT'S CALLED

12   TERM SHEET AND SETTLEMENT AGREEMENT.

13           I WOULD CONTEND THAT THE VERY TITLE OF

14   THE DOCUMENT IS ITSELF AMBIGUOUS.

15           IT DOESN'T SAY IT'S A SETTLEMENT

16   AGREEMENT.  IT SAYS IT'S A TERM SHEET AND

17   SETTLEMENT AGREEMENT, AND, IN FACT, THE FIRST WORDS

18   ARE TERM SHEET AND A TERM SHEET, I THINK, IN

19   GENERAL BUSINESS LANGUAGE IS PROBABLY NOT AN

20   ENFORCEABLE DOCUMENT.

21           BUT, BUT -- SO, AGAIN, THE DOCUMENT IS

22   KIND OF A STRANGE MIXTURE, IF YOU WILL, OF, YES,

23   THE FACT THAT THEY USE THE WORD "BINDING" AND THE

24   WORD "ENFORCE" IS SOME EVIDENCE THAT THAT IS WHAT

25   THE PARTIES INTENDED.

1          BUT, YOUR HONOR, THE LAW IS EXTREMELY

2     CLEAR THAT, THAT NOTWITHSTANDING THOSE KINDS OF

3     STATEMENTS BY THE PARTIES, IF THE DOCUMENT DOES NOT

4     CONTAIN SUFFICIENT TERMS AND SUFFICIENT CLARITY,

5     AND IF IT IS AMBIGUOUS TO THE POINT WHERE, WHERE IT

6     DOESN'T MEET THE REQUIREMENTS FOR AN ENFORCEABLE

7     CONTRACT UNDER STATE LAW, THEN, THEN

8     NOTWITHSTANDING WHAT THE PARTIES MAY HAVE THOUGHT

9     OR MAY HAVE HOPED WHEN THEY, WHEN THEY HAD THAT

10    HANDSHAKE, WHEN THEY SIGNED THAT PIECE OF PAPER,

11    THE COURT STILL CANNOT ENFORCE IT BECAUSE IT IS NOT

12    A CONTRACT AND CALLING IT A CONTRACT OR CALLING IT

13    ENFORCEABLE DOESN'T MAKE IT SO IF IT DOESN'T HAVE

14    THE REQUIRED TERMS.

15          THE COURT:  YOU SEE, YOUR STATEMENT JUST

16    MADE IS CLOSE TO MY UNDERSTANDING OF THE LAW.

17          MR. BARRETT:  I'M GLAD, YOUR HONOR.

18          THE COURT:  THAT I'M LIMITED IN MY

19    ABILITY TO ENFORCE IT IF THE PARTIES HAVE NOT COME

20    TO AN ENFORCEABLE AGREEMENT.

21          MR. BARRETT:  RIGHT.

22          THE COURT:  AND SO THAT'S WHY I TURN OVER

23    HERE TO YOUR OPPONENT TO ASK DON'T I NEED TO HAVE A

24    PROCEEDING TO BE CONVINCED THAT THIS IS AN

25    ENFORCEABLE AGREEMENT?  AND I DON'T KNOW HOW I GET

1    THERE, BUT I DO NEED TO AT LEAST PUT MYSELF IN A

2    POSITION ON THIS MOTION TO GO THROUGH THIS AND IN

3    SOME WAY TO GET TO THE POINT WHERE I UNDERSTAND

4    WHAT IS IT THAT MAKES THIS ENFORCEABLE AND DO I

5    HAVE ALL OF THE INGREDIENTS HERE?

6              MR. CHATTERJEE:  THE ANSWER TO THAT

7    QUESTION IS NO, YOUR HONOR.

8              THE MOTIONS FOR ENFORCEMENT AND THE CASES

9    CITED ARE GENERALLY DEALING WITH THE ISSUE OF IS

10   THERE A MUTUAL ASSENT, IN OTHER WORDS, THAT BOTH

11   PARTIES ACTUALLY AGREED TO SOMETHING.

12             TYPICALLY IN THOSE CASES THERE MIGHT BE

13   E-MAIL EXCHANGES OR THINGS GOING BACK AND FORTH

14   WHERE IT'S NOT CLEAR THAT THE PARTIES HAVE AGREED

15   TO SOMETHING.

16             IN THIS CASE WE HAVE SPECIFIC TERMS.  IT

17   SAYS THE TERMS ARE BINDING.  IT SAYS THAT YOUR

18   HONOR CAN CONSIDER THIS DOCUMENT FOR PURPOSES OF

19   ENFORCEMENT.

20             IT HAS SPECIFIC SHARES.  IT HAS SPECIFIC

21   DOLLARS.  UNUSUAL RESTRICTIONS ON WHAT CAN OR CAN'T

22   BE DONE WITH THE SHARES.

23             IT DOESN'T SAY FACEBOOK AND CONNECTU WILL

24   MUTUALLY DETERMINE THE FORM AND DOCUMENTATION OF

25   THE TRANSACTION.  IT SAYS FACEBOOK DOES IT.

THEY HAD SIX LAWYERS WITH THEM WHEN THEIR
CLIENT CHOSE TO SIGN THIS DOCUMENT.  SIX LAWYERS.
THEY HAD A WHARTON BUSINESS PROFESSOR, HOWARD
WINKLEVOSS, WHO IS CONSIDERED AN EXPERT, WHO TAUGHT
THERE FOR 12 YEARS WHO WAS AT THE MEDIATION WHEN
THEY CHOSE TO SIGN THIS DOCUMENT.

THE ISSUE OF THE EVIDENTIARY HEARING IS
WHETHER THE PARTIES AGREED TO SOMETHING.  THEY
AGREED TO THIS AND THE TERMS ARE CLEARLY LAID OUT
HERE.  THERE IS CONSIDERATION ON BOTH ENDS OF IT.

EACH PARTY IS GETTING A BENEFIT OF A
BARGAIN THAT THEY STRUCK AND THIS CASE SHOULD BE
OVER.  THERE IS NO EVIDENTIARY HEARING NECESSARY AS
TO WHETHER THEY AGREED TO ANYTHING.

ANYTHING, YOUR HONOR, THAT YOU WOULD
CONSIDER ABOUT WHAT THIS AGREEMENT MEANS IS GOING
TO HAVE TWO ISSUES WITH IT:  THE FIRST ONE IS THAT
IT WOULD DEAL WITH SUBJECTIVE INTENT; THAT IS, WHAT
WAS IN THE MINDS OF THE PARTIES WHEN THEY SIGNED IT
RATHER THAN WHAT IS THE INTENTION OF THE THEM THAT
THEY EXPRESSED ON THE DOCUMENT.

THE SECOND ISSUE IS TO THE EXTENT THAT
THERE WAS ANY DISCUSSION BETWEEN THE PARTIES, AND I
DON'T WANT TO GO INTO WHAT HAPPENED AT THE
MEDIATION AT THIS POINT.  IT'S ALL PROTECTED BY THE

1    MEDIATION PRIVILEGE.

2         SO THIS IS THE DOCUMENT WHERE THE PARTIES

3    MANIFESTED THEIR MUTUAL INTENT, CONNECTU DIDN'T

4    AGREE, DIDN'T ASK TO PARTICIPATE IN THE FORM AND

5    DOCUMENTATION OF THE TRANSACTION.

6         IT SPECIFICALLY RECITED THE PARTIES MAY,

7    THAT THEY MAY ENGAGE IN INFORMAL DOCUMENTATION,

8    THAT THE THINGS THAT MR. BARRETT TALKS ABOUT, BUT

9    SHOULD THEY NOT AND THIS IS IT AND ALL YOU NEED TO

10   DO, YOUR HONOR, IS ENFORCE THE WORDS THAT ARE

11   WRITTEN ON THIS PAGE (INDICATING).

12        THE COURT:  WELL, DO YOU TAKE ISSUE WITH

13   THE STATEMENT OF LAW THAT THIS MUST BE ENFORCEABLE?

14        MR. CHATTERJEE:  IN ORDER FOR THE COURT

15   TO ENFORCE IT?

16        YOUR HONOR, THIS MUST, THIS MUST BE

17   ENFORCEABLE FOR THE COURTS TO ENFORCE IT AND THIS

18   IS AN ENFORCEABLE AGREEMENT.

19        THE COURT:  WELL, THAT'S A CONCLUSION

20   THAT YOU WANT ME TO REACH.  BUT WHAT MAKES A

21   DOCUMENT ENFORCEABLE UNDER CALIFORNIA LAW DEPENDS

22   UPON WHETHER OR NOT THE PARTIES HAVE AGREED TO

23   WHAT, ALL OF THE MATERIAL TERMS?

24        HOW DO I -- WHAT IS THE DEFINITION OF

25   WHAT MAKES THIS ENFORCEABLE OR NOT.

1          MR. CHATTERJEE:  THE DEFINITION OF WHAT

2    MAKES THIS ENFORCEABLE IS IF THEY AGREED TO THE

3    MATERIAL TERMS AND I'LL SUBMIT, YOUR HONOR, YOU

4    CAN'T HAVE THIRD PARTIES THAT WERE NOT INVOLVED IN

5    THE NEGOTIATION COMING IN AND REVISITING OF WHAT

6    MAY OR MAY NOT BE CONSIDERED MATERIAL AFTER THE

7    FACT.

8          HERE ALL OF THE PARTIES WERE ADVISED BY

9    SOPHISTICATED COUNSEL.

10          THEY PUT DOWN EVERYTHING THAT THEY FELT

11   WAS MATERIAL.  THEY NEGOTIATED IT, THEY WROTE IT,

12   AND THEY SIGNED IT.

13          THE COURT:  WHOSE HANDWRITING IS THIS BY

14   THE WAY?

15          MR. CHATTERJEE:  THIS IS MR. HOWITSON'S

16   HANDWRITING.

17          THE COURT:  WHO IS HE?

18          MR. CHATTERJEE:  HE'S IN-HOUSE COUNSEL

19   FOR FACEBOOK.

20          THIS IS AN ARM'S LENGTH TRANSACTION

21   BETWEEN SOPHISTICATED PARTIES.  PEOPLE WILL PUT

22   DOWN WHAT THE MATERIAL INFORMATION THAT THEY NEED

23   IN THERE.  THEY CAN'T COME IN THERE AFTER THE FACT

24   AND SAY, OH, I WISH I WOULD HAVE KNOWN THAT OR I

25   WISH I WOULD HAVE KNOWN SOME OTHER THING.

THEY HAD AN OBLIGATION AND OPPORTUNITY TO NEGOTIATE
FOR IT AND PUT REPRESENTATIONS IN WHERE THEY WANTED
IT.

THE COURT:  WHAT DO I MAKE OF ALL OF THE
POST-SHEET CONSIDERATIONS AND DOCUMENTS IN TERMS OF
THE KIND OF PROVISIONS THAT WERE THERE WHICH DO NOT
APPEAR IN THE SETTLEMENT AGREEMENT?

MR. CHATTERJEE:  YOUR HONOR, LIKE IT SAYS
IN THE AGREEMENT, IT CONTEMPLATED THAT THE PARTIES
EXECUTE MORE FORMAL DOCUMENTS.

