1              IN THE UNITED STATES DISTRICT COURT

2           FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                      SAN JOSE DIVISION

4


5     THE FACEBOOK, INC.,        )  C-07-01389-JW
                                 )
6             PLAINTIFF,         )  JULY 2, 2008
                                 )
7                  V.            )
                                 )
8     CONNECTU, LLC, ET AL.,     )  PAGES 1-73
                                 )
9             DEFENDANTS.        )
      _____   )
10


11            THE PROCEEDINGS WERE HELD BEFORE

12         THE HONORABLE UNITED STATES DISTRICT

13                  JUDGE JAMES WARE

14    A P P E A R A N C E S:

15    FOR THE PLAINTIFF:  ORRICK, HERRINGTON & SUTCLIFFE
                          BY:  I. NEEL CHATTERJEE
16                             THERESA A. SUTTON
                               YVONNE GREER
17                          1000 MARSH ROAD
                            MENLO PARK, CALIFORNIA 94025
18


19    FOR THE DEFENDANTS: BOIES, SCHILLER & FLEXNER
                          BY:  DAVID A. BARRETT
20                             EVAN ANDREW PARKE
                               D. MICHAEL UNDERHILL
21                          575 LEXINGTON AVENUE
                            7TH FLOOR
22                          NEW YORK, NEW YORK 10022

23         (APPEARANCES CONTINUED ON THE NEXT PAGE.)

24

25    OFFICIAL COURT REPORTER: IRENE RODRIGUEZ, CSR, CRR
                               CERTIFICATE NUMBER 8074


                                              1

Dockets.Justia.co

1

A P P E A R A N C E S: (CONT'D)

2


3     FOR THE DEFENDANTS:       FINNEGAN, HENDERSON,
                                FARABOW, GARRETT & DUNNER
4                               BY:  SCOTT R. MOSKO
                                STANFORD RESEARCH PARK
5                               3300 HILLVIEW AVENUE
                                PALO ALTO, CALIFORNIA 94304
6


7

      ALSO PRESENT:            HOLME, ROBERTS & OWEN
8                              BY:  ROGER MYERS
                                    KATHERINE KEATING
9                              560 MISSION STREET
                               25TH FLOOR
10                             SAN FRANCISCO, CALIFORNIA
                               94105
11


12                             QUINN, EMANUEL, URQUHART,
                               OLIVER & HEDGES
13                             BY:  BRUCE VAN DALSEM
                                    RANDY GARTEISER
14                             865 S. FIGUEROA STREET
                               10TH FLOOR
15                             LOS ANGELES, CALIFORNIA
                               90017
16


17                             HELLER EHRMAN
                               BY:  ROBERT HAWK
18                                  MELYSSA E. MINAMOTO
                               275 MIDDLEFIELD ROAD
19                             MENLO PARK, CALIFORNIA 94025

20

                               CNET NEWS
21                             BY:  GREG SANDOVAL
                               235 SECOND STREET
22                             SAN FRANCISCO, CALIFORNIA
                               94105
23

24

25


                                                        2

SAN JOSE, CALIFORNIA                    JULY 2ND, 2008

2
                    P R O C E E D I N G S
3

4              (WHEREUPON, COURT CONVENED AND THE
FOLLOWING PROCEEDINGS WERE HELD:)
5

6              THE COURT:  CALL THE NEXT MATTER.

7              THE CLERK:  CALLING CASE NUMBER 07-1389,

8    THE FACEBOOK, INC., VERSUS CONNECTU, ET AL.

9              CALLING NONPARTY CNET'S MOTION TO UNSEAL

10   FILINGS AND TRANSCRIPT.

11             FIFTEEN MINUTES EACH SIDE.

12             COUNSEL, COME FORWARD AND STATE YOUR

13   APPEARANCES.

14             MS. SUTTON:  GOOD MORNING, YOUR HONOR.

15   THERESA SUTTON FOR ORRICK, HERRINGTON & SUTTON FOR

16   COUNSEL TO THE PLAINTIFFS THE FACEBOOK AND MARK

17   ZUCKERBERG.

18             MR. MYERS:  GOOD MORNING.  ROGER MYERS ON

19   BEHALF OF HOLME, ROBERTS & OWEN ON BEHALF OF CNET.

20             THE COURT:  MR. MYERS, IS THERE ANYTHING

21   MORE YOU WOULD WISH TO SAY TO THE COURT WITH

22   RESPECT TO THE MOTION TO INTERVENE FOR A LIMITED

23   PURPOSE AND THE MOTION TO UNSEAL DOCUMENTS?

24             MR. MYERS:  ONLY A COUPLE OF THINGS, YOUR

25   HONOR.  FIRST I WANT TO THANK THE COURT FOR SETTING

1    THIS ON AN EXPEDITED BASIS SO WE CAN HAVE IT HEARD

2    TODAY WITH THE OTHER MOTION.

3          I THINK THE PARTIES HAVE AGREED IN THEIR

4    BRIEFS ON SEVERAL THINGS:  ONE, THAT THE MOTION TO

5    INTERVENE SHOULD BE GRANTED; AND, TWO, THAT THE

6    TRANSCRIPT OF THE HEARING ON JUNE 23RD, AND THE

7    MOTION THAT WAS AT ISSUE IN THAT HEARING AND ALL OF

8    THE PAPERS RELATED TO THAT MOTION SHOULD BE

9    UNSEALED, ALTHOUGH THE PARTIES DISAGREE ON WHETHER

10   EITHER THE TRANSCRIPT OR ANY OF THE PAPERS SHOULD

11   BE REDACTED.

12         THE PARTIES ALSO AGREE THAT THE REMAINDER

13   OF THE RECORDS COULD BE REFERRED TO A MAGISTRATE

14   JUDGE AND ALTHOUGH WE DISAGREE ON THE PROCEDURES

15   AND THE REQUIREMENT THAT WOULD BE SHOWN THERE.

16         ON THE TRANSCRIPT AND BOTH -- AND

17   ACTUALLY THE MOTION AS WELL, I DON'T THINK THERE'S

18   ANY REASONABLE DISPUTE THAT THE MOTION WAS A

19   DISPOSITIVE MOTION AND THAT IT, IF GRANTED, AND IT

20   HAS BEEN GRANTED, WILL TERMINATE THE CASE.

21         AS A RESULT, ALL OF THE MOVING PAPERS AND

22   THE PAPERS RELATED TO THAT MOTION HAVE TO MEET THE

23   COMPELLING NEEDS TEST.

24         THAT REQUIRES THAT THEY DO MORE THAN COME

25   IN AND SAY THERE IS CONFIDENTIAL INFORMATION HERE.

4

1          THE CASE THAT THEY PRIMARILY RELY ON,

2    WHICH IS THE ENCYCLOPEDIA BROWN CASE, SPECIFICALLY

3    TALKS ABOUT THAT ISSUE AND SAYS THAT WITH RESPECT

4    TO CONFIDENTIAL INFORMATION, FIRST IT SAYS

5    BASICALLY IT HAS TO BE AKIN TO A TRADE SECRET BUT

6    THEN IT HAS TO BE PROOF OF COMPETITIVE HARM, AND

7    WITH RESPECT TO COMPETITIVE HARM VAGUE AND

8    CONCLUSORY ALLEGATIONS WILL NOT SUFFICE.

9          MOVANT MUST PROVE THAT DISCLOSURE WOULD

10   WORK, A CLEARLY DECLINED AND VERY SERIOUS INJURY.

11         AND IN THAT CASE TESTIMONY WAS ACTUALLY

12   PRESENTED TO SHOW THAT THE INFORMATION WOULD WORK

13   IN COMPETITIVE HARM.

14         IN THIS SITUATION ALL WE GOT IN RESPONSE

15   TO OUR MOTION WAS AN OPPOSITION BRIEF WITHOUT ANY

16   DECLARATIONS OR TESTIMONY OR ANY EXPLANATION ABOUT

17   HOW KEEPING ANY PART OF THE PAPERS THAT WERE FILED

18   WITH RESPECT TO THE MOTION TO ENFORCE THE

19   SETTLEMENT WOULD ACTUALLY WORK A COMPETITIVE HARM.

20         NO, NO PROOF, NO SHOWING, JUST THE

21   ASSERTIONS, THE CONCLUSORY ALLEGATIONS WHICH THE

22   NINTH CIRCUIT, JUDGE PATEL IN THE MCCOY CASE,

23   VIRTUALLY EVERY COURT THAT HAS LOOKED AT THIS HAS

24   SAID THAT IS NOT ENOUGH.

25         WITH RESPECT TO THE TRANSCRIPT, THAT HAS

1    TO MEET UNDER PHOENIX NEWSPAPERS THE NINTH CIRCUIT

2    SAID WHEN YOU HAVE A TRANSCRIPT OF A HEARING TO

3    WHICH THE PUBLIC HAS THE RIGHT OF ACCESS, THE FIRST

4    AMENDMENT TEST HAS TO BE APPLIED WHEN YOU'RE

5    TALKING ABOUT RELEASING THE TRANSCRIPT.

6         WE THINK, AND I'M HAPPY TO ANSWER ANY

7    QUESTIONS ON THIS, WE THINK IT'S PRETTY CLEAR THAT

8    THE FIRST AMENDMENT RIGHT OF ACCESS ATTACHES TO A

9    MOTION TO ENFORCE OR TO APPROVE A SETTLEMENT.

10        I MEAN, JUDGE PATEL SAID SO IN THE MCCOY

11   CASE.  YOU HAVE THE BANK OF AMERICA CASE OUT OF THE

12   THIRD CIRCUIT IN WHICH THE COURT SAID THAT A MOTION

13   TO ENFORCE A SETTLEMENT IS PUBLIC.

14        YOU HAVE THE JESSUP CASE FROM JUDGE

15   POSNER IN THE SEVENTH CIRCUIT IN WHICH THE COURT

16   SAID THAT A MOTION SEEKING JUDICIAL APPROVAL OF A

17   SETTLEMENT IS PUBLIC.

18        YOU EVEN HAVE THE GLENN FALLS CASE IN THE

19   SECOND CIRCUIT THAT THE PLAINTIFFS HAVE CITED IN

20   WHICH THE SECOND CIRCUIT DISTINGUISHED DISCUSSIONS

21   ABOUT A DRAFT TO SETTLEMENT WHICH COULD BE HELD IN

22   CHAMBERS WITH A MOTION TO ENFORCE OR REJECT THE

23   SETTLEMENT WHICH THE SECOND CIRCUIT HAS SAID HAD TO

24   BE HELD IN OPEN COURT.

25        SO WE THINK IT'S CLEAR THERE WAS A FIRST

6

1    AMENDMENT RIGHT OF ACCESS ON THE 23D AND THAT MEANS

2    THEY HAVE TO MEET THE COMPELLING INTEREST TEST AND

3    IF THEY HAVEN'T MET THE COMPELLING NEEDS TEST, THEY

4    CERTAINLY HAVEN'T MET THE COMPELLING INTEREST TEST.

5         I DON'T KNOW IF YOU WANT TO HEAR ANYTHING

6    WITH RESPECT TO THE REFERRAL TO THE MAGISTRATE

7    JUDGE.  I THINK IT'S PRETTY CLEAR THAT THEY HAVE

8    THE BURDEN AND THEY HAVE TO CARRY THEIR BURDEN AND

9    SO WE'RE FINE WITH REFERRING IT TO A MAGISTRATE

10   JUDGE TO REVIEW.

11        WE WOULD LIKE TO BE QUICK BECAUSE OF THE

12   TIMELINESS FACTOR AND THE NEWSWORTHINESS FACTOR.

13   AND WE WOULD ALSO LIKE THE COURT TO BE CLEAR IN ITS

14   REFERRAL ORDER THAT THEY HAVE TO CARRY THEIR

15   BURDEN.

16        THERE WAS AN ORDER IN THE SUN VERSUS

17   MICROSOFT CASE THAT JUDGE WHYTE HAD IN THIS

18   COURTROOM.  AND A SIMILAR THING HAPPENED WHERE A

19   LOT OF DOCUMENTS WERE UNSEALED AND THE MEDIA

20   INTERVENED AND JUDGE WHYTE IN THAT CASE ACTUALLY

21   REFERRED IT TO A SPECIAL MASTER AND HE APPOINTED

22   FORMER JUDGE RENFREW AS A SPECIAL MASTER PAID FOR

23   BY SUN AND MICROSOFT.

24        AND I THINK USING A MAGISTRATE JUDGE IS

25   PROBABLY MORE EFFICIENT FOR THE PARTIES, AND WE'RE

7

1    FINE WITH THAT, BUT IN THAT CASE THERE WAS AN ORDER

2    MODIFYING THE STIPULATED PROTECTIVE ORDER REQUIRING

3    THAT THE PARTIES COME IN AND MAKE A SHOWING TO

4    JUSTIFY THE SEALING, THE CONTINUED SEALING OF ANY

5    DOCUMENTS OR THE REDACTIONS AND AS A RESULT MOST OF

6    THE DOCUMENTS WERE UNSEALED ONLY WITH LIMITED

7    REDACTIONS AND WE WOULD ASK THAT A SIMILAR

8    PROCEDURE BE EMPLOYED IN THIS CASE.

9         THE COURT:  VERY WELL.  MS. SUTTON.

10        MS. SUTTON:  THANK YOU, YOUR HONOR.  IF I

11   COULD WORK BACKWARDS REAL QUICKLY, IN TERMS OF THE

12   REFERRAL TO THE MAGISTRATE JUDGE, MR. MYERS

13   SUGGESTED THAT IT HAPPEN QUICKLY.  I'M NOT SURE

14   WHAT THAT MEANS.  THE RECORD IS VOLUMINOUS, AND WE

15   WOULD REQUEST A REASONABLE AMOUNT OF TIME TO GO

16   THROUGH AND ANALYZE THE DOCUMENTS THAT HAVE

17   PREVIOUSLY BEEN UNDER SEAL.

18        THIS CASE HAS BEEN GOING ON THREE AND A

19   HALF YEARS.  SO IT'S GOING TO TAKE SOME TIME TO

20   PARSE THROUGH THE RECORD AND THEN PREPARE ANY

21   DECLARATIONS THAT THE COURT MIGHT DEEM NECESSARY TO

22   MEET A DIFFERENT BURDEN.

23        THE RECORDS THAT WERE FILED IN THE

24   SUPERIOR COURT, MR. MYERS DOESN'T DISCUSS WHETHER

25   OR NOT HE WANTS TO GO BACK TO THE BEGINNING OF THE

8

1    CASE OR JUST TO WHEN THE CASE WAS REMOVED BUT IN

2    THE SUPERIOR COURT IN 2001 THE JUDICIAL COUNSEL

3    INSTITUTED NEW PROCEDURES IN WHICH THE PARTIES WERE

4    COMPELLED -- WERE REQUIRED TO MEET A COMPELLING

5    INTEREST STANDARD IN GETTING ANYTHING SEALED.

6              SO TO THE EXTENT THAT DOCUMENTS WERE

7    SEALED IN SUPERIOR COURT, THOSE DOCUMENTS AND

8    MOTIONS HAVE ALREADY BEEN PREPARED.

9              I MEAN, WE CAN SUBMIT THOSE TO THE COURT.

10             IN TERMS OF AFTER REMOVAL, IF THERE'S

11   ANYTHING THAT THE COURT DEEMS IS INSUFFICIENT,

12   PLAINTIFFS ARE CERTAINLY HAPPY TO GO BACK AND

13   PREPARE DECLARATIONS WITH MORE DETAIL IF THE COURT

14   SO DESIRES JUST TO JUSTIFY THE CONCEALING OF THE

15   DOCUMENTS.

16             TO BE CLEAR, THIS IS AN IP CASE LARGELY,

17   SO WE'RE TALKING ABOUT DOCUMENTS THAT REVEAL SOURCE

18   CODE, BOTH PLAINTIFFS AND DEFENDANTS, TRADE SECRET

19   SOURCE CODE AND OTHER CONFIDENTIAL PROPRIETARY

20   INFORMATION.

21             PART OF THIS CASE IS ABOUT CONNECTU AND

22   ITS RELATED PARTIES HACKING INTO FACEBOOK SERVERS

23   AND STEALING DATA AND THEN SPAMMING USERS.

24             SO SOME OF THE DOCUMENTS THAT ARE

25   ATTACHED OR INCLUDED IN THE RECORD ARE DOCUMENTS

THAT SHOW WHAT SECURITY MEASURES FACEBOOK TOOK TO
PREVENT FURTHER ACTIONS THAT THE DEFENDANTS TOOK.

SO, SO -- WE CAN SHOW COMPELLING REASONS
TO KEEP THIS INFORMATION SEALED.

SOME OF THE OTHER INFORMATION INCLUDES
FINANCIAL INFORMATION OF A PRIVATE COMPANY.
FACEBOOK IS PRIVATELY HELD.  IT IS NOT HELD TO THE
SAME STANDARD OF A PUBLIC COMPANY WHERE IT'S
REQUIRED TO MAKE PUBLIC DISCLOSURES FOR SECURITIES
REASONS OR OTHER FINANCIAL INFORMATION.

