SEAN A. LINCOLN (STATE BAR NO. 136387)
salincoln@orrick.com
I. NEEL CHATTERJEE (STATE BAR NO. 173985)
nchatterjee@orrick.com
MONTE COOPER (STATE BAR NO. 196746)
mcooper@orrick.com
THERESA A. SUTTON (STATE BAR NO. 211857)
tsutton@orrick.com
YVONNE P. GREER (State Bar No. 214072)
ygreer@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025
Telephone:    +1-650-614-7400
Facsimile:    +1-650-614-7401

Attorneys for Plaintiffs
THE FACEBOOK, INC. and MARK ZUCKERBERG

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THE FACEBOOK, INC. and MARK ZUCKERBERG,<br><br>              Plaintiffs,<br><br>     v.<br><br>CONNECTU, INC. (formerly known as CONNECTU, LLC) PACIFIC NORTHWEST SOFTWARE, INC. WINSTON WILLIAMS, and WAYNE CHANG,<br><br>              Defendants. | Case No.  5:07-CV-01389-JW<br><br>**PLAINTIFFS' OPPOSITION TO CONNECTU INC.'S MOTION TO STAY EXECUTION OF JUDGMENT PENDING APPEAL**<br><br>Date:       August 6, 2008<br>Time:      4:30 p.m.<br>Courtroom: 8<br>Judge:    Honorable James Ware |

Dockets.Justia.com

# TABLE OF CONTENTS

|  |  | **Page** |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | FACTUAL BACKGROUND | 2 |
| | A. The Relevant Proceedings before this Court | 2 |
| | B. The ConnectU Founders Engage in Behavior Affecting the Value of ConnectU | 4 |
| III. | ARGUMENT | 4 |
| | A. ConnectU's Motion to Stay Is Moot | 4 |
| | B. ConnectU Cannot Meet Its Burden For A Stay of Execution Pending Appeal Pursuant to Rule 62 | 5 |
| | 1. ConnectU Cannot Meet Its Burden On The Merits | 6 |
| | a. ConnectU's Has Not Raised "Serious Legal Questions" Based on Contract Defenses Already Considered by the Court | 7 |
| | b. The Settlement Agreement Is Enforceable as a Share Exchange Transaction Under Connecticut and Delaware Law | 9 |
| | c. ConnectU Cannot Show a Question as to Its Fraud Claims; | 9 |
| | (1) ConnectU lost on facts as well as legal questions, warranting denial of a stay | 9 |
| | (2) ConnectU's legal arguments are not substantial legal questions | 11 |
| | 2. ConnectU Has Not Demonstrated Irreparable Injury Sufficient to Warrant a Stay of Execution of Judgment | 13 |
| | a. The Possibility that ConnectU's Appeal May Become Moot Is Not a Sufficient Basis To Grant a Stay | 14 |
| | b. Speculative Claims are Not Irreparable Harm | 15 |
| | c. The Balance of Harm Tips in Facebook's Favor, Not ConnectU's | 16 |
| | 3. The Rights of Third Parties will be Better Protected by Denying a Stay | 17 |
| | 4. The Public Interest Will Be Better Served by Denying a Stay Pending Appeal | 17 |
| | C. If the Court Stays Release of ConnectU Stock Pending Appeal, It Should Order ConnectU to Provide Adequate Security | 18 |
| IV. | CONCLUSION | 19 |

**FEDERAL CASES**

*In re 203 N. LaSalle St. Partnership*, 190 B.R.595 (N.D. Ill. 1995)..............................15

*Allegheny Energy, Inc.,* v. *DQE, Inc.*, 171 F.3d 153 (3d Cir. 1999).............................16

*Asberry* v. *USPS*, 692 F.2d 1378 (Fed. Cir. 1982)..........................................................9

*In re Ashville Bldg. Assocs.*, 93 B.R. 920 (W.D.N.C. 1988)..........................................14

*Atari Corp.* v. *Ernst & Whinney*, 981 F.2d 1025 (9th Cir. 1992) .................................10

*In re Baldwin United Corp.*, 45 B.R. 385 (Bankr. S.D. Ohio 1984)..............................15

*Basic* v. *Levinson*, 485 U.S. 224 (1988).........................................................................10

*Beame* v. *Friends of Earth*, 434 U.S. 1310 (1977) .......................................................13

*Bennett* v. *United Trust Co. Of N.Y.*, 770 F.2d 308 (1985).........................................13

*In re Best Prods. Co.*,
177 B.R. 791 (S.D.N.Y.), *aff'd*, 69 F.3d 26 (2d Cir. 1995)....................................14

*Blue Chip Stamps* v. *Manor Drug Stores*, 421 U.S. 723 (1975)..................................10

*Callie* v. *Near*, 829 F.2d 888 (9th Cir. 1987)..................................................................8

*Canterbury Liquors and Pantry v. Sullivan*, 999 F. Supp. 144, 150 (D. Mass. 1998)...............6, 7

*Celebration Int'l, Inc.* v. *Chosun Int'l, Inc.*,
234 F. Supp. 2d 905 (S.D. Ind. 2002) .....................................................................13

*Core-Vent Corp.* v. *Implant Innovations, Inc.*,
53 F.3d 1252 (Fed. Cir. 1995)...............................................................................8, 9

*Dacanay* v. *Mendoza*, 573 F.2d 1075 (9th Cir. 1978) ...................................................8

*Drasner* v. *Thomson McKinnon Securities, Inc.*,
433 F. Supp. 485 (S.D.N.Y.1977).............................................................................12

*Dura Pharm., Inc.* v. *Broudo*, 544 U.S. 336 (2005) .....................................................10

*Franklin* v. *Kaypro Corp.*, 884 F.2d 1222 (9th Cir. 1989) ..........................................17

*In re Frascella Enterprises, Inc.*,
388 B.R. 619 (Bankr. E.D. Pa. 2008).......................................................................14

*General Teamsters Union Local No. 439 v. Sunrise Sanitation Servs.*, No. S-05-1208
WBS JFM, 2006 U.S. Dist. Lexis 51802, at *10 (E.D. Cal. July 26, 2006)............................7

*Geneva Towers Tenants Org.* v. *Federated Mortg. Investors*;
　504 F.2d 483, 485 n. 2 (9th Cir. 1974)....................................................... 5

*Golden Gate Restaurant* v. *City and County of San Francisco*,
　512 F.3d 1112 (9th Cir. 2008)................................................................ 6

*Goldie's Bookstore* v. *Superior Ct.*, 739 F.2d 466 (9th Cir. 1994) ............................ 15

*Gould* v. *Control Laser Corp.*, 866 F.2d 1391 (Fed. Cir. 1989)................................... 5

*In re Great Barrington Fair & Amusement, Inc.*,
　53 B.R. 237 (Bankr. D. Mass. 1985)........................................................ 15

*Int'l Banknote Co.* v. *Muller*, 713 F. Supp. 612 (S.D.N.Y. 1989)................................ 17

*Int'l Telemeter Corp.* v. *Hamlin Intern. Corp.*,
　754 F.2d 1492 (9th Cir. 1985)............................................................... 18

*Kennedy* v. *Josephthal & Co.*, 814 F.2d 798 (1st Cir. 1987)................................... 10

*In re Kent*, 145 B.R. 843 (Bankr. E.D. Va. 1991)............................................... 15

