1  SEAN A. LINCOLN (STATE BAR NO. 136387)
   salincoln@orrick.com
2  I. NEEL CHATTERJEE (STATE BAR NO. 173985)
   nchatterjee@orrick.com
3  WARRINGTON S. PARKER, III (STATE BAR NO. 148003)
   wparker@orrick.com
4  MONTE COOPER (STATE BAR NO. 196746)
   mcooper@orrick.com
5  YVONNE P. GREER (State Bar No. 214072)
   ygreer@orrick.com
6  ORRICK, HERRINGTON & SUTCLIFFE LLP
   1000 Marsh Road
7  Menlo Park, CA 94025
   Telephone:    +1-650-614-7400
8  Facsimile:    +1-650-614-7401

9  Attorneys for Plaintiffs
   THE FACEBOOK, INC. and MARK ZUCKERBERG
10

ORIGINAL
FILED

08 AUG 13  PM 4: 09

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST OF CA S.J.

11            UNITED STATES DISTRICT COURT

12            NORTHERN DISTRICT OF CALIFORNIA

13                  SAN JOSE DIVISION

14

15 | THE FACEBOOK, INC. and MARK ZUCKERBERG, | Case No.  5:07-CV-01389-JW
16 |                                         | **NOTICE OF CROSS-APPEAL BY FACEBOOK, INC. AND MARK ZUCKERBERG**
   |            Plaintiffs,                  |
17 |                                         |
18 |     v.                                  |
   | CONNECTU, INC. (formerly known as       |
19 | CONNECTU, LLC) PACIFIC                   |
   | NORTHWEST SOFTWARE, INC.                 |
20 | WINSTON WILLIAMS, and WAYNE              |
   | CHANG,                                   |
21 |                                         |
   |            Defendants.                   |
22 |                                         |

23

24

25

26

27

28

Dockets.Justia.com

1    Notice is hereby given that Facebook, Inc. and Mark Zuckerberg, Plaintiffs in the above

2    named case, hereby appeal to the United States Court of Appeals for the Ninth Circuit from the

3    Order Granting Motion to Dismiss Claims Against Defendants Cameron Winklevoss, Tyler

4    Winklevoss, and Divya Narendra ("ConnectU Founders") entered in this action on November 30,

5    2007, Exhibit A, and the Order Denying Plaintiffs' Motion for Sanctions, entered in this action

6    on November 30, 2007, Exhibit B. Final Judgment was entered in this action on July 2, 2008,

7    Exhibit C. ConnectU, Inc. filed a Notice of Appeal from the Final Judgment and related orders

8    on July 30, 2008, Exhibit D. The issues raised in this Cross-Appeal need not be reached if this

9    Court affirms the Judgment and orders appealed from in Exhibit D.

10

11   Dated: August 13, 2008                    SEAN A. LINCOLN
                                               I. NEEL CHATTERJEE
12                                             MONTE COOPER
                                               THERESA A. SUTTON
13                                             YVONNE P. GREER
                                               Orrick, Herrington & Sutcliffe LLP
14

15

16                                             _____
                                               WARRINGTON PARKER
17                                             Attorneys for Plaintiffs
                                               THE FACEBOOK, INC. and MARK
18                                             ZUCKERBERG

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

**United States District Court**
For the Northern District of California

**\*E-FILED 11/30/07\***

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

FACEBOOK, INC., et al

               Plaintiffs,

v.

CONNECTU LLC, et al.

               Defendants.

Case No. C 07-01389 RS

**ORDER GRANTING MOTION TO DISMISS CLAIMS AGAINST DEFENDANTS CAMERON WINKLEVOSS, TYLER WINKLEVOSS, AND DIVYA NARENDRA**

## I. INTRODUCTION

Defendants Cameron Winklevoss, Tyler Winklevoss, and Divya Narendra move to dismiss the claims against them on grounds that prior to removal of this action to this court, the Santa Clara Superior Court ruled that none of them was subject to personal jurisdiction in California. Defendants contend that ruling precludes plaintiffs relitigating personal jurisdiction here. Plaintiffs Facebook and Mark Zuckerberg (collectively "Facebook"), in turn contend that they have discovered and pleaded new facts that were not before the Superior Court that make reconsideration of jurisdiction appropriate and that support personal jurisdiction over the moving defendants. Although Facebook has discovered additional factual *detail* and have incorporated numerous

1  allegations bearing on jurisdiction into the amended complaint, it has not shown that the basic facts

2  on which it now relies are any different from those presented to the Superior Court.  Accordingly,

3  the Superior Court's decision remains conclusive here, and the motion to dismiss will be granted.

4

5  II. BACKGROUND

6  The general background of this action has been described in prior orders and will not be

7  repeated here.  Relevant to this motion is the following: When this action was initiated in Santa

8  Clara Superior Court, the named defendants included Cameron Winklevoss, Tyler Winklevoss, and

9  Divya Narendra.  The Winklevosses and Narendra are three founders of defendant ConnectU.[1] They

10  promptly filed a motion to quash service of summons, arguing that they were not subject to personal

11  jurisdiction in California. ConnectU itself did not contest jurisdiction.

