1              UNITED STATES DISTRICT COURT

2            NORTHERN DISTRICT OF CALIFORNIA

3                  SAN JOSE DIVISION

4

5

    THE FACEBOOK, INC. AND      )  C-07-01389 JW
6   MARK ZUCKERBERG,            )
                                )  SAN JOSE, CALIFORNIA
7              PLAINTIFFS,       )
                                )  AUGUST 6, 2008
8          VS.                   )
                                )  PAGES 1-73
9   CONNECTU, INC. (FORMERLY    )
    KNOWN AS CONNECTU, LLC),    )
10  PACIFIC NORTHWEST           )
    SOFTWARE, INC., WINSTON     )
11  WILLIAMS, AND WAYNE         )
    CHANG,                       )
12                              )
               DEFENDANT.       )
13  _____)

14

                 TRANSCRIPT OF PROCEEDINGS
15         BEFORE THE HONORABLE JAMES WARE
              UNITED STATES DISTRICT JUDGE
16

17  A P P E A R A N C E S:

18  FOR THE PLAINTIFF:  ORRICK, HERRINGTON & SUTCLIFFE
                        BY:  I. NEEL CHATTERJEE,
19                           MONTE M.F. COOPER, AND
                             YVONNE GREET
20                      1000 MARSH ROAD
                        MENLO PARK, CALIFORNIA  94025
21

22        APPEARANCES CONTINUED ON NEXT PAGE

23

24  OFFICIAL COURT REPORTER: LEE-ANNE SHORTRIDGE, CSR, CRR
                             CERTIFICATE NUMBER 9595
25

                                                      1

APPEARANCES (CONTINUED)

FOR THE DEFENDANT:   BOIES, SCHILLER & FLEXNER, LLP
                     BY:  D. MICHAEL UNDERHILL
                     5301 WISCONSIN AVENUE, N.W.
                     WASHINGTON, D.C.  20015


FOR INTERVENOR:      O'SHEA PARTNERS, LLP
                     BY:  SEAN F. O'SHEA AND
                          MARK A. WEISSMAN
                     90 PARK AVENUE, 20TH FLOOR
                     NEW YORK, NEW YORK  10016

```
 1    SAN JOSE, CALIFORNIA              AUGUST 6, 2008
 2                    P R O C E E D I N G S
 3                    (WHEREUPON, COURT CONVENED AND THE
 4    FOLLOWING PROCEEDINGS WERE HELD:)
 5                    THE CLERK:  CALLING CASE NUMBER 07-01389,
 6    THE FACEBOOK, INC., VERSUS CONNECTU, INC., ET AL,
 7    ON FOR NON-PARTIES' MOTION TO INTERVENE, AND
 8    DEFENDANT'S MOTION TO STAY EXECUTION OF JUDGMENT
 9    PENDING APPEAL.
10                    COUNSEL, PLEASE COME FORWARD AND STATE
11    YOUR APPEARANCES.
12                    MR. O'SHEA:  YOUR HONOR, SEAN O'SHEA AND
13    MIKE WEISSMAN FOR APPLICANT INTERVENORS.
14                    MR. UNDERHILL:  YOUR HONOR, MICHAEL
15    UNDERHILL FOR CONNECTU, THE DEFENDANT.
16                    MR. CHATTERJEE:  YOUR HONOR, NEEL
17    CHATTERJEE FOR MARK ZUCKERBERG AND FACEBOOK.
18                    AND WITH ME IS MONTE COOPER AND YVONNE
19    GREER.
20                    MR. FISHER:  AND GEORGE FISHER.
21                    THE COURT:  I'M SORRY.  I DID NOT GET
22    YOUR APPEARANCE, PLEASE.  YOU'RE NEW TO THIS, SO
23    CAN YOU GIVE ME YOUR NAME AGAIN?
24                    MR. O'SHEA:  YES, YOUR HONOR, SEAN
25    O'SHEA.
```

The timestamps in the left margin:
16:44:12 (line 4)
16:44:12 (line 5)
16:44:27 (line 6)
16:44:27 (line 7)
16:44:34 (line 8)
16:44:35 (line 9)
16:44:36 (line 10)
16:44:39 (line 11)
16:44:40 (line 12)
16:44:42 (line 13)
16:44:45 (line 14)
16:44:47 (line 15)
16:44:50 (line 16)
16:44:51 (line 17)
16:44:55 (line 18)
16:44:59 (line 19)
16:44:59 (line 20)
16:45:01 (line 21)
16:45:02 (line 22)
16:45:04 (line 23)
16:45:06 (line 24)
16:45:09 (line 25)

THE COURT:  MR. O'SHEA.

MR. O'SHEA:  AND I'M HERE WITH MARK
WEISSMAN.

THE COURT:  MR. WEISSMAN.

I HAVE TWO MATTERS, MAYBE MORE, BUT I HAD
TWO THAT I HAD INTENDED TO GIVE YOU SOME TIME TO
ADDRESS.

THE FIRST IS THIS MOTION TO INTERVENE,
AND THEN THE SECOND IS A MOTION TO STAY EXECUTION
OF THE JUDGMENT.

PERHAPS IT WOULD FORESHORTEN YOUR
ARGUMENT IF I COMMENT ON THIS FIRST MOTION AND TELL
YOU WHAT I HAVE AS AN INTENDED DECISION.

IT DOES SEEM -- PLEASE BE SEATED.

IT DOES SEEM TO THE COURT THAT THIS IS A
CIRCUMSTANCE WHERE THE TWO INDIVIDUALS WHO SEEK TO
INTERVENE IN THE CASE ARE IDENTIFIED IN INTEREST
SUFFICIENTLY WITH CONNECTU THAT THE COURT IS
DISPOSED TO ALLOW THEM TO INTERVENE IN THE LAWSUIT.

I HAVEN'T DONE THE INDEPENDENT LOOK THAT
I WOULD OTHERWISE WANT TO DO, BUT MY STAFF ADVISES
ME THAT THESE INDIVIDUALS WERE PREVIOUSLY BEFORE
THE COURT IN THIS ACTION AND SOUGHT TO BE DISMISSED
FROM THE ACTION ON THE GROUNDS THAT THE COURT
LACKED PERSONAL JURISDICTION OVER THEM.

4

I HAVEN'T LOOKED TO SEE WHETHER OR NOT
THEY ARE LITIGANTS BEFORE THE OTHER CASE THAT WAS
PENDING BETWEEN THESE PARTIES WHICH WAS INCLUDED IN
THE SETTLEMENT THAT THEY REACHED.

BUT IT CERTAINLY IS CLEAR TO THE COURT
THAT THEY HAVE A SUFFICIENT INTEREST IN THIS MATTER
THAT THEY SHOULD BE RECOGNIZED AS PARTIES TO THE
EXTENT THAT THEIR INTEREST MIGHT BE AFFECTED BY THE
CONDUCT OF THE COURT.

AND SO THAT WOULD BE THE FIRST THING I'D
WISH TO HAVE ARGUED IS WHETHER OR NOT THERE'S A
REASON TO NOT PERMIT THEM TO INTERVENE.

FOR ME, QUITE FRANKLY, THOUGH, THE MORE
IMPORTANT QUESTION IS WHETHER OR NOT THEY SHOULD BE
PERMITTED TO INTERVENE FOR ALL PURPOSES AND TO FILE
THE PROFFERED COMPLAINT IN INTERVENTION.

THE COMPLAINT IN INTERVENTION SEEKS TO
PLEAD A CLAIM THAT IS -- THAT HAS -- THAT IS
PARALLEL TO THE CASE THAT, IN THE COURT'S VIEW, IS
SUBSUMED BY THE JUDGMENT IN THIS CASE, AND IN THE
COURT'S VIEW SEEKS TO REOPEN, FOR LITIGATION
AGAINST -- I'M NOT SURE WHO THE DEFENDANT IN
INTERVENTION IS.  IT SEEMS THAT THAT'S UNCLEAR TO
ME -- BUT SEEKS TO REOPEN INTO LITIGATION IN A NEW
PLEADING WITH NUANCES AND DISCOVERY AND PRESUMABLY

1   TRIALS, MATTERS THAT ARE -- OR AS THE COURT IS

2   CONCERNED, COVERED BY THE JUDGMENT.

3          AND SO IT IS MY INTENTION TO GRANT THE

4   MOTION TO INTERVENE, BUT TO ALLOW THE INTERVENTION

5   FOR PURPOSES OF THE APPEAL AND FOR PURPOSES OF ANY

6   POST-JUDGMENT PROCEEDINGS, SO THAT IF IT -- IF THE

7   CASE PROCEEDS ON APPEAL TO THE POINT WHERE IT'S

8   REMANDED BACK TO THIS COURT FOR FURTHER

9   PROCEEDINGS, THEY WOULD BE PARTIES FOR THOSE

10  FURTHER PROCEEDINGS, AND THERE MAY BE POST-JUDGMENT

11  MATTERS THAT COME BEFORE THIS COURT THAT ARE STILL

12  WITHIN THE JURISDICTION OF THE COURT WHILE THE CASE

13  IS ON APPEAL.

14          I'VE BEEN ADVISED THAT THERE'S AN APPEAL.

15  AGAIN, I HAVEN'T SEEN THE NOTICE OF THE APPEAL AND

16  I HAVEN'T -- I'VE NOT INFORMED MYSELF FURTHER WITH

17  RESPECT TO THAT.

18          SO THAT'S THE OTHER INTENT THAT I WANT TO

19  DISCLOSE IS AN INTENT TO PERMIT INTERVENTION, BUT

20  FOR A LIMITED PURPOSE.

21          THE QUESTION THAT I ASKED MYSELF, THOUGH,

22  IN THIS UNUSUAL PROCESS IS, WHAT IS -- WHAT

23  PROCEDURAL DEVICE DOES THE COURT NEED TO USE TO

24  RECOGNIZE INTERVENTION FOR THIS LIMITED PURPOSE?

25  HOW DO I RECOGNIZE IT?

16:49:33  1          THERE'S NO COMPLAINT IN INTERVENTION THAT

16:49:36  2  DOES IT.  IT SIMPLY SEEMS TO BE AN ORDER PERMITTING

16:49:41  3  THAT INTERVENTION WITH THE IDEA THAT IF THE CASE

16:49:44  4  RETURNS TO A LITIGATED STATUS, THEN I NEED TO SORT

16:49:48  5  OUT WHETHER THEY ARE INTERVENING AS PLAINTIFFS OR

16:49:51  6  DEFENDANTS AND WHO ARE THE PARTIES AGAINST WHOM

16:49:54  7  THEY WOULD BE PURSUING THEIR CLAIMS.

16:49:56  8          LET ME PAUSE WITH THOSE INTRODUCTORY

16:49:58  9  COMMENTS AND INVITE MR. O'SHEA OR OTHERS TO COMMENT

16:50:01 10  ON THE COURT'S INTENDED DECISION.

16:50:06 11          MR. O'SHEA:  THANK YOU, YOUR HONOR.

16:50:07 12          FIRST OF ALL, JUDGE, THANK YOU FOR

16:50:09 13  HEARING US ON SHORT NOTICE.  WE APPRECIATE IT AND

16:50:11 14  WE ARE -- YOU'RE CORRECT THAT WE'RE NEW TO THE FRAY

16:50:15 15  HERE.

16:50:15 16          THIS INTERVENTION MOTION, YOUR HONOR, IS

16:50:17 17  STRAIGHTFORWARD.  WE'RE HERE ON BEHALF OF ACTUALLY

16:50:20 18  THREE PERSONS SEEKING INTERVENTION.  THE APPLICANT

16:50:22 19  INTERVENORS ARE TYLER AND CAMERON WINKLEVOSS, WHO

16:50:28 20  ARE BROTHERS, AND DIVYA NARENDRA, AS YOUR HONOR IS

16:50:31 21  AWARE, THE INDIVIDUALS WHO SIGNED THE TERM SHEET

16:50:34 22  WHICH YOUR HONOR HELD ENFORCEABLE AND THAT IS GOING

16:50:36 23  TO BE THE SUBJECT OF AN APPEAL.

16:50:38 24          ONE OF THE TERMS OF THAT TERM SHEET IS

16:50:40 25  THAT FACEBOOK GETS OWNERSHIP OF CONNECTU STOCK.

16:50:44  1          UNTIL VERY RECENTLY, JUDGE, MY CLIENTS

16:50:47  2    BELIEVED, AND HAD A SOUND BASIS FOR THAT BELIEF,

16:50:50  3    THEY BELIEVED THAT THEIR RIGHTS ON APPEAL COULD BE

16:50:52  4    ADEQUATELY PROTECTED BY CONNECTU SINCE YOUR HONOR

16:50:55  5    HAD APPOINTED A SPECIAL MASTER, MR. FISHER, WHO IS

16:50:59  6    HERE TODAY, TO MAINTAIN THE STATUS QUO, AND WE WERE

16:51:02  7    AT THAT POINT HAPPY WITH THAT, WITH THAT STATE OF

16:51:04  8    EVENTS.

16:51:05  9          SINCE THEN, YOUR HONOR, FACEBOOK HAS BEEN

16:51:07  10   ASSERTING THAT IT WILL TAKE CONTROL OF CONNECTU'S

16:51:11  11   LITIGATIONS ONCE IT TAKES CONTROL OF CONNECTU'S

16:51:14  12   STOCK, AND WE'VE BECOME VERY CONCERNED THAT WHILE

16:51:17  13   CONNECTU'S APPEAL IS PENDING IN THE NINTH CIRCUIT,

16:51:20  14   THAT FACEBOOK WILL TRY TO ASSUME CONTROL OF

16:51:23  15   CONNECTU AND ABANDON OR OTHERWISE HAMPER OR IMPAIR

16:51:26  16   THE APPEAL.

16:51:27  17          I UNDERSTAND FROM MR. UNDERHILL, WHO

16:51:29  18   REPRESENTS CONNECTU, THAT HE HAS ASKED FOR

16:51:31  19   ASSURANCES FROM MR. CHATTERJEE, FACEBOOK'S COUNSEL,

16:51:35  20   THAT MY CLIENTS' RIGHTS WILL NOT BE -- AND

16:51:38  21   CONNECTU'S RIGHTS WILL NOT BE IMPAIRED ON APPEAL,

16:51:40  22   THAT THE APPEAL WILL BE ALLOWED TO GO FORWARD.

16:51:43  23          BUT FACEBOOK HAS BEEN UNWILLING TO AGREE

16:51:45  24   TO GIVE THOSE ASSURANCES.

16:51:46  25          AND, INDEED, IN THEIR OPPOSITION TO THE

STAY MOTION, JUDGE, THEY'VE NOW SAID THAT THE

APPEAL IS, IN FACT, MOOT. THEY'VE TAKEN THAT

POSITION.

SO THAT'S WHY WE'RE HERE TODAY, JUDGE.

WE NEED TO INTERVENE. WE NEEDED TO INTERVENE ON

SHORT NOTICE SINCE MY CLIENTS NEED REALLY TO

PRESERVE THEIR RIGHTS ON APPEAL.

AND TO ADDRESS YOUR HONOR'S CONCERNS

ABOUT TRYING TO REOPEN OR RELITIGATE THE UNDERLYING

MATTER, THAT'S NOT OUR PURPOSE BEFORE THE COURT

HERE TODAY.

WHAT OUR PURPOSE IS, IS TO GET THE

COMPLAINT BEFORE THE COURT SO THAT WE CAN PRESERVE

OUR RIGHT TO APPEAL, AND THAT'S WHAT WE'D LIKE TO

DO.

INTERVENTION IS APPROPRIATE, YOUR HONOR,

AND AS YOU KNOW, THE STANDARD FOR, FOR APPLICATION

OF INTERVENTION IS VERY LIBERAL. OUR -- IT'S

APPROPRIATE HERE UNDER BOTH SECTIONS, SUBSECTIONS

OF RULE 24.

FIRST OF ALL, FOR AN INTERVENTION AS A

RIGHT, WE MEET ALL FOUR PRONGS OF THE TEST: ONE,

WE'RE TIMELY; SECOND, WE HAVE A SIGNIFICANTLY

PROTECTABLE INTEREST; THIRD, THE DISPOSITION OF

THIS ACTION, AS A PRACTICAL MATTER, COULD IMPAIR

OUR INTERESTS; AND, FOURTH, OUR INTERESTS NOW ARE
NOT ADEQUATELY PROTECTED OR MAY NOT BE ADEQUATELY
PROTECTED BY CONNECTU.

MY CLIENTS MEET ALL FOUR PRONGS OF THIS
TEST.

AND FACEBOOK, FOR ITS PART IN ITS PAPERS,
HAS NOT CONTESTED THE SECOND OR THIRD PRONG.

SO MY CLIENTS HAVE, AS TO PRONG 2, A
CLEAR PROTECTABLE INTEREST IN THEIR OWNERSHIP,
THEIR PROPERTY INTEREST IN CONNECTU.  THEY HAVE AN
INTEREST IN THE CLAIMS AGAINST FACEBOOK, AND
FACEBOOK, AGAIN, DOESN'T CHALLENGE THIS.

WE ALSO, YOUR HONOR, HAVE AN INTEREST IN
THE APPEAL IN THIS CASE.

AND FACEBOOK REALLY DOESN'T ADDRESS THAT
IN THEIR PAPERS, BECAUSE TO DO SO, I THINK, REALLY
REVEALS WHAT FACEBOOK'S TRUE PURPOSE HERE IS, AND
THAT IS TO DENY MY CLIENTS THEIR APPELLATE RIGHTS.

