GEORGE C. FISHER (#40794)
2600 El Camino Real, Ste 410
Palo Alto, CA 94306
650 424 0821
Fax 650 475 1849
georgecfisher@gmail.com
Special Master

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISON

| | |
|---|---|
| The Facebook, Inc., et al., ) | Case No.: C 07-01389 JW |
| Plaintiffs, ) | |
| ) | **REPORT # 1 OF** |
| vs. ) | **SPECIAL MASTER** |
| ConnectU, et al., ) | |
| Defendants, ) | |

## INTRODUCTION

The factual background of this matter is stated in the Order Granting Plaintiffs Confidential Motion to enforce the Settlement Agreement (Document 461). On July 2, 2008, this Court appointed George C. Fisher as Master (Document 475) to take actions directed by the Court in its enforcement of the "Term Sheet & Settlement Agreement" signed February 22, 2008 ("Settlement Agreement"), Order Granting Plaintiff's Motion to Enforce the Settlement Agreement (Document 461) and the Judgment Enforcing Settlement Agreement (Document 476). As directed by the Court, the Master has (1) accepted and maintained monetary deposits and deposits of other documents mandated by the Judgment, (2) received notice of a lien upon the items deposited with the Master, (3) met and conferred with the parties and taken action to facilitate the orderly

Special Master Report#1 - 1

exchange of the consideration and maintain the integrity of the consideration and underlying business entities that are parties to the agreement, and (4) herewith makes recommendations to the Court of action which the Court should take in the enforcement of the Settlement Agreement. The Notice of Appointment provides that the Master may disburse proceeds or file or deliver documents deposited with the Master only "Upon Order of the Court".

The Master has received all of the deposits to be received by him and Facebook and ConnectU have submitted proposed releases and objections there to the Court. The Master recommends that upon review of form of releases by the Court, the Court order the parties to deliver executed releases to the Master and then the Master distribute the deposits to the parties as stated herein. The Master recommends that upon distribution the Master so report to the Court and the Court then order this action dismissed. The deposits, cash, share certificates, releases and dismissal are referred to herein as "Settlement Consideration".

## DEPOSITS

The Master has received the deposits of shares and cash to be deposited with him and those deposits are being kept by U.S. Bank for him. The Master entered into a depositary Agent Services/ paying Agent agreement with U.S. Bank National Association ("U.S. Bank"), attached hereto as Exhibit A, to act as the Master's depositary agent and pay or distribute deposits under the Masters direction in accordance with the Court's Notice of Appointment. Under that agreement, U.S. Bank agrees to hold certificates representing share of common stock received by the Master, in its street name, Embassy & Co., to facilitate transfer, and cash for distribution as directed by the Master in accordance with the Court's Notice of Appointment of a Master.

### The Facebook, Inc., and Mark Zuckerberg "Facebook" Deposits.

**The Facebook, Inc., Shares and Cash**

Pursuant to Paragraph (1) (a) of the Judgment Enforcing Settlement Agreement The Master has received from The Facebook Inc, pursuant to Paragraphs 4 and 7 of the Settlement

Agreement, the amount of cash and a certificate representing the amount of The Facebook, Inc. common shares stated in Paragraph 7 of the Settlement Agreement issued in the street name, Embassy & Co, of U.S. Bank, the Master's depositary agent. A copy of the certificate, which bears the legend stated in the Judgment, is attached hereto as Exhibit B. The cash, after consultation with the parties, has been invested in short term U.S. government securities and/or repurchase agreements secured by U.S. government securities and is currently invested in a First America US Treasury Money market fund (FOYXX), consisting of over 90% U.S. Treasuries, with an approximate current yield of 1.2%. A U.S. Bank statement showing the accrued cash balance as of August 31, 2008 is attached hereto as Exhibit C.

**Facebook Release**

Pursuant to Paragraph (1)(b) of the Judgment and Paragraphs 2 and 4 of the Settlement Agreement, the Facebook and Mark Zuckerberg have submitted to the Court a proposed form of release (Document 479). The form has been objected to by ConnectU (Document 488). Among the disputes relating to the form of the release are the effective date of the Release (upon order of court v. five days after judgment final and non-appealable), the parties to be released (ConnectU seeks release of Pacific Northwest Software, Inc., Winston Williams, and Wayne Chang), Facebook's inclusion in the release of unknown claims and waiver of California Civil Code § 1542, and lack of definition of the term "lawsuits".

**Facebook Dismissals**

Pursuant to paragraph (1)(c) of the Judgment and paragraphs 2 and 4 of the Settlement Agreement, The Facebook and Mark Zuckerberg have deposited dismissals with prejudice. Copies of the dismissals received are attached hereto as Exhibit D.

