1  STEVEN C. HOLTZMAN (State Bar No. 144177)
     sholtzman@bsfllp.com
2  BOIES, SCHILLER & FLEXNER LLP
   1999 Harrison Street, Suite 900
3  Oakland, CA 94612
   Telephone: (510) 874-1000
4  Facsimile: (510) 874-1460

5  DAVID A. BARRETT (*pro hac vice*)
     dbarrett@bsfllp.com
6  BOIES, SCHILLER & FLEXNER LLP
   575 Lexington Ave., 7th Floor
7  New York, NY 10022
   Telephone: (212) 446-2300
8  Facsimile: (212) 446-2350

9  D. MICHAEL UNDERHILL (*pro hac vice*)
     munderhill@bsfllp.com
10 BOIES, SCHILLER & FLEXNER LLP
   5301 Wisconsin Avenue NW
11 Washington, D.C. 20015
   Telephone: (202) 237-2727
12 Facsimile: (202) 237-6131

13 Attorneys for Defendant
   CONNECTU, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THE FACEBOOK, INC. and MARK ZUCKERBERG,<br><br>Plaintiffs,<br><br>v.<br><br>CONNECTU, INC. (formerly known as CONNECTU, LLC), PACIFIC NORTHWEST SOFTWARE, INC., WINSTON WILLIAMS, and WAYNE CHANG,<br><br>Defendants. | Case No. 5:07-CV-01389-RS<br><br>**DEFENDANTS' RESPONSE TO ORDER TO SHOW CAUSE ON DISBURSEMENT OF SETTLEMENT CONSIDERATION, AND RENEWED MOTION TO STAY** |

**Table of Contents**

Table of Authorities……….…….….…..………….……...………………..ii

I. Introduction…………………….…………………………………………1

II. The Court Lacks Jurisdiction to Consider the Order to Show Cause……..……….2

III. The Court Should Not Take any Action Regarding the Releases, or
Order the Special Master to File the Dismissal Documents………………………9

IV. The Court Should Not Order Disbursement of the Settlement Consideration......10

V. Stay of Proceedings…………..………….……………………………….12

VI. Conclusion…………..…………………………...………..…………….13

## Table of Authorities
### CASES

*Casey v. Proctor*,
  59 Cal. 2d 97 (Cal. 1963) ................................................................................... 10

*City of Cookeville v. Upper Cumberland Electric Mbrshp. Corp.*,
  484 F.3d 380 (6th Cir. 2007) ............................................................................... 3

*Davis v. U.S.*,
  667 F.2d 822 (9th Cir. 1982) ............................................................................ 2, 8

*Deering Milliken, Inc. v. Federal Trade Com.*,
  647 F.2d 1124 (D.C. Cir. 1978) ........................................................................... 3

*FTC v. Enforma Natural Product*,
  362 F.3d 1204 (9th Cir. 2004) .............................................................................. 8

*Golden Gate Restaurant Association v. City and County of San Francisco*,
  512 F.3d 1112 (9th Cir. 2008) ............................................................................ 14

*Griggs v. Provident Consumer Discount Co.*,
  459 U.S. 56 (1982) ................................................................................... *passim*

*Hybritech Inc. v. Abbott Laboratories*,
  849 F.2d 1446 (Fed. Cir. 1988) ............................................................................ 8

*In re Thorp*,
  665 F.2d 997 (9th Cir. 1981) ............................................................................ 3, 5

*In re Padilla*,
  222 F.3d 1184 (9th Cir. 2000) ........................................................................... 3, 5

*Kern Oil & Refining Co. v. Tenneco Oil Co.*,
  840 F.2d 730 (9th Cir. 1988) ............................................................................... 8

*McClain v. Octagon Plaza, Inc.*,
  159 Cal. App. 4th 784 (2d Dist. 2008) ................................................................. 10

*Natural Resources Defense Council, Inc. v. Southwest Marine Inc.*,
  242 F.3d 1163 (9th Cir. 2001) .............................................................................. 8

*Pyrodyne v. Pyrotronics*,
  847 F.2d 1398 (9th Cir. 1988) ........................................................................... 3, 5

*Weddington Productions, Inc. v. Stephen Flick*,
  60 Cal. App. 4th 793 (Ct. App. Ca. 1998) ........................................................... 5, 9

