QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
Randall T. Garteiser (Bar No. 231821)
randygarteiser@quinnemanuel.com
555 Twin Dolphin Drive, Suite 560
Redwood Shores, California 94065-2139
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Bruce E. Van Dalsem (Bar No. 124128)
brucevandalsem@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-254

Attorneys for Quinn Emanuel Urquhart Oliver & Hedges, LLP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| The Facebook, Inc., <br> Plaintiff, <br> vs. <br> ConnectU, Inc., et al., <br> Defendant. | CASE NO. 07-cv-01389 |

## QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP'S MEMORANDUM OF LAW IN SUPPORT OF JOINT AND SEVERAL DISTRIBUTION OF SETTLEMENT PROCEEDS

Quinn Emanuel Urquhart Oliver & Hedges, LLP ("Quinn Emanuel") submits this memorandum of law in response to the Court's Order to Show Cause dated September 19, 2008, and in support of its charging lien over any settlement or judgment proceeds paid to ConnectU, Inc., Cameron Winklevoss, Tyler Winklevoss, or Divya Narendra (collectively, the "ConnectU Parties"). As explained herein, Quinn Emanuel requests that the settlement consideration payable to its former clients, the ConnectU Parties, be paid jointly and severally to the ConnectU Parties and Quinn Emanuel. This is the manner in which Facebook would have transferred the settlement

Case No. 07-cv-01389
Quinn Emanuel Urquhart Oliver & Hedges, LLP's Memorandum of Law in Support of Joint and Several Distribution of Settlement Proceeds

Dockets.Justia.com

consideration had the ConnectU Parties not challenged the settlement, and it both maintains the status quo that would have existed but for the unsuccessful challenge to the settlement agreement.

If the Facebook settlement consideration is distributed in this manner, it will then be up to the ConnectU Parties and Quinn Emanuel to attempt to agree upon a division thereof or, barring agreement, to have that issue determined in the proper forum, which is the pending AAA arbitration pending in New York in which the ConnectU Parties and Quinn Emanuel are litigating their fee dispute.

In short, the fact that a special master came into possession of the settlement consideration solely because of the ConnectU Parties' unsuccessful challenge should not alter what would have occurred in the normal course. Payment jointly and severally to the ConnectU Parties and Quinn Emanuel is also the only way to ensure Facebook is exonerated from potential liability for the ConnectU Parties' attorney's fees.

## PRELIMINARY STATEMENT

On April 24, 2008, Quinn Emanuel instigated a fee dispute arbitration pursuant to the terms of its engagement letter with the ConnectU Parties. Simultaneously, Quinn Emanuel filed notices of its contractual lien over the ConnectU Parties' proceeds from this action (the "California Action") and the lawsuit *ConnectU, Inc., et al. v. Facebook, Inc., et al.*, 07-cv-10593 (DPW) (D. Mass.) (the "Massachusetts Action"). After holding the arbitration in abeyance pending resolution of matters in this Court, Quinn Emanuel reinstated arbitral proceedings in late June. The ConnectU Parties, however, wished to delay proceedings indefinitely, and moved to stay the arbitration in New York state court. They were unsuccessful. Currently, both Quinn Emanuel and the ConnectU Parties are proceeding before the American Arbitration Association with their fee dispute (the "AAA Arbitration").

Unfortunately, the AAA process has not yet advanced to the point where an arbitrator has been appointed who can oversee and control the proceeds from the ConnectU Parties' settlement with Facebook, Inc., *et al.* (collectively, "Facebook"). The engagement letter between Quinn Emanuel and the ConnectU Parties states that all settlement proceeds shall be held in a trust account pending the resolution of any fee dispute between the two parties, but ConnectU made

clear in its letters to Special Master Fisher that it would not abide by the terms of its contract. As a result, Quinn Emanuel would lose the protection afforded by its lien if the settlement proceeds are not distributed jointly and severally to both the ConnectU Parties and Quinn Emanuel. This joint and several distribution is, of course, the method by which the proceeds would have been distributed in the normal course had the ConnectU Parties not chosen to unsuccessfully challenge the settlement. Upon such payment, any further distribution would be (and will be) either a question for the ConnectU Parties and Quinn Emanuel to decide or one submitted to arbitration in the existing AAA arbitration in New York. The order Quinn Emanuel requests here thus recognizes the existence of Quinn Emanuel's lien, temporarily preserves Quinn Emanuel's rights to the settlement proceeds until such time as the ConnectU Parties and Quinn Emanuel can agree upon an amount necessary to secure the lien, or a rightfully-appointed arbitrator may make further determination regarding the same, and avoids imputing liability to Facebook.[1]

