1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     Randall T. Garteiser (Bar No. 231821)
2      randygarteiser@quinnemanuel.com
   555 Twin Dolphin Drive, Suite 560
3  Redwood Shores, California 94065-2139
   Telephone: (650) 801-5000
4  Facsimile: (650) 801-5100

5    Bruce E. Van Dalsem (Bar No. 124128)
       brucevandalsem@quinnemanuel.com
6  865 South Figueroa Street, 10th Floor
   Los Angeles, California 90017-254

7

8  Attorneys for Quinn Emanuel Urquhart
   Oliver & Hedges, LLP

9

10              UNITED STATES DISTRICT COURT

11            NORTHERN DISTRICT OF CALIFORNIA

12                  SAN JOSE DIVISION

13  The Facebook, Inc.,              CASE NO. 07-cv-01389

14          Plaintiff,

15      vs.

16  ConnectU, Inc., et al.,

17          Defendant.

18

19

20

21        DECLARATION OF RANDALL T. GARTEISER

22

23      I, Randall T. Garteiser, declare as follows:

24

25      1.    I am a member of the bar of the State of California and an

26  associate with Quinn Emanuel Urquhart Oliver & Hedges, LLP ("Quinn Emanuel").

27  I make this declaration of personal, firsthand knowledge, and if called and sworn as

28  a witness, I could and would testify as set forth below.

2.     Attached hereto as Exhibit A is a true and correct copy of the engagement letter entered into between ConnectU, Inc., Cameron Winklevoss, Tyler Winklevoss, Divya Narendra, and Howard Winklevoss as guarantor (collectively, the "ConnectU Parties") and Quinn Emanuel on September 17, 2007.

3.     Attached hereto as Exhibit B is a true and correct copy of a redacted version of the American Arbitration Association ("AAA") initiation form Quinn Emanuel submitted to the AAA on April 24, 2008 in support of its fee arbitration against the ConnectU Parties.

4.     Attached hereto as Exhibit C is a true and correct copy of a redacted version of a September 12, 2008 decision by Justice Lowe of the New York Supreme Court, Commercial Division, denying the ConnectU Parties' request to permanently stay Quinn Emanuel's fee arbitration, holding the engagement letter to be valid and enforceable on its face, and ordering the parties to proceed with arbitration. This decision has been redacted to protect the confidentiality of the ConnectU Parties' settlement with Facebook, Inc. *et al.*

5.     Attached hereto as Exhibit D is a true and correct copy of a September 26, 2008 letter sent by Adam Wolfson of Quinn Emanuel reinstating arbitral proceedings before the AAA in response to Justice Lowe's decision.

6.     Attached hereto as Exhibit E is a true and correct copy of a letter from the AAA setting forth the procedure by which the ConnectU Parties and Quinn Emanuel shall submit their choices for arbitrator. The deadline for these choices is October 22, 2008, almost two weeks beyond the date set by this Court in its Order to Show Cause for briefing on the distribution of settlement proceeds issue.

7.     Attached hereto as Exhibit F is a true and correct copy of relevant portions of the AAA's Commercial Rules.

1    I declare under penalty of perjury under the laws of the United States of

2   America that the foregoing is true and correct.

3        Executed on October 10, 2008, at Redwood Shores, California.

Randall Garteiser

Randall T. Garteiser

# EXHIBIT A

WRITER'S DIRECT DIAL NO.
212/849-7231

WRITER'S INTERNET ADDRESS
rickwerder@quinnemanuel.com

September 17, 2007

**ATTORNEY WORK PRODUCT**
**ATTORNEY-CLIENT PRIVILEGE**


**By Electronic Delivery**


ConnectU, Inc.
c/o Winklevoss LLP
2 Greenwich Office Park
Greenwich, CT 06831
Attn.: Howard Winklevoss

*Re:*    *Facebook Litigation*

Dear Howard:

Thank you for retaining Quinn Emanuel Urquhart Oliver & Hedges, LLP ("the Firm") to represent ConnectU, Inc. ("ConnectU") and its founders in connection with the prosecution of claims relating to the Facebook website.

We are writing to set forth the terms of this engagement.

*Scope of Engagement:* We will represent ConnectU, as well as Cameron Winklevoss, Tyler Winklevoss, and Divya Narenda (the "Clients") in the pending litigation in the United States District Court for the District of Massachusetts (the "Action"). Each of the Clients will sign this engagement letter, and you will sign as the authorized representative and signatory for ConnectU and as the guarantor of the financial obligations of your sons and ConnectU undertaken herein. Peter Calamari, Rick Werder, and Bill Price will lead this engagement. Unless otherwise agreed or terminated by either you or us, our engagement will end and our fee will be fully earned when a final judgment has been entered by the trial court, or there has been a final resolution by way of an agreement between the parties. "You" and "your" as hereinafter used in this letter shall refer to the Clients and Howard Winklevoss collectively.

The scope of this engagement does not include appeals from any judgment or order of the trial court. Such appeals, if any, may be the subject of a separate discussion and engagement. Also not included in the scope of this engagement are services you may request in connection with any other matter, action or proceeding, except that we will act as consultants in the pending California action (the "California Case") and, with the mutual agreement and consent of you and the Firm, take over the defense of the California Case if it appears that doing so is necessary in order to implement an overall strategy designed to maximize recovery in the Action.

*Our Fees*: The amount we will receive for our attorneys' fees for the legal services we provide under this agreement will be 20% of the value of any settlement or judgment in the Action or any value that the Clients receive in connection with the Facebook website. You understand that contingency fees are not set by law, but are subject to negotiation between a lawyer and client and that the contingency fee we have agreed upon was the subject of such a negotiation.

