IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| The Facebook, Inc., et al., | NO. C 07-01389 JW |
| Plaintiffs, v. ConnectU, Inc., et al., Defendants. | **ORDER DIRECTING THE SPECIAL MASTER TO DELIVER THE PROPERTY BEING HELD IN TRUST TO THE PARTIES IN ACCORDANCE WITH THE TERMS OF THEIR SETTLEMENT AGREEMENT** |

## I. INTRODUCTION

On February 22, 2008, the parties to civil cases pending in this Court and the District of Massachusetts signed a "Term Sheet & Settlement Agreement." The Agreement provided: "The parties stipulate that the San Jose Federal court shall have jurisdiction to enforce this agreement."[1] On April 23, 2008, The Facebook, Inc., filed a motion with this Court to enforce the Agreement. The motion was docketed in an action pending in this Court. However, it was in legal effect an ancillary proceeding to the pending action.[2]

On June 25, 2008, over objections by ConnectU and the Founders (collectively, "ConnectU"), the Court granted the motion to enforce the Agreement. (Enforcement Order at 4.) The Court appointed a Special Master to gather and hold the property and cash which the parties had

---

[1] (Order Granting Plaintiffs' Confidential Motion to Enforce the Settlement Agreement at 3, hereafter, "Enforcement Order," Docket Item 461.)

[2] The ancillary nature of the motion was addressed in the Court's August 8, 2008 Order. (See Order Denying the ConnectU Founders' Motion to Intervene; Denying ConnectU's Motion to Stay Execution of Judgment at 5, hereafter, "Deny Stay Order," Docket Item No. 610.)

agreed to exchange in the Agreement. (Docket Item No. 475.) On July 2, 2008, the Court issued a Judgment Enforcing Settlement Agreement (hereafter, "July 2 Judgment," Docket Item No. 476), in which the Court ordered the parties to deposit with the Special Master stock, cash and various other documents.

On September 5, 2008, the Special Master issued a report stating that he received the stock, cash and documents. (hereafter, "Special Master's Report," Docket Item No. 630.) Pursuant to the Court's appointment Order, the Special Master also provided the Court with his recommendations of action which the Court should take in the enforcement of the Agreement. (Special Master's Report at 6.) On September 19, 2008, the Court issued an order for the parties to appear on October 28, 2008 and show cause, if any, why the Court should not order the Master to deliver the property being held by him to the parties in accordance with the terms of the Agreement. (Docket Item No. 634.)

At the October 28th hearing, counsel appearing for ConnectU and the Founders advised the Court that on July 30, 2008, ConnectU had noticed an appeal from the July 2 Judgment, and that on August 11, 2008, the Founders had also noticed an appeal from the July 2 Judgment. (See Docket Item Nos. 582, 611, respectively.) Defendants contended that because of their appeals, the Court lacked jurisdiction to order the Master to deliver the things held by him in enforcement of the Agreement.[3]

Also appearing were counsel for Quinn Emanuel Urquhart Oliver & Hedges, LLP, requesting the Court to honor a lien the firm has asserted on the settlement proceeds. (Docket Item Nos. 337, 644.)

Since Defendants' challenge to the Court's jurisdiction is a threshold issue, the Court proceeds to address this issue first. The Court will also consider Quinn Emanuel's lien on the proceeds.

---

[3] (Defendants' Response to Order to Show Cause on Disbursement of Settlement Consideration, and Renewed Motion to Stay at 1, hereafter, "Defendants' Response," Docket Item No. 637.)

2

## II. DISCUSSION

**A.     Jurisdiction**

Defendants contend that the Court lacks jurisdiction to take further action because any such action would be taken after an appeal has been filed from the July 2 Judgment, which was final and appealable. (Defendants' Response at 1.)

As a general matter, "[o]nce a notice of appeal is filed, the district court is divested of jurisdiction over the matters being appealed." Natural Resources Defense Council, Inc. v. Southwest Marine, Inc., 242 F.3d 1163, 1166 (9th Cir. 2001) (citing Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58 (1982)). However, there are, several exceptions to the principle of exclusive appellate jurisdiction. Id. An appeal to the Ninth Circuit must be from a final judgment of the district court. 28 U.S.C. §1291.   The district court is not divested of jurisdiction to take action if a party files a premature appeal. FirsTier Mortgage Co. v. Investors Mortgage Ins. Co., 498 U.S. 269, 272-73 (1991).

