1                  UNITED STATES DISTRICT COURT

2                 NORTHERN DISTRICT OF CALIFORNIA

3                      SAN JOSE DIVISION

4

5

    THE FACEBOOK, INC. AND      )  C-07-01389 JW
6   MARK ZUCKERBERG,            )
                                )  SAN JOSE, CALIFORNIA
7              PLAINTIFFS,       )
                                )  OCTOBER 28, 2008
8          VS.                  )
                                )  PAGES 1-76
9   CONNECTU, INC. (FORMERLY    )
    KNOWN AS CONNECTU, LLC),    )
10  PACIFIC NORTHWEST           )
    SOFTWARE, INC., WINSTON     )
11  WILLIAMS, AND WAYNE         )
    CHANG,                      )
12                              )
               DEFENDANT.       )
13  _____)

14

                    TRANSCRIPT OF PROCEEDINGS
15            BEFORE THE HONORABLE JAMES WARE
                 UNITED STATES DISTRICT JUDGE
16

17  A P P E A R A N C E S:

18  FOR THE PLAINTIFF:   ORRICK, HERRINGTON & SUTCLIFFE
                         BY:  I. NEEL CHATTERJEE
19                       1000 MARSH ROAD
                         MENLO PARK, CALIFORNIA  94025
20

21

22           APPEARANCES CONTINUED ON NEXT PAGE

23

24  OFFICIAL COURT REPORTER: LEE-ANNE SHORTRIDGE, CSR, CRR
                             CERTIFICATE NUMBER 9595
25

                                                        1

```
 1

 2    APPEARANCES (CONTINUED)

 3    FOR DEFENDANTS:        BOIES, SCHILLER & FLEXNER, LLP
                             BY:  DAVID A. BARRETT
 4                           575 LEXINGTON AVENUE, 7TH FLOOR
                             NEW YORK, NEW YORK  10022
 5
                             BY:  EVAN ANDREW PARKE
 6                           5301 WISCONSIN AVENUE, N.W.
                             WASHINGTON, D.C.  20015
 7

 8    FOR QUINN,             QUINN, EMANUEL, URQUHART,
      EMANUEL:               OLIVER & HEDGES, LLP
 9                           BY:  BRUCE E. VAN DALSEM
                             865 SOUTH FIGUEROA STREET
10                           10TH FLOOR
                             LOS ANGELES, CALIFORNIA  90017
11
                             BY:  RANDY GARTEISER
12                           555 TWIN DOLPHIN DRIVE
                             SUITE 560
13                           REDWOOD SHORES, CALIFORNIA 94065

14    SPECIAL MASTER:        GEORGE C. FISHER
                             2600 EL CAMINO REAL, SUITE 410
15                           PALO ALTO, CALIFORNIA  94306

16

17

18

19

20

21

22

23

24

25


                                                            2
```

```
 1    SAN JOSE, CALIFORNIA              OCTOBER 28, 2008
 2                P R O C E E D I N G S
 3                (WHEREUPON, COURT CONVENED AND THE
 4    FOLLOWING PROCEEDINGS WERE HELD:)
 5                THE CLERK:  CALLING CASE NUMBER 07-1389,
 6    FACEBOOK, INC., VERSUS CONNECTU, INC., ET AL, ON
 7    FOR ORDER TO SHOW CAUSE RE: SPECIAL MASTER'S REPORT
 8    NUMBER 1.
 9                COUNSEL, PLEASE COME FORWARD AND STATE
10    YOUR APPEARANCES.
11                MR. CHATTERJEE:  GOOD MORNING, YOUR
12    HONOR.  NEEL CHATTERJEE REPRESENTING FACEBOOK AND
13    MARK ZUCKERBERG.
14                MR. VAN DALSEM:  GOOD MORNING, YOUR
15    HONOR.  BRUCE VAN DALSEM ON BEHALF OF QUINN,
16    EMANUEL.
17                MR. BARRETT:  GOOD MORNING, YOUR HONOR.
18    DAVID BARRETT ON BEHALF OF CONNECTU AND THE
19    CONNECTU FOUNDERS.
20                MR. FISHER:  GEORGE FISHER, SPECIAL
21    MASTER.
22                THE COURT:  THIS IS A PROCEEDING WHICH
23    FOLLOWS AN ORDER BY THE COURT TO SHOW CAUSE
24    REGARDING THE SPECIAL MASTER'S REPORT, AND I
25    RECEIVED SUBMISSIONS FROM YOU ALL IN RESPONSE TO
```

3

THE COURT'S ORDER.

I'M WILLING TO GIVE YOU SOME ADDITIONAL TIME TO ADDRESS THE COURT IF YOU WISH.

I DID HAVE SOME QUESTIONS WITH RESPECT TO THIS MATTER.

I AM REMINDED THAT THIS IS A PROCEEDING WHERE CERTAIN DOCUMENTS WERE FILED UNDER SEAL AND, IN RESPONSE TO THIS ORDER, ADDITIONAL DOCUMENTS WERE FILED UNDER SEAL.

WE'RE IN AN OPEN COURTROOM, SO THAT IF THERE ARE MATTERS THAT YOU DON'T WANT ON THE PUBLIC RECORD, YOU NEED TO BE CAREFUL TO ADVISE THE COURT OF THAT.

I'LL -- AS FAR AS THE COURT IS CONCERNED, I'M REGARDING THE NATURE AND AMOUNT OF THE CONSIDERATION AS THE MATTERS THAT THE COURT WOULD AVOID INDICATING, BUT THAT OTHERWISE THE PROCESS IN THE MASTER'S REPORT ARE THE MATTERS OF THE COURT'S CONCERN HERE.

SO WITH THOSE INTRODUCTORY COMMENTS, DOES EITHER OF THE THREE OF YOU WHO'VE MADE YOUR APPEARANCES KNOWN WISH TO SPEAK TO THE COURT FURTHER?

MR. CHATTERJEE: YOUR HONOR, I'LL BE HAPPY TO GO FIRST IF, IF IT SEEMS APPROPRIATE.

THE COURT: CERTAINLY.

MR. CHATTERJEE: YOUR HONOR, IT SEEMS TO US THAT IN THE, IN THE VARIOUS FILINGS, THERE ARE ESSENTIALLY FOUR ISSUES THAT ARE KIND OF LINGERING OUT THERE THAT NEED TO BE RESOLVED, OR NEED TO BE ADDRESSED AS PART OF THE ORDER TO SHOW CAUSE AND HOW THE ULTIMATE ORDER LOOKS.

BREAKING IT DOWN KIND OF INTO THE SIMPLEST FORMS, I THINK THE CONNECTU FOUNDERS AND CONNECTU RAISED AN ISSUE AS TO THE COURT'S JURISDICTION, AND I THINK YOUR HONOR ACTUALLY DEALT WITH THAT, AT LEAST PRELIMINARILY, DURING AN EARLIER HEARING WHERE YOUR HONOR HAD SAID THAT YOU FELT THAT THE COURT DID HAVE THE AUTHORITY TO IMPLEMENT THE JUDGMENT OF THE COURT, AND I THINK THAT'S IN ACCORD WITH EVEN THE CASE LAW THAT THE CONNECTU FOUNDERS AND CONNECTU CITED.

WHAT THE COURT CAN'T DO IS ALTER OR CHANGE WHAT THE JUDGMENT IS, AND THIS PROCESS OF WORKING WITH THE SPECIAL MASTER JUST SEEMS TO BE THE MEANS TO EFFECTUATE THE JUDGMENT.

THE SECOND ISSUE IS REALLY DIRECTED TOWARDS WHAT IS THE APPROPRIATE FORM OF THE RELEASE.

THAT IS AN ISSUE WHERE I ACTUALLY DON'T

5

THINK THE PARTIES REALLY HAVE A MATERIAL DIFFERENCE
OF OPINION.

WHILE WE ALL SUBMITTED PAPERS TO KIND OF
MAKE SURE THAT OUR VARIOUS RIGHTS AND INTERESTS ARE
PROTECTED IF THE COURT WANTS TO GO THE ROUTE OF
ACTUALLY REQUIRING PEOPLE TO PROVIDE RELEASES, YOUR
HONOR'S SUGGESTION IN THE ORDER TO SHOW CAUSE ABOUT
BASICALLY SAYING, THE STATEMENT IN THE SETTLEMENT
AGREEMENT IS WHAT IT IS AND IT SAYS WHAT IT SAYS
AND THERE IS NOT A NEED, AT THIS TIME, TO INTERPRET
THE SIGNIFICANCE OF THAT MAY BE AN ENTIRELY VIABLE
WAY TO GO.

WE SAID THAT IF THE COURT WANTED TO GO
THAT ROUTE, WE WOULD BE OKAY WITH IT.

IN PAGE 10 TO 11 OF THE CONNECTU
FOUNDERS' BRIEFS, THEY ALSO SAID THAT.

IF THE COURT DOES WANT TO GO THE ROUTE OF
ADDRESSING WHETHER WE SHOULD INTERPRET WHAT THAT
PROVISION MEANS AND ACTUALLY DO MORE FORMAL
RELEASES, WE CAN TALK ABOUT THAT IF YOUR HONOR
THINKS THAT'S APPROPRIATE.

THE THIRD ISSUE REALLY GOES TO THE
QUESTION OF HOW DOES THE COURT EFFECTUATE THE
DISMISSALS OF THE LAWSUITS, THAT THERE'S A
CONSOLIDATED LAWSUIT NOW IN MASSACHUSETTS, AND THEN

THERE'S OBVIOUSLY THE LAWSUIT BEFORE YOUR HONOR.

I THINK IT'S PRETTY SIMPLE, WITH RESPECT TO THE COURT HERE, TO JUST DISMISS THE CASE WITH PREJUDICE.

THE ONE IN BOSTON, THERE'S A PROCEDURE OUT THERE TO FILE MOTIONS TO DISMISS.

THE OTHER ALTERNATIVE, OF COURSE, IS TO HAVE SOME SORT OF RECORDED STATEMENT FROM YOUR HONOR THAT WOULD BE SUBMITTED TO JUDGE WOODLOCK IN BOSTON BASICALLY SAYING THAT PURSUANT TO THE ENFORCEMENT OF THE SETTLEMENT AGREEMENT, YOU WOULD REQUEST THAT THE COURT DISMISS THE CASE WITH PREJUDICE OUT THERE.

THERE ARE A VARIETY OF PROCEDURAL OPTIONS AVAILABLE TO YOU.

THE REAL ISSUE THAT'S RAISED IN THE PAPERS BY THE CONNECTU FOUNDERS, AND CONNECTU, IS ONE OF TIMING.  WHEN SHOULD YOUR HONOR ISSUE THAT ORDER?

YOUR HONOR HAS ALREADY SAID IN THE JUDGMENT THAT THAT PROVISION IS TO BE ENFORCED, SO IT'S NOW JUST A QUESTION OF IMPLEMENTATION.

IF YOU WERE TO DO THAT TODAY, TOMORROW, OR AT WHATEVER POINT IN THE NEAR FUTURE, THAT IS NOT ALTERING OR AMENDING THE JUDGMENT.

INSTEAD IT IS MERELY IMPLEMENTING THE JUDGMENT THAT YOUR HONOR ALREADY ENTERED.

THE FINAL ISSUE IS THE ISSUE OF CONNECTU'S CONSIDERATION.

YOUR HONOR'S ORDER TO SHOW CAUSE LAID OUT A PROCESS FOR EXCHANGING THE CONSIDERATION, BUT THEN IDENTIFIED CORRECTLY THE ISSUE ASSOCIATED WITH THE QUINN, EMANUEL LIEN THAT IS IN EXISTENCE AGAINST THE PROCEEDS OF THE CONSIDERATION THAT FACEBOOK HAS PUT IN.

YOUR HONOR, MR. FISHER, THE SPECIAL MASTER, IN HIS REPORT LAID OUT SEVERAL SUGGESTIONS OF OPTIONS OF WAYS TO GO AS FAR AS HOW TO RELEASE THAT CONSIDERATION.

I DON'T THINK IT'S AN APPROPRIATE THING TO DO TO SIMPLY RELEASE IT TO THE CONNECTU FOUNDERS, BECAUSE THAT COULD POTENTIALLY EXPOSE FACEBOOK TO CLAIMS DEPENDING ON HOW THE LAW WOULD APPLY, A COURT ORDERED DISPOSITION AS OPPOSED TO PARTIES JUST ENGAGING IN A DISPOSITION.

BUT IT DOES SEEM TO US THAT THE PROPER COURSE OF ACTION IS TO FOLLOW THE SPECIAL MASTER'S RECOMMENDATION, WHICH WE AGREE WITH AND MY UNDERSTANDING IS QUINN, EMANUEL AGREES WITH, WITH RESPECT TO THE DISPOSITION OF THE FACEBOOK

8

10:24:22 1    CONSIDERATION.

10:24:23 2            THE COURT:  WHICH IS WHAT?

10:24:24 3            MR. CHATTERJEE:  THERE WERE SEVERAL

10:24:26 4    SUGGESTIONS.  ONE OF THEM WAS TO HAVE QUINN,

10:24:30 5    EMANUEL -- THERE WERE TWO OPTIONS, ESSENTIALLY.

10:24:33 6            ONE WAS TO HAVE QUINN, EMANUEL AND THE

10:24:36 7    CONNECTU FOUNDERS CREATE AN ESCROW ACCOUNT,

10:24:41 8    ESSENTIALLY, WHERE THEY WOULD PUT THE PROCEEDS AND

10:24:43 9    IT WOULD BE HELD UNTIL THE DISPUTE BETWEEN THEM IS

10:24:46 10   RESOLVED FOR DISPOSITION, AND THEY WOULD HAVE TO

10:24:48 11   FIGURE OUT WHAT THE TERMS WERE FOR THAT ESCROW.

10:24:51 12           IT WOULD NOT BE AN ISSUE FOR US.  THE

10:24:53 13   SPECIAL MASTER WOULD SIMPLY RELEASE IT ONCE THEY

10:24:55 14   DID THAT.

10:24:57 15           THE ALTERNATIVE IS THE CHECKS AND THE

10:24:59 16   SHARES WOULD BE JOINTLY WRITTEN TO ALL OF THEM.

10:25:01 17           AND, AND IT WOULD NOT BE DIVIDED IN ANY

10:25:04 18   WAY, BUT IT BASICALLY COULD NOT BE DISPOSED OF

10:25:06 19   UNTIL THEY REACHED SOME KIND OF AGREEMENT.

10:25:10 20           THERE WAS A FINAL ISSUE THAT DIDN'T

10:25:12 21   REALLY GO TO THE MERITS OF THE ORDER TO SHOW CAUSE,

10:25:15 22   BUT MORE OF A PROCEDURAL QUESTION, THAT THE

10:25:17 23   CONNECTU FOUNDERS AND CONNECTU RAISED IN THEIR

10:25:19 24   PAPERS, WHICH WAS THEY WERE ASKING ESSENTIALLY FOR

10:25:24 25   A STAY FOR 21 DAYS ON THE ORDER TO SHOW CAUSE IN

10:25:28 1  ORDER TO ALLOW THEM TO FILE AN EMERGENCY MOTION TO

10:25:31 2  THE NINTH CIRCUIT COURT OF APPEALS.

10:25:35 3         WE ARE VERY OPPOSED TO ADDITIONAL DELAYS

10:25:37 4  IN US GETTING THE VALUE THAT WE NEGOTIATED FOR.

10:25:40 5         WE'RE NOW EIGHT MONTHS PAST WHEN WE

10:25:43 6  SIGNED AN AGREEMENT THAT THOUGHT WE HAD -- THAT WE

10:25:45 7  THOUGHT GAVE US THE FINALITY THAT WE BARGAINED FOR,

10:25:48 8  AND AN ADDITIONAL 21 DAYS WHEN WE'VE ALREADY GONE

10:25:51 9  UP TO THE NINTH CIRCUIT ONCE ON AN EMERGENCY

10:25:55 10  APPEAL, WHICH WAS DENIED, THE EMERGENCY APPLICATION

10:25:58 11  BY THE CONNECTU FOUNDERS AND CONNECTU, IT SEEMS TO

10:26:01 12  US THAT AN ADDITIONAL 21 DAYS JUST CONTINUES TO

10:26:05 13  DEPRIVE US OF THE VALUE THAT WE BARGAINED FOR AND

10:26:09 14  WE DON'T SEE ANY NEED FOR AN ADDITIONAL 21 DAYS TO

10:26:12 15  ESSENTIALLY STAY THE EXECUTION OF THE JUDGMENT.

10:26:14 16         THE COURT:  THE ONE ASPECT OF THIS THAT

10:26:17 17  YOU DID NOT ADDRESS WAS THE PROPOSED COMPLAINT AND

10:26:25 18  INTERPLEAD.

10:26:27 19         MR. CHATTERJEE:  YOUR HONOR, YES.

10:26:28 20         WE HAD SUGGESTED THAT -- THE PROPOSED

10:26:32 21  COMPLAINT AND INTERPLEADER THAT WE HAD PUT IN OUR

10:26:34 22  PAPERS WITH RESPECT TO QUINN, EMANUEL, WHICH WAS

10:26:37 23  THE STATUTORY INTERPLEADER, THAT WAS SOMETHING THAT

10:26:40 24  THE SPECIAL MASTER DID NOT PROPOSE, BUT WE DID

10:26:42 25  PROPOSE IN OUR PAPERS.

10:26:44 1    I THINK THAT'S A PERFECTLY LEGITIMATE WAY

10:26:47 2    TO GO IF YOUR HONOR WANTED TO DO THAT.

