FILED

UNITED STATES COURT OF APPEALS

JUL 01 2009

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| THE FACEBOOK, INC.; et al., | Nos. 08-16745, 08-16849, 08-16873 |
| Plaintiffs - Appellees - Cross-Appellants, | |
| CNET NETWORKS, INC., | D.C. No. 5:07-cv-01389-JW |
| Intervenor, | Northern District of California, San Jose |
| v. | |
| CONNECTU, INC., f.k.a. ConnectU, LLC, | ORDER |
| Defendant - Appellant - Cross-Appellee, | |
| CAMERON WINKLEVOSS; et al., | |
| Defendants - Appellants | |
| and | |
| PACIFIC NORTHWEST SOFTWARE, INC.; et al., | |
| Defendants. | |

nmg/MOATT

Dockets.Justia.com

| | |
|---|---|
| THE FACEBOOK, INC.; et al.,<br><br>        Plaintiffs - Appellees - Cross-<br>        Appellants,<br><br>  v.<br><br>CONNECTU, INC., f.k.a. ConnectU,<br>LLC; et al.,<br><br>        Defendants,<br><br> and<br><br>CAMERON WINKLEVOSS; et al.,<br><br>        Defendants - Appellants -<br>        Cross-Appellees. | Nos. 09-15021, 09-15133<br><br>D.C. No. 5:07-cv-01389-JW<br>Northern District of California,<br>San Jose |

Before:  KOZINSKI, Chief Judge, PAEZ and TALLMAN, Circuit Judges.

The motion of ConnectU, Inc. to substitute new counsel in consolidated appeals Nos. 08-16745, 08-16849, 08-16873 is granted.  By this order, the court makes no determination regarding the representation of Cameron Winklevoss, Tyler Winklevoss and Divya Narendra (collectively "the Founders") by their current counsel in these consolidated and related appeals and cross-appeals.

These consolidated and related appeals and cross-appeals are remanded to the district court for the limited purpose of enabling the district court to consider

the issues raised in ConnectU, Inc.'s motion to disqualify counsel, the opposition thereto and the reply filed in support of the motion.

The Clerk shall forward to the district court ConnectU, Inc.'s motion to disqualify counsel, the Founders' response thereto and ConnectU, Inc.'s reply, received on January 20, 2009, February 13, 2009 and February 26, 2009, respectively.

Proceedings in these consolidated and related appeals are stayed pending further order of the court.

Within 60 days of the filing date of this order or within 7 days of the district court's ruling on the motion to disqualify, whichever occurs first, the parties shall file a report on the status of district court proceedings and motion for appropriate relief.

Case Nos. 08-16745, 08-16849, 08-16873

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### THE FACEBOOK, INC., et al.

**Plaintiffs-Appellees-Cross-Appellants,**

**v.**

### CONNECTU, INC. (formerly known as CONNECTU LLC), CAMERON WINKLEVOSS, TYLER WINKLEVOSS, DIVYA NARENDRA,

**Defendants-Appellants-Cross-Appellees.**

**On Appeal From The United States District Court For The Northern District of California, No. CV-07-01389-JW, The Honorable James Ware**

### APPELLANT CONNECTU, INC.'S
### MOTION TO DISQUALIFY COUNSEL

James E. Towery (BAR NO. 74058)
Alison P. Buchanan (BAR NO. 215710)
Jill E. Fox (BAR NO. 243945)
HOGE, FENTON, JONES & APPEL, INC.
Sixty South Market Street, Suite 1400
San Jose, California 95113-2396
Phone: (408) 287-9501
Fax:  (408) 287-2583
*Attorneys for Appellant ConnectU, Inc.*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 2

FACTUAL BACKGROUND .............................................................................. 3

    A.    Settlement of the Pending Actions ................................................ 3

    B.    Facebook's Motion to Enforce the Settlement Agreement ................ 5

    C.    Transfer of Consideration ............................................................ 5

    D.    ConnectU's Counsel Threatens Their Client and Refuses to Follow the Instructions of Their Client ...................................... 5

ISSUES ADDRESSED BY MOTION .............................................................. 8

    i.    The Actual Conflict Between Joint Clients ConnectU and Its Founders Requires Mandatory Disqualification of Counsel from Representing Either; ........................................ 8

    ii.    BSF, O'Shea and Finnegan Owe the Same Duties to ConnectU as to Any Former Client, and Therefore May Not Take Action Adverse to ConnectU; and ............................ 8

    iii.    ConnectU Is Entitled to Its Entire Client Files so It May Properly Evaluate the Corporation's Rights and Obligations, Including Potential Litigation. .......................... 8

ARGUMENT ................................................................................................... 8

    A.    Applicable Law ............................................................................ 8

    B.    The Actual Conflict Between Joint Clients ConnectU and the Founders Requires Mandatory Disqualification of BSF and Finnegan from Representing Both Clients ............................. 9

        i.    No Valid Waiver Exists ..................................................... 11

        ii.    Ending The Attorney-Client Relationship Does Not Cure this Conflict ........................................................... 11

    C.    BSF, O'Shea and Finnegan Owe the Same Duty of Confidentiality to ConnectU as to Any Former Client, and Therefore May Not Act Adverse to ConnectU in this Litigation ..... 13

        i.    A Lawyer's Duty to Preserve Client Confidences Is Not Altered by a Former Joint Client Relationship with Shared Confidences ........................................................ 16

        ii.    A Lawyer's Duty to Preserve Corporate Client Confidences Is Not Altered by a Change in Corporate Control ........................................................................ 17

i

    iii. A Corporation's Current Management Controls Its Confidential Information -- Not Counsel, Not Former Management.......................................................................... 18

  D. ConnectU is Entitled to Its Entire Client Files .................................. 19

RELIEF SOUGHT ................................................................................................. 20

# <u>TABLE OF AUTHORITIES</u>

## Cases

*American Airlines, Inc. v. Sheppard, Mullin, Richter & Hampton*

(2002) 96 Cal.App.4th 1017 ............................................................ 14, 19

*Brennan's, Inc. v. Brennan's Restaurants, Inc.*

590 F.2d 168 (5th Cir. 1979) ................................................ 9, 14, 16, 18

*Certain Underwriters at Lloyd's, London v. Argonaut Ins. Co.*

264 F.Supp.2d 914 (N.D.Cal.2003) ........................................................8

*City and County of San Francisco v. Cobra Solutions, Inc.*

(2006) 38 Cal.4th 839 ................................................................... 13

*City of Santa Barbara v. Superior Court*

(2004) 122 Cal.App.4th 17 .........................................................9

*Commodity Futures Trading Com'n v. Weintraub*

(1985) 471 U.S. 343 ................................................................ 18, 19

*Flatt v. Superior Court*

(1994) 9 Cal. 4th 275 ........................................................ 9, 10, 11, 13

*Forrest v. Baeza*

(1997) 58 Cal.App.4th 65 ................................................................ 18

*Goldstein v. Lees*

(1975) 46 Cal.App.3d 614 ........................................................ 17, 18, 19

*HLC Properties, Ltd. v. Superior Court*

(2005) 35 Cal.4th 54 ................................................................... 19

*Klemm v. Superior Court*

(1977) 75 Cal.App.3d 893 ........................................................ 10, 11

*Metro-Goldwyn-Mayer, Inc. v. Tracinda Corp.*

    (1995) 36 Cal.App.4th 1832 ....................................................................... 10, 13, 14

*Moeller v. Superior Court*

    (1997) 16 Cal.4th 1124 ......................................................................... 19, 20

*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems*

    (1999)Cal.4th 1135 ...................................................................................8

*Tekni-Plex, Inc. v. Meyner and Landis*

    (1996) 89 N.Y.2d 123 .......................................................................... 18, 20

*Truck Ins. Exchange v. Fireman's Fund Ins. Co.*

    (1992) 6 Cal.App.4th 1050 ....................................................................... 12

*Unified Sewerage Agency of Washington County, Or. v. Jelco Inc.*

    646 F.2d 1339 (9th Cir. 1982) ................................................................. 12

*Waid v. Eighth Judicial Dist. Ct.*

    119 P.3d 1219  (Nev. 2005) .................................................................... 17


**Statutes**

California Business & Professions Code §6068(e).................................................. 13

California Code Civil Procure. §128(a)(5) ...........................................................8

California Corporations Code §800 ................................................................... 19


**Rules**

ABA Model Rules of Professional Conduct .............................................................9

    Rules 1.6 ................................................................................................ 16

    Rule 1.7 ............................................................................. 9, 10, 11, 15

    Rule 1.9 ............................................................................. 9, 13, 16, 19

    Rule 1.16 ............................................................................................... 19

California Rules of Professional Conduct

  Rule 3-310........................................................................... 10, 12, 13, 15, 19

  Rule 3-700(D) ........................................................................... 19

Local Rules of Court for the Northern District of California, Rule 11-4(a).................8

## <u>CORPORATE DISCLOSURE STATEMENT</u>

This statement is made pursuant to Federal Rule of Appellate Procedure 26.1. As of December 15, 2008, Defendant-Appellant ConnectU, Inc. is a wholly-owned subsidiary of The Facebook, Inc., a privately held corporation.

## NOTICE OF MOTION AND MOTION

Defendant-Appellant ConnectU, Inc. ("ConnectU"), hereby moves to disqualify the law firms of Boies, Schiller & Flexner LLP ( "BSF"), Finnegan, Henderson, Farabow, Garrett & Dunner, LLP ("Finnegan") and O'Shea Partners LLP ("O'Shea") from representing  the founders of ConnectU -- Cameron Winklevoss, Tyler Winklevoss, and Divya Narendra ("Founders") -- based on a conflict of interest in violation of California Rule of Professional Conduct 3-310, as well as ABA Model Rules of Professional Conduct 1.7 and 1.9.

Specifically, in accord with both sets of Rules of Professional Conduct, BSF, O'Shea and Finnegan may not represent joint clients whose interests are adverse in the same proceeding, and may not take an adverse position to either a current or former client.  When an actual conflict arises between two joint clients, as exists here between ConnectU and the Founders, the lawyers must withdraw from representing both clients.  The Boies firm has thus far refused to withdraw as counsel of record in this Appeal.  The Finnegan firm belatedly moved to withdraw, after an initial refusal that forced ConnectU's new counsel to file a motion to substitute the previous counsel of record for counsel of its choosing[1].  O'Shea previously represented ConnectU and the Founders at the trial court level, and thus has a conflict between its current and former client in the same litigation.

For these reasons, this Court should disqualify BSF, Finnegan and O'Shea from continuing to represent the Founders.

## INTRODUCTION

This case presents the rare circumstance of a transfer in ownership of a corporate party in the midst of litigation.  This unusual circumstance is the result of a settlement agreement that shifted control of ConnectU from the Founders to the

---

[1] On December 22, 2008, ConnectU filed a separate motion to require Finnegan and BSF to withdraw as ConnectU's counsel of record in this appeal.

other party in the litigation -- Facebook.  Although the factual circumstances may be uncommon, the ethical implications for the attorneys who previously represented both ConnectU and the Founders are neither complex nor unusual.

When attorneys begin representing joint clients, and later actual adversity develops between these clients, then the attorneys are precluded from representing either former joint client against the other.  That is precisely what has occurred in this case.  BSF, O'Shea and Finnegan previously represented joint clients -- ConnectU and the Founders.  Then, as a result of the settlement as enforced by the trial court in this case, ownership of ConnectU transferred from the Founders to Facebook.  Thus, there is now a direct and palpable conflict between ConnectU and the Founders.

Because of that direct conflict, BSF, O'Shea and Finnegan are now ethically precluded from continuing to represent the Founders.  To allow continued representation would violate those attorneys' duties of loyalty and confidentiality to ConnectU.  ConnectU has demanded that BSF, O'Shea and Finnegan withdraw from representing the Founders.  All firms declined to do so, necessitating the filing of this motion and ConnectU's request that the Court order the disqualification of BSF, O'Shea and Finnegan from representing the Founders[2].

Finally, ConnectU is entitled by law to delivery of its client files so that it may properly assess the corporation's rights and obligations, including potential litigation, and therefore requests the Court order delivery of those files forthwith.

## FACTUAL BACKGROUND

### A.    Settlement of the Pending Actions

As this Court is no doubt aware, this action has a long and complex history.

_____

[2] Finnegan belatedly moved to withdraw on December 29, 2008, a week after ConnectU's new counsel had been compelled to file a motion seeking Finnegan's withdrawal.

For purposes of this motion, the salient facts have less to do with the merits of the underlying case; rather, they relate mainly to the history of ConnectU and the Founders' representation during the course of the pending actions.

In February 2008, ConnectU, the Founders, Facebook, and Mark Zuckerberg agreed to mediate all of the pending claims between them. At that time, there were three actions pending: *ConnectU LLC v. Zuckerberg*, Appeal No. 07-1796 (1st Cir.); *ConnectU, Inc. v. Facebook, Inc.*, Case No. 1:07-CV-10593-DPW (D. Mass.); and *Facebook, Inc. v. ConnectU, Inc.*, Case No. 5:07-CV-01389(RS) (N.D. Cal.). At various points throughout the litigation, Finnegan, O'Shea, and BSF were counsel of record, jointly representing ConnectU and the Founders[3].

At the conclusion of the mediation, the parties signed a "Term Sheet and Settlement Agreement" ("the Settlement Agreement"), which was binding by its express terms. The Settlement Agreement stated that the parties intended to resolve all of the claims between them in exchange for certain mutual consideration, including the exchange of cash and stock. Specifically, the Settlement Agreement called for the transfer of 100% of the outstanding shares of ConnectU to Facebook and for Facebook to transfer cash and certain shares of Facebook stock to the Founders. The Settlement Agreement also specifically stated that the U.S. District Court for the Northern District of California would retain jurisdiction for purposes of enforcing the Settlement Agreement.

---

[3] Because the Founders (through their counsel) have refused to turn over ConnectU's files to ConnectU's new ownership, the exact details about the attorney-client relationship(s) between ConnectU, the Founders, and Boies, O'Shea, and BSF are unclear. ConnectU is currently unable to advise this Court of the precise dates on which Boies, O'Shea and BSF began and ceased representing ConnectU and/or the Founders. However, it is undisputed that at some point during this litigation, each of these firms simultaneously represented ConnectU and the Founders, as evidenced by their various applications for *pro hac vice* admission.

### B.     **Facebook's Motion to Enforce the Settlement Agreement**

Shortly after the parties signed the Settlement Agreement, the Founders refused to comply with the terms of the agreement.  As a result, on April 23, 2008, Facebook filed a motion to enforce the Settlement Agreement.  ConnectU opposed the motion to enforce.  (The Founders did not oppose Facebook's motion.)

After briefing and oral argument, on July 2, 2008, the court entered an order granting Facebook's motion to enforce the Settlement Agreement.  During this time frame, ConnectU and the Founders filed notices of appeal relating to the court's ruling on the motion to enforce.

### C.     **Transfer of Consideration**

Following the court's order granting Facebook's motion to enforce, the court appointed George Fisher as Special Master.  Pursuant to the court's order, Fisher was to conduct various administrative activities identified in the court's July 3, 2008 Judgment Enforcing Settlement Agreement.

The court originally ordered that the exchange of consideration was to occur on November 24, 2008.  In a November 21, 2008 Amended Judgment, the court extended the transfer date to December 15, 2008, to afford ConnectU the opportunity to seek a stay from the Ninth Circuit regarding the exchange of settlement consideration.  This Court denied ConnectU's motion to stay on December 12, 2008.

Accordingly, on December 15, 2008, all of ConnectU's outstanding shares were conveyed to Facebook.  As a result of this transfer, ConnectU is now a wholly owned subsidiary of Facebook.

### D.     **ConnectU's Counsel Threatens Their Client and Refuses to Follow the Instructions of Their Client**

Upon transfer of ConnectU to Facebook, ConnectU appointed a new sole officer and director.  ConnectU then made several board resolutions, including the

appointment of James E. Towery of the law firm Hoge Fenton Jones & Appel as ConnectU's lead counsel in all matters[4]. Following the transfer of ConnectU to Facebook, Mr. Towery contacted Finnegan, O'Shea and BSF on December 16, 2008, on behalf of ConnectU and advised counsel that Finnegan, O'Shea and BSF were no longer authorized to take action on behalf of ConnectU. In this same correspondence, ConnectU requested that its counsel at Finnegan, O'Shea and BSF sign substitutions of counsel. See the Declaration of James E. Towery filed concurrently with this motion ("Towery Decl."), Exhibits A, B and C.

O'Shea responded on December 17, 2008, claiming that O'Shea did not represent ConnectU in the pending Ninth Circuit Appeal. Towery Decl., Ex. D.

ConnectU's lawyers at Finnegan and BSF responded by demanding "proof" of Mr. Towery's authority to act on behalf of ConnectU -- including demanding correspondence directly from the new sole officer and director of ConnectU and copies of ConnectU's most recent board resolutions. Towery Decl., Exs. G and I. Although not obligated to provide such documentation, ConnectU did so on December 18, 2008 in order facilitate the transition of ConnectU's representation. Towery Decl., Ex. H and J. Yet, even after receiving the requested "proof," rather than complying with their client's requests, ConnectU's lawyers at both Finnegan and BSF took the following extraordinary steps:

1. Finnegan and BSF refused to sign a substitution of counsel. In fact, both Finnegan and BSF took the position (either affirmatively or by inaction) that instead of their signing a stipulation for substation of counsel, ConnectU would either need to indemnify the lawyers and/or would need to undergo the time and

---

[4] At this time ConnectU also determined that pursuing an appeal directly adverse to its parent company, Facebook, is not in ConnectU's interest. ConnectU stipulated with Facebook for voluntary dismissal of the appeal, and then moved to voluntarily dismiss the pending appeal.

incur the expense to file a motion for substitution[5].  Towery Decl., Exs. G and K. Finnegan later moved to withdraw December 29, 2008, a week after ConnectU's new counsel had been compelled to file a motion seeking Finnegan's withdrawal;

2. BSF threatened ConnectU, its own client, warning that if ConnectU were to take any action adverse to BSF's other joint client -- the Founders -- the Founders would hold a fraudulent conveyance claim against ConnectU.  Towery Decl., Ex. K; and

3. Finnegan and BSF refused to provide ConnectU's files to ConnectU, greatly prejudicing ConnectU's ability to assess its pending litigation matters. Towery Decl., Exs. L and M.

Based on BSF and Finnegan's remarkable refusal to cooperate with their own client, and the firms' implied and express threats made to ConnectU, ConnectU concluded that: (1) a conflict exists between BSF and Finnegan's joint clients ConnectU and the Founders; and (2) BSF and Finnegan have deliberately favored one joint client over the other by taking actions directly adverse to ConnectU in their continued representation of the Founders.  Furthermore, given the actual conflict between ConnectU and the Founders, O'Shea's continued representation of the Founders directly conflicts with O'Shea's continued duty of confidentiality to its former client, ConnectU.  On these grounds, ConnectU now moves for this Court to disqualify Finnegan, O'Shea and BSF from representing the Founders in any matter relating to ConnectU, including this case.

---

[5] Having no alternative, ConnectU filed its motion to withdraw and substitute counsel on December 22, 2008.  On January 6, 2009, BSF filed a response on behalf of the Founders wherein BSF opposed the withdrawal and substitution. Incredibly, BSF asked the Court to allow BSF to represent a non-existent entity (i.e., the interests of "old" ConnectU).  BSF presented no authority to support its request.

## ISSUES ADDRESSED BY MOTION

i. The Actual Conflict Between Joint Clients ConnectU and Its Founders Requires Mandatory Disqualification of Counsel from Representing Either;

ii. BSF, O'Shea and Finnegan Owe the Same Duties to ConnectU as to Any Former Client, and Therefore May Not Take Action Adverse to ConnectU; and

iii. ConnectU Is Entitled to Its Entire Client Files so It May Properly Evaluate the Corporation's Rights and Obligations, Including Potential Litigation.

## ARGUMENT

### A.  Applicable Law

Courts have the authority to regulate the conduct of attorneys appearing before them, including the power to disqualify attorneys when warranted. "A trial court's authority to disqualify an attorney derives from the power inherent in every court '[t]o control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto' (CCP § 128(a)(5))." *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems* (1999) 20 Cal.4th 1135, 1145 (additional citations omitted).

The Northern District of California, from which this appeal was taken, applies the California state law standard to motions to disqualify counsel, including the California Rules of Professional Conduct. *Certain Underwriters at Lloyd's, London v. Argonaut Ins. Co.,* 264 F.Supp.2d 914 (N.D.Cal.2003); Ca. Code Civ. Proc. §128(a)(5); Local Rules of Court for the Northern District of California, Rule 11-4(a).

Here, the California Rules of Professional Conduct (hereinafter the "CRPC") and California law apply. In their settlement, the parties to this Appeal conferred jurisdiction to the Northern District to enforce the Settlement Agreement, and the Appeal was taken from the Northern District, which applies the CRPC and California law. In addition, both BSF and Finnegan maintain offices in California,

8

employ attorneys who are members of the State Bar of California, and their attorneys of record for this Appeal are either licensed in California or were admitted to practice before the Northern District Court or this Court.

This Court also may rely upon the ABA Model Rules of Professional Conduct ("ABA Rules"). *See, e.g., Brennan's, Inc. v. Brennan's Restaurants, Inc.,* 590 F.2d 168, 172 fn.5 (5th Cir. 1979) ("As the profession's own expression of its ethical standards, the [ABA] Code of Professional Responsibility, Ethical Considerations, and Disciplinary Rules provide substantial guidance to federal courts in evaluating the conduct of attorneys appearing before them.")[6]

Under both the California and ABA Rules, the Founders' counsel have an impermissible conflict based on two separate duties: (1) their duty of loyalty to joint clients ConnectU and the Founders; and (2) their duty of confidentiality to both clients. "An attorney's ethical duties to maintain undivided loyalty to his or her clients and to preserve the confidentiality of client communications require that the attorney refrain from simultaneous or successive representation of clients with adverse interests." *City of Santa Barbara v. Superior Court* (2004) 122 Cal.App.4th 17, 23.

**B.    The Actual Conflict Between Joint Clients ConnectU and the Founders Requires Mandatory Disqualification of BSF and Finnegan from Representing Both Clients**

ConnectU and the Founders are joint clients of BSF and Finnegan. Following the change in control of ConnectU in December 15, 2008, BSF and Finnegan refused to withdraw as counsel for ConnectU. ConnectU has taken steps to remove BSF and Finnegan; however, as of this filing BSF and Finnegan remain

---

[6] The relevant ABA Rules regarding client conflicts, 1.7 and 1.9, as applied to disqualification, were cited with approval by the California Supreme Court in *Flatt v. Superior Court* (1994) 9 Cal. 4th 275, 282 fn. 2.

counsel of record for ConnectU.  The Court also should apply the concurrent client
analysis because the conflict arises from BSF and Finnegan's joint representation
of ConnectU and the Founders concurrently.

A basic rule of professional responsibility is that a lawyer may not represent
joint clients whose interests actually conflict.  ABA Rule 1.7 prohibits an attorney
from representation where "the representation of one client will be directly adverse
to another client" or "there is a significant risk that the representation of one or
more clients will be materially limited by the lawyer's responsibilities to another
client, a former client or a third person or by a personal interest of the lawyer."

California also prohibits an attorney from representing two current clients
with actual conflicting interests, absent informed written consent. The California
rule states that "[a] member shall not, without the informed written consent of each
client . . .[a]ccept or continue representation of more than one client in a matter in
which the interests of the clients actually conflict."  CRPC 3-310(C)(2).

The most egregious instance of actual adversity is when an attorney seeks to
represent two clients with opposing interests in the same litigation.  In such
circumstances, as are present in this case, disqualification is automatic.  *Flatt  v.
Sup. Ct.* (1994) 9 Cal. 4th 275.  "In all but a few instances, the rule of
disqualification in simultaneous representation cases is a *per se* or 'automatic'
one." *Id.* at 284; *Metro-Goldwyn-Mayer, Inc. v. Tracinda Corp.* (1995) 36
Cal.App.4th 1832, 1840.

Joint clients in the same litigation may not consent to waive a conflict in a
contested proceeding where the interests of joint clients become adverse, and
therefore the lawyer must withdraw from representing both clients.  *Klemm v.
Superior Court* (1977) 75 Cal.App.3d 893, 898-9.  "[I]t would be unthinkable to
permit an attorney to assume a position at a trial or hearing where he could not
advocate the interests of one client without adversely injuring those of the other."

*Id.* at 898. Like California, the ABA Rules also prohibit continued representation that involves the "assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal." ABA Rule 1.7(b)(3).

BSF and Finnegan undertook representation of joint clients whose interests could potentially become adverse. That potential has become reality. Now that ConnectU and the Founders are in direct conflict, it is no longer possible for BSF and Finnegan to advocate for the interests of one client without adversely injuring the interests of the other. Thus, the two firms cannot continue representation of either joint client.

> ### i. **No Valid Waiver Exists**

BSF and Finnegan cannot rely upon consent to solve their ethical dilemma. First, an actual conflict between two clients in simultaneous representation is not consentable. *Flatt, supra*; *Klemm, supra*. Even if consent were theoretically available, ConnectU has not consented and does not consent to BSF and Finnegan continuing to represent the Founders. Since the time the conflict became actual, BSF and Finnegan have not purported to disclose the conflict, and ConnectU has not consented to waive it. After ConnectU became a wholly owned subsidiary of Facebook, ConnectU also took the precautionary step of revoking any possible prior consent (although its present management is unaware of any such prior consent). Therefore, ConnectU has not consented to BSF and Finnegan's continued representation of the Founders.

> ### ii. **Ending The Attorney-Client Relationship Does Not Cure this Conflict**

BSF and Finnegan cannot solve their ethical dilemma by terminating their representation of ConnectU. "[A] law firm that knowingly undertakes adverse

concurrent representation may not avoid a disqualification by withdrawing from representation of less favored client before hearing on disqualification; automatic disqualification rule may not be avoided by unilaterally converting present client into former client." *Truck Ins. Exchange v. Fireman's Fund Ins. Co.* (1992) 6 Cal.App.4th 1050, 1060, rehearing denied and modified, review denied; *Unified Sewerage Agency of Washington County, Or. v. Jelco Inc.,* 646 F.2d 1339, 1345, fn. 4 (9th Cir. 1982).

Following the change in control on December 15, 2008, ConnectU made a simple and unambiguous request to its counsel, BSF and Finnegan, that they withdraw as counsel of record for this Appeal. Both firms refused.[7] The BSF firm also attempted to extract an agreement from its own client -- ConnectU -- in exchange for BSF's cooperation. Specifically, BSF refused to withdraw unless "Facebook, Inc. and ConnectU, Inc. agree to completely indemnify BSF from any liabilities arising from or relating to such substitution" and that counsel "confirm that ConnectU will not take any actions to interfere with the pending appeal." Towery Decl., Ex. K.

BSF's conduct is a manifest breach of its duty of loyalty to ConnectU, and illustrates why disqualification is necessary. BSF not only disregarded its own client's instructions, BSF also exploited its position as ConnectU's counsel to advocate for its other clients, the Founders, to the detriment of ConnectU.

Clients should not have the burden of enforcing their counsel's ethical obligations. Under CRPC 3-310, attorneys have the obligation to avoid the representation of adverse interests. As soon as the conflict between ConnectU and the Founders came into existence, BSF and Finnegan should have withdrawn. Having failed to do so, BSF and Finnegan certainly should have honored their

---

[7] Finnegan filed a "conditional withdrawal" as counsel in the Massachusetts action *ConnectU et. al v. Facebook et. al* (1:07-cv-10593) on December 23, 2008.

client's request that they withdraw. This Court should grant the instant motion, and thereby remove BSF and Finnegan from their untenable stance.

### C. BSF, O'Shea and Finnegan Owe the Same Duty of Confidentiality to ConnectU as to Any Former Client, and Therefore May Not Act Adverse to ConnectU in this Litigation

ConnectU is a former client of O'Shea in this matter. BSF and Finnegan may well argue that ConnectU is a former, rather than current, client of theirs as well. Regardless of whether the Court considers ConnectU a current or former client of BSF and Finnegan, the Court should disqualify the two firms and O'Shea from continuing to represent the ConnectU Founders.

Both the California and ABA Rules prohibit a lawyer from representing or continuing to represent a client whose interests actually conflict with those of a former client in a substantially related matter. CRPC 3-310(E); ABA Rule 1.9(a). Although an attorney may have a lessened (not absent) duty of loyalty to a former client, most courts analyzing successive conflict issues emphasize the duty of attorneys to maintain the confidences of the former clients as the rationale necessitating disqualification.

An attorney has a duty to "maintain inviolate the confidence, and at every peril to himself to preserve the secrets, of his client." Ca. Bus. & Prof. Code §6068(e). This duty of confidentiality survives after the termination of the attorney-client relationship. *City and County of San Francisco v. Cobra Solutions, Inc.* (2006) 38 Cal.4th 839, 847.

"Where the representation is successive -- that is when an attorney is engaged to represent the interest of a party that are adverse to a former client of the attorney's -- 'courts have recognized that the chief fiduciary value jeopardized is that of client confidentiality.'" *Metro-Goldwyn-Mayer, Inc., supra*, 36 Cal.App.4th at 1839, citing *Flatt, supra*, 9 Cal. 4th at 283.

An actual breach of confidentiality is not required to compel

disqualification. "The test used for disqualification in those instances is whether there is a 'substantial relationship' between the subject of the former and current representations." *Metro-Goldwyn-Mayer, Inc., supra*, 36 Cal.App.4th at 1839. If the matter is "substantially related," potential for breach of confidentiality is presumed and disqualification is proper. *American Airlines, Inc. v. Sheppard, Mullin, Richter & Hampton* (2002) 96 Cal.App.4th 1017, 1038; *Brennan's, Inc., supra,* 590 F.2d at 172.

In the present case, the substantial relationship is obvious. BSF, O'Shea and Finnegan have represented (and BSF and Finnegan continue to represent) ConnectU and its Founders in the very same matter -- the present case.

The Court should disqualify an attorney where there is any potential for breach -- an actual breach is not required. In disqualifying a former attorney for American Airlines from testifying as an expert witness for American's adversary in subsequent litigation, the California Appellate Court reasoned:

> It was not necessary for American to establish that Long answered the questions, thus revealing confidential information, in order to prove that Long breached his fiduciary duty to American. He placed the noose around American's neck, without its consent, promising all the while not to kick over the chair on which it stood, blithely ignoring the sweat forming on the corporate brow… The rule is designed not alone to prevent the dishonest practitioner from fraudulent conduct, but as well to preclude the honest practitioner from putting himself in a position where he may be required to choose between conflicting duties, or be led to an attempt to reconcile conflicting interests, rather than to enforce to their full extent the rights of the interest which he should alone represent.

*American Airlines, supra,* 96 Cal.App.4th at 704-05.

Even though an actual breach of confidentiality is not required to disqualify counsel, there already has been an actual breach in this action to the detriment of ConnectU. In correspondence to ConnectU's successor counsel, BSF attorney Michael Underhill used confidential corporate information to demand that his own

client -- ConnectU -- act against its own interest by maintaining this Appeal, and to threaten his own client with legal action on behalf of the Founders if ConnectU did not do as he demanded. Towery Decl., Ex. G. Mr. Underhill wrote:

> Finally, on behalf of the Founders, we request that ConnectU not take any action that would interfere with the pending appeal. As you are probably aware, ConnectU owes substantial debts to the Founders, and ConnectU's most significant assets are its claims against Facebook and persons associated with Facebook. Consequently, we believe that any attempt by ConnectU to benefit its current shareholder by extinguishing that claim would be a fraudulent conveyance and legally actionable.

Towery Decl., Ex. G. BSF has also refused to provide ConnectU with its files, depriving ConnectU of the right to evaluate all of ConnectU's rights and obligations, including potential litigation.

In this letter, BSF used confidential corporate information regarding the alleged loan "on behalf of the Founders" and to the detriment of his client ConnectU[8]. This is precisely the kind of conduct that Rules 3-310 and 1.7 prohibit. The fact that BSF, O'Shea and Finnegan represent or have represented the Founders in the same litigation is enough to satisfy the substantial relationship test and compel disqualification. The further evidence that BSF already has breached its duties should remove the benefit of any doubt. The present case amply illustrates why courts should not tolerate successive conflicts of interest. Simply put, lawyers in this conflicted position cannot serve two masters. They cannot protect the confidences of a former joint client who is adverse to a current one. The Court should grant the present motion.

---

[8] Despite Underhill's use of the phrase, "as you know," ConnectU and its new management does not know anything about the loan referenced by Underhill. Ignorance of such information illustrates precisely why ConnectU must be allowed access to its files.

i.   **A Lawyer's Duty to Preserve Client Confidences Is Not Altered by a Former Joint Client Relationship with Shared Confidences**

BSF, O'Shea and Finnegan cannot violate their duty of confidentiality to ConnectU based on a previous joint client relationship in which ConnectU and the Founders may have waived the privilege with respect to one communication with the two firms.

In a Fifth Circuit case applying ABA Ethical Considerations (the predecessor to the current Rules), the court disqualified a lawyer in circumstances similar to this case. *Brennan's, Inc., supra,* 590 F.2d at 172. The *Brennan's* court held that the lawyer, who had jointly represented a restaurant corporation and its multiple original shareholders, could not represent that corporation and its remaining shareholders as defendants against the Founders in a later trademark dispute. *Id*. The *Brennan's* defendants argued that the duty of confidentiality embodied in Canon 4 (now ABA Rule 1.9) could not apply because as joint clients the parties had waived confidentiality with respect to one another. *Id*. The Fifth Circuit disagreed. Citing the predecessors to ABA Rules 1.6(a) and 1.9(c), the court held:

> [T]he ethical duty is broader than the evidentiary privilege…The use of the word 'information' in these [ABA] Ethical Considerations as opposed to 'confidence' or 'secret' is particularly revealing of the drafters' intent to protect all knowledge acquired from a client, since the latter two are defined terms. Information so acquired is sheltered from use by the attorney against his client by virtue of the existence of the attorney-client relationship. This is true without regard to whether someone else may be privy to it.

*Id.*

The current ABA Rules retain the word "information," so this reasoning still applies. Rule 1.9(b) specifically prohibits a lawyer from using confidential information acquired in the course of the prior representation to the disadvantage

of the former client. It does not matter that ConnectU and the Founders may have waived confidentiality with respect to one another during the time they were joint clients. BSF, O'Shea and Finnegan must protect "at every peril" to themselves, the information learned from ConnectU "without regard to whether someone else may be privy to it," including the Founders.

ii. **A Lawyer's Duty to Preserve Corporate Client Confidences Is Not Altered by a Change in Corporate Control**

The fact that there was a change in control of ConnectU on December 15, 2008, does not alter the professional responsibilities of BSF, O'Shea and Finnegan to ConnectU. A former corporate client is entitled to the same protection of its confidential information as any other former client. *Goldstein v. Lees* (1975) 46 Cal.App.3d 614, 621. The California Appellate Court denied fees to the former in-house counsel for a corporation for his later representation of shareholders in a proxy fight because such representation was adverse to his former corporate client and therefore violated California law and the California Rules of Professional Conduct. *Goldstein, supra,* 46 Cal.App.3d. at 619. The *Goldstein* court held that the lawyer's duty to his former corporate client made his representation of the shareholders improper:

> Clearly, if Kirshman were [current] counsel to the corporation, he could not, consistently with his position as general counsel, act as proxy for one contending group of shareholders. … "In acting as the corporation's legal adviser he must refrain from taking part in any controversies or factional differences which may exist among shareholders as to its control… This duty to act without bias or prejudice does not dissolve merely because the attorney has been discharged.

*Id* at 623. As one court noted, "[a] successor corporation succeeds to the prior corporation's rights and liabilities, including the prior corporation's right to protect confidential information transmitted to the prior corporation's counsel." *Waid v. Eighth Judicial Dist. Ct.,* 119 P.3d 1219, 1224 (Nev. 2005).

17

A leading case in circumstances analogous to the present case is *Tekni-Plex, Inc. v. Meyner and Landis* (1996) 89 N.Y.2d 123. In *Tekni-Plex,* the New York Court of Appeals affirmed disqualification of counsel for the former owner of a corporation in litigation initiated by the corporation's buyer to remedy alleged breaches of the agreement relating to the corporation's acquisition. *Id*. At 127. The court affirmed disqualification there because the attorney-client relationship continued with the newly formed entity. *Id*.[9]

### iii.  A Corporation's Current Management Controls Its Confidential Information -- Not Counsel, Not Former Management

When there is a change in corporate control, the corporation's attorney-client privilege also transfers to new management. *Commodity Futures Trading Com'n v. Weintraub* (1985) 471 U.S. 343, 349. In *Weintraub*, the United States Supreme Court held that the privilege passes to new management and consequently, "Displaced managers may not assert the privilege over the wishes of current managers, <u>even as to statements that the former might have made to counsel concerning matters within the scope of their corporate duties</u>." *Id.* (emphasis added). In addition, the *Goldstein* court distinguished between the confidential information known to directors and the more limited information available to shareholders, holding that "shareholder status does not in and of itself entitle an individual to unfettered access to corporate confidences and secrets." *Goldstein,*

---

[9] ConnectU anticipates that the Founders will rely on *Forrest v. Baeza* (1997) 58 Cal.App.4th 65, 82, wherein the court disqualified the lawyer (who had jointly represented two corporations and their shareholders) from representing the corporations, but permitted the lawyer to continue representing the shareholders on the basis that the distinction between the individual defendants and the corporations were purely fictional. *Id*. Any reliance on *Forrest* here would be misplaced. *Forrest* involved a shareholder's derivative action in which the corporations were nominal defendants; the *Forrest* court specifically stated that its holding is limited to the context of a shareholder's derivative action. *Id*. at 74, 80. As the *Brennan* court held, a lawyer's duty of confidentiality to a former client persists "without regard to whether someone else may be privy to it." *Brennan's, supra,* 590 F.2d at 172.

*supra,* 46 Cal.App.3d at 621.

In accord with *Weintraub* and *Goldstein*, BSF, O'Shea and Finnegan may not use any confidential information learned from the Founders, and the Founders may not waive the privilege with respect to that information in order to use it on their own behalf. This was the court's basis for denying fees to the lawyer in *Goldstein* -- he was privy to information as a prior director that he could not put into the service of shareholders. *Id.* Rules 3-310 and 1.9 serve to preclude the honest practitioner from having to choose between conflicting duties or reconciling conflicting interests, "rather than to enforce to their full extent the rights of the interest which he should alone represent." *American Airlines, supra,* 96 Cal.App.4th at 705. The Court should likewise disqualify BSF, O'Shea and Finnegan.

Further, whoever controls ConnectU is entitled to properly assess the corporation's rights and obligations, including potential litigation. Thus, it is even more important that BSF, O'Shea and Finnegan are not allowed unfettered use of confidential corporate information. As noted in *Goldstein*, "The board of directors, not corporate counsel, has the right to control the affairs of the corporation. (Corp. Code, § 800.)" *Goldstein, supra*, 46 Cal.App.3d at 623. Should this Court not disqualify BSF, O'Shea and Finnegan, the Court will allow BSF, O'Shea and Finnegan to operate the corporation.

