# IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

———————————————

Appeal Nos. 08-16745, 08-16849, 08-16873, 09-15021

———————————————

**THE FACEBOOK, INC.,** *et al.*,
**Plaintiffs—Appellees,**

**v.**

**CONNECTU, INC.,** *et al.*,
**Defendants—Appellants.**

———————————————

## CONNECTU FOUNDERS' OPPOSITION TO
## FACEBOOK'S FEBRUARY 18, 2009 MOTION TO DISMISS

David A. Barrett
BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue
New York, NY 10022
(212) 446-2300

D. Michael Underhill
Evan A. Parke
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue NW
Washington, D.C. 20015
(202) 237-2727

Steven C. Holtzman
BOIES, SCHILLER & FLEXNER LLP
1999 Harrison Street
Oakland, CA 94612
(510) 874-1000

*Attorneys for Appellants-Non-Movants Cameron Winklevoss,
Tyler Winklevoss and Divya Narendra*

March 5, 2009

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ii

INTRODUCTION ........................................................................................... 1

BACKGROUND FACTS .................................................................................. 2

A.   The February 2008 Mediation ......................................................... 2

B.   Enforcement of the Term Sheet over Objections of ConnectU
     and the Founders ........................................................................... 3

C.   The Founders' Formal Motion to Intervene ...................................... 7

D.   The District Court's Rejection of the Waiver Argument
     Asserted by Facebook in its Motion ................................................. 8

ARGUMENT ............................................................................................... 10

A.   Facebook's Motion Should Be Denied Because It Is Untimely and
     Was Filed for Improper Purposes .................................................. 10

B.   The Founders Have Not Forfeited Their Rights to Appeal ............... 12

C.   The Founders May Appeal in Order to Ensure Review of the Orders
     Below Enforcing the Term Sheet ................................................... 18

D.   Facebook Failed to Timely Appeal from the District Court's Denial of
     Its "Waiver" Argument ................................................................ 19

CONCLUSION ............................................................................................ 20

# TABLE OF AUTHORITIES

*Bank of America v. M/V Executive*,
    797 F.2d 772 (9th Cir. 1986)............................................................................ 19

*Blackie v. Barrack*,
    524 F.2d 891 (9th Cir. 1975)....................................................................... 1, 11

*Boise Tower Associates, LLC v. Washington Capital Joint Master Trust*,
    No. CV 03-141-S, 2007 WL 1035158 (D. Idaho Apr. 2, 2007)....................... 10

*Campers World International Inc. v. Perry Ellis International, Inc.*,
    221 F.R.D. 409 (S.D.N.Y. 2004)................................................................. 1, 10

*Charter School of Pine Grove, Inc. v. St. Helena Parish School Board*,
    417 F.3d 444 (5th Cir. 2005).......................................................................... 13

*Citibank International v. Collier-Trano, Inc.*,
    809 F.2d 1438 (9th Cir. 1987)........................................................................ 17

*Davis v. Rodriguez*,
364 F.3d 424, 427 n.1 (2d Cir. 1991) .................................................................. 19

*Doherty v. Portland Community College*,
    No. CV-99-1375, 2000 WL 33200560 (D. Or. Nov. 15, 2000) ....................... 11

*Doi v. Halekulani Corp.*,
    276 F.3d 1131 (9th Cir. 2002).................................................... 13, 14, 15, 16

*Slaven v. Am. Trading Transp. Co.*,
    146 F.3d 1066, 1069 (9th Cir. 1998))............................................................. 15

*Holy Cross Wilderness Fund v. Madigan*,
    960 F.2d 1515 (10th Cir. 1992)...................................................................... 16

*Hormel v. Helvering*,
    312 U.S. 552 (1941)....................................................................................... 13

*Moore v. Czerniak*,
   534 F.3d 1128 (9th Cir. 2008) .......................................................................... 13

*Newman v. Federal Express Corp.*,
   266 F.3d 401 (6th Cir. 2001) ............................................................................ 20

*Office of Comm'n of United Church of Christ v. F.C.C.*,
   779 F.2d 702 (D.C. Cir. 1985) ........................................................................ 17

*In re Professional Investment Properties*,
   955 F.2d 623 (9th Cir. 1992) ............................................................................ 19

