1  John L. Cooper (State Bar No. 050324)
   Jeffrey M. Fisher (State Bar No. 155284)
2  Andrew Leibnitz (State Bar No. 184723)
   Nan E. Joesten (State Bar No. 191288)
3  FARELLA BRAUN & MARTEL LLP
   Russ Building, 22nd Floor
4  235 Montgomery Street
   San Francisco, CA 94104
5  Telephone: (415) 954-4400
   Facsimile: (415) 954-4480
6
   Attorneys for Plaintiffs and Counterclaim Defendants
7  DOLBY LABORATORIES, INC. and DOLBY
   LABORATORIES LICENSING CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DOLBY LABORATORIES, INC., and DOLBY LABORATORIES LICENSING CORPORATION,<br><br>Plaintiffs,<br><br>vs.<br><br>LUCENT TECHNOLOGIES INC.,<br><br>Defendant. | Case No. C 01-20709 JF (RS)<br><br>**DOLBY'S RESPONSE TO THE COURT'S ORDER RE LUCENT'S RULE 72(a) OBJECTION TO MAGISTRATE JUDGE SEEBORG'S FEBRUARY 25, 2005 ORDER**<br><br>Judge: Hon. Jeremy Fogel |
| AND RELATED COUNTERCLAIMS. | |

Farella Braun & Martel LLP
Russ Building, 22nd Floor
235 Montgomery Street
San Francisco, CA 94104
(415) 954-4400

DOLBY'S RESP. TO COURT'S ORDER RE
LUCENT'S 72(A) OBJ. TO FEB. 25, 2005 ORDER
CASE #C 01-20709 JF (RS)

14680\777625.1

Dockets.Justia.com

## I. INTRODUCTION

Dolby's Court-ordered Second Supplemental Response to Lucent's Interrogatory Number 6 does not disclose any new information that Lucent did not already have during fact discovery. Simply put, there is nothing "new" in Dolby's Response. The only "newly-identified documents" in Dolby's Response are promotional pieces, unrelated correspondence, and transmittal letters identifying development kits of Dolby's AC-3 source code that Lucent was well aware of during the fact discovery period. ***Indeed, Lucent marked each of these development kits as exhibits in the depositions of Dolby witnesses, and was informed repeatedly during the fact discovery process that Dolby's licensees received such code.*** Lucent has already conceded that this discovery is not the "be-all, end-all" for its experts, and that at most, it is relevant only to its inducement claim. Accordingly, Lucent's contentions that these documents are "a whole new set of materials" and that this "new information is material to Lucent's expert analysis, because it identifies new code (and other documents) used by licensees to make AC-3 products" (Objection at 3:7-8, 3:14-15) are simply false. There is no "good cause" to justify the reopening of expert discovery limited to these documents just one month before trial.

## II. STATEMENT OF FACTS

Lucent's Rule 72(a) Objection to Magistrate Judge Seeborg's February 25, 2005 Order ("Objection") advances the latest in a series of arguments as to why Lucent should be excused from providing timely expert discovery. In its Objection, Lucent contended that Magistrate Seeborg's February 25 Order was clearly erroneous, because, *inter alia*, Dolby purportedly identified "several new sets of [source and object] code" in Dolby's Second Supplemental Response to Lucent Interrogatory 6 ("Response") for the very first time. Lucent further contended that this information "is fundamental to Lucent's infringement analysis." Obj. at 3:27.

