| | |
|---|---|
| 1 | LAW OFFICES OF ADAM GUTRIDE |
| | ADAM GUTRIDE (181466) |
| 2 | SETH A. SAFIER (197427) |
| | 835 Douglass Street |
| 3 | San Francisco, California 94114 |
| | Telephone: (415) 271-6469 |
| 4 | Facsimile: (928) 438-1285 |
| 5 | MILBERG WEISS BERSHAD |
| | & SCHULMAN LLP |
| 6 | SANFORD P. DUMAIN |
| | MICHAEL R. REESE (206773) |
| 7 | One Pennsylvania Plaza |
| | New York, New York 10119-1065 |
| 8 | Telephone: (212) 594-5300 |
| | Facsimile: (212) 868-1229 |
| 9 | |
| | Attorneys for Plaintiffs |
| 10 | |
| | [Additional Counsel on Signature Page] |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ashley Salisbury, On Behalf of Herself and All Others Similarly Situated And the General Public, <br><br> Plaintiff, <br><br> vs. <br><br> HOTWIRE, INC. and JOHN DOES 1-25, inclusive, <br><br> Defendants. | Case No. C 05 09521 JL <br><br> **PLAINTIFF'S MOTION TO REMAND ACTION TO STATE COURT** <br><br> Date: May 4, 2005 <br> Time: 9:30 a.m. <br> Courtroom F, 15th Floor <br> Judge: Hon. James Larson |

## I. NOTICE OF MOTION FOR REMAND

On May 4, 2005, at 9:30 a.m., in courtroom number F on the 15th floor of the United States District Court for the Northern District of California, in San Francisco, Plaintiff Ashley Salisbury will and hereby does move to remand this action to the Superior Court for the State of California, City of San Francisco, where it was originally filed, because of an absence of federal jurisdiction.

In addition to an order of remand, Plaintiff seeks an order requiring Defendant to pay fees and expenses that Plaintiff incurred as a result of Defendant's removal of this case. This motion is made pursuant to 28 U.S.C. § 1447(c).

## II. STATEMENT OF THE CASE

Defendant Hotwire, Inc., based in San Francisco, is a leading internet-based provider of hotel rooms. Defendant claims to contract with hotels in advance for volume discounts and guaranteed availability of rooms and vacation rentals at wholesale rates, and to then make these accommodations available to its customers at purported discounts. Customers reserve the rooms through Defendant and pay Defendant directly.

Plaintiff Ashley Salisbury, a California resident, booked a room through Defendant. At the time, Defendant charged her, in addition to the room rate, "taxes and fees." The amount of "taxes and fees" were computed as a percentage of the room rate but were greater than the amount that Defendant actually remitted to taxing authorities. The amount also bore no relationship to the service being provided to Plaintiff. At no time did Defendant accurately explain the nature of the "taxes and fees" to Ms. Salisbury or any other customer.

Ms. Salisbury brought this action on February 17, 2005, on her own behalf and on behalf of similarly situated individuals. She made three claims for relief, all under California state law: unfair competition, conversion, and for imposition of a constructive trust.

On March 7, 2005, Defendant filed a notice of removal to federal court. Defendant's sole basis for the removal was the Class Action Fairness Act, 28 U.S. C. §§ 1332(d), 1453, which was signed by the President and enacted on February 18, 2005.

On March 15, 2005, Plaintiff wrote to Defendant demanding that Defendant stipulate to a remand. Plaintiff pointed out that in the Notice of Removal, Defendant had misrepresented the filing

1  date of the underlying complaint as February 18 when in fact it was February 17. Plaintiff also
2  explained, in detail, why the Class Action Fairness Act did not apply to cases pending in state court
3  before February 18. Plaintiff warned that she would be forced to seek fees in connection with a motion
4  to remand, as provided by 28 U.S.C. § 1447(c). Decl. of Adam Gutride In Support Of Motion For
5  Remand ("Gutride Decl.") Ex. A.

6  On March 16, 2005, counsel for Defendant replied to Plaintiff acknowledging its error as to the
7  filing date of the underlying complaint, and wrote a letter to the Court to the same effect. Counsel for
8  Defendant nevertheless refused to stipulate to remand. Gutride Decl. Ex. B.

