| | |
|---|---|
| 1 | MERRICK SCOTT RAYLE (#139478)<br>LOVELL STEWART HALEBIAN, LLP |
| 2 | 212 Wood Street<br>Pacific Grove, CA 93950 |
| 3 | Telephone: (831) 333-0309<br>Facsimile: (831) 333-0325 |
| 4 | MRayle@lshllp.com |
| 5 | |
| 6 | RICHARD A. SPEIRS<br>PAUL KLEIDMAN |
| 7 | ZWERLING, SCHACHTER & ZWERLING, LLP<br>41 Madison Avenue |
| 8 | New York, NY 10010<br>Telephone: (212) 223-3900 |
| 9 | Facsimile: (212) 371-5969<br>rspeirs@zsz.com |
| 10 | pkleidman@zsz.com |
| 11 | Proposed Co-Lead Counsel |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re SILICON IMAGE, INC.<br>SECURITIES LITIGATION<br><br>This Document Relates To:<br>All Actions | Master File No. C 05-00456 MMC<br><br>CLASS ACTION<br><br>NOTICE OF MOTION AND MOTION FOR APPOINTMENT OF WILLIAM S. HAYMAN AND JOHN HERLIHY AS CO-LEAD PLAINTIFFS AND TO APPROVE THEIR SELECTION OF LEAD COUNSEL<br><br>Date: May 13, 2005<br>Time: 9:00 a.m.<br><br>Hon. Maxine M. Chesney |

NOTICE OF MOTION AND MOTION FOR APPOINTMENT OF WILLIAM S. HAYMAN AND JOHN HERLIHY AS CO-LEAD PLAINTIFFS AND TO APPROVE THEIR SELECTION OF LEAD COUNSEL
Master File No. C 05-00456 MMC

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on Friday, May 13, 2005 at 9:00 a.m., or as soon thereafter as the matter may be heard in the Courtroom of the Honorable Maxine M. Chesney, class members William S. Hayman ("Hayman") and John Herlihy ("Herlihy") (collectively, the "Silicon Image Lead Plaintiff Group" or the "Group") will move this Court for an order: (i) appointing the Group as lead plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); (ii) approving the Group's selection of the law firms of Zwerling, Schachter & Zwerling, LLP ("ZS&Z") and Lovell Stewart Halebian, LLP ("LSH") as co-lead counsel pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v); and (iii) granting such other and further relief as the Court may deem just and proper.

This motion is made on the grounds that the Group is the most adequate plaintiff to represent those who purchased or otherwise acquired Silicon Image, Inc. ("Silicon Image" or the "Company") securities between October 19, 2004 and January 24, 2005 (the "Class Period"). The Group has selected ZS&Z and LSH as co-lead counsel, both firms with substantial experience in prosecuting securities fraud class actions. This motion is based on this Notice of Motion, the supporting Memorandum of Points and Authorities, the Declaration of Richard A. Speirs in Support of Notice of Motion and Motion for Appointment of William S. Hayman and John Herlihy as Co-Lead Plaintiffs and to Approve Their Selection of Lead Counsel ("Speirs Decl."), the pleadings, other files and records in the above-captioned action and such other written or oral argument as may be presented to the Court.

NOTICE OF MOTION AND MOTION FOR APPOINTMENT OF WILLIAM S. HAYMAN AND JOHN HERLIHY AS CO-LEAD PLAINTIFFS AND TO APPROVE THEIR SELECTION OF LEAD COUNSEL
Master File No. C 05-00456 MMC

2

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Presently pending before this Court is a securities class action brought on behalf of investors who purchased or otherwise acquired Silicon Image securities during the Class Period. These actions allege violations of Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder. Defendants are Silicon Image, Steve Tirado, the Company's Chief Executive Officer and President, and Robert Gargus, the Company's Chief Financial Officer and Vice President of Finance and Administration. As explained below, the Group is the most adequate plaintiff to represent the class.

## STATEMENT OF FACTS

Silicon Image is a Delaware corporation that maintains its principal place of business at 1060 East Arques Avenue, Sunnyvale, California. (*See Compl.*[1] ¶ 7.) The Company is a leader in multi-gigabit semiconductor solutions for the secure transmission, storage and display of rich digital media. It designs, develops and markets multi-gigabit semiconductor and system solutions for a variety of communications applications demanding high-bandwidth capability. (*See id.* ¶ 23.)

