QUINN EMANUEL URQUHART
OLIVER & HEDGES, LLP
David Eiseman (Bar No. 114758)
Albert P. Bedecarré (Bar No. 148178)
Aaron N. Monick (Bar No. 233380)
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700
Email: davideiseman@quinnemanuel.com
albedecarre@quinnemanuel.com
aaronmonick@quinnemanuel.com

Attorneys for Plaintiff
LifeScan, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| LIFESCAN, INC.,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN HEALTHCARE, INC., PAYLESS WHOLESALE INC., and DOES 3 through 10, inclusive,<br><br>Defendants. | CASE NO. C 05-2016 JCS<br><br>**FIRST AMENDED COMPLAINT FOR LANHAM ACT VIOLATIONS, CALIFORNIA BUSINESS AND PROFESSIONS CODE VIOLATIONS, TRADE LIBEL, TRADE DEFAMATION, AND INTENTIONAL INTERFERENCE**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff LifeScan, Inc. ("LifeScan") complains in this action against Defendants American HealthCare, Inc., Payless Wholesale Inc., and Does 3 through 10, inclusive (collectively, "Defendants"), as follows:

**INTRODUCTION**

1. LifeScan is a leading producer of blood glucose monitoring systems, consisting of blood glucose meters and test strips, used by consumers and healthcare professionals in the management of diabetes. Diabetes, a disease resulting in the inability of the body to regulate the level of sugar (glucose) in the blood, affects over 10 million people in the United States and is

the third leading cause of death in this country. Even when diabetes does not kill, it can produce serious complications and permanent disabilities.

2. Despite advances in medical technology, there is still no cure for diabetes. Most persons with diabetes endeavor to control their blood glucose levels within normal ranges by diet and/or medication. Self-monitoring of blood glucose levels has become an integral part of the management program for persons with diabetes, particularly those individuals who use insulin. As a result, many people with diabetes rely heavily on blood glucose monitoring in order to manage their disease by appropriately adjusting their food and medicine intake.

3. LifeScan's blood glucose monitoring systems of the type involved in this action include hand-held meters and specially designed test strips to which blood is applied. The test strips contain chemicals that react with glucose in the blood in a manner that allows the meter to calculate and present a blood glucose reading to the user.

4. Lifescan's blood glucose monitoring systems are used by more than three million people every day. Given that consumers and health care practitioners rely on LifeScan blood glucose monitoring systems to help manage this serious disease, it is very important that a reliable supply of high-quality, genuine LifeScan test strips is available on the market. If LifeScan customers and prospective customers were made to believe that LifeScan could not supply its products to them, LifeScan's business would be harmed irreparably.

5. In or around September and October 2004, Defendants generated fraudulent letters – on counterfeit LifeScan letterhead and over the forged signature of a LifeScan officer – that purported to provide "urgent" information regarding alleged "shortages" in the supply of certain LifeScan test strips and alleged sales of "counterfeit" LifeScan test strips used in LifeScan blood glucose monitoring systems. Defendants distributed these letters to pharmacists and other purchasers and potential purchasers of LifeScan products. Material statements made in these letters were false at the time they were distributed, and were directed to harm LifeScan's reputation and goodwill.

6. By generating and distributing fraudulent letters concerning LifeScan products, Defendants have violated Section 43(a) of the Lanham Act and Section 17200 of the California

Business and Professions Code and are liable for the torts of trade libel, trade defamation, and intentional interference with contractual relations. Defendants' wrongful conduct has caused irreparable harm to LifeScan. Therefore, LifeScan brings this action against Defendants to seek the full measure of damages, injunctive relief, and other remedies permitted by law.

## THE PARTIES

7. LifeScan is a corporation in good standing incorporated under the laws of the State of California with its principal place of business in Milpitas, California. LifeScan is qualified and duly authorized to do business in the State of California.

8. American HealthCare, Inc., previously sued as Defendant Doe 1, is a corporation with its principal place of business in New York, New York.

9. Payless Wholesale Inc., previously sued as Defendant Doe 2, is a corporation incorporated under the laws of the State of New York with its principal place of business in Long Island City, New York.

