BINGHAM MCCUTCHEN LLP
BRIAN C. ROCCA (SBN 221576)
Three Embarcadero Center
San Francisco, CA 94111-4067
Telephone: (415) 393-2000
Facsimile: (415) 393-2286

BINGHAM MCCUTCHEN LLP
GARY M. HNATH (*Pro Hac Vice*)
FEI-FEI CHAO, Ph.D. (*Pro Hac Vice*)
1120 20th Street NW, Suite 800
Washington, DC 20036-3406
Telephone: (202) 778-6150
Facsimile: (202) 778-6155

Attorneys for Plaintiff
BenQ America Corp.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| BENQ AMERICA CORP., a California corporation,<br><br>　　　　　Plaintiff,<br>　　v.<br><br>FORWARD ELECTRONICS CO., LTD., a foreign corporation,<br><br>　　　　　Defendant. | No. 3:05-cv-02409-PJH<br><br>**RESPONSE BY PLAINTIFF TO DEFENDANT'S EVIDENTIARY OBJECTIONS** |

On November 21, 2005, Defendant Forward Electronics Co., Ltd. ("Forward") filed objections to the Declarations of Michael Goan and Grace Liaw (hereinafter the "Objections").[1] Plaintiff BenQ America Corp. submits the following brief in response to the Objections:

## I. GOAN DECLARATION

According to Forward, "Mr. Goan's statements in his declaration are based on hearsay, lack foundation, and are irrelevant." Objections at 1. The Goan Declaration states in relevant part as follows:

> 1. ….I am personally familiar with the facts stated in this declaration and am competent to testify to them.
>
> 2. I am personally familiar with the television products manufactured and assembled by BenQ Corporation for the purpose of selling such products in the United States of America, including California.
>
> 3. BenQ Corporation works with vendors, including Forward Electronics Co., Ltd., to ensure that the components it incorporates into products are compatible with the product specifications of the geographic markets for which the products are designed.
>
> 4. I am personally familiar with the tuner module boards purchased by BenQ Corporation from Forward Electronic Co., Ltd., which were incorporated into products for sale in the United States by BenQ America. The tuner module board from Forward includes a tuner can which is specifically designed for the U.S. market based on the TV color code format and other U.S. regulatory requirements. It is common knowledge in the industry that specific requirements apply to tuners sold for the U.S. market.

These statements, which must be accepted as true for purposes of this motion, refute Forward's suggestion that it blindly and arbitrarily injected its products into the stream of commerce. On the contrary, Forward *specifically designed* its products to comply with the product specifications of the United States market. Knowing that such facts would defeat its

---

[1] BenQ America Corp. filed the Goan and Liaw Declarations on November 9, 2005, in support of its brief in opposition to Forward's motion to dismiss.

motion, or at the very least raise a factual dispute that cannot be resolved under Rule 12, Forward asks the Court to disregard the declaration because Mr. Goan's knowledge is purportedly based on "extraneous information, which is inadmissible hearsay." Objections at 1. That argument is contradicted by the face of the declaration (which must be accepted as true) and unsupported by any authority.[2]

Mr. Goan is "*personally familiar*" with the televisions manufactured by BenQ Corp. for the United States market, Goan Decl. at ¶ 2, and is "*personally familiar*" with the tuners purchased from Forward for use in those televisions. Goan Decl. at ¶ 4. As Mr. Goan states (again, based on his *personal knowledge*), BenQ Corp. works closely with vendors, including Forward, to ensure that the components incorporated into BenQ Corp. televisions are compatible with the product specifications of the geographic markets for which the products are designed. Goan Decl. at ¶ 3. BenQ Corp. simply would not have purchased the tuners from Forward unless those tuners were designed for, and compatible with, the United States market. Goan Decl. ¶¶ 2-4. Notably, Forward does not offer any evidence to contradict the substance of these statements. Forward only asks the Court to disregard them on account of its conclusory and unsupported assertion that Mr. Goan has no knowledge about what he declares to have knowledge about. At this stage, BenQ America need only "demonstrate facts that *if true* would support jurisdiction over the defendant." *CFA Northern Cal., Inc. v. CRT Partners LLP*, 378 F. Supp. 2d 1177, 1182 (N.D. Cal. 2005) (emphasis added). That Forward disputes the accuracy of Mr. Goan's statements is of no consequence at this stage of the case.

Forward also argues that the Goan Declaration is "irrelevant" based on a selective reading of *Asahi Metal Indus. v. Superior Court of California*, 480 U.S. 102 (1987). In *Asahi*,

---

[2] Forward cites a single case from the California Court of Appeal in support of its argument, *Floveyor Int'l Ltd. v. Superior Court*, 59 Cal. App. 4th 789 (Cal. Ct. App. 1997), which is neither controlling nor persuasive authority.

