DAVID P. BANCROFT (State Bar No. 52106)
E-Mail: dbancroft@sideman.com
JEFFREY C. HALLAM (State Bar No. 161259)
E-Mail: jhallam@sideman.com
JULIA MEZHINSKY JAYNE (State Bar No. 202753)
E-Mail: jjayne@sideman.com
SIDEMAN & BANCROFT LLP
One Embarcadero Center, Eighth Floor
San Francisco, California 94111
Telephone: (415) 392-1960
Facsimile: (415) 392-0827

VERNON H. GRANNEMAN (State Bar No. 83532)
E-Mail: vernon.granneman@pillsburylaw.com
DIANNE L. SWEENEY (State Bar No. 187198)
E-Mail: dianne.sweeney@pillsburylaw.com
JULIA S. FERGUSON (State Bar No. 216102)
E-Mail: julia.ferguson@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN LLP
2475 Hanover Street
Palo Alto, CA 94304-1114
Telephone: (650) 233-4500
Facsimile: (650) 233-4545

Attorneys for Plaintiff and Victim
CISCO SYSTEMS, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT S. GORDON,<br><br>Defendant. | CASE NO. CR-01-20077-JF<br><br>**MEMORANDUM IN SUPPORT OF VICTIM CISCO'S ENTITLEMENT TO RESTITUTION PAYMENT FROM THE GOVERNMENT PURSUANT TO FUNDS POSTED BY GORDON**<br><br>**E-FILE** |

Case No. CR-01-20077-JF
**MEMORANDUM IN SUPPORT OF VICTIM CISCO'S ENTITLEMENT TO RESTITUTION PAYMENT FROM THE GOVERNMENT**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>REAL PROPERTY AT<br><br>  1) 7900 BALD EAGLE DRIVE,<br>     PARK CITY, UTAH; and<br><br>  2) 7871 REDTAIL COURT,<br>     PARK CITY, UTAH,<br><br>    Defendant. | CASE NO. CV-02-2130 JF |
| CISCO SYSTEMS, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>ROBERT S. GORDON,<br><br>    Defendant. | CASE NO. CV-02-01862-JF<br><br>Judge:    The Honorable Jeremy Fogel |

## I. Introduction

Gordon contends that the Plea Agreement requires the government to pay over to Cisco the $4M (plus) in restitution now affirmed on appeal and still owing, payment to be made as required by the Plea Agreement from the remainder of the $7M (plus) Gordon turned over to the government in excess of the $13M (plus) in undisputed restitution he deposited with the government, which the government previously turned over to Cisco.

We understand the government's position (as represented at the last CMC on December 16, 2005) to be that, even if Gordon is correct, Cisco is not entitled to receive payment from the government of the restitution owing because Cisco is barred by the terms of its Stipulation and the Final Order of Forfeiture.

Cisco submits this memorandum to rebut the claim by the government.

This Memorandum is submitted pursuant to provisions of the recently enacted Crime Victim's Rights Act, 18 U.S.C. 3771 (2004) and this Court's order made during the December 16, 2005 consolidated Case Management Conferences setting a hearing on this matter for February 8, 2006.[1] Under the Act, all federal crime victims are now entitled "to be reasonably heard at any public seating in the district court involving ... sentencing" (§ 3771(a)(4)) and to "full and timely restitution as provided by law" (§ 3771(a)(6)).[2]

Cisco takes no position on Gordon's claim that the Plea Agreement obligates the government to pay over to Cisco the restitution owing: We did not negotiate and are not parties to the Plea Agreement. However, Cisco submits that if Gordon is correct, then Cisco, as the third party beneficiary of the Plea Agreement, is entitled to payment from the government because Cisco is not in any respect barred from receiving that restitution.

Cisco presents the issue of its entitlement now, rather than wait for a ruling on

---

[1] That hearing was continued to March 22, 2006 by stipulation of the parties and further order of the Court.

[2] The Act expressly authorizes the "crime victim's lawful representative (to) assert the victim's statutory rights" (18 U.S.C. § 3771(d)(1)), provides that the district court shall decide the victim's rights "forthwith"; and "[I]f the district court denies the relief sought, the movant may petition the court of appeals for a writ of mandamus." (18 U.S.C. § 3771(d)(3) (October, 2004)). *See, Kenna v. U.S. District Court, C.D. Cal.*, 2006 U.S. App. Lexus 1369 (9th Cir. 1/20/06).

