The Facebook, Inc. v. Connectu, LLC et al

Doc. 1376 Att. 1

**EXHIBIT B**
**(to Declaration of Aaron Dagan)**

Dockets.Justia.com

Action No.: 0501- 17360

IN THE COURT OF QUEEN'S BENCH OF ALBERTA

JUDICIAL DISTRICT OF CALGARY

BETWEEN:

**PsiNaptic Inc.**

Plaintiff

- and -

**Modius, Inc.**

Defendant

## STATEMENT OF CLAIM

1. The Plaintiff, PsiNaptic Inc. ("PsiNaptic"), is a corporation pursuant to the laws of Alberta and at all material times maintained offices in Calgary, Alberta. PsiNaptic is a technology company that develops and markets middleware software designed to facilitate the connection of small, low-power wired or wireless devices.

2. The Defendant, Modius, Inc. ("Modius"), is a Delaware corporation and at all material times maintained offices in Pleasanton, California. Modius is a company formed for the purpose of helping the automation and controls industry deal with the challenges of device inter-operability.

3. PsiNaptic and Modius are parties to a written agreement dated June 30, 2004 (the "Reseller Agreement") pursuant to which PsiNaptic agreed to appoint Modius as a Value Added Reseller of the PsiNaptic products described in the Reseller Agreement. In summary, PsiNaptic was to deliver to Modius certain software programs that would be bundled by Modius with its own software products and then sold by Modius. The full terms and conditions of the Reseller Agreement are well known to Modius and will be referred to at trial. The express conditions of the Reseller Agreement include the following:

(a) The term of the Reseller Agreement was for three years commencing on June 30, 2004;

(b) Modius is required to pay an initial royalty in the amount of $10,000 (US) (the "Integration Royalty") upon completion of the Integration, meaning the bundling of the PsiNaptic products and the Modius products;

(c) Modius is to pay an additional royalty to PsiNaptic on the sales of the Modius products (the "Sales Royalty"), calculated and paid each calendar quarter during the term of the Reseller Agreement. The minimum Sales Royalty payment per calendar quarter is $25,000 (US) commencing after the April-June 2005 quarter. Accordingly, the minimum total Sales Royalty payable by Modius to PsiNaptic is $200,000 (US), for the period July 1, 2005 to June 30, 2007;

(d) Modius is to provide to PsiNaptic no later than fifteen days after the end of each calendar quarter a report setting out the amount of the Sales Royalty due in that calendar quarter. Within twenty-eight days at the end of each calendar quarter, Modius is required to pay to PsiNaptic the Sales Royalty payable for that quarter;

(e) If any amount is not paid on its due date, in addition to any other remedy available to PsiNaptic, the amount will bear interest at the rate of 1½% per month calculated daily and compounded yearly; and

(f) The Reseller Agreement is governed by the laws of Alberta and Canada. The Court of Queen's Bench, in Calgary, Alberta has exclusive jurisdiction over disputes under the Reseller Agreement and Modius consents to the personal jurisdiction of that court.

4. In reliance on the execution by Modius of the Reseller Agreement, PsiNaptic began development of the software code for Modius pursuant to the Reseller Agreement. PsiNaptic provided that code, the final release of the CMatos-Linux Code, to Modius by email on October 27, 2004.

5. On November 3, 2004, pursuant to Section 3.2 of the Reseller Agreement, PsiNaptic placed the source code for the PsiNaptic products in escrow and forwarded to Modius a copy of the source code Escrow Agreement.

6. On November 30, 2004, PsiNaptic forwarded to Modius an invoice in the amount of $10,000 (US) as the Integration Royalty due upon completion of the Integration pursuant to the Reseller Agreement. The Integration Royalty was paid by Modius by two $5,000 (US) payments on March 4 and April 21, 2005 respectively.

7. PsiNaptic has performed all of its obligations in accordance with the terms and conditions of the Reseller Agreement.

8. On May 19, 2005, the president of Modius advised PsiNaptic that Modius had decided not to use the PsiNaptic products and requested that PsiNaptic agree to the termination of the Reseller Agreement. PsiNaptic refused to agree to any termination of the Reseller Agreement and advised Modius by letter dated June 1, 2005 that Modius was liable to make the $200,000 (US) minimum total Sales Royalty payment pursuant to Section 6.1 of the Reseller Agreement, as described above.