THERE WERE DISCUSSIONS AFTERWARDS ABOUT
HAVING SOME OTHER KIND OF AGREEMENT PUT IN PLACE
THAT WOULD SUPPLANT THE TERM SHEET AND SETTLEMENT
AGREEMENT.  AND THERE WAS, THERE WAS THINGS
NEGOTIATED BACK AND FORTH AND THAT'S WHAT HAPPENED.

NOW, THERE WERE TIMES WHEN CONNECTU'S
COUNSEL ASKED OUR CORPORATE COUNSEL FOR MORE TIME
BECAUSE HE WAS HAVING DIFFICULTY WITH HIS CLIENTS.
BUT THAT IS COMPLETELY IRRELEVANT WHEN IT COMES TO
THE ENFORCEMENT OF THE TERMS IN THE SETTLEMENT
AGREEMENT.  IT CONTEMPLATES THAT IT BE BINDING TO
ARBITRATION BUT THIS DID NOT HAPPEN.

THE COURT:  WELL, IT SOUNDS IN FRAUD IN
CONNECTION WITH THE SETTLEMENT PROCESS ITSELF.
THERE'S NO PLEADING BEFORE ME THAT RAISES THAT, BUT

36

1   LET'S ASSUME THAT SOMEHOW THAT'S AN ISSUE.  HOW DO

2   I HANDLE THAT IN THE CONTEXT OF THIS DOCUMENT IN

3   TERMS OF YOUR CLIENT'S POSITION?

4           MR. CHATTERJEE:  YOUR HONOR, OUR POSITION

5   IS THAT YOU REJECT IT OUTRIGHT.  IT'S AN ABSURD

6   POSITION TO TAKE.  THERE'S NO REPRESENTATION IN

7   THIS DOCUMENT AS TO SHARE PRICE AND FOR THEM TO

8   RAISE THAT ALLEGATION IS SIMPLY TRANSFORMING WHAT

9   IS AN OPEN MARKET ISSUE.  FACEBOOK IS NOT A

10  PUBLICLY TRADED COMPANY.

11          FACEBOOK WAS IN LITIGATION WITH THEIR

12  CLIENTS.  DISCOVERY WAS ONGOING.  WE PRODUCED

13  CERTAIN DOCUMENTS WITH STOCK EVALUATION AND WE TOLD

14  THEM DISCOVERY WAS COMPLETE.  THEY DECIDED TO GO

15  INTO THE MEDIATION KNOWING DISCOVERY WAS

16  INCOMPLETE.

17          THEY THEN TRIED, ONCE THEY DECIDED NOT TO

18  HONOR THE TERM SHEET AND SETTLEMENT AGREEMENT, TO

19  GO TO BOSTON AND INTRODUCE OTHER DISCOVERY ISSUES

20  ASSOCIATED WITH DOCUMENT PRODUCTION AND THIS IS

21  NOTHING SHORT OF JUST A DOCUMENT PRODUCTION ISSUE.

22          AND HERE'S WHAT JUDGE WOODLOCK HAD TO SAY

23  IN THE FEBRUARY ORDER, HE SAID THAT FROM ALL THAT

24  APPEARS THE PARTIES WERE PREPARED TO SETTLE THEIR

25  DISPUTES THEN DESPITE THE FACT THAT ASPECTS OF

DISCOVERY IN THIS CASE MOST PRESENTLY FOR PRESENT
PURPOSES DOCUMENT PRODUCTION HAD NOT BEEN COMPLETED
AND UNRESOLVED DISCOVERY ISSUES REMAINED
OUTSTANDING."

THEY KNEW THAT THEY DIDN'T HAVE ALL OF
THE INFORMATION THEY NEEDED.  FOR THEM TO COME IN
NOW AND SAY WE HAVE SOME SORT OF OBLIGATION TO TELL
THEM SOMETHING THEY DIDN'T KNOW, WHEN THEY DIDN'T
ASK FOR THE REPRESENTATION IN THIS DOCUMENT, THEY
KNEW THEY DIDN'T HAVE ALL OF THE DOCUMENTS.

IN FACT, THE MICROSOFT INFORMATION AND
THE PRESS RELEASE THAT THEY SUBMIT IN THEIR PAPERS,
THEY DIDN'T HAVE ANY OF THOSE CORPORATE DOCUMENTS
AND THEY KNEW IT AND FOR THEM TO COME IN AND SAY
THAT, OH, WE HAD INCOMPLETE INFORMATION WHEN WE
SETTLED THE CASE, YOUR HONOR, THAT'S WHAT HAPPENS
IN SETTLEMENT.

THE COURT:  BUT IN ORDER TO REJECT THAT,
DOESN'T IT HAVE TO BE TENDERED TO THE COURT IN SOME
FORM?  I'M A LITTLE CONCERNED THAT THE MOTION TO
ENFORCE THE SETTLEMENT AGREEMENT DOES NOT PROVIDE
ME WITH AN OPPORTUNITY TO ADJUDICATE THE ISSUE OF
WHETHER THERE WAS FRAUD IN THE INDUCEMENT OF THE
SETTLEMENT AGREEMENT, NOW MAYBE IT DOES AND I NEED
TO SEE CLEARLY HOW I HANDLE THAT IN CONNECTION WITH