THE INFORMATION HAS BEEN KEPT PRIVATE BY
FACEBOOK AND FACEBOOK WOULD JUST LIKE TO CONTINUE
TO KEEP THAT PRIVATE FOR A VARIETY OF REASONS, NOT
THE LEAST OF WHICH IS COMPETITIVE HARM THAT IT
MIGHT FACE.  AND SO WE WOULD BE PREPARED TO FILE
DECLARATIONS IN SUPPORT OF THAT AS WELL.

THERE'S ALSO PRIVATE COMMUNICATIONS AMONG
SOME OF THE PRINCIPALS AT FACEBOOK AND THEIR
FORENSIC COLLEGIANS AND OTHER FAMILY MEMBERS AND
THOSE HAVE A CONSTITUTIONAL RIGHT OF PRIVACY THAT
WE WOULD LIKE TO PROTECT AND AGAIN WE COULD SUBMIT
A DECLARATION DETAILING THAT AS WELL.

IN TERMS OF THE TRANSCRIPT, WHILE THE
RIGHT MAY HAVE A GENERAL RIGHT TO ACCESS TO PUBLIC
PROCEEDINGS, IT IS NOT ABSOLUTE.  IT IS A QUALIFIED

10

1    RIGHT.

2              AND IN ORDER TO HAVE WHOLESALE UNSEALING

3    OF THE RECORD, THEY NEED TO SHOW THAT THAT -- THAT

4    THE SEALING DID NOT, DID NOT SERVE A COMPELLING

5    INTEREST AND THAT THERE WAS NO ALTERNATIVE MEANS.

6              AND THE PROPOSED TRANSCRIPT THAT THE

7    COURT HAS OFFERED IS NARROWLY TAILORED TO PROTECT

8    FACEBOOK'S AND DEFENDANT'S, QUITE FRANKLY, PRIVATE

9    INFORMATION FROM THE SETTLEMENT AGREEMENT AND THE

10   SETTLEMENT DISCUSSIONS.

11             IT'S, IT'S VERY NARROWLY TAILORED SO AS

12   NOT TO UNNECESSARILY IMPEDE ON FREE ACCESS TO WHAT

13   HAD HAPPENED AT THE HEARING.  SO TO ARGUE THAT NO

14   MORE OF IT NEEDS TO BE RELEASED THEN THE COURT HAS

15   PROPOSED.

16             THE MOTION IN THE RELATED PAPERS WE

17   READILY ADMITTED IN OUR OPPOSITION THAT WE WOULD BE

18   HAPPY TO GO BACK AND UNSEAL MANY OF THE DOCUMENTS.

19             AT THE OUTSET, WHEN THE MOTION TO ENFORCE

20   WAS FILED, THE PARTIES HAD AT THAT TIME AGREED TO

21   KEEP EVERYTHING CONFIDENTIAL.  THIS CASE HAS GOTTEN

22   WIDE MEDIA ATTENTION AND IN ORDER TO FACILITATE A

23   WRAP-UP OF EVERYTHING AND GET THE DISMISSAL ON

24   FILE, THE PARTIES HAD AGREED TO KEEP EVERYTHING

25   CONFIDENTIAL SO EVERYTHING GOT PUT UNDER SEAL.

1          AND THERE'S OBVIOUSLY LOTS OF EXHIBITS

2     AND THINGS THAT CAN BE UNSEALED AT THIS POINT NOW

3     THAT THE SETTLEMENT IS OUT AND THE AGREEMENT HAS

4     LARGELY BEEN RELEASED TO THE PUBLIC AS WELL.

5          BUT THERE ARE STILL DOCUMENTS THAT ARE

6     APART OF THAT RECORD THAT NEED TO REMAIN SEALED,

7     AGAIN IT'S PRIVATE INFORMATION BELONGING TO

8     FACEBOOK THEY WOULD HAVE NEVER RELEASED TO THE

9     PUBLIC BUT FOR THEIR NEED TO DEFEND THEMSELVES IN

10    THIS MOTION TO ENFORCE AND THEY RELIED ON THE

11    PROTECTIVE ORDER IN RELEASING SOME OF THE

12    INFORMATION.

13          AND WHAT I'M THINKING OF IN PARTICULARLY

14    IS THE PRIVATE VALUATION OF THE COMPANY AS WELL AS

15    AN INTERNAL COMMON STOCK AGREEMENT THAT FACEBOOK

16    USES WITH ITS EMPLOYEES.

17          THOSE ARE NOT DOCUMENTS THAT WOULD HAVE

18    BEEN RELEASED INTO THE PUBLIC BUT FOR THE MOTION TO

19    ENFORCE AND A RELIANCE ON A PROTECTIVE ORDER.

20          THERE ALSO ARE SOME DECLARATIONS THAT

21    CONNECTU PUT INTO THE RECORD THAT DISCLOSED THINGS

22    THAT HAPPENED AT THE MEDIATION OR PURPORTEDLY

23    OCCURRED AT THE MEDIATION AND THOSE HAVE THEIR OWN

24    PROTECTIONS UNDER A.D.R. LOCAL RULE 6-11.

25          THE PARTIES ARE NOT PERMITTED TO

DISCLOSE, TO DISCLOSE WHAT HAPPENED OR WHAT WAS
SAID AT THE MEDIATION AND CONNECTU IMPROPERLY PUT
THOSE INTO THE RECORD.  AND SO TO UNSEAL THEM WOULD
NOT ONLY VIOLATE THE MEDIATION PRIVILEGE, IT GOES
AGAINST THE PARTY'S AGREEMENT TO KEEP THINGS
CONFIDENTIAL BUT ALSO VIOLATES A.D.R. LOCAL RULE
6-11 AND SO WE WOULD ASK THAT THOSE REMAIN SEALED.

AND AGAIN, WE ARE HAPPY TO GO BACK AND
PREPARE DECLARATIONS DESCRIBING THE INFORMATION WHY
THIS INFORMATION SHOULD BE SEALED.

THE COURT:  VERY WELL.  ANYONE ELSE WANT
TO SPEAK TO THIS MATTER?

MR. MYERS:  YOUR HONOR, COULD I BRIEFLY?
I'M SORRY, GO AHEAD.

MR. BARRETT:  YOUR HONOR, DAVID BARRETT
FROM BOIES, SCHILLER & FLEXNER REPRESENTING
CONNECTU AND I WILL SPEAK BRIEFLY AND IN RESPONSE
TO A COUPLE OF THINGS THAT MS. SUTTON SAID.

CONNECTU IS NOT REQUESTING THAT THE COURT
REDACT ANY MORE THAN WE UNDERSTAND THE COURT IS
PREPARED TO DO.

CONNECTU IS TAKING NO POSITION ON WHETHER
THE REDACTIONS THAT THE COURT WE UNDERSTAND MAY BE
MAKING ARE APPROPRIATE BECAUSE WE UNDERSTAND THAT
THAT DETERMINATION INVOLVES BALANCING BY THE COURT

1    OF CONFIDENTIALITY RIGHTS AND PUBLIC INTERESTS.

2           WE DID NOTE THAT, THAT SOME OF THE

3    REDACTIONS IN THE TRANSCRIPT SEEM TO GO BEYOND THE

4    REDACTIONS THAT THE COURT HAD MADE IN THE TERM

5    SHEET AND INDEED I THINK GO SOMEWHAT BEYOND WHAT

6    MS. SUTTON WAS SUGGESTING FACEBOOK WAS SEEKING IN

7    TERMS OF REDACTION.

8           AS THE COURT WILL RECALL, WHEN YOU

9    REDACTED THE TERM SHEET IN YOUR ORDER LAST WEEK,

10   ESSENTIALLY THE ONLY THINGS THAT WERE REDACTED WERE

11   NUMBERS.

12          AND AS WE UNDERSTAND THE PROPOSED

13   REDACTIONS IN THE TRANSCRIPT, THEY GO BEYOND

14   NUMBERS AND COVER, I BELIEVE IT'S FAIR TO SAY, SOME

15   SUBSTANTIVE ARGUMENTS.

16          MS. SUTTON REFERRED TO THE PRIVATE

17   VALUATION OF THE COMPANY.  THAT'S OBVIOUSLY A

18   NUMBER.  I'M NOT SURE WHAT SHE MEANT BY INTERNAL

19   COMMON STOCK AGREEMENT.

20          OBVIOUSLY THE TERM SHEET, WHICH IS

21   ALREADY PUBLIC, DOES IDENTIFY SOME RESTRICTIONS

22   THAT WILL GO WITH THE STOCK IF THE SETTLEMENT

23   AGREEMENT IS ULTIMATELY ENFORCED.

24          AND THE THIRD THING SHE MENTIONED IS

25   DISCLOSURE OF EVENTS RELATING TO THE MEDIATION, AND

                                                      14

```
1    I DID JUST WANT TO SAY A WORD ABOUT THAT BECAUSE

2    SHE SAID THAT CONNECTU IMPROPERLY PUT THOSE MATTERS

3    RELATING TO THE MEDIATION INTO THE RECORD.

4              AND I DO DISAGREE WITH THAT FOR TWO

5    REASONS.

6              FIRST OF ALL, AS WE ARGUED, ALTHOUGH I

7    UNDERSTAND THE COURT WAS NOT PERSUADED IN ITS

8    OPINION, AS WE ARGUED, THERE IS AN EXCEPTION TO THE

9    MEDIATION PRIVILEGE THAT IS EXPRESSED IN THE LOCAL

10   A.D.R. RULE.

11             WE ALSO ARGUED THAT IT CAN BE OVERCOME OR

12   IS OVERCOME BY THE SECURITIES ACT OF 1934 BY

13   PROVISIONS OF THAT ACT BARRING SECURITIES FRAUD.

14   SO WE THINK IT WAS NOT IMPROPER FOR THAT REASON.

15             AND SECONDLY, SECONDLY, IN PARTICULAR, IN

16   THIS CASE, AS WE ARGUED, AND THE REASON THAT WE PUT

17   IN THE SECOND DECLARATION FROM MR. WINKLEVOSS,

18   WHICH DID DISCUSS MATTERS IN THE MEDIATION, WAS

19   BECAUSE IN FACEBOOK'S REPLY BRIEF IN SUPPORT OF THE

20   MOTION TO ENFORCE, THEY MADE THE STATEMENT THAT,

21   THAT CONNECTU HAD NOT MADE ANY PROFFER OF WHAT

22   HAPPENS IN THE MEDIATION AND THAT WE WOULD LIKE TO

23   SHOW THE COURT IN ORDER TO FURTHER SUPPORT OUR

24   CLAIM OF SECURITIES FRAUD.

25             AND, YOUR HONOR, I WOULD SUBMIT THAT WHEN
```

1    FACEBOOK MADE THAT STATEMENT IN EFFECT SAYING ONE

2    OF THE REASONS THAT YOU SHOULD REJECT OUR DEFENSE

3    WAS BECAUSE WE HADN'T TOLD YOU ANYTHING THAT

4    HAPPENED IN THE MEDIATION THAT WOULD SUPPORT A

5    SECURITIES FRAUD CLAIM, THAT WAS A -- IN FACT, THEY

6    SAID, THEY SAID, YOUR HONOR, WE HAVE NO EVIDENCE OF

7    ANYTHING THAT HAPPENED IN THE MEDIATION THAT WOULD

8    SUPPORT A SECURITIES FRAUD CLAIM.

9         WHEN THEY MADE THAT ARGUMENT, THAT WAS

10   EFFECTIVELY A WAIVER AND WE WERE ENTITLED TO DEFEND

11   AGAINST THAT ARGUMENT BY PUTTING IN THAT EVIDENCE.

12        THAT'S, PERHAPS, A BIT OF A LONG WINDED

13   WAY OF SAYING THAT I DON'T THINK THAT THERE WAS

14   ANYTHING IMPROPER ABOUT THAT DECLARATION BEING PUT

15   IN, IN LIGHT OF THE -- IN LIGHT OF THOSE FACTORS.

16        NOW, THAT MAY BE A DIFFERENT QUESTION

17   FROM WHETHER THE COURT BELIEVES AT THIS STAGE OF

18   THE PROCEEDINGS AND IN LIGHT OF CNET'S MOTION,

19   WHETHER IT IS APPROPRIATE TO DISCLOSE INFORMATION

20   ABOUT WHAT OCCURRED IN THE MEDIATION AND I

21   RECOGNIZE THAT THAT'S A DIFFERENT ISSUE.

22        BUT EVEN HAVING SAID THAT, IT DID APPEAR

23   THAT SOME OF THE REDACTIONS IN THE TRANSCRIPT

24   WERE -- DID NOT INVOLVE MATTERS THAT HAD ANYTHING

25   TO DO WITH THE MEDIATION.  THEY INVOLVED

1    SUBSTANTIVE MATTERS THAT CAN BE DISCUSSED WITHOUT

2    ANY DISCLOSURE OF WHAT HAPPENED IN THE MEDIATION.

3                THANK YOU, YOUR HONOR.

4                THE COURT:  BRIEFLY.

5                MR. MYERS:  YES, YOUR HONOR.  IT'S NOT

6    OUR BURDEN; IT'S THEIR BURDEN.  AND I'M ONLY NOW

7    TALKING ABOUT THE TRANSCRIPT AND THE MOTION AND I'M

8    NOT TALKING ABOUT ALL THE OTHER RECORDS -- WE CAN

9    TALK ABOUT -- NOBODY WANTS THEIR SOURCE CODE.

10               WHEN THIS GETS REFERRED TO THE MAGISTRATE

11   AND THEY SUBMIT A DECLARATION SAYING DOCUMENT XX

12   CONTAINS OUR SOURCE CODE AND WE WANT IT REDACTED,

13   AND THAT'S FINE.  THAT HAPPENED IN THE SUN

14   MICROSOFT CASE.  THAT'S A TRADE SECRET, AND NO ONE

15   HAS A PROBLEM WITH THAT.

16               IT GETS A LITTLE SQUISHY WHEN YOU TALK

17   ABOUT CONFIDENTIAL INFORMATION BECAUSE I IMAGINE

18   FROM THE COURT'S OWN EXPERIENCE IT KNOWS THAT THE

19   PARTIES TEND TO BE OVERZEALOUS IN DEFINING WHAT

20   THEY BELIEVE TO BE THEIR CONFIDENTIAL INFORMATION.

21               AND THAT IS WHY THE COURTS REQUIRE A

22   SHOWING, THE COMPELLING INTEREST TEST, FOR THE

23   TRANSCRIPT AND THE COMPELLING NEEDS TEST, WHICH

24   REQUIRES A SHOWING OF -- NOT JUST THAT IT'S

25   CONFIDENTIAL BUT COMPETITIVE HARM AND THEY CAN'T

1     JUST COME IN AND SAY, WELL, WE'LL DO IT. THEY HAD

2     A CHANCE TO DO IT AND IN WHAT THEY FILED ON MONDAY.

3     THEY HAD THE WEEKEND. THEY COULD HAVE PUT THE

4     DECLARATION IN. THEY DIDN'T.

5     THEY COULD HAVE PUT ONE IN BEFORE THE

6     HEARING WAS CLOSED, AND THEY DIDN'T DO THAT EITHER.

7     THERE'S BEEN NO SHOWING THAT WOULD JUSTIFY ANY

8     REDACTION OF THE HEARING OR ANY REDACTION OF THE

9     PAPERS REGARDING THE MOTION TO ENFORCE.

10    AND EVERYTHING ELSE WE AGREE CAN BE

11    REFERRED TO THE MAGISTRATE AND THEY CAN MAKE A

12    SHOWING ON THOSE DOCUMENTS.

13    WITH RESPECT TO TIMING, WE PROPOSE

14    TWO WEEKS. WE'RE FINE WITH BIFURCATING THAT AND

15    NOT DEALING WITH ANY OF THE DOCUMENTS THAT WERE IN

16    THE SUPERIOR COURT BEFORE IT WAS REMOVED.

17    NOW WE CAN MAYBE DO THAT LATER, ANOTHER

18    TWO WEEKS DOWN THE ROAD, BUT WE PROPOSE TWO WEEKS.

19    AND THE A.P. CASE THAT WE CITED, THE

20    NINTH CIRCUIT CASE WE CITED IT GAVE THE PARTIES

21    THREE DAYS BECAUSE THE COURT HAD SEALED EVERYTHING.

22    IT SAID YOU SHOULDN'T BE DOING THIS AND

23    YOU HAVE TO GO BACK AND LOOK AT THIS. WE'RE GOING

24    TO FILE MOTIONS TO JUSTIFY THE SEALING BUT YOU HAVE

25    THREE DAYS. SO WE'RE PROPOSING TWO WEEKS.

1      THEY, I THINK, HAVE NOT PROPOSED ANY

2 TIMEFRAME SO WE'RE OPEN TO TALKING ABOUT IT, BUT WE

3 WOULD PROPOSE TWO WEEKS.

4      THE COURT:  WELL, I -- UNLESS YOU HAVE

5 SOMETHING THAT IS BURNING, I THINK I HAVE A, A --

6 WELL, I SHOULDN'T SAY SOLUTION.  I HAVE AN ORDER

7 THAT I CAN MAKE THAT IN MY MIND DOES A PROPERLY, A

8 PROPERLY BALANCE AND MR. BARRETT'S COMMENT THAT

9 BALANCING IS THE WATCH WORD OF THIS WHOLE PROCESS

10 AND I'LL ISSUE THAT AS SOON AS I LEAVE THE BENCH.

11      IN THAT ORDER I DO RECOGNIZE THE NEED FOR

12 BALANCING BECAUSE THERE ARE COMPETING INTERESTS

13 HERE.

14      AND I THINK AS THE PARTIES HAVE

15 ADEQUATELY POINTED OUT, THERE ARE DIFFERENT

16 CONCERNS THAT ATTACH TO A CONFIDENTIALITY THAT IS

17 INHERENT IN TRADE SECRETS AND THE TRADITIONAL KINDS

18 OF MATERIAL THAT CAN BE HELD IN CONFIDENCE, EVEN IN

19 THE CONTEXT OF A LITIGATION IN A PUBLIC FORUM SUCH

20 AS THIS COURT.

21      THE REASON THIS CASE IS ONE THAT I HAVE

22 GIVEN A GREAT DEAL OF ATTENTION TO IS BECAUSE AS A

23 COURT WE ENCOURAGE PARTIES TO ENGAGE IN MEDIATION

24 AND RESOLUTION OF DISPUTES.

25      THE PUBLIC HAS A DIRECT BENEFIT IN THAT

PROCESS. AND SO COURT ANNEXED MEDIATION IS A VERY
IMPORTANT PART OF HOW WE DO BUSINESS AS A COURT AND
MY PREDECESSOR -- I ACTUALLY TOOK THE SEAT OF
ROBERT PECKHAM. I'M HONORED TO HAVE DONE SO. HE
PIONEERED COURT ANNEXED MEDIATION AND IN THE
INTEREST OF THIS COURT IN THE ALTERNATIVE DISPUTE
RESOLUTION.