*Locafrance U.S. Corp.* v. *Intermodal Sys. Leasing, Inc.*,
　558 F.2d 1113 (2d Cir. 1977)................................................................ 13

*Lopez* v. *Heckler*,
　713 F.2d 1432 (9th Cir. 1983), *rev'd on other grounds*, 463 U.S. 1328 (1983) ................ 6, 17

*Mamula* v. *Satralloy, Inc.*, 578 F. Supp. 563 (S.D. Ohio 1983) ................................ 6

*McClatchy Newspapers* v. *Central Valley Typographical Union No. 46*,
　686 F.2d 731 (9th Cir. 1982)................................................................ 18

*Mich. Coalition of Radioactive Material Users* v. *Griepentrog*,
　945 F.2d 150 (6th Cir. 1991)................................................................. 6

*In re Moreau*, 135 B.R. 209 (N.D.N.Y. 1992)................................................... 15

*Mortellite* v. *Novartis Crop Protection, Inc.*,
　460 F.3d 483 (3d Cir. 2006)................................................................. 10

*National Union Fire Ins. Co. of Pittsburgh, Pa.* v. *Turtur*,
　892 F.2d 199 (2d Cir. 1989)................................................................. 12

*Palmer* v. *Thomson & McKinnon Auchincloss, Inc.*,
　474 F. Supp. 286 (D.Conn. 1979)........................................................... 12

*Pearlstein* v. *Scudder & German*, 429 F.2d 1186 (2nd Cir. 1970)............................. 13

*Peralta* v. *Peralta Food Corp.*, 506 F. Supp. 2d 1274 (S.D. Fla. 2007)....................... 18

*Petro-Ventures, Inc.* v. *Takessian*, 967 F.2d 1337 (9th Cir. 1992) .................................. 11, 12, 13

*Rachel* v. *Banana Republic, Inc.*, 831 F.2d 1503 (9th Cir. 1987).................................. 18

*S&T Mfg.* v. *County of Hillsborough*, 815 F.2d 676 (Fed. Cir. 1987)........................... 9

*Sea Ranch Ass'n* v. *Calif. Coastal Comm'n*,
    552 F. Supp. 241 (N.D. Cal. 1982) ........................................................ 5

*Silvas* v. *ETrade Mortg. Corp.*, 514 F.3d 1001 (9th Cir. 2008)..................................... 9

*Smolen* v. *Deloitte, Haskins & Sells*, 921 F.2d 959 (9th Cir. 1990) ........................... 10

*Stormans, Inc.* v. *Selecky*, 526 F.3d 406 (9th Cir. 2008) .................................. 6

*Strobel* v. *Witter*, BEN, 2007 U.S. Dist. LEXIS 30407 (S.D. Cal. Apr. 24, 2007) ...................... 6

*In re Sunflower Racing, Inc.*, 223 B.R. 222 (D. Kan. 1998) ....................................... 14

*TNT Mktg., Inc. v. Agrest,* 796 F.2d 276, 278 (9th Cir. 1986) ....................................... 1

*TSC Indus.,* v. *Northway, Inc.*, 426 U.S. 438 (1976) ...................................... 10

*In re The Charter Co.*, 72 B.R. 70 (Bankr. M.D. Fla. 1987) ........................... 15

*United States* v. *El-O-Pathis Pharmacy*, 192 F.2d 62 (9th Cir. 1951) ........................ 18

*United States* v. *Emerson*, 270 F.3d 203 (5th Cir. 2001) ............................... 15

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) ........................... 17

*Winig v. Cingular Wireless, LLC*, No. C-06-4297 MMC, 2006 U.S. Dist. Lexis 83116, at
    *3-4 (N.D. Cal. Nov. 6, 2006) .................................................... 7

*Wisdom Imp. Sales Co., L.L.C.* v. *Labatt Brewing Co.*,
    339 F.3d 101 (2d Cir. 2003)................................................... 16

*Zerman* v. *Jacobs*,
    510 F. Supp. 132 (S.D.N.Y. 1981), *aff'd mem.*, 672 F.2d 901 (2d Cir. 1981) ...................... 11

**STATE CASES**

*In re BA-MAK Gaming Int'l, Inc.*,
    No. 95-1991, 1996 WL.411610 (E.D. La. July 22, 1996) ..................................... 14

*In re Calpine Corp.*,
    No. 05-60200 (BRL), 2008 WL. 207841 (Bankr. S.D.N.Y. Jan. 24, 2008) ........................ 14

*In re Clark*, No. 95 C 2773, 1995 WL 495951, at *6 (N.D. Ill. Aug. 17, 1995) ...................... 15

# TABLE OF AUTHORITIES

*I.F.S. of New Jersey, Inc.* v. *Mathesz*,
No. 97-CV-7517, 1988 WL. 966029 (E.D. Pa. Nov. 18, 1998) ............................................ 16

*Federal Home Loan Mortgage Corp. v. Berbod Realty Associates, L.P.*,
1994 WL 1060301 (SDNY) ...................................................................................................... 1

*In re MAC Panel Co.*,
No. 98-10952C-11G, 2000 WL. 33673784 (Bankr. M.D.N.C. Mar. 8, 2000) ...................... 14

*Sanguinetti* v. *Viewlogic Sys., Inc.*, No. C 95 2286 TEH,
1996 WL. 33967 (N.D. Cal. Jan 24, 1996) ........................................................................... 10

*Saldate* v. *Adams*, No. 1:07-CV-00309 AWI,
2008 WL. 2915075 (E.D. Cal. July 25, 2008) ...................................................................... 15

*Sibia Neurosciences, Inc. v. Cadus Pharmaceutical Group*,
No. 96-1231-IEG (POR), 1999 WL. 33554683 (S.D. Cal. Mar. 10, 1999) ........................... 18

*In re Trans World Airlines, Inc.*,
No. 01-0056 (PJW), 2001 WL. 1820325 (Bankr. D. Del. Mar. 27, 2001) ........................... 14

*Weddington Products, Inc.* v. *Flick*,
60 Cal. App. 4th 793 (1998) ............................................................................................ 7, 8

## FEDERAL STATUTES

17 C.F.R. § 240 10b-5 .................................................................................................................. 9

## STATE STATUTES

Conn. Gen. Stat. § 33-816 ............................................................................................................ 9

California Civil Code § 1542 ....................................................................................................... 12

California Code of Civil Procedure § 1775(c) ............................................................................. 17

# I.   **INTRODUCTION**

ConnectU Inc.'s ("ConnectU") Motion To Stay Execution of Judgment Pending Appeal ("Motion to Stay") should be denied for the following reasons:

- The Parties relinquished their rights to challenge the judgment by behaving in a way that indicated an intention to comply.[1]

- In looking at the four corners of a contract and holding ConnectU did not meet its burden to prove fraud, no substantial legal question exists. Rather, the matter was decided on the facts.

- ConnectU cannot claim harm due to potential waiver of privilege because its malpractice claim already waives privilege.

- Loss of appellate rights is not irreparable harm under the law.

- Facebook, Inc. ("Facebook") is irreparably harmed by not obtaining ConnectU stock because it cannot protect an asset it has invested in and the ConnectU Founders are engaging in efforts that affect the value of ConnectU. Indeed, the ConnectU Founders have demonstrated an intention to disregard Court orders and its agreement, causing Facebook great concern.