12  Facebook sought and was granted leave to take jurisdictional discovery before the motion to

13  quash was heard.  Even prior to the filing of this action, Facebook had been taking discovery from

14  ConnectU in connection with litigation between them pending in the District of Massachusetts.  By

15  virtue of the Massachusetts discovery, Facebook was aware before this action was filed that Winston

16  Williams of Pacific Northwest Software ("PNS") had assisted ConnectU in collecting email

17  addresses from the Facebook website and that it had used those addresses with the "social butterfly"

18  software.   In the jurisdictional discovery, Facebook learned additional facts regarding PNS's

19  development of an "automated" process for sending emails to addresses found on the Facebook site,

20  as well as facts regarding the individual defendants' prior manual collection of addresses from the

21  site.

22

23

24

25

---

26      [1] There has been significant controversy regarding the role Narendra originally was
expected to have and regarding how and when anyone became actual "members" of the
27  ConnectU LLC.  Those matters are discussed in a contemporaneously-filed order denying
plaintiffs' sanction motion.  Regardless of that controversy, the characterization of Narendra
28  as a "founder" appears fair.

2

United States District Court

For the Northern District of California

1    In opposing the motion to quash, Facebook cited to and relied on evidence regarding both the

2    manual collection of email addresses and the subsequent automatic processes.   For reasons it did not

3    explain, the Superior Court rejected Facebook's arguments and granted the motion to quash.[2]

4    Facebook subsequently filed an amended complaint in the Superior Court that added certain

5    claims but that omitted the Winklevosses and Narendra as defendants.  Based on claims that had

6    been added under federal law, ConnectU then removed the action to this Court and brought a motion

7    to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  The Court granted that

8    motion in part, with leave to amend.   Facebook then filed a second amended complaint that not only

9    addressed the matters that had been raised by the motion to dismiss, but that also (1) added Mark

10   Zuckerberg as a plaintiff, (2) added certain new individual defendants, and (3) renamed as

11   defendants the Winklevoss brothers and Narendra.

12   Defendants objected to Facebook adding parties without leave of Court. By order issued June

13   14, 2007, the Court in effect granted Facebook *post hoc* leave to add the parties, but without

14   prejudice to any substantive arguments as to why they should not be made parties.  The present

15   motion to dismiss followed.

16

17                                      III. DISCUSSION

18   Although the parties have characterized the legal precedents differently, there is no real

19   conflict in their respective positions, or in the cases they cite, as to the circumstances under which a

20   prior state court jurisdictional determination will be deemed conclusive in a subsequent federal

21   proceeding.  Put simply, if a plaintiff can show *new and different* facts supporting jurisdiction, then

22   the prior determination may be revisited.  See *Kendall v. Overseas Dev. Corp.*, 700 F.2d 536, 539

23   (9th Cir. 1983) ("the dispositive question is whether [plaintiff] pleaded any new facts in the federal

24   litigation that would support a different result on the issue of jurisdiction.").   If, however, the facts

25   are those that the prior court found insufficient to support jurisdiction, then "even if wrong, an

26   _____

27   [2]Howard Winklevoss, the father of Tyler and Cameron Winklevoss, was also named
     as a defendant and was a party to the motion to quash.  Facebook has not attempted to bring
28   him back into this litigation.

                                            3

1  earlier decision involving the same issue and the same parties, 'is as conclusive as a correct' one."

2  *Gupta v. Thai Airways Intern. Ltd.*, 487 F.3d. 759, 767 (9th Cir. 2007) (quoting *MIB, Inc. v.*

3  *Superior Court*, 106 Cal.App.3d 228, 235).

4      Here, Facebook insists it has discovered and pleaded significant new evidence bearing on

5  personal jurisdiction over the Winklevoss brothers and Narendra.  Certainly the second amended

6  complaint appears to have been drafted with an eye to preempting the argument that personal

7  jurisdiction is lacking; the complaint is replete with assertions that defendants acted with intent and

8  knowledge that their activities would have effects in this forum.  Nevertheless, Facebook has not

9  shown that any of the evidence on which it now relies is materially different from that it previously

10 presented to the Superior Court.  At most, Facebook has now garnered additional *details*, but the

11 basic conduct it contends is sufficient to give rise to jurisdiction is the *same* conduct it pointed to in

12 the state court motion to quash proceedings.

13     As noted, the Superior Court did not explain the basis for its decision, leaving it uncertain as

14 to precisely what evidence might or might not have been sufficient to cause it to reach a different

15 result.  Because Facebook is relying now on "contacts" that do not differ significantly in kind or in

16 quantity than those it presented during the motion to quash, however, there is no particular reason to

17 believe the "new" details would have changed the result.