THE DISPOSITION OF THE ACTION, THE THIRD
PRONG, WE ALSO MEET.

YOUR HONOR, AS A PRACTICAL MATTER, THAT
WILL IMPAIR THE INTERESTS OF MY CLIENT.

YOUR HONOR'S ORDER REQUIRES THEM TO HAND
OVER THEIR STOCK TO FACEBOOK, THEIR CONNECTU STOCK
TO FACEBOOK TO EXECUTE RELEASES AND DISMISS ALL THE

ACTIONS.

SO IF YOUR HONOR'S ORDER IS UPHELD, MY CLIENTS WILL LOSE THEIR PROPERTY RIGHTS IN CONNECTU SHARES, AND THEIR INDIVIDUAL CLAIMS AGAINST FACEBOOK.

AS TO THE FOURTH PRONG, THEY -- WHETHER THE APPLICANTS' INTERESTS ARE ADEQUATELY REPRESENTED BY CONNECTU, IF FACEBOOK TAKES CONTROL, THAT WILL NOT BE THE CASE, JUDGE.

WE MEET THAT FOURTH PRONG BECAUSE OF THAT REASON, AND, AGAIN, THIS FOURTH PRONG ONLY REQUIRES A MINIMAL SHOWING.

AND A CASE THAT FACEBOOK ACTUALLY CITED IN ITS BRIEF MAKES THAT CLEAR, AND THAT'S THE UNITED MINE WORKERS CASE IN THE SUPREME COURT, AND IT SAYS THAT THE MINIMAL SHOWING IS THAT MY CLIENTS' INTERESTS MAY NOT BE ADEQUATELY REPRESENTED.

AND HERE, YOUR HONOR, WE CAN DO FAR MORE THAN THAT MINIMAL SHOWING.

AS I MENTIONED, FACEBOOK IS SEEKING TO GAIN CONTROL OF THE CONNECTU SHARES.

AND WE SUSPECT, AND HAVE A STRONG BELIEF IN THAT REGARD, IT'S BECAUSE THEY HAVEN'T BEEN SUBTLE IN THEIR ATTEMPTS TO ACTUALLY TAKE CONTROL

11

OF CONNECTU AND EITHER ABANDON OR OTHERWISE IMPAIR

16:54:48  2  THE APPEAL THAT CONNECTU HAS TAKEN.

16:54:50  3          THE COURT:  SO LET ME INTERRUPT.

16:54:53  4          THE REASON I GAVE YOU MY INTENDED

16:54:54  5  DECISION IS TO NARROW THIS, AND I'M CONCERNED THAT

16:54:59  6  YOUR COMMENTS SEEM TO ARGUE AGAINST YOUR OPPONENT.

16:55:05  7  IT DOESN'T EMBRACE THE DIRECTION THAT THE COURT

16:55:08  8  INTENDS TO GO.

16:55:10  9          SO IF I GRANT YOUR INTERVENTION AND I

16:55:13 10  LIMIT IT TO -- FOR PURPOSES OF APPEAL AND

16:55:18 11  POST-JUDGMENT RELIEF, HOW ARE YOU HARMED?

16:55:21 12          MR. O'SHEA:  JUDGE, I THINK IF, IF WHAT

16:55:23 13  YOUR HONOR AND THE COURT -- IF WHAT THE COURT'S

16:55:26 14  INTENDING TO DO IS TO ALLOW MY, MY CLIENTS TO

16:55:29 15  INTERVENE FOR PURPOSES OF THE APPEAL AND

16:55:31 16  POST-JUDGMENT, I THINK THAT'S SUFFICIENT TO PROTECT

16:55:33 17  OUR INTERESTS AT THIS POINT.

16:55:35 18          AND AS I SAY, THE COMPLAINT IS NOT AN

16:55:37 19  ATTEMPT TO REOPEN, FOR EXAMPLE, LIKE THE SNYDER

16:55:39 20  CASE WHERE SOMEONE COMES IN IN A SHAM PROCEEDING

16:55:42 21  AND ATTEMPT TO RELITIGATE THIS MATTER BEFORE YOUR

16:55:44 22  HONOR.  THAT'S NOT OUR MOTIVE AT ALL.

16:55:47 23          THE COURT:  WELL, WHAT I'M -- WHAT I'M

16:55:48 24  INVITING YOU TO COMMENT NEXT ON, I GUESS, IS, FOR

16:55:52 25  PURPOSES OF MY ORDER, THEN, I WOULD NOT PERMIT YOU

|  |  |  |
|---|---|---|
| 16:55:55 | 1 | TO FILE YOUR COMPLAINT IN INTERVENTION BECAUSE I, I |
| 16:55:58 | 2 | READ IT AS OPENING UP MATTERS THAT ARE |
| 16:56:03 | 3 | PRE-JUDGMENT. |
| 16:56:03 | 4 | IT DOES NOT EMBRACE THE JUDGMENT.  IT |
| 16:56:06 | 5 | SEEMS TO ATTACK THE JUDGMENT, WHICH IS SOMETHING |
| 16:56:08 | 6 | THAT COULD HAPPEN ONCE THE JUDGMENT IS SET ASIDE. |
| 16:56:11 | 7 | IT SEEMS TO ME NECESSARY FOR THERE TO BE |
| 16:56:14 | 8 | A PROCESS BY WHICH THE JUDGMENT IS SET ASIDE BEFORE |
| 16:56:17 | 9 | THE LITIGATION OF THE EVENTS PRE-JUDGMENT CAN COME |
| 16:56:20 | 10 | BACK BEFORE THE COURT. |
| 16:56:21 | 11 | MR. O'SHEA:  I THINK YOUR HONOR IS |
| 16:56:22 | 12 | CORRECT.  I THINK THAT IF -- IF WE FIRST HAVE TO GO |
| 16:56:25 | 13 | TO THE NINTH CIRCUIT AND THE NINTH CIRCUIT HAS TO |
| 16:56:28 | 14 | RULE ON, ON YOUR HONOR'S RULING IN THE CASE ON |
| 16:56:30 | 15 | ENFORCING THE TERM SHEET, THAT -- AT LEAST WE GET |
| 16:56:34 | 16 | TO VINDICATE OUR APPELLATE RIGHTS. |
| 16:56:37 | 17 | AND THEN IF WE COME DOWN HERE AND THERE |
| 16:56:38 | 18 | ARE OTHER THINGS TO ADJUDICATE, THEN WE CAN DO THAT |
| 16:56:41 | 19 | IN FRONT OF THIS COURT. |
| 16:56:42 | 20 | BUT I THINK IT IS SUFFICIENT FOR YOUR |
| 16:56:43 | 21 | HONOR TO ALLOW US TO INTERVENE AT THIS POINT ON |
| 16:56:47 | 22 | THIS CASE FOR APPELLATE PURPOSES. |
| 16:56:49 | 23 | THE COURT:  ALL RIGHT.  LET ME ASSUME |
| 16:56:51 | 24 | THAT THAT IS WHAT I WILL DO UNTIL I AM PERSUADED BY |
| 16:56:56 | 25 | YOUR OPPONENT OTHERWISE. |

16:56:58 1        IS THERE ANYTHING MORE, INDEPENDENT OF

16:57:00 2   THE STAY QUESTION, THAT YOU WOULD WISH TO ARGUE AT

16:57:01 3   THIS TIME?

16:57:01 4        MR. O'SHEA:  WELL, JUST, YOUR HONOR, THAT

16:57:03 5   I WOULD ASK FOR TIME TO, TIME UNDER RULE 4 TO, TO

16:57:07 6   FILE OUR, OUR APPEAL, AND I THINK 14 DAYS OUGHT TO

16:57:12 7   DO IT.

16:57:12 8        THE COURT:  THANK YOU.

16:57:13 9        LET'S HEAR FROM ANYONE WHO OPPOSES THE

16:57:15 10  INTENDED DECISION OF THE COURT.

16:57:17 11       MR. CHATTERJEE:  YOUR HONOR,

16:57:20 12  RESPECTFULLY, WE DISAGREE WITH YOU ON THIS ONE.

16:57:22 13       ONE OF THE COMMENTS YOUR HONOR MADE WHEN,

16:57:24 14  WHEN YOU WERE DISCUSSING YOUR TENTATIVE RULING WAS

16:57:27 15  YOU WEREN'T SURE IF THE THREE INDIVIDUALS WERE

16:57:30 16  PARTIES TO ANY OF THE CASES.

16:57:32 17       AND YOU MIGHT RECALL, YOUR HONOR, AT THE,

16:57:35 18  AT THE MOTION TO ENFORCE HEARING, WHICH WAS THE

16:57:38 19  HEARING BEFORE THE JUDGMENT, WE HAD A DISCUSSION,

16:57:42 20  AND THE DISCUSSION WAS -- CONNECTU WAS HERE

16:57:46 21  REPRESENTED BY MR. UNDERHILL, AND THE ISSUE WAS,

16:57:49 22  DID THREE SHAREHOLDERS HAVE NOTICE OF THE MOTION

16:57:52 23  AND AN OPPORTUNITY TO OPPOSE?

16:57:54 24       THOSE THREE SHAREHOLDERS ARE THE VERY

16:57:57 25  SAME PEOPLE WHO ARE TRYING TO INTERVENE TODAY.

16:57:59  1   THEY HAVE KNOWN ABOUT THIS MOTION, THEY SUBMITTED

16:58:02  2   DECLARATIONS IN OPPOSITION ON BEHALF OF CONNECTU,

16:58:05  3   THEY SHOWED UP IN COURT IN BOSTON, YET THEY'VE MADE

16:58:08  4   THE STRATEGIC DECISION NOT TO OPPOSE THE MOTION

16:58:12  5   THEMSELVES, AND YOUR HONOR ACKNOWLEDGED THE NOTICE

16:58:14  6   ISSUE IN YOUR ORDER ENFORCING THE JUDGMENT.

16:58:17  7           THIS IS NOT SOMEONE NEW.  IT'S SOMEONE

16:58:19  8   THAT'S BEEN INVOLVED IN THIS.  THEY SIGNED THE

16:58:22  9   SETTLEMENT AGREEMENT BACK IN FEBRUARY.  THEY

16:58:23 10   PARTICIPATED THROUGHOUT THE PROCESS ON BEHALF OF

16:58:27 11   CONNECTU, AND THEY MADE A STRATEGIC DECISION NOT TO

16:58:31 12   GET INVOLVED IN OPPOSING IT THEMSELVES IN

16:58:33 13   CHALLENGING THE ENFORCEMENT.

16:58:35 14           YOUR HONOR, UNDER THAT CIRCUMSTANCE, THEY

16:58:36 15   DID NOT ACT PROMPTLY.  THEY MADE A STRATEGIC

16:58:40 16   DECISION NOT TO GET INVOLVED, AND IN THOSE

16:58:42 17   CIRCUMSTANCES, YOUR HONOR, I DON'T THINK

16:58:43 18   INTERVENTION IS PROPER.

16:58:45 19           THE COURT:  HOW IS -- HOW IS YOUR CLIENT,

16:58:48 20   OR YOUR CLIENTS, HOW ARE THEY HARMED WITH RESPECT

16:58:52 21   TO THIS MATTER IF THESE THREE INDIVIDUALS ARE

16:58:58 22   PERMITTED TO INTERVENE FOR PURPOSES OF APPEAL OR

16:59:00 23   POST-JUDGMENT PROCEEDINGS?

16:59:02 24           MR. CHATTERJEE:  WELL, FIRST, YOUR HONOR,

16:59:05 25   IT WILL DELAY THINGS OBVIOUSLY.  YOU JUST HEARD

MR. O'SHEA ASK FOR ADDITIONAL TIME.

THE SECOND ISSUE IS THAT IT WILL ALLOW FOR ADDITIONAL LITIGATION, MORE PEOPLE WE HAVE TO DEAL WITH AND THE LIKE.

OUR VIEW IS WE OWN CONNECTU.

CONNECTU IS THE ONLY PERSON WHO OPPOSED THE MOTION. WE EVEN SAID IN OUR OPPOSITION BRIEF, I MEAN IN OUR REPLY BRIEF THAT THEY WAIVED -- THEY SUBMITTED SURREPLIES WITH DECLARATIONS FROM CAMERON WINKLEVOSS, ONE OF THE PEOPLE SEEKING TO INTERVENE HERE, HAVING TO DEAL WITH THE COLLATERAL CONSEQUENCES OF ADDING ADDITIONAL PARTIES, WHICH HAS BEEN RECOGNIZED AS HARM UNDER, UNDER THE INTERVENTION CASE LAW, IS, IS SOMETHING THAT IS PREJUDICIAL. IT CAUSES DELAYS THAT WE SHOULDN'T HAVE TO FACE.

WE SIGNED AN AGREEMENT. THEY DON'T WANT TO HONOR IT. THEY STILL HAVEN'T PUT THEIR SHARES INTO THE ESCROW, OR INTO THE SPECIAL MASTER'S HANDS.

THE COURT: LET ME POKE AT IT IN A DIFFERENT WAY.

THIS IS A CIRCUMSTANCE WHERE THE THREE INDIVIDUALS, AT LEAST TWO OF THEM PERHAPS, SIGNED THE, THE DOCUMENT THAT CAME BEFORE THE COURT FOR

ENFORCEMENT.

        MR. CHATTERJEE:  ALL THREE OF THEM DID, YOUR HONOR.

        THE COURT:  ALL THREE.

        NOW, AT THE TIME THEY DID THAT, I DON'T HAVE IT IN FRONT OF ME NOW, BUT THERE WAS A QUESTION THAT CAME UP IN THE COURT'S MIND, AND I ADDRESSED IT IN MY ORDER WITH RESPECT TO THE OBLIGATION OF ALL SIGNATORIES, EVEN THOSE WHO WERE NOT PARTIES TO THE LITIGATION, TO HONOR THE AGREEMENT THAT THEY HAD MADE BECAUSE IT WAS AN OBLIGATION TO ENFORCE THE AGREEMENT ON THE PART OF ALL SIGNATORIES.

        IT SEEMS TO ME THAT EVENTUALLY IT MIGHT HAVE BECOME NECESSARY, IF THERE WAS NO VOLUNTARY COMPLIANCE, FOR THE COURT TO BRING THEM INTO THE ACTION FOR PURPOSES OF ENFORCING ITS ORDER BY WAY OF A CONTEMPT ORDER OR WHATEVER.

        AND SO I'M NOT CERTAIN I UNDERSTAND A BASIS FOR NOT RECOGNIZING THEM, FIRST AS PARTIES WHO ARE OBLIGATED TO ABIDE BY THE JUDGMENT OF THE COURT; AND AT THE SAME TIME, RECOGNIZE THEM AS PARTIES WHO MAY LEGITIMATELY ARGUE SUCCESSFULLY, OR NOT, THAT THE COURT WAS IN ERROR IN REQUIRING THEM TO TAKE THE ACTION THAT THE COURT REQUIRED THEM TO

TAKE.

　　　　MR. CHATTERJEE:  A FAIR QUESTION, YOUR
HONOR, AND I THINK THIS GOES DIRECTLY TO THE
STRATEGIC ISSUE, THE STRATEGIC DECISIONS THAT THE
INDIVIDUALS MADE.

　　　　RATHER THAN ENTERING INTO THE CASE AND,
AND MAKING THE OPPOSITIONS AT THE TIME THEY COULD
HAVE, THEY MADE THE STRATEGIC DECISION TO CHALLENGE
JURISDICTION AND NOTICE.

　　　　YOUR HONOR FOUND THAT THEY SAID IN THAT
AGREEMENT THAT THEY SIGNED THAT THEY WERE SUBJECT
TO THE JURISDICTION OF THIS COURT.

　　　　NOW, I SEE TWO SEPARATE ISSUES ASSOCIATED
WITH YOUR COMMENTS.

　　　　THE FIRST QUESTION IS, ARE THE
INDIVIDUALS SUBJECT TO THE JURISDICTION OF THIS
COURT FOR PURPOSES OF THE JUDGMENT THAT'S BEEN
ENTERED?

　　　　YOUR HONOR DECIDED THAT THEY IRREVOCABLY
SAID THEY WOULD SUBJECT THEMSELVES TO THE
JURISDICTION OF THIS COURT FOR PURPOSES OF THE
ENFORCEMENT OF THIS AGREEMENT.

　　　　THAT DOESN'T MEAN THEY NEED TO BE A PARTY
TO THIS LITIGATION.  IT MEANS THAT THEY ARE SUBJECT
TO THE JURISDICTION OF THIS COURT.

THE SECOND ISSUE IS, ARE THEY A PARTY TO
THIS CASE?

THEY ARE A PARTY TO THE CASE IN BOSTON.
THAT'S BEEN RECOGNIZED.

THEY FOUGHT JURISDICTION IN THIS CASE
PRIOR TO ENTERING INTO THE SETTLEMENT AGREEMENT.

AND THEY CHOSE NOT TO BECOME PARTIES IN
OPPOSING THE, THE OP -- IN OPPOSING THE MOTION TO
ENFORCE.

THERE'S NO NEED FOR THEM TO BE REWARDED
FOR THOSE STRATEGIC DECISIONS THAT THEY MADE.

BUT THEY ARE SEPARATE ISSUES, WHETHER
THEY'RE SUBJECT TO THE JURISDICTION OF THE COURT
AND WHETHER THEY'RE PARTIES AS IT RELATES TO THE
ENFORCEMENT OF THE CONTRACT.