**ConnectU Inc., Cameron Winklevoss, Tyler Winklevoss and Divya Narendra (collectively "ConnectU") Deposits.**

**ConnectU, Inc., Shares.**

Pursuant to paragraphs (2)(a) of the Judgment and paragraphs 4 and 7 of the agreement, Connect U has deposited with the Master, shares issued in the street name, Embassy & Co, of U.S. Bank, the Master's depositary agent. A copy of the certificate is attached hereto as Exhibit E. ConnectU had previously deposited share certificates in the name of ConnectU shareholders with transfers by them endorsed in blank but there were no signature guaranty medallions generally accepted for transfer in the industry and questions of authorization of signatures of shareholders then out of the country. The Master requested replacement of these certificates with certificates in the name of Embassy & Co, street name of the Master's depositary agent, which he had originally requested. ConnectU complied. The previous certificates have been returned and the Master is informed by ConnectU, Inc.'s counsel they will be cancelled upon return and the shares held by the Master constitute all the issued and outstanding shares of ConnectU.

**ConnectU Release.**

Pursuant to Paragraph 2 (b) of the Judgment and Paragraphs 2 and 4 of the Settlement Agreement, ConnectU, Inc., has submitted to the Court for approval a proposed form of release [Document 478], which has been objected to by Plaintiffs (Document 489). Facebook contends the release should not be effective five court days after judgment becomes final and non-appealable but should be effective upon order of court.

**ConnectU Dismissals.**

Pursuant to Paragraph (2)(c) of the Judgment and Paragraphs 2 and 4 of the Settlement Agreement, ConnectU have deposited a motion to dismiss with prejudice Civil Action No. 1:04-cv-11923 (DPW) and Related action No. 1:07-cv-10593 (DPW) in the United States District Court for the District of Massachusetts ("Massachusetts actions") which the Master understands is all cases by and between the parties pending as of the date of the Settlement Agreement, other than this Case. A copy of the motion to dismiss documents is attached hereto as Exhibit F.

# RECEIPT OF LIENS UPON THE ITEMS DEPOSITED WITH THE MASTER.

**Quinn Emanuel Firm.**

The Master received Notice of Attorneys' lien (Document 337) filed in this action and a Notice of Attorneys' lien filed In the Massachusetts action before Judge Woodlock, Exhibit G. The Notices claim a lien in favor of Quinn Emanuel Urquhart Oliver & Hedges, llp ("Quinn Emanuel") by virtue of a written attorneys' lien over the claims and causes of action of, and any judgment settlement or other recovery paid to the ConnectU parties or any of them for payment of attorneys' fees. A copy of the written fee agreement on which the lien is based is attached hereto as Exhibit H. The Quinn Emanuel firm claims that payment of any amount to the ConnectU parties in this case without giving effect to, or making provision for, the lien of Quinn Emanuel Firm shall create liability for interference with their economic and contractual rights. See Levin v Gulf Ins. Group, 69 Cal.App.4th 1282, 1287-88 (1999).

**Finnegan Henderson Firm.**

The Finnegan Henderson firm responded to The Master's inquiry about any Liens by them per email from Scott Mosko on July 29, 2008 as follows: "You inquired about Finnegan Henderson's liens. Without waiving any rights that arise from the recordation of these liens, at this time, Finnegan is not requesting you set aside any proceeds from the consideration provided by Facebook" (Exhibit I). The Master is currently unaware of any recordation of such liens.

# MEETINGS, CONFERENCES, AND ACTIONS TO FACILITATE ORDERLY EXCHANGE OF THE CONSIDERATION AND ENSURE OPERATIONAL INTEGRITY OF THE BUSINESS ENTITIES.

The Master has met and conferred jointly and separately with the counsel for the parties while collecting the documents to be deposited with him and about that collection, as well as other issues. Initially, the parties disagreed strongly on whether enforcement of the judgment

should be stayed pending appeal leading to denials by this Court and the Ninth Circuit of motions to stay enforcement.

With respect to operations of ConnectU, Inc., the Master directed and ordered that all books, records, assets, and documents of ConnectU, Inc., be preserved, and that no action be taken outside of the ordinary course of ConnectU Inc.'s business, by the board of directors or otherwise, without his approval. ConnectU, Inc.'s counsel responded that ConnectU, Inc. has agreed not to undertake any action with respect to the ConnectU Inc. business without his prior approval during the pendency of the appeal.