*White Point Co. v. Harrington*,
  268 Cal. App. 2d 458 (Cal. Ct. App. 1968) ..................................................... 5, 9, 10

## STATUTES

Cal. Civ. Code § 1668......................................................................................10

Fed. R. Civ. P. 53...........................................................................................8

Fed. R. Civ. P. 60..........................................................................................11

## MISCELLANEOUS

9A Charles A. Wright, Arthur R. Miller, and Edward H. Cooper, Fedreal Practice and Procedure (3d 1999) …………………………………………..2, 8

## I. INTRODUCTION

ConnectU, Inc. and Cameron Winklevoss, Tyler Winklevoss, and Divya Narendra ("Founders") submit this Response to the Court's September 19, 2008 Order to Show Cause why the Court should not (1) direct the Master to release the settlement consideration; (2) direct the Master to file the previously tendered dismissal documents with the appropriate courts; and (3) either direct the parties to execute the previously tendered releases or modify the Court's Judgment on its own motion "to regard the language in the Term Sheet as the release agreement of the parties." *See* September 19 Order (Dkt. No. 632) at 1-2.

ConnectU and the Founders respectfully submit that the Court lacks jurisdiction to take any of these actions. The Court's July 2 Judgment was final and appealable. *See* July 2, 2008 Judgment (Dkt. No. 476) at 1 (entering judgment enforcing the Term Sheet); *see also* Order Denying Motion to Intervene; Denying Motion to Stay (Dkt. No. 610) at 7 (denying motion to stay, explaining that "delay in filing the appeal and seeking a stay vitiates the force of allegations of irreparable harm"). When ConnectU and the Founders noticed their appeals on July 30, 2008 (Dkt. No. 582) and August 11, 2008 (Dkt. No. 11), respectively, they immediately "confer[red] jurisdiction on the court of appeals and divest[ed] the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982).[1] Both the appeal and this Court's Order to Show Cause address the same issues of contract interpretation, contract validity, and the parties' right to maintain an appeal. ConnectU and the Founders argue all these issues in the opening appeal brief that they filed in the Ninth Circuit on October 6, 2008.[2]

---

[1] Facebook and Mark Zuckerberg noticed a cross-appeal of the dismissal of their claims against the Founders for lack of personal jurisdiction (Dkt. No. 615).

[2] Defendants' Brief on Appeal is attached as Ex. A to the Declaration of Evan A. Parke ("Parke Decl.").

Even if this Court did have jurisdiction to hear the Order to Show Cause, it should decline to change the current *status quo* during the pendency of the parties' respective appeals. And if the Court were inclined—contrary to ConnectU's arguments—to order the exchange of the stock and cash consideration, the Court should not order the filing of the dismissal documents or the execution of releases. An order that only required the exchange of consideration, but did not require the filing of dismissal documents or the execution of releases, would affect ConnectU's right to appeal (as ConnectU would then be owned by its adversary), but would at least permit the Founders to appeal without having to defend against Facebook's arguments that the motion to dismiss or releases somehow affects that appeal.

Finally, if the Court orders the distribution of the stock and cash consideration at this time, it should reject Quinn Emanuel's unfounded request to have the entire amount of consideration due to the Founders tied up indefinitely or distributed jointly to Quinn Emanuel and the Founders.

## II. THE COURT LACKS JURISDICTION TO CONSIDER THE ORDER TO SHOW CAUSE

The filing of a notice of appeal is "an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs*, 459 U.S. at 58; *see Davis v. U.S.*, 667 F.2d 822, 824 (9th Cir. 1982) ("The filing of a notice of appeal generally divests the district court of jurisdiction over the matters appealed"); 9A CHARLES A. WRIGHT, ARTHUR R. MILLER, AND EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE, 3949.1 (3d 1999) (notice of appeal divests the district court of jurisdiction to issue orders "touching upon the substance of the matter on appeal").

The filing of a notice of appeal precludes the district court from issuing any rulings that effectively would alter or enlarge the scope of any *orders* being appealed.