## STATEMENT OF FACTS

In September 2007, the ConnectU Parties engaged Quinn Emanuel to take over as lead trial counsel in the Massachusetts Action and consult on this action. This engagement was consummated with a letter agreement dated September 17, 2007 (the "Engagement Letter"). (Declaration of Randall T. Garteiser ("Garteiser Decl."), Ex. A). At least in relation to this brief, the Engagement Letter contains three crucial clauses. First, the Letter created a lien "over any judgment, arbitration award, settlement, or other recovery you [the ConnectU Parties] may obtain" in litigation against Facebook. (Garteiser Decl., Ex. A at 4). Second, the Letter mandated that "*[a]ll proceeds of any settlement or award* shall be paid into a trust account on behalf of the [ConnectU Parties] and [Quinn Emanuel] and be subject to setoff of any outstanding fees or costs owed to [Quinn Emanuel] under this agreement." (*Id.* at 3) (emphasis added). Third, any and all

---

[1] Quinn Emanuel notes that, in his report, the Special Master recommended joint and several distribution of the settlement proceeds for just these reasons. (Report #1 of Special Master, at 5, 9-11 [Dkt. 630]).

disputes between Quinn Emanuel and the ConnectU Parties regarding Quinn Emanuel's representation would be subject to arbitration before the AAA. (*Id.* at 6).

After signing the Letter, Quinn Emanuel vigorously represented the ConnectU Parties. Quinn Emanuel continued this representation up to and through the February settlement between the parties. At no time did the ConnectU Parties ever dispute that Quinn Emanuel held a lien over any proceeds from the litigation. Likewise, the ConnectU Parties never objected to the provision in the Engagement Letter requiring that all proceeds be held in trust pending the resolution of any fee dispute.[2]

On April 24, 2008, after the ConnectU Parties terminated their representation, Quinn Emanuel initiated arbitral proceedings pursuant to the Engagement Letter. (Garteiser Decl., Ex. B (AAA Arbitration Initiation Form)). The ConnectU Parties refused to participate in the arbitration and Quinn Emanuel responded by holding the arbitration in abeyance pending the resolution of the settlement issues brought before this Court. (Garteiser Decl., Ex. C (New York State Court Decision)). After this Court found that the settlement between the ConnectU Parties and Facebook was valid and binding, Quinn Emanuel reinstituted proceedings and attempted to move forward with their fee dispute. (*Id.*) The ConnectU Parties responded by moving to stay arbitration. (*Id.*)

The ConnectU Parties were entirely unsuccessful in their attempt to circumvent the Engagement Letter's terms. Justice Lowe of the New York Supreme Court, Commercial Division, held that the arbitration clause in the Engagement Letter was valid and enforceable. (*Id.* at 5-6). Just as importantly, he held that the *entire* Engagement Letter was valid and enforceable on its face. (*Id.* at 6). Finally, Justice Lowe ordered that the parties proceed to arbitration and resolve their fee dispute there. (*Id.* at 7).

Shortly after the Supreme Court's decision, Quinn Emanuel reinstituted arbitral proceedings. (Garteiser Decl., Ex. D (Letter of Reinstatement to AAA)). The AAA is currently in

---

[2] In fact, in negotiating the Engagement Letter, the ConnectU Parties' independent counsel edited the proposed contract and left this provision intact. (Garteiser Decl., Ex. C at 2).

the process of selecting an arbitrator for the dispute, (Garteiser Decl., Ex. E (AAA Letter Detailing Arbitrator Empanelment Process)), but, according to the AAA's standard operating procedures, this may not occur until after the Court's hearing on the present Order to Show Cause.[3] As Quinn Emanuel may not seek interim relief regarding the disposition of the settlement proceeds until an arbitrator is appointed (Garteiser Decl., Ex. F at R-34 (AAA Commercial Rule stating that only an arbitrator may grant interim relief regarding the assets at issue in arbitration)), Quinn Emanuel is presently without recourse before the AAA to protect its interests in the settlement proceeds pending final disposition of the fee dispute.