For the purpose of calculating our attorneys' fees, the "value" of any recovery will be the gross amount received as a result of any arbitration award, judgment, order, or settlement or the value of any stock or other things of value provided in lieu thereof, including any award of attorneys' fees and interest and excluding any award of costs. The gross amount of the recovery is that amount paid before any reduction for costs and expenses, including but not limited to those described in the following section of this agreement entitled "Costs and Billing Practices"; in other words, the "value" will not be reduced by the amount of any costs incurred, or by any sum you may be obligated to pay other lawyers who provided services to you in the Action or the California Case.

In the event our representation is terminated as provided herein, you agree that we will be entitled to the reasonable value of our services as determined by an arbitration panel or mutual agreement, the arbitrators being specifically authorized to apply a multiple to the Firm's hourly rates based upon the risk undertaken by the Firm in accepting this representation on a contingent basis and the value of the services provided by the Firm in relation to the total value of all services provided to you by your counsel in the Action. An arbitration award based on a multiple of our hourly rates will not exceed the 20% fee set forth above.

ConnectU agrees to indemnify us and hold us harmless from any claims by any other attorneys or third parties retained by the Clients or claiming a right to any sums payable to us under this agreement unless we have agreed, in writing, to associate them into the case. You and the Clients have represented that you are unaware of any claims by third parties other than our predecessor counsel in Massachusetts and know of no facts adverse to the claims set forth in the complaint filed in Massachusetts except as noted in the pleadings filed in said case as of this date. You shall be solely responsible for all legal fees, hourly or contingent, which your former counsel are entitled to receive as a result of their representation of you in the Action.

*Costs and Billing Practices:* Costs will be paid under this agreement in the following manner:

    (a)    ConnectU is responsible for the payment of all costs and expenses.

    (b)    ConnectU is responsible for paying directly the fees and expenses incurred by any counsel other than the Firm involved in the Action and/or the California Case.

    (c)    ConnectU is responsible for the costs incurred in terminating your relationship with your current counsel and extinguishing any lien they may have on any judgment or settlement that might be obtained at the earliest possible date. All risks concerning the resolution of issues with existing counsel will be borne by the Clients, and will not affect the calculation of our fees. In other words, if the lien of predecessor counsel is not extinguished, the risk of same shall be born by ConnectU, its shareholders, and you.

We will send out invoices on a monthly basis setting forth a summary description of our professional services and itemizing any associated costs and expenses. Costs and expenses include, but are not limited to, deposition transcription fees, expert/consulting fees, local counsel fees, document photocopying, scanning and management fees, in-house disbursements such as postage, telephone charges, photocopying, word processing, delivery, computer-assisted research, etc., as well as reasonable client-related travel, lodging, and other expenses. We request and expect that invoiced costs shall be paid promptly, no later than 30 days after receipt, and we reserve the right to terminate our representation if invoices are more than 30 days past due. We also reserve the right to charge 1% per month interest on any unpaid balance that remains outstanding for more than 60 days. Said interest shall not be any higher than the maximum amount permitted by law, and may be lower. Each of you shall be jointly and severally liable for all costs incurred, as well as all other financial obligations under this agreement.

All proceeds of any settlement or award shall be paid into a trust account on behalf of the Clients and our Firm and be subject to setoff of any outstanding fees or costs owed to us under this agreement.

*Award of Costs and Fees:* A court or arbitration panel may sometimes order a payment of costs or attorneys' fees by one party to the other. If any such attorneys' fees are awarded to us or our Client(s) by a court, arbitration panel, or other tribunal, the awarded fees will be added to the "value" of any settlement or award upon which our fee is based. Costs awarded to us or our Client(s) shall not be added to the "value" of any settlement or award upon which our fee is based. If a court or arbitrator awards fees or costs against any Client and in favor of an opposing party, the Client will be responsible for payment of that amount separately from any amounts due to us and without regard to the outcome of the case.

*Our Lien Over Your Recovery:* You hereby grant the Firm a lien over any judgment, arbitration award, settlement, or other recovery you may obtain in the Action. The lien shall be for the purpose of securing our attorneys' fees, reimbursement of costs, and all of your other financial obligations under this Agreement.

*No Guarantee of Results:* All litigation is by definition inherently risky and unpredictable. Consequently, although we may offer an opinion about the possible or probable course or results of our engagement, we cannot and do not guarantee or represent that we can obtain any particular result.

*Commitment of Cooperation:* During the course of this engagement, you will cooperate fully by providing us with all relevant information, as well as access to documents, knowledgeable officers and/or employees, and other materials that may be germane to the engagement. You also agree that you will not bring any other action(s) regarding the Facebook website.

*Termination and Withdrawal:* Any Client is entitled to terminate this engagement at any time by written notice effective when we receive it. Unless we agree otherwise in writing, we will provide no further services on behalf of a Client after we receive such notice.

In the unlikely event that circumstances make it necessary to do so, we reserve the right, subject to ethical and professional obligations, to withdraw from representing any Client at any time including, but not limited to, if we determine that any of our Clients' conduct has made it unreasonably difficult for us to carry out our representation effectively, your failure to pay for any costs or disbursements upon request, or any other circumstances that make our representation of you hereunder impractical.

If our engagement is terminated by the entire group of Clients or we withdraw from our representation, we will immediately be entitled to be reimbursed for all costs (including expenses) we have incurred before withdrawing (the "Termination Fees and Costs"). If our fees and costs are not paid within 60 days of your receipt of any settlement or award in the Action, you agree that we will be entitled to interest on the unpaid balance of fees and costs at the rate of 1.5% per month until paid. If our engagement is terminated by the entire group of Clients or we withdraw from our representation under the terms of this agreement, we shall be entitled to the reasonable value of our services.