Presuming ConnectU and the Founders have a right to appeal,[4] the issue becomes whether the appeals they have filed divest the Court of the power granted in their stipulation to issue an enforcement decision.

This ancillary civil action to enforce the Agreement is tantamount to an action in equity for specific performance. Adams v. Johns-Manville Corp., 876 F.2d 702, 709 (9th Cir. 1989) (A

---

[4] In its June 25, 2008 Order, the Court discussed its general equitable power to enforce an agreement to settle a case pending before it. (Enforcement Order at 4.) However, as a threshold matter, the Court emphasizes that none of the following discussion of jurisdiction should be construed as a finding by this Court that an appeal may be taken from its enforcement decision. The enforcement power of the Court is derived from a stipulation of all the parties to a private mediation. As a component of their private mediation, the parties stipulated that a United States District Court Judge is empowered to enforce their mediated settlement. Thus, this case is distinguishable from one in which the parties to a federal lawsuit reach an out-of-court settlement, request the federal court to adopt the settlement as a judgment in the case, and the federal judge, who has retained jurisdiction to enforce the judgment, makes a post-judgment order.

Although the Agreement in this case affects a pending action, because in the Agreement the parties agreed to dismiss it, these current proceedings are independent of the underlying action. Under the Agreement, no judgment will be entered in the underlying action (or actions) because they will be dismissed. Thus, the appealability of the enforcement order must be judged based its nature as an independent, albeit ancillary proceeding.

1 "motion to enforce [a] settlement agreement essentially is an action to specifically enforce a
2 contract."). In a specific performance action, the appealable judgment is the judgment which orders
3 performance of the acts agreed upon, leaving nothing further for the court to do. An order of
4 specific performance is injunctive in nature. It is appealable as a final judgment when it requires
5 conduct that is "specific in terms [and] describe[d] in reasonable detail, and not by reference to [any]
6 other document, the act or acts" to be performed. Petrello v. White, 533 F.3d 110, 115-16 (2d Cir.
7 2008) (quoting Fed. R. Civ. P. 65(d)).

Judgments and orders where "money is directed to be paid into court, or property delivered to a receiver," however, "are interlocutory only and [are] intended to preserve the subject matter in dispute from waste or dilapidation, and to keep it within the control of the court until the rights of the parties concerned can be adjudicated by a final decree." Forgay v. Conrad, 47 U.S. 201, 204-05 (1848). A district court's judgment can only be final when "it requires the immediate turnover of property and subjects the party to irreparable harm if the party is forced to wait until the final outcome of the litigation." In re Hawaii Corp., 796 F.2d 1139, 1143 (9th Cir. 1986).

The Court finds that although the July 2 Judgment is prefatory to entry of a final adjudication, it is interlocutory in nature. The July 2 Judgment orders the parties to deposit the cash, stock and other documents with a Special Master, subject to further order of the Court; it does not identify specific acts the parties are to perform with respect to one another. See Petrello, 533 F.3d at 115-116. All of the Court's directives are made in reference to the underlying Agreement, which prevents the July 2 Judgment from being considered a final adjudication. See id. Instead, the July 2 Judgment directs the parties to take a number of preparatory actions, which place the Special Master as a temporary intermediary, pending further action of the Court. None of the terms of the July 2 Judgment "require immediate turnover of property" to the parties, nor "subject [either] party to irreparable harm." In re Hawaii Corp., 796 F.2d at 1143. Furthermore, the purpose of the October 28th hearing was to provide the parties with an opportunity to show cause why a final adjudicatory action ordering specific performance should not be entered.

4

1    Accordingly, the Court finds that the previously filed appeal to the Ninth Circuit from the
2 July 2 Judgment does not deprive it of jurisdiction to enter a final adjudication ordering
3 performance.[5]

**B.    Stay of Execution**

In the alternative, Defendants renew their motion for a stay of execution pending their appeal. (Defendants' Response at 14.)