10:26:49 3    I THINK ONE OF THE COMPLEXITIES THAT I

10:26:52 4    DON'T HAVE ENOUGH FACTUAL UNDERSTANDING OF, TO BE

10:26:55 5    CANDID, YOUR HONOR, IS WHAT IS GOING ON BETWEEN

10:26:57 6    QUINN, EMANUEL AND CONNECTU AND THE CONNECTU

10:27:00 7    FOUNDERS, WHAT THE STATUS OF THAT DISPUTE AND THE

10:27:03 8    ARBITRATION IS, BECAUSE YOU DO RUN THE RISK OF

10:27:05 9    HAVING PARALLEL PROCEEDINGS GOING ON, AND I JUST --

10:27:09 10   I DON'T KNOW ENOUGH ABOUT WHAT THEIR DISPUTE --

10:27:11 11   WHAT'S GOING ON IN THEIR DISPUTE BECAUSE IT'S A

10:27:13 12   PRIVATE, A PRIVATE DISPUTE TO KNOW IF WE COULD DO

10:27:16 13   THE COMPLAINT AND INTERPLEADER.

10:27:18 14   BUT WE THINK IT WAS A PERFECTLY VIABLE

10:27:21 15   OPTION ASSUMING THERE'S NO FACT THAT WE'RE UNAWARE

10:27:24 16   OF THAT PRECLUDES IT.

10:27:25 17   THE COURT:  VERY WELL.

10:27:27 18   COUNSEL?

10:27:28 19   MR. BARRETT:  THANK YOU, YOUR HONOR.

10:27:34 20   DAVID BARRETT FOR CONNECTU AND THE CONNECTU

10:27:38 21   FOUNDERS.

10:27:41 22   I THINK MR. CHATTERJEE HAS SUMMARIZED THE

10:27:46 23   ISSUES BEFORE THE COURT.

10:27:49 24   WHAT I WOULD LIKE TO FOCUS ON IS, I

10:27:51 25   THINK, A COUPLE OF VERY KEY LEGAL ISSUES, WHICH --

LEGAL AND FACTUAL ISSUES WHICH, I THINK, ARE HIGHLY
RELEVANT TO ACTUALLY ALL OF THE ISSUES THAT THE
COURT NEEDS TO DECIDE IN CONNECTION WITH THE ORDER
TO SHOW CAUSE.

THE FIRST OF THOSE ISSUES ARISES FROM THE
FACT THAT IF THE COURT WERE TO DISTRIBUTE OR ORDER
THE DISTRIBUTION OF THE SETTLEMENT CONSIDERATION AT
SOME POINT IN THE IMMEDIATE FUTURE, WHAT EFFECT
WOULD THAT HAVE?

AND AS YOU KNOW, YOUR HONOR, ONE OF THE
ARGUMENTS THAT WE MAKE IS THAT THE COURT LACKS
JURISDICTION TO ORDER THAT DISTRIBUTION.

I BELIEVE, ESSENTIALLY, FOR THE SAME
REASON THAT THE COURT -- AND I'M GOING TO ARGUE
THAT THE COURT LACKS JURISDICTION -- IT'S ALSO NOT
A GOOD IDEA, AS A MATTER OF THE COURT'S EXERCISE OF
ITS EQUITY POWERS IN DEALING WITH THE SPECIAL
MASTER'S REPORT, AND, INDEED, ALSO SUPPORTS THE
IRREPARABLE INJURY PRONG OF OUR REQUEST TO STAY
EXECUTION IF THE COURT WERE TO ORDER THE
DISTRIBUTION OF THE SETTLEMENT PROCEEDS.

THE BASIS FOR ALL OF THOSE CONTENTIONS,
YOUR HONOR, IS THAT, AS YOU KNOW, THE DISTRIBUTION
OF THE SETTLEMENT PROCEEDS, AND PARTICULARLY WHAT
MR. CHATTERJEE IS INTERESTED IN, WOULD ENTAIL

GIVING THE CONNECTU STOCK, WHICH IS NOW HELD BY THE

SPECIAL MASTER, TO FACEBOOK.

NOW, CONNECTU, IN PAPERS PREVIOUSLY FILED

WITH THE COURT, HAS TOLD YOU WHAT THE EFFECT OF

TAKING THAT ACTION, ORDERING THE STOCK DISTRIBUTED

TO THEM, WOULD BE.

THEY SAY -- THEY SAID, FIRST OF ALL --

AND THIS IS AT PAGE, AT PAGE 5 OF THE BRIEF THAT

CONNECTU FILED ON AUGUST 4TH IN OPPOSITION TO THE

MOTION -- I'M SORRY, FACEBOOK, PARDON ME --

FACEBOOK FILED ON AUGUST 4TH IN OPPOSITION TO

CONNECTU'S MOTION FOR A STAY.

AT FOOTNOTE 7 OF THAT BRIEF, FACEBOOK

INVOKED THE DOCTRINE OF DOMINIX LITIS, WHICH, AT

LEAST IN FACEBOOK'S VIEW -- AND THEY CITE A CASE

FROM THE FEDERAL CIRCUIT CALLED GOULD V. CONTROL

LASER, AND IN FACEBOOK'S VIEW, WHAT THAT CASE

STANDS FOR IS THAT IF FACEBOOK OWNS THE CONNECTU

STOCK, THEY CONTROL BOTH SIDES OF THE LITIGATION

THAT IS NOW PRESENTLY BEFORE THE COURT OF APPEALS

AS BETWEEN THEMSELVES AND FACEBOOK -- AND CONNECTU.

AND, THEREFORE, THAT CASE IS MOOT, OR

THAT APPEAL HAS TO BE DISMISSED BECAUSE THE SAME

PARTY IS ON BOTH SIDES OF THE APPEAL.

IN ADDITION, YOUR HONOR, IN THE PAPERS

THAT WERE PRESENTED TO YOU IN CONNECTION WITH THE
STAY, THERE WAS, THERE WAS FURTHER EVIDENCE,
INCLUDING EXHIBIT B TO THE DECLARATION OF MY
COLLEAGUE, MIKE UNDERHILL, WHICH WAS DOCUMENT
579-3, AND IN THAT EXHIBIT, THERE'S REPRODUCED AN
E-MAIL EXCHANGE BETWEEN MR. UNDERHILL AND
MR. CHATTERJEE, THE GIST OF WHICH WAS WE WERE
ASKING FACEBOOK TO INDICATE THAT IF IT CAME INTO
POSSESSION OF THE CONNECTU STOCK, IT WOULD NOT, AS
THE NEW OWNER OF CONNECTU, DISMISS THE APPEAL.

AND MR. CHATTERJEE ESSENTIALLY DECLINED
TO ANSWER THAT, TO ANSWER THAT QUESTION.

BUT IT SEEMS QUITE CLEAR FROM, FROM THE
STATEMENTS AND FROM THE CONTEXT THAT CONNECTU IS --
THAT FACEBOOK IS MAINTAINING THAT IT WOULD HAVE THE
POWER TO DISMISS THE APPEAL THAT'S BEFORE THE NINTH
CIRCUIT NOW ON BEHALF OF CONNECTU.

SO, YOUR HONOR, WHAT YOU ARE FACED WITH
TODAY, AND RESPECTFULLY I DO NOT THINK THAT YOU
WERE FACED WITH THIS WHEN YOU DENIED THE STAY BACK
IN AUGUST, IS A SITUATION WHERE YOUR IMMEDIATE
ACTION OF ORDERING THE CONNECTU STOCK OUT OF THE
HANDS OF THE SPECIAL MASTER AND INTO THE HANDS OF
FACEBOOK, WHERE THAT ACT OF THIS COURT WOULD HAVE
THE PRACTICAL EFFECT OF ENDING OR POTENTIALLY

ENDING, BECAUSE OF THE ARGUMENTS THAT FACEBOOK HAS SAID THAT IT'S GOING TO MAKE, CONNECTU'S APPEAL IN THE NINTH CIRCUIT.

NOW, IF THAT HAD HAPPENED BEFORE, BEFORE THE APPEAL HAD BEEN FILED, IT WOULD BE A DIFFERENT CASE.

BUT NOW, BECAUSE THE APPEAL HAS BEEN FILED, AND THE STANDARD IS, YOU KNOW, WOULD THIS -- WOULD THIS COURT'S ACTIONS ALTER OR ENLARGE THE SCOPE OF ANY ORDER OR CHANGE THE SCOPE OF THE ISSUES THAT ARE BEING PRESENTED TO THE NINTH CIRCUIT, THOSE ARE SORT OF PARAPHRASING THE STANDARDS, IN THE NINTH CIRCUIT, IN THE NINTH CIRCUIT CASES, CLEARLY CAUSING A PARTY, CONNECTU, WHICH NOT ONLY HAS FILED A NOTICE OF APPEAL, BUT HAS ACTUALLY FILED ITS BRIEF ON THE MERITS IN THE NINTH CIRCUIT ON OCTOBER 6TH, CLEARLY REMOVING THAT PARTY FROM THE APPEAL AND, AND, AND ENDING THAT PARTY'S ABILITY TO PURSUE ITS RIGHTS ON APPEAL IS A VAST CHANGE, HOWEVER YOU PHRASE IT, IN THE SCOPE OF THE ISSUES THAT ARE BEFORE THE NINTH CIRCUIT. IT IS CHANGING THE SCOPE OF WHAT IS GOING ON IN THE NINTH CIRCUIT.

SO MR. CHATTERJEE POINTED OUT THAT THE COURT HAS AUTHORITY TO IMPLEMENT THE JUDGMENT, AND

I THINK THAT THAT'S TRUE.

BUT THIS IS NOT MERELY IMPLEMENTING THE
JUDGMENT WHEN YOU HAVE THE ADDITIONAL FACTS THAT
THE APPEAL IS ALREADY IN PROGRESS IN THE NINTH
CIRCUIT WITH THE NOTICE OF APPEAL AND THE BRIEFS
FILED, AND, AND THERE IS THE, THE VERY REAL AND
IMMEDIATE RISK THAT IF THE STOCK GOES OVER TO
FACEBOOK, THEN THAT APPEAL, BY THAT PARTY,
CONNECTU, WILL SIMPLY END.

THEY'RE IN THE NINTH CIRCUIT NOW, AND
SUDDENLY THEY'RE NOT IN THE NINTH CIRCUIT.

THAT -- THE COURT HAS RECOGNIZED THAT
THAT RIGHT OF APPEAL IS A SUBSTANTIAL RIGHT, THAT
THE LOSS OF THAT RIGHT CAN CERTAINLY CONSTITUTE
IRREPARABLE INJURY.

AND THAT, YOUR HONOR, IS WHAT I SUBMIT IS
THE BASIS FOR SAYING THAT THE COURT DOESN'T HAVE
JURISDICTION NOW, NOW THAT THE NINTH CIRCUIT
PROCEEDINGS ARE ONGOING, TO, IN EFFECT, LITERALLY
CHANGE WHO THE PARTIES ARE WHO ARE NOW BEFORE THE
NINTH CIRCUIT.

NOW, MR. CHATTERJEE HAS POINTED OUT
BEFORE, AND IT IS THE CASE, THAT, AS YOUR HONOR
RECALLS, THE FOUNDERS OF CONNECTU, THE INDIVIDUALS,
ARE ALSO PURSUING AN APPEAL IN THE NINTH CIRCUIT.

16

THERE ARE A COUPLE OF POINTS WITH RESPECT

TO THAT.

I DON'T THINK THAT THAT CHANGES THE

FUNDAMENTAL JURISDICTIONAL QUESTION, WHICH IS,

WHICH IS CAN THIS COURT, IN A CASE THAT IS ALREADY

PENDING IN THE NINTH CIRCUIT, EFFECTIVELY CHANGE

THE IDENTITY OF THE PARTIES TO THAT APPEAL?

SECONDLY, THE INTEREST -- WHATEVER THE

INTERESTS ARE, THE INTERESTS OF THE SHAREHOLDERS --

AND IT'S ONLY THREE OUT OF THE FOUR SHAREHOLDERS,

YOUR HONOR WILL RECALL, WHO ARE ACTUALLY PARTIES IN

THIS CASE IN ANY WAY, ARGUABLY, OR IN THE NINTH

CIRCUIT, SO IT'S NOT ALL OF THE SHAREHOLDERS --

THAT'S A FURTHER LACK OF IDENTITY BETWEEN THE

SHAREHOLDERS AND CONNECTU.

BUT AS A LEGAL MATTER, A CORPORATION HAS

A SEPARATE LEGAL EXISTENCE AND SEPARATE LEGAL

RIGHTS FROM ITS INDIVIDUAL SHAREHOLDERS.

SO THE DEPRIVATION OF THAT CORPORATION'S

RIGHT TO APPEAL, HAVING, YOU KNOW, ALREADY FILED

AND EVEN BRIEFED AN APPEAL IN THE COURT OF APPEALS,

WE BELIEVE REMOVES JURISDICTION TO MAKE THAT, THAT

DISTRIBUTION OF THE CONNECTU STOCK OUT OF THE HANDS

OF THE SPECIAL MASTER .

THE COURT:  HAVE YOU LOOKED AT THAT

17

QUESTION?  IT SEEMS TO ME THAT I HAVEN'T PAID CLOSE
ATTENTION TO WHAT IS GOING ON IN THE CIRCUIT.

          MR. BARRETT:  UM-HUM.

          THE COURT:  I WAIT UNTIL THEY ISSUE
MANDATES TO ME AND THEN I PAY ATTENTION.

          AND I HAVEN'T FOLLOWED THE BRIEFING,
ALTHOUGH THERE WAS A BRIEF THAT WAS ATTACHED TO
THESE PAPERS THAT I LEAFED THROUGH.

          MR. BARRETT:  YES.

          THE COURT:  BUT AM I TO UNDERSTAND THAT
THERE IS A CURRENT APPEAL, OR MORE THAN ONE APPEAL
PENDING?

          MR. BARRETT:  YEAH.  YOUR HONOR, I THINK
TECHNICALLY THERE ARE THREE APPEALS PENDING.  THEY
HAVE ALL BEEN CONSOLIDATED BY THE NINTH CIRCUIT.

          THE COURT:  WHAT IS IT, THEN, THAT LEADS
YOU TO BELIEVE THAT IF THE ORDER TO SHOW CAUSE IS
IMPLEMENTED BY CLOSING OUT THE DUTIES OF THE MASTER
AND ORDERING THIS CONSIDERATION PAID OVER --

          MR. BARRETT:  UM-HUM.

          THE COURT:  -- THAT WOULD MOOT THE
APPEAL?

          MR. BARRETT:  I DON'T NECESSARILY BELIEVE
IT WOULD MOOT THE APPEAL ENTIRELY.

          THERE -- LET ME JUST -- I CAN ACTUALLY BE

VERY SPECIFIC, THOUGH.

THE THREE APPEALS ARE AS FOLLOWS:  THE
FIRST FILED ONE WAS THE APPEAL FILED BY CONNECTU.

THE SECOND -- I THINK I'VE GOT THE ORDER
CORRECT -- THE SECOND APPEAL THAT WAS FILED WAS
FILED BY THE FOUNDERS FOLLOWING YOUR HONOR'S DENIAL
OF THE MOTION TO INTERVENE.

AND THE THIRD APPEAL THAT WAS FILED -- OR
MAYBE THE SECOND AND THIRD WERE IN REVERSE ORDER --
WAS A CROSS-APPEAL BY CONNECTU, IN WHICH --

MR. PARKE:  BY FACEBOOK.

MR. BARRETT:  -- BY FACEBOOK, I'M
SORRY -- BY FACEBOOK IN WHICH FACEBOOK APPEALS FROM
AN EARLIER ORDER NOT BY YOUR HONOR BUT BY ANOTHER
JUDGE WHICH GRANTED THE FOUNDERS' MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION.

SO THOSE ARE THE THREE APPEALS, AND THOSE
WERE ACTUALLY THREE SEPARATE DOCKET NUMBERS.
THEY'RE CONSOLIDATED NOW FOR BRIEFING PURPOSES.

THE COURT:  ALL RIGHT.

MR. BARRETT:  BUT MY --

THE COURT:  MY QUESTION STANDS.  WHAT IS
IT THAT WOULD LEAD YOU TO --

MR. BARRETT:  WELL, THE CONNECTU APPEAL,
WHICH WAS THE FIRST FILED APPEAL, THAT'S THE ONE

1  THAT WOULD BECOME MOOT, SO THAT CASE BEFORE THE

2  NINTH CIRCUIT WOULD BECOME -- WOULD ARGUABLY BECOME

3  MOOT.

4         AND, AND SO THAT'S AN ACTUAL CASE, AN

5  ACTUAL DOCKET NUMBER.  THAT WAS NOT JOINT WITH

6  ANYBODY.

7         NOW, THERE IS THE CONSOLIDATION.  WE DID

8  FILE A JOINT BRIEF, AND THAT'S THE BRIEF THAT YOUR

9  HONOR REFERRED TO THAT YOU LOOKED AT.

10         YOU KNOW, IN THE FIRST PLACE, IT'S NOT

11  100 PERCENT CERTAIN WHETHER THE FOUNDERS WILL BE

12  PERMITTED BY THE COURT OF APPEALS TO APPEAL.

13         OBVIOUSLY YOUR HONOR RULED THAT THEY WERE

14  PARTIES AND THAT THEY WERE ENTITLED TO APPEAL.

15         WE THINK THEY WERE ALSO -- IF THAT'S

16  INCORRECT, THAT THEY WERE ENTITLED TO INTERVENE AND

17  APPEAL.

18         HOPEFULLY THOSE ARE SUCCESSFUL ARGUMENTS

19  ON OUR SIDE, BUT NONE OF US IN THIS COURTROOM TODAY

20  CAN SAY WHAT THE COURT OF APPEALS IS GOING TO DO

21  WITH THAT JURISDICTIONAL QUESTION OR THAT STANDING

22  QUESTION.

23         THE COURT:  SO THEN THERE IS AN

24  OUTSTANDING QUESTION BEFORE THE CIRCUIT AS TO THE

25  FOUNDERS' RIGHT TO PROSECUTE AN APPEAL?

10:40:57 1          MR. BARRETT:  WELL, THERE CERTAINLY COULD

10:40:58 2     BE.  I DON'T KNOW.