### D.    ConnectU is Entitled to Its Entire Client Files

A client is entitled to its files. CRPC 3-700(D); ABA Rule 1.16(d). The United States Supreme Court and two California Supreme Court cases specifically hold that a successor corporation is entitled to its client file. *Weintraub, supra,* 471 U.S. at 353; *HLC Properties, Ltd. v. Superior Court* (2005) 35 Cal.4th 54, 64; and *Moeller v. Superior Court* (1997) 16 Cal.4th 1124, 1138. In *Moeller,* the California Supreme Court reasoned that a corporation's new management has a

19

right to its entire file because the of the client's need to assess the corporation's rights and obligations. *Id.*

BSF and Finnegan have refused to turn over ConnectU's files. BSF mistakenly relies on *Tekni-Plex, supra*, to support its refusal to turn over its client's files. BSF's reliance on *Tekni-Plex,* is misplaced where the California Supreme Court analyzed *Tekni-Plex,* in *Moeller, supra,* to reach the opposite conclusion -- the successor corporation is entitled to its files from prior to the change in control. *Moeller, supra*, 16 Cal.4th at 1137-9.

Finnegan initially provided ConnectU with copies of the Ninth Circuit pleadings and other publicly available materials, but no other files. After a follow-up request from ConnectU, Finnegan, through counsel, has represented that it is unwilling to provide ConnectU its files, also improperly relying on *Tekni-Plex*.

ConnectU has an immediate and continuing need to assess its rights and obligations, including any potential litigation. Delivery of its client files is required and imperative. This imperative is made more obvious by Mr. Underhill's threat of litigation against ConnectU based on facts unknown to ConnectU's sole officer and director. Therefore, ConnectU requests the Court compel BSF, O'Shea and Finnegan to deliver ConnectU's complete file to ConnectU forthwith.

## **RELIEF SOUGHT**

For the reasons stated herein, Appellant ConnectU requests that this Court disqualify BSF, O'Shea and Finnegan from continuing to represent the Founders in this Appeal and all related or consolidated actions.

DATED: January 20, 2009

Respectfully submitted,
HOGE, FENTON, JONES & APPEL, INC.

By      /s/ James E. Towery
        James E. Towery
        Attorneys for Defendant-Appellant
        Connect U, Inc.

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on January 20, 2009.

DATED: January 20, 2009

Respectfully submitted,

By /s/ James E. Towery
James E. Towery

Case Nos. 08-16745, 08-16849, 08-16873

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

### THE FACEBOOK, INC., et al.
### Plaintiffs-Appellees-Cross-Appellants,

**v.**

### CONNECTU, INC. (formerly known as CONNECTU LLC), CAMERON WINKLEVOSS, TYLER WINKLEVOSS, DIVYA NARENDRA,
### Defendants-Appellants-Cross-Appellees.

---

### On Appeal From The United States District Court For The
### Northern District of California, No. CV-07-01389-JW,
### The Honorable James Ware

---

## DECLARATION OF JAMES E. TOWERY IN SUPPORT OF APPELLANT
## CONNECTU, INC.'S MOTION TO DISQUALIFY COUNSEL

---

James E. Towery (BAR NO. 74058)
Alison P. Buchanan (BAR NO. 215710)
Jill E. Fox (BAR NO. 243945)
HOGE, FENTON, JONES & APPEL, INC.
Sixty South Market Street, Suite 1400
San Jose, California 95113-2396
Phone: (408) 287-9501
Fax:  (408) 287-2583
*Attorneys for Appellant ConnectU, Inc.*

---

I, James E. Towery, declare:

1.      I am a shareholder in the law firm of Hoge, Fenton, Jones & Appel, Inc., counsel for ConnectU, Inc ("ConnectU").  I am a member of the State Bar of California and the Ninth Circuit.  I make this declaration in support of Appellant-Defendant ConnectU's Motion to Disqualify.

2.      On December 15, 2008, ownership of ConnectU, Inc. transferred to Plaintiffs-Appellees The Facebook, Inc. and Mark Zuckerberg ("Facebook").

3.      Attached hereto as Exhibit A is a true and correct copy of correspondence from Hoge, Fenton, Jones & Appel, Inc. to Boies, Schiller & Flexner LLP ("BSF"), dated December 16, 2008.

4.      Attached hereto as Exhibit B is a true and correct copy of correspondence from Hoge, Fenton, Jones & Appel, Inc. to Finnegan, Henderson, Farabow, Garrett & Dunner, LLP ("Finnegan"), dated December 16, 2008.

5.      Attached hereto as Exhibit C is a true and correct copy of correspondence from Hoge, Fenton, Jones & Appel, Inc. to O'Shea Partners LLP ("O'Shea"), dated December 16, 2008.

6.      Attached hereto as Exhibit D is a true and correct copy of correspondence from O'Shea to Hoge, Fenton, Jones & Appel, Inc., dated December 17, 2008.

7.      Attached hereto as Exhibit E is a true and correct copy of correspondence from Finnegan to Hoge, Fenton, Jones & Appel, Inc., dated December 17, 2008.

8.      Attached hereto as Exhibit F is a true and correct copy of correspondence from Hoge, Fenton, Jones & Appel, Inc. to Finnegan, dated December 17, 2008.

9.     Attached hereto as Exhibit G is a true and correct copy of correspondence from BSF to Hoge, Fenton, Jones & Appel, Inc., dated December 18, 2008.

10.     Attached hereto as Exhibit H is a true and correct copy of correspondence from Hoge, Fenton, Jones & Appel, Inc. to BSF, dated December 18, 2008.

11.     Attached hereto as Exhibit I is a true and correct copy of correspondence from Finnegan to Hoge, Fenton, Jones & Appel, Inc., dated December 18, 2008.

12.     Attached hereto as Exhibit J is a true and correct copy of correspondence from Hoge, Fenton, Jones & Appel, Inc. to BSF and Finnegan, dated December 18, 2008 (the enclosures to this correspondence -- ConnectU's board resolutions -- are not included as part of this Exhibit).

13.     Attached hereto as Exhibit K is a true and correct copy of correspondence from BSF to Hoge, Fenton, Jones & Appel, Inc., dated December 22, 2008.

14.     Attached hereto as Exhibit L is a true and correct copy of correspondence from Finnegan to Hoge, Fenton, Jones & Appel, Inc., dated December 22, 2008.

15.     Attached hereto as Exhibit M is a true and correct copy of correspondence from Zuckerman Spaeder (counsel for Finnegan) to Hoge, Fenton, Jones & Appel, Inc., dated January 7, 2008.

I declare under penalty of perjury under the laws of the United States that the above facts are within my personal knowledge; that I can testify to

the same if called to do so in a court of law; that the foregoing is true and correct; and that this declaration was executed on the 20th day of January, 2009, at San Jose, California.

/s/ James E. Towery
JAMES E. TOWERY

## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on January 20, 2009.

DATED: January 20, 2009

Respectfully submitted,

By /s/ James E. Towery
        James E. Towery

.

EXHIBIT A



## HOGE, FENTON JONES & APPEL, INC.

Attorneys at Law | San Jose | Pleasanton | East Palo Alto | Hollister

James E. Towery
408.947.2432
jet@hogefenton.com

December 16, 2008

<u>VIA FACSIMILE, U.S. MAIL AND EMAIL</u>

D. Michael Underhill
Boies, Schiller & Flexner LLP
5301 Wisconsin Avenue, N.W.
Washington, D.C. 20015

Re:     The Facebook, Inc. v. ConnectU, Inc.
        Our File No.: 80696

Dear Mr. Underhill:

We have been informed that the Special Master, George Fisher, has completed all tasks necessary on his part to culminate the settlement agreement between the parties, as of Monday morning.  Accordingly, ConnectU, Inc. is now a wholly owned subsidiary of The Facebook, Inc.

The purpose of this letter is to advise you that this firm has been retained to represent ConnectU, Inc. in all pending litigation.  You are hereby notified that <u>you and your firm no longer have authority to take any legal action on behalf of ConnectU, Inc., in any forum.</u>

Enclosed is a stipulation for your withdrawal as counsel of record in the matter pending before the Ninth Circuit Court of Appeals.  Please review, sign and return the stipulation to my office via facsimile by noon (Pacific Standard Time) tomorrow, Wednesday, December 17, 2008. If you fail to do so, we will promptly file a motion for substitution before the Ninth Circuit.  I trust that will not be necessary.  Please do not hesitate to contact me if you have any questions.

Very truly yours,

HOGE, FENTON, JONES & APPEL, INC.

James E. Towery

JET
ENCLOSURE

cc:     Mark Howitson

San Jose Office  |  60 South Market Street, Suite 1400,  San Jose, California  95113-2396
phone  408.287.9501     fax  408.287.2583     www.hogefenton.com

1  JAMES E. TOWERY -- BAR NO. 74058
   ALISON P. BUCHANAN -- BAR NO. 215710
2  JILL E. FOX -- 243945
   HOGE, FENTON, JONES & APPEL, INC.
3  Sixty South Market Street, Suite 1400
   San Jose, California 95113-2396
4  Phone: (408) 287-9501
   Fax:  (408) 287-2583
5
   Attorneys for
6  CONNECTU, INC. (formerly known as
   CONNECTU, LLC)
7

8              UNITED STATES COURT OF APPEALS

9                 FOR THE NINTH CIRCUIT

10 | THE FACEBOOK, INC. and MARK          | No. 08-16745
11 | ZUCKERBERG                           | (Consolidated with Case Nos. 08-16849 and
   |                                      | 08-16873)
12 |      Plaintiffs-Appellees,           |
   |                                      | D.C. No. 5:07-cv-01389-JW
13 | vs.                                  | Northern District of California,
   |                                      | San Jose
14 | CONNECTU, INC. (formerly known as    |
   | CONNECTU, LLC),                      |
15 |                                      | STIPULATION AND [PROPOSED] ORDER
   |      Defendant-Appellant,            | FOR WITHDRAWAL AND SUBSTITUTION
16 |                                      | OF COUNSEL FOR DEFENDANT-
   | and                                  | APPELLANT CONNECTU, INC.
17 |                                      |
   | PACIFIC NORTHWEST SOFTWARE,          |
18 | INC., WINSTON WILLIAMS, and          |
   | WAYNE CHANG,                         |
19 |                                      |
   |      Defendants.                     |
·20

21        THE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD, BE

22 INFORMED that Defendant-Appellant ConnectU, Inc. makes the following substitution of

23 counsel:

24        1.      Former counsel Boies Schiller & Flexner LLP and Finnegan, Henderson,

25                Farabow, Garrett & Dunner LLP hereby withdraw as counsel of record for

26                ConnectU, Inc.; and

27        2.      New counsel Hoge Fenton Jones & Appel, Inc. is hereby substituted as the

28                attorneys of record for ConnectU, Inc.

                                            -1-

1       The undersigned consent to this substitution. The contact information for new

2 counsel is as follows:

3         JAMES E. TOWERY -- BAR NO. 74058
        ALISON P. BUCHANAN -- BAR NO. 215710

4         JILL E. FOX -- BAR NO. 243945
        HOGE, FENTON, JONES & APPEL, INC.

5         Sixty South Market Street, Suite 1400
        San Jose, California 95113-2396

6         Phone: (408) 287-9501
        Fax: (408) 287-2583

7         jet@hogefenton.com
        apb@hogefenton.com

8         jef@hogefenton.com

9

10 DATED: December ___, 2008

11

12                                  Mark Howitson
                                 Sole Officer and Director

13                                  CONNECTU, INC.

14

15 DATED: December ___, 2008

16

17                                  D. Michael Underhill,

18                                  BOIES SCHILLER & FLEXNER, LLP

19 DATED: December ___, 2008

20

21                                  Scott Mosko
                                 FINNEGAN, HENDERSON, FARABOW,

22                                  GARRETT & DUNNER, LLP

23 DATED: December 15, 2008

24

25                                  James E. Towery

26                                  HOGE, FENTON, JONES & APPEL, INC.

27

28

                                                -2-

STIPULATION AND [PROPOSED] ORDER FOR WITHDRAWAL AND SUBSTITUTION OF COUNSEL
Case No. 08-16745 (consolidated with 08-16849 and 08-16873)

EXHIBIT B



# HOGE, FENTON
# JONES & APPEL, INC.

Attorneys at Law | San Jose | Pleasanton | East Palo Alto | Hollister

James E. Towery
408.947.2432
jet@hogefenton.com

December 16, 2008

<u>VIA FACSIMILE, U.S. MAIL AND EMAIL</u>

Scott R. Mosko
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
Stanford Research Park
3300 Hillview Avenue
Palo Alto, CA 94304-1203

John F. Hornick
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
901 New York Avenue, NW
Washington, DC 20001

        Re:    The Facebook, Inc. v. ConnectU, Inc.
               Our File No.: 80696

Dear Mr. Mosko and Mr. Hornick:

        We have been informed that the Special Master, George Fisher, has completed all tasks necessary on his part to culminate the settlement agreement between the parties, as of Monday morning. Accordingly, ConnectU, Inc. is now a wholly owned subsidiary of The Facebook, Inc.

        The purpose of this letter is to advise you that this firm has been retained to represent ConnectU, Inc. in all pending litigation. You are hereby notified that <u>you and your firm no longer have authority to take any legal action on behalf of ConnectU, Inc., in any forum.</u>

        Enclosed is a stipulation for your withdrawal as counsel of record in the matter pending before the Ninth Circuit Court of Appeals. Please review, sign and return the stipulation to my office via facsimile by noon (Pacific Standard Time) tomorrow, Wednesday, December 17, 2008. If you fail to do so, we will promptly file a motion for substitution before the Ninth Circuit. I trust that will not be necessary.

\\HFJAFS\NDrive\80696\Ltr\375020.doc

Scott R. Mosko and John F. Hornick
December 16, 2008
Page 2

      Please do not hesitate to contact me if you have any questions.

                           Sincerely,

                           HOGE, FENTON, JONES & APPEL, INC.

                           James E. Towery

JET

ENCLOSURE

cc:    Mark Howitson

1 | JAMES E. TOWERY -- BAR NO. 74058
ALISON P. BUCHANAN -- BAR NO. 215710
2 | JILL E. FOX -- 243945
HOGE, FENTON, JONES & APPEL, INC.
3 | Sixty South Market Street, Suite 1400
San Jose, California 95113-2396
4 | Phone: (408) 287-9501
Fax: (408) 287-2583
5 |
Attorneys for
6 | CONNECTU, INC. (formerly known as
CONNECTU, LLC)
7 |

8 | UNITED STATES COURT OF APPEALS

9 | FOR THE NINTH CIRCUIT

10 | THE FACEBOOK, INC. and MARK
ZUCKERBERG
11 |          No. 08-16745
(Consolidated with Case Nos. 08-16849 and
08-16873)

12 |      Plaintiffs-Appellees,       D.C. No. 5:07-cv-01389-JW
Northern District of California,
13 | vs.       San Jose

14 | CONNECTU, INC. (formerly known as
CONNECTU, LLC),
15 |                               STIPULATION AND [PROPOSED] ORDER
     Defendant-Appellant,     FOR WITHDRAWAL AND SUBSTITUTION
16 | and                                   OF COUNSEL FOR DEFENDANT-
APPELLANT CONNECTU, INC.

17 | PACIFIC NORTHWEST SOFTWARE,
18 | INC., WINSTON WILLIAMS, and
WAYNE CHANG,
19 |
     Defendants.
20 |

21 |      THE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD, BE

22 | INFORMED that Defendant-Appellant ConnectU, Inc. makes the following substitution of

23 | counsel:

24 |     1.         Former counsel Boies Schiller & Flexner LLP and Finnegan, Henderson,

25 |                Farabow, Garrett & Dunner LLP hereby withdraw as counsel of record for

26 |                ConnectU, Inc.; and

27 |     2.         New counsel Hoge Fenton Jones & Appel, Inc. is hereby substituted as the

28 |                attorneys of record for ConnectU, Inc.

-1-

1  The undersigned consent to this substitution.  The contact information for new

2  counsel is as follows:

3  JAMES E. TOWERY -- BAR NO. 74058
   ALISON P. BUCHANAN -- BAR NO. 215710

4  JILL E. FOX – BAR NO. 243945
   HOGE, FENTON, JONES & APPEL, INC.

5  Sixty South Market Street, Suite 1400
   San Jose, California 95113-2396

6  Phone: (408) 287-9501
   Fax:  (408) 287-2583

7  jet@hogefenton.com
   apb@hogefenton.com

8  jef@hogefenton.com

9

10  DATED: December __, 2008

11

12  _____
    Mark Howitson

13  Sole Officer and Director
    CONNECTU, INC.

14

15  DATED: December __, 2008

16

17  _____
    D. Michael Underhill,

18  BOIES SCHILLER & FLEXNER, LLP

19  DATED: December __, 2008

20

21  _____
    Scott Mosko

22  FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, LLP

23  DATED: December 15, 2008

24

25  _____
    James E. Towery

26  HOGE, FENTON, JONES & APPEL, INC.

27

28
                          -2-



**HOGE FENTON**
**JONES & APPEL INC.**

Attorneys at Law | San Jose | Pleasanton | Modesto | Hollister

**San Jose Office**
60 South Market Street
Suite 1400, San Jose, CA 95113
Ph: 408.287.9501   Fax: 408.287.2583

**Pleasanton Office**
6155 Stoneridge Drive
Pleasanton, CA 94588
Ph: 925.224.7780  Fax: 925.224.7782

# FAX COVER SHEET

TO:           John F. Hornick

FAX NO:       2024084400

FROM:         Jim Towery


MATTER:       The Facebook, Inc. v. ConnectU, Inc.

DATE:         12/16/2008 9:01:55 AM

NO PAGES:     5

MESSAGE:

    Please see attached.

CONFIDENTIALITY NOTICE

The documents accompanying this telecopy transmission contain confidential information belonging to the sender which is legally privileged.  The information is intended only for the use of the individual or entity named above.  If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this telecopied information is strictly prohibited.  If you have received this telecopy in error, please immediately notify us by telephone to arrange for the return of the original documents to us.

If this fax is incomplete or difficult to read, please call (408) 287-9501

EXHIBIT C



**HOGE, FENTON JONES & APPEL, INC.**

Attorneys at Law | San Jose | Pleasanton | East Palo Alto | Hollister

James E. Towery
408.947.2432
jet@hogefenton.com

December 16, 2008

<u>VIA FACSIMILE, U.S. MAIL AND EMAIL</u>

Sean F. O'Shea
O'Shea Partners LLP
90 Park Avenue, 20th Floor
New York, NY 10016

      Re:    The Facebook, Inc. v. ConnectU, Inc.
              Our File No.: 80696

Dear Mr. O'Shea:

    We have been informed that the Special Master, George Fisher, has completed all tasks necessary on his part to culminate the settlement agreement between the parties, as of Monday morning. Accordingly, ConnectU, Inc. is now a wholly owned subsidiary of The Facebook, Inc.

    The purpose of this letter is to advise you that this firm has been retained to represent ConnectU, Inc. in all pending litigation. You are hereby notified that <u>you and your firm no longer have authority to take any legal action on behalf of ConnectU, Inc., in any forum.</u>

    Enclosed is a stipulation for your withdrawal as counsel of record in the matter pending before the Ninth Circuit Court of Appeals. Please review, sign and return the stipulation to my office via facsimile by noon (Pacific Standard Time) tomorrow, Wednesday, December 17, 2008. If you fail to do so, we will promptly file a motion for substitution before the Ninth Circuit. I trust that will not be necessary.

            Sincerely,

            HOGE, FENTON, JONES & APPEL, INC.

            James E. Towery

JET
ENCLOSURE
cc:    Mark Howitson

\\HFJAFS\NDrive\80696\Let\375025.doc

1   JAMES E. TOWERY -- BAR NO. 74058
    ALISON P. BUCHANAN -- BAR NO. 215710
2   JILL E. FOX -- 243945
    HOGE, FENTON, JONES & APPEL, INC.
3   Sixty South Market Street, Suite 1400
    San Jose, California 95113-2396
4   Phone: (408) 287-9501
    Fax: (408) 287-2583
5
    Attorneys for
6   CONNECTU, INC. (formerly known as
    CONNECTU, LLC)
7

8                    UNITED STATES COURT OF APPEALS

9                       FOR THE NINTH CIRCUIT

10  THE FACEBOOK, INC. and MARK          No. 08-16745
    ZUCKERBERG                           (Consolidated with Case Nos. 08-16849 and
11                                       08-16873)

12        Plaintiffs-Appellees,          D.C. No. 5:07-cv-01389-JW
                                         Northern District of California,
13  vs.                                  San Jose

14  CONNECTU, INC. (formerly known as
    CONNECTU, LLC),
15                                       STIPULATION AND [PROPOSED] ORDER
          Defendant-Appellant,           FOR WITHDRAWAL AND SUBSTITUTION
16                                       OF COUNSEL FOR DEFENDANT-
    and                                  APPELLANT CONNECTU, INC.
17
    PACIFIC NORTHWEST SOFTWARE,
18  INC., WINSTON WILLIAMS, and
    WAYNE CHANG,
19
          Defendants.
20

21        THE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD, BE

22  INFORMED that Defendant-Appellant ConnectU, Inc. makes the following substitution of

23  counsel:

24        1.    Former counsel Boies Schiller & Flexner LLP and Finnegan, Henderson,

25              Farabow, Garrett & Dunner LLP hereby withdraw as counsel of record for

26              ConnectU, Inc.; and

27        2.    New counsel Hoge Fenton Jones & Appel, Inc. is hereby substituted as the

28              attorneys of record for ConnectU, Inc.

                                         -1-

1  The undersigned consent to this substitution.  The contact information for new
2  counsel is as follows:

3          JAMES E. TOWERY -- BAR NO. 74058
           ALISON P. BUCHANAN -- BAR NO. 215710
4          JILL E. FOX -- BAR NO. 243945
           HOGE, FENTON, JONES & APPEL, INC.
5          Sixty South Market Street, Suite 1400
           San Jose, California 95113-2396
6          Phone: (408) 287-9501
           Fax:  (408) 287-2583
7          jet@hogefenton.com
           apb@hogefenton.com
8          jef@hogefenton.com

9

10 DATED: December __, 2008

11

12                                        _____
                                          Mark Howitson
13                                        Sole Officer and Director
                                          CONNECTU, INC.
14

15 DATED: December __, 2008

16

17                                        _____
                                          D. Michael Underhill,
18                                        BOIES SCHILLER & FLEXNER, LLP

19 DATED: December __, 2008

20

21                                        _____
                                          Scott Mosko
22                                        FINNEGAN, HENDERSON, FARABOW,
                                          GARRETT & DUNNER, LLP
23 DATED: December 15, 2008

24

25                                        _____
                                          James E. Towery
26                                        HOGE, FENTON, JONES & APPEL, INC.

27

28
                                   -2-
   STIPULATION AND [PROPOSED] ORDER FOR WITHDRAWAL AND SUBSTITUTION OF COUNSEL
   Case No. 08-16745 (consolidated with 08-16849 and 08-16873)

EXHIBIT D

# O'SHEA PARTNERS LLP

521 FIFTH AVENUE
25th FLOOR
NEW YORK, NEW YORK 10175

SEAN F. O'SHEA
MICHAEL E. PETRELLA
—
JONATHAN R. ALTSCHULER
MARC D. FEINGOLD
JULIE O'SHEA
ROBERT R. VIDUCICH
MARK A. WEISSMAN

(212) 682-4426
Fax (212) 682-4437
www.osheapartners.com

December 17, 2008

**VIA EMAIL**

James Towery, Esq.
Hoge, Fenton, Jones & Appel, Inc.
60 South Market Street
Suite 1400
San Jose, California 95113-2396

Re:   *The Facebook, Inc. v. ConnectU, Inc.*

Dear Mr. Towery:

I am not counsel of record for ConnectU, Inc. in the Ninth Circuit as your letter of December 16, 2008 suggests. Therefore, I have not executed the stipulation as requested by your letter.

Very truly yours,

Sean F. O'Shea

EXHIBIT E

**Quintana, Sandy**

| | |
|---|---|
| **From:** | Hornick, John [John.Hornick@finnegan.com] |
| **Sent:** | Wednesday, December 17, 2008 11:29 AM |
| **To:** | Towery, James E. |
| **Cc:** | Buchanan, Alison P.; Quintana, Sandy; Mosko, Scott; Washington, Tamara; Esquenet, Margaret; Schoenfeld, Meredith |
| **Subject:** | RE: ConnectU, Inc. |

Dear James:

We write in response to your letters of December 16, 2008. Please provide us with documentation that the requests contained in your letters have been authorized by a properly appointed officer of new ConnectU, Inc.

Sincerely,

John

**John F. Hornick**
Attorney at Law
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
901 New York Avenue, NW, Washington, DC 20001-4413
202.408.4076 | fax 202.408.4400| john.hornick@finnegan.com | www.finnegan.com

# FINNEGAN

**From:** Quintana, Sandy [mailto:SLQ@hogefenton.com]
**Sent:** Tuesday, December 16, 2008 12:45 PM
**To:** Mosko, Scott; Hornick, John
**Cc:** Towery, James E.; Buchanan, Alison P.
**Subject:** ConnectU, Inc.

Dear Counsel:

Please see attached correspondence from Jim Towery regarding the above-referenced matter.

This e-mail message is intended only for individual(s) to whom it is addressed and may contain information that is privileged, confidential, proprietary, or otherwise exempt from disclosure under applicable law. If you believe you have received this message in error, please advise the sender by return e-mail and delete it from your mailbox. Thank you.

EXHIBIT F



# HOGE, FENTON
# JONES & APPEL, INC.

Attorneys at Law | San Jose | Pleasanton | East Palo Alto | Hollister

James E. Towery
408.947.2432
jet@hogefenton.com

December 17, 2008

<u>VIA EMAIL AND FACSIMILE</u>

Scott R. Mosko
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
Stanford Research Park
3300 Hillview Avenue
Palo Alto, CA 94304-1203

John F. Hornick
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
901 New York Avenue, NW
Washington, DC 20001

Re:     The Facebook, Inc. v. ConnectU, Inc.
        Our File No.: 80696

Dear Mr. Mosko and Mr. Hornick:

This letter serves to respond to your email earlier today wherein you requested "documentation that the requests contained in your letters have been authorized by a properly appointed officer of new ConnectU, Inc." Please be advised that pursuant to the District Court's Judgment of which you are no doubt aware, the new shareholder of all of the Connect U shares appointed Mark Howitson as the sole officer and director of ConnectU, Inc. ConnectU, Inc. retained my law firm as corporate counsel.

ConnectU, Inc. instructed my firm to obtain substitutions of counsel from Finnegan, Henderson, et al., as well as the other firms that previously represented ConnectU, Inc. Enclosed is written confirmation, from Mr. Howitson, that he is the sole officer and director of ConnectU, Inc. and that he has authorized Hoge, Fenton to obtain a substitution from your firm.

\\HFJAFS\NDrive\80696\Let\375020.doc

San Jose Office | 60 South Market Street, Suite 1400, San Jose, California 95113-2396
phone 408.287.9501     fax 408.287.2583     www.hogefenton.com

Scott R. Mosko and John F. Hornick
December 17, 2008
Page 2

     Please advise whether you will stipulate to the substitution as soon as possible. If we
have not heard from you by five p.m. PST tomorrow (December 18, 2008), we will conclude that
you are refusing to follow your client's request that you sign the substitution. Please also await
further instruction from Connect U.

                    Sincerely,

                    HOGE, FENTON, JONES & APPEL, INC.

                    James E. Towery

JET
ENCLOSURE
cc:    Mark Howitson (via email only)

## Buchanan, Alison P.

**From:** Mark Howitson [connectuhq@gmail.com]
**Sent:** Wednesday, December 17, 2008 4:39 PM
**To:** Towery, James E.; Buchanan, Alison P.
**Subject:** Substitution

This confirms that I, Mark Howitson, have been appointed the sole officer and director of ConnectU, Inc. ConnectU, Inc. has retained James E. Towery and the law firm Hoge, Fenton, Jones & Appel to serve as corporate counsel for ConnectU, Inc. I previously instructed Mr. Towery to obtain substitutions of counsel from Finnegan, Henderson, et al., as well as the other firms that previously represented ConnectU, Inc. I hereby instruct Finnegan, Henderson, et al., as ConnectU, Inc.'s counsel of record in the pending Ninth Circuit Court of Appeals action, to immediately sign the substitution of counsel provided to it by Hoge, Fenton, Jones and Appel on December 16, 2008 and await further instruction.

Mark Howitson



# HOGE FENTON
# JONES & APPEL INC.

Attorneys at Law | San Jose | Pleasanton | Modesto | Hollister

**San Jose Office**

60 South Market Street
Suite 1400, San Jose, CA 95113
Ph: 408.287.9501 Fax: 408.287.2583

**Pleasanton Office**

6155 Stoneridge Drive
Pleasanton, CA 94588
Ph: 925.224.7780 Fax: 925.224.7782

# FAX COVER SHEET

TO:             John F. Hornick

FAX NO:         2024084400

FROM:           Jim Towery


MATTER:         Facebook, Inc./ConnectU, Inc.

DATE:           12/17/2008 5:25:36 PM

NO PAGES:    4

MESSAGE:


      Please see attached.

CONFIDENTIALITY NOTICE

The documents accompanying this telecopy transmission contain confidential information belonging to the sender which
is legally privileged. The information is intended only for the use of the individual or entity named above. If you are not
the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in
reliance on the contents of this telecopied information is strictly prohibited. If you have received this telecopy in error,
please immediately notify us by telephone to arrange for the return of the original documents to us.

If this fax is incomplete or difficult to read, please call (408) 287-9501

EXHIBIT G

# BOIES, SCHILLER & FLEXNER LLP

5301 Wisconsin Avenue N.W. * Washington, DC 20015-2015 * PH 202.237.2727 * FAX 202.237.6131

December 18, 2008

FILE # 80696
VOLUME C
DATE REC'D 12/22
INITIALS W
DIARY
ROUTE JET
AVIS
JET

VIA EMAIL jet@hogefenton.com and US MAIL

James E. Towery
Hoge, Fenton, Jones & Appel
60 South Market Street
Suite 1400
San Jose, CA 95113-2396

RE: Facebook v. ConnectU

Dear Mr. Towery:

Your letter of today makes reference to the new shareholder appointing Mark Howitson as the sole officer and director of ConnectU, Inc. We request that you provide us with the appointment documents. And while we assume that the e-mail you provided us was sent by Mr. Howitson, we request the communication over his signature.

With respect to your request that we agree to substitute counsel, we believe that, given the rather unusual circumstances, it would be preferable for you to file a motion to substitute with the Ninth Circuit. That way, the position of all parties can be presented to the Court with respect to these matters of client representation.

Finally, on behalf of the Founders, we request that ConnectU not take any action that would interfere with the pending appeal. As you are probably aware, ConnectU owes substantial debts to the Founders, and ConnectU's most significant assets are its claims against Facebook and persons associated with Facebook. Consequently, we believe that any attempt by ConnectU to benefit its current shareholder by extinguishing that claim would be a fraudulent conveyance and legally actionable.

Thank you.

Very truly yours,

D. Michael Underhill

D. Michael Underhill

DMU/tle

EXHIBIT H



**HOGE, FENTON JONES & APPEL, INC.**

Attorneys at Law | San Jose | Pleasanton | East Palo Alto | Hollister

James E. Towery
408.947.2432
jet@hogefenton.com

December 18, 2008

<u>VIA FACSIMILE AND EMAIL</u>

D. Michael Underhill
Boies, Schiller & Flexner LLP
5301 Wisconsin Avenue, N.W.
Washington, D.C. 20015

   Re: The Facebook, Inc. v. ConnectU, Inc.
     Our File No.: 80696

Dear Mr. Underhill:

  This letter serves to respond to your letter yesterday wherein you requested instructions directly from a duly-elected officer of ConnectU, Inc. Please be advised that pursuant to the District Court's Judgment of which you are no doubt aware, the new shareholder of all of the Connect U shares appointed Mark Howitson as the sole officer and director of ConnectU, Inc.

  ConnectU, Inc. retained my law firm as corporate counsel and has instructed my firm to obtain substitutions of counsel from Boies Schiller, et al., as well as the other firms that previously represented ConnectU, Inc. Enclosed is written confirmation, from Mr. Howitson, that he is the sole officer and director of ConnectU, Inc. and that he has authorized Hoge, Fenton to obtain a substitution from your firm.

  Please advise whether you will stipulate to the substitution as soon as possible. If we have not heard from you by five p.m. PST today, we will conclude that you are refusing to follow your client's request that you sign the substitution. Please also await further instruction from Connect U.

       Very truly yours,

       HOGE, FENTON, JONES & APPEL, INC.

       James E. Towery

JET
ENCLOSURE
cc: Mark Howitson

**Buchanan, Alison P.**

---

**From:**   Mark Howitson [connectuhq@gmail.com]
**Sent:**    Thursday, December 18, 2008 9:28 AM
**To:**       Towery, James E.; Buchanan, Alison P.
**Subject:** Boise Letter

This confirms that I, Mark Howitson, have been appointed the sole officer and director of ConnectU, Inc. ConnectU, Inc. retained James E. Towery and the law firm Hoge, Fenton, Jones & Appel to serve as its corporate counsel. I previously instructed Mr. Towery to obtain substitutions of counsel from Boise Schiller et al., as well as the other firms that previously represented ConnectU, Inc. I hereby instruct Boise Schiller, et al., as ConnectU, Inc.'s counsel of record in all actions anywhere, to immediately sign the substitution of counsel provided to it by Hoge, Fenton, Jones and Appel on December 16, 2008 and await further instruction. All communications concerning this matter should be exclusively through Mr. Towery's office.

- Mark Howitson



# HOGE FENTON JONES & APPEL INC.

Attorneys at Law | San Jose | Pleasanton | Modesto | Hollister

**San Jose Office**

60 South Market Street
Suite 1400, San Jose, CA 95113
Ph: 408.287.9501 Fax: 408.287.2583

**Pleasanton Office**

6155 Stoneridge Drive
Pleasanton, CA 94588
Ph: 925.224.7780 Fax: 925.224.7782

# FAX COVER SHEET

TO:         D. Michael Underhill

FAX NO:     2022376131

FROM:       Jim Towery

MATTER:     Facebook, Inc./ConnectU, Inc.

DATE:       12/18/2008 10:09:50 AM

NO PAGES:   3

MESSAGE:

    Please see attached.

CONFIDENTIALITY NOTICE

The documents accompanying this telecopy transmission contain confidential information belonging to the sender which is legally privileged. The information is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this telecopied information is strictly prohibited. If you have received this telecopy in error, please immediately notify us by telephone to arrange for the return of the original documents to us.

If this fax is incomplete or difficult to read, please call (408) 287-9501

EXHIBIT I

# FINNEGAN | FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
WWW.FINNEGAN.COM

SCOTT R. MOSKO
650.849.6672
scott.mosko@finnegan.com

December 18, 2008

James E. Towery                                        **VIA E-MAIL**
Hoge, Fenton, Jones & Appel, Inc.
60 South Market Street
Suite 1400
San Jose, CA 95113-2396

> *Facebook and Zuckerberg v. ConnectU, et al.,* Case No. 5:07-cv-01389
> *ConnectU, Inc. v. Facebook, Inc.,* Case No. 1:078-cv-10593-DPW
> *ConnectU LLC v. Zuckerberg,* Case No. 1:04-cv-11923-DPW

Dear Jim:

Please send us a corporate resolution appointing Mark Howitson as new ConnectU's sole officer and director, and a signed letter from Mark Howitson that specifies the action he wants us to take. I will respond promptly, but given my schedule, I may not be able to get back to you within the specified timeframes.

Sincerely,

Scott R. Mosko

SRM/lmm

## Quintana, Sandy

| | |
|---|---|
| **From:** | Towery, James E. |
| **Sent:** | Friday, December 19, 2008 9:33 PM |
| **To:** | Quintana, Sandy |
| **Subject:** | FW: ConnectU |

pp

---

**From:** Mosko, Scott [mailto:scott.mosko@finnegan.com]
**Sent:** Thursday, December 18, 2008 12:15 PM
**To:** Towery, James E.
**Cc:** Hornick, John
**Subject:** ConnectU

Please see attached.

**Scott R. Mosko**

Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
3300 Hillview Ave, Palo Alto, CA 94304-1203
650.849.6672 | fax 650.849.6666 | scott.mosko@finnegan.com | www.finnegan.com

---

# FINNEGAN

This e-mail message is intended only for individual(s) to whom it is addressed and may contain information that is privileged, confidential, proprietary, or otherwise exempt from disclosure under applicable law. If you believe you have received this message in error, please advise the sender by return e-mail and delete it from your mailbox. Thank you.

EXHIBIT J



# HOGE, FENTON
# JONES & APPEL, INC.

Attorneys at Law | San Jose | Pleasanton | East Palo Alto | Hollister

James E. Towery
408.947.2432
jet@hogefenton.com

December 18, 2008

<u>VIA FACSIMILE AND EMAIL</u>

Scott R. Mosko
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
Stanford Research Park
3300 Hillview Avenue
Palo Alto, CA 94304-1203

John F. Hornick
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
901 New York Avenue, NW
Washington, DC 20001

D. Michael Underhill
Boies, Schiller & Flexner LLP
5301 Wisconsin Ave. NW
Washington, DC 20015

      Re:    Facebook, Inc. v. ConnectU, Inc.
             Our File No.: 80696

Dear Mr. Mosko, Mr. Hornick and Mr. Underhill:

      This letter serves to respond to your requests for communication directly from Mr. Howitson evidencing ConnectU's request that you sign the stipulation to substitute, which we previously provided you. Although you are not entitled to either a letter directly from Mr. Howitson, or a copy of any board resolutions, we are providing those things to you so that ConnectU can protect its rights and assess its obligations. Therefore, enclosed is correspondence from Mr. Howitson, along with the board resolution appointing him ConnectU's sole officer and director.

      Now that we have complied with your demands, please immediately sign the stipulation by noon PST on Friday, December 19, 2008. We enclose another copy of the stipulation for your convenience.

      Also, please note that your refusal to follow your client's direct instructions to sign the stipulation and your failure to provide the client's documents, as requested, is obstructionist and harassment (not to mention a violation of the Cal. Rules of Prof Conduct Rule 3-700). Hopefully it will not be necessary to bring these issues to the court's attention, although we grow ever more

Document in ProLaw

D. Michael Underhill
Scott R. Mosko
John F. Hornick
December 18, 2008
Page 2

concerned that we are headed in that direction. It is indisputable that ConnectU has every right
to your undivided loyalty.

Sincerely,

HOGE, FENTON, JONES & APPEL, INC.