*Silvas v. ETrade Mortgage Corp.*,
   514 F.3d 1001 (9th Cir. 2008) ................................................................... 15, 16

*U. S. v. Bagby*,
   451 F.2d 920 (9th Cir. 1971) ............................................................................ 16

*U.S. v. Hardy*,
   289 F.3d 608 (9th Cir. 2002) ............................................................................ 16

## INTRODUCTION

Apparently still intent on evading the merits of this appeal, Appellee Facebook has raised yet another obstacle in addition to the four pending procedural motions that have already delayed Facebook's filing of its merits brief for nearly six months.[1]

Because Facebook's latest dilatory motion ("Motion") rests entirely on grounds that could and should have been asserted in Facebook's first motion to dismiss on November 14, 2008, it should be denied for that reason alone. The Court has discretion to deny dismissal in the context of piecemeal motions interposed to delay proceedings. *See, e.g., Blackie v. Barrack*, 524 F.2d 891, 900 (9th Cir. 1975); *cf. Campers World Int'l v. Perry Ellis Int'l,* 221 F.R.D. 409, 409 (S.D.N.Y. 2004) (rejecting motion because "it is improper for a party to file a successive motion for summary judgment which is not based upon new facts and which seeks to raise arguments it could have raised in its original motion").

---

[1] Facebook first filed a motion to dismiss the appeal on November 14, 2008. Under the then-existing schedule, Facebook's merits brief was due on November 19, 2008, but its filing was stayed under Circuit Rule 27-11. Thereafter, ConnectU became the alter ego of Facebook on December 15, 2008, when the district court ordered transfer of all of ConnectU's stock to Facebook under the terms of the purported settlement agreement, which is challenged on this appeal.

Subsequently, Facebook or ConnectU (under Facebook's control) have filed the instant Motion and four others: ConnectU's Motion to Dismiss (Appeal No. 08-16745, No. 52); ConnectU's Motion to Substitute Counsel (*id.* at No. 53); ConnectU's Motion to Disqualify (*id.* at No. 63); and Facebook's Motion to Consolidate (Appeal No. 09-15021, No. 12). Through this campaign of *seriatim* motions, Facebook has effectively ensured that its merits brief will not be due before mid-May.

1

On the merits, Facebook's argument that Appellants Cameron Winklevoss, Tyler Winklevoss and Divya Narendra, the founders of ConnectU ("Founders"), waived their right to appeal should be rejected. Contrary to Facebook's claims, the Founders were parties who participated in the proceedings below; opposed Facebook's motion to enforce the purported settlement agreement; and objected to the district court's enforcement rulings that are the subject of this appeal. Moreover, all of the arguments that the Founders raise on appeal were fully briefed and argued below. As the district court acknowledged, the Founders are entitled to appellate review on the merits. The Founders respectfully reiterate their request (*see* ConnectU Founders' Response to Motion to Disqualify Counsel, No. 68,[2] at 9) that the Court set a final, prompt schedule for completion of merits briefing and either deny Facebook's various pending motions or refer them to the Merits Panel for an expedited hearing.

## BACKGROUND FACTS[3]

### A.    The February 2008 Mediation

In February 2008, ConnectU and the Founders, on the one hand, and Facebook and its CEO Mark Zuckerberg, on the other, engaged in mediation in

---

[2] Unless otherwise noted, docket citations are to Appeal No. 08-16745.

[3] Because the underlying facts and disputes have been described in a number of recent filings with the Court, Appellants summarize them here. *See, e.g.*, ConnectU Founders' Opposition to Motion to Disqualify (No. 68) at 3-6; Appellants' Brief (No. 33) at 6-21.

California relating to three ongoing federal lawsuits, one in the Northern District of California, and two in the District of Massachusetts. The mediation concluded with the signing of a "Term Sheet and Settlement Agreement" (the "Term Sheet"). Among other things, the Term Sheet provided for the transfer of all shares of ConnectU to Facebook in exchange for a cash payment and transfer of a specified amount of Facebook stock to the Founders. *See* Appellants' Brief (No. 33) at 8.