Although the Court squarely overruled Lucent's Objection, the Court requested that Dolby address Lucent's contention that the so-called "newly identified documents" in Dolby's Response merit the re-opening of expert discovery only as to those purportedly newly identified documents. March 14, 2005 Order at 2-3 (Declaration of Nan E. Joesten ("Joesten Decl.") filed concurrently herewith, Ex. A). As shown below, while Dolby's Response identified certain additional

Farella Braun & Martel LLP
Russ Building, 22nd Floor
235 Montgomery Street
San Francisco, CA 94104
(415) 954-4400

DOLBY'S RESP. TO COURT'S ORDER RE
LUCENT'S 72(A) OBJ. TO FEB. 25, 2005 ORDER
CASE # C 01-20709 JF (RS)

1

14680\777625.1

documents – previously produced to Lucent – in response to this Court's February 9 Order overruling Lucent's Rule 72(a) Objection to Magistrate Judge Seeborg's December 17, 2004 Order, Lucent had full knowledge of all relevant AC-3 source code documents, and took discovery relating to those same documents, long before the expert discovery cut-off.

### A.  Dolby Scoured Its Entire Document Production To Identify Licensee Correspondence To Comply Fully With The Court's February 9 Order.

The Court's February 9, 2005 Order required Dolby to supplement its prior response to Lucent's Interrogatory Number 6[1] to "identify its responses by licensee." Feb. 9, 2005 Order Re: Objections to Magistrate Judge's Dec. 17, 2004 Order ("Feb. 9 Order") (Joesten Decl., Ex. B). Dolby's initial response to Interrogatory Number 6 objected that "this interrogatory seeks information outside of Dolby's control, as Dolby does not keep business records of every document ever provided to its AC-3 licensees." Dolby responded further, stating:

> Dolby has previously produced in this litigation communications with its licensees accused by Lucent in its Final Infringement Contentions disclosed under this Court's Local Patent Rules regarding AC-3. The burden of searching these records for the requested information is substantially the same for Lucent as it is for Dolby, and Dolby responds in accordance with Fed. R. Civ. P. 33(d), identifying Dolby's standard development kits, produced, e.g., at Dolby 63398-81414 and Dolby 81652 – 86560.

Dolby Resp. to Interrogatory No. 6 at 4:8-14 (emphasis added). Kellman Decl., Ex. F.

Although Dolby identified nearly 23,000 pages of responsive documents that it believed encompassed its voluminous communications with its licensees,[2] pursuant to the February 9 Order, Dolby undertook an extensive review of its entire document production to provide its supplemental response. Dolby took the Court's Order seriously, and even though the entirety of its document production has been equally available to Lucent, and Lucent could have reviewed the production as readily as Dolby did, Dolby manually located and identified certain additional

---

[1] Interrogatory Number 6 requests Dolby to "identify all documents . . . instructing or otherwise enabling the use of AC-3 Technology, AC-3 Product(s), and/or Dolby AC-3 Product(s)" provided by Dolby to each licensee identified in response to Interrogatory Nos. 4 and 5. Kellman Decl., Ex. F.

[2] The nearly 23,000 pages identified in Dolby's initial response included promotional materials, miscellaneous correspondence unrelated to AC-3, and transmittals of materials unrelated to AC-3. This Court has already ordered that Dolby's discovery is properly limited to the licensees Lucent identified in its Final Infringement Contentions. See Feb. 9 Order at 3 (Joesten Decl., Ex. B).

1  pages of documents outside the range identified in its initial response, and incorporated those

2  within its Second Supplemental Response to Interrogatory No. 6. See id. A summary of these

3  documents is attached hereto as Exhibit A.[3] Dolby regrets the typographical error in its Response

4  to Interrogatory Number 6 which the Court identified. Instead of identifying one document with

5  a range of DOLBY 35060-07, Dolby's Response should have included two ranges: DOLBY

6  35060 - 68, and 35996-35607. These documents comprise portions of an irrelevant Dolby Pro

7  Logic II Decoder Development Kit that were sent to AC-3 licensees identified in the Response.[4]

**B.   In Its Supplemental Responses, Dolby Identified AC-3 Test Or Implementation Documents For Only Six Licensees, And Lucent Used The Purportedly "New" Documents As Deposition Exhibits.**

10  Dolby's communications with its AC-3 licensees cover a broad range of promotional

11  material and communications unrelated to the technology at issue in this case. The vast majority

12  of the additional documents identified in Dolby's Response are of no consequence to this

13  litigation, including documents relating to Dolby's Pro Logic II, Virtual Speaker, and Dolby

14  Headphones technologies that *Lucent has never contended were at issue in this litigation*. See

15  Lucent's Final Infringement Contentions at 2 (Joesten Decl., Ex. D). Although the documents are

16  therefore not even responsive to Interrogatory No. 6, Dolby identified them nonetheless in an

17  effort to identify all of its communications with its licensees in response to the February 9 Order.