## III. ARGUMENT

### A. The Class Action Fairness Act Does Not Apply To Cases Pending In State Court Before February 18, 2005.

On February 18, 2005, President Bush signed into law Senate Bill 5, the Class Action Fairness Act ("CAFA"), Pub. L. 109-2. That law for the first time extended federal jurisdiction to class action lawsuits that would previously have been limited to state court: cases without any federal question, in which the defendant resided in the state in which the action was brought, and/or in which the "amount in controversy" between the defendant and any class member was less than $75,000. The Class Action Fairness Act provided that, henceforth, federal courts could take jurisdiction over class actions as long as more than one-third of the members of the proposed class resided in a state different from at least one of the defendants, and as long as the aggregate amount in controversy between any defendant and the entire class exceeded $5,000,000.

The CAFA expressly provided in Section 9, entitled "EFFECTIVE DATE," that "[t]he amendments made by this Act shall apply to any civil action commenced on or after the date of enactment of this Act." Pub. L. 109-2, § 9.

Defendant argues in its notice of removal that the phrase "civil action commenced" in section 9 of the CAFA refers to the date of filing the notice of removal, *i.e.,* the date the action was commenced in federal court. Because it filed its notice of removal on March 7, after the CAFA's enactment on February 18, Defendant contends that this Court has jurisdiction.

Defendant's reading of the effective date provision conflicts not only with the plain language of

the statute, but with its legislative history, principles of federal jurisprudence, and common sense. Plainitiff's "civil action commenced" on the date she filed it in state court: February 17. Because the state court filing occurred before the date of enactment of the CAFA, that law is inapplicable, and federal jurisdiction does not exist.

### 1. The Plain Language Of The Statute Does Not Support Defendant's Reading.

In determining whether it has jurisdiction over this case, the Court must interpret the meaning of the phrase "civil action commenced." To do so, it must first resort to the plain meaning of the statute. *See Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 756, 44 L. Ed. 2d 539, 95 S. Ct. 1917 (1975) (Powell, J., concurring) ("The starting point in every case involving construction of a statute is the language itself."); *see also Botosan v. Paul McNally Realty*, 216 F.3d 827, 831 (9th Cir. 2000) ("Statutory interpretation begins with the plain meaning of the statute's language."). The phrase "civil action commenced" on its face is not limited to the commencement of the "federal" civil action. Rather, it appears broadly to refer to any civil action, whether filed in state or federal court. Such a reading makes sense, because the statute was designed both to empower defendants to remove cases filed in state court and to empower plaintiffs to file class actions in federal court in the first instance. In either instance, an action would be subject to federal jurisdiction only if it was "commenced" on or after February 18.

Plaintiff is unaware of any "plain language" definition of the phrase "civil action" that is limited to federal civil actions. For example, Ballentine's Law Dictionary defines "civil action" as "An action brought to enforce a civil right; an ordinary action as distinguished from a criminal action, or a special proceeding." Such a definition would apply to state or federal actions.

### 2. Defendant's Reading of the Phrase "Civil Action Commences" Is Inconsistent With Other Aspects Of The Statutory Scheme.

After reviewing the plain meaning, the Court must next look to the statutory context. *Gorbach v. Reno*, 219 F.3d 1087, 1093 (9th Cir. 2000) ("A particular statutory provision must be read in context with a view to its place in the statutory scheme ...."). The effective date provision in Section 9 is not the only place in the diversity jurisdiction statutes where Congress used the words "civil action" or "commence," and in other places it is clear that the phrase is not limited to federal actions.

For example, in the removal statute itself, Congress used the phrase "civil action" to clearly refer to state court action. That statute provides that "The notice of removal of *a civil action* or proceeding shall be filed within thirty days after the receipt by the defendant …of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based...." 28 U.S.C. § 1446(b) (emphasis added). It is obvious that Congress's use of the phrase "civil action" refers to the state court action, because it is the state court action that is being removed. If "civil action" means only the federal action, the statute makes no sense.

Another sentence of the same statute gives a similar understanding of what Congress means when it refers to an action being "commenced." The removal statute provides that if a case is not subject to federal jurisdiction under the allegations of the initial pleading, it may be removed later, if an amended complaint or other paper establishes a basis for federal jurisdiction. But the statute imposes a limit on such late removals: "a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title [the diversity statute] more than 1 year after commencement of the action." 28 U.S.C. § 1446(b). Again, the phrase "commencement of the action" must refer to commencement of the state court action. If "commencement of the action" refers to the federal action, this sentence would be meaningless: cases would never be barred from removal because the action would "commence" upon removal. *See Provenza v. Yamaha Motor Co.*, 295 F. Supp. 2d 1175, 1178 (D. Nev. 2003) (determining that civil action commenced upon filing in state court for purpose of one-year removal limitation).