The claims asserted in the complaint arise out of allegations that the Defendants embarked upon a scheme and course of conduct in which they disseminated materially false and misleading statements and/or concealed material adverse facts about fundamental disputes and distractions at the Company. Among other things, Defendants' actions: (1) deceived the

---

[1] References to the complaint filed in this action, *Curry v. Silicon Image, et al.*, No. 3-05-cv-00456-MMC, shall hereinafter appear as "Compl." or "Complaint."

investing public regarding Silicon Image's business, operations, management and the intrinsic value of its common stock; (2) enabled Silicon Image insiders to sell more than $6,800,000 of their personally-held common stock to the unsuspecting public; and (3) caused Hayman, Herlihy and other class members to purchase Silicon Image securities at artificially inflated prices. (*See id.* ¶ 16.)

In a press release dated October 19, 2004, Silicon Image announced its third quarter 2004 financial results, during which the Company achieved revenues of $47.9 million. (*See id.* ¶ 27.) On November 8, 2004, the Company filed its Form 10Q report with the SEC. The 10Q, signed by Defendant Gargus, included guidance projecting an increase in "storage revenues (including licensing) . . . from the third quarter by $2.0 to $2.5 million in the fourth quarter of 2004." (*See id.* ¶ 29.)

On November 11, 2004, Silicon Image appointed Steven Laub as Chief Executive Officer and President. Fundamental disputes immediately developed between Mr. Laub and others at Silicon Image regarding Mr. Laub's relative role and responsibility. (*See id.* ¶ 31.) However, the Company failed to disclose this material fact to the investing public and, to date, has never clarified the cause(s) of those altercations. (*See id.* ¶¶ 31-32.) Further, after the fundamental disputes commenced, Company insiders who were in an excellent position to know about the disputes and their material adverse effects sold 281,742 shares of Silicon Image stock. (*See id.* ¶ 33.)

On January 25, 2005, Silicon Image began to disclose the consequences of the fundamental disputes. Namely, the Company issued a press release for its fourth quarter 2004 financial results indicating that it "achieved revenue of $46.1 million for the fourth quarter, a

decrease of 4 percent from revenue of $47.9 million in the third quarter of 2004." (*See id.* ¶ 35.) Defendant Gargus also acknowledged that the Company posted a decline in licensing revenue for the quarter. (*See id.* ¶ 36.) That same day, the Company also issued a separate press release announcing the resignation of Steven Laub and the appointment of Steve Tirado as Chief Executive Officer. (*See id.* ¶ 37.) By the end of the trading session on January 25, 2005, Silicon Image stock lost over 13% of its value. (*See id.* ¶ 39.) Further, on January 31, 2005, Silicon Image announced that it had learned on January 25, 2005 that the SEC was investigating the trading of Company securities. (*See id.* ¶ 34.)

## ARGUMENT

### I. OVERVIEW OF APPLICABLE LAW

On December 22, 1995, Congress amended the Exchange Act through the PSLRA. The PSLRA, among other things, sets forth a procedure for providing notice to members of the purported class of the pendency of a class action, the claims asserted, the purported class period and the requirements for selection of lead plaintiff to oversee the class actions. 15 U.S.C. § 78u-4(a)(3). Specifically, the PSLRA provides that:

> Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported class–
>
> (I) of the pendency of the action, the claims asserted therein, and the purported class period; and
>
> (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i). The first notice relating to the pending action against the Defendants was issued on February 1, 2005, informing class members that the class period alleged was from October 19, 2004 to January 24, 2005. (*See* Ex. A, Speirs Decl.)

The PSLRA directs the Court to consider any timely motions (brought within sixty days) by putative class members to serve as lead plaintiff in response to the published notice: (i) no later than ninety days after the date of publication of the notice; or (ii) if more than one action asserting substantially the same claim or claims has been filed and any party has sought to consolidate those actions for pretrial purposes or trial, as soon as practicable after the Court decides the pending motion(s) to consolidate. 15 U.S.C. § 78u-4(a)(3)(B).

The PSLRA also provides a structure for the appointment of lead plaintiff in securities class actions. 15 U.S.C. § 78u-4(a)(1). The PSLRA creates a rebuttable presumption that the "most adequate plaintiff" to serve as lead plaintiff is the person who:

(aa) has either filed the complaint or made a motion in response to [aforementioned] notice . . .;

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

## II. THE GROUP MEETS ALL REQUIREMENTS OF THE PSLRA AND SHOULD BE APPOINTED LEAD PLAINTIFF

### A. The Group's Motion to Serve as Lead Plaintiff is Timely

In compliance with the PSLRA, the earliest notice informing class members of this action's pendency, and of their right to file a motion for appointment as lead plaintiff, was

NOTICE OF MOTION AND MOTION FOR APPOINTMENT OF WILLIAM S. HAYMAN AND JOHN HERLIHY AS CO-LEAD PLAINTIFFS AND TO APPROVE THEIR SELECTION OF LEAD COUNSEL
Master File No. C 05-00456 MMC

6

published on February 1, 2005. 15 U.S.C. § 78u-4(a)(3)(A)(i). Within sixty days after publication of the notice, any person who is a member of the proposed class may move the Court to be appointed lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). The Group's motion to serve as lead plaintiff is filed in a timely fashion. Thus, the initial requirement is satisfied.