10. Defendants Does 3-10, whose precise identities are currently unknown to LifeScan despite LifeScan's good faith attempts to ascertain their identities, are reasonably believed to be real persons or entities that can be sued in this Court. LifeScan is informed and believes and on that basis alleges that Defendants Does 3-10 have participated in, contributed to, or are otherwise legally responsible for the acts alleged in this First Amended Complaint. LifeScan will promptly seek leave to amend this First Amended Complaint when the names and capacities of Defendants Does 3-10 are ascertained through discovery.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over LifeScan's claim for violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), pursuant to 28 U.S.C. §§ 1331 and 1338 and 15 U.S.C. § 1121. This Court has supplemental jurisdiction over LifeScan's state law claims pursuant to 28 U.S.C. § 1367.

12. This Court has personal jurisdiction over Defendants by virtue of Defendants' orchestration and implementation of the acts alleged in this Complaint. Moreover, LifeScan is

informed and believes and on that basis alleges that Defendants reside in and/or conduct business in this judicial district.

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## GENERAL ALLEGATIONS

14. Founded in 1981, LifeScan is in the business of developing, manufacturing, marketing, and selling blood glucose monitoring systems. LifeScan was acquired by Johnson & Johnson in 1986 and has since been a wholly owned subsidiary of Johnson & Johnson. Headquartered in Milpitas, California, LifeScan has manufacturing facilities in Milpitas, Puerto Rico, and Scotland, and employs more than 2500 employees worldwide. LifeScan sells its blood glucose monitoring products to licensed distributors, hospitals, and pharmacies as well as directly to consumers.

15. In October 2004, LifeScan came into possession of two fraudulent letters created and distributed by Defendants. Each of the letters contains an unauthorized reproduction of the LifeScan logo positioned to make it appear as though the letters were printed on official LifeScan letterhead. Each of the letters also contains an unauthorized copy of the signature of LifeScan's Vice President of Customer Service Karen Sauer.

16. One of the letters is dated September 30, 2004 and is titled "Urgent: One Touch Basic Strips Shortage." OneTouch® is a registered trademark of LifeScan. OneTouch® Basic® is a LifeScan blood glucose meter, and LifeScan also manufactures and markets test strips for the OneTouch® Basic® meter. The September 30 letter states as follows:

> "Dear Pharmacist,
>
> Due to some unavoidable circumstances we will have [. . .] production delays. This may cause shortages for some regions of the country starting in about 2-3 weeks.
>
> We regret the inconvenience [. . .] it may cause. We assure you a steady supply in about 8 weeks time. We appreciate your cooperation."

A true and correct copy of the September 30 letter is attached to this First Amended Complaint as Exhibit 1 and is incorporated herein by this reference.

17. Material statements made in the September 30 letter are false. For example, LifeScan experienced no "production delays" or "shortages" relating to its OneTouch Basic test strips in or around September or October of 2004.

18. LifeScan's Vice President of Customer Service, Karen Sauer, did not sign or authorize her signature to appear on the September 30 letter. In addition, LifeScan did not authorize any LifeScan employee to generate or distribute the September 30 letter.

19. LifeScan is informed and believes and on that basis alleges that numerous pharmacies and other licensed distributors of LifeScan products received the September 30 letter.

20. A second letter is dated October 18, 2004 and is titled "Urgent: Counterfeit One Touch Ultra 50 Test Strips Update." OneTouch® Ultra® is another LifeScan blood glucose monitoring product. The October 18 letter states as follows:

> "Dear valued customer,
>
> We have identified two suppliers, H & H Wholesale Services, Inc. of Troy, Michigan and Adelphia Diabetic Supply, Inc. of Brooklyn, New York, who are advertising, promoting, and distributing counterfeit packaging of OneTouch® Ultra® 50 Test Strips. Lifescan has initiated legal proceedings against H & H Wholesale Services, Inc. and Adelphia Diabetic Supply, Inc. to stop these illegal activities.
>
> Additionally, we are looking into [the] possibility of sales of counterfeit OneTouch® Basic®, OneTouch® SureStep®, and OneTouch® FastTake® strips to health care providers by these two entities."

A true and correct copy of the October 18 letter is attached to this First Amended Complaint as Exhibit 2 and is incorporated herein by this reference.

21. Material statements made in the October 18 letter are false. For example, LifeScan did not "initiate[] legal proceedings against H & H Wholesale Services, Inc. and Adelphia Diabetic Supply, Inc." in or around September or October of 2004.