1  eight justices agreed that an exercise of personal jurisdiction over the defendant would be
2  unreasonable.  But the Court divided into two plurality opinions – one by Justice O'Connor, the
3  other by Justice Brennan – regarding the proper scope of the "stream of commerce" theory.
4  Justice O'Connor, joined by Justices Rehnquist, Powell and Scalia, concluded that simply
5  placing a product into the stream of commerce did not constitute purposeful conduct toward the
6  forum state.  *Id*. at 112.  Rather, Justice O'Connor suggested that some further conduct by the
7  defendant was required to demonstrate the defendant intended to serve the forum's market.  *Id*.
8  Justice Brennan, on the other hand, joined by Justices White, Marshall and Blackmun, agreed
9  with the Court's previous holding in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286
10 (1980), which held that awareness that a product will be sold or used in the forum is sufficient to
11 establish jurisdiction.  *Asahi*, 480 U.S. at 117.
12          Thus, the question regarding the proper scope of the stream of commerce theory is
13 far from settled (notwithstanding Forward's reliance on Justice O'Connor's concurring opinion
14 in *Asahi*).  Simply put, *World-Wide Volkswagen* has never been overruled, and is still controlling
15 law.  As set forth in BenQ America's opposition brief, and ignored by Forward in reply, the
16 Northern District of California recently applied the *World-Wide Volkswagen* articulation of the
17 stream of commerce theory.  *Telemac Corp. v. Phonetec LP*, No. C 04-1486, 2005 WL 701605,
18 *4 (N.D. Cal. Mar. 25, 2005) (Wilken, J.).  In light of the Goan Declaration, and the
19 uncontroverted allegation in the Complaint that Forward knew BenQ America, a *California*
20 corporation, was a third party beneficiary of the tuner purchases, the Court should not dismiss
21 the case on the scant record before it.
22          Finally, Forward suggests in the alternative that its tuners must be specifically
23 designed for *California* consumers to subject itself to jurisdiction in California.  First, that
24 ignores the undisputed allegations in the Complaint that Forward knew BenQ America, a
25
26

California corporation, would sell the televisions at issue in California.[3] Second, Forward submits no evidence that there exists a separate "California" market for televisions (or tuners). Forward essentially asks the Court to immunize it from jurisdiction simply because it apparently does not sell a "California tuner." Yet Forward cites no case law, and BenQ America is not aware of any, that has ever gone so far. Third, Forward's argument is based solely on the selective quoting of dicta from Justice O'Connor's *Asahi* concurrence. *See* Objections at 1. For the reasons set forth above, the more appropriate standard is from *World-Wide Volkswagen*, which was recently applied in this District: "The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980).[4] Here, Forward cannot credibly claim that it was unaware that its tuners – specifically designed for use in the United States – would end up in California.

## II. LIAW DECLARATION

Forward asserts that "Ms. Liaw's statements in her declaration are based on improper legal conclusion and opinion, lack foundation, and are irrelevant." Objections at 2. The Liaw Declaration states in relevant part as follows:

> 1. ….I am personally familiar with the facts stated in this declaration and am competent to testify to them.
>
> 3. I am aware that Forward Electronics Co., Ltd. has submitted an alleged contract written in Chinese to the Court. I have reviewed a copy of this alleged contract, which was given to me by counsel for BenQ America. A copy of the alleged contract is attached hereto as <u>Exhibit A</u>.

---

[3] For the first time (in reply), Forward apparently disputes that BenQ America was a third-party beneficiary to the tuner purchases. *See* Forward Reply at 7. But, other than its arguments in its brief, which are not evidence, Forward submits nothing to support this assertion.

[4] It should be noted that, unlike here, the Plaintiff in *Asahi* was not a California resident, thus minimizing California's interest in the litigation. *Asahi*, 480 U.S. at 114.

1  5. In addition, I noticed that the alleged contract is not signed by any employee or agent of BenQ Corporation, and in fact only
2  appears to be signed by an employee of Forward Electronics Co., Ltd.
3
4  6. Attached hereto as <u>Exhibit B</u> is a true and correct copy of a document entitled "Infringement Indemnification By Vendor (Or
5  Supplier)," which was signed on June 10, 2003 by Robert Yang, an authorized agent of Defendant Forward Electronics Co., Ltd. This
6  contract indemnifies BenQ, which includes BenQ Corporation and its subsidiaries, including BenQ America, in connection with any
7  claims of patent infringement related to products furnished by Forward Electronics Co., Ltd.

8  Forward objects to Ms. Liaw's statement that "the alleged contract is not signed

9  by any employee or agent of BenQ Corporation" as an improper legal conclusion. Objections at

10  1. That makes no sense. Ms. Liaw is simply stating a factual observation that is clear to anyone

11  who reviews the alleged contract submitted by Forward – the line specifically reserved for BenQ

12  Corp.'s "authorized signer" is blank. Forward attempts to transform Ms. Liaw's factual assertion

13  into a legal argument by suggesting a signature is not required on account of the BenQ Corp.