Gordon's contention, because Cisco has been waiting for some four (4) years now for payment, and, if Gordon's position is upheld, Cisco does not want to protract these proceedings further by then having to set an additional briefing schedule and calendar a further hearing on its entitlement.

## II. Summary of Argument

Cisco's entitlement to payment by the government would not be barred because:

(1) The Final Order of Forfeiture could not, and so does not, bar Cisco's Plea Agreement third party beneficiary claim here because under the applicable statute, that kind of claim could not have been made in the forfeiture proceeding, and so the Forfeiture Order barring further claims could not apply to it; and,

(2) Cisco's Stipulation to the entry of the Final Order released only the constructive trust claim it made in its Petition, not any third party beneficiary claim.

## III. Argument

### A. Nothing In the Forfeiture Order Bars Cisco's Entitlement

The provision in the Final Order of Forfeiture ("Final Order") that "All other claims to said funds ... are hereby barred forever" (Final Order, 2:9-10) is simply inapplicable to Cisco's entitlement if Gordon's position is sustained.

If Gordon's position is accepted by the Court, Cisco, as third party beneficiary to the Plea Agreement, would not then be making a claim that it has a property interest in the forfeited funds themselves, which is the only kind of claim cognizable in a forfeiture proceeding, but instead a claim based on a contractual obligation.

The criminal forfeiture statute, 21 U.S.C. 853(n)(6)(A), limits the kind of third party claims that can be raised in a forfeiture proceeding to claims that: (1) the third party (here, Cisco) had a "right, title or interest vested in the *petitioner rather than the defendant* at the time of the acts which gave rise to the forfeiture ..." or (2) cases "where the third party claims are *superior* to any right, title, or interest vested in the defendant." (Emphasis supplied).

1. As to the first kind of claim cognizable under the statute (claims of having one's own vested property interest in the material subject to forfeiture), here, if Gordon succeeds in his present claim, Cisco's entitlement would:

    a. not be one asserting a vested property interest in the forfeited funds themselves, but instead, as already mentioned, would be solely as *a third party beneficiary* of the Plea Agreement *contract*, and so would not have been cognizable in the forfeiture proceeding[3];

    b. not be a claim of a property interest "vested" in Cisco "at the time of the acts which gave rise to the forfeiture," as the statute requires, since Cisco's entitlement would arise solely from the Plea Agreement, which was not executed until well after Gordon's money laundering that gave rise to the forfeiture; and,

    c. its entitlement would not be based on a claim of an interest of its *own* "rather than the defendant," as the statute further requires, but would, instead, be a claim entirely derivative of the defendant's interest.

2. As to the second kind of cognizable claim under the statute (claims of having a property interest superior to the defendant's), Cisco's entitlement as third party beneficiary would not have been cognizable in the forfeiture proceeding because it is not an interest "superior" to the defendant's, as required. Indeed, as just pointed out, Cisco's interest, as a third party beneficiary, would derive entirely from the defendant's interest.

3. In sum, if Gordon's position is accepted by the Court, Cisco would not be claiming a legal interest in the forfeited funds themselves. Cisco's position is that if the government has a contractual obligation to Gordon to pay over an amount equal to the restitution owed by Gordon on the basis of the funds it held and which it then forfeited, then Cisco, as a third party beneficiary of that contract, is entitled to receive that restitution.

---

[3] We note that the Plea Agreement provides, not that the government pay over the forfeited funds themselves, but instead "*an amount equal to* the value of (the) assets at the time of taking" (Plea Agreement at p. 19, par. 15; emphasis supplied). The elements of a third party beneficiary claim are: (1) a valid and binding intentional contract; and (2) with provisions which are for the benefit of a third party. 13 Williston on Contracts § 37:23 (4th ed., 2005).

Accordingly, because Cisco's entitlement here would not have been a cognizable claim in the forfeiture proceeding (not being a claim to the forfeited funds, as such, and otherwise not being a qualified claim under the controlling statute), its entitlement now cannot be deemed precluded by the provision in the Final Order of Forfeiture only barring further claims to the forfeited funds themselves, and which otherwise meet the statutory requirement set out in 21 U.S.C. 853 (n)(6)(A).[4]

### B. Cisco Never Released Any Third Party Beneficiary Entitlement to the Funds

If Gordon's claim is sustained, Cisco's entitlement to the restitution is not defeated by anything in the claims release Cisco gave the government by its Stipulation.