9. By letter dated August 16, 2005, Modius, through its attorneys, purported to terminate the Reseller Agreement pursuant to Section 12.1 for cause. The alleged cause was the failure of PsiNaptic to place the source code in escrow pursuant to the Reseller Agreement. However, as set out in paragraph 5 above, PsiNaptic did place the source code in escrow pursuant to Section 3.2 of the Reseller Agreement and it provided a copy of the Escrow Agreement to Modius on or about November 3, 2004.

10. In breach of the express conditions of the Reseller Agreement, Modius has not provided to PsiNaptic a report on the Sales Royalty due for the third quarter of 2005, which was due on October 15, 2005. Modius has not paid the $25,000 (US) Sales Royalty for the third quarter of 2005 and has not made any payment of the Sales Royalty.

11. PsiNaptic expressly denies that it has breached the Reseller Agreement as alleged or at all and denies that Modius had cause to terminate the Reseller Agreement on the grounds alleged or at all.

12. Modius has repudiated the Reseller Agreement and that repudiation has been accepted by PsiNaptic. PsiNaptic seeks immediate payment from Modius of the $200,000 (US) minimum total Sales Royalty for the final two years of the term of the Reseller Agreement.

13. PsiNaptic proposes that the trial of this action be held at Calgary, Alberta and it is the opinion of PsiNaptic that the trial of this action will take less than 25 days.

WHEREFORE PsiNaptic seeks as against Modius judgment as follows:

(a) Damages in the amount of the Canadian dollar equivalent of $200,000 (US), as converted from US dollars to Canadian dollars at the conversion rate in effect on the date of commencement of this action or on the date of judgment, whichever is most advantageous to PsiNaptic;

(b) Interest on all unpaid amounts at the rate of 1½% per month, calculated daily and compounded yearly, or such lesser rate as the Court may permit;

(c) In the alternative, judgment interest pursuant to the *Judgment Interest Act*, R.S.A. 2000, c. J-1;

(d) Costs of this action; and

(e) Such further relief as this Honourable Court may permit.

DATED at the City of Calgary, in the Province of Alberta, this 9th day of December, 2005, AND DELIVERED by Gowling Lafleur Henderson LLP, Solicitors for the Plaintiff, whose address for service is in care of its solicitors at 1400, 700 - 2nd Street S.W., Calgary, Alberta, T2P 4V5.

AND ISSUED out of the Office of the Clerk of the Court of Queen's Bench of Alberta, Judicial District of Calgary, this 9 day of December, 2005.




CLERK OF THE COURT

NOTICE

**TO: Modius, Inc.**

You have been sued. You are the Defendant. You have only 15 days to file and serve a Statement of Defence or Demand of Notice. You or your lawyer must file your Statement of Defence or Demand of Notice in the office of the Clerk of the Court of Queen's Bench in Calgary, Alberta. You or your lawyer must also leave a copy of your Statement of Defence or Demand of Notice at the address for service for the Plaintiff named in this Statement of Claim.

WARNING: If you do not do both things within 15 days, you may automatically lose the lawsuit. The Plaintiff may get a Court judgment against you if you do not file, or do not give a copy to the Plaintiff, or do either thing late.




Action No. 0501- 17360 2005

IN THE COURT OF QUEEN'S BENCH
OF ALBERTA
JUDICIAL DISTRICT OF CALGARY

BETWEEN:

**PsiNaptic Inc.**

Plaintiff

- and -

**Modius, Inc.**

Defendant

## STATEMENT OF CLAIM

This Statement of Claim is delivered by Gowling Lafleur Henderson LLP, solicitors for the Plaintiff whose address for service is in care of its solicitors at:


GOWLING LAFLEUR HENDERSON LLP
Barristers & Solicitors
1400, 700 – 2nd Street S.W.
Calgary, Alberta T2P 4V5

Responsible Solicitor:
Kenneth J. Warren

Telephone: (403) 298-1034
Facsimile: (403) 263-9193


The Plaintiff resides at Calgary, Alberta.