38

1    THE MOTION.

2         I HAVEN'T READ ENOUGH CASES WHERE PARTIES

3    HAVE TENDERED A SETTLEMENT AGREEMENT AND SOMEONE

4    HAS OBJECTED TO IT ON THE GROUNDS THAT IT WAS

5    INDUCED BY FRAUD AND THE COURT GOES AHEAD AND SAID,

6    WELL, I'M GOING TO SOLVE THAT IN CONNECTION WITH A

7    MOTION AND AS OPPOSED TO A TRIAL AND THAT'S WHAT

8    I'M ASKING FOR IS WHAT IS THE PROCESS?

9         IT'S CLEAR THAT THE PARTIES AGREED THAT I

10   CAN ENFORCE THIS AGREEMENT AND THAT THIS AGREEMENT

11   WOULD BE SUBMITTED INTO EVIDENCE AS PART OF THAT

12   ENFORCEMENT.

13        AND I UNDERSTAND FROM CALIFORNIA LAW THAT

14   A MOTION IS PERMISSIBLE IN THE CONTEXT OF AN OPEN

15   CASE THAT WOULD ENFORCE THE SETTLEMENT AGREEMENT.

16        BUT I HAVEN'T GONE FAR ENOUGH INTO IT TO

17   FIND WHAT HAPPENS IF ANOTHER PARTY IN THAT SAYS,

18   WELL, IT WAS INDUCED BY FRAUD.  HOW DO I SOLVE

19   THAT?

20        MR. CHATTERJEE:  THANK YOU FOR THAT

21   QUESTION.

22        ONE OF THE ISSUES THAT CONNECTU HAS

23   RAISED IS THAT THIS CONTRACT IS VOID UNDER SECTION

24   29 OF THE SECURITIES EXCHANGE ACT.  WITH THE

25   UNDERLYING VIOLATION OF SECTION 29 BEING A 10 OR

39

1    10(B) VIOLATION AND THEIR POSITION IS THAT THIS

2    AGREEMENT CANNOT BE ENFORCED UNDER SECTION 29 SO

3    THEIR OPPOSITION EFFECTIVELY HAS PUT THIS ISSUE

4    BEFORE YOU.

5              I DON'T THINK YOU NEED TO HAVE FURTHER

6    EVIDENCE SUBMITTED, YOUR HONOR.

7              THEY ARE TAKING THE POSITION THAT THIS

8    AGREEMENT IS VOID.  IF THEY, IF THEY MAKE -- IF

9    THEY SUBMIT THAT ARGUMENT TO YOU, YOUR HONOR, AND

10   YOU DECIDE TO ENFORCE THIS AGREEMENT, YOU HAVE

11   REJECTED THAT ARGUMENT.

12             FOR THEM TO PROCEED ON THEIR FRAUD

13   THEORY, I THINK THEY HAVE TO PUT FORTH SOME KIND OF

14   SHOWING.  THEY HAVE PUT FORWARD NO SHOWING OF ANY

15   SCIENTER.

16             THEIR CLAIM APPEARS TO BE SOME SORT OF

17   OMISSION IN A PRIVATELY HELD ARM'S LENGTH

18   TRANSACTION.  THAT WOULD ONLY COME INTO PLAY IF

19   THERE WAS A DUTY AND THEY DON'T ANSWER THE QUESTION

20   OF THEIR KNOWLEDGE OF THE FACT THAT DISCOVERY WAS

21   ONGOING AND INCOMPLETE.

22             IN FACT, THEY ENDORSE JUDGE WOODLOCK'S

23   RECOGNITION OF THAT IN HIS ORDER.  YOU CAN REJECT

24   THE EFFORT TO TRY AND VOID THIS AGREEMENT UNDER

25   SECTION 29 BASICALLY BY SAYING THEY HAVE PUT

1  FORWARD ANY EVIDENCE, NONE TO SUPPORT A 10(B)

2  VIOLATION THAT WOULD IN TURN LEAD TO SECTION 29

3  VOIDING OF THE AGREEMENT.

4          THE COURT:  WHAT IS YOUR ANSWER TO MY

5  QUESTION THE PARTIES AGREE THAT THIS MATTER CAN BE

6  STIPULATED THAT SAN JOSE FEDERAL COURT JURISDICTION

7  TO ENFORCE THIS AGREEMENT, SUBMIT THIS INTO

8  EVIDENCE TO ENFORCE THE AGREEMENT AND CALIFORNIA

9  LAW PROVIDES THAT A, THAT A MOTION TO ENFORCE IS,

10  IS PERMISSIBLE.  HOW DO I HANDLE A CLAIM THAT THERE

11  IS FRAUD IN CONNECTION WITH THE AGREEMENT?

12          MR. BARRETT:  WELL, YOUR HONOR, WE WOULD,

13  OF COURSE, BE PLEASED TO SUBMIT ANY PLEADINGS THAT,

14  THAT YOUR HONOR BELIEVES IS NECESSARY TO ASSIST IT

15  IN DECIDING THAT QUESTION.

16          I DO, I DO THINK THAT, THAT IT WAS RAISED

17  IN OUR OPPOSITION BRIEF AND IN OUR SURREPLY BRIEF

18  AND SOME OF THE EVIDENCE WAS PRESENTED IN THE FORM

19  OF AFFIDAVITS WITH THOSE TWO SUBMISSIONS WHICH WE

20  UNDERSTAND YOUR HONOR WOULD TAKE INTO ACCOUNT IN

21  DECIDING WHAT TO DO.

22          AND THEN TO ANSWER COUNSEL'S QUESTION,

23  FIRST OF ALL, WHEN THIS BECAME A SECURITIES

24  TRANSACTION, [REDACTED]

25

1    [ REDACTED ]                              WHETHER OR NOT THEY

2    KNEW ABOUT IT, THEY INTENDED IT, WHETHER ALL OF

3    THOSE FANCY CORPORATE LAWYERS THAT THEY HAD ON

4    THEIR SIDE, AND YOU HEARD THAT THIS TERM SHEET WAS

5    WRITTEN BY THEIR IN-HOUSE GENERAL COUNSEL, WHETHER

6    OR NOT THEY FOCUSSED ON THE FACT THAT THEY HAD

7    DISCLOSURE OBLIGATIONS BY VIRTUE OF THE SECURITIES

8    LAW, THEY HAD THOSE OBLIGATIONS.

9            THE LAW IS VERY CLEAR ON THAT, YOUR

10   HONOR.  WE WOULD BE HAPPY TO BRIEF THAT FURTHER,

11   ALTHOUGH I THINK WE HAVE GOT AMPLE BRIEFING ON IT

12   IN OUR SURREPLY.  SO THAT'S WHERE THE DUTY COMES

13   FROM.

14           THE DUTY COMES FROM WHEN A COMPANY TRADES

15   IN ITS OWN SECURITIES WITH AN OUTSIDE PARTY, IT

16   DOESN'T MATTER WHO THEY ARE, IT DOESN'T MATTER IF

17   IT'S US OR MICROSOFT.  THEY HAVE A DUTY TO DISCLOSE

18   MATERIAL INFORMATION.

19           SOMETIMES THAT DUTY IS IMPLEMENTED BY

20   INVITING THE OTHER SIDE TO COME IN AND DO DUE

21   DILIGENCE.  THAT'S ONE WAY TO DEAL WITH IT TO MAKE

22   SURE THE OTHER SIDE GETS ANYTHING THEY NEED.  YOU

23   JUST GIVE THEM ACCESS TO YOUR COMPANY AND YOUR

24   BOOKS AND RECORDS.

25           THAT DIDN'T HAPPEN HERE.  [ REDACTED ]

                                                    42

[ REDACTED ]

        THEY, WITH THEIR, NOT ONLY THEIR GENERAL
COUNSEL, BUT THEIR CHIEF FINANCIAL OFFICER, MR. YU,
AND, AND MR. ZUCKERBERG, WHO IS NOT ONLY THE CEO OF
THE COMPANY BUT IS ON THE BOARD OF DIRECTORS OF THE
COMPANY, AND THAT'S IMPORTANT FOR REASONS I'LL GET
TO IN A MINUTE, THE THREE OF THEM WERE PRESENT AT
THE MEDIATION.

[ REDACTED ]

[ REDACTED ]

WHAT, WHAT THEY DIDN'T TELL US, WHAT
THOSE THREE FACEBOOK EXECUTIVES WHO WERE SITTING IN
THAT MEDIATION DIDN'T TELL US, EVEN THOUGH AS A
MATTER OF FEDERAL SECURITIES LAW THEY HAVE AN
ABSOLUTE OBLIGATION TO DISCLOSE MATERIAL
INFORMATION WHETHER WE ASKED FOR IT OR NOT, YOUR
HONOR, REMEMBER, SECURITIES LAW IS NOT CAVEAT
EMPTOR.  SECURITY LAWS IS DISCLOSURE WHEN THE LAW
SAYS THAT YOU HAVE TO MAKE IT AND THE LAW SAYS THAT
WHEN THEY DO THIS TRADE, THEY HAVE TO MAKE IT.

WHAT THEY DIDN'T TELL US WAS THAT THE
FACEBOOK BOARD, OF WHICH MR. ZUCKERBERG, WHO WAS AT
THAT MEETING WAS A MEMBER, AND UNDOUBTEDLY THE CFO
AND GENERAL COUNSEL KNEW ABOUT THIS BECAUSE THAT'S
PART OF THEIR JOB.

BUT WHAT THEY DIDN'T TELL US AND THEY
ONLY TOLD US LATER ON IN MARCH WHEN THE CORPORATE
LAWYERS, IF YOU WILL, PERHAPS, DOING SOME OF THAT
DUE DILIGENCE IN NEGOTIATING THE TRANSACTION ASKED
THE QUESTION, THEY DIDN'T TELL US ABOUT WHAT IS
CALLED A 409(A) VALUATION.  AND I DON'T KNOW IF

YOUR HONOR HAS RUN ACROSS THAT TERM IN SOME OF YOUR

OTHER CASES.

BUT THAT IS A VALUE THAT, THAT A

VALUATION THAT, THAT A PRIVATE COMPANY HAS A HUGE

INCENTIVE TO MAKE UNDER THE INTERNAL REVENUE CODE

RECENTLY AMENDED WITHIN THE LAST COUPLE YEARS.

THE REASON IT HAS A HUGE INCENTIVE TO DO

THAT IS THAT BECAUSE IF IT GRANTS STOCK OPTIONS AT

A PRICE LOWER THAN THE 409(A) VALUATION OR, OR

HIGHER, IT, IT -- THE EMPLOYEES WHO RECEIVED THOSE

OPTIONS MAY FACE EXTREME, EXTREME TAX PENALTIES IN

CONNECTION WITH RECEIVING THOSE OPTIONS AND THE

COMPANY MAY, MAY INCUR SOME LIABILITY AS WELL.

SO THERE IS A VERY STRONG TAX REASON TO

DO AN ACCURATE 409(A) VIOLATION.

IN ORDER FOR THAT VALUATION TO BE

EFFECTIVE UNDER THE INTERNAL REVENUE CODE, THE

COMPANY HAS TO GO THROUGH CERTAIN STEPS THAT ARE

PRESCRIBED IN THE STATUTE.

AND ULTIMATELY THOSE STEPS CULMINATE IN

THE COMPANY'S BOARD OF DIRECTORS PASSING A

RESOLUTION WHICH SAYS THAT THE FAIR MARKET VALUE OF

OUR STOCK IS X.  SO THIS IS NOT, YOU KNOW, SOME

VAGUE, VAGUE CONCEPT OF VALUATION.  THIS IS, THIS

IS A RESOLUTION OF THE BOARD OF DIRECTORS AND YOU

1    HAD A MEMBER OF THE BOARD OF DIRECTORS AND YOU HAD

2    THE SENIOR FINANCIAL OFFICER AND THE SENIOR LEGAL

3    PERSON OF THE COMPANY SITTING THERE AT THAT

4    MEDIATION, KNOWING THAT THEY HAD AN OBLIGATION TO

5    DISCLOSE ALL MATERIAL INFORMATION.

6    [ REDACTED ]

7

8    _____

9            AND YOUR HONOR, WHAT WAS THE FAIR MARKET

10   VALUE ACCORDING TO THE BOARD OF DIRECTORS AT THAT

11   TIME?  [ REDACTED ]

12

13

14           YOUR HONOR, WE ALSO HAVE TO SHOW IT WAS

15   MATERIAL.  [ REDACTED ]

16

17

18

19

20           COUNSEL IS RIGHT, WE HAVE TO SHOW

21   SCIENTER.  YOUR HONOR, I THINK I JUST DESCRIBED A

22   BASIS OF PRIMA FACIE SCIENTER [ REDACTED ]

23

24

25

[ REDACTED ]

THEY KNEW BECAUSE THEY PARTICIPATED IN
THESE BOARD MEETINGS.  MR. ZUCKERBERG MUST HAVE
BECAUSE HE'S A BOARD MEMBER AND THE OTHERS I'M SURE
DID BECAUSE OF THEIR POSITION.  [ REDACTED ]


THE COURT:  LET ME GO BACK AND I'VE READ
ALL OF THIS.  BUT LET ME GO BACK TO A STATEMENT
THAT YOU MADE THAT UNDER THE SECURITIES LAW THERE
WAS AN OBLIGATION TO, TO MAKE THE, MAKE THE -- MAKE
A CERTAIN KIND OF DISCLOSURE.

MR. BARRETT:  UH-HUH.

THE COURT:  THAT'S THE PART I, I GUESS, I
NEED EDUCATING ON.

IN OTHER WORDS, IN THE CONTEXT OF A
SETTLEMENT, IF STOCK IS OFFERED IN THE GIVE AND
TAKE OF THE SETTLEMENT IN CASH, AT THAT POINT THE
NEGOTIATIONS HAVE TO TAKE A DIFFERENT TURN IS WHAT
YOU'RE TELLING ME.

AT THAT POINT THE PARTY CANNOT OFFER
STOCK BUT MUST AT THAT POINT MAKE A DISCLOSURE
ABOUT DUE DILIGENCE KIND OF DISCLOSURE AND COMPLY
WITH ALL OF THE SECURITIES LAWS WITH RESPECT TO THE
DISCLOSURE.