SO WHEN THE PARTIES GO OUT TO A.D.R. AND
COME TO WHAT THEY REGARD AS A CONFIDENTIAL
SETTLEMENT AND COME BACK TO THE COURT WITH A MOTION
TO ENFORCE THAT CONFIDENTIAL SETTLEMENT, IT'S PART
OF WHAT WE DO AS A COURT IS TO RESPECT THAT
CONFIDENTIALITY.

AND I HAVE BEEN MOTIVATED BY A REQUEST BY
THE PARTIES TO RESPECT THE CONFIDENTIALITY OF THE
SETTLEMENT.

AT THE SAME TIME IT'S NECESSARY TO INVADE
SOME OF THE DETAILS OF THAT SETTLEMENT IN ORDER TO
DO WHAT THE PARTIES HAVE ASKED THE COURT TO DO AND
THAT IS TO ENFORCE THE SETTLEMENT.

IT IS TRUE THAT THERE HAS BEEN A
DISPOSITIVE MOTION MADE TO THE COURT IN THE FORM OF
THIS MOTION TO ENFORCE THE SETTLEMENT, BUT THE CASE
HAS NOT BEEN DISPOSED OF BY THE MOTION BECAUSE AS I
LOOK AROUND THE ROOM I DON'T HAVE AGREEMENT FROM

EVERYONE THAT WHAT I'M DOING IS THE CORRECT THING.
SO THE WHOLE LITIGATION MAY RESUME AND IF I TAKE
ACTION IN THE COURSE OF THIS, WHICH OPENS UP TO
PUBLIC SCRUTINY MATTERS THAT THE PARTIES HAVE
SOUGHT TO SHIELD IN THE COURSE OF THEIR LITIGATION,
I, PERHAPS, WILL PUT THEM IN A DISADVANTAGE IF THE
LITIGATION WERE TO CONTINUE.

ONE OF THE THINGS THEY SOUGHT TO PROTECT
IN THEIR CONFIDENTIAL SETTLEMENT, I PRESUME, IS ANY
PUBLIC DISCOURSE ABOUT THEIR MOTIVATION TO SETTLE
AND ANY CHARACTERIZATION OF ONE OR THE OTHER.

BUT IN THE COURSE OF THE MOTION TO COMPEL
THE MOTION OF NECESSITY, I HAD TO ASK QUESTIONS
ABOUT MATTERS THAT THEY OTHERWISE WOULD KEEP
CONFIDENTIAL.

AND, AGAIN, I AM MINDFUL OF THAT WITH
RESPECT TO A MOTION SUCH AS THE ONE BEING MADE BY
THE COURT TO UNSEAL SO THAT THE PUBLIC CAN GET INTO
THOSE PRIVILEGED MATTERS THAT THEY OTHERWISE WOULD
KEEP CONFIDENTIAL AND THE PARTIES COULD HAVE CHOSEN
TO ENFORCE THEIR SETTLEMENT BY GOING TO FURTHER
PRIVATE MEDIATION AND KEPT IT OUT OF THE PUBLIC
FORUM ALL TOGETHER.

BUT HAVING CHOSEN THE COURT, THEY HAVE
ACTUALLY CHOSEN A PUBLIC FORUM, BUT AT THE SAME

TIME I THINK WE CAN RECONCILE THE INTEREST OF THE

PUBLIC THROUGH THE MEDIA OR OTHERWISE TO HAVE

ACCESS TO INFORMATION THAT DOESN'T VIOLATE THE KIND

OF PRIVILEGE THAT THE PARTIES THOUGHT THEY WERE

ENJOYING BY COMING TO A CONFIDENTIAL SETTLEMENT.

AND SO I WILL PARSE BETWEEN THE VARIOUS

MATTERS HERE.  THE TRANSCRIPT I HAVE GONE THROUGH

AND REDACTED PORTIONS OF IT WHICH SPEAK TO THE

FINANCIAL DISCLOSURES THAT THEY MADE TO EACH OTHER

ON A CONFIDENTIAL BASIS.

BUT TO MR. BARRETT'S POINT THAT MY

REDACTIONS ARE MORE EXTENSIVE THAN THAT, WHAT I

HAVE TRIED TO DO WAS TO PROTECT THE CONFIDENTIALITY

OF THE GIVE AND TAKE IN THE SETTLEMENT DISCUSSIONS

AND SO I -- MY REDACTIONS WERE REFLECTIVE OF AN

ATTITUDE THAT UNTIL THE PARTIES THEMSELVES

VOLUNTARILY DECIDE THAT THOSE MATTERS SHOULD BE PUT

IN THE PUBLIC RECORD, I HAVE BEEN MORE -- I HAVE

BEEN CAUTIOUS ABOUT PUTTING THOSE MATTERS INTO THE

PUBLIC.

THAT TRANSCRIPT WAS ONE WHERE I INVITED

THE PARTIES TO COME TO COURT AND SPEAK TO ME

CANDIDLY IN A CLOSED FORUM ABOUT WHAT HAD HAPPENED.