- The public interest in recognizing settlements outweighs any private interest.

As all parties should have complied with the Court's judgment by today (August 4, 2008), the only remaining issue is whether the Special Master should release the ConnectU shares to Facebook, which could only occur by Court order. To the extent ConnectU considers the release of its shares part of its "stay" motion, ConnectU should be required to post a bond pursuant to Rule 62. The proper amount should be "one and a half times the value of the …Judgment" due to the difficulty in valuing the transaction, as this Court previously stated. *See* Dkt. No. 481, at 71:20-72:3. At the June 23, 2008 hearing, ConnectU identified its belief as to the range of values

---

[1] At 2:14 p.m. today, ConnectU for the first time said it would not comply with the Court's Judgment. *See* Declaration of I. Neel Chatterjee in Support of Opposition to Motion to Stay ("Chatterjee Decl."), Chatterjee Decl., Ex. 6. Facebook is considering its options, such as requesting contempt, attorneys fees or other sanctions for noncompliance. *See TNT Mktg., Inc. v. Agrest,* 796 F.2d 276, 278 (9th Cir. 1986); *see also Federal Home Loan Mortgage Corp. v. Berbod Realty Associates, L.P.*, No. 91 CIV. 1033(CSH), 1994 WL 1060301, at * 1 (S.D.N.Y. Aug. 16, 1994).

of the cash-and-stock-for-stock transaction contemplated by the settlement. *See* Dkt. No. 477 at 25:25-26:7.[2] Facebook requests that the Court act in its discretion to set a bond in an amount somewhere within one and a half times the range identified by ConnectU.

## II.   FACTUAL BACKGROUND

### A.   The Relevant Proceedings before this Court

Facebook settled this case on February 22, 2008, in part, by purchasing ConnectU, Inc. Divya Narendra, Cameron Winklevoss, and Tyler Winklevoss (the "ConnectU Founders") would not honor the agreement reached and do what was necessary to effect the necessary transfer of shares. Therefore, on April 23, 2008, Facebook filed a motion to enforce the settlement that the parties achieved. Only ConnectU, Inc. opposed. The ConnectU Founders made a strategic decision to challenge notice, and did not file opposition papers on their own behalf.

After extensive briefing[3], on June 25, 2008, this Court entered an Order enforcing the settlement agreement and scheduled a separate hearing to address the form of the Judgment to occur on July 2, 2008. *See* Dkt. No. 461.[4] In so doing, the Court found that the evidence demonstrated an intent to be bound to the Settlement Agreement and that ConnectU did not prove that fraud had occurred. The parties then submitted proposals of judgment, both of which were rejected by the Court. Prior to the hearing on the Judgment, counsel for Facebook asked ConnectU's counsel what it expected to be ConnectU Founders' plan for maintaining the ConnectU business in the event the Court permitted a delay in exchanging consideration. Counsel for ConnectU answered "we really have not thought about that." *See* Chatterjee Decl. ¶ 7.

On July 3, 2008, the Court entered Judgment Enforcing Settlement Agreement. By separate Order, the Court appointed George Fisher as Special Master to administer various

---

[2] Portions of this transcript have been sealed pursuant to Court Order dated July 2, 2008. *See* Dkt. No. 473 at 8-9. All references herein are to the sealed transcript.
[3] Facebook incorporates by reference all arguments set forth in its motion papers associated with the Confidential Motion to enforce settlement. Likewise, Facebook incorporates all arguments it raised during separate hearings related to the settlement motion held on June 23, 2008, and July 2, 2008, respectively.
[4] Portions of this Order have been redacted by the Court. All references by Facebook are to the un-redacted Order.

administrative activities it identified within the Judgment. *See* Dkt. Nos. 475-476. The Judgment

Enforcing Settlement Agreement required ConnectU Inc., Cameron Winklevoss, Tyler

Winklevoss, and Divya Narendra (the "ConnectU Parties") to perform the following acts:

> (a) Pursuant to Paragraphs 4 and 7 of the Agreement, unless otherwise ordered by the Court, on or before **August 4, 2008,** ConnectU Inc. shall deposit with the Master all shares of ConnectU Inc., endorsed for transfer. To the extent the parties to the Agreement do not own any shares of ConnectU Inc., to fulfill the obligation of the transfer of "all ConnectU stock," the parties to the Agreement shall take such actions in their respective corporate and individual capacities as are necessary to effect the deposit with the Master of all shares of ConnectU stock;[5]

> (b) Pursuant to Paragraphs 2 and 4 of the Agreement, on or before **12 noon on July 9, 2008,** ConnectU, Inc., Cameron Winklevoss, Tyler Winklevoss and Divya Narendra shall submit to the Court for approval a proposed form of release. Upon approval by the Court, the release shall be signed by these parties and shall have attached to it corporate authority given to the corporate signatory and shall be notarized as to each signatory and shall be immediately deposited with the Master;

> (c) Pursuant to Paragraphs 2 and 4 of the Agreement, unless otherwise ordered by the Court, on or before **August 4, 2008,** a legally sufficient dismissal with prejudice of all cases by and between the parties pending as of the date of the Agreement. The dismissal shall recite that each party to the respective litigation shall bear their own attorney fees and costs.

*See* Dkt. No. 476 at ¶ 2. The first requirement of the Judgment (*i.e.* submission of a proposed

form of release) was completed by ConnectU and the ConnectU Founders on July 9, 2008.

ConnectU and the ConnectU Founders also participated in numerous meetings conducted by the

---

[5] Under the Court's order appointing the Special Master, the Special Master is to retain the ConnectU stock until further order of the Court.

1    Special Master to organize the efficient transfer of stock and cash.  Chatterjee Decl., ¶¶ 7-8.  At

2    no point did ConnectU state it would not comply with the Judgment of this court.  *Id*. at ¶ 8.  To

3    the contrary, the parties had extensive discussion and numerous meetings concerning the

4    mechanics of the transaction and the management of proceeds due to the Quinn Emanuel lien.  *Id*.

5         As the Court has not otherwise ordered, the ConnectU Parties' further deposits with the

6    Special Master of their endorsed stock for transfer, and the parties' submission of joint dismissals,

7    are due today, August 4, 2008.[6]  Notwithstanding the passing of all deadlines, ConnectU filed its

8    Motion for a Stay of Execution of Judgment.

9         **B.**      **The ConnectU Founders Engage in Behavior Affecting the Value of ConnectU**

10        Both before and after the court entered judgment, the ConnectU Founders engaged in

11   substantial activity affecting the business and value of ConnectU.  For example, while the motion

12   to enforce was pending, the ConnectU Founders became embroiled in a fee dispute with their

13   former lawyers at Quinn Emanuel.  Because of this dispute, Quinn Emanuel commenced an

14   arbitration against ConnectU and the ConnectU Founders.  *See* Chatterjee Decl. Ex. 1.  The

15   dispute is in the millions of dollars.  The Finnegan Henderson firm also stated it had some sort of

16   lien, but its applicability to ConnectU is unknown.

17        After Judgment was entered, the ConnectU Founders continued to affect the value of

18   ConnectU unsupervised.  The ConnectU Founders and ConnectU initiated major litigation in the

19   New York Supreme Court against Quinn Emanuel without advising Facebook or the Special

20   Master.  *See* Chatterjee Decl. Ex. 2.  As is evident from their papers, ConnectU and the ConnectU

21   Founders intend to initiate more litigation against its former counsel.  *See id.* at  3.  ConnectU

22   may have created other major liabilities as well.  At this point Facebook cannot be certain.