18     Although Facebook attempts to argue that a different result is warranted in light of "new"

19 evidence, it is apparent that Facebook actually believes the Superior Court simply got it wrong.[3]

20 Particularly given that this Court has demonstrated an unwillingness to accept the so-called

21 "fiduciary shield" argument, Facebook appears to believe that it can obtain a different result by

22 arguing the merits better or slightly differently.[4]  Rearguing the same basic facts, however, is not

23 _____

24     [3]  In its motion for sanctions, Facebook candidly suggests that the Superior Court
accepted defendants' legally untenable argument that actions they took on behalf of

25 ConnectU did not count as personal contacts with the forum.  Although the order regarding
the sanctions motion filed contemporaneously with this decision rejects that conclusion as

26 unduly speculative, it does show that in Facebook's view, the Superior Court simply erred.

27     [4]  At the hearing, defense counsel effectively conceded that if this Court were free to
reconsider the issues, then under the reasoning this Court employed in denying the motion to

28 dismiss brought by Winston Williams and PNS, personal jurisdiction would be proper over

1  permissible.  Even if the Superior Court reached an incorrect legal determination, the outcome is

2  conclusive.  Facebook "does not now get a do-over."  *Gupta, supra*, 487 F.3d at 767.

3

4                                    IV.  CONCLUSION

5       For the reasons set forth above the motion to dismiss is granted.

6

7  IT IS SO ORDERED.

8  Dated: November 30, 2007

9                                          RICHARD SEEBORG
                                           United States Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27  Cameron Winklevoss.  Defendants contend that even in those circumstances personal
    jurisdiction would not be proper over Tyler Winklevoss or Narendra because there is no
    evidence they personally participated in any allegedly wrongful conduct at a time when
28  Facebook was located in California.

5

United States District Court

For the Northern District of California

# EXHIBIT B

**United States District Court**
For the Northern District of California

**\*E-FILED 11/30/07\***

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

FACEBOOK, INC., et al.

Plaintiffs,

v.

CONNECTU LLC, et al.

Defendants.

Case No. C 07-01389 RS

**ORDER DENYING PLAINTIFF'S MOTION FOR SANCTIONS**

I. INTRODUCTION

Plaintiff Facebook moves to impose sanctions against defendants ConnectU, Cameron Winklevoss, Tyler Winklevoss, Divya Narendra, and their counsel. Although the motion is based on a number of different allegedly wrongful acts, all of the claimed misconduct relates to apparent inconsistencies between the legal and factual positions taken by defendants in this and another action pending between Facebook and ConnectU in Massachusetts. Whether or not the positions taken by ConnectU in the Massachusetts action are fully reconcilable with the positions taken, and discovery responses provided, in *this* action, Facebook has not shown that defendants made any materially false discovery responses or representations here. While Facebook has labored mightily to characterize the alleged wrongdoing as having occurred in this proceeding, it is apparent that the true thrust of its argument is that ConnectU took positions *in Massachusetts* that were not tenable in

United States District Court

For the Northern District of California

light of its essentially *truthful* admissions in this action.  It is for the Massachusetts court, if at all, to decide whether the representations made to it and the positions taken in those proceedings were based on truthful testimony, within the bounds of proper advocacy.  Accordingly, the motion for sanctions will be denied.

## II. BACKGROUND

As set forth in greater detail in prior orders, this action arises from Facebook's allegations that defendants accessed its website, "harvested" the email addresses of its members, and then sent those persons email soliciting them to become ConnectU members.[1]  As also previously described, the initial dispute between the parties arose from ConnectU's claim that Mark Zuckerberg, Facebook's founder, originally agreed to assist ConnectU's founders in developing their website and business, but that he instead misappropriated their intellectual property to establish Facebook.  That claim forms the basis of the litigation filed in the District of Massachussetts by ConnectU against Facebook.

The present motion for sanctions grows out of an unfortunate series of events and misguided legal arguments that led ConnectU to take positions in the Massachussets action that arguably were inconsistent with the positions it took and discovery responses it provided here.  Specifically, when this action was originally filed in Santa Clara Superior Court, the named defendants included the three ConnectU founders, Cameron Winklevoss, Tyler Winklevoss, and Divya Narendra.[2]  Although ConnectU did not contest jurisdiction, all four of the individual defendants moved to quash service of summons, based on an argument that they were not subject to personal jurisdiction in California.  The individual defendants' motion rested in large part on an argument that any acts they undertook

_____

[1] No proceedings on the merits have yet taken place, and nothing in this order should be construed as suggesting otherwise.  It does not presently appear, however, that ConnectU disputes the general outline of Facebook's allegations, but ConnectU does vigorously dispute whether any such conduct was wrongful.

[2] The complaint also named  as a defendant Howard Winklevoss, who is the father of the Winklevoss brothers and who apparently played some role in funding and supporting the development of ConnectU.  Facebook, however, has not challenged his dismissal from this action and is not seeking to reinstate him as a defendant.