THEY CHOSE NOT TO BE THE LATTER.

THE COURT:  IS THERE, IN YOUR MIND, A
DIFFERENCE BETWEEN THE OBLIGATION OF THE
INDIVIDUALS AND CONNECTU?

MR. CHATTERJEE:  IS THERE A DIFFERENCE
BETWEEN THE OBLIGATIONS OF THE INDIVIDUALS AND
CONNECTU?

YOUR HONOR, IN YOUR JUDGMENT, YOU LISTED
ALL OF THEM AS BEING ORDERED TO DO CERTAIN ACTS AND
TO EFFECTUATE WHATEVER ACTS WERE NECESSARY IF THERE

WAS AN INVOLUNTARY SHAREHOLDER, AND TO THE EXTENT
THAT THAT JUDGMENT READS THAT THEY ALL HAVE
ESSENTIALLY THE SAME SET OF OBLIGATIONS, THEY MIGHT
INDIVIDUALLY HAVE TO DO SOME THINGS UNDER
CONNECTICUT CORPORATE LAW, BUT I READ THE JUDGMENT
AS SAYING THEY HAVE TO DO WHATEVER THEY'RE SUPPOSED
TO DO UNDER CONNECTICUT LAW.

          THE COURT:  WELL, I'M NOT PERSUADED THAT
THE DELAY THAT WOULD BE OCCASIONED BY ALLOWING THEM
TO INTERVENE, IF I LIMITED IT TO APPEAL, THAT
YOU'RE TALKING ABOUT, WHICH IS THEY MAY GET
ADDITIONAL TIME BEFORE THE APPELLATE COURT TO FILE
THEIR BRIEFS AND TO GET INVOLVED IN THE ACTION, NOR
THE ADDITIONAL LITIGATION THAT WOULD PERHAPS BE
CAUSED BY HAVING NOW YET ANOTHER VOICE SPEAKING ON
THIS ISSUE, IS COMPELLING ENOUGH FOR THE COURT TO
KEEP THEM OUT OF THE CASE.

          MY MOTIVATION IS TO -- BECAUSE I THINK MY
JUDGMENT IS CORRECT.

          MY MOTIVATION IS TO BRING THEM IN THE
CASE SO I CAN ENFORCE THE JUDGMENT AGAINST THEM,
AND IT'S COUNTERINTUITIVE TO THE COURT TO BE IN A
SITUATION WHERE THEY INITIALLY SAID "WE DON'T WANT
TO BE," AND I'M SAYING, "NO, YOU'RE REQUIRED," AND
NOW THEY'RE AGREEING, "WELL, WE WANT TO COME IN,"

AND TO SAY "NO, YOU CAN'T." IT JUST SEEMS
COUNTERINTUITIVE TO THE COURT.

I WOULD AGREE WITH YOU THAT THE
INTERVENTION, FOR PURPOSES OF NOW REOPENING THE
LITIGATION AND TREATING IT AS A PRE-JUDGMENT
LITIGATION AND NOW SERVING COMPLAINTS AND GETTING
ANSWERS AND TAKING DISCOVERY AND ALL OF THOSE
MATTERS, THAT WOULD BE A DIFFERENT KIND OF
INTERVENTION.

AND THAT'S WHY I INVITE THE PARTIES TO
ADDRESS THE COURT ON THE NATURE OF A LIMITED
INTERVENTION. IT'S -- I'VE SEEN CASES THAT
RECOGNIZE IT. IT'S JUST NOT ONE OF THOSE THINGS
WHERE THE PROCEDURAL BOOKS TALK A LOT ABOUT IT.

BUT IT SEEMS TO ME THAT THERE ARE
POST-JUDGMENT PROCEEDINGS THAT WILL NOW TAKE PLACE,
SUCH AS THE MOTION TO ENFORCE THE JUDGMENT OR THE
MOTION TO STAY EXCUSE, I'VE HEARD OF AN APPEAL FOR
WHICH THESE INDIVIDUALS, ONCE THEY'RE IN THE CASE,
CAN BE MADE THE SUBJECT OF ORDERS.

AND RATHER THAN GET AN ORDER AND THEN
LATER BRING THEM INTO THE CASE, IT SEEMS TO ME A
MORE EFFICIENT WAY IS TO BRING THEM IN NOW.

IF I'M WRONG AND THE JUDGMENT IS SET
ASIDE AND THE CASE IS BROUGHT BACK, THEY'RE IN THE

CASE FOR PURPOSES OF NOW TRYING TO FIGURE OUT WHAT
IS THE NATURE OF THIS LITIGATION.

THIS WAS A SETTLEMENT OF AN ONGOING
LITIGATION.

AND SO ONCE THEY INTERVENE, THEY'RE
INTERVENING IN THE ONGOING LITIGATION.

IF THE ARGUMENT IS THEY HAVE NO PLACE IN
THE ONGOING LITIGATION, THAT WHATEVER THEY'RE
CONTENDING ABOUT IS NOT SOMETHING THAT WAS THE
SUBJECT MATTER OF THE LITIGATION, I'M WILLING TO
LISTEN TO THAT.

BUT IT SEEMS TO ME THAT THEY'RE -- IF I
ALLOW THEM TO INTERVENE FOR PURPOSES OF A JUDGMENT
AND AN APPEAL FROM A JUDGMENT THAT FORCES THEM TO
TAKE ACTION THAT THEY'VE AGREED TO, THAT SEEMS TO
ME TO BE A LOGICAL THING TO ALLOW.

MR. CHATTERJEE: OKAY. YOUR HONOR, THANK
YOU.

I THINK THERE WERE A COUPLE CONCEPTS IN
THERE THAT ARE VERY IMPORTANT AND THAT MAYBE THERE
ARE SOME SUBTLETIES THAT WE HAVE NOT YET TALKED
ABOUT.

I UNDERSTAND WHERE YOU'RE GOING, BUT I
THINK THERE ARE A COUPLE OF IMPORTANT THINGS.

THE FIRST THING IS I BELIEVE YOUR HONOR

1  IS GOING TO BE AFFIRMED AT THE NINTH CIRCUIT.  I

2  THINK IT WAS A SOUND DECISION BASED UPON NINTH

3  CIRCUIT LAW.

4          IN THE UNLIKELY EVENT THAT THERE WERE A

5  REVERSAL, I WOULD NOT WANT THIS INTERVENTION TO

6  ALLOW THEM TO GET OUT OF THE CASE IN CALIFORNIA

7  AGAIN.

8          THE COURT:  TO GET OUT?

9          MR. CHATTERJEE:  TO GET OUT, BECAUSE YOUR

10 HONOR SAID YOU WERE ONLY ALLOWING THEM A LIMITED

11 INTERVENTION.  IF THEY'RE IN, THE CONSEQUENCES FOR

12 THAT SHOULD BE WHATEVER HAPPENS.

13         THE COURT:  OH, YES.  MY ORDER WOULD BE

14 TO INTERVENE FOR PURPOSES OF POST-JUDGMENT AND

15 APPEAL, SO THAT ONCE THEY'RE IN FOR PURPOSES OF

16 POST-JUDGMENT, I WOULD REGARD ANY CASE THAT WAS

17 BROUGHT BACK ON REMAND AS POST-JUDGMENT AND,

18 THEREFORE, THEY WOULD BE IN FOR PURPOSES OF THOSE

19 PROCEEDINGS.

20         MR. CHATTERJEE:  THANK YOU, YOUR HONOR.

21         THE SECOND ISSUE IS I DO THINK THIS ISSUE

22 HAS TO BE DEALT WITH ON THEIR STRATEGIC DECISION

23 NOT TO OPPOSE THE MOTION BEFORE YOUR HONOR.

24         IF YOU'RE ALLOWING THEM TO INTERVENE,

25 WHATEVER RIGHTS THEY HAVE AT THIS POINT IN TIME,

HAVING CHOSEN NOT TO OPPOSE THE MOTION, IS WHAT
THEY HAVE.  THEY CAN'T ALL OF A SUDDEN COME IN AND
STEP INTO THE SHOES OF CONNECTU.

THE COURT:  I'M SORRY.  SAY MORE ABOUT
THAT.  WHAT MOTION?

MR. CHATTERJEE:  YOUR HONOR, WHEN WE
FILED THE MOTION TO ENFORCE --

THE COURT:  YES.

MR. CHATTERJEE:  -- THE CONNECTU
SHAREHOLDERS, I'LL CALL THEM THE CONNECTU FOUNDERS,
DIVYA NARENDRA, CAMERON WINKLEVOSS, AND TYLER
WINKLEVOSS SUBMITTED DECLARATIONS, SOME OF THEM
SUBMITTED DECLARATIONS ON BEHALF OF CONNECTU.

BUT THEY MADE THE CHOICE NOT TO INTERVENE
THEN.  THEY MADE THE CHOICE NOT TO BE PARTIES IN
OPPOSITION TO THAT ENFORCEMENT ACTION.

IF THEY DECIDE THEY WANT TO INTERVENE
NOW, AFTER JUDGMENT'S ENTERED, THEY SHOULD NOT BE
ABLE TO STEP INTO THE SHOES OF CONNECTU ON APPEAL.

WHATEVER RIGHTS THEY HAVE, HAVING MADE
THE DECISION NOT TO PARTICIPATE IN THE OPPOSITION
OF THE MOTION, THEY SHOULD BE STUCK WITH THE
CONSEQUENCES OF THAT GIVEN THEIR STRATEGIC CHOICE.

THE COURT:  I'M STILL NOT UNDERSTANDING.
THE MOTION TO ENFORCE THE JUDGMENT IS THE MOTION

24

THAT ENDED IN A JUDGMENT.

2          MR. CHATTERJEE:  CORRECT.

3          THE COURT:  AND NOW THERE IS AN APPEAL.

4          I PRESUME THAT, IN THAT APPEAL, CONNECTU,

5 THROUGH ITS OFFICERS OR AUTHORIZED REPRESENTATIVES,

6 TAKES THE POSITION THAT THE JUDGMENT SHOULD BE SET

7 ASIDE.

8          MR. CHATTERJEE:  CORRECT, YOUR HONOR.

9          AND LET ME JUST --

10          THE COURT:  AND THESE INDIVIDUALS WOULD

11 BE TAKING A CONSISTENT POSITION.

12          MR. CHATTERJEE:  YES, YOUR HONOR.

13          HOWEVER, DEPENDING ON WHAT HAPPENS WITH

14 CONNECTU -- I DON'T KNOW EXACTLY WHAT'S GOING TO

15 HAPPEN WITH THAT, BUT ON APPEAL, IF THE INDIVIDUALS

16 ARE THE ONLY PEOPLE LEFT -- SO, FOR EXAMPLE, THE

17 CONCERN THAT MR. O'SHEA HAS, IF FACEBOOK BECOMES

18 THE OWNER OF CONNECTU, IF IT MAKES THE DECISION

19 THAT IT'S NOT IN THE BUSINESS'S INTEREST TO

20 CONTINUE THE APPEAL, THEN THE INDIVIDUALS SHOULD

21 NOT BE ABLE TO ASSUME THE RIGHTS OF CONNECTU

22 BECAUSE THEY MADE THE DECISION NOT TO OPPOSE THE

23 MOTION.

24          THE COURT:  AH, OKAY, YES.  I HAVEN'T

25 QUITE FIGURED OUT ALL OF THE NUANCES OF THAT

PROBLEM, BUT I DID GET A LITTLE BIT OF IT.

ONE OF THE CONCERNS IS IF THE -- IF FACEBOOK PROCEEDS TO ACQUIRE, THROUGH EXECUTION ON THE JUDGMENT OR ENFORCEMENT OF THE JUDGMENT, THE SHARES OF CONNECTU, WOULD THESE INDIVIDUALS, IN SOME CAPACITY, BE ABLE TO PROCEED IF CONNECTU DOESN'T WANT TO PROCEED?

MR. CHATTERJEE: CORRECT, AND WHAT RIGHTS WOULD THEY HAVE.

THEY MAY BE ABLE TO PROCEED IN ANY EVENT, BUT THEIR RIGHTS MAY BE DIFFERENT THAN THE RIGHTS OF CONNECTU BECAUSE CONNECTU MADE THE DECISION TO OPPOSE.

THE COURT: WELL, CAN I DEFER THAT UNTIL I LEARN MORE ABOUT THIS QUESTION ON, ON ENFORCING, ON STAYING THE JUDGMENT?

BECAUSE IT DOES SEEM TO ME THAT WHETHER ACTION IS STAYED PENDING APPEAL AND HOW THAT IS DONE IS NOW TIED IN WITH THE POWER THAT FACEBOOK WOULD SEEK TO EXERCISE SHOULD IT BECOME, AS A RESULT OF THIS PROCESS, THE OWNER OF CONNECTU.

AND WHAT YOU'RE ASKING THE COURT FOR IS SOME RULING WITH RESPECT TO THE RIGHTS OF THOSE INDIVIDUALS ONCE THAT -- IF THAT SHOULD HAPPEN.

AND I DON'T HAVE AN ANSWER TO THAT.

```
17:11:05   1          MR. CHATTERJEE:  IT REALLY GOES TO THE

17:11:07   2    SCOPE OF THE INTERVENTION, YOUR HONOR, BECAUSE YOU

17:11:09   3    HAD STARTED BY SAYING IT'S A LIMITED INTERVENTION.

17:11:11   4          THE COURT:  WELL, LET ME SEE IF I CAN

17:11:13   5    ANSWER THAT TO SEE IF THEY ARE -- MY UNDERSTANDING

17:11:16   6    IS THAT THEY ARE SEEKING TO INTERVENE AS

17:11:18   7    INDIVIDUALS AND IN THEIR INDIVIDUAL CAPACITY.

17:11:20   8    THEY'RE NOT SEEKING TO INTERVENE AS REPRESENTATIVE

17:11:22   9    OF CONNECTU OR ON BEHALF OF CONNECTU.

17:11:24  10          AND MY RULING ALLOWING THEM TO INTERVENE

17:11:27  11    WOULD BE TO INTERVENE AS INDIVIDUALS IN THEIR

17:11:29  12    INDIVIDUAL CAPACITY.

17:11:32  13          DOES THAT HELP?

17:11:33  14          MR. CHATTERJEE:  I DON'T KNOW IF IT

17:11:34  15    RESOLVES THE QUESTION I WAS ASKING.  IF -- BECAUSE

17:11:37  16    IT SOUNDS LIKE THE INTERVENTION IS, IS FOR ANYTHING

17:11:41  17    POST-JUDGMENT THAT OCCURS.

17:11:43  18          THE COURT:  RIGHT.

17:11:44  19          MR. CHATTERJEE:  AND THEN --

17:11:45  20          THE COURT:  BUT IN THEIR INDIVIDUAL

17:11:46  21    CAPACITY.

17:11:47  22          IN OTHER WORDS, ONCE THEY'RE IN THE CASE,

17:11:49  23    THEY WOULD NOT BE ABLE TO SAY, "I AM NOW SPEAKING

17:11:52  24    ON BEHALF OF CONNECTU AND, THEREFORE, I TAKE THIS

17:11:56  25    POSITION ON, THIS POSITION ON BEHALF OF CONNECTU."
```

17:11:59  1          MR. CHATTERJEE:  RIGHT.  AND, YOUR HONOR,

17:12:00  2   PERHAPS IF THAT'S YOUR HONOR'S RULING, WE WOULD

17:12:02  3   LIKE GUIDANCE AS FAR AS WHAT IS IT THAT THEY'RE

17:12:06  4   ALLOWED TO INTERVENE ON?

17:12:08  5          HOWEVER, IF YOU THINK THAT'S AN ISSUE

17:12:10  6   THAT'S LEFT BETTER FOR A LATER DAY OR IN FRONT OF

17:12:12  7   THE NINTH CIRCUIT, WE CAN DEAL WITH THAT THERE.

17:12:15  8          THE COURT:  WELL, LET ME HEAR FROM

17:12:17  9   MR. O'SHEA AGAIN, OR PERHAPS MR. UNDERHILL WOULD

17:12:20  10  WANT TO SPEAK TO THIS.

17:12:22  11         BUT IT DOES SEEM TO ME THAT I UNDERSTAND

17:12:24  12  THEIR DESIRE TO INTERVENE IN THEIR INDIVIDUAL

17:12:27  13  CAPACITIES AND TO TAKE WHATEVER ACTIONS

17:12:31  14  POST-JUDGMENT THAT THEY MIGHT TAKE IN THEIR

17:12:33  15  INDIVIDUAL CAPACITIES.

17:12:34  16         MR. O'SHEA:  I THINK THAT'S RIGHT, YOUR

17:12:35  17  HONOR.  I THINK WHAT MR. CHATTERJEE IS TRYING TO DO

17:12:38  18  IS ESSENTIALLY TRICK -- IS GIVE WITH ONE HAND AND

17:12:42  19  TAKE AWAY WITH THE OTHER.

17:12:43  20         YOU SEE, YOUR HONOR, THE REASON WHY WE'RE

17:12:45  21  SEEKING TO INTERVENE IS TO VINDICATE OUR RIGHTS.

17:12:48  22         PRIOR TO TODAY, WE WERE SATISFIED WITH

17:12:50  23  CONNECTU'S VINDICATING OUR RIGHTS, IF YOU WILL.

17:12:54  24  BUT -- AND SO WE WERE CONTENT TO SIT ON THE SIDES.