The Master advised the parties that he would report to the Court on deposits received and his recommendations to the Court of action which the Court should take in enforcement of the Settlement Agreement. The Master requested input from Facebook, ConnectU, and Quinn Emanuel, with respect to issues to be addressed in these recommendations, specifically including the date of effectiveness of the dismissals, timing of the transfer of consideration, and to whom, particularly with respect to the lien issues. The Master had previously discussed these issues separately and jointly with counsel for the Parties. The response received from Facebook is attached hereto as Exhibit J, from ConnectU, attached hereto as Exhibit K, from Quinn Emanuel, attached hereto as Exhibit L, ConnectU's response to Quinn Emanuel is attached hereto as Exhibit M and Quinn Emanuel's response to ConnectU is attached hereto as Exhibit N. The Master subsequently sent a draft of this Report to the parties for further comment.

**RECOMMENDATIONS OF ACTION WHICH THE COURT SHOULD TAKE IN ENFORCEMENT OF THE SETTLEMENT AGREEMENT.**

**Recommendation # 1: The Court review and issue an Order on the forms of releases (Documents 478, 479) and objections thereto (Documents 488, 489) filed by the parties, Order that the releases be effective as of the date of the Settlement Agreement, February 22, 2008, and Order the parties to deposit releases in conformance with the Court's Order with the Master forthwith.**

The February 22, 2008 Settlement Agreement provides "All parties get mutual releases as broad as possible." The parties dispute the effective date release of the releases. ConnectU wants to maintain as much flexibility as possible to challenge the enforceability of the Settlement Agreement on appeal. It wishes to have the release be effective only after a five day period after judgment becomes final and non appealable. Facebook wishes to have the releases effective upon order of the court. It appears to the Master that the language of the agreement provides for releases "as broad as possible" effective upon execution of the Settlement Agreement, which was February 22, 2008, excluding, of course, the obligations of the Settlement Agreement. Not only does that appear the intent of the parties, but a release effective that date may facilitate the appeal in this action by clarifying the date of the release. See <u>Petro-Ventures, Ind. V. Takessian 967 F.2d 1337 (9th Circuit 1992)</u> cited in earlier proceedings herein, holding a settlement agreement effective and upholding on appeal dismissal of action based upon release. ConnectU would presumably have any rights not subject to the release arising after the effective date of the release. If the appellate court should hold the Settlement Agreement is not enforceable, ConnectU would have whatever rights to which it may be entitled under Federal Rule of Civil Procedure 60 or otherwise.

There are other disputes raised by the parties with respect to the form of the releases, including identification of the parties, definition of lawsuits, and inclusion of Unknown claims and waiver of California Code of Civil Procedure § 1542. ConnectU now also proposes additional language be added to the release stating something like "Provided that it is determined as a result of appeal or further court proceedings that the Settlement Agreement is not enforceable, then this release shall not be enforceable." The Settlement Agreement seems to require mutual releases. The Master does not have sufficient information to make recommendations with respect to the identification of the parties or definition of lawsuits, which may have been raised in connection with the Confidential Motion to enforce the Settlement Agreement. With respect to the unknown claim question, the Master believes that under custom and practice a release of unknown claims and waiver of California Code of Civil Procedure § 1542 would be included in "releases as broad as possible".

The court should order that executed Settlement Releases in the form Ordered by the Court be deposited forthwith with the Master for transfer in accordance with the Court's Orders.

**Recommendation # 2. Order that Facebook and ConnectU file a motion to dismiss in order to effectuate dismissal of all claims and defenses in the Massachusetts actions, and authorize and Order the Master to file the Dismissal Motions and proposed Orders in his possession for the Massachusetts actions at the same approximate time as he transfers to the parties the cash, shares of stock, and releases required under the Settlement Agreement.**

The Settlement Agreement provides for dismissal with prejudice of this action and the Massachusetts actions. This action should not be dismissed pending conclusion of the Court's Orders to enforce the Settlement Agreement (See Recommendation # 5). The Massachusetts actions, however, should be dismissed upon transfer of the other Settlement Agreement Consideration to the parties and the Master should be authorized and instructed file the motions in his possession related thereto. As stated above, if an appeal of this action determines the Settlement Agreement is not enforceable, ConnectU would have any rights under FRCP 60 or otherwise with respect to the Massachusetts actions.

**Recommendation # 3. The Court should authorize and instruct the Master to transfer the ConnectU Inc., shares in his possession to Facebook at the same approximate time as he transfers the release, cash and Facebook shares to, or for the benefit of, the ConnectU Shareholders and Quinn Emanuel (See Recommendation # 4) and order ConnectU to so transfer such shares and to transfer the ConnectU, Inc., assets, books and records to Facebook upon such transfer by the Master.**

ConnectU respectfully requested that the Master hold the consideration and documents related to the Settlement Agreement until after the Appeal in this action for substantially the

same reasons it requested a stay in enforcement of the Settlement Agreement Judgment. ConnectU states that ConnectU, Inc., will not bear any costs associated with its appeal, and will not bring a malpractice complaint against its former counsel without the Master's approval. If approval were to be granted, it states ConnectU, Inc. would not bear any costs related to that suit. ConnectU further states that such a lawsuit could not increase ConnectU Inc.,'s potential liabilities, and that Quinn Emanuel has already asserted the claim-for legal fees- in arbitration. Connect U argues that that claim would exist whether or not ConnectU Inc. brings a malpractice claim. Connect U also argues that any distributions would prejudice its Appeal. ConnectU states that Rule 60 discussed above re Recommendation # 1 has not been briefed and that distribution of consideration should be handled in such a way as to permit it to conduct its appeal.