*Deering Milliken, Inc. v. Federal Trade Com.*, 647 F.2d 1124, 1128 (D.C. Cir. 1978); *City of Cookeville v. Upper Cumberland Elec. Mbrshp. Corp.*, 484 F.3d 380, 394 (6th Cir. 2007) (striking down district court's attempt to define "exclusive service rights" as enlargement of the scope of prior order being appealed). In addition, the district court may not issue any orders affecting the scope of the *issues* presented on appeal. *See Pyrodyne v. Pyrotronics*, 847 F.2d 1398, 1403 (9th Cir. 1988) (court lacked jurisdiction to rule on scope of defenses being addressed on appeal); *see also In re Thorp*, 665 F.2d 997 (9th Cir. 1981) (where a party "followed the proper route for obtaining appellate review of the issue," it was "entitled to pursue his appellate remedies" before the trial court revisited the issue). Although the district court retains certain residual jurisdiction after a notice of appeal is filed, that jurisdiction is strictly limited only to actions "to implement or enforce the judgment or order [and it] may not alter or expand upon the judgment." *See In re Padilla*, 222 F.3d 1184, 1190 (9th Cir. 2000) (district court lacked jurisdiction to close the case because that would affect issues involved in the appeal). If the Court were to order the exchange of consideration, the filing of dismissal documents, or the execution of releases, the Court impermissibly would be altering or expanding on its prior rulings found in the orders on appeal and affecting key aspects of the case involved in the appeal. *See id.*; *Griggs*, 459 U.S. at 58.

Because ConnectU and the Founders filed their notices of appeal on July 30 and August 11, respectively, and filed their appeal brief on October 6, their rights to appeal are squarely before the Ninth Circuit and thus "involved in the appeal." *Griggs*, 459 U.S. at 58. In addition, the Founders' rights to appeal are also "involved in the appeal" because they seek reversal of this Court's denial of their motion to intervene. *See* Founders' Notice of Appeal (Dkt. No. 611). Indeed, at the August 8 hearing, the Founders' counsel made clear that their "purpose" in moving to intervene was to preserve their "right to appeal" and to "preserve their rights on appeal." *See* August 8, 2008,

hearing transcript, attached as Exhibit B to the Parke Decl., at 8:6-7, 8:12-15. Whether the *Founders'* interests are protected by ConnectU is a key consideration in the intervention analysis. As explained by counsel:

> Facebook has been asserting that it will take control of ConnectU's litigations once it takes control of ConnectU's stock, and we've become very concerned that while ConnectU's appeal is pending… Facebook will try to assume control of ConnectU and abandon or otherwise hamper or impair the appeal.

*Id.* at 8:9-16. The Court agreed that an appeal from its order was appropriate. *See id.* at 47:6-8 ("I have to put the opposing party to my judgment in a position so they can challenge my judgment"); 46:18-19 ("I won't deny the right to appeal"); Dkt. No. 610 (August 8 Order) at 5 (holding that Founders had a right to "appeal that Judgment"). *See also Gould v. Control Laser Corp.*, 866 F.2d 1391, 1394 (Fed. Cir. 1989) (holding a case moot where, "[b]y virtue of the settlement agreement, Patlex has become the *dominus litis* on both sides").

The Court also lacks jurisdiction to take any action affecting the contract issues that are on appeal. If this Court were to order the filing or execution of releases or dismissal documents, this Court necessarily would engage in further interpretation of the Term Sheet, whose terms are already at issue on appeal. The Term Sheet provides:

> 1) The following will settle all disputes between ConnectU and its related parties, on the one hand and Facebook and its related parties, on the other hand.
>
> 2) All parties get mutual releases as broad as possible and all cases are dismissed with prejudice. Each side bears their own attorneys fees and costs.

*See* June 25 Order (Dkt. No. 461) at 3. Rather than issuing specific directions to implement these terms in its July 2 Judgment, the Special Master and Court have proceeded to address substantive issues of the Judgment in a post-judgment procedure that has extended well past the date on which the parties' Notices of Appeal were filed.