## ARGUMENT

### I. QUINN EMANUEL'S CHARGING LIEN IS VALID AND PERFECTED

Under California law, an attorney's charging lien is not automatic. *Carroll v. Interstate Brands Corp.*, 99 Cal. App. 4th 1168, 1172 (1st Dist. 2002). The attorney and client may create a contractual lien, however, through an express term in the contract for the attorney's services. *Id.* Where there is such an express term, "the agreement for a lien is decisive as to its existence and amount, and it constitutes a valid equitable assignment of the judgment pro tanto and creates a lien upon the specific [settlement] fund." *Haupt v. Charlie's Kosher Mkt.*, 17 Cal. 2d 843, 845 (1941).

Beyond its mere existence, an attorney's charging lien is *perfected* upon the execution of the contract creating the lien. *Carroll*, 99 Cal. App. 4th at 1175 ("An attorney's charging lien is created and takes effect at the time the fee agreement is executed."); *In re Bush*, 356 B.R. 28 (Bkrtcy.S.D.Cal. 2006) ("Charging liens are valid and perfected upon execution of the contract creating the lien.") (citing *Carroll*, 99 Cal. App. 4th at 1175). No notice of lien is required because a charging lien is considered "secret" by law. *Carroll*, 99 Cal. App. 4th at 1172.[4]

---

[3] (Garteiser Decl., Ex. E). The ConnectU Parties and Quinn Emanuel have until October 22, 2008 to submit their preferences on potential arbitrators. The AA will then take these expressed preferences under advisement, choose an arbitrator, vet that arbitrator's possible conflicts and finally complete the empanelment process. According to this timeline, an arbitrator will be appointed on or after October 28, 2008, the date for the Order to Show Cause hearing.

[4] Quinn Emanuel nevertheless filed its Notice of Attorneys' Lien on April 24, 2008 because to do so was considered "advisable" to protect Quinn Emanuel's interests. *Id.*

There is no question Quinn Emanuel's lien is both valid and perfected. First, the Engagement Letter explicitly creates a lien over any settlement proceeds the ConnectU Parties may collect in their litigation against Facebook. In relevant part, the Engagement Letter states that Quinn Emanuel possess a lien "over any judgment, arbitration award, settlement, or other recovery you [the ConnectU Parties] may obtain" in litigation against Facebook. (Garteiser Decl., Ex. A at 4). Second, as the New York Supreme Court held in the ConnectU Parties' failed attempt to avoid arbitration with Quinn Emanuel, "the Engagement Letter is enforceable and valid on its face."[5] (Garteiser Decl., Ex. C at 6). Consequently, there exists a "decisive" lien for Quinn Emanuel's services from any settlement proceeds the ConnectU Parties receive as a result of this action. *Haupt*, 17 Cal. 2d at 845.

The release of the settlement consideration to the ConnectU Parties would completely circumvent Quinn Emanuel's lien as it would leave that consideration solely in the hands of the ConnectU Parties. As discussed below, because attorney's liens are self-effectuating, once on notice of the lien, a defendant such as Facebook *must* include former counsel as a payee on settlement instruments in order to avoid liability to former counsel.

## II. SETTLEMENT PROCEEDS SHOULD BE DISTRIBUTED JOINTLY AND SEVERALLY PENDING THE RESOLUTION OF QUINN EMANUEL'S FEE COLLECTION ARBITRATION

In submitting this brief, Quinn Emanuel does *not* request any determination regarding the scope of, or Quinn Emanuel's ability to foreclose on, the lien at this time. *See Carroll*, 99 Cal. App. 4th at 1173 (holding that trial court of underlying action cannot decide lien issues between attorney and former client). As required by law, Quinn Emanuel instituted the AAA Arbitration as "a separate, independent action against the client ... to determine the amount of the lien, and to enforce it." *Id.* (citations omitted). Despite the ConnectU Parties' attempts to forestall it, the

---

[5] Under Ninth Circuit precedent, this Court may take judicial notice of the findings of another court. *Biggs v. Terhune*, 334 F.3d 910, 916 (9th Cir. 2003) (holding that, pursuant to Fed. R. Evid. 201, judicial notice of materials from another court is appropriate) (citing *Papai v. Harbor Tug & Barge Co.*, 67 F.3d 203, 207 n. 5 (9th Cir.1995), *rev'd on other grounds*, 520 U.S. 548 (1997)).