*Settlement:* Each Client has the absolute right to settle their claims separately from other Clients and to accept or reject any settlement. We will not settle your claim without approval. In the event a joint settlement proposal is made, we will seek consent from each of you before entering into a settlement.

*Waiver of Conflict:* Our firm has many lawyers and several offices. We may in the future represent one or more other clients in matters involving one or more Clients or their affiliates, subsidiaries, or parent entities. We are undertaking this engagement on condition that we may

represent other clients in matters in which we do not represent a Client even if the interests of the other clients are adverse to a Client or its affiliate, subsidiary, or parent entities, including the appearance on behalf of another client adverse to a Client or its affiliate, subsidiary, or parent entities in litigation or arbitration, provided that the other matter is not substantially related to our representation of a Client and that in the course of representing a Client we do not obtain confidential information from a Client material to the representation of the other clients. If an attorney does not continue an engagement or is required to withdraw from a matter due to a conflict of interest, the client may incur delay, prejudice or additional cost associated with acquainting new counsel with the matter. Your express consent to this arrangement is required, however, because of the arrangement's possible adverse effects on the performance of our duties as attorneys to remain loyal to each client, to maintain client confidences, and to render legal services with vigor and competence.

*Joint Representation*: An undertaking by a lawyer or law firm to represent multiple clients in the same matter is called a "joint representation." Such an arrangement permits certain savings of costs that otherwise would be incurred if each client retained separate counsel. The applicable rules of professional responsibility permit the representation of clients in the same matter provided that the lawyer or firm can adequately represent each client's interests and each client knowingly consents to the joint representation.

As in any case involving multiple plaintiffs, the interests of the co-plaintiffs may diverge during the course of the litigation, even though they do not actually conflict. For example, one plaintiff may prefer a quick settlement of the matter while another desires a vigorous prosecution. Although we are not currently aware of any actual or reasonably foreseeable adverse effects of joint representation, it is possible that issues may arise in which our representation of one of you may be materially limited by our representation of another. If such circumstances arise, we must together evaluate whether continued joint representation is appropriate, as discussed below.

We understand that none of you objects in any way to the Firm representing you in this matter and that, to the extent that any potential conflict may exist or appear to exist, you each waive any such conflict. Based on the information we have received as of the date of this letter, we are not aware of any conflict of interest that would preclude the Firm from representing each of you in this matter. Further, by signing this agreement, each of the individuals hereby delegates their control of this litigation to Dr. Howard Winklevoss, including the right o settle and control the work of our Firm, and each represents that we may look solely to Dr. Howard Winklevoss for our instructions in this case

If at any time you have any concerns about the appropriateness of continued joint representation, you should let us know immediately so that we can reevaluate the Firm's continuing representation of each of you. If we become aware of any such circumstances, we will do the same.

In the event that joint representation is no longer appropriate, by virtue of any adversity, dispute, or conflict that may arise between any of you, we will determine which of you we will continue to represent and will offer to assist the others to find appropriate substitute counsel. You agree that, in such circumstances, you will consent to the Firm's continued and future representation of those whom we elect to continue to represent and will not seek to disqualify the Firm from such representation, and will assent to the Firm's withdrawal as attorney of record for you. In the event that the Firm withdraws from representing any of you, we will, of course, take reasonable steps to avoid any reasonably foreseeable prejudice. In addition, if you proceed to accept the benefit of our services in this matter, that will indicate and confirm your agreement: (i) that the Firm's representation of you hereunder will not be deemed a conflict and shall not disqualify the firm from representing any other member of the group in an unrelated matter when that member may have interests that are or may be adverse to you or your company; and (ii) that you not seek to disqualify the Firm from any such representation.

In the ordinary one lawyer/one client relationship, confidential communications between the lawyer and the client are privileged from disclosure to any third party without the client's consent. This privilege also exists in a joint representation with an important qualification: a confidential communication between the lawyer and client may not be disclosed to third parties, but may be shared with other jointly-represented clients. In other words, any communication between you and us (or other lawyers of the Firm) relating to the prosecution of this action may be disclosed to the clients who agree to this joint representation.

*Dispute Resolution*: Although unlikely, it is possible that a dispute may arise that cannot be resolved by discussions between us. We believe that some disputes can be resolved more expeditiously and with less expense by binding arbitration than in court. Any dispute regarding or arising out of our representation will be resolved by binding arbitration under the Commercial Rules of the American Arbitration Association ("AAA") before three arbitrators appointed from the AAA's Large Complex Commercial Case Panel. The arbitrators will have the authority to determine whether the dispute is arbitrable. The arbitration will be governed by both the procedural and substantive provisions of the Federal Arbitration Act. The arbitration will be held in the County of New York.

As provided by New York law, you may, under certain circumstances, elect not to arbitrate disputes concerning the amount of fees owed to us. A copy of the relevant rules will be provided upon request. Any disputes concerning the amount of fees owed to us that are not arbitrated will be subject to the jurisdiction of courts located in the County of New York.

Any dispute or claim (other than one to recover unpaid legal fees and expenses), whether arbitrable or not, arising out of our representation and lawyer-client relationship will be brought within one year of the termination of our relationship or it will be barred.

New York law (without regard to its choice of laws principles) will govern any dispute or claim related to or arising out of this agreement, whether in arbitration or in the courts.