As the Court stated on the record, a stay of execution pending appeal from a final judgment ordering specific performance raises issues which are not present in a stay of execution on a money judgment. In cases involving a money judgment, an appellant may obtain a stay by posting a supersedeas bond. Fed. R. Civ. P. 62(d). Of course, denial of a stay or failure to post a bond empowers the judgment creditor to execute on the judgment, notwithstanding the appeal. Id.

In a specific performance action, the prosecuting party seeks immediate performance of some act due from the responding party. If the responding party appeals the judgment and moves the Court to stay performance pending appeal, before granting the stay, the Court must consider whether the party in whose favor the judgment has been entered can be provided with security, comparable to that provided by a supersedeas bond. Federal Rule of Civil Procedure 62(c) provides that while an appeal is pending from an injunction, the Court may "suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights."

Here, the consideration which ConnectU and the Founders seek to withhold pending the appeal are corporate stock, freedom from expensive on-going litigation and peace of mind from a broad mutual release. Security for this consideration must be evaluated in light the rapidly changing United States economy and a highly competitive market for Internet products and services. The Court finds that ConnectU and the Founders have not proposed any security which would protect Facebook from devaluation of that consideration pending appeal.

---

[5] Although a matter for the Ninth Circuit to decide, implicit in the Court's findings is that the current appeals by Defendants are imperfect. However, the Court proceeds under the assumption that upon issuance of a final adjudicatory decision, the pending appeals will be perfected and become effective.

5

Accordingly, the Court DENIES Defendants' renewed motion for a stay of execution. However, to afford Defendants a limited right to seek a stay from the Ninth Circuit, the judgment will order transfer on **November 24, 2008**.

**C.** **Lien on the Settlement Proceeds**

At the October 28, 2008 hearing Quinn Emanuel, appeared and requested that any disbursal of the settlement proceeds by made jointly in the name of the Defendants and the law firm. Since Quinn Emanuel is not a party to this case and has otherwise not foreclosed on any lien, the Court declines to grant its request. Instead, the Court will order that the proceeds be delivered in trust to Defendants' counsel. However, nothing in this Order is intended to affect Quinn Emanuel's right to assert its lien on the proceeds in the hands of Defendants or Defendants' counsel.

### III. CONCLUSION

For the reasons stated above and pursuant to the stipulation of the parties that this Court enforce the Agreement, the Court will issue a final adjudicatory order. The Court declines to take any action with respect to the lien by Quinn Emanuel.

Dated: November 3, 2008

JAMES WARE
United States District Judge

6

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Bruce Eric Van Dalsem brucevandalsem@quinnemanuel.com
Chester Wren-Ming Day cday@orrick.com
D. Michael Underhill Munderhill@BSFLLP.com
David A. Barrett dbarrett@bsfllp.com
Evan A. Parke eparke@bsfllp.com
George C. Fisher georgecfisher@gmail.com
George C. Fisher georgecfisher@gmail.com
George Hopkins Guy hopguy@orrick.com
I. Neel Chatterjee nchatterjee@orrick.com
Jonathan M. Shaw jshaw@bsfllp.com
Kalama M. Lui-Kwan klui-kwan@fenwick.com
Mark A. Weissman mweissman@osheapartners.com
Mark Andrew Byrne markbyrne@byrnenixon.com
Monte M.F. Cooper mcooper@orrick.com
Rachel E. Matteo-Boehm rachel.matteo-boehm@hro.com
Randy Garteiser randygarteiser@quinnemanuel.com
Roger Rex Myers roger.myers@hro.com
Scott Richard Mosko scott.mosko@finnegan.com
Sean Alan Lincoln slincoln@Orrick.com
Sean F. O'Shea soshea@osheapartners.com
Steven Christopher Holtzman sholtzman@bsfllp.com
Theresa Ann Sutton tsutton@orrick.com
Tyler Alexander Baker Tbaker@fenwick.com
Valerie Margo Wagner valerie.wagner@dechert.com
Warrington S. Parker wparker@orrick.com
Yvonne Penas Greer ygreer@orrick.com

**Dated: November 3, 2008**           **Richard W. Wieking, Clerk**

                                      **By:    /s/ JW Chambers**
                                              **Elizabeth Garcia**
                                              **Courtroom Deputy**