10:40:59 3          MR. CHATTERJEE HASN'T FILED HIS BRIEF

10:41:02 4     YET, SO I DON'T KNOW IF, IF THEY'LL TAKE THAT

10:41:05 5     POSITION OR NOT.

10:41:05 6          I SUPPOSE IT'S KIND OF AN ISSUE THAT EVEN

10:41:07 7     THE COURT COULD RAISE SUA SPONTE.

10:41:11 8          BUT I BELIEVE IT'S AT LEAST A POTENTIAL,

10:41:15 9     IT'S A POTENTIAL ISSUE.

10:41:17 10          AND, SECONDLY, YOUR HONOR, I DO THINK

10:41:19 11     THAT THE RIGHTS OF THE CORPORATION ARE SEPARATE AND

10:41:21 12     INDEPENDENT AS A LEGAL MATTER FROM THE RIGHTS OF

10:41:24 13     THE SHAREHOLDERS, AND THOSE RIGHTS WOULD BE DENIED.

10:41:27 14          THE COURT:  WELL, LET ME KIND OF CUT TO

10:41:35 15     THE CHASE HERE.

10:41:36 16          MR. BARRETT:  UM-HUM.

10:41:37 17          THE COURT:  IT DOES SEEM TO ME THAT PART

10:41:40 18     OF -- PART OF THE COURT'S CONCERN IS NOT TO DO

10:41:44 19     ANYTHING BEYOND ITS POWER, AND IF I BELIEVE THAT I

10:41:47 20     HAVE THE POWER TO IMPLEMENT THE JUDGMENT, IT SEEMS

10:41:52 21     TO ME THAT UNLESS THERE'S SOME LEGAL IMPEDIMENT TO

10:42:00 22     DOING SO, I SHOULD DO SO.

10:42:01 23          AS YOU CITE THIS QUESTION OF THE APPEAL,

10:42:07 24     ESSENTIALLY YOUR ARGUMENT IS THAT AS THE OWNER OF

10:42:14 25     THE STOCK, FACEBOOK WOULD HAVE THE RIGHT TO DISMISS

THE -- AT LEAST THE CONNECTU APPEAL.

          THAT'S WHY I QUESTIONED WHETHER OR NOT
THAT'S BEEN THOUGHT THROUGH.  I DON'T KNOW A LOT
ABOUT APPELLATE PROCEDURE, BUT WOULDN'T THAT
REQUIRE AN ORDER OF THE NINTH CIRCUIT PERMITTING
THE APPEAL TO BE DISMISSED?  OR IS THAT SOMETHING
THAT CAN BE VOLUNTARILY DONE WITHOUT ANY RULING BY
THE CIRCUIT?

          IT SEEMS TO ME THAT IF FACEBOOK GOES TO
THE APPELLATE COURT WITH A MOTION TO DISMISS THE
APPEAL, IT WOULD BE AN OPPORTUNITY FOR CONNECTU TO
ARGUE, BASED UPON THE CIRCUMSTANCES, THE MERITS OF
WHAT THE APPEAL IS ABOUT, AND THAT MOTION SHOULD BE
DENIED AND THE APPEAL ALLOWED TO PROCEED.

          IF THE CIRCUIT AGREES WITH FACEBOOK THAT
THE APPEAL MAY BE DISMISSED, IT WOULD HAVE TO DO SO
IN A FASHION THAT WOULD BE AN ADJUDICATION ON THE
MERITS OF THE APPEAL, AS WELL AS ON THE STANDING OF
FACEBOOK TO MAKE THAT MOTION.

          IF THE COURT OF APPEALS DENIES THAT
MOTION TO DISMISS THE APPEAL, THEN THE CONNECTU
COMPANY, AS WELL AS ITS FOUNDERS, WOULD BE ABLE TO
PURSUE THE APPEAL TO A RESOLUTION ON THE MERITS,
AND WHATEVER THAT RESOLUTION IS BY THE NINTH
CIRCUIT WOULD THEN BE REMANDED BACK TO THIS COURT

TO TAKE ACTION BASED UPON IT.

SO THE REAL CONCERN THAT THIS COURT WOULD
HAVE IS, AM I IN A POSITION IF THE CASE COMES BACK
TO ME TO TAKE WHATEVER ACTION WOULD BE REQUIRED OF
ME BY THE CIRCUIT UNDER THOSE, UNDER THOSE
CIRCUMSTANCES?

BUT I DON'T FORESEE A CIRCUMSTANCE WHERE
THE NINTH CIRCUIT WOULD SIT IDLY BY AND ALLOW
FACEBOOK TO DISMISS THE APPEAL BY CONNECTU, UNLESS
THERE IS A RULE THAT SAYS THE OWNER OF THE STOCK
CAN, IN THE FACE OF AN ONGOING APPEAL, SIMPLY
DISMISS AND THE CIRCUIT WOULD HAVE NOTHING TO SAY
ABOUT THAT.

IF THAT'S THE CASE, IS THERE ANYTHING I
SHOULD DO ABOUT THAT --

MR. BARRETT:  RIGHT.

THE COURT:  -- AS OPPOSED TO THE CIRCUIT?

MR. BARRETT:  WELL, YOUR HONOR, A COUPLE
OF THINGS.

I MUST SAY THAT STANDING HERE, I, I DON'T
KNOW THE ANSWER TO YOUR HONOR'S PROCEDURAL
QUESTION, EXCEPT TO SAY THAT I THINK, WITH RESPECT
TO THAT, AS WITH RESPECT TO THE STANDING OF THE
FOUNDERS TO APPEAL -- AND BY THE WAY, THAT IS AN
ISSUE WHICH, IN EARLIER PROCEEDINGS IN THIS CASE,

1    FACEBOOK DID QUESTION THE STANDING OF THE FOUNDERS

10:45:01 2    TO APPEAL AT ALL, I THINK BASICALLY ON THE BASIS

10:45:08 3    THAT THEY HAD SOMEHOW WAIVED THEIR RIGHTS BY NOT

10:45:11 4    PARTICIPATING ACTIVELY IN THIS COURT.

10:45:14 5         MY POINT IS, WHETHER THOSE, WHETHER THOSE

10:45:17 6    ARGUMENTS ARE RIGHT OR WRONG WITH RESPECT TO THAT

10:45:21 7    OR WITH RESPECT TO THE QUESTION THAT YOUR HONOR

10:45:23 8    JUST RAISED, NONE OF US IN THIS ROOM CAN BE CERTAIN

10:45:27 9    WHAT THE CIRCUIT COURT'S RULING IS GOING TO BE.

10:45:31 10        AND IF THE NET RESULT OF THE CIRCUIT

10:45:35 11   COURT'S RULING, AND I'M SURE FACEBOOK WOULD LIKE TO

10:45:38 12   SEE THIS RESULT, IS THAT, IN EFFECT, NO ONE CAN

10:45:43 13   CHALLENGE THE MERITS OF THIS COURT'S DECISION ON

10:45:46 14   APPEAL, AND I CAN CONCEIVE OF WAYS IN WHICH THAT

10:45:49 15   COULD BE THE OUTCOME, THEN BY THE SIMPLE ACT OF

10:45:56 16   DISTRIBUTING THE STOCK FROM THE SPECIAL MASTER TO

10:46:01 17   FACEBOOK, THAT -- THAT'S WHAT -- THAT'S THE RESULT

10:46:07 18   OF THAT ACTION BY THE COURT.

10:46:09 19        NOW, YOUR HONOR, IN ANSWER TO, I THINK,

10:46:11 20   WHAT WAS AN IMPLICIT QUESTION, WHICH IS WHAT CAN WE

10:46:14 21   DO ABOUT IT, I THINK WHAT WE CAN DO IS WE CAN

10:46:19 22   MAINTAIN WHAT IS NOW THE STATUS QUO; THAT IS, LEAVE

10:46:24 23   THE SETTLEMENT CONSIDERATION IN THE HANDS OF THE

10:46:27 24   SPECIAL MASTER.

10:46:31 25        THAT -- AND WE CAN TALK ABOUT WHY THAT IS

1  APPROPRIATE, WHY I DON'T BELIEVE IT WOULD INJURE

2  FACEBOOK'S INTERESTS IN ANY WAY, NOTWITHSTANDING

3  MR. CHATTERJEE'S CONCERNS ABOUT FINALITY AND THE

4  BENEFIT OF THE BARGAIN AND SO FORTH.

5       BUT IT WOULD AVOID ALL OF THESE

6  UNCERTAINTIES, ALL OF THESE RISKS, ALL OF THESE

7  DIFFICULTIES WHICH ARISE.

8       YOUR HONOR REFERRED ALSO TO WHAT IF THE

9  NINTH CIRCUIT SENDS THE CASE BACK TO YOU?

10      OBVIOUSLY IF THE NINTH CIRCUIT AFFIRMS,

11  THEN IT'S EASY.  ALL THE CONSIDERATION GOES OUT, WE

12  ALL GO HOME, THE CASE IS DONE.

13      IF THE NINTH CIRCUIT WERE TO REVERSE,

14  HOWEVER, YOUR HONOR, I THINK THAT IS IT A MUCH MORE

15  COMPLICATED SITUATION TO DEAL WITH IF THE

16  CONSIDERATION HAS BEEN DISBURSED AND IF IT JUST, IF

17  IT JUST STAYS WITH THE SPECIAL MASTER AT

18  ESSENTIALLY NO, NO INJURY TO ANY PARTY.

19      IT'S MORE COMPLICATED BECAUSE YOU'VE GOT

20  RELEASES THAT ARE OUT THERE, AT LEAST IN THE

21  DISTRICT OF MASSACHUSETTS -- MAYBE IT'S RELATIVELY

22  EASY FOR YOUR HONOR TO REINSTATE THE CASE IF THE

23  COURT SAYS REVERSE IN ACCORDANCE WITH THIS OPINION.

24      THAT'S NOT THE CASE WITH THE FIRST

25  CIRCUIT CASE WHERE THERE'S PRESUMABLY BEEN A

10:47:51 1 DISMISSAL MOTION, OR OTHER PROCEEDINGS.  MAYBE

10:47:53 2 THERE'S EVEN BEEN AN APPEAL TO THE FIRST CIRCUIT IN

10:47:56 3 THE MEANTIME.

10:47:57 4 THE SPECIAL MASTER'S SUGGESTED THAT RULE

10:48:00 5 60(B)(5) MIGHT BE APPLICABLE, AND INDEED, IT MIGHT

10:48:04 6 BE.

10:48:06 7 BUT THE, THE ISSUE IS, IN MY MIND, WHY DO

10:48:12 8 WE NEED TO GO TO ALL OF THAT TROUBLE WHEN WE'VE GOT

10:48:18 9 A SOLUTION THAT IS VERY SIMPLE AND, AS I SAY, I

10:48:25 10 DON'T THINK PREJUDICES THE INTERESTS OF ANY PARTY,

10:48:28 11 WHICH IS FOR THE SPECIAL MASTER TO CONTINUE TO HOLD

10:48:30 12 THE CONSIDERATION, JUST AS YOUR HONOR ORDERED IN

10:48:34 13 THE ORIGINAL JUDGMENT ON JULY 3RD, PENDING FURTHER

10:48:40 14 ORDER OF THIS COURT OR THE OUTCOME OF AN APPEAL.

10:48:44 15 THAT --

10:48:44 16 THE COURT:  LET ME CHECK TO SEE --

10:48:46 17 MR. CHATTERJEE, YOU STOOD UP IN THE MIDDLE OF

10:48:48 18 COUNSEL'S ARGUMENT, BUT I PRESUMED IT WAS BECAUSE

10:48:51 19 YOU WANTED TO MAKE AN OBJECTION, OR --

10:48:54 20 MR. CHATTERJEE:  I DID, AND I APOLOGIZE

10:48:55 21 FOR INTERRUPTING COUNSEL'S ARGUMENT.

10:48:58 22 THERE IS ONE IMPORTANT ISSUE THAT I THINK

10:48:59 23 IS BEING OVERLOOKED HERE, YOUR HONOR.

10:49:02 24 THIS ENTIRE ISSUE ABOUT WHAT HAPPENS WITH

10:49:06 25 CONNECTU AS A COMPANY, IT WAS RAISED IN THE

10:49:08  1  PREVIOUS PROCEEDINGS.  THE CONNECTU FOUNDERS AND

10:49:11  2  CONNECTU FILED AN EMERGENCY MOTION TO THE NINTH

10:49:13  3  CIRCUIT TO STOP THE DISPOSITION OF THE ASSETS, THEY

10:49:16  4  REFUSED TO PUT THE CONSIDERATION INTO THE SPECIAL

10:49:18  5  MASTER'S HANDS BECAUSE OF THE NINTH CIRCUIT APPEAL

10:49:22  6  AND BECAUSE OF THE SCHEDULING OF YOUR HONOR'S

10:49:23  7  HEARINGS.

10:49:24  8          AND ALL OF THAT WAS DENIED.  THE NINTH

10:49:27  9  CIRCUIT HAS ADDRESSED THIS ISSUE.  THEY HAVE

10:49:30 10  ADDRESSED THE IMMINENCE OF THE CONSIDERATION

10:49:34 11  TRANSFER TO FACEBOOK.

10:49:37 12          THAT WAS THE BASIS OF THE EMERGENCY

10:49:39 13  APPEAL THAT CONNECTU AND THE CONNECTU FOUNDERS

10:49:43 14  FILED.

10:49:43 15          THE COURT:  IT'S A DIFFERENT SITUATION,

10:49:44 16  BUT I AGREE THAT THE CIRCUIT HAS WEIGHED IN, AT

10:49:48 17  LEAST WITH RESPECT TO THIS QUESTION OF A STAY OF

10:49:50 18  EXECUTION.

10:49:51 19          YOUR COMMENT, THOUGH, PROMPTS ME TO ASK

10:49:56 20  WHY, IF YOU'VE CONSIDERED IT, YOU HAVE NOT PURSUED

10:50:02 21  THAT BEYOND THE COURT'S RULING.

10:50:07 22          YOU ASKED FOR AN EMERGENCY STAY OF

10:50:08 23  EXECUTION, BUT SO FAR AS I KNOW, YOU HAVEN'T ASKED

10:50:14 24  THE CIRCUIT TO ISSUE ANY ORDER TO ME TO STAY MY

10:50:19 25  HAND BY WAY OF A WRIT OR ANYTHING OF THAT KIND,

1  WHICH WOULD BE BEYOND THE APPEAL ROUTE.

2  IF YOUR ARGUMENT IS I DON'T HAVE

3  JURISDICTION AND I'M ABOUT TO DO SOMETHING BEYOND

4  MY JURISDICTION, WHY HAVEN'T YOU PURSUED A WRIT?

5  MR. BARRETT:  WELL, YOUR HONOR, WE -- I

6  GUESS WE THOUGHT THAT THE, THAT IT WOULD BE

7  APPROPRIATE TO PROCEED AS WE HAVE HERE TODAY,

8  RAISING THE CHALLENGE TO THE COURT'S JURISDICTION

9  IN THIS COURT IN THE FIRST INSTANCE, AS WELL AS

10  MAKING THE REQUEST FOR A STAY IF THE COURT'S RULING

11  WERE TO BE THAT THE SETTLEMENT CONSIDERATION IS

12  DISTRIBUTED.

13  THE COURT:  IT'S NOT A STAY.  YOU'VE

14  ALREADY EXHAUSTED THAT, I THINK.

15  MR. BARRETT:  WELL, YOUR HONOR --

16  THE COURT:  BUT IT COULD BE THAT THE

17  CIRCUIT WOULD RECONSIDER THE STAY.

18  A WRIT PROCEEDS FROM A DIFFERENT LEGAL

19  PROPOSITION.  IT IS THAT THE COURT IS ABOUT TO DO

20  SOMETHING BEYOND ITS DISCRETION.

21  A STAY IS WITHIN THE COURT'S DISCRETION,

22  AND IF YOUR ARGUMENT HERE IS THAT THE COURT HAS NO

23  DISCRETION BUT TO HOLD THESE PROCEEDS AND IT CANNOT

24  PROCEED BASED UPON THE PRESENCE OF AN APPEAL, THAT

25  SEEMS TO ME TO INVITE -- IF I BELIEVE YOU'RE WRONG

10:51:36 1  AND I'M ABOUT TO TAKE AN ACTION IN RESPONSE TO THIS

10:51:39 2  ORDER TO SHOW CAUSE, YOU HAD A BASIS FOR SEEKING

10:51:41 3  THAT WRIT.

10:51:42 4        AND IT SEEMS TO ME THAT THE FAIREST THING

10:51:44 5  FOR THE COURT TO DO, IF IT IS DETERMINED TO

10:51:47 6  PROCEED, WOULD BE TO STAY ITS HAND FOR A DAY OR TWO

10:51:50 7  TO ALLOW YOU TO SEEK THAT KIND OF A WRIT ASKING THE

10:51:55 8  COURT TO, TO STOP ME ON THE GROUNDS THAT I'M

10:52:00 9  EXCEEDING MY AUTHORITY.

10:52:01 10        MR. BARRETT:  YOUR HONOR, PERHAPS, YOU

10:52:06 11  KNOW, IT CERTAINLY WOULD BE AN AVAILABLE PROCEDURAL

10:52:10 12  ROUTE.