Ali Bnch for

James E. Towery

ENCLOSURES

cc:    Mark Howitson (via email only)

*Connect U, Inc.*

December 18, 2008

<u>VIA FACSIMILE AND EMAIL</u>

Scott R. Mosko
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
Stanford Research Park
3300 Hillview Avenue
Palo Alto, CA 94304-1203

John F. Hornick
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
901 New York Avenue, NW
Washington, DC 20001

D. Michael Underhill
Boies, Schiller & Flexner LLP
5301 Wisconsin Ave. NW
Washington, DC 20015

Re:    Facebook, Inc. v. ConnectU, Inc.
       Our File No.: 80696

Dear Mr. Underhill, Mr. Mosko and Mr. Hornick:

Pursuant to your request, attached is the ConnectU, Inc. board resolution appointing me the sole officer and director of the company. I have retained Hoge, Fenton, Jones & Appel to represent ConnectU, Inc. in all matters. As Hoge, Fenton has previously directed you (at my request), please do the following:

1. Cease all work on behalf of ConnectU, Inc.;

2. Immediately provide all ConnectU, Inc. documents in your possession, custody or control to Hoge, Fenton;

3. Confirm to me in writing that you will abide by your obligations of confidentiality and will not discuss this matter or your representation of Connect U (past or present) with anyone outside of your respective firms without my express written permission; and

4. <u>Immediately sign the enclosed stipulation to substitute counsel, which Hoge, Fenton previously provided to you.</u> If they do not receive it by Friday noon PST, we will assume that you are disregarding your client's instructions.

Document in ProLaw

D. Michael Underhill
Scott R. Mosko
John F. Hornick
December 18, 2008
Page 2


     Connect U hereby withdraws from any and all joint defense agreements, if any.

     Please direct all communication to ConnectU through Hoge, Fenton. Finally, please note that any instructions you receive from Hoge, Fenton have been approved by me as the sole officer or director of ConnectU, Inc. I will not be communicating directly with you in the future.

          Sincerely,

          CONNECTU, INC.

          Mark Howitson

1  JAMES E. TOWERY -- BAR NO. 74058
   ALISON P. BUCHANAN -- BAR NO. 215710
2  JILL E. FOX -- 243945
   HOGE, FENTON, JONES & APPEL, INC.
3  Sixty South Market Street, Suite 1400
   San Jose, California 95113-2396
4  Phone: (408) 287-9501
   Fax: (408) 287-2583
5
   Attorneys for
6  CONNECTU, INC. (formerly known as
   CONNECTU, LLC)
7

8              UNITED STATES COURT OF APPEALS

9                  FOR THE NINTH CIRCUIT

10                                     No. 08-16745
   THE FACEBOOK, INC. and MARK        (Consolidated with Case Nos. 08-16849 and
11 ZUCKERBERG                         08-16873)

12       Plaintiffs-Appellees,       D.C. No. 5:07-cv-01389-JW
                                      Northern District of California,
13 vs.                               San Jose

14 CONNECTU, INC. (formerly known as
   CONNECTU, LLC),
15                                    STIPULATION AND [PROPOSED] ORDER
         Defendant-Appellant,        FOR WITHDRAWAL AND SUBSTITUTION
16                                    OF COUNSEL FOR DEFENDANT-
   and                               APPELLANT CONNECTU, INC.
17
   PACIFIC NORTHWEST SOFTWARE,
18 INC., WINSTON WILLIAMS, and
   WAYNE CHANG,
19
         Defendants.
20

21      THE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD, BE

22 INFORMED that Defendant-Appellant ConnectU, Inc. makes the following substitution of

23 counsel:

24      1.      Former counsel Boies Schiller & Flexner LLP and Finnegan, Henderson,

25              Farabow, Garrett & Dunner LLP hereby withdraw as counsel of record for

26              ConnectU, Inc.; and

27      2.      New counsel Hoge Fenton Jones & Appel, Inc. is hereby substituted as the

28              attorneys of record for ConnectU, Inc.
                                      -1-
   STIPULATION AND [PROPOSED] ORDER FOR WITHDRAWAL AND SUBSTITUTION OF COUNSEL
   Case No. 08-16745 (consolidated with 08-16849 and 08-16873)

1    The undersigned consent to this substitution.  The contact information for new

2  counsel is as follows:

3              JAMES E. TOWERY -- BAR NO. 74058
             ALISON P. BUCHANAN -- BAR NO. 215710
4              JILL E. FOX -- BAR NO. 243945
             HOGE, FENTON, JONES & APPEL, INC.
5              Sixty South Market Street, Suite 1400
             San Jose, California 95113-2396
6              Phone: (408) 287-9501
             Fax:  (408) 287-2583
7              jet@hogefenton.com
             apb@hogefenton.com
8              jef@hogefenton.com

9

10  DATED: December ___, 2008

11

12                                              _____
                                             Mark Howitson
13                                              Sole Officer and Director
                                             CONNECTU, INC.
14

15  DATED: December ___, 2008

16

17                                              _____
                                             D. Michael Underhill,
18                                              BOIES SCHILLER & FLEXNER, LLP

19  DATED: December ___, 2008

20

21                                              _____
                                             Scott Mosko
22                                              FINNEGAN, HENDERSON, FARABOW,
                                             GARRETT & DUNNER, LLP
23  DATED: December 15, 2008

24

25                                              _____
                                             James E. Towery
26                                              HOGE, FENTON, JONES & APPEL, INC.

27

28
                                    -2-
     _____
     STIPULATION AND [PROPOSED] ORDER FOR WITHDRAWAL AND SUBSTITUTION OF COUNSEL
     Case No. 08-16745 (consolidated with 08-16849 and 08-16873)



## HOGE FENTON
## JONES & APPEL INC.

Attorneys at Law | San Jose | Pleasanton | Modesto | Hollister

**San Jose Office**

60 South Market Street
Suite 1400, San Jose, CA 95113
Ph: 408.287.9501   Fax: 408.287.2583

**Pleasanton Office**

6155 Stoneridge Drive
Pleasanton, CA 94588
Ph: 925.224.7780  Fax: 925.224.7782

# FAX COVER SHEET

| | |
|---|---|
| TO: | D. Michael Underhill |
| FAX NO: | 2022376131 |
| FROM: | Jim Towery |
| | |
| MATTER: | Facebook, Inc./ConnectU, Inc. |
| DATE: | 12/19/2008 7:50:16 AM |
| NO PAGES: | 11 |
| MESSAGE: | |

Please see attached.

CONFIDENTIALITY NOTICE

The documents accompanying this telecopy transmission contain confidential information belonging to the sender which is legally privileged.  The information is intended only for the use of the individual or entity named above.  If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this telecopied information is strictly prohibited.  If you have received this telecopy in error, please immediately notify us by telephone to arrange for the return of the original documents to us.

If this fax is incomplete or difficult to read, please call (408) 287-9501

EXHIBIT K

# BOIES, SCHILLER & FLEXNER LLP

5301 Wisconsin Avenue N.W. • Washington, DC 20015-2015 • PH 202.237.2727 • FAX 202.237.6131

December 22, 2008

**VIA EMAIL jet@hogefenton.com and US MAIL**

James E. Towery
Hoge, Fenton, Jones & Appel
60 South Market Street
Suite 1400
San Jose, CA 95113-2396

RE: Facebook v. ConnectU

Dear Mr. Towery:

Our firm will stipulate to the proposed substitution of counsel for ConnectU, Inc. if The Facebook, Inc. and ConnectU, Inc. agree to completely indemnify BSF from any liabilities arising from or relating to such substitution. If not, we will accept the offer, made in your December 16 letter, for you to petition the Ninth Circuit for substitution, and will cooperate in any efforts to have your motion heard expeditiously. We are as interested as you are in resolving this matter promptly but need to ensure that the legal rights of the Founders are appropriately protected. In this regard, please confirm that ConnectU will not take any actions to interfere with the pending appeal.

Thank you.

Very truly yours,

*D. Michael Underhill*

D. Michael Underhill

DMU/tle

EXHIBIT L



# FINNEGAN

FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
WWW.FINNEGAN.COM

SCOTT R. MOSKO
650.849.6672
scott.mosko@finnegan.com

December 22, 2008

James E. Towery                                                          **VIA FEDERAL EXPRESS**
Hoge, Fenton, Jones & Appel, Inc.
60 South Market Street
Suite 1400
San Jose, CA 95113-2396

> *Facebook and Zuckerberg v. ConnectU, et al.,* Case No. 5:07-cv-01389
> *ConnectU, Inc. v. Facebook, Inc.,* Case No. 1:078-cv-10593-DPW
> <u>*ConnectU LLC v. Zuckerberg,* Case No. 1:04-cv-11923-DPW</u>

Dear Jim:

As a courtesy, we are providing to you a copy of the pleadings in the Ninth Circuit proceeding that we have maintained during the course of our involvement.

If you have any questions, please let me know.

Sincerely,

*Scott R. Mosko* /lmm

Scott R. Mosko

SRM/lmm
Enclosures

FILE # 80696
VOLUME C
DATE REC'D 12/23
INITIALS ER
DIARY
ROUTE JET
ATB
JEF

STANFORD RESEARCH PARK | 3300 HILLVIEW AVENUE | PALO ALTO, CA 94304-1203
PHONE: 650.849.6600 | FAX: 650.849.6666

EXHIBIT M

 **ZUCKERMAN SPAEDER** LLP

1800 M STREET, NW  SUITE 1000
WASHINGTON, DC 20036-5802
202 778 1800  202.822.8106 fax  www.zuckerman.com

Thomas B. Mason
(202) 778-1844
tmason@zuckerman.com

January 7, 2009

*Via Facsimile And Federal Express*

James E. Towery, Esquire
Hoge, Fenton, Jones & Appel, Inc.
60 South Market Street
Suite 1400
San Jose, CA 95113-2396

Re:  *Facebook, Inc. v. ConnectU, Inc.*

Dear Mr. Towery:

Zuckerman Spaeder LLP represents Finnegan, Henderson, Farabow, Garrett & Dunner LLP ("Finnegan") with regard to your December 23, 2008 request, on behalf of ConnectU, Inc. ("ConnectU"), that Finnegan provide you with files from its representation of ConnectU. For the reasons set forth below, ConnectU, under its current ownership, is not entitled to the files requested.

As of December 15, 2008, ConnectU ceased to exist as an independent corporate entity and became nothing more than an alter ego of Facebook, Inc. ("Facebook"). Facebook is ConnectU's sole shareholder, and its sole director, Mark Howitson, also serves as ConnectU's President, Secretary, Treasurer, and Chief Financial Officer. ConnectU has no other officers. In addition to serving as ConnectU's sole officer and director, Mr. Howitson is Deputy General Counsel of Facebook. Indeed, to Finnegan's knowledge, ConnectU presently has no other employees besides Mr. Howitson, no assets or revenues, and minimal, if any, business activities. In fact, ConnectU's only present activity appears to be to oppose the legal positions of its former owners.

Prior to December 15, 2008, ConnectU was owned and controlled by Tyler and Cameron Winklevoss and Mr. Divya Narendra, current clients of Finnegan. These individuals litigated and still continue to litigate against Facebook in the Ninth Circuit and the United States District Court for the District of Massachusetts. From 2004 until December 15, 2008, ConnectU, also represented by Finnegan, was similarly adverse to Facebook in the above proceedings. Mr. Howitson, ConnectU's current sole officer and director, is undoubtedly familiar with these proceedings. In his capacity as Deputy General Counsel of Facebook, he filed declarations on behalf of Facebook in the federal court proceeding in California. In addition, prior to joining

WASHINGTON, DC          NEW YORK          TAMPA          BALTIMORE          WILMINGTON, DE



**ZUCKERMAN** SPAEDER LLP

James E. Towery, Esquire
January 7, 2009
Page 2

Facebook in November 2007, Mr. Howitson was a partner in the Menlo Park, California office of Orrick Herrington & Sutcliffe LLP ("Orrick"), the same office of Orrick that has represented Facebook in its litigations against Messrs. Winklevoss and Narendra since 2004.

Under the circumstances described above, ConnectU is not entitled to Finnegan's files concerning its prior representation of ConnectU. *E.g., Tekni-Plex v. Meyner and Landis*, 89 N.Y. 2d 123, 137-39 (1996) (holding that successor entity had no right to attorneys' files relating to the matter that led to the change in control); *Orbit One Communications, Inc. v. Numerex Corp.*, 2008 WL 4778133 *4-5 (S.D.N.Y. Oct. 31, 2008) (same). At all relevant times, Finnegan's representation of ConnectU was a joint representation with its current clients, the Winklevosses and Mr. Narendra. Those individuals continue to litigate against Facebook, ConnectU's controlling and indeed sole shareholder. Finnegan would be remiss in, and not in furtherance of, its ethical obligations if it were to turn over to you all of the materials that you have requested.

ConnectU's request for Finnegan's files has no purpose other than to harass Finnegan and its clients. ConnectU is now the same entity as Facebook, and it already has, within its custody and control, the pleadings, production documents, correspondence, deposition transcripts, etc. that it is requesting from Finnegan. Despite this, Finnegan, as a courtesy, promptly provided you with copies of the pleadings and the appellate record in the Ninth Circuit case. In response, you expanded your request to encompass work product and other protected materials. Finnegan is ethically prohibited from providing you with any such protected materials.

As a further courtesy, we enclose (with the hard copy of this letter) the docket sheets for the case that was pending in the United States District Court for the Northern District of California and for the case that is currently pending in the United States District Court for the District of Massachusetts. If there are specific pleadings or other items identified on these docket sheets that Mr. Howitson or Facebook do not already have and that you would like Finnegan to provide, please let me know.

Please feel free to contact me if you have any questions.

Sincerely yours,

Thomas B. Mason

TBM:gbh
Enclosures
cc:    Scott Mosko, Esquire (w/o encl.)
       John Hornick, Esquire (w/o encl.)

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

————————————

## Nos.  08-16745, 08-16849, 08-16873 (consolidated)

————————————

## THE FACEBOOK, INC., *et al.*,
### Plaintiffs—Appellees,

v.

## CONNECTU, INC., *et al.*,
### Defendants—Appellants.

————————————

## CONNECTU FOUNDERS' RESPONSE TO
## MOTION TO DISQUALIFY COUNSEL

David A. Barrett
BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue
New York, NY 10022
(212) 446-2300

D. Michael Underhill
Evan A. Parke
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue NW
Washington, D.C. 20015
(202) 237-2727

Steven C. Holtzman
BOIES, SCHILLER & FLEXNER LLP
1999 Harrison Street
Oakland, CA 94612
(510) 874-1000

Scott R. Mosko
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER LLP
Stanford Research Park
3300 Hillview Avenue
Palo Alto, CA 94304-1203
(650) 849-6600

Sean F. O'Shea
O'SHEA PARTNERS LLP
521 Fifth Avenue
New York, NY 10175
(212) 682-4426

*Attorneys for Non-Movants /
Defendants / Appellants Cameron
Winklevoss, Tyler Winklevoss and
Divya Narendra*

February 13, 2009

TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. ii

INTRODUCTION ................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND ...........................................3

   A.   The Massachusetts Action ...........................................................3

   B.   California Trial Court Proceedings.................................................4

   C.   The February 2008 Mediation and Litigation Concerning the
       Alleged Settlement Agreement......................................................5

   D.   Facebook Causes ConnectU to Switch Sides ..................................6

   E.   Pending Appeals before this Court.................................................7

ARGUMENT ........................................................................................8

   A.   The Pending Appeals and the Motion to Disqualify Are
       Inextricably Intertwined and Should Be Heard Together ..................9

   B.   There Is No Current Client Conflict because Boies and Finnegan Are Not
       Now Representing ConnectU in the Appeals before this Court and O'Shea
       Has Never Represented ConnectU before this Court...................10

   C.   There Is No Conflict of Interest under the Rules Governing Former Clients
       Because There Is No Expectation of Confidentiality where Clients Were
       Previously Represented Jointly ..................................................12

   D.   ConnectU Is Not Entitled to the Files of Boies, Finnegan or O'Shea ..........15

CONCLUSION ...................................................................................20

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Allegaert v. Perot*,
  565 F.2d 246 (2d Cir. 1977).................................................................14

*Bass Pub. Ltd. Co. v. Promus Cos., Inc.*,
  1994 WL 9680 (S.D.N.Y. Jan. 10, 1994) .............................................14, 15, 18

*Broad v. Sealaska Corp.*,
  85 F.3d 422 (9th Cir. 1996) ...............................................................15

*Commodity Futures Trading Comm'n v. Weintraub*,
  471 U.S. 343 (1985)........................................................................20

*Providence Journal Co. v. FBI*,
  595 F.2d 889 (1st Cir. 1979)...............................................................17

*Christensen v. United States District Court for the Central District of
California*,
  844 F.2d 694 (9th Cir. 1988) .............................................................13, 15

*Commercial Standard Title Co. v. Superior Court*,
  155 Cal. Rptr. 393 (Cal. Ct. App. 1979)..................................................19

*CRS Recovery, Inc. v. Laxton*,
  2008 WL 4408001 (N.D. Cal. Sept. 26, 2008) ..........................................1, 20

*Estate of Kime*,
  193 Cal. Rptr. 718 (Cal. Ct. App. 1983).................................................16

*Hunt v. Blackburn*,
  128 U.S. 464 (1888)........................................................................16

*Int'l Elect. Corp. v. Flanzer*,
  527 F.2d 1288 (2d Cir. 1975)..............................................................19

*Moeller v. Superior Court,*
   947 P.2d 279 (Cal. 1997) ...................................................................20

*Occidental Hotels Mgmt. B.V. v. Westbrook Allegro L.L.C.,*
   440 F. Supp.2d 303 (S.D.N.Y. 2006) ................................................14

*Optyl Eyeware v. Style Cos. Ltd.,*
   760 F.2d 1045 (9th Cir. 1985) ...........................................1, 3, 10, 20

*Orbit One Commc'n, Inc. v. Numerex Corp.,*
   2008 WL 4778133 (S.D.N.Y. Oct. 31, 2008) ...................................19

*Smyth v. United States,*
   302 U.S. 329 (1937) ...........................................................................17

*Sullivan v. Superior Court,*
   105 Cal. Rptr. 241 (Cal. Ct. App. 1972) ...........................................16

*Tekni-Plex, Inc. v. Meyner and Landis,*
   674 N.E.2d 663 (N.Y. 1996) .........................................................18, 19

*Truck Ins. Exch. v. Fireman's Fund Ins. Co.,*
   8 Cal. Rptr.2d 228 (Cal. Ct. App. 1992) ...........................................11

*Unified Sewerage Agency of Washington County, Oregon v. Jelco Inc.,*
   646 F.2d 1339 (9th Cir. 1981) ...........................................................12

*United States v. Bauer,*
   132 F.3d 504 (9th Cir. 1997) .............................................................16

## STATUTES

CAL. CIV. CODE §1668 ...........................................................................17

# RULES

ABA MODEL RULES OF PROF'L CONDUCT

    Rule 1.7 .........................................................................................10, 11

    Rule 1.9(a)......................................................................................12, 13

CALIFORNIA RULES OF PROF'L CONDUCT

    Rule 3-310(C)(2)..........................................................................10, 11

    Rule 3-310(E)................................................................................12, 13

DISTRICT OF COLUMBIA RULES OF PROF'L CONDUCT

    Rule 1.7 ...............................................................................................10

    Rule 1.9 ...............................................................................................12

FED. R. APP. P. 27(a)(2)(B)(iii) ...............................................................16

LOCAL RULES OF THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA, RULE 11-4(A) ................................10

MASSACHUSETTS RULES OF PROF'L CONDUCT

    Rule 1.9(a)..........................................................................................12

NEW YORK DISCIPLINARY RULES

    Rule 5-105............................................................................................10

    Rule 5-108(A) .....................................................................................12

# OTHER

RESTATEMENT 3D OF LAW GOVERNING LAWYERS, § 46, CMT C (2000) ...................20

## INTRODUCTION

This Court applies "particularly strict scrutiny" to litigants' efforts to gain tactical advantage by seeking to disqualify their adversaries' counsel. This high standard applies because "[t]he cost and inconvenience to clients and the judicial system from misuse of the [ethical] rules for tactical purposes is significant." *Optyl Eyeware v. Style Cos. Ltd.*, 760 F.2d 1045, 1050 (9th Cir. 1985); *see CRS Recovery, Inc. v. Laxton*, 2008 WL 4408001, at *1 (N.D. Cal. Sept. 26, 2008) (disqualification motions "should be granted only when of absolute necessity"). The pending motion is just such an effort. Facebook, Inc., through its newly-captive subsidiary ConnectU, Inc., seeks to use conflict of interest rules to cripple its long-time litigation adversaries, Cameron Winklevoss, Tyler Winklevoss and Divya Narendra (the "Founders" of ConnectU), by depriving them of their chosen counsel midway through the appeal process.

Facebook is an appellee or cross-appellant, and the Founders are appellants or cross-appellees, in five related appeals before this Court. The Founders' appeals challenge the district court's decision to enforce summarily a purported settlement agreement, without allowing discovery or an evidentiary hearing. *See* Brief of Appellants (No. 33 in Appeal No. 08-16745) (filed under seal).[1] The district court did so, even though the Founders produced unrebutted evidence that Facebook had fraudulently induced them to enter into the alleged settlement agreement and that the alleged settlement agreement lacked material terms. *Id.* at 8-12 (evidence of alleged fraud), 13-18 (evidence of incompleteness), 28-37 (analysis regarding securities fraud), 45-50 (analysis regarding incompleteness). Over the Founders' repeated objections, the district court ordered the Founders to tender their

---

[1] Unless otherwise noted, citations to specific docket numbers in this Opposition correspond to docket entries in Appeal No. 08-16745.

ConnectU stock to a Special Master in August 2008, and the Special Master to transfer the ConnectU stock to Facebook – ConnectU and the Founders' litigation adversary since 2004 – on December 15, 2008.

As a result of the forced stock transfer, ConnectU is now a wholly-owned Facebook subsidiary, and its sole director and officer is Facebook's Assistant General Counsel.   In the pending motion, Facebook attempts to use its newly-acquired control of ConnectU to disrupt the litigation and severely prejudice the Founders by disqualifying the Founders' lawyers – some of whom have represented them since these disputes began in 2004 – and accessing the entire contents of their lawyers' files.

Neither ethics rules nor case law support Facebook's litigation tactics. The Founders' counsel have always been adverse to Facebook's interests, and Facebook's initial victory in the district court, which is now on appeal, is the sole reason why ConnectU has changed allegiance.  If the Court adopts the Founders' position on appeal, reverses the district court, and orders Facebook to return the ConnectU shares to the Founders, then the interests of ConnectU and the Founders will once again be aligned.  Disqualifying the Founders' counsel and disclosing the files to their adversaries during the pending appeal irreparably injures the Founders in the event of reversal and would serve no legitimate purpose in the meantime; indeed, as shown below, the files should not be disclosed even if this Court were to affirm the decisions below.

The Founders respectfully request that the Court consider this motion together with the merits of the pending appeals on an expedited basis.  If the motion is not mooted by reversal on the merits, it should be denied for the reasons set forth below.

Alternatively, the Founders request a hearing on the instant motion to facilitate "particularly strict scrutiny," which the Court applies to such motions. *See Optyl*, 760 F.2d at 1050.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Massachusetts Action

As alleged in several complaints, in early 2004, Mark Zuckerberg broke with his Harvard classmates and business partners – the Founders – and launched a social networking website, Facebook.com, to compete with the Founders' planned website, which was initially called Harvardconnection.com and later renamed Connectu.com.  *See, e.g., ConnectU LLC v. Zuckerberg* et al., Case No. 1:04-CV-11923 (DPW) (D. Mass.) (No. 13, First Amended Complaint, filed Oct. 28, 2004, at ¶¶ 11-23).[2]  As alleged, using the Founders' ideas, the Facebook site was an instant and huge commercial and cultural success.  *Id.*  In response, ConnectU brought suit against Facebook in the District of Massachusetts alleging, *inter alia*, misappropriation of trade secrets.

Finnegan Henderson Farabow Garrett & Dunner LLP ("Finnegan") has represented two of the Founders since the inception of the Massachusetts action in September 2004, the third Founder since 2005, and continues to this day as their counsel in Massachusetts.  Boies Schiller & Flexner LLP ("Boies") became counsel of record for the Founders in the Massachusetts action in December 2008.

With respect to ConnectU, Finnegan represented it in the Massachusetts action from September 2004 until December 23, 2008, when it filed a notice of conditional withdrawal, with the caveat that it will likely return as ConnectU's

---

[2]    A copy of the First Amended Complaint is attached as Ex. A to the Declaration of Evan A. Parke ("Parke Decl.").

counsel should the Founders regain control of ConnectU from Facebook.[3]  Boies'
representation of ConnectU in the Massachusetts action began in June 2008.

On November 21, 2008, the Founders moved in the Massachusetts action for
sanctions against Facebook and Mr. Zuckerberg based on alleged serious discovery
violations, involving an alleged willful failure to produce key evidence prior to
mediation, despite representing that all documents responsive to certain then-
pending discovery requests had been produced; that motion is currently pending.
*See ConnectU LLC v. Zuckerberg, et al.*, No. 1:07-CV-10593 (DPW) (D. Mass.)
(No. 212).  ConnectU also recently filed a motion in the Massachusetts action that,
like the motion before this Court, seeks to disqualify all of the counsel representing
the Founders and to obtain counsel's privileged communications and work product
related to the Massachusetts action.  *See id.* (No. 262).

**B.    California Trial Court Proceedings**

Facebook counter-sued ConnectU and the Founders in the Superior Court of
California, County of Santa Clara, in August 2005, alleging that ConnectU and the
Founders had improperly obtained E-mail addresses of Facebook users.  The
Superior Court dismissed the claims against the Founders for lack of personal
jurisdiction.  After Facebook amended its complaint to add federal claims,
ConnectU removed to the Northern District of California (*Facebook, Inc. v.*

---

[3] The law firm of Quinn Emanuel Urquhurt Oliver & Hedges, LLP
("Quinn") represented ConnectU in the Massachusetts action from September 2007
to April 2008, but it is no longer representing any party.  In April 2008, Quinn filed
a claim for fees against ConnectU, the Founders and Howard Winklevoss before
the American Arbitration Association (AAA).  The Founders and Howard
Winklevoss have counter-claimed for malpractice.  O'Shea Partners LLP
("O'Shea") represents each of the four individual respondents and
counterclaimants.  O'Shea no longer represents ConnectU in the arbitration.

*ConnectU, Inc.*, Case No. 5:07-CV-01389 (JW) (N.D. Cal.)). There, Facebook's attempt to add claims against the Founders failed for lack of personal jurisdiction.

ConnectU and the Founders were represented by Finnegan throughout the California proceedings, from which the current appeals before this Court were taken. Boies became co-counsel in April 2008. O'Shea entered an appearance for ConnectU in June 2008, and in August 2008, on behalf of the Founders only, moved to intervene in order to appeal.

### C. The February 2008 Mediation and Litigation Concerning the Alleged Settlement Agreement

In February 2008, the Founders, ConnectU, Facebook and Mr. Zuckerberg mediated all of the pending claims in the Massachusetts and California proceedings. *See* Brief of Appellants at 7-8. Quinn and Finnegan represented the Founders and ConnectU. The mediation concluded with the signing of a "Term Sheet and Settlement Agreement" (the "Term Sheet"). Among other things, the Term Sheet provided for the transfer of all shares of ConnectU to Facebook in exchange for a cash payment and transfer of certain shares of Facebook stock to the Founders. *Id.*

The Founders and ConnectU (then still owned and aligned with the Founders) soon determined that the Term Sheet had been procured by fraud and was otherwise invalid. *See id.* at 8-12. Litigation concerning enforceability of the Term Sheet ensued in the Northern District of California. In a series of rulings, and without permitting any discovery, the district court summarily held that the Term Sheet was binding and enforceable and declined to stay its implementation. Those rulings below, and the denial of personal jurisdiction over the Founders, are the subject of the appeals before this Court. *See, e.g.,* Ex. B to Parke Decl. at 3-6.

**D.      Facebook Causes ConnectU to Switch Sides**

On December 15, 2008, pursuant to the Northern District's enforcement of the Term Sheet, and over the Founders' repeated objections, all of the stock of ConnectU was delivered to Facebook.  ConnectU thereby became a wholly-owned subsidiary of Facebook, which installed Mark Howitson, its Assistant General Counsel, as ConnectU's sole director and officer.  *See* Exs. F, H and J to Declaration of James E. Towery (No. 63) ("Towery Decl.").  Immediately after Facebook assumed control, ConnectU demanded that Finnegan and Boies turn over all files concerning their representation of ConnectU.  *See, e.g.,* Exs. J, L, and M to Towery Decl.  ConnectU also moved this Court to dismiss the appeal that ConnectU had filed challenging the Term Sheet – a motion joined by Facebook, its parent and nominal adversary.  *See* Nos. 52-54, 64.[4]  Finally, ConnectU filed the instant motion (and the companion motion in Massachusetts) seeking to disqualify the Founders' lawyers and obtain their privileged files.

---

[4] Facebook's present attempt to dismiss ConnectU's appeal flatly contradicts prior representations that Facebook made to the Court in opposition to the Founders' November 25, 2008, Emergency Motion to Stay.

Specifically, on November 25 the Founders moved to stay the transfer of the ConnectU stock to Facebook, arguing that if the transfer were made, Facebook would seek to dismiss ConnectU's appeal (including under the doctrine of *dominus litis*), which would cause irreparable harm.  In response, Facebook represented that the alleged "harm—the loss of an appeal—*is speculative*."  *See* Ex. F to Parke Decl., at 18 (emphasis added).  The Court denied the requested stay and the stock was given to Facebook on December 15.  Facebook then took steps to use its new control of ConnectU to do precisely what it had said was "speculative" on November 25: it converted ConnectU into a subsidiary of Facebook and then moved to dismiss ConnectU's appeal, including pursuant to the doctrine of *dominus litis*.  *See* Ex. C to the Parke Decl. (Founders' Response to Motion to Dismiss) at 2-9.

**E.     Pending Appeals before this Court**

There are five pending appeals involving Facebook, ConnectU or the Founders.  Three have been consolidated (*see* No. 22):

> **08-16745:**  an appeal in July 2008 by ConnectU, then owned by the Founders, and represented by Boies and Finnegan, from the lower court's July 2 judgment and related orders enforcing the Term Sheet;

> **08-16849:**  a cross-appeal by Facebook in August 2008, challenging dismissal of Facebook's claims against the Founders for lack of personal jurisdiction; and

> **08-16873:**  an appeal in August 2008 by the Founders, represented by O'Shea, from the judgment enforcing the Term Sheet and from the denial of their motion to intervene.

Subsequent to the consolidation order, two additional appeals were filed:

> **09-15021:**  an appeal in December 2008 by the Founders, represented by Boies, from dismissal of the California litigation and related orders enforcing the Term Sheet; and

> **09-15133:**  a cross-appeal by Facebook in January 2009, again challenging dismissal of claims against the Founders for lack of personal jurisdiction.

On January 23, 2009, Facebook moved to consolidate these two additional appeals with the earlier appeals.  *See* Appeal No. 09-15021 (No. 10).  The Founders responded on February 4, *see id.* (No. 12), and Facebook replied on February 11.  *See* Ex. D to Parke Decl.  That motion is pending.

Finnegan has filed a still-pending motion to withdraw as counsel of record for ConnectU.  *See* No. 56.  Boies, for its part, is awaiting ruling on a motion for

withdrawal and appointment of substitute counsel filed by Hoge. *See* Ex. C to Parke Decl., at 10-12. O'Shea has never represented ConnectU in this Court.

## ARGUMENT

Under the ethics rules applicable to current and former client relationships, ConnectU cannot demonstrate that Boies, Finnegan or O'Shea has a conflict of interest that precludes them from continuing to represent the Founders. First, ConnectU is not a client of Boies, Finnegan or O'Shea. As instructed by ConnectU shortly after Facebook obtained control, the firms have taken no further actions in ConnectU's name.[5] Second, the conflict rules that govern former client relationships do not apply where multiple clients were previously engaged in a joint representation. In this case, the three law firms jointly represented ConnectU and the Founders until Facebook gained control of ConnectU. Under the law of this Circuit, the "substantial relationship" test cited by ConnectU to argue for disqualification does not apply and disqualification is not required where, as here, it is the client, not the lawyer, who has switched sides.

ConnectU also seeks to obtain the litigation files of Boies, Finnegan and O'Shea. It is not entitled to these files. Facebook, as the Founders' long-time and current adversary, cannot use ConnectU as its stalking horse to obtain its adversaries' privileged and work product materials. Where, as here, the client has

---

[5] The Founders' December 19, 2008, Notice of Appeal, filed by Boies and attached as Ex. E to Parke Decl., stated that "[t]o the extent Cameron Winklevoss, Tyler Winklevoss and Divya Narendra and their counsel have any existing rights or obligations with respect to ConnectU, Inc. (all of the stock of ConnectU having been transferred to The Facebook, Inc. on December 15, 2008, as part of the settlement transaction which is at issue on appeal), Notice would hereby be given on ConnectU's behalf. Otherwise, no new notice is provided with respect to ConnectU." *See also* Ex. B at fn. 2 (similar language in C.R. 10-3 initial notice).

(involuntarily) switched sides, granting such disclosure would have a chilling effect on protected communications at the heart of attorney-client relations.

**A.    The Pending Appeals and the Motion to Disqualify Are Inextricably Intertwined and Should Be Heard Together.**

Because the facts underlying the pending motion are inextricably intertwined with the merits of the pending appeals, the Founders respectfully urge this Court to consider these issues together, on an expedited basis.

In the main appeal, the Founders argue that the Term Sheet was procured by Facebook's fraud, that it lacks material terms, and that the parties' initial notices of appeal divested the district court of jurisdiction to order the ConnectU stock to be transferred to Facebook in December 2008. *See* Ex. B to Parke Decl. at 3-6. If the Founders prevail, Facebook will be compelled to return the ConnectU stock, and the Founders will resume litigation of their underlying fraud claims against Facebook and Mr. Zuckerberg. Should this occur, ConnectU – which would again be controlled by the Founders – would obviously not seek to disqualify the Founders' counsel. The Founders would be irreparably harmed if, before this Court adjudicates the merits of these appeals, the Founders' chosen law firms were disqualified, or if Facebook were permitted access to its adversaries' litigation files. Because a determination that the district court erred in enforcing the Term Sheet would obviate the need for this Court to decide the disqualification issue, the Founders urge this Court to consider this motion together with the merits of the appeals on an expedited basis.[6]

--------------------------------------------------

[6] Expedition is also warranted because Facebook and ConnectU have repeatedly sought to delay the Court from reaching the merits of the appeals.

The Founders served and filed their Principal Brief on October 6. Facebook then obtained a telephonic extension, which delayed the due date of its Principal Brief to November 19. On November 14, however, Facebook moved to dismiss the appeals as premature, which stayed the briefing schedule. After the Court

Alternatively, the Founders request a hearing on the instant motion to facilitate "particularly strict scrutiny," which the Court applies to such motions. *See Optyl*, 760 F.2d at 1050.

### B. There Is No Current Client Conflict because Boies and Finnegan Are Not Now Representing ConnectU in the Appeals before this Court and O'Shea Has Never Represented ConnectU before this Court.

Relying on the California Rules of Professional Conduct ("CRPC") and the ABA Model Rules of Professional Conduct ("ABA Rules"), ConnectU argues that when lawyers or law firms "represent two clients with opposing interests in the same litigation . . . disqualification is automatic." ConnectU, Inc.'s Motion to Disqualify Counsel ("Mot.") at 10, citing CRPC 3-310(C)(2), ABA Rule 1.7.[7] The former precludes "representation of more than one client in a matter in which the

denied Facebook's motion on December 12 and reset the briefing schedule (No. 51), Facebook, through ConnectU, filed another motion to dismiss on December 22, which again stayed the briefing schedule.

Most recently, in Facebook's February 11, 2009, Reply in support of its motion to consolidate (Ex. D to Parke Decl.), Facebook stated that it would be filing a *third* motion to dismiss – on grounds that could have been asserted in its original motion to dismiss. Facebook's gamesmanship is underlined by the fact that Facebook, in initially moving to consolidate, specifically requested that the Court set "a single briefing schedule" for all pending appeals (*see* No. 10 in Appeal No. 09-15021, at 1) without disclosing its intention to obtain a stay of that very schedule by filing yet another motion to dismiss.

[7] Typically disqualification motions are made in trial courts and then reviewed by appellate courts. In such circumstances, the appellate court can look to the specific ethics rules, defining conflicts of interest and the like, adopted by the trial court. *See, e.g.,* Rule 11-4(a) of the Local Rules of the United States District Court for the Northern District of California. This matter, however, arises in the first instance in this Court, which has not adopted any particular ethics rules. Nevertheless, various ethics provisions that might be applied are generally consistent. *See* ABA Rule 1.7; CRPC 3-310; District of Columbia Rule of Professional Conduct 1.7; New York Disciplinary Rule 5-105.

interests of the clients actually conflict." CRPC 3-310(C)(2). The latter provides that a conflict of interest exists if "the representation of one client will be directly adverse to another client." ABA Rule 1.7

The well-established principle embodied in these rules does not support disqualification here. Neither Boies, Finnegan nor O'Shea represents two clients with adverse interests in any of the pending appeals. Since ConnectU became a Facebook subsidiary on December 15, 2008, only one firm (Hoge) has represented it and acted on its behalf; Boies and Finnegan have not done so, though this Court has not yet ruled on Hoge's motion to replace Boies or on Finnegan's motion to withdraw. O'Shea has never represented ConnectU in this Court. The conflict that the ethics rules prohibit – a lawyer arguing for opposing sides in the same proceeding – has not, and will not, occur. Moreover, ConnectU's interests (as opposed to Facebook's) are not adverse to the Founders. Neither ConnectU nor the Founders have pending claims against the other, and none were asserted below.

Indeed, ConnectU's only evidence that Boies and Finnegan are actually still representing it is a pure technicality – the Court's docket sheet that continues to identify Boies and Finnegan as counsel for ConnectU pending disposition of the motions to withdraw and for substitution. That argument elevates form over substance. ConnectU knows that Boies and Finnegan are no longer acting on its behalf, regardless of the docket sheet or the pending motions. Under all of these circumstances, there is no basis to find any violation of CRPC 3-310(C)(2) or ABA Rule 1.7.

The cases cited by ConnectU to argue that Boies and Finnegan should be disqualified (Mot. at 12) are inapposite. In *Truck Ins. Exch. v. Fireman's Fund Ins. Co.*, 8 Cal. Rptr. 2d 228, 232 (Cal. Ct. App. 1992), a law firm was disqualified because it had commenced a new matter, with full knowledge that it conflicted

with several on-going representations.  The firm attempted to cure the conflict by withdrawing.  The court held that "a law firm that *knowingly* undertakes adverse concurrent representation may not avoid disqualification by withdrawing from the representation of the less favored client before hearing."  *Id.* (emphasis added).  The court specifically distinguished the situation that is present in this case, however, finding that where the conflict was *not* created by the law firm's conduct, withdrawal precludes application of the concurrent representation rule.  *Id.* at 233-34.  Unlike in *Truck*, where the law firm deliberately entered into a second representation knowing there was a conflict, Boies and Finnegan did nothing to create any conflict.

Nor does *Unified Sewerage Agency of Washington County, Oregon v. Jelco Inc.*, 646 F.2d 1339 (9th Cir. 1981), support disqualification.  Like *Truck*, it involved a conflict that resulted from an affirmative decision of the law firm to accept a conflicting representation.  *Unified* did not involve a scenario where a client switched sides.  Indeed, the Court in *Unified* upheld the *denial* of disqualification.