The Founders and ConnectU (then still owned by and aligned with the Founders) soon determined that the Term Sheet had been procured by fraud and was otherwise invalid, and so informed Facebook. In response, Facebook moved in April 2008 to enforce the Term Sheet in the Northern District of California. *Id.* at 8-12. Although Facebook served the motion only on ConnectU (*see* Ex. N to the Declaration of Theresa Sutton in support of the Motion ("Sutton Decl.")), the Founders nevertheless opposed and objected to Facebook's motion to enforce and the Court's orders enforcing the Term Sheet, as explained below.

**B.     Enforcement of the Term Sheet over Objections of ConnectU and the Founders**

On June 25, 2008, the district court granted Facebook's motion to enforce the Term Sheet (Ex. L to Sutton Decl.) and later entered Judgment to that effect. Ex. P to Sutton Decl. Contrary to Facebook's contention, the district court's enforcement order was made over the Founders' objections – including objections made through ConnectU, the closely held corporation of which the Founders were

99% shareholders – and despite the Founders' testimony in opposition to the motion to enforce. *See* Ex. A to the Declaration of Evan A. Parke filed herewith ("Parke Decl.") at 2 (district court granted Facebook's motion to enforce "[o]n June 25, 2008, *over objections by ConnectU **and the Founders**"*) (emphasis added); Ex. C to Parke Decl. at 72:7-17 (Facebook's counsel stating to the district court that the Founders were 99% shareholders); Ex. G to the Sutton Decl. at 2-4 of 8 (Declaration of Cameron Winklevoss), and 5-8 of 8 (Second Declaration of Cameron Winklevoss). Similarly, at a July 2, 2008, hearing the district court recognized that "ConnectU and others" (necessarily referring to the Founders) *were not "waiving your objection to my [June 25] Order [enforcing the Term Sheet] in the first place*." *See* Ex. B to Parke Decl. at 26:5-14 (emphasis added).

Indeed, at the only hearing held by the district court on the merits of enforcing the Term Sheet, the court expressly recognized that the Founders were objecting to enforcement of the Term Sheet:

> And so I will be very careful in articulating whatever I do to separate my considerations so that the individuals can make any objections that they wish separate and apart from the Company.

Ex. C to the Parke Decl. at 76:10-14. And the Founders actively opposed Facebook's motion to enforce proceedings. For instance, Cameron Winklevoss filed two declarations in opposition to Facebook's motion to enforce. Among other things, he testified that "Tyler Winklevoss, Divya Narendra and I signed the

Term Sheet, but would not have done so if we had known that Facebook's Board of Directors determined that the fair market value of Facebook's common stock was $[redacted] per share, rather than approximately $[redacted] per share." Ex. G to Sutton Decl., page 7 of 8 (Second Declaration of Cameron Winklevoss), at ¶ 8; *see also* Appellants' Brief (No. 33) at 28-45 (alleged misrepresentation constitutes securities fraud). Expert declarations were also filed on the Founders' behalf criticizing numerous aspects of hundreds of pages of documents (including complex stock purchase transactional documents) that Facebook was seeking to have the district court compel the Founders to execute. *See* Excepts of Record, Volume III of III (No. 33), at 264-374 (documents that Facebook sought to compel Appellants to execute); Ex. H to Sutton Decl. and Ex. J to Parke Decl. (expert reports); Appellants' Brief at 12-18. On this point, Cameron Winklevoss testified that

> ConnectU and its shareholders never agreed to a stock purchase transaction, as opposed to a merger transaction….ConnectU and its shareholders never agreed that the Facebook stock would be subject to [various restrictions found in Facebook's stock purchase agreement].

Ex. G to Sutton Decl., page 3 of 8 (Declaration of Cameron Winklevoss), at ¶¶ 4, 5. These arguments by the Founders' in opposition to Facebook's enforcement motion were successful, in that at the June 23 hearing Facebook backed down from its request to compel the Founders to execute the contested documents and the Court did not order such relief. Sutton Decl. at Ex. L; Ex. C to Parke Decl. at

12:17-13:3 (Facebook's counsel instead requesting that the district court simply "staple" the Term Sheet to its order).