18  Accordingly, the additional documents identified in Dolby's Response are not "new":

19  • For nine of the licensees in Interrogatory Number 6, there were no newly-
20   identified documents.

21  • For an additional eight licensees in Interrogatory Number 6, there were no newly-
22   identified documents that related to AC-3 licensing.[5]

---

[3] Exhibit A contains a brief description of the documents identified by bates range and licensee. Nearly half of the "newly-identified" documents are associated with one Dolby licensee (Konami), and contain hundreds of pages of draft licensing agreements (DOLBY 57706 – 820) and draft trademark agreements (DOLBY 57915-74, 58001 – 107). A further 182 pages are a catch-all Samsung correspondence file (DOLBY 34244 – 425) from Feb. 10, 1997 – May 16, 2000 that does not include any "new code" provided to Samsung for making AC-3 products.

[4] Additionally, in preparing this brief Dolby reviewed again the documents identified in its Response to Interrogatory 6 and regretfully realized that approximately 1,700 pages of communications to licensees other than those that were responsive to Lucent's interrogatory 6 were identified in error. These documents are not included in Exhibit A.

[5] As shown in Exhibit A, Pro Logic II communications were identified for Audiovox, Creative Tech, Funai, Pinnale Systems, Samsung, and Sharp. Etronics and Sharp received Virtual Speaker and Dolby Headphones documents.

- Of the remaining seven licensees in Interrogatory Number 6, one licensee's (First International Computer, Inc.) identified documents contained only correspondence transmitting a standard AC-3 licensing agreement.
- The documents of the other six licensees in Interrogatory Number 6[6] contained transmittals and/or Dolby AC-3 development kits, test kits, and implementation kits. *Each of the underlying documents transmitted were already been marked by Lucent as deposition exhibits*, and deposition testimony shows that every AC-3 licensee receives the relevant updated kits once they are available.[7]

Indeed, every one of the Dolby production CD's referenced on page 3 of Lucent's Objection (DOLBY 2249, 2250, 9790, 9794, 9795, 9797, 9799) contain a Dolby development or test kit that Dolby produced by February 2003, and that *Lucent used in questioning either Dolby's Vice President of Licensing Technology Steve Vernon in 2003 or Dolby's Senior Vice President and General Manager, Consumer Division, Eduard Schummer in 2004*:

| Dolby CD | Exhibit | Description |
|---|---|---|
| 2249 | 505 | Dolby Digital Decoder Implementation Dev. Kit, v. 3.0 |
| 2250 | 506 | Dolby Digital Implementation Test Kit CD, v. 2.0 |
| 9790 | 512 | DDICE Implementation Development Kit |
| 9794 | 517 | Dolby Digital Prof. Encoder Impl. Dev. Kit, v. 1.0 |
| 9795 | 518 | Dolby Digital Prof. Encoder Impl. Dev. Kit, v. 1.1 |
| 9797 | 520 | Dolby Digital Prof. Encoder System Dev. Kit, v. 1.1 |
| 9799 | 522 | DDICE zip file |
| 9799 | 8 | DP 561 Source Code |

These documents therefore do not contain any "new code (and other documents) used by licensees to make AC-3 products," Obj. at 3:15-16, and as shown below, Lucent was well aware long ago that these materials were provided to Dolby's AC-3 licensees.