The thirty-day limitation on removals of "a civil action" was expressly incorporated into the CAFA. 28 U.S.C. § 1453(b). Although the one-year limitation was not incorporated, *id.,* there is no reason to believe that Congress used the phrase "civil action commenced" in section 9 of the CAFA any differently than it used that phrase in the removal statute itself.: to apply to the filing of state court actions, not just federal court actions.

**3. The Legislative History Of The CAFA Makes Clear That It Was Not Intended To Apply To Claims Pending In State Court At The Time Of Its Enactment**

**(a) Congress Chose Not To Adopt An Explicitly Retroactive Provision In A Competing House Bill.**

The Senate bill that became the CAFA expressly provided that it applied only to actions

- 4 -

commenced "on or after" February 18.  A competing House bill, H.R. 516, however, would additionally have applied to previously pending state court actions, whenever a state court issued a class certification order on or after February 18.[1]  The House Bill was not adopted.

Although the Senate Bill was enacted by both the Senate and the House without amendment, and thus without any need for a conference committee, several Senators and members of Congress spoke about the differences between the two bills and highlighted the issue of retroactivity.  Every Senator and member of Congress who addressed the issue—both Democrats and Republicans, and including one of the Senate bill's key sponsors—stated that the Senate bill would not apply to cases already pending in state court.

Senator Arlen Spector (R-PA) was the most expansive about the differences between the two bills and the lack of retroactivity.  He explained on February 10:

> I think the Senate bill--this may be a little parochial pride--is more in keeping with an equitable handling of class action bills than is the House bill. For example, the House bill would be retroactive and apply to matters now pending in the State courts, which would be extraordinarily disruptive of many State court proceedings.…There is a great deal of wisdom in the Senate on this bipartisan bill which has received considerable support on the Democratic side of the aisle as well as very strong support on the Republican side of the aisle to move through without a conference where we might have had a bill which was a great deal more restrictive of plaintiffs' rights, where we might have had a bill where the House provision calls for retroactive application. That would upset a great many existing lawsuits. All factors considered, we have come to a wise conclusion.

Gutride Decl. Ex. C

Bill co-sponsor Senator Christopher Dodd (D-CT) similarly explained on February 8, "There are other provisions of the bill that are also important….First, it does not apply retroactively, despite those who wanted it to. A case filed before the date of enactment will be unaffected by any provision of this legislation…."  Gutride Decl. Ex. D.

And Senator Edward Kennedy (D-MA) noted on the same day, after discussing a case in his

---

[1] H.R. 516 provided that in addition to applying to civil actions commenced on or after the date of enactment, it also applied to "any civil action commenced before such date of enactment in which a class certification order (as defined in section 1332(d)(1)(C) of title 28, United States Code, as amended by section 4 of this Act) is entered on or after such date of enactment." H.R. 516, §. 7. The House bill gave defendants 30 days after approval of such a class certification order to remove a case. *Id.*

state, "Because this bill is not retroactive, the case [being discussed] will not be affected by this bill, but with the passage of this act, similar *future* cases, properly brought in the courts of the State where the harm occurs, can be removed to the Federal courts." Gutride Decl. Ex. E. (emphasis added).

After the bill passed the Senate, identical comments were made in the House. Representative Mark Udall (D-CO), for example, said, "Unlike earlier versions, S. 5 would not have a retroactive effect, so it would not affect pending cases." Gutride Decl. Ex. F.

Representative Bob Goodlattee (R-VA) added in discussing pending tort cases in his district, "Since the legislation is not retroactive, it would absolutely have no effect on the 75 class actions already filed against Merck in the wake of the Vioxx withdrawal." Gutride Decl. Ex. G.

Not a single Senator or Representative expressed a view that the bill would apply to pending cases, *i.e.*, those that had been filed in any court prior to the February 18 enactment of the CAFA.

### (b) In Signing The Bill, The President Also Implied That The CAFA Was Not Retroactive.

In his remarks upon signing the bill on February 18, President Bush also strongly implied that he did not believe it would apply to cases that already had been filed in state court. He noted, "Trial lawyers have already filed 24 class-actions in Madison County this year….Including 20 in the past week -- after Congress made it clear their chance to exploit the class-action system would *soon be gone. Before today*, trial lawyers were able to drag defendants from all over the country into sympathetic local courts, even if those businesses have done nothing wrong." (emphasis added)