### B. *It Is Believed That the Group Has the Largest Financial Interest in the Relief Sought by the Class*

Pursuant to the PSLRA, the next consideration in determining the "most adequate plaintiff" to serve as lead plaintiff is, in the determination of the Court, the plaintiff with the largest financial interest. 15 U.S.C. § 78-4(a)(3)(B)(iii)(I)(bb). It is believed that the Group has the largest financial interest in the relief sought by the class.

Although the PSLRA's amendments to the Exchange Act do not specifically indicate the manner in which the "largest financial interest" should be calculated, the PSLRA provides that the plaintiff's damages in any securities fraud class action may be measured by:

> the difference between the purchase price or sale price paid or received, as appropriate, by the plaintiff for the security and the mean trading price of the security during the period beginning immediately after the dissemination of information correcting the misstatement or omission and ending on the date on which the plaintiff sells or repurchases the security.

15 U.S.C. § 78u-4(e)(2).

Alternatively, where the plaintiff continues to hold the security that is the subject of the action, the PSLRA provides for damages to be measured by:

> the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market.

15 U.S.C. § 78u-4(e)(1).

NOTICE OF MOTION AND MOTION FOR APPOINTMENT OF WILLIAM S. HAYMAN AND JOHN HERLIHY AS CO-LEAD PLAINTIFFS AND TO APPROVE THEIR SELECTION OF LEAD COUNSEL
Master File No. C 05-00456 MMC

7

Hayman has suffered $114,266.26 in losses.[2] (*See* Speirs Decl. ¶ B.) Additionally, Herlihy has suffered $127,632 in losses. (*See* Speirs Decl. ¶ C.) The charts attached as Exhibits B and C to the Speirs Decl. fully set forth facts relevant to determine that the Group is believed to have the largest financial interest in the relief sought by the class.

The PSLRA was intended to encourage investors like Hayman and Herlihy to come forward to serve as lead plaintiff. The lead plaintiff provision in the PSLRA arose out of Congress' concern that some class action securities litigation had become a "lawyer-driven" enterprise, in which law firms directed the litigation with little involvement from the named plaintiffs, who usually owned only a small number of shares, or other class members. Congress sought to "protect investors who join class actions against lawyer-driven lawsuits by giving control of the litigation to lead plaintiffs with substantial holdings of the securities of the issuer." Conference Report on Securities Litigation Reform, H.R. Rep. No. 104-369, 32 (1995).

Thus, by appointing the Group as Lead Plaintiff, the Court would comply with the sound policy instituted by the PSLRA that such class actions be controlled by investors with substantial losses.

### C. *The Group Satisfies the Requirements of Rule 23*

In addition to satisfying the specific requirements set forth above, the proposed lead plaintiff must also satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied:

---

[2] Losses were calculated using a ninety-day PSLRA weighted average price based on the closing price and total trading for each day.

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

For purposes of appointing a lead plaintiff, however, a wide-ranging analysis under Rule 23 is not appropriate. Rather, the Court's should focus on the requirements of typicality and adequacy of the proposed lead plaintiff. *In re Cavanaugh*, 306 F. 3d 726, 730 (9th Cir. 2002). As discussed below, the Group satisfies both the typicality and adequacy requirements of Rule 23(a), thereby supporting its appointment as lead plaintiff.

### 1. The Group's Claims are Typical of the Claims of the Class

"The typicality requirement of Rule 23(a)(3) is satisfied when the named plaintiffs have (1) suffered the same injuries as the absent class members, (2) as a result of the same course of conduct, and (3) their claims are based on the same legal issues." *Armour v. Network Associated*, 171 F. Supp. 2d 1044, 1052 (N.D. Cal. 2001).

The Group's claims are typical of those of the class. Its claims arise out of allegations that the Defendants embarked upon a scheme and course of conduct in which they made misleading statements to inflate artificially the price of Silicon Image's common stock, in violation of federal securities laws. Hayman and Herlihy, like all class members, relied upon the integrity of the market in purchasing Silicon Image common stock and suffered damages when the truth about the Company's operating results and financial condition was revealed. Thus, the Group satisfies the typicality requirement.