22. LifeScan's Vice President of Customer Service, Karen Sauer, did not sign or authorize her signature to appear on the October 18 letter. In addition, LifeScan did not authorize any LifeScan employee to generate or distribute the October 18 letter.

23. LifeScan is informed and believes and on that basis alleges that numerous pharmacies and other licensed distributors of LifeScan products received the October 18 letter.

24. Immediately upon coming into possession of the September 30 and October 18 letters, LifeScan took steps to inform its customers of the falsity of the statements contained in the letters. For example, on October 29, 2004, Peter Luther, LifeScan's President, authored a letter informing distributors and consumers of LifeScan products that "someone not affiliated with LifeScan has been sending unauthorized communications to pharmacists making false statements about our products."

25. Nonetheless, confusion among distributors and consumers regarding the products named in the September 30 and October 18 letters persisted. LifeScan sales and customer service representatives fielded inquiries from and addressed the concerns of LifeScan customers regarding the contents of the September 30 and October 18 letters through at least the end of 2004.

26. LifeScan is informed and believes and on that basis alleges that the confusion created by the September 30 and October 18 letters has caused distributors and customers of LifeScan products to question the authenticity of bona fide product-related communications sent to them by LifeScan since October 2004. As a result, LifeScan is informed and believes and on that basis alleges that those distributors and customers have lost confidence in the ability of LifeScan's customer service group to provide them with adequate support.

## FIRST CLAIM FOR RELIEF

### (Violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a))

27. LifeScan realleges and incorporates by reference paragraphs 1 through 26, inclusive, as though fully set forth in this paragraph.

28. LifeScan is the owner of the following registered marks: OneTouch® Basic®, OneTouch® SureStep®, OneTouch® Fast*Take*®, and OneTouch® Ultra®.

29. Defendants made false representations of fact regarding LifeScan's OneTouch® Basic® products in the September 30 letter, including but not limited to statements warning pharmacists of an imminent "One Touch Basic Strips Shortage."

30. Defendants also made false representations of fact regarding LifeScan's OneTouch® Basic®, OneTouch® SureStep®, OneTouch® Fast*Take*®, and OneTouch® Ultra®

products in the October 18 letter, including but not limited to statements warning customers about "Counterfeit One Touch Ultra 50 Test Strips."

31. By generating and distributing the September 30 and October 18 letters, Defendants misrepresented various characteristics of LifeScan's OneTouch® Basic®, OneTouch® SureStep®, OneTouch® Fast*Take*®, and OneTouch® Ultra® products, including but not limited to the available supply of those products and the existence and source of counterfeit products.

32. The false statements of fact contained in the September 30 and October 18 letters generated and distributed by Defendants caused confusion, mistake, or deception regarding the source, origin, sponsorship, or approval of the LifeScan products among purchasers and potential purchasers of those products.

33. In addition, Defendants' unauthorized reproduction of the LifeScan logo and of a LifeScan officer's signature in connection with the generation and distribution of the September 30 and October 18 letters caused confusion, mistake, or deception regarding the source, origin, sponsorship, or approval of the false representations contained in those letters.

34. As a result of Defendants' wrongful actions, LifeScan has been damaged in its business and property in an amount to be determined at trial, which amount may be trebled in accordance with 15 U.S.C. § 1117.

35. As a result of Defendants' wrongful actions, LifeScan has suffered and will continue to suffer irreparable harm, including but not limited to harm to its business reputation and goodwill. LifeScan is informed and believes and on that basis alleges that Defendants threaten to continue their wrongful actions, and unless restrained and enjoined, will do so. LifeScan's remedy at law is not by itself adequate to compensate LifeScan for the harm inflicted and threatened by Defendants.

## SECOND CLAIM FOR RELIEF

**(Violation of Section 17200 of the California Business and Professions Code)**

36. LifeScan realleges and incorporates by reference paragraphs 1 through 35, inclusive, as though fully set forth in this paragraph.

37. Defendants made false representations of fact regarding LifeScan's OneTouch® Basic® products in the September 30 letter, including but not limited to statements warning pharmacists of an imminent "One Touch Basic Strips Shortage."