14  letterhead on the document. This argument, in the absence of any discovery on the issue, fails

15  for several reasons. Both authorities cited by Forward in support of its argument – a 1972 case

16  from the Northern District of Illinois, and Section 1201(38) of the California Commercial Code

17  – recognize that a symbol executed or adopted by a party only constitutes a signature if there is a

18  "present intention to authenticate a writing." *See* Cal. Com. Code § 1201(38) ("'Signed'

19  includes any symbol executed or adopted by a party *with present intention to authenticate a*

20  *writing*.") (emphasis added). Here, there is no evidence whatsoever that BenQ Corp. used its

21  letterhead to express its "present intention" to enter a contract with Forward. On the contrary,

22  there is a signature block specifically reserved for BenQ Corp. that is blank. That is more

23  compelling than letterhead. *See Goodworth Holdings Inc. v. Suh*, 239 F. Supp. 2d 947, 958

24  (N.D. Cal. 2002) ("when it is clear that both parties contemplate that acceptance of a contract's

25  terms would be signified in writing, *the failure to sign the agreement means that no binding*

26

*contract is created*.") (emphasis added).  Under Forward's theory, any document with BenQ Corp.'s letterhead would constitute a contract.  That cannot be the case.

Forward also asserts that Ms. Liaw offered an improper legal conclusion when she declared that the indemnification contract "was signed on June 10, 2003 by Robert Yang, an authorized agent of Defendant Forward Electronics Co., Ltd." Liaw Decl. at ¶ 6.  First, Ms. Liaw's statement is a factual assertion based on the face of the contract.  Mr. Yang's signature appears on the line labeled "*name and the title of authorized signature*."  *See* Liaw Decl., Ex. B.  Is Forward arguing that Mr. Yang was *not* an authorized agent when he signed the contract?  If so, that would seemingly contradict Mr. Yang's declaration (submitted with Forward's motion to dismiss) in which Mr. Yang states he is Forward's Vice President, and that he is "responsible for overseeing the business relationship between Forward and BenQ Corporation." Yang Decl. at ¶ 1.  Second, if Forward is in fact suggesting that Mr. Yang was not an authorized agent, that is precisely the sort of fact question that cannot be resolved without discovery.

Finally, Forward objects to Ms. Liaw's statement that the indemnification contract "indemnifies BenQ, which includes BenQ Corporation and its subsidiaries, including BenQ America, in connection with any claims of patent infringement related to products furnished by Forward Electronics Co., Ltd." Liaw Decl. at ¶ 6.  BenQ Corp.'s intentions regarding the contract, as articulated by Ms. Liaw, are relevant to the contract's interpretation.  *See, e.g.*, *Digital Envoy, Inc. v. Google, Inc*., 370 F. Supp. 2d 1025, 1031 (N.D. Cal. 2005).  At this stage of the proceedings, the Court cannot resolve disputes regarding the indemnification contract's proper meaning.  *Falkowski v. Imation Corp.*, 309 F.3d 1123, 1132 (9th Cir. 2002) ("Thus, we reverse the dismissal of the contract claims because, at this early stage of litigation, it is not 'clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.') (citation omitted).

| | | |
|---|---|---|
| 1 | **III.** | **CONCLUSION** |
| 2 | | For the foregoing reasons, BenQ America respectfully requests that the Court |
| 3 | overrule Forward's objections to the Goan and Liaw Declarations. | |
| 4 | DATED: November 23, 2005 | BINGHAM McCUTCHEN LLP |
| 5 | | _____/s/_____ |
| | | BRIAN C. ROCCA (SBN 221576) |
| 6 | | Three Embarcadero Center |
| | | San Francisco, CA 94111-4067 |
| 7 | | |
| | | GARY M. HNATH (*Pro Hac Vice*) |
| 8 | | FEI-FEI CHAO, Ph.D. (*Pro Hac Vice*) |
| 9 | | ATTORNEYS FOR PLAINTIFF |
| | | BENQ AMERICA CORP. |

| | |
|---|---|
| 1 | **PROOF OF SERVICE** |
| 2 | I hereby certify that on November 23, 2005, I caused a true and correct copy of |
| 3 | RESPONSE BY PLAINTIFF TO DEFENDANT'S EVIDENTIARY OBJECTIONS to be |
| 4 | electronically filed in accordance with Civ. L.R. 5-5(b) and General Order No. 45. Accordingly, |
| 5 | all counsel of record who are deemed to have consented to electronic service were served with |
| 6 | true and correct copies of the above documents via the Court's CM/ECF system. All other |
| 7 | counsel of record were served via electronic and United States mail. |
| 8 | |
| 9 | DATED: November 23, 2005 |
| 10 | |
| 11 | |
| 12 | _____/s/_____ Brian C. Rocca, Esq. |