#### 1. The Fact Record

a. On March 11, 2003, the Court entered a Preliminary Order of Forfeiture prescribing that funds totaling $21,083.379.69 turned over by Gordon to the government be forfeited as having been involved in illegal money laundering. (Preliminary Order of Restitution and Forfeiture, 4:22-5:8) ("Preliminary Order").

The Preliminary Order further required that: (1) Upon the entry of a final order of forfeiture, $13,649,353.89 of these funds be paid over to Cisco as restitution (id. at 3:23-27).

b. On May 27, 2003, Cisco filed its Petition to Amend ... the Preliminary Order ("Petition") pursuant to Cisco's claim of an interest in the $7,444,025.80 balance held by the government for possible forfeiture pursuant to the Preliminary Order. The *sole and exclusive* claim made by Cisco to these funds in its Petition was as follows:

---

[4] Cisco's entitlement as third party beneficiary not being cognizable in the forfeiture proceeding can be further illustrated by the fundamental difference between that entitlement and the claim Cisco made in its Petition. Cisco's Petition claim was that Cisco was the beneficiary of a constructive trust imposed by law on the funds Gordon stole, the moment he stole them. Most of the cases have held that such a claim meets all of requirements of 21 U.S.C. 853(n)(6)(A), above. *See e.g. United States v. Schwimmer*, 968 F.2d 1579, 1582 (2nd Cir. 1992); *United States v. Herbawi*, 972 F.Supp. 171, 173-174 (W.D. N.Y. 1997) upholding constructive trust claims in forfeiture proceedings. The authorities regarding constructive claims in forfeiture proceedings are collected and analyzed in 53 Consumer Fin. L.Q. Rep. 16 (1999), at ftns. 147-154 and accomp. text.

that Gordon "breached his fiduciary duty to Cisco ... embezzling assets ... fraudulently inducing Cisco to loan funds ... and engaging in stock trades upon inside information" (Petition, 3:15-18); that the funds to be forfeited represented "either funds Gordon took from Cisco or proceeds from his investing of those funds"; that therefore Gordon held those funds in constructive trust in favor of Cisco; that because the constructive trust came into being at the time the funds were wrongfully obtained by Gordon, Cisco's legal interest became vested before the government's seizure (Petition, at 6:13-16), and therefore Cisco was the legal owner of the $7,444,025.80. (Petition, 6:9-16; 7:8-9).[5]

Nowhere in the Petition was any claim or any other reference made to *any other basis* for Cisco's claim, and specifically, no claim was made based on the theory that Gordon now advances: that, the government is obligated to pay over to Cisco restitution on Gordon's behalf because the government promised him in the Plea Agreement that, to the extent of the amount forfeited, it would pay up to an amount equal to the value the embezzlement on the dates of taking insofar as needed to effect any further, later ordered restitution.

c. On May 29, 2003, the government filed its Application for a Final Order of Forfeiture, noting that the government and Cisco had stipulated that a final order be entered. Nowhere in the government's Application or the government's Proposed Final Order was there any reference purporting to release any claims by Cisco other than the claim made *in its Petition*. That proposed order was, in pertinent part, as follows:

> $2,200,000.00 of the funds ... shall be disbursed to Cisco Systems, pursuant to and in full satisfaction of its third party petition filed herein and the Stipulation of the United States and Cisco filed concurrently with this Application (Application, 2:13-15; emphasis supplied)

d. The Stipulation itself provided, in pertinent part, that:

"$2,200,200.00 of the funds ... shall be disbursed to Cisco in full satisfaction of all claims *in said Petition*" (Stipulation, 1:27-26; emphasis supplied).

---

[5] Cisco and the government then settled the claim for $2.2 million. (Final Order, 2:5-7)

e. Finally, the Court's Final Order of Forfeiture entered May 30, 2003 referred to the foregoing Application and Stipulation as prescribing, and the Court ordered that:

> $2,200,000.00 of the funds … shall be disbursed to Cisco Systems, Inc. pursuant to and in full satisfaction of *its third party petition* filed herein and the Stipulation of the United States and Cisco filed concurrently with this Application[6] (Final Order, 2:5-7; emphasis supplied).