The Defendant, insofar as is known to the Plaintiff, resides at Pleasanton, California.

File No.: A103519 KJW

**EXHIBIT C**
**(to Declaration of Aaron Dagan)**

Action No.: 0501-17360

IN THE COURT OF QUEEN'S BENCH OF ALBERTA
JUDICIAL DISTRICT OF CALGARY

BETWEEN:

PsiNaptic Inc.

Plaintiff

- and -

Modius, Inc.

Defendant

## STATEMENT OF DEFENCE

1. Except as hereinafter expressly admitted, the Defendant, Modius, Inc. ("Modius") denies each and every allegation contained in the Plaintiff's Statement of Claim and puts the Plaintiff to the strict proof thereof.

2. Modius admits paragraphs 1 and the first sentence of paragraph 2 and agrees with the proposal in paragraph 13 of the Statement of Claim.

3. Modius is a developer of enterprise device management solutions which enable users to integrate multiple electronic devises into existing infrastructure.

4. On or about June 30, 2004, the Plaintiff, PsiNaptic Inc. ("PsiNaptic") and Modius executed an agreement in writing (the "Reseller Agreement") the terms of which, *inter alia*, were as follows:

   (a) Modius would be granted a non-exclusive licence to distribute the PsiNaptic's JMatos and CMatos sofware (the "PsiNaptic Product") once it was bundled with the Modius product (the "Reseller Product") (collectively the "Bundled Product");

   (b) Modius would provide first level support to end users which included the obligations to provide, *inter alia*:

(i) delivery of new releases, and delivery of error corrections or enhancements;

(ii) training to end users;

(iii) site assistance to end users concerning functioning and use of the software, PsiNaptic and Modius PsiNaptic; and

(iv) industry standard support;

(c) PsiNaptic would provide second level support which included the obligations to provide, *inter alia*:

(i) correction of source code to fix malfunctions, failures or bugs,

(ii) provide enhancements or new versions of software where in the best interests of PsiNaptic; and

(iii) provide second level support to end users where directed by Modius; and

(d) Modius would pay a royalty to PsiNaptic.

5. The Reseller Agreement also provided Modius and PsiNaptic with the right to terminate the agreement on written notice where, *inter alia*;

(a) either party defaulted on any of its obligations under the Reseller Agreement;

(b) either party filed a petition for bankruptcy or such a provision was filed against either party;

(c) either party ceased to carry on business;

(d) or a receiver was appointed for either party's business;

6. At the time of execution of the Reseller Agreement, the parties had not prepared nor attached to the Reseller Agreement an acceptable form of source code escrow agreement. Drafts were prepared by PsiNaptic, which drafts were never accepted nor executed by Modius.

7. Prior to and at the time of execution of the Reseller Agreement, PsiNaptic represented to Modius that, consistent with standard industry practice, the PsiNaptic source code would be escrowed with an independent third party escrow agent pursuant to a mutually acceptable and industry standard form of escrow agreement.

8. At the time the Reseller Agreement was executed, it was the parties' intention and an express or necessarily implied term of the Reseller Agreement, that the PsiNaptic source code would be placed in escrow and that the source code escrow agreement, in accordance with industry practice and standards, would provide Modius with meaningful access to the PsiNaptic source code such that, in the event that PsiNaptic ceased business operations, failed to provide support for the PsiNaptic Product, or PsiNaptic became bankrupt or insolvent, Modius would receive the PsiNaptic source code and would be provided with all necessary rights to use the PsiNaptic source code to fulfill its support obligations to the end users.

9. Modius states that it relied upon PsiNaptic's representations and express agreement regarding the terms under which the PsiNaptic source code would be escrowed to its detriment and further states that it would not have entered into the Reseller Agreement and thereby incurred cost and expense to produce and market the Bundled Product (the "Wasted Costs") had it known that PsiNaptic would not escrow the PsiNaptic source code in accordance with industry standards and practice. In the event that any amounts are deemed to be owing by Modius to PsiNaptic, which is expressly denied, Modius pleads set-off of the Wasted Costs.