AND INDEED IT COULD NEVER, UNDER THE LAW,

47

1  OFFER STOCK WITHOUT THOSE DISCLOSURES AND IF STOCK

2  IS OFFERED AS A PART OF THE SETTLEMENT, IT IS

3  ILLEGAL.

4          MR. BARRETT:  WELL, THEY ARE CERTAINLY --

5  IF THEY DO THAT, YOUR HONOR, I THINK THAT'S

6  ESSENTIALLY CORRECT.  IF THEY DO THAT --

7          THE COURT:  WHAT IS YOUR AUTHORITY FOR

8  THAT?

9          MR. BARRETT:  I'LL GET TO THAT IN ONE

10 MINUTE.  IF THEY DO THAT, THEY'RE CERTAINLY TAKING

11 THAT RISK.

12         THE COURT:  WELL, BOTH SIDES ARE TAKING A

13 RISK, IT SEEMS TO ME, BECAUSE IT COULD BE THAT THE

14 PARTY WHO GETS THE STOCK, GETS STOCK WHEN THE

15 DISCLOSURE COMES OUT IS WORTH MORE.

16         MR. BARRETT:  ABSOLUTELY.  AND

17 OBVIOUSLY --

18         THE COURT:  IT JUST DEPENDS ON, IT

19 DEPENDS ON, AND AS I UNDERSTAND THIS TRANSACTION

20 NEITHER SIDE IS TRYING TO MOVE AWAY FROM THE

21 TRANSACTION BECAUSE THEY BELIEVE THAT SOMETHING

22 ABOUT THE VALUE IS DIFFERENT.  IT'S BECAUSE OF THE

23 FAILURE TO DISCLOSE, YOUR ARGUMENT IS THE FAILURE

24 TO DISCLOSE THE VALUATION FOR THE STOCK BENEFITS IS

25 INFORMATION THAT SHOULD HAVE BEEN DISCLOSED.

1    BUT RATHER THAN IN A MINUTE, I NEED THE

2    AUTHORITY NOW.  THAT FOR ME IS VERY IMPORTANT TO

3    UNDERSTAND A CASE WHERE A JUDGE HAS HELD THAT IN

4    THE CONTEXT OF A SETTLEMENT THE PROPOSAL OF STOCK

5    OF THAT KIND IS ILLEGAL WITHOUT THE DISCLOSURES

6    ACCOMPANYING IT.

7    DO YOU HAVE A CASE AUTHORITY TO THE

8    CONTRARY THAT IN THE COURSE OF A SETTLEMENT THE

9    OFFER OF CASH AND STOCK IS OKAY EVEN WITHOUT THE

10   DISCLOSURES THAT WOULD ACCOMPANY THE, THE STOCK IF

11   IT WERE BEING SOLD IN AN ARM'S LENGTH TRANSACTION?

12   MR. CHATTERJEE:  YOUR HONOR, WE HAVE NOT

13   BEEN ABLE TO LOCATE CASES ON EITHER SIDE OF THIS

14   CANDIDLY.

15   I DO THINK THAT ONCE YOU ENGAGE IN AN

16   ARM'S LENGTH TRANSACTION AND YOU'RE NOT TALKING

17   ABOUT THE OPEN MARKET, THE DYNAMICS DO CHANGE

18   CONSIDERABLY.

19   I MEAN, THE DUTY TO DISCLOSE COMES UP

20   BASED UPON THE SOPHISTICATION OF THE RELATIONSHIP,

21   THE NATURE OF THE TRANSACTION, PRIVATELY HELD

22   VERSUS PUBLICLY HELD.  ALL OF THAT IS PRETTY

23   STANDARD CASE LAW.  AND IF YOU LOOK AT THE CONTEXT

24   OF THIS NEGOTIATION, THEY CAN'T COME IN AND SAY

25   THERE WAS NO MISREPRESENTATION, THERE WAS NO

1    MISREPRESENTATION MADE IN THIS DOCUMENT AS TO SHARE

2    PRICE.

3            EVERYTHING YOU HEARD MR. BARRETT SAY

4    ABOUT HOW MUCH THEY VALUED IT, NONE OF THAT IS

5    EMBODIED IN THIS DOCUMENT.

6            AND IF WHATEVER THEIR SUBJECTIVE

7    INTENTIONS WERE, AT THIS POINT IT SEEMS LIKE AN

8    AFTER-THE-FACT JUSTIFICATION FOR TRYING TO

9    ESTABLISH FRAUD RATHER THAN SOMETHING THAT THEY

10   UNDERSTOOD AT THE TIME AND HAD AN OPPORTUNITY TO,

11   TO HAVE WRITTEN DOWN.

12           THE COURT:  UM, THE QUINN EMANUEL LIEN

13   WAS MENTIONED.

14           DOES THAT PLAY A PART IN THIS?

15           MR. BARRETT:  YOUR HONOR, I DON'T THINK

16   IT PLAYS ANY PART IN THIS AT ALL.

17   [ REDACTED ]

18

19

20

21

22

23

24           THE COURT:  BUT IF I, IN OTHER WORDS,

25   PART OF WHAT YOU WOULD HAVE ME DO IS TO EVALUATE

THE SETTLEMENT?

MR. BARRETT:  NO, YOUR HONOR.

THE COURT:  WELL, HOW DO YOU KNOW THAT
THE VALUE IS WHAT YOU'RE CLAIMING IT TO BE?

MR. BARRETT:  I'M JUST USING THEIR
NUMBERS, YOUR HONOR.

THE COURT:  I KNOW, BUT WHAT IF THEIR
NUMBER IS NOT CORRECT?

MR. CHATTERJEE:  THOSE ARE THEIR NUMBERS.
THOSE ARE NUMBERS THAT THEY SUBMITTED.  I WANT TO
BE VERY CLEAR ABOUT THAT.  THEY CAME UP WITH THE
[REDACTED]                    PER SHARE.  THAT'S
THEIR NUMBER.

THE COURT:  I UNDERSTAND THAT.  BUT YOUR
POSITION IS THAT THE SETTLEMENT CAN'T BE ENFORCED
BECAUSE THERE WAS A FAILURE TO DISCLOSE THIS STOCK
OPTION PRICE.

MR. BARRETT:  YES, IT'S A STOCK OPTION,
PRICE, BUT WHAT IT IS, IS A FAILURE TO DISCLOSE A
RESOLUTION OF THE BOARD OF DIRECTORS THAT SAYS THAT
THE FAIR MARKET VALUE OF COMMON STOCK IS [REDACTED]

THE REASON I BRING UP THE VALUE, YOUR
HONOR, IS NOT -- IS PURELY TO SHOW YOU THE
MATERIALITY OF THE MISREPRESENTATION, HOW OBVIOUS
IT IS THAT THIS IS, THAT THIS IS MATERIAL NONPUBLIC

51

1    INFORMATION.

2            NOW, THEY CAN DO -- YOU CAN DO A PRIVATE,

3    A PRIVATE TRADE IN YOUR STOCK BUT WHAT YOU HAVE TO

4    DO IS YOU HAVE TO MAKE SURE THAT THE OTHER PARTY

5    HAS ALL MATERIAL INFORMATION OR HAS ACCESS TO

6    MATERIAL INFORMATION.  THAT WASN'T DONE HERE.

7            YOUR HONOR, YOU ASKED FOR, YOU ASKED FOR

8    SOME, SOME CASE AUTHORITY.  FIRST OF ALL, I WANT TO

9    CITE A CASE CALLED LIVID HOLDINGS AGAINST SOLOMON

10   AND SMITH BARNEY, WHICH IS A NINTH CIRCUIT CASE AT

11   PAGE 13 OF OUR SURREPLY.

12           AND THAT WAS A CASE, AMONG OTHER THINGS,

13   DISCUSSING THE QUESTION OF SCIENTER THE NINTH

14   CIRCUIT SAID IF YOU ALLEGE THAT THE DEFENDANTS IN

15   THIS CASE, THE PLAINTIFF FACEBOOK, KNEW THE

16   CONTESTED STATEMENTS MOST OBVIOUS INTERPRETATION

17   WAS FALSE WHEN MADE.

18           THAT'S --

19           THE COURT:  WELL, WHAT I'M ASKING,

20   THOUGH, THERE ARE LOTS OF SECURITIES CASES.  WHAT

21   I'M CONCERNED WITH IS WHETHER OR NOT THERE IS A

22   DIFFERENCE WHEN PARTIES COME TOGETHER TO SETTLE A

23   LAWSUIT --

24           MR. BARRETT:  RIGHT.

25           THE COURT:  -- AND TRY TO IN THE COURSE

```
 1        OF THAT COME TO TERMS THAT THEY ARE SATISFIED WITH.

 2             I'M JUST NOT AS FAMILIAR WITH THAT

 3        BECOMING THE SUBJECT OF LITIGATION LATER ON OVER

 4        EVALUATION BECAUSE ONCE I OPEN THAT UP, THERE'S

 5        GOING TO BE A LOT OF LITIGATION IN THE COURT.

 6             PARTIES ARE PERMITTED TO, IN THE COURSE

 7        OF SETTLEMENT, SAY THAT THE PRICE WILL DEPEND ON AN

 8        AUDIT; LATER ON WE'LL DO SOME KIND OF THINGS TO

 9        FIGURE OUT THE PRICE.  I'M NOT USED TO PARTIES

10        SAYING, OKAY, IT'S GOING TO BE [REDACTED]  PLUS

11        STOCK.

12             MR. BARRETT:  UH-HUH.

13             THE COURT:  AND THEN LATER ON HAVING COME

14        TO THE COURT AND SAY, WELL, YOU KNOW, I SAID

15    [REDACTED] WORTH OF STOCK, BUT I THOUGHT THE STOCK WAS

16        WORTH A LOT MORE THAN IT TURNS OUT TO BE.

17             MR. BARRETT:  RIGHT, RIGHT.

18             THE COURT:  AND I NOW WANT TO GET A -- I

19        WANT TO BACK AWAY FROM THIS AND ASKING THE COURT

20        FOR PERMISSION TO DO IT.

21             YOU'RE NOT QUITE ASKING THAT BUT THAT'S

22        WHAT I'M CONCERNED ABOUT.

23             AND I'D LIKE TO SEE CASES THAT SAY THAT A

24        PARTY IS PERMITTED TO DO THAT BECAUSE ONCE YOU PUT

25        STOCK INTO THE MIX, THERE HAS TO BE A DISCLOSURE
```