AND I GUESS NOW I HAVE TO ASSURE THEM THAT I WOULD

RESPECT THE CONFIDENTIALITY THAT I TOLD THEM THAT I

1    WOULD GIVE THEM IN HAVING THAT HEARING AND IT PUTS

2    THE COURT IN A DIFFICULT POSITION TO BE NOW MAKING

3    A JUDGMENT THAT, WELL, I TOLD YOU IT WAS

4    CONFIDENTIAL AND SEALED BUT NOW I'M GOING TO MAKE

5    IT PUBLIC.

6              THE INTEGRITY OF THE COURT CAN BECOME

7    INVOLVED IF PARTIES WHO GO BEFORE THE COURTS ARE

8    ASSURED THAT IT'S A SEALED CONFIDENTIAL PROCESS

9    ONLY TO LATER FIND THAT IT IS NOT.

10             NOW, THE LAW ALLOWS THE COURT TO EXERCISE

11   ITS DISCRETION WITHIN LIMITS.

12             THERE ARE STANDARDS AND I DO INTEND TO

13   RESPECT THOSE STANDARDS IN WHAT I, WHAT I -- IN THE

14   ORDER THAT I'M GOING TO MAKE WITH RESPECT TO THIS

15   MATTER.

16             SO YOUR ARGUMENT THAT I SHOULD ACT

17   QUICKLY IS ONE THAT I AM MINDFUL OF.

18             MR. MYERS, I WILL, AS I SAID, ISSUE MY

19   ORDER AS SOON AS I'M OFF THE BENCH.

20             I WILL DIRECT THE COURT REPORTER TO FILE

21   A REDACTED TRANSCRIPT SO THAT THAT IS AVAILABLE AND

22   WITH RESPECT TO THE PREMOTION MATTERS THAT WERE

23   FILED UNDER SEAL, AT THE ORDER OF OTHER JUDGES, I

24   GOT THIS CASE ON THE MOTION WITH RESPECT TO THE

25   SETTLEMENT AND THESE ORDERS WERE MADE PRIOR TO MY

1    INVOLVEMENT IN THE CASE AND I DON'T HAVE A BASIS

2    FOR, AT THIS POINT, MAKING ANY JUDGMENT ABOUT THOSE

3    MATTERS.

4              THERE ARE STANDARDS THAT AFFECT THAT, AND

5    I DO INTEND TO REFER THOSE MATTERS TO A MAGISTRATE

6    JUDGE TO -- IF THERE ARE FURTHER REQUESTS MADE FOR

7    OPENING TO PUBLIC SCRUTINY THE DOCUMENTS THAT HAVE

8    BEEN PREVIOUSLY SEALED BY THE COURT.

9              SO WITH THAT THE MOTION TO INTERVENE FOR

10   THE LIMITED PURPOSE OF MAKING THIS MOTION IS

11   GRANTED.

12             AND THE MOTION TO UNSEAL WILL BE GRANTED

13   TO THE LIMITED EXTENT THAT I HAVE NOW INDICATED.

14             MR. MYERS:  CAN I ASK A POINT OF

15   CLARIFICATION?

16             THE COURT:  CERTAINLY.

17             MR. MYERS:  WITH RESPECT TO THE DOCUMENTS

18   THAT HAVE BEEN FILED, IS THE COURT TREATING THE

19   MOTION --

20             THE COURT:  WHICH DOCUMENTS?

21             MR. MYERS:  WELL, THAT'S MY QUESTION.  IS

22   THE COURT TREATING THE MOTION TO ENFORCE THE

23   SETTLEMENT AS PART OF ALL OF THE OTHER RECORDS THAT

24   WILL BE REFERRED TO THE MAGISTRATE OR ARE THOSE

25   GOING TO BE RELEASED WITH THE TRANSCRIPT OR SHORTLY

1    THEREAFTER?

2         THE COURT:  WELL, GOOD QUESTION.  I DON'T

3    KNOW.  I WOULD REGARD THE MOTION THAT WAS FILED

4    UNDER SEAL IN A DIFFERENT CATEGORY THAN THE OTHER

5    RECORDS BECAUSE IT WAS FILED PARTICULARLY WITH

6    RESPECT TO A CONFIDENTIAL SETTLEMENT.

7         AND THAT HAS A PRIVILEGE THAT ATTACHES TO

8    IT THAT IS DIFFERENT THAN THE PRIVILEGES THAT MIGHT

9    APPLY TO OTHER MATTERS.

10        SO I DO INTEND TO TREAT IT DIFFERENTLY.

11        I HAVEN'T DECIDED WHETHER OR NOT I WILL

12   GIVE THAT TO THE MAGISTRATE JUDGE OR KEEP IT MYSELF

13   BUT THE TRANSCRIPT WILL -- THE REDACTED TRANSCRIPT

14   WILL BE AVAILABLE.

15        MR. MYERS:  AND THAT WILL GO TO THE

16   PUBLIC COURT FILE?  THEY WILL BE ABLE TO GET IT

17   FROM THE FILE?

18        THE COURT:  THE COURT REPORTER HAS A

19   PROCESS THAT SHE USES TO MAKE THAT AVAILABLE TO THE

20   PUBLIC AND I WILL DIRECT HER TO, TO FILE -- IT'S

21   DONE THROUGH SOME ELECTRONIC FORM AND YOU NEED

22   ACCESS TO IT, BUT I'LL DIRECT HER TO FILE A

23   REDACTED TRANSCRIPT.

24        MR. MYERS:  THANK YOU, YOUR HONOR.

25        THE COURT:  THANK YOU ALL.

WE'LL GO NOW TO THE OTHER MOTION THAT IS

1    BEFORE THE COURT HAVING TO DO WITH THE ORDER TO

2    SHOW CAUSE WHY A JUDGMENT SHOULD BE ENTERED OR NOT

3    BE ENTERED AS THE CASE MAY BE.

4                    AND WITH RESPECT TO THAT, I RECEIVED

5    SUBMISSIONS FROM BOTH SIDES.  I PRESUME THAT THE

6    SUBMISSION BY THE DEFENDANTS CONNECTU AND OTHERS

7    ARE SUBMITTED WITHOUT WAIVING YOUR OBJECTION TO MY

8    ORDER IN THE FIRST PLACE.

9                    MR. BARRETT:  THAT IS CORRECT.  THANK

10   YOU.  WE ARE, YOUR HONOR, AS YOU SAY, ADDRESSING

11   THE FORM OF THE JUDGMENT AND WE RESERVE OUR RIGHTS

12   TO CONTEST THE ORDER AND THE JUDGMENT AS MAY BE

13   APPROPRIATE.

14                    THE COURT:  HERE'S WHAT I INTEND TO DO,

15   AND MAYBE THAT WOULD BE FASTER TO HAVE YOU ADDRESS

16   WHAT I INTEND TO DO AS OPPOSED TO WHAT YOU WOULD

17   WANT ME TO DO.

18                    I HAVE READ YOUR SUBMISSIONS.  THEY ARE

19   SUBSTANTIALLY THE SAME.  AND SO THE FORM OF THE

20   JUDGMENT I THINK COULD COMPLY WITH YOUR

21   SUBMISSIONS.

22                    THERE ARE A COUPLE OF ASPECTS OF IT THAT

23   I WANT TO ADDRESS.

24                    FIRST, IT WILL BE NECESSARY FOR SOME

25

                                                    26

1    INTERMEDIARY TO ACT IN A CAPACITY TO COLLECT

2    INFORMATION AND MOVE THINGS AROUND AND TO DO

3    CERTAIN THINGS TO CARRY OUT THE COURT'S JUDGMENT.

4              RATHER THAN ACCEPT THE SUBMISSION BY ONE

5    OF THE PARTIES THAT A PARTY SELECT THAT PERSON AND

6    PAY FOR THAT PROCESS, MY INTENT IS TO APPOINT A

7    SPECIAL MASTER WHO WOULD BEHOLDEN TO THE COURT,

8    TAKE DIRECTIONS FROM THE COURT AND NO ONE ELSE,

9    WITH RESPECT TO A COLLECTION OF THE VARIOUS

10   DEPOSITS MANDATED BY THE JUDGMENT AND WITH RESPECT

11   TO ANY DISBURSEMENTS OR FILINGS THAT WOULD COME

12   ALONG WITH THAT AND HAVE THE PARTIES PAY THE COST

13   OF THAT PROCESS EQUALLY.

14              IT IS ALSO MY INTENT TO THEN HAVE THE

15   JUDGMENT REQUIRE THE MASTER TO COLLECT THE VARIOUS

16   CERTIFICATES OR CASH OR OTHER CONSIDERATION TO

17   COLLECT RATHER THAN DEEM THAT THERE HAS BEEN

18   RELEASES TO ACTUALLY COLLECT A SUBMISSION OF A

19   RELEASE.

20              I DO INTEND TO PROVIDE THAT THAT RELEASE

21   HAS TO BE SUBMITTED TO THE COURT FOR ITS APPROVAL

22   AND THEN IT WOULD BE DEPOSITED WITH THE MASTER SO

23   THAT WOULD LEAVE TO THE COURT AND NO ONE ELSE THE

24   DETERMINATION AS TO WHETHER OR NOT THE RELEASE IS

25   CONSISTENT WITH THE LANGUAGE OF THE SETTLEMENT

1  AGREEMENT WHICH PROVIDES AS BROAD AS POSSIBLE.  I

2  CAN'T RECALL THE EXACT WORDS.

3          I WOULD ALSO HAVE THE PARTIES SUBMIT A

4  LEGALLY SUFFICIENT DISMISSAL OF ALL CASES AND THEN

5  I WOULD MAKE SUBSEQUENT ORDERS WITH RESPECT TO THEN

6  WHAT THE MASTER DOES WITH RESPECT TO THE EXCHANGE

7  OF THOSE DOCUMENTS.

8          THERE IS A LEGEND WHICH WAS SUGGESTED BY

9  ONE OF THE PARTIES WHICH WOULD BE PLACED ON STOCK

10 CERTIFICATES AND SO I NEED TO HEAR FROM THE PARTIES

11 WITH RESPECT TO WHETHER YOU HAVE ANY OBJECTION TO

12 THE JUDGMENT AND INCORPORATING THAT LEGEND.

13         THERE IS A REQUEST IN THE VARIOUS

14 SUBMISSIONS THAT THE COURT SPEAK TO VARIOUS ASSETS,

15 PARTICULARLY WEB SITES AND THOSE TYPES OF THINGS.

16 THERE WAS NOTHING ABOUT THAT IN THE SETTLEMENT

17 AGREEMENT ITSELF, AND SO THE COURT IS DISPOSED TO

18 LEAVE THAT TO MATTERS OF ORDINARY BUSINESS

19 TRANSACTIONS THAT FOLLOW THE ENFORCEMENT OF THE

20 SETTLEMENT AND THE EXCHANGES THAT ARE REQUIRED IN

21 THE SETTLEMENT.

22         I AM CONCERNED THAT IN ORDER TO BE

23 EFFECTIVE IN ITS ENFORCEMENT, THE COURT SHOULD

24 IMPOSE ON THE PARTIES A REQUIREMENT THAT THEY NOT

25 TAKE ANY ACTION WHICH WOULD INTERFERE WITH THE

28

1    ABILITY TO FULFILL THE TERMS OF THE AGREEMENT AND I

2    DIDN'T KNOW HOW FAR TO GO WITH RESPECT TO THAT.

3            AND THEN THE COURT DOES INTEND TO RETAIN

4    JURISDICTION TO ENFORCE THE JUDGMENT, AND I THINK

5    THAT IS ALSO INHERENT IN THE AGREEMENT ITSELF TO

6    RETAIN JURISDICTION GIVEN TO IT BY THE PARTIES TO

7    ENFORCE THE TERMS OF THE AGREEMENT ITSELF.

8            ALL RIGHT.  SO WITH THAT LET ME PAUSE AND

9    SEE IF THE PARTIES WISH TO SPEAK FURTHER.

10           MR. CHATTERJEE:  YOUR HONOR, IF I MAY.

11   NEEL CHATTERJEE FOR FACEBOOK AND MARK ZUCKERBERG.

12   WE ALSO DIDN'T DO APPEARANCES FOR THIS MOTION.

13           I SAW YOU MIGHT HAVE LOOKED COMPLEX AT

14   THE GENTLEMAN STANDING RIGHT NEXT TO ME AND I

15   THOUGHT IT MIGHT BE GOOD TO HAVE APPEARANCES.

16           MR. VAN DALSEM:  BRUCE VAN DALSEM FROM

17   QUINN EMANUEL.  WE'RE LIEN CLAIMANT IN THE CASE.

18           THE COURT:  I APPRECIATE THAT YOU ARE NOW

19   IDENTIFYING YOURSELF.  I DID NOT INTEND TO IN MY

20   STATEMENT SAY ANYTHING ABOUT THE LIEN CLAIMANT THAT

21   HAS COME TO MY ATTENTION.

22           SO FAR AS THE COURT IS KNOWLEDGEABLE,

23   THERE HAS BEEN A NOTICE OF A LIEN THAT I HAVE SEEN,

24   BUT I DON'T KNOW THE BONA FIDES OF IT.  IT DOES

25   SEEM TO ME THAT ANY EFFECT THAT THAT WOULD HAVE ON

29

MY JUDGMENT, IT HAS TO BE SOMEHOW ADJUDICATED IN SOME WAY, UNLESS THE PARTIES STIPULATE TO HOW TO HANDLE IT.

I DO INTEND THAT HAVING FILED IT, YOU MAY INTERJECT YOURSELF IN THE PROCESS SOMEHOW.

I HAVEN'T FIGURED OUT WHAT THAT IS FOR PURPOSES OF MAKING SURE THAT, THAT ANY, ANY -- THAT OUR DISBURSEMENTS ARE CONSISTENT WITH ANY CLAIM THAT YOUR CLIENT WOULD MAKE.

MR. VAN DALSEM: YOUR HONOR, IF THE COURT WOULD ENTERTAIN IT, I WOULD LIKE TO SPEAK TO THOSE ISSUES WHEN APPROPRIATE.

THE COURT: SURE, IN DUE COURSE. AND MAYBE THIS IS THE POINT, BUT I WANTED TO GIVE AT LEAST THE PARTIES TO THE LITIGATION AN OPPORTUNITY TO COMMENT ON THE FORM OF THE JUDGMENT I INTEND TO FILE.

MR. CHATTERJEE: THANK YOU, YOUR HONOR. AND THE ONE OTHER THING I JUST WANTED TO RAISE IS THAT I DID RECEIVE AN E-MAIL TWO DAYS AGO FROM THE FINNEGAN HENDERSON FIRM MAKING AN ASSERTION THAT THEY MAY ALSO FILE FOR A LIEN AGAINST ANY PROCEEDS IN THIS CASE. THEY HAVEN'T FILED ANYTHING WITH THE COURT, BUT IT'S OF CONCERN TO US BECAUSE FACEBOOK WANTS TO MAKE SURE THAT ONCE THEY HAVE GIVEN THE