23   **III.**   **ARGUMENT**

24        **A.**      **ConnectU's Motion to Stay Is Moot**

25        The present Motion to Stay is moot.  Up until 2:14 p.m. today, ConnectU and the

26   ConnectU Founders have demonstrated an intent to comply with the Court's Judgment Enforcing

27

28   [6] The Special Master has instructed the parties to submit the Court-ordered dismissals to him per
     section 1(c) and 2(c) of the Judgment.

1    Settlement Agreement.  Courts have held that a party may relinquish its appellate rights by

2    demonstrating an intention to comply with a Court Order associated with a settlement.  Such

3    relinquishment may be evidenced by the party's intention to abide by the judgment, by the party's

4    acceptance of a benefit, or when the party's compliance renders appellate relief futile.  *Geneva*

5    *Towers Tenants Org. v. Federated Mortg. Investors*; 504 F.2d 483, 485 n. 2 (9th Cir. 1974); s*ee*

6    *also Sea Ranch Ass'n v. Calif. Coastal Comm'n*, 552 F. Supp. 241, 245-248 (N.D. Cal. 1982)

7    (action was moot where the owners of a non-profit organization challenging California Coastal

8    Zone Conservation Act accepted the benefits of a settlement bill passed by the California

9    legislature, even though the settlement bill remained vulnerable to a later state constitutional

10   challenge).[7]

11           The July 3, 2008 Judgment Enforcing Settlement Agreement required ConnectU and the

12   ConnectU Founders to do three things: (a) give all ConnectU shares to the Special Master, (b)

13   submit to the Court a proposed form of release, and (c) file a legally sufficient dismissal in all

14   three pending cases.  ConnectU and the ConnectU Founders submitted the proposed form of

15   release to the Court on July 9, 2008.  Dkt. No. 478.  The other terms are due today.  Facebook

16   meanwhile has provided the Special Master with the requisite cash and stock today, naming the

17   ConnectU shareholders as the beneficial owners of the consideration.  This submission of

18   consideration by Facebook for the benefit of the ConnectU Founders and ConnectU's actions

19   demonstrating an intention to comply, constitutes a relinquishment of ConnectU's appellate

20   rights.

21           **B.    ConnectU Cannot Meet Its Burden For A Stay of Execution Pending Appeal
                      Pursuant to Rule 62**

22           Assuming the motion is not moot, ConnectU cannot meet its burden for a stay pending

23   appeal.  "Because the burden of meeting this standard is a heavy one, more commonly stay

24   requests will not meet this standard and will be denied."  11 CHARLES A WRIGHT, ARTHUR R.

25

26   ───────────────────────
     [7] As Facebook is now the beneficial owner of ConnectU, the motion is separately moot under the
     doctrine of *dominix litis*, as it now controls both sides of the litigation.  *See Gould v. Control*
27   *Laser Corp.*, 866 F.2d 1391, 1392-93 (Fed. Cir. 1989) (holding Patlex' appeal from a jury verdict
     rendering certain of its patent claims invalid was moot where Patlex acquired the defendant
28   corporation in a post-trial settlement; "[b]y virtue of the settlement agreement, Patlex has become
     the *dominix litis* on both sides" of the underlying litigation).

PLAINTIFFS' OPPOSITION TO MOTION TO STAY EXECUTION
                                                     OF JUDGMENT PENDING APPEAL
                                                     5:07-CV-01389-JW

MILLER, & MARY K. KANE, FEDERAL PRACTICE & PROCEDURE § 2904 (2d ed. 1995 & Supp.).

"The standard for evaluating stays pending appeal [pursuant to Rule 62] is similar to that employed by district courts in deciding whether to grant a preliminary injunction." *Lopez v. Heckler*, 713 F.2d 1432, 1435 (9th Cir. 1983), *rev'd on other grounds*, 463 U.S. 1328 (1983) (Rehnquist, Circuit Justice). The four factors the Court should consider are: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceedings; and (4) where the public interest lies." *Stormans, Inc. v. Selecky*, 526 F.3d 406, 408 (9th Cir. 2008). In order to satisfy steps (1) and (2), a Court "will accept proof either that the applicant has shown 'a *strong* likelihood of success on the merits [and] … a *possibility* of irreparable injury to the [applicant],' or 'that *serious* legal questions are raised and that the balance of hardships tips *sharply* in its favor.'" *Id.* (emphasis in original) (citing *Golden Gate Restaurant v. City and County of San Francisco*, 512 F.3d 1112, 1115-16 (9th Cir. 2008)). The Ninth Circuit has described these alternative foundations as "two interrelated legal tests" that "represent the outer reaches of a single continuum." *Lopez,* 713 F.2d at 1435. Courts have recognized that regardless of which standard is applied, "the movant is always required to demonstrate more than the mere 'possibility' of success on the merits." *Mich. Coalition of Radioactive Material Users v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991). ConnectU cannot meet its burden.

### 1. ConnectU Cannot Meet Its Burden On The Merits

ConnectU relies upon the lower end of the continuum of merit, asserting that it has raised "serious legal questions." *See* Mot. to Stay at 8-13. This case does not present a serious or difficult questions in an unclear area of law. Courts have found that "serious legal questions" requires serious and difficult legal questions of law in an area where the law is somewhat unclear. *Mamula v. Satralloy, Inc.*, 578 F. Supp. 563, 580 (S.D. Ohio 1983); s*ee also Strobel v. Witter*, No. 04CV1069 BEN, 2007 U.S. Dist. Lexis 30407, at *3-5 (S.D. Cal. Apr. 24, 2007) (holding that a movant must establish that the appeal raises serious and difficult questions of law in an area where the law is somewhat unclear) (citing *Canterbury Liquors and Pantry v. Sullivan*, 999 F.

Supp. 144, 150 (D. Mass. 1998); *Winig v. Cingular Wireless, LLC*, No. C-06-4297 MMC, 2006 U.S. Dist. Lexis 83116, at *3-4 (N.D. Cal. Nov. 6, 2006); *General Teamsters Union Local No. 439 v. Sunrise Sanitation Servs.*, No. S-05-1208 WBS JFM, 2006 U.S. Dist. Lexis 51802, at *10 (E.D. Cal. July 26, 2006).

No substantial legal question exists because (1) ConnectU did not adduce facts to prove any fraud, and (2) the four corners of the Agreement were unambiguous. The Court examined the four corners of the documents and evaluated the evidence submitted by ConnectU in its effort to prove fraud. Applying well-established and non-controversial law, the Court reviewed the terms recited in the Agreement and rejected the claim of fraud. This Court, citing *Weddington Products, Inc. v. Flick*, 60 Cal. App. 4th 793, 811 (1998) and other cases, found (1) "the Agreement clearly states the consideration for the performance and how it must be paid," (2) "the Agreement clearly defines the structure of the transaction," and (3) "the principals of each company, who are persons authorized to make decisions for the parties, all signed the handwritten version of the Agreement and none of the signatures are disputed." As to the fraud allegations, the Court found (1) ConnectU's reliance, to the extent there was any, was unjustifiable, (2) "Defendants have failed to establish that Plaintiffs made a misrepresentation during mediation," (3) "[w]ithout a showing by Defendants of a material misrepresentation or omission in the negotiations, the Court finds no basis to decline enforcement," and (4) Defendants have failed to tender sufficient evidence of fraud in the circumstances proffered to the Court to create a genuine dispute as to whether the Agreement was fraudulently induced.