1  on behalf of ConnectU could not be considered as "contacts" in evaluating whether "minimum

2  contacts" existed to assert personal jurisdiction over them.[3]  Consistent with that argument,

3  defendants not surprisingly represented in discovery responses and in declarations filed with the

4  court that at all relevant times Cameron Winklevoss, Tyler Winklevoss and Divya Narendra had

5  acted not in their capacities as individuals, but in their capacities as "members" of ConnectU.[4]  For

6  example, in response to Interrogatory No. 14, propounded while this case was maintained in

7  Superior Court, defendants stated, "[m]embers of ConnectU include Cameron Winklevoss, Tyler

8  Winklevoss, and Divya Narendra, as set forth in the Limited Liability Company Operating

9  Agreement . . . . These persons have all been Members since ConnectU was formed."

10      Facebook's opposition to the individual defendants' motion to quash did not challenge the

11  assertion that they had acted on "behalf" of ConnectU; rather Facebook argued, correctly, that in the

12  context of tort claims, the fact that an individual defendant acts on behalf of a corporate entity is not

13  a jurisdictional shield.  See *Calder v. Jones*, 465 U.S. 783, 790 (1984) (defendants' "status as

14  employees does not somehow insulate them from jurisdiction."); see also *Natural Resources, Inc. v.*

15  *Wineberg*, 349 F.2d 685 (9th Cir. 1965) ("It is elementary that a person is personally responsible for

16  his own torts.").

17      In its written opposition to this motion for sanctions, ConnectU endorses the argument

18  Facebook made to the Superior Court.  "Facebook had done thorough and compelling research

19  proving this membership issue to be irrelevant . . . . Facebook's opposition convincingly established

20  that a person's official status or capacity in a fictitious entity cannot immunize that person from the

21

22

---

23      [3]  In support of this argument before the Santa Clara Superior Court, defendants cited
   *Mihlon v. Superior Court*, 169 Cal.App.3d 703 (1985). In later proceedings before this Court,
24  defendants relied on *Colt Studio, Inc. v. Badpuppy Enterprise*, 75 F.Supp.2d 1104,
   (C.D.Cal.1999) to make the same argument that the acts of defendants Winston Williams and
25  Pacific Northwest Software undertaken on behalf of ConnectU were not jurisdictionally
   significant.  *Colt Studio* relied on and followed *Milhon*.

26

27      [4]  ConnectU was initially established as a limited liability company (LLC) in
   Delaware under the laws of that state.  The concept of membership in an  LLC is discussed
   further below.  ConnectU apparently now is a corporation, but that has no bearing on the
28  issues in this motion.

3

1    personal jurisdiction of a forum, even where the alleged wrongful action were taken in that person's

2    official capacity." Opposition at 6:26-7:3.

3        Although ConnectU has now essentially conceded that jurisdiction in this proceeding does

4    not turn on the status of the Winklevoss brothers and Narendra as members in, or representatives of,

5    ConnectU, its discovery responses and declarations asserting that the Winklevosses and Narendra

6    were all members of ConnectU presented a jurisdictional problem in the Massachusetts proceeding.

7    That action was commenced in Federal court based solely on diversity jurisdiction. For purposes of

8    diversity jurisdiction, an LLC is treated like a partnership; thus the citizenship of each of its

9    members is relevant. Were Narendra's citizenship to be considered, ConnectU would not have been

10    able to establish a basis for diversity jurisdiction in the Massachusetts action. Accordingly,

11    ConnectU took the position in the Massachusetts litigation that Narendra had *not* been a "member"

12    of ConnectU as of the date that action was filed. Specifically, Narendra filed a declaration stating,

13    "[b]ecause our respective roles, contributions, and shares in the company were uncertain, I was not

14    made a Member of ConnectU LLC until well after September 2, 2004."

15        Facebook did not hesitate to call the Massachusetts court's attention to the apparent

16    inconsistencies in ConnectU's positions. The Massachussets court ultimately held evidentiary

17    hearings and issued a lengthy written decision on the question of who were members of ConnectU at

18    the time the Massachusetts action was filed. The Massachusetts court's decision, and the record in

19    this action, show all of the following:

20        • ConnectU was formed as an LLC under Delaware law in April of 2004. Although the

21    members of an LLC *may* be specified in the formation documents, there is no requirement to do so.

22    In ConnectU's case, its formation documents did not identify any members.

23        • At the time the LLC was formed, the Winklevoss brothers and Narendra were more

24    focused on launching the ConnectU website than on legal formalities, and the question of who was

25    or was not to be a member of the LLC was given little consideration. Nevertheless, there was at

26    least some general understanding that the Winklevoss brothers would be members, and that

27    Narendra would not. Narendra was, however, fully involved in developing the ConnectU website.

28

4

1    • In August of 2005, an Operating Agreement was executed for the LLC. Under the terms of

2    that agreement, Narendra and the others were all deemed to be founding members of the LLC,

3    retroactive to the date of its formation. Such retroactive agreements are permissible and valid under

4    Delaware law.

5    • Although the Massachusetts court found the retroactive provision of the Operating

6    Agreement to be "admittedly enforceable under Delaware law," it concluded that the existence of

7    that agreement had no bearing on the question of who were members of the LLC at the time the

8    complaint was filed for the purposes of diversity jurisdiction. The court reasoned that the existence

9    or non-existence of diversity had to be analyzed under a "snapshot" of the "facts as they existed" on

10   the day the complaint was filed, and that the Operating Agreement, formed nearly one year later,

11   was therefore irrelevant.