17:12:58  25         IT'S ONLY BECAUSE OF FACEBOOK'S ATTEMPT

```
17:13:00  1    TO DEPRIVE US OF OUR RIGHTS TO CHALLENGE THE
17:13:03  2    ENFORCEMENT OF THE TERM SHEET THAT WE'RE HERE.
17:13:05  3             IF -- IF WHAT MR. CHATTERJEE IS SAYING
17:13:07  4    IS, WELL, YOU CAN GO AHEAD AND ALLOW INTERVENTION,
17:13:10  5    BUT THEY'RE -- THEY CAN'T CHALLENGE THE TERM SHEET
17:13:13  6    BECAUSE THEY DIDN'T CHALLENGE IT BACK THEN WHEN
17:13:15  7    CONNECTU WAS CHALLENGING ON THEIR BEHALF, THAT'S
17:13:17  8    NONSENSE, JUDGE.
17:13:19  9             IT'S ALLOWING INTERVENTION.
17:13:21 10             AND I CHALLENGE MR. CHATTERJEE TO COME UP
17:13:23 11    WITH ONE CASE WHERE A COURT ALLOWED INTERVENTION
17:13:26 12    BY, BY AN INTERVENING PARTY TO PRESERVE AN APPEAL,
17:13:30 13    FOR EXAMPLE, UNITED AIRLINES, FOR EXAMPLE,
17:13:35 14    PELLEGRINO VERSUS NESBIT, WHERE THE COURT SAID,
17:13:36 15    "WE'RE ALLOWING YOU TO INTERVENE, BUT WE'RE GOING
17:13:38 16    TO CIRCUMSCRIBE THOSE RIGHTS TO INTERVENE."
17:13:41 17             I THINK WHAT YOUR HONOR INITIALLY SAID
17:13:43 18    WAS ABSOLUTELY CORRECT.  WE SHOULD BE ALLOWED TO
17:13:44 19    INTERVENE POST-JUDGMENT, TO CHALLENGE THIS
17:13:46 20    COURT'S -- TO RESPECTFULLY CHALLENGE THIS COURT'S
17:13:49 21    DECISION THEN POST-JUDGMENT.
17:13:50 22             WE'RE NOT, FOR EXAMPLE, SEEKING TO REOPEN
17:13:53 23    AND RELITIGATE THE MATTER BEFORE THE COURT.
17:13:55 24             I THINK WHAT MR. CHATTERJEE IS DOING IS
17:13:58 25    CLEVER, BUT IT'S A TRICK, AND WHAT IT'S TRYING TO
```

DO IS GET THIS COURT TO DO SOMETHING THAT WOULD
CIRCUMSCRIBE OUR RIGHTS OF APPEAL, WHICH IS THE
PRECISE REASON WHY WE'RE HERE, YOUR HONOR.

THE COURT:  IS IT TRUE THAT YOU WANT TO
CIRCUMSCRIBE HIS RIGHTS ON APPEAL?

MR. CHATTERJEE:  OF COURSE, YOUR HONOR.

THE COURT:  WHAT IS IT THAT YOU WOULD
WISH TO HAVE THE COURT CIRCUMSCRIBE WITH RESPECT TO
HIS APPEAL?

MR. CHATTERJEE:  WE DON'T WANT THE
INDIVIDUALS TO HAVE THE RIGHT TO SEEK AN APPEAL.

IT'S NOT SIMPLE.  THEY MADE THE CHOICE
NOT TO PARTICIPATE IN THE PROCEEDING, AND WE
SHOULDN'T BE PREJUDICED BY HAVING TO DEAL WITH THAT
NOW.

MR. BARRETT STOOD UP AT THE HEARING --

THE COURT:  ISN'T THAT TANTAMOUNT TO
DENYING THEM THE RIGHT TO INTERVENE?  BECAUSE IF I
ALLOW THEM TO INTERVENE, IT SEEMS TO ME THAT, AS
PARTIES NOW, THEY WOULD HAVE THE RIGHT TO APPEAL.

SO THAT GOES BACK TO -- YOUR ARGUMENT IS
I SHOULDN'T ALLOW THEM TO INTERVENE, BECAUSE IF I
GIVE THAT RIGHT, THEY WOULD BE PERMITTED AS PARTIES
NOW, IF THEY ARE AFFECTED ADVERSELY BY THE
JUDGMENT, TO APPEAL.

30

1          MR. CHATTERJEE:  CORRECT, YOUR HONOR.

2   THAT'S THE ISSUE.

3          AND THERE'S NO TRICK HERE.  WE FILED A

4   MOTION TO ENFORCE.  WE FILED THE MOTION TO ENFORCE.

5   WE SERVED IT IN BOSTON.  THE INDIVIDUALS HAD HAD

6   NOTICE AND THEY DECIDED NOT TO COME IN.  THEY MADE

7   A STRATEGIC DECISION ON THAT.

8          THERE'S NO TRICK.  THEY KNEW THAT THIS

9   WAS COMING AND WE WERE GOING TO TRY AND TAKE

10  CONNECTU AS A COMPANY.  THEY MADE THE DECISION NOT

11  TO GET INVOLVED.

12         YOUR HONOR, I -- I DON'T KNOW WHY

13  MR. O'SHEA IS SO INFLAMED.  THEY HAD NOTICE OF IT.

14  COUNSEL FOR THE WINKLEVOSS BROTHERS AND NARENDRA

15  STOOD UP AT THE MOTION TO ENFORCE HEARING AND

16  ARGUED TO YOUR HONOR -- IN BOSTON, THEY HAD A

17  SEPARATE PROCEEDING WHERE DIVYA NARENDRA AND

18  HOWARD WINKLEVOSS WERE THERE.

19         THEY CAN'T COME IN NOW AND SAY THIS IS A

20  TIMELY APPLICATION.  THEY MADE A STRATEGIC DECISION

21  NOT TO GET INVOLVED AND THEY SHOULD HAVE TO DEAL

22  WITH THE CONSEQUENCES OF THAT BECAUSE THEY KNEW

23  WHAT THEY WERE DOING.

24         THE COURT:  ALL RIGHT.  NOW, LET ME HOLD

25  THIS IN ABEYANCE.  I'M NOT SURE THAT THIS IS THE

17:15:50 1    TIME ON THE FIRST MOTION OR ALL MOTIONS.

17:15:52 2            I DO HAVE A CONCERN THAT MY STAFF -- I

17:15:55 3    GAVE THEM A PROMISE WE'D ONLY KEEP THIS TO ABOUT AN

17:15:58 4    HOUR, SO CAN I TURN QUICKLY NOW TO THE OTHER

17:16:01 5    MATTER, KEEPING THIS AS SOMETHING THAT I HAVE UNDER

17:16:03 6    CONSIDERATION, AND THAT IS THIS MOTION TO STAY

17:16:08 7    EXECUTION OF THE JUDGMENT.

17:16:16 8            THIS IS YOUR MOTION, MR. UNDERHILL?

17:16:18 9            MR. UNDERHILL:  YES, YOUR HONOR.  I'D

17:16:21 10   LIKE TO RESERVE THREE MINUTES, PLEASE.

17:16:24 11           AND, AGAIN, YOUR HONOR, I'VE GOT A LOT OF

17:16:26 12   GROUND TO COVER.  IF THERE ARE SPECIFIC ISSUES THAT

17:16:28 13   YOU WANT ME TO ADDRESS, PLEASE DIRECT ME.

17:16:29 14           THE COURT:  WELL, I THINK EVERY -- LET ME

17:16:32 15   COMMENT ON THAT THE WAY I DID THE OTHER ONE.

17:16:34 16           MR. UNDERHILL:  SURE.

17:16:35 17           THE COURT:  I THINK, FROM WHAT I CAN SEE,

17:16:36 18   EVERYBODY IS ON ALL FOURS THAT THIS IS NOT A SIMPLE

17:16:39 19   SITUATION THAT WOULD BE RESOLVABLE AS IT WOULD IF I

17:16:43 20   HAD A MONEY JUDGMENT AND YOU COULD POST A BOND.

17:16:45 21           THIS IS A SITUATION WHICH IS TANTAMOUNT

17:16:47 22   TO A SPECIFIC PERFORMANCE OR INJUNCTIVE RELIEF

17:16:52 23   CIRCUMSTANCE WHERE THE STAY HAS TO BE ADDRESSED AS,

17:16:56 24   AS YOU WOULD IF THERE WERE INDIVIDUAL ACTS THAT

17:16:59 25   HAVE TO -- THAT ARE AFFECTED BY IT.

AND IT DOES SEEM TO ME THAT, AS THE COURT
THAT ISSUED THE JUDGMENT, I HAVE TO PAY ATTENTION
TO THE FACT THAT THE VALUE OF THIS JUDGMENT TO BOTH
PARTIES, AS I SAW IT, WAS A TIMELY COMBINATION OF
EXCHANGE OF CASH AND STOCK, AND THAT IT SEEMED TO
ME THAT THE PARTIES WERE, WERE -- ARE AFFECTED BY A
DELAY WHICH MIGHT AFFECT THE VALUE OF THE
CONSIDERATION.

AND SO IF THE PARTY IS -- IF ONE PARTY TO
THIS IS NOW DISAPPOINTED AND WISHES TO APPEAL, IT'S
GOING TO AFFECT THE TIMELINESS AND THE VALUE OF THE
CONSIDERATION WITH RESPECT TO THE OTHER PARTY.

AND THAT COULD BE SAID, AT THIS POINT, BY
EITHER PARTY.  EITHER ONE COULD HAVE SAID, "NO,
THIS ISN'T RIGHT, I DON'T WANT TO GO AHEAD."

AND SO TO STAY EXECUTION IS, IS SOMETHING
WHICH SAYS, "WE WANT YOU TO CHANGE THE VALUE OF THE
CONSIDERATION THAT WAS GOING ON AT THE POINT OF THE
SETTLEMENT, AND WE NEED TO HAVE YOU IGNORE THE
PARTIES' DETERMINATIONS OF THOSE VALUES AT THE
TIME," AND ALLOW THAT TO CHANGE AT, AT THE RISK
THAT IT WILL DO VIOLENCE TO THE VERY DEAL THAT THE
PARTIES PUT TOGETHER FOR A HIGHER GOOD, WHICH IS TO
SEE WHETHER OR NOT THERE REALLY WAS A SETTLEMENT.

SO THAT'S KIND OF HOW I'M APPROACHING IT.

17:18:32  1          MR. UNDERHILL:  OKAY.  LET ME TRY TO

17:18:34  2   JUMP, I GUESS, THEN, TO THIS IDEA OF FACEBOOK'S

17:18:36  3   INTEREST IN CONNECTU PENDING THE APPEAL.

17:18:40  4          FIRST OF ALL, YOUR HONOR, I BELIEVE IT TO

17:18:45  5   VERY MUCH BE THE CASE THAT THE VALUE THAT CHANGED

17:18:48  6   HANDS HERE WITH RESPECT TO, FROM THE FACEBOOK SIDE

17:18:50  7   TO THE CONNECTU SIDE, WAS SETTLEMENT OF AN

17:18:53  8   EXTREMELY VALUABLE CLAIM.

17:18:56  9          CONNECTU ITSELF, THE BUSINESS, IS

17:18:59 10   EXTREMELY SMALL.  IT GETS ABOUT 100 HITS A MONTH.

17:19:03 11   IT PRODUCES ABSOLUTELY NO REVENUE OF ANY KIND.

17:19:06 12   NEVER HAS.

17:19:07 13          SO THE IDEA OF EXCHANGING THE STOCK WAS

17:19:14 14   AN ELEGANT -- IN RETROSPECT, NOT SO ELEGANT -- WAY

17:19:19 15   OF SETTLING THE LAWSUIT.

17:19:22 16          WE ARE MORE THAN HAPPY TO DO AN EXPEDITED

17:19:24 17   APPEAL.  WE HAVE SUBMITTED PAPERS TO THE COURT WITH

17:19:26 18   RESPECT TO THE RELEASE ISSUE WHERE WE SAY WE'RE

17:19:29 19   WILLING TO DO AN EXPEDITED APPEAL.

17:19:32 20          THAT LANGUAGE WAS NOT ACCEPTABLE TO

17:19:34 21   FACEBOOK.

17:19:35 22          AND IT IS CLEAR TO US, YOUR HONOR, THAT

17:19:39 23   AT EVERY TURN, EVERYTHING POST-JUDGMENT, WHICH

17:19:44 24   OBVIOUSLY WE RESPECTFULLY DISAGREE WITH, EVERYTHING

17:19:47 25   THAT THE OTHER SIDE HAS DONE IS DESIGNED TO KEEP US

34

FROM HAVING A MEANINGFUL APPEAL.

AND SO THERE IS THIS THREAT THAT IF THEY
CAN GET THEIR HANDS ON CONNECTU, THEY'RE GOING TO
SHUT DOWN THE APPEAL.

WE -- WE ALSO BELIEVE WE HAVE A
MALPRACTICE CLAIM AGAINST PRIOR COUNSEL.

THERE AT LEASE IMPLICITLY, IF NOT
EXPRESSLY, IS THE IDEA THAT THEY MAY SHUT THAT
DOWN, TOO, AND EXPOSE THE INDIVIDUAL SHAREHOLDERS
TO LIABILITIES THAT THEY MIGHT NOT OTHERWISE HAVE,
IF FACEBOOK IS ABLE TO DO THAT.

SO WE'RE HERE, YOUR HONOR, TO BE THE MOST
REASONABLE THAT WE POSSIBLY CAN AND FIGURE OUT SOME
WAY TO GET AN APPEAL THAT IS PRACTICAL.

AND, YOU KNOW, POSTING A BOND OF TENS OF
MILLIONS OF DOLLARS IS SIMPLY NOT PRACTICAL TO HAVE
THE APPELLATE COURT HEAR WHAT I TRULY BELIEVE ARE
SOME PRETTY NOVEL IDEAS, AND I DO WANT TO SPEND
JUST A COUPLE OF MINUTES ON THE LAW HERE IN A
MINUTE.

BUT WE'RE WILLING TO DO ANYTHING
REASONABLE.  WE'RE WILLING TO TURN THE COMPANY OVER
TO MR. FISHER.  MR. FISHER CAN MAKE ANY OPERATIONAL
DECISIONS, NOT THAT THERE ARE ANY OPERATIONAL
DECISIONS.

|   |   |
|---|---|
| 17:21:01 | 1 |
| 17:21:03 | 2 |
| 17:21:05 | 3 |
| 17:21:08 | 4 |
| 17:21:10 | 5 |
| 17:21:12 | 6 |
| 17:21:17 | 7 |
| 17:21:18 | 8 |
| 17:21:20 | 9 |
| 17:21:22 | 10 |
| 17:21:26 | 11 |
| 17:21:26 | 12 |
| 17:21:26 | 13 |
| 17:21:27 | 14 |
| 17:21:27 | 15 |
| 17:21:28 | 16 |
| 17:21:29 | 17 |
| 17:21:31 | 18 |
| 17:21:33 | 19 |
| 17:21:35 | 20 |
| 17:21:37 | 21 |
| 17:21:39 | 22 |
| 17:21:39 | 23 |
| 17:21:39 | 24 |
| 17:21:41 | 25 |

1  WHAT GOES ON NOW IS THERE'S A CHECK

2  THAT'S WRITTEN EVERY MONTH FOR THE RENTAL OF THE

3  SERVER.  THAT'S IT.  WE'LL WRITE THE CHECK.  HE

4  DOESN'T EVEN HAVE TO WORRY ABOUT THAT.

5  WE WILL NOT MAKE A SINGLE OPERATIONAL

6  CHANGE IN THE SLIGHTEST.  YOU KNOW, WE'LL PUT IT

7  OUT OF OUR HANDS.

8  IN FACT, YOUR HONOR, WE WOULD EVEN BE

9  WILLING TO LET CONNECTU OPERATE THE BUSINESS.

10  NOW, THAT'S VERY DISTINCT, BY THE WAY,

11  FROM HAVING THE COMPANY.  WE DON'T AGREE THAT THEY

12  CAN HAVE --

13  THE COURT:  FACEBOOK.

14  MR. UNDERHILL:  I'M SORRY?

15  THE COURT:  YOU SAID CONNECTU.

16  MR. UNDERHILL:  I'M SORRY.

17  THE COURT:  YOU MEAN FACEBOOK.

18  MR. UNDERHILL:  MY MISTAKE.  I MEANT TO

19  SAY FACEBOOK.

20  OBVIOUSLY WE WILL NOT VOLUNTARILY PERMIT

21  THEM TO TAKE OVER OUR APPEAL BECAUSE WE DON'T THINK

22  THEY WOULD DO AS GOOD A JOB AS WE WILL.

23  WE'RE NOT GOING TO LET THEM TAKE OVER THE

24  MALPRACTICE CASE.

25  BUT IF THEY REALLY JUST WANT TO OPERATE

36

|   |   |
|---|---|
| 17:21:42 | 1 |
| 17:21:45 | 2 |
| 17:21:49 | 3 |
| 17:21:51 | 4 |
| 17:21:53 | 5 |
| 17:21:56 | 6 |
| 17:21:59 | 7 |
| 17:22:03 | 8 |
| 17:22:07 | 9 |
| 17:22:10 | 10 |
| 17:22:13 | 11 |
| 17:22:16 | 12 |
| 17:22:17 | 13 |
| 17:22:19 | 14 |
| 17:22:20 | 15 |
| 17:22:24 | 16 |
| 17:22:29 | 17 |
| 17:22:35 | 18 |
| 17:22:38 | 19 |
| 17:22:40 | 20 |
| 17:22:41 | 21 |
| 17:22:42 | 22 |
| 17:22:45 | 23 |
| 17:22:47 | 24 |
| 17:22:48 | 25 |

THIS THING, IF THEY WANT TO WRITE THE CHECK TO THE
SERVER, YOU KNOW, ONCE A MONTH, IF THEY WANT TO
REWRITE THE CODE, IF THEY WANT TO START
ADVERTISING, THEY CAN DO WHATEVER THEY WANT WITH
IT, IT'S THEIRS, AS LONG AS WE CAN KEEP OWNERSHIP
OF CONNECTU SUFFICIENT TO SATISFY AN APPEAL.