Both the Ninth Circuit and this Court denied the stay. The Ninth Circuit cited the cases of holding any stay in these circumstances to be based upon a weighing of the probability of success on appeal, hardship to a party, and the public interest. There is no stay. See also <u>Petro-Ventures, Ind. V. Takessian 967 F.2d 1337 (9th Circuit 1992)</u> cited in earlier proceedings. The Master recommends transfer and delivery of the Settlement Consideration forthwith. Such transfer would allow the parties to timely obtain the benefits of the transactions they bargained for in the Settlement Agreement.

**Recommendation # 4. Authorize and Order the Master to transfer the cash and Facebook shares to an escrow or trust arranged and paid for, and for the benefit of ConnectU and Quinn Emanuel by a time certain, or alternatively, if no such trust is set up by that time, jointly to the ConnectU founders and Quinn Emanuel, and Order that neither Facebook nor the Master shall have any liability to Quinn Emanuel on account of its Notice of Lien filed in this action.**

The notice of lien filed by Quinn Emanuel effectively prohibits disbursement of the Settlement Proceeds to the ConnectU shareholders without including Quinn Emanuel as a payee

on the settlement check and as a transferee of Facebook stock. (Levin v Gulf Ins. Group, 69 Cal.app.4th 1282 (1999). If Quinn Emanuel were not so included Facebook has a risk of interference with contractual rights of Quinn Emanuel under the Levin case.

The ConnectU shareholders request the Master and Court to hold a limited amount of the total consideration to be paid under the Settlement Agreement for the benefit of Quinn Emanuel pending resolution of lien issues and to transfer the rest of the cash and Facebook Shares to the ConnectU shareholders. However any determinations of what limit, if any, is to be held out of proceeds for Quinn Emanuel should be made in the forum in which the ConnectU shareholders and Quinn Emanuel are resolving the amount of any obligation which the lien secures. There is presently an arbitration and New York Court action dealing with these issues. The ConnectU shareholders have threatened a Malpractice action against Quinn Emanuel.

Quinn Emanuel claims that it has the right under law and under its fee agreements to refuse to endorse any joint checks or transfers pending resolution of its fee dispute (Exhibits H and L,) providing "[a]ll proceeds of any settlement or award shall be paid into a trust account on behalf of the Client and our Firm and be subject to a setoff of any outstanding fees or costs owed to us under this agreement"; see In re Feldsott, 3 Cal.State Bar Ct. Rptr. 754 (1957). The Master recommends payment into a trust or trust or escrow for the parties and Quinn Emanuel, or absent such trust or escrow, jointly to the parties and Quinn Emanuel. The Master believes a trust or escrow holding such shares is superior to a joint payment or stock transfer, which may not be endorsed or transferred for some time leaving uncertainty as to stockholder and lack of investment of funds. However the Master believes that any such trust or escrow is the responsibility of the ConnectU shareholders and Quinn Emanuel and not this court or Facebook. The Master believes that transfer of the Settlement consideration be approximately simultaneous and transfer of the ConnectU, Inc. stock to Facebook should not be unduly delayed, if the ConnectU shareholders and Quinn Emanuel cannot reach agreement on a trust or escrow.

Facebook requested any escrow or trust be disbursed only upon a judgment with respect to any fee dispute or a joint letter detailing how the distribution of funds and stock should occur. The Master suggests any terms on release be the subject of the escrow or trust set up by

ConnectU and Quinn Emanuel. Transfer of the shares and cash to such trust or jointly to the parties appears to be all that is required and, in light thereof, the Court should Order that neither Facebook nor the Master shall have any liability to Quinn Emanuel on account of its Notice of Lien filed in this action. Quinn Emanuel claims contractual rights under its fee agreement against ConnectU, Inc., which appear separate from its Lien. ConnectU, Inc., is being transferred to Facebook and ConnectU, Inc., does not receive any consideration from the Settlement Agreement.

**Recommendation # 5. After receipt of a report from the Master that the Settlement Consideration has been delivered to the parties, the Court Order this action dismissed and approve the Master's actions herein.**

Respectfully submitted,

September 3, 2008

George C. Fisher

Special Master