The documents that ConnectU and the Founders drafted and submitted to the Master under threat of contempt as part of that process differ substantively from those provided by Facebook. The differences in the parties' proffered releases and dismissal documents underscore that there was no meeting of the minds on these subjects; that the releases and dismissal documents cannot be adopted as a matter of law; and thus that the Term Sheet is incomplete. *See Weddington Productions, Inc. v. Stephen Flick,* 60 Cal. App. 4th 793 (Ct. App. Ca. 1998) ("A settlement agreement which incorporates other documents can be enforced…but only if there was a meeting of the minds regarding the terms of the incorporated documents."); *White Point Co. v. Harrington*, 268 Cal. App. 2d 458 (Cal. Ct. App. 1968) (rejecting the trial court's attempt to compensate for imprecise release language by ordering the parties to submit proposed releases and then adopting one of them). A post-Judgment order now requiring releases to be executed or dismissal documents to be filed would impermissibly expand and alter the contract-related rulings in the Court's June 25 Order (Dkt. No. 461) and the July 2 Judgment (Dkt. No. 476), which do not otherwise prescribe the substance of the releases or dismissal documents. *See In re Padilla*, 222 F.3d at 1190. Also, a further order of the Court on these matters necessarily and impermissibly would affect the contract issues that are already pending in the Ninth Circuit. *See Griggs*, 459 U.S. at 58; *Pyrodyne*, 847 F.2d 1398; *In re Thorp*, 665 F.2d 997.

ConnectU and the Founders' proposed papers differ substantively from Facebook's proposed papers, and the dispute highlights the uncertainty of the release language in the Term Sheet. For example, Facebook's proposed release does not even cover the non-signatory defendants in the California action that Facebook initiated— Pacific Northwest, Williams and Chang. Similarly, Facebook's proposed release does not bind the other defendants in the Massachusetts litigation that ConnectU and the Founders initiated—Eduaro Saverin, Dustin Moskovitz, Andrew McCollum, and

Christopher Hughes. *See* Facebook's proposed release, attached as Ex. D to the Parke Decl. But the proposed release that ConnectU and the Founders' originally submitted, if imposed by the Court, covers *all* of the defendants in the Massachusetts litigations.[3] This lack of symmetry is obviously unfair and clearly not contemplated by the parties. The inconsistency is further highlighted by Facebook's own proposed release and dismissal documents, which are irreconcilable with each other. Specifically, Facebook's dismissal document for the California action would dismiss all claims against Pacific Northwest, Williams and Chang, but Facebook's proposed release does not release these parties.[4]

In any event, as a matter of law, the Court lacks jurisdiction to adopt either version of the releases or dismissal documents, or to draft its own. The multiple versions of competing releases and dismissals confirm that the terms of these documents are inextricably intertwined with the issues of contract interpretation and contract validity that are pending on appeal. *See, e.g.,* Ex. A to the Parke Decl. (Brief of Appellants) at 45-48 (discussing California rules of contract interpretation); 45-50 (arguing that the Term Sheet is invalid because there was no meeting of the minds on material terms); 41-45 (arguing that the scope of the release language is not as broad as the Court believed it to be).

It is particularly telling that the Master found it necessary to use extrinsic evidence of alleged "custom and usage" in attempting to construe the release language in the Term Sheet. *See* Report (Dkt. No. 630) at 7. This is inconsistent with the Court's June 25 Order, which specifically *precludes* use of extrinsic evidence for interpretation of the Term Sheet. *See* June 25 Order Granting Motion to Enforce Settlement (Dkt. No.

---

[3] *See* ConnectU's proposed release, attached as Ex. C to the Parke Decl. ConnectU's proposed release also does not release unknown claims or §1542 rights, while Facebook's proposed release covers unknown claims and §1542 rights.

[4] *See* Facebook's proposed release (Dkt. No. 479), attached as Ex. D to the Parke Decl.; Facebook's proposed dismissal document for the California action, attached as Ex. J to the Parke Decl.

461) at 7. The issue of whether the extrinsic evidence should have been admitted to construe the Term Sheet has already been expressly raised and argued on appeal (*see* Ex. A to the Parke Decl. at 45-48), and for the Court to deal with this issue now would thus impermissibly "touch upon the substance of the matter on appeal" (*see* discussion above at 2). It would also not make sense for the Court now to rely on alleged "custom and usage" with respect to ascertaining the scope of the release, after the Court denied ConnectU's request for an evidentiary hearing where it could offer evidence of the parties' intent.[5] The Court's denial of Defendants' request for an evidentiary hearing is also directly at issue on appeal. *See* Ex. A to the Parke Decl. (Brief of Appellants) at 51.