Arbitration is now proceeding with both the AAA and New York state court's blessing. (Garteiser Decl., Exs. C & E). It is in that action that Quinn Emanuel seeks to vindicate its rights.

Given the present status of the AAA Arbitration and this Court's current control over the proceeds of the settlement, Quinn Emanuel must look to this Court to protect its interests. *See Brown v. Superior Court*, 116 Cal. App. 4th 320, 335 (2004) (holding that "it might well constitute a denial of substantial justice and therefore an abuse of discretion for the trial court to direct payment of the judgment proceeds to [the former client] without giving [the former attorney] a fair opportunity to first litigate the validity of his lien claim in a separate action."). Put differently, although Quinn Emanuel does not request adjudication of the scope of its lien here, the clear existence of the lien (discussed, *supra*) and Quinn Emanuel's efforts to enforce it militate in favor of maintaining the status quo and allowing Quinn Emanuel to seek redress before the AAA. *Id.*[6]

It is for this reason Quinn Emanuel respectfully requests that all settlement proceeds be paid jointly and severally to Quinn Emanuel and the ConnectU Parties. Such an action (a) preserves the status quo, (b) protects Quinn Emanuel's rights to either agree with the ConnectU Parties regarding final distribution or submit the question to arbitration, (c) does not prejudice the ConnectU Parties' rights to the settlement proceeds, and (d) protects Facebook from liability to Quinn Emanuel (discussed further, *infra*).

### III. FACEBOOK WILL BE LIABLE TO QUINN EMANUEL IF IT PAYS SETTLEMENT PROCEEDS WITHOUT REGARD TO QUINN EMANUEL'S CHARGING LIEN

On April 23 & 24, 2008, Quinn Emanuel made Facebook aware of both its withdrawal as counsel of record and its charging liens over any settlement proceeds paid to the ConnectU

---

[6] By way of example only, other courts, when faced with this issue, have taken even more extreme measures. In *Barros v. Bauer & Schultz*, 2004 WL 693244 (Cal. App. 4th Dist. 2004), for example, the Fourth District held that the trial court below had been correct in holding settlement proceeds in escrow pending the result of a trial on the attorney's fee dispute. Furthermore, as discussed, the court in the underlying action may not expunge or impugn the attorney's charging lien. *Carroll*, 99 Cal. App. 4th at 1177.

Parties.[7] Because of this notice, should Facebook pay any of the settlement proceeds to the ConnectU Parties without giving effect to, or making provision for, Quinn Emanuel's lien, Facebook will be liable to Quinn Emanuel for interference with Quinn Emanuel's economic and contractual rights. *See Levin v. Gulf Ins. Group*, 69 Cal. App. 4th 1282, 1287-88 (1999). For this reason, an order requiring the Special Master to simply transfer all settlement proceeds to the ConnectU Parties will severely prejudice Facebook's interests. Quinn Emanuel does not wish to litigate any further with Facebook; too many judicial resources have been wasted with pointless post-settlement litigation. Thus, to avoid such an eventuality, an order requiring Facebook to distribute the settlement proceeds jointly and severally to Quinn Emanuel and the ConnectU Parties will further protect the status quo in this respect.

## CONCLUSION

For all of these reasons, Quinn Emanuel respectfully requests that this Court order all settlement proceeds be paid jointly and severally to Quinn Emanuel and the ConnectU Parties pending the resolution of Quinn Emanuel's fee dispute arbitration.

DATED: October 10, 2008         QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By ___Randall Garteiser___
Bruce E. Van Dalsem
Randall T. Garteiser
555 Twin Dolphin Drive, Suite 560
Redwood Shores, California 94065-2139

Attorneys for Quinn Emanuel Urquhart Oliver & Hedges, LLP

---

[7] Quinn Emanuel filed its Notice of Withdrawal as counsel of record and Notice of Attorneys' Lien in the Massachusetts Action on April 23, and the corresponding notices in the California Action on April 24.