We would appreciate your confirming receipt and agreement to the foregoing terms. Each individual Client's signature below will constitute that Client's agreement that the agreement has been duly executed by an authorized representative of ConnectU with authority to bind ConnectU to the terms of this agreement. We encourage you to seek review of this agreement by counsel of your choice. At your earliest convenience please countersign this letter in the space provided below and return it to me (by mail or fax). Unless we hear otherwise from you immediately, we will assume that these terms are acceptable and proceed accordingly with our work. If you request that we perform work on this engagement after receipt of this letter, we will assume that you have agreed to its terms, even though you have not yet returned an executed copy to us, and the terms hereof will be applicable to our work.

Thank you for having confidence in our Firm. We appreciate this opportunity to represent you in this matter and look forward to working with you.

Sincerely,

Richard I. Werder, Jr.

ConnectU, Inc.
September 17, 2007
Page 8

Accepted and Agreed:

ConnectU, Inc.

By _____
Its _____


_____
Cameron Winklevoss


_____
Tyler Winklevoss


Divya ~~Narenda~~ Narendra          9/14/2007


_____
Howard Winklevoss, as guarantor

ConnectU, Inc.
September 17, 2007
Page 8

Accepted and Agreed:

ConnectU, Inc.

By _____    CAMERON WINKLEVOSS      9/24/07

Its   PRESIDENT

_____                     9/24/07

Cameron Winklevoss

_____                     9/24/07

Tyler Winklevoss

_____

Divya Narenda

_____

Howard Winklevoss, as guarantor

GL590/2209843.1

ConnectU, Inc.
September 17, 2007
Page 8

Accepted and Agreed:

ConnectU, Inc.

By _____

Its _____

_____
Cameron Winklevoss

_____
Tyler Winklevoss

_____
Divya Narenda

_____
Howard Winklevoss, as guarantor

G1590/2209843.1

# EXHIBIT B

ONLINE FILING DEMAND FOR ARBITRATION/MEDIATION FORM

**This concludes your filing.**

**Thank you for submitting your claim to the AAA.**

**Your claim confirmation number is: 002-4XF-APG**

To institute proceedings, please send a copy of this form and the Arbitration Agreement to the opposing party.

Your dispute has been filed in accordance with:    Commercial Dispute Resolution Procedures

This claim has been filed for:    Arbitration

Filing Fee:

---

## Additional Claim Information

Claim Amount:

Claim Description:    Claimant seeks attorneys' fees of not less than ⸱    as well as all unpaid
expenses, pursuant to its letter agreement with Respondents dated September 17,
2007. Claimant represented Respondents on contingency. Claimant secured a highly
favorable result for Respondents, but Respondents have terminated Claimant and
refuse to pay or acknowledge Claimant's full fee.

Arbitration Clause:    See uploaded document at p. 6

Hearing Locale Requested:    New York, NY

Contract Date:    09/17/2007

Number of Neutrals:    1

---

## Claimant 1
**Type of Business: Partnership**

Name:
**Company Name:**    Quinn Emanuel Urquhart Oliver & Hedges, LLP
**Address:**    51 Madison Avenue
New York, NY 10010
**Telephone:**    212-849-7000
**Fax:**    212-849-7100
**Email:**    null
**Include in caption:**    Company

### Representatives

Name:    Richard I. Werder, Jr.
**Company Name:**    Quinn Emanuel Urquhart Oliver & Hedges, LLP
**Address:**    51 Madison Avenue
New York, NY 10010
**Telephone:**    212-849-7000
**Fax:**    212-849-7100
**Email:**    rickwerder@quinnemanuel.com

---

**Respondent 1**
**Howard Winklevoss**
**Type of Business: Unknown / Blank Demand**

| Name: | Howard Winklevoss |
|---|---|
| **Company Name:** | null |
| **Address:** | Two Greenwich Office Park |
| | Greenwich, CT 06831 |
| **Telephone:** | 203-861-5500 |
| **Fax:** | null |
| **Email:** | null |
| **Include in caption:** | Individual |

### Representatives

| Name: | David Barrett |
|---|---|
| **Company Name:** | Boies, Schiller & Flexner LLP |
| **Address:** | 575 Lexington Avenue |
| | New York, NY 10022 |
| **Telephone:** | 212-446-2300 |
| **Fax:** | null |
| **Email:** | dbarrett@bsfllp.com |

---

### Respondent 2
### Cameron Winklevoss
### Type of Business: Unknown / Blank Demand

| Name: | Cameron Winklevoss |
|---|---|
| **Company Name:** | null |
| **Address:** | Two Greenwich Office Park |
| | Greenwich, CT 06831 |
| **Telephone:** | 203-861-5500 |
| **Fax:** | null |
| **Email:** | null |
| **Include in caption:** | Individual |

### Representatives

| Name: | David Barrett |
|---|---|
| **Company Name:** | Boies, Schiller & Flexner LLP |
| **Address:** | 575 Lexington Avenue |
| | New York, NY 10022 |
| **Telephone:** | 212-446-2300 |
| **Fax:** | null |
| **Email:** | dbarrett@bsfllp.com |

---

### Respondent 3
### Tyler Winklevoss
### Type of Business: Unknown / Blank Demand

| Name: | Tyler Winklevoss |
|---|---|
| **Company Name:** | null |
| **Address:** | Two Greenwich Office Park |
| | Greenwich, CT 06831 |
| **Telephone:** | 203-861-5500 |
| **Fax:** | null |
| **Email:** | null |
| **Include in caption:** | Individual |

### Representatives

| Name: | David Barrett |
|---|---|
| **Company Name:** | Boies, Schiller & Flexner LLP |

| Address: | 575 Lexington Avenue |
| | New York, NY 10022 |
| Telephone: | 212-446-2300 |
| Fax: | null |
| Email: | dbarrett@bsfllp.com |