10:52:10 13        I GUESS OUR VIEW WAS IF WE PRESENTED BOTH

10:52:13 14  THAT ARGUMENT AND THE OTHER ARGUMENTS TO THIS

10:52:17 15  COURT, YOU KNOW, THERE ARE MANY SITUATIONS IN WHICH

10:52:20 16  THE COURT IS, IS PRESENTED WITH A, WITH AN ARGUMENT

10:52:24 17  THAT IT LACKS JURISDICTION TO PROCEED.

10:52:29 18        AND I'M NOT SURE THAT THE CIRCUIT WOULD,

10:52:32 19  YOU KNOW, WOULD LIKE COUNSEL WHO HAD THOSE

10:52:34 20  ARGUMENTS TO BE SEEKING WRITS EVERY TIME WE BELIEVE

10:52:39 21  THAT TO BE THE CASE.

10:52:42 22        AND I THINK THAT THE COURT WILL MAKE A

10:52:44 23  FAIR DETERMINATION BASED ON ITS VIEW OF THE LAW AND

10:52:47 24  THE FACTS.

10:52:48 25        I DO WANT TO ADDRESS, THOUGH,

1   MR. CHATTERJEE'S -- THE ARGUMENT THAT

2   MR. CHATTERJEE JUST MADE AND THAT THE COURT ALLUDED

3   TO RELATING TO THE CIRCUIT'S PRIOR, OR PREVIOUS

4   DENIAL OF THE MOTION FOR A STAY.

5           AND I THINK, YOUR HONOR, YOU WERE EXACTLY

6   RIGHT WHEN YOU SAID THAT THE CIRCUMSTANCES ARE

7   DIFFERENT NOW.

8           AND I THINK THE CLEAREST INDICATION OF

9   THAT IS THE FACT THAT THE -- IN ITS DECISION, THE

10  CIRCUIT DIDN'T GIVE MUCH, MUCH OF AN EXPLANATION.

11          ESSENTIALLY THE DECISION ON THE MERITS

12  WAS, THE MOTION FOR A STAY IS DENIED, AND THEY

13  CITED TWO CASES.

14          ONE WAS THE GOLDEN GATE CASE, WHICH I

15  TAKE IT IS THE COURT'S MOST RECENT PRONOUNCEMENT ON

16  THE GENERAL STANDARDS FOR A STAY PENDING APPEAL,

17  AND I THINK FACTUALLY THAT IS NOT PARTICULARLY

18  INSTRUCTIVE IN THIS CASE.

19          THE OTHER CASE, THE SECOND CASE WHICH THE

20  COURT OF APPEALS CITED WAS THE CASE OF LOPEZ

21  AGAINST HECKLER, WHICH I BELIEVE YOUR HONOR ALSO

22  CITED, AND IT CITED IN PARTICULAR PAGE 1435 OF 713

23  F.2D IN THAT LOPEZ CASE.

24          AND THE REASON, YOUR HONOR, THAT I THINK

25  THAT IS SIGNIFICANT IS THAT ON THAT PAGE, THERE IS

A PARAGRAPH IN WHICH THE COURT DESCRIBES THE PRIOR

HISTORY OF THE CASE IN WHICH THE SECRETARY OF

HEALTH AND HUMAN SERVICES MOVED FOR A PARTIAL, OR

FOR AN EMERGENCY STAY OF THE DISTRICT COURT ORDER,

AND THE DISTRICT COURT ORDER IN THE LOPEZ CASE WAS

THAT THE SOCIAL SECURITY ADMINISTRATION HAD TO GIVE

NOTICE TO TENS OF THOUSANDS OF INDIVIDUALS WHO HAD

HAD THEIR SOCIAL SECURITY DISABILITY PAYMENTS

STOPPED ON THE GROUNDS THAT THEY WERE NO LONGER

DISABLED.

          AND THE COURT HAD PREVIOUSLY RULED THAT

THE SECRETARY COULDN'T STOP THOSE PAYMENTS UNTIL

AFTER THE INDIVIDUALS HAD HAD NOTICE AND

OPPORTUNITY TO BE HEARD.

          THE SECRETARY HAD ANNOUNCED THAT SHE

WASN'T GOING TO ABIDE BY THAT DECISION, AND THE

PARTIES WENT BACK TO THE DISTRICT COURT.

          THE DISTRICT COURT ISSUED AN ORDER THAT

SAID, YES, YOU ARE, AND YOU'RE GOING TO SEND NOTICE

TO ALL THESE PEOPLE BY A CERTAIN DATE, AND THEN IF

THEY ASK YOU FOR IT, YOU'RE GOING TO CONDUCT

HEARINGS, AND IF THEY'RE ENTITLED, YOU'RE GOING TO

GIVE THEM BACK THEIR BENEFITS.

          SO THAT WAS THE ORDER.

          THE SECRETARY OF HEALTH AND HUMAN

SERVICES SOUGHT AN EMERGENCY STAY FOUR OR FIVE DAYS
BEFORE THOSE TENS OF THOUSANDS OF NOTICES TO THE
DENIED CLAIMANTS WERE GOING TO GO OUT, AND THE
COURT GAVE TWO REASONS FOR DENYING THE EMERGENCY
STAY.

THE FIRST REASON WAS THAT THE SECRETARY
HAD WAITED ABOUT 50 OR 55 DAYS FROM THE DATE OF THE
ORIGINAL ORDER UNTIL MAKING THAT STAY MOTION JUST
FOUR DAYS BEFORE THE NOTICES WERE TO GO OUT.

NOW, THAT'S ARGUABLY, YOUR HONOR -- YOUR
HONOR HAD SOME ISSUES WITH US NOT HAVING FILED THE
NOTICE OF APPEAL SOONER.

RESPECTFULLY, WE DISAGREE, AND AS WE
ARGUED AT THE TIME, WE THOUGHT THERE WERE SOME GOOD
REASONS BASED ON FACEBOOK'S CONDUCT AND TRYING TO
WORK OUT THE ISSUE THAT WE THOUGHT WE HADN'T BEEN
DILATORY.

BUT IN ANY EVENT, THAT'S ONE ASPECT OF
THE DECISION.

THE SECOND ASPECT OF THE DECISION,
THOUGH, AND I THINK THIS IS REALLY CRUCIAL, WAS
THAT THE COURT OF APPEALS SAID, "THE FACT THAT
TERMINATED RECIPIENTS BE," AND I'M QUOTING HERE,
"NOTIFIED BY AUGUST 15TH OF THEIR POTENTIAL
ELIGIBILITY FOR BENEFITS WAS THE ONLY IMMEDIATE

10:56:57 1  OBLIGATION IMPOSED UPON THE GOVERNMENT.

10:57:01 2         "WE REASONED THAT THE BULK OF THE

10:57:04 3  ADMINISTRATIVE COSTS AND THE COSTS OF REINSTATING

10:57:08 4  BENEFITS, THE SOURCE OF THE INJURY WHICH THE

10:57:11 5  SECRETARY ARGUES JUSTIFIES A STAY, WOULD NOT START

10:57:14 6  TO ACCRUE UNTIL LATER WHEN THE FORMER RECIPIENTS

10:57:18 7  BEGAN REAPPLYING FOR BENEFITS.

10:57:22 8         "THUS, WE SAW NO NECESSITY TO ISSUE A

10:57:25 9  TEMPORARY STAY PENDING APPEAL ON AN EMERGENCY

10:57:29 10  BASIS, ESPECIALLY GIVEN THE SECRETARY'S UNEXPLAINED

10:57:33 11  DELAY."

10:57:34 12         SO WHAT THE COURT REALLY FOCUSSED ON WAS,

10:57:38 13  WHAT WAS THE IMMEDIATE INJURY THAT WAS GOING TO BE

10:57:41 14  SUFFERED BY THE PARTY SEEKING THE STAY?

10:57:43 15         YOUR HONOR, I THINK THAT IS REALLY

10:57:46 16  EXACTLY ANALOGOUS TO THIS CASE.

10:57:50 17         AT THE TIME WE MADE THAT MOTION, THE

10:57:54 18  ORDER OF THE COURT WAS, GIVE THE STOCK TO THE

10:57:57 19  SPECIAL MASTER.

10:58:03 20         THAT TENDERING OF THE STOCK TO THE

10:58:05 21  SPECIAL MASTER WAS SUBJECT TO THE FINAL PARAGRAPH

10:58:08 22  OF THE FINAL JUDGMENT, WHICH SAID THE SPECIAL

10:58:13 23  MASTER CAN'T DO ANYTHING WITHOUT FURTHER ORDER OF

10:58:15 24  THE COURT.

10:58:16 25         SO IT'S OUR VIEW, YOUR HONOR, THAT WHEN

THE COURT OF APPEALS CITED THE LOPEZ CASE AS THE
GROUND FOR DENYING THE STAY, WHAT -- CERTAINLY A
VERY SIGNIFICANT PART OF THAT DECISION WAS THAT WE
WERE NOT GOING TO SUFFER ANY IMMEDIATE IRREPARABLE
INJURY BECAUSE THE STOCK WAS JUST GOING INTO THE
HANDS OF THE SPECIAL MASTER WHERE THE INJURIES IN
TERMS OF LOSS OF APPEAL RIGHTS AND SO FORTH,
POTENTIAL LOSS OF APPEAL RIGHTS ACCORDING TO
FACEBOOK, AND SO FORTH WOULD NOT BE SUFFERED.

        NOW, HOWEVER, AND I -- THAT'S WHY I COME
BACK TO THIS POINT.  THE SITUATION HAS CHANGED.

        WE ARE NOT TALKING ABOUT THAT LOSS BEING
POTENTIALLY DAYS, WEEKS, MONTHS IN THE FUTURE, THAT
LOSS OF APPEAL RIGHTS.

        WE ARE TALKING ABOUT IT BEING IMMINENT.
WE ARE TALKING ABOUT THE COURT'S VERY ACT OF
ORDERING THE DISTRIBUTION WOULD RESULT IN OUR
POTENTIALLY LOSING THE APPEAL, THE APPEAL RIGHTS IN
VIEW OF FACEBOOK'S INTERPRETATION OF THE LAW.

        SO YOU, YOU HAVE -- YOU HAVE A SITUATION
WHERE, WHERE LOPEZ SEEMED TO SUGGEST THAT THE
EARLIER STAY REQUEST WAS DENIED, IN EFFECT, BECAUSE
IT WAS PREMATURE.

        ALL WE WERE FACED WITH WAS, WAS DOING A
QUASI MINISTERIAL ACT, GIVING THE SHARES TO THE

34

SPECIAL MASTER.

YES, WE WERE WORRIED AT THAT TIME ABOUT
WHAT THE ULTIMATE RESULT MIGHT BE, BUT THAT
COULDN'T HAPPEN UNTIL WE HAD EXACTLY THE
OPPORTUNITY THAT WE HAVE HERE TODAY, WHICH IS TO
HAVE NOTICE AND AN OPPORTUNITY TO PERSUADE THE
COURT NOT TO MAKE THAT DISTRIBUTION.

BUT --

THE COURT:  WELL, YOU'RE BEING QUITE
COMPLETE, AND I REALLY APPRECIATE IT, IN YOUR
RECITATION OF THE CIRCUMSTANCES, AND PART OF WHAT
YOU'VE SAID I RECOGNIZE.

IT DOES SEEM TO ME A DIFFERENT
PROPOSITION FOR THIS COURT TO ORDER A STAY SO THAT
IT CAN CONSIDER MATTERS BEFORE IT THAN FOR THE
COURT TO ORDER A STAY SO THAT THE NINTH CIRCUIT CAN
CONSIDER MATTERS BEFORE IT --

MR. BARRETT:  UM-HUM.

THE COURT:  -- WHEN THE NINTH CIRCUIT IS
PERFECTLY CAPABLE OF MAKING ITS OWN JUDGMENT ABOUT
THAT.

AND FOR ME TO PROTECT THE JURISDICTION OF
THE NINTH CIRCUIT BY ISSUING A STAY UNDER
CIRCUMSTANCES WHERE I'VE ALREADY MADE MY JUDGMENT
AND MY ASSESSMENT OF IT IS A DIFFERENT, A DIFFERENT

MATTER.

IF I UNDERSTANDING WHAT YOU'RE SAYING, IT IS THAT YOU NEED TO GO THROUGH THIS PROCEDURE TO PUT YOURSELF IN THE POSITION OF NOW SUBMITTING TO THE NINTH CIRCUIT EITHER A REQUEST FOR A STAY OR A REQUEST FOR A WRIT, AND I CAN UNDERSTAND, THEN, WHY YOU WOULD GO THROUGH THIS PROCESS, BECAUSE UNLESS I'M PERSUADED THAT I DON'T HAVE THE AUTHORITY, IT SEEMS TO ME THAT THERE ARE TWO SIDES TO THE APPEAL THAT YOU'RE CITING.

THERE IS THE SIDE THAT YOU'RE CITING, WHICH IS THE CONNECTU SIDE WHICH WOULD, IF IT HAS TO FOLLOW THROUGH WITH ITS SETTLEMENT, LOSE CONTROL OF THE COMPANY; AND THEN THERE'S THE FACEBOOK SIDE WHICH IS SEEKING TO GAIN CONTROL.

THAT'S -- THAT'S JUST DESCRIBING TO ME THE NATURE OF THE PROBLEM.

AND YOUR ARGUMENT IS THAT I SHOULD FAVOR ONE SIDE OVER THE OTHER IN THAT APPEAL BY SIMPLY SAYING THAT FACEBOOK WON'T SUFFER ANY INJURY IF IT'S DENIED THE CONTROL THAT IT BARGAINED FOR, AND I UNDERSTAND THAT THERE ARE SOME ECONOMIC REASONS WHY THAT ARGUMENT IS MADE INSOFAR AS CONNECTU IS CONCERNED .

THE ARGUMENT I'VE HEARD MADE IN THE PAST

IS, WELL, THE COMPANY ISN'T REALLY ACTIVE, IT
REALLY DOESN'T MAKE ANY MONEY, IT'S NOT REALLY
LOSING ANY MONEY, IT'S JUST THERE AND, THEREFORE,
TO ALLOW IT TO BE THE WAY IT IS DOESN'T HURT
FACEBOOK.

BUT THAT DENIES FACEBOOK THE RIGHT TO
MAKE THE COMPANY INTO SOMETHING BETTER THAN IT IS,
TO PURSUE IT ON AN ECONOMICALLY VIABLE BASIS, TO
EXPLOIT IT IN THE WAY THAT IT WOULD WANT TO EXPLOIT
IT SO THAT THE TIME VALUE OF AN EIGHT MONTH DELAY
HAS AN EFFECT ON FACEBOOK.

SO I CAN'T IGNORE ONE IN FAVOR OF THE
OTHER, ESPECIALLY UNDER CIRCUMSTANCES WHERE I'M
PERSUADED THAT THE PARTIES SAT DOWN AT A BARGAINING
TABLE AND THEY AGREED TO THAT EXCHANGE.

MR. BARRETT:  SURE, SURE.

WELL, YOUR HONOR, IF I COULD -- YOUR
HONOR SUMMED IT UP VERY WELL, AND IF I COULD JUST
RESPOND BRIEFLY TO THAT?

I DO THINK IT IS A SITUATION WHERE, YOU
KNOW, YOU REALLY ARE BALANCING THE HARDSHIPS OR
DETRIMENTS TO THE PARTIES, IF YOU WILL.

AND I'LL JUST REMIND THE COURT THAT THE
RECORD DOES INDICATE THAT, FIRST OF ALL, ANY COSTS
ASSOCIATED WITH ANY LITIGATION THAT CONNECTU IS

INVOLVED IN, AND THAT INCLUDES BOTH THE APPEAL AND THE DISPUTE WITH QUINN, EMANUEL, THE RECORD IS VERY CLEAR THAT THOSE COSTS ARE NOT BEING PAID BY CONNECTU.  THEY'RE BEING PAID BY THE SHAREHOLDERS.

SO ONE ISSUE THAT HAD BEEN RAISED BEFORE WAS, IN EFFECT, THAT THE COMPANY WAS GETTING -- LOOTED WOULD BE THE WRONG WORD -- BUT WAS INCURRING DEBTS OR OBLIGATIONS, AND THAT IS SIMPLY NOT THE CASE.  THE RECORD SHOWS THAT IT'S NOT THE CASE.

THERE'S ALSO, OF COURSE, THE CLAIM THAT QUINN, EMANUEL HAS MADE AGAINST CONNECTU, BUT THAT CLAIM PREEXISTED, YOU KNOW, THIS, THIS JUDGMENT PROCESS.  THAT CLAIM WAS MADE AS EARLY AS LAST APRIL.

SO THAT'S -- THAT ISN'T CHANGED BY ANYTHING THAT'S GOING TO HAPPEN HERE.

AND THEN, FINALLY, WITH RESPECT TO THE CONNECTU BUSINESS, WHAT WAS SAID HERE ON AUGUST 6TH WAS THAT CONNECTU, OR THE SHAREHOLDERS, DON'T HAVE ANY OBJECTION TO MR. FISHER OPERATING THE BUSINESS, AND WE TALKED ABOUT THE BUSINESS ESSENTIALLY REQUIRING WRITING A CHECK FOR A SERVER ONCE A MONTH.

AND IN FACT, MR. UNDERHILL SAID, "YOUR HONOR, WE WOULD EVEN BE WILLING TO LET FACEBOOK

OPERATE THE BUSINESS."

AND SO IT'S NOT -- AND MR. -- AND
MR. FISHER INDICATED THAT AT LEAST IF IT WAS NOT A,
A COMPLEX PROJECT, HE WOULD BE WILLING TO UNDERTAKE
THAT RESPONSIBILITY.

SO I UNDERSTAND WHAT THE COURT IS SAYING
ABOUT FACEBOOK'S RIGHT TO TAKE THE CONNECTU
BUSINESS AND PERHAPS TURN IT INTO SOMETHING ELSE.