**C.    There Is No Conflict of Interest under the Rules Governing Former Clients Because There Is No Expectation of Confidentiality where Clients Were Previously Represented Jointly.**

ConnectU argues alternatively that it is a former client of Boies, Finnegan and O'Shea and that disqualification is mandated by CRPC 3-310(E) and ABA Rule 1.9(a), which govern former client relationships.[8]  These rules stand for the

---

[8] Here again, the Court need not address the issue of which ethics rules govern, since there is general agreement among the potentially relevant ethics codes concerning former client conflicts.  *See* CRPC 3-310(E), ABA Rule 1.9(a); District of Columbia Rule of Professional Conduct 1.9; Massachusetts Rule of Professional Conduct 1.9(a); New York Disciplinary Rule 5-108(A).

uncontroversial proposition that a lawyer may not represent another person in the same or a substantially related matter in which that person's interests are materially adverse to those of the former client.  ABA Rule 1.9(a); CRPC 3-310(E).

The purpose of these rules is to prevent a lawyer from using confidential information obtained from a former client against it on behalf of an adversary.  *See Christensen v. United States District Court for the Central District of California*, 844 F.2d 694, 698 (9th Cir. 1988) (citations and internal quotations omitted) ("[T]he most important facet of the professional relationship served by this rule . . . is the preservation of secrets and confidences communicated to the lawyer by the client.").  However, where, as here, the former and current clients were previously engaged in a joint representation, there cannot possibly exist any expectation of confidentiality that the rules might protect.  On the contrary, in the joint representation context, each client is aware that its confidences are being shared with the other.  Accordingly, the substantial relationship test does not apply and counsel should not be disqualified under such circumstances.  *See, e.g., Christensen*, 844 F.2d at 699.[9]

In *Christensen*, the lawyer originally represented the "management group" that took over a corporation.  After the takeover, the lawyer represented the corporation.  Later, the corporation was placed into receivership and the lawyer represented members of the management group in litigation against the corporation.  This Court vacated the lawyer's disqualification because it found that the corporation knew that any information it conveyed to its lawyer prior to its

---

[9] ConnectU cites *Brennan's, Inc. v. Brennan's Rests., Inc.*, 590 F.2d 168 (5th Cir. 1979), to argue that a lawyer's duty to preserve client confidences is not altered by a former joint client relationship involving shared confidences.  But that case involved an *attorney* switching sides – a wholly different scenario inapplicable here.  *Id.* at 171-72.

receivership would be shared with the management group. *Christensen*, 844 F.2d at 698. The Court held "that the substantial relationship test is inapplicable when the former client has no reason to believe that information given to counsel will not be disclosed to the firm's current client." *Id.* at 699; *see also Allegaert v. Perot*, 565 F.2d 246, 250 (2d Cir. 1977) ("before the substantial relationship test is even implicated, it must be shown that the attorney was in a position where he could have received information which his former client might reasonably have assumed the attorney would withhold from his present client").

In *Bass Pub. Ltd. Co. v. Promus Cos., Inc.*, 1994 WL 9680 (S.D.N.Y. Jan. 10, 1994), Holiday Corp. agreed to sell its Holiday Inn business to Bass, while retaining other assets. Holiday Corp. became a subsidiary of Bass, while the non-Holiday Inn assets were transferred to a new corporation called Promus. Latham & Watkins represented Holiday Corp. in negotiating the sale with Bass. After the transaction closed, Bass sued Promus for breach of contract and other claims, and sought to disqualify Latham. The court recognized that this was not the typical former client situation where the attorney switches sides after the representation of a former client has ended. *Id.* at *7. Instead, the Court rejected disqualification because "'it [was] the client, and not the attorney, who ha[d] changed position.'" *Id.* (citations omitted).

Similarly, in *Occidental Hotels Mgmt. B.V. v. Westbrook Allegro L.L.C.*, 440 F.Supp.2d 303 (S.D.N.Y. 2006), the court denied disqualification in a lawsuit between (i) the former owner of a corporation, and (ii) the corporation sold by the former owner and the buyers. The lawyer had represented both the former owner and the corporation prior to the sale. Like ConnectU, the corporation that had changed hands asserted that it was a former client of the lawyer and that the current lawsuit was related to the lawyer's work for the corporation. The court denied

disqualification because it "would not serve the purpose of protecting a former client's expectation of loyalty and confidentiality. It is [the clients], rather than [the lawyer], that have changed positions from alignment with [the seller and former owner] to alignment with [the buyers]." As in the present case, the lawyer, unlike the client, had "consistently represented" the same interests. *Id.* at 311.

As in *Christensen* and *Allegaert*, the existence of joint representation here meant ConnectU did not have any expectation that its counsel would keep its information confidential from the Founders. Like *Bass* and *Occidental Hotels*, Boies, Finnegan and O'Shea have at all times represented the same interests – those of the Founders against Facebook – and at no point did they undertake a conflicting representation. Because Boies, Finnegan and O'Shea have not switched sides in these appeals, ConnectU cannot use its own change in position to deprive the Founders of their chosen attorneys.[10]

### D. ConnectU Is Not Entitled to the Files of Boies, Finnegan or O'Shea.

Stripped to its essence, Facebook, through its captive subsidiary ConnectU, is asking this Court to order that its adversaries' counsel produce their entire files to Facebook. Mot. at 19-20. The guise that these files somehow belong to ConnectU is a smokescreen to cripple Facebook's adversaries by peering into their counsel's attorney-client and work product materials.

As a preliminary matter, ConnectU's request for counsel's files is not properly before this Court and should be denied on this basis alone. Respectfully, this Court lacks jurisdiction to determine ConnectU's right to files that were not the subject of any order at issue in the pending appeals. *See, e.g., Broad v.*

---

[10] ConnectU seeks to disqualify counsel "from representing the Founders *in any matter relating to ConnectU*, including this case." Mot. at 7 (emphasis added). But there is no authority for ConnectU's apparent assertion that this Court may disqualify counsel in matters not before it or in a lower court of this Circuit.

*Sealaska Corp.*, 85 F.3d 422, 430 (9th Cir. 1996) (before an argument may be considered on appeal, "the argument must be raised sufficiently for the trial court to rule on it") (citations and quotation omitted); FED. R. APP. P. 27(a)(2)(B)(iii) (requiring the party filing a "motion seeking substantive relief" also to file "a copy of the trial court's opinion [deciding the issue] . . . as a separate exhibit").[11]

In any event, ConnectU's demand for the files of its adversaries' lawyers should be denied. Granting ConnectU's request for "the delivery of its client files" (Mot. at 3, 20) would eviscerate fundamental considerations underpinning the attorney-client privilege, work product protections and applicable Rules of Professional Conduct.

The attorney-client privilege permits a client to confide freely in an attorney with the expectation that the communications will remain private and undisclosed to adversaries. *See, e.g., Estate of Kime*, 193 Cal. Rptr. 718, 722-723 (Cal. Ct. App. 1983). Courts commonly reject specious arguments or technical applications of rules that, if adopted, would threaten this "sacred" privilege. *See Sullivan v. Superior Court*, 105 Cal. Rptr. 241, 245-46 (Cal. Ct. App. 1972); *United States v. Bauer*, 132 F.3d 504, 510 (9th Cir. 1997) (in the interest of justice, legal assistance "can only be safely and readily availed of when free from the consequences or the apprehension of disclosure"), *quoting Hunt v. Blackburn*, 128 U.S. 464, 470 (1888). Similar policies support protection of attorney work product. *See* RESTATEMENT 3D OF LAW GOVERNING LAWYERS, § 46, cmt c (2000) (the "need [of attorneys] to be able to set down their thoughts privately in order to assure effective and appropriate representation warrants keeping such documents secret").

---

[11] For similar reasons, this Court lacks jurisdiction to rule whether counsel should be ordered to turn over files relating to the Massachusetts action.

Ordering disclosure of attorney files in this case, of course, is the equivalent of giving them to Facebook. ConnectU's sole director and officer is Mark Howitson, Facebook's Assistant General Counsel. Disclosure would destroy all of the various protections of confidentiality inherent in attorney-client relationships. For instance, if these files are reviewed by attorney Howitson or anyone else connected to Facebook, it would thereafter be impossible to "unscramble the eggs" if the Court invalidates the Term Sheet and returns the ConnectU stock and lawyer files to the Founders. *Cf. Providence Journal Co. v. FBI*, 595 F.2d 889, 890 (1st Cir. 1979) (staying production of documents pending outcome of appeal because "[o]nce the documents are surrendered pursuant to the lower court's order, confidentiality will be lost for all time. The status quo could never be restored."). Also, the Founders and Facebook remain adverse to each other in these appeals, and the Court should not force the Founders to proceed with their cards revealed to their adversaries.[12]

Moreover, Facebook has never rebutted the Founders' evidence showing that it misrepresented the value of its stock in procuring the Term Sheet. *See* Brief of Appellants at 37. Whether that misrepresentation constitutes actionable fraud is at issue on appeal, and giving Facebook full access to its adversaries' legal counsel's files *prior* to the Court deciding that issue – and prior to Facebook filing its appeal briefs – would undercut the general principle precluding a party from reaping benefits from a fraud. *See Smyth v. United States*, 302 U.S. 329, 358 (1937); *see also* CAL. CIV. CODE §1668. Facebook should not be allowed to take

---

[12] Virtually all ConnectU litigation files also relate to the Founders' litigation positions due to the parties' joint representation by counsel as described previously and because ConnectU was a closely-held corporation consisting of the three Founders and Howard Winklevoss, the father of two of the Founders.

advantage of its allegedly fraudulent conduct before that conduct is fully reviewed on appeal.

The transfer of ConnectU's stock to Facebook was a hotly disputed matter below, which the Founders unsuccessfully sought to stay pending appeal. *See* Ex. C to Parke Decl. at 8-9 (describing efforts to avoid the transfer). During this period, Facebook never sought to obtain ConnectU's legal files, notwithstanding its stated belief that it was ConnectU's beneficial owner. *See* Ex. G to Parke Decl., Facebook Opposition to Motion to Stay, at 5, n.7. Yet while Facebook remained silent, counsel for ConnectU and the Founders were continuing to generate advice and work product, including with respect to the instant appeals. Facebook's failure to object effectively waived any rights to litigation counsel's files. *Cf. Bass*, 1994 WL 9680 at *4, 7 (denying motion to disqualify).

The leading case in this area is *Tekni-Plex*, *Inc. v. Meyner and Landis*, 674 N.E.2d 663, 668 (N.Y. 1996). There, the New York Court of Appeals rejected arguments by the buyer of a corporation that it had unfettered rights to obtain attorney files pre-dating the merger. Like ConnectU, the buyer demanded all files of the corporation's pre-merger attorneys who had counseled the corporation on various legal matters for many years. The buyer also requested material relating to a disputed merger transaction, based on a claim that it inherited the attorney-client relationship by acquiring the corporation.

Although the court required counsel to turn over files pertaining to "general business communications" (such as environmental compliance) it denied disclosure of any files relating to representation of the corporation with regard to the merger. *Id.* at 666, 670. The court recognized that "disputes arising from the merger transaction remain independent from – and, indeed, adverse to – the rights of the buyer." *Id.* at 671. "[T]o grant [the buyer] control over the attorney-client

privilege as to communications concerning the merger transaction would thwart, rather than promote, the purposes underlying the privilege," *id.*, "and would significantly chill attorney-client communication." *Id.* at 672.

As in *Tekni-Plex*, granting ConnectU (and therefore, Facebook) access to these files "would thwart, rather than promote, the purposes underlying the privilege." *Id.* at 671; *see also Orbit One Commc'ns, Inc. v. Numerex Corp.*, 2008 WL 4778133 *4-5 (S.D.N.Y. Oct. 31, 2008) (successor entity had no right to attorneys' files relating to the matter that led to change in control); *Int'l Elect. Corp. v. Flanzer*, 527 F.2d 1288, 1292 (2d Cir. 1975) (rejecting claim that counsel representing predecessor company during merger negotiations had any duty to successor company because companies were "on opposite sides of the negotiations" during the course of counsel's representation).[13]  Indeed, the facts here are even more compelling than *Tekni-Plex*, because Boies, Finnegan and O'Shea have *only* represented the Founders and ConnectU in the litigation that ultimately led to Facebook's contested acquisition of ConnectU.[14]

In addition, transfer of these files to ConnectU would significantly undermine each counsel's relationship with the Founders.  *See Commercial Standard Title Co. v. Superior Court*, 155 Cal. Rptr. 393, 400 (Cal. Ct. App. 1979) (attorney owes obligation to both present and former clients to "preserve the

---

[13] Although there is no expectation of confidentiality among clients who jointly agree at the outset of a matter to common representation, *Tekni-Plex, Orbit One* and *Flanzer* all teach that a former client who changes sides in mid-stream cannot vitiate the confidentiality rights of the other clients.

[14] To the extent the Founders' counsel have general business documents, they were gathered from ConnectU in response to discovery requests and have already been produced to Facebook.

secrets of his client" and it is the "policy of the court to encourage confidence and to preserve inviolate this relationship of client-lawyer") (citations omitted); RESTATEMENT 3D OF LAW GOVERNING LAWYERS, § 46, comment c (2000) ("A lawyer may deny a client's request to retrieve, inspect, or copy documents when compliance would violate the lawyer's duty to another….").

The cases cited by ConnectU (Mot. at 19-20) are inapposite. Neither case involved a client "switching sides" and then seeking access to communications regarding litigations or communications about a contested corporate transaction. *Moeller* was premised on considerations specific to equitable trusts. *See Moeller v. Superior Court*, 947 P.2d 279, 285-286 (Cal. 1997) (disclosure "is…not unfair in light of the nature of a trust and the trustee's duties" to "manage the property for the benefit of another"). *Weintraub* was premised on considerations specific to bankruptcy. *See Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 352, 355 n.7 (1985) ("[t]he powers and duties of a bankruptcy trustee are extensive," involving fiduciary duties to both shareholders and creditors, which can challenge "[t]he propriety of the trustee's waiver of the attorney-client privilege"). Here, different policy considerations require that ConnectU be denied access to litigation counsel's files.

## CONCLUSION

"[P]articularly strict judicial scrutiny," *Optyl Eyewear*, 760 F.2d at 1050, applies to prevent litigants from doing precisely what ConnectU (as Facebook's stalking horse) is attempting here: to misuse ethics rules in an attempt to deprive adversaries and former jointly-represented allies of their chosen counsel for tactical gain. Having failed to make a showing that even remotely approaches "absolute necessity," *CRS Recovery,* 2008 WL 4408001, at *1, ConnectU's motion to disqualify and request for files should be denied.

20

Date: February 13, 2009

Respectfully submitted,

  /s/ Evan A. Parke

David A. Barrett
BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue
New York, NY 10022

D. Michael Underhill
Evan A. Parke
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue NW
Washington, D.C. 20015

Steven C. Holtzman
BOIES, SCHILLER & FLEXNER LLP
1999 Harrison Street
Oakland, CA 94612

*Attorneys for Defendants and
Appellants Cameron Winklevoss,
Tyler Winklevoss and Divya
Narendra*

  /s/ Scott R. Mosko

Scott R. Mosko
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER LLP
Stanford Research Park
3300 Hillview Avenue
Palo Alto, CA 94304-1203

  /s/ Sean F. O'Shea

Sean F. O'Shea
O'SHEA PARTNERS LLP
521 Fifth Avenue
New York, NY 10175

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants.

DATED:  February 13, 2009

Respectfully submitted,

_____ /s/ Evan A. Parke ___

Evan A. Parke

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

_____

### Nos. 08-16745, 08-16849, 08-16873 (consolidated)

_____

### THE FACEBOOK, INC., *et al.*,
### Plaintiffs—Appellees,

### v.

### CONNECTU, INC., *et al.*,
### Defendants—Appellants.

_____

## DECLARATION OF EVAN A. PARKE
## IN SUPPORT OF CONNECTU FOUNDERS'
## OPPOSITION TO MOTION TO DISQUALIFY COUNSEL

David A. Barrett
BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue
New York, NY 10022
(212) 446-2300

D. Michael Underhill
Evan A. Parke
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue NW
Washington, D.C. 20015
(202) 237-2727

Steven C. Holtzman
BOIES, SCHILLER & FLEXNER LLP
1999 Harrison Street
Oakland, CA 94612
(510) 874-1000

Scott R. Mosko
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER LLP
Stanford Research Park
3300 Hillview Avenue
Palo Alto, CA 94304-1203
(650) 849-6600

Sean F. O'Shea
O'SHEA PARTNERS LLP
521 Fifth Avenue
New York, NY 10175
(212) 682-4426

*Attorneys for Non-Movants /
Defendants / Appellants Cameron
Winklevoss, Tyler Winklevoss and
Divya Narendra*

February 13, 2009

I, Evan Andrew Parke, declare as follows:

1.      I am an Associate with the law firm of Boies, Schiller & Flexner LLP, counsel for Non-Movants / Defendants / Appellants Cameron Winklevoss, Tyler Winklevoss, and Divya Narendra (the "Founders").  I am a resident in the firm's Washington, D.C. office and am licensed to practice law in the District of Columbia.  I am also admitted to various federal courts including the Court of Appeals for the Federal Circuit.  I appeared in the case below per an order of the district court granting my application to appear pro hac vice.  I have been admitted to the Bar of this Court.  Unless otherwise noted, I have personal knowledge of the facts set forth in this Declaration.

2.      Attached as Exhibit A is an accurate copy of the First Amended Complaint in *ConnectU LLC v. Zuckerberg* et al., Case No. 1:04-CV-11923 (DPW) (D. Mass.) (No. 13) (without attachments) filed in the United States District Court for the District of Massachusetts on October 28, 2004.

3.      Attached as Exhibit B is an accurate copy of the Founders' Initial Notice and Statement of the Issues Pursuant to Local Rule 10-3 Corresponding to Second Notice of Appeal, served on December 29, 2008.

4.      Attached as Exhibit C is an accurate copy of the Founders' (I) Response to Appellant's Motion to Voluntarily Dismiss Appeal Pursuant to FRAP 42(B) and Stipulation of Dismissal, and (II) Response to Motion to Withdrawal

and Appointment of Substitute Counsel for Defendant-Appellant ConnectU, Inc. (without exhibits or attachments), filed in the Court on January 6, 2009.

5.     Attached as Exhibit D is an accurate copy of the Reply Memorandum in Support of Appellees-Cross-Apellants' Motion to Consolidate Case Nos. 09-15021 and 09-15133 with Case Nos. 08-16745, 08-16849, 08-16973, filed in the Court on February 11, 2009.

6.     Attached as Exhibit E is an accurate copy of the December 19, 2008, Notice of Appeal (without exhibits or attachments) filed in the United States District Court for the Northern District of California.

7.     Attached as Exhibit F is an accurate copy of Appellees-Cross-Appellants' Opposition to Appellants' Fourth Emergency Motion to Stay, filed with the Court on December 5, 2008.

8.     Attached as Exhibit G is an accurate copy of Facebook and Mark Zuckerberg's Opposition to ConnectU Inc.'s Motion to Stay Execution of Judgment Pending Appeal (without exhibits or attachments), filed in the United States District Court for the Northern District of California on August 4, 2008.

I declare under penalty of perjury that the foregoing is true and correct to the best

of my knowledge.  Executed:  February 13, 2009

   /s/ Evan A. Parke

**BOIES, SCHILLER & FLEXNER LLP**

*Attorneys for Defendants and Appellants*
*Cameron Winklevoss, Tyler Winklevoss*
*and Divya Narendra*

## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants.

DATED:  February 13, 2009

Respectfully submitted,

_____/s/ Evan A. Parke___

Evan A. Parke

ORIGINAL

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CONNECTU LLC, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. 04-1923(DPW) |
| | ) | |
| v. | ) | |
| | ) | |
| MARK ZUCKERBERG, EDUARDO | ) | **JURY TRIAL DEMANDED** |
| SAVERIN, DUSTIN MOSKOVITZ, | ) | |
| ANDREW MCCOLLUM, CHRISTOPHER | ) | |
| HUGHES, AND THE FACEBOOK, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## FIRST AMENDED COMPLAINT

Plaintiff ConnectU LLC, f/k/a Harvard Connection ("ConnectU" or "Plaintiff"), by its

undersigned attorneys, alleges as follows based on its own knowledge with respect to its own

acts, and on information and belief as to all other allegations:

## NATURE OF THE ACTION

1.      This is a civil action for copyright infringement, breach of contract,

misappropriation of trade secrets, breach of fiduciary duty, unjust enrichment, unfair business

practices, intentional interference with prospective business advantage, breach of duty of good

faith and fair dealing, and fraud arising out of Defendants' Mark Zuckerberg, Eduardo Saverin,

Dustin Moskovitz, Andrew McCollum, Christopher Hughes, and TheFaceBook Inc.'s

("Defendants") unauthorized use of Plaintiff's source code and confidential business plans, and

usurpation of business opportunity.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over the subject matter of this action pursuant to 17

U.S.C. § 501 (b) and 28 U.S.C. § 1331.  Jurisdiction over the state and common law claims is

also appropriate under 28 U.S.C. § 1367(a) and principles of pendent jurisdiction.

3.      This Court has personal jurisdiction over Defendants and venue is proper in this

District pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400(a).  Plaintiff's claims arise in this

District.  Upon information and belief, a substantial portion of Defendants' business and the

specific activity about which Plaintiff complains have taken place and are continuing to take

place in this District.

## THE PARTIES

4.      Plaintiff ConnectU LLC is a limited liability corporation of the State of Delaware

with a principal place of business at 500 West Putnam Avenue, Greenwich, Connecticut 06830.

5.      Defendant Mark Zuckerberg is an individual with a place of residence in the State

of New York.

6.      Defendant Eduardo Saverin is an individual with a place of residence in the State

of Florida.

7.      Defendant Dustin Moskovitz is an individual with a place of residence in the State

of Florida.

8.      Defendant Andrew McCollum is an individual with a place of residence in the

State of Idaho.

9.      Defendant Christopher Hughes is an individual with a place of residence in the

State of North Carolina.

10.     Defendant TheFaceBook, Inc. is a corporation of the State of Delaware.

## FACTS

11.    Plaintiff's founders, Cameron Winklevoss, Tyler Winklevoss, and Divya
Narendra, were classmates who together attended Harvard University, graduating in June 2004.

12.    In December 2002, the Winklevosses and Narendra began to develop a business
plan for a new type of website.  This website would allow students and alumni of a college or
university to create a network specific to that institution, and give the students and alumni a
place to meet, exchange information, discuss employment prospects, and serve as an on-line
dating service.  Initially, ConnectU was to serve the Harvard University community.  Once
established at Harvard, ConnectU intended to expand to other institutions.

13.    Plaintiff's business model, which was based on advertising revenue, had a
significant chance of financial success because the users, well educated students and alumni, are
an attractive demographic for many advertisers.

14.    ConnectU's founders hired fellow Harvard students to develop the software
necessary for the website to function (the "Harvard Connection Code").  After the first
programmer hired by Plaintiff graduated, ConnectU hired a second programmer, Victor Gao.   In
November 2003, Plaintiff engaged Defendant Mark Zuckerberg to work with Mr. Gao to
complete the Harvard Connection Code for the website.  So that Defendant Zuckerberg could
complete the Harvard Connection Code, he was given the source code that ConnectU had
developed to date.

15.    On numerous occasions, both orally and in writing, Plaintiff stressed to
Zuckerberg that the Harvard Connection Code needed to be completed as soon as possible
because Plaintiff's founders wanted to launch their website before their June 2004 graduation.
Defendant Zuckerberg always assured Plaintiff that he was using his best efforts to complete the
project and ready the website for market.

-3-

16.     In addition to writing the software for the ConnectU website, Defendant
Zuckerberg was involved with website development.  In that capacity, he was entrusted with
Plaintiff's business management information and procedures, including descriptions of the
website's business model, various functionality and content concepts, and the type of
information that would be collected from users.  Such information and procedures were
confidential at the time, and constituted Plaintiff's trade secrets.  Zuckerberg understood that this
business management information and procedures were secret and agreed to keep them
confidential.  Zuckerberg also understood that it was important to the success of ConnectU's
business model to make the website operational before the end of the school year and before any
competitor did so.  With respect to Internet websites, the first to capture a market has a
substantial advantage.

17.     Zuckerberg agreed to develop the Harvard Connection Code in exchange for a
monetary interest in Plaintiff, as well as the ability to identify and highlight his contribution to
prospective employers.

18.     Defendant Zuckerberg's pledges of commitment to Plaintiff, his acceptance of the
Harvard Connection Code, his work on such code and the website, his access to and acceptance
of ConnectU's proprietary and confidential business management information and procedures,
his understanding that he would be compensated when the website was successful, and his ability
to highlight his work on the site to potential employers, created an actual or implied contract, a
duty of good faith and fair dealing, and a fiduciary relationship between Defendant Zuckerberg
and ConnectU.

19.     On January 8, 2004, Defendant Zuckerberg sent an email to Cameron
Winklevoss, confirming that Zuckerberg would complete and deliver the promised source code.

-4-

A mere three days later, January 11, 2004, without providing the promised code, Zuckerberg

registered the domain name "TheFaceBook.com." On February 4, 2004, using Plaintiff's

confidential business plans and the Harvard Connection Code provided by Plaintiffs, Defendants

launched a directly competitive website, TheFaceBook.com. This launch usurped Plaintiff's

valuable business opportunity. A few days later, Zuckerberg boasted to the press that he had

completed and launched TheFaceBook.com website in one week. Defendants used the Harvard

Connection Code in connection with TheFaceBook.com.

   20.  Plaintiff was surprised by Zuckerberg's launch of a competing website while

working for ConnectU. Plaintiff hired a  programmer to develop entirely new software and

launched ConnectU.com on May 21, 2004, almost four months after the launch of

TheFaceBook.com.

   21.  Defendant Zuckerberg shared Plaintiff's confidential business information and the

Harvard Connection Code with Defendants Saverin, Moskovitz, McCollum, and Hughes, who

knowingly used, and continue to use, Plaintiff's confidential business plans and the Harvard

Connection Code to develop, launch, and/or maintain TheFaceBook.com website.

   22.  Defendants' unlawful use of Plaintiff's Harvard Connection Code and proprietary

business plans and procedures allowed TheFaceBook.com to come to market first, thereby

obtaining press coverage and users/members that would otherwise have benefited Plaintiff.

   23.  Defendants' market advantage, directly and proximately resulting from Defendant

Zuckerberg's breach of contract, misappropriation of trade secrets, breach of fiduciary duty,

breach of duty of good faith and fair dealing, and fraud, and Defendants' copyright infringement,

unjust enrichment, unfair business practices, and intentional interference with prospective

business advantage, usurped ConnectU's market share and related business opportunities.

## FIRST CLAIM FOR RELIEF
### Copyright Infringement
### 17 U.S.C. § 101 et seq.

24.     Plaintiff repeats and realleges each and every allegation set forth in this

Complaint.

25.     Plaintiff is an owner of the copyright covering the Harvard Connection Code.

26.     Without Plaintiff's permission, Defendants copied copyrighted subject matter of

ConnectU's Harvard Connection Code and created a derivative work thereof.  This unauthorized

derivative work is or was copied and used by Defendants in connection with the

TheFaceBook.com website.  Defendants may have infringed Plaintiff's copyrights in additional

ways.

27.     Defendants' actions as described above constitute copyright infringement of the

Harvard Connection Code.  The original certificate of registration for the software is attached

hereto as Ex. A.  This registration is *prima facie* evidence of the validity of the copyright and of

the facts stated in the certificate.  The Harvard Connection Code constitutes copyrightable

subject manner.

28.     The actions of Defendants described above have at all times relevant to this action

been willful and/or knowing.

29.     As a direct and proximate result of the actions of Defendants alleged above,

ConnectU has been irreparably injured and has suffered monetary damages in an as yet

undetermined amount.

## SECOND CLAIM FOR RELIEF
### Misappropriation of Trade Secrets
### Massachusetts G.L. ch. 266, § 30 (4)

30.     Plaintiff repeats and realleges each and every allegation set forth in this

Complaint.

-6-

31.    Plaintiff took appropriate steps to maintain the secrecy of its business management information and procedures.

32.    Plaintiff's business management information and procedures were valuable to Plaintiff and to Defendants.

33.    Plaintiff expended significant effort in both time and money to develop its business management information and procedures.

34.    Plaintiff's business management information and procedures were not easily acquired or duplicated by others.

35.    Defendant Zuckerberg's actions as described above constitute misappropriation of Plaintiff's trade secrets, namely its business management information and procedures.

36.    The actions of Defendant Zuckerberg described above have at all times relevant to this action been willful and/or knowing.

37.    As a direct and proximate result of the actions of Defendant Zuckerberg alleged above, ConnectU has been irreparably injured and has suffered monetary damages in an as yet undetermined amount.

### THIRD CLAIM FOR RELIEF
### Breach of Contract

38.    Plaintiff repeats and realleges each and every allegation set forth in this Complaint.

39.    Defendant Zuckerberg's actions as described above constitute breach of actual or implied contract under Massachusetts law.

40.    The actions of Defendant Zuckerberg described above have at all times relevant to this action been willful and/or knowing.

41.    As a direct and proximate result of the actions of Defendant Zuckerberg alleged above, ConnectU has been irreparably injured and has suffered monetary damages in an as yet undetermined amount.

### FOURTH CLAIM FOR RELIEF
### Breach of Implied Covenant of Good Faith and Fair Dealing

42.    Plaintiff repeats and realleges each and every allegation set forth in this Complaint.

43.    The actual or implied contract between Defendant Zuckerberg and ConnectU contains an implied covenant of good faith and fair dealing under Massachusetts law.  Defendant Zuckerberg breached that covenant.

44.    The actions of Defendant Zuckerberg described above have at all times relevant to this action been willful and/or knowing.

45.    As a direct and proximate result of the actions of Defendant Zuckerberg alleged above, ConnectU has been irreparably injured and has suffered monetary damages in an as yet undetermined amount.

### FIFTH CLAIM FOR RELIEF
### Breach of Massachusetts Unfair Trade Practices Statute
### Mass. G.L. ch. 93A

46.    Plaintiff repeats and realleges each and every allegation set forth in this Complaint.

47.    At all relevant times, Defendants Zuckerberg, Moskovitz, McCollum, and Hughes were engaged in trade or commerce within the meaning of M.G.L. ch. 93A, § 1.

48.    The actions of Defendants Zuckerberg, Moskovitz, McCollum, and Hughes described above constitute unfair or deceptive acts or practices in the conduct of trade or commerce within the meaning of M.G.L. ch. 93A, § 2.

49.     Pursuant to M.G.L. ch 93A, § 9, Plaintiff's counsel sent written demands for relief to each of Defendants Zuckerberg, Moskovitz, McCollum, and Hughes.  Copies of these letters are attached hereto as Ex. B.  Each letter identified the claimant and reasonably described the unfair and deceptive acts or practices complained of and the injury suffered by Plaintiff. Defendants Zuckerberg, Moskovitz, McCollum, and Hughes have each failed to respond to Plaintiff's written demands with a reasonable settlement offer within 30 days.  Defendants' Zuckerberg, Moskovitz, McCollum, and Hughes' refusal to grant relief upon demand was made in bad faith with knowledge that the acts and practices complained of violate M.G.L. ch. 93A, § 2.

50.     The actions of Defendants Zuckerberg, Moskovitz, McCollum, and Hughes described above have at all times relevant to this action been willful and/or knowing.

51.     As a direct and proximate result of the actions of Defendants Zuckerberg, Moskovitz, McCollum, and Hughes alleged above, ConnectU has been irreparably injured and has suffered monetary damages in an as yet undetermined amount.

## SIXTH CLAIM FOR RELIEF
### Breach of Fiduciary Duty

52.     Plaintiff repeats and realleges each and every allegation set forth in this Complaint.

53.     Plaintiff reposed, and Defendant Zuckerberg knowingly accepted, Plaintiff's trust and confidence regarding Plaintiff's business plans.  Zuckerberg owed a fiduciary duty to Plaintiff.

54.     Plaintiff relied on Zuckerberg to act in the best interests of ConnectU LLC and Zuckerberg had full knowledge of Plaintiff's reliance.

-9-

55.     Zuckerberg manipulated that reliance for his own personal gain and the gain of all
of the Defendants.

56.     Defendant Zuckerberg's actions amounted to a course of conduct designed to
harm ConnectU LLC.

57.     Defendant Zuckerberg's actions constitute breach of fiduciary duty.

58.     The actions of Defendant Zuckerberg described above have at all times relevant to
this action been willful and/or knowing.

59.     As a direct and proximate result of the actions of Defendant Zuckerberg alleged
above, ConnectU has been irreparably injured and has suffered monetary damages in an as yet
undetermined amount.

## SEVENTH CLAIM FOR RELIEF
### Unjust Enrichment

60.     Plaintiff repeats and realleges each and every allegation set forth in this
Complaint.

61.     As a result of Defendants' actions as described above, Defendants have been
enriched at the expense of Plaintiff.

62.     As a result of Defendants' actions as described above, Plaintiff has been deprived
of a valuable benefit.

63.     Defendants cannot establish any justification for their unjust enrichment at the
expense of Plaintiff.

64.     The actions of Defendants described above have at all times relevant to this action
been willful and/or knowing.

-10-

65.     As a direct and proximate result of the actions of Defendants alleged above,

ConnectU has been irreparably injured and has suffered monetary damages in an as yet

undetermined amount.

**EIGHTH CLAIM FOR RELIEF**
**Intentional Interference with Prospective Contractual and**
**Advantageous Business Relations**

66.     Plaintiff repeats and realleges each and every allegation set forth in this

Complaint.

67.     Defendants have purposely and wrongfully caused website users and advertisers

to refrain from entering into contracts and other business relations with ConnectU and have

usurped such business opportunities.

68.     The actions of Defendants described above have at all times relevant to this action

been willful and/or knowing.

69.     As a direct and proximate result of the actions of Defendants alleged above,

ConnectU has been irreparably injured and has suffered monetary damages in an as yet

undetermined amount.

**NINTH CLAIM FOR RELIEF**
**Fraud**

70.     Plaintiff repeats and realleges each and every allegation set forth in this

Complaint.

71.     Defendant Zuckerberg knowingly made a false statement of intention when he

agreed to create and provide source code to ConnectU on January 8, 2004.  Zuckerberg never

intended to provide the code and instead intended to breach his promise at the time the promise

was made.

-11-

72.     Defendant Zuckerberg made the false statement with the intent to induce Plaintiff to act in reliance on the statement.

73.     Plaintiff reasonably relied on Zuckerberg's statement.

74.     Plaintiff's reliance resulted in Plaintiff's detriment.

75.     The actions of Defendant Zuckerberg described above have at all times relevant to this action been willful and/or knowing.

76.     As a direct and proximate result of the actions of Defendant Zuckerberg alleged above, ConnectU has been irreparably injured and has suffered monetary damages in an as yet undetermined amount.

## REQUEST FOR RELIEF

Wherefore, Plaintiff ConnectU LLC requests that this Court enter judgment in its favor on each and every claim for relief set forth above and award it relief, including but not limited to the following:

A.     An injunction preliminarily and permanently enjoining Defendants and their employees, agents, partners, officers, directors, owners, shareholders, principals, subsidiaries, related companies, affiliates, distributors, dealers, and all persons in active concert or participation with any of them:

   (1)     From operating the website TheFaceBook.com, or any variation of that website under a different domain name or URL;

   (2)     From using the Harvard Connection Code, or any code or software derived therefrom;

(3)     From using the confidential business information and procedures obtained by Defendants as a result of Defendant Zuckerberg's association with Plaintiff;

B.     An Order directing Defendants to destroy all computer programs, business plans, and any other materials and things, whether printed or electronic, that consist of or contain the Harvard Connection Code or Plaintiff's business plans and procedures;

C.     An Order holding Defendants jointly and severally liable for copyright infringement, breach of contract, misappropriation of trade secrets, breach of fiduciary duty, unjust enrichment, intentional interference with prospective business advantage, breach of duty of good faith and fair dealing, and fraud, and directing Defendants to pay Plaintiff damages, including but not limited to direct, consequential, indirect, compensatory, and punitive damages;

D.     An Order directing Defendants to pay to Plaintiff its actual damages, Defendants' profits associated with Defendants' use of Plaintiff's source code, and Defendants' profits resulting from Defendant Zuckerberg's breach of contract, misappropriation of trade secrets, breach of fiduciary duty, breach of duty of good faith and fair dealing, and fraud and Defendants' copyright infringement, unjust enrichment, unfair business practices, and intentional interference with prospective business advantage;

E.     An Order holding Defendants Zuckerberg, Moskovitz, McCollum, and Hughes jointly and severally liable for unfair business practices under Mass. G.L. ch. 93A, and directing Defendants Zuckerberg, Moskovitz, McCollum, and Hughes to pay statutory damages and to treble such damages pursuant to Mass. G.L. ch. 93A;

F.     An Order directing Defendants to pay Plaintiff's attorneys' fees and costs associated with this action; and

G.     Other relief as the Court may deem appropriate.


Dated: October 28, 2004                    Respectfully submitted,


                                           _____
                                           Jonathan M. Gelchinsky (BBO #656282)
                                           Lawrence R. Robins (BBO #632610)
                                           FINNEGAN, HENDERSON, FARABOW,
                                               GARRETT & DUNNER, L.L.P.
                                           55 Cambridge Parkway
                                           Cambridge, MA 02142
                                           Tel: (617) 452-1600
                                           Fax: (617) 452-1666

                                           jon.gelchinsky@finnegan.com
                                           larry.robins@finnegan.com


                                           John F. Hornick, *Pro Hac Vice*
                                           Margaret A. Esquenet, *Pro Hac Vice*
                                           FINNEGAN, HENDERSON, FARABOW,
                                               GARRETT & DUNNER, L.L.P.
                                           1300 I Street, N.W.
                                           Washington, D.C.  20005-3315
                                           Tel: (202) 408-4000
                                           Fax: (202) 408-4400

                                           Attorneys for Plaintiff
                                           ConnectU LLC

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

_____

Nos. 08-16745, 08-16849, 08-16873 (consolidated)

_____

### THE FACEBOOK, INC., *et al.*,
### Plaintiffs—Appellees, Cross-Appellants,

### v.

### CONNECTU, INC., *et al.*,
### Defendants—Appellants, Cross-Appellees.

_____

## CAMERON WINKLEVOSS, TYLER WINKLEVOSS AND DIVYA NARENDRA'S INITIAL NOTICE AND STATEMENT OF THE ISSUES PURSUANT TO LOCAL RULE 10-3 CORRESPONDING TO SECOND NOTICE OF APPEAL

David A. Barrett
BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue
New York, NY 10022
(212) 446-2300

D. Michael Underhill
Evan A. Parke
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue NW
Washington, D.C. 20015
(202) 237-2727

Steven C. Holtzman
BOIES, SCHILLER & FLEXNER LLP
1999 Harrison Street
Oakland, CA 94612
(510) 874-1000
*Attorneys for Appellants Cameron Winklevoss, Tyler Winklevoss and Divya Narendra*

December 29, 2008

Pursuant to Ninth Circuit Rule 10-3, and in relation to defendants-appellants Cameron Winklevoss, Tyler Winklevoss and Divya Narendra's (the "Founders") second notice of appeal filed with the district court on December 19, 2008, the Founders represent that they intend to file a transcript order form requesting the entire transcript for the proceeding taking place on October 28, 2008 (Case No. 5:07-cv-01389-JW (N.D. Cal.)). This is in addition to the transcripts previously ordered by the Founders and defendant-appellant ConnectU, Inc., in relation to the consolidated appeals currently pending before the Court (Nos. 08-16745, 08-16849, 08-16873), as described in their prior notices and statements of the issues, incorporated herein by reference.[1, 2, 3]

Pursuant to Ninth Circuit Rule 10-3, the Founders submit the following statement of appellate issues for use by plaintiffs-appellees The Facebook, Inc. and Mark Zuckerberg (collectively, "Facebook") in determining additional transcripts to obtain for appeal. The Founders

---

[1] *See* Founders' August 21, 2008, notice of designation of reporter's transcripts and statement of issues; ConnectU, Inc.'s August 11, 2008, notice of designation of reporter's transcripts and statement of issues.