Moreover, Facebook expressly argued in the district court that the Founders' active involvement in opposing enforcement of the Term Sheet and their ownership of ConnectU resolved any question as to whether the Founders had proper notice of the motion to enforce despite Facebook's failure to properly serve them. *See* Ex. C to Parke Decl. at 72-73 (Facebook counsel arguing "Cameron Winklevoss…put in declarations in opposition to our motion" and "had an opportunity to say what he really wants to say"). Facebook's counsel even argued that the Founders were ConnectU "for all intents and purposes:"

> [Y]ou have two declarations from Cameron Winklevoss.
> …These three people[,] Cameron and Tyler Winklevoss and
> Divya Narendra[,] constitute 99 percent of the company. *They,*
> *they are the company for all intents and purposes.*

*Id.* at 72:7-17 (emphasis added).[4] The district court agreed. *See, e.g.,* Ex. R to Sutton Decl. at 5 ("the ConnectU Founders had fair notice that Facebook sought enforcement of the agreement"); Ex. L to Sutton Decl. at 5 ("the three principals of ConnectU had adequate notice").

---

[4] Facebook also has taken the position that the Founders were acting "on ConnectU's behalf." *See* Motion at 5 ("the Founders continued their collateral attack on the Settlement Agreement in the California proceedings on ConnectU's behalf").

## C.     The Founders' Formal Motion to Intervene

On July 29, 2008, responding to Facebook's assertion that the Founders might lack standing to appeal, the Founders prophylactically moved to intervene. Ex. Q to the Sutton Decl.  At the August 6, 2008, hearing on that motion, the district court acknowledged that with respect to the Founders, "I won't deny the right to appeal," *see* Ex. D to the Parke Decl. at 46:18-19, and "I have to put the opposing party to my judgment in a position so they can challenge my judgment." *Id.* at 47:6-8.

Consistent with these comments at the hearing, on August 8, 2008, the district court denied the Founders' motion to intervene as superfluous because the Founders had already appeared and submitted to personal jurisdiction for enforcement purposes and were already parties to the case.  Ex. R to Sutton Decl. (August 8 Order) at 4-5 ("the ConnectU Founders [were] parties for purposes of proceedings to enforce the Settlement Agreement;" "[t]hrough counsel, the ConnectU Founders participated in and were aware of these proceedings").[5]  The court then explicitly held that the Founders could appeal the judgment enforcing the Term Sheet:

---

[5] *See also id. at* 2 (the "Judgment in this case treats the ConnectU Founders as parties"), 6 ("the ConnectU Founders are already parties to these proceedings to enforce the Settlement Agreement"), 8 (the Founders "have already been made parties to these proceedings").

[T]he ConnectU Founders participated in and were aware of these proceedings.  Thus, the Judgment enforcing the Settlement Agreement is binding on them and *they may appeal that Judgment.*

*Id.* at 5 (emphasis added).  And the district court "grant[ed] the ConnectU Founders additional time to appeal for good cause shown pursuant to Rule 4(a)(5) of Federal Rules of Appellate Procedure." *Id.* at 6, 8 (the ConnectU Founders "shall have until **August 22, 2008** to file their appeal") (bold in original).

### D.      The District Court's Rejection of the Waiver Argument Asserted by Facebook in its Motion

Facebook first raised the same waiver argument that it is now asserting in this Motion in a reply brief in support of its motion to enforce the Term Sheet. Ex. E to Sutton Decl. at 1, fn. 1.  It repeated the argument in opposing the Founders' motion to intervene.  Ex. E to Parke Decl. at 8 ("As stated above, the ConnectU Founders have been aware of the motion to enforce and its potential consequences since at least April of this year, have participated in the proceedings, and made the strategic choice not to oppose Facebook's motion."). The district court rejected Facebook's argument, however.  The court repeatedly held, as discussed above, that the Founders were parties to the action; had submitted to jurisdiction for the limited purpose of the enforcement proceedings; were represented by counsel at hearings; had objected to the enforcement

proceedings and the court's rulings; were not waiving their objections; and could

appeal the orders enforcing the Term Sheet.  *See* pages 3-8, above.[6]

Finally, on November 3, 2008, the district court entered another order

which stated that it had enforced the Term Sheet in its June 25 Order "*over*

*objections by ConnectU and the Founders*."  Ex. A to Parke Decl. at 1 (emphasis

added).  Facebook moved to strike this phrase from the order, arguing for a third

time that

> the Founders did not object to enforcement of the Settlement
> Agreement….Indeed, the Founders, Tyler and Cameron Winklevoss
> and Divya Narendra, went out of their way to stay out of the
> enforcement proceedings. Counsel for the Founders did not file an
> opposition, present argument at the hearing on the Motion to Enforce
> or expressly join ConnectU's argument during the motion to enforce
> proceedings.