---

[6] Broadcom, Compal, EchoStar, Liquid Audio, ASUSTek, and Compaq.

[7] Tellingly, in its desperation to re-open expert discovery, Lucent's Objection failed to inform the Court of Lucent's knowledge of these development kits, and instead claimed merely that "Dolby's new responses for the first time identify several sets of source and object code provided on CD that Dolby had not previously identified in its interrogatory responses. (See e.g., identification of DOLBY 2249, 2250, 9790, 9794, 9795, 9797, 9799)." Obj. at 3:10 – 13.

### C. Dolby's Witnesses Explained That AC-3 Licensees Regularly Receive Updated AC-3 Development Materials.

Lucent's use at deposition of every Dolby production CD found within Dolby's Response is fatal to its ability to show good cause for reopening expert discovery. Lucent had ample opportunity to pursue discovery on these documents, and Dolby's Response did not give Lucent any information it did not already have prior to the close of fact discovery. Tellingly, Lucent's Objection does not identify how this "new information is material to Lucent's expert analysis." The reason is simple: it cannot. The information is not "new" because Lucent has been in possession of the underlying AC-3 development and implementation materials for years, and queried both Mr. Vernon and Mr. Schummer on those materials in depositions in 2003 and 2004.

Lucent's Objection claims that somehow Dolby's Response "identifie[s] a whole new set of materials provided to licensees." Obj. at 3:7-8. Yet Mr. Schummer made it abundantly clear that every licensee in good standing receives Dolby's updated development materials when those materials are released:

> Q. Mr. Schummer, Exhibit 505 is a printout of Dolby CD 2249, Dolby 2249. It's entitled -- the disk is entitled "Dolby Digital Decoder Implementation Development Kit, Version 3.0." Is Exhibit 505 a set of documentation that is provided to Dolby license -- AC-3 licensees?
>
> A. If it is marked "Implementation Development Kit," then I would assume it is.
>
> Q. Okay. What you have in front of you in the first page is a path listing for the CD that we were provided. . . . On the contents page -- which is "contents.txt." . . . it says "Dolby Digital Decoder Implementation Development Kit CD, Version 3.0, July 21" -- excuse me, "July 2001." . . . To whom was Exhibit 505 provided?
>
> A. Well, it says here Dolby Digital Decoder Information Development Kit, so presumably it was provided to Dolby Digital decoder implementation licensees.
>
> Q. All Dolby Digital decoder implementation licensees?
>
> A. Well, Dolby Digital implementation licensees as of that date.
>
> Q. So Exhibit 505 was provided to all Dolby Digital implementation licensees as of July 2001?
>
> A. I believe so, yeah.

1      * * *

2      Q. . . . When the implementation development kits are updated,
       does each implementation licensee receive the updated version?
3
       A.   I believe so, yes.
4
       Q.   So as of July 2001, all Dolby Digital decoder implementation
5      licensees who were at that time -- . . .

6      A.   Were active, yes.

7      Q.   -- would have received Exhibit 505?

8      A.   I would think so, yes.

9  Schummer Depo. Tr. (Joesten Decl., Ex. F at 122:2 – 124:13).  Lucent's misleading suggestion

10 that it learned of "a whole new set of materials provided to licensees" through Dolby's Response

11 is simply false.  The testimony is clear that every active AC-3 licensee receives the updated

12 implementation development kits when they are released.  There is nothing "new" here.

13     Lucent elicited similar testimony on the remaining source code documents:

14     MR. KELLMAN:  Q.  You have in front of you Exhibit 512 which
       is a printout from Dolby production CD Dolby 9790.  Do you know
15     what . . . Exhibit 512 is?

16     A.   Well, from the printout at the top of these pages, I conclude
       that it is a Dolby Digital interactive content encoder implementation
17     development kit.