### 4. Defendant's Argument Conflicts With The Presumption Against Retroactivity.

By arguing for application of the CAFA to cases already pending, Defendant argues for a retroactive application of that statute. As the Supreme Court has frequently noted, the "presumption against retroactive legislation is deeply rooted in our jurisprudence." *Hughes Aircraft Co. v. United States ex rel Schumer*, 520 U.S. 939, 946 (1997); *Landgraf v. USI Film Products* 511 U.S. 244, 265 (1993). Defendant will likely argue that the presumption against retroactivity does not apply, because the statutory change is merely "procedural," changing not the substance of the underlying claims but only the identity of the courts in which those claims may be tried. An identical argument, however, was rejected by the Supreme Court in *Hughes.*

In *Hughes*, the Supreme Court applied the presumption against retroactivity to bar a qui tam suit under the False Claims Act, because the statute authorizing private individuals to sue had been enacted after the defendant had committed the underlying False Claims Act violations. The Court rejected the plaintiff's argument that the statutory amendment could be applied retroactively because it was merely "procedural" in authorizing new parties to sue rather than "substantive" in changing the scope of the defendant's liability. The Supreme Court held that when a statute affects "whether [a suit] may be brought at all," it speaks not just to the procedures of a particular court but to the substantive rights of the parties." By "creat[ing] jurisdiction where none previously existed," the statute was "as much subject to [the] presumption against retroactivity as any other." *Id.* at 951.

Here, likewise, the CAFA governs whether a suit may be brought in (or removed to) federal court at all and creates jurisdiction where none previously existed. Thus, it is subject to the presumption against retroactivity. *See also Landgraf*, 511 U.S. at 275 n.29 ("A new rule concerning the filing of complaints would not govern an action in which the complaint had already been properly filed under the old regime"); *Scott v Boos* 215 F.3d 940, 845 (9th Cir. 2000) (amendment of the Private Securities Litigation Reform Act which deprived plaintiffs of right to bring securities fraud claims could not be applied retroactively to preclude plaintiffs' claims); *Matthews v. Kidder*, 161 F.3d 156, 166 (W.D. Pa. 1988) (amendment to RICO statue could not retroactively deprive plaintiffs of right to make claim).

**5.  Defendant's Argument Conflicts With The Principle of Limited Federal Jurisdiction.**

When faced with two possible readings of a jurisdiction statute, federal courts are required to choose the narrower one, *i.e.*, the one that would deny jurisdiction. Defendant's argument therefore flies in the face of a large body of case law that limits exercise of federal jurisdiction and requires narrow construction of congressional statutes that create such jurisdiction. As the Ninth Circuit explained in *Libhart v. Santa Monica Dairy Company*, 592 F.2d 1062 (9th Cir. 1979):

> At the core of the federal judicial system is the principle that the federal courts are courts of limited jurisdiction….The removal jurisdiction of the federal courts is derived entirely from the statutory authorization of Congress. We look to federal law to determine whether the elements of removal jurisdiction have been established under the statutes, keeping in mind that removal statutes are strictly construed against removal.

*Id.* at 1064-65. The Supreme Court has added, "[d]ue regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the (removal) statute has defined." *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-109 (1941).

Because of the principle of limited jurisdiction, in a removal based on diversity of citizenship, Defendant has the burden to prove by the preponderance of the evidence jurisdiction exists. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 403-404 (9th Cir. 1996); 28 U.S.C. §§ 1332, 1441. Where, as here, a plaintiff state only claims arising under state law, there is a strong presumption that federal jurisdiction does not exist. *See Lippitt v. Raymond James Fin. Servs.,* 340 F.3d 1033, 1040 (9th Cir. 2003). Jurisdiction must be rejected if there is any doubt as to the right of removal. *Prize Frize Inc. v. Matrix, Inc.* 167 F. 3d 1261, 1265 (9th Cir. 1999); *Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir. 1992); *Emerich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988).

**6.** **Defendant's Argument Is Undermined By The Cases Upon Which It Relies**

Defendant cites a series of cases to support its argument that the phrase "civil action commenced" should mean the date of filing a notice of removal. These cases all derive from a single opinion: *Lorraine Motors, Inc.. v. Aetna Casualty. & Surety Co.*, 166 F. Supp. 319, 323 (E.D.N.Y. 1958). None of the cases support the result that Defendant advocates.

In *Lorraine Motors* and its progeny, the courts were faced with successive statutory enactments that increased the amount-in-controversy requirement for diversity jurisdiction. In each instance, the increase had been enacted after the plaintiff filed its state court action but before the defendant attempted to remove. While the amount in controversy would have been sufficient to create diversity jurisdiction at the time the state court action was filed, it was insufficient at the time of removal. The laws that increased the amount-in-controversy requirement included effective date provisions which made them apply to "actions commenced after the date of the enactment."