NOTICE OF MOTION AND MOTION FOR APPOINTMENT OF WILLIAM S. HAYMAN AND JOHN HERLIHY AS CO-LEAD PLAINTIFFS AND TO APPROVE THEIR SELECTION OF LEAD COUNSEL
Master File No. C 05-00456 MMC

9

### 2. The Group Will Fairly and Adequately Represent the Interests of the Class

The PSLRA directs the Court, in evaluating the adequacy of the proposed lead plaintiff, to limit its inquiry to the existence of any conflicts between the interests of the proposed lead plaintiff and the members of the class. The primary elements of adequate representation are: (i) the representative must share common interests with the unnamed members of the class; and (ii) it must appear that the representative will vigorously prosecute the interests of the class through qualified counsel. *See Armour v. Network Assocs., Inc.*, 171 F. Supp. 2d at 1052 (*citing In re Computer Memories Sec. Litig.*, 111 F.R.D. 675, 682 (N.D. Cal. 1986)).

Here, the Group's interests are clearly aligned with those of the other class members. As detailed above, the Group's claims share common questions of law and fact with the class, and its claims are typical of the other class members. Further, by virtue of its financial interests and choice of lead counsel, it is clear that the Group will vigorously prosecute the interests of the class.

### D.  *The Court Should Approve the Group's Choice of Lead Counsel*

Pursuant to the PSLRA, the lead plaintiff is permitted, subject to the Court's approval, to select and retain counsel to represent the class. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Group has selected and retained ZS&Z and LSH to represent it and the putative class as co-lead counsel. As fully set forth in the Speirs Decl., proposed co-lead counsel have extensive experience in the area of securities litigation and other complex litigation, and have prosecuted many securities fraud class actions. In that regard, ZS&Z and LSH have been responsible for significantly successful results on behalf of injured investors in numerous securities class action lawsuits, as

NOTICE OF MOTION AND MOTION FOR APPOINTMENT OF WILLIAM S. HAYMAN AND JOHN HERLIHY AS CO-LEAD PLAINTIFFS AND TO APPROVE THEIR SELECTION OF LEAD COUNSEL
Master File No. C 05-00456 MMC

10

well as legal decisions that enable litigation such as this to be successfully prosecuted. (See Speirs Decl., Ex. D, E.)

## III. CONCLUSION

For the foregoing reasons, the Group respectfully requests that the Court: (i) grant its motion to be appointed as lead plaintiff; (ii) approve its choice of ZS&Z and LSH as co-lead counsel for the putative class; and (iii) grant such other and further relief as the Court may deem just and proper.

DATED: April 4, 2005

MERRICK SCOTT RAYLE (#139478)
LOVELL STEWART HALEBIAN, LLP
212 Wood Street
Pacific Grove, CA 93950
Telephone: (831) 333-0309
Facsimile: (831) 333-0325
MRayle@lshllp.com

CHRISTOPHER LOVELL
LOVELL STEWART HALEBIAN, LLP
500 Fifth Avenue
New York, NY 10110
Telephone: (212) 608-1900
Facsimile: (212) 719-4677
CLovell@lshllp.com

RICHARD A. SPEIRS
PAUL KLEIDMAN
ZWERLING, SCHACHTER &
ZWERLING, LLP
41 Madison Avenue
New York, NY 10010
Telephone: (212) 223-3900
Facsimile: (212) 371-5969
rspeirs@zsz.com
pkleidman@zsz.com

Proposed Co-Lead Counsel

NOTICE OF MOTION AND MOTION FOR APPOINTMENT OF WILLIAM S. HAYMAN AND JOHN HERLIHY AS CO-LEAD PLAINTIFFS AND TO APPROVE THEIR SELECTION OF LEAD COUNSEL
Master File No. C 05-00456 MMC

11

1
2
3
4
5

ROBERT C. SCHUBERT S.B.N. 62684
JUDEN JUSTICE REED S.B.N. 153748
SCHUBERT & REED LLP
Two Embarcadero Center, Suite 1660
San Francisco, CA  94111
Telephone:  (415) 788-4220
Facsimile:  (415) 788-0161
rschubert@schubert-reed.com
jreed@schubert-reed.com

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

NOTICE OF MOTION AND MOTION FOR APPOINTMENT OF WILLIAM S. HAYMAN AND JOHN HERLIHY AS CO-LEAD PLAINTIFFS AND TO APPROVE THEIR SELECTION OF LEAD COUNSEL
Master File No. C 05-00456 MMC