38. Defendants also made false representations of fact regarding LifeScan's OneTouch® Basic®, OneTouch® SureStep®, OneTouch® Fast*Take*®, and OneTouch® Ultra® products in the October 18 letter, including but not limited to statements warning customers about "Counterfeit One Touch Ultra 50 Test Strips."

39. By generating and distributing the September 30 and October 18 letters, Defendants misrepresented various characteristics of LifeScan's OneTouch® Basic®, OneTouch® SureStep®, OneTouch® Fast*Take*®, and OneTouch® Ultra® products, including but not limited to the available supply of those products and the existence and source of counterfeit products.

40. Defendants' wrongful actions constitute unlawful, unfair, and/or fraudulent business practices in violation of Section 17200 of the California Business and Professions Code. LifeScan has suffered injury in fact and has lost money or property as a result of Defendants' wrongful actions.

41. As a result of Defendants' wrongful actions, Defendants have been unjustly enriched at LifeScan's expense. Therefore, LifeScan is entitled to obtain an accounting and restitution from Defendants in an amount to be determined at trial.

42. As a result of Defendants' wrongful actions, LifeScan has suffered and will continue to suffer irreparable harm, including but not limited to harm to its business reputation and goodwill. LifeScan is informed and believes and on that basis alleges that Defendants threaten to continue their wrongful actions, and unless restrained and enjoined, will do so. LifeScan's remedy at law is not by itself adequate to compensate LifeScan for the harm inflicted and threatened by Defendants.

## THIRD CLAIM FOR RELIEF

### (Trade Libel)

43. LifeScan realleges and incorporates by reference paragraphs 1 through 42, inclusive, as though fully set forth in this paragraph.

44. By generating and distributing the September 30 and October 18 letters, Defendants intentionally made and published false statements of fact that called into question the nature, quality, and supply of LifeScan's OneTouch® Basic®, OneTouch® SureStep®, OneTouch® Fast*Take*®, and OneTouch® Ultra® products.

45. LifeScan is informed and believes and on that basis alleges that Defendants' actions induced pharmacies and other licensed distributors to temporarily halt the sale of certain LifeScan products.

46. As a result of Defendants' wrongful actions, LifeScan has suffered pecuniary damages in an amount to be determined at trial.

47. In engaging in the wrongful conduct described above, Defendants acted with malice, fraud and oppression, and in conscious disregard of LifeScan's rights. Accordingly, LifeScan is entitled to recover exemplary damages in an amount to be determined at trial.

48. As a result of Defendants' wrongful actions, LifeScan has suffered and will continue to suffer irreparable harm, including but not limited to harm to its business reputation and goodwill. LifeScan is informed and believes and on that basis alleges that Defendants threaten to continue their wrongful actions, and unless restrained and enjoined, will do so. LifeScan's remedy at law is not by itself adequate to compensate LifeScan for the harm inflicted and threatened by Defendants.

## FOURTH CLAIM FOR RELIEF

### (Trade Defamation)

49. LifeScan realleges and incorporates by reference paragraphs 1 through 48, inclusive, as though fully set forth in this paragraph.

50. By generating and distributing the September 30 and October 18 letters, Defendants intentionally made and published false statements of fact that called into question the

nature, quality, and supply of LifeScan's OneTouch® Basic®, OneTouch® SureStep®, OneTouch® Fast*Take*®, and OneTouch® Ultra® products. Those false statements of fact were previously unpublished.

51. As a result of Defendants' wrongful actions, LifeScan has suffered pecuniary damages in an amount to be determined at trial. LifeScan has also suffered harm to its business reputation and goodwill.

52. In engaging in the wrongful conduct described above, Defendants acted with malice, fraud and oppression, and in conscious disregard of LifeScan's rights. Accordingly, LifeScan is entitled to recover exemplary damages in an amount to be determined at trial.

53. As a result of Defendants' wrongful actions, LifeScan has suffered and will continue to suffer irreparable harm, including but not limited to harm to its business reputation and goodwill. LifeScan is informed and believes and on that basis alleges that Defendants threaten to continue their wrongful actions, and unless restrained and enjoined, will do so. LifeScan's remedy at law is not by itself adequate to compensate LifeScan for the harm inflicted and threatened by Defendants.

## FIFTH CLAIM FOR RELIEF

### (Intentional Interference with Contractual Relations)

54. LifeScan realleges and incorporates by reference paragraphs 1 through 53, inclusive, as though fully set forth in this paragraph.