In sum, Cisco agreed only to release the claim made *in its Petition*, and neither that agreement nor Cisco's Petition itself even remotely implicated the third party beneficiary entitlement to Cisco that would result if the Court sustains of Gordon's current claim.

2. **In Law, as Well as in Fact, Cisco Released Only the Constructive Trust Claim Made in its Petition**

The applicable law confirms the result of the fact record that the only claim Cisco released was the constructive trust claim it made in its Petition.

    a. An unambiguous release must be construed and then enforced in accordance to its terms. 29 Williston on Contracts, § 73:7 (4th Ed., 2005). "[U]nambiguous, good faith settlements and plea agreements will be read according to their terms (and) any ambiguities or imprecise terms will be construed against the government." (U.S. Attorneys Manual, Title 9 at 2237, citing *United States v. Harvey*, 791 F.2d 294, 300 (4th Cir. 1986) and *United States v. Field*, 766 F.2d 1161, 1168 (7th Cir. 1985).)

    b. What we have here is a *specific* release, that is, a release restricted by its terms to claims or actions arising from specific events, transactions, or

---

[6] This $2.2M, with the $13,649,353.89, which the Preliminary Order prescribed be paid over by the government to Cisco from the $21,093,329.69 turned over to the government by Gordon, left $5,243,976.20 forfeited to the government. Slightly over $4M in restitution is currently owed, not including post-judgment interest.

**MEMORANDUM IN SUPPORT OF VICTIM CISCO'S ENTITLEMENT TO RESTITUTION PAYMENT FROM THE GOVERNMENT**

injuries. 66 Am. Jur. 2d, Release § 29, citing *Fuku-Bonsai, Inc. v. E.I. DuPont De Nemours & Co.*, 187 F.3d 1031 (9th Cir. 1999). Because this was not a general, unrestricted release of all claims, it did not release any unknown claims[7]. *See, Casey v. Proctor*, 59 Cal.2d 97, 109 (1963) (noting that it is only a *general* release of all claims that can, absent statute such as Cal. Civil Code § 1542, result in the waiver of unknown claims.)[8]

        c.    In addition to this being an unambiguous specific release, to the extent there might be any hint otherwise, it is clear that because the scope of the release would be construed against the government as having drafted it (*United States v. Seckinger*, 397 U.S. 203, 210 (1970)), it will be accorded its literal meaning, releasing only the particular claim made by Cisco in its Petition.

### C. Preclusion of Cisco's Entitlement Would Effect a Completely Untoward Result

If Gordon's position is sustained by the Court, the government's contention -- that the Final Order or the Stipulation nevertheless precludes any entitlement by Cisco to restitution -- would effect a most incongruous and thoroughly unjust result. For to sustain this contention would mean that, notwithstanding that the government would be *required by the Plea Agreement to pay* over the restitution to Cisco: (1) the government would nevertheless get to not do so, *keeping* that amount, (2) which would, in turn, leave *Gordon* obligated to pay Cisco, and (3) leave Cisco to pursue him civilly to pay what he had *already paid* over to the government. Such an anomalous and unfair result confirms that it

---

[7] Gordon's present claim -- that he does not owe Cisco anything further because, except for the $13M+ designated for restitution by the Preliminary Order, the assets he turned over to the government were to be forfeited, but the government agreed to pay over to Cisco any later-determined restitution up to an amount equal to the value of the embezzled assets on the date of taking -- was a claim wholly unknown, to Cisco until December 2005, when Gordon raised it with Cisco for the first time.

[8] Cal. Civil Code § 1542 provides that even a general release does not release unknown claims unless the release expressly says so.

is neither the result required by applicable law nor the one contemplated by Gordon or the government.

## IV. <u>Conclusion</u>

If the Court finds that the government and Gordon agreed that the remaining restitution would be paid over by the government to Cisco up to an amount equal to the value of the embezzled assets on the date of taking, then the government is obligated to Gordon to pay that restitution to Cisco; and Cisco, as the third party beneficiary to that agreement, is fully entitled to receive it. As demonstrated above, nothing in the Final Order, the Stipulation or the applicable law would preclude Cisco from receiving that restitution still owing.

DATED: March 3, 2006              SIDEMAN & BANCROFT LLP


By: /s/ David P. Bancroft
    David P. Bancroft
    Attorneys for Plaintiff and Victim
    CISCO SYSTEMS, INC.

DPB:acf:CSI.4587\195733_1.DOC