10. On or about December 7, 2004, Modius proposed an industry standard source code escrow agreement for execution which contained all the material terms which had been agreed by the parties. This form of agreement was unreasonably rejected by PsiNaptic.

11. Notwithstanding that the parties had already agreed to all material terms of a source code escrow agreement, which terms were in accordance with standard industry practice, in or about February 2005, PsiNaptic proposed a revised form of a source code escrow agreement which failed to provide Modius with access to the PsiNaptic source code in the event that PsiNaptic failed to meet its support obligations or ceased to carry on business.

The proposed agreement further provided that the PsiNaptic source code would not be delivered to Modius if a release event occurred, but would instead be delivered to a receiver or trustee of PsiNaptic, absolutely depriving Modius of any right to obtain access to the PsiNaptic source code so as to allow it to meet its support obligations to end users.

12. On or about March 1, 2005, a representative of PsiNaptic specifically represented and again affirmed the parties' agreement that the PsiNaptic source code would be escrowed with an independent and mutually agreeable third party and that the PsiNaptic source code would be released to Modius in the event that that PsiNaptic ceased business operations, or failed to provide support for the PsiNaptic Product, or PsiNaptic became bankrupt or insolvent.

13. Following its rejection of the proposed terms of the modified form of escrow agreement submitted by PsiNaptic, on or about March 18, 2005, the President of Modius, Craig Compiano, and Modius' legal counsel, Eric S. Clarke, participated in a telephone conference with the President and Chief Executive Officer of PsiNaptic, Aaron Dagan, and PsiNaptic's legal counsel Lockey Craig. During the course of the conversation concerning the source code escrow, Mr. Craig acknowledged on behalf of PsiNaptic that: (1) it was the custom and practice of PsiNaptic to escrow source codes only with its legal counsel, Mr. Craig; (2) that in his capacity as escrow agent and legal counsel to Defendant, Mr. Craig exercised all efforts to thwart the rights of beneficiaries such as Modius under the terms of an escrow agreement by petitioning courts for various forms of relief to interfere with a beneficiary's rights to gain access thereto; and (3) that the escrow procedures which Defendant sought to impose upon Modius would functionally deny Modius of any access to the PsiNaptic source code for a period of two to three years following the occurrence of a release event.

14. On or about August 16, 2005, PsiNaptic having failed to execute a form of escrow agreement containing the material terms which had been agreed between the parties, and PsiNaptic having failed to place the PsiNaptic source code in escrow pursuant to mutually agreeable terms, or pursuant to industry standard terms, Modius gave formal notice that it was terminating the Reseller Agreement for cause.

15. At no point after the notice of termination was provided did PsiNaptic take any steps to cure its default, and PsiNaptic did not and has not, at any time, placed the PsiNaptic source code for the PsiNaptic product in escrow pursuant to mutually agreeable terms or pursuant to industry standard terms.

16. Modius has performed all of its obligations in accordance with the terms and conditions of the Reseller Agreement and expressly denies that it breached any term of the Reseller Agreement and expressly denies that any monies are owing by it to PsiNaptic.

WHEREFORE this Defendant prays that the Plaintiff's claim be dismissed with costs on a solicitor and client basis.

DATED at the City of Calgary in the Province of Alberta, this 7th day of February, 2006 and DELIVERED by Lori M. Bevan of MACLEOD DIXON LLP, Barristers and Solicitors, 3700, 400 - 3rd Avenue S.W., Calgary, Alberta, T2P 4H2, telephone (403) 267-8349, Solicitors for the Defendant, whose address for service is in care of the said Solicitors.

Action No. 0501-17360

IN THE COURT OF QUEEN'S BENCH OF ALBERTA
JUDICIAL DISTRICT OF CALGARY

BETWEEN:

PsiNaptic Inc.
Plaintiff

- and -

Modius, Inc.
Defendant

# STATEMENT OF DEFENCE

MACLEOD DIXON LLP
3700 Canterra Tower
400 Third Avenue SW
Calgary, Alberta T2P 4H2
Telephone: (403) 267-8222
Fax: (403) 264-5973

Attention: Lori M. Bevan

199603/WCH

CLERK OF THE COURT
FEB - 7 2006
CALGARY ALBERTA