1   THAT GOES WITH THE STOCK WHICH THEN BECOMES A BASIS

2   IF NOT DONE FOR SAYING TO THE PARTIES ALTHOUGH YOU

3   WANTED TO SETTLE ALONG THOSE TERMS AND YOU DIDN'T

4   ASK FOR IT, THE LAW GETS IT.  AND IF PAGE 13 GETS

5   ME THERE, I'LL LOOK AT IT AND SEE IF IT GETS ME

6   THERE.

7         MR. BARRETT:  I DON'T THINK IT DOES, YOUR

8   HONOR.  IT DOESN'T ADDRESS THAT SPECIFIC ISSUE.

9   AND I THINK LIKE MR. CHATTERJEE, WE HAVE NOT

10  LOCATED, ALTHOUGH WE'RE STILL LOOKING FOR A CASE

11  THAT ANSWERS YOUR HONOR'S PRECISE QUESTION.

12        ALTHOUGH WE CAN GIVE YOU CHIARELLA

13  AGAINST THE UNITED STATES, THE GENERAL PRINCIPLE

14  THAT A COMPANY SELLING ITS OWN STOCK HAS AN

15  AFFIRMATIVE DUTY TO ABSTAIN FROM TRADING IN THE

16  SHARES UNLESS IT FIRST DISCLOSES ALL MATERIAL

17  NONPUBLIC INFORMATION WHICH, WHICH IT KNOWS.

18        NOW, THERE IS NO, THERE IS NO -- I DON'T

19  THINK THERE'S ANY SETTLEMENT EXCEPTION.  I DON'T

20  KNOW ANY REASON WHY THERE WOULD BE.

21        THIS, IN MANY WAYS, I THINK IS REALLY A

22  SUI GENERIS CASE.

23        I THINK TYPICALLY WHAT YOU WOULD HAVE IN

24  A SITUATION LIKE THIS IS THAT IF YOU HAD PARTIES

25  FIGHTING AND THEN A SETTLEMENT THAT INVOLVED THE

54

1    EXCHANGE OF STOCK AND PRIVATELY HELD BUSINESS I --

2    IT WOULD PROBABLY BE PARTIES THAT HAD BEEN DOING

3    BUSINESS WITH EACH OTHER, YOU KNOW, FOR EXAMPLE,

4    FORMER PARTNERS OR SOMETHING LIKE THAT WHERE THE

5    CHANCES ARE THAT THEY WOULD ACTUALLY HAVE A GREAT

6    DEAL OF INFORMATION ABOUT EACH OTHER ALREADY

7    BECAUSE OF THE NATURE OF THEIR BUSINESS

8    RELATIONSHIP OR THEY MIGHT PROVIDE, AS YOU WOULD DO

9    IN A CORPORATE ACQUISITION OR A MERGER CONTEXT,

10   YES, HERE'S THE AGREEMENT IN PRINCIPAL, WE'LL, YOU

11   KNOW, TRADE THIS MUCH SHARES OF STOCK FOR THIS MANY

12   AND SUBJECT TO NORMAL DUE DILIGENCE, SUBJECT TO AN

13   APPRAISAL AS YOUR HONOR SUGGESTED, SUBJECT TO AN

14   AUDIT.

15              BUT TO COME IN HERE AND AS THEY ARE

16   SAYING IN EFFECT SAYING THAT THERE WAS INFORMATION,

17   AND YOU DON'T HEAR THEM DENYING IT, [REDACTED]

18                          THAT'S THE BOARD OF

19   DIRECTORS NUMBER.  THEIR COUNSEL GAVE IT TO OUR

20   CORPORATE COUNSEL.  [REDACTED]

21

22              THE COURT:  LET ME ASK JUST AS A MATTER

23   OF HISTORIC FACT, THAT BOARD EVALUATION WAS DONE

24   SUBSEQUENT TO THE MICROSOFT TRANSACTION, WHATEVER

25   THAT WAS?

1      MR. BARRETT:  YES, YES.  OUR
2  UNDERSTANDING, YOUR HONOR, WAS THAT IT WAS.
3  ALTHOUGH I CANNOT TELL YOU THE EXACT DATE.  THEY
4  WOULD NOT DISCLOSE THAT TO US.
5      MR. CHATTERJEE:  YOUR HONOR, IF I COULD
6  EXPLAIN BECAUSE I SEE SOME CONFUSION IN YOUR EYES,
7  AND I THINK THERE ARE A COUPLE OF IMPORTANT ISSUES
8  HERE.
9      THE MICROSOFT TRANSACTION WAS FOR
10  [REDACTED]        AND A BUSINESS DEAL.
11      CONNECTU DIDN'T GET THAT AND THEY KNEW
12  THEY WEREN'T GETTING THAT.
13      IF YOU LOOK AT THE SETTLEMENT AGREEMENT
14  THERE'S A RESTRICTION FOR SERIES D PREFERRED STOCK,
15  ONLY ONE, BUT THE DOCUMENT ON IT'S FACE IDENTIFIES
16  THAT THERE IS SERIES D PREFERRED STOCK AND THERE'S
17  COMMON STOCK.
18      WHAT MICROSOFT GOT OUT OF THE DEAL AND
19  WHAT CAUSED THESE VALUATION NUMBERS OF THE PRESS
20  RELEASE ARE FUNDAMENTALLY DIFFERENT THAN WHAT
21  CONNECTU IS GETTING OR THE PRINCIPALS OF CONNECTU,
22  WHICH WAS SUBJECT TO THE FAIR MARKET VALUATION
23  NUMBER.
24      THERE IS NOT A FAIR MARKET VALUATION THAT
25  HAS BEEN DONE OF THE SERIES D PREFERRED STOCK.