30

1    CONSIDERATION, THERE IS NOTHING HANGING OUT THERE

2    AND SOMEONE CAN TRY ASSERT AGAINST FACEBOOK AND THE

3    OTHER INDIVIDUALS WHO ARE SETTLING IN THIS CASE.

4              PERHAPS -- I SEE MR. MOSKO STANDING UP.

5    PERHAPS HE CAN ADDRESS THAT ISSUE.

6              THE COURT:  COUNSEL.

7              MR. MOSKO:  YES, SCOTT MOSKO, YOUR HONOR,

8    REPRESENTATIVE OF ALL OF THE DEFENDANTS HERE AS

9    WELL AS ONE OF THE PARTNERS AT FINNEGAN HENDERSON.

10             THE COURT SHOULD BE AWARE THAT, IN FACT,

11   FINNEGAN HENDERSON HAS PERFECTED LIENS WITH RESPECT

12   TO THIS MATTER.

13             FINNEGAN HENDERSON IS NOT TAKING THE SAME

14   POSITION AS QUINN EMANUEL.

15             I UNDERSTAND THE COURT DOES NOT INTEND TO

16   MAKE ANY REFERENCE TO THE LIENS IN THE JUDGMENT AND

17   WITH RESPECT TO THAT FINNEGAN HENDERSON IS FINE.

18             WE INTEND TO WORK CLOSELY WITH OUR CLIENT

19   AND BELIEVE THAT THAT MATTER WILL BE RESOLVED

20   WITHOUT ANY KIND OF A REFERENCE TO THE LIENS IN THE

21   JUDGMENT.  AND WITH RESPECT TO THAT, I HAVE NOTHING

22   MORE TO SAY.

23             MR. CHATTERJEE:  SO, UM -- THANK YOU.

24             YOUR HONOR, AS TO THE ESCROW AGENT OR

25   SPECIAL MASTER, WHICH I'LL ADDRESS -- IS THE POINT

1    I'LL ADDRESS FIRST.

2            THE STRUCTURE THAT WAS PUT IN PLACE, AT

3    LEAST FROM FACEBOOK'S PERSPECTIVE AS FAR AS HAVING

4    THIS SPECIAL MASTER ADMINISTER HOW TO RELEASE FUNDS

5    OR STOCK AND HOW TO RELEASE OTHER KINDS OF

6    CONSIDERATION IN THE TRANSACTION, WAS REALLY

7    BECAUSE OF THE FACT THAT THERE WAS THIS NOTICE OF

8    LIEN HANGING OUT THERE.

9            IT WAS REALLY TO MAKE SURE THAT THE

10   SPECIAL MASTER OR WHOEVER THE NEUTRAL WAS THAT WAS

11   HOLDING ON TO THE PROPERTY WAS -- HOLD ON TO IT

12   ESSENTIALLY IN TRUST TO MAKE SURE THAT THE PROCEEDS

13   WERE DISTRIBUTED ACCORDINGLY AND THAT FACEBOOK

14   WOULD NO LONGER HAVE TO DEAL WITH ANY ISSUES

15   ASSOCIATED WITH THIS NOTICE OF LIEN.

16           I THINK YOUR HONOR IS CORRECT, WE DON'T

17   KNOW ANY OF THE PARTICULARS OF IT SO WE DON'T WANT

18   TO HAVE AN UNKNOWN CLAIM AGAINST A COMPANY THAT WE

19   BELIEVE WE NOW OWN HANGING OUT THERE AGAINST IT.

20           AND THEY FILED A NOTICE.  WE HAVE TO

21   PROTECT OUR INTEREST.  BUT REALLY THE ESCROW

22   PROPOSAL THAT BOTH PARTIES MADE AT LEAST FROM OUR

23   PERSPECTIVE WAS TO DEAL WITH THAT ISSUE.

24           IF YOUR HONOR WERE TO RULE THAT

25   FACEBOOK/CONNECTU, ONCE IT'S IN THE HANDS OF

32

1    FACEBOOK AND THE OTHER INDIVIDUALS WHO ARE ON OUR

2    SIDE OF THE CASE WHO HAVE SETTLED OUT, DON'T REALLY

3    HAVE ANY RESPONSIBILITIES AS TO THE NOTICE OF LIEN

4    THAT HAS BEEN FILED, THAT ACTUALLY MAKES THE

5    JUDGMENT CONSIDERABLY SIMPLER.

6              AND, AND IT'S -- FROM OUR PERSPECTIVE AT

7    THAT POINT IT'S JUST A TIMING QUESTION AND WE

8    BELIEVE THAT, THAT THEY SHOULD JUST BE ORDERED TO

9    HAND US ALL OF THE STOCK TO THE COMPANY WITHIN

10   30 DAYS OF ENTRY OF JUDGMENT.  WE DON'T NEED AN

11   ESCROW AGENT AT ALL.

12             THERE IS KIND OF A LINGERING TIMING

13   ISSUE, EVEN WERE A SPECIAL MASTER TO BE APPOINTED.

14   IF A SPECIAL MASTER WERE TO BE APPOINTED, WE DO

15   HAVE TO ANSWER THE QUESTION OF WHO IS GOING TO

16   CONTINUE TO MAINTAIN THE CONNECTU BUSINESS FROM THE

17   TIME OF ENTRY OF JUDGMENT UNTIL WHATEVER TIME THOSE

18   PROCEEDS ARE DISTRIBUTED.

19             CONNECTU DOES HAVE A BUSINESS AND IT HAS

20   A WEB SITE AND IT HAS OPERATING EXPENSES.  I DON'T

21   BELIEVE IT HAS EMPLOYEES, BUT IT CERTAINLY HAS

22   PEOPLE DOING WORK ON ITS BEHALF.

23             ONE OF THE THINGS WE WERE TALKING ABOUT

24   AS WE WERE TRYING TO WORK UP THE JUDGMENT ON OUR

25   SIDE OF THE CASE IS THAT IF WE DON'T GET THE

33

1    COMPANY WITHIN A VERY SHORT TIME PERIOD AND WE HOLD

2    ON -- OR A SPECIAL MASTER OR SOMEONE WERE TO HOLD

3    ON TO IT THROUGH THE FINAL PIECES OF THE APPEALS OR

4    THE FINAL COURT AND HOW IS THAT PIECE GOING TO BE

5    MANAGED?

6              PERHAPS THE SPECIAL MASTER IS GOING TO DO

7    IT.  HOW IS THAT GOING TO BE FUNDED?  AND THAT'S A

8    DIFFICULT QUESTION IN OUR VIEW.

9              AND OUR PREFERENCE IS TO HONOR THE

10   SETTLEMENT AGREEMENT AND WE GET CONTROL OF THE

11   COMPANY THROUGH OWNING THE SHARES AND WE WILL

12   CONTINUE TO OPERATE IT AND THE REST OF THE ASSETS

13   OF THE COMPANY AS IS NECESSARY.

14             THE ISSUE OF COST FOR THE SPECIAL MASTER

15   IS AN IMPORTANT ISSUE FROM OUR PERSPECTIVE BECAUSE,

16   AGAIN, FROM OUR PERSPECTIVE THE ONLY REASON THAT A

17   SPECIAL MASTER OR A COURT APPOINTED PERSON WOULD

18   HAVE THIS KIND OF A ROLE WOULD REALLY BE BECAUSE OF

19   A DISPUTE BETWEEN QUINN EMANUEL AND THE CONNECTU

20   FOUNDERS.

21             WE REALLY AREN'T INVOLVED IN THAT, AND WE

22   DON'T THINK WE SHOULD HAVE TO PAY FOR A FIGHT

23   BETWEEN THOSE PARTIES.

24             THE COURT:  WELL, I DON'T AGREE THAT'S

25   THE ONLY REASON.  THE REASON THAT I'M CONTEMPLATING

                                                      34

1    IS THAT YOU ALL WERE UNABLE TO DO IT ON YOUR OWN

2    AND YOU CAME TO THE COURT AND ASKED ME TO ENFORCE

3    IT AND IN THE ENFORCING OF IT, IT REQUIRES STEPS.

4              AND IT'S NOT A MATTER THAT I CAN DO

5    WITHOUT PUTTING SOMEONE IN THE MIDDLE TO COLLECT

6    THINGS IN ORDER TO MAKE SURE EVERYTHING IS, IS,

7    IS -- GOES ACCORDING TO THE AGREEMENT.

8              SO THAT'S WHY I'M CONTEMPLATING REQUIRES

9    THE MASTER IN THE FIRST PLACE AND ALSO REQUIRING

10   THAT THE PARTIES SHARE THE COST OF THAT.

11             I DON'T CONTEMPLATE THAT IT WOULD BE A

12   LONG DRAWN OUT AFFAIR, ALTHOUGH THINGS CAN OVERTAKE

13   THE TIMING THAT I ACTUALLY DON'T CONTEMPLATE HERE,

14   NOR DO I CONTEMPLATE THAT THE COST OF SOMEONE TO DO

15   THIS WOULD BE PROHIBITED.

16             MR. CHATTERJEE:  THANK YOU, YOUR HONOR.

17   THE ONLY CAVEAT TO THAT POINT IS IF QUINN EMANUEL

18   IS GOING TO SEEK TO INTERVENE IN THAT TRANSACTION

19   AND PROLONG THE SPECIAL MASTER'S ROLE AND INCREASE

20   THE EXPENSE, WE THINK THEY SHOULD HAVE TO

21   PARTICIPATE IN THE COST OF IT.

22             THE COURT:  WELL, THAT'S A FAIR POINT.

23             MR. BARRETT:  YOUR HONOR, IF I COULD

24   SPEAK TO A COUPLE OF THOSE POINTS.  DAVID BARRETT

25   FOR FACEBOOK.

1          MR. UNDERHILL:  NO, FOR CONNECTU.

2          MR. BARRETT:  I'M SORRY.  DAVID BARRETT

3   FOR CONNECTU.

4          WE CERTAINLY WOULD BE SUPPORTIVE OF THE

5   IDEA OF AN ESCROW AGENT APPOINTED BY THE COURT.

6          ONE ASPECT OF THE PROPOSED JUDGMENTS ON

7   WHICH THE PARTIES ARE IN AGREEMENT, YOUR HONOR, IS

8   THAT BOTH OF THE FORMS OF JUDGMENT THAT THE PARTIES

9   SUBMITTED TO THE COURT INDICATED THAT THE CLOSING,

10  IF YOU WILL -- I'M PUTTING TO ONE SIDE THE QUINN

11  EMANUEL ISSUE FOR THE MOMENT -- BUT JUST THE

12  DEPOSIT OF THE SHARES OF STOCK WITH THE RESPECTIVE

13  COMPANIES AND THE CASH WOULD OCCUR EITHER AFTER

14  CONNECTU IRREVOCABLY WAIVED ITS RIGHT TO APPEAL THE

15  JUDGMENT OR WITHIN FIVE DAYS AFTER ANY APPEALS THAT

16  ARE TAKEN BECOME FINAL.

17         THE COURT:  I SAW THAT IN AT LEAST ONE OF

18  THE PROPOSALS.

19         IT CREATED FOR ME A PROBLEM BECAUSE THERE

20  CAN -- AN ARGUMENT CAN BE MADE THAT A JUDGMENT IS

21  NOT APPEALABLE UNTIL THE FINAL ACT REQUIRED UNDER

22  THE JUDGMENT TAKES PLACE WHICH MAKES IT A

23  CIRCUITOUS SITUATION BECAUSE JUST MY MAKING A

24  JUDGMENT IF I SET UP A SITUATION THAT HAS TO TAKE

25  PLACE AND PEOPLE SAY I DON'T REALLY HAVE TO APPEAL

1    THAT UNTIL I'M REQUIRED TO TAKE THAT ACT, WHICH

2    MEANS THAT IT NEVER COMES, PERHAPS.

3              MR. BARRETT:  I THINK THERE ARE PROBABLY

4    TWO WAYS OUT OF THAT, YOUR HONOR.  ONE IS THAT THIS

5    IS THE FUNCTIONAL EQUIVALENT OF A STAY.

6              THE OTHER IS THAT THE COURT'S PROPOSED

7    SOLUTION, WHICH AS I NOW UNDERSTAND WHAT YOU'RE

8    SAYING IS, WHICH IS THAT THE, THAT THE

9    CONSIDERATION WOULD GO INTO THE CONTROL OF THE

10   SPECIAL MASTER WITHIN SOME RELATIVELY BRIEF PERIOD

11   OF TIME AND THEN, YOU KNOW, WHAT WE'RE CONCERNED

12   ABOUT, YOUR HONOR, AND BOTH SIDES ARE PROBABLY

13   CONCERNED ABOUT, IS THAT EACH SIDE IS GIVEN

14   CONSIDERATION HERE.

15             THERE IS A POSSIBILITY THAT THE JUDGMENT

16   WOULD BE REVERSED ON APPEAL AND IF YOU HAVE DONE

17   THINGS LIKE GET RELEASES, DISMISSED CASES NOT JUST

18   IN THIS CASE BUT IN THE MASSACHUSETTS COURT, HAND

19   OVER THE COMPANY AND HAND OVER CASH FOR THAT

20   MATTER, UNSCRAMBLING THAT IN THE EVENT OF A

21   REVERSAL COULD BECOME, YOU KNOW, MUCH MORE

22   COMPLICATED THAN JUST SITTING THERE AND MAINTAINING

23   THE STATUS QUO, ALTHOUGH I THINK I WOULD LIKE TO

24   CONSULT WITH MY COLLEAGUES ON THIS, BUT I THINK IF

25   THE STATUS QUO IS MAINTAINED ESSENTIALLY BY A

1    SPECIAL MASTER SITTING THERE WITH THE ASSETS DURING

2    THE APPEAL PROCESS, AND WE CAN TALK ABOUT MANAGING

3    OF THE CONNECTU ASSET, I DON'T THINK THAT IS GOING

4    TO BE ANY SIGNIFICANT PROBLEM, YOUR HONOR.

5         I THINK IT CAN -- WE ARE HAPPY TO HE --

6    AND MR. UNDERHILL CAN DISCUSS THIS FURTHER IF YOU

7    WOULD LIKE -- WE'RE HAPPY TO MAINTAIN AND CONTINUE

8    TO RUN THAT BUSINESS ESSENTIALLY THE WAY THAT IT

9    HAS BEEN RUN AND NOT TO DO ANYTHING AS YOUR HONOR

10   INDICATED THAT WOULD MATERIALLY AFFECT IT IN A