While ignoring the fact-finding outlined above, ConnectU claims the Court made legal error with respect to the Court's straight forward application of well-established law. ConnectU's argument is wrong.

          **a.**     <u>**ConnectU's Has Not Raised "Serious Legal Questions" Based on Contract Defenses Already Considered by the Court**</u>

ConnectU first incorrectly contends that it has raised serious legal questions based on contract defenses concerning the Order enforcing the settlement agreement. *See* Mot. to Stay at 8-10.

ConnectU incorrectly contends that *Weddington Prods., Inc. v. Flick*, 60 Cal. App. 4th 793, 799 (1998), supports the contention that the court should have considered other post-settlement documentation prepared by the parties, considered expert testimony, and held an evidentiary hearing. Mot. to Stay at 8-10. ConnectU further claims that the Court placed undue emphasis on the fact that the Settlement Agreement stated on its face that it was "binding." *Id.* at 10. *Weddington Prods. Inc.* is not applicable. The case involved an imperfect negotiation in which the parties' agreement on an essential term was expressly reserved for another day. Specifically, the parties' "Deal Point Memorandum" required execution of a formal licensing agreement upon further negotiation of the parties. *Id.* at 799 (noting that the Deal Point Memorandum stated that "the parties *will formalize* a Licensing Agreement")(emphasis added). Because the parties could not agree on the material terms of the separate license, which the agreement specifically contemplated would be the subject of further negotiation, the Court of Appeals held the whole settlement unenforceable. *Id.* at 815-816.

In contrast to *Weddington*, this Court recognized that the language of the Settlement Agreement demonstrated a clear intent to be bound and that further action beyond the Agreement was expressly permitted but not required. Dkt. No. 461 at 8 (emphasis added).[8] Namely, the Court carefully analyzed the important distinction between something which "shall" be done and something which "may" be done in determining that the Settlement Agreement was final. *Id.* at 8. Here, ConnectU repeats the error it made in its opposition to Facebook's motion to enforce by ignoring the well-established principle that a complete settlement agreement, negotiated at arm's-length by sophisticated parties, can and should be enforced summarily. *See Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987); *Dacanay v. Mendoza*, 573 F.2d 1075, 1078 (9th Cir. 1978); *Core-Vent Corp. v. Implant Innovations, Inc.*, 53 F.3d 1252, 1259 (Fed. Cir. 1995) (applying Ninth

---

[8] The underlying Settlement Agreement also is distinguishable from that in *Weddington* because it separately conferred jurisdiction to enforce the agreement with respect to the Massachusetts cases in San Jose Federal Court. *See* Dkt. No. 461, quoting Settlement Agreement ¶ 4. In *Weddington*, the Court found an ADR clause immaterial to whether it memorialized a final settlement, because the ADR clause did not confer any separate jurisdiction over the Deal Point Memorandum. *See* 60 Cal. App. 4th at 801. Here, unlike in *Weddington*, the *only* way the Settlement Agreement could be enforced against the Boston actions was by virtue of the jurisdictional grant in Paragraph 4.

Circuit law). "'Those who employ the judicial appellate process to attack a settlement through which controversy has been set to rest bear a properly heavy burden.'" *Core-Vent Corp.*, 53 F.3d at 1259 (citing *S&T Mfg. v. County of Hillsborough,* 815 F.2d 676, 678 (Fed. Cir. 1987), further quoting *Asberry v. USPS*, 692 F.2d 1378, 1380 (Fed. Cir. 1982)).

### b. The Settlement Agreement Is Enforceable as a Share Exchange Transaction Under Connecticut and Delaware Law

For the first time, ConnectU argues that a substantial question exists as to whether the Settlement Agreement is properly enforceable as a "share exchange agreement" under Connecticut law. *See* Mot. to Stay at 10. This argument is improper, as it was not even previously raised with the Court during the motion to enforce and is therefore waived on appeal. *See Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1007 (9th Cir. 2008).

In any event, the Settlement Agreement is a properly enforceable share exchange transaction under Connecticut and Delaware law. Connecticut law defers to Facebook's state of incorporation--Delaware--on whether share exchanges are allowed. Conn. Gen. Stat. § 33-816. Delaware allows for share exchanges. *See, e.g.*, 8 Del. Code § 123 ("Any corporation organized under the laws of this State may . . .*exchange shares* or other securities in . . .any other domestic or foreign corporation . . .)(emphasis added); 8 Del. Code § 160(a)("Every corporation may . . .*exchange* . . .use and otherwise deal in and with its own shares[.]"(emphasis added)). Though ConnectU appears to cite a treatise contradicting the express language of the Delaware Statutes, its citation is misleading. The section of the treatise ConnectU cites actually indicates that Delaware currently affords for no *statutory* or binding share exchange. *See* Chatterjee Decl. Ex. 5. (discussing that while Delaware currently affords no statutory share exchange, New York Business Corporation Law § 913, for example, does). Unlike a specifically enumerated share exchange statute, the corporate general statute of Delaware allows companies to dispose of shares as they please, including a share exchange.

### c. ConnectU Cannot Show a Question as to Its Fraud Claims;

#### (1) ConnectU lost on facts as well as legal questions, warranting denial of a stay

ConnectU has not raised a serious legal question under the federal securities laws or

common law fraud.  It is well settled that a claim for common law fraud or federal securities law fraud requires that an omitted or misrepresented fact be material.  *Basic v. Levinson,* 485 U.S. 224, 240 (1988);  *TSC Indus., v. Northway, Inc.,* 426 U.S. 438, 449 (1976); 17 C.F.R. § 240 10b‐ 5.  The Court specifically found, as a factual matter, that Defendants made no showing of a material misrepresentation or omission.

ConnectU also failed to provide evidence demonstrating justifiable or reasonable reliance, which is also required to sustain a securities or common law fraud claim.  *See, e.g., Sanguinetti v. Viewlogic Sys., Inc.,* No. C 95 2286 TEH, 1996 WL 33967, at * 10 (N.D. Cal. Jan 24, 1996).  As this Court and the Massachusetts Court found, ConnectU knew it had incomplete information and was represented by counsel when it chose to settle.  *See* Dkt. No. 461 at 9-10, 12;  Chatterjee Decl., Ex. 7 at 1-2, 4,  June 3, 2008, Memorandum and Order, Case No. 07-10593-DPW (D. Mass.).  In addition, the highly speculative nature of any valuation of Facebook, a private company, created a volatile environment where any kind of reliance as to share price was not justified absent a specific written warranty.  At the time of settlement, ConnectU possessed confidential information at the mediation that demonstrated all Facebook valuations were, in fact, speculative and that common shares had considerably lower value than other classes of stock.  *See*, *e.g.*, Chatterjee Decl. Ex. 3 at 24, 26, 41; Ex. 4 at 28.  Under these circumstances, ConnectU's purported reliance on the press release cannot be justified.  *Atari Corp. v. Ernst & Whinney*, 981 F.2d 1025, 1030 (9th Cir. 1992); *Smolen v. Deloitte, Haskins & Sells*, 921 F.2d 959, 965 (9th Cir. 1990); *Kennedy v. Josephthal & Co*., 814 F.2d 798, 805 (1st Cir. 1987) (reliance on representations that conflicted with evidence available to plaintiff was reckless); *see also Mortellite v. Novartis Crop Protection, Inc.,* 460 F.3d 483, 491-94 (3d Cir. 2006).  Based upon the absence of facts to support ConnectU's claim, no substantial legal question exists.[9]

---

[9] Facebook maintains its argument that ConnectU does not have standing to assert a securities violation because it is not a purchaser of securities. *See Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 754 (1975). Further, it cannot show economic loss or loss causation, *i.e*., a causal connection between the alleged misrepresentation and the actual loss.  *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 344-42 (2005).