12   • For purposes of its diversity jurisdiction analysis, therefore, the Massachusetts court

13   concluded that ConnectU had *no* members as of the date the Massachusetts complaint was filed.

14   That conclusion, however, in no way undermines the validity of the Operating Agreement nor does it

15   change the underlying facts that Narendra was directly involved with the development of the

16   ConnectU website from the outset.

17   • The Massachusetts court expressly noted that Narendra's declaration in that action was not

18   necessarily "completely contradictory" to the response to Interrogatory No. 14. Indeed, the response

19   to Interrogatory No. 14 refers specifically to the Operating Agreement, which made Narendra (and

20   the others) members of the LLC *retroactively.* Narendra's declaration in the Massachusetts

21   proceedings, in contrast, at least arguably is neither inaccurate nor inconsistent, because it asserts

22   only that *as of* the date the complaint was filed, long *before* the Operating Agreement with its

23   retroactive provisions came into being, Narendra was not a member. The Massachusetts court

24   ultimately applied exactly such a snapshot in its jurisdictional analysis, albeit with the effect of

25   concluding that ConnectU had *no* members, rather than only concluding that Narendra was not a

26   member as ConnectU had urged.

27

28

### III. DISCUSSION

A. Proceedings in Superior Court

Facebook asserts that defendants committed fraud and proffered false testimony in this action prior to its removal from Superior Court. It is not entirely clear, however, what Facebook contends was false with respect to any of the factual positions taken by defendants in discovery responses or in pleadings while the case was pending in that forum. It seems that Facebook may be arguing it was "false" for Narendra to claim to have been a member of ConnectU from its inception, given the evidence that he was *not* considered a member at the time the LLC was formed, and was never actually made a member until the Operating Agreement was executed in August of 2005. The response to Interrogatory No. 14, however, expressly referenced the Operating Agreement and Facebook has not challenged the propriety of its retroactivity under Delaware law.[5]

Facebook also seems to be arguing that defendants "tricked" the Superior Court into granting the motion to quash based on the argument that they had acted only as "members" of ConnectU. There are at least two problems with this argument. First, because the Superior Court granted the motion to quash without explaining its reasoning, it would be entirely speculative to conclude that it did so based on the argument that defendants acted solely on behalf of ConnectU, given that ConnectU had advanced other independent arguments as to why jurisdiction did not exist. Second, even assuming the Superior Court did accept that argument, Facebook has not shown that ConnectU did anything sanctionable to obtain such a result. The facts presented by ConnectU were essentially true. Although the legal formalities necessary to make the Winklevosses and Narendra actual members of ConnectU did not take place until the retroactive Operating Agreement was executed,

---

[5] Facebook points to the fact that other discovery responses asserted that the Winkelvosses and Narendra acted as members of ConnectU without expressly referencing the Operating Agreement. It is not clear why Facebook deems this significant, given that the response to Interrogatory No. 14 set out the basis of the membership claim.

United States District Court

For the Northern District of California

1   that does not change the fact that they were at all times acting on behalf of ConnectU.  The legal

2   authority presented by ConnectU has never been expressly overruled.[6]

3       Finally, Facebook appears to be making at least some argument that it was improper for any

4   of the defendants to argue that they were acting as members of ConnectU during the summer of

5   2004 given that the Operating Agreement was not executed until the fall of 2005.  The fact that

6   defendants may have failed to formalize their legal status until after the fact does not render their

7   contentions that they were "members" in 2004 sanctionable.

8

9       B.  Discovery obligations

10      Facebook asserts that Narendra has "admitted" that he answered and verified written

11  discovery without reviewing the questions asked.  The testimony on which Facebook relies,

12  however, shows only that Narendra did not have the actual form interrogatories in front of him at the

13  time he signed the responses.  Narendra stated that, "the questions are in a completely different

14  document," thereby implying that he had in fact seen the questions at some point in time.  The Court

15  sees no reason to presume that there was any impropriety in the process by which Narendra, with the

16  assistance of his lawyers, responded to the written discovery.  That he may have been provided a

17  final version of the answers to verify without having the questions in front of him at that particular

18  moment does not establish that there was anything reckless or cavalier in Narendra's approach to

19  complying with his discovery obligations.

20      Facebook also suggests that ConnectU failed to produce a few documents in this proceeding

21  that it later offered as evidence in the Massachusetts case.  In the course of extensive discovery, it is

22  not unusual for documents to turn up that were not produced initially.  In appropriate circumstances,

23

24      [6] As mentioned above, ConnectU's opposition to this motion fully acknowledges that
    the fact that individuals may have acted on behalf of an entity does not shield them from
    personal jurisdiction in the tort context.  Moreover, the opposition expressly states that it
25  came to this understanding when it reviewed Facebook's opposition to the motion to quash in
    Superior Court.  Indeed, ConnectU contends it abandoned the argument by making no
26  reference to it in the reply brief in support of the motion to quash.  It is troubling that
    defendants presented the same argument to this Court in connection with the motion to
27  dismiss of Winston Williams and Pacific Northwest Software notwithstanding their assertion
    that they concluded it was not tenable upon review of Facebook's opposition to the motion to
28  quash.