NOW, WHAT WE HEARD IN THE PRIOR MOTION IS
ONE MORE GAMUT TO TRY TO DENY US AN APPEAL.

AS MUCH AS MR. CHATTERJEE EXPRESSES
CONFIDENCE IN THE COURT'S OPINION, HE SURE IS
TRYING AWFULLY HARD TO KEEP THE NINTH CIRCUIT FROM
EVER HEARING THESE ISSUES.

THE COURT:  LET ME ASK THIS, COUNSEL.

MR. UNDERHILL:  YES, YOUR HONOR.

THE COURT:  IF I GO ALONG WITH THIS
PROPOSAL -- I'M NOT SAYING I WILL -- AND THERE IS
AN APPEAL THAT IS PURSUED INDEPENDENT OF CONNECTU,
WHO PAYS FOR THE COST OF THE APPEAL?

MR. UNDERHILL:  WE'LL TAKE CARE OF THAT,
YOUR HONOR.  NO PROBLEM.

THE COURT:  WHO'S "WE"?

MR. UNDERHILL:  IT WON'T BE CONNECTU.
I'LL WORK IT OUT WITH THE SHAREHOLDERS.

THE COURT:  AH.  I SEE.

AND SO YOU'RE REQUESTING, ESSENTIALLY, TO

```
17:22:52  1    BE ABLE TO UNDO THE SETTLEMENT, BUT TO ALLOW THEM
17:22:58  2    TO OPERATE THE COMPANY.
17:22:59  3            NOW, WHEN THE SETTLEMENT IS UNDONE, IF IT
17:23:04  4    IS UNDONE BY A REVERSAL, YOUR UNDERSTANDING IS
17:23:07  5    YOU'D GO BACK TO THE STATUS QUO ANTE, WHICH MEANS
17:23:10  6    THAT THE COMPANY WOULD BE GIVEN BACK AND RESTART
17:23:14  7    ALL THE LITIGATION?
17:23:14  8            MR. UNDERHILL:  RIGHT.  AND, AND FACEBOOK
17:23:18  9    WOULD NEED TO KEEP IT SO THEY COULD GIVE IT BACK,
17:23:21 10    YOU KNOW, AT THE END.
17:23:23 11            THE -- IF WE NEED A HEARING, YOUR HONOR,
17:23:25 12    ON THE VALUE OF CONNECTU AND IS THIS AT ALL
17:23:29 13    HARMING, THAT SEEMS LIKE AN AWFUL BIG WASTE OF
17:23:32 14    TIME.
17:23:32 15            I MEAN, WHAT THIS CASE WAS ABOUT, AGAIN,
17:23:34 16    WAS SETTLING AN EXTREMELY VALUABLE CLAIM.
17:23:37 17            NOW, I WOULD LIKE TO SAY, YOUR HONOR,
17:23:39 18    THAT THE QUESTIONS THAT WE'RE GOING TO BE
17:23:40 19    PRESENTING TO THE NINTH CIRCUIT -- AND BY THE WAY,
17:23:44 20    I APOLOGIZE, YOUR HONOR.  IT'S AWKWARD FOR ME.  I'M
17:23:47 21    USED TO TELLING THE APPELLATE COURT WHY THE
17:23:50 22    DISTRICT COURT IS WRONG.  IT'S NOT EVERY DAY WHEN I
17:23:51 23    TELL THE DISTRICT COURT WHY I THINK THE DISTRICT
17:23:53 24    COURT IS WRONG.
17:23:54 25            BUT I THINK THERE ARE DIFFICULT ISSUES
```

HERE WHICH, YOUR HONOR, I THINK THE LAW IS ON OUR
SIDE.

I MEAN, ONE OF THE THINGS THAT YOUR HONOR
SAID, I BELIEVE, OR AT LEAST HAS BEEN ARGUED, WAS
THAT THERE WAS NO RELIANCE, YOU KNOW, FOR THE FRAUD
THEORY.

WELL, YOUR HONOR, EVERY SINGLE CASE THAT
WE'VE BEEN ABLE TO FIND UNDER 29(B) SAYS RELIANCE
IS JUST NOT AN ISSUE.  IT SAYS THAT YOU CAN VOID A
CONTRACT IF THERE IS A VIOLATION OF THE SECURITIES
LAWS.

NOW, FACEBOOK MAKES A BIG DEAL OUT OF
SAYING, OH, BUT YOU'RE SUPPOSED TO LOOK AT THE
CONTRACT, NOT THE TRANSACTION.

I DON'T EVEN UNDERSTAND THE ARGUMENT.

THE COURT:  COUNSEL, I'M NOT -- I'M NOT
GOING TO ENTERTAIN AN ARGUMENT ABOUT THE ISSUES
THAT ARE ON APPEAL.  THERE'S A STAY.

NOW, LET ME ASK THIS, THOUGH.

MR. UNDERHILL:  YES, YOUR HONOR.

THE COURT:  IT DOES SEEM TO ME THAT THE
REASON THIS SETTLEMENT WAS PUT TOGETHER WAS TO --
WAS FOR BOTH SIDES TO BUY THEIR PEACE FROM
LITIGATION.

HOW DO I -- HOW DO I NOT DO VIOLENCE TO

THAT AND, AT THE SAME TIME, DO WHAT YOU'RE ASKING
ME TO DO?

IN OTHER WORDS, ESSENTIALLY WOULDN'T I BE
UNDOING THE SETTLEMENT TO SAY, BY THE VERY NATURE
OF THIS ORDER, OKAY, NO, THE LITIGATION -- THE
SETTLEMENT MEANT NOTHING IN TERMS OF RELEASES.  GO
AHEAD NOW AND GO OUT THERE AND CONTINUE TO, TO
LITIGATE.

ESSENTIALLY FACEBOOK WAS SAYING, "FOR
THIS CONSIDERATION, WE AGREE TO RESOLVE ALL
LITIGATION.  THERE WILL BE NO MORE LITIGATION."

HOW DO I ENFORCE THAT?

MR. UNDERHILL:  RIGHT.

YOUR HONOR, I THINK THERE HAS TO BE SOME
BALANCE HERE.  I MEAN, IT IS ABSOLUTELY TRUE THAT
WHEN PEOPLE WORK OUT A SETTLEMENT AND THEY HAVE
SOME KIND OF A SIGNED DOCUMENT, YOU KNOW, THEY
THINK THEY HAVE A SETTLEMENT.

BUT THE CASES ARE LEGION THAT SOMETIMES
THEY MAY THINK IT'S A SETTLEMENT AGREEMENT, BUT
IT'S NOT, AND IT GETS BLOWN UP.

AND PEOPLE NEED TO HAVE THE OPPORTUNITY
TO BE ABLE TO LITIGATE IT WHEN THEY HAVE FRAUD
CLAIMS, OR WHEN THERE'S AN ALLEGATION THAT THE
TERMS ARE INSUFFICIENTLY VAGUE TO BE ENFORCED, AND

17:25:57 1 WE HAVE ADMISSIONS FROM FACEBOOK REFERRING TO IT AS

17:26:00 2 A TENTATIVE AGREEMENT. THEY'RE IN WRITING ON THAT.

17:26:03 3 THAT'S PART OF THE RECORD, YOUR HONOR.

17:26:05 4 AND SO THERE HAS TO BE SOME OPPORTUNITY

17:26:07 5 FOR SOMEONE TO CHALLENGE THAT AND, YOU KNOW, WE HAD

17:26:10 6 AN OPPORTUNITY WITH THE DISTRICT COURT.

17:26:12 7 BUT RESPECTFULLY, YOUR HONOR, I THINK THE

17:26:14 8 OPPORTUNITY TO CHALLENGE A SETTLEMENT AGREEMENT

17:26:16 9 ALSO INCLUDES THE RIGHT TO HAVE ANOTHER COURT LOOK

17:26:19 10 AT IT --

17:26:20 11 THE COURT: I AGREE WITH YOU.

17:26:21 12 MR. UNDERHILL: -- AND DETERMINE IF THAT

17:26:22 13 WAS RIGHT.

17:26:22 14 THE COURT: LET ME INTERRUPT YOUR

17:26:24 15 ARGUMENT --

17:26:25 16 MR. UNDERHILL: SURE.

17:26:25 17 THE COURT: -- JUST IN VIEW OF THE TIME.

17:26:27 18 I KNOW THAT THERE'S A LOT MORE TO BE SAID

17:26:30 19 AND I'LL HEAR FROM YOUR OPPONENT.

17:26:33 20 HAVE YOU TRIED THIS IDEA ON THEM THAT

17:26:35 21 YOU'VE JUST PUT TO THE COURT?

17:26:36 22 MR. UNDERHILL: I'VE TRIED VARIOUS IDEAS,

17:26:38 23 YOUR HONOR, WITH MR. FISHER, YOU KNOW, INVOLVED,

17:26:41 24 AND ALSO INDEPENDENTLY WITH MR. FISHER.

17:26:43 25 I'VE ATTEMPTED TO FLOAT THE IDEA THAT THE

41

SHARES WOULD BE TURNED OVER BUT WOULD BE KEPT WITH
THE SPECIAL MASTER, WOULD NOT BE RELINQUISHED
DURING THE APPEAL.

THAT WAS UNACCEPTABLE TO MR. CHATTERJEE.

I FLOATED THE IDEA THAT WE TURN OVER THE
COMPANY AND THAT HE KEEP IT SEPARATE.

THAT WAS UNACCEPTABLE TO MR. CHATTERJEE.

I'VE -- I'VE FLOATED THE IDEA THAT HE
WOULD AGREE NOT TO IMPAIR OUR APPELLATE RIGHTS AND
NOT TO IMPAIR OUR ABILITY TO BRING A MALPRACTICE
CLAIM.

THAT WAS UNACCEPTABLE TO MR. CHATTERJEE.

I MEAN, WHAT IT COMES DOWN TO -- AND I
DON'T BLAME HIM TOO MUCH, HE'S A LAWYER, HE'S JUST
TRYING TO WIN -- BUT HE'S GOT A DECISION THAT HE
LIKES AND IF HE CAN FORECLOSE THE NINTH CIRCUIT
LOOKING AT IT, OF COURSE HE'S GOING TO TRY TO DO
THAT.

BUT I DON'T THINK IT'S FAIR HERE.

THE COURT:  ALL RIGHT.  LET ME HEAR --

MR. CHATTERJEE:  YOUR HONOR, I'M JUST
GOING TO START -- I'M NOT GOING TO SPEND A LOT OF
TIME ON THIS.

FROM BOTH COUNSELS I'M GETTING A NUMBER
OF PERSONAL ATTACKS HERE.  I'M NOT GOING TO GO

THERE, BUT I DON'T APPRECIATE IT.

I JUST -- WE HAVE A CODE OF
PROFESSIONALISM HERE AND I EXPECT PEOPLE TO FOLLOW
IT AND I'D ASK YOUR HONOR TO REMIND PEOPLE OF THAT.

THE COURT:  I DIDN'T HEAR THAT KIND OF
ATTACK.  I THINK THAT IT WAS RESPECTFUL, BUT IT IS
RESPECTFUL TAKING ISSUE WITH YOUR POSITION, NOT
WITH YOU AS A COUNSEL, WHICH I SHOULD INDICATE I
HAVE A GREAT DEAL OF RESPECT FOR YOU AS A PERSON
WHO'S APPEARED BEFORE ME, AND SO FAR I HAVE A GREAT
DEAL OF RESPECT FOR ALL OF YOU WHO HAVE APPEARED.

SO GO AHEAD WITH THE SUBSTANCE OF YOUR
ARGUMENT.

MR. CHATTERJEE:  THANK YOU, YOUR HONOR.
I APPRECIATE THAT.

THE SUBSTANCE OF THE ARGUMENT IS THIS:  I
THINK YOUR HONOR IS RIGHT.  WE NEGOTIATED A DEAL ON
FEBRUARY 22ND, AND THAT WAS A PEACE TREATY.

THERE WAS VALUE TO THE COMPANY THAT WE
PURCHASED.  IF WE DIDN'T WANT THE COMPANY, WE WOULD
HAVE JUST SIGNED RELEASES.

BUT WE DIDN'T.  WE PURCHASED THE COMPANY,
AND THERE'S A VALUE TO THE PEACE THAT WE SIGNED.

THE INDIVIDUALS, AS I SAID BEFORE, CHOSE
NOT TO OPPOSE THE MOTION TO ENFORCE.  THE COMPANY

43

DID.

AND IF WE DIDN'T GET THE COMPANY THROUGH
THE RELEASE OF SHARES AND THEY WERE ABLE TO PROCEED
WITH MAJOR LITIGATION AGAINST THEIR FORMER LAW FIRM
WHICH THEY, BY THE WAY, INITIATED AFTER YOUR
JUDGMENT ENTERED, THEY INITIATED THE LAWSUIT IN THE
NEW YORK SUPREME COURT AFTER YOUR JUDGMENT ENTERED.

AND THEY -- THE DISPUTE STARTED BEFORE,
BUT THERE WAS AN ACTION IN THE NEW YORK SUPREME
COURT AFTERWARDS.

THE MALPRACTICE CLAIM THAT THEY WANT TO
INITIATE, I DON'T KNOW IF THEY HAVE YET OR NOT, I
HAVEN'T SEEN ANYTHING INDICATING THAT THEY HAVE,
ALL OF THOSE THINGS ARE DECISIONS THAT AFFECT THE
VALUE OF THE COMPANY THAT WE PURCHASED.

AND FOR THEM TO COME IN HERE AND SAY,
"OH, FACEBOOK CAN DO THE DAY-TO-DAY CONTROL, THEY
CAN INVEST HEAVILY IN IT, THEY CAN BUILD A GREAT
COMPANY IF THEY'RE ABLE TO DO IT AND MAKE A GREAT
PROFIT OR DO SOMETHING TO MAKE THE COMPANY
OPERATIONAL, BUT IF THE NINTH CIRCUIT REVERSES,
THEN WE GET IT BACK AND WHATEVER THEY DID IS FOR
NAUGHT AND WE DON'T HAVE TO WORRY ABOUT
UNSCRAMBLING THAT EGG," AND IF YOUR HONOR HAS
ALREADY ENTERED JUDGMENT SAYING THAT WE'RE RIGHT ON

44

THE ENFORCEMENT MOTION, FRANKLY, YOUR HONOR, IT'S

2 SOMEWHAT ABSURD TO ARGUE THAT.

3 WE WANT THE VALUE OF WHAT WE PURCHASED,

4 AND STAYING THE PROCEEDINGS IS, IS, IS TANTAMOUNT

5 TO NOT RECOGNIZING THE SETTLEMENT AGREEMENT.

6 THERE'S A PUBLIC INTEREST HERE IN

7 RECOGNIZING THESE AGREEMENTS THAT GETS IMPLICATED.

8 YOUR HONOR RECITED THAT YOURSELF AT THE JUDGMENT

9 HEARING.

10 THE ONE THING -- THE ONE OTHER POINT I

11 WANT TO MAKE IS, CANDIDLY, WE HAVE A BIG ISSUE WITH

12 THEM HAVING ANY DECISION MAKING OVER CONNECTU.

13 AND I'M NOT TALKING ABOUT THE LAWYERS.

14 I'M TALKING ABOUT THE WINKLEVOSS BROTHERS AND DIVYA

15 NARENDRA AND HOWARD WINKLEVOSS.

16 THEY INITIATED THE LITIGATION WITHOUT

17 EVER CONSULTING ANYBODY AFTER THE JUDGMENT WAS

18 ENTERED.  THEY DON'T LIKE OUR COMPANY.

19 SO IF THINGS AREN'T GOING WELL IN THE

20 NINTH CIRCUIT, THEY CAN DO WHATEVER THEY WANT.

21 THEY HAVE NOT PUT THE STOCK INTO GEORGE

22 FISHER'S HANDS PER YOUR HONOR'S ORDER.  THAT WAS

23 DUE MONDAY, AND AT 2:15, GIVE OR TAKE A FEW

24 MINUTES, ON MONDAY, AFTER WE HAD PUT ALL OF OUR

25 CONSIDERATION IN, THAT SUBSTANTIAL AMOUNT OF MONEY

45

17:30:31 1    AND THE SUBSTANTIAL AMOUNT OF SHARES, THEY NOTIFIED

17:30:35 2    US THAT THEY WERE GOING TO MAKE THE DECISION NOT TO

17:30:37 3    SUBMIT IT TO HIM IN VIOLATION OF YOUR HONOR'S

17:30:39 4    ORDER.

17:30:39 5         WHAT CONFIDENCE COULD WE POSSIBLY HAVE

17:30:42 6    THAT THEY ARE GOING TO PROTECT THE VALUE OF THAT

17:30:44 7    ASSET?  IT'S SIMPLY NOT THERE.  WE HAVE ZERO

17:30:47 8    CONFIDENCE IN THEM.