Other portions of the Special Master's report make clear that he was struggling, without the benefit of an evidentiary hearing, to discern what the parties intended the language in the Term Sheet to accomplish.[6] The Special Master recognized that he did not "have sufficient information to make recommendations with respect to identification of the parties or the definition of the lawsuits." *See* Report (Dkt. No. 630) at 7. Yet the "identification of the parties" and the "definition of the lawsuits" are highly material in ascertaining the scope of both the dismissal documents and releases. The Master's Report confirms that the dismissal documents and releases are riddled with contract

---

[5] *See* ConnectU's Motion for Expedited Discovery and Evidentiary Hearing at Dkt. 374 (filing notice), Dkt. No. 539 (sealed filing). The Court denied this motion without opinion in its June 10, 2008 Order (Dkt. No. 428).

[6] *See, e.g.,* Report (Dkt. No. 630) at 7 ("*It appears to the Master* that the language of the agreement provides for releases "as broad as possible" effective upon execution of the Settlement Agreement, which was February 22, 2008, excluding, of course, the obligations of the Settlement Agreement. Not only does that *appear the intent of the parties*, but a release effective that date may facilitate the appeal in this action by clarifying the date of the releases….The *Settlement Agreement seems to require* mutual releases…..[T]he *Master believes that under custom and practice* a release of unknown claims and waiver of California Code of Civil Procedure § 1542 would be included in "releases as broad as possible.") (emphasis added).

interpretation issues that are intertwined with already-briefed appellate issues.[7] In short, the Court's Order to Show Cause raises numerous issues that are expressly and directly at issue on appeal. Because the Court lacks jurisdiction to issue any order "touching upon the substance of the[se] matter[s]" 9A CHARLES A. WRIGHT, ARTHUR R. MILLER, AND EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE, 3949.1 (3d 1999), it lacks jurisdiction to rule on the Order to Show Cause.

In limited cases, the Ninth Circuit has permitted district courts to supplement prior rulings after an appeal was noticed in order to assist the Court of Appeals in addressing the issues on appeal. *See Davis v. United States*, 667 F.2d 822, 824 (9th Cir. 1982). As the foregoing discussion makes clear, however, any additional ruling here would go far beyond such assistance and affect the substance of the Judgment. Furthermore, any such "supplemental rulings" are appropriate only when made within days of the filing of the notice of appeal;[8] when they contain only "minor adjustments" to the original order being appealed not materially altering any substantial rights;[9] or when they reduce to writing an oral ruling issued before the filing of a notice of appeal.[10] None

---

[7] In addition, the Master's attempts to interpret the release and dismissal language extend beyond the scope of his appointment. *See* Fed. R. Civ. P. 53(b)(2). The Notice of Appointment provided that the Master was to assist with the "enforcement" of the agreement; it did not grant him authority to construe contract terms. *See* Dkt. No. 475.

[8] *See, e.g., Kern Oil & Refining Co. v. Tenneco Oil Co.*, 840 F.2d 730, 733-34 (9th Cir. 1988) (district court had jurisdiction to enter findings and conclusions after a notice of appeal was filed because the it had previously signed the findings and conclusions and they were entered a mere three days after the notice of appeal was filed); *Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1449-50 (Fed. Cir. 1988) (findings entered four days after notice of appeal); *FTC v. Enforma Natural Product*, 362 F.3d 1204, 1216, n.11 (9th Cir. 2004) (findings entered five days after entry of the injunction).

[9] *See, e.g., Natural Resources Defense Council, Inc.* v. *Southwest Marine Inc.,* 242 F.3d 1163 (9th Cir. 2001) (district court retained jurisdiction to make "minor adjustments" to an injunction to preserve the status quo where the changes did not "materially alter" the rights at issue on appeal).

[10] *See, e.g., Hybritech Inc. v. Abbott Labs*, 849 F.2d 1446, 1449-50 (Fed. Cir. 1988) (applying Ninth Circuit law, the district court retained jurisdiction to enter written

1  of these grounds applies here.  The Court entered its Order and Judgment over three

2  months ago, and ConnectU and the Founders filed their Notices of Appeal over two

3  months ago.  The disbursement of the settlement consideration, or modification of Court

4  rulings regarding the release language or dismissal documents (whether through the use

5  of tendered documents or on the Court's own motion) are major changes that "materially

6  alter" the parties' substantive rights.  They directly affect the substance and arguments of

7  ConnectU and the Founders' already-filed appeal and implicate the contract interpretation

8  issues already briefed on appeal.   The Court lacks jurisdiction to take the proposed

9  actions.