## Respondent 4
## Divya Narendra
### Type of Business: Unknown / Blank Demand

| Name: | Divya Narendra |
| Company Name: | null |
| Address: | Two Greenwich Office Park |
| | Greenwich, CT 06831 |
| Telephone: | 203-861-5500 |
| Fax: | null |
| Email: | null |
| Include in caption: | Individual |

### Representatives

| Name: | David Barrett |
| Company Name: | Boies, Schiller & Flexner LLP |
| Address: | 575 Lexington Avenue |
| | New York, NY 10022 |
| Telephone: | 212-446-2300 |
| Fax: | null |
| Email: | dbarrett@bsfllp.com |

## Respondent 5
### Type of Business: Service / Product Provider

| Name: | |
| Company Name: | ConnectU, Inc. |
| Address: | Two Greenwich Office Park |
| | Greenwich, CT 06831 |
| Telephone: | 203-861-5500 |
| Fax: | null |
| Email: | null |
| Include in caption: | Company |

### Representatives

| Name: | David Barrett |
| Company Name: | Boies, Schiller & Flexner LLP |
| Address: | 575 Lexington Avenue |
| | New York, NY 10022 |
| Telephone: | 212-446-2300 |
| Fax: | null |
| Email: | dbarrett@bsfllp.com |

To institute proceedings, please send a copy of this form and the Arbitration Agreement to the opposing party.

Your demand/submission for arbitration/mediation has been received on 04/24/2008 09:28 EST.

# EXHIBIT C

SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT: ~~HON. RICHARD B. LOWE, III~~ _Justice_          PART S6m

Connecto, Inc et al

INDEX NO. 602082/08

MOTION DATE 7/21/08

- v -

MOTION SEQ. NO. 001

Quian Emanuel Et al

MOTION CAL. NO.

The following papers, numbered 1 to _____ were read on this motion to/for _____

|  | PAPERS NUMBERED |
|---|---|
| Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ... | _____ |
| Answering Affidavits — Exhibits _____ | _____ |
| Replying Affidavits _____ | _____ |

Cross-Motion: ☐ Yes ☐ No

Upon the foregoing papers, it is ordered that this motion

UNFILED JUDGMENT
This judgment has not been entered by the County Clerk
and notice of entry cannot be served based hereon. To
obtain entry, counsel or authorized representative must
appear in person at the Judgment Clerk's Desk (Room
141B).

MOTION IS DECIDED IN ACCORDANCE
WITH ACCOMPANYING MEMORANDUM DECISION.

RECEIVED

SEP 1 6 2008

IAS MOTION
SUPPORT OFFICE

HON. RICHARD B. LOWE, III

Dated: 9/12/08

_____ J.S.C.

Check one: ☐ FINAL DISPOSITION   ☐ NON-FINAL DISPOSITION

Check if appropriate:   ☐ DO NOT POST      ☐ REFERENCE

CASminA

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE FOR THE FOLLOWING REASON(S):

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: IAS PART 56
---------------------------------------------------------------------x
CONNECTU, INC., HOWARD WINKLEVOSS,
CAMERON WINKLEVOSS, TYLER WINKLEVOSS
and DIVYA NARENDRA,

                Petitioners,           Index No. 602082/08

      -against-

QUINN EMANUEL URQUHART OLIVER
& HEDGES, LLP,

              Respondent.

**UNFILED JUDGMENT**
This judgment has not been entered by the County Clerk and notice of entry cannot be served based hereon. To obtain entry, counsel or authorized representative must appear in person at the Judgment Clerk's Desk (Room 141B).

---------------------------------------------------------------------

**Richard B. Lowe, III, J:**

        In this proceeding involving a dispute over legal fees, petitioners Connectu, Inc.,

Howard Winklevoss, Cameron Winklevoss, Tyler Winklevoss and Divya Narendra move for an

order, pursuant to CPLR 7503 (b), staying the arbitration commenced by respondent-law firm

Quinn Emanuel Urquhart Oliver & Hedges, LLP (Quinn Emanuel) before the American

Arbitration Association (AAA), entitled Quinn Emanuel Urquhart Oliver & Hedges, LLP v

Howard Winklevoss, et al., No. 13 194 Y 00995 08. The arbitration seeks       in

attorneys' fees allegedly owed by petitioners to Quinn Emanuel pursuant to an engagement letter

whereby Quinn Emanuel was retained on a contingent fee basis to represent petitioners in

litigation with Facebook, Inc. concerning ownership of the social networking website,

Facebook.com.

## BACKGROUND

        In 2007, petitioners contacted Quinn Emanuel seeking potential representation in

the Facebook litigation. That litigation had been pending for several years, during which time,

petitioners were represented by a nationally-known law firm. After lengthy discussions between

Quinn Emanuel and petitioners, a contingency fee agreement was reached. In September 2007, a

federal court.

In April 2008, Quinn Emanuel initiated the subject arbitration proceedings before the AAA. In the demand for arbitration, Quinn Emanuel seeks . allegedly due from petitioners pursuant to the Engagement Letter. The "claim description" in the arbitration demand states:

> "Claimant seeks attorneys' fees of not less than ⋯ , as well as unpaid expenses, pursuant to its letter agreement with Respondents, dated September 17, 2007. Claimant represented Respondents on contingency. Claimant secured a highly favorable result for Respondents, but Respondents have terminated Claimant and refuse to pay or acknowledge Claimant's full fee."

Counsel for the parties thereafter exchanged letters pertaining to, inter alia, the arbitrability of the fee dispute. Counsel for petitioners took the position that the fee dispute was not arbitrable, and threatened to seek a court order enjoining the AAA from proceeding.