THEY'VE NEVER GIVEN ANY INDICATION THAT
THEY HAVE ANY INTEREST IN DOING THAT.

THEY HAVE GIVEN EXPRESS INDICATIONS THAT
THEY WOULD LIKELY DROP THE APPEAL OR RAISE THE
DOMINIX LITIS DOCTRINE AND CONTEST THE FOUNDERS'
STANDING TO BE INVOLVED IN THE APPEAL.

SO I CERTAINLY UNDERSTAND THAT.

WE WOULD BE HAPPY TO HAVE THE APPEAL
HEARD IN THE NINTH CIRCUIT AS SOON AS THAT COULD
POSSIBLY BE ACCOMPLISHED.

WE FILED OUR BRIEF ON THE DAY THAT WE
WERE ORDERED TO IN ACCORDANCE WITH THE COURT'S
CONSOLIDATION ORDER.

FACEBOOK JUST YESTERDAY REQUESTED AND
RECEIVED A 14 DAY EXTENSION IN THE TIME FOR THE
FILING OF THEIR BRIEF.

I DON'T KNOW THAT THAT MAKES A BIG

39

DIFFERENCE IN WHEN THE CASE GETS ARGUED IN THE
NINTH CIRCUIT, BUT WE'RE TRYING TO PURSUE THE
APPEAL AS PROMPTLY AS WE CAN.

SO I THINK THAT YOU'RE RIGHT THAT THERE
IS, YOU KNOW, A POTENTIAL INJURY OF SOME KIND TO
FACEBOOK FROM THE DELAY, BUT THEY HAVE NOT
IDENTIFIED ANYTHING CONCRETE IN THE MANNER THAT WE
HAVE, AND I THINK IF YOU'RE GOING TO BALANCE THOSE
TWO THINGS, IT IS APPROPRIATE -- AND THEN, I GUESS,
UNDER THE STANDARD, YOU LOOK AT THE LIKELIHOOD OF
SUCCESS ON APPEAL.

WE HAVE FILED OUR APPEAL BRIEF AND THOSE
ARGUMENTS ARE THERE.  OBVIOUSLY THEY DIDN'T
PERSUADE YOUR HONOR WHEN WE WERE HERE EARLIER, BUT
WE DO THINK THAT THEY'RE, YOU KNOW, VERY
SUBSTANTIAL ARGUMENTS AND LIKELY TO PREVAIL.

AND ON THAT BASIS, WE WOULD, AGAIN,
RESPECTFULLY SUGGEST THAT, YOU KNOW, WE'LL RAISE
THE JURISDICTIONAL ISSUE AND ASK THE COURT TO LEAVE
THE CONSIDERATION WITH THE SPECIAL MASTER.

THAT WOULD ALSO OBVIATE ANY ISSUES WITH
RESPECT TO THE RELEASES AND WITH RESPECT TO THE
DISMISSALS, PARTICULARLY THE DISMISSAL OF THE
MASSACHUSETTS CASE.

AND, FINALLY, IT WOULD ALSO OBVIATE ANY

11:07:51 1
11:07:54 2
11:07:58 3
11:08:03 4
11:08:06 5
11:08:07 6
11:08:08 7
11:08:09 8
11:08:11 9
11:08:13 10
11:08:19 11
11:08:25 12
11:08:27 13
11:08:30 14
11:08:36 15
11:08:43 16
11:08:46 17
11:08:49 18
11:08:54 19
11:08:57 20
11:09:02 21
11:09:06 22
11:09:12 23
11:09:15 24
11:09:17 25

ISSUE WITH RESPECT TO QUINN, EMANUEL, BECAUSE

QUINN, EMANUEL WOULD CONTINUE TO BE PROTECTED BY

THE FACT THAT THE CONSIDERATION WAS SIMPLY, IN

EFFECT, IN ESCROW IN THE HANDS OF THE SPECIAL

MASTER.

SO THE COURT WOULDN'T HAVE TO GET INTO

THAT ISSUE.

THE COURT:  LET ME ASK ONE FINAL

QUESTION, AND THAT IS YOU FOCUSSED SEVERAL TIMES ON

THE POTENTIAL THAT, AS THE OWNER OF THE SHARES OF

CONNECTU, FACEBOOK WOULD POTENTIALLY MOVE TO

DISMISS THE APPEAL.

IS THERE ANY OTHER HARM THAT YOU WOULD

CITE TO THE COURT THAT -- OR DETRIMENT THAT WOULD

BE SUFFERED BY CONNECTU IF I ORDER THAT THE STOCK

THAT IS SUBJECT TO THE SETTLEMENT BE TRANSFERRED?

MR. BARRETT:  WELL, YOUR HONOR, I GUESS,

YOU KNOW, THERE -- FOR WHATEVER EXISTENCE THE

CONNECTU BUSINESS HAS, TO THE EXTENT THAT THAT WAS

CHANGED BY FACEBOOK AFTER THEY GOT CONTROL OF THE

ENTITY, AND THERE WERE A REVERSAL SOME MONTHS FROM

NOW IN THE NINTH CIRCUIT, PRESUMABLY COMING BACK

BEFORE YOUR HONOR AFTER A REVERSAL WOULD BE

NECESSARY TO PUT THE PARTIES BACK IN THE POSITION

THEY WERE IN BEFORE THE SETTLEMENT WAS IMPLEMENTED

41

11:09:20 1    AND, YOU KNOW, I DON'T KNOW WHAT DIFFICULTIES THERE

11:09:25 2    MIGHT BE IN, YOU KNOW, RESTORING THAT PRIOR STATUS

11:09:29 3    QUO WITH RESPECT TO, WITH RESPECT TO CONNECTU.

11:09:33 4         I SUPPOSE THEY COULD, YOU KNOW, PUT THE

11:09:35 5    COMPANY OUT OF EXISTENCE.

11:09:38 6         THERE ARE A LOT OF THINGS THAT COULD

11:09:39 7    HAPPEN AND WE JUST, AND WE JUST DON'T KNOW.

11:09:42 8         THERE'S ANOTHER ELEMENT OF UNCERTAINTY

11:09:44 9    WHICH I WOULD --

11:09:45 10        THE COURT:  WELL, WOULDN'T YOU THINK THAT

11:09:46 11   THAT WOULD HAVE TO GO THROUGH THE NINTH CIRCUIT

11:09:51 12   BEFORE THAT TAKES PLACE?

11:09:53 13        IN OTHER WORDS, YOU WOULD ENVISION A

11:09:54 14   CIRCUMSTANCE WHERE, WITH THE APPEAL PENDING,

11:09:58 15   FACEBOOK WOULD TAKE THE STOCK, DECIDE, SINCE IT'S

11:10:03 16   THE OWNER, IT'S NOW GOING TO TAKE OUT OF THE

11:10:06 17   ORDINARY BUSINESS DECISIONS ABOUT THE COMPANY, AND

11:10:09 18   WOULD THEN PUT THE, THE -- PUT US ALL IN A

11:10:14 19   CIRCUMSTANCE WHERE THAT COULD NOT BE DONE.

11:10:17 20        YOUR ARGUMENT IS THEY COULD DO THAT EVEN

11:10:20 21   THOUGH THE APPEAL IS STILL PENDING?

11:10:23 22        MR. BARRETT:  I -- YOU KNOW, I THINK THEY

11:10:25 23   COULD, YOUR HONOR.  I MEAN, I THINK THAT'S EXACTLY,

11:10:27 24   AS I UNDERSTAND IT, WHY THEY, WHY THEY WANT TO GET

11:10:30 25   HOLD OF THE STOCK, GET HOLD OF THE OWNERSHIP

RIGHTS.  THEY HAVE SAID THAT.

           I MEAN, IN EFFECT, THAT'S WHAT FACEBOOK
IS SAYING.  WE'RE WAITING.  WE HAVE -- YOU KNOW, WE
BARGAINED FOR THIS AND WE WANT TO EXERCISE DOMINION
AND CONTROL OVER THIS AS SET.  THAT COULD MEAN
ANYTHING.

           AND UNLESS, YOU KNOW, THIS COURT ACTS OR
THE NINTH CIRCUIT ISSUES A STAY, I WOULD -- YOU
KNOW, I'M NOT SURE WHAT IT IS OTHER THAN, YOU KNOW,
THEIR OWN JUDGMENT THAT WOULD LIMIT THEIR POWER TO
DO THAT.

           I MEAN, IT'S LIKE -- IT'S LIKE ANY OTHER
OWNERSHIP INTEREST.  ONCE YOU HAVE IT, IT'S YOURS.

           I CERTAINLY WOULD EXPECT THEM TO ARGUE
THAT, AND WE MIGHT ARGUE SOMETHING TO THE CONTRARY
IF THAT HAPPENED, BUT --

           THE COURT:  CAN I HAVE YOU TURN YOUR
ARGUMENT TO THE QUINN, EMANUEL LIEN ISSUE?

           MR. BARRETT:  CERTAINLY, YOUR HONOR.

           THE COURT:  IF I'M DISPOSED TO ORDER THE
IMPLEMENTATION OF THE JUDGMENT BY ORDERING THE
MASTER TO MAKE THE EXCHANGES THAT --

           MR. BARRETT:  UM-HUM.

           THE COURT:  -- ARE COVERED BY THE
SETTLEMENT AGREEMENT, WHAT WOULD YOU HAVE THE COURT

43

DO, IF ANYTHING, WITH RESPECT TO THE QUINN, EMANUEL

LIEN?

MR. BARRETT:  YOUR HONOR, I -- QUITE

RESPECTFULLY, I WOULD SAY YOU SHOULD NOT TAKE ANY

ACTION AT ALL WITH RESPECT TO THE QUINN, EMANUEL

LIEN.

THE REASON THAT I SAY THAT IS THERE'S

A -- THERE'S A -- THERE'S SOME CALIFORNIA CASES,

ONE OF WHICH QUINN, EMANUEL CITES IN THEIR BRIEF,

CALLED CARROLL AGAINST INTERSTATE BRANDS, 99

CAL.APP 4TH 1168, AND THEY CITE THAT CASE FOR THE

PROPOSITION, ESSENTIALLY, THAT THE COURT IN WHICH

THE MAIN ACTION IS PENDING, THE ACTION WHICH GIVES

RISE TO THE LIEN, THE ACTION IN WHICH THE ATTORNEYS

PERFORMED THEIR SERVICES, THAT COURT ESSENTIALLY

HAS NO -- DOES NOT HAVE THE POWER TO MAKE AN

ADJUDICATION WITH RESPECT TO THE LIEN.

THE ADJUDICATION OF THE LIEN RIGHTS NEEDS

TO BE MADE IN A SEPARATE PROCEEDING IN A COURT THAT

IS, IS CONSIDERING THAT ISSUE.

AND AS YOUR HONOR WILL RECALL, QUINN,

EMANUEL ORIGINALLY FILED FOR ARBITRATION OF THE FEE

ISSUE IN NEW YORK BACK IN APRIL.

THERE WERE SOME JUDICIAL PROCEEDINGS IN

NEW YORK OVER THE SUMMER WHICH RESULTED IN THE

NEW YORK COURT ENTERING AN ORDER COMPELLING
ARBITRATION, AND THE PARTIES ARE NOW BACK IN THE
ARBITRABLE FORUM.

I BELIEVE THERE IS AT LEAST AN AGREEMENT
IN PRINCIPLE ON SELECTION OF THE ARBITRATORS.

YESTERDAY THE CONNECTU FOUNDERS MADE,
MADE A CLAIM IN THE ARBITRATION PROCEEDING
THEMSELVES.

SO THE ARBITRATION IS, IS PROCEEDING.

BUT THE BOTTOM LINE IS THAT IF, IF
QUINN -- IF QUINN HAD AN INTEREST IN ATTACHING THE
FUNDS AND THE STOCK THAT WOULD GO OUT UNDER, UNDER
YOUR HONOR'S QUESTION, THEY, THEY HAD PROCEDURES
THEY HAD EITHER IN COURT OR THROUGH THE ARBITRATION
FORUM, WHICH ARE THE APPROPRIATE PROCEDURES, FOR
ASSERTING THAT CLAIM.

FOR THIS COURT TO GET INTO -- AND THE
REASON THAT IT'S AN ISSUE, YOUR HONOR, IS THAT
THERE ARE SOME VERY COMPLEX FACTUAL ISSUES THAT
YOUR HONOR WOULD HAVE TO DECIDE JUST IN TERMS OF
EITHER THE PROCEDURE FOR WHAT TO DO WITH THOSE
ASSETS, OR WE WOULD ARGUE HOW MUCH OF THE
CONSIDERATION SHOULD BE DISTRIBUTED DIRECTLY TO THE
FOUNDERS?  HOW MUCH SHOULD BE, SHOULD BE SUBJECT TO
HOLD BACK WITH RESPECT TO CONNECTU?  HOW DO YOU

45

VALUE THEIR PERCENTAGE RETAINER AMOUNT?  DO YOU

VALUE IT BASED ON THE HIGHER VALUE?  DO YOU VALUE

IT BASED ON THE LOWER STOCK VALUE THAT YOUR HONOR

IS FAMILIAR WITH?  DO YOU GIVE THEM ALL CASH?  DO

THEY GET TO HOLD BACK ALL CASH?  DO THEY GET TO

HOLD BACK THE CONTINGENT PERCENTAGE ON THE CASH AND

THE SAME PERCENTAGE ON THE STOCK?

       THERE ARE A LOT OF DIFFERENT QUESTIONS

THAT I'M NOT SURE THIS -- AND SOME OF THOSE -- HOW

DO YOU TAKE ACCOUNT OF THE FACT THAT THE CONNECTU

FOUNDERS ARE MAKING A CLAIM AGAINST QUINN THAT IS

MUCH LARGER THAN THE AMOUNT OF THE FEES THAT ARE

BEING CLAIMED?

       DO YOU MAKE ANY, ANY PRELIMINARY

DETERMINATION ON THAT WHEN YOU, WHEN YOU CONSIDER

HOW TO, HOW TO DEAL WITH THE LIEN?

       AND, YOUR HONOR, SO I WOULD SUBMIT THAT

THERE ARE A LOT OF ISSUES THERE THAT IT WOULD BE

MUCH MORE APPROPRIATE FOR THE FORUM THAT'S

ADDRESSED IN THE FEE LIEN TO ADDRESS RATHER THAN

ARE ADDRESSED IN THIS COURT.

       BUT IF YOU WERE GOING TO ADDRESS THE

ISSUE -- AND I WOULD THINK THAT YOU, YOU KNOW, AND

TO TRY TO BE FAIR ABOUT IT TO BOTH SIDES, YOU WOULD

NEED TO GET INTO THAT.

```
11:16:23   1        FINALLY, WITH RESPECT TO THE CONCERN THAT

11:16:26   2   MR. CHATTERJEE RAISED ABOUT FACEBOOK POTENTIALLY

11:16:32   3   BEING SUBJECT TO A CLAIM FROM QUINN, EMANUEL IN THE

11:16:40   4   FIRST PLACE, I THINK THAT THAT'S A VERY

11:16:43   5   HYPOTHETICAL CIRCUMSTANCE TO SAY THE LEAST.

11:16:46   6        IT PRESUMES THAT THERE'S GOING TO BE A

11:16:48   7   NET RECOVERY BY, BY QUINN, EMANUEL.

11:16:55   8        IT ALSO PRESUMES THAT -- THAT THAT --

11:16:59   9   THAT THAT JUDGMENT IN FAVOR OF QUINN, EMANUEL

11:17:02  10   WOULDN'T, YOU KNOW, WOULDN'T BE PAID BY THE PARTIES

11:17:06  11   ON THE CONNECTU SIDE.

11:17:08  12        BUT IN ANY EVENT, YOUR HONOR, I THINK

11:17:10  13   WITH RESPECT TO MR. CHATTERJEE'S -- WITH RESPECT TO

11:17:15  14   MR. CHATTERJEE'S CONCERN, YOU CAN GET GUIDANCE BY

11:17:20  15   TURNING BACK TO THE TERM SHEET AND SETTLEMENT

11:17:23  16   AGREEMENT, AS THE COURT HAS DONE A NUMBER OF TIMES

11:17:26  17   IN THIS CASE, TO DECIDE SOME OF THESE ISSUES OF

11:17:30  18   INTERPRETATION.

11:17:31  19        AND YOU'LL RECALL THAT WHAT THE TERM

11:17:34  20   SHEET SAYS IS ALL CONNECTU STOCK, I'M READING FROM

11:17:39  21   PARAGRAPH 7, IN EXCHANGE FOR X DOLLARS IN CASH, AND

11:17:45  22   X COMMON SHARES AND Y COMMON SHARES IN FACEBOOK.

11:17:49  23        IT DOESN'T SAY ANYTHING ABOUT ANY

11:17:54  24   PROTECTION FOR FACEBOOK FROM RIGHTS OF THIRD

11:17:57  25   PARTIES, YOU KNOW, ANY KIND OF LIEN HOLDERS OR
```

47

CLAIMANTS THAT MIGHT EXIST IN THE WORLD AGAINST,

2    AGAINST THE CONNECTU PARTIES.

3            AND I THINK, YOU KNOW, IF THE COURT IS,

4    YOU KNOW, INCLINED TO MOVE IN THAT DIRECTION, THAT

5    WITH RESPECT TO FACEBOOK, YOU KNOW, CASH MEANS

6    CASH.  IT DOESN'T MEAN A CHECK PAYABLE TO TWO

7    PARTIES.  IT DOESN'T MEAN A CHECK IN A TRUST.

8            IT MEANS -- YOU KNOW, IN THIS CASE IT

9    WOULD BE SOME RATHER LARGE SUITCASES, BUT THAT'S

10   LITERALLY WHAT THEY SAID.

11           AND IF THEY WANTED TO PROTECT THEMSELVES

12   AGAINST THESE KINDS OF CLAIMS, AS THE COURT HAS

13   SAID IN OTHER CONTEXTS, THAT SHOULD HAVE BEEN

14   SOMETHING THAT WAS INCLUDED IN THE AGREEMENT.

15           SO IF, IF THERE'S A POTENTIAL PROBLEM FOR

16   FACEBOOK -- AND, AGAIN, I THINK IT'S A VERY REMOTE

17   ONE -- IT'S REALLY A PROBLEM OF THEIR OWN MAKING IN

18   THAT REGARD.

19           THE COURT:  THANK YOU, COUNSEL.

20           DID YOU WANT TO ADDRESS THE COURT ON

21   BEHALF OF QUINN, EMANUEL?

22           MR. VAN DALSEM:  IF THE COURT IS INCLINED

23   TO HEAR US, I WOULD LIKE TO, YOUR HONOR.

24           THE COURT:  OF COURSE.

25           MR. VAN DALSEM:  AND THE REASON I SAY

48

THAT IS WE'RE NOT A PARTY AND WE HAVEN'T

INTERVENED, AND I'LL TOUCH UPON WHY WE HAVEN'T DONE

THAT IN MY REMARKS.