[2] To the extent Cameron Winklevoss, Tyler Winklevoss and Divya Narendra and their counsel have any existing rights or obligations with respect to ConnectU, Inc. (all of the stock of ConnectU, Inc. having been transferred to The Facebook, Inc. on December 15, 2008, as part of the settlement transaction which is at issue on appeal), the same Notice would hereby be given on ConnectU, Inc.'s behalf. Otherwise, no new notice is provided with respect to ConnectU, Inc.

[3] Because no new appeal case number has been assigned, this notice is filed in the consolidated appeal currently pending before the Court.

reserve all rights, including but not limited to those under Ninth Circuit Rule 10-3.1(d)-(f).

The Founders anticipate that the issues presented on appeal will include all issues addressed in the parties' briefs and in the district court's orders relating to the final Judgment Enforcing Settlement Agreement (Docket No. 476) entered in the underlying action on July, 2, 2008, the August 8, 2008 Order Denying the ConnectU Founders' Motion to Intervene and Denying ConnectU's Motion to Stay Execution of Judgment (Docket No. 610), and all issues addressed in all related orders including but not limited to the June 25, 2008, Order Granting Plaintiffs' Confidential Motion to Enforce the Settlement Agreement (Docket No. 461), the June 10, 2008, Order Granting in Part Denying in Part Motions Posted as Docket Item Nos. 366, 374, and 393 (Docket No. 428), the November 3, 2008, Order Directing the Special Master to Deliver the Property Being Held in Trust to the Parties in Accordance with the Terms of their Settlement Agreement (Docket No. 653), the November 21, 2008 Amended Judgment Ordering Specific Performance of Settlement Agreement and Declaratory Judgment of Release (Docket No. 665), the December 15, 2008, Order of Dismissal (Docket No. 667), and including but not limited to the following issues:

1.     Whether the district court properly enforced the handwritten

Term Sheet & Settlement Agreement ("Term Sheet"), even though, among other things, it omits material terms necessary to make a binding contract; it is ambiguous as to whether it calls for a merger or stock purchase; Facebook's counsel swore that various merger-related documents were required to finalize the parties' alleged agreement; and Facebook's counsel admitted that the Term Sheet was only a tentative settlement.

2.      Whether the district court properly enforced the Term Sheet, even though, among other things, it was procured through Facebook's fraud; it is voidable under federal securities law and common law fraud principles; federal law provides that federal securities law violations cannot be waived; and state law provides that fraud in the inducement claims cannot be waived.

3.      Whether the district court erred in holding that alleged release language in the Term Sheet barred a claim alleging that the Term Sheet was procured by fraud in the inducement.

4.      Whether the district court erred in holding that a corporation trading its own shares in a transaction by which it acquired all the stock of another corporation and settled litigation claims was not "inside trader" and therefore not bound by laws applicable to insider trading.

5.      Whether the district court properly denied discovery and an evidentiary hearing in deciding plaintiffs' motion to enforce the Term Sheet

where there were disputed issues of fact as to the interpretation of the Term Sheet and whether it was procured by plaintiffs' fraud.

6.      Whether the district court properly entered judgment against three of the ConnectU shareholders who were never served or formally joined as parties in the action pending in the district court.

7.      Whether the district court erred in refusing to consider evidence of fraud that occurred in the course of mediation.

8.      Whether the district court erred in creating a settlement or mediation exception to Federal Statutes barring securities fraud and to other common law and statutory prohibitions of fraud.

9.  Whether the remedy ordered in the district court's July 2, 2008, Judgment is appropriate.

10.     Whether the district court erred in denying the ConnectU Founders' motion to intervene.

11.     Whether the district court's July 2, 2008, Judgment Enforcing Settlement Agreement was a final judgment and, if not, whether the district court's November 21, 2008, Amended Judgment and December 15, 2008, Order cures any prematurity attaching to the July 2 Judgment and/or the currently pending consolidated appeal.

12.     Whether the district court had jurisdiction to enter any of its

orders from October, November, and December, 2008, after all parties had previously filed notices of appeal and after ConnectU and the Founders served and filed their opening appeal brief in early October of 2008.

Date:  December 29, 2008

Respectfully submitted,

\_ /s/ Evan A. Parke_____

Evan A. Parke
**BOIES, SCHILLER & FLEXNER LLP**

Attorneys for Defendants and Appellants
Cameron Winklevoss, Tyler Winklevoss
and Divya Narendra

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

———————————

Nos. 08-16745, 08-16849, 08-16873 (consolidated)

———————————

### THE FACEBOOK, INC., *et al.*,
Plaintiffs—Appellees,

v.

### CONNECTU, INC., *et al.*,
Defendants—Appellants.

———————————

### CAMERON WINKLEVOSS, TYLER WINKLEVOSS AND DIVYA NARENDRA'S

**(I)**      **RESPONSE TO "APPELLANT'S MOTION TO VOLUNTARILY DISMISS APPEAL PURSUANT TO FRAP 42(B)" and STIPULATION OF DISMISSAL, and**

**(II)**      **RESPONSE TO "MOTION TO WITHDRAWAL AND APPOINTMENT OF SUBSTITUTE COUNSEL FOR DEFENDANT-APPELLANT CONNECTU, INC.**

David A. Barrett
BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue
New York, NY 10022
(212) 446-2300

D. Michael Underhill
Evan A. Parke
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue NW
Washington, D.C. 20015
(202) 237-2727

Steven C. Holtzman
BOIES, SCHILLER & FLEXNER LLP
1999 Harrison Street
Oakland, CA 94612
(510) 874-1000

*Attorneys for Appellants-Non-Movants Cameron Winklevoss, Tyler Winklevoss, and Divya Narendra*

January 6, 2009

## TABLE OF CONTENTS

I.   RESPONSE TO MOTION TO DISMISS
     CONNECTU'S APPEAL .................................................................1

     A.   Dismissal Would Be Unjust ....................................................2

     B.   Dismissal Would Be Improper Where the Sole Purpose of
          The Motion to Dismiss is to Evade Appellate Review ..........5

     C.   ConnectU Continues to Have Standing to Appeal ...............6

     D.   ConnectU's Appeal Is Not Moot...........................................7

II.  RESPONSE TO MOTION TO SUBSTITUTE COUNSEL .............10

III. CONCLUSION ................................................................................12

Appellants Cameron Winklevoss, Tyler Winklevoss, and Divya Narendra (the founders and prior shareholders of ConnectU, collectively, "Founders") hereby respond to ConnectU's motion to dismiss; ConnectU's purported "stipulation" of dismissal; and ConnectU's motion to substitute counsel.

## I.    RESPONSE TO MOTION TO DISMISS CONNECTU'S APPEAL

As an initial matter, the Founders respectfully request that the Court defer consideration of ConnectU's motion to dismiss to the Merits Panel.   Based on its prior positions, we expect Facebook to argue in its merits brief due on January 12, that the *Founders'* appeal—like ConnectU's appeal—should also be dismissed on alleged standing or mootness grounds.[1]  Because the legal and factual issues concerning the two issues are intertwined, the Court should address them at the same time.  This is particularly true in this case where, if the Merits Panel were to find that both ConnectU and the Founders' appeals are moot, it would then have to address whether the district court orders giving rise to any mootness should be vacated.  *See Ctr. For Biological Diversity v. Lohn*, 511 F.3d 960, 965 (9th Cir. 2007) (vacatur is the "general practice" of the Court

---

[1]  Facebook has previously taken the position (as ConnectU has in its Motion to Dismiss, at page 7) that compliance with terms of settlement moots an appeal.  *See* Ex. A to the Parke Decl. at 5.  Facebook has also taken the position before the Court that the Founders have complied with the terms of the settlement.  *See* Ex. B to the Parke Decl. at 6 ("the transfer of the cash and stock consideration by the parties and the filing of dismissals were required acts contemplated by the Settlement Agreement and the July 2, 2008 Judgment.").

to ensure reviewability of district court rulings).

### A.     Dismissal Would Be Unjust

If this panel does decide to address Facebook's motion to dismiss ConnectU's appeal, the Court should deny the motion because dismissal would unjustly reward Facebook's attempts to manipulate proceedings before the Court.

On October 6, 2008, ConnectU and the Founders filed their opening appeal brief seeking to reverse the district court's summary enforcement – without an evidentiary hearing and without discovery – of a purported settlement agreement between them and Facebook.  That settlement required, among other things, that the Founders transfer to Facebook all of ConnectU's common stock. Until three weeks ago, and per order of the district court, the ConnectU stock was being held in trust by a Special Master.  *See* Ex. D to the December 22, 2008, Declaration of James Towery ("Towery Decl.") at 2.  But on November 21, 2008, over the objection of ConnectU and the Founders, the district court ordered the Special Master to transfer the ConnectU stock to Facebook on December 15.  *See* Ex. B to the Towery Decl. at 1-2.

On November 25, ConnectU and the Founders moved this Court to stay the transfer, arguing that if the transfer were made, Facebook would seek to dismiss ConnectU's appeal (including under the doctrine of *dominus litis*),

which would cause irreparable harm.  Docket No. 24 in Appeal No. 08-16873 (motion to stay, filed under seal) at ii and 1, fn. 1.  *See Providence Journal Co. v. FBI*, 595 F.2d 889, 890 (1st Cir. 1979) (loss of basic right to appeal constitutes irreparable harm justifying a stay pending appeal).  In opposition to the stay, Facebook represented that the alleged "harm—the loss of an appeal—*is speculative*."  *See* Ex. C to the Parke Decl., at 18 (emphasis added).  On December 12, the Court denied the requested stay and the stock was given to Facebook on December 15.  *See* Ex. H to the Towery Decl. at 1-2.

Facebook immediately took steps to use its new control of ConnectU to do precisely what it had said was "speculative" on November 25: it converted ConnectU into a subsidiary of Facebook, controlled by its sole director Mark Howitson, an in-house lawyer for Facebook, and just one week later filed a motion to dismiss the ConnectU appeal, including pursuant to the doctrine of *dominus litis*.

It would be unjust to dismiss ConnectU's appeal in light of Facebook's representations to this Court just days before that the very irreparable injury – dismissal of the appeal – that Facebook now seeks to inflict was "speculative," when in fact Facebook clearly intended to seek dismissal as soon as it acquired the ConnectU stock.  *See Blackie v. Barrack*, 524 F.2d 891, 900 (9th Cir. 1975) (Court has discretion to take into consideration questionable litigation tactics and

posture of case in determining whether to dismiss an appeal); *Benton v. County of Berrien*, 570 F.2d 114, 119 (6th Cir. 1978); *see also Suntharalinkam v. Keisler*, 506 F.3d 822, 825-27 (9th Cir. 2007) (Kozinski, J., dissenting) ("the combination of these factors spells manipulation. What could possibly have motivated petitioner's counsel to file a motion seeking dismissal of the petition, which would do his client absolutely no good, and quite possibly some harm…").

Moreover, dismissal would be particularly unjust where ConnectU's appeal has been pending since August; ConnectU filed its opening appeal brief months ago on October 6; Facebook's opposition brief is due next week; and ConnectU has devoted significant resources to pursuing its appeal.

For all of the foregoing reasons, it also would be unjust to enter Facebook's proffered stipulation, which is in any event procedurally improper.[2]

---

[2] This is a consolidated appeal in which the Founders are also appellants. Neither "new" ConnectU (*i.e.*, ConnectU as controlled by Facebook as owner of its stock) nor Facebook has sought—much less obtained—consent to dismiss ConnectU's appeal from the Founders, who were real parties in interest at the time ConnectU's appeal was filed, and are real parties in interest to ConnectU's pending appeal. *See* F. R. App. P. 42(b). It is undisputed that ConnectU is a closely held corporation having four shareholders, Cameron Winklevoss, Tyler Winklevoss, Divya Narendra (the Founders) and Howard Winklevoss.

**B.    Dismissal Would Be Improper Where the Sole Purpose of the Motion to Dismiss is to Evade Appellate Review**

The motion should also be denied because it was filed for the sole purpose of evading appellate review of contested orders and judgments below.  *See United States* v. *Wash. Dep't of Fisheries*, 573 F.2d 1117, 1118 (9th Cir. 1978) (Kennedy, J.) (explaining that "[i]f it appeared that an appellant sought dismissal for the purpose of evading appellate determination of certain questions in order to frustrate court orders in the continuing litigation, we might have grounds for exercising our discretion not to dismiss").

Indeed, it is clear that Facebook's true purpose is to avoid having this Court review the merits of the orders and judgments of the district court that resulted in enforcement of the purported settlement.  The current motion to dismiss is part of that effort.  If the Court were to dismiss ConnectU's appeal, Facebook is likely then to argue in its merits opposition that the Founders' appeal also should be dismissed, due to alleged lack of standing or mootness. *See* prior discussion at 1, fn.1.  Such an unjust attempt at "appeal-proofing" should be avoided by denying the motion to dismiss.  *See Dep't of Fisheries*, 573 F.2d at 1118.

5

## C. ConnectU Continues to Have Standing to Appeal

ConnectU incorrectly asserts that its appeal must be dismissed because it lacks standing to appeal. But as is made clear by the case on which ConnectU relies, "a party aggrieved by a final judgment may appeal from it" as long as it has an "immediate and pecuniary interest" that is "not a remote consequence of the judgment." *Libby, McNeill & Libby v. City National Bank*, 592 F.2d 504, 511-12 (9th Cir. 1978) (internal citations and quotations omitted). ConnectU's appeal seeks redress from several adverse district court rulings directly affecting significant interests of ConnectU, including its rights under the purported settlement and the ownership of its stock. *See* Ex. E to the Towery Decl. (redacted term sheet ("Term Sheet") showing that ConnectU was a party to the Term Sheet agreement). Any ruling by the Court on the merits of ConnectU's appeal would have an immediate and direct impact on ConnectU's legal interests.

While ConnectU cites *Libby* for the proposition that ConnectU cannot carry the appeal for the Founders, the case says no such thing. There, the appellant sought to appeal a judgment that was not entered against it—one that the adverse party had no desire to appeal. *See Libby*, 592 F.2d at 511. Here, all the appealed orders and judgments were entered against both ConnectU and the Founders. ConnectU repeatedly sought stays of those rulings, appealed those

rulings, and already filed its appellate brief – all without objection from the purported beneficial owner, Facebook.  *See* Ex. A to the Parke Decl. at 5, fn. 7 (Facebook arguing in August 2008 that "Facebook is now the beneficial owner of ConnectU").

Moreover, *Libby* expressly distinguishes a situation, like the present case, where a judgment was entered against multiple entities, but only a subset desires to appeal.  *See id.* 511-12 ("This is not a case such as [*Celanese*] where a surety who is sued directly along with his principal is permitted to appeal although the principal chooses not to"); *United States ex rel. Celanese Coatings Co. v. Gullard*, 504 F.2d 466, 469 (9th Cir. 1974) ("Celanese also argues that Fireman's Fund, as a mere surety, has no standing to maintain this appeal since Gullard, the principal, has not appealed. We have concluded that this contention has no merit whatsoever.").

### D.      ConnectU's Appeal Is Not Moot

ConnectU's "burden of demonstrating mootness 'is a heavy one.'" *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979).  Mootness is a flexible doctrine that allows review "if there are present effects that are legally significant." *Jacobus v. Alaska*, 338 F.3d 1095, 1104 (9th Cir. 2003); *see U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 400 (1980) (explaining that the Court's "cases demonstrate the flexible character of the Art. III mootness

doctrine").  Where a court retains the ability to "fashion some form of meaningful relief" between the parties, an appeal is not moot.  *See Dream Palace v. County of Maricopa*, 384 F.3d 990, 1000 (9th Cir. 2004) (inner citation omitted).

As demonstrated above, ConnectU has appealed several rulings below that directly affect ConnectU's rights under the purported settlement and the ownership of its stock.  The transfer of the ConnectU stock to Facebook on December 15 in no way undermines the "present effects" of any merits-based ruling by the Court on these issues.  This Court could very well strike down the purported settlement as invalid, which would nullify ConnectU's rights under that purported agreement and result in, *inter alia*, the return of the ConnectU stock to the Founders.

All the settlement cases cited by ConnectU involve facts—unlike this case—where parties had complied with significant terms of settlements without resistance.  ConnectU even concedes that under the law of the Circuit, a case is moot only where a party "demonstrates an intention to abide" by the settlement or judgment, "accepts a benefit," or when "the party's compliance renders appellate relief futile."  *See* Mot. to Dismiss at 7, *citing Geneva Towers Tenants Org. v. Federated Mortg. Investors*, 504 F.2d 483, 485 n.2 (9th Cir. 1974).  Here, ConnectU has resisted at every turn.  It opposed Facebook's motion to

enforce the purported settlement. It sought a stay in the district court and before this Court in order to prevent the transfer of its stock. It filed its Notice of Appeal of the adverse district court rulings on July 30. It filed its opening appeal brief on October 6. It opposed the district court's September 19 show cause order, which contemplated the prompt transfer of the ConnectU stock to Facebook. It then sought an additional stay from the district court, and a stay and mandamus relief from this Court to prevent distribution of the ConnectU stock to Facebook. These efforts strongly weigh against a finding of mootness.

Lastly, ConnectU argues that the doctrine of *dominus litis* moots ConnectU's appeal. Mot. to Dismiss at 7, *citing Gould v. Control Laser Corp.*, 866 F.2d 1391, 1394 (Fed. Cir. 1989). But this doctrine has been applied by other courts only in limited, readily distinguishable situations and does not replace the fact-intensive mootness inquiry typically made in this Circuit, discussed in the prior paragraph. For example, *Gould* addressed the effect of a settlement that was never contested. *Gould*, 866 F.2d at 1394. *Gould* specifically distinguished that situation from one where a claim allegedly becomes moot *while an appeal is pending*. *Id.* at 1395 ("This case did not become moot on appeal; rather a consent judgment was entered pursuant to the settlement agreement of the parties"). In fact, *Gould* would require this Court to vacate any rulings by the district court that moot ConnectU's pending appeal.

*Id.* at 1394-95 (discussing doctrine of vacatur).

## II.    RESPONSE TO MOTION TO SUBSTITUTE COUNSEL

Before ConnectU filed its motion to substitute counsel, Boies, Schiller & Flexner LLP—counsel for the Founders and for ConnectU prior to the transfer of the ConnectU stock to Facebook—stated that it would stipulate to substitution of counsel if Facebook agreed to "completely indemnify [it] from any liabilities arising from or relating to such substitution." Ex. D to the Parke Decl. Otherwise, a motion for substitution would need to be filed. *Id.* Neither counsel for Facebook nor "new" ConnectU directly responded to counsel's request prior to filing the pending motion.[3]

The Founders do not object to substitution of counsel to represent the interests of "new" ConnectU, *i.e.*, ConnectU as owned by Facebook, as long as the Founders' existing counsel can continue to represent the Founders and the interests of "old" ConnectU, including in this Court and following a successful outcome on the existing appeal. The Founders are concerned, however, that if the Court were to grant the motion to substitute counsel, Facebook will attempt improperly to expand that ruling as an alleged basis for seeking to disqualify Boies Schiller as the *Founders*' counsel, either in this or other proceedings.

_____

[3] BSF also asked ConnectU's "new" counsel to "confirm that ConnectU will not take any actions to interfere with the pending appeal." Ex. D to the Parke Decl. This request was also ignored.

Indeed, Hoge Fenton, ConnectU's purported new counsel, recently advised Boies Schiller that it intends to file a motion in the District Court of Massachusetts seeking to disqualify Boies Schiller from representing the Founders in that case.  Ex. E to the Parke Decl.

Facebook should be prevented from engaging in such gamesmanship. *See Optyl Eyewear Fashion Int'l Corp. v. Style Cos.*, 760 F.2d 1045, 1050 (9th Cir. 1985) ("The cost and inconvenience to clients and the judicial system from misuse of the rules for tactical purposes is significant.").  Disqualification would be highly prejudicial to the Founders and is clearly inappropriate.  *See id.* ("Because of this potential for abuse, disqualification motions should be subjected to 'particularly strict judicial scrutiny.'").  Boies Schiller's prior representation of "old" ConnectU cannot be a source of disqualification based on the facts at issue in this case, *i.e.*, where pursuant to a contested corporate transaction (the Term Sheet's purported "settlement"), the merits of which are being challenged on appeal, ConnectU "switched sides" after the Founders were forced, by court order, to transfer the ConnectU stock to Facebook over ConnectU's own objection.  *See, e.g., International Elecs. Corp. v. Flanzer*, 527 F.2d 1288, 1292 (2d Cir. 1975) ("The earlier relationship of the law firm to the merged corporation cannot be a source of disqualification in these circumstances"); *Bass Pub. Ltd. Co. v. Promus Cos.*, 1994 U.S. Dist. LEXIS 136

(S.D.N.Y. Jan. 7, 1994) (disqualification improper where the client, not the firm, had "switched sides"). Further, Boies Schiller did not even represent ConnectU or the Founders before or at the February 21, 2008 mediation, which resulted in the Term Sheet that is at issue on appeal. Rather, Boies Schiller represented ConnectU and the Founders only thereafter in their efforts to void the purported settlement.

## III.  CONCLUSION

The Founders respectfully request that the Court deny ConnectU's motion to dismiss or, alternatively, refer ConnectU's motion to the Merits Panel, which will address Facebook's related argument that the Founders' appeal should be dismissed on standing or mootness grounds.

Date: January 6, 2009

Respectfully submitted,


  /s/ Evan A. Parke

David A. Barrett
BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue
New York, NY 10022
(212) 446-2300

D. Michael Underhill
Evan A. Parke
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue NW
Washington, D.C. 20015
(202) 237-2727

Steven C. Holtzman
BOIES, SCHILLER & FLEXNER LLP
1999 Harrison Street
Oakland, CA 94612
(510) 874-1000

*Attorneys for Defendants and Appellants*
*Cameron Winklevoss, Tyler Winklevoss*
*and Divya Narendra*

Case No. 09-15021, 09-15133

_____

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

_____

THE FACEBOOK, INC., et al.,
Plaintiffs-Appellees-Cross-Appellants,

v.

CONNECTU, INC. (formerly known as CONNECTU LLC), CAMERON
WINKLEVOSS, TYLER WINKLEVOSS, DIVYA NARENDRA,
Defendants-Appellants-Cross-Appellees,

_____

Appeal from the United States District Court Northern District of California,
Case No. CV 07-01389-JW, The Honorable James Ware

_____

**REPLY MEMORANDUM IN SUPPORT OF APPELLEES-CROSS-
APPELLANTS' MOTION TO CONSOLIDATE CASE NOS. 09-15021
AND 09-15133 WITH CASE NOS. 08-16745, 08-16849, 08-16973**

_____

I. NEEL CHATTERJEE (STATE BAR NO. 173985)
WARRINGTON, S. PARKER, III (STATE BAR NO. 148003)
MONTE COOPER (STATE BAR NO. 196746)
THERESA SUTTON (STATE BAR NO. 211857)
YVONNE P. GREER (STATE BAR NO. 214072)
TINA L. NAICKER (STATE BAR NO. 252766)
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025
Telephone:  650-614-7400
Facsimile:   650-614-7401

*Attorneys for Appellees-Cross-Appellants Facebook, Inc. and Mark Zuckerberg*

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Appellate Procedure 26.1, Appellees-Cross-Appellants state that Mark Zuckerberg is an individual.  No parent corporation owns 10% or more of the stock of Facebook, Inc. and there are no publicly-held corporations that own 10% or more its stock.

If this court decides to consider the instant appeal in light of ConnectU's Motion to Dismiss, filed on December 22, 2008, and its Motion to Disqualify, filed on January 20, 2009, Appellees-Cross Appellants Facebook, Inc. and Mark Zuckerberg (collectively "Facebook") respectfully move this Court for an order that consolidates this appeal and cross-appeal, Nos. 09-15021 and 09-15133, with the already consolidated appeals and cross-appeal docketed under numbers 08-16745, 08-16849, 08-16973.

Facebook does not object to Appellants, Cameron Winklevoss, Tyler Winklevoss and Divya Narendra's (collectively "ConnectU Founders") request for an additional 1,850 words to address the two new issues presented in their second notice of appeal. Facebook also does not object to the schedule proposed by the ConnectU Founders. Facebook, however, does object to the continued appeal by the ConnectU Founders for all issues associated with the enforcement proceedings and Judgment dated July 2, 2008, because they waived their right to appeal by not opposing the enforcement of the settlement in the District Court. Facebook intends to file a separate Motion to Dismiss addressing this issue. *Slaven v. American Trading Transp. Co., Inc.*, 146 F.3d 1066, 1069 (9th Cir. 1998) (dismissing appeal following entry of judgment based on a settlement agreement because appellant waived any arguments before the district court).

Accordingly, should this Court continue the Founders' appeals, Facebook respectfully reaffirms its unopposed request to consolidate the appeal and cross-appeal, Nos. 09-15021 and 09-15133, with the already consolidated appeals and cross-appeal docketed under numbers 08-16745, 08-16849, 08-16973.

Dated:    February 11, 2009          ORRICK, HERRINGTON & SUTCLIFFE LLP


                                        /s/ I. Neel Chatterjee
                              _____
                                        I. Neel Chatterjee
                                 Attorneys for Plaintiffs-Appellees
                                 THE FACEBOOK, INC., AND
                                    MARK ZUCKERBERG

## CERTIFICATE OF SERVICE

I am more than eighteen years old and not a party to this action. My business address is Orrick, Herrington & Sutcliffe LLP, 1000 Marsh Road, Menlo Park, California 94025.

On February 11, 2009, I served a true and correct copy of the following document(s):

**REPLY MEMORANDUM IN SUPPORT OF APPELLEES-CROSS-APPELLANTS' MOTION TO CONSOLIDATE CASE NOS. 09-15021 AND 09-15133 WITH CASE NOS. 08-16745, 08-16849, 08-16973**

I caused such documents to be transmitted by electronic mail to the offices of the addressee(s) below and by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Menlo Park, California addressed as set forth below:

**ATTORNEYS FOR DEFENDANTS CONNECTU INC. (PRIOR TO DECEMBER 15, 2008), CAMERON WINKLEVOSS, TYLER WINKLEVOSS, DIVYA NARENDRA, PACIFIC NORTHWEST SOFTWARE, INC., WINSTON WILLIAMS, WAYNE CHANG**

**Scott Mosko**
Finnegan, Henderson, Farabow,
Garrett & Dunner, LLP
3300 Hillview Avenue
Palo Alto, California 94304-1203
Telephone: (650) 849-6600
Facsimile: (650) 849-6666
scott.mosko@finnegan.com

**ATTORNEYS FOR CAMERON WINKLEVOSS TYLER WINKLEVOSS AND DIVYA NARENDRA**

**Mark A. Byrne**
Byrne & Nixon LLP
800 West Sixth Street, Suite 430
Los Angeles, CA 90017
Tel: (213) 620-8003
Fax: (213) 620-8012
markbyrne@byrnenixon.com

**Sean F. O'Shea**
**Mark A. Weissman**
O'Shea Partners LLP
521 Fifth Avenue, 25th Floor
New York, New York 10175
Tel: (212) 682-4426
Fax: (212) 682-4437
soshea@osheapartners.com

**ATTORNEYS FOR DEFENDANTS CONNECTU INC. (PRIOR TO AND FOLLOWING DECEMBER 15, 2008), CAMERON WINKLEVOSS, TYLER WINKLEVOSS, DIVYA NARENDRA**

**Steven C. Holtzman**
Boies Schiller & Flexner LLP
1999 Harrison Street, Suite 900
Oakland, CA 94612
Telephone: (510) 874-1000
Facsimile: (510) 874-1460
sholtzman@BSFLLP.com

**Jonathan M. Shaw**
**D. Michael Underhill**
**Evan A. Parke**
Boies Schiller & Flexner LLP
5301 Wisconsin Ave. NW
Washington, DC 20015
Telephone: (202) 237-2727
Facsimile: (202) 237-6131
munderhill@bsfllp.com

**David A. Barrett**
Boies Schiller & Flexner LLP
575 Lexington Avenue, 7th Fl.
New York, NY 10022
Telephone: (212) 446-2300
Facsimile: (212) 446-2350
dbarrett@BSFLLP.com

**ATTORNEYS FOR APPELLANT CONNECTU, INC.**
**(FOLLOWING DECEMBER 15, 2008)**
Motion for Withdrawal and Appointment of Substitute Counsel Pending before the
United States Court of Appeals for the Ninth Circuit

**James E. Towery**
**Alison P. Buchanan**
**Jill E. Fox**
Hoge, Fenton, Jones & Appel, Inc.
Sixty South Market Street, Suite 1400
San Jose, California 95113-2396
Telephone: (408) 287-9501
Facsimile: (408) 287-2583
JET@hogefenton.com

**ATTORNEYS FOR DEFENDANTS CONNECTU INC. (PRIOR TO DECEMBER 15, 2008), CAMERON WINKLEVOSS, TYLER WINKLEVOSS, DIVYA NARENDRA**

**John F. Hornick**
Finnegan Henderson, Farabow,
Garrett & Dunner, L.L.P.
901w York Avenue N.W.
Washington, DC 20001
Telephone: (202) 408-4000
Facsimile: (202) 408-4400
john.hornick@finnegan.com

I am readily familiar with my firm's practice for collection and processing correspondence for mailing in the United States Postal Service, to wit, that correspondence be deposited with the United States Postal Service this same day in the ordinary course of business.

I declare under penalty of perjury that the foregoing is true and correct. Executed on February 11, 2009 at Menlo Park, California.


_____ /s/ Karen Mudurian /s/ _____
Karen Mudurian

*Paid*

1  STEVEN C. HOLTZMAN (State Bar No. 144177)
      sholtzman@bsfllp.com
2  BOIES, SCHILLER & FLEXNER LLP
   1999 Harrison Street, Suite 900
3  Oakland, CA 94612
   Telephone: (510) 874-1000
4  Facsimile: (510) 874-1460

5  DAVID A. BARRETT (*pro hac vice*)
      dbarrett@bsfllp.com
6  BOIES, SCHILLER & FLEXNER LLP
   575 Lexington Ave., 7th Floor
7  New York, NY 10022
   Telephone: (212) 446-2300
8  Facsimile: (212) 446-2350

9  D. MICHAEL UNDERHILL (*pro hac vice*)
      munderhill@bsfllp.com
10 BOIES, SCHILLER & FLEXNER LLP
   5301 Wisconsin Avenue NW
11 Washington, D.C. 20015
   Telephone: (202) 237-2727
12 Facsimile: (202) 237-6131

13 Attorneys for Cameron Winklevoss,
   Tyler Winklevoss, and Divya Narendra.
14

# Filed

DEC 1 9 2008

**RICHARD W. WIEKING**
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

15            UNITED STATES DISTRICT COURT

16         NORTHERN DISTRICT OF CALIFORNIA

17              SAN JOSE DIVISION

18 THE FACEBOOK, INC. and MARK          Case No. 5:07-CV-01389-JW
   ZUCKERBERG,
19
                                        **NOTICE OF APPEAL**
20            Plaintiffs,

21       v.

22 CONNECTU, INC. (formerly known as
   CONNECTU, LLC), PACIFIC NORTHWEST
23 SOFTWARE, INC., WINSTON WILLIAMS,
   and WAYNE CHANG,
24

25            Defendants.

26

27

28

1        Notice is hereby given that CAMERON WINKLEVOSS, TYLER WINKLEVOSS and

2  DIVYA NARENDRA[1] appeal to the United States Court of Appeals for the Ninth Circuit from the

3  following orders and judgment and all related orders:

4        (a) the December 15, 2008, Order of Dismissal (Docket No. 667), a copy of which is

5          attached as Exhibit A;

6        (b) the November 21, 2008 Amended Judgment Ordering Specific Performance of

7          Settlement Agreement and Declaratory Judgment of Release (Docket No. 665), a copy of

8          which is attached as Exhibit B; and

9        (c) the November 3, 2008, Order Directing the Special Master to Deliver the Property Being

10          Held in Trust to the Parties in Accordance with the Terms of their Settlement Agreement

11          (Docket No. 653), a copy of which is attached as Exhibit C.

12        This notice is in additional to, and related to, their prior notice of appeal filed on August 11,

13  2008 (Docket No. 611), which is incorporated by reference. In order to preserve all rights to appeal,

14  notice is again provided that CAMERON WINKLEVOSS, TYLER WINKLEVOSS, and DIVYA

15  NARENDRA appeal from the following orders and judgment and all related orders:

16        (d) the August 8, 2008, Order Denying the ConnectU Founders' Motion to Intervene;

17          Denying ConnectU's Motion to Stay Execution of Judgment, entered by the district court

18          on August 8, 2008 (Docket No. 610), a copy of which is attached as Exhibit D;

19

20        [1] To the extent Cameron Winklevoss, Tyler Winklevoss and Divya Narendra and their

21  counsel have any existing rights or obligations with respect to ConnectU, Inc. (all of the stock of
ConnectU having been transferred to The Facebook, Inc. on December 15, 2008, as part of the

22  settlement transaction which is at issue on appeal), Notice would hereby be given on ConnectU's
behalf. Otherwise, no new notice is provided with respect to ConnectU. *See* ConnectU's Notice of

23  Appeal (Docket No. 582), attached as Exhibit H, and hereby incorporated by reference. *See also*
ConnectU and Cameron Winklevoss, Tyler Winklevoss, and Divya Narendra's Emergency Motion

24  to Stay and Alternative Petition for Mandamus, filed with the United States Court of Appeals for the

25  Ninth Circuit on November 24, 2008 (Docket No. 43 in Appeal No. 08-16745), also incorporated by
reference, providing notice on that date that ConnectU was seeking relief from, among other things,

26  the November 3 Order attached as Exhibit C and November 21 Amended Judgment attached as
Exhibit B.

27

28                              2                       NOTICE OF APPEAL
                                                          5:07-CV-01389-JW

1    (e) the July 2, 2008, final Judgment Enforcing Settlement Agreement (Docket No. 476), a

2        copy of which is attached as Exhibit E;

3    (f) the June 25, 2008, Order Granting Plaintiffs' Confidential Motion to Enforce the

4        Settlement Agreement (Docket No. 461), a copy of which is attached as Exhibit F; and

5    (g) the June 10, 2008, Order Granting in Part and Denying in Part Motions Posted As Docket

6        Items Nos. 366, 374 and 393 (Docket No. 428), a copy of which is attached as Exhibit G.

NOTICE OF APPEAL
5:07-CV-01389-JW

December 19, 2008

Respectfully submitted,

*Evan A. Parke /KPR*

Evan A. Parke
BOIES, SCHILLER & FLEXNER LLP

*Attorneys for Cameron Winklevoss, Tyler Winklevoss, and Divya Narendra.*

**OPPOSITION TO EMERGENCY MOTION UNDER CIRCUIT RULE 27-3**

Case Nos. 08-16745, 08-16849, 08-16873

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT



THE FACEBOOK, INC., et al.,
Plaintiffs-Appellees-Cross-Appellants,

v.