Ex. F to Parke Decl. at 1, 2 (Facebook specifically asking "that the Court strike"

the language from its November 3 Order "to comport with the record in this

case").  The district court again rejected Facebook's argument and denied the

motion.  Ex. H to Parke Decl.  It held that "the language in its November 3 Order,

*i.e.*, 'over the objections by ConnectU and the Founders . . .,' is consistent with its

_____

[6] The district court further noted that "*even a non-party* may be permitted to
appeal when '(1) the appellant, though not a party, participated in the district court
proceedings, and (2) the equities of the case weigh in favor of hearing the
appeal.'" *Id.* at fn. 5 (emphasis added), *quoting Bank of Am. v. M/V Executive*, 797
F.2d 772, 774 (9th Cir. 1986).  As discussed herein, the Founders clearly meet this
standard, although it need not be applied to deny the Motion.

prior Orders recognizing the Founders' presence and the Court's exercise of jurisdiction over them." *Id.* at 2.

## ARGUMENT

### A. Facebook's Motion Should Be Denied Because It Is Untimely and Was Filed for Improper Purposes.

Facebook's serial filing of piecemeal motions based entirely on facts and legal theories that could and should have been raised, if at all, in Facebook's first motion to dismiss has wasted judicial resources and delayed resolution of the pending appeals. *See Boise Tower Associates, LLC v. Washington Capital Joint Master Trust*, 2007 WL 1035158, at *14 (D. Idaho Apr. 2, 2007) ("policy of only accepting one dispositive motion, except for good cause shown, is for the main purpose conserving judicial resources so that the Court may attend to its ever-burgeoning docket as economically as possible"). The relevant facts – relating as they do entirely to proceedings before the district court – were known to Facebook when it filed its *initial* motion to dismiss in this Court. Facebook should not be rewarded for its tactical decision to withhold available arguments so that it could make successive motions apparently timed to maximize delay. *Cf. Campers World Int'l Inc. v. Perry Ellis Int'l, Inc.*, 221 F.R.D. 409, 409 (S.D.N.Y. 2004) (rejecting second filing because "it is improper for a party to file a successive motion for summary judgment which is not based upon new facts and which seeks to raise arguments it could have raised in its original motion"); *Doherty v.*

*Portland Community College*, 2000 WL 33200560, at *2 (D. Or. Nov. 15, 2000) (rejecting second filing where movant "seeks to add a theory of the case that she omitted from her original motion").

Alternatively, Facebook could have raised its waiver argument in its principal brief on appeal. The Court has already indicated that this is the appropriate course in ruling on Facebook's first motion to dismiss: "Appellees/Cross-Appellants' motion to dismiss is denied without prejudice to renewing the arguments in the second cross-appeal brief." *See* Ex. G to Parke Decl. at 2.

Instead, Facebook waited to raise the waiver argument in the Motion until three months after filing its first motion to dismiss and three weeks after Facebook separately moved the Court to consolidate all pending appeals and set a single briefing schedule (Appeal No. 09-15021 (No. 10)) – a schedule that it now seeks to delay still further by operation of Circuit Rule 27-11. Such gamesmanship warrants denial of a successive motion to dismiss. *See Blackie*, 524 F.2d at 900 (Court has discretion to take into consideration questionable litigation tactics and posture of case in determining whether to dismiss an appeal).

## B. The Founders Have Not Forfeited Their Rights to Appeal.

Facebook's motion fails on the merits because there was no waiver of the Founders' right to appeal. As the district court recognized, the Founders contested

Facebook's efforts to enforce the Term Sheet at every turn. *See* pages 3-6, above. They opposed Facebook's enforcement efforts – they did so individually, through closely-held ConnectU, and by arguing on behalf of ConnectU. *Id.* The Founders also objected to the district court's enforcement rulings, *id.*, and the district court expressly found that they could appeal those rulings. *See* pages 7-8, above.