18     * * *

19     Q.   So Exhibit 512 would have been provided to whom?

20     A.   To Dolby Digital interactive content encoder implementation
       licensees.
21
   The same was true with Dolby production CD DOLBY 2250.
22
       Q.  Mr. Schummer, you have in front of you Exhibit 506, which is
23     a printout of Dolby CD 2251 [sic].  Do you know what Exhibit 506
       is? . . . I can direct your attention to the readme file right in front
24     which calls this a Dolby Digital Decoder Implementation Test Kit
       CD, version 2.0, October 1999. . . . What is your understanding of
25     what this Exhibit 506 is?

26     A.  This is a -- probably a printout of a disk that contains test
       information for AC-3 decoders, decoder implementations.
27
       Q.  What is a Dolby Digital Decoder Implementation Test Kit CD?
28

A. It's a CD that contains tests for Dolby Digital decoder implementations.

Q. And this is a test kit that's provided to all Dolby Digital decoder implementation licensees as of October 1999?

A. That would be my understanding, yes.

Id. at 126:24 – 127:22; see also 151:13-152:8 (Dolby 9794); 152:18-153:4 (Dolby 795)(Joesten Decl., Ex. F); Vernon Dep. Tr. at 270:22 - 272:17 (Dolby 9799) (Joesten Decl., Ex. G).

**D. Lucent Has Conceded That Its Failure To Comply With The Expert Discovery Deadlines Had Nothing To Do With Dolby's Discovery.**

As Lucent candidly admitted in its opposition to Dolby's Motion in Limine to Preclude Lucent from Offering any Expert Report or Testimony, "Lucent's decision to defer the submission of its expert report was *not* based on a belief that Dolby's outstanding discovery obligations entitled it to do so." Opp. at 9:15-16 (emphasis in original). Instead, the sole reason offered by Lucent for its failure to timely provide expert reports is that "this Court specifically extended the expert discovery cutoff." Id. at 3:10-11. Magistrate Judge Seeborg has already found such a statement -- repeated over and over again in Lucent's Opposition to Dolby's Motion in Limine[8] -- to be "flat wrong," "not true" and an "astonishing misreading of the transcript [of the January 7 Case Management Conference]." February 23, 2005 Tr. at 7-10 (Joesten Decl., Ex. E). Because these "new" documents do not provide any new information that Lucent did not

---

[8] Opp. at 1:24-25 ("Lucent's deferral of its expert reports is fully justified by the Court's own directions at the case management conference."); 3:6-8 ("Lucent was substantially justified in deferring its expert report not because of a discovery dispute but because this Court expressly authorized an extension of the expert-report cutoff beyond January 10."); 3:9 ("This Court Explicitly Extended The Cutoff For The Submission Of Expert Reports Pending A Final Decision From Magistrate Judge Seeborg."); 3:10-11 ("Dolby's motion should be denied because this Court specifically extended the expert discovery cutoff."); 3:14 ("the Court granted a temporary stay to give Lucent time to seek relief from the Magistrate"); 3:18-20 ("[The Court's] direction to the parties was straightforward: as long as Lucent's motion to extend time was filed promptly, the parties could defer their disclosures until Judge Seeborg had the opportunity to make a decision about whether further delay was needed."); 4:15-5:1 ("The context of the court's statement ... erases any doubt as to what was intended.... [T]he Court instructed Lucent to file a motion with Judge Seeborg and granted a temporary deferral of expert reports until Judge Seeborg could make a final decision on the expert discovery schedule."); 5:8-9 ("Lucent Followed This Court's Instructions by Filing a Properly Noticed Motion to Extend Time."); 6:17-18 ("this Court's instructions deferred the cutoff for *all* expert discovery pending Judge Seeborg's ruling.") (emphasis in original); 11:12-13 ("Because this Court deferred the deadline for filing expert reports, preclusion of Lucent's expert testimony is not warranted."). Lucent even went so far as to put one such statement in quotes -- attributing to the Court a statement it did not even come close to making at the January 7, 2005 Case Management Conference. Id. at 1:9-11 ("Lucent understood the Court to mean what it said: 'File your motion immediately, and the Court will allow you to defer the filing of your expert reports until Judge Seeborg makes a decision on the matter.'").

already have and use in discovery, and because Lucent has admitted that its failure to timely provide expert reports had nothing to do with Dolby's discovery, there can be no good cause to extend the time for expert discovery as to the additional documents.