The courts interpreted these provisions to require the defendant to satisfy the higher amount-in-controversy requirement at the time of removal. In doing so, they tried to do two things: to effectuate the legislative intent to narrow the availability of diversity jurisdiction, and to preserve the principles of

- 8 -
PLAINTIFFS' MOTION TO REMAND
C 05 09521 JL

federalism, described above, that limit the role the federal judiciary. As explained in *Lorraine Motors*:

> the dominant note in the successive enactments of Congress relating to diversity jurisdiction is one of jealous restriction, of avoiding offense to state sensitiveness, and of relieving the federal courts of the overwhelming burden of business that intrinsically belongs to the state courts in order to keep them free for their distinctive federal business. Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined. It has thus been held uniformly that the removal statutes are to be strictly construed and that removal should not be granted if there is doubt as to the right of removal in the first instance.

*Id.* at 322 (internal citations and quotation marks omitted).

In other words, *Lorraine Motors* and its progeny interpreted the effective date provisions as they did only because doing so was consistent with both legislative intent and principles of limited federal jurisdiction. Applying this reasoning to the CAFA directly undermines Defendant's argument. The legislative intent behind the CAFA—as demonstrated by Congress' rejection of H.R. 516, numerous floor speeches, and the President's remarks—was not to apply the law to cases already pending in state court. Furthermore, in this instance the principles of federalism and strict construction argue against the law being applied to pending cases, which would expand rather than contract federal jurisdiction. Accordingly, *Lorraine Motors* and its progeny actually support Plaintiff's Motion to Remand.

**B.      This Court Should Award Plaintiffs Costs and Fees.**

Plaintiff is entitled to payment of just costs and any actual expenses, including attorneys' fees, incurred as a result of the removal under 28 U.S.C. § 1447(c). *See Moore v. Permanente Medical Group, Inc.*, 981 F.2d 443, 446 (9th Cir. 1992). The purpose of an award of fees and costs is not to punish the removing party but instead to reimburse the other party for costs incurred as a result of the unnecessary removal and to discourage improper removal. *Id.* at 447. In so doing, the fee shifting provision fulfils the same purpose as the former requirement—now eliminated—that the removing party post a "removal bond." *Dead Kennedys v. Biafra*, 46 F.Supp.2d 1028, 1030 (N.D. Cal. 1999).

Even if the Court finds the removal was "fairly supportable," an award of costs and fees is appropriate when the removal was "wrong as a matter of law." *Balcorta v. Twentieth Century Fox Film Corp.*, 208 F.3d 1102, 1106, n.2 (9th Cir. 2000). Bad faith need not be shown. *Id.* at 1106, n.2; Moore, 981 F.2d at 446.

Here, the removal was wrong as a matter of law.  Indeed, Defendant knew, or should have known, that removal was not supportable, particularly after receiving the letter from Plaintiff. Gutride Decl. Ex. A.  In fact, Defendant's counsel advises its other clients on its own website that "[o]n February 18, 2005, President Bush signed into law the Class Action Fairness Act of 2005, which applies to all class action lawsuits filed on or after that date." Gutride Decl. Ex. H. When confronted with the relevant law, Defendant acknowledged that it had been in error about the filing date but refused to change its actions.  Gutride Decl. Ex. B.  Defendant's insistence on removal seems to be motivated primarily by a desire to delay or obstruct this case.

## IV. CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that the Court (1) remand this case to the Superior Court of the State of California, County of San Francisco; and (2) order Defendant to pay all of Plaintiffs' costs, including attorneys' fees, incurred in the course of filing and arguing this Motion.

DATED:  March 22, 2005         LAW OFFICES OF ADAM GUTRIDE

_____
Adam Gutride, Esq.
835 Douglass Street
San Francisco, California 94114
Telephone:  (415) 271-6469
Facsimile:  (928) 438-1285

MILBERG WEISS BERSHAD
  &amp; SCHULMAN LLP
Jeff S. Westerman, Esq.
Sabrina S. Kim, Esq.
355 South Grand Avenue, Suite 4170
Los Angeles, California 90071
Telephone: (213) 617-1200
Facsimile: (213) 617-1975

-and-

MILBERG WEISS BERSHAD
  &amp; SCHULMAN LLP
Sanford P. Dumain, Esq.
Michael R. Reese, Esq.
One Pennsylvania Plaza
New York, New York 10119-0165
Telephone: (212) 594-5300
Facsimile: (212) 868-1229

***Attorneys for Plaintiffs***