55. Prior to the distribution of the September 30 and October 18 letters, LifeScan had valid and existing contracts with pharmacies and other licensed suppliers of its products.

56. LifeScan is informed and believes and on that basis alleges that Defendants knew that LifeScan had entered into such contracts.

57. LifeScan is informed and believes and on that basis alleges that Defendants knew that the September 30 and October 18 letters would disrupt LifeScan's contractual relationships.

58. Defendants have caused actual disruption to the contractual relationships between LifeScan and its customers.

59. As a result of Defendants' wrongful actions, LifeScan has suffered and continues to suffer damages in an amount to be determined at trial.

60. In engaging in the wrongful conduct described above, Defendants acted with malice, fraud and oppression, and in conscious disregard of LifeScan's rights. Accordingly, LifeScan is entitled to recover exemplary damages in an amount to be determined at trial.

61. As a result of Defendants' wrongful actions, LifeScan has suffered and will continue to suffer irreparable harm, including but not limited to harm to its business reputation and goodwill. LifeScan is informed and believes and on that basis alleges that Defendants threaten to continue their wrongful actions, and unless restrained and enjoined, will do so. LifeScan's remedy at law is not by itself adequate to compensate LifeScan for the harm inflicted and threatened by Defendants.

## **PRAYER FOR RELIEF**

WHEREFORE, LifeScan prays for judgment in its favor and against Defendants as follows:

A. For treble damages in an amount to be determined at trial on the First Claim for Relief;

B. For an accounting and restitution in an amount to be determined at trial on the Second Claim for Relief;

C. For compensatory damages in an amount to be determined at trial on the Third, Fourth, and Fifth Claims for Relief;

D. For exemplary damages in an amount to be determined at trial on the Third, Fourth, and Fifth Claims for Relief;

E. For preliminary and permanent injunctive relief on the First, Second, Third, Fourth, and Fifth Claims for Relief;

F. For costs and attorneys' fees incurred in this action, in accordance with 15 U.S.C. § 1117; and

G. For such other and further relief as the Court deems just and proper.

DATED: September 6, 2005

QUINN EMANUEL URQUHART
OLIVER & HEDGES, LLP

By *[signature: David Eiseman]*
David Eiseman
Attorneys for Plaintiff
LifeScan, Inc.

## DEMAND FOR JURY TRIAL

In accordance with Federal Rule of Civil Procedure 38(b), Plaintiff LifeScan, Inc. demands a trial by jury on all issues triable by a jury.

DATED: September 6, 2005

QUINN EMANUEL URQUHART
OLIVER & HEDGES, LLP

By *[signature: David Eiseman]*
David Eiseman
Attorneys for Plaintiff
LifeScan, Inc.

# EXHIBIT 1



# Urgent: One Touch Basic Strips Shortage

September 30, 2004

Dear Pharmacist,

Due to some unavoidable circumstances we will have some production delays. This may cause shortages in some regions of the country starting in about 2-3 weeks.

We regret the inconvenience it may cause. We assure you a steady supply in about 8 weeks time. We appreciate your cooperation.

Sincerely,

Karen Isaac
Vice President, Customer Service / Global Technical Services
LifeScan, Inc.

# EXHIBIT 2



# Urgent: Counterfeit One Touch Ultra 50 Test Strips Update

October 18, 2004

Dear valued customer,

We have identified two suppliers, H & H Wholesale Services, Inc. of Troy, Michigan and Adelphia Diabetic Supply, Inc. of Brooklyn, New York, who are advertising, promoting, and distributing counterfeit packaging of **OneTouch® Ultra® 50 Test Strips**. Lifescan has initiated legal proceedings against H & H Wholesale Services, Inc. and Adelphia Diabetic Supply, Inc. to stop these illegal activities.

Additionally, we are looking into possibility of sales of counterfeit **OneTouch® Basic®**, **OneTouch® SureStep®**, and **OneTouch® FastTake®** strips to health care providers by these two entities.

Please be aware of this situation and contact our Lifescan Customer Care Service Center at 1-800-227-8862 if you encounter these unauthorized products at any time. As always we appreciate your business and continued support of our One Touch Brand products.

Sincerely,

Karen Sauer

Vice President, Customer Service / Global Technical Services

LifeScan, Inc.