1           I'LL POINT OUT TO YOU, YOUR HONOR, THAT

2    WE DID PRODUCE SEVERAL FAIR MARKET VALUATIONS

3    THROUGHOUT THE LITIGATION, AND IN THOSE DOCUMENTS

4    IT SPECIFICALLY CALLED OUT OTHER DEALS THAT

5    FACEBOOK WAS CONSIDERING WHERE PREFERRED STOCK WAS

6    PART OF THE CONSIDERATION FOR THE PARTNERSHIPS.

7           IN THOSE DOCUMENTS THERE WAS SPECIFIC

8    PREFERRED PRICES THAT WERE IN THERE THAT WERE

9    SUBSTANTIALLY DIFFERENT THAN WHAT THE CONCLUDED

10   FAIR MARKET VALUE OF THE COMMON SHARES WERE.

11          WHAT THAT MEANS IS THAT THE DOCUMENTS WE

12   PRODUCED IN THE LITIGATION THAT THEY SOUGHT

13   IDENTIFY ON THEIR FACE THAT THE PREFERRED STOCK HAD

14   DIFFERENT VALUE THAN THE COMMON STOCK.

15          BUT, AGAIN, YOUR HONOR, I DON'T THINK YOU

16   NEED TO REACH THAT ISSUE BECAUSE THEY HAD THE

17   OPPORTUNITY TO ASK FOR A REPRESENTATION AS TO

18   VALUE.

19          YOU'RE ABSOLUTELY RIGHT THAT THEY DID NOT

20   ASCRIBE A DOLLAR VALUE AND ASK FOR AN INDEPENDENT

21   APPRAISAL.  THAT WOULD BE A VERY COMMON COURSE.

22          HERE THEY AGREED TO A VERY SPECIFIC

23   NUMBER OF SHARES, AND THAT'S WHAT WE'RE ASKING YOUR

24   HONOR TO HONOR AND THEY'RE COMMON SHARES.  THEY'RE

25   NOT THE [REDACTED] SHARES THAT MICROSOFT GOT.

1    THERE'S NONE OF THE OTHER BUSINESS

2    PARTNERSHIP THAT MICROSOFT GOT OUT OF THE DEAL.

3    THEY'RE COMMON SHARES.

4    MR. BARRETT:  YOUR HONOR, UM, UM, THOSE,

5    THOSE -- THERE ARE THOSE ADDITIONAL EVALUATIONS.

6    THOSE CAME AT A MUCH EARLIER POINT IN TIME AND AS,

7    PERHAPS, IS OBVIOUS, FACEBOOK IS A COMPANY THAT HAS

8    BEEN ON AN INCREDIBLE UPWARD TRACK IN TERMS OF ITS,

9    ITS SUCCESS AND SO A VALUATION, EVEN IF IT'S ONLY A

10   FEW MONTHS OLD, MAY, MAY WELL BE OUTDATED.

11   BUT THAT REALLY ISN'T THE POINT, YOUR

12   HONOR.

13   THE POINT IS THAT THEIR DUTY IS TO

14   DISCLOSE ALL MATERIAL, ALL MATERIAL INFORMATION,

15   NOT INFORMATION FROM THE PAST THAT THEY MAY HAVE

16   HAPPENED TO DISCLOSE IN THE COURSE OF DISCOVERY.

17   IT'S TO DISCLOSE ALL INFORMATION THAT IS

18   MATERIAL TO A REASONABLE PURCHASER AT THE TIME OF

19   THE TRANSACTION THAT THEY'RE ENGAGING IN.

20   AGAIN, THEY'RE IN A FUNNY POSITION

21   BECAUSE THEY'RE A PRIVATE COMPANY AND THEY'RE NOT

22   OUT THERE IN THE MARKETPLACE AND MAKING 10-K AND

23   13-D DISCLOSURES AND ALL OF THE THINGS THAT PUBLIC

24   COMPANIES DO WHEN SOMETHING MATERIAL TO THE COMPANY

25   HAPPENS.  THEY DON'T HAVE TO DO THAT.

1        BUT IF THEY DECIDE TO ENGAGE IN A PRIVATE

2    TRADE OF THEIR STOCK, THEY DO HAVE TO DISCLOSE

3    MATERIAL INFORMATION.

4        THE COURT:  BUT THAT'S THE PART THAT I'M,

5    THAT I'M STUCK ON AND I DO WANT TO, I DO WANT TO,

6    TO STUDY FOR A MOMENT BEFORE I GO FURTHER IN THIS

7    BECAUSE I'LL TELL YOU, MY INITIAL REACTION IS THAT

8    AS YOU'RE BOTH ACCURATELY DESCRIBING, THERE'S NO

9    REAL DISPUTE HERE, THAT WHAT I HAVE BEFORE ME IS A

10   TERM SHEET AND SETTLEMENT AGREEMENT.

11       WHEN I PRACTICED LAW FOR 15 YEARS, I DID

12   LOTS OF THESE.  AS A JUDGE FOR THE LAST 15 SOME ODD

13   YEARS, I'VE SEEN LOTS OF THESE, AND IT DOES SEEM TO

14   ME -- I KNOW IT'S LONGER -- BUT IT DOES SEEM TO ME

15   THAT I HAVE SEEN CIRCUMSTANCES WHERE THE PARTIES

16   TRY TO GO AS THESE PARTIES APPEAR TO HAVE GONE TO

17   THE POINT OF MAKING IT BINDING.

18       AND WHEN PARTIES ATTEMPT TO MAKE IT

19   BINDING, IT PUTS THE COURT IN A POSITION OF WANTING

20   TO SUPPORT THE MEDIATION RESOLUTION DISPUTE PROCESS

21   BY GIVING IT BINDING EFFECT BECAUSE EITHER ONE OF

22   YOU COULD HAVE BEEN BEFORE THIS COURT ARGUING THAT

23   YOU WANT TO ENFORCE THIS AGREEMENT.

24       THERE'S NOTHING ON THE FACE OF THIS

25   DOCUMENT THAT SUGGESTS THAT SOMEBODY WAS TAKEN

1    ADVANTAGE OF ONE WAY OR THE OTHER.

2            AND SO EITHER SIDE WOULD BE DEPRIVED OF

3    THE BENEFIT OF THIS PROCESS IF COURTS WERE NOT TO

4    HONOR THE LANGUAGE THAT THEY CAME TO.

5            IT, IT -- AND SO WHAT I'M, WHAT I'M

6    TRYING TO BE CAREFUL ABOUT IS, IS THERE SOME POLICY

7    OF CALIFORNIA OR FEDERAL OR OTHER LAW THAT, THAT

8    SUPERIMPOSES UPON THE PARTIES WHO COME TO WHAT THEY

9    CONSIDER TO BE A BINDING AGREEMENT AND SAYS,

10   ALTHOUGH YOU HAVE CONSIDERED IT BINDING, THE LAW

11   RESTRICTS YOU IN SOME WAY?

12           NOW, I AM CONCERNED THAT IN THE POST-TERM

13   SHEET SETTLEMENT AGREEMENT SUBMISSION THAT THERE

14   WERE ALL KINDS OF THINGS HAVING TO DO WITH THIS

15   TRANSACTION THAT DON'T SHOW UP ON THE FACE OF THIS.

16           AND THE MOST THAT, THAT IT SEEMS THAT I,

17   THAT I CAN DO AT THIS POINT IS TO ENFORCE THIS

18   AGREEMENT AND NOTHING MORE.

19           THE PARTIES NEED, PERHAPS, MORE, BUT THIS

20   IS WHAT THEY AGREED TO.

21           THIS IS COMMON STOCK.  IT DOESN'T SAY

22   ANYTHING ABOUT IT BEING LETTERED STOCK IN ANY WAY.

23   IT OUGHT TO BE FREELY TRADED, UNLESS SOMEONE

24   CONVINCES ME THAT THERE WAS SOMETHING ABOUT THE

25   COMMON SHARES THAT REQUIRE IT HAVE RESTRICTIONS ON

1    IT AND AS I READ THROUGH THE DOCUMENT THERE WERE

2    RESTRICTIONS THAT WERE BEING SUGGESTED.

3              THIS TALKS ABOUT A STOCK ACQUISITION.

4    THERE'S NOTHING ABOUT A MERGER.  THERE'S NOTHING

5    ABOUT SUBSIDIARIES.

6              I UNDERSTAND FROM THE TRANSACTION THAT

7    DIFFERENT KINDS OF TERMS WERE BEING SUGGESTED SO

8    IT -- THE TWO QUESTIONS THAT I CAME TO THE BENCH

9    HOPING TO GET CLARIFICATION ON IS WHAT ARE THE

10   ESSENTIAL MATERIAL TERMS THAT ARE MISSING FROM THIS

11   IF ANY, AND TO HEAR WHETHER OR NOT THERE WAS SOME

12   LEGAL BASIS UPON WHICH I COULD NOT ENFORCE THIS.

13             AS I HAVE SAID, I WAS SOMEWHAT CONCERNED

14   THAT THIS WAS DONE THROUGH A MOTION AS OPPOSED TO

15   PLEADINGS AND SOMEONE WAS RAISING QUESTIONS HAVING

16   TO DO WITH FRAUD IN THE INDUCEMENT AND THAT MEANS

17   THAT THERE IS SOMETHING BEYOND THE DOCUMENT THAT I

18   HAVE TO CONSIDER FOR THAT PURPOSE.  THAT'S A LITTLE

19   BIT IN CONFLICT WITH THE NATURE OF THE SETTLEMENT

20   AGREEMENT WHERE I'M RESTRICTED TO THE FACE OF IT.

21             THERE IS -- I HAVEN'T ACTUALLY ASKED YOU

22   ALL ABOUT THE NATURE OF THE MEDIATION PRIVILEGE AND

23   THE CONFIDENTIALITIES THAT THIS COURT IS BOUND TO

24   RESPECT WITH RESPECT TO GOING INTO THOSE

25   NEGOTIATIONS, CALLING THE MEDIATOR, HAVING THEM

1    CROSS-EXAMINED ABOUT WHO CAME UP WITH THESE TERMS,

2    AND WHETHER OR NOT ONE PARTY IS BEING, IS BEING

3    SOMEHOW TAKEN ADVANTAGE OF AND IN THE COURSE OF

4    THIS, I HAVEN'T CROSSED THAT BRIDGE.  I DON'T THINK

5    THAT I ACTUALLY NEED TO UNLESS SOMEONE CONVINCED ME

6    THAT THERE'S A BASIS FOR DOING THAT.

7             SO I GUESS WHAT I HAVE ARE TWO MOTIONS.

8    ONE IS A MOTION FOR AN EVIDENTIARY HEARING OF SOME

9    SORT AND THE OTHER IS TO ENFORCE THE AGREEMENT AS

10   IT IS WRITTEN AND ATTACH IT TO A JUDGMENT AND, AND

11   THE REASON I'M, I'M SORT OF GIVING YOU THIS STREAM

12   OF CONSCIOUSNESS IS TO SORT OF TELL YOU WHAT I'M

13   THINKING AT THIS POINT AND SEE IF YOU WANT TO ADD

14   ANYTHING TO WHAT YOU HAVE SAID UP TO NOW TO

15   INFLUENCE WHAT I DO WITH THIS.

16            YOU'RE THE MOVING PARTY.  YOU GO FIRST.

17            MR. CHATTERJEE:  YOUR HONOR, IT SEEMS

18   LIKE YOU UNDERSTAND THAT THIS IS A BINDING

19   SETTLEMENT AGREEMENT AND TERM SHEET.  I UNDERSTAND

20   YOUR QUESTIONS.

21            I DON'T THINK WE REALLY HAVE ANYTHING

22   ELSE TO ADD.  WE DON'T THINK AN EVIDENTIARY HEARING

23   IS NECESSARY.  THERE ARE MOTIONS TO COMPEL AGAINST

24   A THIRD PARTY CURRENTLY PENDING BEFORE JUDGE LLOYD

25   ASSOCIATED WITH THE DEPOSITIONS OF GREG ROUSSEL ON

                                                      62

THE FOLLOW-ON DISCUSSIONS WHERE THEY TRIED TO AGREE

UPON FORMAL DOCUMENTS.  WE DON'T THINK THAT ANY OF

THAT IS NECESSARY.  WE THINK YOUR HONOR CAN ENTER

JUDGMENT IN THE WAY THAT WE REQUESTED.

THE COURT:  THIS -- IF THIS IS PART OF A

JUDGMENT, THIS WOULD THEN BE PUT IN THE PUBLIC

DOMAIN?

MR. CHATTERJEE:  YOUR HONOR, AS WE SAID I

THINK DURING OUR PHONE CALL THE OTHER DAY, IF IT

WERE ATTACHED AS A JUDGMENT, WE WOULD ASK THAT YOUR

HONOR SEAL AT LEAST PARAGRAPH 7 OF THE AGREEMENT.

I THINK EVERYTHING ELSE --

THE COURT:  WHERE DOES IT SAY THAT THAT

IS NOT PART OF WHAT WOULD BE PUT IN THE PUBLIC?

MR. CHATTERJEE:  I'M SORRY?

THE COURT:  IT SAYS ALL TERMS ARE

CONFIDENTIAL.

MR. CHATTERJEE:  WE WOULD ASK, IF YOUR

HONOR WANTS TO PUT ALL OF THIS IN, IT IS CERTAINLY

APPROPRIATE AND COVERED BY THE SETTLEMENT

AGREEMENT.

IT'S BASED UPON OUR PHONE CALL THE OTHER

DAY WHERE OUR FUNDAMENTAL CONCERN ON

CONFIDENTIALITY IS REALLY PARAGRAPH 7, BUT I DON'T

KNOW WHAT MR. BARRETT'S VIEWS ARE.

1          BUT IF WE PUT THE WHOLE THING UNDER SEAL,

2    WE CERTAINLY WOULDN'T HAVE ANY OBJECTION TO THAT.

3          THE COURT:  ALL RIGHT.  FINAL WORDS?

4          MR. BARRETT:  YES, YOUR HONOR.  I DO

5    THINK THAT, FIRST OF ALL, AS YOU SAY, THERE'S A

6    MOTION TO ENFORCE.  I THINK THE FIRST THING IS THAT

7    THE COURT CAN DENY THAT MOTION ON THE BASIS OF

8    THESE PAPERS.

9          THE SECOND THING YOU, YOU ASKED WHAT ARE

10   THE MATERIAL TERMS THAT ARE MISSING?

11          I HAVE TO SAY THAT BASED ON WHAT -- THE

12   WAY THAT FACEBOOK HAS LITIGATED THIS MOTION, I AM

13   COMPLETELY AT A LOSS TO UNDERSTAND THEIR POSITION.

14          THEY CAME IN HERE.  THEY FILED THIS

15   MOTION.  THEY SAID THEY ASKED THIS COURT IN THE

16   FORM OF A PROPOSED ORDER AND IN A DECLARATION, A

17   SWORN STATEMENT FROM THEIR COUNSEL THAT NOT JUST

18   CONNECTU, BUT THE PRINCIPALS WHO ARE NOT EVEN

19   PROPERLY BEFORE THIS COURT, BE ORDERED TO SIGN,

20   EXECUTE CERTAIN DOCUMENTS TO SIGN THE DEED, IF YOU

21   WILL, IN EFFECT.

22          AND NOW THIS MORNING FOR THE FIRST TIME

23   MR. CHATTERJEE IS GETTING UP SAYING, NEVER MIND, WE

24   DON'T NEED ANY OF THAT.  THAT'S NOT IMPORTANT.  ALL

25   WE WANT YOU TO DO IS TO ATTACH THIS TO THE

1    JUDGMENT.

2         I DON'T EVEN KNOW, YOUR HONOR, WHERE WE

3    WOULD START, WHAT, WHAT THAT TRANSACTION WOULD BE.

4         AS I INDICATED EARLIER, YOUR HONOR, THE

5    NOTION OF THE ACQUISITION OF CONNECTU SHARES,

6    CONSISTENT WITH THE STOCK AND CASH FOR STOCK

7    ACQUISITION, IS IN THE EXPERT OPINION OF AT LEAST

8    ONE BUSINESS PROFESSOR WHO HAS DONE HUNDREDS OF

9    THESE TRANSACTIONS, LITERALLY INCOMPREHENSIBLE

10   LANGUAGE.  YOU DON'T KNOW IF IT'S GOING TO BE A

11   MERGER OR ESSENTIALLY JUST A PURCHASE OF STOCK.

12        AND THAT LANGUAGE, AS A MATTER OF USAGE

13   IN THE BUSINESS, IS AMBIGUOUS AS TO THAT POINT.

14        WELL, THAT IS THE MOST FUNDAMENTAL

15   STRUCTURAL ASPECT OF THE TRANSACTION.

16        THE COURT:  AND THERE'S NOTHING ABOUT A

17   MERGER ON HERE?

18        MR. BARRETT:  THE WORD ISN'T USED, YOUR

19   HONOR.  BUT AN ACQUISITION OF STOCK FOR CASH AND

20   STOCK IS A TERM OF ART THAT ENCOMPASSES A MERGER.

21        AND THE DISTINCTION, YOUR HONOR, IS THAT

22   THE WAY THAT THAT TRANSACTION IS SET UP, IF IT'S A

23   MERGER OR IF IT'S A STOCK PURCHASE.

24        AND WHAT THEY PUT BEFORE YOU, REMEMBER,

25   WASN'T DENOMINATED ACQUISITION.  IT WAS DENOMINATED

1   BY THEM A STOCK PURCHASE, HAS HUGE TAX SEQUENCES,

2   [REDACTED]

3   TURN JUST ON THE FORM OF THAT TRANSACTION.  SO IT

4   IS CLEARLY A MATERIAL TERM.

5         OUR EXPERT TESTIFIES THAT THAT ISSUE OF

6   THE TRANSACTION IN A PROPERLY DONE, EVEN TERM

7   SHEET, IS SOMETHING THAT WOULD BE ADDRESSED IN THE

8   DOCUMENT, THAT YOU WOULD EXPECT TO BE ADDRESSED IN

9   A DOCUMENT OF A DECLARATION OF THIS TYPE.  THEY

10  DIDN'T DO THAT.

11        YOUR HONOR, IF YOU ENTER THE JUDGMENT

12  THAT MR. CHATTERJEE IS SUGGESTING, I SUBMIT WHAT IS

13  GOING TO HAPPEN IS NEXT WEEK OR NEXT MONTH WE'RE

14  GOING TO BE BACK IN FRONT OF YOU AND WE'RE GOING TO

15  BE SAYING, YOUR HONOR, WE DON'T KNOW WHAT WE'RE

16  SUPPOSED TO DO.

17        WE'RE HAVING A FIGHT NOW ABOUT, ABOUT

18  WHAT, WHAT YOU KNOW, YOU CAN'T, YOU CAN'T JUST DO

19  ONE OF THESE TRANSACTIONS.  MAYBE THEY NOW WANT TO.

20  MAYBE THEY DON'T CARE ABOUT THE RIGHT OF FIRST

21  REFUSAL, ABOUT THE LOCK UP.

22        BECAUSE AS YOUR HONOR, BECAUSE -- ABOUT

23  THE INDEMNITIES AND WARRANTIES.  MAYBE THEY'RE

24  SAYING THAT'S NOT IMPORTANT.  IT SURE WAS IMPORTANT

25  TO THEM WHEN THE CORPORATE LAWYERS WERE NEGOTIATING

A MERGER; IT SURE WASN'T IMPORTANT TO THEM WHEN
MR. ROUSSEL PUT IN THE DECLARATION AND SWORE THAT
THESE DOCUMENTS WERE REQUIRED.  THAT'S ALL OVER
THOSE DOCUMENTS.