11   NEGATIVE WAY OR TAKE ON OBLIGATIONS THAT WOULD BE

12   INAPPROPRIATE AND WE CAN KEEP, YOU KNOW, FACEBOOK

13   INFORMED ABOUT THAT.

14        I DON'T THINK THAT THAT SHOULD BE A

15   PROBLEM.  AND WE'RE ALSO HAPPY TO PURSUE THE

16   APPELLATE PROCESS AS EXPEDITIOUSLY AS THE NINTH

17   CIRCUIT WOULD ALLOW US.

18        THERE ARE ALSO A COUPLE OF OTHER ITEMS

19   THAT YOUR HONOR RAISED.  I DON'T KNOW IF YOU WANT

20   TO TALK ABOUT THOSE AT THIS POINT.

21        THE COURT:  MY FOCUS IS ON THE FORM OF

22   THE JUDGMENT AS I OUTLINED IT.  IF YOU WANT TO

23   ADDRESS THOSE MATTERS FURTHER.

24        IT DOES SEEM TO ME THAT THERE IS GOING TO

25   BE -- THE REASON I'M PUT IN THIS POSITION IS THAT

1    THERE WILL BE THE NECESSITY OF THE COURT TAKING

2    FURTHER ACTION TO ENFORCE THE JUDGMENT ONCE THE

3    JUDGMENT IS IN PLACE THAT I CAN'T CONTEMPLATE

4    THE -- THOSE ORDERS AT THIS POINT.

5              AND IT COULD BE THAT I'LL HAVE TO AMEND

6    THE JUDGMENT AND DO OTHER THINGS TO TAKE THOSE

7    ADDITIONAL STEPS.

8              SO MY FOCUS IS ON SHOW ME WHY I SHOULDN'T

9    ENTER THE JUDGMENT AS I OUTLINED JUST TO GET THIS

10   PROCESS STARTED?

11             MY GOAL WOULD BE TO PUT IN PLACE A

12   JUDGMENT WHICH WOULD ENFORCE THE SETTLEMENT

13   AGREEMENT AND IF THERE ARE APPEALS OR CHALLENGES TO

14   IT THAT DEAL WITH THAT AS A CIVIL PROCEDURE MATTER

15   IN THE ORDINARY COURSE OF EVENTS, IF THAT SHOULD

16   COME.

17             BUT IF THERE IS SOMETHING ELSE ON THE

18   FORM THE JUDGMENT, SPEAK NOW.

19             MR. BARRETT:  YES, YOUR HONOR.  YOU

20   RAISED THE QUESTION ABOUT THE LEGEND ON THE -- THE

21   FACEBOOK SHARES THAT WILL BE PROVIDED AS PART OF

22   THE JUDGMENT AND THE LEGEND, THE FORM OF LEGEND

23   THAT IS ATTACHED TO EACH SIDE PROPOSED JUDGMENT IS

24   IDENTICAL, EXCEPT IN ONE RESPECT BUT IT IS A

25   SIGNIFICANT RESPECT.

1           AND THOSE LEGENDS APPEAR IN EXHIBIT B OF

2    DEFENDANT'S PROPOSED JUDGMENT AND IN EXHIBIT 3 OF

3    FACEBOOK'S PROPOSED JUDGMENT.  AND, AND THE -- WHAT

4    I'M REFERRING TO IS THAT OUR PROPOSED JUDGMENT HAS

5    IT IN A PART OF THE LEGEND THE STATEMENT THAT THE

6    HOLDERS OF SUCH SHARES ARE ENTITLED TO THE SAME

7    ANTI-DILUTION RIGHTS AFFORDED TO THE ISSUERS SERIES

8    D PREFERRED STOCK AS PROVIDED IN THE TERM SHEET AND

9    SETTLEMENT AGREEMENT.

10          FOR REASONS -- I'M NOT SURE, MAYBE IT WAS

11   NOT INTENTIONAL, THE LEGEND THAT FACEBOOK PROPOSES

12   OMITS THAT SENTENCE ENTIRELY.

13          AND CONSISTENT WITH EXACTLY WHAT YOUR

14   HONOR SAID THAT THIS, THAT THIS SETTLE -- THAT THIS

15   JUDGMENT IS GOING TO ENFORCE PRECISELY THE TERMS

16   THAT THE PARTIES AGREED TO ON THE TERM SHEET, WE

17   BELIEVE THAT THAT LANGUAGE SHOULD BE IN THERE.

18   IT'S RIGHT ON THE SECOND PAGE.

19          I BELIEVE OURS IS ALMOST VERBATIM FROM

20   THE SECOND PAGE OF THE HANDWRITTEN TERM SHEET.

21          YOU KNOW, FIRST IT SAYS THAT THE SHARES

22   SHALL BE VOTED IN ACCORDANCE WITH THE BOARD OF

23   DIRECTORS RECOMMENDATIONS.  THAT'S IN BOTH

24   VERSIONS.

25          BUT FOR SOME REASON THE FACEBOOK VERSION

1    DROPS THE SECOND PART OF THAT SAME SENTENCE WHICH

2    SAYS, "SUBJECT TO THE SAME ANTI-DILUTION

3    PROTECTIONS AWARDED TO SERIES D PREFERRED STOCK."

4            SO WE THINK THAT THAT NEEDS TO BE IN

5    THERE AND IT SHOULD ALSO BE CLEAR I THINK, YOUR

6    HONOR, BUT I JUST WANT TO MAKE SURE THAT THE RECORD

7    REFLECTS THIS, THAT THOSE RESTRICTIONS THAT WERE

8    SET FORTH IN THE TERM SHEET ARE THE ONLY

9    RESTRICTIONS OF ANY KIND OTHER THAN THOSE THAT,

10   THAT FLOW FROM THE FACT THAT THIS IS A PRIVATE

11   COMPANY, AND, THEREFORE, THE SECURITIES ARE

12   UNREGISTERED.

13           THOSE ARE THE ONLY RESTRICTIONS THAT

14   SHOULD ATTACH TO THIS STOCK.

15           AS YOUR HONOR MAY RECALL, THERE IN THE

16   NEGOTIATIONS THAT THE PARTIES HAD SUBSEQUENT TO THE

17   SIGNING OF THE TERM SHEET THERE WERE DISCUSSIONS OF

18   OTHER POSSIBLE RESTRICTIONS SUCH AS THE RIGHT OF

19   FIRST OFFER AND A LOCK UP AND THOSE ARE NOT

20   RESTRICTED IN THE TERM SHEET.

21           AND AS YOUR HONOR SAID VERY CLEARLY AT

22   PAGE 60 OF THE TRANSCRIPT FROM LAST MONDAY, "THIS

23   IS, THIS IS COMMON STOCK.  IT DOESN'T SAY ANYTHING

24   ABOUT IT BEING LETTERED STOCK IN ANY WAY.  IT OUGHT

25   TO BE FREELY TRADED."

1          AND I BELIEVE THAT THAT IS ACCOMPLISHED

2    BY THIS LANGUAGE THAT WE HAVE HERE AND -- BUT I

3    JUST WANT TO BE CLEAR AND THAT THE COURT IS CLEAR

4    THAT THOSE RESTRICTIONS OR STIPULATIONS THAT WE

5    HAVE OUTLINED TO GO ON THE STOCK ARE THE ONLY ONES.

6          LET ME SEE IF THERE ARE ANY OTHERS.

7          THE COURT:  WHILE YOU'RE DOING THAT, LET

8    ME JUST CHECK, IS THERE ANY OBJECTION TO INCLUDING

9    THE ADDITIONAL LANGUAGE IN THE EXHIBIT B SUBMITTED

10   BY CONNECTU?

11         MR. CHATTERJEE:  YOUR HONOR, THE ONLY

12   POINT I'LL MAKE IS THAT I DON'T THINK IT'S

13   NECESSARY YOU'RE ENFORCING THE TERM SHEET AND

14   SETTLEMENT AGREEMENT.  IT HAS THE PROVISION IN

15   THERE.  AND IT DOESN'T SEEM LIKE IT'S NECESSARY OR

16   LEGALLY REQUIRED ON THE LEGEND.  THAT WAS THE ONLY

17   POINT THAT I WAS GOING TO MAKE, BUT I'LL DEFER TO

18   THE COURT'S JUDGMENT ON WHICH LEGEND IS

19   APPROPRIATE.

20         THE COURT:  VERY WELL.  IT IS A RIGHT

21   THAT SEEMS TO BE INHERENT IN THE STOCK AND THE

22   CERTIFICATE ITSELF BEARING IT, SINCE I PRESUME

23   THESE ARE NEGOTIABLE, BEARING IT WOULD CARRY THOSE

24   RIGHTS.  SO I WOULD ADD IT.

25         DID YOU COME UP WITH OTHER MATTERS?

1          MR. BARRETT:  UM, UM -- YOUR HONOR, I

2     JUST THINK ONE OTHER SIGNIFICANT ONE WHICH IS YOUR

3     HONOR INDICATED THAT ONE OF THE DOCUMENTS THAT THE

4     SPECIAL MASTER WOULD COLLECT WOULD BE RELEASES.

5          OUR, OUR -- I THINK THAT WE CAN SIMPLIFY

6     THIS AND I DON'T REALLY THINK THAT THAT IS

7     NECESSARY OR EVEN NECESSARILY CONSISTENT WITH BOTH

8     WHAT MR. CHATTERJEE REPRESENTED TO THE COURT LAST

9     MONDAY AND REALLY THE SPIRIT AS I UNDERSTAND IT OF

10    THE COURT'S ORDER FOR THE FOLLOWING REASON:

11         WHAT MR. CHATTERJEE TOLD THE COURT AND

12    WHAT HE WAS ASKING AND WHAT I THINK THE COURT DID

13    AT PAGE 12 OF THE TRANSCRIPT TO ENTER A JUDGMENT

14    TELLING THE PARTIES TO COMPLY WITH THE TERM SHEET

15    AND SETTLEMENT AGREEMENT AND ESSENTIALLY STAPLE IT

16    ONTO THE JUDGMENT.

17         AND I THINK WHAT WE WERE TRYING TO DO IN

18    OUR PROPOSED SETTLEMENT IS TO ADHERE AS CLOSELY AS

19    WE COULD TO THAT WHERE IT WAS POSSIBLE.

20         NOW, IT'S OBVIOUSLY NOT POSSIBLE.  YOU

21    HAVE TO GET A RULE 41 DISMISSAL AND FILE IT IN

22    COURT WITH RESPECT TO THE LEGEND ON THE STOCK.

23    IT'S NECESSARY TO DO THAT BECAUSE YOU'RE ACTUALLY

24    CREATING AN INSTRUMENT THAT IS, AS THE COURT SAID,

25    A NEGOTIABLE INSTRUMENT THAT IS PART OF THE

43

1    CONSIDERATION.  SO IT'S NECESSARY TO DEFINE WHAT

2    THAT INSTRUMENT SAID.

3            BUT BEYOND THAT, AND PARTICULARLY WITH

4    RESPECT TO THE RELEASE, I DON'T REALLY THINK THAT

5    IT'S NECESSARY OR CONSISTENT WITH, AGAIN, THE IDEA

6    THAT THE COURT EXPRESSED AT PAGE 60 THAT YOU CAN

7    ENFORCE THIS AGREEMENT AND NOTHING MORE.

8            WITH RESPECT TO THE RELEASES, YOUR HONOR,

9    THAT'S AN ISSUE ON WHICH THE PARTIES HAVE GONE BACK

10   AND FORTH.  THEY WENT BACK AND FORTH FOR TWO MONTHS

11   AFTER THE TERM SHEET.  WE HAVE GONE BACK AND FORTH

12   IN THE LAST COUPLE OF DAYS.

13           WE HAVE GOTTEN CLOSER, BUT WE STILL DON'T

14   HAVE AN AGREEMENT ON IT.

15           AND IT SEEMS TO ME THAT, THAT WHAT YOU

16   HAVE REALLY GOT HERE IS YOU HAVE GOT A RELEASE IN

17   PARAGRAPH 2.

18           IT SAYS ALL PARTIES GET MUTUAL RELEASES

19   AS BROAD AS POSSIBLE.  THAT'S WHAT THE PARTIES

20   NEGOTIATED.  THAT'S IN THERE.  IT IS MEANINGFUL

21   LANGUAGE.

22           IF ONE OF US EVER SUES THE OTHER ONE WITH

23   RESPECT TO A RELEASE CLAIM, THE PARTY THAT HAS BEEN

24   SUED, IF THEY THINK IT'S A GOOD DEFENSE, CAN GO

25   INTO THAT COURT AT THAT TIME AND SAY --

                                                    44

1          THE COURT:  WELL, LET ME -- I HEAR YOUR
2    ARGUMENT AND I DON'T ACCEPT IT, BUT I DO PROPOSE
3    THAT IN THE FORM OF THE JUDGMENT, BECAUSE I WILL
4    MAKE A JUDGMENT ABOUT THAT, YOU WILL BE ABLE TO
5    MAKE THIS ARGUMENT AT A LATER TIME.
6          IN OTHER WORDS, WHAT I HEAR YOU SAYING IS
7    THAT THE PARTIES, I SHOULD NOT REQUIRE A SIGNED
8    RELEASE BECAUSE THE SETTLEMENT AGREEMENT IS A
9    SIGNED RELEASE AND I SHOULD INTERPRET THE WORD GET
10   RELEASED AS ARE RELEASED.  AND I'LL LISTEN TO THAT
11   ARGUMENT.  IT'S JUST AT THIS POINT MY JUDGMENT WILL
12   REQUIRE THAT THE RELEASE BE SUBMITTED AS APPROVED
13   OF THE COURT.
14          IF I DECIDE THAT THE AGREEMENT IS
15   SUFFICIENT, AND I'LL ORDER THAT TO BE DEPOSITED AND
16   THAT WILL BE SUFFICIENT.
17          PART OF WHAT I ANTICIPATE IS AN ARGUMENT
18   BY ONE OR BOTH PARTIES THAT SUBSEQUENT LITIGATION
19   VIOLATES WHAT WAS BEING RELEASED, AND I WANT TO, IN
20   TRUE TO THE ROLE THAT YOU HAVE GIVEN ME TO ENFORCE
21   THE AGREEMENT, IS TO ENFORCE THE RELEASE.
22          AND PART OF THAT WILL BE TO UNDERSTAND
23   WHAT WAS RELEASED AND THAT IS BETTER DONE LATER ON.
24          SO LET ME RESPOND TO YOUR ARGUMENT IN
25   THAT WAY AND ASK YOU IF THERE ARE OTHER PARTS OF IT