**(2)    ConnectU's legal arguments are not substantial legal questions**

ConnectU advances two incorrect legal arguments to support its claim of legal error on its securities fraud claim: (1) the Court erred in concluding that insider trading by Facebook is not an issue and (2) the Court erred in finding that Section 29 of the Securities Exchange Act of 1934 ("1934 Act") is not applicable.

ConnectU's argument related to "insider trading" is without merit. This Court correctly noted that ConnectU was unable to identify any "authority that an agreement to exchange shares of closely held corporations pursuant to settlement of litigation between companies is voidable by showing securities fraud." *See* Dkt. No. 461 at 11. It was with respect to that statement that the Court also noted that "[t]he cases which Defendants cite in their sur-reply regarding a duty to disclose 'material non-public information' all fall within the context of insider trading, which is not an issue in this case." *Id.* In addition, the case cited by ConnectU in both its original opposition papers to the motion to enforce and the current Motion to Stay does not change the fact that it could not prove a material misstatement or omission. Rather, the evidence shows ConnectU chose to enter into an agreement with incomplete information while represented by counsel.

ConnectU's interpretation of Section 29(b) of the 1934 Act is also incorrect. Specifically, ConnectU argues that a serious legal question exists as to whether this Court properly applied the broad release of Paragraph 2 of the Settlement Agreement to hold that under *Petro-Ventures, Inc. v. Takessian*, 967 F.2d 1337 (9th Cir. 1992), ConnectU could not collaterally challenge its enforceability. *See* Plaintiffs' Opposition to Motion to Intervene at 12-14.

First, ConnectU's Section 29(b) argument does not raise a serious legal question because the statute applies only to unlawful contracts, not purported "unlawful transactions." That is, the statute applies only to contracts that are illegal by their own terms (for example, an agreement among conspirators to share profits from illegal insider trading), rather than contracts that are allegedly illegal due to some collateral securities fraud. *See Zerman v. Jacobs*, 510 F. Supp. 132, 135 (S.D.N.Y. 1981) ("under § 29(b) … only unlawful *contracts* may be rescinded, not unlawful

*transactions* made pursuant to lawful contracts"), *aff'd mem.*, 672 F.2d 901 (2d Cir. 1981); *see also Palmer v. Thomson & McKinnon Auchincloss, Inc.*, 474 F. Supp. 286, 291 (D.Conn. 1979); *Drasner v. Thomson McKinnon Securities, Inc.*, 433 F. Supp. 485, 501-02 (S.D.N.Y.1977). ConnectU's does not identify anything about the Settlement Agreement that by itself violates the securities laws so as to implicate Section 29(b), and indeed the only representations concerning Facebook's stock relate to the number of outstanding shares. *See* Dkt. No. 461 at 3 (quoting ¶ 7 of the Settlement Agreement). Further, because ConnectU makes no effort to show reliance so as to establish a violation of Section 10(b) of the 1934 Act and Rule 10b-5, it also fails to identify any serious legal question that Section 29(b) was violated. *See National Union Fire Ins. Co. of Pittsburgh, Pa. v. Turtur*, 892 F.2d 199, 206 & fn. 4 (2d Cir. 1989) ("Since we hereinafter conclude that no violation of section 10(b) of the Act or rule 10b-5 survives National Union's motion for summary judgment, we do not reach any issue posed by section 29(b) of the Act").

Second, this Court's reliance upon *Petro-Ventures* is proper. *Petro-Ventures* is quite similar to this case. All parties in both cases were well represented and had equal bargaining power. The parties in both cases had ready access to Counsel in signing a settlement. The four corners of the agreements in both cases sought broad releases and demonstrated an intent to bring about "general peace." The complaining party in both sections sought to invalidate a settlement agreement under different (but related) portions of section 29. Notwithstanding these similarities, ConnectU contends that the present case is different because *Petro-Ventures* arose from a new lawsuit, rather than a motion to enforce settlement of the original action. This is a distinction without a difference.[10] Both cases arise from a securities transaction where a settlement agreement was signed releasing all claims, and the security used for settlement was the very source of the alleged securities violations.[11] The dispute in both cases centers on the effect of the

---

[10] ConnectU argues in a lengthy footnote that the Settlement Agreement's provision requiring the parties to prepare separate "releases as broad as possible" did not include any waiver under California Civil Code § 1542. *See* Mot. to Stay at 11 & fn. 8. However, the provision in the Settlement Agreement did not need to mention this provision insofar as they were intended to be "as broad as possible" they necessarily had to apply to this code provision. To the extent that ConnectU alleges that Section 1542 cannot waive a claim for fraud in the inducement, it suffices to note that the Court separately rejected the argument that ConnectU demonstrated any such fraud. *See* Dkt. No. 461 at 9-11.

[11] ConnectU claims that the *Petro-Ventures* is distinguishable because the securities claims could

releases in the settlement agreement upon the securities transaction that formed part of the settlement. *See also Locafrance U.S. Corp. v. Intermodal Sys. Leasing, Inc.*, 558 F.2d 1113, 1115 (2d Cir. 1977).

*Pearlstein v. Scudder & German*, 429 F.2d 1186 (2nd Cir. 1970), the case relied upon by ConnectU, is irrelevant and overruled. In *Pearlstein*, the Second Circuit found that a settlement agreement violated the margin requirements of Section 7(c) of the 1934 Act and Regulation T (and hence Section 29 of the 1934 Act), because the defendant failed to recover capital after the settlement. *Id.* at 1142-43. However, after that ruling, the Second Circuit in *Bennett v. United Trust Co. Of N.Y.*, 770 F.2d 308, 311-13 (1985) reexamined and "abandoned" *Pearlstein* as controlling law because neither Section 7 of the Securities Act nor Regulation U [former Regulation T] provides an independent underlying cause of action.

## 2.     ConnectU Has Not Demonstrated Irreparable Injury Sufficient to Warrant a Stay of Execution of Judgment

ConnectU cannot show irreparable injury. At this point the Special Master should have had the ConnectU shares, and they can only be released to Facebook upon Court order. All of the harm identified by ConnectU is speculative.