7

1  sanctions can be imposed where a failure to produce documents appears to reflect a willful

2  indifference to complying with discovery obligations, rather than mere inadvertence.  Here,

3  Facebook has not shown there is any reason to believe that the documents at issue were not

4  produced earlier through any sanctionable neglect.

5

6      C.  Proceedings in Massachusetts

7      Facebook argues that ConnectU attempted to "manufacture" diversity jurisdiction in

8  Massachusetts by recanting on the statements it made here that Narendra was a "member" of

9  ConnectU from its inception.  As reflected above, the positions taken by ConnectU here and in

10  Massachusetts were not *wholly* irreconcilable.   Even assuming, however, that ConnectU exceeded

11  the bounds of reasonable advocacy in the arguments and evidence it submitted in Massachusetts ,

12  that is a matter for that court to evaluate and address as it sees fit.  It is worth noting, however, that

13  the Massachusetts court ultimately *agreed*, albeit for different reasons, that Narendra was *not*  a

14  member of ConnectU at the relevant time for purposes of jurisdiction, but the court went on to

15  conclude it lacked diversity jurisdiction in any event.

16

17

18                          IV.  CONCLUSION

19      For the reasons set forth above the motion for sanctions is denied.

20

21  IT IS SO ORDERED.

22  Dated: November 30, 2007

23                                          RICHARD SEEBORG
                                            United States Magistrate Judge

24

25

26

27

28

# EXHIBIT C

United States District Court
For the Northern District of California

1
2
3
4
5
6
7                    IN THE UNITED STATES DISTRICT COURT

8                 FOR THE NORTHERN DISTRICT OF CALIFORNIA

9                            SAN JOSE DIVISION

10   The Facebook, Inc., et al.,                NO. C 07-01389 JW

11              Plaintiffs,              **JUDGMENT ENFORCING SETTLEMENT
                                         AGREEMENT**
12        v.

13   ConnectU, Inc., et al.,

14              Defendants.
     _____/

15        Pursuant to the Court's June 25, 2008 Order Granting Plaintiffs' Confidential Motion to

16   Enforce the Settlement Agreement (docket item no. 461), the parties appeared before the Court on

17   July 2, 2008 to show cause why a judgment should not be entered.  Based on the papers submitted

18   and oral arguments of counsel,

19        JUDGMENT IS ENTERED ENFORCING "THE TERM SHEET & SETTLEMENT

20   AGREEMENT" AS FOLLOWS:

21        (1)    The Facebook, Inc. and Mark Zuckerberg:

22               (a)    Pursuant to Paragraphs 4 and 7 of the Agreement, unless otherwise ordered by

23                      the Court, on or before **August 4, 2008**, The Facebook, Inc. shall deposit with

24                      the Master, the amount of cash and the certificates representing the amount of

25                      The Facebook, Inc. common shares stated in Paragraph 7 of the Agreement,

26                      endorsed for transfer.  The following legend shall appear on certificates of

27                      The Facebook, Inc. common stock issued pursuant to this Judgment:

28

THE SHARES REPRESENTED BY THIS CERTIFICATE HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED.  THEY MAY NOT BE SOLD, OFFERED FOR SALE, PLEDGED OR HYPOTHECATED IN THE ABSENCE OF A REGISTRATION STATEMENT IN EFFECT WITH RESPECT TO THE SECURITIES UNDER SUCH ACT OR AN OPINION OF COUNSEL REASONABLY SATISFACTORY TO THE ISSUER THAT SUCH REGISTRATION IS NOT REQUIRED, OR UNLESS SOLD PURSUANT TO RULE 144 OF SUCH ACT.

THE SHARES REPRESENTED BY THIS CERTIFICATE ARE SUBJECT TO AN AGREEMENT WITH REGARD TO THE VOTING OF SUCH SHARES, AS PROVIDED IN THE CERTAIN TERM SHEET & SETTLEMENT AGREEMENT PURSUANT TO WHICH SUCH SHARES WERE ORIGINALLY ISSUED.  THE HOLDERS OF SUCH SHARES ARE ENTITLED TO THE SAME ANTI-DILUTION RIGHTS AFFORDED THE ISSUER'S SERIES D PREFERRED STOCK, AS PROVIDED IN SUCH TERM SHEET & SETTLEMENT AGREEMENT.   A COPY OF SUCH TERM SHEET & SETTLEMENT AGREEMENT IS ON FILE IN THE OFFICE OF THE SECRETARY OF THE ISSUER.