17:30:48 9         THE COURT:  WELL, HERE'S THE DILEMMA THAT

17:30:51 10   I SEE.  I CONTINUE TO BELIEVE THAT THE JUDGMENT WAS

17:30:53 11   PROPERLY ENTERED HERE.

17:30:54 12        BUT I ALSO BELIEVE THAT ANY JUDGMENT IS

17:31:01 13   APPEALABLE TO A HIGHER COURT, ANY JUDGMENT OF THIS

17:31:04 14   COURT.

17:31:05 15        AND I'M IN A CIRCUMSTANCE WHERE IT'S NOT

17:31:10 16   A MONEY JUDGMENT WHERE A BOND WOULD BE SUFFICIENT,

17:31:16 17   SO THAT I'M TRYING TO WALK MY WAY THROUGH A PROCESS

17:31:20 18   BY WHICH, EVEN IF I'M DISPOSED TO DENY THE STAY OF

17:31:24 19   EXECUTION, I WON'T DENY THE RIGHT TO APPEAL.

17:31:31 20        SO IF I UNDERSTAND THAT THE EXECUTION

17:31:38 21   COULD AMOUNT TO THE PLAINTIFF HERE TAKING THE

17:31:44 22   UNUSUAL STEP OF SAYING, "WELL, NOW AS THE

17:31:47 23   SHAREHOLDER, I TERMINATE THE APPEAL," THE EXECUTION

17:31:51 24   WOULD BE, IN EFFECT, A PLACING OF THE RIGHT OF

17:31:55 25   APPEAL, BUT DENYING THE RIGHT TO APPEAL.  IT WOULD

46

TERMINATE BY THE EXECUTION.

I'VE NEVER FACED THAT SITUATION BEFORE, AND SO IT'S UNCHARTED WATER FOR ME.

AND SO THAT'S WHAT I NEED HELP WITH, BECAUSE UNLESS YOU CONVINCE ME THAT THERE SHOULD BE NO RIGHT TO APPEAL, I HAVE TO PUT THE OPPOSING PARTY TO MY JUDGMENT IN A POSITION SO THEY CAN CHALLENGE MY JUDGMENT.

MR. CHATTERJEE:  SO, YOUR HONOR, I THINK WHAT YOU'RE IDENTIFYING IS, IS THE CONFLICT THAT WE HAVE HERE OF HARDSHIPS.

WE PURCHASED AN ASSET.  WE WANT TO GET VALUE FOR THE ASSET.

AND WE ALSO SOUGHT PEACE, AND THERE'S A LOT OF HARDSHIP IN NOT ACKNOWLEDGING THAT PEACE.

THEIR PURPORTED HARDSHIP IS ESSENTIALLY THE RISK OF MOOTING AN APPEAL ON BEHALF OF CONNECTU.

IF YOU ALLOW INTERVENTION, YOUR HONOR, CANDIDLY, THAT MAY BECOME A NON-ISSUE DEPENDING ON WHATEVER RIGHTS THE INDIVIDUALS HAVE UPON INTERVENTION, BECAUSE AS YOUR HONOR NOTICED BEFORE, THEY ESSENTIALLY ARE ASSERTING THE SAME SORTS OF CLAIMS OF A THIRD PARTY COMPLAINANT.

NOW, WHEN YOU HAVE THESE TWO COMPETING

47

INTERESTS -- AND WE TALKED ABOUT THIS IN A FAIR
AMOUNT OF DETAIL IN OUR PAPERS -- THE VALUE OF A
STRATEGIC TRANSACTION, OR OF A CORPORATE
TRANSACTION, IS SOMETHING THAT IS LIMITED IN TIME,
AND THAT IS GIVEN A PRESUMPTION OF IRREPARABLE
HARM.

          THE MOOTNESS ON APPEAL ISSUE, THERE'S A
SPLIT IN THE, IN THE COURTS OVER WHETHER THAT
CONSTITUTES IRREPARABLE HARM OR NOT, BUT THE
MAJORITY OF THE COURTS FIND THAT THAT ISN'T
IRREPARABLE HARM.

          AND, YOUR HONOR, AGAIN, THEY KNEW THIS
COMING INTO THE MOTION TO ENFORCE HEARING WHEN THE
INDIVIDUALS DIDN'T OPPOSE THAT WE WERE GOING TO ASK
FOR THE COMPANY, BECAUSE THAT'S WHAT WE WERE ASKING
FOR IN THE MOTION TO ENFORCE.

          THE COURT:  DO YOU SEE -- WELL, I -- I
HEAR THAT AS MORE OF AN ARGUMENT TO DENY THE MOTION
TO INTERVENE, AND THAT PART I UNDERSTAND YOUR
POSITION ON.  I'M NOT SURE I'LL GO ALONG WITH IT,
BUT I UNDERSTAND IT.

          BUT I DIDN'T HEAR YOU RESPOND TO
MR. UNDERHILL'S CONCERN THAT IF I DON'T STAY
ENFORCEMENT AND I ORDER ENFORCEMENT, AND NOT TO BE
CONTEMPTUOUS OF THE COURT, THAT GO AHEAD AND COMPLY

17:34:07 1    AND TURN OVER THE SHARES AND THERE'S THIS EXCHANGE,

17:34:09 2    THAT WOULD PUT FACEBOOK IN A POSITION WHERE IT

17:34:11 3    COULD SAY, "AS CONNECTU, WE NOW DETERMINE TO

17:34:14 4    ABANDON THE APPEAL," AND EFFECTIVELY DENY TO THAT

17:34:18 5    LITIGANT THE RIGHT TO QUESTION MY JUDGMENT.

17:34:23 6         HOW DO YOU RESPOND TO THAT?

17:34:25 7         MR. CHATTERJEE:  YOUR HONOR, I DON'T

17:34:26 8    THINK THERE'S ANY -- I DON'T THINK MR. UNDERHILL'S

17:34:28 9    MADE ANY SECRET ABOUT WHAT HE'S GOING TO DO IF YOU

17:34:30 10   ORDER ENFORCEMENT OF THE ORDER YOU'RE ALREADY

17:34:32 11   ENFORCING AND THEY HAVE TO HAND OVER THE SHARES OF

17:34:35 12   THE COMPANY.

17:34:35 13        BY THE WAY, THEY'RE NOT EVEN IN GEORGE

17:34:37 14   FISHER'S HANDS YET.  THERE'S ANOTHER STEP WHERE HE

17:34:40 15   HAS TO SEEK A COURT ORDER FROM YOU TO ALLOW RELEASE

17:34:42 16   OF IT.

17:34:44 17        BUT LET'S ASSUME THAT THAT HAPPENED.  I'M

17:34:46 18   FAIRLY CERTAIN THAT MR. UNDERHILL IS GOING TO BE

17:34:48 19   RUNNING TO THE NINTH CIRCUIT SEEKING A STAY OF

17:34:50 20   EXECUTION OF THAT JUDGMENT AND SEEKING NINTH

17:34:53 21   CIRCUIT INTERVENTION ON THAT.

17:34:54 22        AND SO, YOU KNOW, EITHER WAY IT'S GOING

17:34:56 23   TO BE GOING TO THE NINTH CIRCUIT FOR RESOLUTION.

17:34:58 24        THE COURT:  LET ME GO BACK TO YOU,

17:35:00 25   MR. UNDERHILL, BECAUSE I EXPECTED THAT THAT WOULD

49

BE THE ANSWER, AND THAT IS THIS.

THIS IS SORT OF LIKE, AS I SAID, AN
INJUNCTIVE RELIEF, WHICH MEANS THAT I HAVE TO BE
CONVINCED TO STAY THIS, THAT THERE'S A LIKELIHOOD
OF SUCCESS ON THE MERITS.

MR. UNDERHILL:  RIGHT.

THE COURT:  AND IF I AM CONFIDENT, AS I
AM, IN MY JUDGMENT, WHAT WOULD BE THE BASIS FOR
THIS COURT STAYING EXECUTION?

MR. UNDERHILL:  RIGHT.

THE COURT:  AS OPPOSED TO YOUR SEEKING
SUCH A STAY FROM THE CIRCUIT, WHICH MIGHT TAKE A
DIFFERENT VIEW OF THE LIKELIHOOD OF SUCCESS ON THE
MERITS?

MR. UNDERHILL:  YOUR HONOR, WITH THE
COURT'S INDULGENCE, THEN, IN RESPONSE TO THAT
QUESTION, I WOULD LIKE TO SPEND FIVE MINUTES ON THE
LAW.

THE COURT:  YOU'VE GOT FIVE MINUTES AND
THEN I'M GOING TO BRING THIS TO A CLOSE VERY
QUICKLY IN DEFERENCE TO THE PROMISE I MADE TO MY
STAFF.

MR. UNDERHILL:  SURE, YOUR HONOR.

IN ADDITION TO WEDDINGTON, WHICH WE
BRIEFED AND I'M NOT GOING TO TALK ABOUT BECAUSE I'M

VERY MINDFUL WHAT OF YOU JUST SAID, I WOULD LIKE,
YOUR HONOR, TO GIVE YOU TWO MORE CASES WHICH WE
THINK FOLLOW THE SAME PROPOSITION.

ONE IS IN RE: IMPERIAL CREDIT INDUSTRIES,
527 F.3D 959, IT'S A NINTH CIRCUIT CASE; AND THE
OTHER ONE IS WOLFE V. SUPERIOR COURT, 8 CALIFORNIA
REPORTER 3D 649, AT PAGES 655 TO 656, AND THAT'S
THE CALIFORNIA COURT OF APPEALS.

IN WOLFE, THE COURT SAID, "WE HOLD THAT
IT IS REVERSIBLE ERROR FOR A TRIAL COURT TO REFUSE
TO CONSIDER SUCH EXTRINSIC EVIDENCE ON THE BASIS OF
THE TRIAL COURT'S OWN CONCLUSION THAT THE LANGUAGE
OF THE CONTRACT APPEARS TO BE CLEAR AND UNAMBIGUOUS
ON ITS FACE."

AND, YOUR HONOR, THAT'S WHAT WE THINK
HAPPENED HERE.  I THINK YOUR HONOR CONCLUDED THAT
THE TERM SHEET WAS CLEAR AND UNAMBIGUOUS ON ITS
FACE, DESPITE EVIDENCE THAT WE HAD SUBMITTED,
INCLUDING THE EXPERT TESTIMONY OF DONNA HITSCHERICH
THAT IT WAS INDEED UNCLEAR AS TO WHETHER IT WAS
SUPPOSED TO BE A MERGER OR A STOCK PURCHASE.

INDEED, IN THEIR OWN FILING, IN THEIR
ORIGINAL FILING WITH THE COURT WHERE THEY ASKED THE
COURT TO ENFORCE IT, THEY VARIOUSLY IN THEIR
DOCUMENTS REFERRED TO IT'S A MERGER OR A STOCK

51

PURCHASE.

WOLFE CLEARLY SAYS THAT YOU ARE ALLOWED TO LOOK, AND INDEED IN THIS CASE, THE COURT ERRED BY NOT LOOKING AT THE SUBSEQUENT EVENTS.

IN LOOKING AT THE NINTH CIRCUIT LAW THAT I JUST GAVE YOU, THE COURT SAID, "MUTUAL INTENT IS DETERMINED BY THE WORD 'USED' IN THE AGREEMENT, AS WELL AS EXTRINSIC EVIDENCE OF SUCH OBJECTIVE MATTERS AS THE SURROUNDING CIRCUMSTANCES UNDER WHICH THE PARTIES NEGOTIATED OR ENTERED INTO THE CONTRACT, THE OBJECT, NATURE, AND SUBJECT MATTER OF THE CONTRACT, AND THE SUBSEQUENT CONDUCT OF THE PARTIES."

SO, YOUR HONOR, WE BELIEVE THAT IT WAS ERROR, UNDER CLEAR NINTH CIRCUIT AND CALIFORNIA LAW, FOR THE COURT TO LOOK AT THE FOUR CORNERS AND SAY, "LOOK, IT'S CLEAR AND UNAMBIGUOUS TO ME.  I'M GOING TO ENFORCE IT THIS WAY."

WITH RESPECT TO THE FRAUD CLAIM, YOUR HONOR, THE CASE LAW IS UNDISPUTED, AS LONG -- AS FAR AS WE KNOW.

WE FOUND TWO CASES, TWO APPELLATE CASES, THAT SAY NO RELIANCE IS REQUIRED UNDER 29(B) WHEN YOU'RE ALLEGING SECURITIES FRAUD.

NOW, THE COURT CITED THE PETRO-VENTURES

CASE. THAT SEEMS TO BE A VERY IMPORTANT CASE. I WOULD RESPECTFULLY ASK, YOUR HONOR, IF PERHAPS YOU'D TAKE ANOTHER LOOK AT IT. PETRO-VENTURES WAS A CASE WHERE A RELEASE WAS HELD TO BAR A SECURITIES FRAUD CLAIM.

WE HAVE NEVER SAID THAT YOU CAN'T RELEASE A SECURITIES FRAUD CLAIM.

THE DIFFERENCE, HOWEVER, IS THAT IN PETRO-VENTURES, THEY WERE NOT TALKING ABOUT FRAUD IN THE INDUCEMENT. THAT WAS NOT A SITUATION WHERE SOMEONE SAYS, "HERE'S THE SECURITIES. IN THE SAME CONTRACT THAT I'M GIVING YOU THE SECURITIES, I WANT YOU TO SIGN A RELEASE THAT'S GOING TO INDEMNIFY ME, OR PROTECT ME, FROM ANY SORT OF FRAUD CLAIM."

THAT SORT OF WAIVER, YOU KNOW, IN THE SAME CONTRACT, "HERE'S THE SECURITIES, AND BY THE WAY, I WANT YOU TO RELEASE ME IF I'M DEFRAUDING YOU RIGHT NOW," THAT IS NON-WAIVABLE, YOUR HONOR.

THAT'S SECTION 29(A) OF THE SECURITIES EXCHANGE ACT OF 1934. CONGRESS PUT THAT IN THERE TO MAKE SURE THAT SOMEBODY DRAFTING, YOU KNOW, CONTRACTS WHERE YOU'RE SELLING SECURITIES CAN'T STICK SOMETHING IN THERE THAT SAYS, "OH, YOU'RE WAIVING ANY SORT OF FRAUD CLAIM."

THAT, YOUR HONOR, IS WHY WE ARE

53

17:39:13 1 COMPLETELY DIFFERENT FROM PETRO-VENTURES. WE ARE A

17:39:16 2 FRAUD IN THE INDUCEMENT CASE.

17:39:18 3 OUR ALLEGATION, AND OBVIOUSLY THEY DENY

17:39:20 4 IT, BUT OUR ALLEGATION IS THAT WE WERE DEFRAUDED,

17:39:23 5 WE WERE DEFRAUDED INTO ENTERING INTO THE SETTLEMENT

17:39:25 6 AGREEMENT.

17:39:26 7 THAT MAKES US COMPLETELY DIFFERENT, YOUR

17:39:28 8 HONOR, FROM PETRO-VENTURES.

17:39:31 9 THE -- THE -- AND I DO JUST WANT TO

17:39:33 10 UNDERSCORE, THEY MAKE A BIG DEAL OUT OF 29(B).

17:39:36 11 THEY SAY IT APPLIES TO CONTRACTS, NOT TRANSACTIONS.

17:39:38 12 I'M NOT EVEN SURE I UNDERSTAND IT.

17:39:40 13 BUT IF IT DOES APPLY TO CONTRACTS, WHICH

17:39:44 14 IS WHAT THEY SAY IT DOES, THAT'S WHAT WE'RE LOOKING

17:39:47 15 FOR HERE. WE ARE LOOKING TO AVOID THE EXACT

17:39:50 16 CONTRACT THAT WE BELIEVE WE WERE DEFRAUDED INTO

17:39:52 17 ENTERING INTO.

17:39:53 18 AND, YOUR HONOR, I JUST -- I DON'T SEE

17:39:55 19 HOW THE NINTH CIRCUIT COULD SEE IT DIFFERENTLY. I

17:39:59 20 SAY THAT RESPECTFULLY, YOUR HONOR.

17:40:00 21 AT THE VERY LEAST, THERE ARE, YOU KNOW,

17:40:03 22 SUBSTANTIAL QUESTIONS OF LAW HERE THAT NEED TO BE

17:40:06 23 ADDRESSED BY THE NINTH CIRCUIT.

17:40:08 24 I THINK FUNCTIONALLY WHAT THE COURT HAS

17:40:10 25 DONE IS CREATED A SETTLEMENT EXCEPTION TO

54

17:40:15 1 SECURITIES FRAUD.  IT'S THE IDEA THAT IF YOU HAVE A

17:40:18 2 CONTRACT AND THERE'S SECURITIES FRAUD, YOU CAN'T

17:40:23 3 REMEDY IT IF IT'S A SETTLEMENT AGREEMENT.

17:40:26 4 OR -- OR STATED -- AND I DO WANT TO BE

17:40:29 5 FAIR.  PERHAPS I SHOULD STATE IT DIFFERENTLY.

17:40:32 6 I'M NOT SURE IF IT'S A SETTLEMENT

17:40:33 7 EXCEPTION TO SECURITIES FRAUD OR IF IT'S LIKE A

17:40:36 8 MEDIATION EXCEPTION TO SECURITIES FRAUD, THAT IF

17:40:39 9 THERE'S A MEDIATION INVOLVED, THAT IT SOMEHOW

17:40:42 10 OBVIATES THE FRAUD.