### III. THE COURT SHOULD NOT TAKE ANY ACTION REGARDING THE RELEASES, OR ORDER THE SPECIAL MASTER TO FILE THE DISMISSAL DOCUMENTS

As a matter of law, the Court cannot draft or adopt a release, or order that the parties sign a release, to effectuate the release language in the Term Sheet.  In *Harrington*, the appellate court flatly rejected a trial court's attempt to compensate for unclear and ambiguous release language in a contract by ordering the parties to submit proposed releases and adopting one of them.  *Harrington*, 268 Cal. App. 2d 458.  Rather, it invalidated the entire settlement agreement as incomplete because the parties had failed to agree on the scope of the release language, which the Court found was a material term.  *Id.*; *see Weddington,* 60 Cal. App. 4th 793.

As in *Harrington*, the release in the Term Sheet was material and the Court did not define its precise scope.  *See* June 25 Order (Dkt. No. 461) at 6-7, 11.  While the Court ruled that the release purportedly "convey[ed] the intent of the parties to release" a claim that the Term Sheet was invalid as being procured through securities fraud (June 25 Order at 11), it provided no further interpretation of the term.  Indeed, the parties still

---

findings four days after the notice of appeal was filed where the findings confirmed and were consistent with an earlier oral ruling).

cannot agree as to what was intended. Under *Harrington*, the Court cannot now order the parties to execute a tendered release. *See also Harrington*, 268 Cal. App. 2d at 468 (criticizing the trial court's reliance on evidence of custom and usage in attempt to create an agreement).[11]

ConnectU also incorporates by reference its prior objections to Facebook's releases. *See* discussion above and ConnectU's objections to Facebook's proposed form of release (Dkt. No. 488), attached as Ex. L to the Parke Decl. ConnectU objects that Facebook's release fails to include the individual, non-signatory defendants in the California action. *Id.* at ¶ 1. ConnectU objects to the inclusion of language releasing unknown claims, including the reference to California Civil Code Section 1542 in paragraph 3 of Facebook's release. *Id.* at ¶ 2. Contrary to the Master's Report, a release of unknown securities fraud claims cannot be implied from broad but general release language. *See Casey v. Proctor*, 59 Cal. 2d 97, 105 (Cal. 1963). And even if the release in the Term Sheet included an express waiver of rights under § 1542, this language would not bar a claim that the actual agreement containing the release is void due to fraud in the inducement. *See, e.g., Hanig v. Qualcomm Inc.*, 2002 Cal. App. Unpub. LEXIS 11288 at *13 (4th Dist., Dec. 6, 2002). To hold otherwise would violate the public policy expressed in California Civil Code Section 1668. *See McClain v. Octagon Plaza, Inc.*, 159 Cal. App. 4th 784 (2d Dist. 2008).

ConnectU also objects to Facebook's attempt to make the releases effective upon approval by the Court. Ex. L to the Parke Decl. at ¶ 3. And ConnectU objects that Facebook's release document does not define the term "Lawsuits." *Id.* at ¶ 4.

Given the disputes between the parties about the scope of the release language and the jurisdictional questions discussed previously (*see* prior discussion at 5-6), the best

---

[11] Contrary to the Master's Report, a release of unknown securities fraud claims cannot be implied from broad but general release language. This issue is also being addressed on appeal. *See* Ex. A to the Parke Decl. at 44-45.

course of action would be for the Court to issue no further ruling on the meaning of the release language, and to allow the release language to stand on its own.