In the interim, petitioners commenced a separate action attempting to challenge the enforceability of the settlement agreement. During the pendency of that action, Quinn Emanuel informed the AAA to "hold the arbitration in abeyance, reserving [its] right to compel arbitration." Quinn Emanuel maintains that it never intended to, and never did, waive its right to arbitrate the dispute pursuant to the terms of the Engagement Letter. In June 2008, when the Facebook settlement agreement was held by a federal court in California to be enforceable, Quinn Emanuel instructed the AAA to reinstate proceedings and then move the arbitration process forward. Counsel for petitioners countered that reinstatement was improper because the arbitration had been discontinued.

The AAA confirmed, on July 3, 2008, that it had only temporarily held off on administrative steps pursuant to the parties' request and that the matter remained "alive."

3

## DISCUSSION

Petitioners present a long list of arguments to support their position that Quinn Emanuel's claims are not subject to arbitration and that a stay of arbitration, pursuant to CPLR 7503, is warranted. Among other things, they argue that the arbitration clause is invalid and not enforceable because: (a) the arbitration clause was obtained without petitioners' knowing consent; (b) the arbitration clause violates the public policy of the state of New York because it was obtained in breach of respondent's duties to its clients and attorney disciplinary rules; (c) the arbitration clause does not comply with the fee-dispute resolution rules promulgated by the Chief Administrator of the Courts, 22 NYCRR 137, et seq. (Part 137).[1] Petitioners also claim that Quinn Emanuel, by its actions, waived its right to resort to arbitration.

In opposition, Quinn Emanuel submits that: (a) petitioners entered into the agreement to arbitrate fully understanding and knowingly consenting to the terms thereof; (b) the arbitration clause is facially valid, was not obtained through fraud, duress or misrepresentation, and complies in all respects with New York law; (c) Part 137 does not apply here because, by its terms, it does not apply where the amounts in dispute are less than $1,000 or more than $50,000; and (d) Quinn Emanuel never waived its right to demand arbitration. For these reasons, Quinn

---

[1] Part 137 provides, in relevant part:

Section 137.0. Scope of program

This Part establishes the New York State Fee Dispute Resolution Program, which provides for the informal and expeditious resolution of fee disputes between attorneys and clients through arbitration and mediation. In accordance with the procedures for arbitration, arbitrators shall determine the reasonableness of fees for professional services, including costs, taking into account all relevant facts and circumstances. Mediation of fee disputes, where available, is strongly encouraged.

4

Emanuel submits that petitioners are contractually obligated to proceed with arbitration, and may not now attempt to avoid and/or obfuscate a clear and valid contract.

It is well settled that "[a] written agreement that is complete, clear, and unambiguous on its face must be enforced according to the plain meaning of its terms" (Borovina & Marullo, PLLC v Structured Assets Sales Group, LLC, 17 AD3d 387, 388 [2d Dept 2005], citing Greenfield v Philles Records, Inc., 98 NY2d 562, 569 [2002]; W.W.W. Assoc., Inc. v Giancontieri, 77 NY2d 157, 162 [1990]; Civil Serv. Employees Assn., Inc. v Plainedge Union Free School Dist., 12 AD3d 395 [2d Dept 2004]).  No showing has been made that the arbitration clause was obtained without petitioners' consent, or that it was the result of fraud, misrepresentation or duress.  Accordingly, the court rejects petitioners' assertion that the arbitration clause was obtained without their consent or as a result of some sort of overreaching or other improper action on Quinn Emanuel's part.

Petitioners' reliance on Part 137 is misplaced, as that section is not applicable here.  Section 137.1 (b) (2), provides that Part 137 shall not apply to "amounts in dispute involving a sum of less than $1,000 or more than $50,000, except that an arbitral body may hear disputes involving other amounts if the parties have consented" (Eiseman Levine Lehrhaupt & Kakoyiannis, P.C. v Torino Jewelers, Ltd., 44 AD3d 581 [1st Dept 2007]; Borovina & Marullo, PLLC, 17 AD3d 387, supra).

As explained by the First Department in Eiseman Levine Lehrhaupt & Kakoyiannis, P.C.:

> "Part 137 of the Rules of the Chief Administrator of the Courts 'establishes the
> New York State Fee Dispute Resolution Program [the Program], which provides
> for the informal and expeditious resolution of fee disputes between attorneys and
> clients through arbitration and mediation.  In accordance with the procedures for

5

arbitration, arbitrators shall determine the reasonableness of fees for professional services' (22 NYCRR 137.0). The Program 'appl[ies] where representation . . . commenced on or after January 1, 2002, to all attorneys admitted to the bar of the State of New York who undertake to represent a client in any civil matter' (22 NYCRR 137.1 [a]). It does not apply, however, to 'amounts in dispute involving a sum of less than $1,000 or more than $50,000' (22 NYCRR 137.1 [b] [2]), unless the parties agree otherwise."

(44 AD3d at 583).

Similarly, in Borovina & Marullo, PLLC, the Second Department stated:

"The relevant provisions of the subject written agreement and the rider annexed thereto provide that the right to seek arbitration to resolve fee disputes is 'pursuant to court rules,' referring to the Rules of the Chief Administrator of the Courts (22 NYCRR part 137). Part 137 of the Rules of the Chief Administrator of the Courts, which establishes the New York State Fee Dispute Resolution Program, 'shall not apply' where, as here, the amounts in dispute involve a sum of 'more than $50,000' (22 NYCRR 137.1 [b] [2])."

(17 AD3d at 388).