          I AGREE WITH WHAT MR. BARRETT SAYS WITH

ONE SIGNIFICANT EXCEPTION, AND THAT SIGNIFICANT

EXCEPTION IS THAT THE COURT'S PROPOSAL SET FORTH IN

THE OSC WOULD ALTER THE STATUS QUO THAT WOULD HAVE

EXISTED BUT FOR THIS DISPUTE.

          QUINN, EMANUEL HAS A CONTRACTUAL LIEN

OVER THIS RECOVERY, AND IN THE NORMAL COURSE,

REALLY BECAUSE OF THE LEVIN CASE WHICH WE'VE CITED,

A DEFENDANT PAYING A PLAINTIFF WILL ISSUE THE

PAYMENT INSTRUMENTS, BE THEY CHECKS OR OTHERWISE,

JOINTLY TO THE PLAINTIFF AND THEIR COUNSEL.

          AND THE REASON THEY DO THAT IS BECAUSE

THE LEVIN CASE IN CALIFORNIA HOLDS THAT IF THEY'RE

ON NOTICE OF A CONTRACTUAL RIGHT OF THE LAWYERS TO

RECEIVE A PORTION OF THAT MONEY AND THEY FAIL TO

INCLUDE THE LAWYERS AS A PAYEE, THEN THE DEFENDANT,

IN THIS CASE FACEBOOK, FACES POTENTIAL LIABILITY.

          SO IN THE NORMAL COURSE OF THINGS, HAD

THIS SETTLEMENT NOT BEEN CONTESTED AND IN THE

ABSENCE OF SOME WRITTEN INSTRUCTION TO FACEBOOK TO

DO OTHERWISE, FACEBOOK WOULD HAVE ISSUED THE

CONSIDERATION JOINTLY TO CONNECTU, ITS FOUNDERS,

49

AND THE FIRM.

AND I THINK FACEBOOK HAS TAKEN THAT
POSITION HERE AND HAS CONFIRMED THAT THAT'S WHAT
WOULD HAVE HAPPENED IN THE NORMAL COURSE.

IF THE COURT FOLLOWS THROUGH ON WHAT IT
STATED IN THE OSC, IT WOULD BE DELIVERING THE
CONSIDERATION FROM FACEBOOK DIRECTLY TO THE
CONNECTU FOUNDERS WHO COULD -- WHO WOULD THEN BE
FREE TO DO WITH IT WHATEVER THEY WISH, AND THAT
WOULD ALTER THE STATUS QUO THAT WOULD HAVE EXISTED
BUT FOR THIS DISPUTE.

AND THAT -- IN MY OPINION, THAT IS NOT
SOMETHING THE COURT SHOULD DO BECAUSE IT WOULD
DESTROY THE LIEN RIGHT.

I AGREE WITH MR. BARRETT THAT IT IS NOT
FOR THIS COURT TO ADJUDICATE ANY PORTION OF THE
DISPUTE BETWEEN QUINN, EMANUEL AND ITS FORMER
CLIENTS.

THERE'S AN ARBITRATION CLAUSE. WE HAVE
COMMENCED AN ARBITRATION IN NEW YORK BEFORE THE
TRIPLE A. THEY TRIED TO ENJOIN IT.

THAT WAS DEFEATED. JUSTICE LOWE IN THE
SUPREME COURT IN NEW YORK HELD THAT THE MATTER WAS
ARBITRABLE. THEY'VE ASSERTED COUNTERCLAIMS.

AND THAT IS THE PROPER FORUM IN WHICH TO

RESOLVE ALL OF THESE QUESTIONS AS BETWEEN QUINN,
EMANUEL AND ITS FORMER CLIENTS.

WHAT SHOULDN'T HAPPEN IN THE MEANTIME IS
THE FORMER CLIENTS OBTAIN ALL OF THE MONEY AND THEY
CAN DO WITH IT WHATEVER THEY -- WITH THAT MONEY
WHATEVER THEY WISH ONCE THEY HAVE THEIR HANDS ON IT
AND THEREBY DEFEAT OUR LIEN INTEREST.

AND THE COURT'S OSC WOULD ALTER WHO WOULD
NORMALLY BE THE PROTECTION FOR QUINN, EMANUEL UNDER
THESE CIRCUMSTANCES.

THE COURT:  WELL, THE OBLIGATION THAT
YOU'RE CITING OF A CONTRACTUAL LIEN HAS NOT BEEN
ADJUDICATED AS OF YET; CORRECT?

MR. VAN DALSEM:  WELL, THE LIEN IS
PERFECTED AND WE'VE CITED CASES UPON EXECUTION OF
THE FEE AGREEMENT.  THE MOMENT THAT AGREEMENT WAS
SIGNED, THE LIEN WAS PERFECTED.

THE COURT:  WHAT DOES IT MEAN FOR A LIEN
TO BE PERFECTED?

MR. VAN DALSEM:  THAT MEANS THAT QUINN,
EMANUEL, AS COUNSEL FOR THE CONNECTU PARTIES, HAS A
LIEN OVER WHAT WERE THEN CAUSES OF ACTION, WHICH
WERE THEN CONVERTED INTO THINGS OF VALUE AS PART OF
THE SETTLEMENT.

SO WE HAVE AN ABILITY TO THEN FORECLOSE

ON THAT LIEN, AND CALIFORNIA LAW IS VERY CLEAR THAT

WE -- THAT THAT FORECLOSURE PROCEEDING DOES NOT

HAPPEN HERE.  IT HAS TO HAPPEN IN AN INDEPENDENT

ACTION BROUGHT BY THE LAWYERS AGAINST THE FORMER

CLIENTS.

        WE'VE DONE THAT.  THAT'S BEFORE THE

TRIPLE A IN NEW YORK AND THAT WILL PROCEED HOWEVER

IT PROCEEDS.

        THE COURT:  THE -- YOUR -- THE

OBLIGATION, THOUGH, IS ONLY TO FACEBOOK WITH

RESPECT TO THE LIEN?

        MR. VAN DALSEM:  THE OBLIGATION --

FACEBOOK FACES POTENTIAL LIABILITY IF THESE FUNDS

ARE TURNED OVER TO THE CONNECTU PARTIES WITHOUT

ACCOUNTING FOR THAT LIEN.

        THE COURT:  RIGHT.  BUT -- AND I GUESS SO

DO THE FOUNDERS AND CONNECTU?

        MR. VAN DALSEM:  THAT'S CORRECT.

        THE COURT:  ALL RIGHT.  BUT IF THE FUNDS

ARE NEVER TURNED OVER TO FACEBOOK, WHAT HAPPENS?

        MR. VAN DALSEM:  YOU MEAN NEVER TURNED

OVER TO CONNECTU?

        THE COURT:  NO, NEVER TURNED OVER BY

FACEBOOK.

        MR. VAN DALSEM:  OH.  IF THE FUNDS ARE

NEVER TURNED OVER BY FACEBOOK, OR IN THESE

CIRCUMSTANCES, IF THEY STAY WITH THE SPECIAL

MASTER, WE'RE FINE.

MR. BARRETT IS CORRECT THAT QUINN,

EMANUEL REMAINS PROTECTED IF THE CONSIDERATION WAS

TO STAY WITH THE SPECIAL MASTER.

THE COURT:  YEAH.  THE REASON I'M

CONCERNED ABOUT SOME KIND OF A JOINT PAYMENT IS,

FIRST, I WOULDN'T KNOW TO WHOM TO GIVE THE MONEY OR

THE CONSIDERATION TO.

IF IT'S JOINT -- IF IT'S IN SOME JOINT

NAME, I DON'T KNOW WHERE IT PUT IT.  AND UNLESS ALL

OF YOU COME TO ME AND TELL ME, WE'VE SET UP

SOMETHING FOR THAT PURPOSE, I WOULD HAVE TO CHOOSE

WHERE TO PUT THAT.

MR. VAN DALSEM:  THAT'S -- I DON'T

BELIEVE THAT'S THE CASE, AND I CAN EXPLAIN.

THE COURT:  ALL RIGHT.

MR. VAN DALSEM:  LET'S TAKE A SIMPLE

EXAMPLE.  LET'S SAY THAT THE TOTAL SETTLEMENT

CONSIDERATION WAS $100 AND THERE WAS GOING TO BE A

CHECK MADE PAYABLE TO WHOMEVER, AND WE'LL GET TO

THAT, FOR $100.

THE WAY THIS WOULD HAPPEN IN THE NORMAL

COURSE IS FACEBOOK WOULD WRITE THE CHECK TO

CONNECTU AND ITS LAWYERS, QUINN, EMANUEL, URQUHART, OLIVER & HEDGES.

THEY THEN HAND THE CHECK TO ONE OF US. WE EITHER SIT DOWN AND COME TO AN AGREEMENT, WHICH IS OBVIOUSLY WHAT WE WOULD TRY TO DO UNDER THE CIRCUMSTANCES, AND IF WE CAN'T COME TO AN AGREEMENT AS TO HOW MUCH OF THAT MONEY SHOULD BE SEQUESTERED TO SECURE THE CLAIM -- WHICH BY THE WAY, THE CONNECTU FOUNDERS, IN THEIR BRIEF, AGREE THAT SOME PORTION OF THAT SHOULD REMAIN LOCKED UP IN ORDER TO SECURE THE CLAIM. THE ONLY DISPUTE IS HOW MUCH.

BUT --

THE COURT: BUT DOESN'T THE FACT THAT IT'S MADE PAYABLE EQUALLY ADJUDICATE SOMETHING? IT MEANS THAT IT'S 50-50?

MR. VAN DALSEM: NO, NOT AT ALL.

IF IT'S PAID JOINTLY, THERE IS -- THAT IS NOT A DETERMINATION AS TO WHAT PERCENTAGE GOES TO WHAT PAYEE.

SO WHAT WOULD HAPPEN IN THE NORMAL COURSE IS THAT THE PARTIES WOULD EITHER AGREE UPON THAT AND AGREE TO SEQUESTER AND PUT INTO TRUST A CERTAIN AMOUNT, AND IF WE CAN'T AGREE, THE PROPER FORUM TO DECIDE THAT WOULD BE THE ARBITRATORS IN NEW YORK BEFORE THE TRIPLE A WHO ARE HANDLING THAT

54

```
11:25:10  1    INDEPENDENT ACTION.
11:25:11  2              THE COURT:  BUT YOU EACH WOULD HAVE A
11:25:12  3    VETO?  IN OTHER WORDS, YOU'D OWN IT JOINTLY.  THE
11:25:15  4    FUNDS WOULD BE CONVERTED TO A PARTNERSHIP,
11:25:17  5    ESSENTIALLY, WITH EACH HAVING A 50 PERCENT
11:25:20  6    INTEREST.
11:25:20  7              MR. VAN DALSEM:  NOT TRUE.
11:25:21  8              WHAT WOULD HAPPEN IS WHEN THAT CHECK
11:25:23  9    COMES IN AS, THE $100 CHECK IN MY EXAMPLE PAYABLE
11:25:27 10    TO THE FORMER CLIENTS AND THE LAW FIRM, BOTH
11:25:30 11    PARTIES WOULD HAVE TO ENDORSE THAT CHECK BEFORE ANY
11:25:32 12    BANK WOULD CASH IT.
11:25:33 13              THE COURT:  THAT'S WHAT I MEAN.  SO EACH
11:25:34 14    WOULD HAVE A VETO.
11:25:36 15              MR. VAN DALSEM:  WELL, THAT'S CORRECT.
11:25:37 16              SO WE EITHER COME TO AN AGREEMENT, OR IF
11:25:39 17    WE CAN'T COME TO AN AGREEMENT, WE GO TO THE PROPER
11:25:41 18    FORUM TO RESOLVE THAT, WHICH IS THE ARBITRATORS,
11:25:44 19    AND SAY, HERE'S A PAYMENT INSTRUMENT, IT'S
11:25:46 20    NON-NEGOTIABLE WITHOUT EVERYONE AGREEING TO IT, WE
11:25:49 21    CAN'T AGREE, SO THEREFORE, YOU, THE ARBITRATORS,
11:25:52 22    ARE THE PROPER FORUM TO DECIDE WHAT, IF ANY,
11:25:54 23    PORTION OF THAT SHOULD REMAIN SUBJECT TO THE LIEN
11:25:57 24    INTERESTS AND SEQUESTERED DURING THE PENDENCY OF
11:26:01 25    THAT ARBITRATION.
```

| | | |
|---|---|---|
| 11:26:01 | 1 | THE COURT: RIGHT. SO ESSENTIALLY, THEN, |
| 11:26:03 | 2 | THE MONEY IS HELD IN ARBITRATION UNTIL THE |
| 11:26:05 | 3 | ARBITRATION IS OVER. |
| 11:26:06 | 4 | MR. VAN DALSEM: OR SOME PORTION OF THE |
| 11:26:08 | 5 | MONEY. |
| 11:26:08 | 6 | THE COURT: THE WHOLE THING IS. IF YOU |
| 11:26:10 | 7 | CAN'T AGREE, WOULDN'T IT TAKE AN ADJUDICATION BY |
| 11:26:12 | 8 | THE ARBITRATOR OF THE PROPORTIONATE AMOUNT BEFORE |
| 11:26:16 | 9 | IT COULD BE RELEASED? |
| 11:26:17 | 10 | MR. VAN DALSEM: THEY COULD MAKE AN |
| 11:26:18 | 11 | INTERIM AWARD. USING MY $100 EXAMPLE -- I'M NOT |
| 11:26:22 | 12 | SUGGESTING WHAT THE CONTINGENCY FEE IS, BUT IN A |
| 11:26:25 | 13 | TYPICAL CONTINGENCY CASE, LET'S SAY IT'S A THIRD, |
| 11:26:28 | 14 | WHAT THE ARBITRATORS MIGHT DO UNDER THE |
| 11:26:30 | 15 | CIRCUMSTANCES IS SAY, TAKE 33 CENTS, LET'S PUT THAT |
| 11:26:34 | 16 | INTO A SEQUESTERED ACCOUNT, AND TAKE THE OTHER 66 |
| 11:26:38 | 17 | OR 67 CENTS AND GIVE IT TO THE CLIENTS WHO OWN |
| 11:26:42 | 18 | THOSE FUNDS AND OVER WHICH THE FORMER LAW FIRM HAS |
| 11:26:42 | 19 | NO CLAIM. |
| 11:26:43 | 20 | SO THAT'S TYPICALLY WHAT WOULD HAPPEN |
| 11:26:44 | 21 | UNDER THESE CIRCUMSTANCES. |
| 11:26:45 | 22 | THE COURT: THAT COULD HAPPEN. |
| 11:26:46 | 23 | BUT YOU COULD AVOID ALL THAT BY AGREEING |
| 11:26:49 | 24 | TO THAT BEFORE IT GOES TO THE ARBITRATORS. IT |
| 11:26:52 | 25 | PRESUMES THAT THE ARBITRATORS WILL COME TO THAT |

DETERMINATION.

WHAT WOULD BE THE EFFECT IF I -- IF THERE
WAS A PROPOSED COMPLAINT AND INTERVENTION THAT WAS
SUBMITTED TO THE COURT, WHAT WOULD BE THE EFFECT OF
THE COURT ORDERING FACEBOOK TO FILE THAT COMPLAINT
AND INTERPLEADING THE FUNDS INTO THE COURT?

MR. VAN DALSEM:  THAT IS A SOLUTION THAT
IS VIABLE.  IT IS -- IT IS SUBJECT TO A COUPLE OF
POTENTIAL PROBLEMS.

NUMBER ONE, AS I THINK MR. BARRETT
POINTED OUT, YOU WOULD HAVE DUAL PROCEEDINGS, OR
MR. CHATTERJEE ACTUALLY POINTED OUT, YOU WOULD HAVE
DUAL PROCEEDINGS, NUMBER ONE, HERE AND IN THE
ARBITRATION IN NEW YORK.

NUMBER TWO, I HAVE SOME QUESTION UNDER
THE CARROLL CASE AS TO WHETHER THIS, THIS COURT
SHOULD REALLY BE DOING THAT IN LIGHT OF ITS MANDATE
THAT THE DISPUTE BETWEEN THE LAWYERS AND THEIR
FORMER CLIENTS SHOULD BE ADJUDICATED IN AN
APPROPRIATE NEW PROCEEDING.