CONNECTU, INC. (formerly known as CONNECTU LLC), CAMERON
WINKLEVOSS, TYLER WINKLEVOSS, DIVYA NARENDRA,
Defendants-Appellants-Cross-Appellees,

Appeal from the United States District Court Northern District of California,
Case No. CV 07-01389-JW, The Honorable James Ware

**APPELLEES-CROSS-APPELLANTS' OPPOSITION TO
APPELLANTS' FOURTH EMERGENCY MOTION TO STAY**

I. NEEL CHATTERJEE (STATE BAR NO. 173985)
WARRINGTON, S. PARKER, III (STATE BAR NO. 148003)
MONTE COOPER (STATE BAR NO. 196746)
THERESA SUTTON (STATE BAR NO. 211857)
YVONNE P. GREER (STATE BAR NO. 214072)
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025
Telephone: 650-614-7400
Facsimile: 650-614-7401

*Attorneys for Appellees-Cross-Appellants Facebook, Inc. and Mark Zuckerberg*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Appellees state that
Mark Zuckerberg is an individual. No parent corporation owns 10% or more of the
stock of Facebook, Inc. and there are no publicly-held corporations that own 10%
or more its stock.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................. 1

FACTS ................................................................................................ 3

    A.    Facebook, Mark Zuckerberg and Appellants Settle ............................ 3

    B.    The Court Finds That The Agreement Is Enforceable ...................... 4

    C.    The District Court Appoints A Special Master ................................... 6

    D.    Appellants' Motion To Stay Is Denied At The District And
          Appellate Courts ................................................................................. 6

    E.    The District Court Continues To Enforce The Agreement ................. 7

ARGUMENT ..................................................................................... 10

I.     THE DISTRICT COURT HAD JURISDICTION TO ENFORCE
      THE SETTLEMENT ................................................................... 10

II.    THIS COURT SHOULD DENY APPELLANTS' REQUEST FOR
      RECONSIDERATION .................................................................. 11

    A.    Appellants Cannot Meet Their Burden For A Stay ........................... 12

    B.    Appellants Cannot Show A Likelihood of Success on the Merits .... 13

         1.    The District Court Correctly Found That The Parties
              Intended To Be Bound By The Agreement ............................. 13

         2.    The District Court Properly Excluded Improper Extrinsic
              and Privileged Evidence ......................................................... 14

         3.    There Is No Securities Fraud Because There Is No Fraud ...... 16

         4.    Appellants Waived The Securities Claims .............................. 18

    C.    Appellants Cannot Demonstrate Sufficient Irreparable Injury ......... 18

    D.    The Balance Of Harm Tips In Facebook's Favor .............................. 19

    E.    The Public Interest Favors Against Granting A Stay ........................ 20

CONCLUSION ................................................................................. 20

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Allegheny Energy, Inc.,* v. *DQE, Inc.,*
171 F.3d 153 (3d Cir. 1999) ..................................................................... 19

*Atari Corp.* v. *Ernst & Whinney,*
981 F.2d 1025 (9th Cir. 1992) .................................................................. 17

*Beame* v. *Friends of Earth,*
434 U.S. 1310 (1977) ............................................................................... 19

*Bennett* v. *Gemmill,*
557 F.2d 179 (9th Cir. 1977) .................................................................... 11

*Berckeley Inv. Group Ltd.* v. *Colkitt,*
455 F.3d 195 (3d Cir. 2006) ..................................................................... 16

*In re Best Prods. Co.,*
177 B.R. 791 (S.D.N.Y.), *aff'd,* 69 F.3d 26 (2d Cir. 1995) ................. 18

*Bianchi* v. *Perry,*
140 F.3d 1294 (9th Cir. 1998) .................................................................. 20

*Blue Chip Stamps* v. *Manor Drug Stores,*
421 U.S. 723 (1975) ............................................................................ 16, 17

*Brinderson-Newberg Joint Venture* v. *Pacific Erectors, Inc.,*
971 F.2d 272 (9th Cir. 1992) .................................................................... 15

*Brody* v. *Transitional Hospitals Corp.,*
280 F.3d 997 (9th Cir. 2002) .................................................................... 17

*Chiarella* v. *United States,*
445 U.S. 222 (1980) ................................................................................. 17

*In re City Equities Anaheim, Ltd.,*
22 F.3d 954 (9th Cir. 1994) ...................................................................... 15

- ii -

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Core-Vent Corp.* v. *Implant Innovations, Inc.*,
    53 F.3d 1252 (Fed. Cir. 1995) ............................................................... 14

*Dannenberg* v. *Software Toolworks, Inc.*,
    16 F.3d 1073 (9th Cir. 1994) ............................................................... 11

*Deering Milliken, Inc.* v. *F.T.C.* ,
    647 F.2d 1124 (D.C. Cir. 1978) .......................................................... 11

*Golden Gate Rest. Ass'n* v. *City & County of San Francisco*,
    512 F.3d 1112 (9th Cir. 2008) ............................................................. 12

*Kennedy* v. *Josephthal & Co.*,
    814 F.2d 798 (1st Cir. 1987) ............................................................... 17

*Klamath Water Users Protective Ass'n* v. *Patterson*,
    204 F.3d 1206 (9th Cir. 1999) ....................................................... 14, 15

*Long* v. *Robinson*,
    432 F.2d 977 (4th Cir. 1970) ................................................................. 1

*Lopez* v. *Heckler*,
    713 F.2d 1432 (9th Cir. 1983) ............................................................. 12

*Mardan Corp.* v. *C.G.C. Music, Ltd.*,
    804 F.2d 1454 (9th Cir. 1986) ............................................................. 18

*Peterson* v. *Lindner*,
    765 F.2d 698 (7th Cir. 1985) ............................................................... 11

*Petro-Ventures, Inc.* v. *Takessian*,
    967 F.2d 1337 (9th Cir. 1992) ................................................ 6, 7, 8, 9, 18

*Pierce Co. Hotel Employees and Restaurant Employees Health Trust et al.*
    v. *Elks Lodge*, 827 F.2d 1324 (9th Cir. 1987) ..................................... 14

# TABLE OF AUTHORITIES
## (continued)

Page

*Pompano-Windy City Partners, Ltd.* v. *Bear Stearns & Co.*,
    794 F. Supp. 1265 (S.D.N.Y. 1992) ................................................................. 16

*Puerto Rico Aqueduct & Sewer Auth.* v. *Metcalf & Eddy, Inc.*,
    506 U.S. 139 (1993) ........................................................................................ 10

*In re Rains*,
    428 F.3d 893 (9th Cir. 2005) ........................................................................... 11

*Ruby* v. *Secretary of the United States Navy*,
    365 F.2d 385 (9th Cir. 1966) ........................................................................... 10

*Sheng* v. *Starkey Labs*,
    117 F.3d 1081 (8th Cir. 1997) ......................................................................... 14

*Stormans, Inc.* v. *Selecky*,
    526 F.3d 406 (9th Cir. 2008) ........................................................................... 12

*In re Sunflower Racing, Inc.*,
    223 B.R. 222 (D. Kan. 1998) ........................................................................... 18

*Teamsters Local 282 Pension Trust Fund* v. *Angelos*,
    762 F.2d 522 (7th Cir. 1985) ........................................................................... 17

*United States* v. *Hunt*,
    513 F.2d 129 (10th Cir. 1975) ......................................................................... 11

*United States* v. *Oregon*,
    913 F.2d 576 (9th Cir. 1990) ............................................................... 12, 13, 15

*Wisdom Imp. Sales Co., L.L.C.* v. *Labatt Brewing Co.*,
    339 F.3d 101 (2d Cir. 2003) ............................................................................ 19

*Zucker* v. *Maxicare Health Plans*,
    14 F.3d 477 (9th Cir. 1994) ............................................................................. 10

# TABLE OF AUTHORITIES
**(continued)**

Page

## STATE CASES

*Elite Show Services, Inc. v. Staffpro, Inc.*, 14 Cal. Rptr. 3d 184, 188 (Cal. App. 2004)................................................................................................ 14

*Foxgate Homeowners Ass'n* v. *Bramalea*,
26 Cal. 4th 1 (2001) ....................................................................................... 15

*Meyer* v. *Benko*,
127 Cal. Rptr. 846 (Cal. Ct. App. 1976) ...................................................... 13

*In re Trans World Airlines, Inc.*,
No. 01-0056 (PJW), 2001 WL. 1820325 (Bankr. D. Del. Mar. 27, 2001)........ 18

*Wilhelm* v. *Pray, Price, Williams & Russell*,
186 Cal. App. 3d 1324 (1986)........................................................................ 17

## FEDERAL STATUTES

15 U.S.C. § 78cc(b) ................................................................................................ 16

Fed. R. App. P. 8 .................................................................................................... 19

Fed. R. Evid. 801 ................................................................................................... 15

## STATE STATUTES

Cal. Civ. Code § 1565 ............................................................................................ 13

Cal. Civ. Code § 1638 ............................................................................................ 14

Cal. Civ. Code § 1639 ............................................................................................ 13

# INTRODUCTION

Appellants' belated emergency request to reconsider this Court's previous denial of their request for a stay should be denied.[1] With one exception, this renewed motion to stay, and the alternative writ, present no new facts or arguments than those previously presented to this Court, and rejected by this Court. *Compare* Parke, Ex. Q at CU299-309 with 11/25 Mot. to Stay at 7-11, 18-21.[2] Even that new argument was considered and over-ruled by the District Court in its latest ruling. Parke, Ex. V at CU345 & CU346 n.5 Motions for a stay have now been denied twice by the District Court and once by this Court.[3] Parke, Exs. F, I, V. Appellants thus bear a "substantially greater" burden of persuasion to receive any stay now from the appellate court. *See Long v. Robinson*, 432 F.2d 977, 979 (4th Cir. 1970) (Wisdom, J.). Appellants cannot meet this heightened burden.

The only new argument raised in this "emergency" filing is that the District Court lacked jurisdiction to implement its Judgment. Appellants are wrong for two

---

[1] Appellants also claim alternatively that its filing is a petition for a writ of mandamus. Facebook sought guidance from the clerk as to how to proceed, and were instructed not to file papers with respect to the alternative writ petition unless separately instructed to do so by the Court. *See* Circuit Rule 21-4.

[2] Appellants' merits arguments cite to their 57-page Opening Brief, which they incorporate liberally by reference. Mot. at 8-11. Due to page limitations, Facebook presents an abbreviated argument justifying the denial of the motion to stay. Should this Court wish additional briefing, Facebook will provide it.

[3] For ease of reference, copies of this Court's and the District Court's earlier Orders denying requests for stays are attached hereto. Facebook also requests that this motion be referred to the Motions Panel that decided the prior stay motion. *See* Circuit Rule 27-1(4) advisory committee note.

reasons. First, Appellants' notice of appeal was defective, as even the District Court noted it had not yet issued a final appealable order. The District Court thus had jurisdiction to perform any acts after July 2, 2008 related to the case. Second, the District Court had jurisdiction to enforce its Judgment irrespective of an appeal.

Appellants also incorrectly claim that something is new because ConnectU's shares will be delivered to Facebook on December 15, 2008. Mot. at 6-8. The exact same argument was raised in the previous motion to stay. *Compare* Parke, Ex. Q at CU298-309 with 11/25 Mot. to Stay at 1. The Court rejected the argument then, and it should do so again now. Parke, Ex. I.

Appellants' claim of urgency also is without merit. The District Court previously found Appellants' delay to weigh against a finding of irreparable harm. *Id.*, Ex. F at CU092. From the time of this Court's original August 13, 2008 denial of their first "emergency" motion to stay, and November 21, 2008 (over three months), Appellants never sought further relief from this Court to stop the District Court's actions. Indeed, in denying the third motion to stay, the District Court noted that Appellants did not file a motion to stay or seek a writ to "stay [the District Court's] hand" after the September 19, 2008 Order to Show Cause issued. Declaration of Monte M.F. Cooper in Support of Appellee's Opposition to Appellants' Emergency Motion to Stay ("Cooper"), Ex. 1 at FB004-06. This motion for a stay—just like the last three—should be denied.

# FACTS

## A.    Facebook, Mark Zuckerberg and Appellants Settle

In February 2008, Facebook, Mark Zuckerberg, and Appellants attended a mediation to try and resolve three separate actions between the parties in California and Massachusetts. Cooper, Ex. 7 at FB053. Appellants were represented by six lawyers from two separate law firms. *Id.* At the end of the mediation, Appellants entered into a Settlement Agreement ("Agreement"). Parke, Ex. P at CU252-53.

The Agreement had multiple specific terms, including dismissals of all three cases, release terms, warranties and financial terms.[4] *Id.* However, it included no representations as to the value of any stock exchanged as consideration. *Id.* It also had specific confidentiality and dispute resolution clauses for certain types of disputes. *Id.* The Agreement provided that as executed it was binding and "this document may be submitted into evidence to enforce this agreement." *Id.* at CU252. While it also contemplated that the parties "may execute more formal documents," such other formal documents were not required for the Agreement itself to be binding. *Id.* Lastly, it called for any enforcement proceedings to be heard by "the San Jose Federal Court." *Id.* Despite these clear terms, Appellants

---

[4] Appellants include a misleading strikethrough to suggest an earlier cash monetary value for the Agreement. *See* 11/25 Mot. to Stay at 3. To the contrary, a review of the original Agreement reflects the strikethrough is illegible, and that it always was written as a stock for cash-and-stock Agreement. *See* Parke, Ex. P at CU252-53. Appellants' new intimation as to what monetary value they claim was stricken is wholly inaccurate, and also was never presented to the District Court.

refused to honor the Agreement. Facebook filed a motion to enforce the Agreement as a result. Cooper, Ex. 8 at FB055.

**B.    The Court Finds That The Agreement Is Enforceable**

ConnectU opposed Facebook's motion claiming that it was an "agreement to agree." *Id.*, Ex. 9 at FB073. ConnectU also claimed that the Agreement was procured by fraud, and was void for violating securities laws. *Id.* ConnectU claimed an old Facebook press release announcing an investment by Microsoft somehow misled Appellants about the value of a different class of stock the Founders obtained through the Agreement. *Id.* These arguments all were rejected by the District Court. Parke, Ex. S.

First, the Court found that the Agreement contained all material terms, including 1) "consideration for the performance required and how it must be paid," 2) the specified amount of cash and stock, to be paid by Facebook, and 3) the required signatures of ConnectU and the Founders, evidencing an intent to be bound. *Id.* at CU317-18.

Second, while noting that the parties contemplated the possibility of execution of additional documents, the Court held, "it is clear that had the parties wished to require more formal documents, they could have indicated they *will* or *shall* execute more formal documents. Instead, they elected to use the word, may, and made clear that the Agreement is binding in and of itself." *Id.* at CU319.

(emphasis in original).

Third, the Court found "that Defendants have failed to tender sufficient evidence of fraud . . ." and that "Defendants have failed to establish that Plaintiffs made a misrepresentation during the negotiation." Parke, Ex. S at CU320-23. In so doing, the Court acknowledged that Appellants did not challenge the accuracy of the October 2007 press release related to the Microsoft investment. *Id.* at CU320-23. Furthermore, the Court found that the stock at issue in the October 2007 press release was a different class of stock from the stock to be exchanged pursuant to the Agreement. *Id.* The Court also found the Agreement made no representation as to the value of the stock. *Id.*

The Court also applied the logic of the Massachusetts District Court, which previously had denied Appellants discovery which Appellants claimed would prove they had been defrauded when in entering into the settlement:

> From all that appears, the parties were prepared to settle their disputes then, despite the fact that aspects of discovery in this case—most pertinently for present purposes, document production—had not been completed and unresolved discovery issues remained outstanding.

*Id.*; *see also* Cooper, Ex. 10 at FB105. Applying the same reasoning, the District Court found there were no misrepresentations concerning stock value, because Appellants could have demanded warranties as to such value, or conducted their own diligence before entering into the Agreement. Parke, Ex. S at CU320-21. For

the same reasons, as well as because of this Court's opinion in *Petro-Ventures, Inc. v. Takessian*, 967 F.2d 1337 (9th Cir. 1992), the District Court also rejected ConnectU's claim of securities fraud. Parke, Ex. S at CU322-23.

### C. The District Court Appoints A Special Master

On July 2, 2008, the District Court entered a Judgment Enforcing Settlement Agreement. *Id.*, Ex. B. To assist with implementation of the Judgment, the Court appointed a Special Master to oversee the exchange of cash and stock required by the Agreement. *Id.*, Ex. K. The Court explained its reasons for the appointment and that additional steps would be necessary to enforce the Agreement:

> The reason that I'm contemplating is that you all were unable to do it on your own and you came to the Court and asked me to enforce it and in the enforcing of it, it requires steps. And it's not a matter that I can do without putting someone in the middle to collect things in order to make sure everything is, is, is -- goes according to the agreement. So that's why I'm contemplating requires the master in the first place and also requiring that the parties share the cost of that . . .

> My focus is on the form of the judgment as I outlined it. If you want to address those matters further. It does seem to me that there is going to be -- the reason I'm put in this position is that there will be the necessity of the Court taking further action to enforce the judgment once the judgment is in place that I can't contemplate the -- those orders at this point.

Cooper, Ex. 2 at FB016:24-25:15; FB020:21-21:18.

### D. Appellants' Motion To Stay Is Denied At The District And Appellate Courts

Following the entry of the Order and Judgment enforcing the Agreement,

ConnectU and the Founders appealed and moved to stay the Order and Judgment. Parke, Ex. D. Facebook opposed, noting that the Founders were squandering ConnectU and engaging in acts that threatened its value. Parke, Ex. A; *see also* Cooper, Exs. 3; 11 at FB112-144.

The District Court denied ConnectU's motion to stay. Parke, Ex. F. The Court found that Appellants were not irreparably harmed because they significantly delayed filing the motion to stay until days before the cash and stock consideration was due. *Id.* at CU092. Additionally, the Court found that Facebook faced harm if a stay were granted because the Founders were engaged in activities that threatened the business and value of ConnectU. *Id.*

Appellants then sought emergency relief from this Court. Parke, Ex. Q. Appellants contended that complying with the Judgment and the impending execution would "convey ownership of [ConnectU's] stock to Facebook," and that "[c]ompliance with the judgment would effectively extinguish ConnectU's right to appeal if, as the district court has suggested it will do, it passes ownership of the ConnectU stock to Facebook." *Id.* at CU290-91. Following emergency briefing, this Court denied ConnectU and the Founders' motion to stay. Parke, Ex. I.

### E. The District Court Continues To Enforce The Agreement

Following the Special Master's Report related to enforcement of the Agreement and after the emergency motion to this Court was denied, the District

Court issued an Order to Show Cause to authorize the Special Master to release the

consideration and dismiss all pending cases. Parke, Ex. J. The parties submitted

their responses to the Order. *Id.*, Ex. X ; *see also* Cooper Exs. 4, 5. In its briefing,

Appellants argue that their notices of appeal deprived the District Court of

jurisdiction to execute the Order to Show Cause.

While the Order to Show Cause proceedings were pending, Appellants did

not seek any relief from this Court. At oral argument on the Order to Show Cause,

ConnectU's counsel once again argued that the District Court lacked jurisdiction.

In response, the Court recognized that this Court had denied a stay and asked about

ConnectU's delay in seeking relief:

> Your comment, though, prompts me to ask why, if you've
> considered it, you have not pursued that beyond the
> Court's ruling. You asked for an emergency stay of
> execution, but as far as I know, you haven't asked the
> Circuit to issue any order to me to stay my hand by way of
> a writ or anything of that kind, which would be beyond
> the appeal route. If your argument is I don't have
> jurisdiction and I'm about to do something beyond my
> jurisdiction, why haven't you pursued a writ?

Cooper, Ex. 1 at FB004:19-05:4. ConnectU responded that it believed it should

seek a stay of the execution of the Order to Show Cause. The Court responded that

ConnectU had exhausted its rights to seek a stay and that it needed to seek a writ if

it wanted to stop the District Court. The Court explained:

> A stay is within the Court's discretion, and if your
> argument here is that the Court has no discretion but to

hold these proceeds and it cannot proceed based upon the
presence of an appeal, that seems to me to invite – if I
believe you're wrong and I'm about to take action in
response to this Order to Show Cause, you had a basis for
seeking a writ.

Cooper, Ex. 1 at FB005:21-06:3. Until the current motion, no attempt at a writ was

ever made.

On November 3, 2008, the Court issued an Order stating that it had

jurisdiction to issue a judgment specifically enforcing the Agreement. In so doing,

the Court also noted that Appellants' appeals were imperfect because the Court's

previous judgment was interlocutory in nature and prefatory to a final order of the

Court. Parke, Ex. V at CU346 n.5.

The Court also denied Appellants' renewed request for a stay. *Id.* at CU346-

47. Despite Appellants' delay in seeking relief, however, the Court delayed

execution of the judgment "to afford Defendants a limited right to seek a stay from

the Ninth Circuit." *Id.* at 347.

The Court also issued a Judgment and instructed the Special Master to 1)

transfer the ConnectU shares; 2) transfer the cash and Facebook shares; 3) file the

tendered dismissals; and 4) grant releases "as broad as possible" as of February 22,

2008. Parke, Ex. W. The Court later amended the instructions in the Judgment

based upon an administrative request filed by Facebook and enlarged the time to

December 15, 2008, for the Special Master to perform. *Id.*, Ex. DD.

- 9 -

Between the time of the Order to Show Cause on September 19, 2008 and
the Order issued on November 21, 2008, Appellants did not seek any urgent relief
whatsoever from this Court.

## ARGUMENT

## I. THE DISTRICT COURT HAD JURISDICTION TO ENFORCE THE SETTLEMENT

Appellants incorrectly contend that the District Court lacked jurisdiction to
implement its Judgment. This argument is the only argument raised in this motion
that was not raised with the Court of Appeals in the previously denied stay motion.
Appellants' jurisdictional argument is wrong for two reasons.

First, as recognized by the District Court, Appellants' notice of appeal is
imperfect and therefore did not deprive the District Court of jurisdiction. *Ruby v.
Secretary of the United States Navy*, 365 F.2d 385, 387-88 (9th Cir. 1966)("If, by
reason of defects in form or execution, a notice of appeal does not transfer
jurisdiction to the Court of appeals, then such jurisdiction must remain in the
District Court"). As set forth in the concurrently pending motion to dismiss, the
District Court's judgments have consistently contemplated further action, which
renders the appeal not ripe. *Zucker v. Maxicare Health Plans*, 14 F.3d 477, 481
(9th Cir. 1994); *see also Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy,
Inc.*, 506 U.S. 139, 142 (1993). The District Court correctly recognized that a final
order had not issued, no one has been dismissed from the case and the earlier

judgments were prefatory. *See, e.g., Dannenberg v. Software Toolworks, Inc.*, 16 F.3d 1073, 1074-75 (9th Cir. 1994). These statements by the District Court about its specific intentions are entitled to deference. *Peterson v. Lindner*, 765 F.2d 698, 704 (7th Cir. 1985); *United States v. Hunt*, 513 F.2d 129, 136 (10th Cir. 1975).

Second, irrespective of the existence of an appeal, the District Court retains power to enforce its own judgments. *In re Rains,* 428 F.3d 893, 904 (9th Cir. 2005). Indeed, a court retains the authority to enforce its judgment even if a party's rights are affected by execution of the judgment. *See Bennett v. Gemmill*, 557 F.2d 179, 190 (9th Cir. 1977); *see also Deering Milliken, Inc. v. F.T.C.* , 647 F.2d 1124, 1129 n. 11 (D.C. Cir. 1978).

Appellants incorrectly argue that the District Court exceeded its authority by altering or enlarging its Judgment. Appellants cannot point to any specific examples where the Court enlarged or altered its Judgment. Mot. at 16-18. Indeed, the Court's efforts to implement its Judgment by requiring specific performance in steps is entirely consistent with the Court's powers and does not alter the rights of the parties in any way.

## II.   THIS COURT SHOULD DENY APPELLANTS' REQUEST FOR RECONSIDERATION

Other than the jurisdictional argument, all of Appellants other arguments are merely restatements of the previously rejected motion to stay. In this regard, the current motion is nothing more than an untimely and procedurally defective motion

for reconsideration. *See* Circuit Rule 27-10.

To try and avoid the previous unfavorable rulings, Appellants offer a reading of this Court's previous ruling that is unsupportable. Appellants claim that, in citing *Lopez v. Heckler*, 713 F.2d 1432 (9th Cir. 1983), "this Court may well have concluded that the irreparable harm 'would not start to accrue until later.'" Mot. at 7. The Court did not provide reasons for its denial of the motion to stay. Moreover, in addition to *Lopez v. Heckler*, this Court also cited *Golden Gate Rest. Ass'n v. City & County of San Francisco*, 512 F.3d 1112 (9th Cir. 2008). Both cases recite the high standard for a motion to stay. To the extent that Appellants call into question the reasoning set forth in this Court's August Order, Facebook respectfully requests that the Court reconstitute the August Motions Panel. Circuit Rule 27-1(4) advisory committee note. In any event, Appellants' motion should be denied for the same reasons as before.

## A.    Appellants Cannot Meet Their Burden For A Stay

To obtain a stay, Appellants must establish that they have made a strong showing that they can succeed on the merits of this appeal. *Lopez*, 713 F.2d at 1435-36; *see also Stormans, Inc. v. Selecky*, 526 F.3d 406, 408 (9th Cir. 2008). Appellants must show that they can establish that the District Court abused its discretion when it enforced the Agreement and that the Court clearly erred when it concluded that there were no facts evidencing fraud. *United States v. Oregon*, 913

F.2d 576, 580 (9th Cir. 1990). Appellants have never met this threshold in any of their three previous unsuccessful attempts to seek a stay.

**B.  Appellants Cannot Show A Likelihood of Success on the Merits**

**1.  The District Court Correctly Found That The Parties Intended To Be Bound By The Agreement**

Appellants incorrectly claim that the Agreement was not binding and enforceable. The parties, represented by able counsel, signed the Agreement to which they agreed to be bound. Parke, Ex. P at CU252-53. The Agreement had numerous specific terms. *Id.* They agreed that the Agreement could be enforced before the District Court. *Id.* As found by the District Court, had the parties wished the Agreement to remain unenforceable until resolution of additional matters, the parties could have said so. *Id.*, Ex. S.; *see also* Cooper, Ex. 6 at 46:17-19 (Court stating "The word 'enforce' means we've got something, and we need a place now to go make sure it takes place."). Instead, they agreed that the Agreement was final and enforceable but may permit future discussions if the parties wished to try to execute more formal documents.

The Court's ruling is consistent with established law. A legally enforceable contract requires mutuality of intent. Cal. Civ. Code § 1565. Intent, however, is judged on an objective standard, *see Meyer v. Benko*, 127 Cal. Rptr. 846, 848 (Cal. Ct. App. 1976), and, wherever possible, "the intention of the parties is to be ascertained from the writing alone," Cal. Civ. Code § 1639. "The language of a

contract is to govern its interpretation if the law is clear and explicit and does not involve an absurdity." Cal. Civ. Code § 1638; *see also Pierce Co. Hotel Employees and Restaurant Employees Health Trust et al. v. Elks Lodge*, 827 F.2d 1324, 1327 (9th Cir. 1987).

Here, the terms of the contract are clear on the parties' intent—they settled the matter without equivocation. Parties can also agree to binding terms even when additional documents may follow. *See e.g., Core-Vent Corp. v. Implant Innovations, Inc.*, 53 F.3d 1252 (Fed. Cir. 1995)(applying Ninth Circuit Law). Also, the parties need not agree on every consequence of an agreement. "[N]either law nor equity requires that every term and condition of an agreement be set forth in the contract." *Elite Show Services, Inc. v. Staffpro, Inc.*, 14 Cal. Rptr. 3d 184, 188 (Cal. App. 2004); *Sheng v. Starkey Labs*, 117 F.3d 1081, 1083 (8th Cir. 1997) (tax consequences not material). Further, claiming that the Agreement was an "agreement to agree" would contradict the plain meaning of the contract. *Klamath Water Users Protective Ass'n v. Patterson*, 204 F. 3d 1206, 1210 (9th Cir. 1999).

## 2. The District Court Properly Excluded Improper Extrinsic And Privileged Evidence

ConnectU claims that the District Court erred by not piercing the mediation privilege and refusing to hold an evidentiary hearing. This, again, is a proper discretionary decision of the District Court. If a district court has sufficient facts to approve the settlement intelligently, then "there is no reason to hold an additional

hearing on the settlement or to give appellants authority to renew discovery." *Oregon*, 913 F.2d at 582. An evidentiary hearing is only required if there is a disputed issue of material fact concerning the existence or terms of a settlement agreement. *In re City Equities Anaheim, Ltd.*, 22 F.3d 954, 958 (9th Cir. 1994). No such dispute exists. At best, the mediation privilege can only be pierced in compelling circumstances or limited grounds for waiver. *Foxgate Homeowners Ass'n v. Bramalea*, 26 Cal. 4th 1, 14-15 (2001). No compelling reason or waiver exists here. In addition, the statements made during the mediation are inadmissible hearsay, as none of the statements described by ConnectU was made by or on behalf of Facebook. Fed. R. Evid. 801. The District Court properly declined to pierce the privilege to unwind the Agreement based on ConnectU's bare allegations of fraud. Parke, Ex. S at CU321, n.11.

In support of its request for a hearing, ConnectU sought extensive discovery concerning documents exchanged after the Agreement was executed. Cooper, Ex. 12. As these communications were directed to the permissive opportunity to enter into more formal agreements, they were entirely irrelevant. Extrinsic evidence is not needed to interpret a contract when the terms are clear. *Klamath Water Users Protective Ass'n*, 204 F.3d at 1210; *see also Brinderson-Newberg Joint Venture v. Pacific Erectors, Inc.*, 971 F.2d 272, 280 (9th Cir. 1992)(finding that evidence may not be introduced to contradict the plain terms of a contract). For these reasons,

- 15 -

the District Court properly excluded extrinsic evidence and declined to pierce the mediation privilege when it enforced the Agreement.

### 3. There Is No Securities Fraud Because There Is No Fraud

Appellants incorrectly claim that Section 29(b) can void the Agreement. Section 29(b) requires a predicate securities claim and does not apply here because Appellants have not identified any viable predicate Securities Act violation. 15 U.S.C. § 78cc(b) (requiring contract made in violation of Securities Act); *Berckeley Inv. Group Ltd. v. Colkitt*, 455 F.3d 195, 205 (3d Cir. 2006) (noting same); *Pompano-Windy City Partners, Ltd. v. Bear Stearns & Co.*, 794 F. Supp. 1265, 1288 (S.D.N.Y. 1992) (same); *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 754 (1975).

Appellants claim securities fraud on the basis that Facebook and Zuckerberg affirmatively represented the value of Facebook's stock. Mot. at 10. No evidence exists showing that Facebook or Zuckerberg made any affirmative representations concerning the value of the stock at issue in the Agreement. Cooper, Ex. 13. Indeed, the District Court evaluated the evidence and found that ConnectU offered no evidence of a representation as to stock value and specifically recognized that the Agreement had no representation as to stock price. Parke, Ex. S at CU320-23. Further, the Court found ConnectU offered no evidence to support a finding of fraud. *Id.*

In addition, the District Court found that the October 2007 press release was true when issued and it related to a different class of stock than that at issue in the Agreement. Parke, Ex. S at CU320-23. Further, Appellants knew—because they had the documents showing—that Facebook's valuations changed constantly and that different classes of stock had different prices. Cooper, Ex. 11 at FB151, 231, Ex. 14 at FB362-63. They knew that they could not rely on a press release issued three months earlier as proof of present-day valuation. In such circumstances, Appellants cannot claim fraud. *Atari Corp. v. Ernst & Whinney*, 981 F. 2d 1025, 1030 (9th Cir. 1992); *Wilhelm v. Pray, Price, Williams & Russell*, 186 Cal. App. 3d 1324 (1986); *Kennedy v. Josephthal & Co.*, 814 F. 2d 798, 805 (1st Cir. 1987); *Teamsters Local 282 Pension Trust Fund v. Angelos*, 762 F.2d 522, 530 (7th Cir. 1985). As no fraud existed, Section 29(b) does not apply. *See, e.g., Brody v. Transitional Hospitals Corp.*, 280 F. 3d 997, 1006 (9th Cir. 2002).

And though Appellants now argue that Facebook possessed a heightened duty similar to that of a corporate insider seeking to trade on confidential information, the District Court was correct in its observation that insider trading is "not an issue in this case." Parke, Ex. S at CU322. They were opponents in litigation who participated in an acrimonious dispute, were prepared to settle with imperfect information, and were well represented by counsel. *Chiarella v. United States*, 445 U.S. 222, 228 (1980) ("[T]he duty to disclose arises when one party has

information that the other [party] is entitled to know because of a fiduciary or other similar relation of trust and confidence between them.").

### 4. Appellants Waived The Securities Claims

In settling the case, the parties waived their securities claims. The District Court properly relied on *Petro-Ventures, Inc. v. Takessian*, 967 F.2d 1337 (9th Cir. 1992) to support this waiver. In *Petro-Ventures*, the consideration used for settlement was, as here, the basis for the securities fraud allegation. The parties waived those claims. The parties bargained for a "'general peace,'" *Mardan Corp. v. C.G.C. Music, Ltd.*, 804 F.2d 1454, 1463 (9th Cir. 1986), by seeking releases "as broad as possible." For this reason, a securities claim was not actionable because Appellants waived their rights.

### C. Appellants Cannot Demonstrate Sufficient Irreparable Injury

Appellants once again raise the rejected argument that they will lose their right to appeal, causing irreparable injury. Appellants make no new showing of harm. The harm—the loss of an appeal—is speculative and is, in any case, not relevant. Rendering an appeal moot does not constitute irreparable injury. [5]

Moreover, as recognized by the District Court on several occasions, Appellants' delay in seeking a stay or writ both before and after the November 3

---

[5] *In re Trans World Airlines, Inc.*, No. 01-0056 (PJW), 2001 WL 1820325, at * 10 (Bankr. D. Del. Mar. 27, 2001); *accord In re Best Prods. Co.*, 177 B.R. 791, 808 (S.D.N.Y.), *aff'd*, 69 F.3d 26 (2d Cir. 1995); *In re Sunflower Racing, Inc.*, 223 B.R. 222, 225 (D. Kan. 1998)(citing collection of cases).

Judgment undercuts their argument that they will suffer irreparable injury. *See Beame v. Friends of Earth*, 434 U.S. 1310, 1313 (1977). This delay is particularly inexcusable in light of Appellants' failure to act during the various events—the Order Granting the Motion to Enforce, the Special Master's Report, the September Order to Show Cause, the October hearing—that showed that the District Court would do exactly what it said it would: namely, enforce the Agreement.

### D. The Balance Of Harm Tips In Facebook's Favor

A stay harms Facebook.[6] If execution of the Judgment is stayed, Facebook cannot ensure measures are taken to protect and use the business of ConnectU. Facebook cannot participate in important business decisions, such as the decision to initiate litigation or invest. Decisions like these impact and threaten the value of ConnectU. These decisions are being made independent of Facebook, even though Facebook purchased ConnectU months ago at great cost. As recognized by the District Court, this is harm. Parke, Ex. V at CU346; *Allegheny Energy, Inc., v. DQE, Inc.*, 171 F.3d 153 (3d Cir. 1999) (ordering specific performance of merger agreement based on a finding of irreparable harm); *see also Wisdom Imp. Sales Co., L.L.C. v. Labatt Brewing Co.*, 339 F.3d 101, 114 (2d Cir. 2003) ("denial of a controlling ownership interest in a corporation" or "[c]onduct that unnecessarily

---

[6] Appellants have not proposed a bond in support of its request for a stay. Their request should require a bond one-and-a half times the value of the judgment. Fed. R. App. P. 8. Their failure to make such an offer highlights the weakness of Appellants' position.

frustrates efforts to obtain or preserve the right to participate in the management of a company may constitute irreparable harm.").

In addition, Appellants' arguments ignore the evidence before this Court and the District Court in the earlier motion to stay proceedings. While ConnectU was still in its control, the Founders were making decisions that affected, and potentially decreased, the value of the company, including initiating litigation against ConnectU's former counsel and further increasing liabilities. Cooper, Ex. 3, Ex. 11 at FB112-144. These facts, too, justify the denial of the instant motion.

### E.  The Public Interest Favors Against Granting A Stay

The only recognized public policy at issue is the one promoting private resolution of litigation through settlements such as that reached in this case. *See, e.g., Bianchi v. Perry*, 140 F.3d 1294, 1297 (9th Cir. 1998) (noting that there is a "compelling public interest and policy that favors the finality of settlements"). The District Court specifically recognized this important public interest. Cooper, Ex. 2 at FB012:21-13:7. To issue a stay would frustrate this important public purpose. Appellants' motion, therefore, should be denied.

## CONCLUSION

For the reasons set forth above, the motion to stay should be denied.