In light of the clear record and Facebook's own admissions concerning the Founders' notice of proceedings and submission to jurisdiction, on which the district court relied (*id*), Facebook's claims that the Founders did not subject themselves to the district court's jurisdiction (Motion at 4), that only ConnectU objected to the enforcement of the Term Sheet (*id.*), and that only ConnectU appeared in the enforcement proceedings (*id.* at 3) must be rejected. As Facebook's counsel expressly admitted at the June 23 hearing on the motion to enforce the Term Sheet, the Founders were ConnectU, and ConnectU was the Founders, "for all intents and purposes." *See* Ex. C to Parke Decl. at 72:14-17.[7]

Facebook's motion is largely premised on the general rule that "an appellate court will not consider *issues* that were not properly raised before the district court." Motion at 8, *citing Doi v. Halekulani Corp.*, 276 F.3d 1131, 1140 (9th Cir.

---

[7] In addition, Facebook argued that a judgment enforcing the Term Sheet against ConnectU (as was ultimately entered) would "constitute res judicata against the three individuals because they are privity in the company." Ex. C to Parke Decl. at 73:9-17.

2002) (emphasis added). But this rule actually supports the Founders' right to appeal because all of the "*issues*" set forth in the Founders October 6 Brief of Appellants were previously raised, fully briefed, and actually decided in the district court.

Accordingly, there is no unfairness to the district court nor prejudice to Facebook in permitting the Founders' appeal. Indeed, the district court summarily enforced the Term Sheet in the precise manner sought by Facebook: on an expedited basis, and without permitting discovery or an evidentiary hearing. *See* Appellants' Brief (No. 33) at 12-13, 51; *Moore v. Czerniak*, 534 F.3d 1128, 1152 (9th Cir. 2008) (holding that the rule requiring forfeiture of appeal rights exists to ensure the parties had "the opportunity to offer all the evidence they believe relevant to the *issues*," and to avoid "surprise[] on appeal by final decision there of *issues* upon which they have had no opportunity to introduce evidence") (emphasis added), *quoting Hormel v. Helvering*, 312 U.S. 552, 556 (1941); *Charter School of Pine Grove, Inc. v. St. Helena Parish School Board*, 417 F.3d 444, 447 (5th Cir. 2005) ("an argument is not waived on appeal if the argument on the issue before the district court was sufficient to permit the district court to rule on it"). Tellingly, although Facebook has had the Founders' opening appeal brief now for many months, it has failed to identify any issue not fully aired below.

Facebook's cases (Motion at 8-9) are readily distinguishable. In *Doi v.*

*Halekulani Corp.*, 276 F.3d 1131 (9th Cir. 2002), the issue was whether Doi had preserved the right to appeal a sanction that was entered after she failed to comply with an order compelling discovery. *Id*. at 1140. The Court found that Doi waived her rights when her counsel represented that Doi "would 'defer to the court' on the issue." *Id.* The attempt to appeal was rejected because the trial judge had given Doi many chances to comply, and had instructed her to testify in opposition to the motion to compel, which she initially agreed to do but then changed her mind and was sanctioned. *Id.* at n.7.

Here, unlike Ms. Doi, neither ConnectU, Inc. nor the Founders ever suggested that they were submitting themselves, without objection, to the determinations of the district court. Rather, the record shows extensive and consistent opposition to Facebook's motion to enforce and to the district court's enforcement rulings. Moreover, unlike the appellant in *Doi*, Founder Cameron Winklevoss testified through two declarations in opposition to the motion to enforce. And, of course, the district court fully understood that the Founders objected to its rulings and were reserving all appellate rights, as it overruled the very arguments that Facebook now makes in holding that the Founders had the right to appeal. *See* pages 7-8, above.