### E. Lucent Conceded That Dolby's Supplemented Interrogatory Responses Are Not The "Be All And End All" Justifying Extending Discovery Cut-off.

At the February 23, 2005 hearing before Magistrate Judge Seeborg on Lucent's Motion to Extend Expert Discovery, Lucent contended that this Court's February 9, 2005 Order required Dolby to produce discovery Lucent needed to prove "the inducement prong of [its] infringement case" in opposing Dolby's pending summary judgment motion. Feb. 23, 2005 Tr. at 5:17 – 6:3 (Joesten Decl., Ex. E). As Magistrate Judge Seeborg pointed out,

> That's a [Rule] 56(f) response possibly. What's that have to do with expert testimony? I mean, *is that piece of information the be-all and end-all for your experts*?
>
> Mr. Kellman: *No. It's not the be-all and end-all.* [I]t will identify for us further what particular code was provided to licensees *above and beyond what we already know from Dolby*."

Id. at 6:6 – 15 (emphasis added). Lucent has therefore conceded that the information the Court ordered Dolby to provide in supplementing its response to Interrogatory No. 6 was not particularly important even as to Lucent's burden of proof *on inducement*, much less infringement. Furthermore, Lucent failed to submit any declaration in response to Dolby's summary judgment motions pursuant to Fed. R. Civ. Pro. 56(f) that would allow the Court to continue the hearing following any additional discovery. By Lucent's own admission, there is nothing justifying further expert discovery in this case. The documents identified in Dolby's Response do not change that concession.

### F. Lucent Cannot Show Good Cause To Reopen Expert Discovery Based On Dolby's Response To Interrogatory Number 6.

There can be no good cause to extend the time for expert discovery as to the additional documents identified in Dolby's Response. Lucent has already acknowledged that its failure to provide timely expert reports had nothing to do with Dolby's discovery responses, and everything to do with Lucent's own choice not to comply with the expert discovery deadlines. Lucent's

1  questioning of Dolby witnesses on the precise documents it now claims were "newly identified"
2  make clear that Lucent could have used that information in expert report(s) had it so desired.
3      Under these facts, there is no good cause to reopen expert discovery. In <u>Symantec</u>
4  <u>Corporation v. McAfee Associates, Inc.</u>, 1998 WL 740807, *1 (N.D. Cal. Aug. 14, 1998), this
5  Court found no good cause existed to reopen discovery based on supposedly "new" evidence of
6  source code discovered by plaintiff Symantec where Symantec not only had the source code in its
7  possession for nine months prior to the close of discovery, but also had deposed McAfee's expert
8  <u>on the very same source code</u> before the close of discovery. <u>Id</u>. at *2. "[G]iven that the
9  [evidence] was produced [nine months prior to the close of discovery], the Court concludes that
10 Symantec could have discovered the information contained thereon through reasonable diligence
11 well before the asserted discovery date . . . ." <u>Id</u>.
12     <u>Symantec</u> is squarely on point. Lucent already had and took discovery on the AC-3
13 development materials produced more than two years ago and identified in Dolby's Response,
14 and there can be no good cause to reopen expert discovery in this case. See <u>id.</u> at *2; <u>see also</u>
15 <u>Reliance Ins. Co. v. Louisiana Land and Exploration Co.</u>, 110 F.3d 253, 258 (5th Cir. 1997)
16 "[d]istrict judges have the power to control their dockets by refusing to give ineffective litigants a
17 second chance to develop their case"); <u>Dag Enterprises Inc. v. Exxon Mobil Corp.</u>, 226 F.R.D 95,
18 96 (D.D.C. 2005) (no good cause to extend discovery for materials available to plaintiff prior to
19 the close of discovery); <u>Harris v. Computer Assoc. Int'l. Inc.</u>, 204 F.R.D. 44, 45 (E.D.N.Y. 2001)
20 ("[d]iscovery should not be extended when a party had an ample opportunity to pursue the
21 evidence during discovery").