IF THEY'RE SAYING THAT THEY DON'T CARE
ABOUT THOSE, THEY DON'T THINK THAT THEY'RE
MATERIAL, I HAD A STRANGE FEELING, YOUR HONOR,
THAT, THAT THAT ORDER, WHILE COUNSEL, WHILE COUNSEL
SAYS HE WANTS IT NOW, YOU KNOW, IS NOT GOING TO
WORK BECAUSE THE TRANSACTION THAT THE INFORMATION
THAT YOU HAVE HERE JUST, JUST ISN'T, ISN'T SPECIFIC
AND DETAILED ENOUGH TO DO THIS KIND OF A
TRANSACTION.

[ REDACTED ]

YOU CAN'T DO IT WITH THIS KIND OF A
TRANSACTION.  THAT IS -- THERE IS DISPUTED FACTUAL
EVIDENCE IN FRONT OF YOUR HONOR ON THAT ISSUE AND I
SUBMIT THAT THAT -- THAT THE CASES, BOTH THE STATE
CASES AND THE NINTH CIRCUIT CASES, ARE QUITE CLEAR
THAT UNDER THOSE CIRCUMSTANCES YOU CANNOT, YOU
CANNOT SUMMARILY ENFORCE THE SETTLEMENT.

AND IN ADDITION, AS YOUR HONOR POINTED
OUT, THERE IS THE WHOLE QUESTION OF WHETHER THOSE,

67

THOSE NUMBERS THAT ARE IN THERE THE MOST
FUNDAMENTAL TERM, WHICH AS PLAINTIFF'S COUNSEL
INDICATES, THE NUMBER OF SHARES OF STOCK WAS
INDUCED BY FRAUD.

AND THAT IS CERTAINLY A QUESTION, A
QUESTION THAT AS YOUR HONOR POINTED OUT, WE WOULD,
WE WOULD NEED TO BE ABLE TO SUBMIT EVIDENCE AND I
WOULD THINK THAT YOU WOULD -- MIGHT WELL WANT TO,
TO HOLD A HEARING ON.

ALSO, YOUR HONOR, PERHAPS TO ANSWER YOUR
PROCEDURAL QUESTION, PERHAPS IT WOULD MAKE SENSE TO
ACTUALLY HAVE A COMPLAINT FILED SEEKING ENFORCEMENT
OF THIS AGREEMENT TO HAVE AN ANSWER THAT, THAT SETS
OUT DEFENSES IN THE MANNER THAT, THAT IS, PERHAPS,
ONE THAT IS MORE, MORE USUAL IN LITIGATION SO THAT
THE COURT HAS THE CLAIMS AND WE, AND WE KNOW WHAT
THE ACTUAL CLAIM IS BECAUSE, AS I SAY, THEY KEEP
CHANGING THEIR POSITION ON WHAT IT IS THAT THEY'RE
REALLY ASKING FOR.

IF WE HAVE A COMPLAINT, IT WILL SET FORTH
THE CLAIM, AND WE CAN ANSWER IT AND PUT IN OUR
DEFENSES TO THE CLAIM THAT THEY'RE ACTUALLY MAKING
AND THEN, AND THEN WE CAN FIGURE OUT, YOU KNOW, IF
THEY WANT TO SEEK SUMMARY JUDGMENT, WE CAN FIGURE
OUT IF WE NEED DISCOVERY, WHAT DISCOVERY IT IS WE

68

1     NEED, AND, AND ESSENTIALLY HAVE IT IN THE FORM OF

2     AN INDEPENDENT PROCEEDING TO ENFORCE THE SETTLEMENT

3     AGREEMENT.

4             AND PERHAPS THAT WOULD CLARIFY SOME OF

5     THE PROCEDURAL UNCERTAINTY THAT I UNDERSTAND IS

6     CONCERNING YOUR HONOR.

7             THE COURT:  WELL, LET ME ASK ONE

8     HOPEFULLY FINAL AREA BECAUSE I DO NEED TO BRING

9     THIS TO A CLOSE.

10            SEVERAL TIMES YOU HAVE MENTIONED THE

11    PARTIES.  MY UNDERSTANDING OF THIS AGREEMENT IS

12    THAT IT SETTLES ALL DISPUTES BETWEEN CONNECTU AND

13    ITS RELATED PARTIES.

14            MR. BARRETT:  UH-HUH.

15            THE COURT:  AND FACEBOOK AND IT'S RELATED

16    PARTIES.

17            AND THEN THE STATEMENT IS THAT, "THE

18    PARTIES STIPULATE THAT THE COURT SHALL HAVE

19    JURISDICTION TO ENFORCE THIS."

20            AND THE SIGNATURES ARE BY VARIOUS PEOPLE.

21            MR. BARRETT:  UH-HUH.

22            THE COURT:  INCLUDING THE COMPANIES AS

23    WELL AS INDIVIDUALS.

24            IS YOUR POSITION THAT ONLY THE COMPANIES

25    ARE PARTIES TO THIS SETTLEMENT AGREEMENT AND NOT

THE INDIVIDUALS?

MR. BARRETT:  THERE ARE TWO POINTS, YOUR
HONOR.  FIRST OF ALL, THERE IS ONE SHAREHOLDER,
HOWARD WINKLEVOSS.

THE COURT:  I UNDERSTAND.

MR. BARRETT:  WHO IS NOT A PARTY TO THE
DOCUMENT.

THE COURT:  RIGHT.

MR. BARRETT:  SO HE'S NOT A PARTY TO THE
DOCUMENT, PERIOD.

THE COURT:  IS HE REPRESENTED HERE TODAY?

MR. BARRETT:  HE IS NOT AS SUCH, YOUR
HONOR, BECAUSE HE'S NOT BEEN SERVED AND NO RELIEF
IS BEING SOUGHT IN OUR VIEW AGAINST HIM.

MR. CHATTERJEE:  ALTHOUGH HE DID APPEAR
IN THE BOSTON HEARING WHERE THIS VERY MOTION WAS
DISCUSSED IN DETAIL.

MR. BARRETT:  I'M NOT SURE WHAT YOU MEAN
BY "APPEAR."

THE COURT:  YOU DON'T REPRESENT HIM?

MR. BARRETT:  NOT FOR THIS PURPOSE.

THE COURT:  NO ONE ELSE HERE REPRESENTS
THAT PERSON?

MR. BARRETT:  THAT IS CORRECT, YOUR
HONOR.

1          THE COURT:  BUT AS TO THE OTHERS?

2          MR. BARRETT:  AS TO THE OTHERS, YOUR

3    HONOR, MY POINT IS A LITTLE DIFFERENT.

4          THEY OBVIOUSLY SIGNED THE DOCUMENT;

5    HOWEVER, JUST BECAUSE SOMEONE ENTERED INTO A

6    CONTRACT DOES NOT GIVE A COURT THE LEGAL POWER TO

7    ORDER THAT PERSON TO SPECIFICALLY PERFORM THE

8    CONTRACT.

9          WHAT IS NECESSARY IS THAT THE PERSON BE

10   SERVED, AND I WILL SAY, YOUR HONOR, THAT THESE

11   THREE INDIVIDUALS PREVAILED ON A MOTION TO DISMISS

12   FACEBOOK'S ORIGINAL COMPLAINT AGAINST THEM, THE

13   COMPLAINT THAT WAS FILED IN STATE COURT AGAINST

14   THEM.

15         THEY PREVAILED ON A MOTION TO DISMISS ON

16   THE GROUND THAT THERE WAS NO PERSONAL JURISDICTION

17   OVER THEM.

18         THE COURT:  BUT WHAT DO YOU -- WHAT IS

19   YOUR POSITION WITH RESPECT TO PARAGRAPH 4?

20         MR. BARRETT:  I THINK THAT THAT -- IT'S

21   POSSIBLE THAT THAT COULD BE READ AS A SUBMISSION TO

22   JURISDICTION BUT THAT IS DIFFERENT FROM ACTUALLY

23   SERVING PEOPLE AND REQUIRING THEM TO COME INTO

24   COURT AND DEFEND.

25         THEY HAVE NOT BEEN SERVED, YOUR HONOR.

1          I CAN SIGN A CONTRACT WITH

2     MR. CHATTERJEE, BUT HE CAN'T JUST WALK IN FRONT OF

3     YOUR HONOR AND SAY BARRETT AGREED TO SELL ME HIS

4     CAR AND ENFORCE IT AND HE HAS TO SERVE ME WITH A

5     SUMMONS AND COMPLAINT.

6          THE COURT:  WHAT IS YOUR POSITION?

7          MR. CHATTERJEE:  THE FIRST IS THAT YOU

8     HAVE TWO DECLARATIONS FROM CAMERON WINKLEVOSS.

9     IT'S ABSURD FOR THEM TO SAY THAT CAMERON

10    WINKLEVOSS, WHO SIGNED THIS DOCUMENT AND PUT IN

11    DECLARATIONS IN OPPOSITION TO OUR MOTION, ISN'T

12    FULLY AWARE AND HASN'T HAD AN OPPORTUNITY TO SAY

13    WHAT HE REALLY WANTS TO SAY.

14         THESE THREE PEOPLE CAMERON AND TYLER

15    WINKLEVOSS AND DIVYA NARENDRA CONSTITUTE 99 PERCENT

16    OF THE COMPANY.  THEY, THEY ARE THE COMPANY FOR ALL

17    INTENTS AND PURPOSES.

18         WHEN WE FILED THIS MOTION, WE FILED A

19    NOTICE OF THE RELATED CASE OR OF THIS FILING IN

20    BOSTON.  MR. HORNICK, WHO IS HERE TODAY, REPRESENTS

21    THEM IN THAT CASE.  THEY ARE INDIVIDUALS WHO ARE

22    PLAINTIFFS IN THAT CASE.

23         THEY RECEIVED A NOTICE OF THE FILING AND

24    A COPY OF THE BRIEF.  HE RECEIVED IT.

25         MR. HORNICK AND MR. MOSKO ARE IN THE SAME

FIRM.  THEY BOTH REPRESENT CAMERON WINKLEVOSS AND
TYLER WINKLEVOSS AND DIVYA NARENDRA.  THEY DIDN'T
DISPUTE THAT.

DIVYA NARENDRA CAME TO COURT AND HE WAS
FULLY AWARE OF THIS MOTION AND THIS MOTION WAS
SUBMITTED TO JUDGE WOODLOCK AS PART OF THE
PROCEEDINGS WHERE THEY WERE REPRESENTING CONNECTU
AND THE THREE PRINCIPALS.

AT END OF THE DAY, YOUR HONOR, IF YOU
FIND THIS AN ENFORCEABLE CONTRACT AGAINST CONNECTU,
IT WOULD IN OUR VIEW, NO MATTER WHAT, CONSTITUTE
RES JUDICATA AGAINST THE THREE INDIVIDUALS BECAUSE
THEY ARE IN PRIVITY WITH THE COMPANY, THEY ARE THE
BOARD OF DIRECTORS.  IT WOULD ALSO APPLY TO HOWARD
WINKLEVOSS AND HE WAS AT THE MOTION.