                                                    45

1    THAT YOU WANT TO SPEAK TO.

2             MR. BARRETT:  AND AGAIN, YOUR HONOR, I

3    THINK A LITTLE BIT OF THE CONFUSION HERE DOES ARISE

4    FROM THE TIMING ISSUE.

5             FOR EXAMPLE, IF THE RELEASE BECAME

6    EFFECTIVE, LET'S SAY AFTER ALL APPEALS HAVE BEEN

7    EXHAUSTED, THEN IT MAKES SENSE TO RELEASE, FOR

8    EXAMPLE, OUR FRAUD DEFENSE, OR OUR FRAUD CLAIM

9    BASED ON WHAT HAPPENED IN THE MEDIATION.

10            I DON'T THINK IT MAKES SENSE, AND I DON'T

11   THINK THE COURT WOULD REQUIRE US TO RELEASE THAT

12   CLAIM NOW.

13            MAYBE I'M MISTAKEN ABOUT THAT.  IN OTHER

14   WORDS, WE SHOULDN'T HAVE TO FACE AN ARGUMENT OR AT

15   LEAST ANYMORE, AN ARGUMENT THAN WE ALREADY HAVE TO

16   FACE THAT, THAT BY SIGNING THIS DOCUMENT WE DIDN'T

17   RELEASE A CLAIM THAT THE TERM SHEET ITSELF WAS

18   PROCURED BY FRAUD IN THE INDUCEMENT.

19            THE COURT:  WELL, I DON'T KNOW THE ANSWER

20   TO THAT, BUT I DO KNOW THAT THAT IS A LEGITIMATE

21   QUESTION TO ASK WITH RESPECT TO WHAT I TAKE AS THE

22   SUBMISSION.

23            IT SEEMS TO ME THAT MY JUDGMENT THAT I'M

24   INTENDING TO ENTER RULES AGAINST SOME OF THAT

25   CLAIM.

1          MR. BARRETT:  UH-HUH.

2          THE COURT:  WHICH IS WHY YOU CAN APPEAL

3   IT?

4          MR. BARRETT:  TRUE.

5          THE COURT:  AS OPPOSED TO YOUR LATER

6   ABILITY TO BRING IT.

7          BUT I DON'T WANT TO DO THAT AT THIS POINT

8   BECAUSE I HAVE NOT PUT MYSELF IN A POSITION WHERE I

9   KNOW ENOUGH TO MAKE A JUDGMENT ABOUT THAT.

10         MR. BARRETT:  AND, YOUR HONOR, ANOTHER

11  QUESTION ABOUT THE TIMING.  OBVIOUSLY I THINK EVEN

12  MR. CHATTERJEE AND I CAN PROBABLY AGREE ON THE

13  TERMS OF WHAT RULE 41 DISMISSAL FOR THE CASES WOULD

14  LOOK LIKE AND INDEED IT SETS FORTH HERE, "DISMISS

15  WITH PREJUDICE.  EACH SIDE TO BEAR THEIR OWN COSTS

16  AND ATTORNEYS' FEES."

17         THE COURT:  THE PARTIES ARE FREE TO

18  STIPULATE, AFTER I ENTER MY JUDGMENT TO THE -- THAT

19  THEY HAVE DONE WHATEVER THEY WANT, BUT I'M NOT

20  GOING TO RELY UPON THAT PROPOSED STIPULATION

21  BECAUSE IT'S A PROPOSED STIPULATION THAT I HAVEN'T

22  SEEN THE PARTIES PUT TOGETHER JUST YET.

23         MR. BARRETT:  SURE.  YOUR HONOR, MY --

24  I'M SORRY -- MY QUESTION IS NOT ABOUT THE TERMS OF

25  IT BECAUSE I THINK ON THAT WE'RE PROBABLY BOTH

1    PRETTY CLEAR.

2            MY QUESTION IS, AGAIN, PURELY ONE OF

3    PROCEDURE AND TIMING.

4            I THINK IT WOULD BE BOTH DIFFICULT AND

5    PROBABLY INCONVENIENT FOR THE COURTS TO, TO -- FOR

6    US TO FILE A STIPULATION OF DISMISSAL, FOR EXAMPLE,

7    WHILE THIS JUDGMENT IS UNDER APPEAL.

8            IT WOULD MAKE A LOT MORE SENSE TO WAIT

9    UNTIL.

10           THE COURT:  I DON'T INTEND TO HAVE IT

11   FILED.  MY FOCUS IS THAT IT HAS TO BE DEPOSITED.

12           MR. BARRETT:  SURE.  OKAY.  THAT'S --

13           THE COURT:  I'LL JUDGE WHEN IT -- MY

14   PROPOSED JUDGMENT WOULD SAY THAT IT'S UP TO THE

15   COURT TO SAY TO THE MASTER "NOW, SEND THESE THINGS

16   FORWARD."

17           MR. BARRETT:  UH-HUH.

18           THE COURT:  AND, AND -- BUT I UNDERSTAND

19   YOUR POINT.

20           MR. BARRETT:  YEAH.  SO, YOU KNOW, AGAIN,

21   IN THAT REGARD, YOUR HONOR, WE, WE BELIEVE, AND I

22   BELIEVE AGAIN THAT THE PARTIES ARE IN AGREEMENT

23   THAT THAT SENDING FORTH, AS YOUR HONOR DESCRIBED

24   IT, SHOULD AWAIT.  THAT CAN COME IMMEDIATELY AFTER

25   THE FINALITY OF ANY APPEALS PROCESS.

                                                    48

1        THE COURT:  WELL, EVEN THAT IS SOMETHING

2    THAT I'M NOT ADDRESSING IN MY JUDGMENT.  I

3    APPRECIATE YOUR HELPFUL SUGGESTION THAT MAYBE THE

4    WAY AROUND THIS IS TO ENTER THE JUDGMENT AND STAY

5    AN EXECUTION OF IT UNTIL SOME APPROPRIATE TIME.

6        MY PROPOSED LANGUAGE IS THAT THE COURT

7    WILL APPOINT A SPECIAL MASTER TO ACCEPT AND

8    MAINTAIN THE DEPOSITS MANDATED BY THIS JUDGMENT AND

9    TO TAKE ACTIONS WITH THE DEPOSITS AS THE COURT FROM

10   TIME TO TIME WILL ORDER.

11        IN OTHER WORDS, I JUST WANT TO PUT IT

12   SOMEPLACE SO I CAN MAKE SURE THAT EVERYTHING THAT

13   IS NECESSARY TO EXECUTE THE AGREEMENT IS IN ONE

14   PLACE AND THEN TO HAVE, FROM THERE, SUBJECT ONLY TO

15   THE ORDER OF THE COURT, THE ABILITY TO AFFECT THE

16   EXECUTION SO THAT I DON'T HAVE TO GO ANY PLACE TO

17   GET IT DONE.

18        THAT WAS MY GOAL.

19        MR. BARRETT:  RIGHT.

20        MR. CHATTERJEE:  AND -- GO AHEAD.

21        MR. BARRETT:  I'M SORRY.  ONE OTHER

22   THING.  IN THE PLAINTIFF'S PROPOSED FORM OF

23   JUDGMENT THERE IS ALSO A PARAGRAPH THAT SAYS THAT

24   THEY MAY FILE A MOTION FOR ATTORNEYS FEES OR BILL

25   OF COST.

1          THE COURT:  I HAVE NOT INCLUDED THAT.

2          MR. BARRETT:  THANK YOU.

3          MR. CHATTERJEE:  YOUR HONOR, AS TO THE

4   PERFORMANCE ISSUES, THERE ARE A COUPLE OF DETAILS

5   THAT I THINK ARE IMPORTANT.

6          ONE, ON THE ISSUE OF TIMING, WE WOULD

7   AGREE WITH YOUR HONOR THAT THERE IS AN ISSUE AND IT

8   OCCURRED TO US AFTER WE SUBMITTED THIS.  AND I TOLD

9   MR. BARRETT THAT IT WAS AN ISSUE FOR US YESTERDAY

10  ABOUT WAITING UNTIL THE JUDGMENT IS FINAL AND NOT

11  APPEALABLE.

12         WE THINK THAT IT SHOULD HAPPEN QUICKLY.

13         NOW, PERHAPS THAT'S SOMETHING BETTER LEFT

14  FOR THE SPECIAL MASTER TO DECIDE ON THE TIMING TO

15  REPORT TO THE COURT ON WHAT TO DO.

16         BUT IF THEY WANT TO STAY EXECUTION OF THE

17  PROCEEDINGS, WE THINK TYPICALLY WHEN THEY TRY AND

18  FILE A STAY OF EXECUTION OF A JUDGMENT, THEY NEED

19  TO FILE A BOND SO WE CAN MAKE SURE THAT THE ASSETS

20  THAT WE'RE PURCHASING ARE PROTECTED.

21         THAT'S A COLLATERAL ISSUE.

22         THE COURT:  THAT'S WHY I THINK THE RULES

23  OF CIVIL PROCEDURE WILL TAKE CARE OF ANY

24  POST-JUDGMENT PROBLEM.

25         MR. CHATTERJEE:  THE SECOND ISSUE, YOUR

1    HONOR, IS AS TO THE STOCK SHARES.  THE, THE -- ONE

2    OF THE ISSUES, AND PERHAPS THIS IS SOMETHING THAT

3    THE SPECIAL MASTER CAN WORK OUT, IS AS LONG AS WE

4    HAVE THE LIEN ISSUE UNRESOLVED AND HANGING OUT

5    THERE, RIGHT NOW WE DON'T KNOW WHO TO WRITE THE

6    STOCK CERTIFICATES TO.

7         DO WE LIST THE THREE -- OR I GUESS THE

8    FOUR SHAREHOLDERS IN CONNECTU CURRENTLY OR DO WE

9    INCLUDE QUINN EMANUEL ON THE SHARES?

10        WE WILL NEED SOME GUIDANCE AS TO HOW TO

11   DO THAT.

12        THE COURT:  THAT'S A DETAIL THAT THE

13   MASTER CAN WORK OUT.

14        MR. CHATTERJEE:  OKAY.  THANK YOU, YOUR

15   HONOR.

16        THE COURT:  YES.

17        MR. VAN DALSEM:  IF I MAY, BRUCE VAN

18   DALSEM ON BEHALF OF QUINN EMANUEL.

19        THERE ARE A COUPLE OF POINTS THAT I WOULD

20   LIKE TO RAISE WITH RESPECT TO THE COURT'S JUDGMENT.

21        BOTH PROPOSED FORMS OF JUDGMENT FROM THE

22   PLAINTIFF AND THE DEFENDANT HAD MADE A PROVISION,

23   ALBEIT IN DIFFERENT WAYS, TO SECURE THE LIEN AND

24   THEY PROPOSED -- CONNECTU PROPOSED BASICALLY

25   ESCROWING THE MAXIMUM AMOUNT OF THE FEE CLAIM AND

51

1    FACEBOOK PROPOSED ESCROWING ALL OF IT.

2            THIS IS AN UNUSUAL CASE IN THE CONTEXT OF

3    A LIEN BECAUSE WHAT WOULD NORMALLY HAPPEN IN A

4    SITUATION WHERE AN ATTORNEY FILES A NOTICE OF LIEN

5    IS THAT WHEN THE DEFENDANT, ASSUME AN ALL CASH

6    DEAL, WHEN A DEFENDANT GOES TO WRITE A CHECK, THEY

7    INCLUDE THE LIEN CLAIMANT'S NAME ON THAT CHECK AND

8    THE PARTIES EITHER WORK IT OUT OR IT GETS ESCROWED

9    UNTIL THE MATTER IS LITIGATED OR THE PARTIES REACH

10   SOME FORM OF RESOLUTION.

11           AND CALIFORNIA LAW PROVIDES THAT A

12   DEFENDANT, SUCH AS FACEBOOK, WHO IS ON NOTICE OF

13   THE LIEN, IS ON NOTICE OF OUR CLAIM TO A

14   CONTRACTUAL RIGHT TO A FEE AND IF THEY FAIL TO

15   INCLUDE THE FORMER LAW FIRM'S NAME AS A PAYEE ON

16   WHATEVER PAYMENT INSTRUMENT IS ISSUED, THEY FACE

17   POTENTIAL LIABILITY FOR INTERFERING WITH OUR

18   CONTRACTUAL RIGHT AND THERE ARE CALIFORNIA CASES

19   EXPLAINING ALL OF THAT.

20           SO IN THE NORMAL CASE AN ATTORNEY'S LIEN

21   IS SORT OF EFFECTUATING BECAUSE WELL REPRESENTED

22   DEFENDANTS SIMPLY WILL NOT TURN OVER THE MONEY TO A

23   PLAINTIFF WITHOUT MAKING PROVISIONS FOR THAT LIEN.

24           SO WHAT WE WANT TO AVOID IS ANY PROCEDURE

25   WITH THE SPECIAL MASTER THAT WOULD EXONERATE

1    FACEBOOK AND WE HAVE BEEN IN CONTACT WITH

2    FACEBOOK'S COUNSEL AND HAVE EXPLAINED WHAT I JUST

3    EXPLAINED TO THE COURT AND I THINK THAT LED TO

4    FACEBOOK PROPOSING THAT ALL OF THE MONEY BE

5    BASICALLY SEQUESTERED UNTIL SUCH TIME THAT THE LIEN

6    CLAIM IS LITIGATED AND RESOLVED OR RESOLVED TO

7    AGREEMENT.

8              OUR FIRM HAS THE RIGHT TO HAVE THE

9    ENTIRETY OF THE SETTLEMENT AGREEMENT SEQUESTERED

10   UNTIL SUCH TIME AS OUR CLAIM FOR ATTORNEYS' FEES IS

11   PAID, AND SO WE WOULD WANT TO ENSURE THAT THE

12   JUDGMENT WOULD NOT REMOVE ANY PROTECTION THAT WOULD

13   OTHERWISE BE AFFORDED BY CALIFORNIA LAW AS I HAVE

14   OUTLINED.

15             THE COURT:  LET ME SPEAK JUST BRIEFLY TO

16   THAT.  FIRST, I DON'T INTEND TO TAKE ANY ACTION

17   WITHOUT HEARING FURTHER FROM THE LEAD CLAIMANTS.

18             SECOND, IT WAS IMPOSSIBLE FOR ME TO TAKE

19   ANY ACTION WITH RESPECT TO IT UP TO NOW BECAUSE IT

20   WAS AN UNLIQUIDATED NUMBER.

21             IT WAS ACTUALLY WHAT I SAW HAD NO NUMBER

22   ON IT.

23             I COULDN'T TELL WHETHER IT WAS $1 OR

24   WHATEVER NUMBER.

25             IT WAS JUST A NOTICE, A NOTICE OF A LIEN.

1    IT DIDN'T HAVE -- IT WASN'T ANYTHING MORE THAN

2    THAT.

3              AND AS I SAID EARLIER, I HAVE NOT GONE

4    THROUGH THE TROUBLE AT THIS POINT OF FIGURING OUT

5    WHETHER OR NOT THE LIEN HAS BEEN PERFECTED IN A WAY

6    THAT THE COURT IS OBLIGATED TO ENFORCE IT.

7              I PRESUME THAT IT WILL BE IF IT HASN'T

8    BEEN ALREADY.

9              IT DOES SEEM TO ME THAT THIS IS NOT AN

10   UNCOMMON PROBLEM SO IT'S GOING TO BE EASY TO SOLVE

11   IT.

12             I DO ENCOURAGE THE PARTIES TO BE IN

13   CONVERSATION ABOUT IT AND SUGGEST WAYS OF DEALING

14   WITH IT AS A GROUP.

15             AS I UNDERSTAND IT, THE CLAIM AS YOU JUST

16   SAID MAY AFFECT THE STOCK CONSIDERATION AS WELL AS

17   CASH, AND I DON'T KNOW WHAT TO MAKE OF THAT AT THIS

18   POINT.

19             I HAVEN'T SEEN THE OTHER CLAIM LIEN AT

20   THIS POINT SO I DON'T KNOW WHAT TO MAKE OF THAT AS

21   WELL.

22             I DON'T KNOW WHAT THE PRIORITIES ARE

23   AMONG YOU ALL AND SO ALL THAT I WOULD DO IS TO

24   ALLOW YOU, AT SOME APPROPRIATE POINT, TO MAKE YOUR

25   POSITIONS KNOWN WITH RESPECT TO THE ACTUAL

54

1    DISBURSEMENTS FROM THE DEPOSIT THAT THE COURT IS

2    SETTING UP AND TO ASSERT YOUR RIGHTS.

3              MR. VAN DALSEM:  SO MY SUGGESTION ON HOW

4    TO SOLVE THIS PARTICULAR ISSUE -- WELL, FIRST OF

5    ALL, LET ME SPEAK TO THE TIMING ISSUE AND THEN I'LL

6    SPEAK TO PRACTICALLY HOW I ENVISION IT WORKING.

7              WE BELIEVE THAT THE SETTLEMENT

8    CONSIDERATION SHOULD BE TENDERED FORTHWITH

9    REGARDLESS OF WHAT HAPPENS WITH AN APPEAL BECAUSE

10   THERE'S AN ISSUE OF INTEREST.  AND BECAUSE THERE'S

11   A SUM OF CASH AND THAT CASH SHOULD BE EARNING

12   INTEREST, AND CERTAINLY IT'S OUR POSITION WITH

13   RESPECT TO OUR FEE CLAIM THAT WE'RE ENTITLED TO THE

14   MONEY ON THAT AND SO IF IT'S NOT PAID UNTIL AFTER

15   AN APPELLATE PROCESS AND CONNECTU HAS LOST THE

16   OPPORTUNITY TO EARN INTEREST ON THAT MONEY.

17             WE HAD CONCERNS WITH THE ESCROW PROCESS,

18   BUT I AM SURE THAT IS GOING TO BE WORKED OUT WITH

19   THE SPECIAL MASTER IN TERMS OF PRUDENT INVESTMENTS

20   NOT ENCUMBERING THE ASSETS WHILE THEY'RE SITTING IN

21   WHAT IS ESSENTIALLY AN ESCROW, DETAILS LIKE THAT

22   THAT I ASSUME WOULD BE ADDRESSED.

23             BUT WE BELIEVE THE ACTUAL SETTLEMENT

24   CONSIDERATION SHOULD BE TRANSFERRED FORTHWITH SO

25   THAT IT HAS AN OPPORTUNITY TO EARN INTEREST.

1          WITH RESPECT TO OUR LIEN CLAIM, THE WAY I

2    BELIEVE IT CAN BE RESOLVED IS AFTER THOSE FUNDS,

3    WHATEVER THAT CONSIDERATION CONSISTS OF, IS

4    TRANSFERRED TO THE SPECIAL MASTER, WE BELIEVE THAT

5    THE JUDGMENT SHOULD PROVIDE THAT THERE BE NO

6    DISBURSEMENT WITHOUT FURTHER ORDER OF THE COURT

7    FOLLOWING ANY LIEN CLAIMANT OR ANYONE ELSE THAT

8    FILES A CLAIM BECAUSE ONCE THAT MONEY IS DISBURSED

9    THERE'S NO SECURITY INTEREST.  THE MONEY HAS LEGS

10   AND IT CAN GO ANYWHERE INSTANTLY AND OUR PROTECTION

11   IS LOST THE MINUTE THAT MONEY IS NO LONGER SUBJECT

12   TO THE SPECIAL MASTER'S CONTROL.

13          THE COURT:  DO YOU SEE ANY REASON WHY I

14   CAN'T, SINCE I SET UP THE DEPOSIT AND SAY I'M

15   CONTROLLING IT IN A SUBSEQUENT ORDER, ADDRESS LIEN

16   CLAIMANTS BECAUSE THIS MAY GO AWAY?

17          THERE MAY BE NO LIEN CLAIMANTS OR THERE

18   MAY BE MULTIPLE LIEN CLAIMANTS.  I HAVE NO IDEA WHO

19   MAY ACTUALLY ASSERT A RIGHT TO THESE FUNDS AND AS

20   COUNSEL FOR FACEBOOK INDICATED, AT THIS POINT

21   THERE'S NO DIRECTION AS TO IN WHOSE NAME THE

22   VARIOUS SHARES SHOULD BE MADE OR ANY OF THAT.

23          MR. VAN DALSEM:  AS I UNDERSTAND IT,

24   FACEBOOK'S OBLIGATION ONLY EXISTS TO A PRESENT LIEN

25   CLAIMANT AND THERE'S ONLY ONE LIEN CLAIMANT AND

1      THAT'S MY LAW FIRM QUINN EMANUEL.

2                  SO WHAT I WOULD SUGGEST IS THAT YOU

3      DIRECT THE SPECIAL MASTER TO TAKE CONTROL OF THESE

4      ASSETS AND PROVIDE THAT -- AND NONE OF THE ASSETS

5      BE PROVIDED TO THE PARTIES AND WITHOUT CONSENT OF

6      OR NOTICE OF AN OPPORTUNITY TO BE HEARD BY QUINN

7      EMANUEL SO THAT WE CAN MAKE SURE THAT OUR RIGHTS

8      ARE PROTECTED AS NORMALLY WOULD BE THE CASE IN A

9      SELF-EFFECTUATING LIEN.

10                 THE COURT:  WHY DO I HAVE TO SAY THAT

11     BECAUSE YOU HAVE TO COME BEFORE ME BEFORE YOUR LIEN

12     IS RECOGNIZED.

13                 MR. VAN DALSEM:  THAT WOULD WORK AS WELL.

14                 THE COURT:  ALL RIGHT.

15                 MR. VAN DALSEM:  LET ME RAISE ONE

16     PRACTICAL PROBLEM THAT I SEE.  IF A JUDGMENT ISSUES

17     AND IT IS APPEALED, THERE IS A RISK THAT THE COURT

18     WILL BE DIVESTED OF JURISDICTION FOR FURTHER ORDERS

19     PENDING THAT APPEAL AND IF WE HAVE ALL OF THESE

20     ISSUES WITH THE SPECIAL MASTER AND WE CAN'T DO

21     ANYTHING WITH THEM WITHOUT FURTHER ORDER OF THE

22     COURT THAT NO LONGER HAS JURISDICTION AND THERE

23     WILL BE A PROCEDURAL PROBLEM THERE.

24                 THE COURT:  THERE WILL BE A COURT WITH

25     JURISDICTION.  IT MAY NOT BE ME, BUT THERE WILL BE

                                                        57

1    A COURT WITH JURISDICTION FROM WHOM ACTION CAN BE

2    TAKEN.

3            MR. VAN DALSEM:  VERY WELL.  SO THAT'S

4    WHAT I HAVE TO ADD.  THANK YOU.

5            THE COURT:  WELL, ALL OF THIS DOES

6    HIGHLIGHT HOW IMPORTANT IT IS THAT WE MOVE

7    EXPEDITIOUSLY, DEFINITIVELY, AND THAT THE PARTIES,

8    IF THEY HAVE RIGHTS THEY WANT TO ASSERT, ASSERT

9    THEM IN A WAY THAT WILL MOVE THE MATTER ALONG.

10           IT ALSO POINTS OUT, PERHAPS, HOW

11   IMPORTANT IT IS IF THESE PARTIES STILL HAVE THE

12   INCENTIVE TO RESOLVE THIS MATTER TO CONTINUE TO

13   WORK TO RESOLVE IT.

14           I AM GOING TO OPERATE UNDER THE

15   ASSUMPTION THAT THEY HAVE ALREADY COME TO THE

16   AGREEMENT THAT THEY WISH TO ENFORCE, BUT I WILL

17   HAVE MY EYES AND EARS OPEN FOR ANY FURTHER

18   SUBMISSIONS FROM YOU ALL THAT TELL ME TO GO INTO A

19   DIFFERENT DIRECTION BECAUSE YOU AGREE THAT IT WILL

20   RESOLVE ALL OF THE VARIOUS DISPUTES THAT HAVE COME

21   UP SINCE THE SIGNING OF THE AGREEMENT.

22           DID YOU STAND TO SPEAK TO THE COURT?

23           MR. HAWK:  MY NAME IS ROBERT HAWK, AND

24   I'M WITH THE HELLER EHRMAN LAW FIRM AND WE

25   REPRESENT EDUARDO SAVERIN, WHO IS NOT A PARTY TO

THIS LITIGATION BEFORE YOUR HONOR BUT IS A PARTY TO

THE DISTRICT COURT LITIGATION IN THE DISTRICT OF

MASSACHUSETTS.

THE COURT:  IS HE A PLAINTIFF OR A

DEFENDANT?

MR. HAWK:  HE'S A DEFENDANT.  AND, YOUR

HONOR, THE REASON I ASK YOUR INDULGENCE TO HEAR ME

EVEN THOUGH WE'RE NOT A PARTY TO THIS CASE IS THAT

IN SOME OF THE -- IN AT LEAST ONE FORM OF THE

PROPOSED JUDGMENT THAT WAS TENDERED TO YOUR HONOR,

WE HAVEN'T BEEN SERVED WITH THOSE AND I SHOULD SAY

UP-FRONT THAT WE DON'T MEAN TO WAIVE ANY PERSONAL

JURISDICTIONAL ARGUMENTS BY MY POSITION BY MY

ADDRESSING THE COURT THIS MORNING, YOUR HONOR.

BUT WE HAVE RECEIVED COURTESY COPIES OF

CERTAIN OF THE PLEADINGS BEFORE YOUR HONOR AND AT

LEAST ONE OF THOSE PROPOSED JUDGMENTS WOULD

INDICATE THAT IT WOULD BIND NOT ONLY THE PARTIES TO

THIS LITIGATION BUT IT WOULD BIND THE PARTIES TO

THE DISTRICT COURT LITIGATION IN MASSACHUSETTS.

AND SO THAT'S A -- THAT'S THE REASON THAT

I WANT TO ADDRESS YOUR HONOR.