ConnectU's delay in filing a Notice of Appeal and moving for a stay until almost one full month after the Court on July 3, 2008 entered Judgment Enforcing Settlement Agreement undercuts ConnectU's argument that it will suffer irreparable injury. *See Beame v. Friends of Earth*, 434 U.S. 1310, 1313 (1977) (denying a motion for a stay pending the filing of a petition for certiorari, and stating "The applicants' delay in filing their petition and seeking a stay vitiates much of the force of their allegations of irreparable harm"). Indeed, this delay is particularly inexcusable given the fact that ConnectU already has performed prior conditions of the Judgment, and the Court, the Special Master, and Facebook all have relied upon ConnectU's behavior. *Cf. Celebration Int'l, Inc. v. Chosun Int'l, Inc.*, 234 F. Supp.2d 905, 920 (S.D. Ind. 2002) (noting that in the context of a motion for preliminary injunction, "[t]he tardiness weighs against a plaintiff's

---

have been asserted in the underlying litigation. However, those securities were the same partnership units exchanged with cash that formed part of the settlement *See Petro-Ventures*, 967 F.2d 1337 ("in recognition of the settlement, Petro-Ventures paid $181,000 to Great American Resources and reassigned limited partnership units to them."). The facts thus are comparable.

claim for irreparable harm, especially when the delay is not excused for a good reason or when the defendant has relied on the inaction").

To the extent that ConnectU contends that release of the ConnectU shares to Facebook by the Special Master is part of its "stay" motion, ConnectU cannot establish irreparable harm. ConnectU argues that should Facebook acquire the stock in the company, Facebook will be in position to moot ConnectU's appeal and to waive any claim by the company for malpractice against Quinn Emanuel. Alternatively, ConnectU argues that transfer of corporate ownership places it at risk of waiving the attorney-client and attorney work product privileges because Facebook will have access to all company materials. These arguments, however, do not rise to the level of irreparable injury sufficient to stay execution of judgment – especially where, as here, ConnectU also fails to raise serious legal questions. Indeed, the inability of Facebook to participate and be educated with respect to decision-making on a major potential liability undertaken by ConnectU causes Facebook substantial harm.

### a. The Possibility that ConnectU's Appeal May Become Moot Is Not a Sufficient Basis To Grant a Stay

ConnectU claims that it will suffer irreparable injury by complying with the Judgment Enforcing Settlement because Facebook will be in position to dismiss, and hence render moot, any appeal by ConnectU relating to the settlement itself. *See* Mot. to Stay at 1, 5-6.

A decision by a company not to pursue an appeal does not constitute irreparable harm. ConnectU argues that "many courts have found irreparable harm where, absent a stay pending appeal, the appellant stood to lose its ability to appeal." *See id.* at 5 & fn. 2. However, a clear "*majority* of courts find the potential of mootness insufficient to demonstrate irreparable harm." *In re Frascella Enterprises, Inc.*, 388 B.R. 619, 627 (Bankr. E.D. Pa. 2008) (emphasis added). Contrary to what ConnectU argues, "[i]t is well settled that an appeal being rendered moot does not itself constitute irreparable harm." *In re Trans World Airlines, Inc.*, No. 01-0056 (PJW), 2001 WL 1820325, at * 10 (Bankr. D. Del. Mar. 27, 2001); a*ccord In re Best Prods. Co.*, 177 B.R. 791, 808 (S.D.N.Y.), *aff'd*, 69 F.3d 26 (2d Cir. 1995); *In re Sunflower Racing, Inc.*, 223 B.R. 222, 225 (D. Kan. 1998); *In re Ashville Bldg. Assocs.*, 93 B.R. 920 (W.D.N.C. 1988); *In re BA-MAK*

1   *Gaming Int'l, Inc.*, No. 95-1991, 1996 WL411610, at *2 (E.D. La. July 22, 1996);  *In re 203 N.*

2   *LaSalle St. Partnership*, 190 B.R.595, 598 (N.D. Ill. 1995);  *In re Clark*, No. 95 C 2773,1995 WL

3   495951, at *6 (N.D. Ill. Aug. 17, 1995);  *In re Moreau*, 135 B.R. 209, 215 (N.D.N.Y. 1992);  *In*

4   *re Calpine Corp.*, No. 05-60200 (BRL), 2008 WL 207841, at *4 (Bankr. S.D.N.Y. Jan. 24, 2008);

5   *In re MAC Panel Co.*, No. 98-10952C-11G, 2000 WL 33673784, at *4 (Bankr. M.D.N.C. Mar. 8,

6   2000);  *In re Kent*, 145 B.R. 843, 844 (Bankr. E.D. Va. 1991);  *In re The Charter Co.*, 72 B.R. 70,

7   72 (Bankr. M.D. Fla. 1987);  *In re Great Barrington Fair & Amusement, Inc.*, 53 B.R. 237, 240

8   (Bankr. D. Mass. 1985);  *In re Baldwin United Corp.*, 45 B.R. 385, 386 (Bankr. S.D. Ohio 1984).

9   Accordingly, the mere fact that ConnectU's contemplated appeal may be rendered moot by the

10  Special Master's transfer of ConnectU stock to Facebook does not constitute irreparable injury

11  sufficient to grant a stay pending appeal.  In this case, ConnectU's predicament is of its own

12  doing, weakening any claim of harm.  The ConnectU Founders could have opposed the motion

13  and preserved their rights to appeal.  They made a strategic choice not to oppose the motion.

14  ConnectU need not act to protect rights of its former shareholders.

15              **b.     Speculative Claims are Not Irreparable Harm**

16              ConnectU argues that "giving Facebook control of ConnectU could also potentially affect

17  the malpractice claim that ConnectU and its shareholders may assert against their former counsel

18  Quinn Emanuel."  Mot. to Stay at 6.  Likewise, ConnectU argues that "giving Facebook control

19  of ConnectU … would further threaten irreparable harm to ConnectU and its shareholders" via its

20  "potentially" waiving the right to attorney client and work product privileges.  This argument fails

21  because ConnectU and the ConnectU Founders will waive privilege by asserting a malpractice

22  claim against Quinn Emanuel.  Arguably, these rights have been waived already because of the

23  pending dispute.

24              Further, ConnectU's arguments fail because as the word "potentially" suggests, they are

25  speculative.  Speculative injury does not constitute irreparable injury.  *Saldate v. Adams*, No.

26  1:07-CV-00309 AWI, 2008 WL 2915075, at *1 (E.D. Cal. July 25, 2008) (citing *Goldie's*

27  *Bookstore v. Superior Ct.*, 739 F.2d 466, 472 (9th Cir. 1994)); s*ee also United States v. Emerson*,

28  270 F.3d 203, 262 (5th Cir. 2001) ("'[s]peculative injury is not sufficient; there must be more

than an unfounded fear on the part of the applicant'" (citing 11A CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY K. KANE, FEDERAL PRACTICE & PROCEDURE § 2948.1 (2d ed. 1995)).  Here, ConnectU does not even attempt to explain what is the source of malpractice it alleges it "may assert" against Quinn Emanuel.  Nor does it identify what records would waive the attorney-client privilege if turned over to Facebook.  Indeed, ConnectU fails to explain why such waiver even is a possible injury, as ConnectU's execution of the settlement agreement necessarily contemplated the transfer of all corporate and legal records to Facebook.