(b)  Pursuant to Paragraphs 2 and 4 of the Agreement, on or before **12 noon on July 9, 2008**, The Facebook, Inc. and Mark Zuckerberg shall submit to the Court for approval a proposed form of release.  Upon approval by the Court, the release shall be signed by The Facebook, Inc. and Mark Zuckerberg, and shall have attached to it corporate authority given to the corporate signatory and shall be notarized as to each signatory and shall be immediately deposited with the Master;

(c)  Pursuant to Paragraphs 2 and 4 of the Agreement, unless otherwise ordered by the Court, on or before **August 4, 2008**, a legally sufficient dismissal with prejudice of all cases by and between the parties pending as of the date of the Agreement.[1]  The dismissal shall recite that each party to the respective litigation shall bear their own attorney fees and costs.

---

[1]  The other two cases are <u>ConnectU, LLC v. Facebook, Inc., et al.</u>, Case No. 1:04-cv-11923-DPW, currently on appeal to the First Circuit Court of Appeals; and <u>ConnectU, Inc., et al. v. Facebook, Inc., et al.</u>, Case No. 1:07-cv-10593-DPW, currently pending in the District of Massachusetts.

(2) ConnectU Inc., Cameron Winklevoss, Tyler Vinklevoss, and Divya Narendra:

    (a) Pursuant to Paragraphs 4 and 7 of the Agreement, unless otherwise ordered by the Court, on or before **August 4, 2008**, ConnectU Inc. shall deposit with the Master all shares of ConnectU Inc., endorsed for transfer. To the extent the parties to the Agreement do not own any shares of ConnectU Inc., to fulfill the obligation of the transfer of "all ConnectU stock," the parties to the Agreement shall take such actions in their respective corporate and individual capacities as are necessary to effect the deposit with the Master of all shares of ConnectU stock;

    (b) Pursuant to Paragraphs 2 and 4 of the Agreement, on or before **12 noon on July 9, 2008**, ConnectU, Inc., Cameron Winklevoss, Tyler Vinklevoss and Divya Narendra shall submit to the Court for approval a proposed form of release. Upon approval by the Court, the release shall be signed by these parties and shall have attached to it corporate authority given to the corporate signatory and shall be notarized as to each signatory and shall be immediately deposited with the Master;

    (c) Pursuant to Paragraphs 2 and 4 of the Agreement, unless otherwise ordered by the Court, on or before **August 4, 2008**, a legally sufficient dismissal with prejudice of all cases by and between the parties pending as of the date of the Agreement. The dismissal shall recite that each party to the respective litigation shall bear their own attorney fees and costs.

(3) Upon further order of the Court, the parties shall deposit with the Master such other and further things which will facilitate the orderly exchange of the consideration and shall do the things ordered by the Court to ensure the operational integrity of the business entities that are parties to the Agreement.

1    (4)    The deposits being made with the Master by the parties pursuant to this Judgement

2    shall be transferred out of the deposit by the Master only upon further Order of the

3    Court in enforcement of the Agreement.

4    The Court retains jurisdiction to enforce this Judgment.

5

6    Dated: July 2, 2008

7    JAMES WARE
     United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
For the Northern District of California

4

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Chester Wren-Ming Day cday@orrick.com
D. Michael Underhill MUnderhill@BSFLLP.com
David A. Barrett dbarrett@bsfllp.com
Evan A. Parke eparke@bsfllp.com
George Hopkins Guy hopguy@orrick.com
I. Neel Chatterjee nchatterjee@orrick.com
Jonathan M. Shaw jshaw@bsfllp.com
Kalama M. Lui-Kwan klui-kwan@fenwick.com
Monte M.F. Cooper mcooper@orrick.com
Scott Richard Mosko scott.mosko@finnegan.com
Sean Alan Lincoln slincoln@Orrick.com
Steven Christopher Holtzman sholtzman@bsfllp.com
Theresa Ann Sutton tsutton@orrick.com
Tyler Alexander Baker Tbaker@fenwick.com
Valerie Margo Wagner valerie.wagner@dechert.com
Yvonne Penas Greer ygreer@orrick.com

Dated: July 2, 2008                    Richard W. Wieking, Clerk


By:   /s/ JW Chambers
      Elizabeth Garcia
      Courtroom Deputy

# EXHIBIT D

STEVEN C. HOLTZMAN (State Bar No. 144177)
  sholtzman@bsfllp.com
BOIES, SCHILLER & FLEXNER LLP
1999 Harrison Street, Suite 900
Oakland, CA 94612
Telephone: (510) 874-1000
Facsimile: (510) 874-1460

D. MICHAEL UNDERHILL (*pro hac vice*)
  munderhill@bsfllp.com
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue NW
Washington, D.C. 20015
Telephone: (202) 237-2727
Facsimile: (202) 237-6131

Attorneys for Defendant
CONNECTU, INC.