17:40:44 11 AND, YOUR HONOR, EVEN IF THE COURT

17:40:45 12 BELIEVED THAT WERE THE CORRECT DIRECTION OF THE

17:40:48 13 LAW, I MEAN, THAT'S CONTRARY TO WHAT CONGRESS HAS

17:40:51 14 DECREED.

17:40:52 15 CONGRESS HAS SAID THAT YOU CAN VOID A, A

17:40:57 16 CONTRACT THAT IS IN VIOLATION OF THE SECURITIES

17:40:59 17 LAWS.

17:41:00 18 WE DID FIND A CASE, YOUR HONOR, WHEN YOU

17:41:03 19 REQUESTED IT, THAT DEALT WITH SETTING ASIDE A

17:41:07 20 SETTLEMENT AGREEMENT.

17:41:08 21 IN THAT SETTLEMENT AGREEMENT, THERE WERE

17:41:10 22 VIOLATIONS OF MARGIN REQUIREMENTS AND, NONETHELESS,

17:41:12 23 THE SECOND CIRCUIT SET ASIDE THE, THE CONTRACT, YOU

17:41:15 24 KNOW, WHICH WAS A SETTLEMENT AGREEMENT.  THAT WAS

17:41:18 25 PEARLSTEIN, YOUR HONOR.

NOW, THE COURT -- THE OTHER SIDE HAS
NOTED THAT THAT WAS OVERRULED.  IT WAS, BUT IT WAS
ON DIFFERENT GROUNDS.

EXCUSE ME.

IT WAS NOT ON THE 29(B) GROUND.

BUT THAT CASE UNAMBIGUOUSLY HELD THAT
UNDER THOSE CIRCUMSTANCES, BECAUSE THERE HAD BEEN A
VIOLATION OF THE MARGIN REQUIREMENTS, BECAUSE THE
MARGIN REQUIREMENT WAS A -- IS A VIOLATION OF
FEDERAL SECURITIES LAW, THAT THE SETTLEMENT
AGREEMENT WAS SET ASIDE.

NOW, IN THE COURT'S OPINION, THE COURT
CORRECTLY NOTED THAT THAT WAS MARGIN REQUIREMENTS,
NOT FRAUD, AND THAT'S TRUE, YOUR HONOR.

BUT THE STATUTE DOESN'T DISTINGUISH
WHATSOEVER BETWEEN FRAUD AND MARGIN REQUIREMENTS.
IT SAYS IF YOU VIOLATE THE SECURITIES LAWS, YOU CAN
VOID THE CONTRACT.

SO, I MEAN, AT THE VERY LEAST, YOUR
HONOR, I THINK WE HAVE EXTREMELY WEIGHTY ARGUMENTS
HERE.

THERE IS ALSO THE IDEA IN THE FEDERAL
RULES GOVERNING MEDIATION HERE IN THIS COURT THAT
UNDER SOME CIRCUMSTANCES, THE COURT SHOULD PIERCE
THE MEDIATION VEIL, AND WE ARGUED IN OUR PAPERS WHY

WE THOUGHT THE MEDIATION VEIL SHOULD BE PIERCED HERE.

AND, AGAIN, UNLESS I MISUNDERSTOOD THE COURT'S OPINION, YOUR HONOR, I THINK -- AT LEAST THE OPINION DOES NOT REFLECT, IN ADDRESSING A CONSIDERATION OF THE POSSIBLE EXCEPTIONS THAT WOULD LEAD ONE TO PIERCE THE MEDIATION VEIL, EVEN THOUGH THE FEDERAL RULES OF THIS DISTRICT SPECIFICALLY DO ALLOW FOR EXCEPTIONS IN, IN PIERCING MEDIATION.

SO AT THE END OF -- AND ONE LAST ISSUE.

OPPOSING COUNSEL JUST REFERRED TO THIS MOOTNESS ISSUE AND SAID THE COURTS ARE SPLIT ON WHETHER OR NOT DENYING SOMEONE AN APPEAL IS ENOUGH TO BE IRREPARABLE HARM.

AND, YOUR HONOR, AGAIN, WITH ALL RESPECT, THAT'S JUST PLAIN WRONG.

I MEAN, WE HAVE FOUND SEVERAL ARTICLE III DECISIONS THAT FLATLY HOLD THAT IF YOU'RE GOING TO BE DENIED YOUR APPEAL, THAT IS IRREPARABLE HARM. WE HAVE THREE OF THEM. THERE'S TWO IN THE BRIEF AND I CAN GIVE ONE MORE CITATION ON IT. THOSE ARE THE ONLY ONES WE FOUND.

WHEN COUNSEL SAYS THERE'S SOME SPLIT OF AUTHORITY, WHAT HE'S REFERRING TO ARE BANKRUPTCY COURTS, AND IN THE BANKRUPTCY COURTS -- AND EVEN

THERE THERE'S A SPLIT, IN BANKRUPTCY COURTS -- WHEN THEY'RE TALKING ABOUT MOOTNESS, THEY'RE NOT TALKING ABOUT CONSTITUTIONAL MOOTNESS. THEY'RE TALKING ABOUT EQUITABLE MOOTNESS.

AND THIS IS A FEATURE WHICH IS COMPLETELY UNIQUE TO BANKRUPTCY LAW. IT'S THE WHOLE IDEA THAT ONE GUY SHOULD NOT BE ABLE TO CHALLENGE ON APPEAL ONE TRANSACTION IF IT'S GOING TO BE THE THREAD THAT PULLS APART, YOU KNOW, AN ENTIRE REORGANIZATION INVOLVING 200, YOU KNOW, COMPANIES AND INDIVIDUALS.

SO IN THE BANKRUPTCY CONTEXT, YES, THERE ARE SOME CASES, AND AT LEAST ONE COURT SAID IT WAS THE MAJORITY, ALTHOUGH IT SEEMED TO ME FROM READING THE CASE IT LOOKED PRETTY CLOSE, THAT MOOTNESS, BUT NOT CONSTITUTIONAL MOOTNESS, IT'S THIS EQUITABLE MOOTNESS, WOULD NOT BE IRREPARABLE HARM.

AND YOUR HONOR, IF YOU'RE INTERESTED, I CAN CERTAINLY GIVE YOU SOME CASES ON THIS. THE CASES THAT -- THE ARTICLE III CASES THAT SAY IT IS IRREPARABLE HARM WE CITED IN OUR MOTION FOR A STAY AT PAGES 5 AND 7. ANOTHER ONE IS A FIRST CIRCUIT CASE, PROVIDENCE JOURNAL VERSUS FEDERAL BUREAU OF INVESTIGATION AT 595 F.2D 889 AT 890.

NOW, THE BANKRUPTCY COURTS AND THE DISCUSSION OF THESE POLICY REASONS AND THIS IDEA

THAT IN BANKRUPTCY COURT, MOOTNESS IS A VERY, VERY DIFFERENT THING THAN IT IS IN ARTICLE III COURTS, I WOULD REFER THE COURT TO THE NINTH CIRCUIT'S DECISION, 2007, IN SUTER, S-U-T-E-R, VERSUS GOEDERT, 504 F.3D 982, AND IT'S AT PAGE 986.

AND YOU ALSO WANT TO BE -- AS WE TRY TO THINK THROUGH, YOU KNOW, HOW IS THERE SOME WAY THAT WE CAN PRESERVE OUR APPEAL AND YET FACEBOOK GETS WHATEVER BENEFIT THEY NOW ALLEGE IS A RESULT OF GETTING THE COMPANY, THERE IS A DOCTRINE, IT'S ACTUALLY MENTIONED IN FACEBOOK'S PAPERS, CALLED DOMINIX LITIS, WHICH IS THE IDEA THAT IF ONE SIDE CONTROLS BOTH COMPANIES AND IT -- AND IT'S FORMAL AND ACTUAL CONTROL, I THINK IS THE LANGUAGE, THAT IT'S MOOT, YOU KNOW, THE FED CIRCUIT, OR THE APPELLATE COURTS WILL GET RID OF IT ON MOOTNESS GROUNDS.

SO MY CONCERN, WHAT I DO WANT TO BE CLEAR ABOUT HERE, IS THAT IF THEY -- IF WE TURNED IT OVER TO FACEBOOK, EVEN IF THEY AGREED TO KEEP IT SEPARATE, I THINK THERE WOULD BE A SERIOUS CONSTITUTIONAL ISSUE WITH RESPECT TO WHETHER OR NOT THEY'RE EVEN OWNING IT, THAT IS, THE COMPANY AS DISTINCT FROM BEING ABLE TO OPERATE IT, WOULD TRIGGER THIS DOCTRINE OF DOMINIX LITIS.

I'D ALSO LIKE TO MAKE ONE LAST POINT, AND
IT'S THIS IDEA THAT WE SOMEHOW, YOU KNOW, ADVISED
THEM FOR THE FIRST TIME AT 2:14 OR WHATEVER IT WAS,
I THINK THAT'S JUST OVER THE TOP.

AND I'M NOT SOMEONE THAT GETS OFFENDED
EASILY, BUT FROM THE VERY BEGINNING, ALL THE WAY
BACK AT ORAL ARGUMENT ON JULY 2, MY PARTNER,
DAVID BARRETT, MADE THE POINT THAT WE WERE LOOKING
FOR SOME WAY TO HOLD THE STATUS QUO.

I HAVE WORKED BOTH INDIVIDUALLY WITH
MR. FISHER, AND IN CONVERSATIONS WITH
MR. CHATTERJEE ON THE LINE WHEN MR. FISHER WAS
THERE TO TRY TO REACH SOME KIND OF A, YOU KNOW,
ACCOMMODATION WHERE WE COULD GO FORWARD.

I HAVE NEVER IN MY LIFE, YOUR HONOR, BEEN
IN CONTEMPT OF A COURT ORDER, AND IT'S NOT
SOMETHING THAT I'M GOOD AT DOING OR COMFORTABLE AT
DOING.

BUT I'VE GOT TO FIGURE OUT SOME WAY THAT
WE GET A, AN APPEAL TO THE NINTH CIRCUIT.

ONE OF THE THINGS THAT I'D LIKE TO
BRIEFLY TOUCH ON IS THE PRIOR MOTION BECAUSE I
THINK IT DIRECTLY RELATES HERE.

I DO BELIEVE MR. CHATTERJEE'S STRATEGY
IS, YOU KNOW, IF THE INDIVIDUALS HAVE TO COME IN,

17:47:27 1 THAT THEIR, THEIR ABILITY IS GOING TO BE SO

17:47:33 2 CIRCUMSCRIBED THAT BY THE TIME THEY GET TO THE

17:47:35 3 NINTH CIRCUIT, MR. CHATTERJEE IS GOING TO BE

17:47:38 4 ARGUING THAT THEY SET IT OUT IN THE DISTRICT COURT,

17:47:40 5 SO THEREFORE, THEY'RE NOT ALLOWED TO CHALLENGE ALL

17:47:42 6 THESE ISSUES I'VE BEEN TALKING ABOUT, THIS IDEA OF

17:47:44 7 HOW YOU INTERPRET 29(A), HOW YOU INTERPRET 29(B),

17:47:48 8 THE IDEA OF THE NINTH CIRCUIT LAW AND THE

17:47:50 9 CALIFORNIA REPORTER DECISION ABOUT HOW THE JUDGE IS

17:47:53 10 REQUIRED TO LOOK BEYOND THE FOUR CORNERS OF THE

17:47:56 11 AGREEMENT.

17:47:56 12 MY CONCERN IS, YOU KNOW, HIS ARGUMENT IS

17:47:58 13 GOING -- THEY DON'T EVEN GET TO MAKE THOSE

17:48:01 14 ARGUMENTS. THEY CAN ARGUE ABOUT WHETHER OR NOT THE

17:48:03 15 JUDGMENT APPLIES TO THEM, BUT THEY'RE NOT GOING TO

17:48:05 16 GET TO DO THE UNDERLYING MERITS.

17:48:07 17 AND THEN, IF YOU CAN FIGURE OUT A WAY TO

17:48:09 18 KEEP CONNECTU FROM BEING ABLE TO RAISE THOSE THINGS

17:48:13 19 AT THE NINTH CIRCUIT, HE WILL HAVE WON BY DEFAULT.

17:48:16 20 AND I'M TRYING TO PREVENT THAT, YOUR

17:48:18 21 HONOR. MY CLIENT IS OPEN TO ANYTHING TO PRESERVE A

17:48:21 22 REAL APPEAL TO THE NINTH CIRCUIT WHERE WE CAN RAISE

17:48:24 23 WHAT WE THINK ARE EXTREMELY STRONG LEGAL ARGUMENTS.

17:48:28 24 THAT'S ALL I HAVE, YOUR HONOR.

17:48:29 25 MR. O'SHEA: YOUR HONOR, YOUR HONOR --

OH, I'M SORRY.

YOUR HONOR, ON BEHALF OF THE INDIVIDUAL SHAREHOLDERS, WE JOIN IN THE MOTION FOR A STAY.

THE COURT:  THANK YOU.

MR. CHATTERJEE:  YOUR HONOR, PAGE 11 OF YOUR ORDER, THIS IS WHAT YOU SAID.  "WITHOUT A SHOWING BY DEFENDANTS OF A MATERIAL MISREPRESENTATION OR OMISSION IN THE NEGOTIATIONS, THE COURT FINDS NO BASIS TO DECLINE ENFORCEMENT."

THAT'S A FACTUAL FINDING, YOUR HONOR. THERE'S NO -- THERE'S NO LEGAL, SUBSTANTIAL QUESTION OF LAW THERE ON THE MERITS.

WE CAN GO THROUGH THE REST OF WHAT WE PUT IN OUR BRIEF, BUT IT'S GETTING LATE IN THE DAY AND I DON'T WANT TO SPEND TIME ON THAT.

ON THE HARM ISSUE, I'LL JUST POINT YOUR HONOR TO PAGES 14 AND 15 OF OUR BRIEF.  WE CITE ALL THE CASES RELATED TO THIS MOOTNESS ISSUE WE'RE DISCUSSING.

WE ARE GROSSLY OVER TIME WITH WHAT YOUR HONOR HAD ASKED, SO I DON'T WANT TO SPEND MORE TIME UNLESS THERE'S A QUESTION THE COURT WOULD LIKE US TO ADDRESS.

THE COURT:  NO.  I WAS GOING TO PUT A QUESTION TO MR. FISHER, SINCE I HAVE THE BENEFIT OF

17:49:23 1    HIS PRESENCE, AND THEN I WANT TO TAKE THIS UNDER

17:49:28 2    SUBMISSION AND DECIDE WHAT TO DO.

17:49:32 3         BUT ONE OF THE SUGGESTIONS THAT I'VE HAD

17:49:37 4    IS THAT YOU BE PUT IN A POSITION WHERE YOU'RE

17:49:42 5    OPERATING THIS COMPANY.

17:49:44 6         THAT'S INCONSISTENT WITH WHAT I THINK IS

17:49:47 7    ULTIMATELY TO THE BENEFIT OF THE JUDGMENT THAT'S

17:49:50 8    BEEN ENTERED.

17:49:52 9         BUT IS THAT -- THAT'S A TASK THAT I

17:49:54 10   HAVEN'T ASSIGNED TO YOU AT THIS POINT.

17:49:56 11        WHAT'S YOUR COMMENT ON YOUR WILLINGNESS

17:49:58 12   TO UNDERTAKE THAT SHOULD THE COURT FIND THAT TO BE

17:50:02 13   EFFICACIOUS?

17:50:04 14        MR. FISHER:  WELL, BASED UPON

17:50:05 15   MR. UNDERHILL'S REPRESENTATION OF WHAT IT IS, I

17:50:07 16   DON'T HAVE ANY PROBLEM DOING THAT OR, YOU KNOW,

17:50:10 17   PURSUANT TO COURT ORDERS OR WITH THE CONSENT OF THE

17:50:14 18   PARTIES.

17:50:15 19        I THINK THE MAIN POINT THERE, AND IT'S

17:50:17 20   ONE THAT WE'VE COME TO LOGGERHEADS IN TRYING TO

17:50:21 21   REACH AN AGREEMENT, IS OPERATING AN EXISTING

17:50:25 22   COMPANY VERSUS CHANGES OR WHATEVER.  THAT'S ONE

17:50:27 23   ELEMENT.

17:50:28 24        BUT THEN HAVING TO DO WITH THE RIGHT TO

17:50:29 25   APPEAL AND HAVING TO DO WITH THE MALPRACTICE CASE,

63

17:50:32 1    YOU KNOW, THOSE ARE SEPARATE.  IT'S MORE OF

17:50:34 2    SEPARATION OF A BUSINESS THAN THE CORPORATE ENTITY.

17:50:38 3            SO, YOU KNOW -- AND WE EXPLORED, OR TRIED

17:50:41 4    TO EXPLORE, SOME WAYS OF, OF DEALING WITH, WITH THE

17:50:44 5    RIGHT TO APPEAL OR WITH THE MALPRACTICE CASE AND WE

17:50:49 6    DIDN'T GET VERY FAR.

17:50:50 7            SO I CAN'T HOLD OUT A WHOLE LOT OF

17:50:53 8    ENCOURAGEMENT ON WAYS TO DEAL WITH THOSE.  WE COME

17:50:56 9    TO THE SAME POSITIONS THAT WE ARE IN NOW AS TO

17:50:59 10   WHETHER THERE IS A RIGHT TO APPEAL OR NOT.