In addition, distribution of releases or the dismissal documents would unnecessarily and unreasonably complicate the appellate process, as Facebook would likely (albeit non-meritoriously) argue that these documents allegedly moot ConnectU's appeal and, if the appeal is successful, that they interfere with ConnectU's ability to prosecute its claims following remand. The original dismissal document that ConnectU submitted to the Master is attached as Ex. E to the Parke Decl. Connect and the Founders believe this dismissal document is the most appropriate document. That document provides that the dismissal could not become effective until the appellate process is exhausted. *Id.* But the Master compelled ConnectU to submit a revised dismissal document that does not expressly reference that it is effective only after an exhausted appeal. *See* Ex. N to the Parke Decl. The Master cited Rule 60 as adequately protecting the "rights to which [ConnectU] may be entitled." Report at 8, 9. Although Rule 60(b)(5) allows relief following reversal on appeal, the Master did not specify how Rule 60 would protect ConnectU and the Founders' rights to prosecute the appeal if the consideration is exchanged, releases are executed, and dismissal documents are filed. It would be far preferable to rely upon a mechanism more specifically directed at preserving a party's right during the appeal, rather than forcing the parties to unwind decisions after a successful appeal.

In any event, the efficacy of the releases and dismissal documents will turn on the outcome of the appeal. If ConnectU and the Founders are correct and the appeal is successful, the releases and dismissal documents will be of no effect. If the appeal is unsuccessful, there is nothing to be gained by dismissing the Massachusetts litigation now.

11                    DEFENDANTS' RESPONSE
                    TO ORDER TO SHOW CAUSE
                    5:07-CV-01389-JW

## IV. THE COURT SHOULD NOT ORDER DISBURSEMENT OF THE SETTLEMENT CONSIDERATION

The Court should not disburse the settlement consideration at this time. Disbursement of the ConnectU shares to Facebook may unfairly impact the ability of ConnectU to pursue its appeal. *See Gould v. Control Laser Corp.*, 866 F.2d 1391, 1394 (Fed. Cir. 1989) (case was moot where, "[b]y virtue of the settlement agreement, Patlex has become the *dominus litis* on both sides"). Moreover, it is not necessary to distribute the ConnectU stock to Facebook in order to give Facebook the benefit of its alleged bargain. As previously represented to the Court and the Master, the Founders and ConnectU have no objection to Facebook exercising control over the operations of ConnectU during the pendency of the appeal. ConnectU has agreed not to undertake any action with respect to the ConnectU business without receiving prior approval from the Master. *See* August 27, 2008, letter from D. Michael Underhill to George Fisher, attached as Ex. F to the Parke Decl. ConnectU also will not bear any expenses associated with its appeal or with the fee dispute arbitration initiated by Quinn Emanuel ("Quinn") against ConnectU and the Founders. *Id.*; *see* Ex. B(Aug. 8 Transcript) at 37:15-23; Aug. 11, 2008, Declaration of Sean O'Shea, attached as Ex. G to the Parke Decl., at ¶ 6.

If the Court decides, however, to distribute the ConnectU shares to Facebook, then the Facebook shares and cash being held by the Master also should be disbursed to the Founders. And if the Court finds that any consideration owed to the Founders should be held back or issued jointly to Quinn to provide security for Quinn's claim for attorneys' fees, the amount held back or jointly issued should be a narrowly limited amount of the overall consideration owed by Facebook to the Founders, and not the entire amount. Because Quinn claims that, pursuant to its retainer agreement,[12] it is owed a specific percentage of the overall consideration, *only* that specific percentage of the

---

[12] The retainer agreement is attached as Exhibit H to the Parke Decl.

DEFENDANTS' RESPONSE
TO ORDER TO SHOW CAUSE
5:07-CV-01389-JW

Facebook stock and that specific percentage of the cash should be withheld and placed in trust until the resolution of the fee dispute between Quinn and the Founders.

There is no basis in the retainer agreement or otherwise for Quinn's request to tie up the entire settlement proceeds due to the Founders. Quinn conflates two separate provisions in its retainer agreement in an attempt create the impression that it is entitled to a joint interest in all of its settlement proceeds. This is improper. Quinn's position is based on a provision of the retainer agreement that provides that "[a]ll proceeds of any settlement or award shall be paid into a trust account on behalf of the Clients and our firm and be subject to setoff of any outstanding fees or costs owed to us under this agreement." That provision, however, is found under the "Costs and Billing Practices" section of the fee agreement, which is *entirely separate* from the lien provision. *See* Ex. H to the Parke Decl. That provision merely sets forth the process by which Quinn collects its fee in the event of settlement; it is not a dispute resolution procedure. There is no support in the fee agreement for Quinn's request to have the entire settlement proceeds tied up indefinitely or issued jointly to Quinn and the Founders.