Accordingly, Quinn Emanuel's multi-million dollar claim for legal fees is not subject to Part 137.

Even if this court were to reach the merits of petitioners' claim, the Engagement Letter is enforceable and valid on its face. Neither the fact that the Engagement Letter shortens the statute of limitations for claims arising out of the engagement to one year, nor the fact that it charges a 1.5% per month late fee for legal fees owed to Quinn Emanuel after the client is in receipt of a settlement or award for 60 days or more, establishes any impropriety or grounds for not enforcing the arbitration clause (see e.g. John J. Kassner & Co., Inc. v City of New York, 46 NY2d 544 [1979] [contractually shortening the statute of limitations is not improper]).

Nor has there been any factual showing to support petitioners' claim that Quinn Emanuel modified or waived its right to arbitrate. Rather, all of the facts support the conclusion

6

that Quinn Emanuel reserved its rights to proceed with the arbitration.

## CONCLUSION

It is ORDERED and ADJUDGED that the application by the petitioners to stay the subject arbitration is denied in all respects, and the petition is dismissed, with costs and disbursements to respondent; and it is further

ORDERED that parties are directed to proceed to arbitration and to serve a copy of this decision and order upon the arbitral tribunal.

This constitutes the JUDGMENT of the court.

Dated:     September 12, 2008

ENTER:

_____

HON. RICHARD B. LOWE, III

UNFILED JUDGMENT

This judgment has not been entered by the County Clerk and notice of entry cannot be served based hereon. To obtain entry, counsel or authorized representative must appear in person at the Judgment Clerk's Desk (Room 141B).

7

# EXHIBIT D



**American Arbitration Association**
*Dispute Resolution Services Worldwide*

Re: 13 194 Y 00995 08
　　Quinn Emanuel Urquhart Oliver & Hedges, LLP
　　and
　　Howard Winklevoss, Cameron Winklevoss, Tyler
　　Winklevoss, Divya Narendra, ConnectU, Inc.

DATE LIST SUBMITTED: October 7, 2008
CASE MANAGER: Jonathan J. Weed

## LIST FOR SELECTION OF ARBITRATORS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Once you have made your strikes please indicate your order of preference by number. We will make every effort to appoint the mutually acceptable arbitrator who can hear your case promptly, please leave as many names open as possible. Biographical information about the arbitrators listed below is attached. **If your list is not received by the Association on or before October 22, 2008, all names submitted shall be deemed acceptable.** If appointment cannot be made from this list, the Association may appoint without the submission of an additional list, in accordance with the rules. The parties are to exchange copies of all correspondence except the checklist for conflicts and this arbitrator selection list. For your convenience, this form may be completed online through AAA's WebFile.

**Joanne Barak**
**William L.D. Barrett**
**John W. Bissell**
**Hon. William Dreier**
**David Love**
**HON Hon. Herman D. Michels**
**E. Leo Milonas**
**Paul Peter Nicolai**
**Abigail Pessen**
**Stewart G. Pollock**
**HON Walter M. Schackman**
**Richard H. Silberberg**
**Hon. George Bundy Smith**
**Edna R. Sussman**
**Dwight L. Wassong**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Arbitrators are compensated at the rate stated on their biographical data. The compensation is an independent obligation of the parties and it is understood that the American Arbitration Association has no liability, direct or indirect, for such payments. Each party shall promptly make such deposits with the AAA as required by the case manager, pursuant to the Rules, subject to final apportionment by the arbitrator in the award.

Party: _____

By: _____　　Title: _____

# EXHIBIT E

WRITER'S DIRECT DIAL NO.
**(212) 849-7192**

WRITER'S INTERNET ADDRESS
**adamwolfson@quinnemanuel.com**

September 26, 2008

<u>VIA E-MAIL</u>

Jonathan Weed
American Arbitration Association
Northeast Case Management
950 Warren Avenue, 4th Floor
East Providence, RI 02914
(401) 431-4721
(401) 435-6529 (fax)

Re:   <u>Quinn Emanuel Urquhart Oliver & Hedges, LLP v. ConnectU, et al.</u>

Dear Mr. Weed:

We are pleased to report that ConnectU, et al.'s petition to stay the above-referenced arbitration was denied in all respects. I attach the opinion for the AAA's review.

The Court also ordered that the parties proceed with arbitration. In keeping with this order, Quinn Emanuel requests that the temporary stay entered on July 22, 2008 be lifted and that the arbitration move forward according to the AAA's rules and procedures.

Due to ConnectU's dilatory tactics, Quinn Emanuel may be required to seek certain interim relief regarding the assets at issue. Consequently, Quinn Emanuel further requests that the AAA proceed with all due haste to empanel arbitrators so that we may request, if needed, relief pursuant to Commercial Rule 34.

**quinn emanuel urquhart oliver & hedges, llp**

LOS ANGELES | 865 South Figueroa Street, 10th Floor, Los Angeles, CA 90017 | TEL (213) 443-3000 FAX (213) 443-3100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, CA 94111 | TEL (415) 875-6600 FAX (415) 875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, CA 94065 | TEL (650) 801-5000 FAX (650) 801-5100
TOKYO | Akasaka Twin Tower Main Building, 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, 107-0052 | TEL +81 3 5561-1711 FAX +81 3 5561-1712
LONDON | Ground Floor, 90 Long Acre, London England | TEL +44 (0) 20-7716-5866 FAX +44 (0) 20-7716-5867

Should you have any questions at all, please feel free to contact me.

Sincerely,

Adam Wolfson

Enclosure

cc:     Sean O'Shea, Esq.
        Michael Petrella, Esq.
        Mark Weissman, Esq.