SO IT CERTAINLY WOULD BE -- IT WOULD
CERTAINLY PROTECT QUINN, EMANUEL'S INTERESTS AND WE
WOULD CERTAINLY PREFER THAT RATHER THAN TO HAVE ALL
THE FUNDS TURNED OVER TO THE CONNECTU PARTIES.

THE COURT:  I'LL TELL YOU THE OTHER THING

57

I WAS CONSIDERING, AND I RAISED IT WITH THE MASTER THIS MORNING, IS WHY WOULDN'T IT MAKE SENSE, BECAUSE IF I AM TO ORDER THE INTERPLEADER, FIRST THE MONEY WOULD HAVE TO BE PAYABLE TO THE STAKEHOLDER, THAT IS FACEBOOK, AND THEN FACEBOOK WOULD HAVE TO INTERPLEAD IT INTO COURT SO THAT I DON'T KNOW THAT I CAN -- OR IT WOULD HAVE TO BE MADE PAYABLE TO CONNECTU AND CONNECTU WOULD INTERPLEAD TO THE COURT.  I'M NOT SURE HOW IT WOULD WORK.

BUT THE QUESTION I RAISED WITH THE MASTER IS WHETHER OR NOT IT WOULD BE FEASIBLE OR ADVISABLE FOR THE COURT TO HAVE THE MASTER INTERPLEAD THE FUNDS INTO COURT.

THEREFORE, THEY WOULD NEVER LEAVE THE MASTER'S HANDS IN -- PAYABLE TO A PARTY TO THIS LITIGATION, OR TO THE LAWYERS, OR PAYABLE JOINTLY TO THE PARTIES OR TO A LAWYER.

AND IT WOULD THEN BE PLACED IN THE REGISTRY OF THE COURT.

THE ONLY PROBLEM WITH THIS WHOLE INTERVENTION, OR INTERPLEADER NOTION IS THAT IT PUTS THE CLERK OF COURT IN A POSITION OF HOLDING ON TO FUNDS, AND ESSENTIALLY SHARES, BECAUSE I PRESUME THE LIEN REACHES BOTH, AND IT'S NOT QUITE THE KIND

11:29:31 1   OF THING WE DO VERY WELL AS A COURT, AND SO I AM

11:29:36 2   CONCERNED ABOUT THAT.

11:29:36 3            MR. VAN DALSEM:  YOUR HONOR, AND THAT'S

11:29:38 4   ONE OF THE REASONS WHY I THINK OUR SUGGESTED

11:29:40 5   APPROACH IS PREFERABLE.

11:29:41 6            THE CONNECTU PARTIES, OR THE CONNECTU

11:29:45 7   FOUNDERS, DO NOT DISPUTE THAT SOME PORTION OF THE

11:29:47 8   SETTLEMENT CONSIDERATION SHOULD BE SET ASIDE.

11:29:51 9            THAT'S -- I THINK THEIR PAPERS WERE

11:29:52 10  PRETTY CLEAR ON THAT POINT.

11:29:57 11           SO IT IS NOT THE --

11:29:57 12           THE COURT:  LET ME SEE IF I GOT THAT

11:29:58 13  RIGHT.

11:29:59 14           SO CONNECTU AND ITS FOUNDERS TAKE THE

11:30:00 15  POSITION THAT THE COURT SHOULDN'T DO ANYTHING, BUT

11:30:03 16  IF IT DOES ANYTHING, IT SHOULD ORDER THAT FUNDS AND

11:30:06 17  STOCKS BE MADE PAYABLE TO BOTH?

11:30:08 18           IS THAT THE CONNECTU POSITION?

11:30:16 19           MR. VAN DALSEM:  THAT'S NOT WHAT I WAS

11:30:18 20  SUGGESTING IS THEIR POSITION.

11:30:19 21           THE COURT:  OH.  WELL, I THOUGHT -- HOW

11:30:22 22  DO I DO IT OTHERWISE?

11:30:23 23           MR. VAN DALSEM:  WELL, IT'S NOT -- WITH

11:30:25 24  ALL DUE RESPECT, THE CASES ARE PRETTY CLEAR THAT

11:30:28 25  IT'S NOT FOR THIS COURT TO DETERMINE, OKAY, OF THAT

| | |
|---|---|
| 11:30:31 | 1 |
| 11:30:34 | 2 |

$100, SO MUCH GOES INTO TRUST AND SO MUCH GETS
RELEASED.

THE COURT:  NO, I'M SAYING A JOINT.

I THOUGHT THEIR POSITION -- YOU WERE
CITING TO ME THEIR POSITION WAS I SHOULD DO
NOTHING, BUT IF I DO IT, I SHOULD MAKE IT JOINTLY
IN BOTH NAMES.

THAT'S THE QUINN, EMANUEL POSITION, AND
THAT'S THE CONNECTU POSITION, AND FACEBOOK IS
PERFECTLY PROTECTED BECAUSE BOTH PARTIES WHO WOULD
BE IN RECEIPT OF THE CONSIDERATION AGREE THAT
THAT'S THE WAY TO HANDLE IT.

MR. VAN DALSEM:  I AGREE THAT THE COURT
SHOULD DO NOTHING, BUT IT DEPENDS ON WHAT YOU
DEFINE "NOTHING" AS.

WHAT I WOULD DEFINE "NOTHING" AS IS
ALLOWING THE SETTLEMENT CONSIDERATION TO TRANSFER,
AS IT WOULD HAVE TRANSFERRED HAD WE NEVER BEEN
BEFORE YOUR HONOR WITH AN OBJECTION TO THE
SETTLEMENT AND EVERYTHING THAT HAS PROCEEDED OVER
THE PAST SIX MONTHS.  THAT IS DOING NOTHING IN MY
VIEW.

AND IN THOSE CIRCUMSTANCES, CONNECTU
WOULD HAVE --

THE COURT:  I CAN'T DO THAT ANYMORE

BECAUSE THE CONSIDERATION IS NO LONGER IN THE HANDS

OF FACEBOOK.

MR. VAN DALSEM:  THAT'S CORRECT.  IT

COULD BE --

THE COURT:  SO I CAN'T DO THAT.

MR. VAN DALSEM:  IT COULD BE RETURNED TO

FACEBOOK.

THE COURT:  OH, IN OTHER WORDS, YOU WOULD

WANT ME TO HAND THE CONSIDERATION BACK TO FACEBOOK

WITH DIRECTIONS?

MR. VAN DALSEM:  OR YOU SIMPLY HAVE THE

SPECIAL MASTER DO WHAT FACEBOOK WOULD HAVE

OTHERWISE DONE HAD IT NOT BEEN ORDERED TO TURN THE

CONSIDERATION --

THE COURT:  SEE, FACEBOOK RUNS THE RISK,

IF ITS CONSIDERATION COMES BACK TO IT, THAT AN

ARGUMENT COULD BE MADE THAT IT'S NO LONGER IN

KEEPING WITH MY JUDGMENT, IT'S PUT ITSELF IN A

POSITION WHERE SOMETHING HAS BEEN RETURNED TO IT,

THAT MIGHT LOOK LIKE A RECISSION OF SOME SORT.

SO I'M LOOKING FOR WHAT YOUR POSITION IS

GIVEN THE FACT THAT THE CONSIDERATION IS IN THE

HANDS OF THE MASTER.

MR. VAN DALSEM:  WHAT QUINN, EMANUEL

SUGGESTS BE DONE IS THAT AN ORDER ISSUE DIRECTING

THE MASTER TO ISSUE A CHECK JOINTLY PAYABLE TO
QUINN, EMANUEL AND THE FORMER CLIENTS AND TO TURN
IT OVER TO EITHER OF US.

THE COURT:  WELL, THAT'S WHAT I HEARD YOU
TO SAY, AND THAT'S WHY I WAS TRYING TO MAKE SURE
THAT -- I THOUGHT YOUR POSITION WAS THAT CONNECTU
AND ITS FOUNDERS AGREE WITH THAT.

MR. VAN DALSEM:  THEIR PAPERS MAKE CLEAR
THAT THEY AGREE THAT SOME PORTION OF THE SETTLEMENT
PROCEEDS SHOULD BE SET ASIDE TO SECURE THE FEE
CLAIM.

I DON'T THINK THEY'VE AGREED TO A
PARTICULAR PROCEDURE TO ACCOMPLISH THAT.

THE COURT:  SO THEY DON'T AGREE?

I MEAN, EITHER YOU DO OR YOU DON'T.  DO
YOU AGREE?

MR. BARRETT:  YOUR HONOR, WE DON'T AGREE,
CERTAINLY, THAT THE WHOLE AMOUNT OF THE SETTLEMENT
PROCEEDS SHOULD BE SUBJECT TO THAT PROCEDURE.

THE COURT:  WELL, COULD -- DO THE TWO OF
YOU AGREE ON AN AMOUNT?

MR. BARRETT:  I DON'T THINK WE DO, YOUR
HONOR.

THE COURT:  SO THAT LEAVES ME IN A
POSITION OF NOT HAVING AN AGREEMENT, NOT HAVING AN

```
 1   AMOUNT, HAVING MY MASTER HOLD ON TO FUNDS, AND IT

 2   DOES SEEM TO ME THAT IF I CAN TAKE NO ACTION THAT

 3   WOULD BE IN THE FORM OF AN ADJUDICATION OF THE

 4   PROPER PERCENTAGE, IT SOUNDS TO ME LIKE MY ORDERING

 5   THE MASTER TO EITHER HOLD IT OR TO INTERPLEAD IT

 6   ARE THE TWO OPTIONS THAT ARE VIABLE.

 7           MR. VAN DALSEM:  THERE'S A THIRD OPTION.

 8           THE COURT:  WHAT'S THAT?

 9           MR. VAN DALSEM:  THE THIRD OPTION IS THE

10   REASON WE HAVE NOT BEFORE THE TRIPLE A IN NEW YORK

11   TO SEEK SOME RELIEF IS THAT WE'VE HAD NO PANEL

12   BEFORE WHOM TO GO BEFORE.

13           AND THE TRIPLE A RULES REQUIRE THAT TO

14   SEEK INTERIM RELIEF, YOU HAVE TO HAVE A PANEL

15   CONSTITUTED OR THE PARTIES HAVE TO AGREE.

16           THAT PANEL HAS EITHER BEEN CONSTITUTED OR

17   IS ABOUT TO BE CONSTITUTED.

18           WE COULD SIMPLY LEAVE THE SETTLEMENT

19   CONSIDERATION FROM FACEBOOK WITH THE SPECIAL MASTER

20   FOR SOME PERIOD OF TIME, 30 OR 60 DAYS, AND IN THE

21   INTERIM, QUINN, EMANUEL WOULD GO TO THE ARBITER

22   PANEL AND ASK FOR AN ORDER DIRECTING HOW MUCH OF

23   THAT SHOULD BE SEQUESTERED.

24           THE COURT:  YOU MAY GET THAT, YOU MAY

25   NOT.
```

IT MEANS THAT YOU'RE ASKING ME TO STAY

THE IMPLEMENTATION OF THE JUDGMENT PENDING

ARBITRATION PROCEEDINGS.

MR. BARRETT:  YEAH, YOUR HONOR.  I WANT

TO BE VERY CLEAR ON THAT.

CONNECTU AND THE FOUNDERS WOULD

STRENUOUSLY OBJECT TO CONSIDERATION FLOWING OUT OF

THE SPECIAL MASTER'S HANDS TO FACEBOOK AND NOT TO

US.

IF IT'S GOING TO HAPPEN, IT SHOULD BE, IT

SHOULD BE MUTUAL.  IT SHOULD BE IN BOTH DIRECTIONS.

I THINK THE REASON THAT THIS PROBLEM

AROSE -- COUNSEL REFERRED TO ASKING FOR AN ORDER

FROM THE TRIPLE A PANEL.

THAT CERTAINLY WOULD BE POSSIBLE, BUT I

DON'T THINK WE KNOW WHEN THAT'S GOING TO HAPPEN.

THE FACT IS THAT THEY COULD HAVE GONE TO

COURT IN NEW YORK.  NEW YORK COURTS HAVE THE

AUTHORITY TO ISSUE INTERIM ORDERS IN AID OF

ARBITRATION.  THEY HAD SIX MONTHS.

THEY WERE IN FRONT OF A JUDGE.  JUDGE

LOWE, I'M SURE, WOULD HAVE CONSIDERED THIS HAD IT

BEEN RAISED.  THEY DIDN'T DO THAT.

SO WHEN COUNSEL TALKS ABOUT THE -- WHEN

MR. VAN DALSEM TALKS ABOUT THE NORMAL COURSE, THE

NORMAL COURSE IS THAT THE, THAT THE LAWYER SHOULD,
SHOULD NOT HAVE PUT -- SHOULD NOT BE PUTTING THIS
COURT IN THIS POSITION.

THE CARROLL CASE TELLS US THAT.

AND HAVING NOT DONE IT WHEN THEY HAD THE
OPPORTUNITY TO DO IT, I THINK IF YOU'RE GOING TO
RELEASE CONSIDERATION TO FACEBOOK, YOU SHOULD
RELEASE THE CONSIDERATION ON THE FOUNDERS' SIDE AND
THE PROCEEDINGS CAN GO FORWARD IN NEW YORK IN
WHATEVER FORUM IS, IS APPROPRIATE.

IN ADDITION, AGAIN, I COME BACK TO YOUR
HONOR EXPRESSING SOME CONCERN ABOUT, WOULD FACEBOOK
BE PROTECTED IN THIS PROCESS?

WE SUGGESTED IN OUR PAPERS THAT THE COURT
COULD ISSUE AN ORDER THAT SAYS THAT FACEBOOK,
HAVING, HAVING PROVIDED THE CONSIDERATION TO THE
SPECIAL MASTER, IS ABSOLVED OF THE LIEN.

I DON'T KNOW IF THAT WOULD BE EFFECTIVE
UNDER THE CARROLL CASE OR NOT, BUT CERTAINLY THEY
HAVE DONE WHAT YOU ORDERED THEM TO DO.

OR, SECONDLY, AS I INDICATED, THIS
REALLY -- TO THE EXTENT FACEBOOK HAS ANY SUCH
PROBLEM, IT IS A PROBLEM THAT ARISES FROM THEIR
DRAFTING OF THE TERM SHEET.

THE TERM SHEET -- WHATEVER MAY BE THE

11:36:38 1    NORMAL COURSE, IF A PARTY IN FACEBOOK'S POSITION

11:36:41 2    WANTS TO PROTECT ITSELF, THEY CAN PUT IN THE

11:36:44 3    SETTLEMENT AGREEMENT, WE'RE GOING TO MAKE THE CHECK

11:36:47 4    PAYABLE TO PARTY AND LAWYER.

11:36:48 5            THE COURT:  BUT THAT'S MY POINT.  I DON'T

11:36:50 6    KNOW WHY WE'RE TALKING ABOUT FACEBOOK ANY LONGER.

11:36:53 7    IT'S MY PROBLEM.

11:36:54 8            THE MONEY THAT YOU'RE EXERCISING A LIEN

11:36:56 9    OVER IS NOT IN THE HANDS -- IT'S NO LONGER IN THE

11:36:59 10   HANDS OF FACEBOOK.  IT'S IN THE HANDS OF THE COURT.

11:37:02 11           AND SO WHAT I'M TRYING TO DO IS TO FIGURE

11:37:04 12   OUT A WAY TO IMPLEMENT THE JUDGMENT WITH SOMEONE

11:37:11 13   STANDING BEFORE IT ARGUING THAT, I HAVE A

11:37:14 14   CONTRACTUAL LIEN THAT I'M ASSERTING AGAINST THE

11:37:17 15   PERSON WHO WAS RECEIVING THE MONEY THAT IS BEING

11:37:20 16   HELD IN COURT.

11:37:22 17           AND FACEBOOK IS CONCERNED TO MAKE SURE,

11:37:28 18   LEGITIMATELY, THAT NO ONE COMES BACK TO IT AND

11:37:34 19   ASSERTS THAT, YOU DIDN'T DO THE RIGHT THING IN THE

11:37:36 20   FACE OF THE LIEN THAT IS BEING ASSERTED.

11:37:37 21           AND I CAN'T -- I'M NOT GOING TO MAKE AN

11:37:40 22   ADJUDICATION ABOUT THAT BECAUSE THAT ISSUE IS NOT

11:37:42 23   BEFORE ME.

11:37:43 24           WHAT I'M GOING TO DO IS TO TRY AND FIGURE

11:37:46 25   OUT HOW TO HANDLE THE PROBLEM THAT IS BEING

PRESENTED BY THIS LIEN THAT IS BEING ASSERTED
AGAINST FUNDS BEING HELD BY THE COURT THAT WOULD BE
RELEASED IN THE IMPLEMENTATION OF THE JUDGMENT.

AND WITH AN OBJECTION BY CONNECTU TO THAT
BEING RELEASED IN ANY FORM, LET ALONE IN A JOINT
FORM, IT SEEMS TO ME THAT THE QUESTION I ASKED
ABOUT ORDERING THE MASTER TO INTERPLEAD THE FUNDS
WOULD THEN -- ALTHOUGH IT'S A DUAL ADJUDICATION AND
I UNDERSTAND THAT CONCERN, THE POINT OF THE
COMPLAINT IN INTERPLEADER THAT I WOULD ORDER THE
MASTER TO FILE IS TO SAY, ALL RIGHT, HERE'S THE
MONEY, WAITING FOR THE STAKEHOLDERS TO FIGURE OUT
AMONG THEMSELVES -- I MEAN THE CLAIMANTS TO FIGURE
OUT, IN SOME ADJUDICATION -- IT DOESN'T HAVE TO BE
IN THE INTERPLEADER ACTION ITSELF, IT COULD HAPPEN
OUTSIDE OF THAT -- WHERE THOSE FUNDS GO AND WOULD
COME TO THE COURT IN DUE COURSE FOR THAT.