Dated:    December 5, 2008        ORRICK, HERRINGTON & SUTCLIFFE LLP

_____

I. Neel Chatterjee
Attorneys for Plaintiffs-Appellees
THE FACEBOOK, INC., AND
MARK ZUCKERBERG

1   SEAN A. LINCOLN (STATE BAR NO. 136387)
    salincoln@orrick.com
2   I. NEEL CHATTERJEE (STATE BAR NO. 173985)
    nchatterjee@orrick.com
3   MONTE COOPER (STATE BAR NO. 196746)
    mcooper@orrick.com
4   THERESA A. SUTTON (STATE BAR NO. 211857)
    tsutton@orrick.com
5   YVONNE P. GREER (State Bar No. 214072)
    ygreer@orrick.com
6   ORRICK, HERRINGTON & SUTCLIFFE LLP
    1000 Marsh Road
7   Menlo Park, CA  94025
    Telephone:     +1-650-614-7400
8   Facsimile:     +1-650-614-7401

9   Attorneys for Plaintiffs
    THE FACEBOOK, INC. and MARK ZUCKERBERG

10

11                     UNITED STATES DISTRICT COURT

12                   NORTHERN DISTRICT OF CALIFORNIA

13                          SAN JOSE DIVISION

14

15   THE FACEBOOK, INC. and MARK            Case No.  5:07-CV-01389-JW
     ZUCKERBERG,
16                                          **PLAINTIFFS' OPPOSITION TO
                      Plaintiffs,           CONNECTU INC.'S MOTION TO
17                                          STAY EXECUTION OF JUDGMENT
           v.                               PENDING APPEAL**
18
     CONNECTU, INC. (formerly known as
19   CONNECTU, LLC) PACIFIC                 Date:       August 6, 2008
     NORTHWEST SOFTWARE, INC.               Time:       4:30 p.m.
20   WINSTON WILLIAMS, and WAYNE            Courtroom:  8
     CHANG,                                 Judge:      Honorable James Ware
21
                      Defendants.
22

23

24

25

26

27

28

1

# TABLE OF CONTENTS

2

Page

3    I.    INTRODUCTION ........................................................................................................ 1

4    II.   FACTUAL BACKGROUND .................................................................................. 2

           A.   The Relevant Proceedings before this Court.................................................. 2

5          B.   The ConnectU Founders Engage in Behavior Affecting the Value of
                ConnectU .................................................................................................................. 4
6
     III.  ARGUMENT ............................................................................................................... 4
7
           A.   ConnectU's Motion to Stay Is Moot .............................................................. 4
8
           B.   ConnectU Cannot Meet Its Burden For A Stay of Execution Pending
9               Appeal Pursuant to Rule 62 ............................................................................ 5

10              1.   ConnectU Cannot Meet Its Burden On The Merits ............................ 6

11                   a.    ConnectU's Has Not Raised "Serious Legal Questions"
                           Based on Contract Defenses Already Considered by the
                           Court............................................................................................. 7
12
                     b.    The Settlement Agreement Is Enforceable as a Share
13                         Exchange Transaction Under Connecticut and Delaware
                           Law................................................................................................ 9
14
                     c.    ConnectU Cannot Show a Question as to Its Fraud Claims; .......... 9
15
                           (1)   ConnectU lost on facts as well as legal questions,
16                               warranting denial of a stay .................................................. 9

17                         (2)   ConnectU's legal arguments are not substantial legal
                                 questions ............................................................................. 11
18
                2.   ConnectU Has Not Demonstrated Irreparable Injury Sufficient to
19                   Warrant a Stay of Execution of Judgment .................................................. 13

20                   a.    The Possibility that ConnectU's Appeal May Become Moot
                           Is Not a Sufficient Basis To Grant a Stay ...................................... 14
21
                     b.    Speculative Claims are Not Irreparable Harm ............................... 15
22
                     c.    The Balance of Harm Tips in Facebook's Favor, Not
23                         ConnectU's..................................................................................... 16

24              3.   The Rights of Third Parties will be Better Protected by Denying a
                     Stay................................................................................................................ 17
25
                4.   The Public Interest Will Be Better Served by Denying a Stay
26                   Pending Appeal ........................................................................................... 17

27         C.   If the Court Stays Release of ConnectU Stock Pending Appeal, It Should
                Order ConnectU to Provide Adequate Security ............................................. 18
28
     IV.   CONCLUSION ........................................................................................................... 19

1               **TABLE OF AUTHORITIES**

2                                                   **Page**

3                     **FEDERAL CASES**

4  *In re 203 N. LaSalle St. Partnership*, 190 B.R.595 (N.D. Ill. 1995) ............................................ 15

5  *Allegheny Energy, Inc.,* v. *DQE, Inc.*, 171 F.3d 153 (3d Cir. 1999) ............................................ 16

6  *Asberry* v. *USPS*, 692 F.2d 1378 (Fed. Cir. 1982) ........................................................................ 9

7  *In re Ashville Bldg. Assocs.*, 93 B.R. 920 (W.D.N.C. 1988) ........................................................ 14

8  *Atari Corp.* v. *Ernst & Whinney*, 981 F.2d 1025 (9th Cir. 1992) ................................................ 10

9  *In re Baldwin United Corp.*, 45 B.R. 385 (Bankr. S.D. Ohio 1984) ............................................ 15

10  *Basic* v. *Levinson*, 485 U.S. 224 (1988) ...................................................................................... 10

11  *Beame* v. *Friends of Earth*, 434 U.S. 1310 (1977) ...................................................................... 13

12  *Bennett* v. *United Trust Co. Of N.Y.*, 770 F.2d 308 (1985) ........................................................ 13

13  *In re Best Prods. Co.*,
14     177 B.R. 791 (S.D.N.Y.), *aff'd*, 69 F.3d 26 (2d Cir. 1995) ...................................................... 14

  *Blue Chip Stamps* v. *Manor Drug Stores*, 421 U.S. 723 (1975) ................................................ 10
15
  *Callie* v. *Near*, 829 F.2d 888 (9th Cir. 1987) ............................................................................... 8
16
  *Canterbury Liquors and Pantry v. Sullivan*, 999 F. Supp. 144, 150 (D. Mass. 1998) ............... 6, 7
17
  *Celebration Int'l, Inc.* v. *Chosun Int'l, Inc.*,
18     234 F. Supp. 2d 905 (S.D. Ind. 2002) ...................................................................................... 13

19  *Core-Vent Corp.* v. *Implant Innovations, Inc.*,
20     53 F.3d 1252 (Fed. Cir. 1995) ............................................................................................... 8, 9

  *Dacanay* v. *Mendoza*, 573 F.2d 1075 (9th Cir. 1978) .................................................................. 8
21
  *Drasner* v. *Thomson McKinnon Securities, Inc.*,
22     433 F. Supp. 485 (S.D.N.Y.1977) .......................................................................................... 12

23  *Dura Pharm., Inc.* v. *Broudo*, 544 U.S. 336 (2005) .................................................................... 10

24  *Franklin* v. *Kaypro Corp.*, 884 F.2d 1222 (9th Cir. 1989) ......................................................... 17

25  *In re Frascella Enterprises, Inc.*,
    388 B.R. 619 (Bankr. E.D. Pa. 2008) ..................................................................................... 14
26
  *General Teamsters Union Local No. 439 v. Sunrise Sanitation Servs.*, No. S-05-1208
27     WBS JFM, 2006 U.S. Dist. Lexis 51802, at *10 (E.D. Cal. July 26, 2006) ........................... 7

28

PLAINTIFFS' OPPOSITION TO MOTION TO STAY EXECUTION
OF JUDGMENT PENDING APPEAL
5:07-CV-01389-JW

1

**TABLE OF AUTHORITIES**

2

Page

3
*Geneva Towers Tenants Org. v. Federated Mortg. Investors*;
  504 F.2d 483, 485 n. 2 (9th Cir. 1974).................................................................... 5

4

5
*Golden Gate Restaurant* v. *City and County of San Francisco,*
  512 F.3d 1112 (9th Cir. 2008)................................................................................. 6

6
*Goldie's Bookstore* v. *Superior Ct.*, 739 F.2d 466 (9th Cir. 1994) ............................ 15

7
*Gould* v. *Control Laser Corp.*, 866 F.2d 1391 (Fed. Cir. 1989)................................... 5

8
*In re Great Barrington Fair & Amusement, Inc.*,
  53 B.R. 237 (Bankr. D. Mass. 1985)...................................................................... 15

9

10
*Int'l Banknote Co.* v. *Muller*, 713 F. Supp. 612 (S.D.N.Y. 1989)............................... 17

11
*Int'l Telemeter Corp.* v. *Hamlin Intern. Corp.*,
  754 F.2d 1492 (9th Cir. 1985)................................................................................ 18

12
*Kennedy* v. *Josephthal & Co.*, 814 F.2d 798 (1st Cir. 1987)..................................... 10

13
*In re Kent*, 145 B.R. 843 (Bankr. E.D. Va. 1991)....................................................... 15

14
*Locafrance U.S. Corp.* v. *Intermodal Sys. Leasing, Inc.*,
  558 F.2d 1113 (2d Cir. 1977)................................................................................. 13

15

16
*Lopez* v. *Heckler,*
  713 F.2d 1432 (9th Cir. 1983), *rev'd on other grounds*, 463 U.S. 1328 (1983) ................ 6, 17

17
*Mamula* v. *Satralloy, Inc.*, 578 F. Supp. 563 (S.D. Ohio 1983) ................................. 6

18
*McClatchy Newspapers* v. *Central Valley Typographical Union No. 46*,
  686 F.2d 731 (9th Cir. 1982)................................................................................. 18

19

20
*Mich. Coalition of Radioactive Material Users* v. *Griepentrog*,
  945 F.2d 150 (6th Cir. 1991)................................................................................... 6

21
*In re Moreau*, 135 B.R. 209 (N.D.N.Y. 1992).............................................................. 15

22
*Mortellite* v. *Novartis Crop Protection, Inc.*,
  460 F.3d 483 (3d Cir. 2006).................................................................................. 10

23

24
*National Union Fire Ins. Co. of Pittsburgh, Pa.* v. *Turtur,*
  892 F.2d 199 (2d Cir. 1989)................................................................................... 12

25
*Palmer* v. *Thomson & McKinnon Auchincloss, Inc.*,
  474 F. Supp. 286 (D.Conn. 1979)......................................................................... 12

26

27
*Pearlstein* v. *Scudder & German*, 429 F.2d 1186 (2nd Cir. 1970)............................. 13

*Peralta* v. *Peralta Food Corp.*, 506 F. Supp. 2d 1274 (S.D. Fla. 2007)...................... 18

28

1

**TABLE OF AUTHORITIES**

Page

2

3  *Petro-Ventures, Inc.* v. *Takessian*, 967 F.2d 1337 (9th Cir. 1992) .................................. 11, 12, 13

4  *Rachel* v. *Banana Republic, Inc.*, 831 F.2d 1503 (9th Cir. 1987) ................................................ 18

5  *S&T Mfg.* v. *County of Hillsborough*, 815 F.2d 676 (Fed. Cir. 1987) ........................................ 9

6
  *Sea Ranch Ass'n* v. *Calif. Coastal Comm'n*,
7     552 F. Supp. 241 (N.D. Cal. 1982) ....................................................................................... 5

8  *Silvas* v. *ETrade Mortg. Corp.*, 514 F.3d 1001 (9th Cir. 2008) ................................................ 9

9  *Smolen* v. *Deloitte, Haskins & Sells*, 921 F.2d 959 (9th Cir. 1990) ........................................ 10

10  *Stormans, Inc.* v. *Selecky*, 526 F.3d 406 (9th Cir. 2008) ........................................................ 6

11  *Strobel* v. *Witter*, BEN, 2007 U.S. Dist. LEXIS 30407 (S.D. Cal. Apr. 24, 2007) ...................... 6

12  *In re Sunflower Racing, Inc.*, 223 B.R. 222 (D. Kan. 1998) ...................................................... 14

13  *TNT Mktg., Inc. v. Agrest,* 796 F.2d 276, 278 (9th Cir. 1986) ................................................ 1

14  *TSC Indus.,* v. *Northway, Inc.*, 426 U.S. 438 (1976) .............................................................. 10

15  *In re The Charter Co.*, 72 B.R. 70 (Bankr. M.D. Fla. 1987) .................................................... 15

16  *United States* v. *El-O-Pathis Pharmacy*, 192 F.2d 62 (9th Cir. 1951) .................................... 18

17  *United States* v. *Emerson*, 270 F.3d 203 (5th Cir. 2001) ...................................................... 15

18  *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) ...................................... 17

19  *Winig v. Cingular Wireless, LLC*, No. C-06-4297 MMC, 2006 U.S. Dist. Lexis 83116, at
      *3-4 (N.D. Cal. Nov. 6, 2006) ........................................................................................... 7

20  *Wisdom Imp. Sales Co., L.L.C.* v. *Labatt Brewing Co.*,
21     339 F.3d 101 (2d Cir. 2003)................................................................................................ 16

22  *Zerman* v. *Jacobs*,
       510 F. Supp. 132 (S.D.N.Y. 1981), *aff'd mem.*, 672 F.2d 901 (2d Cir. 1981) ...................... 11

23                                         **STATE CASES**

24  *In re BA-MAK Gaming Int'l, Inc.*,
       No. 95-1991, 1996 WL.411610 (E.D. La. July 22, 1996) ...................................................... 14
25
   *In re Calpine Corp.*,
26     No. 05-60200 (BRL), 2008 WL. 207841 (Bankr. S.D.N.Y. Jan. 24, 2008) .......................... 14

27  *In re Clark*, No. 95 C 2773, 1995 WL 495951, at *6 (N.D. Ill. Aug. 17, 1995) ...................... 15

28

**TABLE OF AUTHORITIES**

Page

*I.F.S. of New Jersey, Inc.* v. *Mathesz,*
No. 97-CV-7517, 1988 WL. 966029 (E.D. Pa. Nov. 18, 1998) ............................................. 16

*Federal Home Loan Mortgage Corp. v. Berbod Realty Associates, L.P.,*
1994 WL 1060301 (SDNY) ................................................................................................... 1

*In re MAC Panel Co.,*
No. 98-10952C-11G, 2000 WL. 33673784 (Bankr. M.D.N.C. Mar. 8, 2000) ...................... 14

*Sanguinetti* v. *Viewlogic Sys., Inc.,* No. C 95 2286 TEH,
1996 WL. 33967 (N.D. Cal. Jan 24, 1996) ........................................................................... 10

*Saldate* v. *Adams,* No. 1:07-CV-00309 AWI,
2008 WL. 2915075 (E.D. Cal. July 25, 2008) ....................................................................... 15

*Sibia Neurosciences, Inc. v. Cadus Pharmaceutical Group,*
No. 96-1231-IEG (POR), 1999 WL. 33554683 (S.D. Cal. Mar. 10, 1999)............................ 18

*In re Trans World Airlines, Inc.,*
No. 01-0056 (PJW), 2001 WL. 1820325 (Bankr. D. Del. Mar. 27, 2001) ............................ 14

*Weddington Products, Inc.* v. *Flick,*
60 Cal. App. 4th 793 (1998) ............................................................................................ 7, 8

**FEDERAL STATUTES**

17 C.F.R. § 240 10b-5 ................................................................................................................. 9

**STATE STATUTES**

Conn. Gen. Stat. § 33-816 ........................................................................................................... 9

California Civil Code § 1542 ..................................................................................................... 12

California Code of Civil Procedure § 1775(c) ........................................................................... 17

PLAINTIFFS' OPPOSITION TO MOTION TO STAY EXECUTION
OF JUDGMENT PENDING APPEAL
5:07-CV-01389-JW

## I.     **INTRODUCTION**

ConnectU Inc.'s ("ConnectU") Motion To Stay Execution of Judgment Pending Appeal ("Motion to Stay") should be denied for the following reasons:

- The Parties relinquished their rights to challenge the judgment by behaving in a way that indicated an intention to comply.[1]

- In looking at the four corners of a contract and holding ConnectU did not meet its burden to prove fraud, no substantial legal question exists.  Rather, the matter was decided on the facts.

- ConnectU cannot claim harm due to potential waiver of privilege because its malpractice claim already waives privilege.

- Loss of appellate rights is not irreparable harm under the law.

- Facebook, Inc. ("Facebook") is irreparably harmed by not obtaining ConnectU stock because it cannot protect an asset it has invested in and the ConnectU Founders are engaging in efforts that affect the value of ConnectU.  Indeed, the ConnectU Founders have demonstrated an intention to disregard Court orders and its agreement, causing Facebook great concern.

- The public interest in recognizing settlements outweighs any private interest.

As all parties should have complied with the Court's judgment by today (August 4, 2008), the only remaining issue is whether the Special Master should release the ConnectU shares to Facebook, which could only occur by Court order.  To the extent ConnectU considers the release of its shares part of its "stay" motion,  ConnectU should be required to post a bond pursuant to Rule 62.  The proper amount should be "one and a half times the value of the …Judgment" due to the difficulty in valuing the transaction, as this Court previously stated.  *See* Dkt. No. 481, at 71:20-72:3.  At the June 23, 2008 hearing, ConnectU identified its belief as to the range of values

---

[1] At 2:14 p.m. today, ConnectU for the first time said it would not comply with the Court's Judgment.  *See* Declaration of I. Neel Chatterjee in Support of Opposition to Motion to Stay ("Chatterjee Decl."), Chatterjee Decl., Ex. 6.  Facebook is considering its options, such as requesting contempt, attorneys fees or other sanctions for noncompliance. *See TNT Mktg., Inc. v. Agrest,* 796 F.2d 276, 278 (9th Cir. 1986); *see also Federal Home Loan Mortgage Corp. v. Berbod Realty Associates, L.P.*, No. 91 CIV. 1033(CSH), 1994 WL 1060301, at * 1 (S.D.N.Y. Aug. 16, 1994).

1    of the cash-and-stock-for-stock transaction contemplated by the settlement. *See* Dkt. No. 477 at

2    25:25-26:7.[2]  Facebook requests that the Court act in its discretion to set a bond in an amount

3    somewhere within one and a half times the range identified by ConnectU.

4    **II.    FACTUAL BACKGROUND**

5         **A.    The Relevant Proceedings before this Court**

6         Facebook settled this case on February 22, 2008, in  part, by purchasing ConnectU, Inc.

7    Divya Narendra, Cameron Winklevoss, and Tyler Winklevoss (the "ConnectU Founders") would

8    not honor the agreement reached and do what was necessary to effect the necessary transfer of

9    shares.  Therefore, on April 23, 2008, Facebook filed a motion to enforce the settlement that the

10   parties achieved.  Only ConnectU, Inc. opposed.  The ConnectU Founders made a strategic

11   decision to challenge notice, and did not file opposition papers on their own behalf.

12        After extensive briefing[3], on June 25, 2008, this Court entered an Order enforcing the

13   settlement agreement and scheduled a separate hearing to address the form of the Judgment to

14   occur on July 2, 2008.  *See* Dkt. No. 461.[4]  In so doing, the Court found that the evidence

15   demonstrated an intent to be bound to the Settlement Agreement and that ConnectU did not prove

16   that fraud had occurred.  The parties then submitted proposals of judgment, both of which were

17   rejected by the Court.  Prior to the hearing on the Judgment, counsel for Facebook asked

18   ConnectU's counsel what it expected to be ConnectU Founders' plan for maintaining the

19   ConnectU business in the event the Court permitted a delay in exchanging consideration.

20   Counsel for ConnectU answered "we really have not thought about that."  *See* Chatterjee Decl. ¶

21   7.

22        On July 3, 2008, the Court entered Judgment Enforcing Settlement Agreement.  By

23   separate Order, the Court appointed George Fisher as Special Master to administer various

---

[2] Portions of this transcript have been sealed pursuant to Court Order dated July 2, 2008.  *See* Dkt. No. 473 at 8-9. All references herein are to the sealed transcript.

[3] Facebook incorporates by reference all arguments set forth in its motion papers associated with the Confidential Motion to enforce settlement.  Likewise, Facebook incorporates all arguments it raised during separate hearings related to the settlement motion held on June 23, 2008, and July 2, 2008, respectively.

[4] Portions of this Order have been redacted by the Court.  All references by Facebook are to the un-redacted Order.

- 2 -

administrative activities it identified within the Judgment. *See* Dkt. Nos. 475-476. The Judgment
Enforcing Settlement Agreement required ConnectU Inc., Cameron Winklevoss, Tyler
Winklevoss, and Divya Narenda (the "ConnectU Parties") to perform the following acts:

    (a)    Pursuant to Paragraphs 4 and 7 of the Agreement, unless otherwise ordered by
the Court, on or before **August 4, 2008,** ConnectU Inc. shall deposit with the
Master all shares of ConnectU Inc., endorsed for transfer. To the extent the
parties to the Agreement do not own any shares of ConnectU Inc., to fulfill
the obligation of the transfer of "all ConnectU stock," the parties to the
Agreement shall take such actions in their respective corporate and individual
capacities as are necessary to effect the deposit with the Master of all shares
of ConnectU stock;[5]

    (b)    Pursuant to Paragraphs 2 and 4 of the Agreement, on or before **12 noon on
July 9, 2008,** ConnectU, Inc., Cameron Winklevoss, Tyler Winklevoss and
Divya Narenda shall submit to the Court for approval a proposed form of
release. Upon approval by the Court, the release shall be signed by these
parties and shall have attached to it corporate authority given to the corporate
signatory and shall be notarized as to each signatory and shall be immediately
deposited with the Master;

    (c)    Pursuant to Paragraphs 2 and 4 of the Agreement, unless otherwise ordered by
the Court, on or before **August 4, 2008,** a legally sufficient dismissal with
prejudice of all cases by and between the parties pending as of the date of the
Agreement. The dismissal shall recite that each party to the respective
litigation shall bear their own attorney fees and costs.

*See* Dkt. No. 476 at ¶ 2. The first requirement of the Judgment (*i.e.* submission of a proposed
form of release) was completed by ConnectU and the ConnectU Founders on July 9, 2008.
ConnectU and the ConnectU Founders also participated in numerous meetings conducted by the

---

[5] Under the Court's order appointing the Special Master, the Special Master is to retain the
ConnectU stock until further order of the Court.

1    Special Master to organize the efficient transfer of stock and cash.  Chatterjee Decl., ¶¶ 7-8.  At

2    no point did ConnectU state it would not comply with the Judgment of this court.  *Id.* at ¶ 8.  To

3    the contrary, the parties had extensive discussion and numerous meetings concerning the

4    mechanics of the transaction and the management of proceeds due to the Quinn Emanuel lien.  *Id.*

5         As the Court has not otherwise ordered, the ConnectU Parties' further deposits with the

6    Special Master of their endorsed stock for transfer, and the parties' submission of joint dismissals,

7    are due today, August 4, 2008.[6]  Notwithstanding the passing of all deadlines, ConnectU filed its

8    Motion for a Stay of Execution of Judgment.

9         **B.    The ConnectU Founders Engage in Behavior Affecting the Value of ConnectU**

10        Both before and after the court entered judgment, the ConnectU Founders engaged in

11   substantial activity affecting the business and value of ConnectU.  For example, while the motion

12   to enforce was pending, the ConnectU Founders became embroiled in a fee dispute with their

13   former lawyers at Quinn Emanuel.  Because of this dispute, Quinn Emanuel commenced an

14   arbitration against ConnectU and the ConnectU Founders.  *See* Chatterjee Decl. Ex. 1.  The

15   dispute is in the millions of dollars.  The Finnegan Henderson firm also stated it had some sort of

16   lien, but its applicability to ConnectU is unknown.

17        After Judgment was entered, the ConnectU Founders continued to affect the value of

18   ConnectU unsupervised.  The ConnectU Founders and ConnectU initiated major litigation in the

19   New York Supreme Court against Quinn Emanuel without advising Facebook or the Special

20   Master.  *See* Chatterjee Decl. Ex. 2.  As is evident from their papers, ConnectU and the ConnectU

21   Founders intend to initiate more litigation against its former counsel.  *See id.* at  3.  ConnectU

22   may have created other major liabilities as well.  At this point Facebook cannot be certain.

23   **III.   ARGUMENT**

24        **A.    ConnectU's Motion to Stay Is Moot**

25        The present Motion to Stay is moot.  Up until 2:14 p.m. today, ConnectU and the

26   ConnectU Founders have demonstrated an intent to comply with the Court's Judgment Enforcing

27   _____

28   [6] The Special Master has instructed the parties to submit the Court-ordered dismissals to him per
     section 1(c) and 2(c) of the Judgment.

PLAINTIFFS' OPPOSITION TO MOTION TO STAY EXECUTION
OF JUDGMENT PENDING APPEAL
5:07-CV-01389-JW

1    Settlement Agreement.  Courts have held that a party may relinquish its appellate rights by

2    demonstrating an intention to comply with a Court Order associated with a settlement.  Such

3    relinquishment may be evidenced by the party's intention to abide by the judgment, by the party's

4    acceptance of a benefit, or when the party's compliance renders appellate relief futile.  *Geneva*

5    *Towers Tenants Org. v. Federated Mortg. Investors*; 504 F.2d 483, 485 n. 2 (9th Cir. 1974); s*ee*

6    *also Sea Ranch Ass'n v. Calif. Coastal Comm'n*, 552 F. Supp. 241, 245-248 (N.D. Cal. 1982)

7    (action was moot where the owners of a non-profit organization challenging California Coastal

8    Zone Conservation Act accepted the benefits of a settlement bill passed by the California

9    legislature, even though the settlement bill remained vulnerable to a later state constitutional

10   challenge).[7]

11        The July 3, 2008 Judgment Enforcing Settlement Agreement required ConnectU and the

12   ConnectU Founders to do three things: (a) give all ConnectU shares to the Special Master, (b)

13   submit to the Court a proposed form of release, and (c) file a legally sufficient dismissal in all

14   three pending cases.  ConnectU and the ConnectU Founders submitted the proposed form of

15   release to the Court on July 9, 2008.  Dkt. No. 478.  The other terms are due today.  Facebook

16   meanwhile has provided the Special Master with the requisite cash and stock today, naming the

17   ConnectU shareholders as the beneficial owners of the consideration.  This submission of

18   consideration by Facebook for the benefit of the ConnectU Founders and ConnectU's actions

19   demonstrating an intention to comply, constitutes a relinquishment of ConnectU's appellate

20   rights.

21        **B.      ConnectU Cannot Meet Its Burden For A Stay of Execution Pending Appeal**
              **Pursuant to Rule 62**

22

23        Assuming the motion is not moot, ConnectU cannot meet its burden for a stay pending

24   appeal.  "Because the burden of meeting this standard is a heavy one, more commonly stay

25   requests will not meet this standard and will be denied."  11 CHARLES A WRIGHT, ARTHUR R.

26   ──────────────
     [7] As Facebook is now the beneficial owner of ConnectU, the motion is separately moot under the
     doctrine of *dominix litis*, as it now controls both sides of the litigation.  *See Gould v. Control*

27   *Laser Corp.*, 866 F.2d 1391, 1392-93 (Fed. Cir. 1989) (holding Patlex' appeal from a jury verdict
     rendering certain of its patent claims invalid was moot where Patlex acquired the defendant

28   corporation in a post-trial settlement; "[b]y virtue of the settlement agreement, Patlex has become
     the *dominix litis* on both sides" of the underlying litigation).

1   MILLER, & MARY K. KANE, FEDERAL PRACTICE & PROCEDURE § 2904 (2d ed. 1995 & Supp.).

2   "The standard for evaluating stays pending appeal [pursuant to Rule 62] is similar to that

3   employed by district courts in deciding whether to grant a preliminary injunction." *Lopez v.*

4   *Heckler*, 713 F.2d 1432, 1435 (9th Cir. 1983), *rev'd on other grounds*, 463 U.S. 1328 (1983)

5   (Rehnquist, Circuit Justice).  The four factors the Court should consider are:  "(1) whether the

6   stay applicant has made a strong showing that he is likely to succeed on the merits;  (2) whether

7   the applicant will be irreparably injured absent a stay;  (3) whether issuance of the stay will

8   substantially injure the other parties interested in the proceedings;  and (4) where the public

9   interest lies." *Stormans, Inc. v. Selecky*, 526 F.3d 406, 408 (9th Cir. 2008).  In order to satisfy

10  steps (1) and (2), a Court "will accept proof either that the applicant has shown 'a *strong*

11  likelihood of success on the merits [and] … a *possibility* of irreparable injury to the [applicant],'

12  or 'that *serious* legal questions are raised and that the balance of hardships tips *sharply* in its

13  favor.'" *Id.* (emphasis in original) (citing *Golden Gate Restaurant v. City and County of San*

14  *Francisco*, 512 F.3d 1112, 1115-16 (9th Cir. 2008)).  The Ninth Circuit has described these

15  alternative foundations as "two interrelated legal tests" that "represent the outer reaches of a

16  single continuum." *Lopez,* 713 F.2d at 1435.  Courts have recognized that regardless of which

17  standard is applied, "the movant is always required to demonstrate more than the mere

18  'possibility' of success on the merits." *Mich. Coalition of Radioactive Material Users v.*

19  *Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991).  ConnectU cannot meet its burden.

20          **1.    ConnectU Cannot Meet Its Burden On The Merits**

21          ConnectU relies upon the lower end of the continuum of merit, asserting that it has raised

22  "serious legal questions." *See* Mot. to Stay at 8-13.  This case does not present a serious or

23  difficult questions in an unclear area of law.  Courts have found that "serious legal questions"

24  requires serious and difficult legal questions of law in an area where the law is somewhat unclear.

25  *Mamula v. Satralloy, Inc.*, 578 F. Supp. 563, 580 (S.D. Ohio 1983); s*ee also Strobel v. Witter*,

26  No. 04CV1069 BEN, 2007 U.S. Dist. Lexis 30407, at *3-5 (S.D. Cal. Apr. 24, 2007) (holding

27  that a movant must establish that the appeal raises serious and difficult questions of law in an area

28  where the law is somewhat unclear) (citing *Canterbury Liquors and Pantry v. Sullivan*, 999 F.

1    Supp. 144, 150 (D. Mass. 1998); *Winig v. Cingular Wireless, LLC*, No. C-06-4297 MMC, 2006

2    U.S. Dist. Lexis 83116, at *3-4 (N.D. Cal. Nov. 6, 2006); *General Teamsters Union Local No.*

3    *439 v. Sunrise Sanitation Servs.*, No. S-05-1208 WBS JFM, 2006 U.S. Dist. Lexis 51802, at *10

4    (E.D. Cal. July 26, 2006).

5            No substantial legal question exists because (1) ConnectU did not adduce facts to prove

6    any fraud, and (2) the four corners of the Agreement were unambiguous.  The Court examined the

7    four corners of the documents and evaluated the evidence submitted by ConnectU in its effort to

8    prove fraud.  Applying well-established and non-controversial law, the Court reviewed the terms

9    recited in the Agreement and rejected the claim of fraud.  This Court, citing *Weddington*

10   *Products, Inc. v. Flick*, 60 Cal. App. 4th 793, 811 (1998) and other cases, found (1) "the

11   Agreement clearly states the consideration for the performance and how it must be paid," (2) "the

12   Agreement clearly defines the structure of the transaction," and (3) "the principals of each

13   company, who are persons authorized to make decisions for the parties, all signed the handwritten

14   version of the Agreement and none of the signatures are disputed."  As to the fraud allegations,

15   the Court found (1) ConnectU's reliance, to the extent there was any, was unjustifiable, (2)

16   "Defendants have failed to establish that Plaintiffs made a misrepresentation during mediation,"

17   (3) "[w]ithout a showing by Defendants of a material misrepresentation or omission in the

18   negotiations, the Court finds no basis to decline enforcement," and (4) Defendants have failed to

19   tender sufficient evidence of fraud in the circumstances proffered to the Court to create a genuine

20   dispute as to whether the Agreement was fraudulently induced.

21           While ignoring the fact-finding outlined above, ConnectU claims the Court made legal

22   error with respect to the Court's straight forward application of well-established law.  ConnectU's

23   argument is wrong.

24                    **a.    ConnectU's Has Not Raised "Serious Legal Questions" Based
                            on Contract Defenses Already Considered by the Court**

25

26           ConnectU first incorrectly contends that it has raised serious legal questions based on

27   contract defenses concerning the Order enforcing the settlement agreement.  *See* Mot. to Stay at

28   8-10.

PLAINTIFFS' OPPOSITION TO MOTION TO STAY EXECUTION
OF JUDGMENT PENDING APPEAL
5:07-CV-01389-JW

ConnectU incorrectly contends that *Weddington Prods., Inc. v. Flick*, 60 Cal. App. 4th 793, 799 (1998), supports the contention that the court should have considered other post-settlement documentation prepared by the parties, considered expert testimony, and held an evidentiary hearing. Mot. to Stay at 8-10. ConnectU further claims that the Court placed undue emphasis on the fact that the Settlement Agreement stated on its face that it was "binding." *Id.* at 10. *Weddington Prods. Inc.* is not applicable. The case involved an imperfect negotiation in which the parties' agreement on an essential term was expressly reserved for another day. Specifically, the parties' "Deal Point Memorandum" required execution of a formal licensing agreement upon further negotiation of the parties. *Id.* at 799 (noting that the Deal Point Memorandum stated that "the parties *will formalize* a Licensing Agreement")(emphasis added). Because the parties could not agree on the material terms of the separate license, which the agreement specifically contemplated would be the subject of further negotiation, the Court of Appeals held the whole settlement unenforceable. *Id.* at 815-816.

In contrast to *Weddington*, this Court recognized that the language of the Settlement Agreement demonstrated a clear intent to be bound and that further action beyond the Agreement was expressly permitted but not required. Dkt. No. 461 at 8 (emphasis added).[8] Namely, the Court carefully analyzed the important distinction between something which "shall" be done and something which "may" be done in determining that the Settlement Agreement was final. *Id.* at 8. Here, ConnectU repeats the error it made in its opposition to Facebook's motion to enforce by ignoring the well-established principle that a complete settlement agreement, negotiated at arm's-length by sophisticated parties, can and should be enforced summarily. *See Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987); *Dacanay v. Mendoza*, 573 F.2d 1075, 1078 (9th Cir. 1978); *Core-Vent Corp. v. Implant Innovations, Inc.*, 53 F.3d 1252, 1259 (Fed. Cir. 1995) (applying Ninth

---

[8] The underlying Settlement Agreement also is distinguishable from that in *Weddington* because it separately conferred jurisdiction to enforce the agreement with respect to the Massachusetts cases in San Jose Federal Court. *See* Dkt. No. 461, quoting Settlement Agreement ¶ 4. In *Weddington*, the Court found an ADR clause immaterial to whether it memorialized a final settlement, because the ADR clause did not confer any separate jurisdiction over the Deal Point Memorandum. *See* 60 Cal. 4th at 801. Here, unlike in *Weddington*, the *only* way the Settlement Agreement could be enforced against the Boston actions was by virtue of the jurisdictional grant in Paragraph 4.

1   Circuit law). "'Those who employ the judicial appellate process to attack a settlement through

2   which controversy has been set to rest bear a properly heavy burden.'" *Core-Vent Corp.*, 53 F.3d

3   at 1259 (citing *S&T Mfg. v. County of Hillsborough,* 815 F.2d 676, 678 (Fed. Cir. 1987), further

4   quoting *Asberry v. USPS*, 692 F.2d 1378, 1380 (Fed. Cir. 1982)).

5                  **b.    The Settlement Agreement Is Enforceable as a Share Exchange
6                          Transaction Under Connecticut and Delaware Law**

7          For the first time, ConnectU argues that a substantial question exists as to whether the

8   Settlement Agreement is properly enforceable as a "share exchange agreement" under

9   Connecticut law. *See* Mot. to Stay at 10. This argument is improper, as it was not even

10  previously raised with the Court during the motion to enforce and is therefore waived on appeal.

11  *See Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1007 (9th Cir. 2008).

12         In any event, the Settlement Agreement is a properly enforceable share exchange

13  transaction under Connecticut and Delaware law. Connecticut law defers to Facebook's state of

14  incorporation--Delaware--on whether share exchanges are allowed. Conn. Gen. Stat. § 33-816.

15  Delaware allows for share exchanges. *See, e.g.*, 8 Del. Code § 123 ("Any corporation organized

16  under the laws of this State may . . .*exchange shares* or other securities in . . .any other domestic

17  or foreign corporation . . .)(emphasis added); 8 Del. Code § 160(a)("Every corporation may . .

18  .*exchange* . . .use and otherwise deal in and with its own shares[.]"(emphasis added)). Though

19  ConnectU appears to cite a treatise contradicting the express language of the Delaware Statutes,

20  its citation is misleading. The section of the treatise ConnectU cites actually indicates that

21  Delaware currently affords for no *statutory* or binding share exchange. *See* Chatterjee Decl. Ex.

22  5. (discussing that while Delaware currently affords no statutory share exchange, New York

23  Business Corporation Law § 913, for example, does). Unlike a specifically enumerated share

24  exchange statute, the corporate general statute of Delaware allows companies to dispose of shares

25  as they please, including a share exchange.

26                 **c.    ConnectU Cannot Show a Question as to Its Fraud Claims;**

27                         **(1)    ConnectU lost on facts as well as legal questions,
                                   warranting denial of a stay**

28         ConnectU has not raised a serious legal question under the federal securities laws or

PLAINTIFFS' OPPOSITION TO MOTION TO STAY EXECUTION
OF JUDGMENT PENDING APPEAL
5:07-CV-01389-JW

1    common law fraud.  It is well settled that a claim for common law fraud or federal securities law

2    fraud requires that an omitted or misrepresented fact be material.  *Basic v. Levinson,* 485 U.S.

3    224, 240 (1988);  *TSC Indus., v. Northway, Inc.,* 426 U.S. 438, 449 (1976); 17 C.F.R. § 240 10b-

4    5.  The Court specifically found, as a factual matter, that Defendants made no showing of a

5    material misrepresentation or omission.

6         ConnectU also failed to provide evidence demonstrating justifiable or reasonable reliance,

7    which is also required to sustain a securities or common law fraud claim.  *See, e.g., Sanguinetti v.*

8    *Viewlogic Sys., Inc.,* No. C 95 2286 TEH, 1996 WL 33967, at * 10 (N.D. Cal. Jan 24, 1996).  As

9    this Court and the Massachusetts Court found, ConnectU knew it had incomplete information and

10   was represented by counsel when it chose to settle.  *See* Dkt. No. 461 at 9-10, 12;  Chatterjee

11   Decl., Ex. 7 at 1-2, 4,  June 3, 2008, Memorandum and Order, Case No. 07-10593-DPW (D.

12   Mass.).  In addition, the highly speculative nature of any valuation of Facebook, a private

13   company, created a volatile environment where any kind of reliance as to share price was not

14   justified absent a specific written warranty.  At the time of settlement, ConnectU possessed

15   confidential information at the mediation that demonstrated all Facebook valuations were, in fact,

16   speculative and that common shares had considerably lower value than other classes of stock.

17   *See*, *e.g.*, Chatterjee Decl. Ex. 3 at 24, 26, 41; Ex. 4 at 28.  Under these circumstances,

18   ConnectU's purported reliance on the press release cannot be justified.  *Atari Corp. v. Ernst &*

19   *Whinney*, 981 F.2d 1025, 1030 (9th Cir. 1992); *Smolen v. Deloitte, Haskins & Sells*, 921 F.2d

20   959, 965 (9th Cir. 1990); *Kennedy v. Josephthal & Co*., 814 F.2d 798, 805 (1st Cir. 1987)

21   (reliance on representations that conflicted with evidence available to plaintiff was reckless); *see*

22   *also Mortellite v. Novartis Crop Protection, Inc.,* 460 F.3d 483, 491-94 (3d Cir. 2006).  Based

23   upon the absence of facts to support ConnectU's claim, no substantial legal question exists.[9]

24

25

26   _____
     [9] Facebook maintains its argument that ConnectU does not have standing to assert a securities
27   violation because it is not a purchaser of securities. *See Blue Chip Stamps v. Manor Drug Stores*,
     421 U.S. 723, 754 (1975). Further, it cannot show economic loss or loss causation, *i.e.*, a causal
28   connection between the alleged misrepresentation and the actual loss.  *See Dura Pharm., Inc. v.*
     *Broudo*, 544 U.S. 336, 344-42 (2005).

PLAINTIFFS' OPPOSITION TO MOTION TO STAY EXECUTION
OF JUDGMENT PENDING APPEAL
5:07-CV-01389-JW

**(2)** **ConnectU's legal arguments are not substantial legal questions**

ConnectU advances two incorrect legal arguments to support its claim of legal error on its securities fraud claim: (1) the Court erred in concluding that insider trading by Facebook is not an issue and (2) the Court erred in finding that Section 29 of the Securities Exchange Act of 1934 ("1934 Act") is not applicable.

ConnectU's argument related to "insider trading" is without merit. This Court correctly noted that ConnectU was unable to identify any "authority that an agreement to exchange shares of closely held corporations pursuant to settlement of litigation between companies is voidable by showing securities fraud." *See* Dkt. No. 461 at 11. It was with respect to that statement that the Court also noted that "[t]he cases which Defendants cite in their sur-reply regarding a duty to disclose 'material non-public information' all fall within the context of insider trading, which is not an issue in this case." *Id.* In addition, the case cited by ConnectU in both its original opposition papers to the motion to enforce and the current Motion to Stay does not change the fact that it could not prove a material misstatement or omission. Rather, the evidence shows ConnectU chose to enter into an agreement with incomplete information while represented by counsel.

ConnectU's interpretation of Section 29(b) of the 1934 Act is also incorrect. Specifically, ConnectU argues that a serious legal question exists as to whether this Court properly applied the broad release of Paragraph 2 of the Settlement Agreement to hold that under *Petro-Ventures, Inc. v. Takessian*, 967 F.2d 1337 (9th Cir. 1992), ConnectU could not collaterally challenge its enforceability. *See* Plaintiffs' Opposition to Motion to Intervene at 12-14.

First, ConnectU's Section 29(b) argument does not raise a serious legal question because the statute applies only to unlawful contracts, not purported "unlawful transactions." That is, the statute applies only to contracts that are illegal by their own terms (for example, an agreement among conspirators to share profits from illegal insider trading), rather than contracts that are allegedly illegal due to some collateral securities fraud. *See Zerman v. Jacobs*, 510 F. Supp. 132, 135 (S.D.N.Y. 1981) ("under § 29(b) … only unlawful *contracts* may be rescinded, not unlawful

1  *transactions* made pursuant to lawful contracts"), *aff'd mem.*, 672 F.2d 901 (2d Cir. 1981); *see*

2  *also Palmer v. Thomson & McKinnon Auchincloss, Inc.*, 474 F. Supp. 286, 291 (D.Conn. 1979);

3  *Drasner v. Thomson McKinnon Securities, Inc.*, 433 F. Supp. 485, 501-02 (S.D.N.Y.1977).

4  ConnectU's does not identify anything about the Settlement Agreement that by itself violates the

5  securities laws so as to implicate Section 29(b), and indeed the only representations concerning

6  Facebook's stock relate to the number of outstanding shares. *See* Dkt. No. 461 at 3 (quoting ¶ 7

7  of the Settlement Agreement). Further, because ConnectU makes no effort to show reliance so as

8  to establish a violation of Section 10(b) of the 1934 Act and Rule 10b-5, it also fails to identify

9  any serious legal question that Section 29(b) was violated. *See National Union Fire Ins. Co. of*

10  *Pittsburgh, Pa. v. Turtur*, 892 F.2d 199, 206 & fn. 4 (2d Cir. 1989) ("Since we hereinafter

11  conclude that no violation of section 10(b) of the Act or rule 10b-5 survives National Union's

12  motion for summary judgment, we do not reach any issue posed by section 29(b) of the Act").

13       Second, this Court's reliance upon *Petro-Ventures* is proper. *Petro-Ventures* is quite

14  similar to this case. All parties in both cases were well represented and had equal bargaining

15  power. The parties in both cases had ready access to Counsel in signing a settlement. The four

16  corners of the agreements in both cases sought broad releases and demonstrated an intent to bring

17  about "general peace." The complaining party in both sections sought to invalidate a settlement

18  agreement under different (but related) portions of section 29. Notwithstanding these similarities,

19  ConnectU contends that the present case is different because *Petro-Ventures* arose from a new

20  lawsuit, rather than a motion to enforce settlement of the original action. This is a distinction

21  without a difference.[10] Both cases arise from a securities transaction where a settlement

22  agreement was signed releasing all claims, and the security used for settlement was the very

23  source of the alleged securities violations.[11] The dispute in both cases centers on the effect of the

24  [10] ConnectU argues in a lengthy footnote that the Settlement Agreement's provision requiring the

25  parties to prepare separate "releases as broad as possible" did not include any waiver under California Civil Code § 1542. *See* Mot. to Stay at 11 & fn. 8. However, the provision in the

26  Settlement Agreement did not need to mention this provision insofar as they were intended to be "as broad as possible" they necessarily had to apply to this code provision. To the extent that

27  ConnectU alleges that Section 1542 cannot waive a claim for fraud in the inducement, it suffices to note that the Court separately rejected the argument that ConnectU demonstrated any such fraud. *See* Dkt. No. 461 at 9-11.