*Silvas v. E\*Trade Mortgage Corp.*, 514 F.3d 1001 (9th Cir. 2008), likewise stands for the unremarkable proposition that a *claim* or an *issue* must be presented

to the district court before it may be raised on appeal. *Id*. at 1007.  Here, it is indisputable that all of the claims and issues were raised below, and Facebook does not argue otherwise.[8]

In both *Doi* and *Silvas*, the key to the Court's finding of waiver was the "well-established rule that an appellate court will not consider *issues* not properly raised" below:

> [i]t is well-established that an appellate court will not consider *issues* that were not properly raised before the district court.  *Doi v. Halekulani Corp.*, 276 F.3d 1131, 1140 (9th Cir. 2002).  It follows that if a party fails to raise an objection to an *issue* before judgment, he or she waives the right to challenge the issue on appeal.  *Id.* (quoting *Slaven v. Am. Trading Transp. Co.*, 146 F.3d 1066, 1069 (9th Cir. 1998)).

*Silvas*, 514 F.3d at 1007 (emphasis added).[9]

---

[8] *Compare* issues and arguments raised in Appellants' Brief (No. 33) with Appellants' district court opposition to the motion to enforce (Ex. D to Sutton Decl.) and Appellants' district court sur-reply in opposition to motion to enforce (attached as Ex. I to the Parke Decl.).

[9] The *Slaven* case cited in *Silvas* also is distinguishable on its facts.  In *Slaven*, the appellant signed a stipulation approving a settlement "without condition or reservation," and the appellant's attorney "confirmed that no party opposes entry of the proposed judgment."  *Slaven*, 146 F.3d at 1069. The district court also had held that "the act of signing the stipulation was sufficiently intentional to constitute a withdrawal of [appellant's] original objections to the settlement."  *Id.*

Here, none of the Founders accepted enforcement of the Term Sheet – let alone expressed an intent to withdraw their prior objections to it – nor did they sign any stipulations relating to the merits.

Facebook attempts to rely on general language in *Doi* and *Silvas* that "if a party fails to raise an objection to an issue before judgment, he or she waives the right to challenge the issue on appeal."  But here, the Founders did object.  And even assuming for the sake of argument that they had not, neither *Doi* nor *Silvas* addressed or decided whether an appellant is precluded from appealing where a related party raised the issue below, the district court understood the issue to have been raised on behalf of all related parties, and the district court decided the issue.  Nothing in *Doi* and *Silvas* suggests that allied parties must make *pro forma* "me too" objections.  To the extent that these cases can be read to suggest a party-specific approach to waiver, the quoted language is dictum.

Facebook's attempted reading of *Doi* and *Silvas* is also flatly inconsistent with numerous cases that have rejected the idea of such a party-specific approach.  *See U. S. v. Bagby*, 451 F.2d 920, 927 (9th Cir. 1971) (objection by co-defendant preserved issue for appeal with respect to both defendants); *U.S. v. Hardy*, 289 F.3d 608, 612, n1. (9th Cir. 2002) (same); *Holy Cross Wilderness Fund v. Madigan*, 960 F.2d 1515, 1525 n.14 (10th Cir. 1992) (court decided merits of issue that was raised below only by another party, not appellant, despite appellees' argument that the court should not consider the question); *cf. Office of Comm'n of United Church of Christ v. F.C.C.*, 779 F.2d 702, 706 (D.C. Cir. 1985).

In any event, even if the Court were to adopt a party-specific approach,

requiring appellants to have previously objected in order to appeal, the district court repeatedly found that the Founders did just that. *See* pages 3-6, above.

Finally, Facebook distorts the holding in *Citibank International v. Collier-Trano, Inc.*, 809 F.2d 1438 (9th Cir. 1987). There, the district court had refused to consider a motion brought by a non-party to vacate a judgment because its involvement in the five-year course of litigation had been "nonexistent." *Id.* at 1441. Finding that "[t]he closest analogy" was "a nonparty's attempt to appeal from the judgment itself," the Court followed the "general rule that one who is not a party before the district court may not appeal a judgment." *Id.* at 1440-41.