22 **III. LUCENT HAS HAD AMPLE OPPORTUNITY FOR DISCOVERY ON DOLBY'S SOURCE CODE, AND THERE IS NO GOOD CAUSE TO REOPEN EXPERT**
23 **DISCOVERY DUE TO ANY "NEWLY-IDENTIFIED" DOCUMENTS.**

24     Dolby produced its source code more than two years ago, and as Lucent's counsel
25 conceded at the April 23, 2003 hearing on Dolby's Motion to Compel Lucent's Infringement
26 Contentions, Lucent <u>"got[] a bunch of electronic documents, lines of source code that could be</u>
27 <u>connected to one product [or] another product."</u> Joesten Decl., Ex. I, at 24: 22-24 (emphasis
28 added). Subsequently, Lucent took more than seven hours of deposition testimony from Dolby's

1   30(b)(6) witness (Steve Vernon) on the AC-3 source code on May 16, 2003.  Lucent's position

2   that it is just now figuring out the significance of the various versions of Dolby's AC-3 source

3   code is incredulous, and if true, is entirely Lucent's own doing.

4       It defies reason to think that the documents identified in response to interrogatories that

5   Lucent did not serve until the last possible date before the close of fact discovery could be

6   "fundamental to Lucent's infringement analysis," as Lucent contends.  Obj. at 3:27.  Magistrate

7   Judge Seeborg noted in his February 25, 2005 Order that it is incredible in a complex patent case

8   that a sophisticated litigant such as Lucent would not have taken all reasonable steps to produce

9   an expert report.  Nevertheless, Lucent did not, and there is no good cause for reopening expert

10  discovery at this late stage of the proceedings where there is nothing new disclosed in Dolby's

11  Response to Lucent's interrogatory.[9]

12  **IV.** <u>**CONCLUSION**</u>

13      Lucent has had ample opportunity to take discovery relating to its infringement

14  contentions.  Lucent has further had ample opportunity to take any discovery it needed with

15  respect to its inducement allegations for use in any expert report it wished to submit.  Dolby's

16  Second Supplemental Response to Lucent's Interrogatory Number 6 does nothing to change this,

17  and identifies nothing new that Lucent did not already know well in advance of the expert

18  discovery deadlines.  None of the documents identified in Dolby's Response is sufficient to

19  justify reopening expert discovery under the requisite "good cause" standard, and Dolby

20  respectfully requests the Court deny any further expert discovery as to the additional documents.

21  DATED:  March 18, 2005        FARELLA BRAUN & MARTEL LLP

22          By:  /s/

23          John L. Cooper
            Attorneys for Plaintiffs

24          DOLBY LABORATORIES, INC. and DOLBY
            LABORATORIES LICENSING CORPORATION

25

---

[9] At a minimum, were Lucent able to overcome the dispositive fact that it has already taken discovery on the relevant documents identified in Dolby's Response (which it cannot), any new expert discovery should be limited solely to the relevant documents related to five licensees:  Broadcom, Compal, EchoStar, Liquid Audio, and Compaq.  Lucent is well-aware that Dolby licensee ASUSTek also holds a license to the Lucent patents-in-suit, and can therefore not provide relevant evidence of proof of any infringement or inducement by Dolby.

DOLBY'S RESP. TO COURT'S ORDER RE
LUCENT'S 72(A) OBJ. TO FEB. 25, 2005 ORDER    - 10 -    14680\777625.1
CASE #C 01-20709 JF (RS)