AND SO AT THE END OF THE DAY, HOWEVER
THEY CAST IT, IT'S A NONISSUE.

THE COURT:  WELL, WHAT I'M RAISING FOR
MYSELF, AND I HESITATE TO DO THIS BECAUSE IT'S LATE
IN THE DAY, BUT IT SEEMS TO ME THAT UNLESS WE'RE
TALKING ABOUT A TREASURY STOCK, THEY ALL --
CONNECTU STOCK IN EXCHANGE FOR MONEY AND STOCK
WOULD REQUIRE FOR MY ENFORCEMENT THE ABILITY TO
ORDER INDIVIDUALS WHO OWN CONNECTU STOCK TO MAKE
THE EXCHANGE.

73

1          NOW, MAYBE IT'S NOT IN THIS PROCEEDING

2     THAT THAT HAPPENS BUT SOME, SOME SUBSEQUENT

3     PROCEEDING.

4          I'M JUST TRYING TO THINK THROUGH WHAT IT

5     IS THAT, THAT I'M BEING ASKED TO DO AND AGAINST

6     WHOM I'M BEING ASKED TO DO IT AND THE FORM.

7          THEY'RE NOT PARTIES TO THE CURRENT

8     LITIGATIONS?

9          MR. CHATTERJEE:  THEY ARE PARTIES TO THE

10    LITIGATION IN MASSACHUSETTS.  THEY ARE PLAINTIFFS

11    IN THAT CASE.

12         THE COURT:  I SEE.  THEY ARE PLAINTIFFS

13    IN THAT CASE.

14         MR. CHATTERJEE:  AND THEY SUBMITTED TO

15    THIS COURT FOR RESOLUTION OF ALL OF THE DISPUTES,

16    YOUR HONOR, AS YOU CORRECTLY NOTED IN PARAGRAPH 4.

17         THE COURT:  I KNOW THAT, BUT IT SEEMS TO

18    ME THAT WHAT I UNDERSTOOD FROM COUNSEL IS THAT THEY

19    ARE NOT PARTIES TO THE LITIGATION BUT THEY ARE

20    PARTIES TO AT LEAST THE MASSACHUSETTS LITIGATION.

21         MR. HORNICK:  MAY I, YOUR HONOR?

22         THE COURT:  YES.

23         MR. HORNICK:  I'M JOHN HORNICK, AND I

24    REPRESENT CONNECTU IN THE MASSACHUSETTS CASE.  I AM

25    NOT ADMITTED BEFORE THIS COURT, AND I HAVE NOT

1    FILED A MOTION PRO HAC VICE, HOWEVER, I WOULD TAKE

2    THE POSITION THAT THE INDIVIDUALS, THE WINKLEVOSS

3    TWINS AND MR. NARENDRA ARE NOT YET PLAINTIFFS IN

4    THE MASSACHUSETTS CASE BECAUSE ALTHOUGH THERE WAS

5    AN AMENDED COMPLAINT THAT WAS ENTERED ON OR FILED,

6    I SHOULD SAY, ON AUGUST 8TH OF 2007, THAT NAMED

7    THEM AS COPLAINTIFFS FOR THE FIRST TIME,

8    IMMEDIATELY AFTER THAT, THE DEFENDANTS FILED A

9    MOTION TO DISMISS WITH RESPECT TO THAT AMENDED

10   COMPLAINT.

11           THE JUDGE NEVER RULED ON THEM.  SO I

12   THINK THE QUESTION OF WHETHER OR NOT THEY EVER

13   BECAME PLAINTIFFS IS STILL AN OPEN ISSUE.

14           THE COURT:  THANK YOU.

15           MR. CHATTERJEE:  YOUR HONOR,

16   RESPECTFULLY, THEY PUT THEMSELVES AS PLAINTIFFS IN

17   THE MASSACHUSETTS CASE.

18           THEY ASSERTED CLAIMS WHICH WE HAD ARGUED

19   WERE NONTRANSFERABLE.

20           THE EXISTENCE OF A MOTION TO DISMISS

21   DOESN'T CHANGE THE FACT THAT THEY IRREVOCABLY

22   SUBMITTED THEMSELVES TO THE MASSACHUSETTS CASE AS A

23   PLAINTIFF IN THAT CASE.  THIS IS ABSURD.

24           THE COURT:  WELL, I DON'T WANT TO GET

25   INTO THE MERITS OF IT.  I SIMPLY HEARD THREE OR

FOUR TIMES FROM COUNSEL SOME CONCERN ABOUT HOW FAR
THIS MOTION COULD GO WITH RESPECT TO THE
INDIVIDUALS.

I DO SEE THAT, THAT THEY ARE SIGNATORIES.
I DO SEE THAT THEY ARE DESCRIBED AS PARTIES.  I
ALSO SEE THAT THEY ARE -- I PRESUME THEY'RE BEING
REFERRED TO AS FOUNDERS AND THEY MADE CERTAIN
REPRESENTATIONS AND WARRANTIES IN THE SETTLEMENT
AGREEMENT.

AND SO I WILL BE VERY CAREFUL IN
ARTICULATING WHATEVER I DO TO SEPARATE MY
CONSIDERATIONS SO THAT THE INDIVIDUALS CAN MAKE ANY
OBJECTIONS THAT THEY WISH SEPARATE AND APART FROM
THE COMPANY.

WELL, I --

MR. BARRETT:  YOUR HONOR, EXCUSE ME.  IF
I COULD JUST MAKE ONE POINT ABOUT THAT.

THE COURT:  YES.

MR. BARRETT:  BECAUSE I'M VERY
SYMPATHETIC TO YOUR HONOR'S CONFUSION AND I THINK
ALL OF IT ULTIMATELY COMES BACK TO THE FACT THAT,
THAT THE PROBLEM HERE IS THAT, IS THAT YOU DON'T
HAVE A CLEAR ENFORCEABLE CONTRACT THAT SETS --
CLEARLY SETS FORTH THE RIGHTS AND OBLIGATIONS OF
BOTH PARTIES TO THE CONTRACT.

1          WHAT THIS LAST FIVE OR TEN MINUTES OF
2     DISCUSSION SHOWS AND IS ILLUSTRATIVE OF IS WHAT
3     FACEBOOK IS REALLY ASKING YOU TO DO IS TO WRITE A
4     CONTRACT FOR THESE PARTIES THAT THEY NEVER AGREED
5     ON FOR THEMSELVES.  AND I'M SURE YOUR HONOR KNOWS,
6     THAT IS EXACTLY WHAT, WHAT THE COURT CAN'T DO IN
7     ANY CONTRACT CASE AND WE HAVE CITED, YOU KNOW, ANY
8     NUMBER OF SETTLEMENT CASES THAT, THAT MAKE CLEAR
9     THAT, THAT THAT IS NOT THE FUNCTION OF THE COURT.
10          SO THE COURT IS TRYING TO BEND OVER
11    BACKWARDS TO FIGURE OUT, WELL, CAN I UNDERSTAND
12    PEOPLE WHO MAY HAVE BEEN PARTIES OUT IN
13    MASSACHUSETTS BUT HAVE NOT BEEN PROPERLY SERVED IN
14    THIS ACTION?
15          YOUR HONOR, I DON'T THINK YOU SHOULD HAVE
16    TO DO THAT.
17          YOU SHOULDN'T BE -- HAVE TO BE STRUGGLING
18    WITH THOSE KINDS OF QUESTIONS.
19          LET THEM, YOU KNOW, MAKE A PROPER MOTION
20    OR A PROPER COMPLAINT.  LET THEM SERVE PARTIES IF
21    THEY THINK THEY HAVE OR ELSE THERE'S NOTHING HERE
22    TO ENFORCE.
23          THE COURT:  I SAID FINAL WORD SO PERHAPS
24    I SHOULD STICK TO MY GUNS.  ALTHOUGH I SAW ONE OF
25    YOUR COLLEAGUES PASS YOU A NOTE.

1      IS THERE ANYTHING?

2      MR. CHATTERJEE:  YOUR HONOR, I'M NOT

3  GOING TO BELABOR WHAT HAPPENED IN THE OTHER CASE.

4      THE ONLY THING I WANT TO SAY ABOUT THEIR

5  CHARACTERIZATION OF THERE NOT BEING A MEETING OF

6  THE MINDS ON THE STOCK IN CASH FOR STOCK

7  ACQUISITION, WHAT MR. HITSCHERICH SAID, WHICH WAS

8  THEIR EXPERT, WAS THAT THAT COULD BE A BROAD SET OF

9  DIFFERENT TYPES OF TRANSACTIONS, NOT THAT IT ISN'T

10 ANY OF THEM.  IT COULD BE ALL OF THEM.

11      AND THE FOLLOWING SENTENCE SAYS THAT "WE

12 WILL DETERMINE THE FORM AND DOCUMENTATION OF THE

13 ACQUISITION OF CONNECTU'S SHARES."

14      IT SPECIFICALLY CONTEMPLATED THERE MAY BE

15 MULTIPLE DIFFERENT FORMS THAT ARE CONSISTENT WITH

16 IT AND FACEBOOK CAN DETERMINE IT.

17      THAT WAS THE ONLY POINT I WANTED TO MAKE

18 TO RESPOND TO HIS POINT.

19      THANK YOU, YOUR HONOR.  I APPRECIATE YOUR

20 TIME.

21      MR. BARRETT:  BUT THEY CAN'T CHANGE THE

22 SUBSTANCE, THE MATERIAL SUBSTANCE OF THE

23 TRANSACTION AND THAT'S --

24      THE COURT:  PRECISELY.  THANK YOU.  THANK

25 YOU BOTH.

1           MR. BARRETT:  THANK YOU, YOUR HONOR.
2    SHOULD WE AWAIT THE COURT OR --
3           THE COURT:  I DON'T KNOW THE -- IF I KNEW
4    THE TIMING OF WHAT I DO IN THIS JOB.
5           SOMEONE ONCE REMINDED ME, AS I BECAME A
6    JUDGE, THAT JUDGING IS A CONTEMPLATED ART.
7           I HAVE NEVER TAKEN FULL ADVANTAGE OF THAT
8    BECAUSE I RARELY FEEL I HAVE TIME TO CONTEMPLATE.
9           BUT I HAVE BENEFITED FROM YOUR ARGUMENT
10   TODAY, AND I'LL HAVE THE MATTER UNDER SUBMISSION.
11          I WILL GIVE YOU A DECISION AS QUICKLY AS
12   I CAN.
13          I UNDERSTAND HOW IMPORTANT THIS IS THAT
14   YOU HAVE A QUICK DECISION.  IF I CAN DO IT IN 24
15   HOURS, I'LL DO MY BEST TO DO THAT.
16          MR. CHATTERJEE:  THANK YOU, YOUR HONOR.
17          MR. BARRETT:  THANK YOU, YOUR HONOR.
18          (WHEREUPON, THE EVENING RECESS WAS
19   TAKEN.)
20
21
22
23
24
25