THE COURT:  HERE'S -- LET ME TELL YOU MY

UNDERSTANDING.  MY UNDERSTANDING IS THAT THE

PARTIES TO THE AGREEMENT AGREED THAT CASES WOULD BE

1    DISMISSED.

2         I HAVE NOT -- I RAISED THIS QUESTION WITH

3    MY LAW CLERK, BUT I HAVE NOT AT THIS POINT MADE A

4    JUDGMENT WITH RESPECT TO THE EFFECT OF THAT, OF

5    THAT ON ANY NONPARTY TO THE AGREEMENT WHO ARE

6    PARTIES TO THE OTHER LITIGATIONS.

7         IF THE CASE IS DISMISSED AS OPPOSED TO

8    THEIR CLAIMS OR WHATEVER, IT MAY HAVE AN EFFECT ON

9    MR. SAVERIN OR MS. SAVERIN BECAUSE IT DOES MEAN

10   THAT A NONPARTY TO THE AGREEMENT IS AFFECTED BY

11   SOMETHING THAT THE PARTIES DO WITH RESPECT TO THAT

12   LITIGATION.

13        BUT WHETHER -- WHAT THAT IS MIGHT BE A

14   MATTER WITHIN THE JURISDICTION OF THE MASSACHUSETTS

15   COURT AND IT MIGHT BE SOMETHING THAT IS BROUGHT TO

16   ME.

17        WHAT IS IT THAT YOU WOULD WISH ME TO DO

18   TODAY, IF ANYTHING?

19        MR. HAWK:  WELL, FIRST OF ALL, LET ME

20   JUST SAY THAT WHAT YOU JUST EXPRESSED IS CONSISTENT

21   WITH OUR VIEW -- WITH MR. SAVERIN'S VIEW OF THE

22   EFFECT OF THIS AGREEMENT.

23        MR. SAVERIN WAS NOT A SIGNATORY TO THE

24   AGREEMENT.  HE WAS NOT PART OF THE MEDIATION, BUT

25   HE IS A DEFENDANT IN THAT CASE.

1              THE AGREEMENT ON ITS FACE CALLS FOR A

2      DISMISSAL, A FINAL DISMISSAL OF THAT CASE IN

3      MASSACHUSETTS.

4              SO HE WOULD BE AFFECTED BY THAT.

5              AND THAT'S ALL GOOD.  HE'S A DEFENDANT IN

6      THAT CASE.  AND, AND SO --

7              THE COURT:  NO COUNTERCLAIMS BEING

8      ASSERTED.

9              MR. HAWK:  NO COUNTERCLAIMS BY

10     MR. SAVERIN.

11             MR. CHATTERJEE:  YOUR HONOR, AT THAT --

12     AT THE POINT THE CASE WAS DISMISSED IN

13     MASSACHUSETTS, IT WAS NOT YET AN ISSUE.  THERE ARE

14     MOTIONS TO DISMISS PENDING.  SO THERE HAD NOT YET

15     BEEN COUNTERCLAIMS ASSERTED BY ANY OF THE

16     DEFENDANTS.

17             THE COURT:  SO THAT CASE HAS BEEN

18     DISMISSED?

19             MR. CHATTERJEE:  IT HAS NOT.  THERE WERE

20     MOTIONS TO DISMISS PENDING, YOUR HONOR.

21             THE COURT:  OR WHERE THE MOTIONS WERE

22     MADE.  I SEE.

23             MR. CHATTERJEE:  CORRECT.

24             THE COURT:  AND SO THE COURT THERE HAS

25     STAYED THE LITIGATION?

1          MR. CHATTERJEE:  YES, YOUR HONOR.  JUST

2     TO GIVE YOU AN IDEA OF THE STATUS, IN OCTOBER OF

3     LAST YEAR THERE WERE SEVERAL MOTIONS TO DISMISS

4     THAT WERE HEARD AND THAT WERE PENDING UPON

5     NOTIFICATION OF SETTLEMENT.

6          THE COURT ADMINISTRATIVELY TERMINATED

7     THEM.  THERE WAS SOME, SOME FOLLOW-ON LITIGATION

8     ASSOCIATED WITH THESE PROCEEDINGS WHERE THE COURT

9     ISSUED A WRITTEN ORDER ABOUT WHY THEY DID WHAT THEY

10    DID AND WE FILED THE NOTICE WITH THE BOSTON COURT

11    ABOUT YOUR HONOR'S ORDER.

12         THE COURT:  WHO IS YOUR JUDGE THERE?

13         MR. CHATTERJEE:  IT'S JUDGE WOODLOCK AND

14    I BELIEVE, YOUR HONOR, HE SENT YOU BOTH A

15    TRANSCRIPT --

16         THE COURT:  I REMEMBER THAT NOW.

17         MR. CHATTERJEE:  AND, YOUR HONOR, THE

18    DISMISSAL, ACTUALLY TO MR. BARRETT'S POINT, I THINK

19    THE DISMISSALS REALLY GO MUCH MORE TO THE BOSTON

20    PROCEEDINGS THAN THE CALIFORNIA PROCEEDINGS BECAUSE

21    WE HAD TO SEEK TO ENFORCE THE DISMISSAL HERE.

22         THERE IT WOULD JUST BE FILING THE

23    STANDARD DOCUMENTATION.

24         MR. HAWK:  SO, YOUR HONOR, TO GET BACK TO

25    YOUR QUESTION ON WHY I'M STANDING UP HERE

1    ADDRESSING THE COURT, WE ARE, WE ARE -- MR. SAVERIN

2    IS FINE WITH THE DISMISSAL OF THE LAWSUIT AS A

3    RESULT OF THIS AGREEMENT AND IN MASSACHUSETTS.

4           HE ALSO TO THAT EXTENT IS A FULL

5    SUPPORTER, EVEN THOUGH HE'S NOT PART OF AND A

6    SIGNATORY TO THE SETTLEMENT AGREEMENT, A SUPPORTER

7    OF THAT AGREEMENT AND IN AGREEMENT WITH YOUR

8    HONOR'S RULING AND ENFORCING THE SETTLEMENT

9    AGREEMENT.

10          AND HE REALLY IS, AS FAR AS A RELEASE, IF

11   THERE'S SOME DECISION THAT HE NEEDS OR SHOULD SIGN

12   A RELEASE OR THERE'S A DESIRE THAT HE SIGN A

13   RELEASE OF THE CONNECTU PARTIES, THAT'S ALL -- I'M

14   CONFIDENT THAT THAT COULD BE WORKED OUT.

15          THE ONLY ISSUE THAT I WANTED TO RAISE IN

16   FRONT OF YOUR HONOR ARISES FROM A CONFIDENTIALITY

17   PROVISION IN THE HANDWRITTEN SETTLEMENT AGREEMENT.

18          THE PROPOSED FORM OF ORDER THAT WAS

19   SUBMITTED TO YOUR HONOR, ONE OF THEM SAID THAT IT

20   WOULD, IT WOULD COMPEL OR REQUIRE ALL PARTIES,

21   INCLUDING THE PARTIES TO THE MASSACHUSETTS

22   LITIGATION, TO RESPECT AND TO ABIDE BY THIS

23   CONFIDENTIALITY PROVISION.

24          THAT SAID, MY CLIENT IS, AND HAS ONLY

25   WISHES TO BE HEARD TO STATE HIS UNDERSTANDING OF

                                                    63

1    THAT CONFIDENTIALITY PROVISION BECAUSE ALTHOUGH

2    IT'S A NARROW CONCERN OF HIS, IT IS AN IMPORTANT

3    CONCERN.

4         MY CLIENT, MR. SAVERIN, IS IN LITIGATION

5    WITH FACEBOOK.  AND ANYWAY, WITH REGARD TO THE

6    CONFIDENTIALITY PROVISION, WHAT HE UNDERSTANDS THAT

7    PROVISION TO SAY, AND TO MEAN, IS THAT THERE WILL

8    NOT BE PUBLIC COMMENT OR DISCLOSURE ABOUT THE

9    SPECIFIC CLAIMS IN THE CONNECTU VERSUS FACEBOOK,

10   VERSUS SAVERIN, VERSUS ZUCKERBERG LITIGATION; NOT

11   THAT THIS IS A CONFIDENTIALITY PROVISION THAT WOULD

12   PROHIBIT ANY KIND OF PUBLIC COMMENT GOING FORWARD

13   ON THE MORE GENERAL MATTERS ON THE FOUNDING OF

14   FACEBOOK, THE RELATIONSHIPS BETWEEN THE FOUNDERS

15   AND MATTERS OF A MORE GENERAL NATURE.

16        AND THAT IS THE ONLY ISSUE THAT I WANTED

17   TO RAISE HERE TODAY.

18        THE COURT:  WELL, I WON'T RULE ON THAT

19   BECAUSE IT'S NOT BEFORE ME, BUT THAT IS THE KIND OF

20   THING THAT, PERHAPS, IF YOU WOULD COMMUNICATE, IF

21   YOU HAVEN'T, TO THE VARIOUS PARTIES TO THE

22   AGREEMENT AND OTHERS TO SEEK THEIR RESPONSE, THAT

23   WOULD INFORM YOUR CLIENT AS TO WHAT THEIR RESPONSE

24   IS.

25        BUT IT DOESN'T APPEAR THAT IT'S THE KIND

64

1    OF THING THAT I WOULD USE IN THE JUDGMENT OR

2    MENTION IN THE JUDGMENT AT THIS POINT.

3          IT COULD BE THE SUBJECT OF POST-JUDGMENT

4    PROCEEDINGS IN THE ENFORCEMENT IF IT BECOMES A

5    PROBLEM FOR ENFORCEMENT, BUT OTHERWISE I WOULD

6    ADVISE YOU TO MAKE KNOWN THOSE CONCERNS AND SEE

7    WHAT RESPONSE YOU GET AND COME TO A PROPER COURT,

8    EITHER HERE OR MASSACHUSETTS, IF YOU'RE NOT

9    SATISFIED.

10         MR. HAWK:  THANK YOU, YOUR HONOR.  THAT

11   WAS REALLY THE MAIN INTENT OF MY STANDING UP AND

12   SAYING THIS IN FRONT OF THE PARTIES AND THE COURT

13   THIS MORNING.

14         MR. CHATTERJEE:  YOUR HONOR, JUST ONE

15   FINAL THING.

16         FOR YOUR HONOR'S JUDGMENT, I THINK IT IS

17   VERY IMPORTANT, GIVEN THE NOTICE OF LIEN THAT HAS

18   BEEN FILED, MR. MOSKO'S REPRESENTATION THAT THEY

19   HAVE PERFECTED A LIEN THAT THE PROCEEDS THAT

20   FACEBOOK GIVES TO THE SPECIAL MASTER SHOULD NOT BE

21   DISBURSED WITHOUT THE CONSENT OF THE LIEN HOLDERS.

22         AND I'M VERY FOCUSSED ON THIS ISSUE OF

23   POTENTIAL EXPOSURE FOR FACEBOOK WHEN IT PERFORMS AS

24   IT SAID IT WOULD IN THE AGREEMENT, WHEN IT AT LEAST

25   HAS SOME KIND OF NOTICE, PERHAPS NOT SUFFICIENT

NOTICE, BUT SOME KIND OF NOTICE OF POTENTIAL LIENS
HANGING OUT THERE.

THE COURT:  ARE YOU NOT SATISFIED IF I
SAY NO DISBURSEMENTS WITHOUT FURTHER ORDER OF THE
COURT?

MR. CHATTERJEE:  "WITHOUT FURTHER ORDER
OF THE COURT"?  YOUR HONOR, I DON'T THINK THAT DOES
THAT BECAUSE I THINK THEY NEED TO BE HERE AND MAKE
SURE THEY GET SERVED WITH NOTICE OF THE COURT'S
PROCEEDINGS.

THE COURT:  WHAT I INTEND TO DO IS TO
FIGURE OUT THIS LIEN.  I HAVEN'T SEEN IT.  SOMEONE
SHOWED ME SOMETHING THAT WAS -- LET ME SEE IF I
COULD FIND WHAT I WAS LOOKING AT.

MR. CHATTERJEE:  IT WAS LIKE A TWO-PAGE
DOCUMENT, YOUR HONOR.

THE COURT:  YES.  IT IS A NOTICE OF
ATTORNEY'S LIEN FILED ON THE CASE NUMBER THAT IT
WAS WHEN IT WAS PENDING BEFORE JUDGE SEEBORG.  IT
INCLUDED LIEN OVER CLAIMS, CAUSES OF ACTION,
JUDGMENT, SETTLEMENT OR OTHER RECOVERY PAID TO
CONNECTU PARTIES, WHOEVER THAT IS, BUT THAT IS AN
IDENTIFIED TERM, OR ANY OF THEM OR THEIR SUCCESSORS
OR ASSIGNEES IN CONNECTION WITH THIS ACTION, WHICH
I PRESUME TO BE THE CALIFORNIA ACTION, FOR THE

1   PURPOSE OF SECURING PAYMENT OF ATTORNEYS' FEES,

2   COSTS, EXPENSES ON ACCOUNT OF ITS REPRESENTATION OF

3   THE CONNECTU PARTIES.

4           MR. CHATTERJEE:  YOUR HONOR, THERE WAS A

5   VIRTUALLY IDENTICAL ONE ALSO FILED IN BOSTON.

6           THE COURT:  ALL RIGHT.  THEN THAT WOULD

7   TAKE CARE OF THAT.

8           AND SO, PERHAPS, WHAT SHOULD HAPPEN IS

9   THE PARTIES SHOULD TENDER TO ME WHATEVER YOU WANT

10  IN TERMS OF A POST-JUDGMENT ORDER THAT WOULD SAY

11  WHAT SHOULD HAPPEN WITH RESPECT TO THAT

12  DISBURSEMENT THAT RESPECTS THIS.

13          BUT I AM CONCERNED THAT IF I PUT THIS IN

14  THE JUDGMENT, I AM DOING SOMETHING THAT THE PARTIES

15  DIDN'T AGREE TO IN THEIR SETTLEMENT AGREEMENT.

16          I'M TRYING TO STICK, FOR PURPOSES OF

17  ANYONE QUESTIONING MY ROLE HERE IN ENFORCING THE

18  SETTLEMENT AGREEMENT AND GIVING A JUDGMENT, THAT IF

19  I START ADDING THINGS THAT ARE OUTSIDE THE CONFINES

20  OF THAT SETTLEMENT AGREEMENT, I'M NOW DOING

21  SOMETHING BEYOND ENFORCEMENT.

22          AFTER I GIVE THAT JUDGMENT, I CAN DO

23  THINGS THAT WILL RESPECT THE VARIOUS ECONOMIC

24  INTERESTS OF THE PARTIES TO CARRY THAT OUT, BUT I

25  WAS CONCERNED ABOUT PUTTING IT IN THE JUDGMENT.

1      IF YOU ALL STIPULATE THAT I CAN PUT IT IN
2  THE JUDGMENT SO AS TO NOW NOT MAKE THAT A SOURCE OF
3  APPEAL, THEN I WILL CONSIDER THAT STIPULATION.
4      I MAY REJECT IT, BUT I WILL CONSIDER IT
5  SO THAT'S ONE THING THAT YOU CAN DO THAT WOULD
6  AFFECT IT.
7      BUT I GIVE YOU MY ASSURANCE THAT THIS
8  ISSUE OF THE LIEN OR LIENS, AS THE CASE MAY BE,
9  WILL BE ADDRESSED BY THE COURT BEFORE THERE'S ANY
10  DISBURSEMENT AND BY THE, BY THE -- MAYBE I CAN PUT
11  IN THE JUDGMENT NO DISBURSEMENT WITHOUT FURTHER
12  ORDER OF THE COURT WHICH SHALL ADDRESS ALL LIENS
13  AND MAKE SURE THAT EVERYTHING IS RESOLVED.
14      BUT I THINK THAT THAT IS ADDING LANGUAGE
15  THAT IS TOTALLY, TOTALLY UNNECESSARY.
16      ONCE I HAVE THE MATTER HERE YOU WOULD BE
17  ABLE TO COME HERE, AS WELL AS THE LIEN CLAIMANT,
18  AND ARGUE ABOUT THAT, BUT I'LL TAKE THAT INTO
19  CONSIDERATION IN MY LANGUAGE.
20      MR. VAN DALSEM:  MAY I POSE A QUESTION?
21      THE COURT:  CERTAINLY.
22      MR. VAN DALSEM:  WITH RESPECT TO THE CASH
23  THAT THE SPECIAL MASTER WOULD BE HOLDING ONTO, IS
24  THE JUDGMENT GOING TO ADDRESS THE NAME OF THE
25  DEPOSITOR?

THE COURT: NO. I WOULD LEAVE THAT TO
THE MASTER. I DON'T KNOW ENOUGH ABOUT WHAT WOULD
HAVE TO HAPPEN IN THAT LEVEL OF DETAIL THAT I WOULD
PUT IT IN THE JUDGMENT.

MR. VAN DALSEM: VERY WELL. BECAUSE IF
YOU WERE, I WOULD REQUEST THAT OUR FIRM BE LISTED
AS ONE OF THE CO-DEPOSITORS IN ORDER TO PROTECT
THAT INTEREST.

BUT IF YOU'RE NOT GOING TO PUT THAT IN.

THE COURT: WELL, THAT'S FURTHER TO WHAT
I HAVE JUST SAID.

IN OTHER WORDS, YOU'RE NOT A PARTY TO THE
SETTLEMENT AGREEMENT, AND I'M NOT GOING TO REQUIRE
AS A PART OF THIS JUDGMENT THAT YOU DEPOSIT
ANYTHING BECAUSE YOU HAVEN'T AGREED TO DEPOSIT
ANYTHING AS FAR AS THE SETTLEMENT.

YOU'RE IMPOSING YOURSELF LEGALLY ON A
JUDGMENT AND JUST AS I WOULD ENTER A JUDGMENT AFTER
A TRIAL THAT WOULDN'T SPEAK TO THAT, MY JUDGMENT
WOULD BE ENTERED AND YOU WOULD IMPOSE YOUR LIEN ON
THAT JUDGMENT SO THAT IN THE EXECUTION OF THE
JUDGMENT, THOSE FOLLOW-ON PROCEEDINGS, THAT LIEN
WOULD BE RECOGNIZED IN SOME WAY.

AND SO IT SEEMS TO ME THAT THE RULES TAKE
CARE OF THAT AND I DON'T NEED TO INCLUDE IT IN THE

69

1    JUDGMENT.

2              MR. BARRETT:  YOUR HONOR, I WOULD ASSUME

3    THAT THE ACCOUNT, IF YOU WILL, THE DEPOSIT ACCOUNT,

4    OR THE TREASURY BILLS, OR WHATEVER THE INVESTMENT

5    IS, WOULD BE IN THE NAME OF THE TRUSTEE OR SPECIAL

6    MASTER AND PERHAPS THAT'S THE SAME WAY TO HANDLE

7    THE STOCK CERTIFICATES, TOO, JUST MAKE THEM PAYABLE

8    TO THAT PERSON AND HE OR SHE TRANSFERS THEM ON.

9              THE COURT:  WELL, THE CERTIFICATES, IF

10   IT'S NECESSARY TO PUT THEM IN A NAME AND YOU CAN'T

11   COME TO SOME INSTRUCTION TO ME AS TO WHAT NAMES

12   THEY SHOULD BE IN BECAUSE OF THIS PROBLEM, I'M

13   GOING TO ACTUALLY HAVE SUBSEQUENT PROCEEDINGS TO

14   ACTUALLY ASK THAT.

15             I SHOULD TELL YOU I HAVE AN ANNUAL LEAVE

16   AND I'M GOING TO BE OUT OF THE DISTRICT FOR ABOUT

17   30 DAYS SO THERE COULD BE -- IF YOU ALL ARE

18   THINKING THAT THINGS WOULD HAPPEN QUICKLY AS YOU

19   ARE USING THE WORD, AND IT COMES WITHIN THAT PERIOD

20   OF TIME, THERE WILL BE A LOGISTICAL PROBLEM, BUT

21   I'LL GIVE SUFFICIENT INSTRUCTIONS TO THE MASTER TO

22   GET EVERYTHING MOVING AND TO MOVE IT AS QUICKLY AS

23   I CAN, SOME OF THIS BEING SUBJECT TO THIS QUESTION

24   OF WHETHER OR NOT THERE WILL BE APPEALS AND STAYS

25   AND THAT SORT OF THING.

1          MR. BARRETT:  UH-HUH.

2          THE COURT:  DO I NEED TO HEAR ANYTHING

3     MORE?

4          MR. VAN DALSEM:  YOUR HONOR, A PRACTICAL

5     SUGGESTION, PERHAPS.

6          ASSUMING YOUR HONOR ISSUED A JUDGMENT

7     TODAY, THEORETICALLY IT COULD BE APPEALED TOMORROW

8     AND THEN I BELIEVE THIS COURT WOULD BE WITHOUT

9     JURISDICTION.

10          I SIMPLY RAISE THE PRACTICAL ISSUE THAT

11    THE ISSUE OF THE JUDGMENT SHALL BE HELD IN ABEYANCE

12    UNTIL SUCH TIME AS EVERYTHING IS SET OR AT LEAST --

13          THE COURT:  WELL, I HAVEN'T THOUGHT

14    THROUGH THAT.  IT SEEMS TO ME THAT THAT INVITES

15    FURTHER DELAY.  I'M NOT WILLING TO ACCEPT THAT MY

16    LOSS OF JURISDICTION OVER THE ISSUE OF WHETHER THE

17    JUDGMENT SHOULD BE ENTERED DEPRIVES ME OF

18    JURISDICTION TO DO CERTAIN THINGS UNDER THE

19    JUDGMENT.

20          THERE ARE A LOT OF THINGS THAT COURTS DO

21    WHILE THE MERITS ARE APPEALED.  AND IT SEEMS TO ME

22    THAT IF AN APPEAL WERE TAKEN, THE SUGGESTION THAT

23    MAYBE A SUPERSEDING BOND WOULD BE POSTED WITH ONE

24    AND A HALF TIMES THE AMOUNT OF THE OTHERWISE

25    JUDGMENT, WHICH IS DIFFICULT TO VALUE GIVEN THE

1    FACT THAT THIS IS A COMBINATION OF CASH AND OTHER

2    CONSIDERATION, WOULD BE SOMETHING THAT I FACE IN

3    THE FUTURE.

4              SO THANK YOU FOR THE SUGGESTION, BUT I

5    MIGHT NOT TAKE IT.

6              MR. BARRETT:  AND, YOUR HONOR, AS I

7    INDICATED EARLIER WITH RESPECT TO A BOND, I BELIEVE

8    THAT THE, THAT THE RULE 62, AS IT --

9              THE COURT:  I JUST MENTIONED IT BECAUSE

10   IT GOT MENTIONED.  I HAVEN'T COME TO THAT.

11             MR. BARRETT:  I THINK THERE WOULD BE

12   OTHER WAYS TO DEAL WITH THAT BESIDES A BOND.

13             THE COURT:  ANYTHING FURTHER?

14             MR. CHATTERJEE:  THANK YOU FOR YOUR TIME,

15   JUDGE.

16             MR. BARRETT:  AND, YOUR HONOR, WITH

17   RESPECT TO THE SPECIAL MASTER, IS THAT -- WOULD IT

18   BE APPROPRIATE AT SOME POINT IF THE COURT HASN'T

19   DECIDED WHO THAT MIGHT BE TO GIVE THE PARTIES SOME

20   NOTICE BEFORE THAT, BEFORE THAT --

21             THE COURT:  WELL, MY NORMAL PRACTICE IS

22   TO DO AN ORDER SETTING UP THE POWERS AND THEN TO

23   NOMINATE SOMEONE TO SERVE IN THAT CAPACITY TO ALLOW

24   THE PARTIES TO MAKE ANY OBJECTIONS TO THE

25   INDIVIDUAL BEFORE THAT PERSON THEN SIGNS THE FORMS

THAT ARE NECESSARY TO TAKE ON THE RESPONSIBILITY AS
A MASTER.

I, I -- AND THAT'S THE PRACTICE THAT I
INTEND TO FOLLOW.

MR. BARRETT:  THANK YOU.

MR. CHATTERJEE:  THANK YOU, YOUR HONOR.

MR. VAN DALSEM:  THANK YOU VERY MUCH,
YOUR HONOR.

(WHEREUPON, THE EVENING RECESS WAS
TAKEN.)