### c.      The Balance of Harm Tips in Facebook's Favor, Not ConnectU's

Contrary to ConnectU's assertions, Facebook will be irreparably harmed by a stay of release of the ConnectU shares.  Facebook bargained for finality in this litigation.  It also sought to purchase a competing company for valid consideration.  As things currently stand, Facebook cannot oversee the business of its investment.  Facebook cannot engage in strategic decisions to try to build the ConnectU business.  Facebook cannot ensure measures are taken to develop the goodwill of ConnectU, if it is within the business interest to do so.  Facebook cannot participate in important business decisions, such as the decision to initiate litigation or invest.  Indeed, these decisions are being made independent of Facebook, even though Facebook purchased ConnectU half a year ago at great cost.  The ConnectU Founders decision to get ConnectU embroiled in a legal dispute affecting the value of ConnectU is causing Facebook harm.  The ConnectU Founders have also demonstrated an intention not to comply with Court Orders or its agreement, further heightening the harm and risk of harm.  If a stay is granted, it has sacrificed substantial funds and stock which it could otherwise use to build its business with no value in return.

In circumstances such as this, Courts have held that irreparable harm would be suffered by the party acquiring a company by the loss of the opportunity to own or control that business. *Allegheny Energy, Inc., v. DQE, Inc.,* 171 F.3d. 153 (3d Cir. 1999); *see also Wisdom Imp. Sales Co., L.L.C. v. Labatt Brewing Co.,* 339 F.3d 101, 114 (2d Cir. 2003)("denial of a controlling ownership interest in a corporation" or "[c]onduct that unnecessarily frustrates efforts to obtain or preserve the right to participate in the management of a company may constitute irreparable

harm."); *Int'l Banknote Co. v. Muller*, 713 F. Supp. 612, 623 (S.D.N.Y. 1989)(holding that frustrating shareholders in an attempt to obtain representation on board of directors constituted irreparable harm). In addition, Courts have held that it is irreparable harm to profit from a procedural delay tactic to take away the benefit of a settlement a party has bargained for. *I.F.S. of New Jersey, Inc. v. Mathesz*, No. 97-CV-7517, 1988 WL 966029, at * 9-10 (E.D. Pa. Nov. 18, 1998).

### 3. The Rights of Third Parties will be Better Protected by Denying a Stay

The Settlement Agreement resolved lawsuits involving over a half a dozen parties, other than those that are signatories to the Settlement Agreement. Staying the proceedings would leave a lingering cloud over them for no reason whatsoever and in a way that would be difficult to quantify. This consequence is a separate effect that weighs in favor of denial.

### 4. The Public Interest Will Be Better Served by Denying a Stay Pending Appeal

The public interest favors Facebook. In determining whether to grant or deny a stay pending appeal, "the public interest is a factor to be strongly considered." *Lopez,* 713 F.2d at 1435.

The public has a significant interest in promoting private resolution of litigation through settlements such as that reached in this case. Courts have long recognized that there is a significant public interest in encouraging private settlement of litigation. *See Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) (noting that "'there is an overriding public interest in settling and quieting litigation'")(citing *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976)). Indeed, this policy is so great that it is embodied in California Code of Civil Procedure § 1775(c), which reads: "It is in the public interest for mediation to be encouraged and used where appropriate by the courts." This Court even specifically mentioned this important public interest during the hearing held July 2, 2008 on the question of what would be the form the Judgment:

> The reason this case is one that I have given a great deal of attention to is because as a court we encourage parties to engage in mediation and resolution of disputes.
> The public has a direct benefit in that process. And so court

> annexed mediation is a very important part of how we do business
> as a court ….

Dkt. No. 481, 19:21-20:2. Such a ruling is consistent with the many other cases which have denied motions to stay judgment enforcing settlements. *See, e.g.*, *Peralta v. Peralta Food Corp.*, 506 F. Supp. 2d 1274, 1279 (S.D. Fla. 2007) (denying motion to stay compliance with settlement agreement, and noting that "[i]n Florida and elsewhere, the law favors the finality of settlements"); *I.F.S. of N.J.,* 1998 WL 966029, at *9 (denying a motion to stay enforcement of settlement agreement, and noting that "[w]e will not permit Defendants to profit from its procedural tactics in a manner that it could not under the Settlement Agreement it bargained for with Plaintiff").

### C. If the Court Stays Release of ConnectU Stock Pending Appeal, It Should Order ConnectU to Provide Adequate Security

Plaintiff requests a stay of proceedings under Rule 62.[12] Under Rule 62, the bond should be somewhere within one and a half times the range identified by ConnectU at the hearing on the judgment. This request is consistent with the statements of the Court at the judgment hearing on July 3, 2008. Facebook is unsure, however, whether such a bond is sufficient because, so long as ConnectU is controlled by the ConnectU Founders, the ConnectU Founders can continue their practice of increasing ConnectU's potential liability.

ConnectU incorrectly claims that no bond or other security is necessary. Rule 62 codifies the "long established" and narrowly limited right of a trial court to make orders appropriate to preserve the status quo pending appeal. *United States v. El-O-Pathis Pharmacy*, 192 F.2d 62, 79 (9th Cir. 1951); *McClatchy Newspapers v. Central Valley Typographical Union No. 46*, 686 F.2d 731, 734-35 (9th Cir. 1982). Districts have inherent discretional authority in setting bonds. *Rachel v. Banana Republic, Inc.,* 831 F.2d 1503, 1505 n.1 (9th Cir. 1987). If no bond is posted, Rule 62 only allows the Court to consider some other forms of security as a judgment guarantee. *Int'l Telemeter Corp. v. Hamlin Intern. Corp.*, 754 F.2d 1492 (9th Cir. 1985). There are two recognized justifications for allowing an alternate form of security: (1) the judgment debtor

---

[12] It is unclear whether 62(c), 62(d) or both sections of Rule 62 apply because the Court required numerous monetary and non-monetary actions. The non-monetary actions, have been completed as of today, however.

demonstrates the financial ability to pay a money judgment and provides the Court with a financially secure plan or (2) the judgment debtor's financial condition would make posting a bond as undue financial burden where the Court applies a restraint on the debtor's financial dealing to furnish equal protection to the creditor. *Sibia Neurosciences, Inc. v. Cadus Pharmaceutical Group*, No. 96-1231-IEG (POR), 1999 WL 33554683 (S.D. Cal. Mar. 10, 1999)(holding that Cadus compensate Sibia for 50 percent of fees associated with escrow in lieu of bond). Neither case is present here. The ConnectU Founders have not provided the Court with any financially secure plan or identification of any means to furnish equal protection to Facebook as the value of the Settlement Agreement.

## IV.    CONCLUSION

For the reasons set forth above, Plaintiffs Facebook, Inc. and Mark Zuckerberg request that ConnectU's Motion to Stay Execution of Judgment Pending Appeal be denied. Alternatively, if this Court exercises its discretionary powers to stay execution of the stock transfer contemplated by the settlement, it should require that ConnectU post an adequate supersedes bond in the amount requested.

Dated: August 4, 2008                          Orrick, Herrington & Sutcliffe LLP


                                      /s/ I. NEEL CHATTERJEE /s/
                                      I. NEEL CHATTERJEE
                                      Attorneys for Plaintiffs
                                      THE FACEBOOK, INC. and MARK
                                      ZUCKERBERG

1

**<u>CERTIFICATE OF SERVICE</u>**

2     I hereby certify that this document(s) filed through the ECF system will be sent

3 electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)

4 and paper copies will be sent to those indicated as non registered participants on August 4, 2008.

5 Dated: August 4, 2008.                    Respectfully submitted,

6

7                                    /s/ I. NEEL CHATTERJEE /s/
                                   _____
8                                    I. NEEL CHATTERJEE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28