ORIGINAL
FILED

08 JUL 30 PM 2: 46

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA S.J.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THE FACEBOOK, INC. and MARK ZUCKERBERG, | Case No. 5:07-CV-01389-JW |
| Plaintiffs, | **NOTICE OF APPEAL BY CONNECTU, INC.** |
| v. | |
| CONNECTU, INC. (formerly known as CONNECTU, LLC), PACIFIC NORTHWEST SOFTWARE, INC., WINSTON WILLIAMS, and WAYNE CHANG, | |
| Defendants. | |

Notice is hereby given that CONNECTU, INC., defendant in the above named case, hereby appeals to the United States Court of Appeals for the Ninth Circuit from the final Judgment Enforcing Settlement Agreement (Docket No. 476) entered in this action on July 2, 2008, and all related orders including but not limited to the June 25, 2008, Order Granting Plaintiffs' Confidential Motion To Enforce The Settlement Agreement (Docket No. 461); and the June 10, 2008, Order Granting In Part and Denying In Part Motions Posted As Docket Items Nos. 366, 374 and 393 (Docket No. 428).

July 30, 2008

Respectfully submitted,

BOIES, SCHILLER & FLEXNER LLP

*Steven C. Holtzman*

Steven C. Holtzman

*Attorneys for Defendant ConnectU, Inc.*

STEVEN C. HOLTZMAN (State Bar No. 144177)
  sholtzman@bsfllp.com
BOIES, SCHILLER & FLEXNER LLP
1999 Harrison Street, Suite 900
Oakland, CA 94612
Telephone: (510) 874-1000
Facsimile: (510) 874-1460

D. MICHAEL UNDERHILL (*pro hac vice*)
  munderhill@bsfllp.com
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue NW
Washington, D.C. 20015
Telephone: (202) 237-2727
Facsimile: (202) 237-6131

Attorneys for Defendant
CONNECTU, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| THE FACEBOOK, INC. and MARK ZUCKERBERG,<br><br>                    Plaintiffs,<br><br>          v.<br><br>CONNECTU, INC. (formerly known as CONNECTU, LLC), PACIFIC NORTHWEST SOFTWARE, INC., WINSTON WILLIAMS, and WAYNE CHANG,<br><br>                    Defendants. | Case No. 5:07-CV-01389-JW<br><br>**REPRESENTATION STATEMENT OF CONNECTU, INC. PURSUANT TO NINTH CIRCUIT RULE 3-2** |

ConnectU, Inc. files this Representation Statement in accordance with Ninth Circuit Rule 3-2. The parties to the suit and their respective counsel, including their contact information, are as follows:

**Parties:**

The Facebook, Inc. (plaintiff)
Mark Zuckerberg (plaintiff)

**Counsel:**

I. Neel Chatterjee (SBN 173985)
Monte Cooper (SBN 196746)
Theresa A. Sutton (SBN 211857)
Yvonne P. Greer (SBN 214072)
ORRICK, HERRINGTON
& SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025
Telephone: 650-614-7400
Facsimile: 650-614-7401

**Party:**

ConnectU, Inc. (formerly known as
ConnectU, LLC) (defendant)

**Counsel:**

Steven C. Holtzman (SBN 144177)
BOIES SCHILLER & FLEXNER LLP
1999 Harrison Street, Suite 900
Oakland, CA 94612
Telephone: (510) 874-1000
Facsimile: (510) 874-1460

D. Michael Underhill (*pro hac vice*)
Jonathan M. Shaw (*pro hac vice*)
Evan A. Parke (*pro hac vice*)
BOIES SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue NW
Washington, D.C. 20015
Telephone: (202) 237-2727
Facsimile: (202) 237-6131

David A. Barrett (*pro hac vice*)
BOIES SCHILLER & FLEXNER LLP
575 Lexington Avenue, 7th Floor
New York, NY 10022
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

Scott R. Mosko (SBN106070)
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, L.L.P.
Stanford Research Park
3300 Hillview Avenue
Palo Alto, California 94304
Telephone: (650) 849-6600
Facsimile: (650) 849-6666

**Parties:**

Pacific Northwest Software, Inc.
(defendant)
Wayne Chang (defendant)
Winston Williams (defendant)

**Counsel:**

Scott R. Mosko (SBN106070)
FINNEGAN, HENDERSON,
FARABOW, GARRETT
& DUNNER, L.L.P.
Stanford Research Park
3300 Hillview Avenue
Palo Alto, California 94304
Telephone: (650) 849-6600
Facsimile: (650) 849-6666

July 30, 2008

**Parties:**

Cameron Winklevoss (proposed
intervenor)
Tyler Winklevoss (proposed intervenor)
Divya Narendra (proposed intervenor)

**Counsel:**

Mark A. Byrne (SBN116657)
BYRNE & NIXON LLP
800 West Sixth Street, Suite 430
Los Angeles, California 90017
Telephone: (213) 620-8003
Fascimile: (213) 620-8013

Sean F. O'Shea (*pro hac vice*)
O'SHEA PARTNERS LLP
90 Park Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 682-4426
Facsimile: (212) 682-4437

Respectfully submitted,

BOIES, SCHILLER & FLEXNER LLP

Steven C. Holtzman

*Attorneys for Defendant ConnectU, Inc.*