17:51:01 11           MR. CHATTERJEE:  YOUR HONOR, IF THE

17:51:02 12   COMPANY WERE -- THE FIRST STEP IS OBVIOUSLY TO GET

17:51:05 13   THE SHARES INTO MR. FISHER'S HANDS, AND THAT, THAT

17:51:09 14   NEEDS TO HAPPEN SOMEHOW.

17:51:10 15           BUT IF HE WERE TO OPERATE THE COMPANY, I

17:51:13 16   THINK THERE WOULD STILL BE A PRETTY SUBSTANTIAL

17:51:15 17   BOND NECESSARY BECAUSE WE WOULDN'T BE ABLE TO GET

17:51:18 18   THE VALUE THAT WE'VE PAID FOR.

17:51:20 19           WHETHER IT'S IN HIS HANDS OR IN THEIRS,

17:51:23 20   WE'RE STILL NOT GETTING THE VALUE OF WHAT WE PAID

17:51:25 21   FOR THROUGH THE SETTLEMENT.

17:51:28 22           SO I'M NOT SURE -- FROM THAT PERSPECTIVE,

17:51:32 23   I ALSO SEE A SIGNIFICANT PROBLEM.

17:51:33 24           THE COURT:  DID I UNDERSTAND YOU TO SAY

17:51:34 25   THAT CONNECTU HAS INITIATED THIS LITIGATION, THIS

MALPRACTICE CASE, OR IS THAT DONE BY THE
INDIVIDUALS ONLY?

MR. CHATTERJEE:  BOTH, YOUR HONOR.
MR. O'SHEA CURRENTLY REPRESENTS CONNECTU AGAINST
THE -- AGAINST THE QUINN, EMANUEL FIRM.

MR. O'SHEA:  MAY I SPEAK TO THAT, JUDGE?
FIRST OF ALL, IT'S NOT TRUE.

WHAT HAPPENED IS QUINN, EMANUEL FILED AN
ARBITRATION, YOUR HONOR, AND WE MOVED TO STAY THE
ARBITRATION.

IT WAS A MOTION.  IT'S NOT A -- THERE
HASN'T BEEN A MALPRACTICE ACTION FILED AT THIS
TIME.

JUSTICE LOWE, WHO WE ARGUED THE MOTION IN
FRONT OF, WAS VERY CONCERNED ABOUT QUINN, EMANUEL'S
TACTICS IN THEIR RETAINER LETTER, WHICH SHORTENS
THE TIME LIMITATIONS, THE STATUTE OF LIMITATIONS
FOR THE CLIENT, BUT NOT FOR THEM.  THEY HAVE A SIX
YEAR STATUTE.

IT SHORTENS THE ALREADY SHORT STATUTE OF
THREE YEARS AGAINST THE LAWYER TO ONE YEAR, AMONG
OTHER THINGS THAT ARE IN THEIR RETAINER LETTER.

JUSTICE LOWE HAS THAT NOW UNDER
ADVISEMENT AND HE'S SAID HE WILL BE QUICK WITH A
DECISION.

17:52:33 1          BUT THE STATEMENT IS INACCURATE TO SAY

17:52:35 2     THAT WE BROUGHT AN ACTION.  WE DIDN'T FIRE THE

17:52:37 3     FIRST SHOT, JUDGE.

17:52:38 4          IT WAS QUINN, EMANUEL WHO DID IT.

17:52:40 5          WE FILED A MOTION TO STAY THE ARBITRATION

17:52:42 6     BECAUSE WE OFFERED QUINN, EMANUEL -- AND I HAVE

17:52:45 7     E-MAIL EXCHANGES TO SHOW THIS -- WE OFFERED QUINN,

17:52:48 8     EMANUEL A STANDSTILL IF THEY WOULD TOLL THE STATUTE

17:52:51 9     THAT'S CONTAINED IN THEIR RETAINER LETTER THAT

17:52:53 10    WOULD HAVE EXPIRED WHILE THIS APPEAL WAS PENDING.

17:52:55 11    WE WERE VERY CONCERNED ABOUT THAT.

17:52:57 12         THEY REFUSED TO DO THAT, AND THAT'S WHY

17:52:59 13    WE MOVED TO STAY THE ARBITRATION.

17:53:01 14         AS WE STAND HERE, JUDGE, THERE IS NO

17:53:04 15    MALPRACTICE ACTION AGAINST QUINN, EMANUEL.

17:53:06 16         MR. CHATTERJEE:  YOUR HONOR --

17:53:07 17         THE COURT:  AND THEN I WOULD WISH

17:53:09 18    CONNECTU TO CONFIRM TO ME THAT YOU HAVE FILED, AND

17:53:13 19    THERE IS CURRENTLY PENDING, A NOTICE OF APPEAL FROM

17:53:16 20    THE JUDGMENT.

17:53:16 21         MR. UNDERHILL:  THAT IS CORRECT, YOUR

17:53:18 22    HONOR.

17:53:18 23         AND OUR BRIEF, BY THE WAY, IS DUE IN THE

17:53:21 24    NINTH CIRCUIT, I THINK IT'S AUGUST 15.  PLEASE

17:53:23 25    DON'T HOLD ME TO THAT, BUT IT'S SOMETHING LIKE

17:53:26 1    THAT.

17:53:27 2                AND, YOUR HONOR, MAYBE THIS IS A GOOD

17:53:29 3    TIME TO BRING UP THIS EXPEDITED APPEAL THING.  I'LL

17:53:31 4    AGREE RIGHT NOW.  WE'LL EXPEDITE IT.  WE WILL

17:53:33 5    PURSUE IT LIKE CRAZY.

17:53:34 6                THE COURT:  THAT'S NOT SOMETHING THAT

17:53:35 7    WOULD BE BENEFICIAL TO DISCUSS HERE BECAUSE THAT'S

17:53:37 8    NOT SOMETHING THAT THIS COURT COULD ACCEPT OR

17:53:39 9    CONTROL OR DO ANYTHING ABOUT.

17:53:41 10               MR. UNDERHILL:  BUT MR. CHATTERJEE COULD

17:53:43 11   IF HE WAS WILLING TO AGREE TO IT, AND HE DOESN'T.

17:53:45 12               THE COURT:  BUT THIS IS THE IMPROPER

17:53:47 13   FORUM FOR THAT.

17:53:48 14               MR. UNDERHILL:  OF COURSE, YOUR HONOR.

17:53:50 15               THE COURT:  WELL, I'VE BENEFITED FROM THE

17:53:52 16   ARGUMENT.

17:53:53 17               I ALSO WANT TO KEEP TO THE TIME, SO I'M

17:53:55 18   GOING TO TAKE THIS MATTER UNDER SUBMISSION.

17:53:57 19               I'LL ASSURE BOTH SIDES, OR ALL THREE

17:54:01 20   SIDES I GUESS NOW, THAT I'LL MAKE A DECISION VERY

17:54:04 21   QUICKLY.

17:54:05 22               I'M NOT SURE I CAN GET IT OUT -- I'M IN

17:54:07 23   THE MIDDLE OF A CRIMINAL TRIAL AND THE JURY IS OUT,

17:54:10 24   SO THAT'LL OCCUPY ME A LITTLE BIT TOMORROW.

17:54:13 25               BUT I DO WANT TO BRING THIS TO A QUICK

17:54:16  1   DECISION SO THAT ANY ACTION THAT YOU WANT TO TAKE

17:54:18  2   CAN BE TAKEN.

17:54:19  3           I'VE BEEN TOLD OF ONE DEADLINE THAT HAS

17:54:21  4   PASSED.  WHEN IS -- WHEN IS THE NEXT EVENT THAT

17:54:24  5   NEEDS TO TAKE PLACE WITH RESPECT TO THE ORDER THAT

17:54:28  6   I PUT IN PLACE AS TO THE SEQUENCE OF EVENTS TO

17:54:31  7   CARRY OUT THE JUDGMENT?

17:54:32  8           MR. CHATTERJEE:  THAT WAS THE --

17:54:33  9           MR. UNDERHILL:  I THINK THAT FALLS IN

17:54:34  10  YOUR COURT, YOUR HONOR.

17:54:35  11          WITH RESPECT TO THE PARTIES' SUBMITTED

17:54:37  12  PROPOSED DRAFT RELEASES, I BELIEVE THE COURT'S

17:54:40  13  ORDER SAYS THAT THE COURT WILL THEN TAKE THOSE AND,

17:54:44  14  YOU KNOW, SUBMIT WHAT IS TO BE THE -- WHAT IS

17:54:46  15  SUPPOSED TO BE THE FINAL RELEASE.

17:54:47  16          THE COURT:  OKAY.  AND THEN THERE WAS

17:54:49  17  SOME MENTION OF A DEFAULT WITH SOMEBODY TO THE

17:54:52  18  SUBMISSION OF STOCK.

17:54:53  19          MR. CHATTERJEE:  YES, YOUR HONOR.

17:54:54  20          THERE WERE TWO THINGS THAT WERE DUE ON

17:54:56  21  MONDAY FROM BOTH SETS OF PARTIES.  ONE OF THEM WERE

17:54:59  22  THE DISMISSALS OF THE CASES, AS OPPOSED TO THE

17:55:02  23  RELEASES.

17:55:03  24          AND IN OUR CONVERSATIONS WITH MR. FISHER,

17:55:06  25  WE -- AT LEAST MR. FISHER AND I, I DON'T THINK

68

17:55:08 1    MR. UNDERHILL WAS ON THE PHONE -- DECIDED THAT HE

17:55:11 2    SHOULD BE THE CUSTODIAN OF THEM, RATHER THAN JUST

17:55:13 3    FILING THEM.  THE ORDER WASN'T ENTIRELY CLEAR ON

17:55:16 4    THAT POINT.

17:55:16 5         AND THE SECOND WAS THE CONNECTU STOCK WAS

17:55:18 6    SUPPOSED TO BE IN HIS HANDS.

17:55:20 7         WE SUBMITTED EVERYTHING OF THOSE TWO

17:55:22 8    PIECES THAT WERE LEFT.

17:55:24 9         SO FAR CONNECTU AND THE INDIVIDUALS HAVE

17:55:27 10   SUBMITTED NOTHING.

17:55:28 11        MR. UNDERHILL:  THAT'S CORRECT, YOUR

17:55:29 12   HONOR.

17:55:30 13        AND IF I MAY SPECIFICALLY SAY SOMETHING

17:55:32 14   ABOUT THE DISMISSALS, PLEASE?

17:55:33 15        THE DISMISSALS ARE FOR TWO ACTIONS.

17:55:36 16   WE'RE ON THE OFFENSE IN MASSACHUSETTS.  THAT'S THE

17:55:40 17   MAIN CLAIM.  THAT'S THE ONE THAT LED TO THE

17:55:42 18   SETTLEMENT.

17:55:42 19        WE'RE ON THE DEFENSE IN CALIFORNIA.

17:55:45 20        THE COURT'S ORDER HAD TO DO WITH

17:55:49 21   DISMISSALS IN BOTH ACTIONS, AND AGAIN, ALTHOUGH

17:55:50 22   MUCH OF OUR DISCUSSION HERE TODAY IS FOCUSSED ON

17:55:53 23   THE STOCK BEING TRANSFERRED, THERE ARE INCREDIBLY

17:55:56 24   SERIOUS APPELLATE ISSUES ASSOCIATED WITH THE

17:55:59 25   DISMISSALS AS WELL.

69

17:56:00 1          SPECIFICALLY, IF WE VOLUNTARILY GO TO

17:56:03 2   MASSACHUSETTS OR VOLUNTARILY GO WITH A GUN AT OUR

17:56:08 3   HEAD FROM AN ORDER FROM A CALIFORNIA COURT AND FILE

17:56:11 4   A STIPULATION OF DISMISSAL, AT LEAST SO FAR, YOUR

17:56:14 5   HONOR, I DON'T SEE HOW WE CAN THEN RESURRECT THAT

17:56:18 6   CASE.

17:56:19 7          AND I'M NOT CERTAIN OF THIS, AND MAYBE

17:56:20 8   THERE'S A LEGAL WAY TO DO IT, IF WE GO UP TO THE

17:56:23 9   NINTH CIRCUIT, ARE SUCCESSFUL, WE COME BACK DOWN,

17:56:26 10  THE QUESTION THEN BECOMES, YOU KNOW, WHAT HAPPENS

17:56:28 11  TO OUR OFFENSIVE CLAIMS IF INDEED WE HAVE DISMISSED

17:56:31 12  IN MASSACHUSETTS?

17:56:33 13         THE COURT:  WELL, I UNDERSTAND THAT.

17:56:34 14  THAT'S WHY I INCLUDED IN MY JUDGMENT CERTAIN STEPS

17:56:38 15  WHERE YOU'D HAVE TO COME BACK TO THE COURT AND THAT

17:56:40 16  WOULD GIVE ME AN OPPORTUNITY TO DETERMINE WHETHER I

17:56:43 17  SHOULD ORDER THE PARTIES TO TAKE ANOTHER STEP.

17:56:46 18         OF COURSE, THAT IS ALL SUBJECT TO VARIOUS

17:56:49 19  APPEALS OR REQUESTS FOR WRITS DIRECTED TOWARD MY

17:56:53 20  CONDUCT.

17:56:54 21         YOU'RE DOING A GOOD JOB OF ANSWERING MY

17:56:58 22  QUESTIONS.  THIS IS GOING A LITTLE BIT BEYOND IT.

17:57:01 23         SO I JUST -- IT DOES SEEM TO ME THAT WHAT

17:57:04 24  I NEED TO DO NOW IS DECIDE WHETHER OR NOT TO GRANT

17:57:06 25  THE MOTION TO STAY AND TO GRANT THIS INTERVENTION.

TO THE EXTENT THERE HAS BEEN A DEFAULT,
WHEN IT CAME TO MY ATTENTION, I ASSUMED THAT IT WAS
IN VIEW OF THESE MOTIONS AND THAT THERE IS NO
CONTEMPT OF THE COURT, IT WAS SIMPLY JUST AN EFFORT
ON THE PART OF THE PARTIES TO TAKE ADVANTAGE OF
HAVING THE COURT HEAR THESE MATTERS BEFORE TAKING
ANOTHER STEP, THINKING THAT IT WOULD BE -- THAT
THEY MIGHT WIN AND, THEREFORE, NOT BE NECESSARY TO
TAKE THE STEP.

BUT I'LL TAKE THAT INTO CONSIDERATION IN
MAKING MY RULING HERE.

MR. CHATTERJEE:  YOUR HONOR,
RESPECTFULLY, I DISAGREE ON THAT ONE.

WE PUT OUR -- WE PUT A HUGE AMOUNT OF
CONSIDERATION INTO MR. FISHER'S HANDS ON MONDAY.

THE COURT:  YES.

MR. CHATTERJEE:  AND THEY'VE PUT NOTHING.

AND THIS ORDER SPECIFICALLY SAID UNLESS
OTHERWISE ORDERED BY THE COURT, THEY HAD TO DO IT
ON MONDAY.

THE COURT:  YES.

MR. CHATTERJEE:  THEY DIDN'T EVEN FILE --

THE COURT:  YES, I UNDERSTAND.

IF THERE -- IF YOU WANT TO, IN DUE
COURSE, BRING SOME MATTER BEFORE THE COURT ASKING

ME TO HOLD THEM IN CONTEMPT OF THAT, YOU CAN.

BUT I THINK THAT I CAN HANDLE JUST THE, THE DEFAULT BETWEEN WHATEVER PERIOD OF TIME THAT -- I THINK WE'RE TALKING A MATTER OF DAYS, THEN.

MR. CHATTERJEE:  A MATTER OF DAYS.

THE COURT:  I CAN HANDLE THAT IN SAYING "YOU'RE EXCUSED" OR "YOU'RE ORDERED TO DO IT" AND GIVE ANOTHER DEADLINE THAT WOULD BE REASONABLE UNDER THE CIRCUMSTANCES.

BUT I'LL TAKE THE MATTER UNDER SUBMISSION.

THANK YOU ALL.

MR. O'SHEA:  AND, YOUR HONOR, JUST ONE -- WE WILL NEED PROBABLY THE 30 DAYS UNDER RULE 4 FOR GOOD CAUSE SHOWN WHILE THE MATTER IS SUB JUDICE FOR OUR MOTION TO INTERVENE.

I DON'T KNOW HOW LONG IT'LL TAKE THE COURT TO ACT ON THAT, BUT I WOULD LIKE TO ALERT THE COURT THAT --

THE COURT:  YOU NEED 30 DAYS FOR WHAT?

MR. O'SHEA:  30 DAYS TO FILE OUR APPEAL, BECAUSE WE HAVEN'T FILED OUR APPEAL YET BECAUSE THE INTERVENTION HADN'T BEEN GRANTED.

THE COURT:  I'M NOT SURE I CONTROL THAT.

BUT TO THE EXTENT I CONTROL IT, I THOUGHT

YOU SAID 14 DAYS EARLIER.  I HEAR YOU NOW TO SAY 30

DAYS.

       MR. O'SHEA:  I GUESS I THOUGHT I WAS

GOING TO GET A DECISION TODAY, JUDGE, AND I GUESS I

PERHAPS WAS OVERLY OPTIMISTIC.

       THE COURT:  THANK YOU.

       MR. CHATTERJEE:  THANK YOU, YOUR HONOR.

       MR. UNDERHILL:  THANK YOU.

       (WHEREUPON, THE EVENING RECESS WAS

TAKEN.)