Furthermore, Quinn seeks to use the lien provision *itself* in a manner that was never contemplated in the fee agreement. The retainer agreement provides that "the lien shall be for the purpose of our attorneys' fees, reimbursement of costs, and all of your other financial obligations under this Agreement." *See* Ex. H to the Parke Decl.; *see also* August 28, 2008 letter from Mark Weissman to George Fisher, attached as Ex. I to the Parke Decl. Here, Quinn does not seek to use the lien to *secure* monies owed to it. Instead, it seeks to use the withholding of the *entire* consideration to *coerce* unfairly ConnectU and its Founders to pay the disputed fee. Under the retainer agreement, that is an improper purpose for the purported lien. Therefore, to the extent the Court recognizes Quinn's lien at all, it should be limited to the proportion of cash and stock necessary to secure Quinn's claim to attorneys' fees, and no more.

The Court should also reject any argument that this amount would not cover interest owed or remaining costs or expenses. Interest has not yet begun to accrue. The retainer agreement provides that interest accrues only "if our fees and costs are not paid within 60 days of your *receipt* of any settlement or award in this Action," and the Founders have yet to receive any consideration. Further, all of Quinn's costs and expenses have already been fully paid. Ex. I to the Parke Decl. (Weissman letter to Fisher) at 2.

ConnectU and the Founders agree that, because Facebook has complied with the Court's orders in turning over to the Master the cash and stock settlement consideration that Facebook owed pursuant to the Term Sheet, the Court should order that the lien filed by Quinn against Facebook is fully satisfied and released. This will relieve Facebook of any further liability or involvement in the dispute between Quinn and its former clients.

## V. STAY OF PROCEEDINGS

In the event the Court were to reject the position of ConnectU and the Founders set forth above, then Defendants respectfully renew their request that the Court stay its proposed course of action for the reasons set forth in ConnectU's original motion to stay (Dkt. No. 578, incorporated herein and attached as Ex. M to the Parke Decl.). The harm flowing from the imminent disbursement of the ConnectU shares, the releases, and the dismissals, further pushes the sliding scale towards irreparable injury and supports the entry of a stay. *See Golden Gate Rest. Ass'n v. City and County of San Francisco*, 512 F.3d 1112, 1115 (9th Cir. 2008). The case relied upon by the Court of Appeals in denying ConnectU and the Founders' emergency motion to stay is distinguishable. There, the harm to the movant "would not start to accrue until later," whereas here the harm would be immediate. *Lopez v. Heckler*, 713 F.2d 1432, 1435 (9th Cir. 1983).

Alternatively, ConnectU and the Founders respectfully request that the Court at least stay the filing of the dismissals or the execution of releases while Defendants challenge the Court's Order and Judgment on appeal.

In the event the Court were to deny any stay, ConnectU and the Founders respectfully request that the effective date of the Court's order be set at least twenty-one (21) days after its entry, so that ConnectU and the Founders would have a reasonable time to file – and the Court of Appeals time to rule on – an emergency motion for a stay.

## VI. CONCLUSION

ConnectU and the Founders respectfully request the Court not release the settlement consideration, order the Master to file dismissals documents, or take any action regarding the releases. Alternatively, ConnectU and the Founders respectfully request a stay as outlined in the prior section, or that the Court delay the effective date of the Court's order at least twenty-one (21) days after its entry, so that ConnectU and the Founders would have a reasonable time to file – and the Court of Appeals time to rule on – an emergency motion for a stay.

October 13, 2008                                Respectfully submitted,


                                                  /s/Steven C. Holtzman
                                                Steven C. Holtzman
                                                BOIES, SCHILLER & FLEXNER LLP

                                                *Attorneys for Defendant ConnectU, Inc.*


                                                  /s/Sean F. O'Shea
                                                Sean F. O'Shea
                                                O'SHEA PARTNERS LLP

                                                *Attorneys for Individual Defendants*
                                                *Cameron Winklevoss, Tyler Winklevoss &*
                                                *Divya Narendra*

## **CERTIFICATE OF SERVICE**

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on October 13, 2008.

Dated: October 13, 2008

                                                  /s/ *Steven C. Holtzman*
                                                Steven C. Holtzman

                                                *Attorney for Defendant ConnectU, Inc.*