# EXHIBIT F

Search ⊕
Checkout ⊗

ABOUT US     DISPUTE RESOLUTION SERVICES     FILE A CASE     AAA UNIVERSITY     NEUTRALS
CONTACT US
PRINT VERSION

Commercial Arbitration Rules and Mediation PROCEDURES
(Including Procedures for Large, Complex Commercial Disputes)
Amended and Effective September 1, 2007

Summary of Changes

TABLE OF CONTENTS

IMPORTANT NOTICE
INTRODUCTION
STANDARD ARBITRATION CLAUSE
ADMINISTRATIVE FEES
MEDIATION
LARGE, COMPLEX CASES

COMMERCIAL MEDIATION PROCEDURES
M-1. Agreement of Parties

M-2. Initiation of Mediation
M-3. Representation
M-4. Appointment of the Mediator
M-5. Mediator's Impartiality and Duty to Disclose
M-6. Vacancies
M-7. Date and Responsibilities of the Mediator
M-8. Responsibilities of the Parties
M-9. Privacy
M-10. Confidentiality
M-11. No Stenographic Record
M-12. Termination of Mediation
M-13. Exclusion of Liability
M-14. Interpretation and Application of Procedures
M-15. Deposits
M-16. Expenses

M-17. Cost of Mediation

COMMERCIAL ARBITRATION RULES
R-1. Agreement of Parties
R-2. AAA and Delegation of Duties
R-3. National Roster of Arbitrators
R-4. Initiation under an Arbitration Provision in a Contract
R-5. Initiation under a Submission
R-6. Changes of Claim
R-7. Jurisdiction
R-8. Mediation

to have been given.

R-25. Oaths

Before proceeding with the first hearing, each arbitrator may take an oath of office and, if required by law, shall do so. The arbitrator may require witnesses to testify under oath administered by any duly qualified person and, if it is required by law or requested by any party, shall do so.

R-26. Stenographic Record

Any party desiring a stenographic record shall make arrangements directly with a stenographer and shall notify the other parties of these arrangements at least three days in advance of the hearing. The requesting party or parties shall pay the cost of the record. If the transcript is agreed by the parties, or determined by the arbitrator to be the official record of the proceeding, it must be provided to the arbitrator and made available to the other parties for inspection, at a date, time, and place determined by the arbitrator.

R-27. Interpreters

Any party wishing an interpreter shall make all arrangements directly with the interpreter and shall assume the costs of the service.

R-28. Postponements

The arbitrator may postpone any hearing upon agreement of the parties, upon request of a party for good cause shown, or upon the arbitrator's own initiative.

R-29. Arbitration in the Absence of a Party or Representative

Unless the law provides to the contrary, the arbitration may proceed in the absence of any party or representative who, after due notice, fails to be present or fails to obtain a postponement. An award shall not be made solely on the default of a party. The arbitrator shall require the party who is present to submit such evidence as the arbitrator may require for the making of an award.

R-30. Conduct of Proceedings

(a) The claimant shall present evidence to support its claim. The respondent shall then present evidence to support its defense. Witnesses for each party shall also submit to questions from the arbitrator and the adverse party. The arbitrator has the discretion to vary this procedure, provided that the parties are treated with equality and that each party has the right to be heard and is given a fair opportunity to present its case.

(b) The arbitrator, exercising his or her discretion, shall conduct the proceedings with a view to expediting the resolution of the dispute and may direct the order of proof, bifurcate proceedings and direct the parties to focus their presentations on issues the decision of which could dispose of all or part of the case.

(c) The parties may agree to waive oral hearings in any case.

R-31. Evidence

(a) The parties may offer such evidence as is relevant and material to the dispute and shall produce such evidence as the arbitrator may deem necessary to an understanding and determination of the dispute. Conformity to legal rules of evidence shall not be necessary. All evidence shall be taken in the presence of all of the arbitrators and all of the parties, except where any of the parties is absent, in default or has waived the right to be present.

(b) The arbitrator shall determine the admissibility, relevance, and materiality of the evidence offered and may exclude evidence deemed by the arbitrator to be cumulative or irrelevant.

(c) The arbitrator shall take into account applicable principles of legal privilege, such as those involving the confidentiality of communications between a lawyer and client.

(d) An arbitrator or other person authorized by law to subpoena witnesses or documents may do so upon the request of any party or independently.

R-32. Evidence by Affidavit and Post-hearing Filing of Documents or Other Evidence

(a) The arbitrator may receive and consider the evidence of witnesses by declaration or affidavit, but shall give it only such weight as the arbitrator deems it entitled to after consideration of any objection made to its admission.

(b) If the parties agree or the arbitrator directs that documents or other evidence be submitted to the arbitrator after the hearing, the documents or other evidence shall be filed with the AAA for transmission to the arbitrator. All parties shall be afforded an opportunity to examine and respond to such documents or other evidence.

R-33. Inspection or Investigation

An arbitrator finding it necessary to make an inspection or investigation in connection with the arbitration shall direct the AAA to so advise the parties. The arbitrator shall set the date and time and the AAA shall notify the parties. Any party who so desires may be present at such an inspection or investigation. In the event that one or all parties are not present at the inspection or investigation, the arbitrator shall make an oral or written report to the parties and afford them an opportunity to comment.

R-34. Interim Measures**

(a) The arbitrator may take whatever interim measures he or she deems necessary, including injunctive relief and measures for the protection or conservation of property and disposition of perishable goods.

(b) Such interim measures may take the form of an interim award, and the arbitrator may require security for the costs of such measures.

(c) A request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate.

** The Optional Rules may be found below.

R-35. Closing of Hearing