I WOULD NOT HAVE PUT EITHER OF YOU IN ANY
POSITION THAT WOULD BE OF DISADVANTAGE UNDER THOSE
CIRCUMSTANCES BECAUSE OF NECESSITY, IT SOUNDS LIKE,
BOTH OF YOU RECOGNIZE THAT YOU HAVE THE OBLIGATION
TO LITIGATE THAT ISSUE .

IF YOU ARE SUCCESSFUL IN ARBITRATION IN
COMING UP WITH SOME INTERIM RELIEF, THAT'S
SOMETHING THAT COULD BE PRESENTED TO THE

67

INTERPLEADER JUDGE -- IT MIGHT BE ME, IT MIGHT BE
SOMEONE ELSE -- BECAUSE THEN THERE IS NO CONFLICT
BETWEEN THE CLAIMANTS AND THE PART THAT IS IN
DISPUTE WOULD REMAIN FOR LATER ADJUDICATION.

     I WANT TO GIVE THIS MORE THOUGHT.  I JUST
WANTED TO AIR IT SO THAT I COULD SEE WHAT YOUR
RESPECTIVE POSITIONS WOULD BE.

     I'M RUNNING OUT OF TIME HERE.  ARE THERE
ANY FINAL --

          MR. VAN DALSEM:  COULD I SPEAK VERY
BRIEFLY JUST IN RESPONSE TO MR. BARRETT'S COMMENT?

          THE COURT:  SURE.

          MR. VAN DALSEM:  WE DIDN'T GO RUN INTO
COURT IN NEW YORK ON A TRO, AND IT WOULD HAVE BEEN
INAPPROPRIATE TO DO SO, BECAUSE ANY JUDGE WOULD
HAVE LOOKED AND SAID, WHAT'S THE IRREPARABLE HARM?
YOU KNOW, THE SPECIAL MASTER'S REPORT IS ACTUALLY
SUGGESTING THAT IT GO INTO A TRUST AND WE DON'T
KNOW WHAT JUDGE WARE IS GOING TO DO.  YOU SHOULDN'T
HAVE -- COME BACK TO US IF THIS IS A REAL PROBLEM.

          WE WOULD HAVE BEEN OUT OF A TRO
PROCEEDING IN FIVE MINUTES.

          I THINK, GIVEN THE UNIQUE CIRCUMSTANCES
THAT PRESENT THEMSELVES TO THE COURT, THE
INTERPLEADER ACTION IS A GOOD SOLUTION AND ONE THAT

68

|         |    |                                                              |
|---------|----|--------------------------------------------------------------|
| 11:40:11 | 1  | WOULD CERTAINLY PROTECT QUINN, EMANUEL'S INTEREST            |
| 11:40:14 | 2  | AND THE CONNECTU PARTIES' INTEREST AT THE SAME              |
| 11:40:18 | 3  | TIME, AND WE THINK THAT IT'S A WORKABLE SOLUTION.           |
| 11:40:21 | 4  | IF WE CAN THEN EITHER CONSENSUALLY WORK                     |
| 11:40:23 | 5  | SOMETHING OUT OR WE OBTAIN AN ORDER FROM THE                |
| 11:40:29 | 6  | ARBITER PANEL AS TO WHAT TO DO WITH THOSE FUNDS,            |
| 11:40:30 | 7  | THEN WE CAN DEAL --                                          |
| 11:40:31 | 8  | THE COURT:  WELL, I'M JUST THINKING ABOUT                   |
| 11:40:32 | 9  | IT.  OF COURSE, CONNECTU WOULD ARGUE THAT IT IS --          |
| 11:40:34 | 10 | IT'S NOT AN IMPLEMENTATION OF THE AGREEMENT BECAUSE         |
| 11:40:37 | 11 | THE AGREEMENT PROVIDES THAT IT WOULD RECEIVE, NOT           |
| 11:40:41 | 12 | IT WOULD PLACE INTO COURT.                                   |
| 11:40:44 | 13 | MR. BARRETT:  THAT'S EXACTLY RIGHT, YOUR                    |
| 11:40:46 | 14 | HONOR.  YOU'RE TYING UP ALL OF THE MONEY FOR A FEE          |
| 11:40:48 | 15 | THAT IS ONLY A VERY LIMITED PART OF IT.                      |
| 11:40:52 | 16 | AND PARTICULARLY IF FACEBOOK IS GETTING                     |
| 11:40:54 | 17 | THE CONNECTU STOCK, WE DON'T THINK THAT THAT'S             |
| 11:40:58 | 18 | FAIR.                                                        |
| 11:40:58 | 19 | AND, IN FACT, THE QUINN RETAINER SAYS                       |
| 11:41:02 | 20 | THAT THE LIEN SHALL BE FOR THE PURPOSE OF SECURING          |
| 11:41:05 | 21 | OUR ATTORNEYS' FEES, AND WHAT THEY'RE -- WHAT THE           |
| 11:41:07 | 22 | NET EFFECT IS, IS THAT THEY'RE -- IS THAT THEY'RE           |
| 11:41:11 | 23 | SEQUESTERING 100 PERCENT OF THE JUDGMENT, OR THE            |
| 11:41:14 | 24 | SETTLEMENT, TO PROTECT ONLY A VERY SMALL PORTION,           |
| 11:41:17 | 25 | AND THAT'S NOT EVEN CONSISTENT WITH THEIR, WITH             |

THEIR OWN CONTRACT.

SO IT'S REALLY GIVING THEM LEVERAGE THAT
SHOULDN'T EXIST, EVEN UNDER THEIR OWN CONTRACT, TO,
YOU KNOW, FORCE US TO NEGOTIATE IF WE WANT TO GET
THAT, THAT SETTLEMENT PROCEEDS OUT.

AND THAT'S WHY I SAY IT WOULDN'T HAVE
BEEN A TRO PROCEEDING IN NEW YORK.  IT WOULD HAVE
BEEN A PROCEEDING TO SAY HOW MUCH IS OUR LIEN
WORTH, BECAUSE THIS COURT OR THIS ARBITRATION PANEL
IS THE, IS THE PROPER JURISDICTION TO DECIDE THAT,
AT LEAST ON A TEMPORARY BASIS, AND THAT IS, I
THINK, SOMETHING THAT THEY COULD HAVE DONE.

MR. VAN DALSEM:  WHICH, YOUR HONOR,
BRINGS ME FULL CIRCLE BACK TO OUR SUGGESTION, WHICH
IS WE DON'T SEEK TO SEQUESTER ALL THE MONEY.  WE
SEEK TO SEQUESTER THAT WHICH IS NECESSARY TO SECURE
OUR CLAIM.

THE COURT:  HOW MUCH IS THAT?

MR. VAN DALSEM:  I DON'T WANT TO SAY A
NUMBER ON THE RECORD, PLUS THERE ARE SOME
COMPLICATIONS GIVEN THE VARIOUS TYPES OF
CONSIDERATION.

BUT THE POINT IS THAT IF THE PAYMENT
INSTRUMENTS ARE ISSUED JOINTLY, THAT EITHER THEN
RESULTS IN A NEGOTIATION AND A RESOLUTION, OR AN

ADJUDICATION BY THE PROPER FORUM, WHICH IS THE
INDEPENDENT ACTION.

        THE COURT:  I UNDERSTAND YOUR POSITION.

        MR. CHATTERJEE, ANY FINAL WORDS BEFORE I
CLOSE THIS?

        MR. CHATTERJEE:  YES, YOUR HONOR, JUST A
FEW FAIRLY BRIEF REMARKS.

        YOUR HONOR ASKED SOME QUESTIONS AND I
BELIEVE MR. BARRETT DISCUSSED SOME ISSUES
ASSOCIATED WITH, NUMBER ONE, JURISDICTION; AND,
NUMBER TWO, THE TRANSFER OF OWNERSHIP OF CONNECTU
TO FACEBOOK.

        WITHOUT GOING INTO THE DETAIL BECAUSE I
KNOW TIME IS TIGHT, THERE ARE TWO CASES THAT I'D
LIKE YOUR HONOR TO TAKE A LOOK AT.  THEY BOTH ARE
BANKRUPTCY CASES.

        IN ONE INSTANCE THE BANKRUPTCY
PROCEEDINGS INVOLVED THE TRANSFER OF, ESSENTIALLY,
THE ASSETS OF A COMPANY AND AN EFFORT TO STOP THAT
AS PART OF THE APPEAL, AND THE NINTH CIRCUIT RULED
ON THAT SPECIFIC ISSUE, WHICH IS QUITE ANALOGOUS TO
THE ONE, AND IN THE WAY -- IT RULED ON IT IN THE
WAY THAT FACEBOOK IS ADVOCATING.

        THAT CASE IS, IS CALLED IN RE: RAINS.
IT'S A 2005 NINTH CIRCUIT CASE, 428 F.3D 893.

71

AND THEN THERE'S AN EARLIER CASE THAT
ALSO HAS MANY RELATED ISSUES THAT IS WORTH TAKING A
LOOK AT, AND IT INCLUDES THE STATEMENT, "A PARTY
WHO CHOSES TO APPEAL BUT FAILS TO OBTAIN A STAY OR
INJUNCTION PENDING APPEAL RISKS LOSING ITS ABILITY
TO REALIZE THE BENEFIT OF A SUCCESSFUL APPEAL."

I THINK THAT'S SELF-EXPLANATORY AS TO WHY
IT COULD BE RELEVANT HERE.  THAT IS GEMMILL VERSUS
ROBISON, 557 F.2D 179.  THAT'S A NINTH CIRCUIT CASE
FROM 1977.

THE FINAL REMARK, YOUR HONOR, IT WAS VERY
INTERESTING TO HEAR MR. BARRETT'S COMMENTS ABOUT
WHAT QUINN, EMANUEL COULD HAVE OR SHOULD HAVE DONE
IN NEW YORK, IN THE NEW YORK SUPREME COURT
ASSOCIATED WITH THIS JUDGMENT, BECAUSE YOUR HONOR
ASKED AN IMPORTANT QUESTION OF MR. BARRETT WITH
RESPECT TO THE ORDER TO SHOW CAUSE.

THE ORDER TO SHOW CAUSE WAS ISSUED
SEPTEMBER 19TH.  THIS HEARING IS ROUGHLY SIX WEEKS
LATER.

NOW, THEY CAN COME IN AND SAY QUINN,
EMANUEL DID NOT DO THESE THINGS AND THEY HAD ALL
THE TIME IN THE WORLD TO DO IT.

BUT THE ONE THING THAT DIDN'T HAPPEN
BETWEEN SEPTEMBER 19TH AND TODAY IS, DESPITE THE

72

11:44:39 1    VOLUMES, THE DOZENS OF PAGES OF PLEADINGS THAT HAVE

11:44:43 2    BEEN ENTERED IN THIS CASE SINCE WE FILED THE MOTION

11:44:45 3    TO ENFORCE, THEY DIDN'T FILE A MOTION FOR A WRIT.

11:44:48 4         THEY DID NOT ASK THE NINTH CIRCUIT TO

11:44:50 5    INTERVENE AND STOP THIS PROCEDURE FROM GOING

11:44:53 6    FORWARD, AND I THINK YOUR HONOR WAS ABSOLUTELY

11:44:55 7    RIGHT TO ASK THAT QUESTION.

11:44:57 8         AT THIS POINT, EIGHT MONTHS AFTER WE

11:44:59 9    SETTLED THE CASE, WE'RE ENTITLED TO THE VALUE WE

11:45:02 10   BARGAINED FOR, AND WE ASK YOUR HONOR TO DO EXACTLY

11:45:05 11   WHAT YOU SAID IN THE ORDER TO SHOW CAUSE, WITH THE

11:45:07 12   ONE EXCEPTION OF FOLLOWING WHAT I BELIEVE YOUR

11:45:10 13   HONOR'S GOING TO DO WITH RESPECT TO THE

11:45:11 14   CONSIDERATION FACEBOOK PAID IN, AND THAT IS TO HOLD

11:45:15 15   IT IN SOME WAY IN ABEYANCE UNTIL THE QUINN,

11:45:19 16   EMANUEL/CONNECTU FOUNDERS' DISPUTE IS RESOLVED TO

11:45:22 17   FIGURE OUT HOW THOSE FUNDS SHOULD BE ALLOCATED.

11:45:26 18        THANK YOU, YOUR HONOR.

11:45:28 19        MR. VAN DALSEM:  YOUR HONOR,

11:45:28 20   MR. GARTEISER POINTED OUT SOMETHING I FORGOT TO

11:45:33 21   MENTION, JUST VERY BRIEFLY.

11:45:34 22        THE COURT:  SURE.

11:45:34 23        MR. VAN DALSEM:  IN OUR BRIEF ON PAGE 7,

11:45:37 24   THERE'S A CITATION TO A CASE CALLED BROWN VERSUS

11:45:37 25   SUPERIOR COURT.  IT'S A 2004 CASE.

| | |
|---|---|
| 11:45:40 1 | AND THE QUOTE, WHICH IS IN THE BRIEF, |
| 11:45:41 2 | SAYS, QUOTE, "IT MIGHT WELL CONSTITUTE A DENIAL OF |
| 11:45:45 3 | SUBSTANTIAL JUSTICE AND, THEREFORE, AN ABUSE OF |
| 11:45:48 4 | DISCRETION FOR THE TRIAL COURT TO DIRECT PAYMENT OF |
| 11:45:50 5 | THE JUDGMENT PROCEEDINGS TO THE FORMER CLIENT |
| 11:45:53 6 | WITHOUT GIVING THE FORMER ATTORNEY A FAIR |
| 11:45:55 7 | OPPORTUNITY TO FIRST LITIGATE THE VALIDITY OF HIS |
| 11:45:57 8 | LIEN CLAIM IN A SEPARATE ACTION." |
| 11:45:59 9 | SO THERE IS, THERE IS AUTHORITY DIRECTLY |
| 11:46:01 10 | ON POINT UNDER CALIFORNIA LAW FOR WHAT WE ARE |
| 11:46:04 11 | ASKING FOR, WHICH IS PROTECTION FROM THE TRIAL |
| 11:46:06 12 | COURT, NOTWITHSTANDING THE CARROLL COURT'S |
| 11:46:09 13 | ADMONITION THAT THIS SHOULD ALL BE LITIGATED IN A |
| 11:46:12 14 | SEPARATE FORUM. |
| 11:46:13 15 | THE COURT: VERY WELL. I CONTINUE TO |
| 11:46:16 16 | APPRECIATE THE DIFFICULTY OF THE LEGAL ISSUES THAT |
| 11:46:25 17 | THIS CASE PRESENTS AND THE -- AND I ALSO APPRECIATE |
| 11:46:31 18 | THE ADVOCACY THAT YOU'VE ALL PRESENTED TO ME. |
| 11:46:35 19 | I WANT TO THANK, AGAIN, ON THIS RECORD, |
| 11:46:38 20 | MR. FISHER, THE MASTER, WHO IS PRESENT HERE. |
| 11:46:44 21 | HE HAS PROVIDED THE COURT WITH AN |
| 11:46:49 22 | OPPORTUNITY TO IMPLEMENT THE JUDGMENT BY |
| 11:46:53 23 | SAFEGUARDING THE ASSETS. |
| 11:46:57 24 | IN TODAY'S VOLATILE ECONOMIC CLIMATE, I'M |
| 11:47:00 25 | HAPPY THAT THAT'S NOT AN ISSUE THAT IS BEFORE THE |

COURT AS TO WHETHER OR NOT THE PROCEEDS PUT IN HIS
HANDS HAVE BEEN ADEQUATELY SAFEGUARDED.

I KNEW, IN APPOINTING HIM, THAT I HAD A
PERSON WHO WOULD BE MINDFUL OF THE SECURITY OF
THOSE, OF THOSE PROCEEDS, AND SO I WANT TO THANK
HIM ON THIS RECORD FOR HIS CONTINUED SERVICE.

AND SO I WILL -- MY INTENT IS TO ACT AS
QUICKLY AS I CAN.

WHAT I WANTED TO SIGNAL TO THE PARTIES IS
MY SENSITIVITY TO THE ARGUMENT THAT I AM ACTING IN
EXCESS OF MY JURISDICTION.

I DON'T BELIEVE SO, AND FOR THAT REASON I
WOULD INTEND TO GIVE A VERY SHORT PERIOD OF TIME
BEFORE WHATEVER IMPLEMENTATION I ORDER WOULD TAKE
PLACE, AND AT THE SAME TIME, SUFFICIENT TIME, IN MY
VIEW, TO ALLOW THE PARTIES TO MAKE THE CASE BEFORE
THE CIRCUIT THAT I AM ACTING IN EXCESS OF MY
JURISDICTION, TO SEEK SOME DIRECTION FROM THAT
COURT TO THIS COURT AS TO WHETHER IT SHOULD STAY
ITS HAND SO AS TO ALLOW THE NINTH CIRCUIT TO DEAL
WITH THIS IN A MORE COMPLETE FASHION.

SO I'LL PUT PEN TO PAPER HERE IN SHORT
ORDER, AND MY STAFF HAS DONE A VERY GOOD JOB UP TO
NOW OF ALERTING YOU TO WHEN THE ORDER HAS ISSUED SO
THAT YOU CAN LOOK ON-LINE AT IT AND TAKE WHATEVER

1    APPROPRIATE ACTION YOU WANT TO TAKE WITH RESPECT TO

2    IT.

3              THANK YOU ALL.

4              MR. BARRETT:  THANK YOU, YOUR HONOR.

5              MR. CHATTERJEE:  THANK YOU, YOUR HONOR.

6              (WHEREUPON, THE PROCEEDINGS IN THIS

7    MATTER WERE CONCLUDED.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25