28  [11] ConnectU claims that the *Petro-Ventures* is distinguishable because the securities claims could

releases in the settlement agreement upon the securities transaction that formed part of the settlement. *See also Locafrance U.S. Corp. v. Intermodal Sys. Leasing, Inc.*, 558 F.2d 1113, 1115 (2d Cir. 1977).

*Pearlstein v. Scudder & German*, 429 F.2d 1186 (2nd Cir. 1970), the case relied upon by ConnectU, is irrelevant and overruled. In *Pearlstein*, the Second Circuit found that a settlement agreement violated the margin requirements of Section 7(c) of the 1934 Act and Regulation T (and hence Section 29 of the 1934 Act), because the defendant failed to recover capital after the settlement. *Id.* at 1142-43. However, after that ruling, the Second Circuit in *Bennett v. United Trust Co. Of N.Y.*, 770 F.2d 308, 311-13 (1985) reexamined and "abandoned" *Pearlstein* as controlling law because neither Section 7 of the Securities Act nor Regulation U [former Regulation T] provides an independent underlying cause of action.

### 2.    ConnectU Has Not Demonstrated Irreparable Injury Sufficient to Warrant a Stay of Execution of Judgment

ConnectU cannot show irreparable injury. At this point the Special Master should have had the ConnectU shares, and they can only be released to Facebook upon Court order. All of the harm identified by ConnectU is speculative.

ConnectU's delay in filing a Notice of Appeal and moving for a stay until almost one full month after the Court on July 3, 2008 entered Judgment Enforcing Settlement Agreement undercuts ConnectU's argument that it will suffer irreparable injury. *See Beame v. Friends of Earth*, 434 U.S. 1310, 1313 (1977) (denying a motion for a stay pending the filing of a petition for certiorari, and stating "The applicants' delay in filing their petition and seeking a stay vitiates much of the force of their allegations of irreparable harm"). Indeed, this delay is particularly inexcusable given the fact that ConnectU already has performed prior conditions of the Judgment, and the Court, the Special Master, and Facebook all have relied upon ConnectU's behavior. *Cf. Celebration Int'l, Inc. v. Chosun Int'l, Inc.*, 234 F. Supp.2d 905, 920 (S.D. Ind. 2002) (noting that in the context of a motion for preliminary injunction, "[t]he tardiness weighs against a plaintiff's

---

have been asserted in the underlying litigation. However, those securities were the same partnership units exchanged with cash that formed part of the settlement *See Petro-Ventures*, 967 F.2d 1337("in recognition of the settlement, Petro-Ventures paid $181,000 to Great American Resources and reassigned limited partnership units to them."). The facts thus are comparable.

PLAINTIFFS' OPPOSITION TO MOTION TO STAY EXECUTION
OF JUDGMENT PENDING APPEAL
5:07-CV-01389-JW

1   claim for irreparable harm, especially when the delay is not excused for a good reason or when

2   the defendant has relied on the inaction").

3       To the extent that ConnectU contends that release of the ConnectU shares to Facebook by

4   the Special Master is part of its "stay" motion, ConnectU cannot establish irreparable harm.

5   ConnectU  argues that should Facebook acquire the stock in the company, Facebook will be in

6   position to moot ConnectU's appeal and to waive any claim by the company for malpractice

7   against Quinn Emanuel.  Alternatively, ConnectU argues that transfer of corporate ownership

8   places it at risk of waiving the attorney-client and attorney work product privileges because

9   Facebook will have access to all company materials.  These arguments, however, do not rise to

10  the level of irreparable injury sufficient to stay execution of judgment – especially where, as here,

11  ConnectU also fails to raise serious legal questions.  Indeed, the inability of Facebook to

12  participate and be educated with respect to decision-making on a major potential liability

13  undertaken by ConnectU causes Facebook substantial harm.

14          a.       **The Possibility that ConnectU's Appeal May Become Moot Is**
                     **Not a Sufficient Basis To Grant a Stay**

15

16      ConnectU claims that it will suffer irreparable injury by complying with the Judgment

17  Enforcing Settlement because Facebook will be in position to dismiss, and hence render moot,

    any appeal by ConnectU relating to the settlement itself.  *See* Mot. to Stay at 1, 5-6.

18

19      A decision by a company not to pursue an appeal does not constitute irreparable harm.

20  ConnectU argues that "many courts have found irreparable harm where, absent a stay pending

21  appeal, the appellant stood to lose its ability to appeal."  *See id.* at 5 & fn. 2.  However, a clear

22  "*majority* of courts find the potential of mootness insufficient to demonstrate irreparable harm."

23  *In re Frascella Enterprises, Inc.*, 388 B.R. 619, 627 (Bankr. E.D. Pa. 2008) (emphasis added).

24  Contrary to what ConnectU argues, "[i]t is well settled that an appeal being rendered moot does

    not itself constitute irreparable harm."  *In re Trans World Airlines, Inc.*, No. 01-0056 (PJW), 2001

25  WL 1820325, at * 10 (Bankr. D. Del. Mar. 27, 2001); a*ccord In re Best Prods. Co.*, 177 B.R. 791,

26  808 (S.D.N.Y.), *aff'd*, 69 F.3d 26 (2d Cir. 1995); *In re Sunflower Racing, Inc.*, 223 B.R. 222, 225

27  (D. Kan. 1998);  *In re Ashville Bldg. Assocs.*, 93 B.R. 920 (W.D.N.C. 1988);  *In re BA-MAK*

28

- 14 -

1    *Gaming Int'l, Inc.*, No. 95-1991, 1996 WL411610, at *2 (E.D. La. July 22, 1996); *In re 203 N.*

2    *LaSalle St. Partnership*, 190 B.R.595, 598 (N.D. Ill. 1995); *In re Clark*, No. 95 C 2773,1995 WL

3    495951, at *6 (N.D. Ill. Aug. 17, 1995); *In re Moreau*, 135 B.R. 209, 215 (N.D.N.Y. 1992); *In*

4    *re Calpine Corp.*, No. 05-60200 (BRL), 2008 WL 207841, at *4 (Bankr. S.D.N.Y. Jan. 24, 2008);

5    *In re MAC Panel Co.*, No. 98-10952C-11G, 2000 WL 33673784, at *4 (Bankr. M.D.N.C. Mar. 8,

6    2000); *In re Kent*, 145 B.R. 843, 844 (Bankr. E.D. Va. 1991); *In re The Charter Co.*, 72 B.R. 70,

7    72 (Bankr. M.D. Fla. 1987); *In re Great Barrington Fair & Amusement, Inc.*, 53 B.R. 237, 240

8    (Bankr. D. Mass. 1985); *In re Baldwin United Corp.*, 45 B.R. 385, 386 (Bankr. S.D. Ohio 1984).

9    Accordingly, the mere fact that ConnectU's contemplated appeal may be rendered moot by the

10   Special Master's transfer of ConnectU stock to Facebook does not constitute irreparable injury

11   sufficient to grant a stay pending appeal.  In this case, ConnectU's predicament is of its own

12   doing, weakening any claim of harm.  The ConnectU Founders could have opposed the motion

13   and preserved their rights to appeal.  They made a strategic choice not to oppose the motion.

14   ConnectU need not act to protect rights of its former shareholders.

15                    **b.      Speculative Claims are Not Irreparable Harm**

16            ConnectU argues that "giving Facebook control of ConnectU could also potentially affect

17   the malpractice claim that ConnectU and its shareholders may assert against their former counsel

18   Quinn Emanuel."  Mot. to Stay at 6.  Likewise, ConnectU argues that "giving Facebook control

19   of ConnectU … would further threaten irreparable harm to ConnectU and its shareholders" via its

20   "potentially" waiving the right to attorney client and work product privileges.  This argument fails

21   because ConnectU and the ConnectU Founders will waive privilege by asserting a malpractice

22   claim against Quinn Emanuel.  Arguably, these rights have been waived already because of the

23   pending dispute.

24            Further, ConnectU's arguments fail because as the word "potentially" suggests, they are

25   speculative.  Speculative injury does not constitute irreparable injury.  *Saldate v. Adams*, No.

26   1:07-CV-00309 AWI, 2008 WL 2915075, at *1 (E.D. Cal. July 25, 2008) (citing *Goldie's*

27   *Bookstore v. Superior Ct.*, 739 F.2d 466, 472 (9th Cir. 1994)); s*ee also United States v. Emerson*,

28   270 F.3d 203, 262 (5th Cir. 2001) ("'[s]peculative injury is not sufficient; there must be more

1  than an unfounded fear on the part of the applicant'" (citing 11A CHARLES A. WRIGHT, ARTHUR

2  R. MILLER & MARY K. KANE, FEDERAL PRACTICE & PROCEDURE § 2948.1 (2d ed. 1995)).  Here,

3  ConnectU does not even attempt to explain what is the source of malpractice it alleges it "may

4  assert" against Quinn Emanuel.  Nor does it identify what records would waive the attorney-client

5  privilege if turned over to Facebook.  Indeed, ConnectU fails to explain why such waiver even is

6  a possible injury, as ConnectU's execution of the settlement agreement necessarily contemplated

7  the transfer of all corporate and legal records to Facebook.

8              **c.    The Balance of Harm Tips in Facebook's Favor, Not**
               **ConnectU's**
9

10              Contrary to ConnectU's assertions, Facebook will be irreparably harmed by a stay of

11  release of the ConnectU shares.  Facebook bargained for finality in this litigation.  It also sought

12  to purchase a competing company for valid consideration.  As things currently stand, Facebook

13  cannot oversee the business of its investment.  Facebook cannot engage in strategic decisions to

14  try to build the ConnectU business.  Facebook cannot ensure measures are taken to develop the

15  goodwill of ConnectU, if it is within the business interest to do so.  Facebook cannot participate

16  in important business decisions, such as the decision to initiate litigation or invest.  Indeed, these

17  decisions are being made independent of Facebook, even though Facebook purchased ConnectU

18  half a year ago at great cost.  The ConnectU Founders decision to get ConnectU embroiled in a

19  legal dispute affecting the value of ConnectU is causing Facebook harm.  The ConnectU

20  Founders have also demonstrated an intention not to comply with Court Orders or its agreement,

21  further heightening the harm and risk of harm.  If a stay is granted, it has sacrificed substantial

22  funds and stock which it could otherwise use to build its business with no value in return.

23              In circumstances such as this, Courts have held that irreparable harm would be suffered by

24  the party acquiring a company by the loss of the opportunity to own or control that business.

25  *Allegheny Energy, Inc., v. DQE, Inc.,* 171 F.3d. 153 (3d Cir. 1999); *see also Wisdom Imp. Sales*

26  *Co., L.L.C. v. Labatt Brewing Co.,* 339 F.3d 101, 114 (2d Cir. 2003)("denial of a controlling

27  ownership interest in a corporation" or "[c]onduct that unnecessarily frustrates efforts to obtain or

28  preserve the right to participate in the management of a company may constitute irreparable

                                                    - 16 -                    PLAINTIFFS' OPPOSITION TO MOTION TO STAY EXECUTION
                                                                                        OF JUDGMENT PENDING APPEAL
                                                                                                5:07-CV-01389-JW

1   harm."); *Int'l Banknote Co. v. Muller*, 713 F. Supp. 612, 623 (S.D.N.Y. 1989)(holding that

2   frustrating shareholders in an attempt to obtain representation on board of directors constituted

3   irreparable harm). In addition, Courts have held that it is irreparable harm to profit from a

4   procedural delay tactic to take away the benefit of a settlement a party has bargained for. *I.F.S. of*

5   *New Jersey, Inc. v. Mathesz*, No. 97-CV-7517, 1988 WL 966029, at * 9-10 (E.D. Pa. Nov. 18,

6   1998).

7               **3.      The Rights of Third Parties will be Better Protected by Denying a Stay**

8           The Settlement Agreement resolved lawsuits involving over a half a dozen parties, other

9   than those that are signatories to the Settlement Agreement. Staying the proceedings would leave

10  a lingering cloud over them for no reason whatsoever and in a way that would be difficult to

11  quantify. This consequence is a separate effect that weighs in favor of denial.

12              **4.      The Public Interest Will Be Better Served by Denying a Stay Pending**
                **Appeal**

13          The public interest favors Facebook. In determining whether to grant or deny a stay

14  pending appeal, "the public interest is a factor to be strongly considered." *Lopez,* 713 F.2d at

15  1435.

16          The public has a significant interest in promoting private resolution of litigation through

17  settlements such as that reached in this case. Courts have long recognized that there is a

18  significant public interest in encouraging private settlement of litigation. *See Franklin v. Kaypro*

19  *Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) (noting that "'there is an overriding public interest in

20  settling and quieting litigation'")(citing *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th

21  Cir. 1976)). Indeed, this policy is so great that it is embodied in California Code of Civil

22  Procedure § 1775(c), which reads: "It is in the public interest for mediation to be encouraged and

23  used where appropriate by the courts." This Court even specifically mentioned this important

24  public interest during the hearing held July 2, 2008 on the question of what would be the form the

25  Judgment:

26

27                  The reason this case is one that I have given a great deal of
                    attention to is because as a court we encourage parties to engage in
                    mediation and resolution of disputes.

28                  The public has a direct benefit in that process. And so court

PLAINTIFFS' OPPOSITION TO MOTION TO STAY EXECUTION
OF JUDGMENT PENDING APPEAL
5:07-CV-01389-JW

1    annexed mediation is a very important part of how we do business
     as a court ….

2

3    Dkt. No. 481, 19:21-20:2.  Such a ruling is consistent with the many other cases which have

4    denied motions to stay judgment enforcing settlements.  *See*, *e.g.*, *Peralta v. Peralta Food Corp.*,

5    506 F. Supp. 2d 1274, 1279 (S.D. Fla. 2007) (denying motion to stay compliance with settlement

6    agreement, and noting that "[i]n Florida and elsewhere, the law favors the finality of

7    settlements"); *I.F.S. of N.J.*, 1998 WL 966029, at *9 (denying a motion to stay enforcement of

8    settlement agreement, and noting that "[w]e will not permit Defendants to profit from its

9    procedural tactics in a manner that it could not under the Settlement Agreement it bargained for

10   with Plaintiff").

11   **C.    If the Court Stays Release of ConnectU Stock Pending Appeal, It Should
           Order ConnectU to Provide Adequate Security**

12        Plaintiff requests a stay of proceedings under Rule 62.[12]  Under Rule 62, the bond should

13   be somewhere within one and a half times the range identified by ConnectU at the hearing on the

14   judgment.  This request is consistent with the statements of the Court at the judgment hearing on

15   July 3, 2008.  Facebook is unsure, however, whether such a bond is sufficient because, so long as

16   ConnectU is controlled by the ConnectU Founders, the ConnectU Founders can continue their

17   practice of increasing ConnectU's potential liability.

18        ConnectU incorrectly claims that no bond or other security is necessary.  Rule 62 codifies

19   the "long established" and narrowly limited right of a trial court to make orders appropriate to

20   preserve the status quo pending appeal.  *United States v. El-O-Pathis Pharmacy*, 192 F.2d 62, 79

21   (9th Cir. 1951); *McClatchy Newspapers v. Central Valley Typographical Union No. 46*, 686 F.2d

22   731, 734-35 (9th Cir. 1982).  Districts have inherent discretional authority in setting bonds.

23   *Rachel v. Banana Republic, Inc.*, 831 F.2d 1503, 1505 n.1 (9th Cir. 1987).  If no bond is posted,

24   Rule 62 only allows the Court to consider some other forms of security as a judgment guarantee.

25   *Int'l Telemeter Corp. v. Hamlin Intern. Corp.*, 754 F.2d 1492 (9th Cir. 1985).  There are two

26   recognized justifications for allowing an alternate form of security: (1) the judgment debtor

27   _____
     [12] It is unclear whether 62(c), 62(d) or both sections of Rule 62 apply because the Court required
28   numerous monetary and non-monetary actions.  The non-monetary actions, have been completed
     as of today, however.

PLAINTIFFS' OPPOSITION TO MOTION TO STAY EXECUTION
OF JUDGMENT PENDING APPEAL
5:07-CV-01389-JW

1   demonstrates the financial ability to pay a money judgment and provides the Court with a

2   financially secure plan or (2) the judgment debtor's financial condition would make posting a

3   bond as undue financial burden where the Court applies a restraint on the debtor's financial

4   dealing to furnish equal protection to the creditor.  *Sibia Neurosciences, Inc. v. Cadus*

5   *Pharmaceutical Group*, No. 96-1231-IEG (POR), 1999 WL 33554683 (S.D. Cal. Mar. 10,

6   1999)(holding that Cadus compensate Sibia for 50 percent of fees associated with escrow in lieu

7   of bond).  Neither case is present here.  The ConnectU Founders have not provided the Court with

8   any financially secure plan or identification of any means to furnish equal protection to Facebook

9   as the value of the Settlement Agreement.

10  **IV.   <u>CONCLUSION</u>**

11          For the reasons set forth above, Plaintiffs Facebook, Inc. and Mark Zuckerberg  request

12  that ConnectU's Motion to Stay Execution of Judgment Pending Appeal be denied.

13  Alternatively, if this Court exercises its discretionary powers to stay execution of the stock

14  transfer contemplated by the settlement, it should require that ConnectU post an adequate

15  supersedes bond in the amount requested.

16  Dated:  August 4, 2008                        Orrick, Herrington & Sutcliffe LLP

17

18                                            _____
                                             /s/ I. NEEL CHATTERJEE /s/
19                                            I. NEEL CHATTERJEE
                                             Attorneys for Plaintiffs
20                                            THE FACEBOOK, INC. and MARK
                                             ZUCKERBERG

21

22

23

24

25

26

27

28

1  **<u>CERTIFICATE OF SERVICE</u>**

2          I hereby certify that this document(s) filed through the ECF system will be sent

3  electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)

4  and paper copies will be sent to those indicated as non registered participants on August 4, 2008.

5  Dated:  August 4, 2008.                                    Respectfully submitted,

6

7                                                  /s/ I. NEEL CHATTERJEE /s/

8                                                  I. NEEL CHATTERJEE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case Nos. 08-16745, 08-16849, 08-16873

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

### THE FACEBOOK, INC., et al.

### Plaintiffs-Appellees-Cross-Appellants,

### v.

### CONNECTU, INC. (formerly known as CONNECTU LLC), CAMERON WINKLEVOSS, TYLER WINKLEVOSS, DIVYA NARENDRA,

### Defendants-Appellants-Cross-Appellees.

---

**On Appeal From The United States District Court For The Northern District of California, No. CV-07-01389-JW, The Honorable James Ware**

---

### APPELLANT CONNECTU, INC.'S REPLY TO THE FOUNDERS' OPPOSITION TO CONNECTU, INC.'S MOTION TO DISQUALIFY COUNSEL

---

James E. Towery (BAR NO. 74058)
Alison P. Buchanan (BAR NO. 215710)
Jill E. Fox (BAR NO. 243945)
HOGE, FENTON, JONES & APPEL, INC.
Sixty South Market Street, Suite 1400
San Jose, California 95113-2396
Phone: (408) 287-9501
Fax:  (408) 287-2583
*Attorneys for Appellant ConnectU, Inc.*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................ 2

ARGUMENT ................................................................................................... 3

    A.    The Applicable Legal Authority Does Not Support Boies, Finnegan, and O'Shea's Continued Representation of the Founders .................................................................................... 3

        i.    The Founders' Current Client Analysis Is Incorrect; Applicable Authority Supports Disqualification of Boies and Finnegan .................................................................... 3

        ii.    Disqualification Is Warranted Where, Even Under a Former Client Analysis, Founders' Counsel Are Prohibited From Representing Interests Adverse to ConnectU in This Matter ............................................... 5

    B.    The Founders' Claimed Prejudice Is Unsupported by the Facts and Irrelevant; Rather, ConnectU's Former and/or Current Counsel's Ethical Obligations Necessitate Disqualification Here ..... 7

    C.    The Founders and Their Counsel Do Not Deny That Founders' Counsel Have Repeatedly Violated Their Ethical Obligations to Their Client ConnectU .................................................................. 8

    D.    The Court Should Deny the Founders' Third Attempt to Stay These Proceedings .............................................................. 9

    E.    The Court Should Order Counsel to Provide ConnectU Its Files; The Founders Fail to Cite Any Authority Disproving ConnectU's Contention That It Is Entitled to Its Files From Former and/or Current Counsel ...................................................... 10

CONCLUSION ............................................................................................. 11

i

# <u>TABLE OF AUTHORITIES</u>

## Cases

*Brennan's Inc. v. Brennan's Restaurants, Inc.*
580 F.2d 168 (5th Cir. 1979) .................................................................... 6, 7

*Goldstein v. Lees*
(1975) 46 Cal.App.3d 614 ........................................................................6

*Metro-Goldwyn Meyer, Inc. v. Tracinda Corp.*
(1995) 36 Cal.App.4th 1832 ....................................................................6

*Moeller v. Superior Court*
(1997) 16 Cal.4th 1124 ........................................................................ 10

*Tekni-Plex, Inc. v. Meyner and Landis*
674 N.E.2d 633 (N.Y. 1996) ................................................................ 10

*Truck Ins. Exchange v. Fireman's Fund Ins. Co.*
(1992) 6 Cal.App.4th 1050 ....................................................................5

*Unified Sewerage Agency of Washington County, Or. v. Jelco, Inc.*
646 F.2d 1339 (9th Cir. 1982) ..............................................................5

## Rules

American Bar Association Model Rules of Professional Conduct
Rule 1.7 ..................................................................................................3
Rule 1.9 ..................................................................................................6
Rule 1.16 ............................................................................................ 10

California Rules of Professional Conduct
Rule 3-310 ......................................................................................... 3, 5
Rule 3-700 ......................................................................................... 10

## <u>CORPORATE DISCLOSURE STATEMENT</u>

This statement is made pursuant to Federal Rule of Appellate Procedure 26.1.  As of December 15, 2008, Defendant-Appellant ConnectU, Inc. is a wholly-owned subsidiary of The Facebook, Inc., a privately held corporation.

# **INTRODUCTION**

It is axiomatic that a lawyer owes a duty of loyalty to his or her clients, as well as a duty to maintain the confidences of both former and current clients.  It is also axiomatic that a lawyer may not, in any circumstance, represent two parties on the opposite sides of a dispute.

Despite the Founders' contentions to the contrary, ConnectU and the Founders, though once aligned, are now on opposite sides of this dispute.  Boies, Finnegan and O'Shea have each represented both ConnectU and the Founders at some point in this and related litigation.  It is on this basis that ConnectU requests that this Court disqualify the above-referenced firms from continuing to represent ConnectU's adversaries, the Founders.  The legal authority that the Founders cite in support of their Response to ConnectU's Motion to Disqualify (most of which is distinguishable on its face) does not abrogate these well-settled principles, which serve as the basic and unwavering cornerstones of an attorney's ethical obligations.

In addition, in their Response to ConnectU, Inc.'s Motion to Disqualify Counsel, the Founders go to great lengths to characterize this motion as a litigation tactic but the Founders miss the point.  Disqualification of Founders' counsel is based on well-settled ethical principles and the relationships between counsel, the Founders, and ConnectU; these principles are not driven by nor should any analysis of them be impacted by any speculative benefit to anyone but Connect U.  Most importantly the Founders' lawyers <u>make no attempt to rebut evidence</u> that they have threatened Connect U, used confidential information to harm Connect U, and generally violated their ongoing duties of loyalty and confidentiality to ConnectU.

Finally, the Founders continue to seek -- for all practical purposes -- the equivalent of a stay on the basis that the Founders hope a victory on the merits is imminent; this Court has repeatedly denied the Founders' previous requests for a

stay and should do so again here. The Founders can cite no authority to support their position that this Court should refrain from ruling on ConnectU's meritorious motion simply because the Founders are optimistic about their appeal.

In short, Boies, Finnegan and O'Shea want to continue representing their current and/or former client's adversaries despite well-settled authority holding that such representation is improper. This Court has a more than compelling basis upon which to grant ConnectU's Motion to Disqualify Founders' Counsel, and ConnectU respectfully requests that this Court grant ConnectU's motion.

## ARGUMENT

### A. The Applicable Legal Authority Does Not Support Boies, Finnegan, and O'Shea's Continued Representation of the Founders

The Founders cannot deny the existence of an attorney-client relationship between Founders' counsel and ConnectU in this matter. Nor can the Founders legitimately deny that their interests are now directly adverse to the interests of ConnectU, a wholly-owned subsidiary of Facebook. The applicable legal authority supports disqualification of Founders' counsel, regardless of whether this Court considers ConnectU to be a current or former client of Boies, Finnegan and O'Shea.

Prevailing ethical principles and the Founders' counsels' numerous ethical breaches to ConnectU not only justify, but require, disqualification.

#### i. The Founders' Current Client Analysis Is Incorrect; Applicable Authority Supports Disqualification of Boies and Finnegan

The ABA Model Rules of Professional Conduct and the California Rules of Professional Conduct both prohibit attorneys from representing two clients with opposing interests in the same litigation. ABA MRCP Rule 1.7; CRPC Rule 3-310(C)(2). In such circumstances, disqualification of counsel is automatic. Such

is the exact situation here, where ConnectU remains a current client of Boies and Finnegan.

In this case, the Founders sit on one side of the litigation (that is, wanting the Court to overturn the district court's decision to enforce the settlement), while Facebook and ConnectU (as a wholly-owned subsidiary of Facebook) sit squarely on the opposite side of the litigation (that is, wanting the Court to uphold the district court's ruling to enforce the settlement). To claim, as the Founders have, that ConnectU and the Founders are not on opposite sides of the litigation is incorrect. The adverse nature of the two parties is highlighted by letters from December 18, 2008 and December 22, 2008 from Boies to ConnectU's counsel (Hoge, Fenton), wherein Boies threatens to sue ConnectU on behalf of the Founders and demands that ConnectU not interfere with the Founders' pending appeal. (See Exhibits G and K to the Declaration of James E. Towery in Support of ConnectU's Motion to Disqualify Founders' Counsel)[1].

The Founders also confuse the issue of what has caused this ethical dilemma. Despite the Founders' assertions to the contrary, ConnectU did not switch sides in this litigation; rather, ConnectU changed hands as a result of the enforcement of the settlement agreement. Counsel chose to continue representing the Founders at the detriment of ConnectU. However, what the ethical rules and authority demonstrate is that once ConnectU changed hands, Boies, Finnegan and O'Shea had no good choice and could not have ethically continued to represent either ConnectU or the Founders. Just as it was unethical for those firms to continue to representing the Founders, it would have been equally improper for

---

[1] In this correspondence, Boies also references "substantial debts [owed] to the Founders." (Ex. G to the Declaration of James E. Towery). Of course, being deprived of access to its files, ConnectU has no idea what Boies is referring to here but Boies appears to be using confidential Connect U information to Connect U's detriment.

them to choose to continue representing ConnectU at the detriment of the Founders. The Founders' contention that ConnectU created this conflict is incorrect and ignores the policy behind the ethical rules at issue.

This Court's decision in *Unified Sewerage Agency of Washington County, Or. v. Jelco, Inc.*, 646 F.2d 1339 (9th Cir. 1982) supports the principle that counsel jointly representing two clients cannot "drop" or pick one of those clients in order to avoid disqualification based on a conflict of interest (i.e., the "hot potato" doctrine). This Court in *Unified Sewerage, supra*, held that the Court will apply the current client analysis in such instances when a lawyer drops one client to keep the other. *Id*. at 1345, fn. 4; see also *Truck Ins. Exchange v. Fireman's Fund Ins. Co.* (1992) 6 Cal.App.4th 1050, 1060.

The Founders' effort to distinguish *Unified Sewerage, supra,* and *Truck Ins. Exchange, supra*, on the basis that the Founders' attorneys claim they are not at fault ignores the undeniable fact that they choose to represent the Founders and not Connect U (indeed they choose to threaten Connect U on behalf of the Founders).

A lawyer's duties to his or her clients include, among others, a duty of confidentiality and a duty of loyalty. By choosing to continue representing the Founders in this and related litigation, and choosing to take position adverse to ConnectU, Boies, Finnegan, and O'Shea have each violated their ethical obligations to ConnectU.

On these grounds, the Court should disqualify Boies, Finnegan and O'Shea from representing the Founders against ConnectU.

> ii.  **Disqualification Is Warranted Where, Even Under a Former Client Analysis, Founders' Counsel Are Prohibited From Representing Interests Adverse to ConnectU in This Matter**

Should the Court treat ConnectU as a former client of Boies, Finnegan and O'Shea, rather than a current client, disqualification of Founders' counsel remains

appropriate.

California Rules of Professional Conduct Rule 3-310 (E) and ABA Rule 1.9(a) both prohibit a lawyer from representing a client whose interests actually conflict with those of a former client in a substantially related matter. As discussed in great detail in ConnectU's original moving papers, these rules are designed to protect client confidences and are not altered by a change in corporate control. *Metro-Goldwyn Meyer, Inc. v. Tracinda Corp.* (1995) 36 Cal.App.4th 1832; *Goldstein v. Lees* (1975) 46 Cal.App.3d 614, 621.

The Founders attempt to circumvent these basic principles by arguing that the substantial relationship test does not apply because ConnectU and the Founders, while jointly represented, had no expectation that their lawyers would keep secrets between the two parties. However, here, the subject matter is not merely substantially related but, rather <u>the exact same matter</u>. There can be no more perfect example of a conflict than this. After representing ConnectU for months (in the case of Boies and O'Shea) or years (in the case of Finnegan), ConnectU's counsel now represent interests <u>exactly opposite</u> to ConnectU. The Founders' counsel maintain that they should be allowed to do so because ConnectU should have had no expectation that these law firms would keep their confidences.

*Brennan's Inc. v. Brennan's Restaurants, Inc.*, 580 F.2d 168 (5th Cir. 1979) is directly on point. In that case, the Fifth Circuit explained:

> [T]he ethical duty is broader than the evidentiary privilege: "This ethical precept, unlike the evidentiary privilege, exists without regard to the nature or source of information or the fact that others share the knowledge." ABA Code of Professional Responsibility, EC 4-4 (1970). "A lawyer should not use information acquired in the course of the representation of a client to the disadvantage of the client . . . . " *Id.* EC 4-5. The use of the word "information" in these Ethical Considerations as opposed to "confidence" or "secret" is particularly revealing of the drafters' intent to protect all knowledge acquired from a client, since the latter two are defined terms. See id., DR 4-101(A). Information so acquired is sheltered from use by the attorney against his client by virtue of the existence of the attorney-client relationship. **This is true without regard to whether someone else may be privy to it.** *NCK Organization v. Bregman*, 542 F.2d 128, 133 (2d Cir.

6

1976). The obligation of an attorney not to misuse information acquired in the course of representation serves to vindicate the trust and reliance that clients place in their attorneys. A client would feel wronged if an opponent prevailed against him with the aid of an attorney who formerly represented the client in the same matter. As the court recognized in *E. F. Hutton & Co. v. Brown*, 305 F.Supp. 371, 395 (S.D.Tex.1969), this would under-mine public confidence in the legal system as a means for adjudicating disputes. We recognize that this concern implicates the principle embodied in Canon 9 that attorneys "should avoid even the appearance of professional impropriety."ABA Code of Professional Responsibility, Canon 9 (1970).

*Id.* at 172 (emphasis added).

The Founders contend that *Brennan's, Inc., supra*, is inapplicable because that case involved an attorney, not a party, switching sides. (Founders' Response, p. 13, fn. 9). The Founders' position in this regard is incorrect. The *Brennan's, Inc.* court made no distinction between instances where an attorney or a party switches sides. The policy reasons referenced by the *Brennan's Inc.* court dictate that this Court should decline to consider that distinction here, as well.

In short, it is one thing for a client to understand that the client's former lawyer may know confidential information that the client's new-found opponent also knows; it is quite another when the lawyer (as has happened here) actually uses that information against its former client -- to the benefit of the other client -- in the same litigation.

For the reasons discussed above, and for the reasons more fully discussed in ConnectU's original moving papers, there is ample basis to support this Court's disqualification of Boies, Finnegan and O'Shea from representing the Founders.

### B.    The Founders' Claimed Prejudice Is Unsupported by the Facts and Irrelevant; Rather, ConnectU's Former and/or Current Counsel's Ethical Obligations Necessitate Disqualification Here

In the Response to ConnectU's Motion to Disqualify Counsel, the Founders claim that ConnectU seeks to "disrupt the litigation and severely prejudice the Founders by disqualifying the Founders' lawyers – some of whom have represented them since these disputes began in 2004." (Founders' Response, p. 2).

However, this statement misses the point of the present motion. The Founders omit mentioning that the same counsel that represented the Founders since 2004 also represented ConnectU since 2004.

According to the Founders' own Response, Finnegan is the only of the three firms (although the Founders utilize the term "some") that represented either the Founders or ConnectU since 2004. Both O'Shea and Boies did not appear for either the Founders or ConnectU until 2008. Specifically, the Founders acknowledge that O'Shea first represented ConnectU only; further, O'Shea did not make its first appearance for the Founders until almost two months after the district court enforced the settlement agreement in June 2008. O'Shea switched clients prior to the transfer of ConnectU to Facebook, most likely in anticipation of the day when O'Shea would no longer be authorized to represent ConnectU. Such a tactical shift is directly contradictory to the Founders' bold characterization that the conflict here is one that the corporation, not counsel, created.

In short, the ethical rules regarding conflicts of interest, concurrent clients, former clients, and duties of loyalty and confidentially are the factors that this Court should consider when deciding whether to grant ConnectU's Motion to Disqualify Founders' Counsel. Conversely, the Court should not consider the self-serving version of facts presented by the Founders, who care not for their counsel's ethical obligations to another party.

## C. The Founders and Their Counsel Do Not Deny That Founders' Counsel Have Repeatedly Violated Their Ethical Obligations to Their Client ConnectU

The Founders do not address the actual issues encompassed in ConnectU's Motion -- the ethical violations that the Founders' counsel have perpetrated since the transfer of ConnectU to Facebook occurred. The violations by Founders' counsel include, but are not limited to:

(1) ignoring their client ConnectU's instructions when counsel refused to execute substitutions;

(2) refusing to withdraw as counsel for ConnectU;

(3) refusing to provide ConnectU its own files;

(4) taking action directly adverse to (and threatening) their client ConnectU using the very same information the lawyers refuse to give Connect U; and

(5) violating duties of confidentiality to ConnectU by communicating confidential information to the Founders.

The Founders and Founders' counsel have not denied any of the above-referenced ethical violations.

### D. The Court Should Deny the Founders' Third Attempt to Stay These Proceedings

The Founders ask this Court to defer ruling on ConnectU's Motion to Disqualify Counsel until such time as the Court also rules on the merits of the pending appeals, claiming that the facts underlying the pending motion and the merits of the pending appeal are "inextricably intertwined." (Founders' Response, p. 9). However, the Founders never identify the precise facts or circumstances that are allegedly intertwined. Instead, they cite their own potential prejudice as a basis for this Court postponing a ruling on disqualification, ignoring the harm and prejudice that ConnectU has already suffered (and continues to suffer) at the hands of its current and/or former counsel, Boies, Finnegan and O'Shea.

In essence, the Founders are asking this Court -- for a third time[2] -- to stay all activity until the Court makes a decision on the merits. As this Court has before, the Court should again decline to enter any sort of stay relative to these proceedings.

---

[2] ConnectU and the Founders filed joint emergency motions to stay enforcement of the judgment in this Court in August 2008 and November 2008, The Court denied both of these motions.

9

**E.**     **The Court Should Order Counsel to Provide ConnectU Its Files; The Founders Fail to Cite Any Authority Disproving ConnectU's Contention That It Is Entitled to Its Files From Former and/or Current Counsel**

Pursuant to ABA Rule 1.16(d) and CRPC 3-700(D), a client is entitled to its files. This entitlement exists regardless of whether the client is a current one or a former one.

Here, ConnectU transferred to Facebook in December 2008 and is under new management. This does not mean that ConnectU is any less entitled to its files. In fact, ConnectU's right to its files is even more important where ConnectU's new management has no information regarding ConnectU's existing rights and obligations, including potential litigation, but must defend against threats from its former lawyers.

As ConnectU anticipated, the Founders rely on New York authority, *Tekni-Plex, Inc. v. Meyner and Landis*, 674 N.E.2d 633, 668 (N.Y. 1996) to support their position that ConnectU should not receive its files. But the Founders' reliance on *Tekni-Plex* is misplaced where a thorough reading of the entire *Tekni-Plex* decision indicates that -- at the bare minimum -- ConnectU is at the very least entitled to ConnectU's pre-transfer general business communications. *Id*. at 666, 670.

*Moeller v. Superior Court* (1997) 16 Cal.4th 1124, a California Supreme Court Case, is controlling. The *Moeller* court considered *Tekni-Plex* in its analysis and then decided that in California, the post-transfer corporation is entitled to all of its pre-transfer files. *Id*. at 1137-9. The Founders fail to provide a sufficient explanation why this Court should not apply *Moeller, supra,* here.

The Founders characterize ConnectU's repeated requests for its files as a tactic. However, as demonstrated by Boies' December 18, 2008 letter to ConnectU's counsel, Hoge, Fenton, (Ex. G to the Towery Declaration in Support

of ConnectU's Motion to Disqualify), ConnectU's own counsel is referencing rights and obligations of which ConnectU is totally ignorant. Given the apparent existence of actual (and potentially imminent) rights and obligations, ConnectU *must* have access to its files so that it can defend itself against its lawyers' threats.

Finally, the Founders claim that there were no secrets between the Founders and ConnectU, so the Founders cannot ever expect that anything communicated to their joint counsel would be confidential as between them. Really, if the Founders wanted to protect their confidentiality, they should have had Connect U retain its own counsel; they decided not to do so.

The decision by the Founders' counsel to pick the Founders' interests over Connect U's when convenient is illustrative of their willingness to compromise their ethical obligations to suit their interests.

## CONCLUSION

The Court should disqualify Boies, Finnegan and O'Shea from representing the Founders where such representation is a breach of the lawyers' duties of loyalty and confidentiality to ConnectU. Furthermore, ConnectU is entitled to its files from these lawyers, and requests that this Court order Boies, Finnegan and O'Shea to promptly turn over ConnectU's files to its new management to allow ConnectU to operate with full knowledge of all its rights and obligations.

DATED: February 26, 2009      Respectfully submitted,
HOGE, FENTON, JONES & APPEL, INC.

By    /s/ James E. Towery
James E. Towery
Attorneys for Defendant-Appellant
Connect U, Inc.

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on February 26, 2009.

DATED: February 26, 2009

Respectfully submitted,


By /s/ James E. Towery
James E. Towery