Here, the district court repeatedly found that the Founders *had* appeared as parties in the enforcement proceedings. In fact, it denied the Founders' motion to intervene as unnecessary because they were already parties and had previously submitted themselves to jurisdiction for the limited purpose of the enforcement proceedings, and could appeal the court's enforcement rulings. *See* pages 7-8, above. And unlike the movant in *Citibank,* whose involvement was "non-existent" for five years, the Founders unequivocally participated in the district court proceedings. *See* pages 4-7, above.[10]

---

[10] Even if the Founders were deemed to be non-parties, they meet the standards for allowing a non-party to appeal, as they participated in the proceedings below and the equities favor hearing the appeal. *See Bank of Am. V. M/VExecutive*, 797 F.2d 772, 774 (9th Cir. 1986).

**C.    The Founders May Appeal in Order to Ensure Review of the Orders Below Enforcing the Term Sheet.**

On October 6, 2008, ConnectU and the Founders served and filed their Brief on Appeal.  *See* No. 33.  Then on December 15, 2008, in accordance with the district court's judgment enforcing the Term Sheet, Facebook acquired the ConnectU stock previously owned by the Founders, and ConnectU "switched sides" and became a Facebook subsidiary.  *See* No. 57 at 2-4 (describing the Founders' forced transfer of ConnectU stock to Facebook and Facebook's conduct thereafter).  On December 22, 2008, ConnectU then moved to dismiss its own appeal, which had been filed when the Founders controlled ConnectU.  *See* No. 52.  The Founders opposed that motion (No. 57) and it is currently pending.

If the Court were to dismiss ConnectU's appeal as the foregoing motion seeks, the Founders' appeal would be the appropriate vehicle to obtain appellate review of the district court's orders enforcing the purported settlement.  In other words, even though it has always been absolutely clear to the district court and all parties that the Founders vigorously contested Facebook's right to acquire their ConnectU stock pursuant to the Term Sheet, the judgment enforcing the Term Sheet would be rendered effectively unreviewable if the Court were to grant both motions to dismiss.  The manifest injustice that would arise if review were precluded compels denial of the instant Motion.  *See Bank of Am. v. M/V Executive*, 797 F.2d 772, 774 (9th Cir. 1986) ("the equities weigh in favor of

hearing the [non-party's] appeal because this is the only avenue to obtain appellate review of the issue," particularly where non-party participated in proceedings below); *In re Professional Inv. Properties*, 955 F.2d 623, 625 (9th Cir. 1992) (court of appeals will consider arguments not raised below to prevent miscarriage of justice).

### D. Facebook Failed to Timely Appeal from the District Court's Denial of Its "Waiver" Argument.

Facebook's motion also should be denied because Facebook failed to appeal from the district court's rejection of its waiver argument. Although a prevailing party is entitled to urge affirmance without filing a cross-appeal on any grounds submitted to the district court and supported by the record, *see generally Davis v. Rodriguez*, 364 F.3d 424, 427 n.1 (2d Cir. 1991), Facebook's argument attacking the Founders' standing to appeal does not constitute an alternative legal theory justifying the enforcement of the Term Sheet. Rather, it is a separate and independent legal issue that was rejected at least twice by the district court. *See* pages 8-10, above. Because Facebook failed to cross-appeal on this issue, even as it filed cross-appeals addressing denials of unrelated orders (*e.g.*, lack of personal jurisdiction), the Motion must be denied. *See Newman v. Fed. Express Corp.*, 266 F.3d 401, 404 (6th Cir. 2001) (if appellant "chooses to designate specific determinations in its notice of appeal, only those determinations may be raised on appeal"); Fed.R.App.P. 3(c).

## CONCLUSION

The Founders respectfully request that the Court deny Facebook's motion to dismiss the Founders' appeal, or alternatively, refer it to the Merits Panel for expedited hearing.

Date: March 5, 2009                Respectfully submitted,

   /s/ Evan A. Parke

David A. Barrett
BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue
New York, NY 10022

D. Michael Underhill
Evan A. Parke
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue NW
Washington, D.C. 20015

Steven C. Holtzman
BOIES, SCHILLER & FLEXNER LLP
1999 Harrison Street
Oakland, CA 94612

*Attorneys for Defendants and Appellants*
*Cameron Winklevoss, Tyler Winklevoss*
*and Divya Narendra*

## <u>CERTIFICATE OF SERVICE FOR ELECTRONIC FILING</u>

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants.

DATED:  March 5, 2009

Respectfully submitted,

        /s/ Evan A. Parke

Evan A. Parke